QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Steven Cherny (*pro hac forthcoming*)
  stevencherny@quinnemanuel.com
  Patrick Curran (Bar No. 241630)
  patrickcurran@quinnemanuel.com
111 Huntington Ave, Suite 520
Boston, MA 02199
Telephone:   (617) 712-7100
Facsimile:   (617) 712-7200

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Jodie Cheng (Bar No. 292330)
  jodiecheng@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone:   (415) 875-6600
Facsimile:   (415) 875-6700

  *Attorneys for Defendant Viasat, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| WESTERN DIGITAL TECHNOLOGIES, INC., WESTERN DIGITAL IRELAND LTD., SANDISK 3D IP HOLDINGS LTD., SANDISK TECHNOLOGIES LLC, and SANDISK STORAGE MALAYSIA SDN. BHD., , <br><br> Plaintiffs, <br><br> v. <br><br> VIASAT, INC., <br><br> Defendant. | Case No.: 4:22-cv-4376-HSG <br><br> **DEFENDANT VIASAT, INC.'S MOTION TO DISMISS COUNT THREE OF THE AMENDED COMPLAINT (INFRINGEMENT OF THE '834 PATENT)** <br><br> **Hearing** <br> Date:  August 17, 2023 <br> Time:  2:00 p.m. <br> Judge:  Hon. Haywood S. Gilliam, Jr. <br> Courtroom:  2, 4th Fl. <br> 1301 Clay Street <br> Oakland, CA 94612 |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on August 17, 2023, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Haywood S. Gilliam, Jr. at the United States District Court for the Northern District of California, 1301 Clay Street, Oakland, CA 94612, Defendant Viasat, Inc. will and hereby does move the Court for dismissal, under FED. R. CIV. P. 12(b)(6), of Count Three of the Amended Complaint For Patent Infringement (Dkt. 38), which alleges infringement of U.S. Patent No. 8,504,834.  As described in the following memorandum, the claims of U.S. Patent No. 8,504,834 are directed to an abstract idea lacking inventive concept and, thus, constitute patent-ineligible subject matter pursuant to 35 U.S.C. § 101.

Viasat, Inc.'s motion is based on this Notice of Motion and Motion; the following memorandum of points and authorities; the supporting declaration of Jodie W. Cheng ("Cheng Decl."), all matters of which the Court may take judicial notice; other pleadings on file in this action; and other written or oral argument that Viasat, Inc. may present to the Court.

## RELIEF REQUESTED

Defendant Viasat, Inc. respectfully requests that the Court enter a finding that all claims of U.S. Patent No. 8,504,834 are invalid for failure to claim patent-eligible subject matter under 35 U.S.C. § 101; and dismiss with prejudice Count Three of the Amended Complaint For Patent Infringement (Dkt. 38) alleging infringement of U.S. Patent No. 8,504,834.

## **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .................................................................................1

II. BACKGROUND ...................................................................................2

III. LEGAL STANDARDS ........................................................................3

    A. Motions To Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) .........3

    B. Patent Eligible Subject Matter Under § 101 ..............................3

        1. § 101 and the *Alice* Two-Step Inquiry.............................3

        2. Computer-Related Technology in the Context of § 101 .............................................................................4

    C. Dismissal For Lack of Patent Eligible Subject Matter Under § 101 .................................................................................5

IV. ARGUMENT ........................................................................................6

    A. *Alice* Step One:  Every Claim of the '834 Patent Is Directed To An Abstract Idea ......................................................6

        1. The '834 Patent Claims Are Directed to an Abstract Idea ...........................................................................6

        2. The Patented Claims Use Result-Based Functional Language and Fail To Disclose a Specific Technique or Method.......................................................11

        3. The Patented Claims Are Not Directed Toward an Advance Over the Prior Art ...........................................13

    B. *Alice* Step Two:  The Claims of the '834 Patent Recite No Inventive Concept .................................................................14

        1. The Patented Claims Recite Well-Understood, Conventional Elements – Not An Inventive Concept .............................................................................14

        2. The Patented Claims Would Preempt General Encryption and Cryptography .........................................16

V. CONCLUSION ...................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Page**

**Cases**

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
   838 F.3d 1253 (Fed. Cir. 2016) .................................................................. 12, 13

*Alice Corp. Pty. v. CLS Bank Int'l*,
   573 U.S. 208 (2014) ................................................................ 4, 6, 10, 14, 16

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
   841 F.3d 1288 (Fed. Cir. 2016) .........................................................................6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...........................................................................................3

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016) ...................................................................5, 12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...........................................................................................3

*Berkheimer v. HP Inc.*,
   890 F.3d 1369 (Fed. Cir. 2018) .........................................................................4

*Bilski v. Kappos*,
   561 U.S. 593 (2010) ...........................................................................................5

*In re Bilski*,
   545 F.3d 943 (2008) ...........................................................................................5

*BSG Tech LLC v. Buyseasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018) .......................................................................14

*Cardpool, Inc. v. Plastic Jungle, Inc.*,
   No. C 12-04182 WHA, 2013 WL 245026 (N.D. Cal. Jan. 22, 2013)..............5, 6

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
   927 F.3d 1306 (Fed. Cir. 2019) .......................................................................14

*ChargePoint, Inc. v. SemaConnnect, Inc.*,
   920 F.3d 759 (Fed. Cir. 2019) .........................................................................15

