L. Kieran Kieckhefer (SBN 251978)
Gibson, Dunn & Crutcher LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Telephone: 415.393.8337
Email: KKieckhefer@gibsondunn.com

Lillian J. Mao (SBN 267410)
SHEARMAN & STERLING LLP
1460 El Camino Real, 2nd Floor
Menlo Park, CA 94025
Telephone: 650.838.3600
Fax: 650.838.3699
Email: lillian.mao@shearman.com

Ahmed E. ElDessouki (*Pro Hac Vice*)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
Telephone: 212.848.4000
Fax: 646.848.4908
Email: ahmed.eldessouki@shearman.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| WESTERN DIGITAL TECHNOLOGIES, INC., WESTERN DIGITAL IRELAND LTD., SANDISK 3D IP HOLDINGS LTD., SANDISK TECHNOLOGIES LLC, and SANDISK STORAGE MALAYSIA SDN. BHD.,<br><br>Plaintiffs,<br><br>v.<br><br>VIASAT, INC.,<br><br>Defendant. | Case No. 4:22-cv-04376-HSG<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT THREE OF THE AMENDED COMPLAINT (INFRINGEMENT OF THE '834 PATENT)<br><br>Date:       August 17, 2023<br>Time:       2:00 p.m.<br>Courtroom:  2, 4th Floor, Oakland<br>Judge:      Hon. Haywood S. Gilliam, Jr. |

# TABLE OF CONTENTS

I.      Introduction ........................................................................................................... 1

II.     Background ............................................................................................................ 1

III.    Legal Standards .................................................................................................... 4

IV.     Argument ............................................................................................................... 5

        A.      Viasat Waived Its Section 101 Defense on a Rule 12(b) Motion ...................... 5

        B.      The '834 Patent Claims Are Patent Eligible .................................................. 6

                1.      *Alice* Step One: The '834 Patent Is Not Abstract ....................................... 6

                        a)      The '834 Patent Is Not Directed To The Abstract Idea Of
                                Decrypting Encrypted Content ..................................................... 6

                        b)      The Claims Recite a Specific Technique For Receiving The
                                Decryption Key ................................................................................ 9

                        c)      The Claims Are Directed To a Unique, Unconventional, And
                                Advantageous Method For Receiving Decryption Keys For
                                Media Content In A Data Stream ................................................. 12

                2.      *Alice* Step Two: The Claims At-Issue Are Inventive ............................... 13

                        a)      The Claims At-Issue Are Directed To The Inventive Concept
                                Of Using Streaming Data To Convey Decryption Keys .............. 13

                        b)      The Claims At-Issue Do Not Preempt Network
                                Encryption/Decryption, Nor Cryptography .................................. 14

        C.      Viasat's Motion Is Premature At Best Because There Are Disputed Factual

                And Expert Issues That Must Be Resolved ........................................................ 14

V.      Conclusion ............................................................................................................ 15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

Page

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018) ................................................................. 5, 14, 15

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014) ........................................................................................... 4

*Bascom Glob. Internet Servs. v. AT&T Mobility*,
  827 F.3d 1341 (Fed. Cir. 2016) ........................................................ 4, 10, 12, 13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................... 4

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018) ...................................................................... 4, 5

*CosmoKey Sols. GmbH & Co. KG v. Duo Sec. LLC*,
  15 F.4th 1091 (Fed. Cir. 2021) ..................................................................... 8, 14

*DDR Holdings, LLC v. Hotels.Com, LP*,
  773 F.3d 1245 (Fed. Cir. 2014) ......................................................................... 7

*Digit. Media Techs., Inc. v. Amazon.com, Inc.*,
  No. 4:16-cv-244-MW/CAS, 2017 WL 11700001 (N.D. Fla. Jul. 3, 2017) ....... 9, 11

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) ............................................................ 4, 7, 8, 10

*Fidelity Nat'l Info. Servs., Inc. v. DataTreasury Corp.*,
  No. CBM2014-00021, 2015 WL 1967328 (P.T.A.B. Apr. 29, 2015) ................ 9, 13

*Hild v. Bank of Am., N.A.*,
  No. EDCV 14-2126 JGB SPX, 2015 WL 1813571 (C.D. Cal. Apr. 21, 2015) ....... 5

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
  942 F.3d 1143 (Fed. Cir. 2019) ......................................................................... 4

*McRO, Inc. v. Bandai Namco Games Am., Inc.*,
  837 F.3d 1299 (Fed. Cir. 2016) ......................................................................... 4

*Northstar Fin. Advisors Inc. v. Schwab Invs.*,
  135 F. Supp. 3d 1059 (N.D. Cal. 2015) ............................................................. 6

*Ojmar US, LLC v. Sec. People, Inc.*,
  No. 16-CV-04948-HSG, 2017 WL 5495912 (N.D. Cal. Nov. 16, 2017) (J. Gilliam) .......... 1, 5

*OpenTV, Inc. v. Apple Inc.*,
   5:15-cv-02008-EJD, 2016 WL 344845 (N.D. Cal. Jan. 28, 2016) ............................................. 9

