QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Steven Cherny (*pro hac forthcoming*)
  stevencherny@quinnemanuel.com
  Patrick Curran (Bar No. 241630)
  patrickcurran@quinnemanuel.com
111 Huntington Ave, Suite 520
Boston, MA 02199
Telephone:   (617) 712-7100
Facsimile:    (617) 712-7200

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Jodie Cheng (Bar No. 292330)
  jodiecheng@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone:   (415) 875-6600
Facsimile:    (415) 875-6700

*Attorneys for Defendant Viasat, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| WESTERN DIGITAL TECHNOLOGIES, INC., WESTERN DIGITAL IRELAND LTD., SANDISK 3D IP HOLDINGS LTD., SANDISK TECHNOLOGIES LLC, SANDISK STORAGE MALAYSIA SDN. BHD.,<br><br>Plaintiff,<br><br>v.<br><br>VIASAT, INC.,<br><br>Defendant. | Case No.: 4:22-cv-4376-HSG<br><br>**DEFENDANT VIASAT, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNT THREE (INFRINGEMENT OF THE '834 PATENT)**<br><br>**Hearing**<br>Date:  August 17, 2023<br>Time:  2:00 p.m.<br>Judge:  Hon. Haywood S. Gilliam, Jr.<br>Courtroom:  2, 4th Fl.<br>     1301 Clay Street<br>     Oakland, CA 94612 |

## I.   INTRODUCTION

Instead of rebutting Viasat's showing that the '834 patent is ineligible under § 101, Plaintiffs lead with the baseless procedural assertion that Viasat's Motion is barred because it had previously brought a Rule 12 motion.  This argument is specious and the fact Plaintiffs chose it as their lead argument speaks volumes as to the weakness of Plaintiffs' case on the merits.  Viasat's prior Rule 12 motion led to the complete dismissal of all claims in the case for lack of subject matter jurisdiction. Plaintiffs then chose to file the current action.  Thus, Viasat's present Motion[1] and concurrent motion under Rule 12(b)(1) are the first Rule 12 motions since the Plaintiffs resuscitated their dismissed action.  None of the cases or authorities cited by Plaintiffs bar the Motion under these circumstances.  Simply put, Plaintiffs don't get to use up Viasat's Rule 12 motions by willfully refusing to plead facts supporting standing and thereby forcing Viasat to (successfully) move to dismiss.

Plaintiffs' second procedural argument, i.e., that Viasat's Motion is premature and cannot be decided at this stage, is also unfounded.  As discussed in detail below, even accepting as true all of Plaintiffs' factual allegations, the claims of the '834 patent are still invalid under 35 U.S.C. § 101.  Indeed, Plaintiffs' Opposition[2] provides further support establishing that the patented claims are directed to no more than an ineligible abstract idea.

Perhaps recognizing the dearth of facts supporting eligibility, Plaintiffs repeat conclusory generalities that the patented claims allegedly are "unique," "unconventional" and provide "technological improvements" instead of evidence showing that the claimed inventions are not mere abstractions.  But self-serving conclusions regarding the allegedly unique nature of claims do not save them.  The Federal Circuit instructs that such conclusions should be disregarded when deciding

---

[1]   Defendant Viasat, Inc.'s Motion To Dismiss Count Three (Infringement Of The '834 Patent) (Dkt. 40), hereinafter the "Motion" or "Mot.".
[2]   Plaintiffs' Opposition To Defendant's Motion To Dismiss Count Three Of the Amended Complaint (Infringement Of The '834 Patent) (Dkt. 53), hereinafter the "Opposition" or "Opp.".

§ 101 issues brought in a Rule 12(b)(6) Motion.   Otherwise, litigants could unnecessarily prolong litigation over ineligible patents by repeating conclusory generalities asserting patent claims are unique or unconventional.  The claims may be unique yet still be impermissibly abstract; and this is an appropriate time to assess that issue.

Accordingly, there are no factual disputes that prevent resolution of the patent (in)eligibility of asserted '834 patent at this stage of litigation; and, in fact, the promotion of judicial economy supports granting the Motion now rather than expend further resources litigating a patent that is ineligible on its face.

