UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESTERN DIGITAL TECHNOLOGIES, INC., et al., | Case No. 22-cv-04376-HSG |
| Plaintiffs, | **ORDER GRANTING MOTION TO DISMISS COUNT THREE OF THE AMENDED COMPLAINT** |
| v. | Re: Dkt. No. 40 |
| VIASAT, INC., | |
| Defendant. | |

Pending before the Court is Defendants' motion to dismiss Count Three of Plaintiffs' Amended Complaint. *See* Dkt. No. 40 ("Mot."). The Court found this matter appropriate for disposition without oral argument and took the matter under submission. *See* Civil L.R. 7-1(b); Dkt. No. 63. For the following reasons, the Court **GRANTS** Defendants' motion to dismiss with leave to amend.

## I.    BACKGROUND

Plaintiffs are five companies: Western Digital Technologies, Inc. ("WDT"); Western Digital Ireland Ltd. ("WDI"); SanDisk 3D IP Holdings Ltd. ("SD3D"); SanDisk Technologies LLC ("SDT"); and SanDisk Storage Malaysia Sdn. Bhd ("SDSM"). *See* Dkt. No. 38, ¶¶ 3–10. In the Amended Complaint, Plaintiffs allege that Defendant Viasat, Inc. infringed claims of U.S. Patent Nos. 9,424,400 (the "'400 patent"); 10,447,667 (the "'667 patent"); and 8,504,834 (the "'834 patent"). *See id.* As relevant to this motion, Count Three of the Amended Complaint alleges that Defendant's "media streaming systems and software" infringe at least Claim 14 of the '834 patent, which is entitled "Method and system for activation of local content with legacy streaming systems" and was issued by the USPTO on August 6, 2013. *Id.* at ¶¶ 49, 52.

Claim 14 of the '834 patent recites:

> 14. A method for activation of local content, the method comprising:
>
> > performing the following in a host device in communication with a storage device storing encrypted content:
> >
> > > receiving a stream of data from a network;
> > >
> > > deriving a key from the received stream of data; and
> > >
> > > decrypting the encrypted content using the key derived from the received stream of data.

*Id.* at ¶ 53, *see also* Dkt No. 38-3.  Defendants now move to dismiss Count Three under Fed. R. Civ. P. 12(b)(6), on the ground that the asserted claims of the '834 patent are patent-ineligible under 35 U.S.C. § 101.

## II.    LEGAL STANDARD

### A.    Motion to Dismiss

Rule 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

United States District Court
Northern District of California

2

**B.      Section 101 Patent-Eligible Subject Matter**

Section 101 of the Patent Act describes the scope of patentable subject matter as encompassing "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101.  It is well settled that "laws of nature, natural phenomena, and abstract ideas are not patentable." *See Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).  These categories are not patent-eligible because "they are the basic tools of scientific and technological work," which are "free to all men and reserved exclusively to none." *Mayo Collaborative Servs. v. Prometheus Labs.*, 566 U.S. 66, 71 (2012) (citations omitted).  Allowing patent claims for laws of nature, natural phenomena, and abstract ideas would "tend to impede innovation more than it would tend to promote it," thereby thwarting the primary object of the patent laws. *Id*.  However, the Supreme Court has also recognized the need to "tread carefully in construing this exclusionary principle lest it swallow all of patent law." *Alice*, 573 U.S. at 217.

The Supreme Court and Federal Circuit have articulated a two-part test for determining whether a claim's subject matter is patent-eligible.  First, the Court "determine[s] whether a claim is 'directed to' a patent-ineligible abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1346–47 (Fed. Cir. 2014)  (citation omitted).  If so, the Court then "consider[s] the elements of the claim—both individually and as an ordered combination—to assess whether the additional elements transform the nature of the claim into a patent-eligible application of the abstract idea." *Id.* at 1347.  "This is the search for an 'inventive concept'—something sufficient to ensure that the claim amounts to 'significantly more' than the abstract idea itself." *Id.* (quotation omitted).

