# EXHIBIT 2



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/460,805 | 12/16/2014 | 8914634 | T5921 | 8288 |

35219        7590        11/25/2014

WESTERN DIGITAL CORPORATION
ATTN: NANDAR AUNG-MULQUEEN / IP LAW DEPARTMENT
3355 MICHELSON DRIVE, SUITE 100
IRVINE, CA 92612

# ISSUE NOTIFICATION

The projected patent number and issue date are specified above.

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
### (application filed on or after May 29, 2000)

The Patent Term Adjustment is 0 day(s). Any patent to issue from the above-identified application will include an indication of the adjustment on the front page.

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Application Assistance Unit (AAU) of the Office of Data Management (ODM) at (571)-272-4200.

APPLICANT(s) (Please see PAIR WEB site http://pair.uspto.gov for additional applicants):

David L. BLANKENBECKLER, Longmont, CO;
Danny Ybarra, Mission Viejo, CA;
Lambertus Hesselink, Atherton, CA;

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The USA offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to encourage and facilitate business investment. To learn more about why the USA is the best country in the world to develop technology, manufacture products, and grow your business, visit <u>SelectUSA.gov</u>.

IR103 (Rev. 10/09)



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| | | |
|---|---|---|
| 35219 | 7590 | 08/12/2014 |

WESTERN DIGITAL CORPORATION
ATTN: NANDAR AUNG-MULQUEEN / IP LAW DEPARTMENT
3355 MICHELSON DRIVE, SUITE 100
IRVINE, CA 92612

| EXAMINER |
|---|
| HOFFMAN, BRANDON S |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2433 | |

DATE MAILED: 08/12/2014

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/460,805 | 04/30/2012 | David L. BLANKENBECKLER | T5921 | 8288 |

TITLE OF INVENTION: DIGITAL RIGHTS MANAGEMENT SYSTEM TRANSFER OF CONTENT AND DISTRIBUTION

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $960 | $0 | $0 | $960 | 11/12/2014 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED.** THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED.** SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 3

PTOL-85 (Rev. 02/11)

**PART B - FEE(S) TRANSMITTAL**

Complete and send this form, together with applicable fee(s), to: **Mail**   **Mail Stop ISSUE FEE**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**
or **Fax**   **(571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

| 35219 | 7590 | 08/12/2014 |
|---|---|---|

WESTERN DIGITAL CORPORATION
ATTN: NANDAR AUNG-MULQUEEN / IP LAW DEPARTMENT
3355 MICHELSON DRIVE, SUITE 100
IRVINE, CA 92612

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/460,805 | 04/30/2012 | David L. BLANKENBECKLER | T5921 | 8288 |

TITLE OF INVENTION: DIGITAL RIGHTS MANAGEMENT SYSTEM TRANSFER OF CONTENT AND DISTRIBUTION

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $960 | $0 | $0 | $960 | 11/12/2014 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| HOFFMAN, BRANDON S | 2433 | 713-168000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list

(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :   ☐ Individual   ☐ Corporation or other private group entity   ☐ Government

4a. The following fee(s) are submitted:

☐ Issue Fee
☐ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): (**Please first reapply any previously paid issue fee shown above**)

☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credits any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. **Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____   Date _____

Typed or printed name _____   Registration No. _____

Page 2 of 3



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/460,805 | 04/30/2012 | David L. BLANKENBECKLER | T5921 | 8288 |

35219      7590      08/12/2014
WESTERN DIGITAL CORPORATION
ATTN: NANDAR AUNG-MULQUEEN / IP LAW DEPARTMENT
3355 MICHELSON DRIVE, SUITE 100
IRVINE, CA 92612

| EXAMINER |
|---|
| HOFFMAN, BRANDON S |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2433 | |

DATE MAILED: 08/12/2014

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:
1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Notice of Allowability* | Application No. 13/460,805 | Applicant(s) BLANKENBECKLER ET AL. | |
|---|---|---|---|
| | Examiner BRANDON HOFFMAN | Art Unit 2433 | AIA (First Inventor to File) Status No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *amendment filed June 6, 2014*.

    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on_____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are *21-39*. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov .

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    **Certified copies:**

      a) ☐ All   b) ☐ Some   *c) ☐ None of the:

        1. ☐ Certified copies of the priority documents have been received.

        2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

        3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____ .

    Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date

3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

4. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____ .

5. ☒ Examiner's Amendment/Comment

6. ☐ Examiner's Statement of Reasons for Allowance

7. ☐ Other _____ .

/BRANDON HOFFMAN/
Primary Examiner, Art Unit 2433

Application/Control Number: 13/460,805                                          Page 2
Art Unit: 2433

1.      The present application is being examined under the pre-AIA first to invent

provisions.

2.      The amendment, filed June 6, 2014, canceled claims 1-20 and added new claims

20-38.  This was meant to be claims 21-39.  Accordingly, claims 21-39 are allowed

based on the examiners amendment below.


**EXAMINER'S AMENDMENT**

3.      An examiner's amendment to the record appears below. Should the changes

and/or additions be unacceptable to applicant, an amendment may be filed as provided

by 37 CFR 1.312. To ensure consideration of such an amendment, it MUST be

submitted no later than the payment of the issue fee.

