# EXHIBIT 3

```
                                                          Page 1
 1           UNITED STATES DISTRICT COURT
 2          NORTHERN DISTRICT OF CALIFORNIA
 3
 4   WESTERN DIGITAL TECHNOLOGIES,)
     INC., WESTERN DIGITAL IRELAND)
 5   LTD., SANDISK 3D IP HOLDINGS )
     LTD., SANDISK TECHNOLOGIES    )
 6   LLC, and SANDISK STORAGE      )
     MALAYSIA SDN. BHD.,           )
 7                                 )
         Plaintiff,                )
 8                                 ) Case No.
     v.                            ) 5:22-cv-4376
 9                                 )
     VIASAT, INC.,                 )
10                                 )
         Defendant.                )
11
12
13
14
15
16    VIDEOTAPED REMOTE DEPOSITION VIA ZOOM OF:
17            EXPERT KEVIN C. ALMEROTH, PH.D.
18            MONDAY, APRIL 8, 2024
19            8:06 A.M. PACIFIC TIME
20
21
22
23
24
     Reported by:  PAULA A. PYBURN
25                 CSR 7304, RPR, CLR
```

```
 1         VIDEOTAPED REMOTE DEPOSITION VIA ZOOM OF
 2    EXPERT KEVIN C. ALMEROTH, PH.D., the witness, taken
 3    on behalf of DEFENDANT, on Monday, April 8, 2024,
 4    8:06 a.m. Pacific Time, before PAULA A. PYBURN,
 5    CSR 7304, RPR, CLR.
 6
 7
 8    APPEARANCES OF COUNSEL VIA VIDEOCONFERENCE:
 9
10    FOR PLAINTIFF:
11        GIBSON, DUNN & CRUTCHER LLP
12        BY:  ROBERT VINCENT, ESQ.
13        2001 Ross Avenue
14        Suite 2100
15        Dallas, Texas 75201-2923
16        214.698.3281
17        rvincent@gibsondunn.com
18
19
20
21
22
23
24
25
```

Page 3

1  APPEARANCES VIA VIDEOCONFERENCE:   (CONTINUED)
2
3  FOR DEFENDANT AND THE WITNESS:
4       QUINN EMANUEL URQUHART & SULLIVAN, LLP
5       BY:  NICOLA FELICE, ESQ.
6       51 Madison Avenue
7       22nd Floor,
8       New York, New York 10010
9       212.849.7000
10      nicolafelice@quinnemanuel.com
11
12  ALSO PRESENT:
13      Robert Benimoff, Concierge Technician
14      David West, Videographer
15
16
17
18
19
20
21
22
23
24
25

Page 4

I N D E X

| WITNESS | EXAMINATION | PAGE |
|---|---|---|
| EXPERT KEVIN C. ALMEROTH, Ph.D. | | |
| (BY MR. VINCENT) | | 8 |

E X H I B I T S

| NO. | PAGE | DESCRIPTION |
|---|---|---|
| Exhibit 1 | 9 | Declaration of Kevin C. Almeroth, Ph.D., Regarding Claim Construction |
| Exhibit 2 | 9 | U.S. Patent 9,424,400 |
| Exhibit 3 | 44 | Reply to Non-Final Office Action Mailed on February 6, 2014 |
| Exhibit 4 | 56 | Document Resume, with Attachment |
| Exhibit 5 | 91 | Article Entitled "Scalable Access Control for Web Services" |
| Exhibit 6 | 100 | Excerpts from "Securing Digital Video," VIASAT_00013556 - VIASAT_00013559 |
| Exhibit 7 | 115 | Reply to Office Action Mailed November 4, 2015 |

UNANSWERED QUESTIONS
(None)

Page 69

```
 1    dependent claims.  Dependent claim 2 you see depends
 2    from claim 1?
 3         A    I see that.
 4         Q    So dependent claim 2 reads (as read):
 5              The kiosk of claim 1, further
 6              comprising a local data storage
 7              storing a plurality of encrypted
 8              media content.
 9              Do you see that?
10         A    I do.
11         Q    So, again, based on your understanding of
12    independent and dependent claims, would you agree
13    that claim 2 includes all of the limitations of
14    claim 1?
15         A    It does.
16         Q    And, in addition to those limitations, the
17    "further compromising" language indicates additional
18    limitations that are not present in claim 1.
19              Is that fair?
20              MS. FELICE:  Objection.  Calls for a legal
21    conclusion.
22              THE WITNESS:  I understand in dependent
23    claims there's supposed to be an additional claim
24    limitation, an additional requirement that
25    potentially narrows the scope of the claims.
```

