L. Kieran Kieckhefer (SBN 251978)
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94105-0921
Telephone: 415.393.8337
Email: KKieckhefer@gibsondunn.com

Robert A. Vincent (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue Suite 2100
Dallas, TX 75201-2923
Telephone: 214.698.3281
rvincent@gibsondunn.com

Lillian J. Mao (SBN 267410)
GIBSON, DUNN & CRUTCHER LLP
310 University Avenue
Palo Alto, CA 94301-1744
Telephone: 650.849.5307
LMao@gibsondunn.com

Ahmed ElDessouki (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.2345
AElDessouki@gibsondunn.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| WESTERN DIGITAL TECHNOLOGIES, INC., WESTERN DIGITAL IRELAND LTD., SANDISK 3D IP HOLDINGS LTD., SANDISK TECHNOLOGIES LLC, and SANDISK STORAGE MALAYSIA SDN. BHD.<br><br>Plaintiffs,<br><br>v.<br><br>VIASAT, INC.,<br><br>Defendant. | Case No.   4:22-cv-04376-HSG<br><br>**PLAINTIFFS' CLAIM CONSTRUCTION REPLY BRIEF** |

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................................. 1

II. DISPUTED CLAIM TERMS OF THE '400 PATENT ....................................................... 2

    A.  "kiosk" ...................................................................................................................... 2

    B.  "portable data storage device" .................................................................................. 4

    C.  "authenticate the portable data storage device, using at least the unique identifier" .................................................................................................................. 6

    D.  "provide to the portable data storage device . . . a corresponding access key" ............ 7

    E.  "public environment" ................................................................................................ 8

III. DISPUTED CLAIM TERMS OF THE '667 PATENT ....................................................... 9

    A.  "secure region" ......................................................................................................... 9

    B.  "receive an indication of the NAS device having a secure region" ......................... 10

    C.  "access to the secure region is controlled by the media streaming system"… "control streaming access to the digital content stored on the buffer" ...................... 10

IV. CONCLUSION .................................................................................................................. 11

# TABLE OF EXHIBITS

| Exhibit | Document |
|---------|----------|
| Ex. A | U.S. Patent No. 9,424,400 |
| Ex. B | U.S. Patent No. 10,447,667 |
| Ex. C | Excerpts from Deposition of Kevin Almeroth, Ph.D., April 6, 2024 |
| Ex. D | Declaration of Kevin C. Almeroth, Ph.D. Regarding Claim Construction, March 12, 2024 |
| Ex. E | Reply to Non-Final Office Action for U.S. Patent No. 8,914,634, June 6, 2014 |
| Ex. F | Merriam-Webster, Online Dictionary, 2011, "Portable." (VIASAT_00013566) |
| Ex. G | Almeroth, *Scalable Access Control For Web Services* |
| Ex. H | Free On-Line Dictionary of Computing, "Authentication." (VIASAT_00013577) |
| Ex. I | U.S. Patent No. 8,914,634 |

Exhibits are attached to Plaintiffs' Opening Claim Construction Brief (Dkt. 103).

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ActiveVideo Networks v. Verizon Commc'ns*,
    694 F.3d 1312 (Fed. Cir. 2012) ...................................................................................................1

*Acumed LLC v. Stryker Corp.*,
    483 F.3d 800 (Fed. Cir. 2007) ............................................................................................ 2, 6, 8

*Bell Commc'ns v. Vitalink Commc'ns*,
    55 F.3d 615 (Fed. Cir. 1995) .......................................................................................................2

*Board of Regents of the Univ. of Tex. Sys. v. BENQ Am. Corp.*,
    533 F.3d 1362 (Fed. Cir. 2008) .................................................................................................11

*Cordis Corp. v. Medtronic AVE, Inc.*,
    339 F.3d 1352 (Fed. Cir. 2003) ...................................................................................................3

*Eon Corp. IP Holdings v. Silver Springs Networks*,
    815 F.3d 1314 (Fed. Cir. 2016) ............................................................................................. 5, 6

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
    755 F.3d 1367 (Fed. Cir. 2014) ...................................................................................................6

*Intertrust Techs. Corp. v. Microsoft Corp.*,
    275 F. Supp. 2d 1031 (N.D. Cal. 2003), *as amended* (July 7, 2003) ..........................................9

