QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Steven Cherny (*pro hac vice*)
  stevencherny@quinnemanuel.com
  Patrick D. Curran (Bar No. 241630)
  patrickcurran@quinnemanuel.com
  Tzivya H. Beck (*pro hac vice*)
  tzivyabeck@quinnemanuel.com
111 Huntington Ave, Suite 520
Boston, MA 02199
Telephone:    (617) 712-7100
Facsimile:    (617) 712-7200

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Jodie Cheng (Bar No. 292330)
  jodiecheng@quinnemanuel.com
  Gyu Shik Jang (Bar No. 337747)
  kevinjang@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Nicola R. Felice (*proc hac vice*)
  nicolafelice@quinnemanuel.com
  Vanessa Blecher (*pro hac vice*)
  vanessablecher@quinnemanuel.com
  Alicia Lai (*pro hac vice*)
  alicialai@quinnemanuel.com
295 5th Avenue
New York, NY 10016
Telephone:    (212) 849-7000
Facsimile:    (212) 849-7100

*Attorneys for Defendant Viasat, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| SANDISK TECHNOLOGIES, INC., et al., | Case No.: 4:22-cv-4376-HSG |
| Plaintiff, | **DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO AMEND INFRINGEMENT CONTENTIONS** |
| v. | <u>Hearing</u><br><u>Date:</u> February 28, 2025<br><u>Time:</u> 2:00 p.m.<br><u>Judge:</u> Hon. Haywood S. Gilliam, Jr.<br><u>Courtroom:</u> 2, 4th Fl. |
| VIASAT, INC., | |
| Defendant. | |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1

II.   LEGAL STANDARD.........................................................................................4

III.  ARGUMENT ......................................................................................................5

      A.   Good Cause Does Not Support Plaintiffs' Proposed Amendments........................5

           1.   Plaintiffs Cannot Amend to Address Their Own Claim
                Constructions ................................................................................5

           2.   Source Code Produced Nearly A Year Before Amendment Is Not
                Newly Discovered Material ................................................................8

      B.   Plaintiffs' Request Is Untimely and They Were Not Diligent..............................10

      C.   Viasat Would Be Unduly Prejudiced By Amendment .........................................12

IV.   CONCLUSION..................................................................................................15

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

### <u>Cases</u>

4
5
*ChriMar Sys. Inc. v. Cisco Sys. Inc.*,
  No. 13-CV-01300-JSW-MEJ, 2015 WL 13449849 (N.D. Cal. May 14, 2015) ....................15

6
*Fortinet, Inc. v. Palo Alto Networks, Inc.*,
  No. 09-CV-00036-RMW, 2010 WL 4608250 (N.D. Cal. Nov. 5, 2010) ...............................5

7
8
*Google, Inc. v. Netlist, Inc.*,
  No. C 08-4144 SBA, 2010 WL 1838693, at *2 (N.D. Cal. May 5, 2010) .............................11

9
10
*LG Elecs. Inc. v. Q-Lity Computer Inc.*,
  211 F.R.D. 360 (N.D. Cal. 2002)...........................................................................................13

11
*Oyster Optics, LLC v. Ciena Corp.*,
  No. 20-CV-02354-JSW(LB), 2022 WL 561931 (N.D. Cal. Feb. 24, 2022)...........................15

12
13
*Positive Techs., Inc. v. Sony Elecs., Inc.*,
  No. 11-cv-2226, 2013 WL 322556, at *3 (N.D. Cal. Jan. 28, 2013)......................................15

14
15
*Rembrandt Patent Innovations, LLC v. Apple Inc.*,
  2015 WL 8607390 (N.D. Cal. Dec. 13, 2015) .......................................................................13

16
*Richtek Tech. Corp. v. uPi Semiconductor Corp.*,
  No. C 09-05659 WHA, 2016 WL 1718135 (N.D. Cal., Apr. 29, 2016)................................13

17
18
*Sun Microsystems, Inc. v. Network Appliance, Inc.*,
  No. 07–CV–05488 EDL, 2009 WL 508448 (N.D. Cal. Feb. 27, 2009) ...............................12

19
20
*In re Theos Dark Chocolate Litig.*,
  No. 23-CV-02739-HSG, 2024 WL 4336631 (N.D. Cal. Sept. 27, 2024)................................5

21
*Unicorn Energy AG v. Tesla Inc.*,
  No. 21-CV-07476-BLF, 2023 WL 9181575 (N.D. Cal. Dec. 20, 2023) ...............................13

22
23
*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*,
  236 F. Supp. 3d 1110 (N.D. Cal. 2017) ...................................................................................1

24
25
*VLSI Tech. LLC v. Intel Corp.*,
  No. 17-CV-05671-BLF-NC, 2023 WL 2394539 (N.D. Cal. Mar. 6, 2023) ..........................12

26
*Wisk Aero LLC v. Archer Aviation Inc.*,
  No. 21-CV-02450-WHO, 2022 WL 5007912 (N.D. Cal. Oct. 4, 2022)............................5, 15

