February 7, 2025

The Honorable Haywood S. Gilliam, Jr.
United States District Court, Northern District of California
Oakland Courthouse
1301 Clay Street
Oakland, CA 94612

Re: *Sandisk Technologies, Inc. et al. v. Viasat, Inc.*, Case No. 4-22-cv-04376-HSG

Dear Judge Gilliam:

      Plaintiffs Sandisk Technologies, Inc., et al. ("SanDisk") and Defendant Viasat, Inc. ("Viasat") (collectively, the "Parties") seek the Court's resolution of the following discovery disputes outlined in this letter. Based on an oral conference with Viasat, SanDisk believed that the parties had agreed to a general extension of fact discovery to work through these issues, and only learned *yesterday* that Viasat would only agree to a limited purpose extension for specific depositions. Dkt. 158-1, ¶ 9. Surprised, given the course of conduct between the parties (*id.* ¶ 10), SanDisk immediately provided Viasat with its positions outlined below and offered to meet and confer, but Viasat did not provide a substantive response on these issue before filing. Viasat's position is forthcoming.

**SanDisk's Position**

      SanDisk respectfully moves to compel (i) production of missing source code and technical documentation regarding the accused functionalities, (ii) production of financial data sufficient to show all revenue streams related to the accused functionalities, including revenue relating to Viasat's In-Flight Connectivity ("IFC") services, (iii) data regarding usage of the accused functionalities, which is relevant to a computation of damages, and (iv) designation and production of knowledgeable and properly prepared witness(es) to testify on several 30(b)(6) topics that were inadequately addressed by Viasat or for which Viasat has refused to provide a witness.

  A.  **Source Code and Technical Document Deficiencies**

      Viasat's source code production remains deficient, as confirmed by both our repeated efforts to locate the missing source code and the recent deposition testimony of Mr. Jason Neri. The Viasat Content Delivery Service ("VCDS")—explicitly identified in SanDisk's infringement contentions—involves both a VCDS server on the ground and a VCDS client on board an aircraft. Mr. Neri testified that the source code for the VCDS server-side components is maintained in Viasat's source code repository, yet none of this code has been produced for inspection. This missing source code is directed to relevant components of the accused systems, including how and what type of information is exchanged between Viasat and third-party content providers, as well as configuration files for IPTV, another explicitly accused product.

      Viasat's source code is also incomplete as to components for which some code has been produced. For instance, the available code references functions whose definitions are missing—suggesting that relevant files have not been collected. Moreover, while documents and deposition testimony indicate that multiple versions of the code were generated over the relevant time period, only a single version per folder has been provided. This is particularly concerning given that

The Honorable Haywood S. Gilliam, Jr.
February 7, 2025
Page 2

change logs (known as "GIT logs") contain relevant details that should have been included but have not been produced.

Furthermore, RFP No. 87 seeks documents related to specific aspects of the Digital Rights Management (DRM) system used by the accused products, yet Viasat has refused to produce documents and source code showing the details the DRM. Such information is directly relevant to SanDisk's infringement claims.

### B. **Financials & Usage Data Relevant to Damages**

Viasat's failure to produce relevant financial data associated with the accused products. Viasat has not provided full financial information relating to its IFC services and has improperly limited its production to financials that are purely related to in-flight entertainment ("IFE") and live in-flight TV ("IPTV"). Discovery has established that IFC and IFE/IPTV are closely interrelated, and the IFC financials are relevant to damages in this case. For example, multiple witnesses have now confirmed that IFE is sold as an "add-on" to IFC, that these features utilize hardware and software of the IFC system, and that IFC is a prerequisite for Viasat to provide IFE services. Viasat should be required to produce the full scope of financial data related to the accused functionalities, including revenue breakdowns, cost allocations, and advertising models, and contractual terms with the airlines.

Viasat's production is also deficient with respect to IFE and IPTV. Viasat witnesses testified that Viasat prepares unproduced monthly reports detailing the how fees charged to each airline customer are calculated, as well as quarterly reports on the profitability of IFE and IPTV. Also, the limited cost data provided to date is insufficient to determine whether it reflects the full scope and nature of costs attributable to IFE and IPTV, and Viasat's witness was unable to provide any details, even though he testified that such information was available to Viasat. Viasat has also failed to produce quarterly financial reports tracking revenue associated with key functionalities, including hardware sales, IFE, IPTV, and VCDS content delivery for residential and mobility users.

Similarly, Viasat has not provided relevant metrics, including documents showing the number of aircraft equipped with its IFE and IFEC systems over the relevant damages period, data regarding the number of planes that have seatback devices, flight session data, and usage data. Mr. Ajai Tuli (Senior Director, Business Development at Viasat) confirmed that Viasat maintains this data, which includes take rates, quality of the connection, passenger usage, seatback device utilization, and overall network performance. Viasat collects and shares such information with its customers, as confirmed in its agreements, financial reports, and internal presentations. This usage data is highly relevant to damages, as it reflects, for example, the benefits of the accused technology and proportional usage that may be useful for apportionment.

Viasat also has not produced relevant marketing documents, including a "standard" slide deck that contains the marketing messages with respect to the Accused Products, as well as third-party market data on which Viasat relies in its own business assessments. This omission is particularly problematic given that Viasat's reliance on external market research suggests that these sources contain relevant industry benchmarks and financial insights that Viasat itself deems significant. Viasat has also not produced information sufficient to determine the amount of

The Honorable Haywood S. Gilliam, Jr.
February 7, 2025
Page 3

advertising revenue attributable to the Accused Products, including advertising records and the contractual terms governing these arrangements. Viasat's witness testified that one cannot identify the advertising revenue attributable to the Accused Products from the limited data provided to date.

### C. Inadequate Preparation of Witnesses

Viasat has failed to produce adequately prepared witnesses for multiple Rule 30(b)(6) topics and has refused to provide witnesses for others. For example, Mr. Tuli lacked knowledge on Topics 58, 59, 60 (IFE), and 64 (IFE), despite being designated to testify. His lack of preparation is evident, as he admitted he spoke only with counsel and made no effort to investigate, including on Topic 64. Likewise, Mr. Houda was unprepared to testify on Topic 75 regarding costs associated with the Accused Products as explained above. Viasat witnesses were also inadequately prepared or lacked knowledge on critical topics, including Topics 55 (Residential), 57 (Residential), 64 (Residential), 70 (Residential), 71 (VCDS), 72 (Residential), 74 (Residential), 75 (Residential), 86, 91, 92, 93, and 94. None of Viasat's corporate witnesses were prepared to discuss the technical operation of the IPTV accused product. Further, despite the parties' meet and confer efforts continuing through this week, Viasat has refused to provide any witness for Topics 5-7, 11, 43-46, 48-52, 76-77, 87-89, 93, 95-96, 98-100, and 102-104. These Topics cover relevant issues involving operation of the Accused Products, the allocation of revenue and costs, the extent of Viasat's relevant U.S.-based activities, and the use of passenger portals for authentication and data collection—each of which is relevant to liability and damages.

**Viasat's Position**

The Honorable Haywood S. Gilliam, Jr.
February 7, 2025
Page 4

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

*/s/ Ahmed ElDessouki*

Ahmed ElDessouki
*Attorneys for Plaintiffs*