L. Kieran Kieckhefer (SBN 251978)
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94105-0921
Telephone: 415.393.8337
Email: KKieckhefer@gibsondunn.com

Robert A. Vincent (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue Suite 2100
Dallas, TX 75201-2923
Telephone: 214.698.3281
RVincent@gibsondunn.com

Lillian J. Mao (SBN 267410)
GIBSON, DUNN & CRUTCHER LLP
310 University Avenue
Palo Alto, CA 94301-1744
Telephone: 650.849.5307
LMao@gibsondunn.com

Ahmed ElDessouki (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.2345
AElDessouki@gibsondunn.com

Brian M. Buroker (*pro hac vice*)
Shuo Zhang (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1700 M St, N.W.
Washington DC 20036-4504
BBuroker@gibsondunn.com
SZhang@gibsondunn.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| SANDISK TECHNOLOGIES, INC., et. al.,<br><br>Plaintiffs,<br><br>v.<br><br>VIASAT, INC,<br><br>Defendants | Case No. 4:22-CV-4376-HSG<br><br>**SANDISK'S MOTION TO STRIKE VIASAT'S INTERROGATORY RESPONSES RE NON-INFRINGEMENT AND NON-INFRINGING ALTERNATIVES**<br><br>Date:     March 27, 2025<br>Time:     2:00 p.m.<br>Dept.:    Courtroom 2, 4th Floor<br>Judge:    Hon. Haywood S. Gilliam, Jr.<br><br>~~**FILED UNDER SEAL**~~<br>**PUBLIC REDACTED VERSION** |

# NOTICE OF MOTION

TO THE COURT, THE PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 27, 2025 at 2:00 p.m.,[1] or as soon thereafter as the matter may be heard, in Courtroom 2, 4th Floor, of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs Sandisk Technologies, Inc., SanDisk 3D IP Holdings Ltd., SanDisk Technologies LLC, and SanDisk Storage Malaysia Sdn. Bhd. (collectively, "Plaintiffs" or "SanDisk") will and hereby do move this Court for an order striking Defendant Viasat, Inc.'s ("Viasat") Third Supplemental Response to Interrogatory No. 8 and Second Supplemental Response to Interrogatory No. 14, both served on February 6, 2025. This Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the Declaration of Ahmed ElDessouki filed concurrently herewith, all of the pleadings and other documents on file in this case, and any further argument or evidence that may be received by the Court at the hearing.

Dated: February 11, 2025                                    GIBSON, DUNN & CRUTCHER LLP

*/s/ L. Kieran Kieckhefer*
L. Kieran Kieckhefer

*Counsel for Plaintiffs*

---

[1] SanDisk intends to file a motion to shorten time to expedite consideration of this motion, so that it can be considered at the same time as SanDisk's motion for an extension of the case schedule (Dkt. 158).

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

SanDisk moves to strike Viasat's Third Supplemental Response to SanDisk's Interrogatory No. 8, which sought the basis for Viasat's non-infringement contentions, and Viasat's Second Supplemental Response to SanDisk's Interrogatory No. 14, which sought the basis for any non-infringing alternatives. Viasat's Third Supplemental Response to Interrogatory No. 8, served on February 6, 2025—***the day before close of fact discovery*** and in the midst of technical depositions—for the first time provided narrative explanations for Viasat's non-infringement positions and is **over 30 pages long**, three times longer than all of Viasat's prior responses combined. Similarly, Viasat's Second Supplemental Response to Interrogatory No. 14, served the same day, for the first time identified specific implementation changes and alleged development costs that Viasat contended would render the accused products non-infringing. Viasat's responses are untimely and highly prejudicial to SanDisk, who has been unable to test these newly disclosed arguments in discovery.

The prejudice to SanDisk is compounded by Viasat's other conduct in discovery, including: producing the vast majority of its documents after the deadline for substantial completion of document production; continuing to withhold numerous relevant and responsive documents, including source code, technical documents, and financial information; refusing to produce corporate designees on numerous deposition topics, and presenting wholly unprepared witnesses on others; and agreeing and then refusing to agree to a general extension of fact discovery, despite it long being the course of conduct between the parties to agree to such extensions. *See* Dkts. 158, 159. As a result of Viasat's conduct, SanDisk has moved to extend the case schedule. Dkt. 158. Importantly, Viasat's belated interrogatory responses are extremely prejudicial even under SanDisk's requested extension—five weeks is wholly insufficient to address Viasat's new arguments given the magnitude of Viasat's new disclosure.[2] Viasat's last-minute interrogatory responses are an unjustified and impermissible ambush and should be stricken.

