# Exhibit E

# (Public Redacted Version)

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Steven Cherny (*pro hac vice*)
  stevencherny@quinnemanuel.com
  Patrick D. Curran (Bar No. 241630)
  patrickcurran@quinnemanuel.com
  Tzivya H. Beck (*pro hac vice*)
  tzivyabeck@quinnemanuel.com
  Hannah Dawson (*pro hac vice*)
  hannahdawson@quinnemanuel.com
111 Huntington Ave, Suite 520
Boston, MA 02199
Telephone:    (617) 712-7100
Facsimile:    (617) 712-7200

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Jodie Cheng (Bar No. 292330)
  jodiecheng@quinnemanuel.com
  Gyu Shik Jang (Bar No. 337747)
  kevinjang@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Nicola R. Felice (*proc hac vice*)
  nicolafelice@quinnemanuel.com
  Vanessa Blecher (*pro hac vice*)
  vanessablecher@quinnemanuel.com
  Alicia Lai (*pro hac vice*)
  alicialai@quinnemanuel.com
295 5th Avenue
New York, NY 10016
Telephone:    (212) 849-7000
Facsimile:    (212) 849-7100

*Attorneys for Defendant Viasat, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA,**
**OAKLAND DIVISION**

| | |
|---|---|
| SANDISK TECHNOLOGIES, INC., et al., | Case No. 5:22-cv-4376 |
| Plaintiffs, | |
| vs. | **VIASAT, INC.'S THIRD SUPPLEMENTAL OBJECTIONS & RESPONSES TO PLAINTIFFS' SECOND SET OF INTERROGATORIES (NOS. 9-15)** |
| VIASAT, INC.,, | |
| Defendant. | |

1      Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant Viasat, Inc.

2   ("Viasat") hereby supplements its responses to Plaintiffs' Second Set of Interrogatories (Nos. 9-15)

3   as follows.  Pursuant to Federal Rule of Civil Procedure 26(e), Plaintiff reserves the right to further

4   supplement its responses to these Interrogatories if it learns of additional responsive information.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **INTERROGATORY NO. 14:**

2      Identify with specificity, on a claim-by-claim basis, all factual and legal bases supporting

3  any allegedly acceptable, non-infringing alternatives to the claims of the Asserted Patents available

4  to You as of the earliest date that You began offering, providing, or using the Accused Products.

5  Include the complete factual basis for Your response, including the identity of each individual with

6  personal knowledge regarding the non-infringing alternatives, the relative costs and/or benefits of

7  using the Accused Products in place of such non-infringing alternatives, and identifying any

8  documents relating to such allegedly non-infringing alternatives.

9  **RESPONSE TO INTERROGATORY NO. 14:**

10      Viasat incorporates by reference all of its General Objections as if fully set forth herein.

11  Viasat further objects to this Interrogatory on the grounds it is overbroad, unduly burdensome,

12  vague, and ambiguous, including without limitation through its use of the phrases "Accused

13  Products" and "performance."  Viasat further objects to this Interrogatory to the extent it seeks

14  Privileged Information.  Viasat objects to this Interrogatory to the extent it seeks documents or

15  information related to expert disclosure.

16      Subject to and without waiving the foregoing objections, Viasat responds as follows: Viasat

17  states that this Interrogatory is premature, as it is Plaintiffs' burden to prove damages, and Plaintiff

18  has provided no damages theory with any specificity, and because Plaintiffs have not responded to

19  Viasat's repeated assertion that Plaintiffs are entitled to no damages because Viasat has not engaged

20  and is not engaging in any act that constitutes direct infringement, induced infringement,

21  contributory infringement, either literally or under the doctrine of equivalents, of any valid and

22  enforceable claim of any of the patents-in-suit.  Viasat further responds that discovery is ongoing

23  and Viasat will supplement its response to this interrogatory as necessary pursuant to Fed. R. Civ.

24  P. 26(e) after further discovery has been conducted including, for example, an explanation by

25  Plaintiffs of how the Accused Instrumentalities infringe under the Court's claim constructions.

26      Viasat's investigation and discovery are ongoing.  Viasat reserves all rights to amend or

27  supplement its objections and/or responses as its investigation continues.

