QUINN EMANUEL URQUHART & SULLIVAN, LLP
 Steven Cherny (*pro hac vice*)
 stevencherny@quinnemanuel.com
 Patrick D. Curran (Bar No. 241630)
 patrickcurran@quinnemanuel.com
 Tzivya H. Beck (*pro hac vice*)
 tzivyabeck@quinnemanuel.com
 Hannah Dawson (*pro hac vice*)
 hannahdawson@quinnemanuel.com
 111 Huntington Ave, Suite 520
Boston, MA 02199
Telephone:    (617) 712-7100
Facsimile:    (617) 712-7200

QUINN EMANUEL URQUHART & SULLIVAN, LLP
 Jodie Cheng (Bar No. 292330)
 jodiecheng@quinnemanuel.com
Gyu Shik Jang (Bar No, 337747)
 kevinjang@quinnemanuel.com
 50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

QUINN EMANUEL URQUHART & SULLIVAN, LLP
 Nicola R. Felice (*proc hac vice*)
 nicolafelice@quinnemanuel.com
 Anastasia Fernands (*pro hac vice*)
 anastasiafernands@quinnemanuel.com
Vanessa Blecher (*pro hac vice*)
 vanessablecher@quinnemanuel.com
 Alicia Lai (*pro hac vice*)
 alicialai@quinnemanuel.com
 295 5th Avenue
New York, NY 10016
Telephone:    (212) 849-7000
Facsimile:    (212) 849-7100

 *Attorneys for Defendant Viasat, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| SANDISK TECHNOLOGIES, INC., et al., | Case No.: 4:22-cv-4376-HSG |
| Plaintiffs, | |
| v. | **VIASAT'S OPPOSITION TO SANDISK'S MOTION TO STRIKE VIASAT'S INTERROGATORY RESPONSES RE NON-INFRINGEMENT AND NON-INFRINGING ALTERNATIVES (DKT. 168)** |
| VIASAT, INC., | |
| Defendant. | |

## I.     INTRODUCTION

Plaintiffs' motion to strike (Dkt. 168) should be denied. Viasat's disclosures were timely, and Plaintiffs were not prejudiced by Viasat's supplemental disclosures.

<u>Viasat's supplemental disclosures were timely</u>. Viasat's contention interrogatory responses regarding non-infringement and acceptable non-infringing alternative designs were served before fact discovery closed. Plaintiffs never requested an earlier deadline for contention responses and never sought an order compelling final contention supplements by some date earlier than the close of fact discovery. Indeed, Plaintiffs *refused* Viasat's proposal for earlier contention interrogatory responses. Plaintiffs then waited until late in the evening on Feb. 7 to supplement their own contention interrogatory responses, and supplemented contentions again on Feb. 13, after fact discovery closed. Ex. B; Ex. C. Plaintiffs' motion calls Viasat "late" for serving interrogatory supplements *earlier* than Plaintiffs did, and faults Viasat for complying with the schedule Plaintiffs insisted on. On those facts, Plaintiffs' allegation that Viasat was "untimely" can be quickly rejected.

Plaintiffs are also wrong on the law. Courts in this district routinely refuse to compel early responses to contention interrogatories, noting that the "wisest general policy is to defer … answering contention interrogatories until near the *end* of the discovery period." *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 336 (N.D. Cal. 1985) (emphasis added). Plaintiffs' cited cases are inapposite; they deal with Patent Local Rule disclosures on infringement or invalidity, or with expert disclosures addressing claim limitations that were not contested during fact discovery—not a party's contention interrogatory responses served within the fact discovery window.

<u>Plaintiffs were not prejudiced by Viasat's Feb. 6 disclosures</u>. Plaintiffs identify no prejudice that would warrant striking Viasat's supplemental contentions.

*Non-infringement*: Where supplemental non-infringement contentions do not disclose "previously nonpublic information" about how the accused products work, a plaintiff is not prejudiced by those contentions. *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 236 F. Supp. 3d 1110, 1114-16 (N.D. Cal. 2017). Here, Plaintiffs had *all* the documents Viasat cites in its Feb. 6 supplement long before the supplement was served. Indeed, nearly *every* document cited in Viasat's Feb. 6 supplement was *actually cited* by Plaintiffs in their own infringement contentions. Plaintiffs

1    identify no case where a defendant's non-infringement contentions were struck for addressing,

2    within the fact discovery period, Plaintiffs' failure of proof on infringement by analyzing the very

3    same materials Plaintiffs themselves previously cited as its supposed evidence of infringement.

