# EXHIBIT A

## Hannah Dawson

| | |
|---|---|
| **From:** | ElDessouki, Ahmed <AElDessouki@gibsondunn.com> |
| **Sent:** | Thursday, December 19, 2024 3:22 PM |
| **To:** | Patrick Curran; Vanessa Blecher; Nicola Felice |
| **Cc:** | QE-Viasat-WD; *** GDC-NDCA Western Digital-Viasat |
| **Subject:** | Re: WD v. Viasat - Plaintiff's Discovery Deficiencies |

**[EXTERNAL EMAIL from aeldessouki@gibsondunn.com]**

Counsel,

We write in response to Nicola's 12/6 and Vanessa's 12/16 emails raising alleged deficiencies in Plaintiff's document productions and interrogatory responses.  As an initial matter, the parties have not met and conferred on these issues, and in fact in the parties' 4/22 meet and confer, Viasat proposed a further meet and confer to discuss its Requests for Production with Plaintiffs but never followed through to schedule a meeting even after Lillian extended an invitation to discuss Viasat's RFPs on 5/23/2024.  We remain happy to meet and confer, if necessary, to address any outstanding issues.

Regarding the issues that Viasat raised with specific RFPs in Nicola's 12/6 email, we provide our responses in bold below.

- For RFP No. 1, we stated that we would be willing to narrow RFP No. 1 to documents concerning the patents-in-suit. We explained that this is a standard request and is undoubtedly relevant to this case where Plaintiffs allege that Viasat infringes particular patents.
  **As we explained previously, this request is vague and fails to define what Viasat is seeking, in particular as to "[a]ll documents concerning the Patents-in-Suit."  Your proposed narrowing fails to address the key issue; namely, what documents about the patents is Viasat seeking?**

- For RFP No. 30, which seeks "documents relating to communications with and among Plaintiffs' board members, including minutes of the Board of Directors, regarding the Patents-in-Suit," Viasat agreed to narrow this request to seek only communications related to board meetings, including minutes of Board of Directors meetings regarding the Patents-in-Suit and documents exchanged in connection with board meetings (including pre-meeting briefings or presentations shown at board meetings). We explained that this is a finite universe of materials that should be efficient to search.
  **Plaintiffs have conducted further searches within board materials and have not located any non-privileged documents that are responsive.**

- RFP No. 55. which seeks "documents that reflect, refer to, or relate to each of the legal and factual allegations and requests for relief in Your claims, as well as any subsequently added in a supplemental pleading in this action or in any infringement action asserting the Patents-in-Suit," we agreed to narrow this request from "in this action or in any infringement action asserting the Patents-in-Suit" to simply "in this action."

1

**Like RFP No. 1, this request is vague and fails to define what Viasat is seeking, in particular as to "documents that reflect, refer to, or relate to each of the legal and factual allegations and requests for relief in Your claims."  Your offer to narrow this request is not helpful because it fails to define the information sought.  Moreover, the proposed narrowing does not result in any actual narrowing because there is no other action asserting the patents-in-suit.**

- RFP No. 28 seeks "[a]ll communications concerning the Patents-in-Suit and/or any embodiment of the subject matter described or claimed in the Patents-in-Suit."  We explained this is a standard discovery request and asked Plaintiffs to confirm they would immediately search for communications concerning (1) the patents in suit, or (2) any embodiments of the digital rights management system described in the '400 patent, or (3) the media streaming system and secure stream buffer described in the '667 patent.
**Plaintiffs will produce non-privileged communications that reference the asserted patents, the applications leading to the asserted patents and/or the of the systems claimed by the asserted patents, to the extent any responsive documents are located after a reasonable search.**

- RFP No. 39 seeks "publications, abstracts, articles, papers, books, presentations, manuscripts, posters, technical disclosures, press releases, speeches, or comments, whether published or not, that were authored by, contributed to, or given in whole or in part by any inventor of the Patents-in-Suit relating to the subject matter claimed in the Patents-in-Suit."  We explained this was a reasonable and narrow request as written, especially since there are only two inventors on the '667 patent and three inventors on the '400 patent.  The request is further narrowed by the fact that we are seeking only publications to which the inventors contributed that relate to the subject matter claimed in the two Patents-in-Suit.
**Plaintiffs' will search for and produce publications by any of the inventors and which relate to systems claimed by the asserted patents, to the extent those publications are within Plaintiffs' possession, custody, and control and to the extent any responsive documents are located after a reasonable search.  This request also plainly seeks public documents.  Plaintiffs will not conduct a public record search to identify responsive documents as Viasat can do so on its own.**

- RFP No. 48 seeks "documents regarding the value to consumers of any features, functionalities, or other technical components allegedly covered by the Patents-in-Suit or Related Patents."  We explained that locating documents responsive to this RFP should be straightforward given that Plaintiffs admit that they do not market products that practice the inventions claimed in the '400 and '667 patents.  Given that fact, this RFP would encompass likely only reports or surveys that Plaintiffs may have conducted on market for the features, functionalities, or other technical components claimed in the Patents-in-Suit.  This should not be difficult to search for.
**Plaintiffs have conducted further searches and have not located any non-privileged documents that are responsive.**

- RFP No. 49 seeks "documents regarding any product, service, system, or method You contend or believe is of an embodiment of any invention claimed in the Patents-in-Suit."  We explained that, again, given Plaintiffs' admission that they do not market products that practice the inventions

2

claimed in the '400 and '667 patents, this RFP would encompass only documents that Plaintiffs may have regarding third-party systems that Plaintiffs believe or contend is an embodiment of any invention claimed in the Patents-in-Suit.

