# EXHIBIT D

REDACTED VERSION
OF DOCUMENT
PROPOSED TO BE
FILED UNDER SEAL

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Steven Cherny (*pro hac vice*)
  stevencherny@quinnemanuel.com
  Patrick D. Curran (Bar No. 241630)
  patrickcurran@quinnemanuel.com
  Tzivya H. Beck (*pro hac vice*)
  tzivyabeck@quinnemanuel.com
111 Huntington Ave, Suite 520
Boston, MA 02199
Telephone:    (617) 712-7100
Facsimile:    (617) 712-7200

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Jodie Cheng (Bar No. 292330)
  jodiecheng@quinnemanuel.com
  Gyu Shik Jang (Bar No, 337747)
  kevinjang@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Anastasia M. Fernands (*pro hac vice* pending)
  anastasiafernands@quinnemanuel.com
  Nicola R. Felice (*proc hac vice*)
  nicolafelice@quinnemanuel.com
  Vanessa Blecher (*pro hac vice*)
  vanessablecher@quinnemanuel.com
  Alicia Lai (*pro hac vice*)
  alicialai@quinnemanuel.com
295 5th Avenue
New York, NY 10016
Telephone:   (212) 849-7000
Facsimile:   (212) 849-7100

*Attorneys for Defendant Viasat, Inc.*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA,
OAKLAND DIVISION**

| | |
|---|---|
| SANDISK TECHNOLOGIES, INC., et al., | Case No. 5:22-cv-4376 |
|        Plaintiffs, | |
|      vs. | **VIASAT, INC.'S SECOND** |
| | **SUPPLEMENTAL OBJECTIONS &** |
| VIASAT, INC.,, | **RESPONSES TO PLAINTIFFS'** |
| | **SECOND SET OF** |
|        Defendant. | **INTERROGATORIES** |
| | **(NOS. 9-15)** |

1

_____

2

3          Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant Viasat, Inc.

4  ("Viasat") hereby supplements its responses to Plaintiffs' Second Set of Interrogatories (Nos. 9-15)

5  as follows.  Pursuant to Federal Rule of Civil Procedure 26(e), Plaintiff reserves the right to further

6  supplement its responses to these Interrogatories if it learns of additional responsive information.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PRELIMINARY STATEMENT

Viasat's investigation, discovery, and analysis are ongoing. The responses to these Interrogatories are based on information presently available to Viasat after a reasonable investigation. Viasat reserves the right to supplement or amend these responses as further information and documents are identified, disclosed, or discovered. Viasat's responses are without prejudice to its right to introduce as evidence any subsequently discovered or unintentionally omitted information and/or documents.

Viasat's responses to these Interrogatories are not intended to be and shall not be construed as a concession or admission by Viasat of the competency, relevance, materiality, privilege, or admissibility of the Interrogatories or its responses thereto, or of any document or information referred to in the Interrogatories or these responses. The fact that Viasat has responded to any Interrogatory, or any part of any Interrogatory, does not imply or admit that it accepts or admits the existence of any facts stated or assumed by such Interrogatories. The failure of Viasat to object to any of the Interrogatories on a specific ground shall not be construed as a waiver of its right to object at a later time on that ground or any additional grounds. Viasat incorporates each of the following General Objections and Objections and Responses to Instructions and Definitions into its Responses to each of Plaintiffs' Interrogatories, whether or not expressly referred to in each such Response. Viasat reserves the right to object to further discovery regarding the same subject matter as any Interrogatory and to object to the introduction into evidence any documents or information provided in response to the Interrogatories.

## GENERAL OBJECTIONS

Viasat makes the following General Objections, whether or not separately set forth in response to each Interrogatory, to each and every instruction, definition, and Interrogatory. By responding to any of the Interrogatories or failing to specifically refer to or specify any particular General Objection in response to a particular Interrogatory, Plaintiff does not waive any of these General Objections, or admit or concede the appropriateness of any purported interrogatory or any assumptions contained therein.

04568-00014/15528032.4

1     1.     Viasat objects to these Interrogatories, including their Definitions, to the extent they attempt to impose upon Viasat obligations beyond those imposed or authorized by the Federal Rules of Civil Procedure, Northern District of California Local Rules, or any other applicable law, rule, or regulation.

2.     Viasat objects to these Interrogatories to the extent they are compound and contain multiple subparts asserted in a single interrogatory.

3.     Viasat objects to these Interrogatories to the extent they are directed to matters and seek information, documents, or things that are not relevant to the subject matter at issue in this action.

