# EXHIBIT E

REDACTED VERSION
OF DOCUMENT
PROPOSED TO BE
FILED UNDER SEAL

QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Steven Cherny (*pro hac vice*)
   stevencherny@quinnemanuel.com
   Patrick D. Curran (Bar No. 241630)
   patrickcurran@quinnemanuel.com
   Tzivya H. Beck (*pro hac vice*)
   tzivyabeck@quinnemanuel.com
   Hannah Dawson (*pro hac vice*)
   hannahdawson@quinnemanuel.com
111 Huntington Ave, Suite 520
Boston, MA 02199
Telephone:    (617) 712-7100
Facsimile:    (617) 712-7200

QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Jodie Cheng (Bar No. 292330)
   jodiecheng@quinnemanuel.com
   Gyu Shik Jang (Bar No. 337747)
   kevinjang@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Nicola R. Felice (*proc hac vice*)
   nicolafelice@quinnemanuel.com
   Vanessa Blecher (*pro hac vice*)
   vanessablecher@quinnemanuel.com
   Alicia Lai (*pro hac vice*)
   alicialai@quinnemanuel.com
295 5th Avenue
New York, NY 10016
Telephone:    (212) 849-7000
Facsimile:    (212) 849-7100

*Attorneys for Defendant Viasat, Inc.*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA,
### OAKLAND DIVISION

| | |
|---|---|
| SANDISK TECHNOLOGIES, INC., et al., | Case No. 5:22-cv-4376 |
| Plaintiffs, | |
| vs. | **VIASAT, INC.'S THIRD SUPPLEMENTAL OBJECTIONS & RESPONSES TO PLAINTIFFS' SECOND SET OF INTERROGATORIES (NOS. 9-15)** |
| VIASAT, INC.,, | |
| Defendant. | |

1    Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant Viasat, Inc.

2  ("Viasat") hereby supplements its responses to Plaintiffs' Second Set of Interrogatories (Nos. 9-15)

3  as follows.  Pursuant to Federal Rule of Civil Procedure 26(e), Plaintiff reserves the right to further

4  supplement its responses to these Interrogatories if it learns of additional responsive information.

# PRELIMINARY STATEMENT

Viasat's investigation, discovery, and analysis are ongoing. The responses to these Interrogatories are based on information presently available to Viasat after a reasonable investigation. Viasat reserves the right to supplement or amend these responses as further information and documents are identified, disclosed, or discovered. Viasat's responses are without prejudice to its right to introduce as evidence any subsequently discovered or unintentionally omitted information and/or documents.

Viasat's responses to these Interrogatories are not intended to be and shall not be construed as a concession or admission by Viasat of the competency, relevance, materiality, privilege, or admissibility of the Interrogatories or its responses thereto, or of any document or information referred to in the Interrogatories or these responses. The fact that Viasat has responded to any Interrogatory, or any part of any Interrogatory, does not imply or admit that it accepts or admits the existence of any facts stated or assumed by such Interrogatories. The failure of Viasat to object to any of the Interrogatories on a specific ground shall not be construed as a waiver of its right to object at a later time on that ground or any additional grounds. Viasat incorporates each of the following General Objections and Objections and Responses to Instructions and Definitions into its Responses to each of Plaintiffs' Interrogatories, whether or not expressly referred to in each such Response. Viasat reserves the right to object to further discovery regarding the same subject matter as any Interrogatory and to object to the introduction into evidence any documents or information provided in response to the Interrogatories.

# GENERAL OBJECTIONS

Viasat makes the following General Objections, whether or not separately set forth in response to each Interrogatory, to each and every instruction, definition, and Interrogatory. By responding to any of the Interrogatories or failing to specifically refer to or specify any particular General Objection in response to a particular Interrogatory, Plaintiff does not waive any of these General Objections, or admit or concede the appropriateness of any purported interrogatory or any assumptions contained therein.

1.    Viasat objects to these Interrogatories, including their Definitions, to the extent they attempt to impose upon Viasat obligations beyond those imposed or authorized by the Federal Rules of Civil Procedure, Northern District of California Local Rules, or any other applicable law, rule, or regulation.

2.    Viasat objects to these Interrogatories to the extent they are compound and contain multiple subparts asserted in a single interrogatory.

3.    Viasat objects to these Interrogatories to the extent they are directed to matters and seek information, documents, or things that are not relevant to the subject matter at issue in this action.

4.    Viasat objects that Plaintiffs' Interrogatories fail to describe with reasonable particularity the information that Western Digital seeks.  Instead, Plaintiffs' Interrogatories are generally overbroad, vague, ambiguous, unduly burdensome, disproportionate to the needs of the action, unintelligible, or otherwise lack particularity and thereby require Viasat to engage in conjecture as to their meaning.  Viasat's response to each Interrogatory is subject to its reasonable interpretation of such Interrogatory.

5.    Viasat objects to these Interrogatories to the extent they seek information protected by any relevant privilege or legal protection, including, without limitation, the attorney-client privilege, the work product doctrine, common interest privilege, or any other applicable privilege (collectively, "Privileged Information").  Such information will not be provided in response to the Interrogatories, and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information, or of any work product doctrine protections which may attach thereto.

6.    Consistent with the foregoing privileges, Viasat will not provide information from outside counsel retained in connection with this action in response to any Interrogatory notwithstanding that such outside counsel may have acquired knowledge or information responsive to that Interrogatory in the course of representing Viasat.

7.    Viasat objects to these Interrogatories to the extent their scope is not restricted to the time period relevant to the allegations in the action, or without reference to a reasonable and relevant

time period, as overbroad, unduly burdensome, beyond the scope of the allegations in the action, not relevant to any claim or defense, and not proportional, material and necessary to the prosecution or defense of the action. Viasat's response to each Interrogatory incorporates a reasonable time period, taking into account the nature and scope of the Interrogatory.

8. Viasat objects to these Interrogatories to the extent they seek information that is already in the possession, custody, or control of Plaintiffs or otherwise equally accessible to Plaintiffs, including information available from public sources.

9. Viasat objects to these Interrogatories to the extent they seek information not within Viasat's possession, custody, or control or purport to require Viasat to seek information in the knowledge, possession, custody, or control of third parties. Viasat disclaims any obligation to obtain or provide information that is not within its knowledge, possession, custody, or control. The voluntary provision of information that may otherwise fall within this objection shall not be deemed a waiver of this objection as to other information in the possession, custody, or control of third parties.

