UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDISK3D IP HOLDINGS LTD., et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>VIASAT, INC.,<br><br>    Defendant. | Case No. 22-cv-04376-HSG<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND INFRINGEMENT CONTENTIONS**<br><br>Re: Dkt. No. 146 |

Pending before the Court is Plaintiffs SanDisk 3D IP Holdings Ltd., SanDisk Technologies LLC, SanDisk Storage Malaysia SDN BHD, and Sandisk Technologies, Inc.'s (collectively, "Plaintiffs") motion for leave to amend their infringement contentions. Dkt. No. 146 ("Mot."). The Court finds this matter appropriate for disposition without oral argument and takes it under submission. *See* Civil L.R. 7-1(b). For the following reasons, the Court **DENIES** Plaintiffs' motion.

**I.  BACKGROUND**

Plaintiffs are four companies: SanDisk 3D IP Holdings Ltd. ("SD3D"), SanDisk Technologies LLC ("SDT LLC"), SanDisk Storage Malaysia SDN BHD ("SDSM"), and Sandisk Technologies, Inc. ("SDT Inc.").[1] On November 8, 2023, Plaintiffs filed the currently operative first amended complaint against Defendant Viasat ("Defendant"), alleging infringement of U.S.

---

[1] When this case was initially filed on July 28, 2022, Plaintiffs were SD3D, SDT LLC, SDSM, Western Digital Ireland, Ltd. ("WDI"), and Western Digital Technologies, Inc. ("WDT"). *See* FAC. SDT Inc. was not a named plaintiff at the time. *Id*. On September 20, 2024, Plaintiffs filed a motion to substitute, seeking to substitute SDT LLC for WDI and SDT Inc. for WDT. Dkt. No. 121. The Court granted Plaintiffs' motion after finding WDT transferred its rights in the Asserted Patents to SDT Inc. and WDI "merged with and into" SDT LLC. Dkt. No. 130 at 1–2. WDT and WDI were subsequently terminated from the docket, and SDT Inc. was added as a plaintiff. *Id*. at 3.

Patent Nos. 9,424,400 (the "'400 Patent") and 10,447,667 (the "'667 Patent") (collectively, the "Asserted Patents").[2]  Dkt. No. 73 ("FAC") ¶ 1.  Plaintiffs accuse Defendant of infringing independent claims 1 and 9 and dependent claims 2, 6, 8, 10, 13 and 17 of the '400 Patent and independent claims 1 and 11 and dependent claims 2–7 and 12–16 of the '667 Patent.  Dkt. No. 145.

The initial case management conference was held on December 19, 2023.  Dkt. No. 82.  Under the Patent Local Rules, Plaintiffs' infringement contentions and the accompanying document production were due by January 2, 2024.  *See* Patent L.R. 3-1, 3-2.  Plaintiffs had already served their initial infringement contentions on February 23, 2023.  Mot. at 5.  Throughout February and March of 2024, Plaintiffs inspected Defendant's source code.  Dkt. No. 153-1 ("Curran Decl.") ¶¶ 3–5; *see also* Opp. at 12.  Plaintiffs served amended infringement contentions on March 22, 2024, "which relied on [Defendant's] initial productions of technical documents and source code . . . ."  Mot. at 5; *see also* Dkt. No. 146-1 ("Eldessouki Decl.") ¶ 2.  Since March 2024, Defendants have not produced any new source code.  *See* Curran Decl. ¶ 3.

The Court held a claim construction hearing on August 27, 2024 and issued its claim construction order on September 20, 2024.  Dkt. No. 120.  On October 2, 2024, Plaintiffs served a Second Set of Interrogatory Requests, which "specifically requested a mapping of [Defendant's] source code to [Defendant's] technical documentation in order to confirm, for example, what functionality was performed at which location."  Mot. at 7; *see also* Eldessouki Decl. ¶ 8.  Defendant provided the requested source code mapping on December 13, 2024.[3]  *See* Eldessouki Decl. ¶ 8.

