March 25, 2025

The Honorable Peter H. Kang, Magistrate Judge
San Francisco Courthouse, Courtroom F – 15th Floor
450 Golden Gate Ave.
San Francisco, CA 94102

Re:   <u>Sandisk Technologies, Inc. et al. v. Viasat, Inc.</u>, Case No. 4-22-cv-04376-HSG-PHK

Your Honor:

      Pursuant to the Standing Order for Discovery in Civil Actions Before Magistrate Judge Peter H. Kang, the parties respectfully submit this joint discovery letter. SanDisk raised the issues discussed herein to Viasat by email on March 5, 2025. Lead counsel met and conferred on March 11, March 13, and March 18, as required by the Court's Standing Order, by videoconference because lead counsel are located more than 100 miles from each other, and hereby certify that no agreement or negotiated resolution could be reached on the issues addressed below. Lead counsel for both parties spoke for the majority of time as to their respective positions and negotiated directly with each other on each meet and confer.

The Honorable Peter H. Kang
March 25, 2025

## Plaintiffs' Position

**Introduction**: Despite representing to the public, to its customers, and internally that its "in-flight entertainment" offerings include IPTV/Live TV, Viasat secretly took a contrary position in this case for purposes of discovery. SanDisk only learned on Thursday, March 13 in a discovery meet and confer that Viasat had—without telling SanDisk—surreptitiously re-defined "in-flight entertainment" to exclude IPTV/Live TV throughout discovery. This is not a repeat of SanDisk's prior briefing seeking a limited set of IPTV information because SanDisk only just learned that Viasat was withholding IPTV discovery on a macro level. Viasat cries lack of diligence, but Viasat committed misconduct and is blaming SanDisk for not sleuthing it sooner. Viasat should not be rewarded for its improper failure to comply with the FRCP, and should be compelled to produce full IPTV/Live TV discovery, and be precluded from arguing that IPTV/Live TV does not infringe.

**IPTV Was Accused**: SanDisk's March 2024 infringement contentions ("ICs") expressly identify the entirety of "Viasat's *in-flight entertainment*" offerings as Accused Instrumentalities for the '400 Patent.[1] Viasat's IPTV is an IFE product – it provides live TV to passengers in flight and therefore, it is accused. Similarly, the '667 Patent Accused Instrumentalities "include Viasat's media streaming software, systems, and services, including systems that implement edge storage," and specifically identify "*streaming of live TV* in planes, homes, and other locations."[2] Moreover, SanDisk's '667 chart identifies both the "*Live Video* implementation," (*id*., 47-48) and the "Distributions" implementation for pre-loading content to airplanes (*id*., at 48). IPTV was specifically accused: "IPTV" and "live" appear at least *75 times* in SanDisk's contentions.

**Viasat Itself Defines IPTV As An IFE Offering, not a Distinct Product**: In addition to the documents already cited in SanDisk's ICs that IPTV is an IFE offering, Viasat's *IFE website* explains that "Viasat's unified media solutions combine the best of [1] *live in-flight TV*, [2] connected services, and [3] stored content to engage passengers from take-off to touch-down."[3] Viasat documents explain that Viasat's "Entertainment" offerings for airline include "stored content," "broadcast channels**,**" and "*IPTV*." VIASAT_00070334, 355, 377 (identifying "'IPTV' as part of Viasat's in-flight "entertainment experience"). Viasat defines "IPTV" as "*in-flight entertainment*" in contracts to customers. VIASAT_00068006. Also, Viasat's Edillon testified that IPTV is one of "two main areas" that Viasat "emphasizes when speaking about IFE" to customers (Tr., 28:9-24) and its corporate representative Tuli described IPTV as being "within IFE" (Tr., 116:16-20). Viasat's IPTV provides live TV on airplanes and is *not* generic Internet Protocol Television. Dkt. 183 at 6.

