UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SANDISK3D IP HOLDINGS LTD., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>VIASAT, INC.,<br><br>Defendant. | Case No. 22-cv-04376-HSG  (PHK)<br><br>**ORDERS DENYING PLAINTIFF SANDISK'S MOTION TO STRIKE INTERROGATORY RESPONSES; DENYING PLAINTIFF'S MOTION TO SHORTEN TIME AS MOOT; GRANTING MOTIONS TO SEAL**<br><br>Re: Dkts. 167, 168, 171, 177, and 178 |

On February 14, 2025, all discovery in this matter, including the motions at Dkt. 168 and 171, between Plaintiff SanDisk Technologies, Inc. ("SanDisk") and Defendant Viasat, Inc. ("Viasat") was referred to the undersigned. [Dkt. 173]. Now before the Court is SanDisk's Motion to Strike Viasat's Third Supplemental Response to Interrogatory No. 8 and Second Supplemental Response to Interrogatory No. 14, along with a Motion to Shorten Time for briefing and hearing on the instant Motion to Strike. [Dkts. 168 and 171]. Additionally, the Parties both filed Motions to Seal certain portions of the briefing and underlying exhibits, in connection with the Motion to Strike. Dkts. 167, 177, and 178. After considering all relevant briefing and accompanying documents, the Court finds this dispute appropriate for adjudication without oral argument. Civil L.R. 7-1(b).

For the reasons discussed herein, SanDisk's Motion to Strike is **DENIED**, SanDisk's Motion to Shorten Time is **DENIED** as **MOOT**, and the Parties' Motions to Seal are **GRANTED**.

## RELEVANT BACKGROUND

SanDisk filed this patent dispute against Defendant Viasat, Inc. ("Viasat") on July 28, 2022. [Dkt. 1]. The following relevant background is taken from the Parties' briefs and the Court docket as appropriate.

**Interrogatory No. 8:** On April 7, 2023, SanDisk served Interrogatory No. 8, which essentially asked Viasat to set forth its noninfringement contentions. [Dkt. 168 at 4]. On December 8, 2023, Viasat served its initial response to Interrogatory No. 8. *Id.* SanDisk avers that the response consisted of "three paragraphs with no substantive content[.]" *Id.* "[T]he first paragraph set forth objections; the second paragraph argued that the interrogatory was premature; and the third paragraph stated that Viasat's investigation was ongoing and it reserved the right to supplement." *Id.* (citation omitted).

On December 30, 2024, Viasat served its First Supplemental Response to Interrogatory No. 8. *Id.* SanDisk indicates that the First Supplemental Response to Interrogatory No. 8 "(1) complained that Plaintiffs' infringement contentions were deficient; (2) provided, without further explanation, a simple bullet list of limitations that Viasat contended were not met, consisting of essentially every limitation of every asserted claim; and (3) listed, again without explanation, a series of letters between counsel and document production numbers pursuant to Rule 33(d)." *Id.* at 4–5 (citation omitted).

On January 16, 2025, SanDisk sought leave to serve amended infringement contentions (provided to Viasat on January 3). [Dkt. 146]. On March 12, 2025, the presiding District Judge denied the motion for leave to amend infringement contentions. [Dkt. 182].

On January 24, 2025, SanDisk began taking depositions of various Viasat witnesses. [Dkt. 168 at 5]. The following day, Viasat served its Second Supplemental Response to Interrogatory No. 8. *Id.* SanDisk avers that "[t]his response was similar to the prior response, except after each allegedly missing claim limitation Viasat listed, without further explanation, one or more document production numbers." *Id.* (citation omitted).

On February 6, 2025, Viasat served its Third Supplemental Response to Interrogatory No. 8. *Id.* The following day, fact discovery closed. *Id.*

**Interrogatory No. 14:** On October 2, 2024, SanDisk served Interrogatory No. 14, which in essence sought Viasat's contentions on non-infringing alternatives to the asserted patents, including identification of documents and witnesses relating to this issue. *Id.* at 6. On November 1, 2024, Viasat served its initial response to Interrogatory No. 14. *Id.* SanDisk avers that this first response

consisted of "three paragraphs with no substantive content[.]" *Id.* "[T]he first paragraph set forth objections; the second paragraph argued that the interrogatory was premature and generically denied infringement; and the third paragraph stated that Viasat's investigation was ongoing and it reserved the right to supplement." *Id.* (citation omitted).

