QUINN EMANUEL URQUHART & SULLIVAN, LLP
Steven Cherny (*pro hac vice*)
stevencherny@quinnemanuel.com
Patrick D. Curran (Bar No. 241630)
patrickcurran@quinnemanuel.com
Hannah E. Dawson (*pro hac vice*)
hannahdawson@quinnemanuel.com
Tzivya H. Beck (*pro hac vice*)
tzivyabeck@quinnemanuel.com
111 Huntington Ave, Suite 520
Boston, MA 02199
Telephone:   (617) 712-7100

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Anastasia M. Fernands (*pro hac vice*)
anastasiafernands@quinnemanuel.com
Nicola R. Felice (*pro hac vice*)
nicolafelice@quinnemanuel.com
Vanessa Blecher (*pro hac vice*)
vanessablecher@quinnemanuel.com
Alicia Lai (*pro hac vice*)
alicialai@quinnemanuel.com
295 5th Avenue
New York, NY 10016
Telephone:   (212) 849-7000

*Attorneys for Defendant Viasat, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

| | |
|---|---|
| SANDISK TECHNOLOGIES, INC., et al.,<br><br>    Plaintiffs,<br>v.<br>VIASAT, INC.,<br><br>    Defendant. | Case No.: 4:22-cv-4376-HSG<br><br>**DEFENDANT VIASAT, INC.'S NOTICE OF MOTION AND MOTION TO STRIKE PORTIONS OF SANDISK'S EXPERT REPORTS**<br><br>Date: Thursday, July 10, 2025<br>Time: 2 pm |

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................................2

I. INTRODUCTION ........................................................................................................................2

II. RELEVANT FACTS ....................................................................................................................3

    A. The Court Denied Leave to Add New Infringement Theories To Plaintiffs' Infringement Contentions ...........................................................................................3

    B. Plaintiffs' Opening Expert Reports on Infringement and Damages ..........................4

III. LEGAL STANDARD ..................................................................................................................6

IV. ARGUMENT ................................................................................................................................7

    A. The Court Should Strike Plaintiffs' Untimely Theories Regarding the "Receiving an Indication" Claim Term of the '667 Patent ........................................7

        1. The "Encryption Theory" Has Already Been Rejected ................................8

        2. The "DRM Sub-Folder/ File Path" Theory Was Never Disclosed ................9

    B. The Court Should Strike Plaintiffs' Late Infringement and Doctrine of Equivalents Theories For The '400 Patent ................................................................10

    C. Plaintiffs Should Not Be Permitted to Rely on Theories Relating to Viasat's "IPTV" Product Because It Was Not Identified As An Accused Instrumentality .........................................................................................................12

V. CONCLUSION ...........................................................................................................................16

# TABLE OF AUTHORITIES

**Page**

### Cases

*Adobe Sys. Inc. v. Wowza Media Sys.*,
  No. 11-CV-02243-JST, 2014 WL 709865 (N.D. Cal. Feb. 23, 2014) .......................... 7, 10, 14

*ASUS Comp. Int'l v. Round Rock Research, LLC*,
  No. 12-cv-02099 JST (NC), 2014 WL 1463609 (N.D. Cal. Apr. 11, 2014) ............................ 6

*Berger v. Rossignol Ski. Co.*,
  No. 05-02523, 2006 WL 1095914 (N.D. Cal. Apr. 25, 2006) .................................................. 2

*Finjan, Inc. v. Proofpoint, Inc.*,
  No. 13-cv-05808-HSG, 2016 WL 612907 (N.D. Cal. Feb. 16, 2016)
  (Gilliam, J.) ...............................................................................................................*passim*

*KlausTech, Inc. v. Google LLC*,
  No. 10-cv-05899-JSW, 2018 WL 5109383 (N.D. Cal. Sept. 14, 2018),
  *subsequently aff'd*, 792 F. App'x 954 (Fed. Cir. 2020) ........................................................ 6, 9

*MLC Intellectual Property, LLC v. Micron Technology, Inc.*,
  2019 WL 1865921 (N.D. Cal. Apr. 25, 2019) ......................................................................... 14

*Netfuel, Inc. v. Cisco Sys. Inc.*,
  No. 5:18-CV-02352-EJD, 2020 WL 4381768 (N.D. Cal. July 31, 2020) ............................... 12

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
  467 F.3d 1355 (Fed. Cir. 2006) ................................................................................................ 6

*Radware Ltd. v. F5 Networks, Inc.*,
  No. C-13-02021-RMW, 2014 WL 3728482 (N.D. Cal. Jan. 1, 2014) ...................................... 2

*Thought, Inc. v. Oracle Corp.*,
  No. 12-05601, 2016 WL 3230696 (N.D. Cal. June 13, 2016) ............................................... 14

### Rules

L.R. 37-3 ........................................................................................................................................ 11

Patent L.R. 3-1 .................................................................................................................. 2, 6, 13, 14

Patent L.R. 3-6 ............................................................................................................................. 6, 9

Patent L.R. 3-8 ......................................................................................................................... 12, 14

