# EXHIBIT D

L. Kieran Kieckhefer (SBN 251978)
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94105-0921
Telephone: 415.393.8337
KKieckhefer@gibsondunn.com

Lillian J. Mao (SBN 267410)
GIBSON, DUNN & CRUTCHER LLP
310 University Avenue
Palo Alto, CA 94301-1744
Telephone: 650.849.5307
LMao@gibsondunn.com

Ahmed ElDessouki (*pro hac vice)*
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.2345
AElDessouki@gibsondunn.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

WESTERN DIGITAL TECHNOLOGIES, INC., WESTERN DIGITAL IRELAND LTD., SANDISK 3D IP HOLDINGS LTD., SANDISK TECHNOLOGIES LLC, and SANDISK STORAGE MALAYSIA SDN. BHD.,

Plaintiff,

v.

VIASAT, INC.,

Defendant.

CASE NO. 4:22-cv-04376-HSG

**PLAINTIFFS' DAMAGES CONTENTIONS TO VIASAT, INC.**

Plaintiffs Western Digital Technologies, Inc., Western Digital Ireland Ltd., SanDisk 3D IP Holdings Ltd., SanDisk Technologies LLC, and SanDisk Storage Malaysia Sdn. Bhd. (collectively "Plaintiffs") hereby provide their damages contentions pursuant to Patent Local Rule 3-8 to Defendant Viasat, Inc. ("Defendant" or "Viasat"). Plaintiffs expressly reserve the right to supplement these contentions based on additional information obtained in discovery. This disclosure is made solely for purposes of this litigation and are preliminary in nature as discussed below.

## I. Categories of Damages

### A. Introduction

Plaintiffs have alleged that Viasat's media streaming software, systems, and services (the "Accused Products"), as referenced in Plaintiffs' First Amended Complaint,[1] infringe the Patents-in-Suit. While discovery remains in early stages and Viasat has not yet made a complete production of technical and financial documents and source code, the Accused Products include the Viasat Content Delivery System ("VCDS") and Viasat's In-Flight Entertainment ("IFE") systems, including Viasat's Wireless In-Flight Entertainment ("W-IFE") systems, and Viasat's In-Flight Communications ("IFC") systems, which are integrated with Viasat's IFE and W-IFE systems.

Based on the evidence of which Plaintiffs are currently aware, Plaintiffs are seeking monetary damages at least in the form of a reasonable royalty beginning on the issue date of each patent asserted in this litigation. Given that expert testimony regarding damages is premature at this time, it is premature for Plaintiffs to have determined which specific methodology or methodologies (such as the analytic method, the income method, the market method, etc., or some combination thereof) are most appropriate for determining a reasonable royalty in this case. This disclosure sets forth the initial bases for Plaintiffs' theory of damages based on information presently available.

### B. Reasonable Royalty Analysis

Damages in patent infringement cases are governed by 35 U.S.C. § 284, which states:

> *Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement but in no event*

[1] *See* Amended Complaint, dated May 9, 2023. Dkt. 38 ("FAC").

> *less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court. When the damages are not found by a jury, the court shall assess them. In either event the court may increase the damages up to three times the amount found or assessed.*

Plaintiffs contend that they are entitled to reasonable royalty damages as a result of Viasat's infringement of the following "Patents-in-Suit."

| The Patents-in-Suit | | | |
|---|---|---|---|
| **Patent Number** | **Title** | **Issue Date** | **Expiration Date** |
| 9,424,400 (the "'400 Patent") | Digital rights management system transfer of content and distribution | 2016-08-23 | 2032-04-30 |
| 10,447,667 (the "'667 Patent") | Secure stream buffer on network attached storage | 2019-10-15 | 2035-02-05 |

Plaintiffs also seek an award of reasonable attorneys' fees and costs, and prejudgment and post-judgment interest on Plaintiffs' award. These damages contentions address Plaintiffs' claim for reasonable royalty damages going back to the earlier of the date of the first infringement or the issue date of the relevant Patent-in-Suit, consistent with 35 U.S. Code § 286, and running till the expiration date of the relevant Patent-in-Suit. Plaintiff will address fees, interest, and costs at the appropriate time.

