QUINN EMANUEL URQUHART & SULLIVAN, LLP
Steven Cherny (*pro hac vice*)
stevencherny@quinnemanuel.com
Patrick D. Curran (Bar No. 241630)
patrickcurran@quinnemanuel.com
Hannah E. Dawson (*pro hac vice*)
hannahdawson@quinnemanuel.com
Tzivya H. Beck (*pro hac vice*)
tzivyabeck@quinnemanuel.com
111 Huntington Ave, Suite 520
Boston, MA 02199
Telephone:     (617) 712-7100

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Nicola R. Felice (*pro hac vice*)
nicolafelice@quinnemanuel.com
Anastasia M. Fernands (*pro hac vice*)
anastasiafernands@quinnemanuel.com
Vanessa Blecher (*pro hac vice*)
vanessablecher@quinnemanuel.com
Alicia Lai (*pro hac vice*)
alicialai@quinnemanuel.com
295 5th Avenue
New York, NY 10016
Telephone:     (212) 849-7000

*Attorneys for Defendant Viasat, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

| | |
|---|---|
| SANDISK TECHNOLOGIES, INC., et al., | Case No.: 4:22-cv-4376-HSG |
| Plaintiffs, | **DEFENDANT VIASAT, INC.'S NOTICE OF MOTION AND MOTION TO STRIKE LAUREN KINDLER'S MAY 5, 2025 SUPPLEMENTAL EXPERT REPORT** |
| v. | |
| VIASAT, INC., | Date: Thursday, July 10 |
| Defendant. | Time: 2:00 PM |

Case No.
sadas

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that, on Thursday, July 10, at 2:00 PM, Defendant Viasat, Inc. ("Viasat" or "Defendant") will and hereby does move the Court to strike Ms. Lauren R. Kindler's supplemental expert report on damages, which was not served by Plaintiffs SanDisk Technologies, Inc., SanDisk 3D IP Holdings Ltd., SanDisk Technologies LLC, and SanDisk Storage Malaysia Sdn. Bhd. ("SanDisk" or "Plaintiffs") until May 5, 2025 (the "May Kindler Report"). The new report was served six weeks after the deadline and disclosed new opinions from both Ms. Kindler as well as Dr. Chuck Easttom, Plaintiffs' technical expert. Plaintiffs' untimely service of this unauthorized reply report was neither substantially justified nor harmless, and Plaintiffs' violation of the scheduling order is highly prejudicial to Viasat. Ms. Kindler's supplemental expert report should be stricken and both Ms. Kindler and Dr. Easttom should be precluded from testifying at trial regarding the new opinions first disclosed six weeks after the deadline.

This Motion is based on this Notice, the Memorandum included herein, the Declaration of Patrick D. Curran and accompanying exhibits, the proposed Order served concurrently herewith, and any oral or documentary evidence adduced at the oral hearing on this matter.

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................................1

II. FACTUAL BACKGROUND ................................................................................................2

    A. The Court Rejected Plaintiffs' Proposed Schedule And Set A More Rapid Schedule. ....................................................................................................................2

    B. The Court Rejected Plaintiffs' Subsequent Request to Extend The Expert Discovery Schedule. ..................................................................................................2

    C. Plaintiffs Served Ms. Kindler's Opening Report on March 24 ..................................3

    D. Viasat Served Its Rebuttal Report, Including Its "Bitrate" Rebuttal, On April 14. ...............................................................................................................................3

    E. Plaintiffs Serve An Unauthorized Reply On May 5, Disclosing New Damages Opinions That Rely On New Technical Opinions. ...................................4

III. LEGAL STANDARD ...........................................................................................................5

IV. ARGUMENT .........................................................................................................................6

    A. Plaintiffs Did Not Timely Disclose Ms. Kindler's Opinions Under Rule 26 ............6

    B. Exclusion Under Rule 37 Is Appropriate ..................................................................8

    C. Ms. Kindler's Report Is Untimely Under Rule 16(b) And The Scheduling Order .........................................................................................................................10

# TABLE OF AUTHORITIES

**Page**

### Cases

*Cave Consulting Grp., Inc. v. OptumInsight, Inc.*,
   No. 15-CV-03424-JCS, 2018 WL 1938555 (N.D. Cal. Apr. 25, 2018) ............................... 7, 10

*Cellspin Soft, Inc. v. Garmin Int'l, Inc.*,
   No. 17-CV-05934-YGR, 2021 WL 12171867 (N.D. Cal. Dec. 21, 2021) ............................... 6

*Chamberlin v. Hartog*,
   No. 19-cv-08243-JCS, 2024 WL 1024759 (N.D. Cal. Feb. 28, 2024) .......................... 5, 10, 11

