# EXHIBIT D

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

SANDISK TECHNOLOGIES, INC., et al.,

                  Plaintiffs,

v.

VIASAT, INC.,

                  Defendant.

Case No. 4:22-cv-04376-HSG

## SUPPLEMENTAL EXPERT REPORT OF LAUREN R. KINDLER

## MAY 5, 2025

## I.    INTRODUCTION AND ASSIGNMENT

1.    I have been retained as an economics and damages expert for Sandisk Technologies, Inc., SanDisk 3D IP Holdings Ltd., SanDisk Technologies LLC, and SanDisk Storage Malaysia Sdn. Bhd. (collectively, "Sandisk," "SanDisk," or "Plaintiffs") in the matter of *Sandisk Technologies, Inc., et al. v. Viasat, Inc.*[1] I understand that Sandisk alleges that Viasat, Inc. ("Viasat" or "Defendant") infringes certain claims of the patents listed in **Supplemental Table 1** (the "Patents-in-Suit") by developing and/or selling media streaming software, systems, and services.[2] I issued my opening expert report in this matter on March 24, 2025 (the "Kindler Report").[3]

**Supplemental Table 1**
**Patents-in-Suit[4]**

| U.S. Patent No. | Title | Asserted Claims[5] | Issuance Date | Expiration Date |
|---|---|---|---|---|
| 9,424,400 ("'400 Patent") | Digital rights management system transfer of content and distribution | 1, 2, 6, 8 – 10, 13, and 17 | 8/23/2016 | 4/30/2032 |
| 10,447,667 ("'667 Patent") | Secure stream buffer on network attached storage | 1 – 7 and 11 – 16 | 10/15/2019 | 2/05/2035 |

2.    I understand from counsel that Viasat produced hundreds of "billing detail" documents on the day the Kindler Report issued ("Viasat's March 24, 2025 Production").[6] At the time of issuing my report, I had not reviewed nor considered these files. I have been asked to

---

[1] Complaint for Patent Infringement filed on July 28, 2022, p. 1. *See also*, Amended Complaint for Patent Infringement filed on November 8, 2023 ("Amended Complaint"), p. 1.

[2] Amended Complaint, pp. 1, 4, and 10.

[3] My current resume and testimony experience are contained in **Supplemental Appendix A** to this report.

[4] U.S. Patent No. 9,424,400. *See also*, U.S. Patent No. 10,447,667. *See also*, U.S. Patent No. 9,424,400, Google Patents. (https://patents.google.com/patent/US9424400B1/en?oq=9424400, viewed on November 20, 2024.) *See also*, U.S. Patent No. 10,447,667, Google Patents. (https://patents.google.com/patent/US10447667B2/en?oq=10447667, viewed on November 20, 2024.) *See also*, Amended Complaint, pp. 3 – 5 and 10 – 11. The Amended Complaint includes a third patent (U.S. Patent No. 8,504,834) that is no longer being asserted in the case. (*See* Amended Complaint, p. 1.)

[5] Plaintiffs' Amended Patent L.R. 3-1 Disclosure of Asserted Claims and Infringement Contentions, March 22, 2024 ("Amended Infringement Contentions, March 22, 2024"), March 22, 2024, p. 2.

[6] Expert Report of Lauren R. Kindler dated March 24, 2025 ("Kindler Report"), p. 3 (footnote 5).

supplement my damages opinions to take into consideration these files.[7]  In addition, subsequent to the issuance of my opening expert report, Viasat submitted the Expert Rebuttal Report of Gareth Macartney, Ph.D. on April 14, 2025 ("Macartney Report").[8]  In his report, Dr. Macartney criticized my use of a minimum bit rate of 1.55 Mbps in my calculation of Viasat's bandwidth cost savings for IPTV services attributable to its use of the '667 Patent.[9]  While I understand Dr. Chuck Easttom (Sandisk's technical expert) disagrees with Dr. Macartney,[10] for illustrative purposes only, I provide alternative calculations of '667 Patent value indicators using the IPTV bitrate claimed by Dr. Macartney (i.e., 0.75 Mbps).[11]

3.      In performing my analysis, I have been asked to assume that the Patents-in-Suit are valid, enforceable, and infringed by Viasat.  That I do not address the opinions presented in Dr. Macartney's report should not be interpreted as agreement with Dr. Macartney's conclusions.

---

[7] **Supplemental Exhibit 1** presents a mapping between the supplemental exhibits and their counterparts in the Kindler Report, where applicable.

[8] Viasat also submitted the Rebuttal Expert Report of Kevin C. Almeroth, Ph.D. Regarding Non-Infringement of U.S. Patent Nos. 9,424,400 & 10,447,667 on April 14, 2025 ("Almeroth Non-Infringement Report").  In addition, I received subsequent to the issuance of the Kindler Report various publicly available documents produced and bates-stamped by Viasat, a small number of produced documents cited in the Macartney Report that I had not previously received, and the Deposition of Soji John taken March 28, 2025.  **Supplemental Appendix B** to this report contains an updated list of materials I have considered.

[9] Macartney Report, pp. 48 – 49.

[10] Based on a discussion with Dr. Easttom (Sandisk's technical expert).

[11] Macartney Report, pp. 48 – 49.

