QUINN EMANUEL URQUHART & SULLIVAN, LLP
Steven Cherny (*pro hac vice*)
stevencherny@quinnemanuel.com
Patrick D. Curran (Bar No. 241630)
patrickcurran@quinnemanuel.com
Tzivya H. Beck (*pro hac vice*)
tzivyabeck@quinnemanuel.com
Hannah Dawson (*pro hac vice*)
hannahdawson@quinnemanuel.com
111 Huntington Ave, Suite 520
Boston, MA 02199
Telephone:    (617) 712-7100
Facsimile:    (617) 712-7200

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Anastasia M. Fernands (*pro hac vice*)
anastasiafernands@quinnemanuel.com
Nicola R. Felice (*pro hac vice*)
nicolafelice@quinnemanuel.com
Vanessa Blecher (*pro hac vice*)
vanessablecher@quinnemanuel.com
Alicia Lai (*pro hac vice*)
alicialai@quinnemanuel.com
295 5th Avenue
New York, NY 10016
Telephone:    (212) 849-7000
Facsimile:    (212) 849-7100

*Attorneys for Defendant Viasat, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| SANDISK TECHNOLOGIES, INC., et al., | Case No.: 4:22-cv-4376-HSG |
| Plaintiffs, | **DEFENDANT VIASAT, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT** |
| v. | **Hearing** Date: August 14, 2025 Time: 2:00 pm Judge: Hon. Haywood S. Gilliam, Jr. Courtroom: 2, 4th Fl. |
| VIASAT, INC., | 1301 Clay Street Oakland, CA 94612 |
| Defendant. | |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ............................................................................................1

I.      INTRODUCTION ................................................................................................................2

II.     STATEMENT OF RELEVANT FACTS ............................................................................3

III.    LEGAL STANDARD ..........................................................................................................4

IV.     ARGUMENT .......................................................................................................................5

      A.      Plaintiffs Have Not Shown that Viasat's Accused Products Receive an Indication of the NAS Device Having a Secure Region as Required by The Asserted Claims of the '667 Patent ..............................................................................5

      B.      Plaintiffs' Untimely Infringement Theories Also Do Not Show that the Accused Products Receive an Indication of the NAS Device Having a Secure Region ........................................................................................................................7

      C.      Plaintiffs Have Not Shown that Viasat's Accused Products Have "A Kiosk" as Required by the Asserted Claims of the '400 Patent ...........................................10

      D.      Plaintiffs Have Not Shown "Authenticating the Portable Data Storage Device, Using at Least the Unique Identifier, by Communicating with the Remote Trusted Server Over the Second Data Interface".......................................15

            1.      Plaintiffs Never Apply the Court's Claim Construction of "Authenticate" ..........................................................................................16

            2.      Plaintiffs Cannot Show a "Remote Trusted Server" that Uses the "Unique Identifier" to "Authenticate the Portable Data Storage Device".................................................................................................17

V.      CONCLUSION ..................................................................................................................18

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

## **Cases**

4

5

*Allvoice Devs. US, LLC v. Microsoft Corp.*,
    612 F. App'x 1009 (Fed. Cir. 2015).................................................................... 7

6

*Cellspin Soft, Inc. v. Fitbit LLC*,
    No. 2022-2025, 2024 WL 4648069 (Fed. Cir. Nov. 1, 2024)........................ 5, 6, 17

7

8

*Convolve, Inc. v. Compaq Computer Corp.*,
    812 F.3d 1313 (Fed. Cir. 2016) .................................................................... 12

9

10

*Dolly, Inc. v. Spalding & EvenFlo Cos., Inc.*,
    16 F.3d 394 (Fed. Cir. 1994) ......................................................................... 4

11

*Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*,
    389 F.3d 1370 (Fed. Cir. 2004) ..................................................................... 4

12

13

*Impact Engine, Inc. v. Google LLC*,
    624 F. Supp. 3d 1190 (S.D. Cal. 2022) ........................................................ 16

14

15

*Insituform Techs., Inc. v. Cat Contracting, Inc.*,
    99 F.3d 1098 (Fed. Cir. 1996) ..................................................................... 12

16

*Johnston v. IVAC Corp.*,
    885 F.2d 1574 (Fed. Cir. 1989) ................................................................... 10

17

18

*Minkin v. Gibbons, P.C.*,
    680 F.3d 1341 (Fed. Cir. 2012) ..................................................................... 9

19

20

*Salazar v. AT&T Mobility LLC*,
    64 F.4th 1311 (Fed. Cir. 2023) ................................................................... 12

21

*SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*,
    983 F.3d 1367 (Fed. Cir. 2021) ..................................................................... 9

22

23

*Sun Microsystems, Inc. v. Network Appliance, Inc.*,
    688 F. Supp. 2d 957 (N.D. Cal. 2010) ..................................................... 16, 17

24

*TechSearch, LLC, v. Intel Corp.*,
    286 F.3d 1360 (Fed. Cir. 2002) ..................................................................... 5

25

26

*United States v. Various Slot Machines on Guam*,
    658 F.2d 697 (9th Cir. 1981)......................................................................... 9

27

*In re Varma*,
    816 F.3d 1352 (Fed. Cir. 2016) ................................................................... 12

28

1

**<u>Rules & Statutes</u>**

2

Fed. R. Civ. P. 56(a)..............................................................................................................4

