# EXHIBIT A

**quinn emanuel** trial lawyers | boston

111 Huntington Avenue, Suite 520, Boston, Massachusetts 02199-7626 | TEL (617) 712-7100 FAX (617) 712-7200

WRITER'S DIRECT DIAL NO.
**(617) 712-7103**

WRITER'S EMAIL ADDRESS
**patrickcurran@quinnemanuel.com**

May 19, 2023

**CONFIDENTIAL**
**VIA E-MAIL**
**KIERAN.KIECKHEFER@SHEARMAN.COM**
**WD - VIASAT@SHEARMAN.COM**

L. Kieran Kieckhefer
SHEARMAN & STERLING LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105

Re:     *Western Digital Technologies, Inc. et al v. Viasat Inc.*, Case No. 4:22-cv-04376-HSG
        (NDCA)

Dear Ms. Kieckhefer:

        I write on behalf of Viasat Inc. to request that Plaintiffs withdraw the above-captioned case given the clear non-infringement and invalidity of U.S. Patent Nos. 9,424,400 (the "'400 patent"), 10,447,667 (the "'667 patent"), and 8,504,834 (the "'834 patent") (collectively, the "Asserted Patents"). Plaintiffs have no good-faith basis to maintain this suit. Viasat's Invalidity Contentions, served April 10, 2023, demonstrate that the Asserted Patents are clearly invalid. Moreover, Plaintiffs' Disclosure of Asserted Claims and Infringement Contentions, served February 23, 2023 (the "Infringement Contentions") are unsustainable, as we explained to you during our April 5th meet-and-confer. While we understand that your client, Western Digital, does not like being held accountable for its infringement of Viasat's patents in the Western District of Texas, continuing to prosecute this retaliatory lawsuit is inconsistent with good-faith litigation and, thus, would render this case exceptional—entitling Viasat to attorneys' fees and other relief.

        **Plaintiffs' Validity Positions**

        Plaintiffs have no credible argument that the asserted claims of the '834 patent are valid in view of the prior art. Each of the independent claims of the '834 patent is generally directed to a device receiving, from a network, a stream of data from which a key for decrypting encrypted content is derived. (*E.g.*, cl. 14.) The dependent claims add trivial, non-novel variations to these

**quinn emanuel urquhart & sullivan, llp**

ATLANTA | AUSTIN | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON |
04568-00014/14050702.7 MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY |
SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | ZURICH

Ms. Kieckhefer
May 19, 2023

elements, such as a key used for encryption as well as decryption, and storing "pre-loaded" encrypted content to the device. (*See*, *e.g.*, cls. 15, 19.) All of these features were well known in the prior art for encrypting/decrypting content long before the '834 patent was filed. In fact, numerous systems deployed by the early 2000s, including Windows Media DRM (discussed further, *infra*), Widevine, and FairPlay, and foundational standards for encryption, such as Hypertext Transfer Protocol Secure (HTTPS), utilize the elements claimed in the '834 patent. Additionally, at least six separate prior art references anticipate every limitation of the asserted claims of the '834 patent, as described in detail in Exhibits 834-1 to 834-6 to Viasat's Invalidity Contentions. Moreover, as detailed in Viasat's Invalidity Contentions, the asserted claims of the '834 patent are directed to patent-ineligible subject matter under 35 U.S.C. § 101.

Plaintiffs similarly have no credible argument that the asserted claims of the '667 patent are valid in view of the prior art. The independent claims of the '667 patent are generally directed to a media streaming system transmitting digital content, over a wide area network, to a secure region in a network attached storage (NAS) device operating in a local area network. The independent claims describe the secure region as comprising a controllable buffer for streaming the digital content on a separate display device. The dependent claims add trivial, non-novel variations to these elements, including a smart TV display device (cl. 2), transmitting digital content when bandwidth is more available (cls. 3, 12), the secure region being inaccessible by a user without permission (cls. 4, 13), encrypting the digital content (cls. 5, 14), providing instructions to control stored data (cls. 6, 15), and providing instructions for encryption (cls. 7, 16). Under Plaintiffs' Infringement Contentions and theories, each element of the asserted claims of the '667 patent were known in prior art media-encryption systems long before the patent was filed. Indeed, according to Plaintiffs' assertions, the asserted claims are anticipated by *any* NAS-supported system that requires user authentication or subscription verification for playback. Many such systems were offered for sale long before the '667 patent was filed (*e.g.*, Netflix, Amazon Video On Demand, Direct TV VOD, Dish VOD, live television, or any other media streaming). In addition to those prior art systems, Viasat's Invalidity Contentions set forth at least ten other prior art references (*see* Exhibits 667-1 to 667-10) that would render each of the asserted claims invalid.

Plaintiffs also have no credible argument that the asserted claims of the '400 patent are valid in view of the prior art. The independent claims of the '400 patent are generally directed to a kiosk for transferring or distributing secure media content to a portable storage device, which authenticates the storage device before sending the encrypted media and a corresponding access key. The dependent claims add trivial, non-novel variations to these elements, including having a kiosk with local data storage (cls. 2, 10), a network interface (cls. 6, 13), and a kiosk that is placed in a public environment (cls. 8, 17). Many of these features make up the foundational aspects of digital rights management ("DRM") systems pre-dating the '400 patent, and, in fact, DRM-protected media distribution to portable data storage devices, which is precisely what is claimed in the '400 patent, was widely known and available in the market years before the alleged claimed invention. Indeed, by 1999, Microsoft launched Microsoft Windows Media DRM, which had been used "in more than 7.5 million transactions for secure music and video" by 2001. And in 2004, Microsoft launched Windows Media DRM for Portable Devices (WMDRM-PD), which was

Ms. Kieckhefer
May 19, 2023

required to download music to a portable device from Napster To Go.  Of course, this was all known to Plaintiffs prior to filing the application that gave rise to the '400 patent.  It is not credible for Plaintiffs to claim otherwisegiven their pre-filing involvement in the Secure Content Storage Association (SCSA)—an organization which was responsible for developing a DRM that would allow users to organize, move, and watch high-definition content on more than one device .  Finally, in addition to all of this, Viasat's Invalidity Contentions (*see* Exhibits 400-1 to 400-7) illustrate how at least seven separate prior art references anticipate every limitation of the asserted claims of the '400 patent.

**<u>Plaintiffs' Infringement Positions</u>**

Moreover, Plaintiffs appear to support their infringement theories by interpreting the asserted claims of the Asserted Patents in a way that is inconsistent with the plain language of the claims, the patent specification, and the prosecution history of the Asserted Patents; and, in any event, renders the asserted claims invalid.  For example, Plaintiffs point to no evidence that the accused Viasat in-cabin IFEC server stores encrypted media content, as required by the asserted claims of the '834 patent.  For the '400 patent, Plaintiffs fail to identify where in the accused product there exists "[a] kiosk for provisioning secure media content" and, even if there did exist the claimed kiosk, how the accused kiosk's processor is "configured to: obtain a unique identifier from the portable data storage device, wherein the unique identifier is . . . concealed by the portable data storage device."  And for the '667 patent, Plaintiffs point to no evidence that the accused "NAS device" has a "secure region," or, even if it did, how "an indication of the NAS device having a secure region" is received.  These are just a few examples of the numerous deficiencies in Plaintiffs' Infringement Contentions.

\*  \*  \*

Accordingly, in view of the above, we ask that Plaintiffs withdraw this action against Viasat and provide Viasat with a covenant not to sue on each of the three Asserted Patents.  Please let us know whether Plaintiffs will agree to this request by no later than May 26, 2023.

Sincerely,

Patrick D. Curran