QUINN EMANUEL URQUHART & SULLIVAN, LLP
Steven Cherny (*pro hac vice*)
stevencherny@quinnemanuel.com
Patrick D. Curran (Bar No. 241630)
patrickcurran@quinnemanuel.com
Hannah E. Dawson (*pro hac vice*)
hannahdawson@quinnemanuel.com
Tzivya H. Beck (*pro hac vice*)
tzivyabeck@quinnemanuel.com
111 Huntington Ave, Suite 520
Boston, MA 02199
Telephone:     (617) 712-7100

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Nicola R. Felice (*pro hac vice*)
nicolafelice@quinnemanuel.com
Anastasia M. Fernands (*pro hac vice*)
anastasiafernands@quinnemanuel.com
Vanessa Blecher (*pro hac vice*)
vanessablecher@quinnemanuel.com
Alicia Lai (*pro hac vice*)
alicialai@quinnemanuel.com
295 5th Avenue
New York, NY 10016
Telephone:     (212) 849-7000

*Attorneys for Defendant Viasat, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| SANDISK TECHNOLOGIES, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>VIASAT, INC.,<br><br>Defendant. | Case No.: 4:22-cv-4376-HSG<br><br>**DEFENDANT VIASAT, INC.'S NOTICE OF MOTION AND MOTION TO EXCLUDE CERTAIN OPINIONS OF CHUCK EASTTOM AND LAUREN KINDLER**<br><br>Date: August 14, 2025<br>Time: 2:00 pm |

# NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE THAT** that on August 14, 2025, at 2:00 pm, or as soon thereafter as this matter may be heard before the Honorable Haywood S. Gilliam, Jr., in Courtroom 2 of the United States District Court for the Northern District of California in the Oakland Courthouse, 1301 Clay Street, Oakland, California 94612, Defendant Viasat, Inc. ("Viasat") shall, and hereby does, move this Court for an order to partially exclude the opinions of Plaintiffs SanDisk Technologies, Inc., SanDisk 3D IP Holdings Ltd., SanDisk Technologies LLC, and SanDisk Storage Malaysia Sdn. Bhd. ("SanDisk" or "Plaintiffs")'s proffered experts Dr. Chuck Easttom and Ms. Lauren R. Kindler. Specifically, Viasat requests that the Court exclude the opinions set forth in ¶ 97 of the March 24, 2025 Expert Report of Dr. Chuck Easttom ("Easttom Report") and ¶¶ 12.a., 13.a. (including Table 2), 78 (including Figures 21 and 22), 177-182, 213.a.i., 218 (including Table 20), 220.a., 221.a. (including Table 21), and Exhibit 10.2 of the March 24, 2025 Expert Report of Ms. Lauren R. Kindler ("Kindler Report"). Viasat's Motion is made pursuant to Federal Rules of Evidence 402, 403, and 702, Civil Local Rule 7, and *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579 (1993) ("*Daubert*").

Viasat's Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Patrick D. Curran and accompanying exhibits, all matters of which the Court may take judicial notice, all pleadings and papers on file in this action, and other written or oral argument that Viasat may present to the Court.

DATED: June 9, 2025                     QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/* Patrick D. Curran
Patrick D. Curran
Attorneys for Defendant Viasat, Inc.

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ................................................................................................................1

II. STATEMENT OF RELEVANT FACTS ...........................................................................1

    A. Dr. Easttom's Report ..............................................................................................1

    B. Ms. Kindler's Report ..............................................................................................2

III. LEGAL STANDARD .........................................................................................................3

IV. ARGUMENT ......................................................................................................................3

    A. Dr. Easttom's Opinions Regarding the American Airlines Contract Are Based Solely On His Own Say-So ..........................................................................3

    B. Ms. Kindler Simply Parrots Dr. Easttom's *Ipse Dixit* ...........................................5

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
   No. 314CV00751GPCAGS, 2019 WL 1369007 (S.D. Cal. Mar. 26, 2019) ............................ 5

*United States v. Cerna*,
   No. CR 08-0730 WHA, 2010 WL 11627594 (N.D. Cal. Dec. 17, 2010) ................................ 3

