L. Kieran Kieckhefer (SBN 251978)
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94105-0921
Telephone: 415.393.8337
Email: KKieckhefer@gibsondunn.com

Robert A. Vincent (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue Suite 2100
Dallas, TX 75201-2923
Telephone: 214.698.3281
RVincent@gibsondunn.com

Lillian J. Mao (SBN 267410)
GIBSON, DUNN & CRUTCHER LLP
310 University Avenue
Palo Alto, CA 94301-1744
Telephone: 650.849.5307
LMao@gibsondunn.com

Ahmed ElDessouki (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.2345
AElDessouki@gibsondunn.com

Brian M. Buroker (*pro hac vice*)
Shuo J. Zhang (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1700 M St, N.W.
Washington DC 20036-4504
BBuroker@gibsondunn.com
SZhang@gibsondunn.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| SANDISK TECHNOLOGIES, INC., et. al., <br><br> Plaintiffs, <br><br> v. <br><br> VIASAT, INC, <br><br> Defendants | Case No. 4:22-CV-4376-HSG-PHK <br><br> **SANDISK'S *DAUBERT* MOTION TO EXCLUDE CERTAIN OPINIONS OF GARETH MACARTNEY, PH.D** <br><br> Date: August 14, 2025 <br> Time: 2:00 p.m. <br> Dept.: Courtroom 2, 4th Floor <br> Judge: Hon. Haywood S. Gilliam, Jr. <br><br> **REDACTED VERSION** |

## TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| NOTICE OF MOTION | | 1 |
| MEMORANDUM OF POINTS AND AUTHORITIES | | 1 |
| I. | BACKGROUND | 2 |
| | A. Dr. Macartney's understanding of the asserted patents. | 2 |
| | B. Dr. Macartney's opinion regarding Viasat's ▮▮▮▮ agreement with ▮▮▮▮ | 3 |
| | C. Dr. Macartney's reliance on Viasat's acquisition of Arconics | 4 |
| | D. Dr. Macartney's criticism of certain data used by Ms. Kindler | 5 |
| II. | ARGUMENT | 6 |
| | A. Legal Standards | 6 |
| | B. Dr. Macartney's opinions regarding the ▮▮▮▮ agreement should be excluded. | 7 |
| | C. Dr. Macartney's opinions regarding the Arconics agreement should be excluded. | 8 |
| | D. Dr. Macartney's opinions regarding "compression" should be excluded. | 9 |
| III. | CONCLUSION | 10 |

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apple Inc. v. Samsung Elecs. Co.*,
   No. 12-cv-00630-LHK, 2014 WL 794328 (N.D. Cal. Feb. 25, 2014)............................................7

*Bio-Rad Labs., Inc. v. 10X Genomics Inc.*,
   967 F.3d 1353 (Fed. Cir. 2020)..................................................................................................6

*Biscotti Inc. v. Microsoft Corp.*,
   No. 2:13-cv-01015-JRG-RSP (E.D. Tex. May 25, 2017).................................................................6

*DataQuill Limited v. High Tech Computer Corp.*,
   No. 08cv543, 2012 WL 1284381 (S.D. Cal. April 16, 2012) .............................................................8

*Daubert v. Merrell Dow Pharms.*,
   509 U.S. 579 (1993)..................................................................................................................6

*Droplets, Inc. v. Yahoo! Inc.*,
   No. 12-cv-03733-JST, 2022 WL 2670188 (N.D. Cal. Feb. 28, 2022)..............................................7

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
   694 F.3d 51 (Fed. Cir. 2012)......................................................................................................6

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009)..................................................................................................6

*MLC Intellectual Prop., LLC v. Micron Tech., Inc.*,
   10 F.4th 1358 (Fed. Cir. 2021).............................................................................................6, 7, 9

*Sundance, Inc. v. DeMonte Fabricating Ltd.*,
   550 F.3d 1356 (Fed. Cir. 2008)................................................................................................10

