UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SANDISK3D IP HOLDINGS LTD., et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>VIASAT, INC.,<br><br>　　　　Defendant. | Case No. 22-cv-04376-HSG   (PHK)<br><br>**ORDER DENYING SANDISK'S MOTION TO COMPEL DISCOVERY RE: INTERNET PROTOCOL TELEVISION**<br><br>Re: Dkt. 188 |

　　　　This case has been referred to the undersigned for purposes of all discovery disputes and issues. Dkt. 173. Now pending before the Court is a discovery letter brief regarding a dispute between the Parties concerning discovery relating to Internet Protocol Television ("IPTV"). [Dkt. 188]. While SanDisk has requested a hearing on this motion, *id.* at 4, the undersigned finds this dispute suitable for resolution without oral argument. *See* Civil L.R. 7-1(b). For the foregoing reasons, the undersigned **DENIES** SanDisk's motion to compel.

## LEGAL STANDARD

　　　　Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Information need not be admissible to be discoverable. *Id.* Relevance for purposes of discovery is broadly defined to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350–51 (1978)); *see also In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-MD-2843 VC (JSC), 2021 WL 10282215, at *4 (N.D. Cal. Sept. 29, 2021)

1  ("Courts generally recognize that relevancy for purposes of discovery is broader than relevancy for
2  purposes of trial.") (alteration omitted).
3      While the scope of relevance is broad, discovery is not unlimited. *ATS Prods., Inc. v.
4  Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for the purposes of
5  discovery, is defined broadly, although it is not without ultimate and necessary boundaries.").
6  Information, even if relevant, must be "proportional to the needs of the case" to fall within the scope
7  of permissible discovery. Fed. R. Civ. P. 26(b)(1). The 2015 amendments to Rule 26(b)(1)
8  emphasize the need to impose reasonable limits on discovery through increased reliance on the
9  common-sense concept of proportionality: "The objective is to guard against redundant or
10 disproportionate discovery by giving the court authority to reduce the amount of discovery that may
11 be directed to matters that are otherwise proper subjects of inquiry. The [proportionality
12 requirement] is intended to encourage judges to be more aggressive in identifying and discouraging
13 discovery overuse." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. In
14 evaluating the proportionality of a discovery request, a court should consider "the importance of the
15 issues at stake in the action, the amount in controversy, the parties' relative access to the information,
16 the parties' resources, the importance of the discovery in resolving the issues, and whether the
17 burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).
18     The party seeking discovery bears the burden of establishing that its request satisfies the
19 relevancy requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285
20 F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the
21 discovery should not be allowed. *Id.* The resisting party must specifically explain the reasons why
22 the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative
23 arguments. *Id.*; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under
24 the liberal discovery principles of the Federal Rules defendants were required to carry a heavy
25 burden of showing why discovery was denied.").
26     Courts have broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co.
27 v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in
28 controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of

discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). As part of its inherent discretion and authority, the Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). Similarly, a district court's determination as to proportionality of discovery is within the district court's discretion. *See Jones v. Riot Hospitality Group LLC*, 95 F.4th 730, 737–38 (9th Cir. 2024) (finding district court did not abuse discretion on proportionality ruling). The Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery"). For example, the Court may limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Ultimately, "the timing, sequencing and proportionality of discovery is left to the discretion of the Court." *Toro v. Centene Corp.*, 202 WL 6108643 at *1 (N.D. Cal. Oct. 14, 2020).

## DISCUSSION

### I. RELEVANT BACKGROUND RE: IPTV DISCOVERY

To understand this dispute, some background context is necessary. The asserted claims of U.S. Patent No. 9,424,400 ("the '400 patent"), such as independent claim 1, are directed to a "kiosk comprising" various elements. The claimed "kiosk" comprises "a first data interface configured to communicate with a portable data storage device." '400 patent, col. 22:45–46. The claimed kiosk further comprises "a second data interface configured to communicate, over a network, with a remote trusted server." *Id.* at col. 22:47–48.

