QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Steven Cherny (*pro hac vice*)
  stevencherny@quinnemanuel.com
  Patrick D. Curran (Bar No. 241630)
  patrickcurran@quinnemanuel.com
  Hannah E. Dawson (*pro hac vice*)
  hannahdawson@quinnemanuel.com
  Tzivya H. Beck (*pro hac vice*)
  tzivyabeck@quinnemanuel.com
111 Huntington Ave, Suite 520
Boston, MA 02199
Telephone:   (617) 712-7100

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Anastasia M. Fernands (*pro hac vice*)
  anastasiafernands@quinnemanuel.com
  Nicola R. Felice (*pro hac vice*)
  nicolafelice@quinnemanuel.com
  Vanessa Blecher (*pro hac vice*)
  vanessablecher@quinnemanuel.com
  Alicia Lai (*pro hac vice*)
  alicialai@quinnemanuel.com
295 5th Avenue
New York, NY 10016
Telephone:   (212) 849-7000

*Attorneys for Defendant Viasat, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| SANDISK TECHNOLOGIES, INC., et al.,<br><br>   Plaintiffs,<br><br>   v.<br><br>VIASAT, INC.,<br><br>   Defendant. | Case No.: 4:22-cv-4376-HSG<br><br>**DEFENDANT VIASAT, INC.'S STATEMENT IN SUPPORT OF ADMINISTRATIVE MOTIONS TO CONSIDER WHETHER ANOTHER PARTY'S MATERIAL SHOULD BE SEALED [DKTS. 209, 211]**<br><br>[FILED CONCURRENTLY WITH [PROPOSED] ORDER RE APPLICATION FOR LEAVE TO FILE UNDER SEAL] |

1   Pursuant to Local Rules 7-11 and 79-5(c) & (f) and the Protective Order entered in this case (Dkt. 90), Defendant Viasat, Inc. ("Viasat") submits this Response to Plaintiffs' Administrative Motions to Consider Whether Another Party's Material Should Be Sealed [Dkts. 209 and 211].

As to Plaintiffs' first motion to consider whether another party's material should be sealed [Dkt. 209], Viasat seeks to seal portions of: excerpts from the Expert Rebuttal Report of Dr. Gareth Macartney, served on April 14, 2025 [Dkt. 209-3]; excerpts from the transcript of the deposition of Dr. Gareth Macartney [Dkt. 209-4]; VIASAT_00014400 [Dkt. 209-5]; excerpts from the Expert report of Lauren R. Kinder, dated March 24, 2025 [Dkt. 209-6]; and excerpts from the Deposition transcript of Lauren R. Kinder, taken on May 9, 2025 [Dkt. 209-7] (collectively, the "Daubert Exhibits"); as well as portions of Sandisk's Daubert Motion To Exclude Certain Opinions Of Gareth Macartney, Ph.D [Dkt. 208] (the "Daubert Motion"), which relies on the foregoing attachments.

As to Plaintiffs' second motion to consider whether another party's material should be sealed [Dkt. 211], Viasat seeks to seal portions of: (i) the Expert Report by Dr. Kevin Almeroth, served by Viasat on March 24, 2025 [Dkt. 210-2]; (ii) the Expert Rebuttal Report by Dr. Chuck Easttom, served by SanDisk on April 14, 2025 [Dkt. 210-3]; (iii) Viasat's Fourth Supplemental Objections & Responses to Plaintiffs' First Set of Interrogatories (Nos. 1–8), dated February 7, 2025 [Dkt. 210-5]; (iv) the Expert Report by Dr. Chuck Easttom, served by SanDisk on March 24, 2025 [Dkt. 210-6] (collectively, the "Summary Judgment Exhibits").

