# EXHIBIT D

**Filed Under Seal**

**Highly Confidential - Attorneys' Eyes Only**

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Steven Cherny (*pro hac vice*)
  stevencherny@quinnemanuel.com
  Patrick D. Curran (Bar No. 241630)
  patrickcurran@quinnemanuel.com
  Tzivya H. Beck (*pro hac vice*)
  tzivyabeck@quinnemanuel.com
  Hannah Dawson (*pro hac vice*)
  hannahdawson@quinnemanuel.com
111 Huntington Ave, Suite 520
Boston, MA 02199
Telephone:    (617) 712-7100
Facsimile:    (617) 712-7200

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Jodie Cheng (Bar No. 292330)
  jodiecheng@quinnemanuel.com
  Gyu Shik Jang (Bar No. 337747)
  kevinjang@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Nicola R. Felice (*proc hac vice*)
  nicolafelice@quinnemanuel.com
  Anastasia Fernands (*pro hac vice*)
  anastasiafernands@quinnemanuel.com
  Vanessa Blecher (*pro hac vice*)
  vanessablecher@quinnemanuel.com
  Alicia Lai (*pro hac vice*)
  alicialai@quinnemanuel.com
295 5th Avenue
New York, NY 10016
Telephone:    (212) 849-7000
Facsimile:    (212) 849-7100

*Attorneys for Defendant Viasat, Inc.*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA,
OAKLAND DIVISION**

| | |
|---|---|
| SANDISK TECHNOLOGIES, INC., et al., | Case No. 4:22-cv-4376-HSG |
| Plaintiff, | |
| vs. | **VIASAT, INC.'S FOURTH SUPPLEMENTAL OBJECTIONS & RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES (NOS. 1-8)** |
| VIASAT, INC., | |
| Defendant. | |

1 _____

2          Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant Viasat, Inc.

3 ("Viasat") hereby supplements its responses to Plaintiffs' First Set of Interrogatories (Nos. 1-8) as

4 follows.  Pursuant to Federal Rule of Civil Procedure 26(e), Plaintiff reserves the right to further

5 supplement its responses to these Interrogatories if it learns of additional responsive information.

## PRELIMINARY STATEMENT

Viasat's investigation, discovery, and analysis are ongoing. The responses to these Interrogatories are based on information presently available to Viasat after a reasonable investigation. Viasat reserves the right to supplement or amend these responses as further information and documents are identified, disclosed, or discovered. Viasat's responses are without prejudice to its right to introduce as evidence any subsequently discovered or unintentionally omitted information and/or documents.

Viasat's responses to these Interrogatories are not intended to be and shall not be construed as a concession or admission by Viasat of the competency, relevance, materiality, privilege, or admissibility of the Interrogatories or its responses thereto, or of any document or information referred to in the Interrogatories or these responses. The fact that Viasat has responded to any Interrogatory, or any part of any Interrogatory, does not imply or admit that it accepts or admits the existence of any facts stated or assumed by such Interrogatories. The failure of Viasat to object to any of the Interrogatories on a specific ground shall not be construed as a waiver of its right to object at a later time on that ground or any additional grounds. Viasat incorporates each of the following General Objections and Objections and Responses to Instructions and Definitions into its Responses to each of Plaintiffs' Interrogatories, whether or not expressly referred to in each such Response. Viasat reserves the right to object to further discovery regarding the same subject matter as any Interrogatory and to object to the introduction into evidence any documents or information provided in response to the Interrogatories.

## GENERAL OBJECTIONS

Viasat makes the following General Objections, whether or not separately set forth in response to each Interrogatory, to each and every instruction, definition, and Interrogatory. By responding to any of the Interrogatories or failing to specifically refer to or specify any particular General Objection in response to a particular Interrogatory, Plaintiff does not waive any of these General Objections, or admit or concede the appropriateness of any purported interrogatory or any assumptions contained therein.

1.      Viasat objects to these Interrogatories, including their Definitions, to the extent they attempt to impose upon Viasat obligations beyond those imposed or authorized by the Federal Rules of Civil Procedure, Northern District of California Local Rules, or any other applicable law, rule, or regulation.

2.      Viasat objects to these Interrogatories to the extent they are compound and contain multiple subparts asserted in a single interrogatory.

3.      Viasat objects to these Interrogatories to the extent they are directed to matters and seek information, documents, or things that are not relevant to the subject matter at issue in this action.

4.      Viasat objects that Plaintiffs' Interrogatories fail to describe with reasonable particularity the information that Western Digital seeks.  Instead, Plaintiffs' Interrogatories are generally overbroad, vague, ambiguous, unduly burdensome, disproportionate to the needs of the action, unintelligible, or otherwise lack particularity and thereby require Viasat to engage in conjecture as to their meaning.  Viasat's response to each Interrogatory is subject to its reasonable interpretation of such Interrogatory.

5.      Viasat objects to these Interrogatories to the extent they seek information protected by any relevant privilege or legal protection, including, without limitation, the attorney-client privilege, the work product doctrine, common interest privilege, or any other applicable privilege (collectively, "Privileged Information").  Such information will not be provided in response to the Interrogatories, and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information, or of any work product doctrine protections which may attach thereto.

6.      Consistent with the foregoing privileges, Viasat will not provide information from outside counsel retained in connection with this action in response to any Interrogatory notwithstanding that such outside counsel may have acquired knowledge or information responsive to that Interrogatory in the course of representing Viasat.

7.      Viasat objects to these Interrogatories to the extent their scope is not restricted to the time period relevant to the allegations in the action, or without reference to a reasonable and relevant

1    time period, as overbroad, unduly burdensome, beyond the scope of the allegations in the action,

2    not relevant to any claim or defense, and not proportional, material and necessary to the prosecution

3    or defense of the action.  Viasat's response to each Interrogatory incorporates a reasonable time

4    period, taking into account the nature and scope of the Interrogatory.

5         8.    Viasat objects to these Interrogatories to the extent they seek information that is

6    already in the possession, custody, or control of Plaintiffs or otherwise equally accessible to

7    Plaintiffs, including information available from public sources.

8         9.    Viasat objects to these Interrogatories to the extent they seek information not within

9    Viasat's possession, custody, or control or purport to require Viasat to seek information in the

10   knowledge, possession, custody, or control of third parties.  Viasat disclaims any obligation to obtain

11   or provide information that is not within its knowledge, possession, custody, or control.  The

12   voluntary provision of information that may otherwise fall within this objection shall not be deemed

13   a waiver of this objection as to other information in the possession, custody, or control of third

14   parties.

15        10.   Viasat objects to these Interrogatories to the extent they seek confidential and/or

16   proprietary business, financial, and/or technical information or trade secrets, the disclosure of which

17   may damage Viasat's business, violate the privacy or proprietary rights of others including

18   employees, clients, or business partners of Viasat, or breach any duty or regulatory requirement, or

19   violate any agreement or order pursuant to which Viasat is precluded from disclosing such

20   information.  Any information provided by Viasat in response to these Interrogatories is being

21   provided for purposes of this action only.  Viasat reserves the right to withhold personal, private, or

22   non-responsive documents or information.  Viasat also objects to the use of any documents or

23   information provided in this action in any other action or proceeding and/or in any manner

24   inconsistent with any Confidentiality Order to be entered in this action.  For the avoidance of doubt,

25   any information provided to Plaintiffs will be governed by the Protective Order agreed to by the

26   parties or, until a Protective Order is entered in this case, by the Northern District of California's

27   Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information

28   and/or Trade Secrets.

11.     Viasat objects to these Interrogatories to the extent they are cumulative and/or duplicative of other discovery sought in this case and, therefore, unduly burdensome.

12.     Viasat objects to these Interrogatories to the extent the information sought therein could be obtained through other, less burdensome discovery, and are not, therefore, the proper subject of an Interrogatory.

13.     Viasat objects to these Interrogatories to the extent they assume facts that do not exist.

14.     Viasat objects to these Interrogatories to the extent they call for a legal opinion or conclusion.

15.     Viasat objects to the Interrogatories to the extent they are unduly burdensome and oppressive in that they would require Viasat to provide information that is of little or no benefit with respect to the issues or controversies in this action, so that the value of the information would be outweighed by the burden of providing it.  Viasat further objects to the Interrogatories to the extent that they seek electronic documents and/or electronically stored information that is/are not reasonably accessible because of undue burden or cost.  Viasat will undertake a search for documents and information that is reasonable under the circumstances.

16.     Viasat objects to these Interrogatories to the extent they seek information related to expert disclosure.  Viasat will comply with obligations related to expert disclosure in accordance with the schedule agreed upon or to be agreed upon by the parties.

17.     Viasat objects to these Interrogatories as premature, including because the Court has not yet set a schedule in this case, and Plaintiffs' Patent L.R. 3-1 infringement contentions served on February 23, 2023 are deficient.

18.     Where Viasat agrees to, or does, provide information responsive to these Interrogatories, this agreement to provide information is subject to agreement with Plaintiffs over appropriate search terms and custodians.

19.     These Objections shall apply to each of the Interrogatories as if fully set forth therein.

## OBJECTIONS AND RESPONSES TO DEFINITIONS AND INSTRUCTIONS

1.      Viasat objects to the definition of "Accused Products" to the extent it encompasses "media streaming software, systems, and services **such as** in-flight entertainment and communication ("IFEC") systems for use in commercial and private aviation, **including** products identified in Plaintiffs' Complaint and any amendments thereto, and products identified in Plaintiffs' Patent L.R. 3-1 infringement contentions served on February 23, 2023, and any amendments thereto," as well as "Viasat products, services, and components referred to or described in "Viasat in-flight connectivity solutions" (WD-Viasat-NDCA00000181) and "Wireless IFE Datasheet" (WD-Viasat-NDCA00000204)."  Viasat also objects to the definition of "Accused Products" to the extent that it includes "products identified in Plaintiffs' Patent L.R. 3-1 infringement contentions served on February 23, 2023" because, as Viasat has previously expressed to Plaintiffs, Plaintiffs' Patent L.R. 3-1 infringement contentions are deficient in that, *inter alia*, they fail to sufficiently identify the products, software, or systems that Plaintiffs accuse of infringement.  Unless otherwise stated in response to a specific Interrogatory, Viasat construes the term "Accused Product" to refer only to those products, systems, or services expressly identified in Plaintiffs' operative Complaint and Plaintiffs' Patent L.R. 3-1 infringement contentions served on February 23, 2023, to the extent any products, systems, and services were sufficiently identified such that they can be known and understood by Viasat.

2.      Viasat objects to the definition of "Viasat," "Defendant," "You," or "Your" to the extent it encompasses persons and entities other than Viasat Inc. and is overbroad, vague, and ambiguous with respect to "subsidiaries, divisions, predecessor and successor companies, affiliates, parents, any partnership or joint venture to which it may be a party, and each of its . . . officers, directors, representatives, consultants, accountants, and attorneys."  Unless otherwise stated in response to a specific Interrogatory, Viasat construes the terms "Viasat," "Defendant," "You," or "Your" to encompass only Viasat Inc. and its employees and agents.

### RESPONSES TO FIRST SET OF INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify by name, model number, and any other identifying indicia any Viasat products or services that use or provide media streaming, including Viasat's in-flight entertainment and communication ("IFEC") systems for use in commercial and private aviation and all products and components referred to or described in "Viasat in-flight connectivity solutions" (WD-Viasat-NDCA00000181) and "Wireless IFE Datasheet" (WD-Viasat-NDCA00000204), and that are or have been made, used, offered for sale, sold, or licensed in the United States, or imported into the United States by or on behalf of You since July 28, 2016. Include in your response the identity of each Document that supports your answer or to which you referred in preparing your answer.

**RESPONSE TO INTERROGATORY NO. 1:**

Viasat incorporates by reference all of its General Objections as if fully set forth herein. Viasat further objects to this Interrogatory as overbroad, vague, ambiguous, unduly burdensome, and disproportionate to the needs of the action to the extent it seeks information regarding "Viasat products or services that use or provide media streaming," which Plaintiffs have not accused of infringement in this action. Viasat further objects to this Interrogatory as premature, including because the Court has not yet set a schedule in this case and Plaintiffs' Patent L.R. 3-1 infringement contentions served on February 23, 2023 are deficient.

Subject to and without waiving the foregoing objections, Viasat responds as follows: Pursuant to Federal Rule of Civil Procedure 33(d) and Viasat's responses to Requests for Production Nos. 1, 5, and 46, Viasat has produced documents from which information pertaining to the name, model number, and any other identifying indicia of the Accused Products can be reasonably ascertained, including at VIASAT_00000618-VIASAT_00000629, VIASAT_00003234-VIASAT_00003287, VIASAT_00003288-VIASAT_00003349, VIASAT_00003446-VIASAT_00003457, VIASAT_00003458-VIASAT_00003460, VIASAT_00005782-VIASAT_00006140, VIASAT_00006141-VIASAT_00006146, and VIASAT_00006147-VIASAT_00006152.

1    Viasat's investigation and discovery are ongoing.  Viasat reserves all rights to amend or

2    supplement its objections and/or responses as its investigation continues.

3    **INTERROGATORY NO. 2:**

4    For each Accused Product, including any product or service identified in response to

5    Interrogatory No. 1, Identify the Persons or Entities most knowledgeable about its research,

6    conception, design, development, engineering, and testing and describe the nature of each Person's

7    or Entity's involvement. Include in your response the identity of each Document that supports your

8    answer or to which you referred in preparing your answer.

9    **RESPONSE TO INTERROGATORY NO. 2:**

10   Viasat incorporates by reference all of its General Objections as if fully set forth herein.

11   Viasat further objects to this Interrogatory as overbroad, vague, ambiguous, unduly burdensome,

12   and disproportionate to the needs of the action to the extent it seeks, by incorporating Interrogatory

13   No. 1, information regarding "Viasat products or services that use or provide media streaming,"

14   which Plaintiffs have not accused of infringement in this action.  Viasat further objects to this

15   Interrogatory on the grounds it is overbroad, unduly burdensome, vague, and ambiguous, including

16   without limitation through its use of the term "Accused Products," which as noted above, is not

17   clearly defined.  Viasat further objects to this Interrogatory as premature, including because the

18   Court has not yet set a schedule in this case and Plaintiffs' Patent L.R. 3-1 infringement contentions

19   served on February 23, 2023 are deficient.

20   Subject to and without waiving the foregoing objections, Viasat responds as follows:  Dan

21   Newman is knowledgeable regarding the operation, design, and development of the accused Viasat

22   products/features, to the extent Plaintiffs' Patent L.R. 3-1 infringement contentions served on

23   February 23, 2023 are or can be reasonably understood by Viasat.  Viasat further responds, pursuant

24   to Federal Rule of Civil Procedure 33(d) and Viasat's responses to Requests for Production Nos. 1,

25   5, 8 and 46, that Viasat has produced documents from which responsive information can be

26   reasonably    ascertained,    including    at    VIASAT_00000618-VIASAT_00000629,

27   VIASAT_00003446-VIASAT_00003457,       VIASAT_00003458-VIASAT_00003460,       and

28   VIASAT_00006147-VIASAT_00006152; as well as Viasat's source code repositories, including

1    revision history and comments thereto, which Viasat has or will make available for inspection upon

2    entry of an appropriate inspection protocol.

3        Viasat's investigation and discovery are ongoing. Viasat reserves all rights to amend or

4    supplement its objections and/or responses as its investigation continues.

