L. Kieran Kieckhefer (SBN 251978)
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94105-0921
Telephone: 415.393.8337
Email: KKieckhefer@gibsondunn.com

Robert A. Vincent (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue Suite 2100
Dallas, TX 75201-2923
Telephone: 214.698.3281
RVincent@gibsondunn.com

Lillian J. Mao (SBN 267410)
GIBSON, DUNN & CRUTCHER LLP
310 University Avenue
Palo Alto, CA 94301-1744
Telephone: 650.849.5307
LMao@gibsondunn.com

Ahmed ElDessouki (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.2345
AElDessouki@gibsondunn.com

Brian M. Buroker (*pro hac vice*)
Shuo Zhang (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1700 M St, N.W.
Washington DC 20036-4504
BBuroker@gibsondunn.com
SZhang@gibsondunn.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

SANDISK TECHNOLOGIES, INC., et. al.,

        Plaintiffs,

    v.

VIASAT, INC,

        Defendant

Case No. 4:22-CV-4376-HSG

**SANDISK'S OPPOSITION TO VIASAT'S MOTION TO STRIKE PORTIONS OF SANDISK'S EXPERT REPORTS**

Date:       August 21, 2025
Time:      2:00 p.m.
Dept.:     Courtroom 2, 4th Floor
Judge:    Hon. Haywood S. Gilliam, Jr.

**REDACTED VERSION**

Gibson, Dunn &
Crutcher LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Table of Contents

Page

I.     INTRODUCTION ................................................................................................. 1

II.    BACKGROUND ................................................................................................... 2

       A.     The Asserted Patents ................................................................................ 2

       B.     The Accused Products .............................................................................. 2

              1.     The March 2024 ICs Identified IPTV/Live TV As An Infringing Use
                     Case ............................................................................................... 3

              2.     IPTV/Live TV/In-flight TV/Live Video Refer To The Same Offering ............ 6

              3.     Sandisk's Proposed Amendments To The March 2024 ICs .......................... 7

III.   LEGAL STANDARD ........................................................................................... 8

IV.    ARGUMENT ........................................................................................................ 9

       A.     The Provisioning Of IPTV/Live TV Was Accused Of Infringement In The
              March 2024 ICs ........................................................................................ 9

       B.     Sandisk Is Entitled To A Reasonable Royalty Based On Viasat's Live TV/
              IPTV Revenues ....................................................................................... 13

       C.     Sandisk Timely Disclosed The Infringement Theory Regarding The
              "Receiving an Indication" Claim Term of the '667 Patent ......................... 15

              1.     Sandisk's March 2024 Infringement Contentions Disclosed The
                     Infringement Theory ..................................................................... 15

              2.     Viasat's Argument Is Contradicted By The Fact That It Relied On This
                     Theory For Invalidity And Non-Infringement ................................. 18

              3.     Sandisk's January 2025 Proposed Amended Infringement Contentions
                     Did Not Introduce New Infringement Theories Regarding This
                     Limitation ..................................................................................... 19

              4.     Viasat Is Not Prejudiced ................................................................ 19

       D.     Sandisk Timely Disclosed The "Portability" Infringement Theories For the
              '400 Patent .............................................................................................. 19

V.     CONCLUSION ................................................................................................... 21

Gibson, Dunn &
Crutcher LLP

## Table of Authorities

Page(s)

### Cases

*Adobe Sys. Inc. v. Wowza Media Sys.*,
   No. 11-CV-02243-JST, 2014 WL 709865 (N.D. Cal. Feb. 23, 2014) ........................................13

*Apple Inc. v. Samsung Electronics Co.*,
   No. 5:12–CV–0630–LHK–PSG, 2014 WL 173409 (N.D. Cal. Jan. 9, 2014) ......................8, 9, 17

*Digital Reg of Texas, LLC v. Adobe Sys. Inc.*,
   No. CV 12-01971-CW (KAW), 2014 WL 1653131 (N.D. Cal. Apr. 24, 2014) ....................17, 21

*Fenner Investments, Ltd. v. Hewlett–Packard Co.*,
   CIV.A. 6:08–CV–273, 2010 WL 786606 (E.D. Tex. Feb. 26, 2010) ........................................17

*Finjan, Inc. v. Proofpoint, Inc.*,
   No. 13-CV-05808-HSG, 2016 WL 612907 (N.D. Cal. Feb. 16, 2016) ...........................8, 9, 12, 17

*Fortinet, Inc. v. Forescout Techs., Inc.*,
   No. 20CV03343EMCJSC, 2021 WL 1749902 (N.D. Cal. May 4, 2021) ...................................11

*Linex Techs., Inc. v. Belkin Int'l, Inc.*,
   628 F. Supp. 2d 703 (E.D. Tex. 2008) .....................................................................................20

*Minco, Inc. v. Combustion Eng'g, Inc.*,
   95 F.3d 1109 (Fed. Cir. 1996) .................................................................................................13

*MLC Intell. Prop., LLC v. Micron Tech., Inc.*,
   No. 14-CV-03657-SI, 2019 WL 1865921 (N.D. Cal. Apr. 25, 2019) ......................................12

*Oracle Am., Inc. v. Google, Inc.*,
   No. C10-03561-WHA, 2011 WL 4479305 (N.D. Cal. Sept. 26, 2011) ................................8, 18

*Rite-Hite Corp. v. Kelley Co.*,
   56 F.3d 1538 (Fed. Cir. 1995) (en banc) .................................................................................13

*Shared Memory Graphics LLC v. Apple, Inc.*,
   812 F. Supp. 2d 1022 (N.D. Cal. 2010) ....................................................................................9

*Sonos, Inc. v. Google LLC*,
   No. C 20-06754 WHA, 2023 WL 2918751 (N.D. Cal. Apr. 12, 2023) ....................................19

*Thought, Inc. v. Oracle Corp.*,
   No. 12-05601, 2016 WL 3230696 (N.D. Cal. June 13, 2016) ..................................................12

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.*,
   208 F. 3d 981 (Fed. Cir. 2000) ..................................................................................................9

*Whipstock Servs., Inc. v. Schlumberger Oilfield Servs.*,
   No. 6:09-CV-113, 2010 WL 143720 (E.D. Tex. Jan. 8, 2010) ................................................11

### Statutes

35 U.S.C. § 284 ...............................................................................................................................13

Gibson, Dunn &
Crutcher LLP

1

**Other Authorities**

2    U.S. Patent No. 9,424,400 ...............................................................................................1, 2, 3, 10, 20

3    U.S. Patent No. 10,447,667 ................................................................................................2, 4, 10, 15

4

**Rules**

5    Local Rule 3–1 ..............................................................................................................................9

6    Local Rules 3-1(b) ........................................................................................................................10

7    Rule 33(d) ....................................................................................................................................11

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

SANDISK'S OPPOSITION TO MOTION TO STRIKE PORTIONS OF SANDISK'S EXPERT REPORTS (DKT. 199)
CASE NO. 4:22-CV-4376-HSG

## I.     INTRODUCTION

Viasat mischaracterizes Sandisk's infringement contentions and this Court's prior orders to argue that Sandisk's theories of infringement were not properly disclosed.