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Assn*,
   776 F.3d 1343 (Fed. Cir. 2014) .......................................................................14

*Davis v. Wells Fargo*,
   824 F.3d 333 (3d Cir. 2016) ..............................................................................3

*Digital Media Techs., Inc. v. Amazon.com, Inc.*,
   No. 4:16-cv-244-MW/CAS, 2017 WL 11700001
   (N.D. Fla. Jul. 3, 2017)............................................................................. 10, 12

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
   758 F.3d 1344 (Fed. Cir. 2014) .....................................................................8, 9

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016) .......................................................................13

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
   955 F.3d 1317 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 2624 (2021) ................4

*Fid. Nat'l Info. Servs., Inc. v. DataTreasury Corp.*,
   No. CBM2014-00021, 2015 WL 1967328
   (P.T.A.B. Apr. 29, 2015) ...................................................... 1, 8, 9, 15, 16

*Fitbit, Inc v. AliphCom*,
   No. 15-cv-04073-EJD, 2017 WL 528491 (N.D. Cal. Feb. 9, 2017)...................15

*Free Stream Media Corp. v. Alphonso Inc.*,
   996 F.3d 1355 (Fed. Cir. 2021) ............................................................. 4, 5, 11

*Genetic Techs. Ltd. v. Merial L.L.C.*,
   818 F.3d 1369 (Fed. Cir. 2016) .........................................................................6

*Ginegar LLC v. Slack Techs., Inc.*,
  No. 22-cv-00044-WHO, 2022 WL 2837723 (N.D. Cal. Oct. 11, 2022) ..............5
*Gottschalk v. Benson*,
  409 U.S. 63 (1972) ........................................................................................16
*Hantz Software, LLC v. Sage Intacct, Inc.*,
  576 F. Supp. 3d 677 (N.D. Cal. Dec. 20, 2021) ...........................................5
*In-Depth Test, LLC v. Maxim Integrated, Products, Inc.*,
  2018 WL 6617142 (D. Del. Dec. 18, 2018) ....................................................6
*Intellectual Ventures I LLC v. Erie Indem. Co.*,
  850 F.3d 1315 (Fed. Cir. 2017) ....................................................................13
*Intellectual Ventures II LLC v. JP Morgan Chase & Co.*,
  No. 13-cv-3777(AKH), 2015 WL 1941331 (S.D.N.Y. Apr. 28, 2015) ..............11
*Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*,
  76 F. Supp. 3d 513 (D. Del. 2014) ................................................................15
*Kinglite Hldgs. Inc. v. Micro-Star Int'l Co.*,
  No. CV 14-03009 JVS(PJWx), 2015 WL 6437836
  (C.D. Cal. Oct. 16, 2015)......................................................................... 11, 16
*Le Roy v. Tatham*,
  55 U.S. 156 (1853) ........................................................................................16
*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
  66 F. Supp. 3d 829 (E.D.Tex.2014) .......................................................... 11, 12
*Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*,
  566 U.S. 66 (2012) ..........................................................................................4
*OIP Techs., Inc. v. Amazon.com, Inc.*,
  788 F.3d 1359 (Fed. Cir. 2015) ......................................................................6
*OpenTV, Inc. v. Apple Inc.*,
  No. 5:15-cv-02008-EJD, 2016 WL 344845 (N.D. Cal. Jan. 28, 2016).. 10, 15, 16
*Paone v. Broadcom Corp.*,
  2015 WL 4988279 (E.D.N.Y. Aug. 19, 2015) ..............................................11
*Personalized Media Comm'cs, LLC v. Amazon.com, Inc.*,
  161 F. Supp. 3d 325 (D. Del. 2015) ................................................................7
*Personalized Media Comm'cs, LLC v. Amazon.com, Inc.*,
  161 F. Supp. 3d 325 (D. Del. 2015) .................................................... 1, 7, 8, 15
*PersonalWeb Techs. LLC v. Google LLC*,
  8 F.4th 1310 (Fed. Cir. 2021) ........................................................................5
*Potter Voice Techs., LLC v. Apple Inc.*,
  No. C 13-1710 CW, 2015 WL 5672598 (N.D. Cal. June 11, 2015)..................11
*Prism Techs. LLC v. T-Mobile USA, Inc.*,
  Nos. 2016-2031, 2016-2049, 2017 WL 2705338
  (Fed. Cir. June 23, 2017) ..............................................................................15
*RecogniCorp, LLC v. Nintendo Co.*,
  855 F.3d 1322 (Fed. Cir. 2017) ..................................................................4, 14
*In re TLI Commc'ns LLC Patent Litig. ("TLI")*,
  823 F.3d 607 (Fed. Cir. 2016) ........................................................................5
*TQP Dev., LLC v. Intuit Inc.*,
  No. 12–cv–180, 2014 WL 651935 (E.D. Tex. Feb.19, 2014)............................11
*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
  874 F.3d 1329 (Fed. Cir. 2017) ....................................................................12
*Visual Memory LLC v. NVIDIA Corp.*,
  867 F.3d 1253 (Fed. Cir. 2017) ..................................................................3, 4
*Walker Digital, LLC v. Google, Inc.*,
  66 F.Supp.3d 501 (D. Del. 2014) ..................................................................12
*West View Research, LLC v. Bayerische Motoren Werke AG*,
  226 F. Supp. 3d 1071 (S.D. Cal. 2016) ..................................................... 10, 14