*In re Packaged Seafood Prod. Antitrust Litig.*,
   No. 15-MD-2670 JLS (MDD), 2017 WL 4271894 (S.D. Cal. Sept. 26, 2017) ........................ 6

*Peak Health Ctr. v. Dorfman*,
   No. 19-CV-04145-VKD, 2020 WL 887935 (N.D. Cal. Feb. 24, 2020) .................................... 5

*Personalized Media Commc'ns, LLC v. Amazon.com, Inc.*,
   161 F. Supp. 3d 325 (D. Del. 2015) ...................................................................................... 8

*Personalized Media Commc'ns, LLC v. Funai Elec. Co.*,
   No. 216CV00105JRGRSP, 2017 WL 957719 (E.D. Tex. Feb. 22, 2017), *report and
   recommendation adopted*, No. 216CV00105JRGRSP, 2017 WL 951860 (E.D. Tex.
   Mar. 10, 2017) ...................................................................................................................... 7

*Romo v. Wells Fargo Bank, N.A.*,
   No. 15-CV-03708-EMC, 2016 WL 3523779 (N.D. Cal. June 28, 2016) ............................... 6

*TecSec, Inc. v. Adobe Inc.*,
   978 F.3d 1278 (Fed. Cir. 2020) .................................................................................... 7, 8, 10

*Thales Visionix Inc. v. United States*,
   850 F.3d 1343 (Fed. Cir. 2017) ................................................................................... 12, 13

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017) .......................................................................................... 11

*Ultramercial, Inc. v. Hulu, LLC*,
   722 F.3d 1335 (Fed. Cir. 2013) ............................................................................................ 4

*Vanda Pharm. Inc. v. West-Ward Pharm. Int'l Ltd.*,
   887 F.3d 1117 (Fed. Cir. 2018) ............................................................................................ 4

*West View Rsch., LLC v. Bayerische Motoren Werke AG*,
   226 F. Supp. 3d 1071 (S.D. Cal. 2016) .............................................................................. 12

*Wi-LAN Inc. v. LG Elecs., Inc.*,
   382 F. Supp. 3d 1012 (S.D. Cal. 2019) ................................................................................ 2

**Statutes**

35 U.S.C. § 282 ............................................................................................................................ 4

**Other Authorities**

Fed. R. Civ. P. 12 ................................................................................................................. 1, 5

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

**I.     INTRODUCTION**

After resolution of its first motion to dismiss, which only raised standing issues and did not raise Section 101 of the patent statute, Viasat Inc. ("Viasat") now brings a second motion to dismiss that raises arguments under Section 101 for the first time ever.  However, the Federal Rules of Civil Procedure require Viasat to raise all defenses that were available to it in its first motion to dismiss.  Fed. R. Civ. P. 12(g)(2); *see e.g.*, *Ojmar US, LLC v. Sec. People, Inc.*, No. 16-CV-04948-HSG, 2017 WL 5495912, at *4 (N.D. Cal. Nov. 16, 2017) (J. Gilliam).  As a result of having failed to do so, Viasat waived this defense and is barred from raising Section 101 at this stage of the litigation.  The Court should summarily deny Viasat's motion on this basis alone.

In any event, Viasat's motion under Section 101 fails as a matter of law.  First, as explained in the specification of the patent-at-issue, and as confirmed by the prosecution history, the patent is directed to a technological improvement in the delivery of decryption keys.  But Viasat completely ignores the specification's teachings and mischaracterizes the patent as being allegedly directed to the abstract idea of decrypting encrypted content.  While decrypting content is an aspect of the invention, the patent specification and prosecution history explain that the focus of the invention is on the delivery system, and that the claimed invention provides specific improvements in computing environments that have network and bandwidth limitations—just like Viasat's infringing systems, which provide streaming media on planes in-flight.

Viasat's motion is also premature because it requires this Court to address a number of fact and expert issues on a Rule 12(b)(6) motion.  The Court should summarily deny Viasat's motion as premature, or alternatively, resolve the fact and expert issues in Plaintiffs' favor, which will reveal that the claims at-issue are directed to patent eligible subject matter.

**II.     BACKGROUND**

U.S. Patent No. 8,504,834 (Dkt. 1-3 (the "'834 patent")) is directed to a "method for activation of local content." The patent explains that:

> In one embodiment, a storage device stores encrypted content. . . .
> To consume the content, ***a host device using the storage device***

---

> *receives a stream of data from a network*. The host device then *derives a key from the received stream of data* and decrypts the encrypted content using the key derived from the received stream of data.

'834 patent, 1:52-59 (emphasis added).  During prosecution, the applicant explained that one unique aspect of the claimed invention in view of the art of record was that "the stream contains information that can be used to derive the key," and which "is used to decrypt some other encrypted content."  Declaration of Lillian J. Mao in Support of Plaintiffs' Opposition to Motion to Dismiss First Amended Complaint ("Mao Decl."), Ex. A ("File Wrapper"), 4/10/2013 Resp. to Office Action at 3.[1]  Thus, the **method of delivering the key** to allow for the decryption of encrypted content, rather than the method of encrypting or decrypting data, was a key distinguishing feature of the invention.   After receiving this explanation, the patent examiner allowed the patent application, and the '834 patent issued.