## II.   ARGUMENT

### A.   Viasat's Motion to Dismiss for Lack of Patent Eligible Subject Matter is Timely and Not Waived

Avoiding substance, Plaintiffs lead with the mistaken assertion that Viasat's Motion is waived because it had previously brought a motion under Rule 12(b)(1)—which resulted in the Court's dismissal of all claims.   Opp. at 5–6; Dkt. 36. Plaintiffs' argument lacks any merit and, rather, relies on Plaintiffs' failure to recognize that this Motion and the co-pending Rule 12(b)(1) motion (Dkt. 45) are the first Rule 12 motions that have been brought by Viasat in Plaintiffs' present action.   That is, when the Court decided Viasat's earlier motion, finding that "Plaintiffs have failed to sufficiently plead standing" and, "[a]s a result, the Court lacks subject matter jurisdiction over their claims," the entirety of Plaintiffs' claims and thus their case was effectively dismissed.  Dkt. 36 at 6.  That the Court granted Plaintiffs leave to attempt "to cure the pleading deficiencies" by filing an amended complaint does not mean that any portion of Plaintiffs' case survived; instead, Plaintiffs' case was dismissed in effect without prejudice. *See id*.

Neither Rule 12(g)(2) nor any authority limits a party from again moving to dismiss baseless claims that were properly dismissed without prejudice yet re-filed by a plaintiff intent on litigation.  Indeed, Plaintiffs did not (and could not) cite a

single case in which a subsequent motion under Rule 12 was barred or waived following a complete dismissal of the earlier claims and case.

For example, Plaintiffs rely on this Court's decision in *Omjar US, LLC v. Sec. People, Inc.*, No. 16-CV-04948-HSG, 2017 WL 5495912 (N.D. Cal. Nov. 16, 2017). Opp. at 1, 5. However, in *Omjar*, the earlier Rule 12 motion was granted in part and denied in part—meaning that some portion of the case survived the earlier motion; and, as a result, the plaintiff could not raise additional Rule 12 motions in the same case. *Omjar US*, 2017 WL 5495912, at *1 ("On August 2, 2017, the Court granted in part and denied in part Defendants' motion to dismiss the FAC."). Similarly, each of the other cases cited by Plaintiffs address circumstances where the earlier Rule 12 motion did not lead to total dismissal of all claims in the case. *E.g.*, *Hild v. Bank of Am., N.A.*, No. EDCV 14-2126-JGB-SPX, 2015 WL 1813571, at *1 ("The Court also granted in part Nationstar's motion to dismiss the FAC, dismissing certain claims with leave to amend while declining to dismiss others."); *Romo v. Wells Fargo Bank, N.A.*, No. 15-CV-03708-EMC, 2016 WL 3523779, at *1 ("Previously, the Court granted in part and denied in part Defendant Wells Fargo Bank, N.A.'s ('Wells') motion to dismiss Plaintiffs Chris Romo and Maria Dulia Romo's first amended complaint ('FAC')."); *In re Packaged Seafood Prod. Antitrust Litig.*, No. 15-MD-2670-JLS-MDD, 277 F. Supp. 3d 1167, 1174–75 (e.g., "[T]he Court previously ruled on Defendants' motion to dismiss Plaintiffs' post-2013 allegations and ***denied*** the requested relief.") (emphasis original). *See also* Opp. at 5–6. Under the circumstances in the cases cited by Plaintiffs, i.e., where at least some portion of the case or claims survive and proceed, courts have barred defendants from bringing Rule 12 motions *ad seriatim*. *See id*. However, that prohibition does not apply where, as here, the entire case had been dismissed as a result of the earlier Rule 12 motion and then re-filed.

Indeed, it is not only unsupported by law but would also make no practical sense if Viasat were barred from arguing that Plaintiffs' new complaint yet again

fails short of Rule 12, particularly when the Court has indicated that the sufficiency of Plaintiffs' new complaint is still an open question.  Dkt. 36 at 6 ("Because the Court cannot say at this stage that amendment would be futile, it GRANTS the motion to dismiss with leave to amend); *see also id*. at n.3 ("Because the Court in this order concludes that Plaintiffs have failed to plead the necessary threshold facts to establish jurisdiction, it STAYS discovery until it finds that Plaintiffs have met their pleading burden.").  Plaintiffs' attempt to sidestep the serious challenges to the eligibility of the '834 patent puts form over substance to no avail; whether brought as a motion under Rule 12(b)(6) or Rule 12(c), the inescapable fact is that the asserted '834 patent fails to claim patent-eligible subject matter.