"[W]hether a claim recites patent eligible subject matter is a question of law which may contain underlying facts." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).  The Federal Circuit has repeatedly affirmed that patent eligibility under 35 U.S.C. § 101 may be properly determined at the motion to dismiss stage, "before claim construction or significant discovery has commenced." *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1361–62 (Fed. Cir. 2023) (citing *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352,

3

1    1360 (Fed. Cir. 2017)).

2    **III.    ANALYSIS**

3         **A.    Rule 12(g)(2) Waiver**

4         The Court begins with Plaintiffs' procedural argument that Defendant has waived its patent

5    eligibility arguments by failing to bring them in conjunction with its prior Rule 12(b)(1) motion to

6    dismiss.  *See* Dkt. No. 53 ("Opp.") at 5.  Federal Rule of Civil Procedure 12(g)(2) states that

7    "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not

8    make another motion under this rule raising a defense or objection that was available to the party

9    but omitted from its earlier motion."  Fed. R. Civ. P. 12(g)(2).  "The consequence of omitting a

10   defense from an earlier motion under Rule 12 depends on the type of defense omitted."  *In re*

11   *Apple iPhone Antitrust Litig.*, 846 F.3d 313, 317 (9th Cir. 2017), *aff'd sub nom. Apple Inc. v.*

12   *Pepper*, 139 S. Ct. 1514 (2019).  As relevant here, a defendant who omits a defense under Rule

13   12(b)(6) does not waive that defense; instead, the defense may be raised subsequently "(A) in any

14   pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial."

15   Fed. R. Civ. P. 12(h)(2).

16        Accordingly, Defendant's previous failure to bring a Rule 12(b)(6) motion as to patent

17   eligibility did not waive its defense under 35 U.S.C. § 101.  Instead, the question before the Court

18   is whether to consider Defendant's argument in this motion or require Defendant to bring another

19   motion under Rule 12(c).  While a Rule 12(c) motion would be filed after pleadings are closed, it

20   would be "functionally identical" to a Rule 12(b)(6) motion and the same legal standard would

21   apply.  *See Google LLC v. EcoFactor, Inc.*, 602 F. Supp. 3d 1265, 1268 (N.D. Cal. 2022).  In such

22   cases, the Ninth Circuit has recognized that "[d]enying late-filed Rule 12(b)(6) motions and

23   relegating defendants to the three procedural avenues specified in Rule 12(h)(2) can produce

24   unnecessary and costly delays, contrary to the direction of Rule 1."  *In re Apple iPhone Antitrust*

25   *Litig.*, 846 F.3d at 318.  In the interest of judicial economy, the Court will exercise its discretion

26   here and consider Defendant's patent eligibility arguments in this motion instead of requiring

27   Defendants to bring the same argument as a Rule 12(c) motion.

28

     *(left margin)* United States District Court Northern District of California

**B.    Patent Eligibility**

When assessing patent eligibility under 35 U.S.C. § 101, "[c]ourts may treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative."  *Berkheimer*, 881 F.3d at 1365. Here, Plaintiff does not object to Defendant's treatment of claim 14 as representative of the asserted claims of the '834 patent, or present any "meaningful argument" for the distinctive significance of any claim limitations not found in claim 14.  Accordingly, the Court treats claim 14 of the '834 patent as representative.