        Authorization for this examiner's amendment was given in a telephone interview

with Don Pua (U.S. Reg. No. 67,028) on July 29, 2014.


        The application has been amended as follows:


21.     (Currently Amended) A kiosk for provisioning secure media content to a plurality

of portable data storage devices, the kiosk comprising:

        a first data interface configured to communicate with a portable data storage

device;

        a second data interface configured to communicate with a verification server; and

        a processor configured to:

Application/Control Number: 13/460,805                                      Page 3
Art Unit: 2433

      obtain a binding key from the portable data storage device, wherein the binding key is unique to the portable data storage device and based on a key that was concealed by the portable data storage device;

      authenticate the binding key by communicating with the verification server over the second data interface;

      generate an access key for accessing the media content based on the binding key and a content key associated with a first media content;

      encrypt the first media content using the access key; and

      provide the encrypted first media content, the content key but not the access key to the portable data storage device.


22.    (Currently Amended) The kiosk of claim [20] 21, wherein the portable data storage device is configured to:

      provide the encrypted first media content, the content key and the binding key to a playback device;

      wherein the playback device is configured to recreate the access key based on the content key and the binding key and then decrypt the encrypted first media content using the recreated access key.


23.    (Currently Amended) The kiosk of claim [20] 21, wherein the portable device comprises:

      a user area for storing the encrypted first media content that is accessible by [the] a playback device; and

      a non-user area for storing cryptographic data that is not accessible by the playback device.


24.    (Currently Amended) The kiosk of claim [20] 21, wherein the first data interface is a USB interface.

Application/Control Number: 13/460,805                                        Page 4
Art Unit: 2433

25.     (Currently Amended) The kiosk of claim [20] 21, wherein the second data
interface is a network interface.

26.     (Currently Amended) The kiosk of claim [20] 21, wherein the access key is an
ephemeral key that is not stored on the kiosk after being generated.

27.     (Currently Amended) The kiosk of claim [20] 21, wherein the kiosk is located in a
public environment.

28.     (Currently Amended) The kiosk of claim [20] 21, further comprising a local
storage for media content.

29.     (Currently Amended) The kiosk of claim [27] 28, the kiosk further comprising a
user interface for receiving a selection of the first media content from the local storage,
wherein the selection causes the kiosk to provide the encrypted first media content to
the portable data storage device.

30.     (Currently Amended) A method for provisioning secure media content to a
plurality of portable data storage devices from a kiosk, the method comprising:

        obtaining a binding key from a portable data storage device connected to
a first data interface, wherein the binding key is unique to the portable data
storage device and based on a key that was concealed by the portable data
storage device;

        authenticating the binding key by communicating with a verification server
over a second data interface;

        generating an access key for accessing the media content based on the
binding key and a content key associated with a first media content;

        encrypting the first media content using the access key; and

        providing the encrypted first media content, the content key but not the
access key to the portable data storage device.

Application/Control Number: 13/460,805                                          Page 5
Art Unit: 2433

31.     (Currently Amended) The method of claim [29] 30, wherein the portable data
storage device is configured to:

    provide the encrypted first media content, the content key and the binding key to
a playback device;

    wherein the playback device is configured to recreate the access key based on
the content key and the binding key and then decrypt the encrypted first media content
using the recreated access key.

32.     (Currently Amended) The method of claim [29] 30, wherein the first data interface
is a USB interface.

33.     (Currently Amended) The method of claim [29] 30, wherein the second data
interface is a network interface.

34.     (Currently Amended) The method of claim [29] 30, wherein the access key is an
ephemeral key that is not stored on the kiosk after being generated.

35.     (Currently Amended) The method of claim [29] 30, wherein the binding key is an
ephemeral key that is not stored on the portable data storage device after being
generated.

36.     (Currently Amended) The method of claim [29] 30, further comprising receiving a
selection of the first media content from content stored on a local storage, wherein the
selection causes the kiosk to provide the encrypted first media content to the portable
data storage device.

37.     (Currently Amended) The method of claim [29] 30, authorizing copying of the
content based on at least one of a digital certificate or a permission specified in secure
metadata of the content.

Application/Control Number: 13/460,805                                              Page 6
Art Unit: 2433

38.      (Currently Amended) The method of claim [29] 30, further comprising encrypting
a digital certificate and storing the encrypted digital certificate in a secure area of the
portable storage device.

39.      (Currently Amended) The method of claim [29] 30, wherein the kiosk is located in
a public environment.