Page 70

```
1          Beyond that kind of general understanding,
2    I don't have a specific legal analysis to offer.
3    BY MR. VINCENT:
4        Q    Okay.  You'll see claim -- dependent
5    claim 3 depends from claim 2?  Do you see that?
6        A    I do.
7        Q    So where it says "the kiosk of claim 2,"
8    that means that claim 3 includes all of the elements
9    of claim 1 and claim 2; is that correct?
10       A    It does.
11       Q    And then claim 3 states (as read):
12                 Further comprising a user
13                 interface for receiving a selection
14                 of the first media content from the
15                 local data storage.
16                 Do you see that?
17       A    I do.
18       Q    So you can correct me if I'm wrong, but
19   this is the -- claim 3 is the first time that the
20   term "user interface" appears in the claims; is that
21   fair?
22       A    As those two words specifically, I think
23   that's right.  I think obviously whether it's there
24   by requirement in "kiosk," you would disagree.
25       Q    And I'm just asking about your opinions
```

Page 71

1   that you've rendered in your declaration.
2        You don't provide any opinions about
3   claim 3 and the presence of claim 3 of the term
4   "user interface" as it -- as it relates to the
5   understanding of the term "kiosk"; is that correct?
6        A    I -- I don't recall.  I don't have the
7   declaration memorized.
8        Q    Okay.  If you can -- if you had any, you
9   can feel free to point that -- to point it out to
10  me.
11       A    I mean, I can take a look.  It's hard for
12  me to say -- maybe there's something there that
13  would -- would fall within that characterization.  I
14  don't see the word "dependent" come up in the body
15  of the declaration in a -- in a particular way.
16            But it's hard for me to say there isn't
17  some portion that would be relevant, some portion of
18  the declaration that would be relevant.
19       Q    Okay.  If you could -- if you can -- I
20  guess sitting here today you're not able to point to
21  anything specific; is that fair?
22       A    I don't have -- I don't have enough recall
23  of the declaration to be able to point you to
24  something specific.  Maybe there's something there
25  that I don't remember.

Veritext Legal Solutions
212-267-6868              www.veritext.com              516-608-2400

Page 72

1    Q    Okay. Well, you have the declaration
2    there; so, if you'd like to just skim through
3    your -- your analysis of "kiosk," you're welcome to.
4    A    I'm fine with --
5         (Simultaneous speakers.)
6    BY MR. VINCENT:
7    Q    -- anything there, but if there's something
8    there that you need to talk about, I'd be happy to
9    understand it.
10   A    I'm fine with the declaration as it -- as
11   it stands. I mean, looking at claim 3, I understand
12   it requires specific feature of a user interface,
13   not just a user interface in general.
14   Q    My asking -- my question is your
15   declaration does not discuss claim 3 and its use of
16   the term "user interface" in terms of what the term
17   "kiosk" means; correct?
18   A    I understand that's where we started, and I
19   explained that I think the declaration speaks for
20   itself. And whether portions of it would bear on
21   that characterization, it would be hard for me to
22   point you TO something specific --
23   Q    Okay. Thank you.
24   A    -- given -- given the nature of the
25   question.

Page 73

1    Q    You say in paragraph 54 -- you say (as
2    read):
3             For example, the '400 patent
4         describes a kiosk as being a, quote,
5         device used to access and distribute
6         content provided by the system 100,
7         end quote.
8         Do you see that?
9    A    I do.
10   Q    And you quote column 6, lines 36 to 37, of
11   the '400 patent.
12   A    Yes.
13   Q    Could you turn to that section of the '400
14   patent.
15   A    Okay.  I'm there.
16   Q    There's a part of that quote that's omitted
17   in your declaration.  It's different from that
18   sentence.  It says -- hold on.
19            In fact, it says (as read):
20             The kiosk 106 may be any device
21        used to access and distribute
22        content provided by the system 100.
23        Do you see that?
24   A    I do.
25   Q    Would you -- would you agree with that

Page 74

1   statement from the specification?
2        A    I would, with the understanding that the
3   "may be any device" is talking about the variety of
4   different configurations of what the device would
5   look like, but ultimately, whatever configuration of
6   that device, it would have to be used to access and
7   distribute content provided by the system 100.
8        Q    Understood.  You see in that -- later on in
9   that same paragraph -- sorry.
10            In your declaration quoting that same
11  paragraph, you say (as read):
12                The patent further states that
13            the kiosk, quote, may be implemented
14            as a self-service computer terminal
15            and may comprise various user
16            interface equipment, such as a
17            keyboard, display, et cetera, to
18            allow use of the kiosk 106.
19            Do you see that?
20       A    I do see that.
21       Q    So the first of those statements, "The --
22  the patent states that the kiosk may be implemented
23  as a self-service computer terminal" --
24       A    I see that.
25       Q    -- you'd agree that that sentence, along