*j2 Glob. Commc'ns, Inc. v. Vitelity Commc'ns, LLC*,
    No. 11-CV-07904-DDP, 2013 WL 5220173 (C.D. Cal. Sept. 13, 2023) ....................................9

*In re Katz Interactive Call Processing Pat. Litig.*,
    639 F.3d 1303 (Fed. Cir. 2011) ...................................................................................................9

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
    358 F.3d 898 (Fed. Cir. 2004) .....................................................................................................7

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351 (Fed. Cir. 2008) ........................................................................................... 1, 11

*Omega Eng'g, Inc. v. Raytek Corp.*,
    334 F.3d 1314 (Fed. Cir. 2003) ............................................................................................. 3, 4

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ............................................................................................. 4, 7

*PPG Indus. v. Guardian Indus. Corp.*,
    156 F.3d 1351 (Fed. Cir. 1998) ......................................................................................... 2, 5, 6

*Schumer v. Lab'y Comput. Sys., Inc.*,
    308 F.3d 1304 (Fed. Cir. 2002) ...................................................................................................2

Gibson, Dunn & Crutcher LLP

iii

# TABLE OF AUTHORITIES
(*continued*)

Page(s)

*Scripps Clinic & Res. Found. v. Genentech, Inc.*,
    927 F.2d 1565 (Fed. Cir. 1991) ................................................................................................. 5

*Summit 6 LLC v. Samsung Elecs. Co., Ltd.*,
    802 F.3d 1283 (Fed. Cir. 2015) ........................................................................................ 1, 5, 8

*Superguide Corp. v. DirecTV Enters., Inc.*,
    358 F.3d 870 (Fed. Cir. 2004) .................................................................................................. 7

Gibson, Dunn &
Crutcher LLP

## I. INTRODUCTION

Viasat's Responsive Claim Construction Brief (Dkt. 104, "RB") confirms that, as explained in Plaintiffs' Opening Claim Construction Brief (Dkt. 103, "OB"), Viasat's proposed constructions violate multiple canons of claim construction, including by contradicting the intrinsic record, importing limitations from the specification, excluding disclosed embodiments, and ignoring claim differentiation. Viasat further confirmed that its proposals are an improper attempt to create non-infringement arguments, not a genuine effort to discern the actual meaning of the claims. Viasat's constructions are unhelpful besides. They would not clarify claim scope or help the jury; they just replace straightforward claim language with unclear terminology that will inject uncertainty and force the parties or court to "construe the construction" down the road.

Faced with these flaws in its proposed constructions, Viasat relies on the *O2 Micro* case and progeny stating that it is the court's duty to resolve disputes regarding the scope of a claim term (*e.g.*, RB at 1, 5-6) and criticizes Plaintiffs for not saying what the plain and ordinary meaning is (*e.g.*, *id.* at 1). But the Federal Circuit has found the *O2 Micro* "duty" satisfied when a court rejects an erroneous construction and concludes that a term does not require further construction. *See, e.g.*, *ActiveVideo Networks v. Verizon Commc'ns*, 694 F.3d 1312, 1326 (Fed. Cir. 2012) ("The district court did not err in concluding that these terms have plain meanings that do not require additional construction. ActiveVideo's proposed construction erroneously reads limitations into the claims and the district court properly rejected that construction and resolved the dispute between the parties." (citing *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1363 (Fed. Cir. 2008)); *Summit 6 LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015) ("Because the plain and ordinary meaning of the disputed claim language is clear, the district court did not err by declining to construe the claim term."). That is the proper approach here. The claim terms are straightforward and do not require construction; Viasat's proposed constructions are improper and should be rejected. In so finding, the Court will have satisfied its duty to resolve the parties' claim construction dispute.

Importantly, not every dispute in Viasat's briefing is a dispute over claim scope, as Viasat might wish. Viasat's brief reveals that it crafted its proposed constructions in an attempt to exclude the accused products. But "a court, under the rubric of claim construction, may [not] give whatever

additional precision or specificity is necessary to facilitate a comparison between the claim and the accused product. Rather, after the court has defined the claim with whatever specificity and precision is warranted by the language of the claim and the evidence bearing on the proper construction, the task of determining whether the construed claim reads on the accused product is for the finder of fact." *PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1355 (Fed. Cir. 1998); *see also Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 806 (Fed. Cir. 2007) ("The resolution of some line-drawing problems … is properly left to the trier of fact."). Viasat's non-infringement arguments are factual questions for the jury, not the Court, to decide. Accordingly, Viasat's proposals should be rejected, and the terms of the '400 and '667 Patents should be given their plain and ordinary meaning.