27

28

**Statutes**

35 U.S.C. § 102(a) ........................................................................................................4

35 U.S.C. § 102(b) ....................................................................................................4, 15

**Other Authorities**

P.L.R. 3-1 ....................................................................................................................13

P.L.R. 3-6 ............................................................................................................. *passim*

1

## I.    INTRODUCTION

Like many districts, this Court has Patent Local Rules to guide patent infringement cases in an efficient and orderly manner. Early disclosure is at the core of those rules. They require patentees to crystallize infringement theories so that parties may base discovery on those contentions. For that reason, infringement contentions cannot be amended as of right; a party seeking amendment has the burden of meeting conditions before amendment will be allowed. Specifically, amending infringement contentions requires (1) "good cause" for the amendment, (2) a "timely" request and "diligent efforts," and (3) no "undue prejudice to the non-moving party." P.L.R. 3-6. Requiring a party to meet these standards prevents litigation on "shifting sands." *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 236 F. Supp. 3d 1110, 1113 (N.D. Cal. 2017) (denying amendment; "the philosophy behind amending claim charts is decidedly conservative," unlike "the more liberal policy for amending pleadings"). Plaintiffs have not met their burden of showing even one, let alone all, of the requirements for amendment are met.

This case was filed in July 2022. The Court gave Plaintiffs more than enough time for discovery. The Court also efficiently conducted claim construction and issued its order September 20, 2024 after the August 27, 2024 hearing. Plaintiffs now act as if this caused their desire to amend, yet they did not seek leave to amend their infringement contentions promptly upon receiving the Court's Order. They did not even mention amendment due to claim construction during the October 15, 2024 case management conference. But Plaintiffs instead waited four months to seek leave—when only three weeks remained in fact discovery to make that request. Now there simply is no time left for these changes. Allowing amendment at the very end of fact discovery will unfairly prejudice Viasat. Plaintiffs' motion should be denied.

<u>No good cause</u>. Plaintiffs primarily claim good cause to amend because, as expected, the Court construed the asserted claims. But there is nothing new in the Court's Order that would actually support the proposed amendments. Invoking P.L.R. 3-6(a), which addresses a "claim construction by the Court *different from that proposed* by the party seeking amendment," Plaintiffs argue "the Court construed *five* of the eight terms in a way that *neither* party had proposed … and *one* term in the way SanDisk proposed." Mot. 2-3 (emphases added). This is highly misleading.

Plaintiffs initially proposed "plain and ordinary meaning" for all disputed claim terms. At the hearing the Court asked Plaintiffs to explain what they meant by "plain and ordinary meaning," since not providing that understanding up front was "essentially a way of kicking the can down the road and leaving options open." ECF No. 117 ("Hearing Tr.") 6:9-13. Plaintiffs then told the Court that they were "prepared for further elucidation on what we think is the plain and ordinary meaning of the term[s]" and provided alleged "plain and ordinary meanings" for each term. *Id*. 8:23-24. For several terms, the Court adopted the "further elucidation" Plaintiffs proposed. Plaintiffs cannot now call their own proposals "different from [what Plaintiffs] proposed" under P.L.R. 3-6(a). Plaintiffs effectively rely on their own unwillingness to provide specific alleged "plain meanings" to argue good cause to amend. Nothing in the claim construction order, however, was a surprise warranting the massive amendments Plaintiffs now propose.

Plaintiffs' other claimed good cause supposedly is "*[r]ecent discovery* of nonpublic information about the Accused Instrumentality which *was not discovered, despite diligent efforts*, *before the service* of the Infringement Contentions." P.L.R. 3-6(c) (emphases added). Plaintiffs' assertion of diligence is inaccurate. This case has been pending since July 2022. Plaintiffs largely sat on their hands for the entire discovery schedule. Nearly *every* new citation Plaintiffs offers in its proposed amendment is source code Plaintiffs inspected ***ten months ago*** in March 2024 and Plaintiffs cited the code they considered relevant to infringement in their existing March 2024 infringement contentions. Plaintiffs then let that code sit unreviewed for nearly a year until December 2024 when, months after the Court's claim construction order, Plaintiffs decided they needed to find new infringement theories. Although Plaintiffs' new *theories* are "recently discovered," the materials those theories are based on are *not*. This is exactly why formulating a new contention is, in and of itself, not a sufficient basis to amend a party's contentions.

Plaintiffs thus try to create a pretext for their belated amendments. They served a new interrogatory in October 2024 requesting a "mapping" of Viasat's existing code production to documents Viasat had also previously produced. Plaintiffs claimed to need that "mapping" before they could resume the source code review they conducted in February/March 2024. But Plaintiffs never explain why, if this information was needed, they waited more than seven months to ask for

it. Nor do Plaintiffs explain what supposedly new information the "mapping" actually provided. Tellingly, Plaintiffs do not even attach this supposedly important "mapping" to their motion, much less explain in detail why it shows good cause. That likely was no accident; the "mapping" request was a pretext. The interrogatory response says nothing relevant to the specific amendments being proposed here. Plaintiffs' good cause arguments simply do not hold up.