---

[2] To the extent the Court is considering an extension to cure the prejudice created by Viasat's late disclosure, a far more substantial extension of the case schedule would be needed than what SanDisk requested in order to deal with the outstanding fact discovery issues (Dkt. 158). In requesting that extension, SanDisk did not realize or contemplate the magnitude of Viasat's just-served interrogatory responses.

## II. BACKGROUND

### A. Timeline Relating to SanDisk's Non-Infringement Interrogatory

Almost two years ago, on April 7, 2023, SanDisk served Interrogatory No. 8 seeking:

> Separately for each Accused Product, for each asserted claim of an Asserted Patent that You contend is not infringed, state in full the basis for Your contention, including the element(s) that are not met, the factual support for contending that an element is not met, and all Documents supporting Your contention.

ElDessouki Decl., Ex. A at 7-8.

On April 18, 2023, the Court stayed discovery until Plaintiffs met their burden to plead standing (Dkt. 36 at 5 n.3), which lifted on November 8, 2023, when the Court denied Viasat's motion to dismiss for lack of subject matter jurisdiction (Dkt. 72).

On December 8, 2023, Viasat served its initial Response to Interrogatory No. 8. This response consisted of three paragraphs with no substantive content: the first paragraph set forth objections; the second paragraph argued that the interrogatory was premature; and the third paragraph stated that Viasat's investigation was ongoing and it reserved the right to supplement. ElDessouki Decl., Ex. B at 15.

On October 8, 2024, after the Court issued its claim construction order, the parties submitted a Joint Case Management Statement (Dkt. 126). Viasat argued vigorously that the Court's claim constructions were case dispositive, that SanDisk lacked "any viable theory of infringement," and urged SanDisk to "stipulate to non-infringement of the '400 and '667 patents and agree to dismiss the action." *Id.* at 5-6. However, as the parties were preparing the statement, SanDisk informed Viasat that it had not provided any factual support for why the Court's claim constructions were purportedly case dispositive on non-infringement grounds. ElDessouki Decl., ¶ 7. Viasat declined to provide any explanation at the time. *Id.* On a meet-and-confer on October 14, 2024, SanDisk again asked for Viasat's factual bases for non-infringement, and, remarkably, Viasat stated that it would only provide such an explanation if SanDisk agreed to dismiss the case. *Id.*, ¶ 8.

On December 30, 2024, Viasat served its First Supplemental Response to Interrogatory No. 8. This response (1) complained that Plaintiffs' infringement contentions were deficient; (2) provided,

without further explanation, a simple bullet list of limitations that Viasat contended were not met, consisting of essentially *every* limitation of every asserted claim; and (3) listed, again without explanation, a series of letters between counsel and document production numbers pursuant to Rule 33(d). *Id.* at 19-24.

On January 3, 2025, SanDisk served amended infringement contentions, for which it sought leave on January 16, 2025. Dkt. 146. SanDisk's proposed amendments are minimal—consisting of redlines on a handful of pages, while leaving the rest of the content the same—and were narrowly tailored to address the Court's claim construction order and discovery it had recently obtained from Viasat. *See id.* at 5-7.

On January 24, 2025, SanDisk began taking depositions of Viasat's witnesses, including Jason Neri on February 5, Josh Slater on February 6, and Dan Newman on February 7—each of whom had been identified by Viasat as knowledgeable about the "[o]peration, design and development of the accused Viasat products." ElDessouki Decl., ¶ 11 & Ex. C at 2. Moreover, Messrs. Neri and Newman were designated to address a multitude of Rule 30(b)(6) topics relating to Viasat's infringing content delivery system (the "VCDS"). *Id.* ¶ 11. No other witnesses are designated on the operation, design, or development of the VCDS. *Id.*

On January 25, 2025, Viasat served its Second Supplemental Response to Interrogatory No. 8. This response was similar to the prior response, except after each allegedly missing claim limitation Viasat listed, without further explanation, one or more document production numbers. *Id.*, Ex. B at 19-24.