28

-11-

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 14 (1/8/2025):**

Viasat incorporates by reference its prior objections and response to this Interrogatory. Subject to and without waiving the foregoing response and objections, Viasat hereby supplements its objections and response to state that each of the following would be non-infringing alternatives to the claims of the Asserted Patents:

As explained in Viasat's response to Interrogatory No. 8, the Accused Products do not infringe the Asserted Patents. Therefore, the Accused Products are non-infringing alternatives to the asserted claims of the Asserted Patents.

The prior art listed in Viasat's Invalidity Contentions for the '400 Patent pre-dates that patent and could not infringe any valid claim of the '400 Patent. This prior art is therefore also a non-infringing alternative to the asserted claims of the '400 Patent. These non-infringing alternatives include the Verimatrix Content Access System (including its Content Security Manager and MultiRights system), the eMusic digital kiosk (including the Intertrust Digibox and its Marlin/ExpressPlay DRM) and the Cryptography Research CryptoFirewall.

The prior art listed in Viasat's Invalidity Contentions for the '667 Patent pre-dates that patent and could not infringe any valid claim of the '667 Patent. This prior art is therefore also a non-infringing alternative to the asserted claims of the '667 Patent. These non-infringing alternatives include the TiVo Premiere, the DirecTV VOD Services, HR23 DVR, and Genie DVR, the DISH VOD Services, ViP622 DVR, ViP722k, Hopper DVR, and Joey Receivers, the WD My Book AV DVR Expander, and the WD TV Live Plus.

As noted in Viasat's response to Interrogatory No. 8, the Accused Products are not a "media streaming system comprising … one or more hardware processors configured to … receive an indication of the NAS device having a secure region"; therefore, the Accused Products are a non-infringing alternative to the '667 patent. Viasat also does not practice, and does not contribute to or induce others to practice, a "method of transmitting media content from a media streaming system, the method comprising … receiving an indication of the NAS device having a secure region"; Viasat's methods of operation are therefore non-infringing alternatives to the '667 patent. To the extent Plaintiffs identify some processor in Viasat's system "configured to … receive an indication

of the NAS device having a secure region" (which they have not), or identify some "method of transmitting media content from a media streaming system, the method comprising … receiving an indication of the NAS device having a secure region" (which they have not), Viasat could design its systems and revise its methods of operation to remove any such "indication of the NAS device having a secure region." Viasat has no need for any "indication of the NAS device having a secure region," no Viasat customer has requested or required any such "indication of the NAS device having a secure region," and Viasat's products and services would be commercially viable without any such "indication."

As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not have an NAS device with a "secure region comprising a buffer for streaming media on a separate display device on the local area network"; therefore, the Accused Products are a non-infringing alternative to the '667 patent. To the extent Plaintiffs identify some component of the Accused Products that constitutes an NAS device with a "secure region comprising a buffer for streaming media on a separate display device on the local area network" (they have not), Viasat could design its systems to remove any such "secure region comprising a buffer for streaming media on a separate display device on the local area network." Viasat has no need for any "secure region comprising a buffer for streaming media on a separate display device on the local area network," no Viasat customer has requested or required any such "secure region comprising a buffer for streaming media on a separate display device on the local area network," and Viasat could employ a system that loads media content to an NAS device without a "secure region" that is inaccessible. This would be a commercially acceptable non-infringing alternative because it would not cause an NAS device to lack any security feature that Viasat's customers demand.

As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not allow "the media streaming system" to control "access to the secure region" of the NAS device; therefore, the Accused Products are a non-infringing alternative to the '667 patent. To the extent Plaintiffs identify some method by which the Accused Products allow "the media streaming system" to control "access to the secure region" of the NAS device (they have not), Viasat could design its systems to remove any such means for "the media streaming system" to control "access to the secure region." Viasat

1  has no need for "the media streaming system" to be able to control "access to the secure region" of

2  the NAS device, no Viasat customer has requested or required any such means to control "access to

3  the secure region," and a Viasat system that did not allow such a feature would be a commercially

4  viable system.