4        Plaintiffs' claim of deposition-related prejudice is also meritless. Plaintiffs were not

5    prevented from taking depositions on how any accused products operate. Plaintiffs were able

6    explore infringement allegations with multiple witnesses after Viasat's Feb. 6 supplement had been

7    served, including Mr. Dan Newman (Stream) on Feb. 7 and Ms. Kendall Wilson (Stream) on Feb.

8    18. And in the coming days, Plaintiffs will have that opportunity again, deposing Mr. Des O'Sullivan

9    (in-flight entertainment) on Feb. 26 and Mr. Finn Hughes (in-flight entertainment) on Feb. 28.[1]

10   Plaintiffs were not deprived of the chance to take depositions.

11       The timing of Viasat's third supplement was also substantially justified by the case schedule.

12   Inventor depositions took place between Jan. 22 and Feb. 5. Viasat's Feb. 6 supplement cites that

13   inventor testimony to explain how numerous claims limitations are not met. Plaintiffs also waited

14   until Jan. 16, 2025 to seek leave to amend their Patent Local Rule infringement contentions. But

15   incredibly, Plaintiffs now claim supplemental non-infringement contentions served just 15 business

16   days later, which included Viasat's effort to respond on short notice to some of Plaintiffs' new

17   infringement contentions, are untimely. This makes no sense. Although Viasat opposed Plaintiffs'

18   request for leave to amend their infringement contentions (Dkt. 146), Viasat attempted to address

19   those proposed contentions as best it could in supplemental responsive contentions by the fact

20

21

22

23

24

25   _____

26   [1]  These two witnesses were initially confirmed for deposition during the fact discovery period.
     Shortly before those depositions began, Plaintiffs requested that the depositions be rescheduled and
     taken after the close of fact discovery based on a family medical emergency impacting Plaintiffs'
27   counsel. Viasat of course agreed. But this schedule highlights the oddity of Plaintiffs' motion;
     Plaintiffs know they still have two important engineering witnesses to depose, each of whom can
28   discuss both product operation and alternative designs.

VIASAT'S OPPOSITION TO SANDISK'S MOTION TO STRIKE VIASAT'S INTERROGATORY RESPONSES RE NON-
INFRINGEMENT AND NON-INFRINGING ALTERNATIVES (DKT. 168)

1  discovery deadline. Viasat was substantially justified in attempting to respond to those contentions

2  when it did.[2]

3     ***Alternative designs:*** Viasat disclosed all its alternative designs in its first supplemental

4  response on non-infringing alternatives—a response Plaintiffs do not seek to strike. Ex. D at 11-18.

5  The only additional facts in the second supplemental response served Feb. 6 were estimates for the

6  time and cost required to implement those already-disclosed alternative designs. Ex. E at 18-25.

7  Viasat served these time and cost estimates in advance of a Feb. 7 deposition on that subject matter,

8  and Plaintiffs asked numerous questions about them at that deposition. And Plaintiffs will take

9  depositions on Feb. 26 and Feb. 28, respectively, where they can ask yet more questions regarding

10 Viasat's time/cost estimates for its non-infringing alternatives. Plaintiffs have suffered no prejudice

11 from the timing of Viasat's disclosure.

12 **II.     FACTUAL BACKGROUND**

13     On Dec. 16, 2024, Viasat asked Plaintiffs to agree on supplementing contention

14 interrogatory responses before depositions began. Ex. A (Dec. 16, 2024 Email from V. Blecher).

---

21 [2] Given Plaintiffs' failure to propose these new infringement theories until a few weeks before the
22 close of fact discovery, Viasat has been unable to fully analyze Plaintiffs' new infringement theories,
   and Viasat's supplemental responses to these new theories only reflects the limited time Viasat had
23 for a response given Plaintiffs' unjustified delay. As explained in Viasat's opposition to Plaintiffs'
   Motion to Amend Infringement Contentions (Dkt. 153), unfairly compressing Viasat's ability to
24 analyze and respond to infringement contentions is only one form of prejudice; Viasat would be
   unduly prejudiced by Plaintiffs' belated amendment in many other ways, including because Viasat
25 has been unable to reevaluate its invalidity contentions, search for additional prior art (or seek
   additional party and third-party discovery relating to such prior art), explore additional claim
26 constructions relevant to the new infringement theories, investigate the significance of the thousands
   of lines of code Plaintiffs newly accused for non-infringing alternatives, and develop other relevant
27 defenses—including "prior use" defenses for any newly-accused components that pre-date an
28 asserted patent.