**Plaintiffs will search for and produce documents regarding that relate to the SCSA/VIDITY projects in response to Viasat's Second Set of RFPs, subject to any objections in Plaintiffs forthcoming responses.   We are not aware of any responsive, non-duplicative documents.**

- Request No. 11 (seeking documents concerning the research, design, development or testing of the subject matter described or claimed in the Patents-in-Suit)
  **Plaintiffs will search for and produce documents regarding that relate to the SCSA/VIDITY projects in response to Viasat's Second Set of RFPs, subject to any objections in Plaintiffs forthcoming responses.  We are not aware of any responsive, non-duplicative documents.**

- Request No. 29 (seeking communications with any of Fabrice E. Jogand-Coulomb, David L. Blankenbeckler, Danny O. Ybarra, Lambertus Hesselink, Dean M. Jenkins, or Robert P. Ryan concerning the Patents-in-Suit and/or any embodiment of the subject matter described or claimed in the Patents-in- Suit)
  **Plaintiffs will produce non-privileged communications with the inventors of the 400 and 667 patents related to the asserted patents, to the extend they can be located after a reasonable search.**

- Rog. 2 (asking Plaintiffs to, for each asserted claim of the Patents-in-Suit, describe in detail on an element-by-element basis, all facts relating to its conception and reduction to practice)
  **We note that Viasat has subpoenaed the inventors for depositions and will have an opportunity to question the inventors regarding these issues.  Regardless, WD will supplement its response prior to the inventor depositions.**

With respect to the Interrogatory responses, please identify any legal authority to support Viasat's position that Plaintiffs are required to supplement contention interrogatory responses by December 30, in particular when fact discovery does not close until February 7.  We also note that Viasat has not substantively responded to the majority of plaintiffs' interrogatory responses, including as to its non-infringement positions (if any).  As such, please also confirm that Viasat will timely supplement its interrogatory responses before any relevant depositions begin.

Kind regards,
Ahmed

**Ahmed ElDessouki**
Counsel

T: +1 212.351.2345
AElDessouki@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193

**From:** Patrick Curran <patrickcurran@quinnemanuel.com>
**Date:** Thursday, December 19, 2024 at 1:49 PM
**To:** Vanessa Blecher <vanessablecher@quinnemanuel.com>, Ahmed ElDessouki^ <AElDessouki@gibsondunn.com>, Nicola Felice <nicolafelice@quinnemanuel.com>
**Cc:** QE-Viasat-WD <qe-viasat-wd@quinnemanuel.com>, *** GDC-NDCA Western Digital-Viasat <GDCWesternDigitalNDCA@gibsondunn.com>
**Subject:** Re: WD v. Viasat - Plaintiff's Discovery Deficiencies

Counsel,

We write further to our emails of December 6 and December 16. As set forth in our December 6 correspondence, Plaintiffs' document production is grossly inadequate. Plaintiff promised on December 10 that it would respond "shortly" on that issue. But we did not receive a response.

We followed up on December 16, noting the prejudice to Viasat from Plaintiffs' discovery conduct, and asked for confirmation by December 18 that Plaintiffs would remedy these deficiencies. But again, we did not receive a response.

As indicated on December 16 we have no choice but to approach the Court tomorrow seeking relief on these discovery deficiencies. Please provide Plaintiffs' portion of a joint discovery letter by close of business today, as requested in our December 16 correspondence. If Plaintiffs again refuse to respond we will understand that Plaintiffs refuse to participate in the joint letter process & will attach this correspondence for the Court's consideration. Viasat reserves all rights.

Regards,
Patrick

- -
Patrick Curran | +1 (617) 712-7103 (Boston) | +1 (212) 849-7216 (NY) | patrickcurran@quinnemanuel.com


**From:** Vanessa Blecher <vanessablecher@quinnemanuel.com>
**Date:** Monday, December 16, 2024 at 10:53 PM
**To:** ElDessouki, Ahmed <AElDessouki@gibsondunn.com>, Nicola Felice <nicolafelice@quinnemanuel.com>
**Cc:** QE-Viasat-WD <qe-viasat-wd@quinnemanuel.com>, *** GDC-NDCA Western Digital-Viasat <GDCWesternDigitalNDCA@gibsondunn.com>
**Subject:** WD v. Viasat - Plaintiff's Discovery Deficiencies

Counsel,

We write to follow up on our email of December 6 and to address additional deficiencies with Plaintiffs' discovery responses to date.