4.     Viasat objects that Plaintiffs' Interrogatories fail to describe with reasonable particularity the information that Western Digital seeks.  Instead, Plaintiffs' Interrogatories are generally overbroad, vague, ambiguous, unduly burdensome, disproportionate to the needs of the action, unintelligible, or otherwise lack particularity and thereby require Viasat to engage in conjecture as to their meaning.  Viasat's response to each Interrogatory is subject to its reasonable interpretation of such Interrogatory.

5.     Viasat objects to these Interrogatories to the extent they seek information protected by any relevant privilege or legal protection, including, without limitation, the attorney-client privilege, the work product doctrine, common interest privilege, or any other applicable privilege (collectively, "Privileged Information").  Such information will not be provided in response to the Interrogatories, and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information, or of any work product doctrine protections which may attach thereto.

6.     Consistent with the foregoing privileges, Viasat will not provide information from outside counsel retained in connection with this action in response to any Interrogatory notwithstanding that such outside counsel may have acquired knowledge or information responsive to that Interrogatory in the course of representing Viasat.

7.     Viasat objects to these Interrogatories to the extent their scope is not restricted to the time period relevant to the allegations in the action, or without reference to a reasonable and relevant

time period, as overbroad, unduly burdensome, beyond the scope of the allegations in the action, not relevant to any claim or defense, and not proportional, material and necessary to the prosecution or defense of the action. Viasat's response to each Interrogatory incorporates a reasonable time period, taking into account the nature and scope of the Interrogatory.

8. Viasat objects to these Interrogatories to the extent they seek information that is already in the possession, custody, or control of Plaintiffs or otherwise equally accessible to Plaintiffs, including information available from public sources.

9. Viasat objects to these Interrogatories to the extent they seek information not within Viasat's possession, custody, or control or purport to require Viasat to seek information in the knowledge, possession, custody, or control of third parties. Viasat disclaims any obligation to obtain or provide information that is not within its knowledge, possession, custody, or control. The voluntary provision of information that may otherwise fall within this objection shall not be deemed a waiver of this objection as to other information in the possession, custody, or control of third parties.

10. Viasat objects to these Interrogatories to the extent they seek confidential and/or proprietary business, financial, and/or technical information or trade secrets, the disclosure of which may damage Viasat's business, violate the privacy or proprietary rights of others including employees, clients, or business partners of Viasat, or breach any duty or regulatory requirement, or violate any agreement or order pursuant to which Viasat is precluded from disclosing such information. Any information provided by Viasat in response to these Interrogatories is being provided for purposes of this action only. Viasat reserves the right to withhold personal, private, or non-responsive documents or information. Viasat also objects to the use of any documents or information provided in this action in any other action or proceeding and/or in any manner inconsistent with any Confidentiality Order to be entered in this action. For the avoidance of doubt, any information provided to Plaintiffs will be governed by the Protective Order agreed to by the parties or, until a Protective Order is entered in this case, by the Northern District of California's Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets.

11.     Viasat objects to these Interrogatories to the extent they are cumulative and/or duplicative of other discovery sought in this case and, therefore, unduly burdensome.

12.     Viasat objects to these Interrogatories to the extent the information sought therein could be obtained through other, less burdensome discovery, and are not, therefore, the proper subject of an Interrogatory.

13.     Viasat objects to these Interrogatories to the extent they assume facts that do not exist.

14.     Viasat objects to these Interrogatories to the extent they call for a legal opinion or conclusion.

15.     Viasat objects to the Interrogatories to the extent they are unduly burdensome and oppressive in that they would require Viasat to provide information that is of little or no benefit with respect to the issues or controversies in this action, so that the value of the information would be outweighed by the burden of providing it.  Viasat further objects to the Interrogatories to the extent that they seek electronic documents and/or electronically stored information that is/are not reasonably accessible because of undue burden or cost.  Viasat will undertake a search for documents and information that is reasonable under the circumstances.

16.     Viasat objects to these Interrogatories to the extent they seek information related to expert disclosure.  Viasat will comply with obligations related to expert disclosure in accordance with the schedule agreed upon or to be agreed upon by the parties.

17.     Viasat objects to these Interrogatories as premature to the extent they seek information ahead of the Court ordered deadlines in this case.

18.     Where Viasat agrees to, or does, provide information responsive to these Interrogatories, this agreement to provide information is subject to agreement with Plaintiffs over appropriate search terms and custodians.