10. Viasat objects to these Interrogatories to the extent they seek confidential and/or proprietary business, financial, and/or technical information or trade secrets, the disclosure of which may damage Viasat's business, violate the privacy or proprietary rights of others including employees, clients, or business partners of Viasat, or breach any duty or regulatory requirement, or violate any agreement or order pursuant to which Viasat is precluded from disclosing such information. Any information provided by Viasat in response to these Interrogatories is being provided for purposes of this action only. Viasat reserves the right to withhold personal, private, or non-responsive documents or information. Viasat also objects to the use of any documents or information provided in this action in any other action or proceeding and/or in any manner inconsistent with the Protective Order (Dkt. 90) entered in this action. For the avoidance of doubt, any information provided to Plaintiffs will be governed by the Protective Order agreed to by the parties.

11. Viasat objects to these Interrogatories to the extent they are cumulative and/or duplicative of other discovery sought in this case and, therefore, unduly burdensome.

12.     Viasat objects to these Interrogatories to the extent the information sought therein could be obtained through other, less burdensome discovery, and are not, therefore, the proper subject of an Interrogatory.

13.     Viasat objects to these Interrogatories to the extent they assume facts that do not exist.

14.     Viasat objects to these Interrogatories to the extent they call for a legal opinion or conclusion.

15.     Viasat objects to the Interrogatories to the extent they are unduly burdensome and oppressive in that they would require Viasat to provide information that is of little or no benefit with respect to the issues or controversies in this action, so that the value of the information would be outweighed by the burden of providing it.  Viasat further objects to the Interrogatories to the extent that they seek electronic documents and/or electronically stored information that is/are not reasonably accessible because of undue burden or cost.  Viasat will undertake a search for documents and information that is reasonable under the circumstances.

16.     Viasat objects to these Interrogatories to the extent they seek information related to expert disclosure.  Viasat will comply with obligations related to expert disclosure in accordance with the schedule agreed upon or to be agreed upon by the parties.

17.     Viasat objects to these Interrogatories as premature to the extent they seek information ahead of the Court ordered deadlines in this case.

18.     Where Viasat agrees to, or does, provide information responsive to these Interrogatories, this agreement to provide information is subject to agreement with Plaintiffs over appropriate search terms and custodians.

19.     These Objections shall apply to each of the Interrogatories as if fully set forth therein.

## **OBJECTIONS AND RESPONSES TO DEFINITIONS AND INSTRUCTIONS**

1.     Viasat objects to the definition of "Accused Products" to the extent it encompasses "media streaming and/or content delivery software, systems, and services **such as** residential and in-flight entertainment and/or communication systems, **including** the Accused Instrumentalities identified in Plaintiffs' Patent L.R. 3-1 infringement contentions served on February 23, 2023,

1  Plaintiffs' Amended Infringement Contentions served on March 22, 2024, and any amendments

2  thereto," as well as "and IFE and/or IFEC system (as defined below) made, used, sold, leased, and/or

3  offered for sale or lease by Viasat, as well as the Viasat Content Delivery System." Viasat also

4  objects to the definition of "Accused Products" to the extent that it includes "products identified in

5  Plaintiffs' Patent L.R. 3-1 infringement contentions served on February 23, 2023" because, as Viasat

6  has previously expressed to Plaintiffs, Plaintiffs' Patent L.R. 3-1 infringement contentions are

7  deficient in that, *inter alia*, they fail to sufficiently identify the products, software, or systems that

8  Plaintiffs accuse of infringement.  Unless otherwise stated in response to a specific Interrogatory,

9  Viasat construes the term "Accused Product" to refer only to those products, systems, or services

10  expressly identified in Plaintiffs' operative Complaint and Plaintiffs' Patent L.R. 3-1 infringement

11  contentions served on March 22, 2024, to the extent any products, systems, and services were

12  sufficiently identified such that they can be known and understood by Viasat.

13       2.     Viasat objects to the definition of "Viasat," "Defendant," "You," or "Your" to the

14  extent it encompasses persons and entities other than Viasat Inc. and is overbroad, vague, and

15  ambiguous with respect to "subsidiaries, divisions, predecessor and successor companies, affiliates,

16  parents, any partnership or joint venture to which it may be a party, and each of its . . . officers,

17  directors, representatives, consultants, accountants, and attorneys."  Unless otherwise stated in

18  response to a specific Interrogatory, Viasat construes the terms "Viasat," "Defendant," "You," or

19  "Your" to encompass only Viasat Inc. and its employees and agents.

20  **RESPONSES TO FIRST SET OF INTERROGATORIES**

21  **INTERROGATORY NO. 9:**

22       Identify each type of Playback Device and describe in detail how each type of Playback

23  Device is implemented, installed, repaired, maintained, replaced, and connected to other

24  components in any Viasat's IFE system.

25  **RESPONSE TO INTERROGATORY NO. 9:**

26       Viasat incorporates by reference all of its General Objections as if fully set forth herein.

27  Viasat objects to this Interrogatory as compound and containing multiple subparts asserted in a

28  single Interrogatory.  Viasat further objects to this Interrogatory on the grounds it is overbroad,

unduly burdensome, vague, and ambiguous, including without limitation through its use of the phrase "Playback Device." Viasat further objects to this Interrogatory to the extent it seeks information that is not in Viasat's possession, custody, or control, but rather in the possession, custody, and control of third parties. Viasat further objects to this Interrogatory to the extent its scope it is not limited in time or the time period is vague and ambiguous.

Subject to and without waiving the foregoing objections, Viasat responds as follows: Based on Viasat's investigation to-date and facts currently known to it, Viasat does not sell or provide Playback Devices and thus does not have in its possession, custody, or control the requested information pertaining to how Playback Devices are implemented, installed, repaired, maintained, replaced, or connected.

Viasat's investigation and discovery are ongoing. Viasat reserves all rights to amend or supplement its objections and/or responses as its investigation continues.

**INTERROGATORY NO. 10:**

Identify each customer for any Viasat's IFE and/or IFEC system, including any related services, and for each customer, identify (i) the Viasat legal entity that contracts with that customer, (ii) the date that Viasat first sold or licensed an IFE or IFEC system to that customer, and (iii) the revenue to Viasat, or any of its subsidiaries, for all sales and licenses for any Viasat's IFE and/or IFEC system, including any services provided to that customer that are in any way related to any Viasat's IFE or IFEC system, broken down by legal entity and quarter.

**RESPONSE TO INTERROGATORY NO. 10:**

Viasat incorporates by reference all of its General Objections as if fully set forth herein. Viasat objects to this Interrogatory as compound and containing multiple subparts asserted in a single Interrogatory. Viasat further objects to this Interrogatory to the extent it seeks information that is not in Viasat's possession, custody, or control. Viasat further objects to this Interrogatory to the extent its scope it is not limited in time or the time period is vague and ambiguous.