---

[2] Plaintiffs also previously asserted U.S. Patent No. 8,504,834 (the "'834 Patent").  FAC ¶ 1.  On May 24, 2024, Defendant moved to dismiss Plaintiffs' '834 Patent infringement claim.  Dkt. No. 40.  The Court granted Defendant's motion after finding the '834 Patent was "directed to a patent-ineligible abstract idea" with "no inventive concept." Dkt. No. 75 at 10.

[3] Plaintiffs argue that the source code mapping Defendant provided on December 13, 2024 was "necessary to fully analyze the impact of the Court's claim construction order on [Plaintiffs'] infringement contentions." Mot. at 13.  Defendant, however, contends that the "'mapping' request was a pretext" since the "interrogatory response says nothing relevant to the specific amendments being proposed here."  Opp. at 7.  The Court cannot knowledgeably assess whether Defendant's source code mapping was in fact necessary for Plaintiffs to amend their infringement contentions, because neither party attached the interrogatory response at issue as an exhibit to their briefs.

## II. LEGAL STANDARD

The Patent Local Rules permit amendment to initial infringement allegations "only by order of the Court upon a timely showing of good cause." Patent L.R. 3-6. "[A]bsent undue prejudice to the non-moving party," good cause may be demonstrated through, among other things, "[a] claim construction by the Court different from that proposed by the party seeking amendment . . . ." *Id*. The "good cause inquiry is two-fold: (1) whether the moving party was diligent in amending its contentions; and (2) whether the non-moving party would suffer prejudice if the motion to amend were granted." *Wisk Aero LLC v. Archer Aviation Inc.*, No. 3:21-CV-02450-WHO, 2022 WL 5007912, at *2 (N.D. Cal. Oct. 4, 2022). "The moving party has the burden to establish diligence, but the court has discretion to grant leave to amend 'even in the absence of diligence so long as there is no prejudice to the opposing party.'" *Id*. (citation omitted). "Prejudice can be shown when there will be disruptions to the case schedule or other court orders, and when a party changes its infringement theories or requires its opposition to prepare additional defenses . . . ." *Id*. "Extra work alone does not support a finding of prejudice." *Id*. (citation omitted).

"The rules are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *Radware Ltd. v. F5 Networks, Inc.*, No. C-13-02021-RMW, 2014 WL 3728482, at *2 (N.D. Cal. 2014). "However, the expectation that a patentee would have a precise sense of its infringement theory at the outset' is unrealistic where the patentee may not have been able to get access to the necessary information because it is hidden from view (for example, source code)." *Id*. (quotation omitted). "Thus, the good cause standard of Patent L.R. 3–6 'serves to balance the parties' rights to develop new information in discovery along with the need for certainty in legal theories at the start of the case.'" *Id*. (citation omitted).

## III. DISCUSSION

### A. Plaintiffs' Diligence In Seeking Amendment

To establish good cause, Plaintiffs "must first demonstrate that [they] acted diligently in discovering the basis for [their] proposed amendments and in seeking leave to amend." *Slot

3

*Speaker Techs., Inc. v. Apple, Inc.*, No. 13-CV-01161-HSG(DMR), 2017 WL 1278744, at *4 (N.D. Cal. Apr. 6, 2017). Plaintiffs argue there is good cause to amend their infringement contentions "based on the Court's claim constructions that differed from those proposed by [Plaintiffs] and additional discovery that [Plaintiffs] diligently pursued from [Defendant] after the date of the Court's claim construction order." Mot. at 12. More specifically, Plaintiffs argue that their "original infringement contentions were based on the plain and ordinary meaning of the disputed claim terms" and their amendments are a response to the Court's "constru[al] [of] five of the eight terms in a way that neither party had proposed, two terms in the way that [Defendant] had proposed, and one term in the way that [Plaintiffs] had proposed." Mot. at 5–6.