**Rule 26**: Throughout discovery, Viasat repeatedly agreed to produce the requested information regarding all Accused Instrumentalities. SanDisk only learned on March 14 that Viasat deliberately withheld responsive IPTV discovery. Importantly, Viasat's withholding reveals the apparent

---

[1] Ex. A (cover pleading), 2 (the "Accused Instrumentalities include Viasat's in-flight entertainment ('IFE') . . . and all Viasat products incorporating IFE, W-IFE, Gateway, or the functionality described herein," and specifically identifying "live video content," and "IPTV"); Ex. B (400 chart), 1, 3, 15, 16, 22, 29, 32, 47, 62.
[2] Ex. A, 2-3, 5; Ex. C (667 chart), 2-3, 8-12, 21, 28, 29, 34, 37-39, 47-48, 50-51, 69, 72).
[3] *See* https://www.viasat.com/aviation/commercial-aviation/in-flight-entertainment/.

The Honorable Peter H. Kang
March 25, 2025

intentionality of Viasat's misconduct—revenues for IPTV are substantially more.

Viasat clearly violated its Rule 26 obligation to inform SanDisk with specificity what it was producing and what it was withholding. Fed. R. Civ. P. 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld . . . ."). For IPTV, Viasat made no specific objection, even for RFPs that explicitly and exclusively requested IPTV information. For example, SanDisk served RFPs in April 2023 (before the case was stayed) seeking technical information about all Accused Instrumentalities and Viasat made no objection as to IPTV. Ex. D, RFP Nos. 1, 10, 12. SanDisk also served additional RFPs *specific to IPTV* and Viasat agreed to produce such information (or stated that it had already done so). Exs. E and F (*E.g.*, RFP 66 ("***Documents and source code sufficient to show the 'Authentication/Authorization' used in connection with IPTV offerings***"); RFP 91 (requesting "***All technical documents related to APIs" relating to "Stored Content Streaming Services . . . [and] the IPTV service***")). When SanDisk told the Court that it sought discovery about "IPTV, an[] explicitly accused product" (Dkt. 159 at 1), Viasat's response did not dispute that IPTV was accused (Dkt. 170). Viasat now claims that it was only required to produce information about IPTV as content—not the IPTV functionality—but that's not what SanDisk's ICs and RFPs request, and Viasat did not object otherwise. Importantly, Viasat's failure to specifically object to an RFP direct to whether ***IPTV*** meets the "authenticate" claim limitation of the '400 patent regarding delivery is a waiver of Viasat's pretextual claim that it did not believe IPTV was accused of infringement. Viasat's claims of burden/proportionality fall flat; Viasat *agreed* to produce the requested discovery for "any Accused Product" across swaths of RFPs (not just 66 and 91) and misled SanDisk to believe that it was.

**Improperly Withheld Discovery:**

Rule 30(b)(6) Deposition Discovery: Viasat designated witnesses on technical topics as to "IFE" and "VCDS," without disclosing that it had secretly re-defined those terms to exclude IPTV and without a specific objection. Worse, Viasat *did not dispute* that its witnesses were required to be prepared to testify on IPTV when emailed by SanDisk, but then those witnesses admitted they were not prepared on IPTV. SanDisk offered that Viasat designate a witness on IPTV in the forthcoming depositions to resolve the testimony dispute. Viasat claimed SanDisk had not asked for IPTV 30(b)(6) testimony in its prior letter brief. Regardless, Viasat refused SanDisk's offer.

Source Code: Viasat withheld IPTV source code that executes on its in-airplane system. Specifically, while Viasat documents indicate that IPTV was delivered through VCDS, for which Viasat had produced source code, IPTV *also* operates on Viasat's on-plane system, which code was not produced, despite the above-mentioned RFP where SanDisk explicitly asked for such information and Viasat agreed to provide it to the extent such information existed. Viasat's February 26/28 witnesses explained that *such code did exist and was available to Viasat*, and that such code is involved in handling requests from on-plane customers—directly relevant to the '400 Patent, including how the accused processor interacts with the portable data storage device.