On January 8, 2025, Viasat served its First Supplemental Response to Interrogatory No. 14. *Id.* SanDisk indicates that the First Supplemental Response to Interrogatory No. 14 "(1) referenced prior art systems that Viasat contended would be non-infringing alternatives, (2) contended that the accused products themselves were non-infringing alternatives because they lacked certain claim elements, providing no explanation and referencing the response to Interrogatory No. 8—which, as noted above, did not contain any explanation either, and (3) argued without any detail that 'to the extent' Plaintiffs identified a claim limitation in Viasat's accused products, Viasat could design its systems to remove it." *Id.* (citation omitted).

On February 6, 2025, Viasat served its Second Supplemental Response to Interrogatory No. 14. *Id.*

On February 7, 2025, the day fact discovery closed, SanDisk filed a motion seeking to extend the deadline for the close of fact discovery and extend the case schedule. [Dkt. 158]. On March 10, 2025, the presiding District Judge denied that request. [Dkt. 181].

On February 11, 2025, SanDisk filed the instant motion to strike Viasat's interrogatory responses. [Dkt. 168]. Concurrently, SanDisk moved to seal certain portions of the Motion to Strike. [Dkt. 167]. The following day, SanDisk moved to shorten the time for briefing and hearing on its Motion to Strike. [Dkt. 171]. On February 25, 2025, Viasat filed its opposition, and concurrently, moved to file certain portions of its opposition under seal. [Dkts. 176, 177, and 178].

## LEGAL STANDARD

The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). The Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested. *See*

3

*Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery").

As discussed long ago by Judge Brazil, it is appropriate for a party such as patentee SanDisk to take discovery on an opponent's contentions using appropriately framed and timed contention interrogatories. *See McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 134 F.R.D. 275, 286–87 (N.D. Cal. 1991), *overruled on other grounds*, 765 F. Supp. 611 (N.D. Cal. 1991).

> In a patent case like this, the bases for contentions do not consist exclusively of relatively straightforward facts or evidence, as might be true, by contrast, in a case arising out of a traffic accident. In other words, to set forth the bases for contentions in this case, it is not enough to describe real world facts and events, even in considerable detail. Rather, determining what the bases for contentions are in this environment involves complex judgments about the relationship between at least three kinds of things: (1) evidence/facts/events in the real world (outside litigation), (2) "claims" as particularly set forth in the patent in issue and in other patents or other material presented to the patent office, and (3) principles of intellectual property law set forth in statutes and in judicial opinions . . . . Patent cases turn peculiarly on a conceptually dense dynamic between physical objects, words in claims, and principles of law. Understanding that dynamic, and describing the relationships that serve as the bases for a given parties' contentions, is something best done by patent lawyers, ***and best done after at least most other discovery has been completed.*** After all, in cases like these, a substantial part of "the bases for contentions" really consists of quasi-legal argument.

*Id.* at 287 (emphasis in original and added).

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Information need not be admissible to be discoverable. *Id.* Relevancy for purposes of discovery is broadly defined to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350–51 (1978)); *see also In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-MD-2843 VC (JSC), 2021 WL 10282215, at *4 (N.D. Cal. Sept. 29, 2021) ("Courts generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes of trial.") (alteration omitted).