VIASAT'S MOTION TO STRIKE PORTIONS OF SANDISK'S EXPERT REPORTS

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that, on Thursday, July 10, Defendant Viasat, Inc. ("Viasat" or "Defendant") will and hereby does move the Court to strike portions of the expert reports of Chuck Easttom and Lauren Kindler submitted on behalf of Plaintiffs SanDisk Technologies, Inc., SanDisk 3D IP Holdings Ltd., SanDisk Technologies LLC, and SanDisk Storage Malaysia Sdn. Bhd. ("SanDisk" or "Plaintiffs"), and to preclude Dr. Easttom and Ms. Kindler from testifying at trial regarding the same. Portions of Dr. Easttom's report on infringement ("Infringement Report") advance the exact same infringement theories this Court *excluded* when denying Plaintiffs' request for leave to amend those theories to their infringement contentions. Other portions of the Infringement Report disclose, for the first time, entirely new theories that were *never* disclosed by Plaintiffs—not in their operative infringement contentions, and not even in the amendments they belatedly sought and were denied. Portions of Ms. Kindler's expert report on damages ("Damages Report") advance damages theories for these new and untimely infringement opinions. These infringement theories, and the damages theories associated with them, are improper and should be stricken.

This Motion is based on this Notice, the Memorandum included herein, the Declaration of Patrick D. Curran and accompanying exhibits, the proposed Order served concurrently herewith, and any oral or documentary evidence adduced at the oral hearing on this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs brought this case against Viasat almost three years ago but barely prosecuted it until the very end of 2024. It was only then, with weeks remaining in fact discovery, that Plaintiffs changed course. First, Plaintiffs belatedly moved to amend their infringement contentions, as their previous infringement theories were not viable. Then, less than twenty-four hours before fact discovery closed, Plaintiffs sought extensive discovery on an unaccused "IPTV" product. The Court correctly rejected both motions, denying Plaintiffs leave to amend their infringement contentions and denying discovery on Viasat's "IPTV" offering. Dkt. Nos. 182, 183.

Plaintiffs were not content to comply with either Order, because that would have been fatal to their case. Instead, Plaintiffs served an expert report advancing the ***very same infringement theories*** this Court had already ***excluded***—along with other, new theories of infringement ***never*** disclosed previously. Compounding the prejudice from these untimely infringement contentions, Plaintiffs' damages expert served a report relying extensively on the new theories and apportioned ***more than 90%*** of Plaintiffs' total alleged damages to the unaccused "IPTV" product.

The Patent Local Rules do not allow plaintiffs to bring a case and then wait until the end of discovery to formulate a basis for it. Instead, the rules wisely require plaintiffs to identify accused products with particularity early in the case, *see* Patent L.R. 3-1(b), and provide detailed infringement contentions by a date certain "'to crystallize their theories of the case early in the litigation.'" Dkt. No. 182 at 3 (quoting *Radware Ltd. v. F5 Networks, Inc.*, No. C-13-02021-RMW, 2014 WL 3728482, at *2 (N.D. Cal. Jan. 1, 2014)). Once those required contentions are provided, those same rules require plaintiffs to show good cause and diligence before they can amend them. This prevents a "'vexatious shuffling of positions'" that would occur if plaintiffs could modify contentions without constraint. *Berger v. Rossignol Ski. Co.*, No. 05-02523, 2006 WL 1095914, at *3 (N.D. Cal. Apr. 25, 2006).

Plaintiffs' conduct here exemplifies the "vexatious" litigation the Patent Local Rules are intended to stop. As this Court found repeatedly, Plaintiffs did not diligently prosecute this action, and their last-minute theories and fishing expeditions were rejected. Dkt. Nos. 181, 182, 183.

Plaintiffs cannot now use experts to overcome their lack of diligence by ignoring the Patent Local Rules, adding infringement theories via experts that this Court already rejected, and an entirely new accused product that was never included in any version of Plaintiffs' infringement contentions. Allowing Plaintiffs effectively to amend their burden of proof contentions at this late date is highly prejudicial and would materially disrupt the schedule—a schedule the Court carefully set and maintained, but that Plaintiffs have repeatedly sought to derail. *See* Dkt. No. 183 at 8 ("The Court is not blind to the tactical timing and sequence of Sandisk's motion here (and the linkage to the motion to extend the case deadlines)."). Viasat respectfully requests that the Court strike all portions of the Infringement Report and Damages Report that rely on infringement theories Plaintiffs failed to disclose in their Patent Local Rule contentions.

## II.     RELEVANT FACTS

### A.     The Court Denied Leave to Add New Infringement Theories To Plaintiffs' Infringement Contentions

This case was filed in July 2022. Plaintiffs served their initial infringement contentions in February 2023. Curran Decl. ¶ 2. The Complaint was then dismissed without prejudice because Plaintiffs failed to allege why each plaintiff purportedly had standing, and discovery was stayed pending amendment of the Complaint. Dkt. No. 36 at 5 n.3. After that stay was lifted, Plaintiffs disclosed Dr. William Easttom as an infringement expert in February 2024, and Viasat made its source code available to Plaintiffs in March 2024. Curran Decl. ¶¶ 3-4; Dkt. 153-2 at 4. Plaintiffs served amended infringement contentions and their damages contentions that same month. Curran Decl. ¶¶ 5, 9; Dkt. 146. The Court held a claim construction hearing on August 27, 2024, Dkt. 109, and issued its claim construction order on September 20, 2024. Dkt. 120.