Determination of a reasonable royalty is typically based on the hypothetical negotiation framework set forth in *Georgia-Pacific Corp. v. United States Plywood Corp*. ("*Georgia-Pacific*"). In determining reasonable royalties for a license to the Patents-in-Suit, a hypothetical license scenario is considered, which involves an analysis of what terms the parties would have negotiated for a non-exclusive hypothetical license to the Patents-in-Suit. The determination of damages based on a reasonable royalty is generally based on a hypothetical negotiation between a willing licensor and a willing licensee at or about the time of first infringement. With respect to this hypothetical willing

licensor/licensee negotiation, courts have established a number of factors to be considered, including those factors established by the *Georgia-Pacific* lawsuit (the "Georgia-Pacific Factors").

The reasonable royalty analysis focuses on the economic and bargaining positions of Plaintiffs and Viasat at the time of the hypothetical negotiation and the likely outcome of such negotiation given their bargaining positions. In calculating reasonable royalty damages, generally a determination is made regarding: 1) the reasonable royalty rate; and 2) the appropriate royalty base. While *Georgia-Pacific* enumerates various factors that should be considered in determining reasonable royalties, the *Georgia-Pacific* Factors are not absolute determinants of a reasonable royalty, but rather are guidelines to evaluating the likely actions of the parties in a hypothetical negotiation. Based on the facts and circumstances of the case, the *Georgia-Pacific* Factors are not necessarily given equal weight nor are they all-inclusive. Rather, the *Georgia-Pacific* Factors are part of the overall analysis of reasonable royalty damages that Plaintiffs anticipate will be conducted through expert and fact discovery in this matter.

The hypothetical negotiation would have occurred on the later of: (1) the date the infringed patent(s) issued; or (2) the date the infringing systems and methods were first manufactured, used, offered for sale, or sold. The hypothetical negotiation would have provided for reasonable royalty starting from the date of the first infringement. Plaintiffs anticipate that further discovery into Viasat's financials, including sales and revenue information, will reveal the date of first infringement. Viasat's infringing systems and methods include all services and systems utilized and identified in Plaintiffs' Preliminary Infringement Contentions, served on February 23, 2023, and supplements thereto, which include, but are not limited to, the Viasat "Accused Products" identified therein, and incorporated herein by reference. In a hypothetical negotiation, the parties would have recognized that the Patents-in-Suit were valid and had been infringed by Viasat.

In the sections that follow, Plaintiffs present their preliminary understanding of facts and information that might have been considered by the parties to the hypothetical negotiation. As Viasat has yet to make a complete production on damages and technical issues, Plaintiffs cannot provide all of the factual support for its damages theory, or a computation of damages under this theory, and



Gibson, Dunn & Crutcher LLP

Plaintiffs reserve the right to supplement their damages contentions at a later time. Based on the information currently available to Plaintiffs, a reasonable royalty for Viasat's use of the Patents-in-Suit may be based on the factors below, which include, but are not limited to, comparable licenses (if any), Viasat's profits from the Accused Products, as well as the reduced and/or avoided costs saved by Viasat through its implementation of the Patents-in-Suit.

***Georgia-Pacific Factor No. 1***

*The royalties received by the patentee for the licensing of the Patent-in-Suit, proving or tending to prove an established royalty.*

As of the date of these contentions, Plaintiffs have not entered into any standalone patent license agreements specifically for the Patents-in-Suit.

***Georgia-Pacific Factor No. 2***

*The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.*

As of the date of these contentions, Viasat has not produced any license agreements that appear to be comparable to the circumstances of the hypothetical negotiation, nor have Plaintiffs been able to identify any despite their own efforts to date. However, fact discovery is ongoing, and Plaintiffs may update their damages contentions if additional information becomes available regarding license agreements produced by Viasat and/or as a result of Plaintiffs' continued research.

***Georgia-Pacific Factor No. 3***

*The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.*

License agreements reached in a hypothetical negotiation under *Georgia-Pacific* would provide a non-exclusive right to make, use, sell, or offer to sell products and services within the United States.

***Georgia-Pacific Factor No. 4***

*The licensor's established policy and marketing program to maintain its patent monopoly by not licensing others to use the invention or by gaining*

*licenses under special conditions designed to preserve that monopoly.*

As of the date of these contentions, Plaintiffs do not have an established policy or marketing program in connection with the Patents-in-Suit, and has not established a market rate either of a lump sum upfront payment or as an ongoing payment of royalties as a percentage of revenue or as a set amount per sale of Accused Products.