*Johnson v. Mammoth Recreations, Inc.*,
   975 F.2d 604 (9th Cir. 1992) ................................................................................................ 5, 10

*Luke v. Family Care & Urgent Med. Clinics*,
   323 Fed. App'x. 496 (9th Cir. 2009) .......................................................................................... 7

*Mariscal v. Graco, Inc.*,
   52 F. Supp. 3d 973 (N.D. Cal. 2014) ...................................................................................... 5, 6

*Martinez v. San Benito Cnty.*,
   No. 15-CV-00331-JST, 2018 WL 1863013 (N.D. Cal. Apr. 18, 2018) ...................................... 8

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
   No. 16-CV-01393-JST, 2019 WL 468809 (N.D. Cal. Feb. 6, 2019) ...................... 5, 7, 8, 9, 11

*Pac. Info. Res., Inc. v. Musselman*,
   No. C06-2306 MMC (BZ), 2008 WL 2338505 (N.D. Cal. June 4, 2008) ............................... 7

*Plexxikon Inc. v. Novartis Pharms. Corp.*,
   No. 17-CV-04405-HSG, 2020 WL 1325068 (N.D. Cal. Mar. 20, 2020) ............................ 6, 10

*In re Toy Asbestos Litig.*,
   No. 19-CV-00325-HSG, 2020 WL 8815916 (N.D. Cal. May 27, 2020) ............................ 8, 10

*ViaTechs., Inc. v. Adobe, Inc.*,
   No. CV 20-358-RGA, 2023 WL 5975219 (D. Del. Sept. 14, 2023) .......................................... 9

*Vnus Med. Techs., Inc. v. Biolitec*,
   No. 08–3129 MMC (JL), 2010 WL 2629714 (N.D. Cal. June 29, 2010) ............................ 5, 9

*W&L Gore & Assocs., Inc. v. C.R. Bard, Inc.*,
   No. CV 11-515-LPS-CJB, 2015 WL 12731924 (D. Del. Nov. 4, 2015) ................................... 9

*Wong v. Regents of the Univ. of Calif.*,
   410 F.3d 1052 (9th Cir. 2005) .................................................................................................... 9

*Yeti by Molly Ltd. v. Deckers Outdoor Corp.*,
    259 F.3d 1101 (9th Cir. 2001) ............................................................................................... 5

**<u>Rules</u>**

Fed. R. Civ. P. 16 ................................................................................................... 5, 6, 10, 11

Fed. R. Civ. P. 26 ................................................................................................................ 7, 8

Fed. R. Civ. P. 26(a) ...................................................................................................... 5, 6, 8, 10

Fed. R. Civ. P. 26(e) .................................................................................................. 5, 6, 7, 10, 12

Fed. R. Civ. P. 37 ............................................................................................................... 5, 8

Fed. R. Civ. P. 37(b) ............................................................................................................ 6, 11

Fed. R. Civ. P. 37(c) ..................................................................................... 5, 6, 8, 10, 11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Court's scheduling order was clear: expert opinions were due March 24, 2025 for all issues where a party bears the burden of proof. Rebuttal reports were due three weeks later on April 14. No reply reports were permitted. The Court entered this schedule instead of the more relaxed schedule Plaintiffs requested. The Court then denied Plaintiffs' subsequent request for a scheduling extension. Plaintiffs have never accepted that ruling.[1] Most recently, on May 5 Plaintiffs served, with no advance notice, a new damages report six weeks *after* the deadline. That new 22-page report disclosed entirely new damages opinions from Ms. Lauren Kindler, and relied on new technical opinions from Plaintiffs' technical expert Dr. Chuck Easttom. The new opinions were disclosed three days before Viasat deposed Ms. Kindler, three days *after* Dr. Easttom had already been deposed, and nearly three weeks after Viasat had already served rebuttal reports addressing Plaintiffs' positions on damages and on technical issues.