**Supplemental Table 9**



27.     My royalty damages opinions do not depend upon one specific analysis but are the result of the totality of the evidence that I have considered in this case, my analysis of the *Georgia-Pacific* factors, and my analysis of important economic and business considerations presented throughout my report and associated exhibits.   The royalty damages presented above would compensate Sandisk for Viasat's alleged use of the Patents-in-Suit and would be appropriate and reasonable given the economic considerations discussed throughout my report.

### III.     ILLUSTRATIVE CALCULATION OF '667 PATENT VALUE INDICATORS USING DR. MACARTNEY'S CLAIMED BITRATE

28.     As discussed in the Kindler Report, based on the airline agreements produced in the case, Viasat guaranteed to provide IPTV with at least 480p resolution to its airline customers.[64]

---

[61] **Supplemental Exhibits 5.2, 5.3, 5.8,** and **6.1**.

[62] As discussed under *Georgia-Pacific* Factor 12 in the Kindler Report, it is reasonable to conclude that Sandisk and Viasat would have considered the ███████████████████████████████████████████████████████████████████ (*See* Kindler Report, pp. 146 – 147 and 180.)

[63] Damages for the '667 Patent and '400 Patent are not duplicative in whole or in part.  Therefore, the total damages owed to Sandisk would be the sum of the damages associated with Viasat's infringement of the '667 Patent and the damages associated with Viasat's infringement of the '400 Patent.

[64] Kindler Report, p. 150.  *See, e.g.*, Third Amended and Restated Connectivity Services Agreement between American Airlines, Inc. and Viasat, Inc., October 1, 2020.  (VIASAT_00014633 – 831, at 679 and 794.)  *See also*, Master Service

According to Viasat, one hour of streaming 480p video consumes approximately 700 MB (0.7 GB).[65]  I understand that the bitrate required to stream 700 MB in one hour is approximately 1.55 Mbps.[66]  This 1.55 Mbps is used as an input into my calculation of bytes distributed to passengers—information that was not available in Viasat's produced documents.[67]

29.      In his report, Dr. Macartney criticized my use of a minimum bitrate of 1.55 Mbps in my calculation of Viasat's bandwidth cost savings for IPTV services attributable to its use of the '667 Patent.[68]  While I understand Dr. Easttom disagrees with Dr. Macartney,[69] for illustrative purposes only, I provide alternative calculations of '667 Patent value indicators using the IPTV bitrate claimed by Dr. Macartney (i.e., 0.75 Mbps).[70]

30.      These illustrative calculations are presented in **Supplemental Exhibits 8.1 – 8.5**. The alternative '667 Patent value indicators are summarized below in **Supplemental Table 10**.

---

Agreement by and between Southwest Airlines Co. and Viasat, Inc., May 2, 2022.  (VIASAT_00015862 – 6050, at 5922.)  Notably, I understand that Viasat has not produced its agreements with Delta Airlines (Viasat's largest IPTV customer in terms of domestic IPTV bytes served to aircraft) or JetBlue Airways (another U.S.-based customer of Viasat's IPTV services).  Total domestic IPTV bytes served: 3,777 for Delta Airlines (May 2021 – February 2023); 2,699 TB for American Airlines (February 2019 – February 2023); 151 TB for JetBlue Airways (April 2021 – February 2023); and 0.21 TB for Southwest Airlines (September 2022 – February 2023).  (*See* **Supplemental Exhibit 4.6**.)

[65] Kindler Report, pp. 150 – 151.  *See also*, The ultimate guide to streaming with satellite internet, September 14, 2022. (https://www.viasat.com/perspectives/satellite-internet/2022/the-ultimate-guide-to-streaming-with-satellite-internet/, viewed on March 11, 2025.)

[66] Kindler Report, p. 151.  Specifically, I understand from Dr. Easttom that it is his opinion that the bitrate relied upon in the Kindler Report, as reported on Viasat's website, is a reliable and reasonable estimate for the average bandwidth that would be required to stream IPTV in 480p quality.  I understand from Dr. Easttom that such estimates would include the effect of any compression techniques used by Viasat.  Further, the average bitrate target presented in the American Airlines agreement is the minimum average bitrate that Viasat can provide to be compliant with its contractual obligations.  I understand from Dr. Easttom that because transmission rates vary significantly throughout a session, Viasat, as a prudent business, likely would provide an average bitrate that is *greater than* the minimum average target in order to ensure compliance with its contractual obligations.  Hence, it would be inappropriate to use the minimum average bitrates provided in the American Airlines contract as a basis for the average bitrate Viasat actually experiences when streaming IPTV.  (Based on a discussion with Dr. Easttom (Sandisk's technical expert).)

[67] Kindler Report, pp. 150 – 152 and Exhibit 10.1.  *See also*, **Supplemental Exhibit 5.1**.  A bitrate of 1.55 Mbps is also consistent with Viasat's estimated bitrate of 1.3 Mbps required for Fubo Sportsnet and Bloomberg TV (other services discussed alongside Viasat's IPTV offering).  (*See* VCDS Home.  (VIASAT_00008738 – 9831, at 8816.))

[68] Macartney Report, pp. 48 – 49.

[69] Based on a discussion with Dr. Easttom (Sandisk's technical expert).

[70] Macartney Report, pp. 48 – 49.