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that, on August 14, 2025, at 2:00 pm, Defendant Viasat, Inc. ("Viasat" or "Defendant") will and hereby does move the Court to grant Viasat's motion for summary judgment of noninfringement of U.S. Patent Nos. 9,424,400 ("the '400 patent") and 10,447,667 ("the '667 patent"). Plaintiffs SanDisk Technologies, Inc., SanDisk 3D IP Holdings Ltd., SanDisk Technologies LLC, and SanDisk Storage Malaysia Sdn. Bhd. ("SanDisk" or "Plaintiffs") have failed to provide evidence demonstrating infringement of the limitation in the '667 patent requiring "receiving an indication of the NAS device having a secure region comprising a buffer," which appears in every claim asserted from that patent. Plaintiffs also failed to provide evidence demonstrating infringement of limitations in the '400 patent that appear in every asserted claim, including (1) "a kiosk" and (2) "authenticating the portable data storage device, using at least the unique identifier, by communicating with the remote trusted server over the second data interface." Plaintiffs cannot prove infringement for either the '667 or the '400 patents. Summary judgment should be granted against them.

This Motion is based on this Notice, the Memorandum included herein, the Declaration of Patrick D. Curran and accompanying exhibits, the proposed Order served concurrently herewith, and any oral or documentary evidence adduced at the oral hearing on this matter.

## I.    INTRODUCTION

Plaintiffs assert two patents in this case: the '667 patent, directed to a media streaming system utilizing a secure buffer for streamed content, and the '400 patent, directed to a digital rights management system for securely distributing content from a kiosk to storage devices.[1] Viasat does not infringe either.

Specifically, the asserted claims of the '667 patent require that the accused media streaming system "receive an indication of the NAS device having a secure region." The Court construed that limitation to require that the claimed system "receive an indication of the presence of a secure region within the NAS device," i.e., that the indication be "an indication of the presence of the secure region itself," not just an indication of a device, as Plaintiffs proposed. Dkt. No 120 at 18-19. But Plaintiffs' operative infringement contentions *only* allege infringement based on their rejected construction, not the Court's construction. Specifically, Plaintiffs contend that Viasat's systems provide an indication of a *device*, not an indication of a *secure region* in the device. This failure to show that the claims are met, as construed by the Court, mandates summary judgment of non-infringement of the '667 patent.

Indeed, Plaintiffs know full well that their operative contentions are insufficient to defeat a motion for summary judgment. That is why they continue to try to change those contentions, most recently in their technical expert report. These new contentions are untimely and should be struck. *See* Dkt. No. 199. But even Plaintiffs' untimely infringement theories do not raise a factual dispute regarding infringement of the '667 patent. Summary judgment that Viasat does not infringe the '667 patent should therefore be granted.

Plaintiffs cannot show Viasat's Accused Products infringe the '400 patent either. Those products do not meet either of two limitations, construed by the Court, that appear in every asserted claim—(1) "a kiosk," and (2) "authenticating the portable data storage device, using at least the unique identifier, by communicating with the remote trusted server over the second data interface."

---

[1]  U.S. Patent Nos. 9,424,400 ("the '400 patent") and 10,447,667 ("the '667 patent"). *See* Dkt. No. 103, Exs. A ('400 patent) and B ('667 patent). Plaintiffs also asserted U.S. Patent No. 8,504,834, but the Court dismissed that patent under 35 U.S.C. § 101. *See* Dkt. No. 75.

1  The Court, relying on the specification, construed "kiosk" to mean "any **device** used to access and

2  distribute content provided by the system." Dkt. No. 120 at 10.[2] Plaintiffs, however, assert that

3  multiple distinct devices, as a group—including Viasat's M3 modem, Viasat's S4 server, and a host

4  of wireless access points located all throughout the airplane—constitute the claimed kiosk. That

5  argument fails. It is inconsistent with the Court's construction, the portion of the specification upon

6  which that construction is based, and the claim language, which differentiate a single "device" from

7  multiple "devices." Because Plaintiffs have failed to identify "a kiosk," they cannot establish

8  infringement of the '400 patent. Plaintiffs similarly fail to show any Accused Product

9  "authenticate[s] the portable data storage device, using at least the unique identifier." The Court

10  construed this limitation to require "confirming that the portable data storage device is trusted using

11  at least the unique identifier." Dkt. 120 at 13-14. During claim construction Plaintiffs argued the

12  term "means simply to 'confirm the **identity'** of the portable data storage device." *Id*. at 13. The

13  Court rejected that argument, noting that the '400 patent claimed to improve "security weaknesses"

14  in "existing DRM systems," and "[w]hen the specification uses the word 'authenticate,' it is always

15  for the purpose of **confirming the trust level** of the devices in question," whereas "no embodiment

16  in the specification describes 'authenticating' as a mere identification of the devices." *Id*. at 13-

17  14. Yet Plaintiffs continue to advance their rejected "identification" theory of the claim. Plaintiffs

18  have no proof that the Court's construction of "authenticating" is satisfied—indeed, Plaintiffs never

19  apply, address, or even **mention** the Court's construction of this term in their infringement

20  contentions or in Dr. Easttom's infringement report.

21      Viasat respectfully requests that the Court grant summary judgment of non-infringement on

22  all asserted claims.