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993) ............................................................................................................. 3

*Fail-Safe, L.L.C. v. A.O. Smith Corp.*,
   744 F. Supp. 2d 870 (E.D. Wis. 2010) ................................................................................. 5

*GPNE Corp. v. Apple, Inc.*,
   No. 12-CV-02885-LHK, 2014 WL 1494247 (N.D. Cal. Apr. 16, 2014) ................................ 5

*Klein v. Meta Platforms, Inc.*,
   766 F. Supp. 3d 956 (N.D. Cal. 2025) ............................................................................. 1, 7

*NetFuel, Inc. v. Cisco Sys. Inc.*,
   No. 5:18-CV-02352-EJD, 2020 WL 1274985 (N.D. Cal. Mar. 17, 2020) .......................... 3, 6

*NXP USA, Inc. v. Impinj, Inc.*
   No. 2:20-CV-01503-JHC, 2023 WL 3933877 (W.D. Wash. June 8, 2023),
   *reconsideration denied*,
   No. 2:20-CV-01503-JHC, 2023 WL 4052338 (W.D. Wash. June 16, 2023) ...................... 5, 6

*Stephens v. Union Pac. R.R. Co.*,
   935 F.3d 852 (9th Cir. 2019) ................................................................................................ 3

*United States v. Williams*,
   850 F. App'x 566 (9th Cir. 2021) ......................................................................................... 3

**Other Authorities**

Fed. R. Evid. 702 ..................................................................................................................... 1, 3, 4

Fed. R. Evid. 703 ........................................................................................................................... 3

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

It is well established that, to be admissible, an expert's opinion must be based on a reliable foundation. "Expert opinion cannot be deemed reliable under FRE 702 if it is connected to existing data only by the *ipse dixit* of the expert." *Klein v. Meta Platforms, Inc.*, 766 F. Supp. 3d 956, 965 (N.D. Cal. 2025). Yet Dr. Easttom's and Ms. Kindler's say-so, devoid of any math or analysis, is the primary basis for their quantitative opinions regarding the '667 patent. Specifically, Plaintiffs' infringement expert Dr. Easttom opines that "without the patented functionality of the '667 patent, Viasat would . . . not be able to meet any operational or contractual requirements to provide media content over the air," and would supposedly fall short of a specific numerical service threshold in a specific American Airlines contract. Dkt. 201-4 (Easttom Report) ¶ 97. But Dr. Easttom ***performs no quantitative analysis to reach that quantitative conclusion***. Dr. Easttom's opinion that Viasat could not reach the service level at issue is based entirely on his own say-so. Ms. Kindler then parrots Dr. Easttom's conclusions as the cornerstone for her own analysis, but Ms. Kindler has no source for her bedrock assumptions on service level issues— except Dr. Easttom's *ipse dixit*. Viasat respectfully asks the Court to exclude these opinions under Rule 702.

## II.   STATEMENT OF RELEVANT FACTS

Plaintiffs served the Expert Infringement Report of Dr. William C. Easttom II (Chuck Easttom) Ph.D., D.Sc. and the Expert Report of Lauren R. Kindler on March 24, 2025. Dkt. 200-4 (3/24/2025 Email from A. ElDessouki); Ex. A (3/24/2025 Report of Ms. Lauren R. Kindler); Dkt. 201-4 (3/24/2025 Report of Dr. Chuck Easttom).

### A.   Dr. Easttom's Report

In a section entitled "Background Of Technology And Patents-In-Suit," Dr. Easttom stated that Viasat purportedly "would not be able to provide over the air updates" to the in-flight media library of any airplane without the '667 patent. Dkt. 201-4 (Easttom Report) ¶ 97. Dr. Easttom acknowledged that manual updates to the media library of an airplane were possible, and even cited documents acknowledging these manual updates were done "normally," but also noted the