*VirnetX, Inc. v. Cisco Sys., Inc.*,
   767 F.3d 1308 (Fed. Cir. 2014)..................................................................................................6

*Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*,
   609 F.3d 1308 (Fed. Cir. 2010)..................................................................................................6

**Rules**

Fed. R. Evid. 702 ................................................................................................................6, 10

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on August 14, 2025 at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 2, 4th Floor, of the United States District Court for the Northern District of California, 1301 Clay Street, Oakland, California 94612, Plaintiffs Sandisk Technologies, Inc., SanDisk 3D IP Holdings Ltd., SanDisk Technologies LLC, and SanDisk Storage Malaysia Sdn. Bhd. (collectively, "Plaintiffs" or "Sandisk"), by its attorneys, shall and hereby do move the Court to exclude testimony and opinions from Defendant Viasat Inc. ("Viasat")'s expert Gareth Macartney, Ph.D. This Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the declaration of Robert Vincent filed concurrently herewith, all of the pleadings and other documents on file in this case, and any further argument or evidence that may be received by the Court at the hearing.

## STATEMENT OF RELIEF SOUGHT

Pursuant to Civil Local Rules 7-2 and 7-4 and Federal Rule of Evidence 702, Sandisk respectfully asks this Court to exclude certain testimony and opinions of Viasat's damages expert Gareth Macartney, Ph.D. Dr. Macartney's testimony and opinions identified below do not achieve the level of reliability required for presentation before a jury. Sandisk would be prejudiced from having the jury hear Dr. Macartney's unreliable testimony and opinions, and Sandisk respectfully requests that this Court exclude the portions of Dr. Macartney's opinions discussed below.

## MEMORANDUM OF POINTS AND AUTHORITIES

Dr. Macartney is Viasat's damages expert. Dr. Macartney has no qualifications or experience to provide expert opinions on *technical* issues as they relate to the asserted patents. For three of his opinions, however, Dr. Macartney purports to rely on technical expertise he indisputably lacks. Viasat, during the claim construction process, argued that a person of ordinary skill in the relevant art of the asserted patents "would have had education in computer science or electrical engineering and experience in the field of media streaming and transmitting multimedia content between devices, as well as knowledge of the scientific literature concerning the same." Dkt. 103-4 at 14. Dr. Macartney has none of these qualifications, let alone any qualifications to render him an *expert* in the technical field of the asserted patents.

Yet, such technical expertise is required—and absent—for three of his opinions: (1) reliance on an agreement with a company called ▮▮▮ as comparable to the technology of the '400 patent; (2) the use of an agreement with a company called Arconics as a "reality check" on the opinions of Sandisk's damages expert, Lauren Kindler, and (3) his criticism that Ms. Kindler "disregard[s] standard video compression" in relying on certain Viasat data in her report. Ex. 1 ("Macartney Rpt.") ¶¶ 76, 87, 121. Dr. Macartney does not provide any evidence or analysis of the necessary technical predicate for these opinions, nor is he qualified to provide any such analysis. Accordingly, these opinions should be excluded.

## I. BACKGROUND

Dr. Macartney was retained by Viasat to assess and respond to the damages analysis of Sandisk's expert, Lauren Kindler, regarding the proper measure of damages if Viasat is found to infringe U.S. Patent Nos. 9,424,400 (the "'400 patent") and 10,447,667 (the "'667 patent"). Macartney Rpt. ¶ 6. Dr. Macartney holds a M.Sc. and Ph.D. in economics, as well as a B.A. in physics. *Id.*, Ex. A. He has no education or technical experience in the field of the asserted patents. *Id.*; Ex. 2 ("Macartney Tr.") at 21:19–23:2. For some of his opinions that rely on technical information, he relies on discussions with individuals with relevant technical knowledge, including Viasat's technical expert, Dr. Kevin Almeroth. *See, e.g.*, Macartney Rpt. ¶ 35; Macartney Tr. at 23:3–23. But for others, described below, he relies on his own, admittedly inadequate technical knowledge.