SanDisk's accused products for the '400 patent include Viasat systems, which provide streaming content to devices. One of the accused Viasat systems is the Viasat in-flight entertainment system, which is installed on airplanes to provide streaming content to passengers watching screens embedded on the seat back. *See* Dkt. 145-2 at 2 (SanDisk Infringement Contentions for the '400 patent).

The asserted claims of U.S. Patent No. 10,447,667 ("the '667 patent") such as independent

claim 1 are directed to a "media streaming system comprising" various elements. The claimed "media streaming system" comprises "a network interface adapter[,]" which is "configured to transmit . . . content . . . to a network attached storage (NAS) device operating on a local area network." '667 patent, col. 10:63–66. The claimed media streaming system further comprises one or more processors configured to (among other things) "transmit the . . . content to [a] secure region [comprising a buffer] within the NAS device for playback by" a display from the buffer. *Id.* at col. 10:67–11:11.

SanDisk's accused products for the '667 patent include Viasat systems, which provide streaming content to devices. The accused Viasat systems include the Viasat Content Delivery System ("VCDS") (a cloud-hosted service for transferring content) and the Viasat Open Stream (which is directed to multicasting content over a satellite system), both of which are alleged to implement so-called "edge storage". *See* Dkt. 145-4 at 2 (SanDisk Infringement Contentions for '667 patent).

The current dispute concerns whether Viasat should be compelled to produce discovery regarding Viasat's IPTV (Internet Protocol Television) product. At a general level, IPTV is a service for delivering content over the Internet (instead of via over-the-air broadcast or through a cable television system).

This is not the first time the Parties have had a dispute over the scope of discovery regarding IPTV. The Court previously denied an earlier SanDisk discovery motion seeking technical discovery on IPTV configuration files. [Dkt. 183 at 6–7 ("For purposes of discovery, SanDisk has not met its burden to show how or why the IPTV configuration files are within the scope of relevance or proportional in order to prove SanDisk's contention that the mere existence of IPTV content would be sufficient for infringement purposes.")].

In relevant part, the Court's March 14 Order states:

> Sandisk's unexplained argument that the VCDS ground server source code is required for discovery because it would show "configuration files for IPTV" is equally unavailing. [citation]. First, IPTV (Internet Protocol Television) is a service for delivering content over the Internet, and the configuration files for encoding that content for distribution is accomplished by the content provider. That is, configuration files for IPTV are directed to the specifics of how the

4

> content is packetized, multiplexed, and/or transported according to industry-standard or other well-known protocols. Sandisk simply identifies no limitations in the '400 patent claims directed to how the IPTV content is configured. Again, it is no surprise therefore that Sandisk's infringement contentions make only passing reference to the mere existence of IPTV as an example (among other listed streaming services) of a media streaming service for purposes of "provisioning secure media content" as required by the preamble of '400 claim 1. [Dkt. 145-2 at 4]. Notably, as with the "remote trusted server" limitation discussed above, Sandisk's infringement contentions contain no accusations as to how any IPTV service is configured because the '400 claims contain no such express limitation. And again, it is inconsistent for Sandisk to argue that the '400 claims should be construed to now require specific functional limitations as to the configuration of the claimed "secure media content" (when Sandisk points to no such express claim limitations) so as to argue that IPTV configuration files are now somehow within the scope of relevant discovery. Additionally, this conclusion aligns with Judge Gilliam's Order denying Sandisk's motion for leave to amend its infringement contentions. [Dkt. 182]. For purposes of discovery, Sandisk has not met its burden to show how or why the IPTV configuration files are within the scope of relevance or proportional in order to prove Sandisk's contention that the mere existence of IPTV content would be sufficient for infringement purposes. For the purposes of these particular discovery disputes, the undersigned makes no findings regarding which products are or were adequately accused of infringement, as that issue is not necessary to resolve in deciding the discovery dispute.

[Dkt. 183 at 6–7].

Viasat argues that SanDisk's motion is procedurally deficient because it "is effectively a motion to reconsider that ignores the rules for such a motion." *Id.* at 6 (citing Civil L.R. 7-9 (requiring a party to seek and obtain leave of Court to file a motion for reconsideration prior to filing such a motion)). SanDisk does not address this procedural issue head-on, but appears to take the position that, because SanDisk only learned on March 13 that Viasat was excluding IPTV from the scope of its production of documents on IFE, that this is a new dispute. [Dkt. 188 at 2]. SanDisk argues that Viasat was obligated to make clear in its objections and responses to discovery that Viasat was objecting to (and thus excluding) IPTV from the scope of documents and discovery produced. *Id.* at 4.