| Dkt. No. (Original Filing/ Public) | Document | Portions Sought to be Sealed | Evidence Offered In Support of Sealing |
|---|---|---|---|
| 208 / 218-2 | Sandisk's Daubert Motion To Exclude Certain Opinions Of Gareth Macartney, Ph.D. | Analysis of Viasat confidential financial information and confidential product and contract information, including the specific terms of Viasat's contracts with third parties (on portions of pages 3, 4, 5, 7, 8, and 9, as reflected in green highlighting) that were designated by Viasat as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" under the Protective Order (Dkt. 90). | Ward. Decl. ¶¶ 3-5 |
| 209-3 / 218-3 | excerpts from the Expert Rebuttal Report of Dr. Gareth | Analysis of Viasat confidential financial information and confidential product and contract information, including the specific terms of Viasat's contracts with | Ward. Decl. ¶¶ 3-5 |

| | | | |
|---|---|---|---|
| | Macartney, served on April 14, 2025 | third parties (on portions of pages 4, 42, 43, 44, 48, 49, 66, 4,[1] 28, 30, 37, 38, 39, 40 41, 42, 43, 44, 46, 47, 48, 49, 50, 54, 55, 56, 57, 64, 65, 66, as reflected in yellow highlighting) that were designated by Viasat as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" under the Protective Order (Dkt. 90). | |
| 209-4 / 218-4 | excerpts from the transcript of the deposition of Dr. Gareth Macartney | Analysis of Viasat confidential financial information and confidential product and contract information, including the specific terms of Viasat's contracts with third parties (on portions of pages 127, 128, 129, 130, 131, as reflected in yellow highlighting) that were designated by Viasat as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" under the Protective Order (Dkt. 90). | Ward. Decl. ¶¶ 3-5 |
| 209-5 / 218-5 | VIASAT_00014400 | Analysis of Viasat confidential financial information and confidential product and contract information, including the specific terms of Viasat's contracts with third parties (on portions of PDF pages 2-16, as reflected in yellow highlighting) that were designated by Viasat as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" under the Protective Order (Dkt. 90). | Ward. Decl. ¶¶ 3-5 |
| 209-6 / 218-6 | excerpts from the Expert report of Lauren R. Kinder, dated March 24, 2025 | Analysis of Viasat confidential financial information and confidential product and contract information, including the specific terms of Viasat's contracts with third parties (on portions of pages 149, 150, 151, 152, as reflected in yellow highlighting) that were designated by Viasat as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" under the Protective Order (Dkt. 90). | Ward. Decl. ¶¶ 3-5 |
| 209-7 / 218-7 | excerpts from the Deposition transcript of Lauren R. Kinder, taken on May 9, 2025 | Analysis of Viasat confidential financial information and confidential product and contract information, including the specific terms of Viasat's contracts with third parties (on portions of pages 75-79, as reflected in yellow highlighting) that were designated by Viasat as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" under the Protective Order (Dkt. 90). | Ward. Decl. ¶¶ 3-5 |
| 210-2 / 218-8 | the Expert Report by Dr. Kevin Almeroth, served by Viasat on March 24, 2025 [Dkt. 217-3] | Analysis of Viasat confidential technical and source code-related information (on the highlighted portions of PDF pages 152, 191-200) that were designated by Viasat as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" under the Protective Order (Dkt. 90). | Ward. Decl. ¶¶ 3-4 |
| 210-3 / 218-9 | the Expert Rebuttal Report by Dr. Chuck Easttom, served by SanDisk on April 14, 2025 | Analysis of Viasat confidential technical and source code-related information (on the highlighted portions of PDF pages 241-245, 248-250) that were designated by Viasat as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY | Ward. Decl. ¶¶ 3-4 |

---

[1] The excerpts in this exhibit are partially repetitive and non-chronological, due to an apparent collation error in the filing of the original exhibit.