5    **INTERROGATORY NO. 3:**

6        For each Accused Product, including any product or service identified in response to

7    Interrogatory No. 1, identify, separately for each calendar quarter of sales, the total number of units

8    sold, total sales in dollar value, location of each sale, and the applicable gross and net profit margins.

9    Your response should include all sales of the Accused Products, regardless of whether the sale,

10   revenue, and/or profit was booked or recognized by Viasat itself or by an affiliated entity. Include

11   in your response the identity of each Document that supports your answer or to which you referred

12   in preparing your answer.

13   **RESPONSE TO INTERROGATORY NO. 3:**

14       Viasat incorporates by reference all of its General Objections as if fully set forth herein.

15   Viasat further objects to this Interrogatory as overbroad, vague, ambiguous, unduly burdensome,

16   and disproportionate to the needs of the action to the extent it seeks, by incorporating Interrogatory

17   No. 1, information regarding "Viasat products or services that use or provide media streaming,"

18   which Plaintiffs have not accused of infringement in this action. Viasat further objects to this

19   Interrogatory on the grounds it is overbroad, unduly burdensome, vague, and ambiguous, including

20   without limitation through its use of the term "Accused Product," which as noted above, is not

21   clearly defined. Viasat further objects to this Interrogatory as premature, including because the

22   Court has not yet set a schedule in this case and Plaintiffs' Patent L.R. 3-1 infringement contentions

23   served on February 23, 2023 are deficient.

24       Subject to and without waiving the foregoing objections, Viasat responds as follows:

25   Pursuant to Federal Rule of Civil Procedure 33(d) and Viasat's responses to Requests for Production

26   Nos. 2, 18, 19, and 20, Viasat has produced documents from which information pertaining to the

27   sales and profit margins of the Accused Products can be reasonably ascertained, including at

28   VIASAT_00005781.

1    Viasat's investigation and discovery are ongoing.  Viasat reserves all rights to amend or

2  supplement its objections and/or responses as its investigation continues.

3  **FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3 (02/07/2025):**

4    Viasat repeats and incorporates herein its Objections to this Interrogatory, including Viasat's

5  objections to Plaintiff's Definitions and Instructions, Viasat's General Objections, and Viasat's

6  specific objections in its prior responses to this request.  Based on its investigation to date and subject

7  to and without waiving any Objections to Definitions and Instructions, General Objections, or

8  specific objections in its prior or current responses, Viasat supplements its response to this

9  Interrogatory as follows:

10    Pursuant to Federal Rule of Civil Procedure 33(d), Viasat identifies the following materials

11  from which information pertaining to products or services identified in Interrogatory No. 1 may be

12  derived or ascertained:  VIASAT_00042463; VIASAT_00052299; VIASAT_00132724.

13    Viasat's investigation and discovery are ongoing.  Viasat reserves all rights to amend or

14  supplement its objections and/or responses as its investigation continues.

15  **INTERROGATORY NO. 4:**

16    For each Accused Product, including any product or service identified in response to

17  Interrogatory No. 1, identify all Documents showing the Accused Product's design, structure,

18  function, operation, and development, including user manuals, training guides and/or videos,

19  promotional, advertising, and instructional materials, datasheets, schematics, concept and design

20  documents, research and development documentation, Source Code and documentation related

21  thereto, troubleshooting instructions, testing results, or analysis reports.

22  **RESPONSE TO INTERROGATORY NO. 4:**

23    Viasat incorporates by reference all of its General Objections as if fully set forth herein.

24  Viasat further objects to this Interrogatory as overbroad, vague, ambiguous, unduly burdensome,

25  and disproportionate to the needs of the action to the extent it seeks, by incorporating Interrogatory

26  No. 1, information regarding "Viasat products or services that use or provide media streaming,"

27  which Plaintiffs have not accused of infringement in this action.  Viasat further objects to this

28  Interrogatory on the grounds it is overbroad, unduly burdensome, vague, and ambiguous, including

without limitation through its use of the term "Accused Products," which as noted above, is not clearly defined.  Viasat further objects to this Interrogatory as premature, including because the Court has not yet set a schedule in this case and Plaintiffs' Patent L.R. 3-1 infringement contentions served on February 23, 2023 are deficient.

Subject to and without waiving the foregoing objections, Viasat responds as follows: Pursuant to Federal Rule of Civil Procedure 33(d) and Viasat's responses to Requests for Production Nos. 1, 5, 8, and 46, Viasat has produced documentation for the Accused Products, as they are or can be reasonably understood from Plaintiffs' deficient Patent L.R. 3-1 infringement contentions, and from which information responsive to this Interrogatory can be reasonably ascertained, including at VIASAT_00000618-VIASAT_00000629, VIASAT_00003234-VIASAT_00003287, VIASAT_00003288-VIASAT_00003349,                VIASAT_00003350-VIASAT_00003355, VIASAT_00003446-VIASAT_00003457,                VIASAT_00003458-VIASAT_00003460, VIASAT_00005782-VIASAT_00006140,    VIASAT_00006141-VIASAT_00006146,    and VIASAT_00006147-VIASAT_00006152.

Viasat's investigation and discovery are ongoing.  Viasat reserves all rights to amend or supplement its objections and/or responses as its investigation continues.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4 (02/07/2025):**

Viasat repeats and incorporates herein its Objections to this Interrogatory, including Viasat's objections to Plaintiff's Definitions and Instructions, Viasat's General Objections, and Viasat's specific objections in its prior responses to this request.  Based on its investigation to date and subject to and without waiving any Objections to Definitions and Instructions, General Objections, or specific objections in its prior or current responses, Viasat supplements its response to this Interrogatory as follows:

Pursuant to Federal Rule of Civil Procedure 33(d), Viasat identifies the following additional materials from which information responsive to this Interrogatory can be reasonably ascertained, including at VIASAT_00132727-VIASAT_00132728, VIASAT_00132729-VIASAT_00132801, and VIASAT_00132802-VIASAT_00132817.

**INTERROGATORY NO. 5:**

For each Accused Product, including any product or service identified in response to Interrogatory No. 1, identify each of Your past and present customers, distributors, manufacturers, or any other entity purchasing, selling or making any Accused Product, and for each entity, identify the total number of units shipped or delivered and total sales in dollar value to or by each such entity for each calendar quarter of sales.

**RESPONSE TO INTERROGATORY NO. 5:**

Viasat incorporates by reference all of its General Objections as if fully set forth herein. Viasat further objects to this Interrogatory as overbroad, vague, ambiguous, unduly burdensome, and disproportionate to the needs of the action to the extent it seeks, by incorporating Interrogatory No. 1, information regarding "Viasat products or services that use or provide media streaming," which Plaintiffs have not accused of infringement in this action. Viasat further objects to this Interrogatory on the grounds it is overbroad, unduly burdensome, vague, and ambiguous, including without limitation through its use of the term "Accused Products," which as noted above, is not clearly defined. Viasat further objects to this Interrogatory to the extent it seeks information that is not in Viasat's possession, custody, or control. Viasat further objects to this Interrogatory as premature, including because the Court has not yet set a schedule in this case and Plaintiffs' Patent L.R. 3-1 infringement contentions served on February 23, 2023 are deficient.

Subject to and without waiving the foregoing objections, Viasat responds as follows: Pursuant to Federal Rule of Civil Procedure 33(d) and Viasat's responses to Requests for Production Nos. 2, 8, and 10, Viasat has produced documents from which information regarding the Accused Products and responsive to this interrogatory can be reasonably ascertained, including at VIASAT_00005781.

Viasat's investigation and discovery are ongoing. Viasat reserves all rights to amend or supplement its objections and/or responses as its investigation continues.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5 (02/07/2025):**

Viasat repeats and incorporates herein its Objections to this Interrogatory, including Viasat's objections to Plaintiff's Definitions and Instructions, Viasat's General Objections, and Viasat's

specific objections in its prior responses to this request. Based on its investigation to date and subject to and without waiving any Objections to Definitions and Instructions, General Objections, or specific objections in its prior or current responses, Viasat supplements its response to this Interrogatory as follows:

Pursuant to Federal Rule of Civil Procedure 33(d), Viasat identifies the following materials from which information pertaining to products or services identified in Interrogatory No. 1 may be derived or ascertained: VIASAT_00042463; VIASAT_00052299; VIASAT_00132724.

Viasat's investigation and discovery are ongoing. Viasat reserves all rights to amend or supplement its objections and/or responses as its investigation continues.

**INTERROGATORY NO. 6:**

For each Asserted Patent, describe in detail all facts and circumstances under which You first became aware of that patent, including, but not limited to, the date(s) when this occurred, the source of the information, the identity of the person(s) who received the information on behalf of You, when and how You first obtained a copy of that patent, and any actions taken by You or any of its directors, officers, or employees as a result, and identify each person with knowledge of the foregoing and all documents relating to the foregoing.

**RESPONSE TO INTERROGATORY NO. 6:**

Viasat incorporates by reference all of its General Objections as if fully set forth herein. Viasat objects to this Interrogatory as compound and containing multiple subparts asserted in a single Interrogatory. Viasat further objects to this Interrogatory as premature, including because the Court has not yet set a schedule in this case and Plaintiffs' Patent L.R. 3-1 infringement contentions served on February 23, 2023 are deficient.

Subject to and without waiving the foregoing objections, Viasat responds as follows: Based on Viasat's investigation to-date and facts currently known to it, Viasat first became aware of the Asserted Patents when Plaintiffs filed this Litigation in the Northern District of California on July 28, 2022; and Viasat first obtained copies of the Asserted Patents on that same day when they were attached to Plaintiffs' Complaint.

1    Viasat's investigation and discovery are ongoing.  Viasat reserves all rights to amend or

2    supplement its objections and/or responses as its investigation continues.

3    **INTERROGATORY NO. 7:**

4    Assuming infringement by You of the Asserted Patents, state the amount of money that You

5    contend is owed to Plaintiffs per patent and identify the complete factual and legal bases for that

6    contention, including, without limitation: (i) an identification of each damages theory that you

7    contend should be used in the damages calculation (e.g., reasonable royalty, lost profits, etc.); (ii)

8    the specific inputs that you contend should be used under each such theory in the damages

9    calculation (e.g., the royalty rate on net sales); (iii) the date(s) on which you contend damages should

10   begin (and the bases supporting such dates); (iv) the amount of damages attributable to any portion

11   of the Accused Products; and (v) an identification of all documents and things on which such

12   calculation is based. Your answer should also include all factual bases for any contentions

13   concerning the Georgia Pacific factors or other factors relevant to the determination of damages. If

14   you contend that the entire market value of the Accused Products is not the proper damages base,

15   your answer should identify what You contends the proper damages base should be and identify all

16   support for any contention that the basis of consumer demand for the Accused Products does not

17   correspond to one or more elements of the asserted claims of the Asserted Patents.

18   **RESPONSE TO INTERROGATORY NO. 7:**

19   Viasat incorporates by reference all of its General Objections as if fully set forth herein.

20   Viasat objects to this Interrogatory as compound and containing multiple subparts asserted in a

21   single Interrogatory.  Viasat further objects to this Interrogatory on the grounds it is overbroad,

22   unduly burdensome, vague, and ambiguous, including without limitation through its use of the term

23   "Accused Products," which as noted above, is not clearly defined.   Viasat objects to this

24   Interrogatory to the extent it seeks information related to expert disclosure.  Viasat further objects

25   to this Interrogatory as premature, including because the Court has not yet set a schedule in this case

26   and Plaintiffs' Patent L.R. 3-1 infringement contentions served on February 23, 2023 are deficient.

27   Discovery is at an early stage, and Viasat's investigation is ongoing.  Plaintiffs' contention

28   interrogatory is premature to the extent that it fails to comply with applicable rules and procedures

1  of the Court, requires Viasat to set forth the theories of its case before Plaintiffs have served

2  sufficient infringement contentions that comply with the local rules of this Court, and without the

3  benefit of documentary and testimonial discovery.

4      Viasat's investigation and discovery are ongoing.  Viasat reserves all rights to amend or

5  supplement its objections and/or responses as its investigation continues.

6  **FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7 (02/07/2025):**

7      Viasat repeats and incorporates herein its Objections to this Interrogatory, including Viasat's

8  objections to Plaintiff's Definitions and Instructions, Viasat's General Objections, and Viasat's

9  specific objections in its prior responses to this request.  Based on its investigation to date and subject

10  to and without waiving any Objections to Definitions and Instructions, General Objections, or

11  specific objections in its prior or current responses, Viasat supplements its response to this

12  Interrogatory as follows:

13      Viasat states that, if either of the Asserted Patents is found to be valid and infringed, any

14  damages should be no more than necessary to compensate Plaintiffs for any infringement.  As an

15  initial matter, Plaintiffs bear the burden of proving damages.  *See Lucent Techs., Inc. v. Gateway,*

16  *Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009).  As noted in Defendant's Responsive Damages

17  Contentions Pursuant to Patent L.R. 3-9, Plaintiffs' March 1, 2024 Damages Contentions failed to

18  provide the required disclosures under Patent L.R. 3-8. Under Patent L.R. 3-8, Plaintiffs were required

19  to "identify each category of damages it is seeking for the asserted infringement (e.g., lost profits,

20  reasonable royalty, price erosion, convoyed sales, etc.) and for each category of damages sought, provide

21  a good faith explanation of the theory of damages and the factual basis for damages."  Plaintiffs failed

22  to do so.

23      Any award of damages for patent infringement is compensatory:  "[u]pon finding for the

24  claimant the court shall award the claimant damages adequate to compensate for the infringement,

25  but in no event less than a reasonable royalty for the use made of the invention by the infringer,

26  together with interest and costs as fixed by the court."  35 U.S.C. § 284.  "The purpose of

27  compensatory damages is not to punish the infringer, but to make the patentee whole."  *See Pall*

28  *Corp. v. Micron Separations, Inc.,* 66 F.3d 1211, 1223 (Fed. Cir. 1995).

Further, "[a] patentee is only entitled to a reasonable royalty attributable to the infringing features." *Power Integrations Inc. v. Fairchild Semiconductor Int'l Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018). It is improper to base damages on the entire value of a product if the patented feature is merely one of many elements of the product. *See, e.g., LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012); *Lucent Techs.*, 580 F.3d at 1332. In addition, Plaintiffs are not entitled to damages for any "convoyed sales," including because Plaintiffs are not seeking lost profits. *See Am. Seating Co. v. USSC Grp., Inc.*, 514 F.3d 1262, 1268 (Fed. Cir. 2008). Further, Plaintiffs cannot show that any convoyed sales are functionally related to the accused features of the accused products. *See Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1551 (Fed. Cir. 1995) (en banc). Plaintiffs are also not entitled to damages associated with alleged infringement taking place outside of the United States. *See, e.g.*, 35 U.S.C. § 271(a): *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1317-18 (Fed. Cir. 2005).

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

Plaintiffs are not, and have never been, competitors of Viasat with respect to the Accused Technology. Plaintiffs do not contend that they compete with Viasat. Plaintiffs also do not contend that they have ever commercialized any product that practices either Asserted Patent.

At the time of the hypothetical negotiation, the parties would have considered, *inter alia*, the relationship between the parties, the ease of designing around the claimed subject matter of the Asserted Patents, and available non-infringing alternatives to the claimed subject matter of the Asserted Patents. Viasat refers to and incorporates by reference its response to Interrogatory No. 14 concerning non-infringing alternatives. Damages sufficient to compensate for alleged infringement should be no more than the cost of implementing a non-infringing alternative.