First, it is undisputed that Viasat's IFE, W-IFE, and VCDS systems are accused of infringement. It is also undisputed that these systems are accused of infringement *when* they provide IPTV or Live video ("IPTV/Live TV").  Mot. at 14 ("the allegation is that Viasat's accused in-flight entertainment product infringes because it can deliver . . . IPTV/live television content to end users").  The Viasat systems that Sandisk has accused of infringement are the systems that *provide* IPTV/Live TV whether considered content, a service, or a product.  Sandisk's expert reports are thus consistent with Magistrate Judge Kang's order in that they only accuse (and provide damages calculations on) the very conduct that Viasat and Magistrate Judge Kang recognize are accused in the contentions—*i.e.*, providing IPTV/Live TV content over Viasat's IFE, W-IFE, and VCDS systems.  Viasat has manufactured an argument that IPTV "the product" was not accused of infringement, even though Viasat admits that providing IPTV/Live TV content was accused of infringement.  This is a distinction without a difference.  Viasat charges its customers for the ability to provide IPTV/Live TV content, and Sandisk's damages expert has determined the damages associated with that infringement.  This is a manufactured, albeit creative, shell game to capitalize on confusion about IPTV/Live TV.

Second, as to the '667 patent, Sandisk's ***theories*** of infringement were all properly disclosed in the operative March 2024 infringement contentions.  Sandisk provides reference to the specific—and more than sufficient—allegations of infringement in this brief.  Sandisk's contentions do not need to disclose every piece of evidence in support of its theories.  Sandisk's expert is allowed to—and did—provide additional evidence of infringement in support of the already-disclosed theories of infringement.  Specifically, Sandisk plainly disclosed both the Boolean encryption theory and the DRM subfolder/file path theory as satisfying the "receiving an indication of . . . a secure region" claim limitation (limitation 1[c]) of the '667 patent.

Viasat's motion should be denied in its entirety.

## II.    BACKGROUND

### A.    The Asserted Patents

Asserted U.S. Patent No. 9,424,400 ("'400 Patent") relates to enabling secure transfer of digital content from a kiosk to portable data storage devices. Dkt. 1-1 ('400 Patent), 2:14-19.  The '400 Patent uses a unique identifier that is obtained from a portable data storage device and then authenticates the device based on that unique identifier.  The process of authentication includes communicating with a remote trusted server.  Ex. A (Easttom Opening Report), ¶¶ 72, 75. For example, the '400 Patent covers the secure transfer of IPTV/Live TV from a kiosk to portable data storage devices.

Asserted U.S. Patent No. 10,447,667 ("'667 Patent") relates to buffering secure content to allow it to be viewed without hiccups or stalling due to reduced data transmission bandwidth.  Dkt. 1-2 ('667 Patent), 1:15-30, 2:29-45.  In particular, the claimed invention is helpful in addressing the buffering of protected media content in situations with limited transmission bandwidth, such as satellite communications.  Ex. A (Easttom Opening Report), ¶ 83.  The '667 Patent claims storing content on a secure portion of local storage, where users with access to the secure storage may access content.  Overall, this reduces the required Internet transmission bandwidth to service these users and also ensures that the local storing is performed securely.  For example, the '667 patent covers the storing of IPTV/Live TV segments in situations with limited transmission bandwidth, such as satellite communications to enable multiple viewers to view the stored IPTV/Live TV segments and thereby, reduce the bandwidth usage required.

### B.    The Accused Products

Sandisk's March 2024 Infringement Contentions ("March 2024 ICs"), which are the operative contentions, identify the accused products for the '400 Patent as all of "Viasat's in-flight entertainment ("IFE") [and] wireless IFE ("W-IFE") systems," and describe the accused products from the '667 Patent as "Viasat's media streaming software, systems, and services, including . . . the Viasat Content Delivery System ("VCDS") and Viasat Open Stream."  Dkt 189-2 (March 2024 ICs Cover Pleading) at 2-3; *see also* Dkt. 201-2 ("Mot.")[1] at 13.  For both the '400 and '667 Patents, the accused IFE/W-IFE and

---

[1] Viasat's Motion was filed under seal at Dkt. 201-2, with a public version filed at Dkt. 199.

Gibson, Dunn &
Crutcher LLP

streaming systems operate with the VCDS system to deliver IPTV/Live TV and pre-stored content[2] to passengers. Thus, for both Asserted Patents, the accused IFE/W-IFE systems are alleged to infringe when they operate with the VCDS system **when delivering IPTV/Live TV**.

### 1.   The March 2024 ICs Identified IPTV/Live TV As An Infringing Use Case

As Viasat admits, Sandisk accused Viasat's systems of infringement *when providing IPTV/Live TV*: "the allegation is that Viasat's accused in-flight entertainment product infringes because it can deliver Disney+, Apple Music, *or IPTV/live television* content to end users." *See* Mot. at 14. The March 2024 ICs make clear that Viasat's IFE, W-IFE, and VCDS systems infringe when providing IPTV/Live TV, in addition to infringing when providing a variety of other media content. And the contentions disclose how the systems infringe each element of each asserted claim **by** providing media content, whether it is IPTV/Live TV or other media content. Importantly*,* the only way that Viasat provides IPTV/Live TV is by sending the IPTV/Live TV content to the accused IFE/W-IFE systems, and the only revenue that Viasat recovers in connection with this use case is by billing its customers an added fee for IPTV, in addition to the IFE hardware and service fees. Ex. B (Kindler Opening Report), ¶¶71, 77, 79.