*Ultramercial, Inc. v. Hulu, LLC*,
  772 F.3d 709, 714 (Fed. Cir. 2014) ....................................................................11
*Yu v. Apple Inc.*,
  1 F.4th 1040 (Fed. Cir. 2021), *cert. denied*, 142 S. Ct. 1113 (2022) ...................4

**Statutory Authorities**
35 U.S.C. § 101 .......................................................... 1, 3, 4, 5, 6, 10, 17

**Rules and Regulations**
Fed. R. Civ. P. 12(b)(6)....................................................................3, 5

**Additional Authorities**
U.S. Patent No. 10,447,667...................................................................2
U.S. Patent No. 8,504,834.............................................................. 1, 2, 17
U.S. Patent No. 9,424,400...................................................................2

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION

"Cryptography"—the study of secure communications, including encryption and decryption—"has been used to protect information since ancient Mesopotamia." *Personalized Media Comm'cs, LLC v. Amazon.com, Inc.*, 161 F. Supp. 3d 325, 333 (D. Del. 2015).  Indeed, encryption and decryption represent "a basic building block of human ingenuity that has been used for hundreds, if not thousands, of years." *Fid. Nat'l Info. Servs., Inc. v. Datatreasury Corp.*, No. CBM2014-00021, 2015 WL 1967328, at *8 (P.T.A.B. Apr. 29, 2015).  Yet, encryption and decryption across a network is precisely what asserted U.S. Patent 8,504,834 purports to claim—and the activity Plaintiffs accuse of infringement.[1]  (Dkt. 38 ("Amended Complaint" or "Am. Compl.") ¶¶ 48–61.)  The claims of the '834 patent are thus not patent eligible under 35 U.S.C. § 101, and should be dismissed.

Plaintiffs' Amended Complaint excerpts claim 14, apparently as representative of the '834 patent, which recites:

> 14.  A method for activation of local content, the method comprising:
>
>> performing the following in a host device in communication with a storage device storing encrypted content:
>>
>>> receiving a stream of data from a network;
>>>
>>> deriving a key from the received stream of data; and
>>>
>>> decrypting the encrypted content using the key derived from the received stream of data.

(*Id*. at ¶ 53.)  This claim, and Plaintiffs' infringement theories, require no specific technique or method of encryption, decryption, or deriving a decryption "key".  Courts have found that near-identical claims, divorced of any specific technique or

---

[1]  Plaintiffs Western Digital Technologies, Inc., Western Digital Ireland Ltd., SanDisk 3D IP Holdings, Ltd., SanDisk Technologies LLC, and SanDisk Storage Malaysia Sdn. Bhd. (collectively, "Plaintiffs").

method, are directed to abstract ideas.  Further, the '834 patent provides no inventive method or application of encryption and decryption that would transform the abstract ideas into patent-eligible subject matter.  Nor does the patent apply the abstract idea to any specific hardware or environment that would otherwise render the invention patent eligible.  To the contrary—the patent repeatedly states the claimed invention is implemented in "legacy" and "existing" systems.  Based on the generalized claims of the '834 patent, and Plaintiffs' expansive application of those claims, , the patent would impermissibly preempt and prohibit methods and implementations of encryption and decryption using information streamed over a network.  As such, the claims of the '834 patent are invalid and Plaintiffs' related infringement claim (Count III) should be dismissed.

## II.   BACKGROUND

On July 28, 2022, Plaintiffs commenced this action against Viasat, Inc. ("Viasat"), asserting that Viasat's in-flight entertainment and communication ("IFEC") offering infringes three patents:  U.S. Patent No. 9,424,400, U.S. Patent No. 10,447,667, and U.S. Patent No. 8,504,834 (Dkt. 1-3 (the "'834 patent")).  (Dkt. 1 ¶¶ 2, 23, 39, 53.)  With respect to the '834 patent, Plaintiffs claim that Viasat's IFEC systems infringe because encrypted media content (e.g., a movie) is sent to airline passengers' devices (e.g., an iPad) and decrypted using a key sent by Viasat. (*Id.* at ¶¶ 51–54; Am. Compl. at ¶¶ 54–57.[2])  According to Plaintiffs, this activity constitutes infringement of "at least claim 14 of the '834 patent."  (*Id.*)

Prior to dismissal of Plaintiffs' original complaint and filing of the Amended Complaint (*see* n. 3, *infra*), Plaintiffs served their infringement contentions, which charted infringement theories for claims 14, 15, 17, and 20 of the '834 patent.  Claim 14 of the '834 patent is a method claim, and one of two independent claims in the patent; the other independent claim, unasserted claim 1, is a mirror-image apparatus

---

[2]  Plaintiffs' original complaint was dismissed with leave to amend on April 18, 2023.  (Dkt. 36.)  On May 9, 2023, Plaintiffs filed the Amended Complaint.  (Dkt. 38.)

claim.  ('834 patent at cl. 1.)  The asserted dependent claims (claims 15, 17, and 20) of the '834 patent recite an encryption key, discarding the key, and storing "pre-loaded" content.[3]

Plaintiffs do not allege that the accused IFEC systems use any specific encryption or decryption method or algorithm.[4]  (Am. Compl. ¶¶ 55, 57.)  Similarly, Plaintiffs do not accuse Viasat of using any particular method or algorithm for obtaining the key to decrypt content; it generally asserts that a key "is derived from media and/or information provided by the Viasat IFEC server" and that the "'834 Accused Products then decrypt the encrypted content using the key."  (*Id*. ¶ 57.)