Similarly, the patent specification shows that the patented approach was unconventional. The background section of the patent explains that, at the time of the invention, there were two systems that allowed a mobile device to playback encrypted media content, such as songs, movies, games, and apps. '834 patent, 1:5-43.  The first system was a digital rights management ("DRM") server, which the mobile device could access to obtain a decryption key that allows the mobile device to decrypt locally stored content. *Id*., 1:13-22.  However, as the patent explains, the use of a DRM server "can be complicated," as DRM servers require the exchange of a "specific dialog between the DRM server and the individual device." *Id.*  The second system was a streaming server, which the mobile device could use to stream media content from a streaming service, instead of accessing locally stored media content. *Id*., 1:29-43.  However, at the time of the invention, mobile devices generally had limited network bandwidth and continuous access (a problem which still exists to date with in-flight entertainment and connectivity ("IFEC") systems, like the Viasat products accused of infringement in this litigation).  As such, as the patent explains, "streamed

---

[1] The Court may consider the prosecution history of the '834 patent on a motion to dismiss.  *See, e.g.*, *Wi-LAN Inc. v. LG Elecs., Inc.*, 382 F. Supp. 3d 1012, 1027-28 (S.D. Cal. 2019) (collecting cases).  Plaintiffs request that the Court take judicial notice of the prosecution history.

content may be of lower quality than pre-loaded or downloaded content." *Id*., 1:42-43.

The invention provides a solution that avoids "network and bandwidth limitations," and allows for "a higher-quality version of the content to be enjoyed." *Id*. 2:53-55.  The inventors proposed that the host device would contact a media streaming server to obtain "a stream of data" from which the host device could derive a key associated with the encrypted media content.  *Id*., 2:32-38.  Thus, instead of obtaining the key from a DRM server, the invention allows the mobile device to avoid the complexities associated with contacting a DRM server for an encryption key by obtaining the encryption key from the streaming server as "a stream of data."  The patent explains the advantages:

> The host device uses the derived key to decrypt the encrypted content, so that the content can be rendered from the storage device instead of streamed from the server. ***This provides a "best of both worlds" solution that offers the advantages of streaming services*** (e.g., avoiding complex communications and expensive DRM licensing fees, while providing control over individual pieces of content) ***without the associated network and bandwidth limitations***; thus, ***allowing a higher-quality version of the content to be enjoyed***. Also, because existing streaming servers are used, these embodiments can take advantage of the activation, authorization, and accounting mechanisms already provided by those servers.

*Id.,* 2:46-58 (emphasis added).  Moreover, although the '834 patent suggests the use of "existing streaming servers," the patent teaches and claims using a media streaming server in an unconventional way – namely, to stream data from which a key could be derived, as opposed to streaming media content as media streaming servers are designed to do.

Plaintiffs allege that Viasat's IFEC systems infringe at least independent claim 14 and dependent claims 15, 17, and 20 of the '834 patent.  Claim 14 of the '834 patent recites:

> A method for activation of local content, the method comprising:
> performing the following in a host device in communication with a storage device storing encrypted content:
> receiving a ***stream of data*** from a network;
> ***deriving a key from the received stream of data***; and
> decrypting the encrypted content ***using the key derived from the received stream of data***.

(emphasis added).  As can be seen from the claim language, claim 14 is directed to a "method for activation of local content" in a manner that benefits from the "'best of both worlds' solution that offers the advantages of streaming services . . . without the associated network and bandwidth

---

limitations; thus, allowing a higher-quality version of the content to be enjoyed." *Id*.

## III.   LEGAL STANDARDS

When reviewing a Rule 12(b)(6) motion to dismiss, the Court must accept the complaint's factual allegations as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, the Court concludes that those allegations "could not raise a claim of entitlement to relief." *Id.* at 558.

A patent shall be presumed valid absent clear and convincing evidence to the contrary. *See* 35 U.S.C. § 282(a); *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1338 (Fed. Cir. 2013). "The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." 35 U.S.C. § 282(a). The Section 101 inquiry involves "a two-step analytical framework to identify patents that, in essence, claim nothing more than abstract ideas." *Bascom Glob. Internet Servs. v. AT&T Mobility*, 827 F.3d 1341, 1347 (Fed. Cir. 2016). In Step One, the Court determines whether claims are directed to an abstract idea; if they are not, the claims are patent eligible. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014). In Step One, the Court must determine what the claims are "directed to" while being "careful to avoid oversimplifying the claims" and not "merely identify[ing] a patent-ineligible concept underlying the claim." *McRO, Inc. v. Bandai Namco Games Am., Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016); *Vanda Pharm. Inc. v. West-Ward Pharm. Int'l Ltd.*, 887 F.3d 1117, 1134 (Fed. Cir. 2018). This requires reading the claims "in light of the specification," not in isolation. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). Only if the Court determines that the claims are directed to an abstract idea does the analysis proceed to Step Two, which asks whether the claims include an inventive concept that transforms the abstract idea into a "patent-eligible application." *Id.* at 1334.