> **B.      Plaintiffs Have Presented No Meritorious Argument that the '834 Patent Claims Patent-Eligible Subject Matter**

Throughout their Opposition, Plaintiffs repeatedly rely on their own conclusory statements purportedly based on the prosecution history and patent specification.  But such conclusory statements need not be accepted.  Specifically, Plaintiffs' conclusions that the claimed invention is "unique," "unconventional," "technically advantageous," or provides "technological improvements" must be disregarded in deciding Viasat's Motion.  *See id*. at 1, 6, 8–10, 12–16, n.8; *e.g., Simio, LLC v. FlexSim Software Prod., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020) ("We disregard conclusory statements when evaluating a complaint under Rule 12(b)(6).  A statement that a feature 'improves the functioning and operations of the computer' is, by itself, conclusory.") (citing *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

In any event, Plaintiffs' reliance on the prosecution history and patent specification, establish that the '834 patent is ***not*** directed to patent-eligible subject matter.  Plaintiffs do not dispute that encryption/decryption is an abstract idea.  *See* Opp. at 1, 6, 8.  Rather, Plaintiffs ask the Court to focus its inquiry on "the key

inventive concept of delivering decryption keys within a stream of data."[3]  Opp. at 13.  But even accepting that as true, the aspect of the '834 patent claims requiring a "stream of data from a network" from which a key is derived is not any less abstract or more inventive than general encryption concepts.

**First**, Plaintiffs apparently do not dispute that encryption or decryption using a key is abstract and conventional (*e.g.*, Opp. at 8–9); and Plaintiffs simultaneously assert that the invention of the '834 patent is its use of "existing streaming servers" to deliver the key (*id.* at 3, 8–9; Mot. at 13).  Thus, taking Plaintiffs' positions together, the '834 patent does no more than combine old abstract concepts (i.e., encryption and decryption using a key) with existing environments (i.e., using "legacy" or "existing" "streaming servers" to deliver the key).  Opp. at 3, 8–9.  Contrary to Plaintiffs' conclusion, applying old concepts to existing (or even new) environments is no more than a restatement of an abstract idea.  *Simio, LLC v. FlexSim Software Prod., Inc.*, 983 F.3d 1353, 1360 (Fed. Cir. 2020) ("Simply applying the already-widespread practice of using graphics instead of programming to the environment of object-oriented simulations is no more than an abstract idea.") (citing *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1094 (Fed. Cir. 2016) (citing *Alice Corp. Pty. V. CLS Bank Int'l*, 573 U.S. 208, 219–20 (2014) (holding claims directed to an abstract idea because, among other things, they "merely implement[ed] an old practice in a new environment"))).

**Second**, like the patentee in *Simio*, Plaintiffs argue that delivering the key through the "stream of data" from a streaming server is not abstract because it is an "unconventional" method that provides "technological improvements."  Opp. at 1–

---

[3]  Plaintiffs' assertion that Viasat's Motion "ignores" or somehow contradicts the "stream of data from a network" limitation is demonstrably false.  In fact, Viasat's Motion describes how the '834 patent claims lack patent eligibility even considering the "stream of data" aspect of the claims.  *E.g.*, Mot. at 1 (noting the '834 patent claims "encryption and decryption across a network"), 15 (explaining that 'communication over a network" "for device interaction" was conventional), 13 (addressing patent's use of "legacy" and "existing" "streaming servers"), 16 (similar), 16–17 (noting that the '834 patent would preempt "methods and implementations of encryption and decryption using information streamed over a network").

4, 6–15; *Simio*, 983 F.3d at 1360 ("Simio maintains that claim 1 is not direct to an abstract idea because it 'present[s] improvements to computer-implemented simulation, resulting in improvements in the computers' capabilities.'").  However, as the Federal Circuit has explained, "software can make patent-eligible improvements to computer technology, and related claims are eligible ***as long as they are directed to non-abstract improvements to the functionality of a computer … itself***." *Simio*, 983 F.3d at 1360–61 (emphasis added) (citing *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1309 (Fed. Cir. 2020)).