**i.    *Alice* Step One**

At step one of the *Alice* inquiry, the Court finds that claim 14 of the '834 patent is directed to the abstract idea of delivering and deriving a decryption key from a stream of data.  In this analysis, the Court first asks "what the patent asserts to be the focus of the claimed advance over the prior art."  *Yu v. Apple Inc.*, 1 F.4th 1040, 1043 (Fed. Cir. 2021), *cert. denied*, 142 S. Ct. 1113 (2022); *see also TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292 (Fed. Cir. 2020) ("We have approached the Step 1 'directed to' inquiry by asking 'what the patent asserts to be the "focus of the claimed advance over the prior art." ' " (quoting *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019)).  Here, the '834 patent describes prior art systems in which content is decrypted by use of a decryption key obtained by contacting a DRM server, which is stated to have a number of efficiency and cost drawbacks.  '834 patent at 1:13–22, 2:32–35.  To solve this problem, the '834 patent describes systems which, instead of contacting a DRM server, derive the encryption key from a stream of data obtained from a streaming server.  *Id.* at 2:1–45. Accordingly, claim 14 is directed to the idea of decrypting stored content using a decryption key that is "derived from" "a stream of data received from the network."  *Id.* at claim 14; *see also* Opp. at 9 (arguing that "the '834 patent . . . is directed to a patent-eligible technological improvement related to ***delivery*** of decryption keys and related methods in a specific unconventional way." (emphasis added)).

The Court finds that delivering and deriving a decryption key from a stream of data is a

patent-ineligible abstract idea.  The Federal Circuit has explained that "a relevant inquiry at Alice Step 1 is whether the claims in the patent focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery."  *Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1363 (Fed. Cir. 2021) (cleaned up).  Accordingly, "a claim is ineligible if it fails to recite a practical way of applying an underlying idea and instead is drafted in such a result-oriented way that it amounts to encompassing 'the principle in the abstract' no matter how implemented."  *Id.* (cleaned up).  Here, claim 14 recites no practical way of applying the underlying idea of delivering and deriving a decryption key from a stream of data.  Instead, claim 14 merely recites using generic computer components (a "host device," a "storage device," and a "network,") performing conventional computer processes ("receiving," "deriving," "decrypting,") to accomplish a desired result ("activation of local content"), without any practical detail (e.g., how the decryption key is "delivered" or "derived" from the stream of data).  This is precisely the kind of claim language that the Federal Circuit rejected as patent ineligible in *Free Stream*.  *Id.*; *see also Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) ("The claim requires the functional results of 'converting,' 'routing,' 'controlling,' 'monitoring,' and 'accumulating records,' but does not sufficiently describe how to achieve these results in a non-abstract way.").

Plaintiffs' citation to *TecSec* only serves to underscore this conclusion.  In *TecSec*, the patent at issue was directed to a system and method of multi-level multimedia security in a data network.  There, the Federal Circuit found that the asserted claims were not abstract because the claims described a specific method of managing access to objects using multiple levels of encryption, which involved several specific steps including "accessing an 'object-oriented key manager' and specified uses of a 'label' as well as encryption for the access management."  978 F.3d at 1295.  The court reasoned that these highly specific steps, in conjunction with the patent specification and file history, demonstrated that the patent was directed to an inventive solution specific to computer data networks.  *Id.*

In contrast, here the '834 patent more resembles the patent at issue in *Free Stream*, which

1   was directed to a system for targeted mobile advertising based on a consumer's television viewing

2   patterns.  There, the patentee argued that the patented invention was an advance over prior art by

3   "allow[ing] devices on the same network to communicate where such devices were previously

4   unable to do so."  *Free Stream*, 996 F.3d at 1363.  However, the Federal Circuit found that this

5   was insufficient, because "[t]he asserted claims provide for how that is achieved only by stating

6   that the mechanism used to achieve this communication is by piercing or otherwise overcoming a

7   mobile device's security sandbox [and] . . . . do not describe at all how that result is achieved."  *Id.*

8   at 1363–64.  Similarly, here Plaintiffs assert that their invention is directed to an unconventional

9   way of delivering and deriving decryption keys, but the asserted claims provide for that only by

10  stating that the delivery key is delivered via a "stream of data from the network" and do not

11  describe at all how that result is achieved.

12          As did the patentee in *Free Stream*, Plaintiffs here argue that such methods are described in

13  detail in the specification, but those arguments are unavailing for the same reasons as in that case.