Any inquiry concerning this communication or earlier communications from the
examiner should be directed to BRANDON HOFFMAN whose telephone number is
(571)272-3863.  The examiner can normally be reached on M-F 8:30 - 5:00.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's
supervisor, Jeffrey C. Pwu can be reached on 571-272-6798.  The fax phone number
for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the
Patent Application Information Retrieval (PAIR) system.  Status information for
published applications may be obtained from either Private PAIR or Public PAIR.
Status information for unpublished applications is available through Private PAIR only.
For more information about the PAIR system, see http://pair-direct.uspto.gov. Should
you have questions on access to the Private PAIR system, contact the Electronic
Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a
USPTO Customer Service Representative or access to the automated information
system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

Application/Control Number: 13/460,805                                      Page 7
Art Unit: 2433


/BRANDON HOFFMAN/
Primary Examiner, Art Unit 2433

PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | | |
|---|---|---|---|---|
| In re Appln. of: | Blankenbeckler, et al. | Art Unit: | 2433 |
| Serial No.: | 13/460,805 | Examiner: | Brandon S. Hoffman |
| Filing Date: | April 30, 2012 | Confirmation No.: | 8288 |
| For: DIGITAL RIGHTS MANAGEMENT SYSTEM TRANSFER OF CONTENT AND DISTRIBUTION | | Docket No.: | T5921 |

## REPLY TO NON-FINAL OFFICE ACTION MAILED ON FEBRUARY 6, 2014

MAIL STOP AMENDMENT
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Examiner:

In response to the Office Action mailed on February 6, 2014 ("Office Action") for the above-identified patent application, please consider the following amendments and/or remarks.

Amendments to the **Claims** are reflected in the listing of claims that begins on page 2 of this paper.

**Remarks** begin on page 6 of this paper.

AMENDMENTS TO THE CLAIMS

This listing of claims will replace all prior versions, and listings, of claims in the application:

1-20.  **Canceled**

20.    (**New**) A kiosk for provisioning secure media content to a plurality of portable data storage devices, the kiosk comprising:

a first data interface configured to communicate with a portable data storage device;

a second data interface configured to communicate with a verification server; and

a processor configured to:

obtain a binding key from the portable data storage device, wherein the binding key is unique to the portable data storage device and based on a key that was concealed by the portable data storage device;

authenticate the binding key by communicating with the verification server over the second data interface;

generate an access key for accessing the media content based on the binding key and a content key associated with a first media content;

encrypt the first media content using the access key; and

provide the encrypted first media content, the content key but not the access key to the portable data storage device.

21.    (**New**) The kiosk of claim 20, wherein the portable data storage device is configured to:

provide the encrypted first media content, the content key and the binding key to a playback device;

wherein the playback device is configured to recreate the access key based on the content key and the binding key and then decrypt the encrypted first media content using the recreated access key.

22.    (**New**) The kiosk of claim 20, wherein the portable device comprises:

a user area for storing the encrypted first media content that is accessible by the playback device; and

a non-user area for storing cryptographic data that is not accessible by the playback device.

23.    (**New**) The kiosk of claim 20, wherein the first data interface is a USB interface.

24.    (**New**) The kiosk of claim 20, wherein the second data interface is a network interface.

25.    (**New**) The kiosk of claim 20, wherein the access key is an ephemeral key that is not stored on the kiosk after being generated.

26.    (**New**) The kiosk of claim 20, wherein the kiosk is located in a public environment.

27.    (**New**) The kiosk of claim 20, further comprising a local storage for media content.

28.    (**New**) The kiosk of claim 27, the kiosk further comprising a user interface for receiving a selection of the first media content from the local storage, wherein the selection causes the kiosk to provide the encrypted first media content to the portable data storage device.

29.     (**New**) A method for provisioning secure media content to a plurality of portable data storage devices from a kiosk, the method comprising:

      obtaining a binding key from a portable data storage device connected to a first data interface, wherein the binding key is unique to the portable data storage device and based on a key that was concealed by the portable data storage device;

      authenticating the binding key by communicating with a verification server over a second data interface;

      generating an access key for accessing the media content based on the binding key and a content key associated with a first media content;

      encrypting the first media content using the access key; and

      providing the encrypted first media content, the content key but not the access key to the portable data storage device.

30.     (**New**) The method of claim 29, wherein the portable data storage device is configured to:

      provide the encrypted first media content, the content key and the binding key to a playback device;

      wherein the playback device is configured to recreate the access key based on the content key and the binding key and then decrypt the encrypted first media content using the recreated access key.

31.     (**New**) The method of claim 29, wherein the first data interface is a USB interface.

32.     (**New**) The method of claim 29, wherein the second data interface is a network interface.

33.     (**New**) The method of claim 29, wherein the access key is an ephemeral key that is not stored on the kiosk after being generated.

34.     (**New**) The method of claim 29, wherein the binding key is an ephemeral key that is not stored on the portable data storage device after being generated.

35.     (**New**) The method of claim 29, further comprising receiving a selection of the first media content from content stored on a local storage, wherein the selection causes the kiosk to provide the encrypted first media content to the portable data storage device.

36.     (**New**) The method of claim 29, authorizing copying of the content based on at least one of a digital certificate or a permission specified in secure metadata of the content.

37.     (**New**) The method of claim 29, further comprising encrypting a digital certificate and storing the encrypted digital certificate in a secure area of the portable storage device.

38.     (**New**) The method of claim 29, wherein the kiosk is located in a public environment.

## REMARKS

By way summary, claims 1-20 are rejected. Applicants have canceled claims 1-20 and added new claims 20-38. No new matter has been added. Therefore, claims 20-38 are currently pending.

## **Double Patenting**

In light of the cancellation of claims 1-20, Applicants believes this double patenting rejection is moot.

## **The claims are not anticipated by the cited art**

The Office Action rejected now canceled claims 1-20 under 35 U.S.C. § 102(b) as unpatentable over U.S. Patent Publication 2009/0052671 ("Bauchot"). While Applicants respectfully disagree with this rejection, this rejection is now moot as claims 1-20 have been canceled. Regarding new claims 20-38, Bauchot fails to teach or suggest every element of the claims.