Page 75

1  with the next sentence that says, "The kiosk may
2  compromise various user interface equipment," both
3  of those sentences use the term "may"; correct?
4      A    They do.  So they're describing different
5  ways in which the functionality of the kiosk can be
6  implemented.
7      Q    Correct.  So, in your view, however, the
8  kiosk of the asserted claims must have a user
9  interface; correct?
10     A    It is something with a user interface.
11          (Reporter interruption for clarification.)
12          THE WITNESS:  It is something that does
13 have a user interface.
14 BY MR. VINCENT:
15     Q    Okay.  So, despite the specification's use
16 of "may," you are using -- you are saying that a
17 user interface is a requirement of the understanding
18 of what a kiosk is?
19     A    Well, take that last sentence.  It says,
20 "The kiosk may comprise various user interface
21 equipment, such as keyboard, display, et cetera, to
22 allow use of the kiosk."
23          So you can have different -- you may have
24 the inclusion of different kinds of user interface
25 equipment to be able to use the kiosk.

Page 76

1            So, I mean, the specification describes a
2    user and, ultimately, specifically a consumer as
3    something where you can use the device.
4            The "may" there is modifying the different
5    kinds of equipment that can be present in order to
6    facilitate that kind of use.
7            I would be careful to take all of these
8    statements that say "may" and ignore them because
9    they are being interpreted as open-ended with no
10   implication as to what a kiosk needs to be as that
11   term is used in the claims.
12       Q    Okay.
13       A    And that's -- again, I think that's --
14   that's all from the perspective of how a person of
15   skill in the art would understand what a kiosk is
16   reading this portion of the specification.
17       Q    Okay.  You argue -- at least you opine in
18   paragraph 55 that (as read):
19               The kiosk 106 is different than
20            the client system 106.
21            Correct?
22       A    That the kiosk 106' --
23       Q    106'.
24       A    -- is distinguished from the client system
25   106.

```
                                                         Page 77
 1       Q    Understood.
 2            If you'll turn to column 4, around --
 3   beginning line 18.
 4       A    Okay.
 5       Q    This paragraph is discussing client system
 6   106.
 7            Do you see that?
 8       A    Yes.
 9       Q    And so this is the client system 106 that
10   in your view is distinguished from the kiosk 106';
11   right?
12       A    I think that's the perspective a person of
13   skill in the art would have when the kiosk is being
14   described as 106'.  So it's -- you would have the
15   requirements of a client system, but then also
16   different from a client system.
17       Q    Okay.  You see at the bottom of that
18   paragraph, around line 33, 34, it says (as read):
19                The client system 106 is further
20           described with reference to
21           Figure 4?
22       A    Yes.
23       Q    If you'll turn to the description of
24   Figure 4 in the patent, and that begins, I believe,
25   at column 8, line 29.
```

Page 78

1     A     Okay.  I'm at column 8, line 29.
2     Q     So feel free to look.  So I see Figure 4's
3  description begins column 8, line 29, goes on all
4  the way to column 10, line 15, before the
5  description of Figure 5 begins?
6     A     Okay.
7     Q     Do you see anywhere in that description of
8  Figure 4 where it uses the term "kiosk"?
9     A     Let's see.  Sorry, when -- when were you
10 cutting off?
11    Q     I was cutting off at column 10, line 15,
12 because that's when the discussion of Figure 5
13 begins.
14    A     I don't specifically see the mention of
15 "kiosk."  I might have missed it.  I think the
16 patent speaks for it itself, whether it uses the
17 term "kiosk" or 106' in that instance.
18    Q     Well -- okay.  So at least what I see is
19 that every time the -- you know, the indicator 106
20 is used, it's used with "client system 106."
21          Do you see any reason to disagree with
22 that?
23    A     I don't, but I think the document speaks
24 for itself.
25    Q     Okay.  So, based on what we just read back

Page 79

1    on column 4, where it says, "The client system 106
2    is further described with reference to Figure 4,"
3    would you agree that the description in Figure 4 in
4    columns 8 through 10 describes that client system
5    106?
6            MS. FELICE:  Objection.  Vague.
7            THE WITNESS:  I think that's an incomplete
8    characterization.
9    BY MR. VINCENT:
10       Q    Okay.  How would you complete it?
11       A    So there's the description of a client
12   system 106, as you've described, but then it also
13   talks about 106' being the kiosk.  In part, I think
14   we've talked about column 6, line 36.  So it's --
15   it's something that's different than a client system
16   but would have overlapping functionality with a
17   client system.
18            So, I mean, that's in part what it would --
19   the prime in the use of 106 would convey to a person
20   of skill in the art.  It's not the same thing as a
21   client system.  It might do many of the functions of
22   a client system, but would be distinctive over what
23   a client system would be.
24            And so part of the exercise here is to look
25   at the specification, the extrinsic record,