## II. DISPUTED CLAIM TERMS OF THE '400 PATENT

### A. "kiosk"

Viasat's construction should be rejected for two reasons: (1) the claim preamble—the only place where the term "kiosk" appears—is not limiting, and (2) the intrinsic evidence makes clear that, as the term is used in the '400 Patent, a "kiosk" is not limited to a device with a "user interface … used by consumers." *See* OB at 5-8.

***The preamble is not limiting.*** Viasat does not dispute that "one cannot determine a preamble's effect except by reference to the specific claim of which it is a component." *Bell Commc'ns v. Vitalink Commc'ns*, 55 F.3d 615, 621 (Fed. Cir. 1995). But Viasat's preamble analysis does not examine the claims of the '400 Patent at all. Instead, Viasat refers to arguments made during prosecution of different claims from a different patent. RB at 2-3. Viasat's cites no authority for using prosecution history of a related patent to conclude that the preamble of a different claim in a subsequently-filed patent is limiting. At most, Viasat argues that the term "kiosk" should have consistent meaning across the two patents. RB at 3 n.5. But that does not answer the question of whether the preamble is limiting. Because "the body of the claim sets out the complete invention, and the preamble is not necessary to give 'life, meaning and vitality' to the claim," the preambles of the claims of the '400 Patent, and their use of the term "kiosk," are not limitations of the claims. *Schumer v. Lab'y Comput. Sys., Inc.*, 308 F.3d 1304, 1310 (Fed. Cir. 2002); *see also* OB at 5-6. Because the preamble is not limiting, the Court need not construe the terms that appear therein.

***Viasat's construction is incompatible with the intrinsic record.*** The specification provides that a "user interface" is an ***optional*** feature of certain embodiments—it is not a claim requirement. *See* OB at 6-8. Indeed, every one of Viasat's citations to the specification involves explicitly non-limiting examples of characteristics that a kiosk "***may***" have. RB at 3-4. Most notably, the specification states that "[t]he kiosk 106 ***may*** comprise various user interface equipment." '400 Patent at 6:41-43. This confirms that, contrary to Viasat's proposed construction, the user interface is not required. Indeed, Viasat later makes that very argument: the patent's use of "may" means the description that follows is not "required definitionally."[1] RB at 6.

Viasat's argument against claim differentiation (RB at 4) is unavailing. Claims 3 and 11 do not recite a "more specialized" user interface; they recite "***a user interface***"—*i.e.*, a new limitation not claimed in independent claim 1. *See* OB at 7. These dependent claims cover the embodiments described in the portions of the specification that Viasat cites. *See* RB at 3-4. Viasat's attempt to require a user interface in ***all*** instances of the claimed "kiosk" should be rejected.

The prosecution history is consistent with the claims and specification. Viasat's reliance on the prosecution of the parent '634 Patent to support its "user interface" requirement, arguing that the patentee disclaimed claim scope, is misplaced. RB at 6–7. Prosecution history disclaimer must be "clear and unmistakable" to constitute "a disavowal of claim scope." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325-26 (Fed. Cir. 2003). For example, if a "statement is amenable to multiple reasonable interpretations," it does not constitute a clear and unmistakable surrender of scope. *Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352, 1359 (Fed. Cir. 2003) (statement that prior art had "no wall surface having a plurality of slots" "could have meant either that coiled wire is not a wall surface or that the openings in the coil do not constitute slots"). Viasat points to a single statement of the patentee—that the prior art "fail[ed] to even mention use of a kiosk"—that makes no mention of a "user interface." RB at 3, 6–7. In fact, the prior art at issue here ***did*** disclose a user interface. *See* RB, Ex.

---

[1] Viasat makes this argument to attack Plaintiffs' purported "lexicography" construction. RB at 6. But Plaintiffs are not arguing lexicography. Rather, Plaintiffs note that the patent's broad statement that the kiosk "may be any device used to access and distribute content provided by the system" ('400 Patent at 6:36-37) contradicts Viasat's narrow construction, which additionally requires a user interface.