Not timely/diligent. Plaintiffs cannot show they acted diligently and made a timely request to amend. Even if good cause existed, Plaintiffs waited four months after the claim construction order before proposing amendments. That is too long—particularly here, where Plaintiffs already knew by February 15, 2024 what Viasat's proposed constructions were—including the same word-for-word proposals the Court ultimately adopted for "authenticating" ('400) and for "receiving an indication" ('667). Plaintiffs were actively reviewing Viasat source code with full knowledge of Viasat's proposed claim constructions back in March 2024. If Plaintiffs had an infringement theory under Viasat's proposed claim constructions, they should have disclosed that theory in their March 2024 infringement contentions. At a minimum they should have disclosed that theory by the October 15, 2024 case management conference, or at least told the Court during that conference that Plaintiffs had a theory and planned to amend. Instead Plaintiffs waited four months *after* the claim construction order to seek leave for amendment, even though Plaintiffs had Viasat's code and Viasat's proposed constructions six months *before* the claim construction order. Plaintiffs' amendments are not timely.

Undue prejudice. The proposed amendments would be extremely prejudicial to Viasat. On the '400 patent, Plaintiffs seek significant amendments to nearly every limitation, based on thousands of lines of code Plaintiffs never indicated were at issue until now. Plaintiffs also try to add a new accused product for the '400 patent, on the theory that residential Internet service somehow infringes that patent—a massive pivot, and exactly what it previously told the Court Plaintiffs were **not** accusing. In Plaintiffs' own words at the claim construction hearing: "*the accused devices are installed on airplane cabins*. I think *it's undisputed that they are on airplanes*." Hearing Tr. 72:3-8 (emphases added). This new broadened theory (that any video streamed over any modem infringes the patent) has substantial prior art implications, requiring

new prior art searching, party discovery and third-party discovery. None of that can happen before fact discovery closes on February 7. Plaintiffs likewise try to rewrite their '667 contentions based on thousands of lines of long-disclosed yet newly-accused code. But some of the material Plaintiffs now accuse appears to be *older* than the '667 patent, and may require adding new "prior use" defenses under 35 U.S.C. § 102(b) and invalidity defenses under 35 U.S.C. § 102(a).[1] Amendments that require the development of new defenses with only a few weeks left are a textbook example of undue prejudice. Even if good cause and diligence existed (they do not), Plaintiffs' amendments should all be denied for their prejudicial impact—particularly where Viasat tried to work with Plaintiffs on agreements that might mitigate some of that prejudice, but Plaintiffs refused.

Plaintiffs' case has been pending for almost three years. Plaintiffs held back their infringement theories until only three weeks remained in fact discovery. Plaintiffs chose to just say "plain meaning" for months despite knowing that would not suffice and hold theories strategically rather than seek amendment earlier. Now there is no time left in the schedule to properly address Plaintiffs' new theories. Plaintiffs' proposed amendment should be denied.

## II.   LEGAL STANDARD

A party may amend its infringement contentions "only by order of the court upon a timely showing of good cause." P.L.R. 3–6. "[A]bsent undue prejudice to the non-moving party," good cause to amend infringement contentions can include "[a] claim construction by the Court different from that proposed by the party seeking amendment," P.L.R. 3-6(a), or "[r]ecent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions," P.L.R. 3-6(c). The moving party "has the burden of demonstrating good cause." *Verinata Health*, 236 F. Supp. 3d at 1113.

In evaluating diligence, courts consider "two subparts: (1) diligence in discovering the basis for amendment; and (2) diligence in seeking amendment once the basis for amendment has been discovered." *Wisk Aero LLC v. Archer Aviation Inc.*, No. 21-CV-02450-WHO, 2022 WL 5007912, at *2 (N.D. Cal. Oct. 4, 2022) (internal quotations omitted).

---

[1] The '667 patent has a priority date of February 2015, but the relevant source code Plaintiffs wish to rely on to prove infringement dates in some cases to 2014 or earlier. Curran Decl. ¶ 6.

Even if good cause and timeliness/diligence exist, the court must still "determine whether the nonmoving party would suffer prejudice if the motion to amend were granted." *Verinata Health*, 236 F. Supp. 3d at 1113. "Prejudice is typically found when amending contentions stand to disrupt the case schedule or other court orders." *Id.* Prejudice may also be shown "when a party changes its infringement theories or requires its opposition to prepare additional defenses." *Wisk Aero*, 2022 WL 5007912, at \*2; *Fortinet, Inc. v. Palo Alto Networks, Inc.*, No. 09-CV-00036-RMW, 2010 WL 4608250, at \*1-2 (N.D. Cal. Nov. 5, 2010).

## III.    ARGUMENT

### A.    Good Cause Does Not Support Plaintiffs' Proposed Amendments

Plaintiffs' high-level claims of good cause for most of the proposed amendments[2] fall in two general categories: (1) the amendments are justified by claim constructions Plaintiffs supposedly lost, and (2) the amendments are based on recently discovered information Plaintiffs did not have despite diligent efforts. Both arguments are without merit.