On February 6, 2025[3] at 11:48 p.m. Pacific time (February 7 at 2:48 a.m. Eastern Time)—after Messrs. Neri's and Slater's depositions had already occurred and only a few hours before Mr. Newman's deposition was set to begin that same day on the East Coast—Viasat served its Third Supplemental Response to Interrogatory No. 8. *Id.*, ¶ 3. This response spanned 35 pages and, ***for the first time***, provided factual explanations for why Viasat contended that certain claim limitations were not

---

[3] Although the response is labeled "2/5/2025," the proof of service confirms that it was served at the end of the day on February 6. *Compare* ElDessouki Decl., Ex. B at 24 *with id.* at 59.

met.  *Id.*, Ex. B at 24-58.  In some cases, the explanations span more than 2 pages for one claim limitation.  *E.g.*, *id.* at 27-29 ("A kiosk for provisioning…"), 34-38 ("authenticating the portable data storage device…"), 43-46 ("receiving an indication…").

### B. Timeline Relating to SanDisk's Non-Infringing Alternatives Interrogatory

On October 2, 2024, SanDisk served Interrogatory No. 14 seeking:

> Identify with specificity, on a claim-by-claim basis, all factual and legal bases supporting any allegedly acceptable, non-infringing alternatives to the claims of the Asserted Patents available to You as of the earliest date that You began offering, providing, or using the Accused Products. Include the complete factual basis for Your response, including the identity of each individual with personal knowledge regarding the non-infringing alternatives, the relative costs and/or benefits of using the Accused Products in place of such non-infringing alternatives, and identifying any documents relating to such allegedly non-infringing alternatives.

ElDessouki Decl., Ex. D at 6-7.

On November 1, 2024, Viasat served its initial Response to Interrogatory No. 14.  This response consisted of three paragraphs with no substantive content: the first paragraph set forth objections; the second paragraph argued that the interrogatory was premature and generically denied infringement; and the third paragraph stated that Viasat's investigation was ongoing and it reserved the right to supplement.  ElDessouki Decl., Ex. E at 11.

On January 8, 2025, Viasat served its First Supplemental Response to Interrogatory No. 14.  This response (1) referenced prior art systems that Viasat contended would be non-infringing alternatives, (2) contended that the accused products themselves were non-infringing alternatives because they lacked certain claim elements, providing no explanation and referencing the response to Interrogatory No. 8—which, as noted above, did not contain any explanation either, and (3) argued without any detail that "to the extent" Plaintiffs identified a claim limitation in Viasat's accused products, Viasat could design its systems to remove it.  *Id.* at 12-18.

On February 6, 2025 at 11:48 p.m.—again, the day before fact discovery was set to close, given Viasat's refusal to extend it—Viasat served its Second Supplemental Response to Interrogatory No. 14.  *Id.*, ¶ 6.  This response, ***also for the first time***, identified specific components or aspects of the accused

products that Viasat alleged could be modified to render the products non-infringing, as well as provided explanations for why such changes would be acceptable and estimates for the time and cost to implement such changes. *Id.*, Ex. E at 18-25.

### C. Additional Context for Viasat's Conduct

Viasat's belated disclosure of its non-infringement arguments is made more egregious in light of the other ways Viasat has obstructed SanDisk's discovery efforts. The fact discovery cutoff in this case was February 7, 2025. Dkt. 131. But Viasat waited until that deadline was weeks away to begin producing documents in earnest. Dkt. 158 at 3-4. In the end, over 90% of Viasat's document productions were made in or after January 2025, and more than half of Viasat's document production occurred after the January 6, 2025 deadline for substantial completion of document discovery. *Id.* This was in direct contravention of Viasat's representation on a January 7, 2025 meet-and-confer that Viasat was substantially done producing documents but anticipated "some cleanup." ElDessouki Decl., ¶ 9. Indeed, **Viasat produced 6,000 pages of documents at 11:46 p.m. on February 7, 2025**, less than 15 minutes before the close of fact discovery, including close to 200 documents that related to the operation of the accused VCDS system. *Id.*, ¶ 10. And, even with these last-minute productions, Viasat's document production remains substantially incomplete, with numerous categories of, *inter alia*, source code, technical information, financial information, and usage data yet to be produced. *See* Dkts. 158, 159.