5      As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not "cause

6  the NAS device to use encryption that secures the digital content to the secure region" of the NAS

7  device; therefore, the Accused Products are a non-infringing alternative to the '667 patent. To the

8  extent Plaintiffs identify some method by which the Accused Products "cause the NAS device to

9  use encryption that secures the digital content to the secure region" of the NAS device (they have

10  not), Viasat could design its systems to remove any such means for "caus[ing] the NAS device to

11  use encryption that secures the digital content to the secure region" of the NAS device." Viasat has

12  no need for using "encryption [to] secure[] the digital content to the secure region" of the NAS

13  device and no Viasat customer has requested or required using "encryption [to] secure[] the digital

14  content to the secure region" of the NAS device. This would be a commercially acceptable non-

15  infringing alternative because it would not cause a NAS device to lack any encryption feature that

16  Viasat's customers demand.

17      As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not "provide

18  instructions to the NAS device for controlling an encryption type used in the secure region" of the

19  NAS device; therefore, the Accused Products are a non-infringing alternative to the '667 patent. To

20  the extent Plaintiffs identify some method by which the Accused Products "provide instructions to

21  the NAS device for controlling an encryption type used in the secure region" of the NAS device

22  (they have not), Viasat could design its systems to remove any such means for "provid[ing]

23  instructions to the NAS device for controlling an encryption type used in the secure region" of the

24  NAS device." Viasat has no need for "controlling an encryption type used in the secure region" of

25  the NAS device and no Viasat customer has requested or required "controlling an encryption type

26  used in the secure region" of the NAS device. Viasat has no need for no need for multiple types of

27  encryption, let alone the ability to control which of those types is used. This would be a

28

1    commercially acceptable non-infringing alternative because it would not cause a NAS device to lack

2    any "NAS regional encryption type control" feature that Viasat's customers demand.

3        As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not "provide

4    instructions to the NAS device for controlling an amount of data stored in the secure region" of the

5    NAS device; therefore, the Accused Products are a non-infringing alternative to the '667 patent. To

6    the extent Plaintiffs identify some method by which the Accused Products "provide instructions to

7    the NAS device for controlling an amount of data stored in the secure region" of the NAS device

8    (they have not), Viasat could design its systems to remove any such means for "provid[ing]

9    instructions to the NAS device for controlling an amount of data stored in the secure region" of the

10   NAS device." Viasat has no need for "controlling an amount of data stored in the secure region" of

11   the NAS device and no Viasat customer has requested or required "controlling an amount of data

12   stored in the secure region" of the NAS device. This would be a commercially acceptable non-

13   infringing alternative because, as explained above, a NAS device that did not receive instructions to

14   control an amount of data stored in a secure region is not a NAS device that lacks a feature Viasat's

15   customers demand.

16       As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not include

17   "portable data storage devices" from Viasat; therefore, the Accused Products offered by Viasat are

18   a non-infringing alternative to the '400 patent. To the extent Plaintiffs identify some method by

19   which seatback devices that some Viasat customers employ on some aircraft are "portable" (they

20   are not), third-party providers of seatback devices had the ability to design its seatback devices to

21   eliminate any characteristics making those devices "portable." This would be a commercially

22   acceptable non-infringing alternative because seatback devices are not intended to be "portable"

23   within the meaning of the '400 patent claims, but rather intended to remain fixed in the seatback.

24       As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not "obtain a

25   unique identifier from the portable data storage device, wherein the unique identifier is specific to

26   the portable data storage device and is concealed by the portable data storage device;" therefore, the

27   Accused Products are a non-infringing alternative to the '400 patent. Viasat does not require any

28   "unique identifier" that "is *concealed* by the portable data storage device" as part of its system, and

Viasat does not instruct any airline passenger or airline customer to "*conceal*" any identifier on any personal electronic device. To the extent Plaintiffs identify some method by which the user devices or seatback devices "conceal[]" a "unique identifier" that Viasat allegedly obtains (they have not), third-party providers of user devices or seatback devices had the ability to design its devices such that they do not conceal those unique identifiers. To the extent Plaintiffs identify some method by which the processors in Viasat systems "obtain a unique identifier from the portable data storage device, wherein the unique identifier is specific to the portable data storage device and is concealed by the portable data storage device," it would be a trivial change for Viasat to instead obtain and use any other unique identifier of the device that is not "concealed" by the device. This would be a commercially acceptable non-infringing alternative because (1) Viasat has no need to identify or track individual user devices or seatback devices for purposes of media content distribution using a "concealed" identifier, (2) Viasat's customers do not require or request systems that track individual user devices or seatback devices using a "concealed" identifier, and (3) Viasat does not instruct its airline customers, airline passengers, or any other users of Viasat systems to "conceal" any identifiers unique to their devices in order to make Viasat's systems commercially viable.