Plaintiffs refused, instead insisting that contention interrogatory responses were not due until the Feb. 7 close of fact discovery. *Id*. (Dec. 19, 2024 Email from A. ElDessouki).

On Dec. 30, 2024, in an effort to move both sides forward with contention interrogatory responses, Viasat served a supplemental contention interrogatory response on non-infringement. Ex. F. . Plaintiffs did not reciprocate, and did not supplement their contentions.

On Jan. 3, 2025, Plaintiffs served proposed amended infringement contentions. Dkts. 146, 153. Those revised infringement contentions contained extensive revisions to Plaintiffs' positions— adding new accused products, newly accusing more than 20,000 lines of source code that Plaintiffs had access to since March 2024 but had not previously cited as evidence of infringement, and articulating multiple new theories of infringement. *Id*. Of course, given the Patent Local Rules, infringement contentions could not be amended of right; Plaintiffs needed to seek leave of Court for their late contentions. Plaintiffs did not do so until Jan. 16, 2025, and Viasat opposed. Dkt. 146, 153.

Viasat served a second supplemental contention interrogatory response on non-infringement on January 25, 2025. Ex. G at 19-24. As it explained, Viasat had already identified multiple claim limitations that were not satisfied, and had already identified factual information and source code supporting those positions on non-infringement. *Id*. Viasat's January 25 supplement provided additional detail by mapping specific technical documents and source code, already cited under Rule 33(d), to specific claim limitations (*see, e.g.*, *id*. at 20-23), and reserved the right to supplement further as discovery progressed, including depositions. *Id*. at 20.

Viasat worked diligently to complete depositions by the Feb. 7 deadline set by the Court. Viasat deposed all five named inventors on the two asserted patents in less than two weeks, and made all ten of Viasat's witnesses available for deposition between Jan. 24 and Feb. 7.[3] In that time witnesses testified on multiple issues related to non-infringement, including inventor testimony on

---

[3] Plaintiffs declined the dates offered for one of these witnesses and cancelled the depositions of two other witnesses due to a family emergency, so these depositions were rescheduled for after the close of fact discovery.

claim scope for the '400 and '667 patents, as well as depositions of Viasat engineers related to the operation of Viasat's accused products.

On Feb. 6, before the Feb. 7 and Feb. 28 depositions of Viasat's Rule 30(b)(6) designees on non-infringing alternatives, Viasat served its third supplemental response on non-infringement and its second supplemental response on non-infringing alternatives (NIAs). Viasat's NIA supplement added additional information on the estimated cost of specific design changes. Ex. E at 19-21. Viasat's supplement also attempted to synthesize all available factual information related to non-infringement, including citations to recent inventor testimony, citations to engineering testimony from recent Viasat depositions, and discussions of new theories Plaintiffs first disclosed in their Jan. 2025 proposed amended infringement contentions. Ex. E.

Plaintiffs questioned Mr. Newman about the subject matter of the Feb. 6 supplements extensively during his Feb. 7 deposition, including multiple questions about specific portions of Viasat's Feb. 6 supplement on non-infringing alternatives with respect to Viasat's Stream product. *See* Ex. K (Newman Rough Dep. Tr.) at 104-113 (discussing specific cost and time estimates Mr. Newman provided for the Feb. 6 supplement). Plaintiffs have yet to depose Mr. Hughes, Viasat's Rule 30(b)(6) designee on non-infringing alternatives for in-flight entertainment.

Plaintiffs did not serve their own first supplemental contention interrogatory responses until minutes before the Feb. 7 close of fact discovery. Specifically, at 11:31pm PT on Feb. 7, with only 29 minutes remaining before the fact discovery cutoff, Plaintiffs supplemented their contention

1    interrogatory positions for the first time on multiple issues, including issues where Plaintiffs bear

2    the burden of proof such as the priority date for the '400 patent. *See* Ex. B.

3        On Feb. 13, after fact discovery closed, but before the Feb. 14 deposition of their Rule

4    30(b)(6) designee Soji John, Plaintiffs supplemented their contentions concerning ownership of the

5    asserted patents necessary for standing. *See* Ex. C.

6    **III.    ARGUMENT**

7        Plaintiffs' motion should be denied. Viasat's Feb. 6 supplemental interrogatory responses

8    were timely, particularly in light of Plaintiffs' service of amended infringement contentions just 15

9    business days prior. Plaintiffs also were not prejudiced by those disclosures.