As set forth in our December 6 correspondence, Plaintiffs' document production to date is grossly inadequate. Indeed, Plaintiffs have produced fewer than 100 documents total in this matter. That production lacks documents as basic as full prosecution history files for the patents that Plaintiffs are asserting against ViaSat. We note that, on December 10, Plaintiffs stated that they would respond to ViaSat's concerns "shortly," but we still have not received any response let alone production of any of the missing documents. With the close of fact discovery fast-approaching, Plaintiffs continued failure to produce documents is highly prejudicial to ViaSat. Please confirm by Wednesday, December 18, that Plaintiffs will remedy all document production deficiencies by this Friday, December 20. If Plaintiffs will not commit by December 18 to remedy all of these issues by December 20, please be prepared to submit your portion of a joint discovery letter to the Court on these issues no later than close of business on December 19.

In addition to the deficiencies in Plaintiffs' document production set forth in our December 6 correspondence, Plaintiffs' Responses and Objections to ViaSat's First Set of Interrogatories (Nos. 1-13) are also deficient for at least the reasons set forth below. As with Plaintiffs' failure to produce documents, Plaintiffs' failure to substantively respond to interrogatories is prejudicial to ViaSat.

Interrogatory No. 2: We addressed this interrogatory in our December 6 correspondence. As noted there, Plaintiffs have provided neither a narrative response nor the requested identification of documents concerning the conception and reduction to practice of Plaintiffs' own patents. To the extent that Plaintiffs intend to present any description of the purported invention story at trial, Plaintiffs must provide that information in discovery.

Interrogatory No. 3 seeks Plaintiffs' positions concerning the purported validity of Plaintiffs' asserted patents. Plaintiffs objected to this interrogatory and have failed to supplement with any substantive response despite the fact that ViaSat served its invalidity contentions eight months ago. To the extent that Plaintiffs intend to defend the purported validity of the asserted patents, please provide a substantive response to Interrogatory No. 3 by no later than December 30.

Interrogatory No. 4 seeks Plaintiffs' position concerning the manners or techniques by which each asserted claim of the Patents-In-Suit improved upon prior art or otherwise differed from the prior art. Here, too, Plaintiffs have never provided a substantive response. To the extent that Plaintiffs intend to argue that the subject matter of any asserted claim is an improvement over the prior art, please provide a substantive response to Interrogatory No. 4 by no later than December 30.

Interrogatory No. 5 seeks information concerning any purported secondary considerations of non-obviousness. Once again, Plaintiffs objected and provided no substantive response. To the extent that Plaintiffs intend to assert that any secondary indicia weigh against the obviousness of the asserted claims, please provide a substantive response to Interrogatory No. 5 by no later than December 30.

Interrogatory No. 6 seeks information concerning any practicing embodiments of the asserted patents. In response, Plaintiffs asserted that they are not aware of any practicing embodiments other than to the extent that they accuse ViaSat's products of infringement. If Plaintiffs intend to assert that any product other than the accused ViaSat products practice any claim of the asserted patent, please identify any such product by no later than December 30.

Interrogatory No. 7 seeks Plaintiffs' contention as to the level of skill of a person of ordinary skill in the art. Plaintiffs objected to this Interrogatory as premature prior to claim construction. Yet Plaintiffs have not supplemented their response well after the parties completed claim construction briefing.

Interrogatory No. 8 seek identification of each portion of the specification that Plaintiffs contend support provide written description and an enabling disclosure for each asserted claim. Plaintiffs objected to this interrogatory and have failed to supplement with any substantive response notwithstanding that ViaSat served its invalidity contentions asserting both lack of written description and lack of enablement eight months ago. To the extent that Plaintiffs intend to assert that the specification provides written description and an enabling disclosure, please provide a substantive response to Interrogatory No. 8 by no later than December 30.

Interrogatory No. 9 seeks identification of agreements concerning the asserted patents.  In response, Plaintiffs identified some agreements by Bates number and reserved the right to supplement.  Please either confirm that there are no other agreements or identify and produce any additional agreements by December 30.

Interrogatory No. 10 seeks information concerning offers to license the asserted patents.  In response, Plaintiffs asserted that they had "not offered the '400 or '667 patent for license or sale to any entity outside the Western Digital corporate family."  Plaintiffs also reserved rights to modify their response.  Please supplement the response to Interrogatory No. 10 to describe the offers to license within the "Western Digital corporate family."  Please also either confirm that there are no other responsive offers or supplement to describe such offers by December 30.

Interrogatory No. 12 seeks information concerning any valuation of the asserted patents.  In response, Plaintiffs asserted that they are not aware of any "non-privileged valuations of the '400 or the '667 patents."  To the extent that Plaintiffs intend to rely on any valuation of the '400 or the '667 patents, such valuation must be disclosed during fact discovery.  Please either confirm that Plaintiffs do not intend to rely on any of the information requested in Interrogatory No. 12 in support of any alleged value of the asserted patents, or supplement the response to Interrogatory No. 12 December 30.

We look forward to Plaintiffs prompt, complete supplementation of its discovery responses and document production.