19.     These Objections shall apply to each of the Interrogatories as if fully set forth therein.

## OBJECTIONS AND RESPONSES TO DEFINITIONS AND INSTRUCTIONS

1.     Viasat objects to the definition of "Accused Products" to the extent it encompasses "media streaming and/or content delivery software, systems, and services *such as* residential and

SECOND SUPPLEMENTAL OBJECTIONS & RESPONSES TO PLAINTIFFS'
SECOND SET OF INTERROGATORIES

04568-00014/15528032.4

in-flight entertainment and/or communication systems, ***including*** the Accused Instrumentalities identified in Plaintiffs' Patent L.R. 3-1 infringement contentions served on February 23, 2023, Plaintiffs' Amended Infringement Contentions served on March 22, 2024, and any amendments thereto," as well as "and IFE and/or IFEC system (as defined below) made, used, sold, leased, and/or offered for sale or lease by Viasat, as well as the Viasat Content Delivery System." Viasat also objects to the definition of "Accused Products" to the extent that it includes "products identified in Plaintiffs' Patent L.R. 3-1 infringement contentions served on February 23, 2023" because, as Viasat has previously expressed to Plaintiffs, Plaintiffs' Patent L.R. 3-1 infringement contentions are deficient in that, *inter alia*, they fail to sufficiently identify the products, software, or systems that Plaintiffs accuse of infringement.  Unless otherwise stated in response to a specific Interrogatory, Viasat construes the term "Accused Product" to refer only to those products, systems, or services expressly identified in Plaintiffs' operative Complaint and Plaintiffs' Patent L.R. 3-1 infringement contentions served on March 22, 2024, to the extent any products, systems, and services were sufficiently identified such that they can be known and understood by Viasat.

2.    Viasat objects to the definition of "Viasat," "Defendant," "You," or "Your" to the extent it encompasses persons and entities other than Viasat Inc. and is overbroad, vague, and ambiguous with respect to "subsidiaries, divisions, predecessor and successor companies, affiliates, parents, any partnership or joint venture to which it may be a party, and each of its . . . officers, directors, representatives, consultants, accountants, and attorneys."  Unless otherwise stated in response to a specific Interrogatory, Viasat construes the terms "Viasat," "Defendant," "You," or "Your" to encompass only Viasat Inc. and its employees and agents.

**RESPONSES TO FIRST SET OF INTERROGATORIES**

**INTERROGATORY NO. 9:**

Identify each type of Playback Device and describe in detail how each type of Playback Device is implemented, installed, repaired, maintained, replaced, and connected to other components in any Viasat's IFE system.

04568-00014/15528032.4

**RESPONSE TO INTERROGATORY NO. 9:**

Viasat incorporates by reference all of its General Objections as if fully set forth herein. Viasat objects to this Interrogatory as compound and containing multiple subparts asserted in a single Interrogatory. Viasat further objects to this Interrogatory on the grounds it is overbroad, unduly burdensome, vague, and ambiguous, including without limitation through its use of the phrase "Playback Device." Viasat further objects to this Interrogatory to the extent it seeks information that is not in Viasat's possession, custody, or control, but rather in the possession, custody, and control of third parties. Viasat further objects to this Interrogatory to the extent its scope it is not limited in time or the time period is vague and ambiguous.

Subject to and without waiving the foregoing objections, Viasat responds as follows: Based on Viasat's investigation to-date and facts currently known to it, Viasat does not sell or provide Playback Devices and thus does not have in its possession, custody, or control the requested information pertaining to how Playback Devices are implemented, installed, repaired, maintained, replaced, or connected.

Viasat's investigation and discovery are ongoing. Viasat reserves all rights to amend or supplement its objections and/or responses as its investigation continues.

**INTERROGATORY NO. 10:**

Identify each customer for any Viasat's IFE and/or IFEC system, including any related services, and for each customer, identify (i) the Viasat legal entity that contracts with that customer, (ii) the date that Viasat first sold or licensed an IFE or IFEC system to that customer, and (iii) the revenue to Viasat, or any of its subsidiaries, for all sales and licenses for any Viasat's IFE and/or IFEC system, including any services provided to that customer that are in any way related to any Viasat's IFE or IFEC system, broken down by legal entity and quarter.

**RESPONSE TO INTERROGATORY NO. 10:**

Viasat incorporates by reference all of its General Objections as if fully set forth herein. Viasat objects to this Interrogatory as compound and containing multiple subparts asserted in a single Interrogatory. Viasat further objects to this Interrogatory to the extent it seeks information

04568-00014/15528032.4

that is not in Viasat's possession, custody, or control. Viasat further objects to this Interrogatory to the extent its scope it is not limited in time or the time period is vague and ambiguous.

Subject to and without waiving the foregoing objections, Viasat responds as follows: Pursuant to Federal Rule of Civil Procedure 33(d), Viasat will produce documents responsive to this Interrogatory and the burden of ascertaining further information responsive to this Interrogatory is substantially the same for Plaintiffs as it is for Viasat.

Viasat's investigation and discovery are ongoing. Viasat reserves all rights to amend or supplement its objections and/or responses as its investigation continues.