Subject to and without waiving the foregoing objections, Viasat responds as follows: Pursuant to Federal Rule of Civil Procedure 33(d), Viasat will produce documents responsive to this

1   Interrogatory and the burden of ascertaining further information responsive to this Interrogatory is

2   substantially the same for Plaintiffs as it is for Viasat.

3       Viasat's investigation and discovery are ongoing.  Viasat reserves all rights to amend or

4   supplement its objections and/or responses as its investigation continues.

5   **INTERROGATORY NO. 11:**

6       For each customer of any Viasat IFE and/or IFEC system, identify (i) the total number of

7   that customer's aircrafts equipped with a Viasat IFE or IFEC system, and (ii) the number of that

8   customer's aircrafts that are equipped with seatback devices, each broken down by quarter.

9   **RESPONSE TO INTERROGATORY NO. 11:**

10      Viasat incorporates by reference all of its General Objections as if fully set forth herein.

11  Viasat objects to this Interrogatory as compound and containing multiple subparts asserted in a

12  single Interrogatory.  Viasat further objects to this Interrogatory to the extent it seeks information

13  that is not in Viasat's possession, custody, or control.  Viasat further objects to this Interrogatory to

14  the extent its scope it is not limited in time or the time period is vague and ambiguous.

15      Subject to and without waiving the foregoing objections, Viasat responds as follows: Subject

16  to and without waiving the foregoing objections, Viasat responds as follows: Pursuant to Federal

17  Rule of Civil Procedure 33(d), Viasat will produce documents responsive to this Interrogatory and

18  the burden of ascertaining further information responsive to this Interrogatory is substantially the

19  same for Plaintiffs as it is for Viasat.

20      Viasat's investigation and discovery are ongoing.  Viasat reserves all rights to amend or

21  supplement its objections and/or responses as its investigation continues.

22  **INTERROGATORY NO. 12:**

23      For each customer of any Viasat IFE and/or IFEC system, identify on a quarter-by-quarter

24  basis the products and services that Viasat provides to that customer (see e.g., VIASAT_00006655

25  at 696-98) and all associated revenue.

26  **RESPONSE TO INTERROGATORY NO. 12:**

27      Viasat incorporates by reference all of its General Objections as if fully set forth herein.

28  Viasat further objects to this Interrogatory to the extent it seeks information that is not relevant to

any claim or defense currently in this case and not proportional to the needs of the case. Viasat further objects to this Interrogatory to the extent its scope it is not limited in time or the time period is vague and ambiguous.

Subject to and without waiving the foregoing objections, Viasat responds as follows: Subject to and without waiving the foregoing objections, Viasat responds as follows: Pursuant to Federal Rule of Civil Procedure 33(d), Viasat will produce documents responsive to this Interrogatory and the burden of ascertaining further information responsive to this Interrogatory is substantially the same for Plaintiffs as it is for Viasat.

Viasat's investigation and discovery are ongoing. Viasat reserves all rights to amend or supplement its objections and/or responses as its investigation continues.

**INTERROGATORY NO. 13:**

On a quarter-by-quarter basis, identify the number of residential subscribers to Viasat's services that are connected to the Viasat Content Delivery System and the revenue to Viasat, or any of its subsidiaries, associated with sales or licenses or products and/or services provided to those subscribers, broken down by legal entity, quarter, and service/sale type. See VIASAT_00008738 at 745.

**RESPONSE TO INTERROGATORY NO. 13:**

Viasat incorporates by reference all of its General Objections as if fully set forth herein. Viasat further objects to this Interrogatory to the extent it seeks information that is not relevant to any claim or defense currently in this case and not proportional to the needs of the case. Specifically, Viasat object to this Interrogatory as seeking information related to a product and/or service that was not identified in Plaintiffs' operative Complaint and/or Plaintiffs' Patent L.R. 3-1 infringement contentions served on March 22, 2024. Viasat further objects to this Interrogatory to the extent its scope it is not limited in time or the time period is vague and ambiguous. Viasat is willing to meet and confer with Plaintiffs regarding the scope of this Interrogatory.

Viasat's investigation and discovery are ongoing. Viasat reserves all rights to amend or supplement its objections and/or responses as its investigation continues.

1    **INTERROGATORY NO. 14:**

2          Identify with specificity, on a claim-by-claim basis, all factual and legal bases supporting

3    any allegedly acceptable, non-infringing alternatives to the claims of the Asserted Patents available

4    to You as of the earliest date that You began offering, providing, or using the Accused Products.

5    Include the complete factual basis for Your response, including the identity of each individual with

6    personal knowledge regarding the non-infringing alternatives, the relative costs and/or benefits of

7    using the Accused Products in place of such non-infringing alternatives, and identifying any

8    documents relating to such allegedly non-infringing alternatives.

9    **RESPONSE TO INTERROGATORY NO. 14:**

10          Viasat incorporates by reference all of its General Objections as if fully set forth herein.

11    Viasat further objects to this Interrogatory on the grounds it is overbroad, unduly burdensome,

12    vague, and ambiguous, including without limitation through its use of the phrases "Accused

13    Products" and "performance."  Viasat further objects to this Interrogatory to the extent it seeks

14    Privileged Information.  Viasat objects to this Interrogatory to the extent it seeks documents or

15    information related to expert disclosure.

16          Subject to and without waiving the foregoing objections, Viasat responds as follows: Viasat

17    states that this Interrogatory is premature, as it is Plaintiffs' burden to prove damages, and Plaintiff

18    has provided no damages theory with any specificity, and because Plaintiffs have not responded to

19    Viasat's repeated assertion that Plaintiffs are entitled to no damages because Viasat has not engaged

20    and is not engaging in any act that constitutes direct infringement, induced infringement,

21    contributory infringement, either literally or under the doctrine of equivalents, of any valid and

22    enforceable claim of any of the patents-in-suit.  Viasat further responds that discovery is ongoing

23    and Viasat will supplement its response to this interrogatory as necessary pursuant to Fed. R. Civ.

24    P. 26(e) after further discovery has been conducted including, for example, an explanation by

25    Plaintiffs of how the Accused Instrumentalities infringe under the Court's claim constructions.

26          Viasat's investigation and discovery are ongoing.  Viasat reserves all rights to amend or

27    supplement its objections and/or responses as its investigation continues.