Plaintiffs mischaracterize the claim construction order. The Court construed eight terms—five from the '400 Patent and three from the '667 Patent.[4] The Court ultimately adopted Defendant's proposed construction for two disputed claim terms—"authenticate the portable data storage device, using at least the unique identifier" ('400 Patent) and "receive an indication of the NAS device having a secure region" ('667 Patent)—and Plaintiffs' proposed construction for three disputed claim terms—"kiosk" ('400 Patent),[5] "public environment" ('400 Patent)[6], and "access to the secure region is controlled by the media streaming system" ('667 Patent). The Court construed only two terms—"portable data storage device" ('400 Patent) and "provide to the portable data storage device . . . a corresponding access key" ('400 Patent)—in a way neither party proposed.

The Court finds that Plaintiffs were diligent in seeking to amend their infringement

---

[4] The parties stipulated to a construction for the term "secure region" ('667 Patent) prior to the claim construction order, based on their discussion with the Court at the hearing. Dkt. No. 120 at 18.
[5] Although Plaintiffs took the position at claim construction that the preamble was not limiting, they alternatively argued that if the Court found the preamble limiting, "'kiosk' should be construed as 'a device whose user interface is used by consumers.'" Dkt. No. 120 at 6; *see also* Dkt. No. 103 at 13 (quoting Dkt. No. 73-1 ("'400 Patent") at 6:36–37). The Court ultimately found the preamble limiting and adopted Plaintiffs' proposed construction. Dkt. No. 120 at 8–10. So Plaintiffs cannot now credibly claim to be surprised by the Court's construction.
[6] With respect to the term "public environment," during the claim construction hearing, Plaintiffs stated their "definition of 'public environment' within the context of [the '400 Patent]" would be "an environment accessible to the public." Dkt. No. 117 at 76:4–19. That is the construction the Court adopted. Dkt. No. 120 at 17–18.

4

contentions with respect to the terms "portable data storage device" and "provide to the portable data storage device . . . a corresponding access key" (collectively, the "Group 1 Terms"). "When a court adopts its own construction, it will often . . . measur[e] diligence from the date on which the court issues its claim construction order." *NXP USA, Inc. v. Impinj, Inc.*, No. 2:20-CV-01503-JHC, 2023 WL 197278, at *3 (W.D. Wash. Jan. 17, 2023) (quotations omitted). The Court did not adopt either party's proposed construction for the Group 1 Terms, and Plaintiffs' diligence is therefore measured from September 20, 2024—the date of the Court's claim construction order. *See Impinj, Inc. v. NXP USA, Inc.*, No. 19-CV-03161-YGR, 2022 WL 2125135, at *4 (N.D. Cal. Jan. 14, 2022) ("Courts here consider diligence from the date of the claim construction order 'where the moving party's proposed amendments addressed a construction that neither party proposed[.]'") (quoting *Slot Speaker Techs., Inc.*, 2017 WL 1278744, at *4); *Radware Ltd.*, 2014 WL 3728482, at *3 ("[I]t is true that defendants may not have anticipated the court's own construction of certain terms."). The Court finds Plaintiffs acted diligently in amending their infringement contentions to address the Court's construction of the Group 1 Terms. Plaintiffs sought additional discovery within two weeks of the Court's order "to fully analyze the impact . . . on [Plaintiffs'] infringement contentions, and after receiving the requested discovery from Defendant, Plaintiffs "served [Defendant] with clean and redline copies of the proposed amendments . . . ." Mot. at 7. Plaintiffs have therefore shown diligence within the meaning of the Local Rules with respect to the Group 1 Terms.[7] *See Radware Ltd.*, 2014 WL 3728482, at *2 ("[Plaintiff's] three month delay does not undermine the notice function of infringement

---

[7] While the Patent Local Rules create their own standard for assessing a party's diligence, the Court notes that the record reflects Plaintiffs' lack of diligence in a broader sense. Although Plaintiffs claim they needed Defendant's source code mapping to "clarify the support for [their] infringement theories as a result of the claim construction order,]" Plaintiffs had access to Defendant's source code in February and March of 2024. Plaintiffs do not explain why their prior source code inspections were insufficient to enable them to clarify their infringement theories before December 2024, or why they did not request a source code inspection after March 2024. Moreover, Plaintiffs knew there was a risk that the Court would not adopt their proposed constructions, *see Slot Speaker Techs.*, 2017 WL 1278744, at *3, but do not explain why they did not seek additional technical information between March 2024 and October 2024 that would allow them to clarify their infringement theories in the event the Court rejected their constructions. But even setting all of this aside and giving Plaintiffs the benefit of the doubt under the Patent Local Rules' more favorable conception of diligence, Plaintiffs' motion must still be denied given the prejudice to Defendants. *See infra* Section III.B.