Technical Documentation: In late Feb, Viasat also admitted that it did not produce all technical documents for IPTV. Viasat contends that it was not obligated to collect such documents from purported third-party contract engineers at Gigcasters, but Viasat witnesses confirmed that such technical documentation is available to Viasat (Gigcasters personnel even have Viasat email addresses).

The Honorable Peter H. Kang
March 25, 2025

**Rule 37**: Had Viasat followed the FRCP when objecting and responding to discovery, SanDisk could have and would have raised these issues sooner. If needed, SanDisk respectfully requests pursuant to FRCP 6(b) and 16(b)(4) that SanDisk's request be considered timely. Good cause exists because Viasat had promised to produce such discovery and SanDisk followed up immediately once it finally learned of Viasat's withholding. SanDisk relied on Viasat's representations spanning *over a year* that it had, or would, produce IPTV documents and source code. SanDisk only learned of this withholding after fact discovery through the depositions of two of Viasat's key technical witnesses and in the follow up meet and confer process to get to the bottom of why certain information was produced as to IPTV but other information withheld. Viasat cannot secretly withhold relevant discovery and then argue SanDisk should be punished for not uncovering Viasat's egregious misconduct sooner.

SanDisk has been prejudiced by Viasat's deceptive tactics. SanDisk was unable to ask witnesses about withheld evidence. Its expert was unable to examine the full details of IPTV's operation before issuing a report. SanDisk seeks an order compelling full compliance with outstanding discovery and an order under FRCP 37(c) precluding Viasat from offering any evidence to refute SanDisk's allegations of how IPTV operates. *See Apple Inc. v. Samsung Elecs. Co., Ltd.*, Case No. 5:11-cv-01846-LHK, Dkt. 898 (N.D. Cal. May 4, 2012) (ordering, due to Samsung's failure to produce design-around source code, that "Samsung shall be precluded from offering any evidence of its design-around efforts …" in the case). SanDisk respectfully requests a hearing given the egregiousness of the conduct. SanDisk is not asking for an extension; despite the prejudice, SanDisk will comply with current deadlines, and supplement expert reports as necessary.

The Honorable Peter H. Kang
March 25, 2025

**Defendant's Position**

Plaintiffs continue to raise fact discovery disputes despite the Court's clear guidance that fact discovery closed Feb. 7 and the schedule will not be extended. Plaintiffs now argue they "only learned on…March 13" Viasat does not consider IPTV an accused product. But the IPTV dispute is not new; Plaintiffs simply rehash prior arguments (albeit more stridently) the Court already rejected. At best, Plaintiffs' letter is an improper motion to reconsider, couched as a discovery dispute. But Viasat hid nothing and took no "secret" positions. Viasat's documents, source code, and correspondence have long distinguished IFE from IPTV. Plaintiffs knew for years Viasat produced IFE code but not IPTV code. If Plaintiffs somehow did not know, they *should* have known; any "surprise" occurred because "Plaintiffs have not shown diligence" in discovery. Dkt. 181. Expert reports were exchanged yesterday. It is time to move forward.

Viasat produced technical documents in 2023 and early 2024 explaining that Viasat's IFE and IPTV products are not the same. VIASAT_00006471 (listing "IFE Solution" and "IPTV" as two separate products (472) and discussing the "IFE Solution" in an "IFE" section (497-500) while discussing the different "IPTV" product in a stand-alone "IPTV" section (510-13)). Viasat's production explained IFE and IPTV are each "***stand-alone products***," and each are "optional" for customers. VIASAT_00003288 at 341; *id*. at 334-35 (describing "IFE Entertainment" as one product, using "DRM" and offering "on-demand content to passenger devices," and separately describing "Viasat IPTV" as a different product). Viasat documents further explained these separate products have ***separate customers***. VIASAT_00003234 (separately listing "In-Flight Entertainment" as one product, with "American" and "United" as customers, and listing "Broadcast TV" as another product, with only "American" as a customer). These documents also showed "Live Video," including "Fubo" and "IPTV," were types of "Content" that can be delivered by Viasat's "Content Delivery Service" (VCDS). But like Fubo (or other content) IPTV is not ***part of*** VCDS. *Id*. at 272 (diagramming "VCDS Architecture" and labeling IPTV, Fubo, and Disney as "***sources of content***" for delivery by VCDS—not part of VCDS itself).