While the scope of relevance is broad, discovery is not unlimited. *ATS Prods., Inc. v.*

4

*Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries."). Information, even if relevant, must be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). The 2015 amendments to Rule 26(b)(1) emphasize the need to impose reasonable limits on discovery through increased reliance on the common-sense concept of proportionality: "The objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality requirement] is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse." In evaluating the proportionality of a discovery request, a court should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

## DISCUSSION

### I. MOTION TO STRIKE RESPONSE TO INTERROGATORY NO. 8

SanDisk seeks to strike Viasat's last-served responses to SanDisk's Interrogatories. 8 and 14. SanDisk's arguments are identical for both interrogatory responses. SanDisk argues that "[b]y [Viasat] concealing its non-infringement and non-infringing alternatives arguments until the close of fact discovery, Viasat has severely prejudiced SanDisk by preventing SanDisk from testing those arguments in discovery." [Dkt. 168 at 8]. "SanDisk had already deposed three of Viasat's technical witnesses, including Viasat's Chief Technical Officer for Content Delivery, regarding nearly 50 technical 30(b)(6) deposition topics before it could digest Viasat's new arguments." *Id.* (citation omitted).

As noted, SanDisk's Interrogatory No. 8 seeks Viasat's noninfringement contentions. Under this Court's Patent Local Rules, there is no requirement for a defendant to disclose noninfringement contentions. Accordingly, it is common practice for plaintiffs in patent lawsuits to serve a contention interrogatory, which seeks a defendant's noninfringement contentions under Rule 33.

5

SanDisk's argument that the most-recently served Third Supplemental Response to this interrogatory is prejudicial because it was served late in the discovery period is not persuasive. The timing of an updated or supplemental contention interrogatory response is not viewed in a vacuum: as noted, Viasat served earlier responses to Interrogatory No. 8 which SanDisk now complains were insufficiently detailed at the time. [Dkt. 168 at 4–5]. However, there is insufficient indication in the record as to why SanDisk failed to move to compel a more fulsome response to Interrogatory No. 8 upon receipt of these earlier responses. Specifically, SanDisk has been aware of Viasat's original response to this interrogatory since December 2023, as well as Viasat's First Supplemental Response (which post-dated the Court's claim construction Order [Dkt. 120]) since December 30, 2024. [Dkt. 168 at 4]. SanDisk did not file a motion to compel more detailed responses to Interrogatory No. 8 after receiving either response.

Indeed, SanDisk attempted to amend its infringement contentions by serving amendments on January 3, 2025, for which SanDisk filed a motion for leave on January 16, 2025. [Dkt. 146]. Until that motion was decided, it is evident that there was at least some uncertainty as to which of SanDisk's infringement contentions would be operative in this case. Viasat can hardly be faulted for some delay while this uncertain situation (caused by SanDisk's attempt to amend) existed. Nevertheless, SanDisk has had notice of Viasat's Second Supplemental Response to Interrogatory No. 8 since January 25, 2025. *Id.* at 5. Again, SanDisk did not move to compel a more detailed response to Interrogatory No. 8 after receiving this supplemental response. Thus, while SanDisk now complains that these earlier responses to Interrogatory No. 8 were deficient (as compared to the final Third Supplemental Response served on February 6, 2025, which SanDisk argues has more detail "for the first time"), SanDisk has failed to demonstrate diligence in seeking that additional information from Viasat during the fact discovery period.

Further, as noted, it is common for contention interrogatory responses in patent cases to be served towards the end of the fact discovery period. *See McCormick-Morgan*, 134 F.R.D. at 287 ("these [contention] interrogatories need be answered only after all other substantive discovery has been completed[.]"). "Courts are reluctant to allow contention interrogatories prematurely, that is, when the respondent has not yet obtained enough information through discovery to answer such

6

interrogatories. However, courts have also recognized that properly timed contention interrogatories 'may in certain cases be the most reliable and cost-effective discovery device[.]'" *Lexington Ins. Co. v. Commonwealth Ins. Co.*, 1999 WL 33292943 at *7 (N.D. Cal. Sept. 17, 1999) (citation omitted). SanDisk's argument about the timing of the Third Supplemental Response to Interrogatory No. 8 is not persuasive because ultimately SanDisk's prejudice argument focuses primarily on the timing issue and the allegedly generalized concern that SanDisk could have sought other or different discovery (or asked different deposition questions) had SanDisk known of this Third Supplemental Response earlier.