On January 16, 2025—three weeks before the February 7, 2025, close of fact discovery—Plaintiffs moved to amend their infringement contentions, claiming that these amendments were necessary to "clarify" their infringement theories "as a result of" the Court's claim construction order and to include additional contentions under the doctrine of equivalents to address "recently produced" discovery, including source code. Dkt. 146. Viasat opposed on numerous grounds, including that Plaintiffs' proposed amendments were not "clarifications" of existing theories but

entirely new and previously undisclosed theories, and that Plaintiffs had not diligently sought to amend. Dkt. No. 153.

On March 12, 2025, the Court denied Plaintiffs' motion to amend their infringement contentions, finding that Plaintiffs had not been diligent in discovering and disclosing the basis for the proposed amendments under the Patent Local Rules. Dkt. 182 at 3-7 & 5 n.7. In particular, the Court noted that Plaintiffs had "mischaracterize[d]" the claim construction order because the Court had not adopted its own constructions for the majority of the disputed terms, and Plaintiffs' diligence was therefore measured from the time the parties had proposed their own constructions—*i.e.*, February 2024. *Id.* at 4-6; *see id.* ("Plaintiffs waited more than ten months to amend their infringement contentions after receiving Defendant's proposed constructions, and Plaintiffs do not provide any justification for their delay."). The Court also found that permitting the proposed amendments "would disrupt the case schedule and unduly prejudice Defendant," including because additional discovery would be required. *Id.* at 8. In March 2025, this Court also denied Plaintiffs' motion to extend the fact discovery deadline, concluding that Plaintiffs had not shown diligence in timely pursuing discovery. Dkt. 181. Indeed, the Court has noted in three separate orders that Plaintiffs did not diligently prosecute this case. Dkt Nos. 181, 182, 183.

Because the Court denied Plaintiffs leave to amend their infringement contentions, the March 2024 amended infringement contentions remain operative.

### B.     Plaintiffs' Opening Expert Reports on Infringement and Damages

On March 24, 2025, Plaintiffs served Dr. Easttom's Infringement Report. Curran Decl. ¶ 6. In his Infringement Report, Dr. Easttom advances the same new theories of infringement that Plaintiffs unsuccessfully sought to add via their denied motion to amend. *E.g.*, Ex. A (Easttom Infringement Report) ¶¶ 554-57. This includes opinions that largely paraphrase (and sometimes even quote verbatim) the new theories of infringement this Court denied leave to add.

For example, on the '667 Patent, plaintiffs sought leave to add a new theory of infringement for the limitation "receive an indication of the NAS device having a secure region." Dkt. 146 at 7. According to Plaintiffs' new theory, this limitation was satisfied by a certain piece of source code – ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Dkt. 146-5 at 48. The

Court rejected this proposed addition to Plaintiffs' infringement contentions. Dkt. 182 at 6-7. Yet this is the ***exact same theory of infringement*** Dr. Easttom advances in his report, as he readily admitted in his deposition (Ex. E at 83:11-84:6):

| Proposed Amended Contentions (**Dkt. 146-5**) | Dr. Easttom's Infringement Theory (**Ex. E**) |
|---|---|
| ████████████████████████████████ | ████████████████████████████████ |
| ████ | ████████████████████████████████ |
|  | ██████████████ |
|  | ████████████████████████████████ |
| ████████████████████████████████ | ████████████████████████████████ |
| ████ | ████ |
|  | ██████████████ |

Similarly, for the "portable storage device" limitation of the '400 patent, Dr. Easttom's infringement report advances the same theory of infringement, nearly word for word, that Plaintiffs were denied leave to add to their contentions:

| Proposed Amended Contentions (**Dkt. 146-3**) | Dr. Easttom's Infringement Theory (**Ex. A**) |
|---|---|
| Seatback devices are portable storage devices because "they can be easily carried or moved about prior to being placed on the back of a given seat." | Seatback devices "are portable as they can be easily carried or moved about before and after being attached to the back of the seat." |

In addition to opining on excluded infringement theories, Dr. Easttom's Infringement Report also includes brand new opinions Plaintiffs ***never*** included, or sought leave to include, in their infringement contentions—they are entirely new and were disclosed for the first time in Dr. Easttom's report. For example, Dr. Easttom's report discloses a new "DRM" theory with respect to the "receive an indication of the NAS device having a secure region" limitation of the '667 patent. *Id.* ¶ 572. This theory is not included anywhere in Plaintiffs' March 2024 contentions for this limitation. Dkt. 188-3 (Plaintiffs' Mar. 2024 Infringement Contentions). Nor was it included in the (rejected) proposed amended contentions from January 2025. Dkt. 146-4 (Plaintiffs' Jan. 2024 Proposed Infringement Contentions). Plaintiffs appear to have developed the theory even after

proposing their January 2025 amendment. But Plaintiffs never sought, much less received, leave to add this new theory to the case.

Additionally, Dr. Easttom presents a theory of infringement for both the '667 and '400 patents based on a previously **unaccused product**—Viasat's "IPTV" or "Live TV" product, which was not previously identified as an accused product and was never mentioned as meeting all limitations of any claim in any version of Plaintiffs' infringement contentions. *E.g.*, *id.* ¶¶ 129, 509.