***Georgia-Pacific Factor No. 5***

*The commercial relationship between the licensor and the licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.*

Viasat participates in the media streaming market—for example, because it offers entertainment and communication systems and services for use in the home, on flights, in marine applications, and others. In the context of a hypothetical negotiation, the relationship between Plaintiffs and Viasat is one of patent owners and a user of the technology.

***Georgia-Pacific Factor No. 6***

*The effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such derivative or convoyed sales.*

Plaintiffs are in the process of investigating Viasat's other products and services to determine if any are convoyed services and/or products as a result of its infringement of the Patents-in-Suit. For example, Plaintiffs anticipate that Viasat generates additional revenues, and likely profits, from licenses, maintenance and service fees (annual, perpetual, or otherwise charged to customers in connection with the Accused Products). *See*, *infra*, § I.C (incorporated here by reference).

Plaintiffs expects more relevant information will become available during the course of ongoing fact discovery. As of the date of these contentions, it is not possible at this time for Plaintiffs to determine whether Viasat has generated revenues from non-patented items as a result of using Plaintiffs' patented technology, or the extent of any such revenues because Viasat has not produced

any financial information related to such revenues. For the same reasons, Plaintiffs are currently unable to determine the impact that any convoyed sales and services made or planned by Viasat at the date of first infringement would have had on the royalty rate negotiated between Plaintiffs and Viasat at the hypothetical negotiation.

***Georgia-Pacific Factor No. 7***

*The duration of the patent and the term of the license.*

A license resulting from the respective hypothetical negotiation would have been for the unexpired term of the Patents-in-Suit, which will continue at least until April 30, 2032 for the ’400 Patent and until February 5, 2035 for the ’667 Patent. Plaintiffs allege that the lengthy duration of remaining patent protection makes the Patents-in-Suit more valuable as it allows Viasat sufficient time to recover implementation costs, if any, and earn a return on the commercialization of the accused technology.

***Georgia-Pacific Factor No. 8***

*The established profitability of the product made under the patent; its commercial success; and its current popularity.*

As of the date of these contentions, Viasat has not produced complete financial records or testimony regarding its sales, forecasts, costs, and/or profits associated with the Accused Products. For example, the volume of use, and related revenue realized by Viasat for its use of the Accused Products sold by Viasat is unclear based on the sales information produced to date, and no data set for all time periods appears to have been produced presently. Viasat has not yet produced information that identifies the importance of the Patents-in-Suit to the revenue associated with the Accused Products or any information that attempts to place a value on the Patents-in-Suit as incorporated in the Accused Products. However, based on the unique and significant benefits and functionalities provided by the Patents-in-Suit, Plaintiffs believe that a significant portion of the value of the Accused Products to Viasat and its customers is attributable to its use of the patented technology at issue in this case. For example, the technology of the ’667 Patent allows Viasat to offer media streaming services using less bandwidth by shifting traffic out to off-peak time periods, which reduces and delays Viasat’s capital

costs in increasing the bandwidth available to users over its satellites, and also improves user experience by reducing latency which increases demand for Viasat's streaming services. *See, e.g.*, VIASAT_00003234 at 235-237, 244-254, 271, 282-287. Similarly, the technology of the '400 Patent allows Viasat to offer sponsored access to its IFC and IFE systems and related services, which increases user demand for those systems and related services. *See, e.g.*, VIASAT_00003234 at 235-237, 244-254, 271, 282-287, 305, 308, 318, 323-325, 331-333, 344-347.

As of the date of these contentions, Plaintiffs believe that Viasat's practicing of the patented invention in the Accused Products has enabled Viasat to generate significant economic value. The Accused Products have been commercially successful and remain popular in the marketplace as a result of Plaintiffs' patented features as incorporated into the Accused Products.

***Georgia-Pacific Factor No. 9***

*The utility and advantage of the patent property over the old modes or devices, if any, that had been used for working out similar results.*

The technology of the '667 Patent allows Viasat to offer media streaming services using less bandwidth by shifting traffic out to off-peak time periods, which reduces and delays Viasat's capital costs in increasing the bandwidth available to users over its satellites, and also improves user experience by reducing latency which increases demand for Viasat's streaming services. Similarly, the technology of the '400 Patent allows Viasat to offer sponsored access to its IFC and IFE systems and related services, which increases user demand for those systems and related services.