Plaintiffs claim Ms. Kindler's new May 5 report is justified because it addresses a focused production of additional financial documents Viasat produced on March 24, shortly before Ms. Kindler's original report was served. That is incorrect. The majority of Plaintiffs' "supplemental" damages report is actually an unauthorized reply report, attempting to address and rehabilitate errors in Ms. Kindler's analysis that Viasat's damages expert (Dr. Gareth Macartney) identified in his April 14, 2025 rebuttal report. The unauthorized May 5 reply report is improper. It was served without leave, in violation of the scheduling order, and should be stricken. Even the portions of the May 5 report that arguably address Viasat's March 24 document production should be stricken; supplements must be timely, and Plaintiffs "supplementation" six weeks after the March 24 production was untimely and prejudicial. Plaintiffs knew the operative schedule required Viasat to rebut the entirety of Plaintiffs' damages case in only three weeks. To avoid any impact to the case schedule, Plaintiffs could and should have served an appropriate supplement in that three week

---

[1] *See, e.g.*, Dkt. No. 183 at 8 ("The Court is not blind to the tactical timing and sequence of Sandisk's motion here (and the linkage to the motion to extend the case deadlines).").

period, *before* Viasat was required to serve its rebuttal report. But Plaintiffs chose not to do so. As Ms. Kindler admitted in her deposition, Plaintiffs did not diligently review Viasat's March 24 production; Ms. Kindler and her eight-person team "had other things [they] had to do" and gave "priority [to those tasks] over analyzing the new data." Viasat should not be prejudiced by Plaintiffs' prioritization—especially where Plaintiffs strategically used a focused March production as pretext for an unauthorized May reply to an April rebuttal report. The Court should strike Plaintiffs' "supplemental" May 5 opinions.

## II.     FACTUAL BACKGROUND

### A.     The Court Rejected Plaintiffs' Proposed Schedule And Set A More Rapid Schedule.

After the Court issued its claim construction order (Dkt. 120), Plaintiffs proposed a relatively long schedule for discovery, with opening expert reports due April 18, rebuttal expert reports due May 16, and summary judgment motions due July 11. Dkt. 126 at 10-11. The Court rejected that schedule, instead ordering the parties to complete discovery more expeditiously—fact discovery closed February 7, expert reports were due March 24 on burden of proof issues, rebuttal reports were due April 14, and dispositive motions are due June 9. Dkt. 131 at 1-2. No "reply" expert reports were authorized. *Id*.

### B.     The Court Rejected Plaintiffs' Subsequent Request to Extend The Expert Discovery Schedule.

Despite initiating this case in July 2022, Plaintiffs conducted the vast majority of their discovery in the final weeks of the fact discovery period, including waiting until December 7, 2024 to serve "twenty new discovery requests." *See* Dkt. 181 at 3. Late on February 7, 2025—the last day of fact discovery—Plaintiffs made a flurry of filings, including a "motion to extend the deadline for the close of fact discovery and extend case schedule." Dkt. 158. That motion sought a 10-week extension for opening expert reports and a 9.5-week extension for rebuttal expert reports. Dkt. 158 at 3. Plaintiffs asserted Viasat had not produced a disputed set of financial documents (*id.* at 5-6), which Plaintiffs simultaneously moved to compel (Dkt. 159). On March 10, the Court found Plaintiffs had not diligently pursued discovery, and denied Plaintiffs' requested scheduling

1  extension. Dkt. 181 at 3-4. On March 14, 2025, Magistrate Judge Kang denied in large part
2  Plaintiffs' last-minute motion to compel but ordered Viasat to produce by March 28, 2025 certain
3  financial documents for the period beginning July (or third quarter) 2022. Dkt. 169 at 16. Viasat
4  produced the relevant documents on March 24, four days early. Ex. A (3/24/2025 Email from M.
5  Kim). Ms. Kindler received those files the same day. Ex. B (5/9/2025 Kindler Dep. Tr.) at 29:9-11.

### C. Plaintiffs Served Ms. Kindler's Opening Report on March 24

Later on March 24, Plaintiffs served Ms. Kindler's opening expert report. Ex. C (3/24/2025 Email from A. ElDessouki). Ms. Kindler admits she prepared the report with her "team of eight [employees] for this case," including an "associate," an "analyst," two "senior analyst[s]," a "case manager," a "manager," and two "vice presidents." Ex. B at 19:18-21; *id.* at 18:19-19:8, 20:11-23 (listing titles). In her March 24 report, Ms. Kindler noted that counsel had already received Viasat's supplemental production from earlier in the day on March 24 and stated she "reserve[d] the ability to review these files and update her analyses and opinions as needed." Ex. D (3/24/2025 Report of Ms. Lauren R Kindler) at 3 n. 5. There was no suggestion this would occur 6 weeks later and 3 weeks after Viasat served its rebuttal damages report.