23  **II.      STATEMENT OF RELEVANT FACTS**

24      Almost three years ago, Plaintiffs SanDisk 3D IP Holdings Ltd. ("SD3D"), SanDisk

25  Technologies LLC ("SDT LLC"), SanDisk Storage Malaysia SDN BHD ("SDSM"), and Sandisk

26  Technologies, Inc. ("SDT Inc.") filed this case asserting that Viasat infringes two of its patents: the

27

28  [2]  All emphasis added unless otherwise stated.

'400 patent and the '667 patent. Dkt. No. 1. The '400 patent is entitled "Digital Rights Management System Transfer of Content and Distribution" and was issued on August 23, 2016. *See* Dkt. No. 103-1. The '667 patent is entitled "Secure Stream Buffer on Network Attached Storage" and was issued on October 15, 2019. *See* Dkt. No. 103-2.

On February 23, 2023, Plaintiffs served their infringement contentions.  Dkt. No. 199-1 ¶ 2. Shortly thereafter, Viasat identified numerous deficiencies in Plaintiffs infringement contentions, including deficiencies for the limitations requiring "a kiosk" and "an indication of the NAS Device having a secure region." Ex. A (May 19, 2023 letter from P. Curran to L. K. Kieckhefer). Thereafter, Plaintiffs agreed to amend their infringement contentions. Dkt. No. 153-2 at 4. Prior to serving their amended infringement contentions, Plaintiffs had the opportunity to review thousands of pages of technical documentation. Curran Decl. ¶ 3. Plaintiffs also reviewed Viasat's source code extensively. Curran Decl. ¶ 4; Dkt. No. 153-2 at 4; Dkt. No. 153-1 ¶¶ 4-5. Plaintiffs served their final amended infringement contentions on March 22, 2024 (Curran Decl. ¶ 5; Dkt. No. 146-1 ¶ 2), accusing "Viasat's in-flight entertainment and communication ('IFEC') systems for use in commercial and private aviation and other Viasat systems implementing edge storage solutions" of infringing the '400 and '667 patents ("the Accused Products"). Ex. B (Plaintiffs' Infringement Contentions Cover Pleading) at 1.

## III.    LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Infringement is a question of fact. *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1376 (Fed. Cir. 2004). The patent holder has the burden to prove that each accused product "includes every limitation of [an asserted] claim." *Dolly, Inc. v. Spalding & EvenFlo Cos.*, *Inc.*, 16 F.3d 394, 397 (Fed. Cir. 1994). The absence from the accused product of even one limitation in the claim means that, as a matter of law, there is no literal infringement of that claim. *Id.* Thus, when a court construes a claim to require a certain feature, and there is no dispute that the accused product lacks that feature, summary judgment of noninfringement is warranted. *Frank's Casing Crew*, 389 F.3d at 1376 (stating that a trial court may determine

infringement on summary judgment when "no reasonable jury could find that every limitation recited in the ***properly construed claim*** either is or is not found in the accused device") (internal quotation mark omitted); *see TechSearch, LLC, v. Intel Corp.*, 286 F.3d 1360. 1371 (Fed. Cir. 2002) ("[A]ll of the elements of the claim, as correctly construed, must be present in the accused system."); *see also Cellspin Soft, Inc. v. Fitbit LLC*, No. 2022-2025, 2024 WL 4648069, at *7 (Fed. Cir. Nov. 1, 2024), *cert. denied*, No. 24-944, 2025 WL 1287072 (May 5, 2025) (affirming summary judgment of non-infringement where "Cellspin's evidence establishes at most that a user identifier is associated with the data—not that the mobile phone *attaches* a user identifier to the data," as required by the Court's claim construction) (emphasis original).

## IV.    ARGUMENT

### A.    Plaintiffs Have Not Shown that Viasat's Accused Products Receive an Indication of the NAS Device Having a Secure Region as Required by The Asserted Claims of the '667 Patent

Plaintiffs have never demonstrated that the Accused Products receive an indication of the presence of ***a secure region*** within the NAS device, a limitation required by every asserted claim of the '667 Patent. The Court should grant summary judgment that Viasat does not infringe the '667 patent.

The asserted claims of the '667 patent require a "media streaming system comprising . . . one or more hardware processors configured to: ***receive an indication of the NAS device having a secure region***." Dkt. No. 1-2, cl. 1. During claim construction, Plaintiffs proposed that this term did "not require the processor to receive an indication of the presence of the secure region." Dkt. No. 120 at 19. Rather, Plaintiffs' proposed construction required that "the processor merely receive an indication of the NAS device (which happens to have a secure region)." Dkt. No. 120 at 18. The Court rejected Plaintiffs' proposal and adopted Viasat's proposed construction, which required that the processor "receive an indication of ***the presence of the secure region itself***." *Id.* at 18-19. Specifically, the Court construed the limitation to mean "receive an indication of the presence of a secure region within the NAS device." *Id.* at 19, 21. As the Court explained, "the claimed processor must have some indication of the presence of the secure region to use that secure region as a buffer. Otherwise, the claimed invention would not make sense, because if the system did not have an

indication of the presence of the secure region, it would not be able to use that secure region to buffer content." *Id.* at 19.