manual update process was described as "slow" or "expensive." *See id*. (citing documents noting that "[n]ormally an operator visits every plane any time the content library of a wireless in-flight entertainment system needs to be update[d]," which "[c]auses rollouts of new content to be slow"); *id*. (citing document stating that it is "expensive" when a "[t]ech visits every plane in fleet each month to update content"). Dr. Easttom did not, however, attempt to quantify how "slow" the process of manually updating a media library is, or how much slower that manual process is than an over-the-air update process. *See id*. ¶ 97 (offering no model of the time required to update media libraries over the air vs. manually). Despite the lack of any quantitative analysis comparing the total time to update media libraries using over-the-air updates as compared to manual updates, Dr. Easttom asserted that, without over-the-air updates, "Viasat's content update percentage would very ▮▮▮▮ [in Viasat's agreement with American Airlines] and Viasat **would not be able to meet the SLA** [Service Level Agreement] set forth is [sic] this agreement." *Id.* (emphases added).

        **B.**        **Ms. Kindler's Report**

In her expert report, Ms. Kinder calculates damages for the '667 patent under what she calls a "revenue apportionment" approach, which aims to identify "[t]he portion of Viasat's IPTV revenue that can reasonably be attributed to the '667 patent." Ex. A (Kindler Report) ¶¶ 177, 221. As part of this analysis, Ms. Kindler considers an American Airlines service agreement where she contends "Viasat agreed to provide Service Level Credits (SLCs) to American Airlines if Viasat failed to meet specific IPTV availability thresholds." Specifically, Ms. Kindler's "revenue apportionment [approach] use[d] as a starting point the value of avoided Service Level Credits (SLCs) that" she contends "Viasat would have otherwise been required to pay in the absence of its use of the '667 Patent." *Id.* ¶ 182. She took this starting point from an assumption, "***based on a discussion with Dr. Easttom*** … that Viasat could not have delivered the same availability and quality of IPTV service to its customer base (e.g., airlines) had it not used the '667 Patent and … [s]pecifically, … that without its alleged use of the '667 Patent, Viasat's availability would ▮▮▮▮▮▮" set forth in the Service Level Agreements. *Id.* (emphases added).

She then concluded that "this portion of revenues"—meaning the "revenues" to Viasat from *not* incurring penalties (*i.e.*, not having to provide SLCs)—"directly translates to profits for Viasat."

## III. LEGAL STANDARD

Federal Rule of Evidence 702 allows expert testimony only if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702; *see Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589-92 (1993). "It is the proponent of the expert who has the burden of proving admissibility." *United States v. Williams*, 850 F. App'x 566, 567 (9th Cir. 2021) (citation omitted).

Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. Proffered opinions based on the "*ipse dixit*" of the expert are inadmissible. *NetFuel, Inc. v. Cisco Sys. Inc.*, No. 5:18-CV-02352-EJD, 2020 WL 1274985, at *7 (N.D. Cal. Mar. 17, 2020).

## IV. ARGUMENT

### A. Dr. Easttom's Opinions Regarding the American Airlines Contract Are Based Solely On His Own Say-So

Testimony by an expert must be "more than subjective belief or unsupported speculation." *Daubert v. Merrill Dow Pharm., Inc.,* 509 U.S. 579, 590 (1993). Importantly, "[t]he expert's opinion must rest on 'facts or data in the case that the expert has been made aware of or personally observed,' not merely assumptions and speculation." *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019) (quoting Fed. R. Evid. 703). "Even where the reliability of expert testimony is largely dependent on the expert's experience, the witness must still explain how the experience leads to the conclusions reached, why the experience provides a sufficient basis for the opinions, and how the experience is reliably applied to the facts." *United States v. Cerna*, No. CR 08-0730 WHA, 2010 WL 11627594, at *6 (N.D. Cal. Dec. 17, 2010) (citations omitted). Courts

will not "simply take the expert's word for it that his or her experience renders the entirety of his/her testimony reliable." *Id*.