### A. Dr. Macartney's understanding of the asserted patents.

Dr. Macartney's report includes little detail regarding his understanding of the asserted patents. For the '400 patent, he states that it is "entitled 'Digital Rights Management System Transfer of Content'" and that "Plaintiffs allege that it 'include[s] a kiosk for provisioning secure media content to a plurality of portable data storage devices.'" Macartney Rpt. ¶ 33. He also states that, "[b]ased on my conversation with Dr. Kevin Almeroth, Viasat's technical expert, the '400 patent relates to a kiosk for authenticating end-user devices via a remote trusted server and delivering encrypted content and access key [sic] to the end-user devices." *Id.* ¶ 35; *see also id.* ¶ 80 ("The '400 patent covers a kiosk for authenticating end-user devices and delivering encrypted content and an access key to end-user devices.").

For the '667 patent, Dr. Macartney states that it is "entitled 'Secure Stream Buffer on Network attached Storage,'" that it "allegedly is responsible for 'implement[ing] a method of transmitting media content from a media streaming system,'" and that "Plaintiffs allege the '667 patent "establish[es] a connection, via a wide area network ("WAN"), to a network attached storage ("NAS") device operating on a local area network ("LAN")' in tandem with the satellite internet system connected to the server within an aircraft." Macartney Rpt. ¶ 34. Based on a conversation with Dr. Almeroth, Dr. Macartney states that "the '667 patent relates to a network-attached storage device that ensures protection of the content being streamed on devices" and that "[t]he concept behind the '667 patent comes from the early days when content providers were wary about the protection of their content being streamed." Id. ¶ 35; see also id. ¶ 78 ("The '667 patent involves a network-attached storage device that transmits an indication of a secure region for storing media content within the device.").

**B.     Dr. Macartney's opinion regarding Viasat's ████████ agreement with ████**

For the '400 patent, Dr. Macartney provides two damages opinions. Dr. Macartney first employs the methodology of Sandisk's damages expert, substituting one input on which Ms. Kindler relies with different data he considers more realistic.[1] Id. ¶ 120. Dr. Macartney next opines that a "more reliable approach" for estimating the royalty that Viasat would pay for the '400 patent is ██ ████████████████████████████████████████ Id. ¶ 121. He then provides an opinion based on Viasat's contract with a company called ████████ ████████████ Id.

The ████ agreement, entitled ████████████████████████ provides the terms by which ██ ██ ██ ████ ██ ██ ██ ██. Ex. 3 (VIASAT_00014400). In addition to ████████████████████████, the agreement ██ ████████████████████████████████████████████████ ████████████████████████████████████████████ Id. at -14407 (Section 2.1). The agreement ████████████████████████ ████████████████████ Id.

---

[1] While this first opinion is flawed, those flaws are properly exposed during cross examination at trial.

3

SANDISK'S DAUBERT MOTION TO EXCLUDE CERTAIN OPINIONS OF GARETH MACARTNEY, PH.D
CASE NO. 4:22-CV-4376-HSG-PHK

There is scant discussion of the ▌ agreement in Dr. Macartney's report. *See* Macartney Rpt. ¶ 121. In his one-paragraph discussion, he purports to determine ▌ ▌ ▌ ▌ *Id.* He then ▌ ▌ ▌ *Id.* Dr. Macartney cites no evidence for his opinions regarding the ▌ agreement other than the agreement itself. *Id.* As confirmed in his deposition, Dr. Macartney performed no analysis to determine whether the technology at issue in the ▌ agreement was technically comparable to the technology of the '400 patent, including any analysis to support ▌ ▌ Macartney Tr. at 127:13–128:2, 129:11–130:24. 131:21–132:18. Indeed, he does not discuss the disclosures or scope of the '400 patent at all in his opinions based on the ▌ agreement. Macartney Rpt. ¶ 121. Nor does Dr. Macartney perform any analysis to explain why the ▌ agreement, ▌ , is economically comparable to the patent license that would result from the hypothetical negotiation. *Id.*