## II. PARTIES' POSITIONS AS TO SCOPE OF IPTV-RELATED DISCOVERY

As to scope of discovery, SanDisk argues that SanDisk's infringement contentions accuse Viasat's "in-flight entertainment offerings" and that such "IFE" includes IPTV/Live TV. [Dkt. 188 at 2]. SanDisk argues that it learned for the first time on March 13 that Viasat was allegedly secretly

interpreting "in-flight entertainment" to exclude IPTV when responding to previously-served discovery requests. *Id.* SanDisk argues that its '400 patent infringement contentions accused "Viasat's in-flight entertainment offerings" and argues that "IPTV is an IFE product – it provides live TV to passengers in flight." *Id.* For the '667 patent, SanDisk argues that its claims chart accuses "Live Video" and a "Distributions" implementation for content delivery. *Id.*

SanDisk argues that a number of Viasat documents describe IPTV as being "an IFE offering." *Id.* SanDisk further argues that "Viasat's IPTV provides live TV on airplanes and is *not* generic Internet Protocol Television." *Id.* (emphasis in original; citing Dkt. 183 at 6 (March 14, 2025 Order Resolving Discovery Letter Briefs re Disputes re Source Code, Financial Documents, and Depositions)).

In opposition, Viasat argues that this "IPTV dispute is not new . . . . At best, Plaintiffs' letter is an improper motion to reconsider" this Court's March 14 Order. *Id.* at 5. Viasat argues that "Viasat's documents, source code, and correspondence have long distinguished IFE from IPTV." *Id.* Viasat cites a number of Viasat's produced documents "explaining that Viasat's IFE and IPTV products are not the same . . . . Viasat's production explained IFE and IPTV are each '**stand alone products**,' and each are 'optional' for customers." *Id.* (emphasis in original). Viasat argues that its produced documents show that "Live Video" (which includes "Fubo" (an Internet streaming service company) and IPTV) "were types of content that can be delivered by . . . VCDS" but "like Fubo (or other content) IPTV is not *part of* VCDS" but rather is a "source of content" for delivery by VCDS, not part of VCDS itself). *Id.* (emphasis in original). Viasat argues that SanDisk inspected Viasat source code for a full year and never suggested that IPTV code should be produced until February 3. *Id.* at 6.

Viasat argues that SanDisk's infringement contentions do not support SanDisk's position. For the '667 patent, Viasat argues that "Plaintiffs did not say Viasat's IPTV/Live TV product was an accused product; they say the accused VCDS product could deliver media content *such as* live television, from various sources" including "live TV from fuboTV." *Id.* at 5 (emphasis in original). For the '400 patent infringement contentions, Viasat points out that the accused products are Viasat's "in-flight entertainment" systems "and mention IPTV only in three exemplary

6

parentheticals describing *other* functionality" such as "media streaming service"—and the "streamed media services were not accused." *Id.*

Viasat argues that it is not required, in responses to discovery requests, to explain what products are not accused (such as IPTV). *Id.* at 7. Rather, Viasat argues that under the Patent Local Rules, SanDisk was obligated to identify with specificity what is accused. *Id.* Viasat argues that, because SanDisk did not accuse with specificity the standalone IPTV product, under the Patent Local Rules the onus was on SanDisk to take diligent discovery and clarify the differences between Viasat's products to determine what products to accuse. *Id.* Viasat argues that SanDisk only raised the issue of IPTV technical discovery in February, just before the close of fact discovery, and that this lack of diligence is not excused. *Id.* at 6–7.

### A. PROCEDURAL ISSUES

SanDisk did not present this motion as a motion for leave to file a motion for reconsideration of the Court's March 14 Order under Civil L.R. 7-9. Because SanDisk did not even mention or address the standards under Civil L.R. 7-9, if SanDisk's motion were treated as a motion seeking leave to file a motion for reconsideration, the instant motion would fail on procedural grounds.