| | | CONFIDENTIAL – SOURCE CODE" under the Protective Order (Dkt. 90). | |
|---|---|---|---|
| 210-5 / 218-10 | Viasat's Fourth Supplemental Objections & Responses to Plaintiffs' First Set of Interrogatories (Nos. 1–8), dated February 7, 2025 | Analysis of Viasat confidential financial information and confidential product and contract information, including the specific terms of Viasat's contracts with third parties, as well as technical and source code-related information, on the highlighted portions of pages 17, 36, 37, 39, 41-43, 49-50, 52-53 that that were designated by Viasat as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" under the Protective Order (Dkt. 90). | Ward. Decl. ¶¶ 3-5 |
| 210-6 / 218-11 | the Expert Report by Dr. Chuck Easttom, served by SanDisk on March 24, 2025 | Analysis of Viasat confidential technical and source code-related information (on the highlighted portions of PDF page 10-13, 17-18, 31-33, 36-38, 40, 42-50, 52-62, 68-72, 78-81, 83-110, 112, 114, 116-118, 120, 122-131, 136-140, 146-163, 165-173, 175-187, 190-194, 196-204, 206-216, 220, 222-227, 229, 231-245, 247, 249-265, 267-270, 272-275, 277-285, and 304) that were designated by Viasat as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" under the Protective Order (Dkt. 90). | Ward. Decl. ¶¶ 3-4 |
| 210-4 / N/A | Viasat's Responsive Damages Contentions, dated April 2, 2024 | Viasat does not seek to seal any portion of this exhibit. | N/A |

Viasat seeks to seal only the portions of these motions and exhibits that contain Viasat's highly confidential source code, product operation, financial, and contract. Filed concurrently herewith are redacted versions of each document that redact only the highly confidential information noted above (at the pages noted in the table above). If filed publicly, this confidential information could be used by Viasat's competitors to Viasat's detriment. *See* Exhibit 1, Declaration Of Colin Ward In Support Of Viasat, Inc.'s Statement in Support of the Administrative Motions to Consider Whether Another Party's Materials Should Be Sealed ("Ward Decl.") (filed concurrently herewith).

Courts generally apply a "compelling reasons" standard when considering motions to seal documents attached to dispositive motions. *Ashton Woods Holdings L.L.C. v. USG Corp.*, No. 15-CV-01247-HSG, 2022 WL 1131632, at *1 (N.D. Cal. Mar. 29, 2022) (quoting *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010). A party seeking to seal documents in connection with a dispositive motion must "articulate compelling reasons supported by specific factual findings, such as "the use of records to … release trade secrets," that "outweigh" the strong

presumption in favor of public access. *Id.* Civil Local Rule 79-5 supplements the compelling reasons standard and requires that the party seeking to file a document or portions of it under seal must "establish[ ] that the document, or portions thereof, are privileged, protectable as a trade secret or otherwise entitled to protection under the law ... The request must be narrowly tailored to seek sealing only of sealable material." Civil L.R. 79-5(b).

Records attached to nondispositive motions must meet the lower "good cause" standard of Rule 26(c) of the Federal Rules of Civil Procedure, as such records "are often unrelated, or only tangentially related, to the underlying cause of action." *See Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179-80 (9th Cir. 2006). This requires a "particularized showing" that "specific prejudice or harm will result" if the information is disclosed. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002); *see also* Fed. R. Civ. P. 26(c). "Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning" will not suffice. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (quotation omitted).

Courts have found it appropriate to seal documents that contain "business information that might harm a litigant's competitive standing . . . ." *See Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 598-99 (1978); *Apple Inc. v. Samsung Elecs. Co., Ltd.,* 727 F.3d 1214, 1221-22 (Fed. Cir. 2013) ("[T]he Ninth Circuit has stated that in general, compelling reasons sufficient to outweigh the public's interest in disclosure and justify sealing court records exist . . . such as the use of records to . . . release trade secrets." "[A] trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.") (citations and internal quotations omitted). Source code is confidential information warranting sealing. *Apple, Inc. v. Samsung Elecs. Co., Ltd.,* No. 11-cv-01846-LHK, 2012 WL 6115623, at *2 (N.D. Cal. Dec. 10, 2012) (finding a compelling reason to seal source code and noting "[c]onfidential source code clearly meets the definition of a trade secret"); Dkt. 435, Order on Motions to Seal ("The parties have provided good cause for sealing portions of the various documents listed below because they contain confidential business and proprietary information relating to the operations of