For purposes of assessing damages, Viasat's expert will consider the amount that the parties would have agreed upon at the time of the hypothetical negotiation, assuming, as is required for purposes of the analysis, that the Asserted Patents are both valid and infringed. Viasat's expert's analysis will also take into account any damages analysis by Plaintiffs' expert(s). Such analysis may include consideration of the fifteen factors outlined in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1119-20 (S.D.N.Y. 1970). Viasat further refers to and incorporates by reference its April 2, 2024 Responsive Damages Contentions Pursuant to Patent L.R. 3-9.

Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Viasat further identifies the documents listed below as potentially relevant to its damages calculation, which calculation will be done by an expert after, and to the extent that, Plaintiffs articulate a damages theory: VIASAT_00005781; VIASAT_00052299; VIASAT_00132724; VIASAT_00042463; VIASAT_00123823; VIASAT_00132725; VIASAT_00016483-VIASAT_00017758; VIASAT_00132818-VIASAT_00133261; VIASAT_00132579; VIASAT_00132580.

VIASAT_0008228-VIASAT_00008257;       VIASAT_00008341_VIASAT_00008363;
VIASAT_00074929-VIASAT_00074999;       VIASAT_00075180-VIASAT_00075248;
VIASAT_00075249-VIASAT_00075317;       VIASAT_00075669-VIASAT_00075670;
VIASAT_00076974-VIASAT_00077041;       VIASAT_00077324-VIASAT_00077365;
VIASAT_00077698-VIASAT_00077753;       VIASAT_00077784-VIASAT00077843;
VIASAT_00077844-VIASAT_00077899;       VIASAT_00077900-VIASAT_00077961;
VIASAT_00078037-VIASAT_00078089;     VIASAT_000781115-VIASAT_00078192;
VIASAT_00078298-VIASAT_00078360;       VIASAT_00078406-VIASAT_00078463;
VIASAT_00078555-VIASAT-00078613;       VIASAT_00078634-VIASAT_00078692;
VIASAT_00078755-VIASAT_00078812;       VIASAT_00078989-VIASAT_00079050;
VIASAT_00079203-VIASAT_00079264;       VIASAT_00079353-VIASAT_00079415;
VIASAT_00079416-VIASAT_00079478;       VIASAT_00079479-VIASAT_00079535;
VIASAT_00079536-VIASAT_00079586;       VIASAT_00079676-VIASAT_00079724;
VIASAT_00079725-VIASAT_00079773;       VIASAT_00079774-VIASAT_00079826;

1    VIASAT_00079827-VIASAT_00079879;              VIASAT_00080362-VIASAT_00080411;

2    VIASAT_00080412-VIASAT_00080461;              VIASAT-00080462-VIASAT_00080511;

3    VIASAT_00081148-VIASAT_00081196;              VIASAT_00081379-VIASAT_00081437;

4    VIASAT_00081597-VIASAT_00081655;              VIASAT_00082376-VIASAT_00082421;

5    VIASAT_00082575-VIASAT_00082670;              VIASAT_00082671-VIASAT_00082766;

6    VIASAT_00083836-VIASAT_00083895;              VIASAT_00084957-VIASAT_00085020;

7    VIASAT_00087127-VIASAT_00087141;              VIASAT_00087240-VIASAT_00087249;

8    VIASAT_00087893-VIASAT_00087924;              VIASAT_00088057-VIASAT_00088117;

9    VIASAT_00088150-VIASAT_00088210;              VIASAT_00088211-VIASAT_00088271;

10   VIASAT_00091398-VIASAT_00091416;              VIASAT_00094575-VIASAT_00094624;

11   VIASAT_00097221-VIASAT_00097295;              VIASAT_00097309-VIASAT_00097383;

12   VIASAT_00097515-VIASAT_00097596;              VIASAT_00097599-VIASAT_00097680;

13   VIASAT_00097821-VIASAT_00097897;              VIASAT_00099518-VIASAT_00099533;

14   VIASAT_00099534-VIASAT_00099549;              VIASAT_00099603-VIASAT_00099618;

15   VIASAT_00100145-VIASAT_00100177;              VIASAT_00101371-VIASAT_00101421;

16   VIASAT_00105561-VIASAT_00105615;              VIASAT_00105740-VIASAT_00105838;

17   VIASAT_00105966-VIASAT_00106066;              VIASAT_00106067-VIASAT_00106167;

18   VIASAT_00106762-VIASAT_00106853;              VIASAT_00106871-VIASAT_00106961;

19   VIASAT_00107041-VIASAT_00107115;              VIASAT_00107675-VIASAT_00107765;

20   VIASAT_00109816-VIASAT_00109915;              VIASAT_00111683-VIASAT_00111759;

21   VIASAT_00111760-VIASAT_00111836;              VIASAT_00113962-VIASAT_00114052;

22   VIASAT_00114058-VIASAT_00114141;              VIASAT_00114142-VIASAT_00114150;

23   VIASAT_00114151-VIASAT_00114159;              VIASAT_00114662-VIASAT_00114752;

24   VIASAT_00122939-VIASAT_00123025;              VIASAT_00123343-VIASAT_00123424;

25   VIASAT_00123572-VIASAT_00123664.

26        VIASAT_00132284-VIASAT_00132301;         VIASAT_00132302-VIASAT_00132333;

27   VIASAT_00132334-VIASAT_00132354;              VIASAT_00132355-VIASAT_00132377;

28

FOURTH SUPPLEMENTAL OBJECTIONS & RESPONSES TO PLAINTIFFS'
FIRST SET OF INTERROGATORIES

1  VIASAT_00132378-VIASAT_00132405;            VIASAT_0132406-VIASAT_00132426;

2  VIASAT_00132427-VIASAT_00132447; VIASAT_00132448.

3      Deposition testimony, including the transcripts of the January 24, 2025 deposition of

4  Michelle Munoz-Talcott; February 5, 2025 deposition of Ajai Tuli; February 7, 2025 deposition of

5  Edwin Edillon, Jr.; February 7, 2025 deposition of Cecilia Lambert.

6      Dkt. 121-3; WD-Viasat-NDCA00000391 to WD-Viasat-NDCA00001863; WD-Viasat-

7  NDCA00002642-WD-Viasat-NDCA00002650        WD-Viasat-NDCA00002651-WD-Viasat-

8  NDCA00002667;      WD-Viasat-NDCA00002668-WD-Viasat-NDCA00002672;        WD-Viasat-

9  NDCA00002673-WD-Viasat-NDCA00002683;          WD-Viasat-NDCA00002684-WD-Viasat-

10 NDCA00002686;      WD-Viasat-NDCA00002798;      WD-Viasat-NDCA00002800-WD-Viasat-

11 NDCA00002803;      WD-Viasat-NDCA00002804;      WD-Viasat-NDCA00002805-WD-Viasat-

12 NDCA00002810;      WD-Viasat-NDCA00002811-WD-Viasat-NDCA00002822;        WD-Viasat-

13 NDCA00014702-04; WD-Viasat-NDCA00014805-10; WD-Viasat-NDCA00014781-04.

14 **INTERROGATORY NO. 8:**

15      Separately for each Accused Product, for each asserted claim of an Asserted Patent that You

16 contend is not infringed, state in full the basis for Your contention, including the element(s) that are

17 not met, the factual support for contending that an element is not met, and all Documents supporting

18 Your contention.

19 **RESPONSE TO INTERROGATORY NO. 8:**

20      Viasat incorporates by reference all of its General Objections as if fully set forth herein.

21 Viasat further objects to this Interrogatory on the grounds it is overbroad, unduly burdensome,

22 vague, and ambiguous, including without limitation through its use of the term "Accused Product,"

23 which as noted above, is not clearly defined.  Viasat objects to this Interrogatory to the extent it

24 seeks information related to expert disclosure.  Viasat further objects to this Interrogatory as

25 premature, including because the Court has not yet set a schedule in this case and Plaintiffs' Patent

26 L.R. 3-1 infringement contentions served on February 23, 2023 are deficient.

27      Discovery is at an early stage, and Viasat's investigation is ongoing.  Plaintiffs' contention

28 interrogatory is premature to the extent that it fails to comply with applicable rules and procedures

of the Court, requires Viasat to set forth the theories of its case before Plaintiffs have served sufficient infringement contentions that comply with the local rules of this Court, and without the benefit of documentary and testimonial discovery.

Viasat's investigation and discovery are ongoing.  Viasat reserves all rights to amend or supplement its objections and/or responses as its investigation continues.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8 (12/30/2024):**

Viasat incorporates by reference its prior objections and response to this Interrogatory. Viasat further objects to this Interrogatory to the extent that Plaintiffs' request for Viasat's basis for non-infringement improperly seeks to shift the burden to Viasat on an issue on which Plaintiffs have the burden of proof. Subject to and without waiving the foregoing response and objections, Viasat hereby supplements its objections and response as follows:

As Viasat has explained repeatedly, including in correspondence (such as those from Patrick Curran to Kieran Kieckhefer, dated May 19, August 4, and September 8, 2023), in emails (such as those sent by Nicola Felice to Ahmed ElDessouki and Ryan Jin, dated April 2 and October 8, 2024, respectively), during various meet and confers throughout the lifespan of this case, and to the Court in the recently submitted Case Management Statement as well as during the October 15, 2024 status conference, Plaintiffs have failed to set forth any infringement theory for either of the Asserted Patents and have failed to meet the requirements of Patent Local Rule 3-1(c), as they have yet to provide "[a] chart identifying specifically *where and how each element* of each asserted claim is found within each Accused Instrumentality." This is especially true in light of the Court's September 20, 2024 claim construction order, which rejected Plaintiffs' improper reading of several claim elements, leaving Plaintiffs with no plausible theory of infringement as to those elements.

Despite Viasat's repeated efforts and the Court's more recent warnings that proceeding under its current theories would be a clear violation of § 285 and cause for awarding fees to Viasat, Plaintiffs have not even attempted to remedy these deficiencies. Plaintiffs' repeated and longstanding failure to provide a coherent claim of infringement has prejudiced Viasat's ability to fully articulate the reasons why Plaintiffs' theory of infringement is incorrect and why Viasat does not infringe. Notwithstanding Plaintiffs' failure to meet its obligations to set forth its purported basis

1  for asserting infringement, based on Viasat's best understanding of Plaintiffs' theories and its
2  investigation to date, at least the claim limitations identified below are not present in the Accused
3  Products. Viasat's investigation of these issues is ongoing and Viasat reserves its rights to further
4  supplement this response.

5                           **<u>Non-Infringement of the '400 Patent</u>**

6          The Accused Products do not meet at least the following limitations of the asserted claims
7  of the '400 patent:

8       • "A kiosk for provisioning secure media content to a plurality of portable data storage
9         devices"/"A method for provisioning secure media content to a plurality of portable
10        data storage devices from a kiosk" (claims 1, 9)

11      • "a first data interface configured to communicate with a portable data storage
12        device"/"establishing communications with a portable data storage device over a first
13        data interface" (claims 1, 9)

14      • "a second data interface configured to communicate, over a network, with a remote
15        trusted server"/"establishing communications with a remote trusted server via a
16        second data interface over a network" (claims 1, 9)

17      • "obtain[ing] a unique identifier from the portable data storage device, wherein the
18        unique identifier is specific to the portable data storage device and is concealed by
19        the portable data storage device" (claims 1, 9)

20      • "authenticat[e/ing] the portable data storage device, using at least the unique
21        identifier, by communicating with the remote trusted server over the second data
22        interface" (claims 1, 9)

23      • "in response to the authentication, provid[e/ing] to the portable data storage device
24        an encrypted first media content and a corresponding access key" (claims 1, 9)

25      • "The [kiosk of claim 1/method of claim 9], [further comprising/wherein the kiosk
26        comprises] a local data storage storing a plurality of encrypted media content"
27        (claims 2, 10)

28

FOURTH SUPPLEMENTAL OBJECTIONS & RESPONSES TO PLAINTIFFS'
FIRST SET OF INTERROGATORIES

- "The [kiosk of claim 1/method of claim 9], wherein the second data interface is a network interface" (claims 6, 13)

- "The [kiosk of claim 1/method of claim 9], wherein the kiosk is located in a public environment" (claims 8, 17)

### **Non-Infringement of the '667 Patent**

The Accused Products do not meet at least the following limitations of the asserted claims of the '667 patent:

- "receiv[e/ing] an indication of the NAS device having a secure region comprising a buffer for streaming media on a separate display device on the local area network, wherein access to the secure region is controlled by the media streaming system" (claims 1, 11)

- "transmit[ting] [the digital/media] content to the secure region within the NAS device for playback by the separate display device from the buffer" (claims 1, 11)

- "transmit[ting] instructions to the NAS device to control streaming access to the [digital/media] content stored on the buffer" (claims 1, 11)

- "The media streaming system of claim 1, wherein the separate display device comprises a smart television" (claim 2)

- "The [media streaming system of claim 1/method of claim 11], wherein transmitting the [digital content/media content to the secure region] comprises time-shifting [the transmitting of the media content] to a time with more available bandwidth on a connection to the NAS device" (claims 3, 12)

- "The [media streaming system of claim 1/method of claim 11], wherein the secure region is inaccessible by a user of the NAS device without permission from the media streaming system" (claims 4, 13)

- "The [media streaming system of claim 1, wherein the one or more processors are further configured to:/method of claim 11, further comprising:] caus[e/ing] the NAS device to use encryption that secures the digital content to the secure region" (claims 5, 14)

- "The [media streaming system of claim 1, wherein the one or more processors are further configured to:/method of claim 11, further comprising:] provid[e/ing] instructions to the NAS device for controlling an amount of data stored in the secure region" (claims 6, 15)

- "The [media streaming system of claim 1, wherein the one or more processors are further configured to:/method of claim 11, further comprising:] provid[e/ing] instructions to the NAS device for controlling an encryption type used in the secure region" (claims 7, 16)

Additionally, pursuant to Federal Rule of Civil Procedure 33(d), Viasat identifies the following materials from which the answer to this interrogatory may be derived or ascertained: May 19, 2024 letter from Patrick Curran to Kieran Kieckhefer; August 4, 2024 letter from Patrick Curran to Kieran Kieckhefer; September 8, 2023 letter from Patrick Curran to Kieran Kieckhefer; April 2, 2024 email from Nicola Felice to Ahmed ElDessouki; October 8, 2024 email from Nicola Felice to Ryan Jin; Dkt. 126 (Joint Case Management Statement); VIASAT_00000618; VIASAT_00003234; VIASAT_00003288; VIASAT_00005782; VIASAT_00006153; VIASAT_00006166; VIASAT_00006354; VIASAT_00006471; VIASAT_00006779; VIASAT_00007270; VIASAT_00007343; VIASAT_00007559; VIASAT_00007581; VIASAT_00007973; VIASAT_00008075; VIASAT_00008188; VIASAT_00008420; VIASAT_00008428; VIASAT_00008738; the source code produced by Viasat at *2023-04-18 Viasat code*; and the source code produced by Viasat at *2024-03-08 Viasat VCDS code*.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8 (1/25/2025):**

Viasat incorporates by reference its prior objections and response to this Interrogatory. Viasat further objects to this Interrogatory to the extent that Plaintiffs' request for Viasat's basis for non-infringement improperly seeks to shift the burden to Viasat on an issue on which Plaintiffs have the burden of proof. Subject to and without waiving the foregoing response and objections, Viasat hereby supplements its objections and response as follows:

As Viasat has explained repeatedly, including in correspondence (such as those from Patrick Curran to Kieran Kieckhefer, dated May 19, August 4, and September 8, 2023), in emails (such as

those sent by Nicola Felice to Ahmed ElDessouki and Ryan Jin, dated April 2 and October 8, 2024, respectively), during various meet and confers throughout the lifespan of this case, and to the Court in the recently submitted Case Management Statement as well as during the October 15, 2024 status conference, Plaintiffs have failed to set forth any infringement theory for either of the Asserted Patents and have failed to meet the requirements of Patent Local Rule 3-1(c), as they have yet to provide "[a] chart identifying specifically ***where and how each element*** of each asserted claim is found within each Accused Instrumentality." This is especially true in light of the Court's September 20, 2024 claim construction order, which rejected Plaintiffs' improper reading of several claim elements, leaving Plaintiffs with no plausible theory of infringement as to those elements.