**'400 Patent**: The cover pleading explains that "Viasat's W-IFE and IFE systems" are accused, and that these systems "connect to the Viasat Content Delivery System ('VCDS'), which 'supports delivering live video content,' such as 'broadcast television stations being sent OTT, or sporting events, or custom content being broadcast live.'" Dkt. 189-2 at 2. The infringement chart explains that the accused systems "provide access to media streaming services (e.g., IPTV . . . ), via the Internet, to user devices (e.g., a smart phone or laptop) and/or seat back devices connected to the '400 Accused Products, and thereby provide each device with access to secure media (e.g., IPTV)." Dkt. 189-3 (400

---

[2] Pre-stored content may be any media content that is not viewed "live." Examples of pre-stored content include movies and TV shows. Viasat uses the term "distribution" to refer to its process of retrieving pre-stored content over its satellite network. Ex. B (Kindler Opening Report), ¶ 67. The key difference in the delivery of IPTV/Live TV content and pre-stored content is the timing for the delivery of such content. Pre-stored content is not viewed "live" and therefore is uploaded and stored on the airplane in advance of the content being viewed. On the other hand, IPTV/Live TV content is uploaded almost in real-time. Ex. A (Easttom Opening Report), ¶¶ 120, 128; Ex. B (Kindler Opening Report), ¶¶ 59, 67, 70 (a), (b).

Patent IC) at 3.  The chart also identified the "██████████████" and the VCDS server components, as examples of the claimed "remote trusted server."  *Id.* at 25-26, 32 (excerpted below), 34 (excerpted below), 35 (citing VCDS code).  Similarly, the chart also identified the ███████████ ███████████████████████████  *Id.* at 46, 47, 56.  Then, in support of the final claim limitation requiring "provid[ing] . . . the media content," Sandisk identified "Viasat IPTV" as an example of media content that is provisioned.  *Id.* at 57, 62 (excerpted below), 65 (citing VCDS code).

**'667 Patent**: Claim 1 of the '667 patent is directed to a "media streaming system," and as such, the cover pleading identifies Viasat's media streaming systems that include the VCDS system as an accused product.  Dkt. 189-2 at 2-3.  The contentions explain VCDS operates partly on the airplane within the satellite modem and the plane and also that ████████████████████████████ ██████████████████████████████████████████████████████," referring to the modem that is part of the IFE and VCDS systems.  *Id.*  The March 2024 ICs further explain that the VCDS system infringes by "stream[ing] media from content providers, including live TV from fuboTV."  Dkt. 189-4 (667 Patent IC) at 2-3; *see also*, *id.* at 4-13 (excerpting Viasat documents that explain how the VCDS system delivers IPTV/Live TV content and pre-loaded content, amongst other types of content).  Moreover, the March 2024 ICs explicitly identify storage on the plane controlled by the VCDS system as satisfying the "network attached storage" limitation.  *Id.* at 21, 28

4

1   (identifying the "███████████," which stores the IPTV/Live TV content, and related VCDS

2   code).  Further, in support of the "receiving an indication" claim limitation, again, Sandisk identified

3   delivery of IPTV/Live TV.  *Id.* at 34 (excerpting discussion relating to delivery of live content), 38

4   (excerpting Viasat's data flow for delivering live video using the VCDS; also excerpted below), 39

5   (excerpting and highlighting documentation concerning delivery of "live video" by the VCDS), 47-48.

6   Similarly, for the claim limitation requiring "transmitting the digital content," Sandisk again cited the

7   data flow relating to delivery of Live Video (*i.e.*, IPTV) using the VCDS.  *Id.*, 51, 55 (citing VCDS

8   code).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25          Therefore, as Sandisk's March 2024 ICs illustrate, the VCDS system delivers IPTV/Live TV

26   (referred to as "Live/Linear Video"), as well as other content types, like updates to pre-stored content

27   (referred to as "distributions").  *See e.g.*, Ex. A (Easttom Opening Report), ¶ 128; *see also* Dkt. 189-4

28

Gibson, Dunn &
Crutcher LLP

at 4, 8, 10, 12. The pre-stored content and the IPTV/Live TV content are accessible to passengers using the Viasat IFE/WIFE systems, which also execute VCDS software.[3]



### 2. IPTV/Live TV/In-flight TV/Live Video Refer To The Same Offering

Viasat's documents and witnesses use the terms IPTV, Live TV, In-flight TV, and Live Video to refer to the same thing—*i.e.*, the provisioning of IPTV/Live TV. Ex. D (VIASAT_00003234) at 3244; Ex. E (VIASAT_00003288) at 3312, 3313, 3316, 3317; Ex. H (VIASAT_00007973) at 8017; Ex. J (Edillon Dep. Tr._ at 28:19-21 ("

Viasat's IPTV/Live TV is a form of *in-flight entertainment*: IPTV/Live TV is offered as entertainment for the passenger and is offered in-flight. Viasat's documents, website, and witnesses state

---

[3] As explained in Sandisk's March 2024 infringement contentions, Viasat also uses the VCDS system to deliver media content to homes. *See e.g.*, Dkt. 189-4 (667 Patent IC) at 27 (discussing Home Caching by the VCDS system). Buried in a footnote, Viasat asks the Court to strike portions of Sandisk's expert reports that discuss Viasat's residential use case. Mot. at 16, n.4. The Court should decline to do so. Although Sandisk is not seeking damages for the residential use case, the residential use of the VCDS system to stream media is highly relevant to explain the benefits of the technology, and is relevant to the analysis under *Georgia Pacific*. Ex. A (Easttom Opening Report), ¶¶ 128-130, 137(a), 137(f), 152; *e.g.*, Ex. B (Kindler Opening Report), ¶¶ 117-118 (discussing residential business in connection with *Georgia Pacific* Factor 6). Sandisk's experts should be permitted to discuss Viasat's residential offering at trial.

that its in-flight entertainment offerings are: stored content, on-demand streaming, and IPTV. *See e.g.,* Ex. H (VIASAT_00007973) at 984 ("█████████████████████████████████████████████████████ ."); Ex. F (VIASAT_00006471) at 495 (explaining the "[p]assenger IFE experience" as including "Live TV."); Ex. D (VIASAT_00003234) at 352 (describing "Viasat W-IFE" as a ██████████████████████████████████████████████████ ."); Ex. E (VIASAT_00003288) at 3310 (describing the Viasat "Media Hub" as "███████████████████████████████████ ").; https://www.viasat.com/aviation/commercial-aviation/in-flight-entertainment/; Ex. K (Tuli Depo. Tr.) at 116:16-20 ██████████████ ████████████████████████████████████ .") (emphasis added); Ex. J (Edillon Depo. Tr.), 16:10-15 ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ . . ."); Ex. L (Neri Depo. Tr.), 45:17-24 ("████████████████████████████████████████████████████████████████████████████████ ██████████████████████ .