## III.   LEGAL STANDARDS

### A.   Motions To Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### B.   Patent Eligible Subject Matter Under § 101

#### 1.   § 101 and the *Alice* Two-Step Inquiry

35 U.S.C. § 101 provides that patent-eligible subject matter is limited to "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."  In contrast, "laws of nature, natural phenomena, and abstract ideas are not patent-eligible because they represent the basic tools of

---

[3]  *See*, *e.g.*, '834 patent at cl. 15 ("The method of claim 14, wherein the encrypted content is encrypted with a content encryption key, and wherein the key derived from the received stream of data is the content encryption key."), cl. 17 ("The method of claim 14 further comprising discarding the key derived from the received stream of data after the encrypted data has been encrypted."), cl. 20 ("The method of claim 14, wherein the encrypted content is pre-loaded on to the storage device.").

[4]  Indeed, Plaintiffs' infringement contentions acknowledge that "the mechanisms used for key acquisition and content protection are largely DRM [Digital Rights Management] system specific."

scientific and technological work." *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1257 (Fed. Cir. 2017) (internal quotation marks and citation omitted). The Supreme Court set forth the governing two-step test for determining whether a patent claims ineligible subject matter in *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014) and *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66 (2012).

The first step, or *Alice* Step One, "looks to the claim's 'character as a whole'" and considers if the claim is directed to ineligible subject matter. *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1326 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 2624 (2021); *see also Yu v. Apple Inc.*, 1 F.4th 1040, 1043 (Fed. Cir. 2021), *cert. denied*, 142 S. Ct. 1113 (2022) (Step One requires "asking what the patent asserts to be the focus of the claimed advance over the prior art").

If the claim is directed to ineligible subject matter, the inquiry proceeds to *Alice* Step Two, which asks whether the claim elements, considered "both individually and 'as an ordered combination,'" recite an "inventive concept" that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself." *Alice*, 573 U.S. at 217–18. "To save a patent at step two, an inventive concept must be evident in the claims." *Recognicorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017). The inventive concept cannot be either an abstract idea in itself, or a generic computer implementation. *See e.g.*, *Berkheimer v. HP Inc.*, 890 F.3d 1369, 1374 (Fed. Cir. 2018).

2.   <u>Computer-Related Technology in the Context of § 101</u>

As the Federal Circuit has repeatedly explained, abstract ideas do not become patent eligible simply because they involve a computer. An "alleged technological improvement [that] does nothing more than implement a computer to achieve [an] abstract idea" remains patent ineligible. *Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1364–65 (Fed. Cir. 2021). Similarly, "asserted claims [that] are not directed to an improvement of a technology or creation of a new computer

functionality . . . are directed to an abstract idea." *Id.* Claims are drawn to an abstract idea if they recite "the use of conventional or generic technology in a nascent but well-known environment, without any claim that the invention reflects an inventive solution to any problem presented by combining the two." *In re TLI Commc'ns LLC Patent Litig.* ("*TLI*"), 823 F.3d 607, 612 (Fed. Cir. 2016). Thus, claims that describe a system and methods in "purely functional terms" without "any technical details for the tangible components" are abstract and invalid. *Id.*

## C.  Dismissal For Lack of Patent Eligible Subject Matter Under § 101

"Courts may . . . dispose of patent-infringement claims under § 101 whenever procedurally appropriate." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1347 (Fed. Cir. 2016). "Whether a claim is drawn to patent-eligible subject matter under § 101 is a threshold inquiry, and any claim of application failing the requirements of § 101 must be rejected even if it meets all the other legal requirements of patentability." *Ginegar LLC v. Slack Techs, Inc.*, No. 22-cv-00044-WHO, 2022 WL 2837723, *3 (N.D. Cal. Oct. 11, 2022) (quoting *In re Bilski*, 545 F.3d 943, 950 (2008), *aff'd but criticized sub nom. Bilski v. Kappos*, 561 U.S. 593 (2010)) (granting motion to dismiss under § 101).

This Court and others in this District routinely assess compliance with 35 U.S.C. § 101 at the pleadings stage—a procedure the Federal Circuit has affirmed. *E.g.*, *Hantz Software, LLC v. Sage Intacct, Inc.*, 576 F. Supp. 3d 677 (N.D. Cal. Dec. 20, 2021) (Gilliam, J.) (granting motion to dismiss under § 101); *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1314 (Fed. Cir. 2021) (The § 101 "inquiry may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law.") (internal quotation omitted).

A ruling under § 101 need not wait for claim construction, or other discovery, where "[t]he basic character of the claimed subject matter is readily ascertainable

from the face of the patent." *Cardpool, Inc. v. Plastic Jungle, Inc.*, No. C 12-04182 WHA, 2013 WL 245026, at *4 (N.D. Cal. Jan. 22, 2013).  *See also Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1374 (Fed. Cir. 2016) ("In many cases, too, evaluation of a patent claim's subject matter eligibility under § 101 can proceed even before a formal claim construction."); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1364 (Fed. Cir. 2015) (resolving § 101 dispute on the pleadings).