Patent claims directed to "non-abstract improvements to existing technological processes and computer technology" are patent eligible. *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1149-50 (Fed. Cir. 2019); *McRO*, 837 F.3d at 1313-14. "[W]hether a claim recites patent eligible subject matter is a question of law which may contain underlying facts." *Berkheimer*

---

*v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).  For example, at *Alice* Step Two, "whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact" that "must be proven by clear and convincing evidence." *Id.*  A patent may be determined ineligible at the Rule 12(b)(6) stage only "when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law."  *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

## IV.    ARGUMENT

### A.    Viasat Waived Its Section 101 Defense on a Rule 12(b) Motion

Viasat raises a new defense in the instant motion that it failed to raise in its first motion to dismiss (Dtk. 27), rendering it waived at this stage of the case.  The new defense must be dismissed pursuant to Rule 12(g)(2) because "a party that makes a motion under [Rule 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."  Fed. R. Civ. P. 12(g)(2).[2]  In its first motion to dismiss, Viasat did not to challenge Count Three of the Complaint alleging infringement of the '834 patent.  Importantly, the very same arguments that Viasat makes in this motion to dismiss were fully available to it at the time of its first motion to dismiss,[3] but Viasat failed to raise them.  Viasat is now barred from bringing a Rule 12(b)(6) motion raising a Section 101 argument as to Count Three.  *See e.g., Ojmar,* 2017 WL 5495912, at *4 (denying motion to dismiss on grounds that defendant failed to raise in its original motion to dismiss); *Peak Health Ctr. v. Dorfman*, No. 19-CV-04145-VKD, 2020 WL 887935, at *5 (N.D. Cal. Feb. 24, 2020) (same); *Hild v. Bank of Am., N.A.*, No. EDCV 14-2126 JGB SPX, 2015 WL 1813571, at *3 (C.D. Cal. Apr. 21, 2015) (prohibiting the defendant "from taking a second bite at the apple after neglecting to set forth arguments that were

---

[2] The exceptions do not allow Viasat to raise new defenses in a subsequent Rule 12(b)(6) motion, as it has done here.

[3]  The First Amended Complaint ("FAC") did not make any changes to Count Three that are even relevant—and certainly not material—to the Section 101 defense that was improperly and belatedly brought in the instant motion.  Plaintiffs only amended the FAC to more specifically identify the ownership of the asserted patents.

fully available to it when moving to dismiss the FAC"); *see also In re Packaged Seafood Prod. Antitrust Litig.*, No. 15-MD-2670 JLS (MDD), 2017 WL 4271894, at *4–5 (S.D. Cal. Sept. 26, 2017); *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 135 F. Supp. 3d 1059, 1070–72 (N.D. Cal. 2015); *Romo v. Wells Fargo Bank, N.A.,* No. 15-CV-03708-EMC, 2016 WL 3523779, at *2 (N.D. Cal. June 28, 2016).

The Court should summarily deny Viasat's motion regarding Count Three on this basis alone.  In any event, if the Court chooses to consider Viasat's motion, the motion must be dismissed for the reasons set forth below.

**B.      The '834 Patent Claims Are Patent Eligible**

Viasat's motion fails to address technological improvements of the '834 patent, which are explained in the patent specification itself, and which the patent examiner confirmed.  Instead, Viasat misleadingly characterizes the '834 patent as an encryption/decryption patent and ignores the language of the specification explaining the technological improvement.  The '834 patent recognized deficiencies with the system for delivering decryption keys for media content, particularly applicable to computing environments that have "network and bandwidth limitations." The invention is directed to an elegant and simple system to resolve these limitations, whilst taking advantage of existing network infrastructure.  As such, the '834 patent is directed to patent eligible subject-matter.

**1.      *Alice* Step One: The '834 Patent Is Not Abstract**

**a)      The '834 Patent Is Not Directed To The Abstract Idea Of Decrypting Encrypted Content**

As the '834 patent explains, the patent is directed to a ***technological improvement*** in the playback of encrypted media content stored on a storage device in communication with a host device, and, in particular, the system for delivery of the decryption key and related methods.  ***Viasat fails to address the technological improvements of the '834 patent***, which are explained in the patent specification itself, and which the pater examiner confirmed.  Instead, Viasat misleadingly characterizes the '834 patent as an encryption/decryption patent.  *See* Mot. At 6-7.  Viasat's

characterization ignores the core inventive concept of the patent, is at odds with the patent specification, and must be rejected.[4]