Here, Plaintiffs have not shown that the patent recites any improvement to the functionality of the "existing" and "legacy" streaming servers that Plaintiffs allege are used to deliver the key.  Rather, the patent specification describes that the streaming servers operate exactly as they did before the alleged invention.  *See* Mot. at 13 (e.g., quoting '834 patent at 2:55–58 ("Also, because existing streaming servers are used, these embodiments can take advantage of the activation, authorization, and accounting mechanisms ***already provided by those servers***.") (emphasis added).  That is, the patent claims do not disclose any change in the functionality of the streaming server itself, and as such are not directed to a patent-eligible technological improvement.  *See Simio*, 983 F.3d at 1360–61.

***Third***, and relatedly, Plaintiffs allege the claimed method provides "improvements" in that it "avoids 'network and bandwidth limitations,' and allows for 'a higher-quality version of the content to be enjoyed.'" Opp. at 12; *see also id*. at 3, 7.  *See also Simio*, 983 F.3d at 1361 ("Simio also asserts that claim 1 improves a computer's functionality 'by employing a new way of customized simulation modeling with improved processing speed.'").  But these purported improvements to the user experience are not patent-eligible improvements because there is no claimed improvement (or any modification) to the functionality of the streaming server.  *Simio*, 983 F.3d at 1361 ("In this case, 'improving a user's experience while using a computer application is not, without more, sufficient to render the claims

directed to an improvement in computer functionality.") (citing *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020) (citing *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1092–93 (Fed. Cir. 2019))). *See also id.* ("We reject Simio's argument, because 'claiming the improved speed or efficiency inherent with applying the abstract idea on a computer' [is] insufficient to render the claims patent eligible as an improvement to computer functionality.") (citing *Customedia*, 951 F.3d at 1364 (quoting *Intell. Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367, 1370 (Fed. Cir. 2015)); *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1288 (Fed. Cir. 2018) ("These benefits, however, are not improvements to database functionality.  Instead, they are benefits that flow from performing an abstract idea in conjunction with a well-known database structure.").

**Fourth**, despite alleging "[t]he invention provides a solution that avoids 'network and bandwidth limitations' and allows for 'a higher-quality version of the contention to be enjoyed" (Opp. at 3), the '834 patent notably does not recite how the purported solution and benefits may be achieved through the claimed invention. *See Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1363 (Fed. Cir. 2021) ("As a result, a claim is ineligible if it fails to recite a practical way of applying an underlying idea ….") (quotation marks and citation omitted); Mot. at 11–13.  The patent claims do not recite the use of a streaming server; and, instead, only provides that a stream of data is received from a network and the stream of data contains information from which a decryption key can be derived.  As such, the patent claims no specific technique as to how receiving a stream of data from a network that contains key information would somehow avoid network and bandwidth limitations.  Rather, the patent claims suggest that expressly requiring data to be streamed from a network would exacerbate, instead of avoid, network and bandwidth limitations.

**Fifth**, Plaintiffs' inability to meaningfully distinguish the '834 patent from other patent claims found to be invalid under § 101 is telling.  For example, in

*Personalized Media*, the court determined that "[t]he claim involves receiving an encrypted control signal and encrypted information, decrypting the control signal, using the signal to decrypt the information, and then presenting the programming." *Personalized Media Comm'cs, LLC v. Amazon.com, Inc.*, 161 F. Supp. 3d 325, 333 (D. Del. 2015).  Similarly, Plaintiffs assert that the claimed method is directed to "receiving a stream of data from a network,' from which the host device 'deriv[es] a key'" (Opp. at 8); and, in other words, the claimed invention "was that 'the stream contains information that can be used to derive the key,' and which 'is used to decrypt some other encrypted content.'"  Opp. at 2.  Despite the similarities, Plaintiffs cynically argue that the *Personalized Media* patent claims were directed to "an entirely conventional and non-specific use of encryption."  Opp. at 8–9.  This argument is based more on the result Plaintiffs desire and less on neutral application of controlling case law