14  There, the Federal Circuit found that "[e]ven assuming the specification discloses how the

15  sandbox is overcome, the asserted claims nonetheless do not recite an improvement in computer

16  functionality" because none of the mechanisms disclosed in the specification were recited in the

17  claims.  *Id.* at 1364.  Here too, even assuming the specification discloses specific methods of

18  delivering and deriving a decryption key from a stream of data, "the asserted claims do not

19  incorporate any such methods" of doing so.  *Id.*  The absence of such details from the claim

20  language militates against patent eligibility.  *See also Yu*, 1 F.4th 1044–45 ("In these

21  circumstances, the mismatch between the specification statements that [the patentee] points to and

22  the breadth of claim 1 underscores that the focus of the claimed advance is the abstract idea and

23  not the particular configuration discussed in the specification that allegedly departs from the prior

24  art.").

25          Another "telltale sign of abstraction is when the claimed functions are mental processes

26  that can be performed in the human mind or using a pencil and paper."  *Trinity*, 72 F.4th at 1361–

27  62 (cleaned up); *see also OpenTV, Inc. v. Apple, Inc.*, 2015 WL 1535328, at *4 (N.D. Cal. Apr. 6,

28  2015).  Here too, this inquiry confirms that the claims are directed to an abstract idea.  Claim 14's

United States District Court
Northern District of California

United States District Court
Northern District of California

1   steps, once abstracted away from the generic computer and networking components involved, are

2   all steps that can be performed by a human mind or by a human using a pen and paper.  As a

3   simple example, imagine the following: a human operating a telegraph machine is in possession of

4   a letter (local content) that is encrypted using a cypher.  In order to decrypt the letter, she receives

5   a telegraph transmission (stream of data received over a network) that contains information as to

6   what the decryption key for the cypher is.  Based on this information, she "derives" the decryption

7   key from the telegraph transmission and uses that decryption key to decrypt the letter.  On its face,

8   claim 14 of the '834 patent is nothing more than applying this age-old idea to the context of

9   modern content delivery systems, by using generic computer components and conventional

10   computer processes.  This is an abstract idea.  *See Simio, LLC v. FlexSim Software Prod., Inc.*, 983

11   F.3d 1353, 1360 (Fed. Cir. 2020) ("Simply applying the already-widespread practice of using

12   graphics instead of programming to the environment of object-oriented simulations is no more

13   than an abstract idea.").  Similarly, the Federal Circuit has repeatedly recognized that claims

14   directed to the collection, organization, and transmission of data are "within the realm of abstract

15   ideas."  *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (collecting

16   cases).  Here, the data that is being transmitted just so happens to contain a decryption key, but

17   that is insufficient to render the claim non-abstract.

18       For these reasons, the Court finds that, at *Alice* step one, claim 14 of the '834 patent is

19   directed to a patent-ineligible abstract idea.

20           ii.   ***Alice* Step Two**

21       Turning to step two of the *Alice* inquiry, the Court considers "whether the claimed

22   elements— 'individually and as an ordered  combination'—recite an inventive concept."  *Cellspin*

23   *Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1316 (Fed. Cir. 2019) (quoting *Alice*, 573 U.S. at 217).

24   Here, the Court finds that, as alleged, the '834 patent does not recite an inventive concept

25   sufficient to elevate the claims beyond a mere abstract idea.

26       Plaintiffs do not appear to dispute that, taken individually, the elements claimed in the '834

27   patent recite generic computer components and conventional computer processes.  *See* Opp. at 13

28   ("Using known components in such a manner is sufficient to render the claims non-abstract.").