Independent claim 20 recites, among other things "a kiosk for provisioning secure media content [the kiosk configured to] obtain a binding key from the portable data storage device [and] provide the encrypted first media content, the content key but not the access key to the portable data storage device."

First, Bauchot fails to even mention use of a kiosk. Second, the system of Bauchot relies on storing content and keys separately for security (See FIG. 3-4 and par.12 - reproduced below).

> With the invention, the user only needs to be provided with at least two separate components, the mobile memory unit and the storage device, and to connect these components: initially, to enable encryption of the files (copy with encryption); and subsequently, to authorize decryption of the files for operation on the files, such as a playing operation.

As recited above, Bauchot relies on storing content and keys separately (on a storage device and a mobile memory unit, respectively) rather than on binding content to a

portable storage device using a "binding key unique to the portable data storage device and based on a key that was concealed by the portable data storage device" as recited in claim 20.  In fact, Bauchot teaches away from binding content specifically to a portable storage device, stating that "the invention also makes it possible to use a same mobile memory unit to **provide access to several storage devices or to transfer the security keys to a target memory unit**." (par. 14, emphasis added).  Therefore, Bauchot fails to teach or suggest every element of claim 20

Independent claim 29 recites similar limitations as discussed above with respect to claim 20.  For similar reasons, Bauchot fails to teach or suggest the above limitations. Accordingly, Applicants believe this application is in condition for allowance.

## Dependent claims

Applicant respectfully submits that the rejections of the dependent claims are improper in view of the respective dependency of each such claim from an allowable independent claim. In addition, the dependent claims recite features that represent additional patentable distinctions over the cited art.

## Conclusion

The present application is believed to be in condition for allowance.  If, however, any unresolved issues remain, the Examiner is respectfully invited to contact the undersigned attorney of record at the telephone number indicated below and whatever is required will be done at once.

Although the present communication may include alterations to the application or claims, or characterizations of claim scope or referenced art, Applicants are not conceding in this application that previously pending claims are not patentable over the cited references. Rather, any alterations or characterizations are being made to facilitate expeditious prosecution of this application.  Applicants reserve the right to pursue at a later date any previously pending or other broader or narrower claims that capture any subject matter supported by the present disclosure, including subject matter found specifically disclaimed herein or by any prior prosecution. Accordingly, reviewers

of this or any parent, child or related prosecution history shall not reasonably infer that the Applicants have made any disclaimers or disavowals of any subject matter supported by the present application.

Please charge any additional fees, including any fees for additional extension of time, or credit overpayment to Deposit Account No. 23-1209.  A one-month extension of time is respectfully petitioned.

Respectfully submitted,

Date: 6/6/2014                          By: /Don Pua/
                                             Don Pua, Esq.
                                             Reg. No. 67,028

WESTERN DIGITAL CORPORATION
3355 Michelson Drive, Suite 100
Irvine, CA  92612
Tel.:   (949) 672-7000
Fax:    (949) 672-6604

**If the attorney is unavailable, please direct inquiries to:**
**Tanya Josephs, IP Paralegal:  (949) 672-9439**

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/460,805 | 04/30/2012 | David L. BLANKENBECKLER | T5921 | 8288 |

35219        7590        02/06/2014
WESTERN DIGITAL CORPORATION
ATTN: NANDAR AUNG-MULQUEEN  / IP LAW DEPARTMENT
3355 MICHELSON DRIVE, SUITE 100
IRVINE, CA 92612

| EXAMINER |
|---|
| HOFFMAN, BRANDON S |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2433 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 02/06/2014 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

IPDocket@wdc.com
nandar.aungmulqueen@wdc.com

PTOL-90A (Rev. 04/07)

|  | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 13/460,805 | BLANKENBECKLER ET AL. |
|  | **Examiner** | **Art Unit** | **AIA (First Inventor to File) Status** |
|  | BRANDON HOFFMAN | 2433 | No |

<table>
<tr><td colspan="4" align="center">-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --</td></tr>
</table>

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>12-5-13</u>.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a)☐ This action is **FINAL**.        2b)☒ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5)☒ Claim(s) <u>1-20</u> is/are pending in the application.
   5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☒ Claim(s) <u>1-20</u> is/are rejected.

8)☐ Claim(s) _____ is/are objected to.

9)☐ Claim(s) _____ are subject to restriction and/or election requirement.

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

**Application Papers**

10)☐ The specification is objected to by the Examiner.

11)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.
   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

**Certified copies:**

a)☐ All   b)☐ Some**  c)☐ None of the:
   1.☐ Certified copies of the priority documents have been received.
   2.☐ Certified copies of the priority documents have been received in Application No. _____.
   3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)

2) ☒ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date <u>8-16-13</u>.

3) ☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date. _____.

4) ☐ Other: _____.

Application/Control Number: 13/460,805                                    Page 2
Art Unit: 2433

## DETAILED ACTION

1.      Claims 1-20 are pending in this office action.


### Information Disclosure Statement

2.      The information disclosure statement (IDS) submitted on August 16, 2012, is in

compliance with the provisions of 37 CFR 1.97.  Accordingly, the information disclosure

statement is being considered by the examiner.