1 (Bauchot) at ¶ 35 ("A **personal computer** 240 may be connected to the media center 200 for **receiving commands form the user**."); *id.* Fig. 5A. There is no evidence—let alone a clear and unmistakable statement—that the patentee distinguished the prior art on the ground that it lacked a user interface. Thus, regardless of whether the applicant made any disclaimer with respect to "kiosk," the arguments during prosecution do not support Viasat's proposed construction requiring a user interface. *See Omega*, 334 F.3d at 1326-28 (finding district court erred in its construction precluding projection of light into the interior of the energy zone because "the patentee's arguments did not focus on the projected laser beams remaining outside the energy zone").

Finally, Viasat argues that its expert's testimony is "unrebutted." RB at 5. To the contrary, Dr. Alemroth's opinions are expressly rebutted—**by the intrinsic record itself**. Viasat cannot trump the express language of the claims and specification with expert testimony. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1319 (Fed. Cir. 2005) (The court "should discount any expert testimony 'that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent.'").

    **B.** **"portable data storage device"**

As used in the '400 Patent, the term "portable data storage device" is clear and does not require construction, and Viasat's proposed construction would be confusing for the jury to apply. *See* OB at 9. In particular, Viasat proposes to introduce the word "easily" when that term does not appear anywhere in the '400 Patent nor in Viasat's extrinsic evidence. Viasat's extensive explanation of how a **POSA** could understand what is "easily carried or moved about" (RB at 8) confirms that Viasat's proposal should be rejected. As an initial matter, the proper inquiry is whether the claim term itself is understandable to a POSA (it is) and whether the construction clarifies that meaning for the **jury** (it does not). The members of the jury are not POSAs, and Viasat's explanation simply demonstrates that one would need to "construe the construction" before a jury could actually apply Viasat's proposed construction to the accused product. Such an approach is unhelpful and strays further afield from the intrinsic record. The *Deere* case Viasat cites (RB at 8) was an entirely different situation, since there the term "easily" appeared in the claim itself.

Similarly, this case is distinguishable from *Eon Corp. IP Holdings v. Silver Springs Networks*, 815 F.3d 1314 (Fed. Cir. 2016). The patents in *Eon* provided "extensive guidance about the terms 'portable' and 'mobile'" that the court used to conclude that, in context, the terms could not cover electric utility meters that were permanently affixed to a building. *See id.* at 1317, 1321-22. For example, the *Eon* court noted that the "portability feature" was intertwined with the advantages of the invention. *Id.* at 1317. In contrast, the '400 Patent does not ascribe any special meaning or significance when it refers to "portable" devices, and Viasat identifies none. *See Summit 6*, 802 F.3d at 1291 (finding claim term did not require construction because it was "comprised of commonly used terms; each is used in common parlance and has no special meaning in the art"). The court in *Eon* found that the term "portable" could have a "broad meaning," such as "something that was 'capable of being easily moved … but not that it actually has to move.'" *Eon*, 815 F.3d at 1321. The court only rejected that construction because of the discussion in the intrinsic record. *Id.* Here, however, the '400 Patent does not have any limiting disclosure, and "portable" should be given the broader meaning.

Viasat's proposed construction is also unsupported in its reference to a "user" of the portable data storage device. Such a "user" requirement appears nowhere in the intrinsic record, nor even in Viasat's extrinsic evidence. *See* Dkt. 104, Ex. 6 (dictionary definition of "portable" with no reference to a user). The "by a user" portion of Viasat's proposal is thus another unsupported and unduly narrowing aspect that should be rejected.

Viasat's final argument, that claim construction is "necessary to make clear that … the intrinsic evidence does ***not*** support defining 'portable data storage device' as an embedded TV screen secured in each fixed seat on an American Airlines jet" (RB at 8), is flawed for multiple reasons. First, "the words of the claims are construed independent of the accused product." *Scripps Clinic & Res. Found. v. Genentech, Inc.*, 927 F.2d 1565, 1580 (Fed. Cir. 1991). Plaintiffs accuse a variety of devices as the claimed "portable data storage device," but discussion of Plaintiffs' infringement contentions has no place in claim construction. Second, the parties may dispute infringement as to certain accused devices, but "a court, under the rubric of claim construction, may [not] give whatever additional precision or specificity is necessary to facilitate a comparison between the claim and the accused product." *PPG Indus.*, 156 F.3d at 1355. Viasat's arguments are factual questions for the jury, who are tasked with

5

comparing the claims with the accused product. This Court is not required to "purge every shred of ambiguity" as part of claim construction. *Eon*, 815 F.3d at 1318-19 (quoting *Acumed*, 483 F.3d at 806; *PPG Indus.*, 156 F.3d at 1355).