#### 1.    Plaintiffs Cannot Amend to Address Their Own Claim Constructions

Plaintiffs claim the Court construed only "one term in the way that SanDisk had proposed" (Mot. 3) and that all other constructions "differed from those SanDisk proposed" (*id.* 1) since the Court did not simply say "plain and ordinary meaning" in the claim construction order. That is disingenuous and would incentivize a party to give the anodyne "plain meaning" as a proposed construction knowing it could amend once it was "elucidated." This would undercut the beneficent purpose of the Patent Rules.

The parties briefed their respective claim construction positions in April and May 2024. ECF Nos. 103, 104, 105. In their briefing, Plaintiffs proposed "plain and ordinary meaning" for all eight terms. At the Claim Construction hearing the Court asked Plaintiffs to explain what that meant—noting that without an articulation of what "plain and ordinary meaning" is, "it doesn't

---

[2] Although Plaintiffs' motion discusses most of its amendments briefly, it never mentions certain proposals to assert any purported good cause. Specifically, Ex. 2 at 1-2, 46, 60, & 70 and Ex. 4 at 1-2 are never discussed *at all*. Those amendments should be categorically denied; Plaintiffs offer no explanation for them in the motion and cannot address them for the first time on reply. *See, e.g., In re Theos Dark Chocolate Litig.*, No. 23-CV-02739-HSG, 2024 WL 4336631, at \*11 (N.D. Cal. Sept. 27, 2024).

limit anything at this point, and it seems to me it's essentially a way of kicking the can down the road and leaving options open." Hearing Tr. 6:7-13. In response, Plaintiffs finally explained what they meant by "plain and ordinary meaning" for each term. The Claim Construction order adopted four of Plaintiffs' proposals, found a fifth term was resolved through a proposal Plaintiffs agreed to, adopted a construction for "public environment" that the Court noted tracked *both* sides' proposals, and agreed with Viasat's proposal on two terms.

| Claim Term | Plaintiffs' Proposal | Defendant's Proposal | Court's Construction |
|---|---|---|---|
| "kiosk"<br>('400 Patent) | "any device used to access and distribute content provided by the system." CC Order at 8; Hearing Tr. 12:10–18. | "a device whose user interface is used by consumers" | "any device used to access and distribute content provided by the system" *(adopting Plaintiffs' proposal)* |
| "portable data storage device"<br>('400 Patent) | "[a storage device] capable of being carried or moved." CC Order at 11; Hearing Tr. 41:4-11. | "a storage device that can be easily carried or moved about by its user" | "a storage device that can be easily carried or moved about" *(adopting parts of each parties' proposals)* |
| "authenticate the portable data storage device, using at least the unique identifier"<br>('400 Patent) | "authenticate" means "confirm the identity." CC Order at 13. Hearing Tr. 46:3-7. | "confirming that the portable data storage device is trusted using at least the unique identifier" | "confirming that the portable data storage device is trusted using at least the unique identifier *(adopting Viasat's proposal)* |
| "provide to the portable data storage device . . . a corresponding access key"<br>('400 Patent) | The access key merely has to "correspond" with the first media content, and does not need to be specific to the portable data storage device. CC Order at 14. | "provide to the portable data storage device . . . a key for the portable data storage device  to decrypt  the first media content" | "provide to the portable data storage device . . . a key to decrypt the first media content" *(adopting Plaintiffs' proposal)* |
| "public  environment"<br>('400 Patent) | "environment accessible to the public." CC Order at 17; Hearing Tr. 76:4-11 | "a location accessible by the general public" | "location accessible by the public" *(adopting construction consistent with both parties' proposals)* |
| "secure region"<br>('667 Patent) | Resolved at the hearing. Hearing Tr. 87:13-88:4. | Resolved at the hearing. | "a region of the NAS device to which access is controlled" *(agreed construction proposed by both sides)* |
| "receive an indication of the NAS device having a secure region"<br>('667 Patent) | Plain and ordinary meaning. | "receive an indication of the presence of a secure region within the NAS device" | "receive an indication of the presence of a secure region within the NAS device" *(adopting Viasat's proposal)* |

| "access to the secure region is controlled by the media streaming system" / "control streaming access to the digital content stored on the buffer" ('667 Patent) | Plain and ordinary meaning. | "access to the secure region is managed by the media streaming system" … "manage streaming access to the digital content stored on the buffer" | No construction necessary *(adopting Plaintiffs' proposal)* |

The true facts regarding claim construction are fatal to Plaintiffs' motion. Plaintiffs have no good cause to amend when a number of their *own proposals* were adopted; the rule applies to a "construction by the Court *different* from that proposed by the party seeking amendment." P.L.R. 3-6(a). The terms "kiosk" (Ex. 2 at 3, 18-19, 26, 36, 75), "provide to the portable data storage device . . . a corresponding access key," (*id*. 68-69), and "access to the secure region is controlled by the media streaming system" (Ex. 4 at 48-49) were construed entirely as Plaintiffs proposed. No good cause exists to amend infringement theories with respect to these terms.