Viasat has done no better with respect to depositions. Viasat did not disclose the majority of its witnesses until less than two months remained of the discovery period. Dkt. 158 at 2-3. In addition, Viasat unilaterally canceled two depositions the night before, forcing the parties to schedule more and more depositions in less and less remaining time. *Id.* Due to an unfortunate and unforeseen family emergency, SanDisk also had to postpone the depositions of two Viasat witnesses in Ireland, one of them a Rule 30(b)(6) designee. *Id.* at 3 n.2. Viasat recently informed SanDisk that the "earliest available dates" for these witnesses to be deposed are February 26 and February 28, respectively.[4]

---

[4] These two witnesses are not designated to address any topics related to the VCDS system.

ElDessouki Decl., ¶ 12. Viasat has also presented witnesses unprepared for certain topics on which they were designated and refused to designate witnesses on other topics. *See* Dkt. 159.

Given the outstanding discovery issues and depositions still to be scheduled, the parties began discussing a potential extension of fact discovery. Dkt. 158-1 ¶ 9. Based on a January 29, 2025 conference, SanDisk understood that the parties had agreed to a general extension of fact discovery—much like Western Digital (the predecessor-in-interest to the patents-in-suit) had done multiple times in the co-pending lawsuit Viasat filed against Western Digital in the Western District of Texas—but that Viasat would not agree to extend the remaining case schedule. *Id.* ¶¶ 9-10. However, one day before the close of fact discovery, Viasat stated that it would ***not*** agree to a general extension of fact discovery and would only agree that certain depositions could be scheduled out of time. *Id.* ¶ 9. SanDisk thus immediately filed its motion for an extension of the case schedule and its portion of a discovery dispute letter on February 7. Dkts. 158, 159.

### III.     ARGUMENT

By concealing its non-infringement and non-infringing alternatives arguments until the close of fact discovery, Viasat has severely prejudiced SanDisk by preventing SanDisk from testing those arguments in discovery. SanDisk had already deposed three of Viasat's technical witnesses, including Viasat's Chief Technical Officer for Content Delivery, regarding nearly ***50*** technical 30(b)(6) deposition topics before it could digest Viasat's new arguments. ElDessouki Decl., ¶ 11. Viasat's about-face refusal to agree to a general extension of fact discovery the day before it served its complete sandbag only underscores the prejudice and gamesmanship.

A comparison of Viasat's successive responses on non-infringement with respect to just one claim limitation shows the magnitude of information that Viasat withheld and then dumped on SanDisk just 24 hours before the close of discovery:

**December 30, 2024 Response:** "The Accused Products do not meet at least the following limitations of the asserted claims of the '400 patent: … 'authenticat[e/ing] the portable data storage device, using at least the unique identifier, by communicating with the remote trusted server over the second data interface' (claims 1, 9)." *Id.*, Ex. B at 16-17.

**January 25, 2025 Response:** "The Accused Products do not meet at least the following limitations of the asserted claims of the '400 patent: … 'authenticat[e/ing] the portable data storage device, using at least the unique identifier, by communicating with the remote trusted server over the second data interface' (claims 1, 9) [¶] *See, e.g.*, VIASAT_00006471; VIASAT_00000618; VIASAT_00006354; VIASAT_00006153; VIASAT_00006779; VIASAT_00008188; VIASAT_00008738; VIASAT_00008420." *Id.* at 20-21.

**February 5, 2025 Response:** With respect to the same "authenticat[e/ing]…" limitation, Viasat provided three and a half pages of argument:



*Id.* at 34-38.

Viasat's successive responses regarding non-infringing alternatives similarly show that it was

not until the very end of fact discovery that Viasat provided key details such as specific design changes it could make, and why those changes would allegedly be non-infringing and acceptable:

**January 8, 2025 Response:**

- The Accused Products do not have a NAS device with a "secure region…" so they constitute a non-infringing alternative.
- To the extent Plaintiffs identify a component that constitutes a NAS device with a "secure region…" Viasat could remove it.
- Viasat does not need a "secure region…" and no customer has demanded it. The alternative (of removing the "secure region…") would be acceptable because it would not cause an NAS device to lack any security feature that Viasat's customers demand.

ElDessouki Decl., Ex. E at 13.