As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not "authenticate the portable data storage device, using at least the unique identifier, by communicating with the remote trusted server over the second data interface;" therefore, the Accused Products are a non-infringing alternative to the '400 patent. To the extent Plaintiffs identify some method by which the processors "authenticate" user devices or seatback devices using the aforementioned "concealed" "unique identifier" or to conduct that authentication by "communicating with the remote trusted server over the second data interface" to provide that "concealed" "unique identifier" to the "remote trusted server," Viasat had the ability to design its processors such that they do not authenticate any user device or seatback device in this fashion. Viasat could use a unique identifier that was not the aforementioned "concealed" unique identifier, and provide that non-concealed unique identifier for authentication. Viasat also had the ability to use a DRM system that does not communicate with any "remote trusted server" for authentication purposes. Viasat could also use a third-party DRM system that does not uniquely identify a device and communicate with a remote

1  trusted server before the user is allowed to stream content from the media server.  This would be a

2  commercially acceptable non-infringing alternative because Viasat has no need to identify or track

3  individual user devices or seatback devices for purposes of media content distribution using a remote

4  server that authenticates user devices based on a concealed device identifier; this is not a method of

5  authentication that Viasat's customers demand, and Viasat's devices do not need to offer this feature

6  to be commercially viable.

7       As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not "in

8  response to the authentication, provide to the portable data storage device an encrypted first media

9  content and a corresponding access key;" therefore, the Accused Products are a non-infringing

10  alternative to the '400 patent. To the extent Plaintiffs identify some method by which the processors

11  provide "an encrypted first media content" or provide "a corresponding access key," Viasat had the

12  ability to design its processors such that they do not provide encrypted media content or access key

13  to any user device or seatback device.  This would be a commercially acceptable non-infringing

14  alternative because Viasat's customers do not request this feature and Viasat's products do not

15  require this feature to be commercially viable.

16       As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not have a

17  kiosk located in a "public environment"; therefore, the Accused Products are a non-infringing

18  alternative to the '400 patent. To the extent Plaintiffs identify some method by which the IFE

19  system, Viasat's Network Access Unit ("NAU"), Viasat's Mobile Application Server, Viasat S4

20  Server, or Gateway system were located in a "public environment," Viasat had the ability to install

21  all or some modules of the IFE system, Viasat's Network Access Unit ("NAU"), Viasat's Mobile

22  Application Server, Viasat S4 Server, or Gateway system in a private environment. Viasat could,

23  for example, install these devices in an area of an airplane that is not accessible to the general

24  public.  This would be a commercially acceptable non-infringing alternative because Viasat has no

25  need to place any of these modules in an environment accessible to the general public, and no Viasat

26  customer has requested or required that these modules be located in an environment accessible to

27  the general public.

28

1    Viasat further responds to this Interrogatory as follows: Pursuant to Federal Rule of Civil

2    Procedure 33(d), Viasat has produced or is producing documents responsive to this Interrogatory,

3    including documents relating to Viasat customers' requests for proposals (RFPs). These documents

4    further demonstrate that products lacking the functionalities described above are and would be

5    commercially acceptable. The burden of ascertaining further information responsive to this

6    Interrogatory from those documents is substantially the same for Plaintiffs as it is for Viasat.

7    **<u>SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 14 (2/6/2025):</u>**

8    Viasat incorporates by reference its prior objections and response to this Interrogatory.

9    Subject to and without waiving the foregoing response and objections, Viasat hereby supplements

10    its objections and response to state that each of the following would be non-infringing alternatives

11    to the claims of the Asserted Patents:

12    As explained in Viasat's response to Interrogatory No. 8, the Accused Products do not

13    infringe the Asserted Patents. Therefore, the Accused Products are non-infringing alternatives to

14    the asserted claims of the Asserted Patents.