10       **A.    Viasat's Disclosures Were Timely**

11       Absent an earlier court-ordered deadline, supplemental responses to contention

12   interrogatories under Rule 33 are timely when made before the end of the discovery period—

13   including responses at or near the very end of the discovery period, "after much ***or all*** of the other

14   discovery has been completed." *Campbell v. Facebook Inc.*, No. 13-CV-0599-PJH(MEJ), 2015 WL

15   3533221, at *3 (N.D. Cal. June 3, 2015) (emphasis added). This Court has emphasized that

16   contention interrogatory responses depend on "what discovery is about to occur and when," and

17   typically are not even "due when the discovery cutoff is one or two weeks away." *La. Pac. Corp. v.*

18   *Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 492 (N.D. Cal. 2012). In fact,

19   supplementation *after* fact discovery has been found timely where the supplements relate to

20   depositions that occurred late in the discovery process. *See id.* at 491-92(rejecting request in motion

21   to compel seeking opponent's response to contention interrogatories by no later than three days

22   before the close of fact discovery, since important depositions had not yet occurred, and finding that

23   contention supplement within 7 days of upcoming deposition would be timely even if served after

24   close of fact discovery). Motions to compel parties to provide responses to contention interrogatories

25   early in the case schedule are routinely denied by this Court, with parties directed to revisit that issue

26   at "an appropriate time near ***the close of discovery***." *Campbell*, 2015 WL 3533221, at *6 (emphasis

27   added); *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 336 (N.D. Cal. 1985) (refusing to

28   compel early responses to contention interrogatories; "the wisest general policy is to defer

1   propounding and answering contention interrogatories until near **the end of the discovery period**")

2   (emphasis added).[4]

3          In this case, Plaintiffs did not request a case schedule with a deadline for final contention

4   interrogatory responses prior to the close of fact discovery. *See* Dkt. 126. Judge Gilliam likewise

5   did not order supplemental contention interrogatory responses be served on some date certain prior

6   to the close of fact discovery. *See* Dkt. 131. Nevertheless, Viasat proposed that the parties exchange

7   responses earlier, on December 30, 2024. Plaintiffs **refused**, insisting that the parties had until Feb.

8   7 to supplement, and asserting that Plaintiffs were not "required to supplement contention

9   interrogatory responses by December 30, in particular when fact discovery does not close until

10  February 7." Ex. A at 3. Plaintiffs apparently meant what they said, as they waited to supplement

11  their own contention interrogatory responses until Feb. 7, less than 30 minutes before fact discovery

12  closed. Ex. B. Plaintiffs then supplemented their contentions again on Feb. 13, **after** fact discovery

13  closed, in advance of the Feb. 14 deposition of their Rule 30(b)(6) designee. Ex. C. On those facts

14  Plaintiffs cannot credibly call Viasat's supplements, served before the court-ordered deadline for

15  discovery responses, "untimely"—they were served by the deadline Plaintiffs said applied to

16  supplemental contentions, and were in fact served before Plaintiffs' own supplements.

17         Plaintiffs' motion cites only three cases and they are each irrelevant. Notably, none struck

18  non-burden contentions supplemented during fact discovery. In *Asia Vital Components Co., Ltd. v.*

19  *Asetek Danmark A/S,* 377 F. Supp. 3d 990, 1003-04 (N.D. Cal. 2019) and *Apple, Inc. v. Samsung*

20  *Elecs. Co.*, No. 11-CV-01846-LHK, 2012 WL 3155574, at *5 (N.D. Cal. Aug. 2, 2012), the court

21  struck portions of rebuttal expert reports because the rebuttal experts disputed, for the first time,

22  claim limitations that had never previously been disputed in that party's contentions during fact

23  discovery. Of course, Plaintiffs here do not seek to strike expert reports and Viasat supplemented its

24

25

26  ────────────────

27  [4] These decisions accord with rulings from many other districts, all recognizing Rule 33 does not
    require contention interrogatory responses until the end of the discovery period. *See, e.g., B. Braun*

28  *Med. Inc. v. Abbott Lab'ys.*, 155 F.R.D. 525, 527 (E.D. Pa. 1994) ("there is considerable support for
    deferring contention interrogatories until the end of the discovery period") (collecting cases).

1  non-infringement contentions during fact discovery, well before opening expert reports will be

2  served.