Thanks,
Vanessa

---

**From:** ElDessouki, Ahmed <AElDessouki@gibsondunn.com>
**Sent:** Tuesday, December 10, 2024 10:38 AM
**To:** Nicola Felice <nicolafelice@quinnemanuel.com>; Vanessa Blecher <vanessablecher@quinnemanuel.com>
**Cc:** QE-Viasat-WD <qe-viasat-wd@quinnemanuel.com>; *** GDC-NDCA Western Digital-Viasat <GDCWesternDigitalNDCA@gibsondunn.com>
**Subject:** Re: WD v. Viasat - Source Code Review

[EXTERNAL EMAIL from aeldessouki@gibsondunn.com]

---

Hi Nicola,

Our expert unfortunately needs to reschedule the source code review from this week to next week on Wednesday and Thursday (Dec 17 and 18).  Please confirm if those dates work.

We will respond to the remainder of your email shortly.

Many thanks,
Ahmed

**Ahmed ElDessouki**
Counsel

T: +1 212.351.2345
AElDessouki@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193

**From:** Nicola Felice <nicolafelice@quinnemanuel.com>
**Date:** Friday, December 6, 2024 at 6:15 PM
**To:** Ahmed ElDessouki^ <AElDessouki@gibsondunn.com>, Vanessa Blecher <vanessablecher@quinnemanuel.com>
**Cc:** QE-Viasat-WD <qe-viasat-wd@quinnemanuel.com>, *** GDC-NDCA Western Digital-Viasat <GDCWesternDigitalNDCA@gibsondunn.com>
**Subject:** RE: WD v. Viasat - Source Code Review

Counsel,

We write in response to your email of November 20.  That email mischaracterizes many of Viasat's positions, as well as mischaracterizing the positions Plaintiffs have taken in this case. It is also not an accurate representation of our meet and confer discussions. We respond to each issue in turn below.

- Residential VCDS:   Plaintiffs' new argument that "residential implementations of the VCDS are within the scope of the infringement contentions and discovery" is not accurate — in fact, Plaintiffs have repeatedly made statements to the contrary.  As examples, Plaintiffs' Complaint identifies "in-flight entertainment and communication ("IFEC") systems for use in commercial and private aviation" as the Accused Products.  Compl. ¶2; *see id.* ¶ 36; *see also id.* ¶¶ 20, 23, 24, 27, 39, and 43.  Plaintiffs' opposition to Viasat's 35 U.S.C. § 101 motion also represented to the Court that "that the claimed invention provides specific improvements in computing environments that have network and bandwidth limitations—just like Viasat's infringing systems, **which provide streaming media on planes in-flight**."  Dkt. No. 53 at 1; *see also id.* at 2 ("However, at the time of the invention, mobile devices generally had limited network bandwidth and continuous access (a problem which still exists to date **with in-flight entertainment and connectivity ("IFEC") systems, like the Viasat products accused of infringement in this litigation**").").  Similarly, during the claim construction hearing, Plaintiffs told the Court the following: "I will note that we're still in the middle of discovery.  We haven't received full discovery about how **the accused devices are installed on airplanes**."  August 27, 2024 Tr. at 72:3-5.  It is revisionist history for Plaintiffs to now claim, after two years of litigation, that the accused devices are ***not*** systems "on planes in-flight" for "in-flight entertainment and connectivity" or "installed on airplanes."  They are, and Plaintiffs have repeatedly admitted this.

  Viasat will move to strike any untimely infringement theories that exceed the scope of the infringement contentions Plaintiffs disclosed pursuant to the Patent Local Rules. Viasat reserves all rights, including its right to seek costs for Plaintiffs' conduct.

  In an effort to avoid unnecessary discovery disputes, and despite your representations to us (and to the Court) that Viasat's in-flight media streaming systems are the relevant implementation of VCDS, Viasat will conduct a reasonable search for documents responsive to Plaintiffs' requests for production related to residential VCDS systems.  Subject to Viasat's objections and responses, Viasat will produce non-privileged responsive materials, if any, located after that reasonable search for materials related to residential VCDS implementations. Viasat will produce any such documents on a rolling basis up to the deadline for substantial completion of document production.

- RFP No. 47 ("Documents sufficient to show all types of Playback Devices. . .").  On the meet and confer, we explained that Viasat does not make or sell playback devices and thus we did not believe that any documents existed that would be responsive to this request.  Nonetheless, in an effort to avoid unnecessary discovery disputes, Viasat will conduct a reasonable search for documents responsive to RFP No. 47.  Subject to Viasat's objections and responses, Viasat will produce non-privileged materials, if any, located after that reasonable search that are responsive to RFP No. 47. Viasat will produce any such documents on a rolling basis up to the deadline for substantial completion of document production.

- RFP No. 50 and 51 (seeking "Documents sufficient to show the actual and relative number of each of Playback Device used or available for use with any Viasat IFE or IFEC system. . ." and "All documents related to any

7

attempts to estimate or quantify the actual or relative number and/or usage of each type of Playback Device."). Viasat will conduct a reasonable search for documents responsive to RFP Nos. 50 and 51. Subject to Viasat's objections and responses, Viasat will produce non-privileged materials, if any, located after that reasonable search that are responsive to RFP Nos. 50 and 51. Viasat will produce any such documents on a rolling basis up to the deadline for substantial completion of document production.

- RFP No. 53 ("documents related to customer and/or end-user preferences or feedback regarding any IFE or IFEC system"). Viasat will conduct a reasonable search for documents responsive to RFP No. 53. Subject to Viasat's objections and responses, Viasat will produce non-privileged materials, if any, located after that reasonable search that are responsive to RFP No. 53. Viasat will produce any such documents on a rolling basis up to the deadline for substantial completion of document production.