**INTERROGATORY NO. 11:**

For each customer of any Viasat IFE and/or IFEC system, identify (i) the total number of that customer's aircrafts equiped with a Viasat IFE or IFEC system, and (ii) the number of that customer's aircrafts that are equipped with seatback devices, each broken down by quarter.

**RESPONSE TO INTERROGATORY NO. 11:**

Viasat incorporates by reference all of its General Objections as if fully set forth herein. Viasat objects to this Interrogatory as compound and containing multiple subparts asserted in a single Interrogatory. Viasat further objects to this Interrogatory to the extent it seeks information that is not in Viasat's possession, custody, or control. Viasat further objects to this Interrogatory to the extent its scope it is not limited in time or the time period is vague and ambiguous.

Subject to and without waiving the foregoing objections, Viasat responds as follows: Subject to and without waiving the foregoing objections, Viasat responds as follows: Pursuant to Federal Rule of Civil Procedure 33(d), Viasat will produce documents responsive to this Interrogatory and the burden of ascertaining further information responsive to this Interrogatory is substantially the same for Plaintiffs as it is for Viasat.

Viasat's investigation and discovery are ongoing. Viasat reserves all rights to amend or supplement its objections and/or responses as its investigation continues.

1    **INTERROGATORY NO. 12:**

2        For each customer of any Viasat IFE and/or IFEC system, identify on a quarter-by-quarter

3    basis the products and services that Viasat provides to that customer (see e.g., VIASAT_00006655

4    at 696-98) and all associated revenue.

5    **RESPONSE TO INTERROGATORY NO. 12:**

6        Viasat incorporates by reference all of its General Objections as if fully set forth herein.

7    Viasat further objects to this Interrogatory to the extent it seeks information that is not relevant to

8    any claim or defense currently in this case and not proportional to the needs of the case.  Viasat

9    further objects to this Interrogatory to the extent its scope it is not limited in time or the time period

10   is vague and ambiguous.

11       Subject to and without waiving the foregoing objections, Viasat responds as follows: Subject

12   to and without waiving the foregoing objections, Viasat responds as follows: Pursuant to Federal

13   Rule of Civil Procedure 33(d), Viasat will produce documents responsive to this Interrogatory and

14   the burden of ascertaining further information responsive to this Interrogatory is substantially the

15   same for Plaintiffs as it is for Viasat.

16       Viasat's investigation and discovery are ongoing.  Viasat reserves all rights to amend or

17   supplement its objections and/or responses as its investigation continues.

18   **INTERROGATORY NO. 13:**

19       On a quarter-by-quarter basis, identify the number of residential subscribers to Viasat's

20   services that are connected to the Viasat Content Delivery System and the revenue to Viasat, or any

21   of its subsidiaries, associated with sales or licenses or products and/or services provided to those

22   subscribers, broken down by legal entity, quarter, and service/sale type. See VIASAT_00008738 at

23   745.

24   **RESPONSE TO INTERROGATORY NO. 13:**

25       Viasat incorporates by reference all of its General Objections as if fully set forth herein.

26   Viasat further objects to this Interrogatory to the extent it seeks information that is not relevant to

27   any claim or defense currently in this case and not proportional to the needs of the case.  Specifically,

28   Viasat object to this Interrogatory as seeking information related to a product and/or service that

was not identified in Plaintiffs' operative Complaint and/or Plaintiffs' Patent L.R. 3-1 infringement contentions served on March 22, 2024. Viasat further objects to this Interrogatory to the extent its scope it is not limited in time or the time period is vague and ambiguous. Viasat is willing to meet and confer with Plaintiffs regarding the scope of this Interrogatory.

Viasat's investigation and discovery are ongoing. Viasat reserves all rights to amend or supplement its objections and/or responses as its investigation continues.

**INTERROGATORY NO. 14:**

Identify with specificity, on a claim-by-claim basis, all factual and legal bases supporting any allegedly acceptable, non-infringing alternatives to the claims of the Asserted Patents available to You as of the earliest date that You began offering, providing, or using the Accused Products. Include the complete factual basis for Your response, including the identity of each individual with personal knowledge regarding the non-infringing alternatives, the relative costs and/or benefits of using the Accused Products in place of such non-infringing alternatives, and identifying any documents relating to such allegedly non-infringing alternatives.

**RESPONSE TO INTERROGATORY NO. 14:**

Viasat incorporates by reference all of its General Objections as if fully set forth herein. Viasat further objects to this Interrogatory on the grounds it is overbroad, unduly burdensome, vague, and ambiguous, including without limitation through its use of the phrases "Accused Products" and "performance." Viasat further objects to this Interrogatory to the extent it seeks Privileged Information. Viasat objects to this Interrogatory to the extent it seeks documents or information related to expert disclosure.