28

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 14 (1/8/2025):**

Viasat incorporates by reference its prior objections and response to this Interrogatory. Subject to and without waiving the foregoing response and objections, Viasat hereby supplements its objections and response to state that each of the following would be non-infringing alternatives to the claims of the Asserted Patents:

As explained in Viasat's response to Interrogatory No. 8, the Accused Products do not infringe the Asserted Patents.  Therefore, the Accused Products are non-infringing alternatives to the asserted claims of the Asserted Patents.

The prior art listed in Viasat's Invalidity Contentions for the '400 Patent pre-dates that patent and could not infringe any valid claim of the '400 Patent. This prior art is therefore also a non-infringing alternative to the asserted claims of the '400 Patent. These non-infringing alternatives include the Verimatrix Content Access System (including its Content Security Manager and MultiRights system), the eMusic digital kiosk (including the Intertrust Digibox and its Marlin/ExpressPlay DRM) and the Cryptography Research CryptoFirewall.

The prior art listed in Viasat's Invalidity Contentions for the '667 Patent pre-dates that patent and could not infringe any valid claim of the '667 Patent. This prior art is therefore also a non-infringing alternative to the asserted claims of the '667 Patent. These non-infringing alternatives include the TiVo Premiere, the DirecTV VOD Services, HR23 DVR, and Genie DVR, the DISH VOD Services, ViP622 DVR, ViP722k, Hopper DVR, and Joey Receivers, the WD My Book AV DVR Expander, and the WD TV Live Plus.

As noted in Viasat's response to Interrogatory No. 8, the Accused Products are not a "media streaming system comprising … one or more hardware processors configured to … receive an indication of the NAS device having a secure region"; therefore, the Accused Products are a non-infringing alternative to the '667 patent. Viasat also does not practice, and does not contribute to or induce others to practice, a "method of transmitting media content from a media streaming system, the method comprising … receiving an indication of the NAS device having a secure region"; Viasat's methods of operation are therefore non-infringing alternatives to the '667 patent. To the extent Plaintiffs identify some processor in Viasat's system "configured to … receive an indication

of the NAS device having a secure region" (which they have not), or identify some "method of transmitting media content from a media streaming system, the method comprising … receiving an indication of the NAS device having a secure region" (which they have not), Viasat could design its systems and revise its methods of operation to remove any such "indication of the NAS device having a secure region." Viasat has no need for any "indication of the NAS device having a secure region," no Viasat customer has requested or required any such "indication of the NAS device having a secure region," and Viasat's products and services would be commercially viable without any such "indication."

As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not have an NAS device with a "secure region comprising a buffer for streaming media on a separate display device on the local area network"; therefore, the Accused Products are a non-infringing alternative to the '667 patent. To the extent Plaintiffs identify some component of the Accused Products that constitutes an NAS device with a "secure region comprising a buffer for streaming media on a separate display device on the local area network" (they have not), Viasat could design its systems to remove any such "secure region comprising a buffer for streaming media on a separate display device on the local area network." Viasat has no need for any "secure region comprising a buffer for streaming media on a separate display device on the local area network," no Viasat customer has requested or required any such "secure region comprising a buffer for streaming media on a separate display device on the local area network," and Viasat could employ a system that loads media content to an NAS device without a "secure region" that is inaccessible. This would be a commercially acceptable non-infringing alternative because it would not cause an NAS device to lack any security feature that Viasat's customers demand.

As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not allow "the media streaming system" to control "access to the secure region" of the NAS device; therefore, the Accused Products are a non-infringing alternative to the '667 patent. To the extent Plaintiffs identify some method by which the Accused Products allow "the media streaming system" to control "access to the secure region" of the NAS device (they have not), Viasat could design its systems to remove any such means for "the media streaming system" to control "access to the secure region." Viasat

-13-

1    has no need for "the media streaming system" to be able to control "access to the secure region" of

2    the NAS device, no Viasat customer has requested or required any such means to control "access to

3    the secure region," and a Viasat system that did not allow such a feature would be a commercially

4    viable system.

5           As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not "cause

6    the NAS device to use encryption that secures the digital content to the secure region" of the NAS

7    device; therefore, the Accused Products are a non-infringing alternative to the '667 patent. To the

8    extent Plaintiffs identify some method by which the Accused Products "cause the NAS device to

9    use encryption that secures the digital content to the secure region" of the NAS device (they have

10   not), Viasat could design its systems to remove any such means for "caus[ing] the NAS device to

11   use encryption that secures the digital content to the secure region" of the NAS device." Viasat has

12   no need for using "encryption [to] secure[] the digital content to the secure region" of the NAS

13   device and no Viasat customer has requested or required using "encryption [to] secure[] the digital

14   content to the secure region" of the NAS device. This would be a commercially acceptable non-

15   infringing alternative because it would not cause a NAS device to lack any encryption feature that

16   Viasat's customers demand.

17          As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not "provide

18   instructions to the NAS device for controlling an encryption type used in the secure region" of the

19   NAS device; therefore, the Accused Products are a non-infringing alternative to the '667 patent. To

20   the extent Plaintiffs identify some method by which the Accused Products "provide instructions to

21   the NAS device for controlling an encryption type used in the secure region" of the NAS device

22   (they have not), Viasat could design its systems to remove any such means for "provid[ing]

23   instructions to the NAS device for controlling an encryption type used in the secure region" of the

24   NAS device." Viasat has no need for "controlling an encryption type used in the secure region" of

25   the NAS device and no Viasat customer has requested or required "controlling an encryption type

26   used in the secure region" of the NAS device. Viasat has no need for no need for multiple types of

27   encryption, let alone the ability to control which of those types is used. This would be a

28

1    commercially acceptable non-infringing alternative because it would not cause a NAS device to lack

2    any "NAS regional encryption type control" feature that Viasat's customers demand.

3    As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not "provide

4    instructions to the NAS device for controlling an amount of data stored in the secure region" of the

5    NAS device; therefore, the Accused Products are a non-infringing alternative to the '667 patent. To

6    the extent Plaintiffs identify some method by which the Accused Products "provide instructions to

7    the NAS device for controlling an amount of data stored in the secure region" of the NAS device

8    (they have not), Viasat could design its systems to remove any such means for "provid[ing]

9    instructions to the NAS device for controlling an amount of data stored in the secure region" of the

10   NAS device." Viasat has no need for "controlling an amount of data stored in the secure region" of

11   the NAS device and no Viasat customer has requested or required "controlling an amount of data

12   stored in the secure region" of the NAS device. This would be a commercially acceptable non-

13   infringing alternative because, as explained above, a NAS device that did not receive instructions to

14   control an amount of data stored in a secure region is not a NAS device that lacks a feature Viasat's

15   customers demand.