5

contentions. [Plaintiff's] source code amendments directly derive from [defendant's] interrogatory response, so [defendant] should have assumed that [plaintiff's] source code amendments were forthcoming.").

Plaintiffs seek to further amend their infringement contentions to address the other six terms the Court construed: "authenticate the portable data storage device, using at least the unique identifier," "kiosk," "public environment," "secure region," "receive an indication of the NAS device having a secure region," "access to the secure region is controlled by the media streaming system" (collectively, the "Group 2 Terms"). But the Court did not adopt its own construction for any of the Group 2 Terms and instead adopted three of Plaintiffs' proposed constructions, two of Defendant's proposed constructions, and one stipulated construction. Dkt. No. 120 at 21.

Courts in this District have reiterated that "where the court adopts the opposing party's proposed claim construction, the moving party's diligence . . . is measured from the day the moving party received the proposed constructions, not the date of issuance of the Court's claim construction opinion." *Word to Info Inc. v. Facebook Inc.*, No. 15-CV-03485-WHO, 2016 WL 6276956, at *4 (N.D. Cal. Oct. 27, 2016), *aff'd*, 700 F. App'x 1007 (Fed. Cir. 2017); *see also Slot Speaker Techs., Inc. v. Apple, Inc.*, No. 13-CV-01161-HSG, 2017 WL 4354999, at *3 (N.D. Cal. Sept. 29, 2017) ("[C]ourts generally evaluate diligence from the time the parties exchanged proposed constructions. At that time, the parties are aware of the risk that the Court could adopt these constructions.") (quotations omitted). Accordingly, the Court measures Plaintiffs' diligence in amending their infringement contentions to address the Court's construction of the Group 2 Terms from February 15, 2024—the day the parties exchanged proposed constructions. Dkt. No. 86. Plaintiffs waited more than ten months to amend their infringement contentions after receiving Defendant's proposed constructions, and Plaintiffs do not provide any justification for their delay. "Numerous courts in this district have found a lack of diligence under similar circumstances . . . ." *Slot Speaker Techs., Inc.*, 2017 WL 1278744, at *3–*4 (collecting cases); *see also Word to Info Inc.*, 2016 WL 6276956, at *6 ("Courts have routinely found that a four [to] five month delay in amending infringement contentions is not diligent."); *Asia Vital Components Co. v. Asetek Danmark A/S*, No. 16-CV-07160-JST, 2018 WL 3108927, at *2 (N.D. Cal. June 25,

2018) (finding plaintiff was not diligent where plaintiff "did not file its motion for amendment until . . . nine months after [defendant] initially disclosed its proposed constructions"); *Slot Speaker Techs., Inc.*, 2017 WL 1278744, at *3 ("It is undisputed that [defendant] knew of [plaintiff's] proposed construction of that term as early as November 2015, and was aware, or at least should have been aware of the risk that [the district judge] could adopt [plaintiff's] proposal. [Defendant] did not account for this possibility in a timely fashion. Instead, it waited until January 2017, over a year after [plaintiff] first served its proposed construction, to seek leave to amend. As such, [defendant] did not act with diligence in discovering the basis for the amendments it now seeks leave to make."). The Court therefore finds Plaintiffs were not diligent in seeking to amend their infringement contentions to address the Court's construction of the Group 2 Terms.