Plaintiffs did not appear to be confused about the differences between Viasat's products; when Plaintiffs amended their infringement contentions in Mar. 2024 ***they cited every document quoted above***. (Tellingly, Plaintiffs' letter relies on webpages and other documents *not* cited anywhere in Plaintiffs' infringement contentions.) The infringement contentions accused the VCDS product for the '667 patent and the IFE product for the '400 patent. The '667 contentions defined "'667 Accused Products" as "systems that implement edge storage," and specifically "the Viasat Content Delivery System ('VCDS')." Inf. Cont. Ex. B at 1. Plaintiffs did not say Viasat's IPTV/Live TV product was an accused product; they said the accused VCDS product could deliver media content ***such as*** live television, from various sources. *Id.* at 2 (alleging VCDS is "used to stream media from content providers, ***including*** live TV from fuboTV"). The accused delivery system was VCDS, and television was one example of what could be delivered—but TV products themselves, whether from Fubo or IPTV, were not themselves accused. Plaintiffs likewise defined the '400 Accused Products as "Viasat's in-flight entertainment ("IFE") [and] wireless IFE ("W-IFE") systems," *id*. Ex. A at 1, and mention IPTV only in three exemplary parentheticals describing ***other*** functionality. For instance, Plaintiffs stated "the '400 Accused Products ***provide access*** to ***media streaming services (e.g., IPTV, Disney+, Apple Music and/or Apple TV+)***." *Id at 3*. Again, the streamed media services were not accused; Plaintiffs did not say Apple TV+ or Disney+ were

The Honorable Peter H. Kang
March 25, 2025

"Accused Products," and never sought discovery regarding how those third-party media streaming services operate. Viasat understood the same was true for IPTV.

Notably, Plaintiffs inspected Viasat's code multiple times, and for a full year never suggested IPTV was accused or that IPTV code should be produced. Instead, Plaintiffs' discovery requests suggested that Plaintiffs understood IFE, VCDS, and IPTV were different things. As recently as Jan. 28, 2025, Plaintiffs confirmed they considered IPTV, like "advertising," to be an optional "***service***" provided to some users of the Accused Products—not an Accused Product *itself*. *See* ElDessouki Jan. 28 email (requesting "IPTV" revenue and "advertising" revenue as relevant to "***services*** that You provide or offer to purchasers or users of the Accused Products").

It was not until Feb. 3, 2025 that Plaintiffs first claimed IPTV *itself* was an accused product— saying Plaintiffs had allegedly just "triple checked" Viasat's productions and asking for upcoming depositions to be rescheduled because "source code that relates to implementation of Live TV" allegedly should have been produced. Dkt. 164-2 at 3-4. Viasat explained the next day that IPTV code was "not relevant considering that ***it is not code that Plaintiffs have accused***." *Id.* at 2. Plaintiffs then raised this very issue in a Feb. 7 discovery filing alleging "Source Code and Technical Document Deficiencies" for "IPTV," and arguing that Viasat's production was "also deficient with respect to . . . IPTV." Dkt. 159. The Court ruled on Mar. 14, explaining Plaintiffs had "not met its burden to show how or why the IPTV [materials requested] are within the scope of relevance, or proportional" – particularly where its infringement contentions only mention "the mere existence of IPTV content." Dkt. 183 at 7; *id.* at 6 (Plaintiffs' "infringement contentions make only passing reference to the mere existence of IPTV as an example (among other listed streaming services) of a media streaming service"). Plaintiffs ignore the Mar. 14 order because it belies Plaintiffs' claim to have first learned of the IPTV dispute last week (as does Plaintiffs' ***own introduction to this letter***, which states Plaintiffs raised this issue by email Mar. 5). The IPTV discovery Plaintiffs seek is not proportional to the needs of this case. It was not proportional when Plaintiffs requested it in their Feb. 7 letter brief. It was not proportional on Mar. 14 when the Court ruled on that briefing. It still is not proportional today. Plaintiffs' letter is effectively a motion to reconsider that ignores the rules for such a motion.[4] Civ. L.R. 7-9 (parties must obtain leave upon showing "manifest failure by the Court" to consider facts or law, or "a material difference in fact or law"). Plaintiffs' motion should be denied on this basis alone.