This is not a situation where SanDisk has identified specific discovery it now seeks because the final contention interrogatory response contained a surprise disputed claim term. Indeed, SanDisk admits that the earlier responses to Interrogatory No. 8 denied infringement as to all or most limitations of the asserted claims, and thus it is unlikely that SanDisk's presumably able counsel failed to take any discovery directed to its infringement theory for each such denied claim limitation. The fact that SanDisk now, in retrospect, would have liked the chance to perhaps ask some different or additional deposition questions to shore up its infringement assertions is not a sufficient basis to strike Viasat's final supplemental response to Interrogatory No. 8. Every attorney would surely relish the chance to see their opponents' final arguments and then get a chance for a do-over to retake depositions, but that is not a basis for striking responses. In the context of Rule 26, such a desire to retake depositions or seek more discovery would likely be held to be not proportional to the needs of the case. And if taking more discovery in light of a supplemental interrogatory response were not appropriate, then striking the interrogatory responses which are the alleged motivation for seeking more discovery is equally unwarranted.

Moreover, because noninfringement is a rebuttal to infringement, it is difficult to see how SanDisk's claim of prejudice is supportable here. By definition, a rebuttal responds to an existing contention or issue already present in the case. Presumably Viasat's Third Supplemental Response to Interrogatory No. 8 was rebutting SanDisk's infringement theories, and thus the fact that Viasat's final supplemental response provided more details to that rebuttal does not mean that Viasat raised new issues that were not already disputed in the case. In the briefing, SanDisk does not identify any

1   new or surprise disputed issues that were raised in the Third Supplemental Response to Interrogatory
2   No. 8.  If anything, the fact that Viasat provided additional detail and citation to evidence for its
3   noninfringement contentions should be expected to have the beneficial effect of allowing SanDisk's
4   infringement expert report to be prepared with even more focus and specificity.

    In light of the record presented to the Court, SanDisk has not demonstrated a material shift in contentions by Viasat on this issue justifying granting SanDisk's Motion to Strike.  Fed. R. Civ. P. 26(e)(1)(A); *Looksmart Grp., Inc.*, 386 F. Supp. 3d at 1227; *Netfuel, Inc.*, 2020 WL 4381768, at *1.

## II.  MOTION TO STRIKE RESPONSE TO INTERROGATORY NO. 14

For essentially the same reasons, SanDisk's motion to strike Viasat's Second Supplemental Response to Interrogatory No. 14 is unavailing.  SanDisk's argument that the most-recently served Second Supplemental Response to this interrogatory is prejudicial because it was served late in the discovery period is not persuasive.  The timing of an updated or supplemental contention interrogatory response is not viewed in a vacuum: as noted, Viasat served earlier responses to Interrogatory No. 14 which SanDisk now complains were insufficiently detailed at the time.  [Dkt. 168 at 6–7].  However, there is insufficient indication in the record as to why SanDisk failed to move to compel a more fulsome response to Interrogatory No. 14 upon receipt of these earlier responses.  Specifically, SanDisk has been aware of Viasat's original response to this interrogatory since November 1, 2024, as well as Viasat's First Supplemental Response since January 8, 2025.  [Dkt. 168 at 6].  SanDisk did not file a motion to compel more detailed responses to Interrogatory No. 14 after receiving either of these responses.  Thus, while SanDisk now complains that these earlier responses to Interrogatory No. 14 were deficient (as compared to the final Second Supplemental Response served on February 6, 2025, which SanDisk argues has more detail "for the first time"), SanDisk has failed to demonstrate diligence in seeking that additional information from Viasat during the fact discovery period.

As noted, Interrogatory No. 14 seeks Viasat's contentions on noninfringing alternatives to the asserted patent claims.  The issue of noninfringing alternatives is generally raised in patent lawsuits in connection with damages contentions.  *Gain Processing Corp. v. American Maize-Prods.*

8

1    *Co.*, 185 F.3d 1341, 1350–51 (Fed. Cir. 1999) (For lost profits analysis: "a rational would-be infringer is likely to offer an acceptable noninfringing alternative, if available, to compete with the patent owner rather than leave the market altogether."); *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1393 (Fed. Cir. 2003) (For reasonable royalty analysis, "one of the Georgia–Pacific factors [is]"—"[t]he utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results[.]"); *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571–72 (Fed. Cir. 1996) (For reasonable royalty analysis: "the fact that [defendant] Wyko could have continued marketing the [noninfringing alternative] SIRIS is a factor relevant to the determination of a proper royalty during hypothetical negotiations. [Defendant] Wyko would have been in a stronger position to negotiate for a lower royalty rate knowing it had a competitive noninfringing device 'in the wings.'"). Thus, the context of Interrogatory No. 14 is relevant to the analysis here.