Finally, Plaintiffs also served a damages report on March 24 that quantified theories of damages for Plaintiffs' new theories of infringement. Ms. Lauren Kindler's report heavily relies on Dr. Easttom's improper opinions, including in particular the inclusion of a new "IPTV"/"Live TV" product as accused. Ex. B (Kindler Damages Report) ¶¶ 70, 219-21.

## III. <u>LEGAL STANDARD</u>

The Patent Local Rules require parties to disclose theories of infringement and invalidity early in the case, and to adhere to those theories once they have been disclosed. *See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1359 (Fed. Cir. 2006). Patent Local Rule 3-1 requires that a party claiming patent infringement must serve a disclosure of asserted claims and infringement contentions that are "**as specific as possible**," including an identification of Accused Instrumentalities with "each accused apparatus, product, device, process, method, act, or other instrumentality" identified "by name or model number," and a claim chart "identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality." Patent L.R. 3-1(b), (c). Once served, the infringement contentions may be amended "only by order of the Court upon a timely showing of good cause." *See* Patent L.R. 3-6.

Critically, the detailed contentions required by Patent Local Rule 3-1 cannot be amended by an expert report. As this Court has held, "a party may not use an expert report to introduce new infringement theories, new infringing instrumentalities, new invalidity theories, or new prior art references not disclosed in the parties' infringement contentions or invalidity contentions." *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-cv-05808-HSG, 2016 WL 612907, at *1 (N.D. Cal. Feb. 16, 2016) (Gilliam, J.) (quoting *ASUS Comp. Int'l v. Round Rock Research,, LLC*, No. 12-cv-02099 JST (NC), 2014 WL 1463609, at *1 (N.D. Cal. Apr. 11, 2014)); *see also KlausTech, Inc. v. Google LLC*, No.

1  10-cv-05899-JSW, 2018 WL 5109383, at *3-9 (N.D. Cal. Sept. 14, 2018), *subsequently aff'd*, 792
2  F. App'x 954 (Fed. Cir. 2020) (striking theories that were first disclosed in expert report, or that the
3  court had previously denied leave to add to plaintiff's infringement contentions).

4        In deciding a motion to strike, the relevant inquiry is whether "the expert permissibly
5  specified the application of a disclosed theory or impermissibly substituted a new theory altogether."
6  *Finjan*, 2016 WL 612907, at *1. If the theory is new, "prejudice is inherent in the assertion of a new
7  theory after discovery has closed." *Adobe Sys. Inc. v. Wowza Media Sys.*, No. 11-CV-02243-JST,
8  2014 WL 709865, at *15 n.7 (N.D. Cal. Feb. 23, 2014).

9  **IV.   ARGUMENT**

10       Plaintiffs' improper infringement theories fall into three categories: (1) theories the Court
11 already told Plaintiffs they could not add; (2) theories Plaintiffs never disclosed prior to Dr.
12 Easttom's Infringement Report; and (3) theories accusing Viasat's unaccused "IPTV"/"Live TV"
13 product, which Plaintiffs never identified as an Accused Instrumentality and never identified as
14 meeting every limitation of any asserted claim. All of these theories are procedurally improper under
15 the Patent Local Rules and the Scheduling Order. Adding them now, long after the deadline, would
16 be highly prejudicial. The portions of Dr. Easttom's and Ms. Kindler's expert reports that rely on
17 such theories should be stricken.

18     **A.   The Court Should Strike Plaintiffs' Untimely Theories Regarding the
       "Receiving an Indication" Claim Term of the '667 Patent**
19

20       Dr. Easttom's Infringement Report lays out two theories—both untimely—for how the
21 Court's construction of "receiving an indication of the NAS device having a secure region" in claims
22 1 and 11 (and dependent claims 2-7 and 2-16) of the '667 patent is supposedly met.

23       *First*, Dr. Easttom presents an "encryption theory":  

24

25

26 *E.g.*, Ex. A (Easttom Infringement Report) ¶¶ 554-57;
27 *see also e.g., id.* ¶¶ 530, 558-561, 573-579, 637-644, 655-661, 734-741, 752-758. As explained

28

1  below, this is the same theory of infringement Plaintiffs proposed in their January 2025 request to
2  amend their infringement contentions, and exactly the theory the Court *denied* leave to add.
3    *Second*, Dr. Easttom presents a brand new "DRM sub-folder / file path" theory: that movies
4  and TV shows "█████████████████████████████████████████
5  █████████████████████████████████ and █████████████████████████████
6  █████████████ *Id.* ¶ 572; *see also e.g., id.* ¶¶ 514-515, 517-519, 562, 569-593-595, 621, 625, 645,
7  651-654, 677, 681, 694-695, 697-699, 742, 748-751, 775-777, 795, 799, 828, 832. As explained
8  below, this "sub-folder file paths" concept is a theory of infringement Plaintiffs did not include in
9  their March 2024 contentions, did not try to add in their January 2025 request to amend those
10 contentions, and never disclosed *anywhere* before serving Dr. Easttom's March 2025 report.
11   Each of these theories should be stricken from Dr. Easttom's report.