***Georgia-Pacific Factor No. 10***

*The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.*

*Georgia-Pacific* Factors Nos. 9 and 10 are typically analyzed together given the overlap in the subject matter covered by these two factors. As a result of practicing the Patents-in-Suit, Viasat and its customers enjoy significant benefits including, but not limited to, the following:

The technology of the '667 Patent allows Viasat to offer media streaming services using less

bandwidth by shifting traffic out to off-peak time periods, which reduces and delays Viasat's capital costs in increasing the bandwidth available to users over its satellites, and also improves user experience by reducing latency which increases demand for Viasat's streaming services. Similarly, the technology of the '400 Patent allows Viasat to offer sponsored access to its IFC and IFE systems and related services, which increases user demand for those systems and related services.

Additional information about benefits associated with practicing the Patents-in-Suit is expected to be produced by Viasat in response to Plaintiffs' discovery requests, including requests seeking marketing materials, and deposition testimony from deponents associated with Viasat. Additional information will also be available during expert discovery, including that obtained from Plaintiffs' technical expert(s).

As of the date of these contentions, Viasat has not produced sufficient information to determine the existence of any non-infringing alternatives that provided the same or similar benefits and functionalities as did the Patents-in-Suit, as of the dates of first infringement, without infringing the Patents-in-Suit. To the extent Viasat identifies any alleged non-infringing alternatives, Plaintiffs reserve the right to supplement this disclosure to address Viasat's contentions.

***Georgia-Pacific Factor No. 11***

*The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.*

As of the date of these contentions, Plaintiffs believe that Viasat's use of the Patents-in-Suit has been widespread. Based on information produced by Viasat as of the date of these contentions, the quantity of Accused Products sold and/or manufactured by Viasat and the volume of related services provided remains unclear. Viasat was and remains a leader in the media streaming industry, in particular over satellite Internet. Moreover, Viasat has not produced revenue information regarding all U.S. sales bearing on the Accused Products.

***Georgia-Pacific Factor No. 12***

*The portion of the profit or selling price that may be customary in the particular business or in comparable businesses to allow for the use of*

*the invention or analogous inventions.*

As of the date of these contentions, Viasat has not produced sufficient information to determine the portion of the profit or selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions. Plaintiffs has served discovery on Viasat seeking this type of information, but Viasat has not yet produced such information.

Plaintiffs will work with their technical expert(s) in order to further evaluate the technical comparability, if any, of any asserted non-infringing alternatives which may be identified during discovery, but which Viasat has not yet identified.

In addition, Plaintiffs' damages expert(s) will perform additional research into potentially comparable licenses available in the public domain.

***Georgia-Pacific Factor No. 13***

*The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.*

*Georgia-Pacific* Factors Nos. 12 and 13 are typically analyzed together given the overlap in the subject matter covered by these two factors. Both factors relate to the apportionment of profit between the use of the invention and other non-patented elements and consider the business risks associated with use of Viasat's assets in the implementation and commercialization of the Accused Products. As of the date of these contentions, Viasat has not produced sufficient information to determine the portion of Viasat's sales and/or incremental profits that are attributable to the Patents-in-Suit. Further, Viasat has not yet produced sufficient information to measure and/or quantify the risks associated with implementation and commercialization of the Accused Products. For example, Viasat has not produced any financial data associated with the cost of various components of the Accused Products, nor has Viasat produced any financial data associated with the services it provides using the Accused Products, nor any quantification of the volume of use of the services that Viasat provides (e.g., the number of

hours of cached content streamed as compared with the number of hours of non-cached content streamed, or the number of times users accessed "sponsored" content as compared with non-sponsored content.). Further, Viasat has not yet produced sufficient information to measure and/or quantify the risks associated with implementation and commercialization of the Accused Products. Based on information available as of the date of these contentions, Plaintiffs believe that a significant portion of Viasat's U.S. sales and/or incremental profits may be attributable to the Patents-in-Suit. However, Viasat has not produced sufficient information to permit the portion of this value attributable to the Patents-in-Suit to be calculated or even estimated.

Additional information will also be available during expert discovery, including from Plaintiffs' experts.