### D. Viasat Served Its Rebuttal Report, Including Its "Bitrate" Rebuttal, On April 14.

Pursuant to the Court's schedule, Viasat's damages rebuttal expert, Dr. Gareth Macartney, served his rebuttal report on April 14. Ex. E (4/14/2025 Email from M. Kim). That report addressed multiple infirmities in Ms. Kindler's opening report, including rebuttal opinions addressing Ms. Kindler's faulty assumptions about the "bitrate" values applicable to her opinions on supposed cost savings. Ex. F (4/14/2024 Expert Report of Dr. Gareth Macartney) ¶¶ 87-89, 102. As Dr. Macartney explained, Ms. Kindler's "bitrate" assumptions were facially wrong, and "inconsistent with [the] service agreements" on which she purportedly relied. *Id.* ¶ 87. Ms. Kindler's bitrate assumptions led to an unrealistically high estimated bitrate and resulted in inflated estimated cost savings associated with the '667 patent. *Id.*

After serving Dr. Macartney's rebuttal report, Viasat prepared for the damages expert depositions scheduled to take place on May 7 (Dr. Macartney) and May 9 (Ms. Kindler). Ex. G (4/24

Email from A. ElDessouki) at 1-2. During the weeks between Ms. Kindler's opening report and the last week of expert discovery, Plaintiffs gave no indication that they intended to serve an additional Kindler report. *See id.*

### E. Plaintiffs Serve An Unauthorized Reply On May 5, Disclosing New Damages Opinions That Rely On New Technical Opinions.

On the afternoon of May 5—with only one day remaining before Dr. Macartney's deposition, only three remaining before Ms. Kindler's deposition, and three days *after* the deposition of Plaintiffs' technical expert Dr. Chuck Easttom— Plaintiffs served a "Supplemental Expert Report" from Ms. Kindler (the "May Kindler Report"). Ex. H (5/5/2025 Email from A. ElDessouki); Ex. D. In the May Kindler Report, Ms. Kindler states that she was asked to "supplement [her] damages opinions to take into consideration the[] files" in Viasat's March 24, 2025 production. Ex. D ¶ 2. In the same introductory paragraph, Ms. Kindler also states that, since the issuance of her first report, "Viasat submitted the Expert Rebuttal Report of Gareth Macartney" which "criticized [her] use of a minimum bit rate of 1.55 Mbps in [her] calculation of Viasat's bandwidth cost savings for IPTV services attributable to its use of the '667 Patent"—a criticism Ms. Kindler went on to address in a series of unauthorized reply opinions. *Id.*

Notably, the May Kindler report also relied on and disclosed a new "discussion with Dr. Easttom (Sandisk's technical expert)." *Id.* ¶ 2 & n. 10. Specifically, the May 5 report claimed Dr. Easttom had recently opined, in a "discussion" with Ms. Kindler, (1) that Ms. Kindler's opinions on "bit rate" were "a reliable and reasonable estimate for the average bandwidth that would be required to stream IPTV in 480p quality," (2) that "such estimates would include the effect of any compression techniques used by Viasat," (3) that supposedly "transmission rates vary significantly throughout a session," and (4) that "it would be inappropriate to use the minimum average bitrates provided in the American Airlines contract as a basis for the average bitrate Viasat actually experiences when streaming IPTV." *Id.* ¶¶ 28-29 & n. 66. These new opinions from Dr. Easttom were first disclosed May 5, three days *after* Viasat had **already deposed Dr. Easttom** on May 2— and were never set out in a report by Dr. Easttom. Ms. Kindler did not claim that she or Dr. Easttom formed these new "bit rate" opinions as a result of the financial spreadsheets Viasat produced on

1  March 24. Nor could they, as those spreadsheets do not disclose, discuss, or have any bearing on
2  the "bit rate" dispute at all.

3  When asked at deposition about the timing of her supplemental May 5 report, Ms. Kindler
4  explained that her eight-person team did not promptly start their analysis of the spreadsheets
5  produced on March 24th. Ex. B at 31:10-18. She explained that her team "had other things [they]
6  had to do," which she gave "priority over analyzing the new data." *Id.*

7  **III.    LEGAL STANDARD**

8  Federal Rule of Civil Procedure 26(a) requires that "a party's expert witness disclose, in a
9  written report, 'a complete statement of all opinions the witness will express' at trial, and the basis
10 and reasons for them." *Mariscal v. Graco, Inc.*, 52 F. Supp. 3d 973, 980-81 (N.D. Cal. 2014)
11 (quoting Fed. R. Civ. P. 26(a)(2)(B)(i)). Rule 26(a) further provides that these disclosures be made
12 "at the times" and "in the sequence" directed by the court. Fed. R. Civ. P. 26(a)(2)(D); *see also*
13 *Mariscal,* 52 F. Supp. at 981. A report is not "timely" if it is served after the Court's deadline.
14 *Mariscal*, 52 F. Supp. 3d at 981.