Plaintiffs' infringement contentions, however, never attempt to show that the accused products contain a processor configured to receive an indication of the presence of a secure region.[3] Rather, Plaintiffs' contentions explicitly focus on their rejected construction. As shown in the below excerpt from their contentions, Plaintiffs only purport to provide evidence that the accused products contain a processor that "receive[s] an indication *of the NAS device*," not an indication that the NAS device has *a secure region*.

---

**Plaintiffs' Contentions Pursuant to Patent L.R. 3-1(c)[1]**

The '667 Accused Products are configured to receive an indication of the NAS device having a secure region comprising a buffer for streaming media on a separate display device on the local area network, wherein access to the secure region is controlled by the media streaming system.

<mark>Receive an Indication of the NAS device …</mark>

<mark>The '667 Accused Products are configured to receive an indication of the NAS device.</mark> For example, Viasat's media streaming system (*e.g.*, VCDS) may receive an indication of local storage, for example, a user hub or within one or more Viasat IFEC servers (*i.e.*, NAS).

---

Dkt. No. 193-3 at 32 (highlighting added). Indeed, Plaintiffs' evidence is that "Viasat's media streaming system (e.g., VCDS) may receive *an indication of local storage*, for example, a user hub." *Id.* That is, Plaintiffs allege that Viasat's Content Delivery Service ("VCDS") merely receives an indication that local storage exists in the form of a user hub—there are *no* contentions that VCDS receives an indication that the user hub has a secure region to store secure media content as the claims require. Plaintiffs' contentions thus indisputably do not assert a theory of infringement for the "indication" limitation, which warrants summary judgment of noninfringement of the '667 patent. *See Cellspin Soft, Inc. v. Fitbit LLC*, No. 2022-2025, 2024 WL 4648069, at *6-7 (Fed. Cir. Nov. 1, 2024), *cert. denied*, No. 24-944, 2025 WL 1287072 (May 5, 2025) (affirming summary judgment where plaintiff failed to identify any infringement theory for a certain limitation in its

---

[3] Plaintiffs were aware of Viasat's construction of this claim term, which the Court adopted, since at least February 15, 2024, and thus had ample time to contend it was met by Viasat's systems. They did not do so in their final infringement contentions.

operative infringement contentions); *Allvoice Devs. US, LLC v. Microsoft Corp.*, 612 F. App'x 1009, 1013 (Fed. Cir. 2015) (same).

**B.      Plaintiffs' Untimely Infringement Theories Also Do Not Show that the Accused Products Receive an Indication of the NAS Device Having a Secure Region**

As detailed above, Plaintiffs infringement contentions put forth no evidence demonstrating that Viasat's Accused Products receive an indication of the presence of a secure region within the NAS device. Recognizing this fatal deficiency, Plaintiffs belatedly, and in defiance of the Court's order denying them leave to amend, present two new contentions in their expert reports allegedly showing how the Accused Products satisfy this claim limitation. One of those theories—referred to as the "encrypted" Boolean theory—is precisely what Plaintiffs sought to add via their denied motion to amend. The other theory—the DRM theory—is brand new, not found even in Plaintiffs' rejected amended infringement contentions or in any other disclosure in this case. These procedurally improper and prejudicial infringement contentions should be struck, as Viasat explains in its pending Motion to Strike (Dkt. No. 199), and not considered. But, regardless, neither new theory satisfies the requirements of the claim and thus summary judgment of noninfringement is still warranted.

**(a)      The "Encrypted Boolean"**

The first of Dr. Easttom's theories for this limitation posits that "[t]he VCDS client" on either "the M3 modem" (for the in-flight use case) or "the home modem" (for the residential use case) receives an indication of the NAS device" in the form of ███ █ ████████ █ ███ ████████████████████ Dkt. No. 201-3 ¶¶ 553-555, 573. ███████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████ *Id.* ¶¶ 555-558. But Dr. Easttom provides no evidence that this value reflects whether a ***region*** of a storage device is secure. In fact, he admits that "████████████████████████████████████████," in its entirety, not whether a ***portion*** of the device is encrypted. *Id.* ¶ 555 n.28; *see also id.* ¶ 576 ███████████ ██████ ███ ██████ ████ ████ █████ ███ █████ ██████; *id.* ¶ 575 ████ █ ███

1  ██████████████████████████████████████████████████

2  ████████████████████████████████

3      As noted above, however, the claimed "indication of the NAS device having a secure region"

4  must be an indication of "the presence of a secure *region* within the NAS device." Dkt. No. 120 at

5  19. This construction is consistent with the '667 patent's statement that a "secure region" is separate

6  from the "user accessible region" of the device, meaning that both are non-whole portions of the

7  device. *See, e.g.*, Dkt. No. 1-2, 7:24-26, Figs. 1, 3, 4A, 4B. Indeed, Plaintiffs' expert agrees, opining

8  in his rebuttal report that the patent requires an indication "of the presence of a secure *region* within

9  the NAS device . . . *as opposed to that on entire devices.*" Ex. C (Easttom Rebuttal Rep.) ¶ 487.

10  Specifically, Dr. Easttom opined that Viasat failed to prove invalidity of the '667 patent over certain

11  prior art because it did not "discuss what is the secure *region within the NAS device*, especially in

12  which there is an associated indication thereof (*as opposed to treating the secure region as the*

13  *entire storage device*)." *Id.* ¶ 489; *see also id.* ¶ 487. But by his very own logic, Dr. Easttom's

14  infringement opinion that the Boolean value reflects whether the entire storage device is secure is

15  insufficient to demonstrate infringement of the "indication" limitation.