Only Dr. Easttom's say-so connects his opinions (how the over-the-air media library update process compares to the manual media library update process) to existing data (the American Airlines agreement, and the percentage of media content that must be updated each month— ▇▇▇ of content). These opinions should be excluded. Dr. Easttom concludes that, "without the patented functionality of the '667 patent, Viasat would . . . not be able to meet any operational or contractual requirements to provide media content over the air." Dkt. 201-4 (Easttom Report) ¶ 97. Specifically, Dr. Easttom opines that, "given the lack of a commercially viable non-infringing alternative, which would not include manual updates, and the number of aircrafts that need to be updated (*i.e.*, hundreds of aircrafts), Viasat's content update percentage would ***very likely*** ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and Viasat would not be able to meet the SLA [service level agreement] set forth is [sic] this agreement." Dkt. 201-4 (Easttom Report) ¶ 97 (emphasis added). This specific quantitative conclusion has no supporting quantitative analysis and it does not pass muster under Rule 702. Dr. Easttom is asserting that Viasat would not meet specific quantitative monthly service levels set out in its agreement with American Airlines, requiring updates to ▇▇▇ of media content on planes, despite Dr. Easttom's admission that manual updates are possible as an alternative to over-the-air updates—and despite Dr. Easttom ***never*** quantifying how much media on how many planes must be updated, or how long updates would take with or without over-the-air updates, or exactly what percentage of media library content Viasat could update each month using "normal[]" manual update mechanisms. Dkt. 201-4 (Easttom Report) ¶ 97. Critically, Dr. Easttom never even purports to know how many media files on how many planes are updated in a given month, or how long that process would take with or without over-the-air updates. He simply speculates that "Viasat services hundreds, if not thousands, of aircrafts need [sic] to be updated monthly," *id*. ¶ 97, and then asserts without quantitative analysis that a process of manual updates would mean fewer than ▇▇▇ of media files on planes would be updated—despite citing documents that call manual updates the "normal[]" update process. *Id*. Dr. Easttom's quantitative opinions about whether Viasat could

reach the service level required by its agreement with American Airlines without supposedly using the '667 patent amount to his unsupported say-so—essentially, "I'm an expert, and I say it would be less than ▮▮▮▮▮."

This opinion should be excluded. "Experts must follow some discernable methodology, and may not be a black box into which data is fed at one end and from which an answer emerges at the other. Rather the Court must be able to see the mechanisms in order to determine if they are reliable and helpful." *GPNE Corp. v. Apple, Inc.*, No. 12-CV-02885-LHK, 2014 WL 1494247, at *4 (N.D. Cal. Apr. 16, 2014) (citations omitted). Where "there is no analysis or factual data contained in [an expert's] proffered testimony to support his conclusion," it must be excluded as *ipse dixit*. *Bona Fide Conglomerate, Inc. v. SourceAmerica*, No. 314CV00751GPCAGS, 2019 WL 1369007, at *7 (S.D. Cal. Mar. 26, 2019).

### B.     Ms. Kindler Simply Parrots Dr. Easttom's *Ipse Dixit*

Ms. Kindler's damages model purports to rely on and adopt Dr. Easttom's assumptions, asserting that, without the '667 patent, Viasat "could not have delivered the same availability and quality of IPTV service to its customer base (*e.g.*, airlines) had it not used the '667 Patent" and, "[s]pecifically, Viasat's availability would ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" in the American Airlines contract. Ex. A, Kindler Report ¶ 181. Ms. Kindler proceeds to compute Plaintiffs' IPTV-related damages for the '667 patent using as her base the service level credits set out in the American Airlines Agreement, purportedly applying Dr. Easttom's assumption that Viasat would *never* reach the required service level in that agreement without the '667 patent. *Id.* ¶¶ 200-06.

Ms. Kindler's analysis impermissibly relies on Dr. Easttom's unfounded assumption. *See id.* ¶ 205 (citing as the basis for her assumption her "conversation with Chuck Easttom" on this issue). Courts routinely reject expert testimony that "merely parrot[s] [another's] predictions; "[c]oncluding that an event will occur because someone else has concluded that event will occur is … the epitome of an unreliable methodology." *Fail-Safe, L.L.C. v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 889 (E.D. Wis. 2010).