C.    **Dr. Macartney's reliance on Viasat's acquisition of Arconics**

Dr. Macartney performs what he calls a "reality check" on Ms. Kindler's opinions by discussing the amount that Viasat paid to acquire a company called Arconics, with which Viasat had previously contracted to provide Wireless In-Flight Entertainment ("W-IFE" or "wireless IFE") services. Macartney Rpt. ¶ 76. As explained by Dr. Macartney:

> ▌ ▌ ▌ ▌ On November 14, 2016, Viasat acquired Arconics for ▌ . At the time, Vice President and General Manager of Commercial Mobility business at Viasat, Don Buchman, noted, "We believe combining our strengths with Arconics will position Viasat to be the market leader for connectivity, passenger services and flight deck applications and operations."

*Id.* ¶¶ 12–13 (citations omitted).

Dr. Macartney opines that because Ms. Kindler's damages "far exceed the ▓▓▓ Viasat paid to acquire Arconics," Ms. Kindler's analysis is implausible "from both an economic and business standpoint." *Id.* ¶ 76. Citing conversations with Dr. Almeroth and a Viasat engineer, Dr. Macartney states, "It is unrealistic to suggest Viasat would license a patent for ▓▓▓ for technologies that, at best, offer only a small fraction of Arconics' value." *Id.* Dr. Macartney testified in his deposition that he provided no opinions "about whether or not the technology acquired from Arconics would cover the full scope of the asserted claims" or "whether the software products, whatever Arconics was providing, would be sufficient to practice the asserted claims." Macartney Tr. at 102:8–13, 103:18–104:3, 107:17–23. While "Arconics provided services that were related to W-IFE and, in fact, partnered with Viasat before the acquisition with respect to that," he does not "have an understanding that gets into more maybe technical aspects of the accused products." *Id.* 101:14–21. ▓▓▓ *Id.* at 111:6–20.

### D. Dr. Macartney's criticism of certain data used by Ms. Kindler

One of the inputs in Ms. Kindler's analysis relies on ▓▓▓. Macartney Rpt. ¶ 88; Ex. 4 ("Kindler Rpt.") ¶ 175. In order to calculate ▓▓▓, Ms. Kindler uses data Viasat provides to its customers, stating that for a video at a resolution of 480p ▓▓▓, the "[e]stimated data consumption" is 0.7 GB per hour. Kindler Rpt. ¶ 175 (citing https://www.viasat.com/perspectives/satellite-internet/2022/the-ultimate-guide-to-streaming-with-satellite-internet/).

Dr. Macartney criticizes Ms. Kindler's use of this 0.7 GB figure provided on Viasat's website as "disregarding standard video compression." Macartney Rpt. ¶ 87. He states that "Ms. Kindler ignores that videos are compressed, with only the first frame stored fully and subsequent frames showing only changes. Therefore, the data needed for streaming depends on content nature, with

videos having less change between frames requiring less data." *Id.* Dr. Macartney cites no evidence in his report to support his opinion that the Viasat data on which Ms. Kindler relies "disregard[]s standard video compression" or otherwise does not account for standard video compression. *Id.*

## II. ARGUMENT

### A. Legal Standards

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 592–93 (1993).

Damages in patent cases are often calculated using a reasonable royalty approach. "The most common method for determining a reasonable royalty is the hypothetical negotiation approach, which attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014) (internal citations omitted). When experts rely on licenses or other agreements to inform the outcome of the hypothetical negotiation, the Federal Circuit requires that the "licenses relied on by the [expert] in providing damages [be] sufficiently comparable to the hypothetical license at issue in the suit." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325, 1332 (Fed. Cir. 2009). "When relying on licenses to prove a reasonable royalty, alleging a loose or vague comparability between different technologies or licenses does not suffice." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012). "[C]omparisons of past patent licenses to the infringement must account for "the technological and economic differences" between them." *Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010) (internal quotation marks omitted). A damages expert may account for the "differences between the accused technology and the licensed technology," *MLC Intellectual Property, LLC v. Micron Technology, Inc.*, 10 F.4th 1358, 1374 (Fed. Cir. 2021), by "rel[ying] on the reports, testimony, and conclusions of other witnesses to understand that the licenses were technologically comparable." *Bio-Rad Labs., Inc. v.*