The Court's March 14 Order resolved a dispute over whether certain VCDS ground server source code should be produced, because that source code would allegedly disclose IPTV configuration files. In denying SanDisk's request for IPTV configuration files, the Court was not required to, and was not asked to, decide whether SanDisk was entitled to a broader swath of discovery on the IPTV product itself, which is what SanDisk now seeks. Accordingly, the issues decided in the March 14 Order are related to, but not identical to the dispute presented here.

The undersigned notes, however, that experienced counsel would have been expected to take into account the substantive rulings in the March 14 Order before pursuing the instant motion (which seeks even more IPTV-related discovery, plus a Rule 37 sanction, than the prior motion). Further, the Court expected counsel to substantively address why the current motion is not a motion for reconsideration, how the current motion should be distinguished from the Court's March 14 Order, and why SanDisk's contentions on the scope of IPTV discovery should not have been narrowed or at least impacted or guided by the March 14 Order. In the current briefing, SanDisk addressed none

1    of these issues.

2          The timing of this motion undercuts SanDisk's arguments as well. SanDisk argues that it first learned of Viasat's "secret" interpretation of IFE to exclude IPTV on March 13, 2025. However, according to Viasat, SanDisk first raised the issue of source for "implementation of Live TV" on February 3, 2025, which led to the filing of the previous Discovery Letter Brief on February 7 (which was resolved by the March 14 Order). [Dkt. 159]. Further, SanDisk has had in its possession numerous Viasat produced documents, which describe IPTV separately from IFE, and has had access to Viasat's source code, for many months. If SanDisk intended to accuse the IPTV product of infringement, SanDisk's review of the source code would have readily shown long ago that there was no source code for the IPTV product itself, because (as cited in the infringement contentions), that source code relates to the operation of the VCDS. In light of this chronology, the undersigned finds that the requested discovery is not proportional to the needs of the case, because SanDisk seeks unknown numbers of documents, source code, and a 30(b)(6) deposition – all after the fact discovery deadline has passed. Had such discovery been truly important to the needs of the case, SanDisk had ample opportunity to seek such discovery months ago and not on the eve of the close of fact discovery.

      Accordingly, the undersigned finds that the instant motion would be **DENIED** on procedural grounds if it were treated as a motion for reconsideration without having first sought and obtained leave of Court under Civil L.R. 7-9. Because of the general policy of resolving disputes on the merits, the Court also addresses the merits of the instant dispute below.

      **B.    IPTV DISCOVERY**

      A necessary predicate for SanDisk's motion is whether Viasat's IPTV product is within the scope of relevant discovery in this case. The Court has undertaken, yet again, a detailed examination of SanDisk's infringement contentions. As the Court found in connection with the March 14 Order, SanDisk's '400 patent infringement contentions do not explicitly accuse the IPTV *product* of infringement. First, the '400 infringement contentions never mention the IPTV *product* of infringement. SanDisk's infringement contentions make only passing reference to IPTV as one example (among other listed streaming services) of a media streaming service for purposes of

"provisioning secure media content" as required by the preamble of '400 claim 1. [Dkt. 145-2 at 4]. Notably, SanDisk's infringement contentions contain no accusations as to how any IPTV *product* infringes any of the hardware or functional claim limitations of the '400 claims. The contention that IPTV *content* could be delivered is not the same thing as accusing the IPTV *product*. This is because media content which is configured for distribution through the Internet can be received and decoded by a variety of different devices (set top-boxes, dedicated devices, general-purpose computers running apps)—indeed, in the infringement contentions, it is evident that SanDisk is accusing the VCDS (and not the IPTV product) of receiving the IPTV content.