Defendant."); *accord DSS Tech. Mgmt., Inc. v. Apple, Inc.,* No. 14-CV-05330-HSG, 2020 WL 789549, at *2 (N.D. Cal. Feb. 18, 2020) (granting motion to seal "information regarding the identity and operations of . . . components in Apple's products or containing confidential information regarding the operations of source code for Apple's products"); *Campbell v. Facebook Inc.*, No. 13-CV-05996-PJH, 2016 WL 7888026, at *2 (N.D. Cal. Oct. 4, 2016) (granting motion to seal "information regarding the processes and functionality of Facebook's security and antiabuse products and systems, [] source code, and [] the names of internal tables in Facebook's database). Likewise, damages analyses that reference a party's confidential financial information warrant sealing. *Digital Reg of Texas, LLC v. Adobe Sys., Inc.*, No. C 12-1971 CW, 2014 WL 4246158, at *3 (N.D. Cal. Aug. 27, 2014); *see also Unlockd Media, Inc. Liquidation Tr. v. Google LLC*, No. 21-CV-07250-HSG, 2023 WL 2600464, at *1 (N.D. Cal. Mar. 21, 2023) (finding compelling reasons to seal monthly financial metrics and projections of future revenue as "confidential business and financial information").

### A. Sandisk's Daubert Motion To Exclude Certain Opinions Of Gareth Macartney, Ph.D. and Exhibits Thereto

If filed publicly, the Viasat highly confidential information reflected in the Daubert Motion and the Exhibits thereto—excerpts from the Expert Rebuttal Report of Dr. Gareth Macartney, served on April 14, 2025 [Dkt. 209-3]; excerpts from the transcript of the deposition of Dr. Gareth Macartney [Dkt. 209-4]; VIASAT_00014400 [Dkt. 209-5]; excerpts from the Expert report of Lauren R. Kinder, dated March 24, 2025 [Dkt. 209-6]; and excerpts from the Deposition transcript of Lauren R. Kinder, taken on May 9, 2025 [Dkt. 209-7]—could be used by Viasat's competitors to Viasat's detriment. *See* Ward Decl. ¶¶ 3-5; *see also Baird v. BlackRock Institutional Tr., N.A.*, 403 F.Supp.3d 765, 792 (N.D. Cal. 2019) ("[C]onfidential business information in the form of license agreements, financial terms, details of confidential licensing negotiations, and business strategies satisfies the compelling reasons standard."). The disclosure of this non-public business information "could reasonably place [Visa] at a competitive disadvantage if disclosed."); *In re Qualcomm Litig.*, No. 3:17-cv-0108-GPC-MDD, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017) (observing that sealing confidential business information "prevent[ed] competitors from

gaining insight into the parties' business model and strategy"). *MiCamp Sols., LLC v. Visa Inc.*, No. 23-CV-06351-HSG, 2025 WL 1063419, at *2 (N.D. Cal. Mar. 28, 2025).

The redacted portions of the Daubert Motion reflect the confidential contractual terms of Viasat's agreements with third parties and information about how Viasat's products a customers and suppliers, and other financial information. The exhibits to the Daubert Motion should be sealed for the same reasons. First, the excerpts from Ms. Kindler's deposition (Dkt. 209-7) and her report (Dkt. 209-6) reflect Ms. Kindler's underlying analysis of Viasat's confidential internal metrics, its confidential contracts with its customers and suppliers, and other financial information, including pricing and profitability information. Second, the excerpts from Dr. Macartney's deposition (Dkt. 209-4) and his rebuttal report (Dkt. 209-3) reflect Dr. Macartney's criticisms of Ms. Kindler's analyses of that same information, as well as additional information regarding Viasat's confidential contracts with third-parties and information about how third-party contractors secure Viasat's services. Finally, VIASAT_00014400 reflects a specific, confidential contract with a third-party supplier revealing non-public information about the terms of Viasat's dealings with that third-party, including confidential information how it secures its services.