On January 3, 2025, four weeks before the close of fact discovery, Plaintiffs' served a set of amended contentions. As Viasat has explained to Plaintiffs, there is no basis for Plaintiffs' amended contentions at this stage in the case. However, even if Plaintiffs' amended contentions were proper, they fail to remedy any of previously identified deficiencies in Plaintiffs' alleged infringement theories and further, reveal additional deficiencies. Plaintiffs' repeated and longstanding failure to provide a coherent claim of infringement has prejudiced Viasat's ability to fully articulate the reasons why Plaintiffs' theory of infringement is incorrect and why Viasat does not infringe. Notwithstanding Plaintiffs' failure to meet its obligations to set forth its purported basis for asserting infringement, based on Viasat's best understanding of Plaintiffs' theories and its investigation to date, at least the claim limitations identified below are not present in the Accused Products. Viasat's investigation of these issues is ongoing and Viasat reserves its rights to further supplement this response.

### Non-Infringement of the '400 Patent

The Accused Products do not meet at least the following limitations of the asserted claims of the '400 patent:

- "A kiosk for provisioning secure media content to a plurality of portable data storage devices"/"A method for provisioning secure media content to a plurality of portable data storage devices from a kiosk" (claims 1, 9)

o    *See, e.g.*, VIASAT_00006166; VIASAT_00006471; VIASAT_00007973;
     VIASAT_00005782

- "a first data interface configured to communicate with a portable data storage device"/"establishing communications with a portable data storage device over a first data interface" (claims 1, 9)

  o    *See, e.g.*, VIASAT_00006471; VIASAT_00007973

- "a second data interface configured to communicate, over a network, with a remote trusted server"/"establishing communications with a remote trusted server via a second data interface over a network" (claims 1, 9)

  o    *See, e.g.*, VIASAT_00006471; VIASAT_00007973; VIASAT_00000618;
       VIASAT_00008420

- "a processor configured to (claims 1, 9)

  o    *See, e.g.*, VIASAT_00006471

- "obtain[ing] a unique identifier from the portable data storage device, wherein the unique identifier is specific to the portable data storage device and is concealed by the portable data storage device" (claims 1, 9)

  o    *See, e.g.*, VIASAT_00006354; VIASAT_00006153; VIASAT_00008738;
       VIASAT_00008188

- "authenticat[e/ing] the portable data storage device, using at least the unique identifier, by communicating with the remote trusted server over the second data interface" (claims 1, 9)

  o    *See, e.g.*, VIASAT_00006471; VIASAT_00000618; VIASAT_00006354;
       VIASAT_00006153;        VIASAT_00006779;        VIASAT_00008188;
       VIASAT_00008738; VIASAT_00008420

- "in response to the authentication, provid[e/ing] to the portable data storage device an encrypted first media content and a corresponding access key" (claims 1, 9)

  o    *See, e.g.*, VIASAT_00005782; VIASAT_00003288; VIASAT_00008738;
       VIASAT_00006471

- "The [kiosk of claim 1/method of claim 9], [further comprising/wherein the kiosk comprises] a local data storage storing a plurality of encrypted media content" (claims 2, 10)
  - *See, e.g.*, VIASAT_00006471; VIASAT_00005782; VIASAT_00008738; VIASAT_00007395
- "The [kiosk of claim 1/method of claim 9], wherein the second data interface is a network interface" (claims 6, 13)
  - *See, e.g.*, VIASAT_00006471; VIASAT_00007973; VIASAT_00000618; VIASAT_00008420
- "The [kiosk of claim 1/method of claim 9], wherein the kiosk is located in a public environment" (claims 8, 17)

### Non-Infringement of the '667 Patent

The Accused Products do not meet at least the following limitations of the asserted claims of the '667 patent:

- "A media streaming system comprising:"/"A method of transmitting media content from a media streaming system, the method comprising" (claims 1, 11)
  - *See, e.g.*, VIASAT_00003234; VIASAT_00008738; VIASAT_00007343; VIASAT_00008420; the source code produced by Viasat at *2023-04-18 Viasat code*
- "[a network interface adapter configured to transmit digital content/establishing a connection], via a wide area network (WAN), to a network attached storage (NAS) device operating on a local area network (LAN)" (claims 1, 11)
  - *See, e.g.*, VIASAT_00008420; VIASAT_00008075; VIASAT_00007973; VIASAT_00007559; VIASAT_00008420; VIASAT_00008075; VIASAT_00007973; VIASAT_00006471; VIASAT_00007581; VIASAT_00008428; VIASAT_00007343
- "one or more hardware processors configured to:" (claim 1)
  - *See, e.g.*, VIASAT_00003234; VIASAT_00008420;

- "receiv[e/ing] an indication of the NAS device having a secure region comprising a buffer for streaming media on a separate display device on the local area network, wherein access to the secure region is controlled by the media streaming system" (claims 1, 11)

    o *See, e.g.*, VIASAT_00007559; VIASAT_00008738; VIASAT_00007395; VIASAT_00007270; VIASAT_00007343

- "transmit[ting] [the digital/media] content to the secure region within the NAS device for playback by the separate display device from the buffer" (claims 1, 11)

    o *See, e.g.*, VIASAT_00008738; VIASAT_00007559

- "transmit[ting] instructions to the NAS device to control streaming access to the [digital/media] content stored on the buffer" (claims 1, 11)

    o *See, e.g.*, VIASAT_00008738; VIASAT_00003234; VIASAT_00013053

- "The media streaming system of claim 1, wherein the separate display device comprises a smart television" (claim 2)

    o *See, e.g.*, VIASAT_00006471; VIASAT_00007973;

- "The [media streaming system of claim 1/method of claim 11], wherein transmitting the [digital content/media content to the secure region] comprises time-shifting [the transmitting of the media content] to a time with more available bandwidth on a connection to the NAS device" (claims 3, 12)

    o *See, e.g.*, VIASAT_00008738; VIASAT_00007270; VIASAT_00003234; VIASAT_00008639

- "The [media streaming system of claim 1/method of claim 11], wherein the secure region is inaccessible by a user of the NAS device without permission from the media streaming system" (claims 4, 13)

    o *See, e.g.*, VIASAT_00008738; VIASAT_00007559; VIASAT_00007395

- "The [media streaming system of claim 1, wherein the one or more processors are further configured to:/method of claim 11, further comprising:] caus[e/ing] the NAS

device to use encryption that secures the digital content to the secure region" (claims 5, 14)

- o *See, e.g.*, VIASAT_00008738; VIASAT_00007559; VIASAT_00007395

- "The [media streaming system of claim 1, wherein the one or more processors are further configured to:/method of claim 11, further comprising:] provid[e/ing] instructions to the NAS device for controlling an amount of data stored in the secure region" (claims 6, 15)

- o *See, e.g.*, VIASAT_00008738

- "The [media streaming system of claim 1, wherein the one or more processors are further configured to:/method of claim 11, further comprising:] provid[e/ing] instructions to the NAS device for controlling an encryption type used in the secure region" (claims 7, 16)

Plaintiffs additionally cite to certain public materials in their infringement contentions, but these public materials do not support Plaintiffs' allegations; to the extent such public materials are at all relevant, they demonstrate that the Accused Products do ***not*** infringe the Asserted Patents. Similarly, Plaintiffs cite to various source code files and folders without any meaningful explanation as to how such source code is relevant to their allegations. The cited source code does not support Plaintiffs allegations of infringement, and to the extent it is at all relevant to the functionality discussed within Plaintiffs' contentions, it demonstrates instead that that the Accused Products do ***not*** infringe the Asserted Patents.

Additionally, pursuant to Federal Rule of Civil Procedure 33(d), Viasat identifies the following materials from which the answer to this interrogatory may be derived or ascertained: May 19, 2024 letter from Patrick Curran to Kieran Kieckhefer; August 4, 2024 letter from Patrick Curran to Kieran Kieckhefer; September 8, 2023 letter from Patrick Curran to Kieran Kieckhefer; April 2, 2024 email from Nicola Felice to Ahmed ElDessouki; October 8, 2024 email from Nicola Felice to Ryan Jin; Dkt. 126 (Joint Case Management Statement); VIASAT_00000618; VIASAT_00003234; VIASAT_00003288;     VIASAT_00005782;     VIASAT_00006153;     VIASAT_00006166; VIASAT_00006354;     VIASAT_00006471;     VIASAT_00006779;     VIASAT_00007270;

1  VIASAT_00007343;      VIASAT_00007559;      VIASAT_00007581;      VIASAT_00007973;

2  VIASAT_00008075;      VIASAT_00008188;      VIASAT_00008420;      VIASAT_00008428;

3  VIASAT_00008738; the source code produced by Viasat at *2023-04-18 Viasat code*; and the source

4  code produced by Viasat at *2024-03-08 Viasat VCDS code*.

On January 3, 2025, Plaintiffs served proposed amended infringement contentions citing to additional documentation and source code. Due to the late nature of Plaintiffs' proposed amendment, Viasat's ability to investigate these new contentions has been significantly impaired. Viasat has not yet had a fair opportunity to analyze Plaintiffs' proposed new contentions. But Plaintiffs' effort to pivot to new and different infringement theories at the last minute confirms that Plaintiffs do not have, and have not had, any coherent theory of infringement for the duration of this litigation. Viasat reserves all rights, including the right to seek fees and costs under Section 285, as well as the right to amend these contentions after Viasat has had a fair opportunity to analyze Plaintiffs' proposed amended contentions.

**THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8 (2/5/2025):**

Viasat incorporates by reference its prior objections and response to this Interrogatory. Viasat further objects to this Interrogatory to the extent that Plaintiffs' request for Viasat's basis for non-infringement improperly seeks to shift the burden to Viasat on an issue on which Plaintiffs have the burden of proof. Subject to and without waiving the foregoing response and objections, Viasat hereby supplements its objections and response as follows:

As Viasat has explained repeatedly, including in correspondence (such as those from Patrick Curran to Kieran Kieckhefer, dated May 19, August 4, and September 8, 2023), in emails (such as those sent by Nicola Felice to Ahmed ElDessouki and Ryan Jin, dated April 2 and October 8, 2024, respectively), during various meet and confers throughout the lifespan of this case, and to the Court in the recently submitted Case Management Statement as well as during the October 15, 2024 status conference, Plaintiffs have failed to set forth any infringement theory for either of the Asserted Patents and have failed to meet the requirements of Patent Local Rule 3-1(c), as they have yet to provide "[a] chart identifying specifically ***where and how each element*** of each asserted claim is found within each Accused Instrumentality." This is especially true in light of the Court's September

20, 2024 claim construction order, which rejected Plaintiffs' improper reading of several claim elements, leaving Plaintiffs with no plausible theory of infringement as to those elements.

Plaintiffs' repeated and longstanding failure to provide a coherent claim of infringement has prejudiced Viasat's ability to fully articulate the reasons why Plaintiffs' theory of infringement is incorrect and why Viasat does not infringe. Notwithstanding Plaintiffs' failure to meet its obligations to set forth its purported basis for asserting infringement, based on Viasat's best understanding of Plaintiffs' theories and its investigation to date, at least the claim limitations identified below are not present in the Accused Products.

On January 3, 2025, Plaintiffs served proposed amended infringement contentions citing to additional documentation and source code. Due to the late nature of Plaintiffs' proposed amendment, Viasat's ability to investigate these new contentions has been significantly impaired. Viasat has not yet had a fair opportunity to analyze Plaintiffs' proposed new contentions. But Plaintiffs' effort to pivot to new and different infringement theories at the last minute confirms that Plaintiffs do not have, and have not had, any coherent theory of infringement for the duration of this litigation. Viasat reserves all rights, including the right to seek fees and costs under Section 285, as well as the right to amend these contentions after Viasat has had a fair opportunity to analyze Plaintiffs' proposed amended contentions.

As an initial matter, Plaintiffs appear to allege infringement of the asserted claims of the '400 patent and the '667 patent based on acts that occur outside the United States, including alleged acts by Viasat's airline customers that take place outside the United States (e.g., foreign flights) or alleged acts by passengers on commercial aircraft operated outside the United States by Viasat's customers (e.g., passengers on foreign flights). Plaintiffs fail to demonstrate any act that could constitute either direct or indirect infringement to the extent they rely on alleged acts outside the United States that do not constitute acts of infringement under the Patent Act.

Additionally, Plaintiffs appear to be trying to allege divided infringement, combining a series of alleged acts by Viasat with alleged acts by third parties—such as alleged acts by Viasat's airline customers, or alleged acts by passengers on commercial aircraft operated by Viasat's customers, or alleged acts by users of Viasat's residential in-home Internet service. Plaintiffs have not shown that

the requirements for divided infringement are met. For example, Plaintiffs have not shown that Viasat directs or controls the alleged acts by Viasat's airline customers, or the alleged acts by passengers on commercial aircraft operated by Viasat's customers, or the alleged acts by users of Viasat's residential in-home Internet service, that Plaintiffs rely on for their apparent theory of divided infringement. For that reason, Plaintiffs have not shown Viasat is liable for any alleged act of divided infringement.

### Non-Infringement of the '400 Patent

The Accused Products[1] do not meet at least the following limitations of the asserted claims of the '400 patent:

- "A kiosk for provisioning secure media content to a plurality of portable data storage devices"/"A method for provisioning secure media content to a plurality of portable data storage devices from a kiosk" (claims 1, 9)

Plaintiffs claim the Accused Products are a "kiosk" and practice "a method for provisioning secure media content to a plurality of portable data storage devices from a kiosk." Plaintiffs fail to substantiate this allegation or even pinpoint which specific component of the Accused Products constitutes the "kiosk." For instance, at times, Plaintiffs point to "e.g., one or more modules of the IFE system; e.g., one or more modules of Viasat's Network Access Unit ("NAU"), the Viasat's Mobile Application Server, or the Viasat S4 Server; e.g., one or more modules of the Gateway system," while also citing to documents showing the Viasat Passenger Portal and the Apple Music app. However, with respect to all Accused Products, Plaintiffs fail to show a "kiosk" as required by all asserted claims. As the Court's claim construction order explained, "kiosk" is limiting in all asserted claims, and is a "device used to access and distribute content provided by the system." Plaintiffs have not identified a device that constitutes the claimed "kiosk" as construed by the Court

---

[1]  Plaintiffs' eleventh-hour accusations of Viasat's residential products are untimely and prejudicial. To the extent that Plaintiffs are permitted to add Viasat's residential products as an Accused Product, all the same non-infringement arguments—on all limitations—regarding the Accused Products would apply to the residential products. Given the late timing of the proposed amended contentions, Viasat notes that it is still analyzing the amended contentions and reserve all rights to respond if the residential products are permitted to be added to this litigation.