The provisioning of IPTV/Live TV only occurs over the systems that Sandisk has accused and in the way that Sandisk has accused it. In other words, whether IPTV/Live TV is considered "content," a "service," or a "product" does not change the fact that Viasat only provides IPTV/Live TV content involving the Viasat systems that Sandisk has accused and in the way that Sandisk has alleged. Ex. A (Easttom Opening Report), ¶¶ 100-128.

### 3.    Sandisk's Proposed Amendments To The March 2024 ICs

On January 3, 2025, after receiving the Court's Claim Construction Order (Dkt. 120) and additional discovery from Viasat, Sandisk served proposed amended infringement contentions to Viasat.

Gibson, Dunn &
Crutcher LLP

1    Dkt. 146, 7. Viasat refused to allow the amended contentions unless Sandisk allowed Viasat to sup-

2    plement its invalidity contentions without any restrictions. *Id*. Accordingly, Sandisk sought the

3    Court's leave to amend the contentions on January 16. *Id*.

4        The proposed amended contentions were narrowly tailored. *Id*., 8. Sandisk added only three

5    categories of information in the amended infringement contentions:

6        • One doctrine of equivalents argument for the term "public environment" and additional

7            detail to the doctrine of equivalents argument already present for the term "portable"

8            (*see id*., 9);

9        • Additional documentary support for existing infringement theories (*see id*., 8-10); and

10        • Explanatory parentheticals for existing infringement theories (*id*.).

11        The Court's order denying Sandisk's motion to amend its March 2024 ICs did not analyze

12    whether Sandisk's proposed amendments introduced any new infringement theories regarding

13    IPTV/Live TV. *See generally* Dkt. 182. Sandisk did not—in any way—identify IPTV / Live TV as a

14    new infringement theory because Sandisk had already accused Viasat's systems of infringement when

15    providing IPTV / Live TV.

16    **III.    LEGAL STANDARD**

17        "The scope of contentions and expert reports are not . . . coextensive," because "[c]ontentions

18    need not disclose specific evidence, whereas expert reports must include a complete statement of the

19    expert's opinions, the basis and reasons for them, and any data or other information considered when

20    forming them." *Apple Inc. v. Samsung Electronics Co.*, No. 5:12–CV–0630–LHK–PSG, 2014 WL

21    173409, at *1 (N.D. Cal. Jan. 9, 2014). For infringement contentions, "the Patent Local Rules do not

22    require perfect clarity, only reasonable notice that is 'as specific as possible' given the information of

23    which a plaintiff is aware." *Finjan, Inc. v. Blue Coat Sys.*, Inc., No. 13-CV-03999-BLF, 2015 WL

24    3640694, at *2 (N.D. Cal. June 11, 2015).

25        In determining whether to strike an expert's testimony based on an alleged failure to properly

26    disclose an infringement theory, the "dispositive inquiry in a motion to strike is ... whether the allegedly

27    undisclosed theory is in fact a new theory or new element of the accused product alleged to practice a

28    particular claim that was not previously identified in the plaintiff's contentions, or whether the theory

8

is instead ***the identification of additional evidentiary proof showing that the accused element did in fact practice the limitation***." *Finjan*, 2018 WL 3640694 at *2 (quoting *Oracle Am., Inc. v. Google, Inc.*, No. C10-03561-WHA, 2011 WL 4479305, at *3 (N.D. Cal. Sept. 26, 2011)). In other words, the "question ... becomes, has the expert permissibly specified the application of a disclosed theory, or has the expert impermissibly substituted a new theory altogether?" *Apple, Inc.*, 2014 WL 173409, at *1.

"[A]ll courts agree that the degree of specificity under Local Rule 3–1 must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a 'reasonable chance of proving infringement.'" *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010) (quoting *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F. 3d 981, 986 (Fed. Cir. 2000)). A patent owner can satisfy this duty to provide reasonable notice by specifically identifying a broader theory in the infringement contentions and further supplement the specific "manner" in which the broader theory operates which the plaintiff has "to learn … through confidential information." *Finjan*, 2015 WL 3640694, at *3 (holding that the defendant had reasonable notice of the plaintiff's infringement theory on a claim element when the plaintiff identified a broad concept in the infringement contentions and later supplemented with the specific manner in which the concept operates in the accused product satisfy a claim element).

## IV.    ARGUMENT

### A.    The Provisioning Of IPTV/Live TV Was Accused Of Infringement In The March 2024 ICs

Viasat does not dispute that Viasat's IFE, W-IFE, and VCDS systems are accused of infringement.  Mot. at 13-14.  Viasat also does not dispute that providing IPTV/Live TV over the accused Viasat systems is accused of infringement: "the allegation is that Viasat's accused in-flight entertainment product infringes because it can deliver Disney+, Apple Music, or IPTV/Live TV to end users." *Id.* at 14.  The only dispute is whether IPTV/Live TV is an "Accused Product," which Viasat appears to distinguish from when Viasat's systems provision IPTV/Live TV.

There is no IPTV/Live TV "product" that is distinct from what Sandisk accused—namely, provisioning IPTV/Live TV over Viasat's systems.  Viasat's documents refer to IPTV/Live TV as content

that is provided over Viasat's systems. *See, e.g.*, Ex. D (VIASAT_00003234) at 3241. Viasat's customer contracts refer to IPTV/Live TV as "IPTV Service," not IPTV product. *See, e.g.*, Ex. I (VIASAT_00014633) at 14688. Viasat's corporate representative Mr. Tuli confirmed that Live TV/ IPTV is "within IFE." Ex. K (Tuli Depo. Tr.) at 116:16-20 ("███████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████ *See also, supra*, §II.B.2. Viasat's argument attempts to create a distinction where none exists. Sandisk accurately identified the IFE, W-IFE, and VCDS systems and explained that these systems infringe when they provide Live TV/ IPTV content.[4]

      Sandisk complied with the Patent Local Rules in identifying Viasat's IFE, W-IFE, and VCDS systems of infringing when provisioning IPTV/Live TV. The Patent Local Rules required Sandisk to identify each "Accused Instrumentality"—which is broadly defined as any "apparatus, product, device, process, method, act, or other instrumentality." NDCA Patent Local Rules 3-1(b). The Patent Local Rules only require that plaintiff identify "[e]ach product, device, and apparatus . . . by name or model number, *if known*." Pat. L.R. 3-1 (b) (emphasis added). Similarly, with respect to accused methods, the Patent Local Rules require that plaintiff identify "[e]ach method or process . . . by name, *if known*" or the "product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process." *Id.* (emphasis added).