## IV.   ARGUMENT

### A.   *Alice* Step One:  Every Claim of the '834 Patent Is Directed To An Abstract Idea

Under *Alice* Step One, the overall focus and character of each of the claims of the '834 patent is directed to the abstract idea of decrypting encrypted content. Claim 14 asserted in Plaintiffs' Amended Complaint is a generic method in which a recipient is (1) in communication with the source of encrypted content, (2) receives information, (3) derives a key from the information received, and (4) uses the key to decrypt the encrypted content.  (Am. Compl. ¶¶ 54–57; *see also* § II, *supra*.)  The claim thus provides for decrypting encrypted content using a received decryption key.  (*Id.*)  The other claims are directed to the same abstract idea, and vary only in how the key or content may be stored or discarded.  (*Id.*; n. 3, *supra*.)  Thus, all of the patented claims are "substantially similar and linked to the same abstract idea." *Id.*; *see In-Depth Test, LLC v. Maxim Integrated, Products, Inc.*, 2018 WL 6617142, at *2 n. 3 (D. Del. Dec. 18, 2018).  These claims lack any specific technique or method for encrypting content, decrypting content, or obtaining a key.  Rather, the claims recite only the general concepts and functional results of decryption—and Plaintiffs' Amended Complaint and infringement allegations do not assert otherwise.  *See id*.

#### 1.   The '834 Patent Claims Are Directed to an Abstract Idea

To determine if claims are abstract, it is instructive to "examine earlier cases in which a similar or parallel descriptive nature can be seen—what prior cases were

about, and which way they were decided." *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016).  Courts addressing claims for encryption routinely conclude that those claims are directed to abstract ideas.

Faced with a similar encryption/decryption claim, *Personalized Media Comm'cs, LLC v. Amazon.com, Inc.* concluded that the alleged invention, in which "some decryption algorithm is used to convert the encrypted signal into a decrypted signal," is directed to an abstract idea. 161 F. Supp. 3d 325, 333 (D. Del. 2015). The claim invalidated in *Personalized Media* closely resembles the '834 patent claims: encrypted content is decrypted for access using a decryption "key" (in the terms of the '834 patent), or "control signal" (in the terms of the *Personalized Media* claim), derived from some received information.  *Id.*  The claims recite encryption and decryption at the same level of generality; if anything, the invalidated *Personalized Media* claim is more specific and less abstract than the '834 patent claims:

| *Personalized Media*: U.S. Patent No. 7,801.304 | '834 Patent |
|---|---|
| 1.     A method for controlling the decryption of programming at a subscriber station, said method comprising the steps of: | 14.  A method for activation of local content, the method comprising: |
| receiving programming, said programming having a first encrypted digital control signal portion and an encrypted digital information portion; | performing the following in a host device in communication with a storage device storing encrypted content:<br><br>receiving a stream of data from a network; |
| detecting said first encrypted digital control signal portion of said programming; | deriving a key from the received stream of data; and |
| passing said first encrypted digital control signal portion of said programming to a decryptor at said subscriber station; | decrypting the encrypted content using the key derived from the received stream of data. |

| | |
|---|---|
| decrypting said first encrypted digital control signal portion of said programming using said decryptor at said subscriber station;<br><br>passing said encrypted digital information portion of said programming to said decryptor;<br><br>decrypting said encrypted digital information portion of said programming using said decryptor at said subscriber station based on the decrypted control signal portion; and<br><br>presenting said programming. | |

As *Personalized Media* explained, "[t]he claim involves receiving an encrypted control signal and encrypted information, decrypting the control signal [*i.e.*, key], using the signal [*i.e.*, key] to decrypt the information, and then presenting programing." *Id.* at 333. This "recites the abstract idea of decryption" and is a classic example of what is "not patent eligible." *Id.* (quoting *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014)). The same conclusion holds for the '834 patent, which is even simpler and more generic than the patent claim at issue in *Personalized Media*.[5]

The Patent Office has also found similar claims patent ineligible. For example, the Patent Trial and Appeal Board's ("PTAB") decision in *Fidelity National* is instructive. *Fid. Nat'l Info. Servs., Inc. v. DataTreasury Corp.*, No. CBM2014-00021, 2015 WL 1967328, at **3, 10 (P.T.A.B. Apr. 29, 2015) ("*Fidelity National*"). In *Fidelity National*, the PTAB addressed claims relating to capturing,

---

[5]   Indeed, the *Personalized Media* claim was one in which decryption "occurs twice," *i.e.*, decryption of the key as well as decryption of received information/content. This was of no consequence. *Id.* at 333–334 ("[P]erforming an abstract idea twice in a row is not a meaningful limitation.").

encrypting, and transmitting transaction data. *Id*. The claim-at-issue relating to encryption recited:

> 26. A method of central management, storage and verification of remotely captured paper transactions from documents and receipts comprising the steps of:
>
>> capturing an image of the paper transaction data at one or more remote locations and sending a captured images of the transaction data;
>>
>> managing the capturing and sending of the transaction data;
>>
>> collecting, processing, sending and storing the transaction data at a central location;
>>
>> managing the collecting, processing, sending and storing of the transaction data;
>>
>> ***encrypting subsystem identification information and the transaction data;*** and
>>
>> transmitting the transaction data and the subsystem identification information within and between the remote location(s) and the central location.