As explained above (*supra*, Section II), the host device of claim 14 receives "a stream of data from a network" from which it derives a key. '834 patent, 11:41-42. The host device decrypts the encrypted content—which is stored on a storage device in communication with the host device—using the received stream of data. *Id.*, 12:1-2. The '834 patent explains that doing so provides "a 'best of both worlds' solution that offers the advantages of streaming services (e.g., avoiding complex communications and expensive DRM licensing fees, while providing control over individual pieces of content) without the associated network and bandwidth limitations; thus, allowing a higher-quality version of the content to be enjoyed." *Id.*, 2:46-58. The claims of the '834 patent are therefore directed to a non-abstract and specific improvement in computer capabilities, like in *Enfish*. *See Enfish*, 822 F.3d at 1335. In addition, the claimed invention addresses problems unique to providing access to electronic media—the respective disadvantages of DRM servers and streaming systems—and thus provides a "solution … necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *DDR Holdings, LLC v. Hotels.Com, LP*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). Courts have found claims similar to those found in the '834 patent that improved the distribution of media content to be patent eligible. *See e.g.*, *TecSec, Inc. v. Adobe Inc*., 978 F.3d 1278, 1297 (Fed. Cir. 2020) (affirming the district court's denial of a motion for summary judgment on the basis of ineligibility and holding that the claims directed to "multi-level multimedia security in a data network" were not directed to an abstract idea, but rather to "improving a basic function of a computer data-distribution network, namely, network security," and providing "an efficient way for the sender to permit different parts of the audience to see different parts of the file."); *Personalized Media Commc'ns, LLC v. Funai Elec. Co*., No. 216CV00105JRGRSP, 2017 WL 957719, at *1 (E.D. Tex. Feb. 22, 2017), *report and recommendation adopted*, No.

---

[4] As explained further below, *infra*, Section IV.C, Viasat's motion is premature for a Rule 12(b)(6) motion because it raises a number of factual and expert issues, like the issues introduced in this paragraph. However, to the extent that this Court finds it appropriate to rule on the motion at this stage, any fact issue must be resolved in favor of Plaintiffs.

216CV00105JRGRSP, 2017 WL 951860 (E.D. Tex. Mar. 10, 2017) (denying motion to dismiss on the basis that the asserted claims are patent ineligible where claims were "directed to overcoming problems specific to the distribution of streaming digital television programming and other digital content over computer networks.").

Viasat's characterization of the '834 patent as being directed to "encryption/decryption" is misleading and should be rejected. *See* Mot. At 6-7.  While the claimed method includes a step of "decrypting the encrypted content," the method is actually directed to the process of obtaining a key associated with the encrypted content in an unconventional method, namely by "receiving a stream of data from a network," from which the host device "deriv[es] a key."  Viasat ignored elements of the claim, including the key elements cited in prosecution to distinguish over the prior art of record.  File Wrapper, 4/10/2013 Resp. to Office Action at 3.  For example, Viasat's interpretation of the '834 patent entirely reads out the phrase "stream of data," which has a specific meaning in the context of computer networking, and ignores that the invention of the '834 patent uses streaming in an unconventional manner.  To disregard those express claim elements is to proceed at "a high level of abstraction" that is "untethered from the claim language," that "overgeneraliz[es] the claim," and is improper. *Enfish*, 822 F.3d at 1337; *TecSec*, 978 F.3d at 1294 (rejecting defendant's characterization of the claims as being directed to the idea of "managing access to objects using multiple levels of encryption.").

Moreover, the cases upon which Viasat relies to support its position that the '834 patent is directed to an abstract idea—and specifically the abstract idea of "decrypting encrypted content"—are readily distinguishable.[5]  Mot. at 1, 6-10.  First, Viasat relies on *Personalized Media Commc'ns, LLC v. Amazon.com, Inc.*, 161 F. Supp. 3d 325, 333 (D. Del. 2015).  Mot. at 7-8.  But the *Personalized Media* patent was directed to receiving an encrypted signal, passing it through a decryptor, and then decrypting the signal; *i.e.*, an entirely conventional and non-specific use of

---

[5] In any event, the Federal Circuit has cautioned that "[w]hile prior cases can be helpful in analyzing eligibility, whether particular claim limitations are abstract or, as an ordered combination, involve an inventive concept that transforms the claim into patent eligible subject matter, must be decided on a case-by-case basis in light of the particular claim limitations, patent specification, and invention at issue." *CosmoKey Sols. GmbH & Co. KG v. Duo Sec. LLC*, 15 F.4th 1091, 1099 (Fed. Cir. 2021). The record here shows Plaintiffs' patent is non-abstract and inventive.