Likewise in *Fidelity National*, the PTAB explained that the ineligible claim was, "in substance, directed to the underlying idea of transferring information from one location to another where the transferred information is unreadable without a secret decoder key."  *Fidelity Nat'l Info. Servs., Inc. v. DataTreasury Corp.*, No CMB2014-00021, 2015 WL 1967328, at *7 (P.T.A.B. Apr. 29, 2015).  Similarly, throughout their Opposition, Plaintiffs characterize the claimed invention of the '834 patent as "delivering decryption keys within a stream of data" from a streaming server.  Opp. at 13; *see also id.* at 1, 2, 6, 9.  Plaintiffs also emphasize that claim 14 of the '834 patent recites that "a stream of data" is received from a network, where and a key is derived "from the received stream of data."  Opp. at 3.  Thus, according to Plaintiffs' own arguments, the alleged invention of the '834 patent is directed to transferring (key) information from one location to another location.  Yet, Plaintiffs argue that *Fidelity National* "was merely directed to conventional methods for delivering content secured with licenses and encryption."

For each of the on-point cases cited in the Motion, Plaintiffs conclude—without basis or any ascertainable rationale—that the patent claims in the cited case is directed to "conventional" systems and methods, while the '834 patent is directed to an "unconventional" method.  *E.g.*, Opp. at 9.  But Plaintiffs' labeling of conventional systems and methods only underscores that the '834 patent is also directed to a conventional method.

## C.   Viasat's Motion is Not Premature And No Factual Disputes Prevent Resolution

As explained above, even accepting as true all of Plaintiffs' factual assertions, the '834 patent claims are directed to a patent-ineligible abstract idea.  Plaintiffs contend that Viasat "ignores that the patent is directed to the use of streaming technologies in an unconventional manner"—but that is Plaintiffs' conclusory statement and not a factual dispute.  The Federal Circuit instructs that such conclusions should be disregarded and do not prevent granting a Rule 12(b)(6) motion for lack of patent eligibility under § 101.  *E.g.*, *Simio*, 983 F.3d at 1365 ("We disregard conclusory statements when evaluating a complaint under Rule 12(b)(6).").  Similarly, the Court need not wait for claim construction to decide this matter, as there are no arguments that depend on competing claim constructions.  *See id.* at 1365 ("Simio's second argument—that the district court erred by determining ineligibility without first conducting claim construction—is also unpersuasive.  The main problem with this argument is that Simio has not explained how it might benefit from any particular term's construction under an *Alice* § 101 analysis.").

As described in this Reply, adopting all of Plaintiffs positions still results in the unavoidable conclusion that the '834 patent is directed to an ineligible abstract idea.  In circumstances such as these, the Federal Circuit has expressly approved the resolution of § 101 issues at the motion to dismiss stage.  *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1314 (Fed. Cir. 2021) (The § 101 "inquiry may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the

undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law.") (internal quotation omitted).  *See also Hantz Software, LLC v. Sage Intacct, Inc.*, 576 F. Supp. 3d 677 (N.D. Cal. Dec. 20, 2021) (Gilliam, J.) (granting motion to dismiss under § 101); Mot. at 5–6.  Accordingly, there are no dispute of facts that should delay resolution of this issue; and the goal of promoting judicial economy warrants early dismissal of Plaintiffs' assertion of the '834 patent.

## III.   CONCLUSION

For the foregoing reasons, Defendant Viasat, Inc. respectfully requests that the Court find that the claims of U.S. Patent No. 8,504,834 are directed to patent-ineligible subject matter and are thus invalid under 35 U.S.C. § 101; and to accordingly dismiss with prejudice Count Three of Plaintiffs' Amended Complaint.

DATED: July 7, 2023                           QUINN EMANUEL URQUHART &
                                              SULLIVAN, LLP


                                        By  /s/ Jodie Cheng
                                           _____

                                           *Attorneys for Defendant Viasat Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2023, a copy of the foregoing motion, was filed with the Court using the Court's ECF system, which sent notice to all counsel of record.


DATED:  July 7, 2023                    By  */s/ Jodie Cheng*
                                            Jodie Cheng