8

United States District Court
Northern District of California

1    Rather, Plaintiffs argue that, as an ordered combination, "the inventive concept of claim 14, as

2    confirmed by the specification, is the use of streaming data in an unconventional, advantageous

3    way, to convey decryption keys." *Id.*  In support, Plaintiffs rely on statements made in the

4    specification, and in the prosecution history, that the '834 patent is unconventional and provides

5    an advantage over the prior art.  For example, Plaintiffs argue that the '834 patent is an inventive

6    improvement to existing content delivery systems, by providing for a "'best of both worlds'

7    solution that offers the advantages of streaming services . . .  without the associated network and

8    bandwidth limitations; thus, allowing a higher-quality version of the content to be enjoyed." *Id.* at

9    2–3, *see also*,'834 patent, 2:46–58.

10           However, the Court is unconvinced.  First, a critical problem with Plaintiffs' argument is

11   that this alleged improvement is untethered to the actual language of claim 14, which on its face, is

12   so broad as to cover any method of decryption of local content where the decryption key is

13   delivered through, and derived from, "a stream of data [received] from a network."  Nothing in the

14   plain language of claim 14 requires that, for example, the encrypted content stored on the storage

15   device be a local copy of some content that is available from a streaming server, or that the

16   "stream of data from a network" be received from the same server as the server that also streams a

17   version of the encrypted local content.  The term "streaming server" is not even present in the

18   claim language.  Second, Plaintiffs' reliance on statements included in the specification and made

19   during prosecution confuses an inventive concept with novelty, which does not transform an

20   abstract idea into a patent-eligible invention.  *See, e.g.*, *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d

21   1161, 1163 (Fed. Cir. 2018) ("We may assume that the techniques claimed are groundbreaking,

22   innovative, or even brilliant, but that is not enough for eligibility."); *Ultramercial, Inc. v. Hulu,*

23   *LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) ("We do not agree . . . that the addition of merely novel

24   or non-routine components to the claimed idea necessarily turns an abstraction into something

25   concrete.").  Finally, even crediting Plaintiffs' arguments as true, the "key inventive concept" that

26   Plaintiffs rely upon is precisely the idea that the Court found abstract at *Alice* step one:  the

27   delivery and derivation of a decryption key from a stream of data.  Because the "key inventive

28   concept" is itself abstract, the Court concludes that the '834 patent fails to recite an inventive

concept "sufficient to ensure that the claim amounts to 'significantly more' than the abstract idea itself." *Content Extraction*, 776 F.3d at 1347 (quotation omitted).

Finally, Plaintiffs argue that it is premature for the Court to determine patent eligibility at this stage in the proceedings because of unresolved fact and expert issues, including construction of the claim language. *See* Opp. at 14–15. The Court disagrees. As discussed above, the Court does not find Plaintiffs' arguments relying on the patent specification and file history to be persuasive. As to any potential claim construction issues, Plaintiffs have failed to propose any constructions or explain why they would be relevant to the Court's patent eligibility analysis. *See* Opp. at 10, n.7 (arguing that the Court "must adopt Plaintiffs' constructions" but failing to propose any specific constructions or identify any concrete claim construction disputes). Absent any such proposal, the Court declines to speculate and concludes that under a plain and ordinary reading of the claims, the '834 patent is directed to a patent-ineligible abstract idea and contains no inventive concept. *See Trinity*, 72 F.4th at 1360–61 (to avoid a dismissal under § 101, a "patentee must propose a specific claim construction or identify specific facts that need development and explain why those circumstances must be resolved before the scope of the claims can be understood for § 101 purposes."). However, in light of these arguments, the Court also cannot conclude at this stage that further amendment necessarily would be futile. Therefore, the Court declines Defendant's request for dismissal with prejudice, and grants Plaintiffs a further opportunity to amend Count Three.

## IV.   CONCLUSION

The Court **GRANTS** Defendant's motion to dismiss Count Three of the Amended Complaint with leave to amend. Any Second Amended Complaint must be filed within 21 days of the date of this order. Failure to remedy the deficiencies described in this order will result in dismissal with prejudice and without further leave to amend.

**IT IS SO ORDERED.**

Dated: 11/15/2023

HAYWOOD S. GILLIAM, JR.
United States District Judge

10