### Double Patenting

3.      The nonstatutory double patenting rejection is based on a judicially created

doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the

unjustified or improper timewise extension of the "right to exclude" granted by a patent

and to prevent possible harassment by multiple assignees.  A nonstatutory double

patenting rejection is appropriate where the claims at issue are not identical, but at least

one examined application claim is not patentably distinct from the reference claim(s)

because the examined application claim is either anticipated by, or would have been

obvious over, the reference claim(s). See, e.g., *In re Berg*, 140 F.3d 1428, 46 USPQ2d

1226 (Fed. Cir. 1998); *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed. Cir.

1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*,

686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619

(CCPA 1970); and *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).

Application/Control Number: 13/460,805                                    Page 3
Art Unit: 2433

A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) or 1.321(d) may be used to overcome an actual or provisional rejection based on a nonstatutory double patenting ground provided the reference application or patent either is shown to be commonly owned with this application, or claims an invention made as a result of activities undertaken within the scope of a joint research agreement. A terminal disclaimer must be signed in compliance with 37 CFR 1.321(b).

The USPTO internet Web site contains terminal disclaimer forms which may be used.  Please visit http://www.uspto.gov/forms/.  The filing date of the application will determine what form should be used.  A web-based eTerminal Disclaimer may be filled out completely online using web-screens. An eTerminal Disclaimer that meets all requirements is auto-processed and approved immediately upon submission.  For more information about eTerminal Disclaimers, refer to http://www.uspto.gov/patents/process/file/efs/guidance/eTD-info-I.jsp.

4.    <u>Claims 1-20</u> are provisionally rejected on the ground of nonstatutory double patenting as being unpatentable over claims 1-18 and 20-24 of copending Application No. 13/460,616. Although the claims at issue are not identical, they are not patentably distinct from each other because both applications claim a storage medium comprising a user area and a non-user area, a controller comprising a hardware root of trust and a secured memory to authenticate the player, establish a secured communication channel, provide a first key and a second key, and provide the content in encrypted form.  The instant application claims the first key is unique to the second storage device and based on a key that was concealed by the second storage device.  The other

Application/Control Number: 13/460,805                                    Page 4
Art Unit: 2433

applications claims the first key is based on defect information of the storage medium.

It would have been obvious to one of ordinary skill in the art, at the time the invention

was made, to modify the instant application to base its key off of defect information

instead of a key that was concealed because both the defect and concealed key provide

a data that cannot be predicted or easily guessed.

This is a provisional nonstatutory double patenting rejection because the

patentably indistinct claims have not in fact been patented.


### *Claim Rejections - 35 USC § 102*

1) The following is a quotation of the appropriate paragraphs of pre-AIA 35 U.S.C. 102

that form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless –
>
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

2) Claims 1-20 are rejected under pre-AIA 35 U.S.C. 102b as being anticipated by

Bauchot et al. (U.S. Patent Pub. No. 2009/0052671).


Regarding claim 1, Bauchot et al. teaches a first storage device configured to

provide content to a player system for rendering of the content, said first storage device

comprising: a storage medium comprising a user area that is accessible by the player

system and a non-user area that is not accessible by the player system, **the user area**

**storing content has been transferred by a trusted server from a second storage**

**device** (paragraph 0047); and a controller comprising a cryptographic module providing

a hardware root of trust and a secured memory (paragraph 0039), wherein the controller

is configured to authenticate the player system (paragraph 0039), establish a secured

communication channel with the player system based on the authentication (paragraph

0051), provide, to the player system, a first cryptographic key, wherein the first

cryptographic key is unique to the second storage device and based on a key that was

concealed by the second storage device (paragraph 0039 and 0047), provide, to the

player system, a second cryptographic key that is associated with the content

(paragraph 0067), and provide, to the player system, the content in encrypted form from

the user area of the storage medium, wherein the content is accessible based on a

cryptographic combination of the first cryptographic key and the second cryptographic

key (paragraph 0067).


Regarding claim 2, Bauchot et al. teaches wherein the controller is configured to

authenticate the player system based on public key infrastructure (paragraph 0094).


Regarding claim 3, Bauchot et al. teaches wherein the cryptographic module is

configured to encrypt the first cryptographic key that is unique to the second storage

device based on a key that is concealed by the cryptographic module (paragraph 0047).


Regarding claim 4, Bauchot et al. teaches wherein the **storage medium is a

magnetic media comprising the user area and the non-user area** (fig. 1, ref. num

205).

Application/Control Number: 13/460,805                                          Page 6
Art Unit: 2433

Regarding <u>claim 5</u>, <u>Bauchot et al.</u> teaches a player system configured to play
encrypted content transferred by a trusted server, said system comprising: a first
interface configured to communicate with a first storage device storing encrypted
content, wherein the content was transferred by the trusted server to the first storage
device from a second storage device (paragraph 0041); and a processor configured to
authenticate the first storage device (paragraph 0051), establish a secured
communication channel with the first storage device via the first interface (paragraph
0051), receive, from the first storage device, a binding cryptographic key that is unique
to the second storage device and based on a key that was concealed in the second
storage device (paragraph 0039), receive, from the first storage device, a second
cryptographic key that is associated with the content (paragraph 0067), determine an
access key for the content based on a cryptographic combination of the binding
cryptographic key and the second cryptographic key (paragraph 0067), receive, from
the first storage device, the encrypted content, and decrypt the content based on the
access key (paragraph 0067).