Viasat's unsupported and unhelpful construction should be rejected.

### C.  "authenticate the portable data storage device, using at least the unique identifier"

Viasat's proposed construction improperly conflates the concept of authentication with authorization, even though both intrinsic and extrinsic evidence treats them as distinct. *See* OB at 9-11. Viasat incorrectly asserts that "authentication can encompass authorization" (RB at 12). To the contrary, the cited passage describes "authentication of … identity" and "determin[ing] authorization for various uses of … content" as distinct functions, listed separately and described in different terms—neither subsuming the other. '400 Patent at 3:38-41. This falls far short of the "exacting" standard for lexicography, under which "a patentee must clearly set forth a definition of the disputed claim term other than its plain and ordinary meaning" and "clearly express an intent to redefine the term." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014). Viasat also incorrectly conflates **providing** access, as recited in the claims, with **determining permission** to access, i.e., authorization.[2] *See* RB at 12. In reality, the claims provide no support for Viasat's assertion that authentication somehow encompasses authorization.

Moreover, the extrinsic evidence contradicts Viasat's construction. Viasat even admits that industry standards for entity authentication are designed to establish identity, not trust/authorization. RB at 10 ("The standard, ISO/IEC 9798 (2010), specifies an authentication model … where '[t]he goal … is to *establish whether the claimant of a certain identity is in fact who it claims to be*.'" (modifications and emphasis in original)).

Viasat also complains that "authenticate" is a "technical term" that "requires construction in order to make it understandable to a jury" (RB at 9). But that is clearly not true. Both "authenticate"

---

[2] Viasat's attempt to treat Plaintiffs' quoting Viasat's own expert (OB at 10) as an "admi[ssion] [of] the definition of authorization" (RB at 12) is disingenuous. Plaintiffs were upfront about what they meant by "authorization." OB at 9 ("authorization (*i.e.*, to confirm that an entity is permitted to access specific content)").

and "authorize" have well-known and distinct meanings that are easily understandable by the jury—i.e., the difference between verifying *who* a person is as opposed to verifying *what* that person has access to. Viasat's proposal is unnecessary and confusing. There is no need to introduce another technical term of art—the concept of "trust"—whose meaning is unclear in the context of the claim term. *See* OB at 11; Ex. C (Almeroth Tr.) at 111:10-112:4 (Viasat's expert unable to explain what "trusted" means).

Viasat's proposed construction is unsupported and would not be helpful to the jury, and should be rejected.

### D. "provide to the portable data storage device . . . a corresponding access key"

Viasat's proposed construction improperly imports limitations from the specification and excludes disclosed embodiments. *See* OB at 12-13. Viasat's briefing simply confirms that its proposal should be rejected. For example, Viasat argues that the claim should be construed in light of "the only access key described in any embodiment" (RB at 13), even though the Federal Circuit "has expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (collecting cases). Viasat also asserts that, because certain concepts "are discussed extensively throughout the specification," "there is no need to spell them out in the claims as well." RB at 15. This is a bald admission that Viasat's proposal simply imports such discussion from the specification—another violation of claim construction principles. *See, e.g.*, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments."); *Superguide Corp. v. DirecTV Enters., Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004) ("Though understanding the claim language may be aided by explanations contained in the written description, it is important not to import into a claim limitations that are not part of the claim.").

On top of these glaring problems, Viasat fails to rebut Plaintiffs' showing that Viasat's proposal would improperly exclude disclosed embodiments in which other components decrypt the media content. *See* OB at 12. Instead of addressing the disclosed embodiment, Viasat concocts a theoretical

system in which **both** the playback device and the portable data storage device perform decryption. RB at 14-15. But Viasat's hypothetical does not change the fact that the specification describes embodiments where the playback device decrypts the media content regardless of what the portable data storage device is doing, and some of those embodiments would be excluded from Viasat's proposed construction. Viasat's unduly narrow proposal should be rejected.