Nor does the Court's construction of "secure region" give Plaintiffs a basis to amend. The ultimate construction here too was Plaintiffs' proposal—and an *agreed* one at that, not a "construction by the Court" under P.L.R. 3-6(a). Amendment with respect to "secure region" is thus doubly unjustified. Plaintiffs try to amend huge swaths of their contentions based on this term (Ex. 4 *passim*). But none of those amendments are justified because this Court adopted an agreed-on proposal at claim construction.

On the "public environment" term (Ex. 2 at 77)[3] the Court likewise adopted Plaintiffs' proposal, noting it was "unclear to the Court that there is a genuine fundamental dispute as to the scope of this term" since "both parties seem to agree" on the term's meaning, "with the only difference between the parties' respective proposed constructions being the inclusion of the word 'general' in Viasat's construction"—a proposal the Court declined to adopt. ECF No. 120 ("CC Order") at 17. This embrace of Plaintiffs' proposal does not provide good cause to amend.

Plaintiffs try to justify a new and different doctrine of equivalents theory for "portable data storage device" based on claim construction. Ex. 2 at 19, 47, 60, 70 (proposing new DOE theory "[i]n view of the Court's claim construction order"). But Plaintiffs show no good cause for this;

---

[3] Plaintiffs' motion cited this amendment as Ex. 2 at 11, 19, and 47 (Mot. 6), but that is the wrong claim limitation; Viasat believes Plaintiffs intended to cite Ex. 2 at 77.

the Court's construction adopted Plaintiffs' own proposal in large part. Moreover, Plaintiffs already advanced a ***different*** DOE theory for this same limitation in March 2024 (Ex. 2 at 11) and Plaintiffs do not explain why another revised DOE theory is now needed for the same limitation (Ex. 2 at 19, 47, 60, 70). In any event, Plaintiffs cannot justify waiting four months to raise this new DOE theory, particularly where the theory does not cite to or rely on any new evidence.

There are thus ***only two claim terms***—"authenticate the portable data storage device, using at least the unique identifier" ('400 claim 1[e]) and "receive an indication of the NAS device having a secure region" ('667 claim 1[c])—where the Court's construction was actually different from Plaintiffs' proposal in any meaningful way. At most, good cause from claim construction might be considered for ***only*** the five pages of proposed amendments on these two claim limitations (Ex. 2 at 58-60 & Ex. 4 at 48-49). But as explained below, those amendments should be disallowed based on prejudice and Plaintiffs' lack of diligence.

2.    <u>Source Code Produced Nearly A Year Before Amendment Is Not Newly Discovered Material</u>

Plaintiffs further claim good cause because of "[r]ecent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions." P.L.R. 3-6(c). Not so. Other than one page of its amended contentions,[4] ***every*** new cite Plaintiffs try to add is to code Viasat produced ***ten or eleven months ago***. That is not "newly discovered." Choosing to wait until the last moment to review long available discovery materials is no basis to amend.

Plaintiffs first inspected Viasat source code from February 26 to February 29, 2024, long after that code was first offered for inspection in April 2023. Following the February 2024 inspection, Plaintiffs asked for more code; Viasat provided it on March 13, 2024. Curran Decl. ¶ 3, Ex. A at 3. Plaintiffs then ***again*** reviewed all of Viasat's source code on March 14-15, 2024. *Id.* Following those six days of review, Plaintiffs served amended infringement contentions on March 22, 2024. *Id.* at 1. Those March 2024 infringement contentions, shown in the non-redline portions

---

[4] On page 58 of its proposed amended '400 contentions (Ex. 2 at 58) Plaintiffs cite to twelve documents Viasat produced in December 2024. Curran Decl. ¶ 2.

of Ex. 2 and Ex. 4 to Plaintiffs' motion, cite Viasat source code extensively.

Since March 2024 no new source code has been produced. It is undisputed that all the code Plaintiffs seeks to add is code Plaintiffs already inspected more than ten months ago.[5] *Id.* ¶ 3.

Plaintiffs nonetheless say a recent interrogatory response justifies treating old code as new. This is pretext. The interrogatory at issue, which Plaintiffs did not serve until October 2, 2024, purportedly "sought new discovery from Viasat, including a mapping of Viasat's source code to components and functions identified in its documentation." Mot. 10. Plaintiffs claim this mapping "was *essential* to enable SanDisk's expert to accurately map various source code files to components of the Accused Products." *Id.* (emphasis added). They further claim the "mapping was *necessary to fully analyze the impact of the Court's claim construction order* on SanDisk's infringement contentions." *Id.* (emphasis added). But for all the supposed import of this "mapping," Plaintiffs do *not attach it to their motion*. That alone suffices to deny the request for leave; Plaintiffs cannot meet their burden to show good cause by making vague claims about an interrogatory response they have not even supplied to the Court.