**February 6, 2025 Response:**

- The Accused Products do not have a NAS device with a "secure region…" so they constitute a non-infringing alternative.
- Plaintiffs allege that the alleged NAS devices have the claimed "secure region" because they are allegedly encrypted. But these devices do not have "secure regions" because the entire device is not a "region" of the device.
- To the extent Plaintiffs continue to allege infringement, Viasat could design the system to ensure the devices are unencrypted.
- This alternative would be commercially acceptable because the content itself would still use DRM security.
- Alternatively, files could be encrypted individually rather than stored on an encrypted drive or particular "region" of a drive.
- Either alternative would have, at most, a minimal effect on the functionality of Viasat's systems from an end user's perspective.
- It would take an estimated three months with a development cost of no more than $500,000 to implement these changes.

*Id.* at 19-20.

SANDISK'S MOTION TO STRIKE VIASAT'S INTERROGATORY RESPONSES
CASE NO. 4:22-CV-4376-HSG

Gibson, Dunn &
Crutcher LLP

Courts in this district have held that untimely disclosure of non-infringement arguments warrants striking because the local patent rules are "designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *Asia Vital Components Co., Ltd. v. Asetek Danmark A/S*, 377 F. Supp. 3d 990, 1003-04 (N.D. Cal. 2019) (quoting *MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, No. 14-CV-03657-SI, 2018 WL 6046465, at *2 (N.D. Cal. Nov. 19, 2018)); *Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2012 WL 3155574, at *5 (N.D. Cal. Aug. 2, 2012) ("[B]ecause Samsung did not disclose its theories prior to the close of fact discovery, Apple did not have the opportunity to conduct additional fact discovery regarding Samsung's new theories."). Viasat's decision to conceal its non-infringement and non-infringing alternative arguments until the close of fact discovery is no better than that of litigants in prior cases who waited until expert reports—in both instances, it is too late for the plaintiff to "test the factual basis for the [late-disclosed arguments] by conducting additional discovery." *Apple*, 2012 WL 3155574, at *5.

Viasat's failure to supplement its interrogatory responses sooner was not substantially justified nor harmless. *See* Fed. R. Civ. P. 37(c)(1). At all times, Viasat was in full possession of the technical information about its own products and had full access to its own engineers to develop its positions regarding non-infringement and non-infringing alternatives sooner than the tail end of fact discovery. Indeed, Viasat's repeated assertions throughout the case—including to this Court during the October 15, 2024 case management conference—that SanDisk's case purportedly lacked merit suggests that Viasat **had** formulated those positions, it just refused to share them with SanDisk until the day before the close of fact discovery. To the extent Viasat points to SanDisk's January 3, 2025 amended infringement contentions as a reason Viasat did not develop its non-infringement positions sooner, that is baseless: SanDisk's amendments are minimal and do not alter the overall thrust of SanDisk's infringement theories. And that would not explain why Viasat did not disclose ***any*** non-infringement arguments ***before*** January 2025, when the parties were already less than two months from the close of fact discovery. Thus, Viasat's failure to disclose its arguments was not substantially justified.

Further, as explained above, Viasat's failure is not harmless. SanDisk has already taken multiple depositions relating to infringement without the benefit of understanding what exactly Viasat contends to be missing from the accused products or why Viasat contends that the accused products function differently than the asserted claims. At minimum, SanDisk will need to redo these depositions given the newly disclosed information, including Viasat's Chief Technology Officer for Content Delivery and other corporate-designated witnesses. Independently, as addressed in SanDisk's discovery letter (Dkt. 159), Viasat continues to withhold certain documents that should have been produced before the relevant depositions and has been deficient in designating and preparing witnesses in response to SanDisk's Rule 30(b)(6) notice. Even if the Court were inclined to extend the case schedule instead of striking Viasat's interrogatory responses as requested by SanDisk, a significant extension—far longer than the one SanDisk has sought (*see* Dkt. 158)—would be required to cure the prejudice.

In sum, Viasat failed to disclose its non-infringement and non-infringing alternatives theories until the end of fact discovery, at massive prejudice to SanDisk, and its failure was not substantially justified or harmless. Thus, Viasat's untimely theories should be stricken.

### IV. CONCLUSION

For the foregoing reasons, SanDisk respectfully requests that the Court strike Viasat's Third Supplemental Response to Interrogatory No. 8 and Second Supplemental Response to Interrogatory No. 14.

Dated: February 11, 2025              GIBSON, DUNN & CRUTCHER LLP

                                      */s/ L. Kieran Kieckhefer*
                                      L. Kieran Kieckhefer

                                      *Counsel for Plaintiffs*

Gibson, Dunn & Crutcher LLP