15    The prior art listed in Viasat's Invalidity Contentions for the '400 Patent pre-dates that patent

16    and could not infringe any valid claim of the '400 Patent. This prior art is therefore also a non-

17    infringing alternative to the asserted claims of the '400 Patent. These non-infringing alternatives

18    include the Verimatrix Content Access System (including its Content Security Manager and

19    MultiRights system), the eMusic digital kiosk (including the Intertrust Digibox and its

20    Marlin/ExpressPlay DRM), and the Cryptography Research CryptoFirewall.

21    The prior art listed in Viasat's Invalidity Contentions for the '667 Patent pre-dates that patent

22    and could not infringe any valid claim of the '667 Patent. This prior art is therefore also a non-

23    infringing alternative to the asserted claims of the '667 Patent. These non-infringing alternatives

24    include the TiVo Premiere, the DirecTV VOD Services, HR23 DVR, and Genie DVR, the DISH

25    VOD Services, ViP622 DVR, ViP722k, Hopper DVR, and Joey Receivers, the WD My Book AV

26    DVR Expander, the WD TV Live Plus, and SCSA's DRM solution/Project Phenix/Vidity.

27    As noted in Viasat's response to Interrogatory No. 8, the Accused Products are not a "media

28    streaming system comprising . . . one or more hardware processors configured to . . . receive an

1  indication of the NAS device having a secure region"; therefore, the Accused Products are a non-

2  infringing alternative to the '667 patent. Viasat also does not practice, and does not contribute to or

3  induce others to practice, a "method of transmitting media content from a media streaming system,

4  the method comprising . . . receiving an indication of the NAS device having a secure region";

5  Viasat's methods of operation are therefore non-infringing alternatives to the '667 patent. Plaintiffs

6  allege that the boolean value "███████" included within the structure ███████ is the claimed

7  "indication" because, "[w]hen true, this indicates the presence of a secure region." This boolean

8  value is not the claimed "indication" for the reasons noted in Viasat's response to Interrogatory No.

9  8, but to the extent Plaintiffs continue to allege that it is, Viasat could design its systems and revise

10  its methods of operation to remove this value. As an initial matter, in mobility (IFE) use cases, the

11  "███████" boolean is always set to false. As such, the variable could be removed without any

12  effect to the rest of the system and extremely minimal development time or cost. In residential

13  Stream use cases, all users make use of Viasat "Hub" devices, which are hard drives that are pre-

14  configured by Viasat to be encrypted. Therefore, the use of a variable indicating whether the drive

15  is encrypted is redundant. Viasat could remove the "███████" boolean without affecting the actual

16  security of its system, and such a change would require minimal development time and cost. These

17  alternative would be non-infringing on Plaintiffs' own theory because there would no longer be any

18  alleged "indication" (i..,e. the "███████" boolean when set to true) sent or received by any device

19  in the system. This alternative would also be commercially acceptable because it would not have

20  any effect on the functionality of Viasat's systems from an end user's perspective, nor would it

21  remove any security measures from Viasat's systems. It would take an estimated four weeks of

22  development time, at most, with a development cost of approximately $100,000 to implement these

23  changes and remove the "███████" boolean variable entirely from the source code.

24      As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not have an

25  NAS device with a "secure region comprising a buffer for streaming media on a separate display

26  device on the local area network"; therefore, the Accused Products are a non-infringing alternative

27  to the '667 patent. Plaintiffs allege that the alleged NAS devices have the claimed "secure regions"

28  because they are allegedly encrypted. These devices do not have the claimed "secure regions" for

1   the reasons noted in Viasat's response to Interrogatory No. 8, including because, among other

2   reasons, an *entire* device is not a "*region*" of that device. But to the extent Plaintiffs continue to

3   allege that they do infringe, Viasat could design its systems to ensure that these devices are

4   unencrypted. This alternative would be non-infringing because the alleged NAS devices would not

5   include the alleged "secure regions," in the (incorrect) way Plaintiffs are alleging that this claim

6   limitation is met. This alternative would be commercially acceptable because the content itself (as

7   opposed to any alleged "region" or a device where content may be stored) would still make use of

8   DRM security on that content, and therefore be unusable in its stored form. Alternatively files could

9   still be encrypted individually (rather than be stored on an encrypted drive or any particular "region"

10   of a drive). In either case, this alternative would have, at most, a minimal effect on the functionality

11   of Viasat's systems from an end user's perspective. It would take an estimated three months with a

12   development cost of no more than $500,000 to implement these changes.