3          Plaintiffs' remaining case, *MLC Intell. Prop., LLC v. Micron Tech., Inc.,* No. 14-CV-03657-

4  SI, 2018 WL 6046465 (N.D. Cal. Nov. 19, 2018), denied leave to amend invalidity contentions on

5  which the Defendant bore the burden of proof, citing the Patent Local Rules. That has no

6  applicability here where the challenged contentions are not subject to Patent Local Rule deadlines,

7  but instead are governed by the Scheduling Order and its Feb. 7 deadline for discovery responses.

8          Put simply, Viasat's supplements were served before the court-ordered close of fact

9  discovery, on the timeline Plaintiffs specifically requested for contention interrogatory supplements,

10  and indeed the same timeline Plaintiffs followed for their own contention supplements. Plaintiffs

11  cite no authority supporting a motion to strike under these circumstances and numerous decisions

12  by this Court say the opposite: Contention supplements at the end of the discovery process *are*

13  timely. Plaintiffs' motion should be denied.

14        **B.**     **Plaintiffs Were Not Prejudiced By Viasat's Disclosures**

15          Since Viasat's supplementation was timely, the Court should deny Plaintiffs' motion without

16  reaching prejudice. But if the Court does consider that issue, Viasat's Feb. 6 supplement caused

17  none.

18          On non-infringement, Viasat's Feb. 6 disclosure included no new factual information; Viasat

19  only addressed claim limitations Viasat's prior non-infringement contention responses had *already*

20  identified as missing, citing to documents Viasat's prior non-infringement contentions *already* listed

21  as support. And Plaintiffs had ample opportunities to explore the operation of the accused products

22  during depositions.

23          On non-infringing alternatives, Viasat had already identified the alternative designs in its

24  prior interrogatory responses; the Feb. 6 supplement only disclosed new estimates on the time and

25  cost to implement those designs, and Plaintiffs can—in fact, already did—examine witnesses on

26  those time and cost estimates.

27

28

1

### 1. *Non-Infringement*

2   Plaintiffs claim Viasat's Feb. 6 contention interrogatory responses disclosed Viasat's

3   positions on non-infringement "for the first time." Mot. 1, 3. This is incorrect. Viasat's Feb. 6

4   response was Viasat's *fourth* response on non-infringement and its *third* supplement. Ex. E. That

5   supplement echoed a string of correspondence where Viasat had already told Plaintiffs they had no

6   coherent theory of infringement across multiple claim elements. Dkt. 127; Ex. H. It also followed

7   two prior interrogatory supplements where Viasat identified specific claim limitations that were not

8   infringed and specific supporting evidence for those arguments. *E.g.,* Ex. E at 12, 26.

9   Importantly, Viasat's Feb. 6 supplement on non-infringement relied on the same documents

10  and source code Plaintiffs **themselves** cited as the supposed evidence of infringement. Where no

11  new facts are disclosed in a supplemental response, no prejudice is suffered, and no remedy is

12  warranted. *See Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 236 F. Supp. 3d 1110, 1114-16

13  (N.D. Cal. 2017) (service of a "26-page set of non-infringement contentions" was not prejudicial to

14  a patent owner, and not "good cause" to amend infringement contentions, because defendant's non-

15  infringement contentions did not disclose "previously nonpublic information" about the product);

16  *Verizon California Inc. v. Ronald A. Katz Tech. Licensing, L.P.*, No. 01-CV-09871 RGK(RCX),

17  2003 WL 25761597, at *3 (C.D. Cal. Dec. 2, 2003) (denying motion to strike non-infringement

18  contentions when the patentee "essentially objects to being surprised by [the alleged infringer's]

19  new non-infringement contentions" without showing that **facts** upon which the defendant relied

20  were "unknown" to the patentee).

21  Plaintiffs have not identified any new non-public information on non-infringement in the

22  Feb. 6 contentions. Nor could they; on the '400 patent, Plaintiffs had long possessed every single

23  document cited in Viasat's Feb. 6 non-infringement supplement. Indeed, each document Viasat cited

24

25

26

27

28

1  in its Feb. 6 non-infringement supplement for the '400 patent was **already cited by Plaintiffs**

2  themselves in their infringement contentions.[5]

3      Likewise, for non-infringement of the '667 patent, all but three documents cited in Viasat's

4  Third Supplemental Response were the same documents Plaintiffs already cited as their supposed

5  evidence of infringement.[6] And tellingly, Plaintiffs claim no prejudice as a result of the addition of

6  these three new documents because all three were simply cumulative descriptions of **public**

7  information about the accused external hard drives.[7] None of this was new information.