- RFP No. 58 (seeking invoices): Plaintiffs state that "Western Digital is entitled to data concerning all revenue streams related to the Accused Products," but in the following breath, Plaintiffs confirm that Viasat's provision of Wi-Fi services is not an accused product. It is still not clear to us what financial information Plaintiffs want, or why that information would be relevant (much less proportional to the needs of the case) as opposed to an undue burden—particularly given the detail Viasat has already provided. Nonetheless, Viasat will produce additional financial information related to the invoices at issue, in the manner that information is kept in the ordinary course of business, including more detailed information regarding the "invoices between Viasat and its large airline customers" that Plaintiffs are requesting. Viasat anticipates producing this information next week.

- RFP No. 59 (seeking CRM data): Viasat will conduct a reasonable search for documents responsive to RFP No. 59. Subject to Viasat's objections and responses, Viasat will produce non-privileged materials, if any, located after that reasonable search that are responsive to RFP No. 59. Viasat will produce any such documents on a rolling basis up to the deadline for substantial completion of document production.

- RFP No. 62 (seeking "Documents relating to the performance of the Accused Products"): Thank you for providing a definition for the term "performance." Based on your definition, Viasat will conduct a reasonable search for documents responsive to RFP No. 62. Subject to Viasat's objections and responses, Viasat will produce non-privileged materials, if any, located after that reasonable search that are responsive to RFP No. 62. Viasat will produce any such documents on a rolling basis up to the deadline for substantial completion of document production.

- Interrogatory Responses – You state in your letter to the Court that, in response to Interrogatory No. 15, Viasat agreed to produce a correlation of Viasat's source code to the corresponding functionality in Viasat's systems, but allegedly "failed to actually provide it to Sandisk," and that source code cannot be inspected without a supplemental interrogatory response. This is not true in several respects. First, Viasat specifically objected to this request, including because it was vague, overbroad, and unduly burdensome, and specifically noting that "the burden of ascertaining further information responsive to this Interrogatory is substantially the same for Plaintiffs as it is for Viasat." Viasat still is not sure what "correlation" means in this context, or what Plaintiffs are seeking through this vaguely worded interrogatory. Second, while Plaintiffs allege that a supplemental response to this interrogatory is required in order to conduct further source code reviews and that "Viasat's failure to respond to Interrogatory No. 15 has delayed Western Digital's ability to schedule a source code review, and in fact forced Western Digital to reschedule the source code review," this is also incorrect. Viasat's source code has been available for review for many months. Nothing is stopping Plaintiffs or their experts from reviewing the source code—indeed, your experts have *already* inspected the code over *multiple days* before Plaintiffs served Interrogatory No. 15. Plaintiffs have also cited this source code extensively in their infringement contentions already. Plaintiffs and their experts have had ample opportunities to inspect this code, and are welcome to continue that inspection at any time. The code itself explains its operation and Plaintiffs and their experts can readily discern the functionality of the source code from the contents of the code alone. Plaintiffs will of course also have the opportunity to take depositions of Viasat's witnesses, where Plaintiffs will be free to ask those witnesses about the functionality of the code Plaintiffs' experts have already

8

reviewed. Viasat is not required to produce to Plaintiffs a "correlation" that does not exist in the ordinary course of business before Plaintiffs conduct discovery.

While Plaintiffs' characterizations are inaccurate, in an effort to avoid unnecessary discovery disputes, Viasat will provide a supplemental response to Interrogatory No. 15. Viasat is coordinating with engineers in multiple countries, including over the holiday period, in an effort to prepare this supplemental interrogatory response. Viasat will supplement its response to Interrogatory No. 15 by the end of next week.

Additionally, there are still numerous outstanding deficiencies both with Plaintiffs' discovery responses and Plaintiffs' production to date. Plaintiffs have not made any progress on many discovery deficiencies in months. While Viasat has been more than patient in waiting for Plaintiffs' long promised productions, it is critical that Plaintiffs begin to engage meaningfully in the discovery process and meet their discovery obligations. We have already met and conferred with Plaintiffs on these deficiencies but have not received the promised materials. Please confirm on Monday that Plaintiffs' will remedy these deficient productions by December 13, 2024.

- Plaintiffs agreed to produce documents in response to the below requests, yet Plaintiffs have produced *none* of these documents to date.
    - Request No. 4 (seeking documents related to Western Digital's first awareness of the Accused Products)
    - Request No. 16 (seeking documents related to attempts to license the Patents-in-Suit)
    - Request No. 27 (seeking documents related to financial and pecuniary interests of the Patents-in-Suit)
    - Request No. 31 (seeking documents related to searches or analyses performed by Western Digital)
    - Request No. 32 (seeking documents related to prior art of the Patents-in-Suit)
    - Request No. 33 (seeking documents related to sales and disclosures of the Patents-in-Suit)
    - Request No. 34 (seeking documents related to the level of ordinary skill in the art)
    - Request No. 35 (seeking documents related to any alleged objective indicia of non-obviousness)
    - Request No. 36 (seeking documents related to any damage or harm allegedly suffered by plaintiffs)
    - Request No. 37 (seeking documents related to the market and demand for the Patents-in-Suit)