Subject to and without waiving the foregoing objections, Viasat responds as follows: Viasat states that this Interrogatory is premature, as it is Plaintiffs' burden to prove damages, and Plaintiff has provided no damages theory with any specificity, and because Plaintiffs have not responded to Viasat's repeated assertion that Plaintiffs are entitled to no damages because Viasat has not engaged and is not engaging in any act that constitutes direct infringement, induced infringement, contributory infringement, either literally or under the doctrine of equivalents, of any valid and enforceable claim of any of the patents-in-suit. Viasat further responds that discovery is ongoing

1    and Viasat will supplement its response to this interrogatory as necessary pursuant to Fed. R. Civ.

2    P. 26(e) after further discovery has been conducted including, for example, an explanation by

3    Plaintiffs of how the Accused Instrumentalities infringe under the Court's claim constructions.

4         Viasat's investigation and discovery are ongoing.  Viasat reserves all rights to amend or

5    supplement its objections and/or responses as its investigation continues.

6    **FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 14 (1/8/2025):**

7         Viasat incorporates by reference its prior objections and response to this Interrogatory.

8    Subject to and without waiving the foregoing response and objections, Viasat hereby supplements

9    its objections and response to state that each of the following would be non-infringing alternatives

10   to the claims of the Asserted Patents:

11        As explained in Viasat's response to Interrogatory No. 8, the Accused Products do not

12   infringe the Asserted Patents.  Therefore, the Accused Products are non-infringing alternatives to

13   the asserted claims of the Asserted Patents.

14        The prior art listed in Viasat's Invalidity Contentions for the '400 Patent pre-dates that patent

15   and could not infringe any valid claim of the '400 Patent. This prior art is therefore also a non-

16   infringing alternative to the asserted claims of the '400 Patent. These non-infringing alternatives

17   include the Verimatrix Content Access System (including its Content Security Manager and

18   MultiRights system), the eMusic digital kiosk (including the Intertrust Digibox and its

19   Marlin/ExpressPlay DRM) and the Cryptography Research CryptoFirewall.

20        The prior art listed in Viasat's Invalidity Contentions for the '667 Patent pre-dates that patent

21   and could not infringe any valid claim of the '667 Patent. This prior art is therefore also a non-

22   infringing alternative to the asserted claims of the '667 Patent. These non-infringing alternatives

23   include the TiVo Premiere, the DirecTV VOD Services, HR23 DVR, and Genie DVR, the DISH

24   VOD Services, ViP622 DVR, ViP722k, Hopper DVR, and Joey Receivers, the WD My Book AV

25   DVR Expander, and the WD TV Live Plus.

26        As noted in Viasat's response to Interrogatory No. 8, the Accused Products are not a "media

27   streaming system comprising … one or more hardware processors configured to … receive an

28   indication of the NAS device having a secure region"; therefore, the Accused Products are a non-

infringing alternative to the '667 patent. Viasat also does not practice, and does not contribute to or induce others to practice, a "method of transmitting media content from a media streaming system, the method comprising … receiving an indication of the NAS device having a secure region"; Viasat's methods of operation are therefore non-infringing alternatives to the '667 patent. To the extent Plaintiffs identify some processor in Viasat's system "configured to … receive an indication of the NAS device having a secure region" (which they have not), or identify some "method of transmitting media content from a media streaming system, the method comprising … receiving an indication of the NAS device having a secure region" (which they have not), Viasat could design its systems and revise its methods of operation to remove any such "indication of the NAS device having a secure region." Viasat has no need for any "indication of the NAS device having a secure region," no Viasat customer has requested or required any such "indication of the NAS device having a secure region," and Viasat's products and services would be commercially viable without any such "indication."

As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not have an NAS device with a "secure region comprising a buffer for streaming media on a separate display device on the local area network"; therefore, the Accused Products are a non-infringing alternative to the '667 patent. To the extent Plaintiffs identify some component of the Accused Products that constitutes an NAS device with a "secure region comprising a buffer for streaming media on a separate display device on the local area network" (they have not), Viasat could design its systems to remove any such "secure region comprising a buffer for streaming media on a separate display device on the local area network." Viasat has no need for any "secure region comprising a buffer for streaming media on a separate display device on the local area network," no Viasat customer has requested or required any such "secure region comprising a buffer for streaming media on a separate display device on the local area network," and Viasat could employ a system that loads media content to an NAS device without a "secure region" that is inaccessible. This would be a commercially acceptable non-infringing alternative because it would not cause an NAS device to lack any security feature that Viasat's customers demand.