16   As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not include

17   "portable data storage devices" from Viasat; therefore, the Accused Products offered by Viasat are

18   a non-infringing alternative to the '400 patent. To the extent Plaintiffs identify some method by

19   which seatback devices that some Viasat customers employ on some aircraft are "portable" (they

20   are not), third-party providers of seatback devices had the ability to design its seatback devices to

21   eliminate any characteristics making those devices "portable." This would be a commercially

22   acceptable non-infringing alternative because seatback devices are not intended to be "portable"

23   within the meaning of the '400 patent claims, but rather intended to remain fixed in the seatback.

24   As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not "obtain a

25   unique identifier from the portable data storage device, wherein the unique identifier is specific to

26   the portable data storage device and is concealed by the portable data storage device;" therefore, the

27   Accused Products are a non-infringing alternative to the '400 patent. Viasat does not require any

28   "unique identifier" that "is *concealed* by the portable data storage device" as part of its system, and

1   Viasat does not instruct any airline passenger or airline customer to "*conceal*" any identifier on any

2   personal electronic device. To the extent Plaintiffs identify some method by which the user devices

3   or seatback devices "conceal[]" a "unique identifier" that Viasat allegedly obtains (they have not),

4   third-party providers of user devices or seatback devices had the ability to design its devices such

5   that they do not conceal those unique identifiers.  To the extent Plaintiffs identify some method by

6   which the processors in Viasat systems "obtain a unique identifier from the portable data storage

7   device, wherein the unique identifier is specific to the portable data storage device and is concealed

8   by the portable data storage device," it would be a trivial change for Viasat to instead obtain and use

9   any other unique identifier of the device that is not "concealed" by the device. This would be a

10  commercially acceptable non-infringing alternative because (1) Viasat has no need to identify or

11  track individual user devices or seatback devices for purposes of media content distribution using a

12  "concealed" identifier, (2) Viasat's customers do not require or request systems that track individual

13  user devices or seatback devices using a "concealed" identifier, and (3) Viasat does not instruct its

14  airline customers, airline passengers, or any other users of Viasat systems to "conceal" any

15  identifiers unique to their devices in order to make Viasat's systems commercially viable.

16          As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not

17  "authenticate the portable data storage device, using at least the unique identifier, by communicating

18  with the remote trusted server over the second data interface;" therefore, the Accused Products are

19  a non-infringing alternative to the '400 patent. To the extent Plaintiffs identify some method by

20  which the processors "authenticate" user devices or seatback devices using the aforementioned

21  "concealed" "unique identifier" or to conduct that authentication by "communicating with the

22  remote trusted server over the second data interface" to provide that "concealed" "unique identifier"

23  to the "remote trusted server," Viasat had the ability to design its processors such that they do not

24  authenticate any user device or seatback device in this fashion. Viasat could use a unique identifier

25  that was not the aforementioned "concealed" unique identifier, and provide that non-concealed

26  unique identifier for authentication. Viasat also had the ability to use a DRM system that does not

27  communicate with any "remote trusted server" for authentication purposes. Viasat could also use a

28  third-party DRM system that does not uniquely identify a device and communicate with a remote

1    trusted server before the user is allowed to stream content from the media server.  This would be a

2    commercially acceptable non-infringing alternative because Viasat has no need to identify or track

3    individual user devices or seatback devices for purposes of media content distribution using a remote

4    server that authenticates user devices based on a concealed device identifier; this is not a method of

5    authentication that Viasat's customers demand, and Viasat's devices do not need to offer this feature

6    to be commercially viable.

7         As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not "in

8    response to the authentication, provide to the portable data storage device an encrypted first media

9    content and a corresponding access key;" therefore, the Accused Products are a non-infringing

10   alternative to the '400 patent. To the extent Plaintiffs identify some method by which the processors

11   provide "an encrypted first media content" or provide "a corresponding access key," Viasat had the

12   ability to design its processors such that they do not provide encrypted media content or access key

13   to any user device or seatback device.  This would be a commercially acceptable non-infringing

14   alternative because Viasat's customers do not request this feature and Viasat's products do not

15   require this feature to be commercially viable.

16        As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not have a

17   kiosk located in a "public environment"; therefore, the Accused Products are a non-infringing

18   alternative to the '400 patent. To the extent Plaintiffs identify some method by which the IFE

19   system, Viasat's Network Access Unit ("NAU"), Viasat's Mobile Application Server, Viasat S4

20   Server, or Gateway system were located in a "public environment," Viasat had the ability to install

21   all or some modules of the IFE system, Viasat's Network Access Unit ("NAU"), Viasat's Mobile

22   Application Server, Viasat S4 Server, or Gateway system in a private environment. Viasat could,

23   for example, install these devices in an area of an airplane that is not accessible to the general

24   public.  This would be a commercially acceptable non-infringing alternative because Viasat has no

25   need to place any of these modules in an environment accessible to the general public, and no Viasat

26   customer has requested or required that these modules be located in an environment accessible to

27   the general public.

28

Viasat further responds to this Interrogatory as follows: Pursuant to Federal Rule of Civil Procedure 33(d), Viasat has produced or is producing documents responsive to this Interrogatory, including documents relating to Viasat customers' requests for proposals (RFPs). These documents further demonstrate that products lacking the functionalities described above are and would be commercially acceptable. The burden of ascertaining further information responsive to this Interrogatory from those documents is substantially the same for Plaintiffs as it is for Viasat.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 14 (2/6/2025):**

Viasat incorporates by reference its prior objections and response to this Interrogatory. Subject to and without waiving the foregoing response and objections, Viasat hereby supplements its objections and response to state that each of the following would be non-infringing alternatives to the claims of the Asserted Patents:

As explained in Viasat's response to Interrogatory No. 8, the Accused Products do not infringe the Asserted Patents. Therefore, the Accused Products are non-infringing alternatives to the asserted claims of the Asserted Patents.

The prior art listed in Viasat's Invalidity Contentions for the '400 Patent pre-dates that patent and could not infringe any valid claim of the '400 Patent. This prior art is therefore also a non-infringing alternative to the asserted claims of the '400 Patent. These non-infringing alternatives include the Verimatrix Content Access System (including its Content Security Manager and MultiRights system), the eMusic digital kiosk (including the Intertrust Digibox and its Marlin/ExpressPlay DRM), and the Cryptography Research CryptoFirewall.