Plaintiffs also seek to amend their infringement contentions to add "clarifying parentheticals" describing the accused products. Dkt. No. 157 at 8–9. Defendant argues that these amendments are Plaintiffs' attempt to "accuse new products of infringing the '400 Patent at the last minute." Dkt. No. 153 at 16. Plaintiffs counter that they are not "seeking to newly accuse [Defendant's] residential media streaming systems of infringing the '400 Patent[,]" claiming instead that the "addition of clarifying parentheticals on the first page of each chart illustrates that those products were identified as early as March 2024 for purposes of discovery and the parentheticals do not alter the scope of the infringement contentions in any way."[8] Dkt. No. 157 at 9. But despite arguing that they identified the accused products "as early as March 2024," Plaintiffs do not explain why they waited over nine months to add these "clarifying parentheticals" to their infringement contentions. *Id*. The Court therefore finds Plaintiffs were not diligent in seeking leave to amend their infringement contentions to add "clarifying parentheticals."

---

[8] The Court is skeptical that Plaintiffs previously identified Defendant's "residential applications" as infringing products. During the claim construction hearing, Plaintiffs repeatedly stated that the "accused devices are installed on airplane cabins." Dkt. No. 117 at 72; *see also id*. ("I think it's undisputed that they [accused products] are on airplanes."). Additionally, in construing the term "public environment," the Court found "no evidence that [Plaintiffs] intend[] to take [the] [] position [that any location accessible to any singular member (or subset of) the public, such as a person's house, is a 'public environment']." Dkt. No. 120 at 17. Based on that understanding, the Court "s[aw] no real dispute between the parties as to the scope of the claim." *Id*; *see also* Dkt. No. 117 at 73 ("[W]e don't want to hear, down the line, well, that person – he's part of the public. So it's in his house. That's a public environment . . . . That's all we're trying to head off there.").

7

### B. Prejudice to Defendant In Allowing Amendment

"When evaluating a motion for leave to amend . . . infringement contentions, courts [] consider the prejudice of allowing amendment to the non-moving party." *NXP USA, Inc.*, 2023 WL 197278, at *5. "Prejudice is typically found when amending contentions stand[s] to disrupt the case schedule or other court orders." *Id.* (quoting *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, No. 14-cv-00876-RS (JSC), 2016 WL 2855260, at *3 (N.D. Cal. May 13, 2016)). "An upcoming discovery deadline tends to loom large in the prejudice analysis." *Id.*

The Court finds that Defendant will suffer undue prejudice if Plaintiffs are permitted to amend their infringement contentions to address the Court's construction of the Group 1 Terms. Plaintiffs filed their motion only three weeks before the close of fact discovery, and their motion was not fully briefed until the day before the fact discovery deadline. Granting Plaintiffs leave to amend a month after the close of fact discovery would disrupt the case schedule and unduly prejudice Defendant. Even a limited amendment addressing only the Court's construction of the Group 1 Terms "would likely require modification of the case schedule, including by allowing additional discovery." *Id.* Courts have found undue prejudice in similar circumstances. *See NXP USA, Inc.*, 2023 WL 197278, at *5 (finding plaintiff would suffer undue prejudice where defendant's motion to amend invalidity contentions "was filed less than one month before the close of discovery[,]" "was not fully briefed until . . . a week before discovery closed," and where "the [c]ourt [was] ruling on th[e] motion after the discovery cutoff"); *EON CorpIP Holdings LLC v. Aruba Networks Inc*, No. 12-CV-01011-JST, 2013 WL 6001179, at *3 (N.D. Cal. Nov. 12, 2013) ("[E]ven if [plaintiff] had demonstrated diligence, and could show that the amendments were necessary to respond to the [c]ourt's claims construction order, [d]efendants would be prejudiced by permitting these amendments at this stage of the case. The case was filed three years ago, and has been pending in this [c]ourt for two years. Fact discovery closes shortly.").

\\

\\

\\

\\

## IV. CONCLUSION

The Court **DENIES** Plaintiffs' motion for leave to amend their infringement contentions. Dkt. No. 146.

**IT IS SO ORDERED.**

Dated: March 12, 2025

HAYWOOD S. GILLIAM, JR.
United States District Judge