Plaintiffs misrepresent their RFPs to say they sought "all technical documents related to IPTV" in discovery. Not so. RFP 91 sought "technical Documents ***related to APIs*** provided by You ***to Your customers*** to enable Media Streaming," citing promises of technical support in a Master Services Agreement with Southwest Airlines. This RFP did not seek "all technical documents related to IPTV," and Viasat agreed only to conduct a reasonable search for "responsive APIs that Viasat provides to its customers." Plaintiffs now rewrite the request to say something entirely different. Similarly, RFP 66 sought "Documents and source code ***sufficient to show*** the 'Authentication/Authorization' ***used in connection with*** IPTV offerings"—not, as Plaintiffs claim,

---

[4] Plaintiffs' request for Rule 37(c) sanctions is also improper because their prior request to compel this same material was denied. If anything, Plaintiffs' serial briefing of IPTV disputes long after the close of fact discovery is vexatious under 28 U.S.C. § 1927 and Civ. L.R. 7-9(c).

The Honorable Peter H. Kang
March 25, 2025

"documents regarding whether IPTV meets the 'authenticate' claim limitation." Plaintiffs already had the material RFP 66 requested; IPTV is a content stream **delivered by VCDS**, and Plaintiffs already had VCDS source code. Accordingly, Viasat responded on Nov. 1, 2024 that "Viasat **has produced** documents responsive to this Request." Despite knowing for a year what source code Viasat had produced, Plaintiffs **never complained** until the last days of fact discovery.

Finally, Plaintiffs argue FRCP 34 required Viasat to explain what was **not** accused, rather than requiring Plaintiffs to identify clearly what **was** accused. Rule 34 contains no such requirement. Plaintiffs' position would also contradict the Patent Local Rules. It is neither reasonable nor required for a defendant to list each product that is not accused; **Plaintiffs must identify with specificity what is accused**. Pat. L.R. 3-1 (requiring patent owner to identify "for each asserted claim, each accused apparatus," "as specific[ally] as possible," including "by name or model number" and then to provide a "chart identifying specifically where and how each limitation of each asserted claim is found within each Accused Instrumentality"). IPTV was not so identified. If it *had* been accused, Plaintiffs could easily cite where, on a limitation-by-limitation basis, IPTV was discussed for each limitation of each asserted claim. Plaintiffs cannot show this. Plaintiffs had code for what Viasat understood to be accused. It had documents describing both the accused VCDS and IFE products, as well as the separate IPTV product. Perhaps Plaintiffs did not review or otherwise understand the material Viasat provided. Promptly pursuing depositions or other discovery would have cleared up any legitimate confusion quickly. But as Judge Gilliam and Your Honor found in multiple orders (Dkt. 181 at 3; Dkt. 182 at 7; Dkt. 183 at 7-8), Plaintiffs did not pursue discovery diligently. Plaintiffs' belated (and repeated) motion should be denied.

Respectfully submitted,

| /s/ *L. Kieran Kieckhefer* | /s/ *Steven Cherny* |
|---|---|
| L. Kieran Kieckhefer | Steven Cherny |
| Gibson, Dunn & Crutcher LLP | Quinn Emanuel Urquhart & Sullivan LLP |
| *Attorneys for Plaintiffs* | *Attorneys for Viasat* |

**Filer's Attestation**: Pursuant to Civil L.R. 5-1(h)(3), the undersigned hereby attests that the other signatories have concurred in the filing of this document.

/s/ *L. Kieran Kieckhefer*

L. Kieran Kieckhefer