Under this Court's Patent Local Rule 3-8, a patentee is required to make disclosure of its damages contentions within 50 days after service of invalidity contentions. *See* Patent L.R. 3-8. Specifically, the damages contentions must: "identify each category of damages [the party] is seeking for the asserted infringement (e.g., lost profits, reasonable royalty, price erosion, convoyed sales, etc.) and for each category of damages sought, provide a good faith explanation of the theory of damages and the factual basis for damages." *Id*.

In turn, Patent Local Rule 3-9 requires that (within 30 days after service of the Damages Contentions) "each party denying infringement shall disclose in good faith material facts of which it is aware that are relevant to a category of damages disclosed under Rule 3-8." It has been recognized that "Rules 3-8 and 3-9 involve rather different requirements[.]" *Yuntek Int'l, Inc. v. Xiamen JXD Elec. Com. Co.*, No. 20CV07201JSWRMI, 2022 WL 2288936, at *1 (N.D. Cal. Apr. 4, 2022). Rule 3-8 requires the patentee to provide both a good faith explanation of the theories of damages and also the "factual basis for damages." Rule 3-9 is facially worded differently and requires a defendant to disclose "material facts of which it is aware that are relevant to a category of damages" asserted by the plaintiff. Further, Rule 3-9 provides the following example: "if a party is aware of material facts regarding an existing non-infringing alternative . . . or other damages limitations that it believes would alter a damages calculation, it should disclose the basis for its

9

belief." However, Rule 3-9 does not impose an obligation that a defendant provide a factual basis for denying all damages contentions. For this reason, it has been held improper to impose Rule 3-8's requirements onto Rule 3-9. *Yuntek Int'l, Inc.*, 2022 WL 2288936, at *1. Significantly, there is no indication in the record submitted to the Court that SanDisk ever moved to compel a more detailed Patent Local Rule 3-9 disclosure from Viasat.

Because of the difference between Patent Local Rule 3-8 and 3-9, it is common in patent lawsuits for plaintiffs to serve one or more contention interrogatories (like Interrogatory No. 14 here) seeking a defendant's contentions relating to rebutting damages. And as noted, it is common for contention interrogatory responses in patent cases to be served towards the end of the fact discovery period. *See McCormick-Morgan*, 134 F.R.D. at 287; *Lexington Ins.*, 1999 WL 33292943 at *7. SanDisk's argument about the timing of the Second Supplemental Response to Interrogatory No. 14 is not persuasive because ultimately SanDisk's prejudice argument focuses primarily on the timing issue and the allegedly generalized concern that SanDisk could have sought other or different discovery (or asked different deposition questions) had SanDisk known of this Second Supplemental Response earlier.

This is not a situation where SanDisk has identified specific discovery it now seeks because the final contention interrogatory response contained a surprise issue. Indeed, SanDisk has explicitly linked this motion to its request to extend the fact discovery deadline, dkt. 168 at 12, which Judge Gilliam has already denied. Instead of identifying specific new issues or new discovery, SanDisk would have taken in light of the final supplemental response to Interrogatory No. 14, SanDisk merely argues that it would like to retake a large number of depositions. *Id.* The fact that SanDisk would like to "redo" a whole series of depositions to shore up its damages theories is not a sufficient basis to strike Viasat's final supplemental response to Interrogatory No. 14. In the context of Rule 26, such a desire to retake depositions or seek more discovery would likely be held to be not proportional to the needs of the case. And if taking more discovery in light of a supplemental interrogatory response were not appropriate, then striking the interrogatory response which is the alleged motivation for seeking more discovery is equally unwarranted. Ultimately, SanDisk's complaints that it should be permitted to take more discovery because of these

supplemental interrogatory responses are moot because Judge Gilliam has already denied the request to extend the fact discovery period or extend the overall case schedule.