### 1. **The "Encryption Theory" Has Already Been Rejected**

13   In their January 2025 motion to amend, Plaintiffs sought leave to add a new theory for how
14 the "indication of . . . a secure region" limitation is met—including, as relevant here, that the VCDS
15 code includes a specified ████████████████████████████████████████
16 Dkt. 146-4 (Plaintiffs' Jan. 2025 Proposed Amended Contentions) at 48. Plaintiffs' belated and
17 rejected amendment was critical to their case: Prior to proposing this amendment Plaintiffs had not
18 articulated *any* theory for the requirement that the indication be an indication *of a secure region*,
19 rather than simply being an indication *of a device*. Dkt. 188-3 (Plaintiffs' Mar. 2024 Infringement
20 Contentions). Plaintiffs' March 2024 contentions only alleged infringement on a reading of the
21 claim language that the Court *rejected* during claim construction: (1) Viasat's systems provided an
22 indication of a *device*, (2) that device *had* a secure region, and (3) this was enough—there only
23 needed to be an indication of a device, not an indication of a *secure region* in the device. Plaintiffs'
24 operative infringement contentions thus make no mention of any supposed indication of a *region*—
25 there is no reference at all to a ████████████████████████████████ that supposedly provides
26 such an indication. *See* Dkt. 153 (Viasat's Opposition to Plaintiffs' Motion to Amend) at 3.
27   The Court denied Plaintiffs' January 2025 request to add a new theory that t██████████
28 █████████████████████████████████████████ because Plaintiffs had not been

diligent in moving to amend with respect to this theory and because Viasat would be unduly prejudiced if Plaintiffs were permitted to amend so late in the litigation. Dkt. 182 at 5 n.7 & 8.

Despite the Court's order denying Plaintiffs leave to add this theory, Dr. Easttom offers this *exact same theory* in his Infringement Report. Dr. Easttom admitted in deposition that his infringement theory is, word-for-word, what this Court denied leave to add. *Compare* Dkt. 146-4 (Plaintiffs' Jan. 2025 Proposed Amended Contentions) at 48 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *with* Ex. E (Easttom Deposition Transcript) 83:11-84:6 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See also* Ex. A ¶¶ 530, 554-561, 573-579, 637-644, 655-661, 530, 734-741, 752-758 (relying on "encrypted" theory). Plaintiffs should not be permitted to evade the Court's ruling or the Local Patent Rules in this manner. All portions of Dr. Easttom's report addressing this "encryption" theory should be struck. *See KlausTech, Inc.*, 2018 WL 5109383, at *6-7.

### 2. **The "DRM Sub-Folder/ File Path" Theory Was Never Disclosed**

Dr. Easttom also attempts to introduce an entirely new theory regarding the "indication of . . . a secure region" limitation—the "DRM Sub-Folder / File Path" theory discussed above. Ex. A (Easttom Infringement Report) ¶¶ 514-515, 517-519, 562, 569-595, 621, 625, 645, 651-654, 677, 681, 694-695, 697-699, 742, 748-751, 775-777, 795, 799, 828, 832. Despite having known about Viasat's use of conventional digital rights management (DRM) since this case began—indeed, DRM is Plaintiffs' *entire focus* for the '400 patent—and despite disclosing Dr. Easttom as an expert in February 2024, Plaintiffs never previously discussed DRM for the '667 patent. Plaintiffs first raised this theory about "sub-folder" and "file path" structures for DRM files nearly three years after this case commenced, via an expert report, with no mention of that theory anywhere in Plaintiffs' infringement contentions for the '667 patent. The Patent Local Rules do not permit such untimely disclosures. *See* Patent L.R. 3-6.

The Court already determined that Viasat would be prejudiced if Plaintiffs were permitted to amend their contentions with respect to the encryption theory. *See* Dkt. 182 at 8 ("Granting Plaintiffs leave to amend a month after the close of fact discovery would disrupt the case schedule and unduly prejudice Defendant. Even a limited amendment . . . would likely require modification of the case schedule, including by allowing additional discovery.") (quotation marks omitted). The same is true for Plaintiffs' new "DRM sub-folder / file path" theory. Indeed, "prejudice is inherent in the assertion of a new theory after discovery has closed." *Adobe Sys. Inc.*, 2014 WL 709865, at *15 n.7. Because these "encryption" and "DRM" theories were not disclosed until January 2025 and March 2025, respectively, Viasat has not had an opportunity to investigate prior art responsive to these theories or supplement its invalidity contentions. After receiving Plaintiffs' draft proposed amended contentions in January 2025, Viasat also had only one month before the close of discovery to craft its non-infringement contentions with respect to the "encryption" theory, and Viasat had no time at all within the discovery period to respond to the undisclosed "DRM sub-folder / file path" theory. *See also* Dkt. 153 (Viasat's Opposition to Motion to Amend) at 12, 14-15. Viasat would therefore be unduly prejudiced if Plaintiffs were to be permitted to introduce these theories at this late stage of the case.

Plaintiffs should not be permitted to rely on the newly asserted "encryption" and "DRM sub-folder / file path" theories, and these theories should accordingly be stricken from Plaintiffs' expert reports and precluded at trial.