***Georgia-Pacific Factor No. 14***

*The opinion and testimony of qualified experts.*

As of the date of these contentions, no expert testimony has been offered in connection with Viasat's infringement of the Patents-in-Suit. Plaintiffs expect that expert discovery from damages and technical experts will assist in determining reasonable royalty damages.

***Georgia-Pacific Factor No. 15***

*The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, that amount which a prudent licensee – who desires, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention – would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.*

Plaintiffs anticipate that, based on additional information obtained from Viasat through discovery, Plaintiffs' experts will determine the relative bargaining positions of the parties at the

hypothetical negotiation and the reasonable royalty that the parties ultimately would have negotiated. Plaintiffs anticipate that the reasonable royalty will be based on an analysis of the facts of this case as applied to the *Georgia-Pacific* Factors. Plaintiffs also anticipate that the determination of a reasonable royalty will also include consideration of other relevant information that may have had an impact on the parties' economic bargaining positions at the hypothetical negotiation. Furthermore, Plaintiffs anticipate that, under the Book of Wisdom, the parties to the hypothetical negotiation would have considered information dated subsequent to the hypothetical negotiation.

Plaintiffs anticipate that the claim for reasonable royalty damages may be based, in part, on the terms of licenses to comparable patented technology and/or the portion of Viasat's sales and/or incremental profits that are attributable to the patented inventions. The royalty rate may take the form of a running royalty rate based on a percentage of Viasat's revenues, a per-unit royalty applied to the number of Accused Products sold or the volume of use of the infringing functionality implemented in the Accused Products, or a lump sum royalty or a combination thereof. Although Viasat has not produced sufficient information for Plaintiffs to determine the exact structure or royalty rate, Plaintiffs anticipate a royalty rate based on, but not limited to, consideration of the following data points:

- License agreements, if any, previously entered by Viasat;
- Prior verdicts and settlement agreements in cases involving Viasat's infringement of others' patent and other IP rights, as well as cases involving Viasat's allegations that others have infringed its patent and other IP rights;
- Potentially comparable public license agreements;
- Apportionments of revenue and profit to use of the Patents-in-Suit;
- Contemplation of the amount of apportioned revenue and profit that would have been agreed to be shared between the parties in the form of a reasonable royalty; and
- Viasat's costs saved or avoided as a result of its use of the Patents-in-Suit.

As there is insufficient information at this time to perform a complete reasonable royalty analysis based on *Georgia-Pacific,* Plaintiffs are unable to compute damages at this time without Viasat damages-related and technical-related documents and information as identified herein. For example,

Viasat has not yet produced comparable licenses; documents sufficient to show sales, revenues, cost, and profits associated with the Accused Products; marketing material; consumer surveys; white papers; product brochures; and discussions of consumer demand for the Accused Products and accused functionality.

**C. Convoyed or Collateral Sales**

In addition to revenues Viasat generates from its initial sales utilizing the Accused Products, Plaintiffs are entitled to damages related to convoyed or collateral sales, as discussed above in *Georgia-Pacific* Factor Number 6. For example, Viasat practices the asserted claims, and/or induces its customers to practice the asserted claims, to provide users with inventions to monetize the provision of content to user devices. For example, Viasat uses the accused VCDS to provides content from "edge nodes" to users in their homes, planes, boats, etc. *See e.g.*, VIASAT_00007343 at 379, 387-392 (explaining the application of the patented technology to provide content to users and to monetize the delivery of content); VIASAT_00003234 at 244-254, 271, 282-287. Similarly, Viasat uses its accused IFC and IFE solutions to monetize delivery of content. VIASAT_00003288 at 305, 308, 318, 323-325, 331-333, 344-347. Viasat has not yet produced any information regarding the service revenues it receives in connection with the provision of content to user devices.

Plaintiffs have requested that Viasat provide documents and information related to revenue, costs, marketing, promotion, development, and other financial information related to revenues received from use of the Accused Products. This revenue information may be contained in contracts and other financial documents which Viasat also has yet to produce. Plaintiffs have also sought but not yet received sufficient revenue information related to these potentially convoyed sales.

To the extent that revenue for these other products and services are considered convoyed sales or collateral sales, this revenue may also be included as part of the royalty base in the analysis set forth above.