15 Relatedly, under Rule 26(e), any party who must supplement its expert's report is required
16 to do so "in a timely manner." A supplement is "untimely" if there is a delay between the newly
17 discovered information and the supplementation. *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
18 No. 16-CV-01393-JST, 2019 WL 468809, at *3 (N.D. Cal. Feb. 6, 2019). If a party fails to comply
19 with the timely disclosure requirements of Rule 26(a) or (e), pursuant to Rule 37(c)(1), "'the party
20 is not allowed to use that ... information or witness to supply evidence on a motion, at a hearing, or
21 at a trial[.]'" *Vnus Med. Techs., Inc. v. Biolitec*, No. 08–3129 MMC (JL), 2010 WL 2629714, at *2
22 (N.D. Cal. June 29, 2010) (quoting Fed. R. Civ. P. 37(c)(1)) (citations omitted). Rule 37 provides
23 for two exceptions to the sanction of exclusion: "if a party's failure to disclose the required
24 information is substantially justified or harmless." *Todd v. LaMarque*, No. 03–3995 SBA, 2007 WL
25 3168272, at *1 (N.D. Cal. Oct. 25, 2007) (citing *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259
26 F.3d 1101, 1106 (9th Cir. 2001)). The party facing exclusion has the burden of proving justification
27 or harmlessness. *Id.*

28

VIASAT'S MOTION TO STRIKE LAUREN KINDLER'S MAY 5, 2025 SUPPLEMENTAL EXPERT REPORT
CASE NO.: 4:22-cv-4376-HSG
5

1    Under Federal Rule of Civil Procedure 16(b), a party's failure to comply with a Court's
2 scheduling order may only be excused upon a showing of good cause. *Chamberlin v. Hartog*, No.
3 19-cv-08243-JCS, 2024 WL 1024759, at *1 (N.D. Cal. Feb. 28, 2024). "Rule 16(b)'s good cause
4 standard primarily considers the diligence of the party seeking the amendment." *Id.* (quoting
5 *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)). If the schedule "cannot
6 reasonably be met despite the diligence of the party seeking the extension," the Court may modify
7 it; if the party was not diligent, "the inquiry should end," *id.*, and the party who failed to meet the
8 schedule may be sanctioned with "any just orders," including "prohibiting the disobedient party
9 from … introducing designated matters in evidence." Fed. R. Civ. P. 16(f)(1)(C); Fed. R. Civ. P.
10 37(b)(2)(A)(ii)–(iv) (incorporated by reference).

11 **IV.    ARGUMENT**

12    The May Kindler Report should be excluded under Rules 26, 37(c)(1), and 16. The report is
13 neither a timely opening report under Rule 26(a) nor a proper supplement under Rule 26(e); it is an
14 unauthorized, untimely reply report. Exclusion under Rule 37(c)(1) is similarly appropriate because
15 the report is neither substantially justified nor harmless to Viasat and will disrupt the schedule. And
16 the May Kindler Report violates the Court's Scheduling Order without good cause under Rule 16,
17 both because it is an unauthorized reply not contemplated by the Scheduling Order and because
18 Plaintiffs did not show diligence in fact and expert discovery.

19    **A.    Plaintiffs Did Not Timely Disclose Ms. Kindler's Opinions Under Rule 26**

20    Under Rule 26(a), the May Kindler Report is not a timely opening report. Rule 26(a) requires
21 expert reports be served "at the times" and "in the sequence" directed by the court." Fed. R. Civ. P.
22 26(a)(2)(D); *see also Mariscal,* 52 F. Supp. at 981. A report is not "timely" if it is served after the
23 Court's deadline. *Id.* Under the Court's Scheduling Order, opening expert reports were due on
24 March 24. Dkt. 131. Plaintiffs served the May Kindler Report six weeks later.

25    Although a party has "no[] … right" to supplement its expert's report, *Plexxikon Inc. v.*
26 *Novartis Pharms. Corp.*, No. 17-CV-04405-HSG, 2020 WL 1325068, at *2 (N.D. Cal. Mar. 20,
27 2020), it has a "duty" to do so upon "learn[ing] that in some material respect" the report "is
28 incomplete or incorrect." Fed. R. Civ. P. 26(e) (emphasis added). But the Rule 26(e) duty to

1  supplement is not "a loophole through which a party who … wishes to revise [its expert's]
2  disclosures in light of [its] opponent's challenges to the analysis and conclusions therein, can add to
3  them to [its] advantage after the court's deadline for doing so has passed." *Plexxikon Inc*, No. 17-
4  cv-04405-HSG, 2020 WL 1325068, at *2. Specifically, the duty to supplement is not a backdoor to
5  submit an unauthorized reply report. An expert may not submit a purported "supplemental report"
6  that is actually an "inappropriate" reply report. *Cellspin Soft, Inc. v. Garmin Int'l, Inc.*, No. 17-CV-
7  05934-YGR, 2021 WL 12171867, at *2 (N.D. Cal. Dec. 21, 2021) (expert's "admissions that his
8  revisions followed a review of [the opposing side's] expert report indicate that [his] supplemental
9  reports are inappropriate []reply rebuttal reports").