16      And even if there were some dispute concerning whether the "encrypted Boolean" refers to

17  the whole device or a region thereof, summary judgment of noninfringement should still be granted

18  for the "in-flight systems" (Dkt. No. 201-3 ¶ 509) because ████████████████████████

19  ████████████████ Defendants' expert explained, based on his review of the source code,

20  technical documentation, and witness testimony, that the ██████████████████████

21  ████████████████████████████████████████████████████

22  ██████████████. Ex. D (Almeroth Rebuttal Rep.) ¶ 284. Dr. Easttom does not contest this point.

23  Instead, he states only that ███████████████████████████████████████

24  ████████████████████████████████████" Dkt. No. 201-3 ¶ 555 n.28. That is

25  precisely Viasat's point—if the ████████████████████████████████████

26  ████████████████████████████████████████████████████

27  ████████████████████████

28



. Dkt. No. 201-3 ¶¶ 558-60, 573, 641-43, 655; Ex. D ¶¶ 277-87.

Ex. D ¶ 280.

*Id.* ¶ 285. For the in-flight use cases, the encrypted Boolean thus cannot meet the claim's requirements for "an indication" that indicates "the presence of a ***secure region*** within the NAS device." *Id.*

**(b)    The DRM Subfolder**

Dr. Easttom's alternative infringement theory for the "indication" limitation is that "movies and TV shows are ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ Dkt. No. 201-3 ¶ 572. But that does not meet the requirements of the claims. The patent requires "[a] media streaming system comprising: . . . ***one or more hardware processors configured to: receive*** an indication of the NAS device having a secure region." Dkt. No. 1-2, cl. 1; *see also* Dkt. No. 1-2, cl. 11 ("A method of transmitting media content from a media streaming

---

[4] Dr. Easttom claims that he disagrees with Mr. Neri's testimony that ▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮ but he never explains why he disagrees. Dkt. No. 201-3 ¶ 555 n.28. Notably, at no point in his report does Dr. Easttom state what ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. As such, Dr. Easttom provides insufficient evidence to rebut Viasat's expert's opinions and evidence. *Minkin v. Gibbons, P.C.*, 680 F.3d 1341, 1352 n.5 (Fed. Cir. 2012) ("It is well-established that unsupported expert opinions do not create a genuine issue of material fact."); *SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 983 F.3d 1367, 1380-81 (Fed. Cir. 2021) ("'[A] party may not avoid summary judgment simply by offering an opinion of an expert that states, in effect, that the critical claim limitation is found in the accused device.'"); *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts.").

system, the method comprising: . . . *receiving an indication* of the NAS device having a secure region."). That is, the claims require that the "indication" of a secure region be transmitted, and that the media streaming system (or "one or more hardware processors" of the media streaming system) *"receive[s]"* that indication of the NAS device having a secure region. Dr. Easttom's report is completely silent on this point and thus fails to demonstrate infringement of the "indication" limitation.

Notably, Dr. Easttom never alleges that ███████████████████ are transmitted or received by any other devices, nor that these file paths provide any "indication" to some other device that "receiv[es]" them. The sum total "evidence" that Dr. Easttom offers as to how the "indication" limitation is met by the DRM subfolders is the conclusory statement that because ███████████ ███████████████████████████████████████████ ████████████████████████ with no allegation that this supposed "indication" is ever "received" in the manner the claims require. Dkt. No. 201-3 ¶ 572. An "accused infringer [] is entitled to summary judgment, on the ground of non-infringement," where "the patentee failed to put forth evidence to support a finding that a limitation of the asserted claim was met by the structure in the accused devices." *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1578 (Fed. Cir. 1989). Specifically, a "conclusory statement" that an accused product infringes certain claims "is wholly insufficient to raise a genuine evidentiary dispute for a jury." *Id.* As such, no genuine issue of fact needs to be resolved for this "DRM subfolder" theory, and summary judgment is proper.

**C.    Plaintiffs Have Not Shown that Viasat's Accused Products Have "A Kiosk" as Required by the Asserted Claims of the '400 Patent**

The claims of the '400 patent all require "*a kiosk*"—a singular device—"for provisioning secure media content to a plurality of portable data storage devices." Indeed, the Court construed that term to mean "any *device*" (singular)—not device*s* (plural)—"used to access and distribute content provided by the system." Dkt. No. 120 at 10. Despite the clear language of the claims and the Court's construction, Plaintiffs never identify a "device" that constitutes a kiosk. Instead, Dr. Easttom explicitly points to multiple devices—"the VCDS running on the M3 modem in conjunction

with the S4 server"—as the claimed "kiosk." Dkt. No. 201-3 ¶ 134. Plaintiffs have not proven this claim limitation is met.