Ms. Kindler's unreliable methodology strongly parallels opinions she provided in another case, *NXP USA, Inc. v. Impinj, Inc.*. *See NXP USA, Inc. v. Impinj, Inc.*, No. 2:20-CV-01503-JHC,

2023 WL 3933877, at *4–5 (W.D. Wash. June 8, 2023), *reconsideration denied,* No. 2:20-CV-01503-JHC, 2023 WL 4052338 (W.D. Wash. June 16, 2023). In that case, Ms. Kindler's opinions were excluded as "the *ipse dixit* of an expert—itself relying on the *ipse dixit* of a third-party." *Id.* In *NXP*, Ms. Kindler relied on an employee's speculative say-so regarding an apportionment estimate. *Id.* Here, she relied on Dr. Easttom's *ipse dixit* as a similar "backbone" for her damages figures—this time, by adopting wholesale his assumption that Viasat could not reach the service level targets in the American Airlines agreement without using the '667 patent. Here, as in *NXP*, if Ms. Kindler "wanted to rely on [a third-party's say-so] rather than … her own, Ms. Kindler needed, at minimum, to ensure that [the third-party's] methodology was adequately explained, either in her report or elsewhere in the record." *Id.*; *see also NetFuel*, 2020 WL 1274985, at *6 n.5 ("[B]ecause Mr. Bratic's analysis depends on the validity of Dr. Rubin's analysis, in order for Mr. Bratic's analysis to stand, Dr. Rubin's figure must be 'reliable.'"). But nowhere in Dr. Easttom's report does he explain *how* or *why* he reached the conclusion that Viasat could never meet the service level agreements in its American Airlines contract without using the '667 patent. For that reason, Ms. Kindler's opinions that rely on Dr. Easttom's assumption should be excluded alongside Dr. Easttom's assumption itself.

   Ms. Kindler's opinions also misapply Dr. Easttom's *ipse dixit* analysis about updating *stored* media content to entirely different services, such as Viasat's provision of *live* content (not stored content). Those opinions should also be excluded. Dr. Easttom's unsupported assumptions about how much media in *stored* content libraries on planes could be updated each month made no reference to Viasat's ability to deliver *live* programming, not stored on the plane. *See* Dkt. 201-4 (Easttom Report) ¶ 97; *see also* Ex. A (Kindler Report) ¶ 177-181. But Ms. Kindler nonetheless attempts to use Dr. Easttom's opinions about updating *stored* libraries as support for a completely different idea—that Viasat would not be able to meet different obligations to deliver *live* content during a flight. Ex. A (Kindler Report) ¶¶ 177-181. Ms. Kindler makes no explanation for her logical leap between opinions about these two different services: updating stored media content once a month, vs. delivering live television in real time as it happens (like a live sporting event). As such, Ms. Kindler's opinions about Viasat's ability to meet contractual obligations to deliver

1  *live* TV availability are "connected to" Dr. Easttom's opinions about Viasat's *stored* media library
2  contractual obligations "only by [her] *ipse dixit*" and "cannot be deemed reliable under FRE 702."
3  "Expert opinion cannot be deemed reliable under FRE 702 if it is connected to existing data only
4  by the *ipse dixit* of the expert." *Klein*, 766 F. Supp. at 965 (quotations omitted).

## CONCLUSION

For the foregoing reasons, Dr. Easttom's opinions regarding the American Airlines service-level agreements, as expressed in paragraph ¶ 97 of his report, and Dr. Kindler's opinions that adopt and rely on those opinions (*see* Ex. A ¶¶ 12.a., 13.a. (including Table 2), 78 (including Figures 21 and 22), 177-182, 213.a.i., 218 (including Table 20), 220.a., 221.a. (including Table 21), and Exhibit 10.2), should be excluded.

DATED: June 9, 2025

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By   /s/ *Patrick D. Curran*
  Patrick D. Curran
  *Attorneys for Defendant Viasat, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that, on June 9, 2025, a copy of the foregoing was filed with the Court using the Court's ECF system, which sent notice to all counsel of record.

DATED: June 9, 2025

By  /s/ *Patrick D. Curran*
    Patrick D. Curran