*10X Genomics Inc.*, 967 F.3d 1353, 1377 (Fed. Cir. 2020). "While the comparability of previous licenses is generally fertile ground for cross-examination, a complete failure to provide any analysis regarding technological comparability warrants exclusion." *Biscotti Inc. v. Microsoft Corp.*, No. 2:13-cv-01015-JRG-RSP, 2017 WL 2607882, at *3 (E.D. Tex. May 25, 2017); *see also Droplets, Inc. v. Yahoo! Inc.*, No. 12-cv-03733-JST, 2022 WL 2670188, at *2 (N.D. Cal. Feb. 28, 2022) (excluding evidence of licenses where damages expert was "not qualified" to opine on technical comparability); *Apple Inc. v. Samsung Elecs. Co.*, No. 12-cv-00630-LHK, 2014 WL 794328, at *11 (N.D. Cal. Feb. 25, 2014) (excluding damages expert opinions as unreliable "[w]ithout some attempt to address the technological differences and similarities of the agreements in the record").

### B.  Dr. Macartney's opinions regarding the ▉ agreement should be excluded.

Dr. Macartney provided no analysis regarding any technological comparability between the technology licensed in the ▉ agreement and the '400 patent. In his deposition, Dr. Macartney admitted that he performed "no technical analysis . . . comparing the scope of the '400 patent to the scope of the technology at issue in the ▉ agreement." Macartney Tr. at 132:10–18; *see also id.* at 127:13–128:2, 129:11–130:24. 131:21–132:6. He cites no discussion with any technical expert, technical witness, or any other document at all other than the ▉ agreement itself. Macartney Rpt. ¶ 121. Indeed, other than noting that ▉ he makes no attempt to even describe ▉. *Id.* And even if he had attempted to analyze the technological comparability of the ▉ agreement, Dr. Macartney is not qualified to do so. Dr. Macartney simply "conducted no assessment of the licensed technology versus the accused technology to account for any differences." *MLC*, 10 F.4th at 1375 (affirming exclusion of damages expert testimony on a purportedly comparable license).

Indeed, Dr. Macartney provides no evidence that the ▉ agreement involved patent rights *at all*. Taking Dr. Macartney's analysis at face value, the ▉ agreement is ▉. Macartney Rpt. ¶ 121. Dr. Macartney does not mention *any* patent rights involved in the ▉ agreement. *Id.* ▉ Ex. 3 (VIASAT_00014400) at Section 2.1.

7

An agreement that "is not a license agreement for a patent or patents . . . is not evidence of a royalty rate for the use of the invention or analogous inventions." *DataQuill Limited v. High Tech Computer Corp.*, No. 08cv543, 2012 WL 1284381, *7 (S.D. Cal. April 16, 2012) ("No reasonable jury could find the Google agreement sufficiently comparable to the license that would have been reached at the hypothetical negotiation because the Google agreement is not even a patent license, it is a revenue sharing agreement."). Dr. Macartney's one-paragraph discussion of the ▇ agreement does not attempt to account for the differences between the ▇ agreement—which ▇ ▇ and involves different parties—and the hypothetical negotiation. Macartney Rpt. ¶ 121. His opinions regarding the ▇ agreement should be excluded.