      SanDisk's arguments about the '667 patent contentions are even less compelling. The '667 infringement claims charts **nowhere** mention or use the term IPTV (even as a type of formatted content). SanDisk's brief cites to the general cover pleading for all of its contentions for all its asserted patent claims and confusingly refers to its "contentions" as using the term "IPTV" multiple times, without making clear that only the '400 claims charts use that term, not the '667 charts. Further, SanDisk's citation to this Court's March 14 Order for the proposition that "Viasat's IPTV provides live TV on airplanes and is not generic Internet Protocol Television" is confusing at best. *Id.* at 2 (citing Dkt. 183 at 6). This Court made no finding in the March 14 Order that Viasat's IPTV "is not generic Internet Protocol Television[,]" and it is unclear what "generic" means in SanDisk's argument. Further, the Court made no finding that Viasat's IPTV *product* provides live TV on airplanes. The fact that the VCDS may deliver IPTV-formatted content, again, is not the same thing as accusing the IPTV system or product of infringement. By analogy, SanDisk's arguments appear to be eliding the distinction between a file formatted in a certain way (such as an .mp3 audio file) and a specific company's electronic device for playing audio files (such as an MP3 player like the iPod). And the fact that "Live TV" is mentioned a handful of times in the '667 contentions as an example of the kind of content the accused system can display is not, fairly read, an accusation that Viasat's IPTV product is accused of infringement.

      Viasat notes that all of the Viasat documents which SanDisk cited in this motion to argue that IFE and IPTV are somehow the same product are not cited in SanDisk's infringement contentions. [Dkt. 188 at 5]. This undercuts further SanDisk's argument that, by accusing IFE

9

SanDisk somehow included IPTV – if that were so, one would have expected SanDisk to have cited such documents in its contentions. Viasat also notes that all the Viasat technical documents which Viasat discusses and cites in the instant motion are, in fact, cited in SanDisk's infringement contentions. *Id.* And all the documents discussed by Viasat (and also cited in SanDisk's infringement contentions) recognize and discuss IFE as being a separate product from the IPTV product. *Id.* Under Patent Local Rule 3-1, a patentee has an obligation to identify each accused apparatus as specifically as possible. The disclosure in SanDisk's contentions is not specific enough with regard to Viasat's IPTV product to render the discovery sought as to that IPTV product within the scope of relevance for purposes of discovery.

Additionally, this conclusion is conceptually consistent with the guidance from Judge Gilliam's Order denying SanDisk's motion for leave to amend its infringement contentions. [Dkt. 182]. In that March 12 Order, Judge Gilliam resolved a dispute as to whether some of the requested amendments were appropriate to "clarify" that the scope of accused products included residential media streaming systems. *Id.* at 7. Viasat opposed on the grounds that SanDisk was, in reality, trying to add new accused products to the case. *Id.* Judge Gilliam denied the motion to add this "clarification" to the contentions and noted "The Court is skeptical that Plaintiffs previously identified Defendant's 'residential applications' as infringing products. During the claim construction hearing, Plaintiffs repeatedly stated that the 'accused devices are installed on airplane cabins.' Dkt. No. 117 at 72; *see also id.* ('I think it's undisputed that they [accused products] are on airplanes.')." *Id.* n.8. Here, the record does not indicate that the Viasat IPTV product is only deployed on airplanes.

For purposes of discovery, SanDisk has not met its burden to show how or why the IPTV product is within the scope of relevance or proportional under applicable legal standards for discovery. For the purposes of these particular discovery disputes, the undersigned makes no findings regarding which products are or were adequately accused of infringement, as that ultimate issue is not necessary to resolve in deciding the discovery dispute.

**CONCLUSION**

For the reasons discussed herein, the undersigned accordingly **ORDERS** as follows:

1) SanDisk's motion to compel is **DENIED**.

2) SanDisk's request for a hearing on this discovery dispute is **DENIED**.

3) While the Court references SanDisk's infringement contentions herein, the Court recognizes that those contentions were filed under seal and are designated under the Protective Order. The Court has deliberately drafted this Order to avoid discussing or quoting the details of those contentions or any confidential information. For that reason, this Order is not filed under seal. To the extent the Parties agree that any portions of this Order are confidential under the Protective Order, the Parties are **DIRECTED** to meet and confer and submit a stipulation or joint motion with a proposed redacted version of this Order within **five (5) business days**.

This **RESOLVES** Dkt. 188.

**IT IS SO ORDERED.**

Dated: June 11, 2025

_____
PETER H. KANG
United States Magistrate Judge