These confidential references to the Viasat's financial information, internal metrics, security practices and contractual dealings warrant sealing. Viasat's internal financial information, and the terms of its contracts with customers, are not publicly available and would provide Viasat's competitors with an unfair advantage in competitive bidding against Viasat. *See* Ward Decl. ¶¶ 3, 5. If this confidential information was disclosed, significant competitive harm could result for Viasat. Further, confidential information about Viasat's security practices with respect to its products warrants sealing. The inner workings of Viasat's products and proprietary technology—including details of how Viasat's system is architected (e.g., where specific pieces of source code run), which third-parties Viasat's products interact with, and how Viasat actually hosts and distributes content—are not apparent from normal consumer operation. Ward Decl. ¶ 4. If this confidential product operation information was disclosed, significant competitive harm could result for Viasat because Viasat's competitors could use this proprietary product operation information for Viasat's products—that Viasat invested time and resources to develop—to

replicate this product operation and source code in their own products, and because the redacted information contains confidential information about how Viasat maintains the security of its products. *See Apple, Inc.*, 2012 WL 6115623, at *2 (finding a compelling reason to seal source code and noting "[c]onfidential source code clearly meets the definition of a trade secret").

**B.     Exhibits to Plaintiffs' Notice of Motion and Motion for Partial Summary Judgment**

If filed publicly, the Viasat highly confidential information reflected in the Summary Judgment Exhibits—(i) the Expert Report by Dr. Kevin Almeroth, served by Viasat on March 24, 2025 [Dkt. 217-3]; (ii) the Expert Rebuttal Report by Dr. Chuck Easttom, served by SanDisk on April 14, 2025 [Dkt. 217-4]; (iii) Viasat's Fourth Supplemental Objections & Responses to Plaintiffs' First Set of Interrogatories (Nos. 1–8), dated February 7, 2025 [Dkt. 217-6]; (iv) the Expert Report by Dr. Chuck Easttom, served by SanDisk on March 24, 2025 [Dkt. 217-6]—would likewise cause competitive harm to Viasat.

If filed publicly, the Viasat highly confidential information reflected in the Summary Judgment Exhibits could be used by Viasat's competitors to Viasat's detriment because they reflect highly confidential information about the operation of and source code for Viasat's products, including about source code variables and how those variables relate to the way that Viasat's products operate. *See* Ward Decl. ¶¶ 3-4. Specifically, the expert report of Dr. Kevin Almeroth [Dkt 210-2] and Dr. Easttom's rebuttal report [Dkt. 210-3] each contain confidential information about Viasat's non-infringing alternatives and the technical operation of Viasat's products. Viasat's Fourth Supplemental Objections & Responses to Plaintiffs' First Set of Interrogatories (Nos. 1–8), dated February 7, 2025 [Dkt. 210-5] contain confidential information about the technical operation of Viasat's products, which Viasat keeps confidential to protect the security of Viasat's products from bad actors and to preserve Viasat's competitive standing, as does Dr. Easttom's opening report [Dkt. 210-6]. These confidential references to the architecture of Viasat's products, and the source code, operation of, and inner workings of Viasat's products and proprietary technology—including details of how Viasat's system is architected (e.g., where specific pieces of source code run), which third-parties Viasat's products interact with, and how

1  Viasat actually hosts and distributes content—are not apparent from normal consumer operation.
2  Ward Decl. ¶ 4.

3      If this confidential source code and product operation information was disclosed,
4  significant competitive harm could result for Viasat because Viasat's competitors could use this
5  proprietary source code and product operation information for Viasat's products—that Viasat
6  invested time and resources to develop—to replicate this product operation and source code in
7  their own products, and because the redacted information contains confidential information about
8  how Viasat maintains the security of its products. *Id.*; *see also Apple, Inc.*, 2012 WL 6115623, at
9  *2 (finding a compelling reason to seal source code and noting "[c]onfidential source code clearly
10 meets the definition of a trade secret").

11     Pursuant to Civil Local Rule 79-5(c) and (f), and on the basis of the harm to Viasat if
12 disclosed, Viasat submits this motion which establishes good cause to permit the sealing of the
13 unredacted versions of the aforementioned Motion and Exhibits.

DATED: June 16, 2025

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ *Patrick D. Curran*
    Patrick D. Curran

*Attorney for Defendant Viasat Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2025, a copy of the foregoing response, was filed with the Court using the Court's ECF system, which sent notice to all counsel of record.

DATED: June 16, 2025            By  */s/ Patrick D. Curran*
                                    Patrick D. Curran