1   and practices all the limitations of the claim—including having a "first data interface," a "second

2   data interface," and a processor that performs all the remaining limitations of claim 1. Plaintiffs

3   have failed to pinpoint any single component of the Accused Products as the "kiosk." Plaintiffs

4   cannot accuse multiple different Viasat devices of constituting the "kiosk" in order to mix-and-

5   match devices as if multiple devices were one device. As explained below, Plaintiffs oscillate

6   between multiple components of the Accused Products and have identified no single device to be a

7   "kiosk" that performs all the limitations of claim 1. That includes Plaintiffs' effort to treat the M3

8   modem running the VCDS Client application and the S4 server as if they were a single device. They

9   are not. As Plaintiff's own cited documents show, these components are separate and distinct

10  devices. *See, e.g.*, VIASAT_00005782 at -798 (showing the S4 server and the M3 modem to be

11  separate and distinct devices). For this reason alone, Plaintiffs have not shown the Accused Products

12  comprise a "kiosk" or practice "a method for provisioning secure media content to a plurality of

13  portable data storage devices from a kiosk."

14      Plaintiffs fail to identify a single component of the Accused Products that is a "kiosk for

15  provisioning secure media content to a plurality of portable data storage devices." To the extent

16  that Plaintiffs accuse the Gateway modem, Plaintiffs' own cited documents show that the Gateway

17  modem is not a "kiosk" according to the Court's construction. *See, e.g.*, Viasat, *Gateway FAQs*, at

18  https://help.viasat.com/s/article/Viasat-WiFi-Gateway-FAQ-s. Plaintiffs also fail to identify a single

19  component of the Accused Products that is allegedly a "kiosk for provisioning secure media content

20  to a plurality of portable data storage devices." The claims require that the "kiosk" be a single device.

21  No single device satisfies all limitations of the claim. *See, e.g.*, VIASAT_00006166;

22  VIASAT_00006471; VIASAT_00007973; VIASAT_00005782.

23      Additionally, none of the Accused Products constitute a "kiosk" device used to access and

24  distribute media content in the manner recited in the claims. That includes provisioning secure media

25  content to "a plurality of portable data storage devices." Plaintiffs accuse "end-user devices (e.g.,

26  'PED' devices, laptops, tablets, smartphones, etc.), "semi embedded" devices, and "seatback"

27  devices" as being "portable data storage devices." The Court has construed "portable data storage

28  device" as a data storage device that is "easily carried or moved about." Seatback devices and semi-

embedded devices are securely fixed to the seat backs in airlines and not easily carried or moved about, as confirmed by the diagrams in Plaintiffs' own cited documents. *See, e.g.*, VIASAT_00006471 at -490 (showing seatback devices and semi-embedded devices securely fixed to the seat). As Danny Ybarra, co-inventor of the '400 patent, testified, portable storage devices "allow the user to roam" and "move around." Ybarra Rough Tr. at 86. Devices that do not permit the user to roam or move around, including seatback devices nor semi-embedded devices, are not portable data storage devices and are not "easily carried or moved about" as required by the claims. The accused end-user devices are also not "data storage devices" but rather playback devices that do not "stor[e]" any media content that an airline passenger requests. Rather, end-user devices dynamically play back the media content as it is downloaded without storing the media content in the manner described by the claims, which require a "storage device" for content—not a playback device for content that is *streamed*, as opposed to *stored*.

For these reasons alone, Plaintiffs have not shown the Accused Products are a "kiosk for provisioning secure media content to a plurality of portable data storage devices" or practice "a method for provisioning secure media content to a plurality of portable data storage devices from a kiosk." Further, as explained below, the Accused Products do not practice the remaining limitations of claims 1 or 9. Therefore, even if the Accused Products were a "kiosk for provisioning secure media content to a plurality of portable data storage devices," they would not be a "kiosk . . . comprising" the limitations of claim 1. Similarly, even if the Accused Products practiced a "method for provisioning secure media content to a plurality of portable data storage devices from a kiosk," they would not practice a "method for provisioning secure media content to a plurality of portable data storage devices from a kiosk . . . comprising" the limitations of claim 9.

- "a first data interface configured to communicate with a portable data storage device"/"establishing communications with a portable data storage device over a first data interface" (claims 1, 9)

Plaintiffs claim the Accused Products comprise "a first data interface configured to communicate with a portable data storage device" and practice "establishing communications with a portable data storage device over a first data interface." Plaintiffs' infringement contentions do not

1    explain the basis for this position. Instead, Plaintiffs' contentions point to the "WiFi connection"

2    and "Wired Connection" but do not identify how, specifically, the Accused Products allegedly

3    satisfies these claim limitations.

4          First, Plaintiffs have failed to identify a "portable data storage device" with which the first

5    data interface is configured to communicate.  For the reasons described above, end-user devices,

6    semi-embedded devices, and seatback devices do not constitute "portable data storage devices."

7          Second, Plaintiffs have failed to show that the "first data interface" is located on any device

8    that Plaintiffs have identified as a "kiosk."  The claim limitations clearly require that the "kiosk . . .

9    comprise . . . the first data interface."  Plaintiffs have identified no device to be a "kiosk" that has

10   both a "first data interface" and a "second data interface," as well as performs all the remaining

11   limitations of claim 1.  As Plaintiffs' own cited documents show, the WiFi connection and Wired

12   Connection are configured by the airlines (for seatback devices and semi-embedded devices) or by

13   the user device manufacturers (for personal end-user devices), not by Viasat.  *See, e.g.*,

14   VIASAT_00006471 at -477 (showing the WiFi connection and Wired Connection labeled together

15   with end-user devices).  Similarly, Viasat does not "establish[] communications with a portable data

16   storage device over a first data interface" nor does Viasat exercise any control over the establishing

17   of communications.  For these reasons alone, Plaintiffs have not shown the Accused Products

18   comprise "a first data interface configured to communicate with a portable data storage device" or

19   practice "establishing communications with a portable data storage device over a first data

20   interface."

21         Additionally, as explained above, Plaintiffs have failed to explain how the Accused Products

22   are a "kiosk," including by identifying one device that purportedly includes both the claimed "first

23   data interface" and "second data interface." Therefore, it is unclear what components Plaintiffs

24   contend comprise the claimed "first data interface," and Plaintiffs have failed to meet their burden

25   of showing this limitation is met.

26         Further, as explained below, the Accused Products do not practice the remaining limitations

27   of claim 1. Therefore, even if the Accused Products comprised a "first data interface," they would

28   not comprise "kiosk" configured to perform the remaining limitations of claim 1.

1   • "a second data interface configured to communicate, over a network, with a remote

2    trusted server"/"establishing communications with a remote trusted server via a

3    second data interface over a network" (claims 1, 9)

4   Plaintiffs claim the Accused Products comprise "a second data interface configured to

5 communicate, over a network, with a remote trusted server" and practice "establishing

6 communications with a remote trusted server via a second data interface over a network." Plaintiffs'

7 infringement contentions do not explain the basis for this position. In the mobility context, Plaintiffs

8 point to "an IFC on board the aircraft, or a gateway modem, that communicates via a network

9 interface with trusted 'partner data centers.'" In the residential context, to the extent residential

10 products are allowed to be accused, Plaintiffs appear to point vaguely to the same components of

11 the aircraft (which are not present in the residential context), and alternatively to a "sat-com data

12 interface configured to communicate with the ████████████████████████████

13 ████████████████████████████." Plaintiffs do not identify how, specifically,

14 the Accused Products allegedly satisfies these claim limitations.

15   First, Plaintiffs have failed to identify a "remote trusted server" with which the alleged

16 second data interface is configured to communicate. Plaintiffs vaguely gesture to "trusted 'partner

17 data centers' and other such systems on the ground" but do not identify which specific partner data

18 centers they accuse, nor why these partner data centers are "remote" or "trusted." Further, for the

19 reasons described below, none of the components of the Accused Products that Plaintiffs allege to

20 be a "remote trusted server" are used to "authenticate the portable data storage device," and thus do

21 not practice the remaining limitations of claim 1. Therefore, even if the Accused Products

22 comprised a "a second data interface configured to communicate, over a network, with a remote

23 trusted server" (they do not), they do not communicate with a "remote trusted server" that performs

24 the remaining limitations of claim 1.

25   Second, Plaintiffs have failed to show that the "second data interface" is located on any

26 device that Plaintiffs have identified as a "kiosk." The claim limitations clearly require that the

27 "kiosk . . . comprise . . . the second data interface . . ." Plaintiffs have identified no single device to

28 be a "kiosk" that has both a "first data interface" and a "second data interface," as well as performs

1    all the remaining limitations of claim 1.  Moreover, even if an IFC system or  gateway modem or

2    sat-com data interface constitute "a second data interface configured to communicate, over a

3    network, with a remote trusted server," Viasat does not "configure" the data interface nor does

4    Viasat exercise any control over the configuration of the second data interface.  *See, e.g.*,

5    VIASAT_00006471; VIASAT_00007973; VIASAT_00000618; VIASAT_00008420.  Similarly,

6    Viasat does not "establish[] communications with a remote trusted server via a second data interface

7    over a network" nor does Viasat exercise any control over the establishing of communications.  For

8    these reasons alone, Plaintiffs have not shown the Accused Products comprise "a second data

9    interface configured to communicate, over a network, with a remote trusted server" or practice

10   "establishing communications with a remote trusted server via a second data interface over a

11   network."

12        Additionally, as explained above, Plaintiffs have failed to explain how the Accused Products

13   are a "kiosk." Therefore, it is unclear what components Plaintiffs contend comprise the claimed

14   "second data interface," and Plaintiffs have failed to meet their burden of showing this limitation is

15   met.

16        Further, as explained below, the Accused Products do not practice the remaining limitations

17   of claim 1. Therefore, even if the Accused Products comprised a "second data interface," they would

18   not comprise a "kiosk" with the claimed "second data interface" and "first data interface" configured

19   to perform the remaining limitations of claim 1.

20        • "a processor configured to (claims 1, 9)

21        Plaintiffs claim the Accused Products comprise a "processor."  Plaintiffs' infringement

22   contentions do not explain the basis for this position.  For the in-flight context, Plaintiffs accuse the

23   ███████████████████████ for the residential context, Plaintiffs now appear to be adding

24   accusations that the "Viasat WiFi Gateway" modem is a residential device, though Plaintiffs appear

25   to also describe this component as a component of the aircraft in Plaintiffs' infringement

26   contentions.  In either scenario, Plaintiffs do not explain how, specifically, the Accused Products

27   allegedly satisfy these claim limitations.  Crucially, Plaintiffs have identified no single "processor"

28   on a single device that performs all the limitations of claim 1.

1     Additionally, as explained above, Plaintiffs have failed to explain how the Accused Products

2  are a "kiosk." Therefore, it is unclear what components Plaintiffs contend comprise the claimed

3  "processor," and Plaintiffs have failed to meet their burden of showing this limitation is met.

4     Further, as explained below, the Accused Products do not practice the remaining limitations

5  of claim 1. Therefore, even if the Accused Products comprised a "processor," they would not

6  comprise "kiosk" configured to perform the remaining limitations of claim 1.

7     • "obtain[ing] a unique identifier from the portable data storage device, wherein the

8        unique identifier is specific to the portable data storage device and is concealed by

9        the portable data storage device" (claims 1, 9)

10    Plaintiffs claim the Accused Products comprise of a processor that "obtains a unique

11  identifier from the portable data storage device, wherein the unique identifier is specific to the

12  portable data storage device and is concealed by the portable data storage device." Plaintiffs'

13  allegations fail for numerous reasons. The Accused Products do not "obtain a unique identifier"

14  that is "obtain[ed] . . . from the portable data storage device," "specific to the data storage device,"

15  and "concealed by the portable data storage device." Plaintiffs accuse a litany of source code

16  variables; none of these variables represent unique identifiers that are "obtain[ed] . . . from the

17  portable data storage device," "specific to the portable data storage device," and "concealed by the

18  portable data storage device." For instance, Plaintiffs accuse the device "MAC address," but

19  Plaintiffs' own cited documents acknowledge that these MAC addresses are visible to any network

20  that an end-user device connects to and not "concealed" by an end-user device. *See, e.g.*, Apple,

21  *Use private Wi-Fi addresses on Apple devices*, https://support.apple.com/en-us/102509

22  (acknowledging that "network operators and other network observers" use the device MAC address

23  to track a "device's network activity and location over time"). Plaintiffs also accuse the "Modem

24  MAC address," but the *modem* MAC address does not identify an end-user device but rather the

25  modem, and thus cannot be "specific to" a "portable data storage device." *See, e.g.*,

26  VIASAT_00008738. Plaintiffs suggest that MAC addresses can be randomized, but provide no

27  explanation for how a randomized MAC address constitutes a "unique identifier" that is both

28  "specific to" and "concealed by" a portable data storage device. Although MAC addresses can be

-38-

randomized, the randomized MAC address is not hidden from Viasat, and is not concealed by the device—it is instead broadcast by the device. As another example, Plaintiffs accuse IP addresses; however, IP addresses are public and not "concealed" by an end-user device. Plaintiffs accuse the ██████████████ however, Plaintiffs fail to allege, much less show, that ████ are "concealed by" the end-user device. Plaintiffs accuse the ████████████████ however, ████████████ ████████████ and are not "specific to" a single device. Plaintiffs accuse ████████████; however, ████████████ are neither obtained from an end-user device nor specific to an end-user device, but rather generated by the S4 server to verify the identity of Viasat. *See, e.g.*, VIASAT_00006147; VIASAT_00000618. Plaintiffs accuse ████████████ however, ████████████ are generated by Vualto (not obtained from the end-user device) and ████████████████████████████ ████████ These are different concepts, as the '400 patent inventors agree. *See, e.g.*, Hesselink Rough Tr. at 136 (agreeing that "even if a ████████████, that's still different from a storage device identifier that's unique"). The identifiers that Plaintiffs accuse do not perform all three claim limitations: they are not "obtained from," "specific to," and "concealed by" the end-user device. *See also* VIASAT_00006354; VIASAT_00006153; VIASAT_00008738; VIASAT_00008188. Plaintiffs' scattershot accusations ignore the claim requirements.

Additionally, as explained above, Plaintiffs have failed to explain how the Accused Products are a "kiosk." Therefore, it is unclear what components Plaintiffs contend comprise the claimed "kiosk" device or explain how that device's processor is configured to itself "obtain a unique identifier from the portable data storage device, wherein the unique identifier is specific to the portable data storage device and is concealed by the portable data storage device," and Plaintiffs have failed to meet their burden of showing this limitation is met.

Further, as explained below, the Accused Products do not practice the remaining limitations of claim 1. Therefore, even if the Accused Products comprised a processor configured to "obtain a unique identifier from the portable data storage device, wherein the unique identifier is specific to the portable data storage device and is concealed by the portable data storage device," they would not comprise a "kiosk" configured to perform the remaining limitations of claim 1.

1      • "authenticat[e/ing] the portable data storage device, using at least the unique

2          identifier, by communicating with the remote trusted server over the second data

3          interface" (claims 1, 9)

4      Plaintiffs claim the Accused Products comprise of a processor that "authenticates the

5 portable data storage device, using at least the unique identifier, by communicating with the remote

6 trusted server over the second data interface."  Plaintiffs cite to documents that merely mention the

7 term "authorization" but fails to explain what device is performing the alleged authorization, what

8 is being authorized, or how the Accused Products conduct the authorization process taught by the

9 claims.  For this reason alone, Plaintiffs have not shown the Accused Products "authenticate the

10 portable data storage device, using at least the unique identifier, by communicating with the remote

11 trusted server over the second data interface."