      The specific use case of providing IPTV/Live TV content to end-users was accused in the March 2024 ICs. Viasat concedes that Sandisk's "allegation is that Viasat's accused in-flight entertainment product infringes because it can deliver . . . IPTV/live television content to end users." Mot. at 14. Viasat also concedes that the March 2024 ICs for the '667 Patent alleged that "VCDS is 'used to stream media [from] content providers, *including live TV*,'" and that the contentions for the '400 Patent alleged that the accused products "provide access to media streaming services (e.g., *IPTV* . . .)." *Id.*, 13-14;

---

[4] Sandisk learned during discovery that, even though the accused IFE and W-IFE systems pair with VCDS to provide IPTV/Live TV, different Viasat source code was involved for processing requests on the plane for IPTV/Live TV as opposed to other media content. Viasat produced the source code for providing media content, but did not disclose that different source code was involved in processing requests on the plane for IPTV/Live TV content, and did not provide that different source code. This was the basis for Sandisk's motion, which was denied. Dkt. 188. Viasat's technical documents and witness testimony confirmed that Sandisk's infringement analysis as disclosed in the March 2024 ICs was correct as to IPTV/Live TV.

*see also* Dkt. 188-1, 2-3 (Viasat acknowledging that Sandisk disclosed in the March 2024 ICs cover pleading that '400 Patent accused products are "███████████████████████████████

██████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████ and the '667 Patent accused products include the VCDS system) (emphasis added); *see also* Dkt. 188-2 (March 2024 ICs, Ex. A), 1-2; Dkt. 188-3 (March 2024 ICs, Ex. B), at 1-2. Nothing more is required. *See e.g. Fortinet, Inc. v. Forescout Techs., Inc.*, No. 20CV03343EMCJSC, 2021 WL 1749902, at *2 (N.D. Cal. May 4, 2021) (finding plaintiff's disclosures sufficient where it provided all information of which it was aware); *Whipstock Servs., Inc. v. Schlumberger Oilfield Servs.*, No. 6:09-CV-113, 2010 WL 143720, at *2 (E.D. Tex. Jan. 8, 2010) (same). Here, Sandisk disclosed the IPTV/Live TV infringing use case in the March 2024 ICs as it understood it then and as it understands it now—which is informed by Viasat's documents and witness testimony. *See*, *supra*, § II.B.2.

Viasat did not inform Sandisk otherwise. Sandisk asked Viasat through an interrogatory to specifically "[i]dentify by name, model number, and any other identifying indicia any Viasat products or services that use or provide media streaming." Ex. P (Viasat's December 8, 2023 Interrogatory Responses) at 7. Viasat's only response was to identify eight documents pursuant to Rule 33(d). *Id.*, 7. Those documents informed Sandisk's understanding. For example, one of the eight documents Viasat identified explained that the provisioning of "Live / Linear Video" is one "VCDS Service." Ex. D (VIASAT_00003234) at 3241, 11, 15, 17.

Although Viasat argued in a discovery letter to Judge Kang, Dkt. 188 at 4, that this document "separately list[s]" IFE and IPTV/Live TV as separate products, it does not. *See* Ex. D (VIASAT_00003234) at 46. It simply shows that there are different types of content that are delivered using the accused systems. *Id.* The same is true for the other documents that Viasat references in its portion of the discovery letter. Dkt. 188. *See generally* Ex. F (VIASAT_00006471) at 25 (describing a "Passenger IFE Experience" that includes Live TV and "Full complement of engaging IFE offerings."); Ex. E (VIASAT_00003288) at 52-54 (describing the Viasat "Media Hub" as "███████████

████████████████████████████████████████████████████████ This is consistent with Viasat's corporate representative Mr. Tuli's confirmation that Live TV/ IFE is "within

11

1  IFE," and also consistent with testimony from Mr. Edillon and Mr. Neri.  *See* Ex. K (Tuli Depo. Tr.)

2  at 116:16-20 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

3  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. J (Edillon Depo.

4  Tr.), 16:10-15, 28:9-24; Ex. L (Neri Depo. Tr.), 45:17-24.

5       Sandisk's expert reports are thus consistent with Magistrate Judge Kang's order in that they

6  only accuse (and provide damages calculations on) the very conduct that Viasat and Magistrate Judge

7  Kang recognize are accused in the contentions—i.e., providing IPTV/Live TV content over Viasat's

8  IFE, W-IFE, and VCDS systems.  Viasat confused Judge Kang with the false distinction Viasat is

9  making between the "IPTV product" and the accused provisioning of IPTV/Live TV content. Judge

10  Kang agrees that "it is evident that *SanDisk is accusing the VCDS* . . . *of receiving the IPTV content*."

11  Dkt. 215, 3-4, 9.  However, Judge Kang adopted Viasat's unsupported product-vs.-provisioning dis-

12  tinction in finding that the "contention that IPTV *content* **could be delivered** *is not the same thing* **as**

13  **accusing the IPTV** *product*," and that "the fact that 'Live TV' is mentioned a handful of times in the

14  '667 contentions . . . is not, fairly read, an accusation that Viasat's ***IPTV product*** is accused of infringe-

15  ment."  Dkt. 215 at 9 (emphasis in original).  Judge Kang's findings appear to be based on a misunder-

16  standing of Viasat's systems and cannot be reconciled with the undisputed facts that (1) IPTV is the

17  same as Live TV (*see supra*, §II.B.2) and (2) IPTV/Live TV content is only delivered by the VCDS

18  system to be displayed on the IFE/W-IFE systems.[5]  Thus, Viasat's purported distinction does not

19  change Sandisk's infringement analysis, as explained in the March 2024 ICs and Dr. Easttom's in-

20  fringement report, or Sandisk's damages calculation, as explained in Ms. Kindler's reports.

21       The cases that Viasat relies on (Mot. at 14 n. 3) are readily distinguishable.  In *Finjan, Inc. v.*

22  *Proofpoint, Inc.*, No. 13-CV-05808-HSG, 2016 WL 612907, at *4 (N.D. Cal. Feb. 16, 2016), the court

23  struck contentions that did "not identify [redacted text] explicitly."  That is not the case here; as demon-

24  strated above, the alleged infringement of the accused systems by delivering Live TV / IPTV content

25  was explicitly disclosed.  Similarly, in *MLC* and *Thought*, the court struck infringement theories that

26  "constituted an implicit disclosure."  *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, No. 14-CV-03657-

27  ————————————

28  [5] Judge Kang's order does not determine "which products are or were adequately accused of infringe-
ment."  Dkt. 215 at 10.