*Id*. at *3.[6] The PTAB found the claim was, "in substance, directed to the underlying idea of transferring information from one location to another where the transferred information is unreadable without a secret decoder key." *Id*. at *7. This is, according to the PTAB, an abstract idea; "encryption of data as a security measure" is "ubiquitous," and encryption "has been used for hundreds, if not thousands, of years" using "pencil and paper." *Id*. at **9–10. Performing encryption with "'off the shelf' technology" that "d[id] not claim any 'particular' machines or components" was thus ineligible. *Id*. at **10–11.

    *OpenTV, Inc. v. Apple Inc.* likewise involved patent infringement allegations "relate[d] to the secure transmission of digital content directly to a user's television, personal computer, or mobile device" by using "Digital Rights [M]anagement (DRM) and authentication" "to secure the delivery process of digital content." No.

---

[6] All emphases added unless otherwise stated.

5:15-cv-02008-EJD, 2016 WL 344845, at *1 (N.D. Cal. Jan. 28, 2016).  The court in *OpenTV* concluded that these claims were directed to "the practice of controlling access to information by verifying credentials (via well-known encryption methods)"—which "is neither novel nor specific to interactive television systems." *Id*. at **5, 6.   As *OpenTV* noted, many other decisions have found encryption/decryption claims invalid under § 101.   For example, *Intellectual Ventures II LLC v. JP Morgan Chase & Co.* "concluded that features such as encryption and decryption and the use of an access mechanism to enforce certain rules constitute well understood and conventional practices."  *Id*. at *6 (citing No. 13-cv-3777-AKH, 2015 WL 1941331, at *14 (S.D.N.Y Apr. 28, 2015)).  Consistent with the established case law, *OpenTV* found that the claims were abstract ideas lacking an inventive concept and, thus, were invalid under § 101.   *Id*. at *10. Accordingly, the court granted defendant's motion to dismiss.  *Id*. at *1.

As all of these cases recognize, whether  using a "key," or a "derived" key, or a "control signal," a "secret decoder key," or simply "credentials," courts have repeatedly concluded that encryption and decryption is an abstract idea under § 101. "Indeed, as long as content has existed, people have sought to secure who may access it and how it may be used."  *Digital Media Techs., Inc. v. Amazon.com, Inc.*, No. 4:16-cv-244-MW/CAS, 2017 WL 11700001, at *7 (N.D. Fla. Jul. 3, 2017) ("Simply put, the '764 patent is directed to an abstract idea.  Specifically, it is directed to the abstract idea of delivering content secured with licenses and encryption.").[7]  Under Step One of the *Alice* inquiry, the '834 patent claims abstract ideas.

---

[7]   *See also OpenTV*, 2016 WL 344845, at *5 ("The practice of controlling access to information by verifying credentials . . . is a long-standing and well-understood business practice that predates the internet."); *West View Research, LLC v. Bayerische Motoren Werke AG*, 226 F. Supp. 3d 1071, 1078 (S.D. Cal. 2016) ("The asserted claims are directed at identifying an authorized user and providing information to that user.  The concept of identifying a system user and then delivering user-specific content to that user's portable electronic device is an abstract idea."); *Intellectual Ventures II LLC v. JP Morgan Chase & Co.*, No. 13-cv-3777 (AKH), 2015 WL 1941331, at *14 (S.D.N.Y. Apr. 28, 2015) ("The use of

2.  The Patented Claims Use Result-Based Functional Language
and Fail To Disclose a Specific Technique or Method

"The Federal Circuit has characterized an abstraction as 'an idea, having no particular concrete or tangible form.'"  *Potter Voice Techs., LLC v. Apple Inc.*, No. C 13-1710 CW, 2015 WL 5672598, at *2 (N.D. Cal. June 11, 2015) (quoting *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014).  Patented claims that are "directed to a result or effect," and fail to disclose "a specific, discrete implementation" or "a specific means or method that improves the relevant technology," are ineligible.  *Free Stream Media Corp.*, 996 F.3d at 1363 (citation omitted).  "As a result, a claim is ineligible if it fails to recite a practical way of applying an underlying idea . . . ."  *Id.* (quotation marks and citation omitted).

District courts applying this principle have found patents directed to encryption, decryption, and cryptography abstract unless they claim specific techniques or methods to implement those processes.  That is, "a patent on a method of data encryption is not *per se* invalid, **as long as it is specific enough**."  *Paone v. Broadcom Corp.*, 2015 WL 4988279, at *5 (E.D.N.Y. Aug. 19, 2015); *see also id.* at **4–5 (discussing *TQP Dev., LLC v. Intuit Inc.*, No. 12–cv–180, 2014 WL 651935 (E.D. Tex. Feb.19, 2014) and *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829, 836–37 (E.D.Tex.2014)).  Guided by Federal Circuit Judge Bryson sitting by designation in *TPQ* and *Loyalty Conversion*, sufficient specificity would require, for example, "a very specific method of changing encryption keys" or "complex algorithms."  *Id*.  In contrast, claims that "did not place any limit on

---

an 'access mechanism' to enforce . . . pre-selected rules is nothing more than programming conventional software or hardware to apply rules governing access—a routine, conventional practice."); *Kinglite Hldgs. Inc. v Micro-Star Int'l Co.*, No. CV 14-03009 JVS(PJWx), 2015 WL 6437836 (C.D. Cal. Oct. 16, 2015) ("Similarly, the steps in Claim 9 of generating a signature using a "private key" and verifying that signature with a "public key" can be performed by a human who is capable of reading such keys. The fact that mathematical algorithms are involved in reading such keys is of no consequence because even algorithms performed on a generic computer are abstract ideas.").

what **kind** of cryptographic method would be used" are patent ineligible.  *Id.* at *6
(emphasis original) (citing *Walker Digital, LLC v. Google, Inc.*, 66 F.Supp.3d 501
(D. Del. 2014)).