encryption.  On the other hand, the '834 patent is directed to the receiving "a stream of data from a network" from which it derives a key, which, as the patent specification explained and the patent examiner confirmed, was unconventional.  File Wrapper, 4/10/2013 Resp. to Office Action at 3.  *See e.g.*, '834 patent at 4:27-65 (explaining streaming systems), 5:10-20 (explaining advantages of using the streaming server in an unconventional manner).[6]  Second, Viasat relies on the non-precedential PTAB decision in *Fidelity Nat'l Info. Servs., Inc. v. DataTreasury Corp.*, No. CBM2014-00021, 2015 WL 1967328, at **3, 10 (P.T.A.B. Apr. 29, 2015) ("*Fidelity National*").  There, the PTAB found that the *DataTreasury* claims were directed to transmission of data which happened to be encrypted.  *Id.* at *9.  On the other hand, the '834 patent is directed to a more computationally efficient process for delivering encryption keys; *i.e.*, within a "stream of data."  Third, Viasat relies on *OpenTV, Inc. v. Apple Inc.*, 5:15-cv-02008-EJD, 2016 WL 344845, at *1 (N.D. Cal. Jan. 28, 2016).  The *OpenTV* patent at issue was directed to a system where TV services would be enabled in response to receiving valid login credentials; in other words, nothing more than a conventional system for controlling access to information using credentials.  Finally, Viasat relies on *Digit. Media Techs., Inc. v. Amazon.com, Inc.*, No. 4:16-cv-244-MW/CAS, 2017 WL 11700001 (N.D. Fla. Jul. 3, 2017), which, like *Fidelity National*, was merely directed to conventional methods for delivering content secured with licenses and encryption.

As such, the '834 patent is distinct from any of the cases that Viasat cites and is not directed to an abstract idea (and certainly not the alleged abstract idea of decrypting encrypted content).  Rather, the patent is directed to a patent-eligible technological improvement related to delivery of decryption keys and related methods in a specific unconventional way.

### b)    The Claims Recite a Specific Technique For Receiving The Decryption Key

Viasat argues that the claims of the '834 patent use result-based functional language and fail to disclose a specific technique or method.  Mot. at 11-13.  Not so.  Viasat's argument is based on an abstraction of the claims and ignores that the claims of the '834 patent recite a specific method

---

[6] Should Viasat wish to argue that the '834 patent uses streaming in a conventional manner, such issue is clearly premature at this early stage of the litigation.

of receiving content decryption keys; *i.e.*, in "a stream of data from a network." Moreover, Viasat incorrectly focuses on "encryption/decryption" issues which are not the focus of the asserted claims. Finally, Viasat argues that Plaintiffs infringement allegations and contentions lack certain details about Viasat's own systems, but ignores that these allegations and contentions were served before Plaintiffs received any technical discovery from Viasat in this litigation.

Viasat improperly characterizes "the claims 'at a high level of abstraction' that is 'untethered from the language of the claims all but ensur[ing] that the exceptions to § 101 swallow the rule.'" *TecSec*, 978 F.3d at 1293 (quoting *Enfish*, 822 F.3d at 1337). To support its argument that the claims fail to disclose a specific technique or method, Viasat implicitly takes a premature claim construction position[7] that the claims are directed broadly directed to "a generic method in which a recipient is (1) in communication with the source of encrypted content, (2) receives information, (3) derives a key from the information received, and (4) uses the key to decrypt the encrypted content." Mot. at 6. Viasat's characterization of the claim is incorrect. First, Viasat reads out the limitations, including those related to the "stream of data." But, as the examiner recognized, the "stream of data" is a key aspect of the invention. File Wrapper, 4/10/2013 Resp. to Office Action at 3. Second, Viasat ignores that the specification explains that delivering the decryption keys in "a stream of data from a network" is unique, unconventional, and technically advantageous, and particularly so in the context of a device operating in an environment with "network and bandwidth limitations," like the Viasat accused products. *See*, *supra*, Section II. Third, Viasat also ignores the specific teachings of the specification, which include an explanation of specific claimed mechanisms for delivery of the decryption key using a streaming system. *See*, *e.g.*, '834 patent at 4:28-65, 5:10-8:25.

Viasat again incorrectly characterizes the '834 patent as a patent on "encryption, decryption, [or] cryptography," and then argues that the '834 patent is invalid because it fails to

---

[7] As further explained below, *infra*, Section IV.C, this motion is premature because it relies on a premature claim construction position and ignores plain text of the patent specification. However, to the extent that this Court finds it appropriate to rule on the motion at this stage, it must adopt Plaintiffs' constructions. *Bascom*, 827 F.3d at 1352 (applying construction in favor of the patentee plaintiff on a Rule 12(b)(6) motion "as they must be in this procedural posture").

claim a specific encryption method.  Mot. at 11-12.  As explained above, the '834 patent is patent directed to solving the problem of delivering a key associated with encrypted media content.  That the claims do not specify "how the content is to be encrypted, how the key is derived, or how the encrypted content is subsequently decrypted using the (unspecified) key," Mot. at 12, is beside the point because the '834 patent is directed to a specific method for delivery of the decryption key and claims a specific method for receiving the key and decrypting the media content using the key.[8]

Viasat argues that "Plaintiffs' infringement allegations confirm the abstract and generic scope of its claims."  Mot. at 13.  However, Plaintiffs' allegations in the First Amended Complaint, as well as in the Infringement Contentions, were not developed with the benefit of any discovery from Viasat.  Rather, the allegations and contentions are based entirely on public-record information about how Viasat's system works.  The standard for sufficiency of infringement contentions—to put Viasat on notice of Plaintiffs' infringement theories—is a completely separate inquiry from abstractness under Section 101.  Moreover, the First Amended Complaint explains that the infringement allegations are related to Viasat's streaming services, and the infringement contentions provide additional information into the specific streaming services at-issue in the litigation, showing that Viasat implements precisely the novel and non-abstract key delivery mechanism claimed in the '834 patent.  FAC, ¶¶ 56-57.