Regarding <u>claim 6</u>, <u>Bauchot et al.</u> teaches wherein the processor is configured to
mutually authenticate with the first storage device based on a public key infrastructure
(paragraph 0110).

Regarding claim 7, Bauchot et al. teaches wherein the processor is configured to determine authorization for playback of the content from the first storage based on a digital certificate (paragraph 0079-0080).

Regarding claim 8, Bauchot et al. teaches wherein the processor is configured to render the content into an audio format (paragraph 0002).

Regarding claim 9, Bauchot et al. teaches wherein the processor is configured to render the content into a video format (paragraph 0002).

Regarding claim 10, Bauchot et al. teaches further comprising an output interface for outputting the content to a display (fig. 1, ref. num 235).

Regarding claim 11, Bauchot et al. teaches a method of enabling authorized transfer of content via a trusted server from a first storage to a second storage, said method comprising: receiving a binding key that is unique to the first storage and binds the content to the first storage (paragraph 0039); encrypting, by the second storage, the binding key based on a second concealed key that is concealed on the second storage (paragraph 0047); storing the encrypted binding key in a secure area of the second storage (paragraph 0039); receiving a first cryptographic key from the first storage (paragraph 0039); encrypting, by the second storage, the first cryptographic key based on a second concealed key that is concealed on the second storage (paragraph 0047);

and storing the first cryptographic key in the secure area of the second **storage**

(paragraph 0067).


Regarding claim 12, Bauchot et al. teaches further comprising copying encrypted

content from the first storage to the second storage (paragraph 0028).


Regarding claim 13, Bauchot et al. teaches further comprising authorizing

transfer of the content based on the received at least one digital certificate (paragraph

0079-0080).


Regarding claim 14, Bauchot et al. teaches further comprising establishing a

secured communication channel via the trusted server with the first storage (paragraph

0051).


Regarding claim 15, Bauchot et al. teaches further comprising receiving, from a

trusted site, a digital certificate indicating that the content has been copied (paragraph

0079-0080).


Regarding claim 16, Bauchot et al. teaches further comprising encrypting **a** digital

certificate and storing the encrypted digital certificate in the secure area of the second

storage (paragraph 0079-0080).

Application/Control Number: 13/460,805                                    Page 9
Art Unit: 2433

Regarding claim 17, Bauchot et al. teaches wherein establishing the secured communication channel comprises authenticating the first storage via a host device (paragraph 0039).

Regarding claim 18, Bauchot et al. teaches wherein receiving a binding key that is unique to the first storage comprises receiving an ephemeral binding key that is generated based on a request by the second storage (paragraph 0013).

Regarding claim 19, Bauchot et al. teaches wherein the binding key is based on a first concealed key that is concealed on the first storage (paragraph 0047).

Regarding claim 20, Bauchot et al. teaches authorizing copying of the content based on at least one of a digital certificate or a permission specified in secure metadata of the content (paragraph 0079-0080).

Any inquiry concerning this communication or earlier communications from the examiner should be directed to BRANDON HOFFMAN whose telephone number is (571)272-3863.  The examiner can normally be reached on M-F 8:30 - 5:00.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Jeffrey C. Pwu can be reached on 571-272-6798.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Application/Control Number: 13/460,805                                          Page 10
Art Unit: 2433

        Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/Brandon S Hoffman/
Primary Examiner, Art Unit 2433

PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re Appln. of: | Blankenbeckler, et al. | Art Unit: | 2433 |
| Serial No.: | 13/460,805 | Examiner: | Brandon S Hoffman |
| Filing Date: | 04/30/2012 | Confirmation No.: | 8288 |
| For: DIGITAL RIGHTS MANAGEMENT SYSTEM TRANSFER OF CONTENT AND DISTRIBUTION | | Docket No.: | T5921 |

### REPLY TO NON-FINAL OFFICE ACTION MAILED ON AUGUST 6, 2013

MAIL STOP AMENDMENT
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Examiner:

In response to the Office Action mailed on August 6, 2013 ("Office Action") for the above-identified patent application, please consider the following amendments and/or remarks.

Amendments to the **Claims** are reflected in the listing of claims that begins on page 2 of this paper.

**Remarks** begin on page 6 of this paper.

AMENDMENTS TO THE CLAIMS

This listing of claims will replace all prior versions, and listings, of claims in the application:

1.    (**Currently amended**) A first storage device configured to provide content to a player system for rendering of the content~~, wherein the content has been transferred by a trusted server from a second storage device~~, said first storage device comprising:

a storage medium comprising a user area that is accessible by the player system and a non-user area that is not accessible by the player system, <u>the user area storing content that has been transferred by a trusted server from a second storage device</u>; and

a controller comprising a cryptographic module providing a hardware root of trust and a secured memory, wherein the controller is configured to<u>:</u>

authenticate the player system~~,~~<u>;</u>

establish a secured communication channel with the player system based on the authentication~~,~~<u>;</u>

provide, to the player system, a first cryptographic key, wherein the first cryptographic key is unique to the second storage device and based on a key that was concealed by the second storage device~~,~~<u>;</u>

provide, to the player system, a second cryptographic key that is associated with the content~~,~~<u>;</u> and

provide, to the player system, the content in encrypted form from the user area of the storage medium, wherein the content is accessible based on a cryptographic combination of the first cryptographic key and the second cryptographic key.