### E. "public environment"

The term "public environment" is also clear, and does not require construction. *See* OB at 13-14; *Summit 6*, 802 F.3d at 1291 (finding claim term did not require construction because it was "comprised of commonly used terms; each is used in common parlance and has no special meaning in the art"). Viasat's proposed construction, in contrast, is harder to understand, and unsupported besides.

Viasat's proposal is pulled out of thin air. The only portion of the intrinsic record that Viasat cites is the statement that the kiosk may be "placed in a public environment" (RB at 16 (citing '400 Patent at 6:39-41)), which says nothing about, for example, the "general" public or who may "access" a kiosk placed in the public environment. Similarly, the only extrinsic evidence Viasat cites is a dictionary definition of "public." RB at 16. But Viasat's proposed construction retains the word "public," so it can hardly be using "general" in the same sense as the dictionary. Moreover, the dictionary, like the patent, says nothing about "access."

In addition, Viasat's attempts to answer the ambiguities that Plaintiffs identified (RB at 16) do nothing to clarify how a jury will decide what is "accessible" and what is the "general" public. At bottom, Viasat has not performed a proper process of attempting to discern the true meaning of the claim language. Viasat has simply dressed up its non-infringement argument as a supposed claim construction issue when, in reality, it is a factual question for the jury. *See* RB at 16-17. The accused products are generally located in the cabins of commercial aircraft. Whether that constitutes a "public environment" is a "line-drawing problem[]" whose "resolution … is properly left to the trier of fact." *Acumed*, 483 F.3d at 806. Viasat's unhelpful and unsupported construction should be rejected.

### III. DISPUTED CLAIM TERMS OF THE '667 PATENT

#### A. "secure region"

Viasat's proposed construction improperly excludes disclosed embodiments and is unhelpful by introducing language that is less clear than the claim language itself and is "likely to confuse the jury, and, thus, frustrate one of claim construction's chief purposes." *j2 Glob. Commc'ns, Inc. v. Vitelity Commc'ns, LLC*, No. 11-CV-07904-DDP, 2013 WL 5220173, at *6 (C.D. Cal. Sept. 13, 2023); *see* OB at 14-16. The '400 Patent describes several embodiments of the "secure region," including a region that is non-user accessible, a region that requires content provider permission to access, a hidden region, and an encrypted region. OB at 15. Viasat's proposal, however, would define "secure region" only in terms of accessibility, thereby improperly excluding the other embodiments. *See In re Katz Interactive Call Processing Pat. Litig.*, 639 F.3d 1303, 1324 (Fed. Cir. 2011) (There "is a strong presumption against a claim construction that excludes a disclosed embodiment.").

Further, Viasat's proposed construction "adds nothing in the way of clarification to the definition of the term and may in fact confuse the jury"—for example, by raising questions about when something is "*freely*" accessible or not. *Intertrust Techs. Corp. v. Microsoft Corp.*, 275 F. Supp. 2d 1031, 1072 (N.D. Cal. 2003), *as amended* (July 7, 2003); *see* OB at 16. Indeed, the briefing demonstrates already that the parties have different understandings of the phrase, which would require the Court to "construe the construction" if Viasat's proposal were adopted. In Plaintiffs' understanding, Viasat's proposal defines the "secure region" in terms of accessibility and thus excludes embodiments that are implemented in another way. *See* OB at 15-16. Viasat, however, insists that all of the disclosed embodiments are actually examples of being "not freely accessible to users." RB at 19. Later, Viasat explicitly construes its own construction, arguing that "the phrase 'not freely accessible' is easily understood in the context of the '667 patent as an area that is accessible only under certain circumstances or conditions." *Id.* at 20. Offering a construction that must then be further clarified and defined for the jury (or even the parties) is a pointless exercise. It also makes no sense to say that the phrase can be understood in the context of the '667 patent when the patent never uses the phrase "freely accessible" or the word "freely" at all. Viasat's improper and unhelpful construction should be rejected.