Plaintiffs' failure to provide this "mapping" was likely not an accident. The response contains *nothing* to justify Plaintiffs' extensive amendments. The proposed amendments show this. For example, Viasat's December 2024 interrogatory response confirmed that folders of code labeled "ios" were iOS code, or that folders labeled "android" were Android code, or that folders labeled "onboard server" were code for the onboard server. *See* Ex. 4 at 73 (citing to code in folders bearing "ios" and "android" and "onboard server" labels in their names, and stating "According to Viasat's December 13, 2024, First Supplemental Responses to Plaintiff's First Set of Interrogatories, these files represent client-based iOS code, Android code, and onboard server code"). Plaintiffs' claim to have needed a map to figure this out is not credible. Viasat likewise confirmed in its December 2024 interrogatory response that a folder of code Plaintiffs already had inspected and printed code from in March 2024, named "vcds_client" and located in the "VCDS Code" folder, was, as expected, VCDS code for the "vcds_client" component—a component

---

[5] Plaintiffs' arguments about additional productions after January 3, 2025 are irrelevant. Those documents are largely non-technical marketing materials and customer communications, and in any event, Plaintiffs notably *do not rely on any of them* in the proposed amended contentions.

Plaintiffs to which had already cited, and even illustrated in pictures, in Plaintiffs' prior March 2024 infringement contentions. Ex. 2 at 10 (green "VCDS client" box in center of graphic pasted into Plaintiffs' contentions). Yet huge volumes of code Plaintiffs propose to add by amendment are from this already-familiar folder. In March 2024, Plaintiffs knew what iOS and Android are, and knew what an onboard server and the VCDS client are. Plaintiffs cited to evidence regarding each of those components in its infringement contentions ten months ago. Plaintiffs did not need an interrogatory response to discover what they already knew. And even if they did need that information, they have no excuse for waiting months to seek it.

Ultimately, Plaintiffs' own actions speak loudly here—and prove its claim to need a new source code "mapping" is mere pretext. Plaintiffs reviewed this same source code for four days in February 2024 and two more days in March 2024. Plaintiffs never asserted during that review that they could not understand the code. Nor did Plaintiffs request a "mapping" of code during those visits or say a "map" was necessary in the *many months* that followed. Plaintiffs instead reviewed the code, printed the code, cited the code in their March 22, 2024 infringement contentions and then, for seven months, asked no questions at all. Plaintiffs seemed to understand the code perfectly well between March 2024 and October 2024. Plaintiffs only asked for a "map" in October 2024, when (after reviewing the September 20 claim construction order) Plaintiffs apparently realized they would need to manufacture some basis to amend their contentions.

Plaintiffs chose not to attach the "mapping" to their motion for leave, or to address its contents in any detail in that motion—foreclosing the use of that discovery response as good cause. Plaintiffs also chose not to explain in their motion why, if a "mapping" was truly critical, Plaintiffs never asked for that information *before* October 2024. Plaintiffs thus cannot meet their burden to show that, in January 2025, the same source code Plaintiffs reviewed in February/March 2024 was a "*recent* discovery" that "was not discovered, *despite diligent efforts*." P.L.R. 3-6(c).

### B.    Plaintiffs' Request Is Untimely and They Were Not Diligent

Plaintiffs claim they were "diligent in amending [] contentions after the Court's claim construction order" and that their "amendments are timely." Mot. 11. This not only is incorrect—it likely is irrelevant. If the Court concludes Plaintiffs did not establish good cause, the Court need

not continue to analyze questions of timeliness or diligence. But if the Court does find any proposed amendment is supported by good cause, Plaintiffs cannot show diligence or timeliness.

First, as noted above, Plaintiffs were not diligent in discovering the information they claim as its basis for good cause. Plaintiffs inspected Viasat's source code for six days in February/March 2024. If Plaintiffs actually believed they needed additional information about Viasat's source code, they could have issued an interrogatory seeking that information ten months ago, at the time of their prior inspections. Plaintiffs' decision to wait months, until October 2024, does not show diligence in discovering the purported basis for amendment. *See Google, Inc. v. Netlist, Inc.*, No. C 08-4144 SBA, 2010 WL 1838693, at *2 (N.D. Cal. May 5, 2010) (denying leave to amend for lack of diligence where information could have been sought sooner; "[t]he critical issue is not *when* [the patentee] discovered this information, but rather, whether they *could have* discovered it earlier had it acted with the requisite diligence.").

Second, Plaintiffs were not diligent in seeking leave to amend. Plaintiffs waited four months after the claim construction order before seeking leave. Perhaps four months is diligent in some cases—but certainly not here, when Plaintiffs had Viasat's proposed constructions on February 15, 2024. That February 2024 proposal included, word-for-word, the same constructions for "authenticating" ('400 patent) and "receiving an indication" ('667 patent) that the Court ultimately adopted. By early March 2024 Plaintiffs also had all the code Viasat has produced in this case. Plaintiffs inspected that code in mid-March 2024, knowing Viasat's claim construction proposals. The time to diligently analyze Viasat's claim construction proposals and compare them to source code was March 2024. Doing that work in January 2025 is the antithesis of diligence. Because Plaintiffs had Viasat's constructions and source code in hand for six months prior to the claim construction order, it should not have needed another four months after that Order to seek leave for an amendment. Yet Plaintiffs say they did not even ***begin*** to consider any potential infringement theories under Viasat's claim construction proposals until six months ***after*** Plaintiffs had those proposals. *See* Mot. 10 ("*After* the Court's Markman ruling, SanDisk promptly *began* the process of reviewing its contentions in light of the new constructions.") (emphases added). In light of that admission, Plaintiffs four-month delay in seeking leave sinks any claim of diligence.