13       As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not "cause

14   the NAS device to use encryption that secures the digital content to the secure region" of the NAS

15   device; therefore, the Accused Products are a non-infringing alternative to the '667 patent. Plaintiffs

16   allege that the alleged NAS devices are encrypted, and that they therefore "use encryption [to]

17   secure[] the digital content to the[ir] secure region." These devices do not do so for the reasons noted

18   in Viasat's response to Interrogatory No. 8, but to the extent Plaintiffs continue to allege that they

19   do, Viasat could design its systems to ensure that these devices are unencrypted. This alternative

20   would be non-infringing because, among other reasons, the alleged NAS devices would not "use"

21   encryption at all. This alternative would be commercially acceptable because the content would still

22   make use of DRM security and therefore be unusable in its stored form. Alternatively files could

23   still be encrypted individually (rather than be stored on an encrypted drive or any particular "region"

24   of a drive). In either case, this alternative would have, at most, a minimal effect on the functionality

25   of Viasat's systems from an end user's perspective. It would take an estimated three months with a

26   development cost of no more than $500,000 to implement these changes.

27       As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not "provide

28   instructions to the NAS device for controlling an encryption type used in the secure region" of the

THIRD SUPPLEMENTAL OBJECTIONS & RESPONSES TO PLAINTIFFS'
SECOND SET OF INTERROGATORIES

1  NAS device; therefore, the Accused Products are a non-infringing alternative to the '667 patent.

2  Plaintiffs allege that the alleged NAS devices are encrypted, and that they therefore "control[] an

3  encryption type used in the secure region." These devices do not do infringe for the reasons noted

4  in Viasat's response to Interrogatory No. 8, but to the extent Plaintiffs continue to allege that they

5  do, Viasat could design its systems to ensure that these devices are unencrypted. This alternative

6  would be non-infringing because the alleged NAS devices would not "control" any encryption at

7  all. This alternative would be commercially acceptable because the content would still make use of

8  DRM security and therefore be unusable in its stored form. Alternatively files could still be

9  encrypted individually (rather than be stored on an encrypted drive or any particular "region" of a

10  drive). In either case, this alternative would have, at most, a minimal effect on the functionality of

11  Viasat's systems from an end user's perspective. It would take an estimated three months with a

12  development cost of no more than $500,000 to implement these changes.

13      As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not include

14  "portable data storage devices" from Viasat; therefore, the Accused Products offered by Viasat are

15  a non-infringing alternative to the '400 patent. Plaintiffs allege that end-user devices, such as

16  cellphones and tablets, constitute "portable data storage devices" and also accuse seatback devices

17  of being "portable data storage devices." These devices are not "portable data storage devices" for

18  the reasons noted in Viasat's response to Interrogatory No. 8, but to the extent Plaintiffs identify

19  some method by which seatback devices that some Viasat customers employ on some aircraft are

20  "portable" (they are not), airlines and third-party providers of seatback devices had the ability to

21  design their seatback devices to eliminate any characteristics making those devices "portable," such

22  as simply manufacturing the seatback devices and seats to be more securely fastened together. This

23  would be a commercially acceptable non-infringing alternative because (1) seatback devices are not

24  intended to be "portable" within the meaning of the '400 patent claims, but rather intended to remain

25  fixed in the seatback, and because (2) Viasat's customers do not require or request that the seatbacks

26  be "portable" such that passengers can easily carry them and move about.

27      As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not "obtain a

28  unique identifier from the portable data storage device, wherein the unique identifier is specific to