8      Plaintiffs' nonetheless allege that they were prejudiced because Viasat "formulated" non-

9  infringement contentions that Viasat "refused to share." Mot. 9. Not so. Viasat told Plaintiffs early

10

11  [5] *See* VIASAT_00000618 (cited in Plaintiffs' Amended Infringement Contentions ("Am. IC"), Ex. A, at 1, 32, 51); VIASAT_00003288 (cited in Plaintiffs' Am. IC, Ex. G, at 66); VIASAT_00005782

12  (cited in Plaintiffs' Am. IC, Ex. A, at 1, 10, 65, 74); VIASAT_00006166 (cited in Plaintiffs' Am. IC, Ex. A, at 1, 5); VIASAT_00006153 (cited in Plaintiffs' Am. IC, Ex. A, at 43, 53);

13  VIASAT_00006354 (cited in Plaintiffs' Am. IC, Ex. A, at 41, 42, 43, 52); VIASAT_00006471 (cited in Plaintiffs' Am. IC, Ex. A, at 1, 6, 7, 11, 12, 13, 14, 15, 17, 18, 21, 22, 23, 24, 28, 30, 31, 33, 34,

14  39, 49); VIASAT_00007973 (cited in Plaintiffs' Am. IC, Ex. A, at 1, 8, 9, 16, 25, 29);
VIASAT_00008188 (cited in Plaintiffs' Am. IC, Ex. A, at 1, 41, 45, 55); VIASAT_00008420 (cited

15  in Plaintiffs' Am. IC, Ex. A, at 35, 58); VIASAT_00008738 (cited in Plaintiffs' Am. IC, Ex. A, at 1,

16  41, 44, 56, 57, 67); Viasat, *Gateway FAQs*, at https://help.viasat.com/s/article/Viasat-WiFi-Gateway-FAQ-s (cited in Plaintiffs' Am. IC, Ex. G, at 11, 26, 36, 39); Apple, *Use private Wi-Fi addresses on*

17  *Apple devices*, https://support.apple.com/en-us/102509 (cited in Plaintiffs' Am. IC, Ex. A, at 41);

18  Viasat, *100 planes and counting: Behind the scenes installing the best Wi-Fi in the sky*, at https://www.Viasat.com/about/newsroom/blog/100-planes-and-counting-behind-the-

19  scenesinstalling-the-best-wi-fi-in-the-sky/ (cited in Plaintiffs' Am. IC, Ex. A, at 38).

    [6] *See* https://www.viasat.com/satellite-internet/addons/viasat-stream/ (cited in Plaintiffs' Am. IC,
20  Ex. B, at 26-27); VIASAT_00008428 (cited in Plaintiffs' Am. IC, Ex. B, at 27); VIASAT_00008420

21  (cited in Plaintiffs' Am. IC, Ex. B, at 6, 17, 22, 30); VIASAT_00007343 (cited in Plaintiffs' Am. IC, Ex. B, at 5, 7-12, 28, 46); VIASAT-SC_0000189 (cited in Plaintiffs' Am. IC, Ex. B, at 14, 28, 32,

22  48, 80); VIASAT-SC_0000374 (cited in Plaintiffs' Am. IC, Ex. B, at 32); VIASAT_00016425 (cited in Plaintiffs' Am. IC, Ex. A, at 58); VIASAT_00016428 (cited in Plaintiffs' Am. IC, Ex. A, at 58);

23  VIASAT_00016430 (cited in Plaintiffs' Am. IC, Ex. A, at 58); VIASAT_00016439 (cited in Plaintiffs' Am. IC, Ex. A, at 58); VIASAT_00017759 (cited in Plaintiffs' Am. IC, Ex. A, at 58);

24  VIASAT_00017768 (cited in Plaintiffs' Am. IC, Ex. A, at 58); VIASAT_00017807 (cited in Plaintiffs' Am. IC, Ex. A, at 58); VIASAT_00017812 (cited in Plaintiffs' Am. IC, Ex. G, at 58);

25  VIASAT_00017815 (cited in Plaintiffs' Am. IC, Ex. G, at 58); VIASAT_00017820 (cited in

26  Plaintiffs' Am. IC, Ex. G, at 58); VIASAT_00017822 (cited in Plaintiffs' Am. IC, Ex. A, at 58); VIASAT_00017825 (cited in Plaintiffs' Am. IC, Ex. A, at 58).