- Plaintiffs initially told us that Plaintiffs did not have any information responsive to the below requests, but later agreed to perform a further search. We have not received any further information from Plaintiffs on these requests.
    - Request No. 11 (seeking documents concerning the research, design, development or testing of the subject matter described or claimed in the Patents-in-Suit)
    - Request No. 29 (seeking communications with any of Fabrice E. Jogand-Coulomb, David L. Blankenbeckler, Danny O. Ybarra, Lambertus Hesselink, Dean M. Jenkins, or Robert P. Ryan concerning the Patents-in-Suit and/or any embodiment of the subject matter described or claimed in the Patents-in-Suit)
    - Rog. 2 (asking Plaintiffs to, for each asserted claim of the Patents-in-Suit, describe in detail on an element-by-element basis, all facts relating to its conception and reduction to practice)

- Plaintiffs previously claimed that RFP Nos. 1, 28, 30, 39, 48, 49, and 55 were "overbroad." We agreed to narrow 1, 30 and 55, and explained why the rest were not overbroad. We previously asked you to provide specifics as to the burden on Plaintiffs to search for and produce the requested scope of materials. We never heard back. Please confirm by December 13 that Plaintiffs will produce all the requested information before the substantial close of document discovery.
    - Narrowed RFPs:
        - For RFP No. 1, we stated that we would be willing to narrow RFP No. 1 to documents concerning the patents-in-suit. We explained that this is a standard request and is undoubtedly relevant to this case where Plaintiffs allege that Viasat infringes particular patents.
        - For RFP No. 30, which seeks "documents relating to communications with and among Plaintiffs' board members, including minutes of the Board of Directors, regarding the Patents-in-Suit," Viasat agreed to narrow this request to seek only communications related to board meetings,

9

including minutes of Board of Directors meetings regarding the Patents-in-Suit and documents exchanged in connection with board meetings (including pre-meeting briefings or presentations shown at board meetings). We explained that this is a finite universe of materials that should be efficient to search.
- RFP No. 55. which seeks "documents that reflect, refer to, or relate to each of the legal and factual allegations and requests for relief in Your claims, as well as any subsequently added in a supplemental pleading in this action or in any infringement action asserting the Patents-in-Suit," we agreed to narrow this request from "in this action or in any infringement action asserting the Patents-in-Suit" to simply "in this action."
- RFPs that are not "overbroad" and require no narrowing:
    - RFP No. 28 seeks "[a]ll communications concerning the Patents-in-Suit and/or any embodiment of the subject matter described or claimed in the Patents-in-Suit." We explained this is a standard discovery request and asked Plaintiffs to confirm they would immediately search for communications concerning (1) the patents in suit, or (2) any embodiments of the digital rights management system described in the '400 patent, or (3) the media streaming system and secure stream buffer described in the '667 patent.
    - RFP No. 39 seeks "publications, abstracts, articles, papers, books, presentations, manuscripts, posters, technical disclosures, press releases, speeches, or comments, whether published or not, that were authored by, contributed to, or given in whole or in part by any inventor of the Patents-in-Suit relating to the subject matter claimed in the Patents-in-Suit." We explained this was a reasonable and narrow request as written, especially since there are only two inventors on the '667 patent and three inventors on the '400 patent. The request is further narrowed by the fact that we are seeking only publications to which the inventors contributed that relate to the subject matter claimed in the two Patents-in-Suit.
    - RFP No. 48 seeks "documents regarding the value to consumers of any features, functionalities, or other technical components allegedly covered by the Patents-in-Suit or Related Patents." We explained that locating documents responsive to this RFP should be straightforward given that Plaintiffs admit that they do not market products that practice the inventions claimed in the '400 and '667 patents. Given that fact, this RFP would encompass likely only reports or surveys that Plaintiffs may have conducted on market for the features, functionalities, or other technical components claimed in the Patents-in-Suit. This should not be difficult to search for.
    - RFP No. 49 seeks "documents regarding any product, service, system, or method You contend or believe is of an embodiment of any invention claimed in the Patents-in-Suit." We explained that, again, given Plaintiffs' admission that they do not market products that practice the inventions claimed in the '400 and '667 patents, this RFP would encompass only documents that Plaintiffs may have regarding third-party systems that Plaintiffs believe or contend is an embodiment of any invention claimed in the Patents-in-Suit.

With respect to your request to review Viasat's source code next Thursday and Friday, we can confirm the code will be available both days – please provide the name of your reviewer so we can inform building security. Also note that our New York office has relocated, so the code review will be at the new office, which is located at 295 5th Avenue, New York, NY 10016.