04568-00014/15528032.4

1    As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not allow "the
2    media streaming system" to control "access to the secure region" of the NAS device; therefore, the
3    Accused Products are a non-infringing alternative to the '667 patent. To the extent Plaintiffs identify
4    some method by which the Accused Products allow "the media streaming system" to control "access
5    to the secure region" of the NAS device (they have not), Viasat could design its systems to remove
6    any such means for "the media streaming system" to control "access to the secure region." Viasat
7    has no need for "the media streaming system" to be able to control "access to the secure region" of
8    the NAS device, no Viasat customer has requested or required any such means to control "access to
9    the secure region," and a Viasat system that did not allow such a feature would be a commercially
10   viable system.

11   As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not "cause
12   the NAS device to use encryption that secures the digital content to the secure region" of the NAS
13   device; therefore, the Accused Products are a non-infringing alternative to the '667 patent. To the
14   extent Plaintiffs identify some method by which the Accused Products "cause the NAS device to
15   use encryption that secures the digital content to the secure region" of the NAS device (they have
16   not), Viasat could design its systems to remove any such means for "caus[ing] the NAS device to
17   use encryption that secures the digital content to the secure region" of the NAS device." Viasat has
18   no need for using "encryption [to] secure[] the digital content to the secure region" of the NAS
19   device and no Viasat customer has requested or required using "encryption [to] secure[] the digital
20   content to the secure region" of the NAS device. This would be a commercially acceptable non-
21   infringing alternative because it would not cause a NAS device to lack any encryption feature that
22   Viasat's customers demand.

23   As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not "provide
24   instructions to the NAS device for controlling an encryption type used in the secure region" of the
25   NAS device; therefore, the Accused Products are a non-infringing alternative to the '667 patent. To
26   the extent Plaintiffs identify some method by which the Accused Products "provide instructions to
27   the NAS device for controlling an encryption type used in the secure region" of the NAS device
28   (they have not), Viasat could design its systems to remove any such means for "provid[ing]

instructions to the NAS device for controlling an encryption type used in the secure region" of the NAS device." Viasat has no need for "controlling an encryption type used in the secure region" of the NAS device and no Viasat customer has requested or required "controlling an encryption type used in the secure region" of the NAS device. Viasat has no need for no need for multiple types of encryption, let alone the ability to control which of those types is used. This would be a commercially acceptable non-infringing alternative because it would not cause a NAS device to lack any "NAS regional encryption type control" feature that Viasat's customers demand.

As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not "provide instructions to the NAS device for controlling an amount of data stored in the secure region" of the NAS device; therefore, the Accused Products are a non-infringing alternative to the '667 patent. To the extent Plaintiffs identify some method by which the Accused Products "provide instructions to the NAS device for controlling an amount of data stored in the secure region" of the NAS device (they have not), Viasat could design its systems to remove any such means for "provid[ing] instructions to the NAS device for controlling an amount of data stored in the secure region" of the NAS device." Viasat has no need for "controlling an amount of data stored in the secure region" of the NAS device and no Viasat customer has requested or required "controlling an amount of data stored in the secure region" of the NAS device. This would be a commercially acceptable non-infringing alternative because, as explained above, a NAS device that did not receive instructions to control an amount of data stored in a secure region is not a NAS device that lacks a feature Viasat's customers demand.

As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not include "portable data storage devices" from Viasat; therefore, the Accused Products offered by Viasat are a non-infringing alternative to the '400 patent. To the extent Plaintiffs identify some method by which seatback devices that some Viasat customers employ on some aircraft are "portable" (they are not), third-party providers of seatback devices had the ability to design its seatback devices to eliminate any characteristics making those devices "portable." This would be a commercially acceptable non-infringing alternative because seatback devices are not intended to be "portable" within the meaning of the '400 patent claims, but rather intended to remain fixed in the seatback.

As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not "obtain a unique identifier from the portable data storage device, wherein the unique identifier is specific to the portable data storage device and is concealed by the portable data storage device;" therefore, the Accused Products are a non-infringing alternative to the '400 patent. Viasat does not require any "unique identifier" that "is *concealed* by the portable data storage device" as part of its system, and Viasat does not instruct any airline passenger or airline customer to "*conceal*" any identifier on any personal electronic device. To the extent Plaintiffs identify some method by which the user devices or seatback devices "conceal[]" a "unique identifier" that Viasat allegedly obtains (they have not), third-party providers of user devices or seatback devices had the ability to design its devices such that they do not conceal those unique identifiers.  To the extent Plaintiffs identify some method by which the processors in Viasat systems "obtain a unique identifier from the portable data storage device, wherein the unique identifier is specific to the portable data storage device and is concealed by the portable data storage device," it would be a trivial change for Viasat to instead obtain and use any other unique identifier of the device that is not "concealed" by the device. This would be a commercially acceptable non-infringing alternative because (1) Viasat has no need to identify or track individual user devices or seatback devices for purposes of media content distribution using a "concealed" identifier, (2) Viasat's customers do not require or request systems that track individual user devices or seatback devices using a "concealed" identifier, and (3) Viasat does not instruct its airline customers, airline passengers, or any other users of Viasat systems to "conceal" any identifiers unique to their devices in order to make Viasat's systems commercially viable.