The prior art listed in Viasat's Invalidity Contentions for the '667 Patent pre-dates that patent and could not infringe any valid claim of the '667 Patent. This prior art is therefore also a non-infringing alternative to the asserted claims of the '667 Patent. These non-infringing alternatives include the TiVo Premiere, the DirecTV VOD Services, HR23 DVR, and Genie DVR, the DISH VOD Services, ViP622 DVR, ViP722k, Hopper DVR, and Joey Receivers, the WD My Book AV DVR Expander, the WD TV Live Plus, and SCSA's DRM solution/Project Phenix/Vidity.

As noted in Viasat's response to Interrogatory No. 8, the Accused Products are not a "media streaming system comprising . . . one or more hardware processors configured to . . . receive an

indication of the NAS device having a secure region"; therefore, the Accused Products are a non-infringing alternative to the '667 patent. Viasat also does not practice, and does not contribute to or induce others to practice, a "method of transmitting media content from a media streaming system, the method comprising . . . receiving an indication of the NAS device having a secure region"; Viasat's methods of operation are therefore non-infringing alternatives to the '667 patent. Plaintiffs allege that the boolean value "encrypted" included within the structure MediaSdInfo is the claimed "indication" because, "[w]hen true, this indicates the presence of a secure region." This boolean value is not the claimed "indication" for the reasons noted in Viasat's response to Interrogatory No. 8, but to the extent Plaintiffs continue to allege that it is, Viasat could design its systems and revise its methods of operation to remove this value. As an initial matter, in mobility (IFE) use cases, the "encrypted" boolean is always set to false. As such, the variable could be removed without any effect to the rest of the system and extremely minimal development time or cost. In residential Stream use cases, all users make use of Viasat "Hub" devices, which are hard drives that are pre-configured by Viasat to be encrypted. Therefore, the use of a variable indicating whether the drive is encrypted is redundant. Viasat could remove the "encrypted" boolean without affecting the actual security of its system, and such a change would require minimal development time and cost. These alternative would be non-infringing on Plaintiffs' own theory because there would no longer be any alleged "indication" (i..,e. the "encrypted" boolean when set to true) sent or received by any device in the system. This alternative would also be commercially acceptable because it would not have any effect on the functionality of Viasat's systems from an end user's perspective, nor would it remove any security measures from Viasat's systems. It would take an estimated four weeks of development time, at most, with a development cost of approximately $100,000 to implement these changes and remove the "encrypted" boolean variable entirely from the source code.

As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not have an NAS device with a "secure region comprising a buffer for streaming media on a separate display device on the local area network"; therefore, the Accused Products are a non-infringing alternative to the '667 patent. Plaintiffs allege that the alleged NAS devices have the claimed "secure regions" because they are allegedly encrypted. These devices do not have the claimed "secure regions" for

the reasons noted in Viasat's response to Interrogatory No. 8, including because, among other reasons, an *entire* device is not a "*region*" of that device. But to the extent Plaintiffs continue to allege that they do infringe, Viasat could design its systems to ensure that these devices are unencrypted. This alternative would be non-infringing because the alleged NAS devices would not include the alleged "secure regions," in the (incorrect) way Plaintiffs are alleging that this claim limitation is met. This alternative would be commercially acceptable because the content itself (as opposed to any alleged "region" or a device where content may be stored) would still make use of DRM security on that content, and therefore be unusable in its stored form. Alternatively files could still be encrypted individually (rather than be stored on an encrypted drive or any particular "region" of a drive). In either case, this alternative would have, at most, a minimal effect on the functionality of Viasat's systems from an end user's perspective. It would take an estimated three months with a development cost of no more than $500,000 to implement these changes.

As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not "cause the NAS device to use encryption that secures the digital content to the secure region" of the NAS device; therefore, the Accused Products are a non-infringing alternative to the '667 patent. Plaintiffs allege that the alleged NAS devices are encrypted, and that they therefore "use encryption [to] secure[] the digital content to the[ir] secure region." These devices do not do so for the reasons noted in Viasat's response to Interrogatory No. 8, but to the extent Plaintiffs continue to allege that they do, Viasat could design its systems to ensure that these devices are unencrypted. This alternative would be non-infringing because, among other reasons, the alleged NAS devices would not "use" encryption at all. This alternative would be commercially acceptable because the content would still make use of DRM security and therefore be unusable in its stored form. Alternatively files could still be encrypted individually (rather than be stored on an encrypted drive or any particular "region" of a drive). In either case, this alternative would have, at most, a minimal effect on the functionality of Viasat's systems from an end user's perspective. It would take an estimated three months with a development cost of no more than $500,000 to implement these changes.

As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not "provide instructions to the NAS device for controlling an encryption type used in the secure region" of the

1  NAS device; therefore, the Accused Products are a non-infringing alternative to the '667 patent.

2  Plaintiffs allege that the alleged NAS devices are encrypted, and that they therefore "control[] an

3  encryption type used in the secure region." These devices do not do infringe for the reasons noted

4  in Viasat's response to Interrogatory No. 8, but to the extent Plaintiffs continue to allege that they

5  do, Viasat could design its systems to ensure that these devices are unencrypted. This alternative

6  would be non-infringing because the alleged NAS devices would not "control" any encryption at

7  all. This alternative would be commercially acceptable because the content would still make use of

8  DRM security and therefore be unusable in its stored form. Alternatively files could still be

9  encrypted individually (rather than be stored on an encrypted drive or any particular "region" of a

10 drive). In either case, this alternative would have, at most, a minimal effect on the functionality of

11 Viasat's systems from an end user's perspective. It would take an estimated three months with a

12 development cost of no more than $500,000 to implement these changes.

13       As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not include

14 "portable data storage devices" from Viasat; therefore, the Accused Products offered by Viasat are

15 a non-infringing alternative to the '400 patent. Plaintiffs allege that end-user devices, such as

16 cellphones and tablets, constitute "portable data storage devices" and also accuse seatback devices

17 of being "portable data storage devices." These devices are not "portable data storage devices" for

18 the reasons noted in Viasat's response to Interrogatory No. 8, but to the extent Plaintiffs identify

19 some method by which seatback devices that some Viasat customers employ on some aircraft are

20 "portable" (they are not), airlines and third-party providers of seatback devices had the ability to

21 design their seatback devices to eliminate any characteristics making those devices "portable," such

22 as simply manufacturing the seatback devices and seats to be more securely fastened together. This

23 would be a commercially acceptable non-infringing alternative because (1) seatback devices are not

24 intended to be "portable" within the meaning of the '400 patent claims, but rather intended to remain

25 fixed in the seatback, and because (2) Viasat's customers do not require or request that the seatbacks

26 be "portable" such that passengers can easily carry them and move about.