Moreover, because Interrogatory No. 14 sought rebuttal contentions on a damages issue, it is difficult to see how SanDisk's claim of prejudice is supportable here. By definition, a rebuttal responds to an existing contention or issue already present in the case. The fact that Viasat's final supplemental response provided more details to that damages-related rebuttal does not mean that Viasat raised new issues that were not already disputed in the case. In the briefing, SanDisk does not identify any new or surprise disputed issues that were raised in the Second Supplemental Response to Interrogatory No. 14. If anything, the fact that Viasat provided additional detail and citation to evidence for its noninfringing alternatives contentions should be expected to have the beneficial effect of allowing SanDisk's damages expert report to be prepared with even more focus and specificity.

In light of the record presented to the Court, SanDisk has not demonstrated a material shift in contentions by Viasat on this issue justify granting SanDisk's Motion to Strike. Fed. R. Civ. P. 26(e)(1)(A); *Looksmart Grp., Inc.*, 386 F. Supp. 3d at 1227; *Netfuel, Inc.*, 2020 WL 4381768, at *1.

### III.   MOTION TO SHORTEN TIME

SanDisk's Motion to Shorten Time for briefing and hearing on this Motion to Strike, dkt. 171, is **DENIED** as **MOOT**. The deadline for briefing and hearing has passed, and the Court is addressing the underlying Motion to Strike on the briefs and materials submitted, as discussed herein.

### IV.   MOTIONS TO SEAL

"[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 n.7 (1978); *see also Folz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1133 (9th Cir. 2003) ("In this circuit, we start with a strong presumption in favor of access to court records."). "This right is justified by the interest of citizens in 'keep[ing] a watchful eye on the workings of public agencies.'" *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon*, 435 U.S. at 598). The right, however, "is not absolute and can be overridden given

11

sufficiently compelling reasons for doing so." *Folz*, 331 F.3d at 1135; *see, e.g.*, *Times Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir. 1989).

A party seeking to seal court documents "bears the burden of overcoming th[e] strong presumption [of public access] by meeting the 'compelling reasons' standard." *Kamakana*, 447 F.3d at 1178 (citation omitted). Accordingly, a party seeking to seal court documents must articulate "compelling reasons supported by specific factual findings" that "outweigh the general history of access and the public policies favoring disclosure." *Id.* at 1179. Such compelling reasons include "the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* (citations omitted). "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.* (citation omitted).

Here, SanDisk moves to file certain portions of its motion and supporting exhibits under seal. [Dkt. 167]. Viasat moves to file certain portions of its exhibits supporting its opposition under seal. [Dkts. 177 and 178]. Both Parties make the same arguments that the portions that are sealed are designated as "Highly Confidential – Attorneys' Eyes Only" material under the Protective Order, which includes source code and highly confidential business information. *See* Dkts. 167, 177, and 178. The Court **FINDS** that these materials contain sensitive business information that, if disclosed, could result in competitive harm. Courts in this district have routinely found that the potential for competitive harm constitutes a compelling reason to seal. *See Apple, Inc. v. Samsung Elecs. Co., Ltd.*, No. 11-cv-01846-LHK, 2012 WL 6115623, at *2 (N.D. Cal. Dec. 10, 2012) (citations omitted).

//
//
//
//
//
//
//
//

# CONCLUSION

For all the reasons discussed herein, SanDisk's Motion to Strike Viasat's final supplemental responses to Interrogatories 8 and 14 is **DENIED**; SanDisk's Motion to Shorten Time is **DENIED** as **MOOT**; and the Parties' Motions to Seal are **GRANTED**.

This **RESOLVES** Dkts. 167, 168, 171, 177, and 178.

**IT IS SO ORDERED.**

Dated:  April 28, 2025

_____
PETER H. KANG
United States Magistrate Judge