### B. The Court Should Strike Plaintiffs' Late Infringement and Doctrine of Equivalents Theories For The '400 Patent

Plaintiffs should also not be permitted to introduce a new theory regarding the "portability" of storage devices in the '400 patent because the Court previously denied Plaintiffs leave to amend their infringement contentions to add this very theory. Specifically, Claims 1 and 9 (and dependent claims 2, 6, 8-10, 13, and 17) of the '400 patent each require a "portable storage device," which the Court construed to mean "a storage device that can be easily carried or moved about." Dkt. 120. In their motion to amend their infringement contentions, Plaintiffs sought to add the new theory that seatback devices physically installed in airplane seats meet this limitation because "they can be

easily carried or moved about prior to being placed on the back of a given seat." *E.g.*, Dkt. 146-2 (Plaintiffs' Jan. 2025 Proposed Amended Infringement Contentions) at 19. The Court denied Plaintiffs leave to add this theory to the case, noting that Viasat would be unduly prejudiced if Plaintiffs were permitted to amend so late in the case. Dkt. 182 at 8; *see also id* at 5 n.7 (noting general lack of diligence in seeking to amend). Nevertheless, Dr. Easttom incorporated this theory nearly ***verbatim*** into his infringement report. *Compare* Ex. A (Easttom Infringement Report) ¶ 188 ("[T]hey are portable as they can be easily carried or moved about before and after being attached to the back of the seat."), *with* Dkt. 146-2 (Plaintiffs' Jan. 2025 Proposed Amended Infringement Contentions) at 19 ("For example, the seat back devices are portable data storage devices as the term was construed because they can be easily carried or moved about prior to being placed on the back of a given seat.").

In their motion to amend, Plaintiffs also sought to add a new doctrine of equivalents theory—that video screens embedded in an airplane seat "perform substantially the same function in substantially the same way to obtain substantially the same result as the claimed portable data storage device" by "communicat[ing] with one or more modules of the Viasta IFE, W-IFE, and/or Gateway systems." *E.g.*, Dkt. 146-2 (Plaintiffs' Jan. 2025 Proposed Amended Infringement Contentions) at 19. Again, the Court previously denied Plaintiffs leave to amend their infringement contentions to add ***exactly*** this theory. Dkt. 182 at 8. But Dr. Easttom nevertheless incorporates this theory in his report. *E.g.*, Ex. A (Easttom Infringement Report) ¶ 192 ("[T]hey perform the substantially the [sic] same function in substantially the same way to obtain substantially the same result as the claimed portable data storage device"; "[T]hese [seatback] devices communicate with one or more modules of the Viasat IFE, W-IFE, and/or Gateway systems.").

Because Plaintiffs seek to include in Dr. Easttom's Infringement Report theories regarding the "portability" of airplane seat back devices for which the Court previously denied Plaintiffs leave to amend, those portions of Dr. Easttom's Infringement Report addressing these theories should be stricken. S*ee id.* ¶¶ 166, 169-70, 188, 190-92, 339, 352, 354-56, 376, 378-80.[1]

---

[1] To further support Plaintiffs' theories on portability, Dr. Easttom also relies on documents produced by third-party Panasonic on March 9, 2025—over a month after the close of fact

### C. Plaintiffs Should Not Be Permitted to Rely on Theories Relating to Viasat's "IPTV" Product Because It Was Not Identified As An Accused Instrumentality

Dr. Easttom's and Ms. Kindler's discussions of Viasat's IPTV product should also be stricken because Plaintiffs did not identify that IPTV product as an Accused Instrumentality in their infringement contentions, or explain in those contentions how IPTV purportedly met every limitation of any asserted claim. *See Finjan,* 2016 WL 612907, at *2 ("Plaintiff cannot accuse a new product at this late stage in the proceedings."). Nor are damages contentions based on an unaccused product permitted. *Netfuel, Inc. v. Cisco Sys. Inc.*, No. 5:18-CV-02352-EJD, 2020 WL 4381768, at *3 (N.D. Cal. July 31, 2020) (holding that party has duty to amend damages contentions where its damages theory shifts in a "material respect" and noting that Patent Local Rule 3-8 "requires a party to identify not only each category of damages, but also its theories of recovery, factual support for those theories, and computations of damages within each category") (emphasis omitted) (quotation marks omitted).

Viasat's IPTV product delivers live TV broadcasts via satellite to a customer aircraft so that passengers can watch TV in real time on either the aircraft's seatback screens or on their personal devices. In his Infringement Report, Dr. Easttom dedicates a substantial portion of his analysis to Viasat's "IPTV/Live TV" product (or "IPTV-Live"), which he claims is the "third use case" that infringes the '400 and '667 patents. Ex. A (Easttom Infringement Report) ¶¶ 91, 129, 133-35, 139, 140, 158, 162-63, 172, 173, 183, 185, 186, 195-97, 199-201, 203, 207-08, 213-14, 225-26, 245, 248, 265-69, 277-78, 300-01, 307, 316, 319, 321, 325, 327-28, 357-59, 383-85, 387-89, 391, 396, 408-09, 419, 434, 451-55, 463-64, 490-91, 497-98, 506, 509-11, 516, 520, 568, 571, 583, 650, 653, 696, 750, 779, 782, 853, 856-59, 864, 889-90, 900, 902-03. Ms. Kindler then relies on Dr. Easttom's

---

discovery—and pursuant to an untimely subpoena served just two days before the close of discovery. Ex. A (Easttom Infringement Report) ¶¶ 166-68, 188-90, 352-54, 356, 376-78 (citing WD-Viasat-NDCA00015235). Viasat promptly objected to this and other third-party subpoenas at the time they were belatedly served. Ex. C (Mar. 19, 2025 Email from H. Dawson to S. Ririe). Because Plaintiffs continue to rely on discovery improperly obtained after the close of discovery, these portions of Dr. Easttom's Infringement Report should be stricken as well. *See* Local R. 37-3 ("Discovery requests that call for responses or depositions after the applicable discovery cut-off are not enforceable, except by order of the Court for good cause shown.").