**D. Other Categories of Damages**

In addition to the reasonable royalty analysis set forth above for past damages, Plaintiffs intend to seek other categories of damages for Viasat's infringement of the Patents-in-Suit. Specifically, if

Plaintiffs obtain a jury verdict or judgement for Viasat's past infringement, Plaintiffs will be seeking an ongoing royalty through the life of the Patents-in-Suit for Viasat's continued sales and revenue associated with the Accused Products based on the reasonably royalty analysis set forth above. In addition, Plaintiffs will be seeking pre-judgment and post-judgment interest on any amounts awarded by the jury.

## II. Outstanding Damages Discovery

Plaintiffs sought documents and interrogatory responses from Viasat to obtain information related to damages in this case. Thus far, Viasat has produced very little information in response. Viasat also has yet to produce all relevant information related to patent licenses and its licensing policies.

Plaintiffs are entitled to get copies of all patent license agreements or settlement agreements Viasat has that are related to the Accused Products or comparable products and/or services. In addition, Viasat has not yet produced documents related to its methodologies for determining the value of a patent or patent license nor any documents related to an established royalty or usual or customary royalties in the field of the Patents-in-Suit.

As stated above, Plaintiffs make these contentions based on current knowledge, understanding, and belief as to the facts and information available to it as of the date of these Contentions. Plaintiffs have served discovery requests on Viasat which cover the above information, and Viasat has not yet provided the information and documents in response to Plaintiffs' discovery requests. Plaintiffs' relevant requests (Interrogatories and Requests for Production) include the following:

- Identification of Viasat's products or services that use or provide media streaming, including components thereof. *See* Interrogatory No. 1; RFP No. 5.
- Financial information associated with the Accused Products, including total number of units sold, total sales in dollar value, profitability, location of each sale, and the applicable gross and net profit margins, as well as the services revenue associated with the Accused Products and facts relating to how the services revenue can be attributed to the patented functionality. *See* Interrogatory Nos. 3, 18-20.

- Information relating to customers, distributors, manufacturers, or any other entity purchasing, selling or making any Accused Product. *See* Interrogatory No. 5.
- Factual and legal bases for Viasat's claim to infringement related damages and theories. *See* Interrogatory Nos. 7-8, 16, 31, 35.
- Documents relating to the design, development, functionality, or testing of the Accused Products. *See* RFP Nos. 1, 6, 10, 13.
- Documents to show purchasers and customers of the Accused Products. *See* RFP No. 2.
- Documents relating to services that Viasat offers, provides, or sells to purchasers or users of the Accused Products. *See* RFP No. 3.
- Documents relating to the market for the Accused Products, market studies, reports, or analyses concerning product design, competition, consumer or consultant feedback received in any form, including surveys, advertising campaigns, promotional or sales training materials, market segments, market share, or market revenue (actual or predicted). *See* RFP Nos. 7, 9, 15, 17.
- Documents relating to advertising or promotion of the Accused Products. *See* RFP No. 14.
- Documents relating to licenses, settlements, or other agreements related to the Accused Products. *See* RFP Nos. 21-23.

The above mentioned information is required for Plaintiffs' reasonable royalty damages theory as Plaintiffs intend to rely on such information to determine the anticipated profits, incremental benefits, and revenue attributable to Viasat's use of the patented technology and the economic benefits that Plaintiffs and Viasat would have reasonably anticipated from use of the Patents-in-Suit as of the hypothetical negotiation date and the amount of such anticipated profits that would have been paid to Plaintiffs in the form of a royalty versus retained by Viasat.

As such, Plaintiffs have not yet completed their investigation, collection of information, discovery, or analysis related to this case. Accordingly, Plaintiffs reserve the right to supplement, amend, or modify the information contained herein, and to use and introduce such information and any

subsequently identified documents at trial. In particular, Plaintiff reserves the right to amend and supplement its damages theories as further discovery is taken and Viasat provides additional details about its products, services, activities, and financials.

DATED: March 1, 2024

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ L. Kieran Kieckhefer*
L. Kieran Kieckhefer
Lillian Mao
Ahmed ElDessouki

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 1, 2024, I caused a copy of the foregoing document to be served on the following counsel for Defendant Viasat, Inc. via email:

qe-viasat-wd@quinnemanuel.com

*/s/ Ahmed ElDessouki*
Ahmed ElDessouki