10  Just like in *Cellspin*, the May Kindler Report ***expressly responds*** to Dr. Macartney's
11  criticisms in his rebuttal report. Ex. D ¶ 2 & n. 10. As such, it is not a supplement at all and should
12  be stricken solely on this basis. *Luke v. Family Care & Urgent Med. Clinics*, 323 Fed. App'x. 496,
13  500 (9th Cir. 2009) ("[s]upplementation under the Rules means correcting inaccuracies, or filling
14  the interstices of an incomplete report based on information that was not available at the time of the
15  initial disclosure") (citation omitted).

16  But even if the May Kindler Report were a supplement, it would still be impermissible under
17  Rule 26(e), which requires supplementation "in a ***timely*** manner." *Oracle Am., Inc. v. Hewlett*
18  *Packard Enter. Co.*, No. 16-CV-01393-JST, 2019 WL 468809, at *3 (N.D. Cal. Feb. 6, 2019)
19  (emphasis added) (quoting Fed. R. Civ. P. 26(e)) (report not timely after eight-week-delay between
20  new information and notice of intent to supplement). If an expert delays in performing the analysis
21  required to supplement her report, the supplement is not timely. *Pac. Info. Res., Inc. v. Musselman*,
22  No. C06-2306 MMC-BZ, 2008 WL 2338505, at *1 (N.D. Cal. June 4, 2008) (supplement not timely
23  where expert "waited … to perform … analysis" that "should have been conducted earl[ier]").

24  Plaintiffs' lack of diligence during fact discovery, and Ms. Kindler's lack of diligence in
25  analyzing and preparing the supplement, show that the report is not "timely" under Rule 26. Neither
26  Plaintiffs nor Ms. Kindler addressed Viasat's March 24 production with any regard for the schedule,
27  which required much faster action to avoid disrupting the Court's timetable. First, Plaintiffs waited
28  until the very last day of fact discovery to raise with the Court any issue with Viasat's financial

production, putting them "at fault for failure to identify the evidence earlier." *Cave Consulting Grp., Inc. v. OptumInsight, Inc.*, No. 15-CV-03424-JCS, 2018 WL 1938555, at *4 (N.D. Cal. Apr. 25, 2018). Second, Plaintiffs did not disclose their intent to supplement until they served the report itself—six weeks after receiving Viasat's March 24 production, and just days before Ms. Kindler's deposition. Ex. H. Finally, as Ms. Kindler admitted in deposition, she did not prioritize analyzing the March 24 production or preparing her supplemental report. Ex. B (Kindler Dep. Tr.) at 31:10-18 ("I mean, we had other things to do. […] ***And so some of those things would take priority over analyzing the new data***"). As such, the May Kindler Report does not meet Rule 26(e)'s "timel[iness]" requirement and thus is not a permissible supplement.

### B.  Exclusion Under Rule 37 Is Appropriate

Striking Ms. Kindler's late opinion is the proper remedy for her unauthorized May Report. Rule 37(c)(1) provides that, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." This "gives teeth to Rule 26's disclosure and supplementation requirements[.]" *Oracle*, 2019 WL 468809, at *4 (quotations omitted). Because Plaintiffs cannot show that May Kindler Report is substantially justified or harmless, the Court should strike the Report.

First, Plaintiffs' decision to wait six weeks to serve a reply damages report, under the guise of a supplement, is not substantially justified. "A party's preference for a different schedule than the one actually imposed by the Court does not … amount to 'substantial justification' for later amendments to expert reports served in accordance with deadlines set by the Court." *Oracle*, 2019 WL 468809, at *4. That is particularly true here, where the Court denied Plaintiffs' initial request for a lengthy schedule and then denied Plaintiffs' subsequent request to extend the schedule. Plaintiffs wanted more time for discovery and expert disclosure, but that does not "substantially justify" serving an extra expert report out of time. *Id.* Likewise, when a party's own dilatory discovery practices cause it to belatedly learn new facts in discovery, those practices do not

1  "substantially justify" an untimely expert report.[2] *E.g., In re Toy Asbestos Litig.*, No. 19-CV-00325-
2  HSG, 2020 WL 8815916, at *3 (N.D. Cal. May 27, 2020) (a party "may not rely[] on supplemental
3  expert reports" to "sidestep [its] failure" to "demonstrate its own diligence."). Here, the timing of
4  the supplement—six weeks after receiving Viasat's production—was clearly designed to give Ms.
5  Kindler time to review and respond to Dr. Macartney's rebuttal.[3] *See* Ex. D, ¶ 2.