During claim construction, the parties disputed the meaning of "[a] kiosk for provisioning secure media content to a plurality of portable data storage devices." Viasat proposed that the term be construed as "a device whose user interface is used by consumers" (Dkt. No. 120 at 6, 8), whereas Plaintiffs proposed that the term mean "any device used to access and distribute content provided by the system," Dkt. No. 117, 12:14-18. Ultimately, the Court adopted Plaintiffs' proposed construction, which was taken verbatim from the specification. Dkt. No. 120 at 10; *see also* Dkt. No. 1-1 at 6:36-37. That construction, which plainly requires "any ***device,***" not any device**s**, makes clear that "a kiosk" is a singular device, not a collection of ***devices***. This is consistent with the specification and the claim language itself, which both differentiate between a singular device and multiple devices.

For example, when describing the "client system 106," the specification states that, like the claimed "kiosk," it can be "any ***device*** used to access content provided by the system 100." Dkt. No. 1-1 at 4:18-19. The specification then lists a number of examples of the client system, all of which are a singular device: "a computer, a television, a portable or mobile device, a video game console, a portable video game console." *Id.* at 4:19-22. By contrast, when the specification uses the word "devices," such as when it is describing "storage devices," it plainly describes more than one device: "The client system 106 may comprise ***multiple storage devices*** that a user may use to store and access client" including "***a primary storage device*** 110 and ***a secondary storage device 112***." *Id.* at 4:35-39.

The claims are similarly clear that when the inventors wanted to refer to ***multiple*** devices, they did so with the plural, "***devices***." Indeed, claim 1 expressly refers to "***devices***" when describing "a plurality of portable data storage ***devices***." *Id.*, cl. 1. Yet, when describing the "kiosk" the specification uses the singular, "device": "The kiosk 106' may be ***any device*** used to access and distribute content provided by the system 100." *Id.* at 6:36-37. If the inventors intended for "a kiosk" to include collections of devices that together allegedly perform the functions required by the claims, they certainly knew how to specify that. That is not what they did.

The Court's construction of "a kiosk" as a singular device is also consistent with the caselaw regarding the article "a" in a claim's **preamble**. When, as here, a claim's preamble describes "a" device (singular) **before** the transitional phrase "comprising," the scope of that claim is limited to a single device that must satisfy each of the claim limitations. This contrasts with when the article "a" is used **after** the open-ended, transitional phrase "comprising," in which circumstance the "a" means "one or more." For example, in *Convolve, Inc. v. Compaq Computer Corp.*, the Federal Circuit considered a claim preamble reciting a "[u]ser interface for . . . working with a processor . . . comprising." 812 F.3d 1313, 1321 (Fed. Cir. 2016). The question before the Court was whether "a processor" meant a **singular** processor that met each limitation of the claims or if it meant **more than one** processor. *Id.* at 1320. Because Claims 1, 3, and 5 "recite[d] '**a processor**' in the preamble before recitation of 'comprising,' and the claim body uses the definite article 'the' to refer to the 'processor,'" the Court held that the claims "require the user interface to work with **a single processor** in performing all of the claim steps." *Id.* at 1321; *see also Salazar v. AT&T Mobility LLC*, 64 F.4th 1311, 1317 (Fed. Cir. 2023) (holding that "the claim language here requires a **singular** element—"**a** microprocessor"—to be capable of performing all of the recited functionality") (emphasis in original); *Insituform Techs., Inc. v. Cat Contracting, Inc.*, 99 F.3d 1098, 1105-06 (Fed. Cir. 1996) ("claim 1 refers to 'a cup' and 'the cup' repeatedly, suggesting that only one cup is involved."). More colloquially, "[f]or a dog owner to have 'a dog that rolls over and fetches sticks,' it does not suffice that he have two dogs, each able to perform just one of the tasks"—rather, he must have a dog that performs both functions. *In re Varma*, 816 F.3d 1352, 1363 (Fed. Cir. 2016). Here, as in the above cases, claims 1 and 9 of the '400 patent disclose "a kiosk" and the dependent claims refer back to the "the kiosk" that performs all of the recited functionality. Dkt. No. 1-1 cls. 3-8, 10, 14, and 17. This further confirms that that the claimed "kiosk" is a singular device that must satisfy each of the claim limitations—it is not, as Plaintiffs contend, a collection of devices that each only perform a part of those limitations.

Despite the claim's clear language and the caselaw on this issue, Plaintiffs' infringement contentions do not identify any device that is used to access and distribute content provided by the system. Rather, Plaintiffs' contentions point to a collection of devices as the claimed "kiosk," stating

1  that "the '400 Accused Products comprise a kiosk (*e.g.*, one or more modules of the IFE system;

2  e.g., one or more modules of Viasat's Network Access Unit ('NAU'), the Viasat's Mobile

3  Application Server, or the Viasat S4 Server; e.g., one or more modules of the Gateway system)."

4  Dkt. No. 193-2 at 3. And their contentions excerpt portions of Viasat's documents (shown below),

5  which show that the devices they point to as the "kiosk" are separate and distinct devices, contained

6  in separate housings, that are not a single device.



*Id.* at 6 (excerpting VIASAT_00006471 at 526) (highlighting in original and red boxes added for

emphasis).