    **C.    Dr. Macartney's opinions regarding the Arconics agreement should be excluded.**

Dr. Macartney relies on Viasat's acquisition of Arconics as a "reality check" on Ms. Kindler's opinions, stating that Ms. Kindler's opinions on the proper royalty for infringement are "unrealistic" because they exceed the total amount Viasat paid to acquire Arconics. Macartney Rpt. ¶ 76. The fatal flaw with Dr. Macartney's opinions is that he performs no analysis (nor is he qualified to do so) regarding whether the scope of the technology acquired from Arconics is commensurate with the scope of the asserted patents. *Id.* Indeed, according to his own description, ▇ ▇. *Id.* ¶¶ 12-13. ▇ ▇ *Id.* Put another way, ▇ ▇

And the asserted patents cover technology broader than that purportedly supplied by Arconics. For example, claim 1 of the '400 patent requires "[a] kiosk for provisioning secure media content to a plurality of portable data storage devices," "a first data interface configured to communicate with a portable data storage device," and "a second data interface configured to communicate, over a network, with a remote trusted server." Dkt. 1-1 ('400 patent), cl. 1. Likewise, the '667 patent requires "a network interface adapter configured to transmit digital content, via a wide area network (WAN), to a network attached storage (NAS) device operating on a local area network (LAN)." Dkt. 1-2 ('667

patent), cl. 1. As Dr. Macartney admitted, ███████████████████████████████
███████████████████████████████████████████, and he did no
analysis to determine ███████████████████████████████. Macartney Tr. at 102:8–
13, 103:18–104:3, 107:17–23.

Moreover, Arconics supplied technology relevant to ███████████. But Dr. Macartney does not opine that the Arconics technology has any relation to ███████████—another infringing use case. Macartney Rpt. ¶ 76; *see also* Macartney Tr. at 104:4–13. Dr. Macartney provides no basis for which the Arconics agreement—which he links to ████, not ████—could serve as a "check" on the royalties applicable to ████.

To have any relevance to the proper measure of damages for infringement of the asserted patents, Dr. Macartney was required to at least attempt to account for the differences in technology in the Arconics agreement and the asserted patents. *MLC*, 10 F.4th at 1375 (other agreements "need to be sufficiently comparable for evidentiary purposes and any differences in circumstances must be soundly accounted for"). His failure to do so renders his opinions unreliable.

### D. Dr. Macartney's opinions regarding "compression" should be excluded.

Dr. Macartney's criticism of certain inputs to Ms. Kindler's analysis should be excluded because it is based wholly on technical expertise he does not have. Dr. Macartney says that data Ms. Kindler uses in her analysis—taken straight from a Viasat website—"disregard[s] standard video compression" and thus overstates the rate at which Viasat transmits video. Macartney Rpt. ¶ 87. The problem with Dr. Macartney's criticism (besides being wrong)[2] is that he has no expertise in data compression to make such a statement. He admitted in his deposition that he has no expertise in video compression. Macartney Tr. at 97:10–18. And he cites no technical documents and no discussion with any technical expert or witness to support his criticism. Macartney Rpt. ¶ 87. Put simply, he has no "scientific, technical, or other specialized knowledge" on this issue that could help the jury understand the evidence. Fed. R. Evid. 702(a). "Admitting testimony from a person [without relevant qualifications] serves only to cause mischief and confuse the factfinder." *Sundance, Inc. v. DeMonte*

---

[2] Ms. Kindler explained in her deposition that Sandisk's technical expert confirmed that the Viasat data on which she relied did, in fact, account for compression. Ex. 5 (Kindler Tr). at 78:10-79:6.

*Fabricating Ltd.*, 550 F.3d 1356, 1362 (Fed. Cir. 2008) (finding an abuse of discretion to allow a witness not qualified as a technical expert to testify on issues of noninfringement or invalidity).

### III. CONCLUSION

For the foregoing reasons, Sandisk respectfully requests that the Court exclude the testimony and opinions of Dr. Macartney on the issues identified above.

Dated: June 9, 2025                                       GIBSON, DUNN & CRUTCHER LLP

                                                          */s/ L. Kieran Kieckhefer*
                                                          L. Kieran Kieckhefer

                                                          *Counsel for Plaintiffs*