12      First, the Accused Products do not utilize any "unique identifiers" to "authenticate" end-user

13 devices in the manner recited by the asserted claims.  Once the W-IFE modem receives a request

14 for media content, it will transmit the media content without performing any authentication process

15 of the end-user device at all.  To the extent that Plaintiffs identify any type of authentication or

16 authorization conducted following a user's request for content, Plaintiffs have not shown that it is

17 Viasat's "kiosk" that performs the authentication rather than other third-party devices, such as

18 content provider servers, nor that it is the "portable data storage device" that is being authenticated

19 by the "kiosk" on a device-by-device basis.  The claim clearly requires that it is the "kiosk"—a

20 single device—that is configured to "authenticate the portable data storage device, using at least the

21 unique identifier, by communicating with the remote trusted server over the second data interface,"

22 as well as perform the remaining limitations of claim 1.  None of the various devices that Plaintiffs

23 accuse of being a "kiosk" perform this authentication process and the remaining limitations of claim

24 1.  To the extent that the Accused Products obtain any "unique identifiers" that are "obtain[ed]

25 from," "specific to," *and* "concealed by" a "portable data storage device" (they do not, as explained

26 above), the Accused Products do not use these identifiers to "authenticate" the end-user device at

27 all, much less by communicating that unique identifier to a "remote trusted server" over a "second

28 data interface" of the "kiosk" device.  Simply using a unique identifier is not enough to satisfy the

1  claim language. Indeed, the '400 patent inventors admit that unique identifiers can be used for many

2  purposes. *See, e.g.*, Hesselink Rough Tr. at 147-48 (stating that there are "all kinds of things you

3  can do" with unique identifiers that are "non-cryptographic uses"). For instance, some identifiers—

4  such as ██████████████████████████—track analytics of passenger viewership

5  and are not used for authentication. Other identifiers—such as the ████████—verify the identity

6  of Viasat, not the identity of the end-user device.

7          Second, **with respect to Viasat's mobility IFE offering**, the Accused Products do not

8  communicate with a "remote trusted server" to authenticate the end-user device. Plaintiffs accuse

9  "Viasat AWS servers, content provider servers, Viasat data center, content management server" and

10  "VCDS servers (e.g., Core Node, Smarts, Web Proxy, VCDS AWS Account)" and "content provider

11  servers" (unnamed) as being the "remote trusted server;" however, this position fundamentally

12  misconstrues both the claim requirements and Viasat's system architecture. As a factual matter,

13  Plaintiffs cannot call the onboard server a "remote" server for the accused airline systems. Plaintiffs'

14  own citations acknowledge that the media content is transmitted by a local "onboard" server. *See,

15  e.g.*, VIASAT_00006471 at -491-492 ("Stream media from ViaSat's onboard server . . ."); 

16  VIASAT_00000618 at -623 (showing "Application Server" that delivers content to the user device

17  as onboard the aircraft). Moreover, the claim limitation requires that the "remote trusted server" be

18  used to *authenticate* the portable data storage device." By citing to AWS servers and content

19  provider servers, Plaintiffs accuses servers used for content delivery, *not for device authentication*.

20  And even if Plaintiffs had accused Viasat's third-party DRM license components as being the

21  "remote trusted server" used for device authentication (they did not), the third-party DRM license

22  servers on the S4 are local, *not "remote" servers*. *See, e.g.*, VIASAT_00006471 at -499 (showing

23  "DRM License Server" as part of the local "onboard server"); VIASAT_00000618 at -623 (showing

24  "DRM System" as onboard the aircraft, not remote). The Accused Products are designed to avoid,

25  not use, communication with a *remote* server to obtain a DRM license: both the ████ DRM

26  server (████ and ████████ DRM server (████ run locally on the plane, as a different design

27  choice than the use of a remote DRM server. While ████████ DRM (████ license requests

28  are cloud-based, Viasat only supported ████████ DRM for a small set of devices (Windows

machines running the Edge browser), and, on December 17, 2024, Viasat deprecated its ▮▮▮▮▮ DRM entirely and switched to ▮▮▮▮▮ DRM, causing the ▮▮▮▮▮ DRM server to drop to nearly zero hits per day.  As Plaintiffs' own cited documents show, the DRM license servers that Viasat utilizes are locally onboard the aircraft.  *See, e.g.*, VIASAT_00006471 at -499 (showing the "DRM License Server" and "▮▮▮▮▮ located within the "Onboard Server").  Lastly, the claim requires an authentication process between the "kiosk" and the single claimed "*processor*" and the "remote trusted server" directly for authentication; communications between the *end-user device* and the DRM server, as opposed to the claimed "kiosk" and a remote server, do not satisfy this limitation.

Third, the Accused Products have no "kiosk" that conducts any "authentication" process at all.  As explained above, and as Plaintiff's own cited documents show, Viasat's M3 modem and S4 server are separate and distinct devices that cannot both constitute the "kiosk."  *See, e.g.*, VIASAT_00005782 at -798 (showing the S4 server and the M3 modem to be separate and distinct devices).  To the extent that Plaintiffs allege that the M3 modem constitutes the "kiosk," the M3 modem does not perform any verification or authorization check of the end-user device before serving the media content.  To the extent that Plaintiffs allege that the S4 server constitutes the "kiosk," the S4 server does not perform any access control before delivering the requested media content to the end-user device if the requested media content is already located on the S4 server.  Even if the requested media content is not located on the S4 server and must be retrieved, the Accused Products do not use a "unique identifier" to conduct "authentication" of each end-user device.  To retrieve content, Viasat utilizes a ▮▮▮▮▮ which—as explained above—is used to verify the identity of Viasat not the end-user device; the Accused Products do not obtain a "unique identifier" that is "specific to" an end-user device, much less use any alleged identifier to authenticate the end-user device.  Moreover, Plaintiffs have not shown that it is *Viasat's* "kiosk" that performs any alleged device authentication rather than other *third-party* devices communicating directly with end-user devices over the Internet, such as content provider servers.  For instance, even if a third-party content provider such as Disney conducted some form of playback device "authentication" over the Internet prior to transmitting Disney+ content, any authentication

conducted by Disney through communication between Disney and the user's playback device would not constitute "authentication" of the device *by Viasat's "kiosk"* as required by the claim. In such cases, the Accused Products do not conduct the third-party authentication nor does Viasat exercise any control over any third-party authentication.

Additionally, as explained above, Plaintiffs have failed to explain how the Accused Products are a "kiosk." Therefore, it is unclear what components Plaintiffs contend comprise the claimed processor configured to "authenticate[] the portable data storage device, using at least the unique identifier, by communicating with the remote trusted server over the second data interface," and Plaintiffs have failed to meet their burden of showing this limitation is met.

Further, as explained below, the Accused Products do not practice the remaining limitations of claim 1. Therefore, even if the Accused Products comprised a processor configured to "authenticate[] the portable data storage device, using at least the unique identifier, by communicating with the remote trusted server over the second data interface," they would not comprise "kiosk" configured to perform the remaining limitations of claim 1.

- "in response to the authentication, provid[e/ing] to the portable data storage device an encrypted first media content and a corresponding access key" (claims 1, 9)

Plaintiffs claim the Accused Products comprise of a processor that, "in response to the authentication, provide[s] to the portable data storage device an encrypted first media content and a corresponding access key." Plaintiffs appear to argue that Viasat's third-party DRM license servers, such as ███████████████████████, provide a "corresponding access key" because they "provide a license to authenticated requests (i.e. with a valid token)." Plaintiffs have failed to explain how the Accused Products satisfy this limitation. The Court has construed "corresponding access key" as "a key to decrypt the first media content." But Plaintiffs have presented no evidence that the DRM license is a "corresponding access key" used to decrypt encrypted media content. *See, e.g.*, VIASAT_00005782; VIASAT_00003288; VIASAT_00008738; VIASAT_00006471. Crucially, the claim also requires that it is Viasat's "kiosk" that "provides . . . an encrypted first media content and corresponding access key." Plaintiffs do not identify any act of device "authentication" that results in providing (1) specific

media content, (2) an access key corresponding to that specific media content, (3) from the claimed "kiosk," (4) as the "response" to the kiosk authenticating a device based on the kiosk's communication of a unique device identifier to a remote trusted server. *None* of this has been shown by Plaintiffs, much less *every* step in this required causal chain. Moreover, to the extent Plaintiffs claim that DRM servers are "remote" from the "kiosk" for their allegations on earlier claim limitations, they cannot also claim for this limitation that those allegedly "remote" services are not "remote" but are instead the claimed "kiosk" itself for purposes of this limitation. In any event, Plaintiffs have not accused any third-party DRM license server as being the "kiosk" that meets this limitation and all remaining limitations of claim 1.

Additionally, as explained above, Plaintiffs have failed to explain how the Accused Products are a "kiosk." Therefore, it is unclear what components Plaintiffs contend comprise the claimed processor configured to "in response to the authentication, provide to the portable data storage device an encrypted first media content and a corresponding access key," and Plaintiffs have failed to meet their burden of showing this limitation is met.

Further, as explained below, the Accused Products do not practice the remaining limitations of claim 1. Therefore, even if the Accused Products comprised a processor configured to "in response to the authentication, provide to the portable data storage device an encrypted first media content and a corresponding access key," they would not comprise "kiosk" configured to perform the remaining limitations of claim 1.

- "The [kiosk of claim 1/method of claim 9], wherein the kiosk is located in a public environment" (claims 8, 17)

Plaintiffs allege that the Accused Products as a "kiosk" that is "located in a public environment." Plaintiffs argue that "modules of the Gateway system" are located in public environments "such as on commercial airplanes." Plaintiffs do not identify how, specifically, the Accused Products allegedly satisfies this claim limitation. **With respect to Viasat's residential Stream offering**, to the extent that Plaintiffs are permitted to add accusations that accuse unspecified components of the residential internet service system, the Viasat modem would be located in individuals' private homes, which are not public. To the extent Plaintiffs are permitted to add a new

1   doctrine of equivalents theory, that theory would fail as a matter of law, as it would vitiate the term

2   "public" from the claim. **With respect to Viasat's mobility IFE offering**, to the extent that Plaintiffs

3   accuse the S4 server of constituting the "kiosk," the S4 server is located in the electronics bay in the

4   belly of the aircraft, which is entirely inaccessible to passengers or the general public.  Indeed, none

5   of the modules on the commercial aircraft are accessible to the general public.  The M3 modem is

6   also located in the electronics bay in the belly of the aircraft, which is inaccessible to passengers or

7   the general public.  The antennae, amplifier, and receiver are located in the ceiling of the aircraft,

8   which is inaccessible to passengers or the general public; as Plaintiffs' own cited documents show,

9   these components are covered by a "radome" "structure overtop" that requires "drilling holes in the

10   fuselage."  *See* Viasat, *100 planes and counting: Behind the scenes installing the best Wi-Fi in the*

11   *sky*, at https://www.Viasat.com/about/newsroom/blog/100-planes-and-counting-behind-the-scenes-

12   installing-the-best-wi-fi-in-the-sky/.

13       Plaintiffs next argue that unspecified components of the Accused Products are located in a

14   public environment because, regardless of their location, they can be communicated with "over a

15   wired or wireless network."  This ignores the claims and the Court's claim construction, which noted

16   that this claim is about *location*—not network availability.  Plaintiffs do not identify how,

17   specifically, the Accused Products allegedly satisfies these claim limitations.  The Court construed

18   "public environment" to mean "*location* accessible by the public;" a device that is not in a public

19   location, but that is nonetheless available for communication over a network, does not meet this

20   limitation.  Plaintiffs' effort to read "location" as "networked device" is not consistent with the

21   Court's claim construction or with the patent.

22       Additionally, as explained above, Plaintiffs have failed to explain how the Accused Products

23   are a "kiosk." Therefore, it is unclear what components Plaintiffs contend comprise the claimed

24   kiosk "wherein the kiosk is located in a public environment," and Plaintiffs have failed to meet their

25   burden of showing this limitation is met.

26       **Non-Infringement of the '667 Patent**

27       The Accused Products do not meet at least the following limitations of the asserted claims

28   of the '667 patent:

- "A media streaming system comprising:"/"A method of transmitting media content from a media streaming system, the method comprising" (claims 1, 11)

Plaintiffs claim the Accused Products are a "media streaming system" and practice a "method of transmitting media content from a media streaming system." Plaintiffs' infringement contentions do not explain the basis for this position. Instead, Plaintiffs' contentions vaguely cite multiple documents and source code files but do not identify what, specifically, in the Accused Products allegedly satisfies this claim limitation. For this reason alone, Plaintiffs have not shown the Accused Products are a "media streaming system" or practice a "method of transmitting media content from a media streaming system."

Further, as explained below, the Accused Products do not practice the remaining limitations of claims 1 or 11. Therefore, even if the Accused Products were a "media streaming system," they would not be a "media streaming system comprising" the limitations of claim 1. Similarly, even if the Accused Products practiced a "method of transmitting media content from a media streaming system," they would not practice a "method of transmitting media content from a media streaming system … comprising" the limitations of claim 11.

- "[a network interface adapter configured to transmit digital content/establishing a connection], via a wide area network (WAN), to a network attached storage (NAS) device operating on a local area network (LAN)" (claims 1, 11)

Plaintiffs claim the Accused Products comprise "a network interface adapter configured to transmit digital content, via a wide area network (WAN), to a network attached storage (NAS) device operating on a local area network (LAN)." Plaintiffs' infringement contentions do not explain the basis for this position. Instead, Plaintiffs' contentions vaguely cite multiple documents and source code files but do not identify what, specifically, in the Accused Products allegedly satisfies this claim limitation. For this reason alone, Plaintiffs have not shown the Accused Products comprise "a network interface adapter configured to transmit digital content, via a wide area network (WAN), to a network attached storage (NAS) device operating on a local area network (LAN)."

**"a network interface adapter"**

**With respect to Viasat's residential Stream offering,** Plaintiffs have failed to even explain what a "network interface adapter" is, let alone identify any component as a "network interface adapter." To the extent Plaintiffs allege that a component is a "network interface," they've failed to explain or show how that component is also an "adapter."

**With respect to Viasat's mobility IFE offering,** similarly, Plaintiffs have failed to identify any component as a "network interface adapter." To the extent Plaintiffs allege that a component is a "network interface," they've failed to explain or show how that component is also an "adapter."

### "a network attached storage (NAS) device operating on a local area network (LAN)"

**With respect to Viasat's residential Stream offering,** Stream does not utilize any sort of "network attached storage (NAS) device operating on a local area network (LAN)." The Viasat "Hub," which Plaintiffs seemingly identify as the claimed NAS device, connects via USB and has no network interface or other network connectivity capabilities. The Hub is therefore a ***direct*** attached storage, or DAS, device. *See* Ryan Depo Tr. 102:8-103:5 (explaining the difference between network attached storage and direct attached storage); Jenkins Depo Tr. 42:16-43:12 (explaining that a device that only has a USB connection is not a NAS device). The documents and source code Plaintiffs cite expressly show that this limitation is not satisfied. For example, Plaintiffs cite Viasat's publicly available Viasat Stream webpages and VIASAT_00008428, both of which show images of a Viasat Hub connecting via USB. https://www.viasat.com/satellite-internet/add-ons/viasat-stream/; VIASAT_00008428 at 444. Plaintiffs also cite VIASAT_00008420 and VIASAT_00007343, both of which state that the external storage used for Stream are "USB" storage drives. VIASAT_00008420 at 423; VIASAT_00007343 at 384. Indeed, that distinction between the '667 patent and Viasat's residential Stream offering is well documented. *See, e.g.*, VIASAT_00132727-VIASAT_00132817.