Gibson, Dunn &
Crutcher LLP

SI, 2019 WL 1865921, at *4 (N.D. Cal. Apr. 25, 2019); *Thought, Inc. v. Oracle Corp*., No. 12-05601, 2016 WL 3230696, at *6 (N.D. Cal. June 13, 2016).  But, as illustrated above, the identification of which systems are disclosed (IFE, W-IFE, and VCDS systems) and one way that they infringe (*i.e.*, through the delivery of IPTV/Live TV) is explicit, not implicit, because Sandisk's March 2024 ICs explained how those systems infringed by the delivery of different forms of media content, including the delivery of IPTV/Live TV.  Finally, Viasat cited *Adobe* for the proposition that an "ambiguity must be construed against" the patent owner.  *Adobe Sys. Inc. v. Wowza Media Sys*., No. 11-CV-02243-JST, 2014 WL 709865, at *14 (N.D. Cal. Feb. 23, 2014).  But *Adobe* relates to the identification of infringement theories, not accused products.

Sandisk's March 2024 ICs identified the IFE, W-IFE, and VCDS systems as accused systems and disclosed Sandisk's contention that such systems infringe when they deliver IPTV/Live TV content.  Nothing more was required.

### B.     Sandisk Is Entitled To A Reasonable Royalty Based On Viasat's Live TV/ IPTV Revenues

Viasat argues that Sandisk's expert opinions as to the infringing IPTV/Live TV use case must be stricken because Sandisk "did not allege that the ***media content*** or ***services*** themselves infringe— including . . . Internet Protocol Television." Mot at 13 (emphasis added).  Consistent with Sandisk's prior argument, this must be rejected.  There is no distinction between revenue earned by Viasat's delivery of IPTV/Live TV content using the accused systems and the revenue earned by a purported "IPTV Product."

Sandisk's undisputed allegation that Viasat's systems infringe by delivering IPTV/Live TV media content is sufficient to entitle Sandisk to a reasonable royalty based on Viasat's revenues that result from that infringement, if proven.  *See e.g.*, *Minco, Inc. v. Combustion Eng'g, Inc.,* 95 F.3d 1109, 1118 (Fed. Cir. 1996) (affirming award based on product produced by infringing machine and holding that the "assessment of adequate damages under section 284 does not limit the patent holder to the amount of diverted sales of a commercial embodiment of the patented product. Rather, the patent holder may recover for an injury caused by the infringement if it 'was or should have been reasonably foreseeable by an infringing competitor in the relevant market, broadly defined.'");  *Rite-Hite Corp. v.*

13

1   *Kelley Co.*, 56 F.3d 1538, 1546 (Fed. Cir. 1995) (en banc) ("If a particular injury was or should have

2   been reasonably foreseeable by an infringing competitor in the relevant market, broadly defined, that

3   injury is generally compensable absent a persuasive reason to the contrary."); *see also* 35 U.S.C. § 284

4   (The damages awarded should be "adequate to compensate for the infringement, but in no event less

5   than a reasonable royalty ***for the use made of the invention*** by the infringer.") (emphasis added).

6       Sandisk clearly disclosed in its Damages Contentions that damages in this case must be meas-

7   ured based on the "value of the Accused Products to Viasat and its customers is attributable to its use of

8   the patented technology," which includes "allow[ing] Viasat to offer media streaming services using less

9   bandwidth. . . and also improv[ing] user experience by reducing latency which increases demand for

10  Viasat's streaming services." *See* Dkt. 199-5 (March 1, 2024 Damages Contentions) at 8-9.  Im-

11  portantly, Sandisk cited Viasat's own documents and the specific pages that relate ***exclusively*** to de-

12  livery of IPTV/Live TV content in support of this theory.  Ex. D (VIASAT_00003234) at 246-248, 284

13  (pages cited in the Damages Contentions that exclusively discuss the benefits of using VCDS to deliver

14  IPTV/Live TV content).  Those citations confirm that Viasat monetizes the infringing systems by de-

15  livering content, including IPTV/Live TV.[6]  *Id.*

16      To monetize the delivery of content, Viasat invoices its customers for what it calls the "IPTV

17  Service."  Ex. B (Kindler Opening Report), ¶¶ 59, 77, 180.  Viasat does not explicitly charge for the

18  accused VCDS system; it charges for providing of particular categories of content, such as IPTV/Live

19  TV content.  Dkt. 188 at 6 (Viasat argued that "IPTV is a content stream ***delivered by VCDS***.").  Thus,

20  Sandisk is entitled to recover the reasonable royalty that is attributable to the revenue earned from the

21  delivery of IPTV/Live TV content—regardless of whether it is called a product, a service, or something

22  else.  By way of analogy, the value of infringement by a cable box that is provided by a cable company

23  to its customers for free must be measured by the cable company's earnings from paid television ad-

24  vertisements and subscription television channels.  Here, that means that the reasonable royalty for

---

25  [6] Viasat relies on *Netfuel, Inc. v. Cisco Sys. Inc.*, to argue that "damages contentions based on an unac-

26  cused product [are not] permitted."  Mot. at 12 (citing No. 5:18-CV-02352-EJD, 2020 WL 4381768,
    at *3 (N.D. Cal. July 31, 2020)).  *Netfuel* explains that a plaintiff should identify "its theories of recov-

27  ery," which Sandisk did.  Moreover, Sandisk's damages contentions explicitly explain that Viasat mon-
    etizes the "delivery of content" such as IPTV/Live TV and that Sandisk is entitled to damages in con-

28  nection with those sales.  *See e.g.*, Dkt. 199-5 (March 1, 2024 Damages Contentions) at 14.

Gibson, Dunn &
Crutcher LLP

infringement may take into account the revenue generated by the delivery of the IPTV/Live TV content, consistent with Sandisk's experts' approach.