Here, the claims belong to the latter category of ineligible subject matter.  As
in *Digital Media Techs.*, the claims of the '834 patent "are neither specific nor
discrete . . . [a]nd the patent does little more than recite an abstract idea (delivering
content secured with licenses and encryption) with the instruction to perform that
idea on generic computer components."  *Digital Media Techs., Inc. v. Amazon.com,
Inc.*, No. 4:16-cv-244-MW/CAS, 2017 WL 11700001, at *6 (N.D. Fla. Jul. 3, 2017)
(citing *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341,
1350 (Fed. Cir. 2016)).  The *Digital Media Techs.* court noted that the representative
claim-at-issue "refers to functions such as . . . 'encrypt . . . the content license using
a public key' without specifying how those functions are to be performed."  *Id*. at n.
12.

Similarly, the '834 patent claims generally recite, e.g., "encrypted content,"
"deriving a key," and "decrypting the encrypted content using the key," without
specifying how the content is to be encrypted, how the key is derived, or how the
encrypted content is subsequently decrypted using the (unspecified) key.  ('834
patent at, *e.g.*, cl. 14.)  That is, the patented claims merely recite functional language
that describes a result that itself is the abstract idea (decryption of encrypted content);
and, as such, the patented claims "manipulate[] data but fail[] to do so in a non-
abstract way."  *See Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874
F.3d 1329, 1337–38 (Fed. Cir. 2017) ("Claim 1 recites a method for routing
information using result-based functional language.  The claim requires the
functional results of 'converting,' 'routing,' 'controlling,' 'monitoring,' and
'accumulating records,' but does not sufficiently describe how to achieve these
results in a non-abstract way.") (citing *Affinity Labs of Tex., LLC v. DIRECTV, LLC*,

838 F.3d 1253, 1258–59 (Fed. Cir. 2016)) and *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1351 (Fed. Cir. 2016)).

Plaintiffs' infringement allegations confirm the abstract and generic scope of its claims. The Amended Complaint simply states that Viasat infringes "at least claim 14 of '834 patent" (Am. Compl. ¶ 54) by virtue of allegedly "storing encrypted content" on the Viasat IFEC server (*id.*), deriving a key "from media and/or information provided by the Viasat IFEC server" (*id.* ¶ 57), and "then decrypt[ing] the encrypted content using the key" (*id.*). Further, Plaintiffs' chart infringement of claim 14 by relying on third-party documents acknowledging that "the mechanisms used for key acquisition and contention protection are largely DRM system specific." These allegations confirm the '834 patent does not require nor claim any specific technique.

### 3.   The Patented Claims Are Not Directed Toward an Advance Over the Prior Art

To determine whether the "claim's character as a whole is directed to excluded subject matter," courts evaluate the claimed "advance" over the prior art. *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1325 (Fed. Cir. 2017) (quotation omitted). Here, the claims are directed to decryption of encrypted content and provide no advance over the prior art, nor does Plaintiffs' Amended Complaint allege any purported advancement or improvement. In fact, the '834 patent merely applies the general concepts of encryption and decryption using keys to "***existing***" and "***legacy***" environments. (*E.g.*, '834 patent at 2:55–58 ("Also, ***because existing streaming servers are used***, these embodiments can take advantage of the activation, authorization, and accounting mechanisms ***already provided by those servers***."); Abstract ("A method and system for activation of local content with ***legacy*** streaming systems are disclosed."), 2:28–31 ("In general, the following embodiments integrate ***existing*** streaming server environments into ecosystems where encrypted content is preloaded or downloaded onto a storage device."). And,

as discussed above, the general use of encryption and encrypted content is far from novel; and the patented claims provide no specific method of encryption (or decryption).  Thus, there is no technological advancement or improvement claimed in the '834 patent.  *See, e.g.*, *West View Research*, 226 F. Supp. 3d at 1078 ("There is nothing in the specification to support this representation that the inventions provide new and improved systems, protocols or methods of securing wireless transactions from interception by unauthorized users.").

 **B.** *Alice* **Step Two:  The Claims of the '834 Patent Recite No Inventive Concept**

  1. <u>The Patented Claims Recite Well-Understood, Conventional Elements—Not An Inventive Concept</u>

 "To save a patent at step two, an inventive concept must be evident in the claims." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017). *Alice* Step Two "consider[s] the elements of the claim—both individually and as an ordered combination—to assess whether the additional elements transform the nature of the claim into a patent-eligible application of the abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Assn*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (citing *Alice*, 134 S. Ct. 2355).  To constitute an inventive concept, the claim limitations "must involve more than performance of well-understood, routine, [and] conventional activities previously known to the industry." *Id.* at 1347–48 (quoting *Alice*, 134 S. Ct. at 2359).  "Whether a combination of claim limitations supplies an inventive concept that renders a claim 'significantly more' than an abstract idea to which it is directed is a question of law." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018).