Again, Viasat's argument fails.  The '834 patent and the claims at-issue are directed to a specific method of receiving content decryption keys – *i.e.*, in "a stream of data from a network –

---

[8] Viasat relies on *Digit. Media Techs., Inc.,* No. 4:16-cv-244-MW/CAS, 2017 WL 11700001, at *6 and *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC,* 874 F.3d 1329, 1337–38 (Fed. Cir. 2017) to argue that the '834 patent "merely recites functional language" for allegedly failing to specify "how the content is to be encrypted, how the key is derived, or how the encrypted content is subsequently decrypted using the (unspecified) key."  Mot. 12.  As explained above, and unlike the claims at-issue in *Digit. Media Techs.* and *Two-Way Media*, the focus of the '834 patent is not on the method of encryption, but rather the method of delivering the decryption key, which it does in a unique, unconventional, and advantageous way.

---

1    and not directed to an abstract idea.

2             c)    **The Claims Are Directed To a Unique, Unconventional, And**
              **Advantageous Method For Receiving Decryption Keys For Media**
3             **Content In A Data Stream**

4            Viasat argues that "claims are directed to decryption of encrypted content and provide no

5    advance over the prior art, nor does Plaintiffs' Amended Complaint allege any purported

6    advancement or improvement."  Mot. at 13.  Not so.  As explained above (supra, Sections II and

7    IV.B.1.a), the specification explains[9] that delivering the decryption keys in "a stream of data from

8    a network," as claimed in asserted claim 14, is unique, unconventional, and technically

9    advantageous, as recognized by the patent examiner during prosecution.  File Wrapper, 4/10/2013

10   Resp. to Office Action at 3.  While the '834 patent uses existing legacy environments, it does so in

11   a unique manner and provides a solution that avoids "network and bandwidth limitations," and

12   allows for "a higher-quality version of the content to be enjoyed." '834 patent, 2:53-55; see supra,

13   Section II.  The use of known computer components in an unconventional manner, as in the '834

14   patent, renders the claims non-abstract.  See e.g., *Thales Visionix Inc. v. United States*, 850 F.3d

15   1343, 1348–49 (Fed. Cir. 2017) (finding that claims "directed to systems and methods that use

16   inertial sensors in a non-conventional manner to reduce errors" are not abstract); Bascom, 827 F.3d

17   at 1350 ("The inventive concept inquiry requires more than recognizing that each claim element,

18   by itself, was known in the art. As is the case here, an inventive concept can be found in the non-

19   conventional and non-generic arrangement of known, conventional pieces.").

20           Moreover, it would be premature for the Court to reach a conclusion that the '834 patent is

21   not directed to an "advance" over the prior art on a Rule 12(b)(6) motion on the pleadings.[10]  When

22   the '834 patent specification is read in Plaintiffs' favor, as it must be, *Bascom*, 827 F.3d at 1352,

23   the explanation of the "advance" over the prior art set forth in the specification establishes that the

24

25   [9] Viasat's reliance on *West View Rsch., LLC v. Bayerische Motoren Werke AG*, 226 F. Supp. 3d
     1071, 1078 (S.D. Cal. 2016), is misplaced.  Mot. at 14.  Unlike the patent at-issue in *West View*,
26   the specification of the '834 explains the advantages associated with the invention (which Viasat's
     motion wholly ignores).
27

28   [10] *See*, *infra*, Section IV.C.

1   patent is subject-matter eligible.

2       Again, Viasat's argument fails.  The '834 patent and the claims at-issue are directed to a

3   technological improvement and an advance over the prior art, and are not directed to an abstract

4   idea.

5   **2.   *Alice* Step Two: The Claims At-Issue Are Inventive**

**a)     The Claims At-Issue Are Directed To The Inventive Concept**
6   **Of Using Streaming Data To Convey Decryption Keys**

7       Viasat's arguments that the '834 patent lacks an inventive concept contradicts the patent

8   specification and the patent examiner.  Rather, the inventive concept of claim 14, as confirmed by

9   the specification, is the use of streaming data in an unconventional, advantageous way, to convey

10  decryption keys.  *See supra*, Section II.  The patent examiner agreed with the applicant that this

11  concept is inventive by allowing the application after the applicant explained that the "the stream

12  contains information that can be used to derive the key," and which "is used to decrypt some other

13  encrypted content."  File Wrapper, 4/10/2013 Resp. to Office Action at 3.