2.    (**Original**) The first storage device of claim 1, wherein the controller is configured to authenticate the player system based on public key infrastructure.

3.    (**Original**) The first storage device of claim 1, wherein the cryptographic module is configured to encrypt the first cryptographic key that is unique to the second storage device based on a key that is concealed by the cryptographic module.

4.    (**Currently amended**) The first storage device of claim 1, wherein the storage medium is a magnetic media comprising the user area and the non-user area cryptographic module is configured to encrypt the first cryptographic key that is unique to the second storage device based on a key that is concealed by the cryptographic module.

5.    (**Currently amended**) A player system configured to play encrypted content transferred by a trusted server, said system comprising:

    a first interface configured to communicate with a first storage device storing encrypted content, wherein the content was transferred by the trusted server to the first storage device from a second storage device; and

        a processor configured to:

            authenticate the first storage device,;

            establish a secured communication channel with the first storage device via the first interface;,

            receive, from the first storage device, a binding cryptographic key that is unique to the second storage device and based on a key that was concealed in the second storage device,;

            receive, from the first storage device, a second cryptographic key that is associated with the content,

            determine an access key for the content based on a cryptographic combination of the binding cryptographic key and the second cryptographic key,;

            receive, from the first storage device, the encrypted content,; and

            decrypt the content based on the access key.

6.      (**Original**) The player system of claim 5, wherein the processor is configured to mutually authenticate with the first storage device based on a public key infrastructure.

7.      (**Original**) The player system of claim 5, wherein the processor is configured to determine authorization for playback of the content from the first storage based on a digital certificate.

8.      (**Original**) The player system of claim 5, wherein the processor is configured to render the content into an audio format.

9.      (**Original**) The player system of claim 5, wherein the processor is configured to render the content into a video format.

10.     (**Original**) The player system of claim 5, further comprising an output interface for outputting the content to a display.

11.     (**Currently amended**) A method of enabling authorized transfer of content via a trusted server from a first storage to a second storage, said method comprising:

receiving a binding key that is unique to the first storage and binds the content to the first storage;

encrypting, by the second storage, the binding key based on a second concealed key that is concealed on the second storage;

storing the encrypted binding key in ~~the~~ a secure area of the second storage;

receiving a first cryptographic key from the first storage;

encrypting, by the second storage, the first cryptographic key based on a second concealed key that is concealed on the second storage; and

storing the first cryptographic key in the secure area of the second ~~device~~storage.

12.    (**Currently amended**) The method of claim 11, further comprising copying ~~the~~ encrypted content from the first storage to the second storage.

13.    (**Original**) The method of claim 11, further comprising authorizing transfer of the content based on the received at least one digital certificate.

14.    (**Original**) The method of claim 11, further comprising establishing a secured communication channel via the trusted server with the first storage.

15.    (**Original**) The method of claim 11, further comprising receiving, from a trusted site, a digital certificate indicating that the content has been copied.

16.    (**Currently amended**) The method of claim 11, further comprising encrypting ~~the~~ a digital certificate and storing the encrypted digital certificate in the secure area of the second storage.

17.    (**Currently amended**) The method of claim ~~11~~14, wherein establishing the secured communication channel comprises authenticating the first storage via a host device.

18.    (**Original**) The method of claim 11, wherein receiving a binding key that is unique to the first storage comprises receiving an ephemeral binding key that is generated based on a request by the second storage.

19.    (**Original**) The method of claim 11, wherein the binding key is based on a first concealed key that is concealed on the first storage.

20.    (**Original**) The method of claim 11, authorizing copying of the content based on at least one of a digital certificate or a permission specified in secure metadata of the content.

## REMARKS

By way summary, claims 1-20 are rejected.  Applicants have amended independent claims 1, 5 and 11.  Some dependent claims have been amended to correct minor informalities.  Therefore, claims 1-20 are currently pending.

## Claim objections

Claim 4 is objected to for being the same as claim 3.  Applicants have amended claim 4 to recite different limitations that claim 3.  Applicants respectfully request withdrawal of this objection.  No new matter has been added.

## The claims are not anticipated by the cited art

The Office Action rejected independent claim 1 under 35 U.S.C. § 102(b) as being anticipated by U.S. Patent No. 6,609,199 to DeTreville ("DeTreville").  Applicants respectfully traverse this rejection because DeTreville fails to identically teach every element of the claim.

Claim 1 recites, among other things:

a storage medium comprising a user area that is accessible by the player system and a non-user area that is not accessible by the player system, the user area storing content that has been transferred by a trusted server from a second storage device; and

a controller comprising a cryptographic module providing a hardware root of trust and a secured memory, wherein the controller is configured to:

…

provide, to the player system, a first cryptographic key, wherein the first cryptographic key is unique to the second storage device and based on a key that was concealed by the second storage device;

provide, to the player system, a second cryptographic key that is associated with the content; and

provide, to the player system, the content in encrypted form from the user area of the storage medium, wherein the content is accessible based on a cryptographic combination of the first cryptographic key and the second cryptographic key.