### B. "receive an indication of the NAS device having a secure region"

Viasat's proposed construction contradicts the plain language of the claims and the descriptions in the specification by requiring that the system not only "receive an indication of the NAS device" but receive an indication that the NAS device has a secure region. *See* OB at 17-18. The grammatical structure of the claim language is clear: the system must "receive an indication of the NAS device." Viasat's proposal does nothing except rearrange the words, which changes their meaning—now, the system must "receive an indication … of a secure region." This wholesale rewriting of the claim is improper.

Like the claims, the specification makes clear that, contrary to Viasat's proposal, a remote content provider "may discover the presence of an NAS having secure storage" in more than one manner, including by receiving an indication only of "the presence of the NAS device" initially. *See* '667 Patent at 7:24-38; OB at 18. Viasat's interpretation of this passage (RB at 23) in no way supports its proposed construction; it simply confirms the plain meaning of the claim language: that the indication is "of the NAS device," and the NAS device has a secure region (among other characteristics), but the indication need not include all of NAS device's characteristics. *See* OB at 17-18. Indeed, Viasat agrees that the structure of the claim "does not suggest the claimed 'indication' must also include the existence of subsidiary attributes" (RB at 23)—the attribute of "having a secure region" is no different. Viasat makes much of the importance of the secure region to the goals of the invention (RB at 21-22), but that is beside the point. The claims certainly recite and require a secure region. But they do not require that the claimed "indication" involve the secure region.

Viasat's construction is at odds with the intrinsic evidence and should be rejected.

### C. "access to the secure region is controlled by the media streaming system"… "control streaming access to the digital content stored on the buffer"

Viasat's proposed construction does nothing except unhelpfully replace the easily understood word "control" with the word "manage." Viasat does not explain how this substitution does anything to clarify the claim language for the jury, nor does Viasat identify any dispute of claim scope that would be resolved thereby. In fact, Viasat does not believe that Plaintiffs "disagree with the intention behind Viasat's proposed construction." RB at 25. (For their part, Plaintiffs cannot explicitly agree or disagree

10

with Viasat's intention, because Plaintiffs do not understand what that intention is.) Since Viasat has not identified any issue requiring the Court's resolution, the Court should decline to construe this term. *See O2 Micro*, 521 F.3d at 1362 ("[D]istrict courts are not (and should not be) required to construe *every* limitation present in a patent's asserted claims.").

Setting aside whether there is any disagreement about Viasat's intention, the intrinsic evidence does make clear that, in the context of the '667 Patent, the term "control" cannot simply be replaced with "manage." Viasat's argument that the specification uses the word "manage" "to describe the maintenance of control encompassed by the claims" (RB at 25) is incorrect. First, it bears note that, in contrast to its pervasive use of the term "control," the specification uses "managed" only once. Second, the use of a different term does not indicate that "managed" and "controlled" are interchangeable, but rather the opposite: that, by using a different word, the patentee meant something different. *Cf. Board of Regents of the Univ. of Tex. Sys. v. BENQ Am. Corp.*, 533 F.3d 1362, 1371 (Fed. Cir. 2008) ("Different claim terms are presumed to have different meanings."). Third, examining the patent's actual usage of the terms confirms that they are used differently. When the specification describes 'who controls what,' the *who* and *what* are different than when it describes 'who manages what.' Specifically, "control" is held by the content provider (the 'who') and the control is over the media content and access thereto (the 'what'). *E.g.*, '667 Patent at 3:19-23, 3:34-37. In contrast, the secure region, not the media content (i.e., a different 'what'), is "managed" by three entities, not just the content provider (i.e., a different 'who'). *Id.* at 5:61-63. Thus, even if Viasat had any clear meaning or purpose in its proposed construction, the proposal is contradicted by the specification and should be rejected.

## IV.   CONCLUSION

For the reasons stated above and in Plaintiffs' Opening Claim Construction Brief (Dkt. 103), the Court should reject Viasat's proposed constructions, and find that the terms of the asserted patents should have their plain and ordinary meaning.

| | | |
|---|---|---|
| 1 | DATED: May 16, 2024 | Respectfully submitted, |
| 2 | | GIBSON, DUNN & CRUTCHER LLP |

By: */s/ L. Kieran Kieckhefer*
L. Kieran Kieckhefer
Robert A. Vincent
Lillian Mao
Ahmed ElDessouki

*Attorneys for Plaintiffs*