### C.    Viasat Would Be Unduly Prejudiced By Amendment

Plaintiffs claim there is "no undue prejudice" because their proposed amendments "provide a clear roadmap for further discovery in this litigation." Mot. 12. But discovery is almost over. And on that logic, every proposed amendment to infringement contentions would always lack prejudice; such an amendment always explains where the patent owner intends to go in discovery. The question is not where the patent owner intends to go with discovery, but whether a defendant has a fair opportunity to prepare *its own* new "roadmap for further discovery" and then execute on that new plan. There is no time for that exercise here. Plaintiffs' new theories were served on Viasat with only weeks remaining in fact discovery—providing no time for Viasat to analyze, respond, and pursue discovery of its own after a fair opportunity to evaluate Plaintiffs' new theories. This is exactly why the amendment creates undue prejudice. *VLSI Tech. LLC v. Intel Corp.*, No. 17-CV-05671-BLF-NC, 2023 WL 2394539, at *3 (N.D. Cal. Mar. 6, 2023) (non-moving party would be prejudiced by amendment "just two weeks before the close of fact discovery," because an amendment that "comes just two weeks before the close of fact discovery . . . would necessitate extending fact discovery to permit [defendant] to develop evidence and conduct additional discovery on its defenses"); *Sun Microsystems, Inc. v. Network Appliance, Inc.*, No. 07–CV–05488 EDL, 2009 WL 508448 (N.D. Cal. Feb. 27, 2009) (finding prejudice where only two months remained before the close of fact discovery).

Plaintiffs' proposed amendments are even more prejudicial because Plaintiffs attempt to accuse new products of infringing the '400 patent at the last minute. Plaintiffs begin their proposed '400 patent amendments by adding new references to Viasat's residential product offerings. Ex. 2 at 1 (seeking to accuse products "used in residential applications"). Tellingly, Plaintiffs' motion never addresses these proposed amendments and never claims good cause for them; page 1 of Ex. 2 is never cited *at all* in Plaintiffs' motion. This belated effort to add a new category of "residential" products to this years-old case should be denied. Indeed, courts regularly reject attempts to add new products at the end of fact discovery. *LG Elecs. Inc. v. Q-Lity Computer Inc.*, 211 F.R.D. 360, 372 (N.D. Cal. 2002) (new product allegations prejudicial since defendants "did not have the opportunity to consider those products in drafting their claim construction arguments"); *Unicorn*

*Energy AG v. Tesla Inc.*, No. 21-CV-07476-BLF, 2023 WL 9181575, at *4 (N.D. Cal. Dec. 20, 2023) (motion to amend properly denied where "a different and unique product from [the accused product] was out there, and could have been added," since "[t]o just add it now to the list of accused products is too late, and would be unduly prejudicial"); *Rembrandt Patent Innovations, LLC v. Apple Inc.*, 2015 WL 8607390, at *3 (N.D. Cal. Dec. 13, 2015) (denying late motion to add products because "[t]here must be some reasonable cut-off date after which [plaintiff] cannot further expand the case"); *Richtek Tech. Corp. v. uPi Semiconductor* Corp., No. C 09-05659 WHA, 2016 WL 1718135, at *3 (N.D. Cal., Apr. 29, 2016) (similar).

Plaintiffs do not address this new "residential" amendment at all in the motion. They have thus waived the right to make any such arguments in reply. Plaintiffs may argue that residential products are mentioned in some documents Plaintiffs already cited, but that is a smokescreen; broad references to documents discussing multiple functionalities, both accused and non-accused, do not authorize late amendments or alleviate prejudice; the local rules require a plaintiff to "identif[y] accused products *with specificity*," and it is not sufficient to merely "discuss" a component if the plaintiff does not also "*identify it as satisfying* [the] limitation." *Unicorn Energy*, 2023 WL 9181575, at *4-5 (citing P.L.R. 3-1(b)) (emphases added). What Plaintiffs identified as supposedly meeting the claim limitations was not "residential" products—it was in flight internet. *See, e.g.,* Ex. 2 at 11 (the accused devices "all stream media from Viasat's *onboard* IFEC server"), 26 ("the '400 Accused Products include an IFC *on board the aircraft*"), 77 ("the kiosk interacts with portable data storage devices … *on board airlines*"). Expansions beyond the in-flight context should not be permitted at this stage.