the portable data storage device and is concealed by the portable data storage device;" therefore, the Accused Products are a non-infringing alternative to the '400 patent. Plaintiffs accuse a litany of source code variables, such as ████████████████████████ etc., of constituting "unique identifiers" that are "specific to" and "concealed by" the portable data storage device. For the reasons noted in Viasat's response to Interrogatory No. 8, Viasat does not require any "unique identifier" that "is *concealed* by the portable data storage device" as part of its system, and Viasat does not instruct any airline passenger or airline customer to "*conceal*" any identifier on any personal electronic device. Moreover, for the reasons noted in Viasat's response to Interrogatory No. 8, Viasat does not require any "unique identifier" that "is *specific to* the portable data storage device" as part of its system. To the extent Plaintiffs identify some method by which the user devices or seatback devices "conceal[]" a "unique identifier" that Viasat allegedly obtains (they have not), third-party providers of user devices or seatback devices had the ability to design its devices such that they do not conceal those unique identifiers.  To the extent Plaintiffs identify some method by which the processors in Viasat systems "obtain a unique identifier from the portable data storage device, wherein the unique identifier is specific to the portable data storage device and is concealed by the portable data storage device," it would be a trivial change for Viasat to instead replace the variable in the source code with any other identifier of the device that is not "concealed" by the device, or to simply broadcast rather than conceal any allegedly-concealed value that is currently used. This would require few if any changes; indeed, Plaintiff's own infringement contentions list a plethora of identifiers that are not concealed by the end-user device. Viasat also has the ability to publish the accused source code variable—such as the ████████████████ etc.—such that the identifier would no longer be "concealed" without generating any privacy compliance, or functional issues.  It would take an engineer less than two hours to code such an API, and less than two days to fully test and deploy the API. These would be commercially acceptable non-infringing alternatives because (1) Viasat has no need to identify or track individual user devices or seatback devices for purposes of media content distribution using a "concealed" identifier, (2) Viasat's customers do not require or request systems that track individual user devices or seatback devices using a "concealed" identifier, (3) Viasat does not instruct its airline customers, airline passengers,

1   or any other users of Viasat systems to "conceal" any identifiers unique to their devices in order to

2   make Viasat's systems commercially viable, (4) Viasat has no need to identify or track individual

3   user devices or seatback devices for purposes of media content distribution using an identifier that

4   is "specific to" and "concealed by" a user device or seatback device, (5) Viasat's customers do not

5   require or request systems that track individual user devices or seatback devices using an identifier

6   that is "specific to" and "concealed by" a user device or seatback device, and (6) Viasat does not

7   instruct its airline customers, airline passengers, or any other users of Viasat systems to generate

8   any identifiers that are "specific to" and "concealed by" a user device or seatback device in order to

9   make Viasat's systems commercially viable.

10          As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not

11  "authenticate the portable data storage device, using at least the unique identifier, by communicating

12  with the remote trusted server over the second data interface;" therefore, the Accused Products are

13  a non-infringing alternative to the '400 patent. Plaintiffs accuse "Viasat AWS servers, content

14  provider servers, Viasat data center, content management server" and "VCDS servers (e.g., Core

15  Node, Smarts, Web Proxy, VCDS AWS Account) and content provider servers" as being the

16  "remote trusted server."  Viasat has no "kiosk" that "authenticate[s] the portable data storage device,

17  using at least the unique identifier, by communicating with the remote trusted server" for the reasons

18  noted in Viasat's response to Interrogatory No. 8, but to the extent Plaintiffs identify some method

19  by which the IFE back-end "authenticate[s]" user devices or seatback devices using the

20  aforementioned "concealed" "unique identifier" or conducts that authentication by "communicating

21  with the remote trusted server over the second data interface" to provide that "concealed" "unique

22  identifier" to the "remote trusted server," Viasat had the ability to design the IFE back-end such that

23  it does not authenticate any user device or seatback device in this fashion. Viasat could use a unique

24  identifier that was not the aforementioned "concealed" unique identifier, and provide that non-

25  concealed unique identifier for authentication. Viasat also had the ability to use a DRM system that

26  does not communicate with any "remote trusted server" for authentication purposes; in fact, Viasat

27  already does so. Viasat has long used local ████████████ implementations on aircraft for

28  DRM.  Viasat's recent deprecation of the ██████ DRM system—from the cloud-based

1   ████████ DRM server to the local ████████ DRM server—serves as evidence of just how easily

2   Viasat can (and did) replace remote servers with local servers. It would only take **Viasat** ████

3   ████████████ **and an estimated 2 days** to update its new player to set its default preference to

4   ████████████████. This is a commercially acceptable non-infringing alternative because

5   passengers receive an identical (and sometimes better) user experience, whereby user devices can

6   still obtain DRM licenses from local DRM servers even if a commercial airplane travels through a

7   dead zone without Internet connectivity. Viasat could also use a third-party DRM system that does

8   not uniquely identify a device and communicate with a remote trusted server before the user is

9   allowed to stream content from the media server.  This would be a commercially acceptable non-

10  infringing alternative because Viasat has no need to identify or track individual user devices or

11  seatback devices for purposes of media content distribution using a remote server that authenticates

12  user devices based on a concealed device identifier; this is not a method of authentication that

13  Viasat's customers demand, and Viasat's devices do not need to offer this feature to be

14  commercially viable.