27  [7] *See* VIASAT_00132727, VIASAT_00132729, and VIASAT_00132802 (cited by Viasat only as additional evidence that Viasat's residential "Stream" product uses a USB-connected hard drive).

28  Public documents Plaintiffs cited in their own '667 contentions already showed this to be the case.

and often, from May 2023 onward, that Plaintiffs had not disclosed *any* infringement theory *at all*. Plaintiffs' infringement contentions were, and largely still are, a grab-bag of citations to unrelated evidence, citing disconnected diagrams from disparate systems at different times, without any explanation of what part of Viasat's products supposedly satisfies each element of the asserted claim—and without maintaining a consistent mapping across different parts of the claim. Viasat told Plaintiffs in May 2023 that this approach was deficient and would not meet Plaintiffs' burden. Ex. H at 3. Viasat told Plaintiffs that same thing in April 2024, specifically calling out Plaintiffs' failure "to articulate a consistent theory of infringement that runs through each element of the claims" and their meritless attempt "to mix and match different products, applications and systems." Dkt. 127 at 1. Viasat's Feb. 6 supplement repeated that same message.[8] By Feb. 6, 2025, Viasat had been telling Plaintiffs for years that their "throw-it-all-at-the-wall-to-see-if-anything-sticks" approach to infringement contentions was deficient. Plaintiffs cannot credibly claim surprise to see that message repeated on Feb. 6.

Plaintiffs nonetheless say Viasat should have drafted and served its Feb. 6 supplement sooner. This ignores that depositions had just happened, including for inventors Viasat was relying

---

*See, e.g.*, Plaintiffs' Am. IC, Ex. A, at 26 (citing https://www.viasat.com/satellite-internet/add-ons/viasat-stream/ and including an illustration of the USB hard drives being connected via a USB cable), 27 (citing VIASAT_00008428 at 444, with another photo of the USB hard drive being connected via a USB cable), 28 (citing VIASAT_00007343 at 384, which states that Viasat's residential Stream product utilizes an "[e]xternal USB storage . . . for VOD" (video on demand)).

[8] *See, e.g.*, Ex. G at 27 (contentions "fail to show a 'kiosk'" based on mix-and-match approach, and "Plaintiffs cannot accuse multiple different Viasat devices of constituting the kiosk' in order to mix-and-match devices as if multiple devices were one device"); *id.* at 31 (mix-and-match allegations on "remote trusted server" and "authenticate" allegations do not meet Plaintiffs' burden; "none of the components that Plaintiffs allege to be a 'remote trusted server' are used to 'authenticate the portable data storage device'" as the claim requires); *id.* at 33 (mix-and-match allegations on alleged "unique identifiers" are insufficient, given Plaintiffs' failure to show any accused "ID" also performed the other surrounding elements of the claim); *id.* at 34 (allegations on "authenticating" limitation "cite to documents that merely mention the term 'authorization' but fails to explain what device is performing the alleged authorization, what is being authorized, or how the Accused Products conduct the authorization process taught by the claims"); *id.* at 36 (noting mix-and-match approach to accusing servers for "authentication" limitation, and that Plaintiffs appeared to simply cite documents listing a "server" without regard for its function, including "servers used for content delivery, not for device authentication"); *id.* at 41 (noting failure of proof where Plaintiffs "vaguely cite multiple documents and source code files but do not identify what, specifically, in the Accused Products allegedly satisfies [the] claim limitation").

on for non-infringement. For example, Viasat's Feb. 6 supplement relied on the Feb. 4 deposition of '400 inventor Lambertus Hesselink to show Plaintiffs' allegations on "unique identifiers" and "session IDs" were meritless. Ex. G at 33-35. Viasat also relied on the Jan. 30 deposition of '400 inventor Danny Ybarra for non-infringement, noting that Mr. Ybarra agreed certain types of devices would fall outside the claims of the patent. *Id*. at 28. Moreover, Viasat relied on the Feb. 5 deposition of '667 inventor Dean Jenkins and the Jan. 28 deposition of '667 inventor Robert Ryan to show Plaintiffs' allegations on a "NAS device" were incorrect. *Id*. at 42. Viasat promptly supplemented to incorporate the testimony. Plaintiffs cannot reasonably expect Viasat to cite this testimony ***before*** depositions had taken place—and Plaintiffs cite no authority for the idea that a party is required to do so. The timing of Viasat's supplemental disclosures, which relied extensively on recent deposition testimony, was substantially justified based on when depositions occurred.