Best,
Nicola

**Nicola Felice**
*Associate*
**Quinn Emanuel Urquhart & Sullivan, LLP**

51 Madison Avenue, 22nd Floor
New York, NY 10010
212-849-7346 Direct
212-849-7000 Main Office Number

212-849-7100 FAX
nicolafelice@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** ElDessouki, Ahmed <AElDessouki@gibsondunn.com>
**Sent:** Wednesday, December 4, 2024 8:37 PM
**To:** Vanessa Blecher <vanessablecher@quinnemanuel.com>
**Cc:** QE-Viasat-WD <qe-viasat-wd@quinnemanuel.com>; *** GDC-NDCA Western Digital-Viasat <GDCWesternDigitalNDCA@gibsondunn.com>
**Subject:** Re: WD v. Viasat - Source Code Review

**[EXTERNAL EMAIL from aeldessouki@gibsondunn.com]**

Counsel,

Please see the attached joint discovery letter to the Court. Please provide Viasat's positions on the issues raised by Monday December 9.

We would also like to schedule a source code review next week on December 12 and 13. Please confirm that the source code computer will be made available on those dates, and please produce the source code mapping requested in Interrogatory No. 15 prior to that date.

Many thanks,
Ahmed

**Ahmed ElDessouki**
Counsel

T: +1 212.351.2345
AElDessouki@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193

**From:** Ahmed ElDessouki^ <AElDessouki@gibsondunn.com>
**Date:** Wednesday, November 20, 2024 at 9:27 PM
**To:** Vanessa Blecher <vanessablecher@quinnemanuel.com>
**Cc:** QE-Viasat-WD <qe-viasat-wd@quinnemanuel.com>, *** GDC-NDCA Western Digital-Viasat <GDCWesternDigitalNDCA@gibsondunn.com>
**Subject:** Re: WD v. Viasat - Source Code Review

Counsel,

We write to follow up on the November 14, 2024 meet and confer. Please let us know your position on the issues raised below by Wednesday 11/27, so we can avoid raising these issues with the Court.

- Residential VCDS:   We understand that we've reached an impasse as to whether residential implementations of the VCDS are within the scope of the infringement contentions and discovery.  It is improper for Viasat to unilaterally exclude residential VCDS, and to refuse to produce documents and information response to RFP Nos. 67, 68, 71-73 and Rog No. 13.  As we explained, the infringement contentions explicitly cover residential applications of the VCDS.  For example, the cover pleading of the 3/22/2024 contentions at page 2 states that the "Accused Instrumentalities include Viasat's media streaming software, systems, and services, including systems that implement edge storage. . . Such instrumentalities include the Viasat Content Delivery System ('VCDS') and Viasat Open Stream. . . . Moreover, Viasat has deployed the VCDS 'to the residential network for use with the SB2+ modems.'"   Viasat's own documents confirm that the VCDS provides content to residential, hotspot, and mobility customers.  *See e.g.*, '667 claim chart at 4, 6, 12-14, 17, 22, 26-28, 30, 31, 34-49, 51-60, 68-82.  We therefore expect to raise this issue with the Court.

- RFP No. 47 ("Documents sufficient to show all types of Playback Devices. . .").  We explained that Western Digital is seeking documents that shows differences in Viasat's systems to support different types of Playback Devices.   You agreed to search for and produce responsive documents.

- RFP No. 50 and 51 (seeking "Documents sufficient to show the actual and relative number of each of Playback Device used or available for use with any Viasat IFE or IFEC system. . ." and "All documents related to any attempts to estimate or quantify the actual or relative number and/or usage of each type of Playback Device.").  We explained that Western Digital is seeking information concerning Viasat's own systems, including by way of example the number of aircrafts equipped with Viasat systems that support seatback devices, semi-embedded devices, and passenger devices, and the types of devices that connect to Viasat's own systems.   Please confirm that Viasat will search for and produce documents in response to RFP Nos. 50 and 51.

- RFP No. 53 ("documents related to customer and/or end-user preferences or feedback regarding any IFE or IFEC system").  As an example, we explained that Western Digital is seeking information concerning passenger preferences, including survey data, which is relevant to damages.  Please confirm that Viasat will search for and produce documents in response to RFP No. 53.

- RFP No. 58 (seeking invoices):  We explained that the invoices are relevant to allow Western Digital to analyze the full financial picture in connection with the Accused Products, including to determine the appropriate royalty base. You explained that so far, the produced revenue data has been limited to IFE revenue.  We explained that the limitation is improper, and that Western Digital is entitled to data concerning all revenue streams related to the Accused Products.  Please confirm that Viasat will search for and produce documents in response to RFP No. 58.  We also understand that Viasat will be producing additional financial information.  Please let us know when we can expect that production.

- RFP No. 59 (seeking CRM data): We explained that the information contained in the CRM data is relevant to show why customers and prospective customers buy or consider buying Viasat's Accused Products.  Please confirm that Viasat will search for and produce documents in response to RFP No. 59.

- RFP No. 62 (seeking "Documents relating to the performance of the Accused Products"):  You asked us to provide a definition for the term "performance."  For the purpose of this request, we seek documents related to: (i) the Internet bandwidth used by the Accused Products for media streaming; (ii) the latency associated with media streaming; and (iii) the video quality provided during media streaming operations, including the supported bitrates and resolutions of the media content.  Please confirm that Viasat will search for and produce documents in response to RFP No. 62.