As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not "authenticate the portable data storage device, using at least the unique identifier, by communicating with the remote trusted server over the second data interface;" therefore, the Accused Products are a non-infringing alternative to the '400 patent. To the extent Plaintiffs identify some method by which the processors "authenticate" user devices or seatback devices using the aforementioned "concealed" "unique identifier" or to conduct that authentication by "communicating with the remote trusted server over the second data interface" to provide that "concealed" "unique identifier" to the "remote trusted server," Viasat had the ability to design its processors such that they do not

SECOND SUPPLEMENTAL OBJECTIONS & RESPONSES TO PLAINTIFFS'
SECOND SET OF INTERROGATORIES

authenticate any user device or seatback device in this fashion. Viasat could use a unique identifier that was not the aforementioned "concealed" unique identifier, and provide that non-concealed unique identifier for authentication. Viasat also had the ability to use a DRM system that does not communicate with any "remote trusted server" for authentication purposes. Viasat could also use a third-party DRM system that does not uniquely identify a device and communicate with a remote trusted server before the user is allowed to stream content from the media server. This would be a commercially acceptable non-infringing alternative because Viasat has no need to identify or track individual user devices or seatback devices for purposes of media content distribution using a remote server that authenticates user devices based on a concealed device identifier; this is not a method of authentication that Viasat's customers demand, and Viasat's devices do not need to offer this feature to be commercially viable.

As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not "in response to the authentication, provide to the portable data storage device an encrypted first media content and a corresponding access key;" therefore, the Accused Products are a non-infringing alternative to the '400 patent. To the extent Plaintiffs identify some method by which the processors provide "an encrypted first media content" or provide "a corresponding access key," Viasat had the ability to design its processors such that they do not provide encrypted media content or access key to any user device or seatback device. This would be a commercially acceptable non-infringing alternative because Viasat's customers do not request this feature and Viasat's products do not require this feature to be commercially viable.

As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not have a kiosk located in a "public environment"; therefore, the Accused Products are a non-infringing alternative to the '400 patent. To the extent Plaintiffs identify some method by which the IFE system, Viasat's Network Access Unit ("NAU"), Viasat's Mobile Application Server, Viasat S4 Server, or Gateway system were located in a "public environment," Viasat had the ability to install all or some modules of the IFE system, Viasat's Network Access Unit ("NAU"), Viasat's Mobile Application Server, Viasat S4 Server, or Gateway system in a private environment. Viasat could, for example, install these devices in an area of an airplane that is not accessible to the general

public. This would be a commercially acceptable non-infringing alternative because Viasat has no need to place any of these modules in an environment accessible to the general public, and no Viasat customer has requested or required that these modules be located in an environment accessible to the general public.

Viasat further responds to this Interrogatory as follows: Pursuant to Federal Rule of Civil Procedure 33(d), Viasat has produced or is producing documents responsive to this Interrogatory, including documents relating to Viasat customers' requests for proposals (RFPs). These documents further demonstrate that products lacking the functionalities described above are and would be commercially acceptable. The burden of ascertaining further information responsive to this Interrogatory from those documents is substantially the same for Plaintiffs as it is for Viasat.

**INTERROGATORY NO. 15:**

Correlate each source code folder that Viasat made available (or will make available) for review by Plaintiffs with the corresponding functionality of Viasat's systems (for example, by mapping each source code folder with a block diagram provided in VIASAT_00008705) and the location and type of the computing device that executes the source code (e.g., ground server, plane server, user device, seat-back device, etc.).

**RESPONSE TO INTERROGATORY NO. 15:**

Viasat incorporates by reference all of its General Objections as if fully set forth herein. Viasat objects to this Interrogatory as compound and containing multiple subparts asserted in a single Interrogatory. Viasat further objects to this Interrogatory on the grounds it is overbroad, unduly burdensome, vague, and ambiguous, including to the extent is seeks information that is equally accessible to Plaintiffs.

Subject to and without waiving the foregoing objections, Viasat responds as follows: Subject to and without waiving the foregoing objections, Viasat responds as follows: Pursuant to Federal Rule of Civil Procedure 33(d), Viasat will produce documents responsive to this Interrogatory and the burden of ascertaining further information responsive to this Interrogatory is substantially the same for Plaintiffs as it is for Viasat.