27       As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not "obtain a

28 unique identifier from the portable data storage device, wherein the unique identifier is specific to

1    the portable data storage device and is concealed by the portable data storage device;" therefore, the

2    Accused Products are a non-infringing alternative to the '400 patent. Plaintiffs accuse a litany of

3    source code variables, such as UIDs, GUIDs, MAC addresses, Vualto tokens, etc., of constituting

4    "unique identifiers" that are "specific to" and "concealed by" the portable data storage device. For

5    the reasons noted in Viasat's response to Interrogatory No. 8, Viasat does not require any "unique

6    identifier" that "is *concealed* by the portable data storage device" as part of its system, and Viasat

7    does not instruct any airline passenger or airline customer to "*conceal*" any identifier on any

8    personal electronic device. Moreover, for the reasons noted in Viasat's response to Interrogatory

9    No. 8, Viasat does not require any "unique identifier" that "is *specific to* the portable data storage

10   device" as part of its system. To the extent Plaintiffs identify some method by which the user devices

11   or seatback devices "conceal[]" a "unique identifier" that Viasat allegedly obtains (they have not),

12   third-party providers of user devices or seatback devices had the ability to design its devices such

13   that they do not conceal those unique identifiers.  To the extent Plaintiffs identify some method by

14   which the processors in Viasat systems "obtain a unique identifier from the portable data storage

15   device, wherein the unique identifier is specific to the portable data storage device and is concealed

16   by the portable data storage device," it would be a trivial change for Viasat to instead replace the

17   variable in the source code with any other identifier of the device that is not "concealed" by the

18   device, or to simply broadcast rather than conceal any allegedly-concealed value that is currently

19   used. This would require few if any changes; indeed, Plaintiff's own infringement contentions list a

20   plethora of identifiers that are not concealed by the end-user device. Viasat also has the ability to

21   publish the accused source code variable—such as the UUID, GUID, SessionID, etc.—such that the

22   identifier would no longer be "concealed" without generating any privacy compliance, or functional

23   issues.  It would take an engineer less than two hours to code such an API, and less than two days

24   to fully test and deploy the API. These would be commercially acceptable non-infringing

25   alternatives because (1) Viasat has no need to identify or track individual user devices or seatback

26   devices for purposes of media content distribution using a "concealed" identifier, (2) Viasat's

27   customers do not require or request systems that track individual user devices or seatback devices

28   using a "concealed" identifier, (3) Viasat does not instruct its airline customers, airline passengers,

or any other users of Viasat systems to "conceal" any identifiers unique to their devices in order to make Viasat's systems commercially viable, (4) Viasat has no need to identify or track individual user devices or seatback devices for purposes of media content distribution using an identifier that is "specific to" and "concealed by" a user device or seatback device, (5) Viasat's customers do not require or request systems that track individual user devices or seatback devices using an identifier that is "specific to" and "concealed by" a user device or seatback device, and (6) Viasat does not instruct its airline customers, airline passengers, or any other users of Viasat systems to generate any identifiers that are "specific to" and "concealed by" a user device or seatback device in order to make Viasat's systems commercially viable.

As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not "authenticate the portable data storage device, using at least the unique identifier, by communicating with the remote trusted server over the second data interface;" therefore, the Accused Products are a non-infringing alternative to the '400 patent. Plaintiffs accuse "Viasat AWS servers, content provider servers, Viasat data center, content management server" and "VCDS servers (e.g., Core Node, Smarts, Web Proxy, VCDS AWS Account) and content provider servers" as being the "remote trusted server." Viasat has no "kiosk" that "authenticate[s] the portable data storage device, using at least the unique identifier, by communicating with the remote trusted server" for the reasons noted in Viasat's response to Interrogatory No. 8, but to the extent Plaintiffs identify some method by which the IFE back-end "authenticate[s]" user devices or seatback devices using the aforementioned "concealed" "unique identifier" or conducts that authentication by "communicating with the remote trusted server over the second data interface" to provide that "concealed" "unique identifier" to the "remote trusted server," Viasat had the ability to design the IFE back-end such that it does not authenticate any user device or seatback device in this fashion. Viasat could use a unique identifier that was not the aforementioned "concealed" unique identifier, and provide that non-concealed unique identifier for authentication. Viasat also had the ability to use a DRM system that does not communicate with any "remote trusted server" for authentication purposes; in fact, Viasat already does so. Viasat has long used local FairPlay and WideVine implementations on aircraft for DRM. Viasat's recent deprecation of the PlayReady DRM system—from the cloud-based

PlayReady DRM server to the local WideVine DRM server—serves as evidence of just how easily Viasat can (and did) replace remote servers with local servers. It would only take **Viasat less than 10 lines of code and an estimated 2 days** to update its new player to set its default preference to WideVine over PlayReady. This is a commercially acceptable non-infringing alternative because passengers receive an identical (and sometimes better) user experience, whereby user devices can still obtain DRM licenses from local DRM servers even if a commercial airplane travels through a dead zone without Internet connectivity. Viasat could also use a third-party DRM system that does not uniquely identify a device and communicate with a remote trusted server before the user is allowed to stream content from the media server.  This would be a commercially acceptable non-infringing alternative because Viasat has no need to identify or track individual user devices or seatback devices for purposes of media content distribution using a remote server that authenticates user devices based on a concealed device identifier; this is not a method of authentication that Viasat's customers demand, and Viasat's devices do not need to offer this feature to be commercially viable.

As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not "in response to the authentication, provide to the portable data storage device an encrypted first media content and a corresponding access key;" therefore, the Accused Products are a non-infringing alternative to the '400 patent. Plaintiffs accuse Viasat's third-party DRM license servers, such as Apple FairPlay DRM and the Vualto token provider, that "provide a license to authenticated requests (i.e. with a valid token)" as providing the "corresponding access key."  For the reasons stated in Viasat's response to Interrogatory No. 8, Viasat does not have a "kiosk" that "provide[s] to the portable data storage device an encrypted first media content and a corresponding access key." To the extent Plaintiffs identify some method by which the processors provide "an encrypted first media content" or provide "a corresponding access key," Viasat had the ability to design its processors such that they do not provide encrypted media content or access key to any user device or seatback device. It would take **two engineers an estimated two weeks to 3 months** to implement these changes. This would be a commercially acceptable non-infringing alternative because Viasat's customers do not request that the encrypted media content or the access key be provided by Viasat

1  in response to authenticating a device and Viasat's products do not require this feature to be

2  commercially viable.