1  analysis in describing Viasat's IPTV product as one of the infringing use cases, Ex. B (Kindler
2  Damages Report) ¶ 70, and apportions the *significant majority* of Plaintiffs' claimed damages to
3  Viasat's IPTV product. *Compare id.* ¶¶ 219-21
4  
5  *with* ¶¶ 220-21
6  
7  Despite Plaintiffs' new focus on Viasat's IPTV product in these expert reports, the
8  IPTV/Live TV product is not mentioned *at all* in Plaintiffs' damages contentions or in Plaintiffs'
9  interrogatory responses. *See generally* Ex. D (Plaintiffs' Damages Contentions); Dkt. 166-13
10 (Plaintiffs' Second Supp. Responses to Viasat's First Set of Interrogatories).  And nowhere in
11 Plaintiffs' operative infringement contentions (or rejected infringement contentions) do Plaintiffs
12 state that IPTV is an Accused Instrumentality—and certainly not with the specificity required by
13 the Patent Local Rules, which requires identifying where each and every limitation of the claims is
14 met by any Accused Instrumentality. *See* Patent L.R. 3-1(b), (c). Instead, as explained in the parties'
15 pending joint dispute letter regarding the IPTV product (a dispute that Plaintiffs belatedly raised for
16 the first time after the close of fact discovery), *see* Dkt. 188 at 4, the infringement contentions
17 defined the '667 accused products as "systems that implement edge storage," and specifically, "the
18 Viasat Content Delivery System ("VCDS")." Dkt. 188-3 (Infringement Contentions, Ex. B at 1).
19 And for the '400 patent, Plaintiffs defined the accused products as "Viasat's in-flight entertainment
20 ('IFE') [and] wireless IFE ('WIFE') systems." Dkt. 188-2 (Infringement Contentions, Ex. A at 1).
21 For both patents, IPTV/Live TV is *not* listed as an accused product. And in the few instances where
22 "IPTV" is mentioned, it is mentioned generically as an *example* of how the products Plaintiffs
23 actually accused deliver media content *such as* Apple TV, live television, or Disney+ content.[2] *See,*
24 *e.g.*, Dkt. 188-3 (Infringement Contentions, Ex. B at 2) (alleging VCDS is "used to stream media

---

[2] As Judge Kang correctly found, when used generically IPTV stands for "Internet Protocol Television" and broadly refers to any technology that allows for the delivery of TV signals using the internet protocol (i.e., the delivery of TV signals over the internet). Dkt. No. 183 at 6. But a mere citation to some utilization of IPTV protocols by an accused product is far from sufficient to put Viasat on notice that its separate IPTV product is accused of infringement.

content providers, *including* live TV from fuboTV"); Dkt. 188-2 (Infringement Contentions, Ex. A at 3 ("[T]he '400 Accused Products *provide access* to *media streaming services (e.g., IPTV, Disney+, Apple Music and/or Apple TV+*."). Plaintiffs did not allege that the media content or services themselves infringe—including Disney+, Apple Music, or Internet Protocol Television. Rather, the allegation is that Viasat's accused in-flight entertainment product infringes because it can deliver Disney+, Apple Music, or IPTV/live television content to end users.

Plaintiffs have taken the position that Viasat's IPTV product is accused because it is part of Viasat's IFE "offerings," and Plaintiffs identified the "entirety of Viasat's in-flight entertainment offerings as Accused Instrumentalities for the '400 Patent." Dkt. 188 at 1 (cleaned up). But Viasat's IFE solution and its IPTV product are *separate products* purchased by *separate customers*. *See* Dkt. 188 at 5. Plaintiffs cannot satisfy their disclosure requirements under the Patent Local Rules simply by accusing Viasat's "IFE" products or offerings generically, as a category. Plaintiffs' argument is akin to suggesting that a lawsuit accusing Samsung's "entertainment offerings" of infringing would be sufficient to put Samsung on notice that its specific "Frame" TV model is also accused. That is not the law. Plaintiffs must instead identify "as specific[ally] as possible" "each accused apparatus," including "by name or model number" and a "chart identifying specifically where and how each limitation of each asserted claim is found within each Accused Instrumentality." Pat. L.R. 3-1(b)-(c). The smattering of parentheticals referencing generic IPTV content along with other content like Disney+ and Apple Music simply does not amount to the limitation-by-limitation description of an Accused Instrumentality that the Patent Local Rules require.[3] And the absence of any discussion of

---

[3] *See Finjan,* 2016 WL 612907, at *4 (striking infringement theory where Plaintiff did not "expressly" disclose theory); *MLC Intellectual Property, LLC v. Micron Technology, Inc.,* 2019 WL 1865921, *4 (N.D. Cal. Apr. 25, 2019) (rejecting argument that patentee's theory was disclosed in its contentions because "implicit disclosures are contrary to the purpose of the local patent rules, which require parties to disclose the basis for their contentions in order to make them explicit and streamline patent litigation") (cleaned up); *Adobe*, 2014 WL 709865, at *14 (noting that any "ambiguity [in the infringement contentions] must be construed against the [patentee] in light of the purpose of the patent local rules, which is to establish the universe of infringement theories that will be litigated in any given case"); *id.* at *14 (striking opinion on "RTMPe Enhanced" protocol where infringement contentions disclosed infringement theory only on "RTMP" protocol); *Thought, Inc. v. Oracle Corp.*, No. 12-05601, 2016 WL 3230696, at *6 (N.D. Cal. June 13, 2016) (striking as