6      *Second*, Plaintiffs' late disclosure was not harmless. An untimely expert disclosure is "not
7  harmless" if it causes "disruption to the schedule of the [C]ourt and other parties," including via
8  disruption to "the expert discovery and summary judgment schedules." *Oracle*, 2019 WL 468809,
9  at *4; *Wong v. Regents of the Univ. of Calif.,* 410 F.3d 1052, 1062 (9th Cir. 2005) (untimely
10 disclosure of expert witness not harmless where deadlines for completing discovery had expired,
11 even with "ultimate trial date … still some months away"); *Vnus Med. Techs. Inc.*, 2010 WL
12 2629714, at *5 (VNUS would suffer prejudice by being forced to respond to reports outside the
13 court's previously-ordered schedule). Here, Plaintiffs' last-minute disclosure was prejudicial for
14 multiple reasons:

15     ***Kindler deposition***: the late report disrupted Viasat's ability to prepare for expert
16 depositions, since Viasat did not have adequate time to analyze the May Kindler Report before Ms.
17 Kindler's deposition days later.

---

[2] Even if the timing of the purported "supplemental" report had been based purely on Viasat's March 24 production—which it was not—Plaintiffs would still lack substantial justification, because Plaintiffs can "provide no justification for why [they] failed to" diligently pursue the financial spreadsheets before the close of fact discovery. *Martinez v. San Benito Cnty.*, No. 15-CV-00331-JST, 2018 WL 1863013, at *2 (N.D. Cal. Apr. 18, 2018). In *Martinez*, a party claimed that the timing of the expert report was based on a late-breaking discovery in a deposition, but the supplementation was still not substantially justified because she had "failed to notice that deposition earlier." *Id.* Here, Plaintiffs—who filed this case almost three years ago (*see* dkt. 1)—left the vast majority of their fact discovery until the final weeks of the schedule, and flatly ignored the Court's admonishments that "[t]he parties must allow sufficient time … to resolve discovery disputes before the close of discovery." Judge Gilliam's Civil Standing Order ¶ 19.

[3] In other words, Ms. Kindler and Plaintiffs took twice as long to prepare this "supplement" as Viasat had to rebut Ms. Kindler's entire March 24 analysis.

*Easttom deposition*: Ms. Kindler relied on new opinions from Plaintiffs' technical expert, Dr. Chuck Easttom, that Plaintiffs did not disclose until *after* Dr. Easttom had *already* been deposed. Viasat was deprived of the ability to depose Dr. Easttom as to his own opinions, let alone rebut those new opinions in Viasat's own expert reports.[4]

*Macartney rebuttal*: by failing to supplement between March 24 and May 5, Plaintiffs deprived Viasat's expert, Dr. Macartney, of the ability to rebut the new opinions in Ms. Kindler's untimely May Report.

*Almeroth rebuttal*: by failing to disclose Dr. Easttom's technical opinions by the March 24 deadline, Viasat's technical rebuttal expert, Dr. Kevin Almeroth, was deprived of any ability to address and rebut those new technical opinions.

These consequences of Ms. Kindler's late disclosure are each prejudicial to Viasat. The prejudice could not be cured without disruption of the entire case schedule and another full, costly round of expert reports and depositions. As such, the report should be stricken under Rule 37(c)(1) for failure to comply with the disclosure rules under Rule 26(a).

**C.     Ms. Kindler's Report Is Untimely Under Rule 16(b) And The Scheduling Order**

Even if the May Kindler Report were a proper supplement under Rule 26(e), Rule 16(b) and (e) would still apply, and would bar Plaintiffs from relying on the supplement. Rule 26(e) "is not an invitation to ignore case deadlines." *In re Toy Asbestos Litig.*, 2020 WL 8815916, at *3. It does not grant a right to supplement. *Plexxikon Inc*, 2020 WL 1325068, at *2 (citations omitted); *see also*