Dkt. No. 188-2 at 10 (excerpting VIASAT_00005782 at 798) (red boxes added for emphasis)

There is no dispute that the Accused Products do not contain a single device used to access

and distribute content provided by the system. Dr. Easttom, in fact, explicitly states in his report that

"the VCDS running on the M3 modem *in conjunction with* the S4 server is a device used to access and distribute content provided by the system and is therefore a kiosk." Dkt. No. 201-3 at ¶ 134. Then, during his deposition, Dr. Easttom admitted that the alleged "kiosk" he claims to identify in the Accused Products includes even *more* devices—including not just (1) the S4 server and (2) the M3 modem, but also (3) the "wireless access points" throughout the plane, which Dr. Easttom calls the claimed "first data interface" of the "kiosk," and (4) the antenna fixed on top of the plane, which Dr. Easttom said is the kiosk's "second data interface." Ex. E (Deposition of Dr. Easttom) Tr. 131:13-15, 133:10-19, 155:22-156:12. There is no dispute that all of these are separate devices. Indeed, Dr. Easttom includes in his report the same picture shown above depicting the M3 modem and S4 server as two distinct devices in two distinct and separate housings. Dkt. No. 201-3 p. 52. During his deposition Dr. Easttom referred to the M3 modem and S4 server as separate devices (in separate "steel box[es]"), and stated that the multiple "devices" that he contends form the "kiosk"— the S4 device, the M3 device, and the "wireless access point" devices—are separate and located in different places throughout the plane. *See, e.g.*, Ex. E 142:16-18 ("Well, to be clear, what I'm pointing to is the central processing unit *in a particular device such as the M3 modem or the S4 server*."); *id.* 150:18-24 ("Q And so the -- the -- *the steel box that is the S4 server*, the mobile application server, connects to *the other steel box that is* the mobile broadband router, *the M3 modem*, by way of the [network] interfaces on each of those *devices* … ? A Exactly."); *id.* 155:22-156:16 ("[T]hese *separate wireless access point devices* throughout the aircraft, is the – the first data interface that you identify? … A. Yes…. Q. So … you're identifying the union of all the wireless access points throughout the plane; is that right? A. That's correct…. Q. *How many of those* wireless access point *devices* would typically need to be installed on a modern aircraft…? A. Well … I would *probably say three* might be a minimum."). Plaintiffs have not shown that the Accused Products contain a "device" that is the claimed "kiosk." Because "a kiosk" is required by every asserted claim, the Court should grant summary judgment of non-infringement of the '400 patent.[5]

---

[5] For the first time in Dr. Easttom's opening report, Plaintiffs also point to "the combination of the Home Wi-Fi terminal including the modem and the attached storage drive" as the claimed "kiosk"

**D.      Plaintiffs Have Not Shown "Authenticating the Portable Data Storage Device, Using at Least the Unique Identifier, by Communicating with the Remote Trusted Server Over the Second Data Interface"**

Claim limitation 1[e] requires the kiosk to "authenticate the portable data storage device, using at least the unique identifier, by communicating with the remote trusted server over the second data interface." Claim limitation 9[d] requires the corresponding method step: "authenticating the portable data storage device, using at least the unique identifier, by communicating with the remote trusted server over the second data interface."

Summary judgment is warranted on this limitation for multiple independent reasons. *First*, Plaintiffs have no proof the Court's construction of "authenticating" is satisfied—indeed, Plaintiffs contentions and Dr. Easttom's infringement report ***never address, apply, or even mention that construction***. *Second*, Plaintiffs' infringement contentions never identify a "remote trusted server" that uses the "unique identifier" to "authenticate the portable data storage device." Dr. Easttom's theories on this (none of which address the Court's construction) are all untimely, as explained in Viasat's separate motion to strike. Dkt. No. 204. Plaintiffs therefore cannot meet their burden to show infringement, and summary judgment is appropriate.

---

for Viasat's residential product, which Dr. Easttom also refers to as "use case 4" or "Video on Demand (e.g., Disney+) provided by Stream for Home ("HomeOnDemand")." Dkt. No. 201-3 (Easttom Report) at ¶¶ 133, 141. Unlike Dr. Easttom's report, Plaintiffs' infringement contentions never asserted that the modem and attached storage drive were also "a kiosk." Plaintiffs' infringement contentions alleged only that "one or more modules of Viasat's Network Access Unit" was the claimed "kiosk." Dkt. No. 193-2 at 3. Moreover, the Court denied leave to amend the infringement contentions to add "clarifying parentheticals" regarding residential products because Plaintiffs were not diligent in seeking amendment. Dkt. No. 182 at 7-8. The Court also stated that it "is skeptical that Plaintiffs previously identified Defendant's 'residential applications' as infringing products" given that, "[d]uring the claim construction hearing, Plaintiffs repeatedly stated that the 'accused devices are installed on airplane cabins.'" Dkt. No. 182 n.8. Viasat thus maintains that its residential product was not accused of infringement in this case. Therefore, this evidence relating to Viasat's residential product cannot create a genuine dispute of fact for purposes of avoiding summary judgement of non-infringement of the '400 patent. But were the Court to determine that a factual dispute existed with respect to HomeOnDemand (Viasat's residential product), there is no such dispute for the in-flight use cases ("use cases" 1-3 in Dr. Easttom's report, *see* Dkt. No. 201-3 at ¶¶ 133-34) where Plaintiffs allege that two separate devices are the claimed "kiosk." Thus, at the least, summary judgment of non-infringement should be granted with respect to the in-flight use cases.