### "transmit digital content, via a wide area network (WAN), to a network attached storage (NAS) device"

**With respect to Viasat's mobility IFE offering,** the in-plane S4 server is not connected to any wide area network; it is connected to the M3 modem via a local area network connection. Any

1  data transmitted to the S4 server is transmitted from the M3 modem, and therefore, any data

2  transmitted to the S4 server is not transmitted "via a wide area network."

3  • "one or more hardware processors configured to:" (claim 1)

4  Plaintiffs claim the Accused Products comprise "one or more hardware processors."

5  Plaintiffs' infringement contentions do not explain the basis for this position. Instead, Plaintiffs'

6  contentions vaguely cite multiple documents and source code files but do not identify what,

7  specifically, in the Accused Products allegedly satisfies this claim limitation. For this reason alone,

8  Plaintiffs have not shown the Accused Products comprise "one or more hardware processors."

9  Additionally, as explained above, Plaintiffs have failed to explain how the Accused Products

10  are a "media streaming system." Therefore, it is unclear what hardware device or devices Plaintiffs

11  contend comprise the claimed "one or more hardware processors," and Plaintiffs have failed to meet

12  their burden of showing this limitation is met.

13  Further, as explained below, the Accused Products do not practice the remaining limitations

14  of claim 1. Therefore, even if the Accused Products comprised "one or more hardware processors,"

15  they would not comprise "one or more hardware processors configured to" perform the remaining

16  limitations of claim 1.

17  • "receiv[e/ing] an indication of the NAS device having a secure region comprising a

18  buffer for streaming media on a separate display device on the local area network,

19  wherein access to the secure region is controlled by the media streaming system"

20  (claims 1, 11)

21  Plaintiffs claim the Accused Products "receive an indication of the NAS device having a

22  secure region comprising a buffer for streaming media on a separate display device on the local area

23  network, wherein access to the secure region is controlled by the media streaming system."

24  Plaintiffs' infringement contentions do not explain the basis for this position. Instead, Plaintiffs'

25  contentions vaguely cite multiple documents and source code files but do not identify what,

26  specifically, in the Accused Products allegedly satisfies this claim limitation. For this reason alone,

27  Plaintiffs have not shown the Accused Products "receive an indication of the NAS device having a

28

FOURTH SUPPLEMENTAL OBJECTIONS & RESPONSES TO PLAINTIFFS'
FIRST SET OF INTERROGATORIES

secure region comprising a buffer for streaming media on a separate display device on the local area network, wherein access to the secure region is controlled by the media streaming system."

**"the NAS device having a secure region comprising a buffer for streaming media"**

*With respect to Viasat's residential Stream offering,* Viasat's Stream Hubs do not have a "secure region." The '667 patent clearly describes a "secure region" as a **non-whole** portion of the device; for example, the '667 patent discusses the device "having a user accessible region and a secure region." *See, e.g.,* '667 patent at 7:24-26, Fig. 1, 3, 4A, 4B. However, each Stream Hub is encrypted in its entirety, and the entire device can be used to store cached media content. The Hub therefore has no secure *region*. The documents and source code Plaintiffs cite expressly show that this limitation is not satisfied. For example, Plaintiffs cite ██████████████████████████ ██████████████, which is described as containing "information about *the* ████████████████." ██████████████ at ll. 83-113. The ██████████████████████████ which is described as ██████████████████████████████ ████████████████████████████████████████████████." *Id.* This indicates that the Stream Hub stores information about the entire device, rather than any particular "region."

Additionally, the NAS device does not serve as a "buffer," but as a cache. A buffer is a region of a device that stores content temporarily as it is rendered for playback on a user device, whereas the Hub is a cache that stores data for long-term use.

*With respect to Viasat's mobility IFE offering,* Viasat has no ability to control or even detect whether a particular airplane's S4 server is encrypted. As such, Viasat assumes that all S4 servers are *not* encrypted, and therefore, *not* secure. As the entirety of the S4 servers are assumed to be non-secure, there are therefore no "*secure* regions" on any such devices that Viasat is aware of. Plaintiffs have failed to provide any evidence demonstrating whether any such secure regions exist. To the extent such devices do have secure regions, Viasat has no involvement in including such regions.

**"receive an indication of the NAS device having a secure region"**

**With respect to Viasat's residential Stream offering,** as explained above, Viasat's Stream Hubs do not have a "secure region." Therefore, any "indication" corresponding to that device does not indicate "the presence of a secure region within" the Hub. Plaintiffs allege that the ████████ ████████████████████ is the claimed indication, but that variable describes **at most** that the entire Hub device is encrypted, not that there is any "secure region within" the Hub. Additionally, the Hub is not a NAS device for the reasons explained above. Therefore, even if the ████████ boolean were an indication of a secure region, it would not be an indication of a **NAS device** having a secure region.

Moreover, the ████████ boolean doesn't actually even indicate that the Hub is encrypted; all it indicates is whether the drive's mount entry starts with a particular directory path. ████████████ at 408-65. An encrypted drive might not have the correct path, which would result in a **false** ████████ value, and an unencrypted drive may contain the path, which would result in a **true** ████████ value. Neri Rough Tr. at 183:21-185:13. Therefore, even if the Hub were a NAS device, and even if it did have a secure region, the ████████ boolean would not be an indication of the presence of that region.

**With respect to Viasat's mobility IFE offering,** as explained above, Viasat has no ability to control or even detect whether a particular airplane's S4 server is encrypted, and as such, Viasat assumes that all S4 servers are **not** encrypted. Because of this, whenever an S4 server is being accessed, Viasat automatically sets the ████████ boolean to false. The documents and source code Plaintiffs cite expressly show that this limitation is not satisfied. For example, Plaintiffs cite ████████, which shows the ████████ boolean being set based on whether the drive starts with a particular directory path. ████████████ at 408-65. This file separately shows that NFS devices, such as an S4 server, have a different path prefix. *See, e.g.*, *id.* at 75-79, 437-39. Accordingly, when an S4 server is being accessed, the ████████ boolean will always be set to false. Therefore, if the ████████ boolean indicates **anything** in such cases (it does not, as a variable that is always automatically set to the same value cannot indicate anything), it indicates that the device is **not** secure and that there is **no** "secure region within" the device.

**"access to the secure region is controlled by the media streaming system"**

FOURTH SUPPLEMENTAL OBJECTIONS & RESPONSES TO PLAINTIFFS'
FIRST SET OF INTERROGATORIES

**With respect to Viasat's residential Stream offering,** Viasat does not "control" access to the media content stored on the alleged NAS devices. Currently, and since its release, Stream has only handled content accessed through Disney+. In order to access such content, residential users must first log onto their Disney+ application using Disney's authentication process; Viasat has no involvement in or control over this process. Once a user has successfully logged into the Disney+ application, they can select a show or movie to play, which sends a request for the selected content from the user's device to their modem. This request is ultimately received by the vcds-client application; prior to receiving this request Viasat has no involvement in or control over this process. When the vcds-client application receives such a request for media content, it simply serves the content. The vcds-client application does not perform any further authentication of the user; it assumes that the user must have already been successfully authenticated by Disney to have reached such a point. Therefore, the vcds-client application does not "control" access to the alleged NAS device, as it will never deny a user access to the content on that device.

**With respect to Viasat's mobility IFE offering,** a similar process takes place. Critically, as with Stream, once the vcds-client application on the IFE modem receives a request for media content, it simply serves the content. It performs no authentication of the user, nor will it deny a user access to the content on the alleged NAS device. Therefore, the vcds-client application does not "control" access to the alleged NAS device.

- "transmit[ting] [the digital/media] content to the secure region within the NAS device for playback by the separate display device from the buffer" (claims 1, 11)

Plaintiffs claim the Accused Products "transmit the digital content to the secure region within the NAS device for playback by the separate display device from the buffer." Plaintiffs' infringement contentions do not explain the basis for this position. Instead, Plaintiffs' contentions vaguely cite multiple documents and source code files but do not identify what, specifically, in the Accused Products allegedly satisfies this claim limitation. For this reason alone, Plaintiffs have not shown the Accused Products "transmit the digital content to the secure region within the NAS device for playback by the separate display device from the buffer."

**With respect to Viasat's residential Stream offering,** as explained above, the Viasat Hub is not a NAS device and does not have a secure region. Therefore, any media content transmitted by Viasat's systems is not transmitted to any "secure region with the NAS device."

**With respect to Viasat's mobility IFE offering,** as explained above, Viasat's S4 servers do not have a secure region. Therefore, any media content transmitted by Viasat's systems is not transmitted to any "secure region with the NAS device."

- "transmit[ting] instructions to the NAS device to control streaming access to the [digital/media] content stored on the buffer" (claims 1, 11)

Plaintiffs claim the Accused Products "transmit instructions to the NAS device to control streaming access to the digital content stored on the buffer." Plaintiffs' infringement contentions do not explain the basis for this position. Instead, Plaintiffs' contentions vaguely cite multiple documents and source code files but do not identify what, specifically, in the Accused Products allegedly satisfies this claim limitation. For this reason alone, Plaintiffs have not shown the Accused Products "transmit instructions to the NAS device to control streaming access to the digital content stored on the buffer."

**With respect to Viasat's residential Stream offering,** as explained above, once the vcds-client application on the Stream modem receives a request for media content, it simply serves the content. It performs no authentication of the user, nor will it deny a user access to the content on the alleged NAS device. Even more critically, the Viasat Hub, which Plaintiffs contend is the claimed "NAS device," has no means of controlling streaming access to the content it stores. The Hub is a simple hard drive; it does not even contain a processor, and as such, it is incapable of "making decisions" such as whether to serve content or not. It is not clear from Plaintiffs' contentions what they allege the claimed "instructions" are or how the Hub "control[s] streaming access" to the stored content, but to the extent Plaintiffs allege that Viasat's tokenization features somehow satisfy this limitation, they are incorrect. The only point during the VCDS process at which Viasat uses tokens is shortly after a user first requests certain content; when a user requests content, Disney █████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

FOURTH SUPPLEMENTAL OBJECTIONS & RESPONSES TO PLAINTIFFS'
FIRST SET OF INTERROGATORIES

1

2

No token or token information are ever used by the vcds-client or the Hub, and therefore, tokens are not "instructions" sent to the Hub to "control streaming access" to the stored content. The documents and source code Plaintiffs cite expressly show that this limitation is not satisfied. For example, in their infringement contentions for the '400 patent, Plaintiffs cite VIASAT_00016425, which shows that the VCDS Client is configured to *ignore* any "token path element[s]" included in a content request. VIASAT_00016425 at 425-26. Therefore, neither VCDS Client nor the Hub "control streaming access" to the stored content. Indeed, that distinction between the asserted patent claim and the accused product is well documented. *See, e.g.*, VIASAT_00016425; VIASAT_00016428; VIASAT_00016430;        VIASAT_00016439;        VIASAT_00017759;        VIASAT_00017768; VIASAT_00017807;        VIASAT_00017812;        VIASAT_00017815;        VIASAT_00017820; VIASAT_00017822; VIASAT_00017825.

Additionally, the tokens do not "control *streaming access*" to requested content. Requested content has been served by the Hub and vcds-client is not in a user-watchable state, as it is still protected by Disney's DRM processes. Therefore, if anyone "controls streaming access" to content stored on the Hub, it is Disney, not Viasat.

**With respect to Viasat's mobility IFE offering,** as explained above, once the vcds-client application on the in-flight modem receives a request for media content, it simply serves the content. It performs no authentication of the user, nor will it deny a user access to the content on the alleged NAS device. Once again, it is not clear from Plaintiffs' contentions what they allege the claimed "instructions" are or how the S4 server, the alleged NAS device, "control[s] streaming access" to the stored content, but to the extent Plaintiffs allege that Viasat's tokenization features somehow satisfy this limitation, they are incorrect for the same reasons as discussed above with respect to Stream.

- "The media streaming system of claim 1, wherein the separate display device comprises a smart television" (claim 2)

1    As an initial matter, as explained above, the Accused Products do not satisfy the limitations

2    of claim 1. Therefore, the Accused Products cannot satisfy claim 2, which depends on the limitations

3    of claim 1.

4    Plaintiffs claim the Accused Products comprise a "separate display device [that] comprises

5    a smart television." Plaintiffs' infringement contentions do not explain the basis for this position.

6    Instead, Plaintiffs' contentions vaguely cite multiple documents and source code files but do not

7    identify what, specifically, in the Accused Products allegedly satisfies this claim limitation. For this

8    reason alone, Plaintiffs have not shown the Accused Products comprise a "separate display device

9    [that] comprises a smart television."

10   Moreover, Viasat has no control over what type of device an end user of Viasat's residential

11   Stream or mobility IFE offerings chooses to watch content retrieved via those services on, nor does

12   Viasat instruct its customers to use any particular kind of device. Viasat's services function

13   identically whether the end user chooses to watch their content on a television, a computer, a tablet,

14   or a phone. To the extent an end user chooses to access Viasat-provided content via a smart

15   television, Viasat has no involvement in that decision.

16   • "The [media streaming system of claim 1/method of claim 11], wherein transmitting

17   the [digital content/media content to the secure region] comprises time-shifting [the

18   transmitting of the media content] to a time with more available bandwidth on a

19   connection to the NAS device" (claims 3, 12)

20   As an initial matter, as explained above, the Accused Products do not satisfy the limitations

21   of claims 1 or 11. Therefore, the Accused Products cannot satisfy claims 3 or 12, which depend on

22   the limitations of claims 1 and 11, respectively.

23   Plaintiffs claim the Accused Products "time-shift[] the transmitting of the media content to

24   a time with more available bandwidth on a connection to the NAS device." Plaintiffs' infringement

25   contentions do not explain the basis for this position. Instead, Plaintiffs' contentions vaguely cite

26   multiple documents and source code files but do not identify what, specifically, in the Accused

27   Products allegedly satisfies this claim limitation. For this reason alone, Plaintiffs have not shown

28

the Accused Products "time-shift[] the transmitting of the media content to a time with more available bandwidth on a connection to the NAS device."

**With respect to Viasat's residential Stream offering,** as explained above, the Stream Hub is not a "NAS device," nor does it contain any "secure region." Therefore, any transmitting of content to the Hub does not transmit content to a secure region or comprise time-shifting based on a connection to any NAS device.

**With respect to Viasat's mobility IFE offering,** as explained above, Viasat's S4 servers do not have a secure region. Therefore, any transmitting of content to the S4 server does not transmit content to a secure region.

- "The [media streaming system of claim 1/method of claim 11], wherein the secure region is inaccessible by a user of the NAS device without permission from the media streaming system" (claims 4, 13)

As an initial matter, as explained above, the Accused Products do not satisfy the limitations of claims 1 or 11. Therefore, the Accused Products cannot satisfy claims 4 or 13, which depend on the limitations of claims 1 and 11, respectively.