        **C.**    **Sandisk Timely Disclosed The Infringement Theory Regarding The "Receiving an Indication" Claim Term of the '667 Patent**

Viasat incorrectly argues Dr. Easttom's report discloses two untimely "theories" regarding the "receiving an indication of . . . a secure region" claim limitation (limitation 1[c]) of the '667 Patent. In truth, Dr. Easttom's report is based on *a single, consistent infringement theory* as to this limitation— that Viasat's system provides a value reflecting whether a portion of the storage device is encrypted, and that messaging relating to this value satisfies the claimed "indication of the NAS device having a secure region." Viasat's characterization of specific supporting evidence as new theories—specifically, (i) a purported "encryption" theory based on a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and (ii) a purported "▮▮▮▮▮▮▮▮▮▮▮▮▮" theory based on sub-folder file paths—and request to strike the same (Mot. at 7-8) should be rejected. As explained below, the March 2024 ICs explicitly disclosed this theory and even cited Viasat's documentation and specific source code files in support. Viasat clearly knew of this because Viasat addressed the theory in non-infringement contentions served on February 7, 2025, and Viasat's expert relied on this theory for invalidity in an expert report served the same day as Dr. Easttom's report. Moreover, Viasat has failed to show any prejudice. Viasat's motion should be denied.

Separately, but relatedly, Viasat's Motion fails to provide the necessary support to explain why each specific paragraph identified in its Motion should be struck. *See* Mot. at 7-8 (providing serial citations). Sandisk disagrees that all identified paragraphs relate to the two purported "theories" that Viasat seeks to have stricken.

        **1.**    **Sandisk's March 2024 Infringement Contentions Disclosed The Infringement Theory**

***Documentary References And Sandisk's Explanatory Text Provided In The March 2024 ICs Disclosed This Theory***: The March 2024 ICs explained that Viasat's VCDS terminal, which has storage capabilities, corresponds with the claimed network attached storage ("NAS"). Dkt. 189-4, 21-22, 28. Claim 1 also requires receiving "an indication of the NAS device having a secure region comprising

15

a buffer for streaming media on a separate display device on the local area network, wherein access to the secure region is controlled by the media streaming system." Sandisk's March 2024 ICs identified Viasat's "█████████," which "serves as a short-term buffer that is effective even for live video," as the claimed "buffer" of the secure region. *Id.*, 39. Moreover, Sandisk's contentions explained that Viasat requires that the ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ *Id.*, 40-41.

Sandisk's contentions then explain that access to the ████████████████████ ████, including by point to Viasat's technical documentation concerning the "███████ ████," which only allows access to ██████████. *Id.*, 46; *see also id.*, 58-59 (explaining how the ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████.

In short, Dr. Easttom's "expert report merely elaborates on the manner in which [Viasat] allegedly infringes and does not amount to a last-minute disclosure of a new infringement theory." *Finjan, Inc.*, 2015 WL 3640694, at *3. Doing so is plainly permissible. Dr. Easttom "permissibly specified the application of a disclosed theory." *Apple Inc.*, 2014 WL 173409, at *1; *Digital Reg of Texas, LLC v. Adobe Sys. Inc.*, No. CV 12-01971-CW (KAW), 2014 WL 1653131, at *5 (N.D. Cal. Apr. 24, 2014) ("In patent litigation, expert reports are expected to provide more information than is contained in infringement contentions.") (citing *Apple Inc.*, 2014 WL 173409, at *1; *Fenner Investments, Ltd. v. Hewlett–Packard Co.*, CIV.A. 6:08–CV–273, 2010 WL 786606, at *2 (E.D. Tex. Feb. 26, 2010)).

***Source Code References In The March 2024 ICs Also Disclosed This Theory***: In addition to explaining the infringement theory in text and diagrams, Sandisk's March 2024 ICs explicitly cited three source code files in support of limitation 1[c], which are contained in the "Viasat VCDS

16

1  ██████████████████████████████████████████████████████████

2  ██. Dkt. 189-4, 49.  As explained in Dr. Easttom's report, ███████████████████████

3  ████████████████ are the operative files that contain ████████████████ that Viasat

4  alleges was not disclosed.

5       In particular, ████████████████ provides support for the purported "encryption the-

6  ory," and ████████████████ provides support for the purported "file path theory."

7      •  ███████████████████████████ source code file contains the █████

8      ███████████████████ that indicates the encryption status of a region, and

9  thereby "whether a region in the storage is secure."  Ex. A (Easttom Opening Report) at

10  ¶¶ 554 (discussing ████████████, which is a reference to ████████████████

11  ████████), 555 (explaining that the ████████████████████████████

12  ████████████████████████████████████.").  Thus, ████████████

13  ████████████████ cited in the March 2024 ICs implements the very "encryp-

14  tion theory" that Viasat complains was not disclosed.   Having identified the file that

15  contains the Boolean, Sandisk was not required to specifically identify the Boolean it-

16  self.  *Oracle Am.*, 2011 WL 4479305, at *3 (holding that where the limiting function

17  was disclosed in the infringement contentions, it was of no consequence that the specific

18  file or source code was not previously disclosed).

19      •  ████████████████:  At his deposition, Viasat engineer Mr. Neri testified that the

20  source code file ███████████████████████████ that is set by compar-

21  ing file paths, *i.e.*, the purported "file path theory."  Ex. A (Easttom Opening Report),

22  at ¶¶ 557-58.  That is the *same* Boolean value that Dr. Easttom relies on to support the

23  so-called "encryption theory."  Moreover, ████████████████ source code file that

24  Dr. Easttom relied on in his report is the same file that was cited in the March 2024 ICs.

25  Again, having identified the file that contains the Boolean, Sandisk was not required to

26  specifically identify the Boolean itself.  *Oracle Am.*, 2011 WL 4479305, at *3.

27      Importantly, Sandisk identified *only three source code files* in support of this limitation out of

28  more than 46,000 source code files that Viasat made available for inspection, which is sufficient to put

Viasat on notice of Sandisk's infringement theories. Viasat not left to "guess" Sandisk's infringement theory. Far from it—the specific source code files that were identified in the March 2024 contentions are exactly where Dr. Easttom draws support for theory in his report. As such, Viasat "has not shown that the references in the [Easttom] report to the [specific] source code file[s] invoke a new infringement theory that was not disclosed in [the] infringement contentions." *Oracle*, 2011 WL 4479305, at *4.

Thus, contrary to Viasat's assertion, Sandisk's infringement theories and key factual supports were timely disclosed, and Viasat's motion to strike should be denied.