 "Any allegation about inventiveness, wholly divorced from the claims or the specification," will not defeat a motion to dismiss. *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019).  Rather, a plaintiff must plead "plausible and specific factual allegations that aspects of the claims are inventive." *Id*.

Here, Plaintiffs have not alleged ***any*** facts regarding the inventiveness of the '834 patent claims.  But even setting aside the Amended Complaint and focusing solely on the '834 patent itself, the claim limitations (whether viewed individually or as an ordered combination) do not provide an inventive concept that renders the abstract idea of encryption/decryption into patent-eligible subject matter.

Each step and limitation of the claims-at-issue was "well-understood, routine, and conventional" at the time of the alleged invention.  "Communication over a network" "for device interaction" "has and continues to be a 'building block of the modern economy.'"  *ChargePoint, Inc. v. SemaConnnect, Inc.*, 920 F.3d 759, 772–73 (Fed. Cir. 2019).  *See also Fitbit, Inc v. AliphCom*, No. 15-cv-04073-EJD, 2017 WL 528491, at *8 (N.D. Cal. Feb. 9, 2017) (holding that generic recitations of communications between servers and clients did not provide inventive concept); *Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*, 76 F. Supp. 3d 513, 523 (D. Del. 2014) (transmitting data is not unconventional).  The concept of employing controls to restrict or allow access to content is similarly not inventive.  *OpenTV, Inc. v. Apple Inc.*, No. 5:15-cv-02008-EJD, 2016 WL 344845, at *5 (N.D. Cal. Jan. 28, 2016) ("The practice of controlling access to information by verifying credentials . . . is a long-standing and well-understood business practice that predates the internet."); *Prism Techs. LLC v. T-Mobile USA, Inc.*, Nos. 2016-2031, 2016-2049, 2017 WL 2705338, at *2 (Fed. Cir. June 23, 2017) (nonprecedential) (holding that patent that was directed to abstract idea of "providing restricted access to resources" lacked inventive concept where the asserted claims "merely recite[d] a host of elements that are indisputably generic computer components").  Encryption (and decryption and cryptography) in general, and without any specific technique or method, is so conventional that it "represents a basic building block of human ingenuity that has been used for hundreds of years."  *Fidelity National*, 2015 WL 1967328, at *8; *see also Personalized Media Comm'cs*, 161 F. Supp. 3d at 333 ("Cryptography has been used to protect information since ancient Mesopotamia.").

Similarly, the use of keys or decoding information for decryption (or encryption) was also well-understood, routine, and conventional well before the '834 patent. *OpenTV*, 2016 WL 344845 at *5; *Kinglite Hldgs.*, 2015 WL 6437836.

The claimed components of the '834 patent do not supply any inventive concept either. As discussed in the specification, and described above, the patented invention incorporates pre-existing, legacy streaming systems:

> Also, ***because existing streaming servers are used***, these embodiments can take advantage of the activation, authorization, and accounting mechanisms ***already provided by those servers***.

('834 patent at 2:55–58; § IV.A.3, *supra*.) Thus, the components and hardware supply no inventiveness to the patented claims that can transform the abstract idea of decrypting encrypted content into a patent-eligible invention. *See Fidelity National*, 2015 WL 1967328, at *11 ("Further, the fact that the claims involve the use of generic, well-known machines does not impart patentability under the machine-or-transformation test.") (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972) (invalidating as patent-ineligible claimed processes that "can be carried out in existing computers long in use, no new machinery being necessary")).

## 2. The Patented Claims Would Preempt Network Encryption/Decryption and Cryptography

As the Supreme Court explained in *Alice*, a focus of the Step Two inquiry is whether the claims "disproportionately t[ie] up the use of the underlying ideas," or, in other words, whether the claims preempt any application of the abstract idea. 134 S. Ct. at 2354. When a patent claims only the result or effect of an abstract idea (such as encryption and decryption), and not a specific technique or method to achieve that result or effect, then the patent preempts use of the abstract idea altogether and is invalid. *Le Roy v. Tatham*, 55 U.S. 156, 175 (1853) ("A patent is not good for an effect, or the result of a certain process" because such patents "would prohibit all other persons from making the same thing by any means whatsoever.").

Here, based on Plaintiffs' allegations, the '834 patent would tie up and preempt any technique or method for decrypting encrypted content using data streamed over a network.  (§ IV.A.2, *supra*.)  Such claims, thus, are invalid under § 101.

## V.   CONCLUSION

For the foregoing reasons, Defendant Viasat, Inc. respectfully requests that the Court find that the patented claims of U.S. Patent No. 8,504,834 are directed to patent-ineligible subject matter and are thus invalid under 35 U.S.C. § 101; and to dismiss with prejudice Count Three of Plaintiffs' Amended Complaint.


DATED: May 24, 2023                    QUINN EMANUEL URQUHART &
                                       SULLIVAN, LLP


                                       By   /s/ Jodie W. Cheng
                                       _____

                                       *Attorneys for Defendant ViaSat Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 24, 2023, a copy of the foregoing motion, was filed with the Court using the Court's ECF system, which sent notice to all counsel of record.

DATED:  May 24, 2023

By  <u>*/s/ Jodie Cheng*</u>
Jodie Cheng