14      Viasat argues that "the '834 patent itself, the claim limitations (whether viewed individually

15  or as an ordered combination) do not provide an inventive concept that renders the abstract idea of

16  encryption/decryption into patent-eligible subject matter."  Mot. at 15.  Viasat then argues that

17  communication over a network, employing controls to restrict or allow content, and encryption are

18  all non-inventive, *id*. at 15-16, but fails to address the key inventive concept of delivering

19  decryption keys within a stream of data.  Instead, Viasat **contradicts the patent specification and**

20  **the patent examiner** by arguing that the using of "existing streaming servers" would not supply

21  inventiveness to the claims, even though the patent claims use streaming in a unique,

22  unconventional, and advantageous manner.[11]   Using known components in such a manner is

23  sufficient to render the claims non-abstract. *See Thales Visionix*, 850 F.3d at 1348–49; *Bascom*,

24  827 F.3d at 1350.  Moreover, Viasat's reliance on *Fidelity Nat'l*, 2015 WL 1967328, at *11, in

25  support of its argument, Mot. at 16, is misplaced.  The claims at issue in *Fidelity National* merely

26  ───────────────────
[11] As further explained below, *infra*, Section IV.C, this motion is premature because Viasat
27  contradicts the patent specification and the patent examiner.  However, to the extent that this Court
    finds it appropriate to rule on the motion at this stage, any fact issue must be resolved in favor of
28  Plaintiffs.

1    recited the use of known components in a well-known and conventional manner. The patent

2    specification and prosecution history preclude such a finding here.

3        Moreover, while Viasat attempts to fault the '834 patent's claims as being "simple[]," Mot.

4    at 8, providing greater simplicity, rather than complexity, can render claims non-abstract. *See*

5    *CosmoKey*, 15 F.4th at 1099 ("[T]he claims recite an inventive concept by requiring a specific set

6    of ordered steps that . . . improve upon the prior art by providing a ***simple method*** that yields higher

7    security." (emphasis added)). In *CosmoKey*, the Federal Circuit skipped directly to Step Two and

8    found that the claimed "simple method," which "departs from earlier approaches to solve a specific

9    computer problem," contained an inventive concept. *Id*. at 1097-1098. The '834 patent similarly

10    departed from earlier approaches of providing decryption keys and claims the more efficient

11    approach of "receiving a stream of data from a network" and "deriving a key from the received

12    stream of data."

13        Accordingly, Viasat's argument fails again. The '834 patent and the claims at-issue are

14    directed to the inventive concept of using streaming data in an unconventional, advantageous way,

15    to convey decryption keys.

16
17              **b)**      **The Claims At-Issue Do Not Preempt Network**
                       **Encryption/Decryption, Nor Cryptography**

18        As discussed above, the '834 patent is directed to a method for conveying a decryption key

19    associated with encrypted media content using a data stream. There are countless other ways to

20    convey a decryption key for encrypted media content, and to playback media content, without

21    infringing the patent, for example, using the systems and methods described in the background of

22    the patent. '834 patent at 1:6-43.

23
24    **C.**      **Viasat's Motion Is Premature At Best Because There Are Disputed Factual**
             **And Expert Issues That Must Be Resolved**

25        As illustrated above (*supra*, n. 4, 6, 7, 10, 11), Viasat's motion to dismiss raises a multitude

26    of fact and expert issues that are premature for a Rule 12(b)(6) motion. *See Aatrix*, 882 F.3d at

27    1125 ("[P]atent eligibility can be determined at the Rule 12(b)(6) stage . . . only when there are no

28    factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law.").

Moreover, when resolved in Plaintiffs' favor, as they must be on a Rule 12(b)(6) motion, these issues establish that the claims are patent eligible and Viasat's motion must be dismissed. *Aatrix*, 882 F.3d at 1125.

Viasat's motion both contradicts the patent specification and patent examiner regarding the inventiveness of the claims as-issue and ignores that the patent is directed to the use of streaming technologies in an unconventional manner.  Viasat also mischaracterizes the invention as directed to encryption/decryption, when it is directed to the process of obtaining a key associated with the encrypted content in an unconventional method, namely by "receiving a stream of data from a network," from which the host device "deriv[es] a key."  The Court requires a complete factual record to adequately address such issues.  Moreover, Viasat's motion requires implicit claim construction positions that are unsupported by the patent specification and prosecution history.  For example, Viasat takes the implicit claim construction position that "receiving a stream of data from a network" means "receives information." Mot. at 6. For the Court to resolve such claim construction positions, the Court must be provided a full record, which may include fact and expert evidence.

Accordingly, the Court should summarily deny Viasat's motion as premature, or alternatively, resolve the fact and expert issues in Plaintiffs' favor.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Viasat's motion be denied.


DATED:  June 21, 2023                                GIBSON, DUNN & CRUTCHER LLP


                                                     By:    */s/  L. Kieran Kieckhefer*
                                                            L. Kieran Kieckhefer

                                                     Attorneys for Plaintiffs