DeTreville fails to teach or suggest at least the above limitations of claim 1. DeTreville describes an "invention [that] provides for authentication between an open system and a portable IC [integrated circuit (IC) devices such as smart cards] device that can be coupled to the open system."  DeTreville, Col. 2:33-35.  The portable IC and the open system then authenticate with each other to establish trusted communication.   Id., Col. 2:44-51.  Meanwhile, the present application describes a "DRM system [that] enables secure copying or transfer of content and/or content metadata, for example, **from one storage device to another storage device via a trusted server** [where] the transfer of the content and the content metadata is brokered by a trusted server that is authenticated and trusted by both sets of storage devices." Paragraph 23.  Fundamentally, the system in DeTreville operates in a different way, as communications are only between two devices (IC and open system) rather than four devices (player system, trusted server, and first and second storage devices).

As recited in claim 1, two cryptographic keys are provided **by the first storage device to the player system** ("a first cryptographic key…**unique to the second storage device**" and "a second cryptographic key that is associated with the content") to access "content in encrypted form from the user area of the storage medium, wherein the content is accessible based on a cryptographic combination of the first cryptographic key and the second cryptographic key."  The Office Action cites col. 20, lines 3-25--which refers to FIG. 11--and Fig. 13, ref. num 464 of DeTreville as teaching these limitations.  However, these sections describe only communications between the portable IC and the internal operations of the open system/computer ("Computer 118 calls code in a **secure page** using a special trap facility that can **be located in a processor or bus-control chipset**" and "FIG. 11 diagrams **components 400 employed in the secure pages** approach in an illustrative embodiment."—see Col: 17: 35-37 and 65-66).  Even assuming, for the sake argument, that DeTreville's portable IC corresponds to the first storage device of claim 1 and the DeTreville's open system corresponds to the player system of claim 1, the Office Action fails to show that DeTreville teaches or suggests that  "the user area [is] storing content that has been

transferred by a **trusted server** from a second storage device" or the use of a "first cryptographic key [that] is unique to the **second storage device**."

> Claim 5 recites, among other things, "a **player system**…comprising:"
>> *a first interface configured to communicate with a first storage device storing encrypted content, **wherein the content was transferred by the trusted server to the first storage device from a second storage device**; and*
>> *a processor configured to:*
>>> *…*
>>> *receive, from the first storage device, a **binding cryptographic key that is unique to the second storage device** and based on a key that was concealed in the second storage device;*

> Claim 11 recites, among other things:
>> *A method of enabling authorized transfer of content via **a trusted server from a first storage to a second storage**, said method comprising:*
>>> *receiving a binding key that is unique to the first storage and binds the content to the first storage;*
>>> *encrypting, by the **second storage, the binding key based on a second concealed key that is concealed on the second storage**;*

For similar reasons as described above, the Office Action fails to show that DeTreville teaches or suggests the above limitations. Accordingly, reconsideration and withdrawal of the rejections of claims 1, 5 and 111 is now respectfully requested.

## Dependent claims

Applicant respectfully submits that the rejections of the dependent claims are improper in view of the respective dependency of each such claim from an allowable independent claim. In addition, the dependent claims recite features that represent additional patentable distinctions over the cited art.

## Conclusion

The present application is believed to be in condition for allowance.  If, however, any unresolved issues remain, the Examiner is respectfully invited to contact the undersigned attorney of record at the telephone number indicated below and whatever is required will be done at once.

Although the present communication may include alterations to the application or claims, or characterizations of claim scope or referenced art, Applicants are not conceding in this application that previously pending claims are not patentable over the cited references. Rather, any alterations or characterizations are being made to facilitate expeditious prosecution of this application.  Applicants reserve the right to pursue at a later date any previously pending or other broader or narrower claims that capture any subject matter supported by the present disclosure, including subject matter found specifically disclaimed herein or by any prior prosecution. Accordingly, reviewers of this or any parent, child or related prosecution history shall not reasonably infer that the Applicants have made any disclaimers or disavowals of any subject matter supported by the present application.

Applicants have endeavored to address all of the Examiner's concerns as expressed in the outstanding Office Action.  Accordingly, arguments in support of the patentability of the pending claim set are presented above.  In light of the above remarks, reconsideration and withdrawal of the outstanding rejections are respectfully requested.  If the Examiner has any questions that may be answered by telephone, he is invited to call the undersigned directly.  Please charge any additional fees, including any fees for additional extension of time, or credit overpayment to Deposit Account No. 23-1209.  A 1-month extension of time is respectfully petitioned.

Respectfully submitted,


Date:  12/5/13                          By:  /Don Pua/
                                              Don Pua, Esq.
                                              Reg. No. 67,028



WESTERN DIGITAL CORPORATION
3355 Michelson Drive, Suite 100
Irvine, CA  92612
Tel.:   (949) 672-7000
Fax:   (949) 672-6604

**If the attorney is unavailable, please direct inquiries to:**
**Tanya Josephs, IP Paralegal:  (949) 672-9439**