That is particularly so where Plaintiffs previously told the Court and Viasat they were *not* accusing residential products of infringing the '400 patent. At the Markman hearing Plaintiffs were clear: "*the accused devices are installed on airplane cabins*. I think *it's undisputed that they are on airplanes*." Hearing Tr. 72:3-8 (emphases added). The Court took Plaintiffs at their word. Following the hearing, the claim construction order held that the word "general" was unnecessary when construing "public environment" since Plaintiffs were not accusing products in "a person's house." CC Order at 17 ("Viasat argues that, without the inclusion of the word 'general,'

[Plaintiffs] might try to argue that any location accessible to any singular member (or subset of) the public is a public environment, *such as a person's house*. Again, there is *no evidence that [Plaintiff] intends to take such a position*.") (emphases added). Plaintiffs did not dispute this in August 2024 at the hearing, or in September 2024 when the order issued, and did not seek leave to accuse additional "residential" products for four more months. On these facts Plaintiffs' about-face is not only unjustified; it is obviously prejudicial.

Amendment would significantly disrupt the case schedule. Plaintiffs' new infringement contentions would require Viasat to reevaluate invalidity contentions, search for additional prior art mirroring Plaintiffs' new purported claim scope, and seek both party discovery (including Plaintiffs' knowledge of new prior art) and third-party discovery related to that art. Plaintiffs' proposed amendments cite tens of thousands of lines of source code not previously accused. Curran Decl. ¶¶ 4-5. That implicates non-infringement, non-infringing alternatives, and other technical and damages discovery. And adding new accused products (as Plaintiffs seeks to do with "residential" products) necessarily means new discovery and defenses. For example, Viasat should be fairly permitted to explore what constitutes a "portable storage device" in the residential context (such as televisions and wall-mounted devices). These and other new issues are not topics Viasat can fairly explore due to Plaintiffs' delay.

Plaintiffs' amendments may also warrant new "prior use" defenses that have not previously been part of the case. Plaintiffs' proposed amendments rely extensively on source code from 2014, including extensive citations to old functions and methods from files dating back to 2014—some in never-before-cited files. This functionality pre-dates the '667 patent and may be a protected "prior use" under 35 U.S.C. § 102(b). Curran Decl. ¶ 6. There is simply no time left in the schedule to develop that issue because Plaintiffs' delay deprived Viasat of a fair opportunity to analyze that defense. *Oyster Optics, LLC v. Ciena Corp.*, No. 20-CV-02354-JSW(LB), 2022 WL 561931, at *4 (N.D. Cal. Feb. 24, 2022) (denying motion to amend infringement contentions, and finding prejudice to the defendant where its "invalidity contentions were based only on the [previously charted] product, and claim construction is based only on that narrower claim scope").

Plaintiffs' cases are all inapposite. In *Positive Techs., Inc. v. Sony Elecs., Inc.,* the Court

issued its order permitting amendment five months before the close of fact discovery. No. 11-cv-2226, 2013 WL 322556, at *3 (N.D. Cal. Jan. 28, 2013). By contrast, this Court will not even hear Plaintiffs' motion until fact discovery is closed. In *Radware Ltd. v. F5 Networks, Inc.*, the court found that a three-month delay was warranted because "the case schedule provided for further amendments following claim construction." 2014 WL 3728482, at *2 (N.D. Cal. 2014). This schedule is vastly different; it has no provision for further amendments, and fact discovery is about to close. In *Wisk*, the Court found no prejudice because "none of the amendments assert new theories ***or seem to require new discovery***." 2022 WL 5007912, at *5. Here, Plaintiffs seek to add both new products and new theories, both of which fairly require additional discovery. In *ChriMar Sys. Inc. v. Cisco Sys. Inc.*, "there [was] ***no discovery deadline or trial date*** yet," so "the Patent Local Rules' concern with parties sandbagging opponents late in the discovery period" was not at issue. No. 13-CV-01300-JSW-MEJ, 2015 WL 13449849, at *7 (N.D. Cal. May 14, 2015), *report and recommendation adopted*, 2015 WL 13450357 (N.D. Cal. June 8, 2015). Here, those concerns are front and center where Plaintiffs' amendments could have been offered months earlier but were instead held until the close of fact discovery, trial is set for this year, and amendment at the last minute would require changing the case schedule. *Verinata Health*, 236 F. Supp. 3d at 1113.

Plaintiffs' amendments should all be denied for their undue prejudice. This case has been pending for approaching three years. Plaintiffs cannot justify a request for leave to change theories, and add new accused products, with just three weeks left in discovery.

## IV.   CONCLUSION

The Patent Local Rules were adopted precisely to forbid the belated amendment Plaintiffs propose here. Plaintiffs' motion for leave should be denied.

1

2   DATED: January 30, 2025                QUINN EMANUEL URQUHART &
                                           SULLIVAN, LLP
3

4

5                                   By  */s/ Patrick Curran*
                                        Patrick Curran
6                                       *Attorneys for Defendant Viasat Inc.*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2025, a copy of the foregoing motion, was filed with the Court using the Court's ECF system, which sent notice to all counsel of record.


DATED: January 30, 2025                    By  _/s/ Patrick Curran_
                                                Patrick Curran