15        As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not "in

16  response to the authentication, provide to the portable data storage device an encrypted first media

17  content and a corresponding access key;" therefore, the Accused Products are a non-infringing

18  alternative to the '400 patent. Plaintiffs accuse Viasat's third-party DRM license servers, such as

19  ████████████████████████████, that "provide a license to authenticated requests

20  (i.e. with a valid token)" as providing the "corresponding access key."  For the reasons stated in

21  Viasat's response to Interrogatory No. 8, Viasat does not have a "kiosk" that "provide[s] to the

22  portable data storage device an encrypted first media content and a corresponding access key." To

23  the extent Plaintiffs identify some method by which the processors provide "an encrypted first media

24  content" or provide "a corresponding access key," Viasat had the ability to design its processors

25  such that they do not provide encrypted media content or access key to any user device or seatback

26  device. It would take **two engineers an estimated two weeks to 3 months** to implement these

27  changes. This would be a commercially acceptable non-infringing alternative because Viasat's

28  customers do not request that the encrypted media content or the access key be provided by Viasat

1  in response to authenticating a device and Viasat's products do not require this feature to be

2  commercially viable.

3  As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not have a

4  kiosk located in a "public environment"; therefore, the Accused Products are a non-infringing

5  alternative to the '400 patent. To the extent Plaintiffs identify some method by which the IFE

6  system, Viasat's Network Access Unit ("NAU"), Viasat's Mobile Application Server, Viasat S4

7  Server, or Gateway system were located in a "public environment," Viasat had the ability to install

8  all or some modules of the IFE system, Viasat's Network Access Unit ("NAU"), Viasat's Mobile

9  Application Server, Viasat S4 Server, or Gateway system in a non-public environment. While the

10  S4 server is already located in the private avionics bay on the aircraft, which is not a public

11  environment, airlines could, for example, install yet another lock or layer of security on the avionics

12  bay, to the extent Plaintiffs contend this location is somehow accessible to the public. This would

13  be a commercially acceptable non-infringing alternative because (1) Viasat has no need to place any

14  of these modules in a location accessible to the general public, and (2) no Viasat customer has

15  requested or required that these modules be placed in a location accessible to the general public.

16  Viasat further responds to this Interrogatory as follows: Pursuant to Federal Rule of Civil

17  Procedure 33(d), Viasat has produced documents responsive to this Interrogatory, including

18  documents relating to Viasat customers' requests for proposals (RFPs). These documents further

19  demonstrate that products lacking the functionalities described above are and would be

20  commercially acceptable. The burden of ascertaining further information responsive to this

21  Interrogatory from those documents is substantially the same for Plaintiffs as it is for Viasat.

22  **INTERROGATORY NO. 15:**

23  Correlate each source code folder that Viasat made available (or will make available) for

24  review by Plaintiffs with the corresponding functionality of Viasat's systems (for example, by

25  mapping each source code folder with a block diagram provided in VIASAT_00008705) and the

26  location and type of the computing device that executes the source code (e.g., ground server, plane

27  server, user device, seat-back device, etc.).

28

1    DATED:  February 6, 2025            QUINN EMANUEL URQUHART &
                                          SULLIVAN, LLP
2

3

4                                         By_____/s/ Patrick Curran_____
                                             Patrick Curran
5                                            Counsel for *Defendant Viasat Inc.*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THIRD SUPPLEMENTAL OBJECTIONS & RESPONSES TO PLAINTIFFS'
SECOND SET OF INTERROGATORIES

1

## <u>CERTIFICATE OF SERVICE</u>

2        I hereby certify that on February 6, 2025, I caused a copy of the foregoing document to be

3   served on the following counsel for Plaintiffs via email:

4            L. Kieran Kieckhefer:      KKieckhefer@gibsondunn.com

5            Ahmed ElDessouki:         aeldessouki@gibsondunn.com

6            Lillian J. Mao:           LMao@gibsondunn.com

7

8

9                                                 */s/ Alicia Lai*
                                                  Alicia Lai
10                                                Counsel for *Defendant Viasat Inc.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28