Critically, Plaintiffs also ignore that portions of Viasat's Feb. 6 supplement responded, as best Viasat could on short notice, to new amended infringement contentions that Plaintiffs first sought leave to add to this case on Jan. 16. Dkt. 146.[9] Viasat could not respond earlier to new infringement theories that ***Plaintiffs*** had not yet revealed. On those facts, a non-infringement supplement on Feb. 6 that attempted to follow amended contentions Plaintiffs first sought leave to add on Jan. 16 was substantially justified, and fundamentally fair. *See, e.g., Pac. Steel Grp. v. Com. Metals Co.*, No. 20-CV-07683-HSG, 2024 WL 3171832, at *6 (N.D. Cal. June 25, 2024) (denying motion to strike admittedly late disclosure because the response was "substantially justified as a matter of basic fairness" to respond to the other side's belated disclosures).

### 2. *Alternative Design Time & Cost Information*

Plaintiffs also cannot show prejudice from Viasat's Feb. 6 supplement on non-infringing alternatives. Viasat identified all the alternative designs it relies on in its first supplemental response. Ex. D at 12-18. The only new factual information Viasat served on Feb. 6 were time and cost

---

[9]   As noted above (at 3 & n.3), Viasat's response to Plaintiffs' belatedly-asserted amended infringement positions reflect Viasat's best efforts on short notice, but in no way cure the substantial prejudice Plaintiffs' belated amendments would cause. Viasat continues to oppose Plaintiffs' proposed amendment, including because of the prejudice Viasat would suffer.

1  estimates to implement certain previously-disclosed designs. Ex. E at 18-25. Plaintiffs were not

2  prejudiced by that disclosure; Plaintiffs could—***and did***—ask witnesses about the estimated time

3  and cost to implement these alternative designs. On Feb. 7, Viasat witness Dan Newman was

4  deposed on this very topic. Plaintiffs marked Viasat's Feb. 6 disclosures as an exhibit at deposition

5  and questioned Mr. Newman extensively on them throughout the day, including questions about the

6  specific development time and cost estimates Mr. Newman had provided. *See* Ex. K (Newman

7  Rough Dep. Tr.) at 104-113. Plaintiffs also had the opportunity to depose Kendall Wilson (Director

8  of the accused Stream product) on Feb. 18. And they will depose Desmond O'Sullivan (Project

9  Manager for in-flight entertainment) on Feb. 26, and Finn Hughes (Senior Software Engineer for

10  in-flight entertainment) on Feb. 28—the sources of Viasat's estimates for time and cost to implement

11  new designs in in-flight entertainment systems. Because Viasat's time and cost estimates were

12  served in advance of depositions on those topics, Plaintiffs suffered no prejudice.[10]

13  **IV.    CONCLUSION**

14    Plaintiffs' motion seeks extraordinary relief that has no factual basis or support in the case

15  law. It should be denied.

---

[10] While Plaintiffs complain they were unable to depose Jason Neri (on Feb. 5) and Josh Slater (on Feb. 6) with Viasat's Feb. 6 supplemental contentions in hand, Plaintiffs tellingly do not ask to re-open those two depositions for limited questioning on that subject matter, indicating Plaintiffs do not actually want to discuss any of these issues with Mr. Neri or Mr. Slater.

1

2  DATED: February 25, 2025                QUINN EMANUEL URQUHART &
                                          SULLIVAN, LLP
3

4                                         By  /s/ Patrick D. Curran
                                             Patrick D. Curran
5
                                          *Attorneys for Defendant Viasat, Inc.*
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-14-                                          Case No. 4:22-cv-4376-HSG

VIASAT'S OPPOSITION TO SANDISK'S MOTION TO STRIKE VIASAT'S INTERROGATORY RESPONSES RE NON-
INFRINGEMENT AND NON-INFRINGING ALTERNATIVES (DKT. 168)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that, on February 25, 2025, a copy of the foregoing document was filed with the Court using the Court's ECF system, which sent notice to all counsel of record.

DATED: February 25, 2025

By  */s/ Patrick D. Curran*

Patrick D. Curran

CASE NO. 4:22-CV-4376-HSG

VIASAT'S OPPOSITION TO SANDISK'S MOTION TO STRIKE VIASAT'S INTERROGATORY RESPONSES RE NON-INFRINGEMENT AND NON-INFRINGING ALTERNATIVES (DKT. 168)