- Interrogatory Responses – Viasat has relied on Rule 33(d) in responding to the Interrogatories but has not identified nor produced the corresponding documents.  On the meet and confer, Viasat was not able to

provide any timeline for the production of the relevant documents.  Please let us know when we can expect the supplementation.  We also note that on 10/8, Counsel for Viasat made unsubstantiated allegations that Western Digital had no Rule 11 basis to proceed with this action but failed to articulate any basis for this allegation.  Western Digital requested on the 10/14 meet and confer that Viasat explain the basis for its allegation, for example in a letter or by supplementing its non-infringement contention interrogatory responses.  So far, we have not received any response.  Moreover, as we explained on 11/4, Viasat's failure to respond to Interrogatory No. 15 (which was due on 11/1) has delayed Western Digital's ability to schedule a source code review, and in fact forced Western Digital to reschedule the source code review.  As we explained previously, the source code review will allow Western Digital to consider amendments to its infringement contentions in view of the Court's claim construction order.

Regards,
Ahmed

**Ahmed ElDessouki**
Counsel

T: +1 212.351.2345
AElDessouki@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193

---

**From:** Vanessa Blecher <vanessablecher@quinnemanuel.com>
**Date:** Monday, November 11, 2024 at 3:13 PM
**To:** Ahmed ElDessouki^ <AElDessouki@gibsondunn.com>
**Cc:** QE-Viasat-WD <qe-viasat-wd@quinnemanuel.com>, *** GDC-NDCA Western Digital-Viasat <GDCWesternDigitalNDCA@gibsondunn.com>
**Subject:** RE: WD v. Viasat - Source Code Review

Ahmed,

We do not have a specific timeline, but we are working on a supplemental response to Interrogatory No. 5, which we will serve when it is ready.

As to your request for a meet and confer, we can be available on Wednesday after 12 pm ET.

Thanks,
Vanessa

---

**From:** ElDessouki, Ahmed <AElDessouki@gibsondunn.com>
**Sent:** Tuesday, November 5, 2024 11:20 AM
**To:** Vanessa Blecher <vanessablecher@quinnemanuel.com>
**Cc:** QE-Viasat-WD <qe-viasat-wd@quinnemanuel.com>; *** GDC-NDCA Western Digital-Viasat <GDCWesternDigitalNDCA@gibsondunn.com>
**Subject:** Re: WD v. Viasat - Source Code Review

[EXTERNAL EMAIL from aeldessouki@gibsondunn.com]

---

Hi Vanessa,

As discussed yesterday, please let us know when Viasat will produce the documents referenced in its response to Interrogatory No. 15 concerning its source code. As I explained yesterday, Western Digital requires the mapping requested by Interrogatory No. 15 for the source code review.

We also request a meet and confer regarding Viasat's responses & objections to Western Digital's second set of discovery requests. We are available on Thursday and Friday this week before 1 pm ET. Please let us know your availability.

Many thanks,
Ahmed


**Ahmed ElDessouki**
Counsel

T: +1 212.351.2345
AElDessouki@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193

---

**From:** Ahmed ElDessouki^ <AElDessouki@gibsondunn.com>
**Date:** Monday, November 4, 2024 at 11:50 AM
**To:** Vanessa Blecher <vanessablecher@quinnemanuel.com>
**Subject:** Re: WD v. Viasat - Source Code Review

Hi Vanessa,

Thanks for confirming. Are you available for a quick call today? I'm available at 917 921 0682 or my office number below. I've tried calling you a couple of times this morning, but my calls have been going straight to voicemail.

Thank you


**Ahmed ElDessouki**
Counsel

T: +1 212.351.2345
AElDessouki@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193

---

**From:** Vanessa Blecher <vanessablecher@quinnemanuel.com>
**Date:** Sunday, November 3, 2024 at 10:23 AM
**To:** Ahmed ElDessouki^ <AElDessouki@gibsondunn.com>, QE-Viasat-WD <qe-viasat-wd@quinnemanuel.com>, Nicola Felice <nicolafelice@quinnemanuel.com>
**Cc:** *** GDC-NDCA Western Digital-Viasat <GDCWesternDigitalNDCA@gibsondunn.com>
**Subject:** RE: WD v. Viasat - Source Code Review

Ahmed,

The source code computer can be available in Quinn Emanuel's New York office starting this Tuesday, November 5.  Please let us know the specific dates Dr. Easttom intends to review so we can inform security.

Thanks,
Vanessa

**From:** ElDessouki, Ahmed <AElDessouki@gibsondunn.com>
**Sent:** Thursday, October 24, 2024 11:49 AM
**To:** QE-Viasat-WD <qe-viasat-wd@quinnemanuel.com>; Nicola Felice <nicolafelice@quinnemanuel.com>
**Cc:** *** GDC-NDCA Western Digital-Viasat <GDCWesternDigitalNDCA@gibsondunn.com>
**Subject:** WD v. Viasat - Source Code Review

**[EXTERNAL EMAIL from aeldessouki@gibsondunn.com]**

Counsel,

Dr. Easttom would like to review the source code the week of November 4.  Please confirm that the source code computer will be made available.

Many thanks,
Ahmed

# Ahmed ElDessouki
Counsel

T: +1 212.351.2345
AElDessouki@gibsondunn.com

# GIBSON DUNN
Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.