1    Viasat's investigation and discovery are ongoing. Viasat reserves all rights to amend or

2    supplement its objections and/or responses as its investigation continues.

3    **FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 15 (12/13/2024):**

4    Based on its investigation to date and subject to and without waiving any Objections to

5    Definitions and Instructions, General Objections, or specific objections in its prior responses, Viasat

6    supplements its response to this Interrogatory as follows:

7    Viasat repeats and incorporates herein its Objections to this Interrogatory, including Viasat's

8    objections to Plaintiff's Definitions and Instructions, Viasat's General Objections, and Viasat's

9    specific objections in its prior responses to this request. As Viasat previously noted, the

10   Interrogatory is overbroad, unduly burdensome, vague, and ambiguous, including in its request to

11   "[c]orrelate" code with "corresponding functionality" or with the "location" of any and every

12   "computing device" that may execute code, including third-party computing devices; because the

13   Interrogatory appears to request information more appropriately obtained through analysis of the

14   source code itself or through depositions of knowledgeable engineers; and to the extent the

15   Interrogatory purports to request discovery on non-accused functionality, including functionalities

16   and block diagrams not mentioned in Plaintiffs' infringement contentions. Viasat further

17   supplements its response to this Interrogatory as follows:

18   Viasat provides the following additional information on folders of source code that have

19   been available for inspection in this litigation, all of which have been available for inspection since

20   early 2024—and all of which have actually been inspected by Plaintiffs over multiple days, cited in

21   Plaintiffs' infringement contentions, and explained in detail in documentation Viasat already

22   produced (and that Plaintiffs already cited in their infringement contentions), without any claim by

23   Plaintiffs that the source code was impossible to understand without further information responsive

24   to this Interrogatory. Plaintiffs are free to analyze code, print code, and use code in depositions

25   subject to the Protective Order in this litigation. To date Plaintiffs have not taken any depositions in

26   an effort to understand the Accused Products or to diligently pursue their allegations of

27   infringement. Viasat reserves all rights.

28

1  •  ██████████████████████████████████████████
2     ██████████████████████████████████████████
3     ██████████████████████████████████████████
4     ██████████████████████████████████████████
5     ██████████████████████████████████████████
6     ██████████████████████████████████████████
7     ██████████████████████████████████████████
8     ██████████████████████████████████████████
9     ████████████████████████████
10 ▪  ██████████████████████████████████████████
11    ██████████████████████████████████████████
12    ██████████████████████████████████████████
13    ██████████████████████████████████████████
14    ██████████████████████████████████████████
15    ██████████████████████████████████████████
16    ██████████████████████████████████████████
17    ████████████████
18 ▪  ██████████████████████████████████████████
19    ██████████████████████████████████████████
20    ██████████████████████████████████████████
21    ██████████
22 ▪  ██████████████████████████████████████████
23    ██████████████████████████████████████████
24    ████████████████
25 ▪  ████████████████████████████████████████
26 ▪  ██████████████████████████████████████████
27    ████████████
28

Case No. 5:22-cv-4376
SECOND SUPPLEMENTAL OBJECTIONS & RESPONSES TO PLAINTIFFS'
SECOND SET OF INTERROGATORIES

04568-00014/15528032.4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

04568-00014/15528032.4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

04568-00014/15528032.4



Additionally, pursuant to Federal Rule of Civil Procedure 33(d), Viasat identifies the following materials from which the answer to this interrogatory may be derived or ascertained: VIASAT_00005782, including at VIASAT_00005790-5801; VIASAT_00008738, including at VIASAT_00008749-8763 and VIASAT_00008759-8761; VIASAT_00005782, including at VIASAT_00005798; VIASAT_00006471, including at VIASAT_00006499.

Viasat's investigation and discovery are ongoing. Viasat reserves all rights to amend or supplement its objections and/or responses as its investigation continues.

DATED: January 8, 2025                QUINN EMANUEL URQUHART &
                                      SULLIVAN, LLP


                                      By _____/s/ Patrick Curran_____
                                          Patrick Curran
                                          Attorneys for *Defendant Viasat Inc.*

1

## **CERTIFICATE OF SERVICE**

2

I hereby certify that on January 8, 2025, I caused a copy of the foregoing document to be

3

served on the following counsel for Plaintiffs via email:

4

L. Kieran Kieckhefer:     KKieckhefer@gibsondunn.com

5

Ahmed ElDessouki:     aeldessouki@gibsondunn.com

6

Lillian J. Mao:     LMao@gibsondunn.com

7

8

9

*/s/ Vanessa Blecher*
Vanessa Blecher

10

Attorneys for *Defendant Viasat Inc.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

04568-00014/15528032.4