3      As noted in Viasat's response to Interrogatory No. 8, the Accused Products do not have a

4  kiosk located in a "public environment"; therefore, the Accused Products are a non-infringing

5  alternative to the '400 patent. To the extent Plaintiffs identify some method by which the IFE

6  system, Viasat's Network Access Unit ("NAU"), Viasat's Mobile Application Server, Viasat S4

7  Server, or Gateway system were located in a "public environment," Viasat had the ability to install

8  all or some modules of the IFE system, Viasat's Network Access Unit ("NAU"), Viasat's Mobile

9  Application Server, Viasat S4 Server, or Gateway system in a non-public environment. While the

10  S4 server is already located in the private avionics bay on the aircraft, which is not a public

11  environment, airlines could, for example, install yet another lock or layer of security on the avionics

12  bay, to the extent Plaintiffs contend this location is somehow accessible to the public. This would

13  be a commercially acceptable non-infringing alternative because (1) Viasat has no need to place any

14  of these modules in a location accessible to the general public, and (2) no Viasat customer has

15  requested or required that these modules be placed in a location accessible to the general public.

16      Viasat further responds to this Interrogatory as follows: Pursuant to Federal Rule of Civil

17  Procedure 33(d), Viasat has produced documents responsive to this Interrogatory, including

18  documents relating to Viasat customers' requests for proposals (RFPs). These documents further

19  demonstrate that products lacking the functionalities described above are and would be

20  commercially acceptable. The burden of ascertaining further information responsive to this

21  Interrogatory from those documents is substantially the same for Plaintiffs as it is for Viasat.

22  **INTERROGATORY NO. 15:**

23      Correlate each source code folder that Viasat made available (or will make available) for

24  review by Plaintiffs with the corresponding functionality of Viasat's systems (for example, by

25  mapping each source code folder with a block diagram provided in VIASAT_00008705) and the

26  location and type of the computing device that executes the source code (e.g., ground server, plane

27  server, user device, seat-back device, etc.).

28

THIRD SUPPLEMENTAL OBJECTIONS & RESPONSES TO PLAINTIFFS'
SECOND SET OF INTERROGATORIES

1   **RESPONSE TO INTERROGATORY NO. 15:**

2       Viasat incorporates by reference all of its General Objections as if fully set forth herein.

3   Viasat objects to this Interrogatory as compound and containing multiple subparts asserted in a

4   single Interrogatory.  Viasat further objects to this Interrogatory on the grounds it is overbroad,

5   unduly burdensome, vague, and ambiguous, including to the extent is seeks information that is

6   equally accessible to Plaintiffs.

7       Subject to and without waiving the foregoing objections, Viasat responds as follows: Subject

8   to and without waiving the foregoing objections, Viasat responds as follows: Pursuant to Federal

9   Rule of Civil Procedure 33(d), Viasat will produce documents responsive to this Interrogatory and

10  the burden of ascertaining further information responsive to this Interrogatory is substantially the

11  same for Plaintiffs as it is for Viasat.

12      Viasat's investigation and discovery are ongoing.  Viasat reserves all rights to amend or

13  supplement its objections and/or responses as its investigation continues.

14  **FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 15 (12/13/2024):**

15      Based on its investigation to date and subject to and without waiving any Objections to

16  Definitions and Instructions, General Objections, or specific objections in its prior responses, Viasat

17  supplements its response to this Interrogatory as follows:

18      Viasat repeats and incorporates herein its Objections to this Interrogatory, including Viasat's

19  objections to Plaintiff's Definitions and Instructions, Viasat's General Objections, and Viasat's

20  specific objections in its prior responses to this request. As Viasat previously noted, the

21  Interrogatory is overbroad, unduly burdensome, vague, and ambiguous, including in its request to

22  "[c]orrelate" code with "corresponding functionality" or with the "location" of  any and every

23  "computing device" that may execute code, including third-party computing devices; because the

24  Interrogatory appears to request information more appropriately obtained through analysis of the

25  source code itself or through depositions of knowledgeable engineers; and to the extent the

26  Interrogatory purports to request discovery on non-accused functionality, including functionalities

27  and block diagrams not mentioned in Plaintiffs' infringement contentions. Viasat further

28  supplements its response to this Interrogatory as follows:

Viasat provides the following additional information on folders of source code that have been available for inspection in this litigation, all of which have been available for inspection since early 2024—and all of which have actually been inspected by Plaintiffs over multiple days, cited in Plaintiffs' infringement contentions, and explained in detail in documentation Viasat already produced (and that Plaintiffs already cited in their infringement contentions), without any claim by Plaintiffs that the source code was impossible to understand without further information responsive to this Interrogatory. Plaintiffs are free to analyze code, print code, and use code in depositions subject to the Protective Order in this litigation. To date Plaintiffs have not taken any depositions in an effort to understand the Accused Products or to diligently pursue their allegations of infringement. Viasat reserves all rights.



Case No. 5:22-cv-4376
THIRD SUPPLEMENTAL OBJECTIONS & RESPONSES TO PLAINTIFFS'
SECOND SET OF INTERROGATORIES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THIRD SUPPLEMENTAL OBJECTIONS & RESPONSES TO PLAINTIFFS'
SECOND SET OF INTERROGATORIES



Additionally, pursuant to Federal Rule of Civil Procedure 33(d), Viasat identifies the following materials from which the answer to this interrogatory may be derived or ascertained: VIASAT_00005782, including at VIASAT_00005790-5801; VIASAT_00008738, including at VIASAT_00008749-8763 and VIASAT_00008759-8761; VIASAT_00005782, including at VIASAT_00005798; VIASAT_00006471, including at VIASAT_00006499.

Viasat's investigation and discovery are ongoing. Viasat reserves all rights to amend or supplement its objections and/or responses as its investigation continues.

Case No. 5:22-cv-4376
THIRD SUPPLEMENTAL OBJECTIONS & RESPONSES TO PLAINTIFFS'
SECOND SET OF INTERROGATORIES

1  DATED:  February 6, 2025                    QUINN EMANUEL URQUHART &
2                                              SULLIVAN, LLP

3

4                                              By _____/s/ Patrick Curran_____
                                                    Patrick Curran
5                                                   Counsel for *Defendant Viasat Inc.*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 6, 2025, I caused a copy of the foregoing document to be served on the following counsel for Plaintiffs via email:

L. Kieran Kieckhefer:     KKieckhefer@gibsondunn.com

Ahmed ElDessouki:       aeldessouki@gibsondunn.com

Lillian J. Mao:             LMao@gibsondunn.com

*/s/ Alicia Lai*
Alicia Lai
Counsel for *Defendant Viasat Inc.*