1  Viasat's IPTV product in Plaintiffs' damages contentions likewise does not satisfy Patent Local
2  Rule 3-8. *See* Pat. L.R. 3-8 (requiring patentee to provide "factual basis for damages" in damages
3  contentions).
4        Magistrate Judge Kang's recent order, resolving Plaintiffs' discovery dispute regarding
5  certain source code relating to Viasat's IPTV product, makes this point clear. In a letter filed just
6  after the close of fact discovery, Plaintiffs argued that Viasat's source code production was deficient,
7  including with respect to source code for the VCDS ground server, which Plaintiffs asserted relates
8  to, among other things, "configuration files for IPTV." Dkt. 159 at 1. In resolving the parties'
9  discovery dispute, Judge Kang rejected Plaintiffs' argument that these IPTV configuration files were
10 within the scope of relevant discovery, noting that "Sandisk simply identified no limitations in the
11 '400 patent claims directed to *how* IPTV content is configured" and that "it is no surprise . . . that
12 Sandisk's infringement contentions make only passing reference to the mere existence of IPTV as
13 an example (among other listed streaming services) of a media streaming service for purposes of
14 "provisioning secure media content" as required by the preamble of '400 claim 1." Dkt. 183 at 6.
15 Judge Kang further noted that this conclusion "aligns" with Judge Gilliam's order denying Sandisk
16 leave to amend its infringement contentions. *Id.* The fact that Plaintiffs were, for the first time in
17 February 2024, seeking source code relating to Viasat's IPTV product (despite having had access
18 to Viasat's source code for 11 months), demonstrates that Plaintiffs did not identify IPTV as an
19 accused product—and certainly not with the specificity required by the Patent Local Rules. *See* Dkt.
20 166-11 (Feb. 3, 2025 Email from A. ElDessouki to Viasat raising source code deficiencies, including
21 regarding IPTV, for the first time four days before the close of fact discovery).
22       Plaintiffs cannot add a new accused product in an expert report, and its attempt to do so here
23 is particularly prejudicial where Plaintiffs intend to apportion **93%** of their total claimed damages
24 solely to that product. Because Plaintiffs did not specifically accuse Viasat's IPTV product in either
25 their infringement or damages contentions, Viasat did not have adequate notice that IPTV is an

---

27 "gamesmanship" an opinion in the expert report that defendant argued was implicitly disclosed in
28 its infringement contentions).

accused product and Dr. Easttom's and Ms. Kindler's opinions regarding Viasat's IPTV product must be stricken. *See Finjan,* 2016 WL 612907, at *8 (granting motion to strike portions of damages reports, noting that damages expert "may not rely on any portion of [infringement report] which the Court has stricken as a new, previously undisclosed, infringing theory or product").[4]

## V. CONCLUSION

Because Plaintiffs failed to disclose the aforementioned infringement and damages theories, the Court should strike the relevant portions of Dr. Easttom's Report and Ms. Kindler's Report and should preclude Dr. Easttom and Ms. Kindler from opining on these infringement and damages theories if there is a trial.

DATED: June 4, 2025

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  /s/ *Patrick D. Curran*

Patrick D. Curran
*Attorneys for Defendant Viasat, Inc.*

---

[4] Dr. Easttom's report also discusses at length the "residential" use case of the '400 patent as it relates to "Video on Demand via Disney+ provided by Stream for Home." *See, e.g.*, Ex. A (Easttom Infringement Report) ¶¶ 133, 141, 148-149, 172, 179-180, 195, 202, 207, 208, 209, 213, 228-229, 248, 277, 278, 279, 300, 307, 316, 319, 358, 365-367, 383, 390, 396, 411-412, 434, 463, 464-465, 490, 497, 506, 844, 854, 857, 859, 900, 902; *see also* Ex. B (Kindler Damages Report) ¶¶ 20-21, 23, 26-28, 42, 44, 46, 51, 57, 60, 70, 71-75, 109, 116, 117, 121, 128-130, 137, 146, 152, 192, 195-196. The Court denied leave to amend infringement contentions to add "clarifying parentheticals" regarding residential products because Plaintiffs were not diligent in seeking amendment. Dkt. 182 at 7-8. Notably, the Court also stated that it was "skeptical" that Plaintiffs had previously identified residential applications as infringing products, including because of representations Plaintiffs made during claim construction. *Id.* at 7 n.8. While Plaintiffs do not presently assert a damages theory based on the alleged infringement of Viasat's residential products, portions of Dr. Easttom's and Ms. Kindler's reports that address these theories should be stricken because Viasat's residential products are not accused or otherwise relevant to this case.

# **CERTIFICATE OF SERVICE**

I hereby certify that, on June 4, 2025, a copy of the foregoing was filed with the Court using the Court's ECF system, which sent notice to all counsel of record.

DATED: June 4, 2025

By */s/ Patrick D. Curran*
Patrick D. Curran