---

[4] Notably those opinions were never actually presented in a report from Dr. Easttom report; they were only disclosed as "discussions" with a damages expert who lacks the technical qualifications to advance those opinions. For that reason alone they should be excluded. *See, e.g., ViaTechs., Inc. v. Adobe, Inc.*, 2023 WL 5975219, No. CV 20-358-RGA, at *11-12 (D. Del. Sept. 14, 2023) (excluding damages expert's testimony "base[d] … on a conversation she had with [the technical expert]" on "technical feasibility" of non-infringing alternatives where those opinions were not set out on the technical expert's report; simply "repeating what [the technical expert] told her, all of which is outside her expertise," would be "unfairly prejudicial" and hearsay); *W&L Gore & Assocs., Inc. v. C.R. Bard, Inc*., No. CV 11-515-LPS-CJB, 2015 WL 12731924 (D. Del. Nov. 4, 2015) (precluding damages expert from relaying conversation with technical expert where technical expert had not disclosed those opinions in his report; "repeating [the technical expert's] views on technological comparability without applying her own experience or methodology to those views… would amount to the transmission of hearsay to the jury, which is not permissible").

*Cave Consulting Grp., Inc.*, 2018 WL 1938555, at *3 (citations omitted) ("Duties are usually owed to other people, and are not for the benefit of the party who has the duty … [A] party [can]not invoke Rule 26(e) to amend an expert report for its own benefit."). As such, a party cannot "rely[] on supplemental expert reports" to "sidestep its failure" to "demonstrate its own diligence" under Rule 16. *In re Toy Asbestos Litig.*, 2020 WL 8815916, at *3 (applying Rule 16 to supplemental expert report dispute).

Plaintiffs cannot establish good cause to modify the schedule under Rule 16(b) because they have not been diligent during either fact or expert discovery. Under Fed. R. Civ. P. 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." "Rule 16(b)'s good cause standard primarily considers the diligence of the party seeking the amendment." *Chamberlin*, 2024 WL 1024759, at *1. The burden is on the party seeking to modify the schedule to show diligence. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). If the party was not diligent, "the inquiry should end." *Chamberlin*, 2024 WL 1024759, at *1. The party who failed to show diligence may be sanctioned with "any just orders," including "prohibiting the disobedient party from … introducing designated matters in evidence." Fed. R. Civ. P. 16(f)(1)(C); Fed. R. Civ. P. 37(b)(2)(A)(ii)–(iv) (incorporated by reference).

This District's local rules direct parties to "initiate discovery requests and notice depositions sufficiently in advance of the [discovery] cut-off date." L.R. 37-3, Commentary. Further, this Court's Standing Civil Order requires parties to "allow sufficient time … to resolve discovery disputes before the close of discovery." ¶ 19. The Standing Order further states that, "[a]bsent truly compelling reasons, the Court will not extend case deadlines based on a pending discovery dispute." *Id.* As such, simply because fact discovery is "ongoing at the time of [an] expert discovery deadline" is insufficient to show good cause, even if a party has "diligently sought to incorporate the late-produced discovery into its expert reports." *Oracle*, 2019 WL 468809, at *4. More specifically, where a party's lack of diligence in earlier discovery matters "ha[s] caused ripple effects that threaten the case schedule," including its own expert report timing, there is no good cause to extend the expert discovery deadline. *Id.* (declining to extend expert discovery deadline to permit supplemental expert report).

Here, Plaintiffs have only themselves to blame for the fact that the dispute over Viasat's financial production was not resolved before expert discovery was underway. They could have shown diligence in conducting fact discovery. Instead, they waited until the final days of the discovery period to jump into action, filing a laundry list of grievances shortly before midnight on the very last day of discovery. *See* Dkts. 158, 159. That conduct, in dereliction of their obligations under this Court's Standing Order and the Local Rules, shows a lack of diligence and of good cause to extend the expert deadlines, as this Court has already found. Dkt. 181 at 3-4. And even setting aside the Plaintiffs' lack of diligence during fact discovery, the timing of the supplement itself—six weeks after receiving the materials—lacks diligence for the reasons set forth above. *See* § IV.B. *supra*. As such, the May Kindler Report should be stricken under Rule 16(f) as well as Rule 37(c)(1).

## **CONCLUSION**

Because Plaintiffs failed to timely serve the May Kindler Report, because it is not a proper supplemental report under Rule 26(e), and because Plaintiffs failed to obtain leave to modify the expert report schedule, the Court should strike Ms. Kindler's May report and preclude Ms. Kindler from opining concerning anything contained in the May Kindler Report at trial.

DATED: June 4, 2025

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  /s/ *Patrick D. Curran*
Patrick D. Curran
*Attorneys for Defendant Viasat, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that, on June 4, 2025, a copy of the foregoing was filed with the Court using the Court's ECF system, which sent notice to all counsel of record.

DATED: June 4, 2025

By  /s/ Patrick D. Curran
    Patrick D. Curran