1

### 1.    Plaintiffs Never Apply the Court's Claim Construction of "Authenticate"

The Court construed "authenticate the portable data storage device, using at least the unique identifier" as "*confirming* that the portable data storage *device is trusted using* at least *the unique identifier*." Dkt. 120 at 13-14. During claim construction Plaintiffs argued the term "means simply to 'confirm the *identity'* of the portable data storage device." *Id*. at 13. The Court rejected that argument; noting that the '400 patent claimed to improve "security weaknesses" in "existing DRM systems," and "[w]hen the specification uses the word 'authenticate,' it is always for the purpose of *confirming the trust level of the devices* in question," whereas "no embodiment in the specification describes 'authenticating' as a mere *identification* of the devices." *Id*. at 13-14.

Plaintiffs' infringement contentions never address or apply the Court's construction of this term. They instead treated "authenticate" as mere identification of the device, never discussing whether the device is "trusted." Dkt. No. 188-2 at p. 46-56. Dr. Easttom likewise never applies, addresses, or even mentions the Court's construction of this term. There are no opinions from Dr. Easttom addressing whether any Accused Instrumentality actually confirms any data storage device is "trusted"—this is never addressed in Dr. Easttom's analysis for claim 1[e] (Dkt. No. 201-3 ¶¶ 248-276) or for claim 9[d] (*id*. ¶¶ 434-462), and the Court's construction of this term is never addressed or even mentioned in *any* portion of Dr. Easttom's infringement report. The only time the word "trusted" appears anywhere in Dr. Easttom's analysis of these claim limitations is when Dr. Easttom references the "remote trusted *server.*" But Dr. Easttom never addresses the separate requirement that the Court's construction requires: "confirming that the *portable data storage device* is trusted." Dkt. 120 at 14.

Because Plaintiffs' contentions and Dr. Easttom's opinions all treat "authenticating" as simply requiring *identification* of the portable data storage device, rather than analyzing whether or how Viasat supposedly "confirm[s] that the portable data storage device is *trusted*," Plaintiffs have not met their burden to show infringement. *See, e.g., Sun Microsystems, Inc. v. Network Appliance, Inc.*, 688 F. Supp. 2d 957, 979–80 (N.D. Cal. 2010) (granting summary judgment where expert "did not address" certain "claim limitations in his expert report"); *Impact Engine, Inc. v. Google LLC*,

624 F. Supp. 3d 1190, 1194 (S.D. Cal. 2022) (granting summary judgment of non-infringement where defendant did not address Court's construction of the term; "[h]aving based its infringement analysis on a construction that does not comport with the Court's claim construction, Impact Engine cannot sustain its burden to prove infringement").

### 2. Plaintiffs Cannot Show a "Remote Trusted Server" that Uses the "Unique Identifier" to "Authenticate the Portable Data Storage Device"

As explained in Viasat's pending motion to strike (Dkt. No. 204), Plaintiffs' operative infringement contentions never identified a "remote trusted server" that uses the "unique identifier" to "authenticate the portable data storage device." Plaintiffs did not file a timely motion for leave to amend those infringement contentions and add such an allegation. Plaintiffs' only assertions on this issue come from Dr. Easttom's infringement report, which advances new infringement theories, without leave, that are not in Plaintiffs' infringement contentions. Those new theories cannot save Plaintiffs from summary judgment. If the Court does grant Viasat's motion to strike these late theories (Dkt. No. 204), summary judgment is also appropriate on this limitation. *See, e.g., Cellspin Soft., Inc, v. Fitbit LLC et al.*, 2024 WL 4648069, at *6 (Fed. Cir. Nov. 1, 2024) (affirming district court's exclusion of infringement theory as untimely under N.D. Cal. Patent Local Rules, and affirming summary judgment of non-infringement; "we cannot find an abuse of discretion by the district court in excluding the [late-disclosed] assertion," and "[i]n opposing summary judgment, [plaintiff] did not present evidence of any other product feature as satisfying [the claim] element").[6]

---

[6] Even if the Court did not strike these late opinions, Dr. Easttom offers no opinion at all on a "unique identifier" for his "Use Case #3" regarding IPTV—Dr. Easttom's report only offers the vague claim that "the kiosk authenticates and authorizes PEDs and seatback devices by communicating with the ███████████████████████████ or a similar DRM system," Dkt. No. 201-3 ¶ 265, *without identifying what, if any, "unique identifier" is supposedly used* by a remote trusted server to authenticate any "PEDs and seatback devices," *id.* ¶¶ 265–269. Because no "unique identifier" is identified at all, Dr. Easttom's late opinions on what he calls "Use Case #3" still would not show infringement, even if that untimely theory were ultimately considered. *See, e.g., Sun Microsystems, Inc. v. Network Appliance, Inc.*, 688 F. Supp. 2d 957, 979–80 (N.D. Cal. 2010).

1    **V.    CONCLUSION**

2        For the reasons set forth above, the Court should grant Viasat's summary judgment motion

3    and find that the Accused Products do not infringe the '400 and '667 patents.

4

5    DATED: June 9, 2025                QUINN EMANUEL URQUHART &
                                        SULLIVAN, LLP

6

7

8                                    By  /s/ Patrick Curran

9

10                                   *Attorneys for Defendant Viasat Inc.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2025, a copy of the foregoing document was served via e-mail to all counsel of record who have appeared in this matter.


DATED: June 9, 2025                              By _/s/ Patrick Curran_____
                                                      Patrick Curran