Plaintiffs claim the Accused Products comprise a "secure region [that] is inaccessible by a user of the NAS device without permission from the media streaming system." Plaintiffs' infringement contentions do not explain the basis for this position. Instead, Plaintiffs' contentions vaguely cite multiple documents and source code files but do not identify what, specifically, in the Accused Products allegedly satisfies this claim limitation. For this reason alone, Plaintiffs have not shown the Accused Products comprise a "secure region [that] is inaccessible by a user of the NAS device without permission from the media streaming system."

**With respect to Viasat's residential Stream offering,** as explained above, once the vcds-client application on the Stream modem receives a request for media content, it simply serves the content. It performs no authentication of the user, nor will it deny a user access to the content on the Hub. Therefore, a user does not need any type of "permission" from Viasat to access media content stored on the Hub.

**With respect to Viasat's mobility IFE offering,** as explained above, once the vcds-client application on the in-flight modem receives a request for media content, it simply serves the content. It performs no authentication of the user, nor will it deny a user access to the content on the S4 server. Therefore, a user does not need any type of "permission" from Viasat to access media content stored on the S4 server.

- "The [media streaming system of claim 1, wherein the one or more processors are further configured to:/method of claim 11, further comprising:] caus[e/ing] the NAS device to use encryption that secures the digital content to the secure region" (claims 5, 14)

As an initial matter, as explained above, the Accused Products do not satisfy the limitations of claims 1 or 11. Therefore, the Accused Products cannot satisfy claims 5 or 14, which depend on the limitations of claims 1 and 11, respectively.

Plaintiffs claim the Accused Products "cause the NAS device to use encryption that secures the digital content to the secure region." Plaintiffs' infringement contentions do not explain the basis for this position. Instead, Plaintiffs' contentions vaguely cite multiple documents and source code files but do not identify what, specifically, in the Accused Products allegedly satisfies this claim limitation. For this reason alone, Plaintiffs have not shown the Accused Products "cause the NAS device to use encryption that secures the digital content to the secure region."

**With respect to Viasat's residential Stream offering,** as explained above, the Stream Hub is not a "NAS device," nor does it contain any "secure region." Therefore, any encryption performed by the Hub is not a "NAS device [] us[ing] encryption [to] secure[] the digital content to the secure region."

**With respect to Viasat's mobility IFE offering,** as explained above, Viasat has no control over nor awareness of whether a given S4 server utilizes encryption. Plaintffs have not provided any evidence demonstrating that any S4 servers do so. Therefore, the S4 servers do not "use encryption [to] secure[] the digital content to the secure region."

- "The [media streaming system of claim 1, wherein the one or more processors are further configured to:/method of claim 11, further comprising:] provid[e/ing]

1    instructions to the NAS device for controlling an amount of data stored in the secure

2    region" (claims 6, 15)

3    As an initial matter, as explained above, the Accused Products do not satisfy the limitations

4    of claims 1 or 11. Therefore, the Accused Products cannot satisfy claims 6 or 15, which depend on

5    the limitations of claims 1 and 11, respectively.

6    Plaintiffs claim the Accused Products "provide instructions to the NAS device for

7    controlling an amount of data stored in the secure region." Plaintiffs' infringement contentions do

8    not explain the basis for this position. Instead, Plaintiffs' contentions vaguely cite multiple

9    documents and source code files but do not identify what, specifically, in the Accused Products

10   allegedly satisfies this claim limitation. For this reason alone, Plaintiffs have not shown the Accused

11   Products "provide instructions to the NAS device for controlling an amount of data stored in the

12   secure region."

13   **With respect to Viasat's residential Stream offering,** the Hub simply stores whatever data

14   it is given to store; it does not, nor does it have any ability to, "control[] an amount of data" it stores.

15   None of the documents and source code Plaintiffs cite to even mention *anything* about the amount

16   of data on a Hub.

17   **With respect to Viasat's mobility IFE offering,** the S4 server simply stores whatever data it

18   is given to store; it does not, nor does it have any ability to, "control[] an amount of data" it stores.

19   None of the documents and source code Plaintiffs cite to even mention *anything* about the amount

20   of data on an S4 server.

21   - "The [media streaming system of claim 1, wherein the one or more processors are

22       further configured to:/method of claim 11, further comprising:] provid[e/ing]

23       instructions to the NAS device for controlling an encryption type used in the secure

24       region" (claims 7, 16)

25   As an initial matter, as explained above, the Accused Products do not satisfy the limitations

26   of claims 1 or 11. Therefore, the Accused Products cannot satisfy claims 7 or 16, which depend on

27   the limitations of claims 1 and 11, respectively.

28

Plaintiffs claim the Accused Products "provide instructions to the NAS device for controlling an encryption type used in the secure region." Plaintiffs' infringement contentions do not explain the basis for this position. Instead, Plaintiffs' contentions vaguely cite multiple documents and source code files but do not identify what, specifically, in the Accused Products allegedly satisfies this claim limitation. For this reason alone, Plaintiffs have not shown the Accused Products "provide instructions to the NAS device for controlling an encryption type used in the secure region."

**With respect to Viasat's residential Stream offering,** as explained above, the Stream Hub is not a "NAS device," nor does it contain any "secure region." Additionally, the Hubs are pre-configured during development to be encrypted; at no point do the Hubs receive "instructions … for controlling an encryption type used in the secure region."

**With respect to Viasat's mobility IFE offering,** as explained above, Viasat has no control over nor awareness of whether a given S4 server utilizes encryption. Plaintffs have not provided any evidence demonstrating that any S4 servers do so. Therefore, the S4 servers do not receive "instructions to … control[] an encryption type used in the secure region."

### Indirect Infringement

Plaintiffs' Patent L.R. 3-1(d) contentions, last updated March 22, 2024, allege that certain claims have been indirectly infringed through inducement.[2] Specifically, Plaintiffs assert that Viasat has induced, and continues to induce, infringement of the '400 patent and the '667 patent under 35 U.S.C. § 271(b). Plaintiffs are wrong for multiple reasons.

First, indirect infringement requires an act of direct infringement. Plaintiffs do not identify any act of direct infringement for any asserted claim of the '400 patent or the '667 patent. Viasat does not infringe any asserted claim of the '400 patent or the '667 patent. Viasat's airline customers do not infringe any asserted claim of the '400 patent or the '667 patent by using products and services Viasat provides for those customers' commercial aircraft. Passengers on commercial

---

[2] Plaintiffs do not assert contributory infringement in their Patent L.R. 3-1(d) contentions. The only theory of indirect infringement Plaintiffs disclosed was an inducement theory.

1  aircraft operated by Viasat's airline customers do not infringe any asserted claim of the '400 patent

2  or the '667 patent by using products and services provided by Viasat for those commercial aircraft.

3  To the extent residential home satellite internet service is accused, Viasat's residential home satellite

4  internet service does not infringe any asserted claim of the '400 patent or the '667 patent, and users

5  of residential home satellite internet service do not infringe any asserted claim of the '400 patent or

6  the '667 patent by using Viasat's residential home satellite internet service, including but not limited

7  to by using the "Stream" beta.

8          Second, to the extent Plaintiffs' allegations of induced infringement rely on alleged acts of

9  direct infringement by (1) Viasat's airline customers, (2) passengers on aircraft operated by Viasat's

10  airline customers, or (3) users of Viasat's residential home satellite internet service, Plaintiffs have

11  failed to establish any such act of direct infringement. As noted above, no such infringement exists.

12  Moreover, Plaintiffs have not identified as required by Patent L.R. 3-1(d) any specific act of direct

13  infringement by any specific alleged direct infringer. Plaintiffs have not identified any specific

14  airline customer, any specific passenger on an aircraft operated by a Viasat airline customer, or any

15  specific Viasat residential home satellite internet service customer as an alleged direct infringer, or

16  any specific acts by any such third party that supposedly constitute direct infringement. Plaintiffs

17  instead generically allege that direct infringement exists, without specifying who the direct infringer

18  supposedly is, or how the direct infringement supposedly occurs. These vague allegations are not

19  sufficient to assert induced infringement, and Plaintiffs' Patent L.R. 3-1(d) contentions show that

20  Plaintiffs cannot meet their burden on indirect infringement.

21          Third, indirect infringement requires both (1) knowledge of the patent and (2) knowledge of

22  infringement. *Sonos, Inc. v. Google LLC*, 591 F. Supp. 3d 638, 647 (N.D. Cal. 2022). A party cannot

23  indirectly infringe a patent without knowledge of it. Moreover, a claim for induced infringement

24  under Section 271(b) also requires specific intent to encourage another's infringement of the patent.

25  *Id*. The filing of a complaint is not sufficient to show knowledge of the patent for purposes of

26  inducement allegations. *Id*. at 648 (dismissing indirect infringement allegations; "the complaint will

27  generally not be adequate to serve as notice for either willful or indirect infringement"). Plaintiffs

28  cannot meet their burden on any of these points. Plaintiffs have not shown, and cannot show, that

Viasat had pre-suit knowledge of the '400 patent or the '667 patent. Viasat did not, and Plaintiffs do not contend otherwise. For that reason alone Plaintiffs cannot prove indirect infringement. Moreover, Plaintiffs have not shown and cannot show that Viasat specifically intended to induce an act of infringement by others. Viasat did not believe, and does not believe, that there is any infringement of the '400 patent or '667 patent, and at no point had a specific intent to encourage any act of infringement of either patent.

Fourth, Plaintiffs have not shown that Viasat instructs any specific third party to perform all of the acts that allegedly constitute direct infringement. Indeed, Plaintiffs' Patent L.R. 3-1(d) contentions cite no evidence that Viasat directs any specific third party to perform all steps of any asserted claim. For example:

- On the '400 patent, Plaintiffs allege that Viasat "advertises that vertically integrated technology allows Viasat to optimize the connectivity pipeline from end-to-end, delivering a game-changing in-flight connectivity service that mirrors the experience consumers have on the ground." But using the Internet is not alleged to infringe the '400 patent. Optimized Internet connectivity is not alleged to infringe the '400 patent. Providing Internet connectivity on an airplane is not alleged to infringe the '400 patent. Providing in-flight Internet connectivity that mirrors the quality of service available to Internet users on the ground is not alleged to infringe the '400 patent. These statements cited by Plaintiffs do not mention, much less specifically encourage, any third party to perform all of the steps alleged to constitute infringement of the '400 patent.

- On the '400 patent, Plaintiffs also offer the conclusory allegation that Viasat "intends and induces airlines to encourage passengers to use the systems for entertainment and engagement during flights, including, specifically, the functionality covered by the Asserted Claims." But Plaintiffs do not cite any specific instruction to a specific third party directing that party to perform all of the steps alleged to constitute infringement of the '400 patent. Indeed, the documents cited by Plaintiff have only generic statements quoted, such as "Keep Passengers Entertained." (Patent L.R. 3-

1(d) contentions at 3 n.9.)  The Viasat statements cited by Plaintiffs say nothing about use of the specific functionality that Plaintiffs contend is covered by the Asserted Claims and thus do not encourage any third party to perform all of the steps alleged to constitute infringement of the '400 patent.

- On the '400 patent, Plaintiffs further allege that Viasat "controls the content catalog for its airline customers" but does not explain what this means, or how it occurs, or how it would involve an act of direct infringement, or how "control[ling] the content catalog" would constitute encouragement to commit direct infringement. It does not. Plaintiffs likewise state that Viasat "offers 'Ad Supported Channels' 'where content costs are offset by advertisers,'" but again do not explain what this means, or how it occurs, or how it would involve an act of direct infringement, or how "Ad Supported Channels" would constitute encouragement to commit direct infringement. The same is true for Plaintiffs' allegations regarding "the ability for American Airlines passengers to stream Apple Music for free using Viasat satellite Wi-Fi," or for Plaintiffs' allegations regarding "free Wi-Fi," "including free Wi-Fi through Viasat's 'Sponsored Access' model," or for Plaintiffs' allegations regarding Viasat's provision of "customer support" for "in-flight connectivity and entertainment," or for Plaintiffs' allegations regarding "installation services, content loading and streaming services," and generic claims of providing "information and instructions." None of these are alleged acts of direct infringement. Offering wireless Internet access, or allowing users "to stream Apple music for free using Viasat satellite Wi-Fi," or the provision of free Wi-Fi service through "Sponsored Access," or the other grab-bag of allegations Plaintiffs offer are not allegations of direct infringement. They are also not allegations of instructions to a third party by Viasat, directing the third party to perform all elements of any asserted '400 patent claim.

- On the '667 patent, Plaintiffs allege that "Viasat has promoted use of Viasat's IFEC systems and participated in encouraging airline customers to use functionality of Viasat's IFEC systems that connect to the '667 Accused Products." But using in-

flight Internet service is not alleged to infringe the '667 patent. Accordingly, encouraging the use of in-flight Internet service is not encouraging infringement of the '667 patent. Plaintiffs do not explain what they mean by "use functionality of Viasat's IFEC systems that *connect to* the '667 Accused Products," but using something that "connects to" an accused product is not itself an act of infringement. Plaintiffs' Patent L.R. 3-1(d) allegations for the '667 simply do not state any act of "promot[ion] or of "participat[ing] in encouraging" an act of direct infringement for the '667 patent.

- On the '667 patent, Plaintiffs further allege that Viasat "advertises that vertically integrated technology allows Viasat to optimize the connectivity pipeline from end-to-end, delivering a game-changing in-flight connectivity service that mirrors the experience consumers have on the ground." But using the Internet is not alleged to infringe the '667 patent. Optimized Internet connectivity is not alleged to infringe the '667 patent. Providing Internet connectivity on an airplane is not alleged to infringe the '667 patent. Providing in-flight Internet connectivity that mirrors the quality of service available to Internet users on the ground is not alleged to infringe the '667 patent. These statements cited by Plaintiffs do not mention, much less specifically encourage, any third party to perform all of the steps alleged to constitute infringement of the '667 patent.

- On the '667 patent, Plaintiffs further allege that Viasat "has monitored end users' media consumption and tried to differentiate its entertainment offerings to be more attractive so as to induce airlines and customers to adopt them." This is not an alleged act of direct infringement or an instruction to perform an alleged act of direct infringement. Plaintiffs likewise state that Viasat has "partner[ed] with DIRECTV to make it 'less cumbersome' for airlines to make in-flight entertainment available to passengers." This is also not an alleged act of direct infringement or an instruction to perform an alleged act of direct infringement. The same is true for Plaintiffs' allegations that Viasat "offer[s] live programming in flights, in homes, and other

locations," or its allegation that "the live services provided through our offering is valued by the customers," or its allegation that Viasat participated in sponsored access "giving passengers the NBA League Pass in-flight, providing access to live basketball games, at no additional cost on Jetblue and American Airlines," or its allegations that "end-users, airlines and content providers" all "stream[] live TV in planes, homes, and other locations." None of this is an alleged act of direct infringement or an instruction to perform an act of direct infringement. Nor are vague references to providing live TV "using the VCDS" sufficient to allege direct infringement or to show specific instructions to perform an act of direct infringement. Plaintiffs' allegations regarding "installation services, content streaming services," and generic claims of providing "information and instructions" are likewise insufficient to show induced infringement. None of these are alleged acts of direct infringement or instructions to a third party by Viasat, directing the third party to perform all elements of any asserted '667 patent claim.

DATED:  February 7, 2025

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  _____/s/ Patrick Curran_____
     Patrick Curran
     Attorneys for *Defendant Viasat Inc.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 7, 2025, I caused a copy of the foregoing document to be served on the following counsel for Plaintiffs via email:

GDCWesternDigitalNDCA@gibsondunn.com

*/s/ Alicia Lai*
Alicia Lai
Counsel for Defendant