### 2. Viasat's Argument Is Contradicted By The Fact That It Relied On This Theory For Invalidity And Non-Infringement

***Invalidity***: Not only did Viasat know about the purported "encryption theory," Viasat's expert Dr. Almeroth relied on this theory in an expert report that was served the same day as the Easttom report on infringement. Viasat therefore knew of this theory well before Sandisk served Dr. Easttom's infringement report. Dr. Almeroth even relied on the specific Boolean that Dr. Easttom relied on. Dr. Almeroth also concedes that Sandisk "previously alleged that a variable indicating that a storage device is encrypted satisfies the claimed 'indication'" limitation. Ex. C (Almeroth Opening Report) at ¶ 350. Moreso, Dr. Almeroth does not put forward any alternative invalidity theory for the indication limitation for at least one reference (the SCSA), which Viasat first charted in April 2024. *Id.* Thus, Viasat demonstrably knew of Sandisk's infringement theory well in advance of receiving Dr. Easttom's opening report and used it affirmatively to support its invalidity arguments. *Sonos, Inc. v. Google LLC*, No. C 20-06754 WHA, 2023 WL 2918751, at *8 (N.D. Cal. Apr. 12, 2023) (finding infringement theory previously disclosed given recitation of plaintiff's position in defendant expert's opening report).

***Non-Infringement***: Similarly, Viasat's non-infringement contention interrogatory responses—served on February 7, 2025, well before Dr. Easttom's report (dated March 24, 2024)—addressed the ███████████████████ that Viasat claims was not disclosed and explained why the file path would, in Viasat's view, not "████████████████ Ex. Q (Viasat's Fourth Supplemental Responses) at 49-50. Viasat's claims of untimely disclosure are thus baseless and should be rejected.

### 3. Sandisk's January 2025 Proposed Amended Infringement Contentions Did Not Introduce New Infringement Theories Regarding This Limitation

Viasat cites to Sandisk's January 2025 Proposed Amended Infringement Contentions to argue that this Court has already rejected the purported "encryption theory." Mot. at 8-9. Viasat is mischaracterizing the record and the Court's order. *See, supra*, §B.3. Rather, as discussed in the Court's order, the Court considered whether the Court's claim construction order provides good cause for the proposed amendments; the Court did not consider whether the proposed amendments would have introduced a new "encryption theory." *See generally* Dkt. 182. Similarly, Viasat's opposition to Sandisk's motion for leave failed to identify any new "encryption" theory. *See generally* Dkt. 153. Moreover, the Court's denial of leave for the Sandisk to amend its infringement contentions cannot, on its own, form the basis to strike Dr. Easttom's opinions concerning limitation [c], which were previously disclosed and known to Viasat.

### 4. Viasat Is Not Prejudiced

As shown above: (i) Dr. Easttom's infringement analyses are fully supported by Sandisk's March 2024 ICs; (ii) Viasat's invalidity expert's opinion relied on this same theory; and (iii) Viasat's non-infringement contentions served well before Dr. Easttom's report. Even if the additional explanations that were provided were deemed to be new theories, Viasat has failed to articulate any prejudice. Viasat has not shown what, if anything, it would have done differently. It has access to all of the engineers, engineers, documentation, and source code files are cited and described in the report. It had the opportunity for its own expert to provide a rebuttal to the merits of these known infringement arguments.

### D. Sandisk Timely Disclosed The "Portability" Infringement Theories For the '400 Patent

Viasat next argues that Dr. Easttom's opinions as to the "portability" of storage devices should be stricken for two reasons. First, Viasat argues that Dr. Easttom's argument that seatback devices can be easily carried or moved about is "new." Second, Viasat argues that Dr. Easttom's doctrine of equivalents argument as to the portability of seatback devices is "new." Viasat is again wrong; neither argument is new.

19

Gibson, Dunn & Crutcher LLP

Sandisk's March 2024 ICs explicitly state that "seatback" devices are "portable." Dkt. 189-3 at 11. In his report, Dr. Easttom explained why the seatback devices meet the Court's claim construction, explaining his opinion that seatback devices "can be easily carried or moved about," which is the claim construction that the Court ordered. Dkt. 120; *Linex Techs., Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 713 n.4 (E.D. Tex. 2008) (finding that infringement contentions do not need to address "question[s] of claim construction.").

The March 2024 ICs disclosed a doctrine of equivalents analysis for the term "portable": seatback devices and end-user devices (referred to as "PED devices") "perform substantially the same function in substantially the same way to obtain substantially the same result." Dkt. 189-3 at 11. The contentions also explained that "the PED devices all stream media from Viasat's onboard IFEC server, with a 'consistent look and feel,' and Viasat provides an ▮▮▮▮▮▮▮▮ across 'seatback', semi-embedded, and PED devices." *Id.* Sandisk's contentions also cited documents explaining why and how the seatback devices and PED devices "perform substantially the same function in substantially the same way to obtain substantially the same result." *See id.*, 12-13. Dr. Easttom's is permitted to "provide more information than is contained in infringement contentions," in support of the doctrine of equivalents argument that was disclosed in Sandisk's March 2024 ICs. *Digital Reg of Texas*, 2014 WL 1653131, at *5.

Thus, Viasat was clearly on notice of Sandisk's infringement theories, and even questioned the patent inventors during several depositions at length as to their understanding of "portability." Ex. M (Ybarra Depo. Tr.), 97:4-99:13; Ex. N (Blankenbeckler Depo. Tr.), 94:19-99:22; Ex. O (Hesselink Depo. Tr. 134:7-135:12). Again, there is no prejudice to Viasat.

Finally, in a footnote, Viasat objects to Sandisk's reliance on WD-Viasat-NDCA00015235, arguing that this document was obtained "pursuant to an untimely subpoena served just two days before the close of discovery." Mot. at 11-12, n.1. That is factually incorrect. As indicated by the Bates number (which includes "WD"), this document was produced by Sandisk. Moreover, this document is a public document that Sandisk located and produced to Viasat on February 7, 2025, before the close of fact discovery. Ex. R (Production Email). Viasat cites no case that precludes reliance on a document produced during fact discovery.

# V.  CONCLUSION

For the foregoing reasons, Sandisk respectfully requests that the Court deny Viasat's Motion to Strike.

Dated: June 23, 2025                              GIBSON, DUNN & CRUTCHER LLP

                                                  */s/ L. Kieran Kieckhefer*
                                                  L. Kieran Kieckhefer

                                                  *Counsel for Plaintiffs*

SANDISK'S OPPOSITION TO MOTION TO STRIKE PORTIONS OF SANDISK'S EXPERT REPORTS (DKT. 199)
CASE NO. 4:22-CV-4376-HSG

Gibson, Dunn &
Crutcher LLP