# EXHIBIT N

HIGHLY CONFIDENTIAL-ATTORNEY EYES ONLY

1    IN THE UNITED STATES DISTRICT COURT
2    FOR THE NORTHERN DISTRICT OF CALIFORNIA
3    OAKLAND DIVISION
4    Case No. 4:22-cv-4376-HSG
5    SANDISK TECHNOLOGIES, et al.,
6        Plaintiffs,
7    vs.
8    VIASAT, INC.,
9        Defendant.
_____
10
     VIDEO RECORDED 30(b)(6) DEPOSITION OF
11   SANDISK TECHNOLOGIES, INC., SANDISK 3D IP HOLDINGS, LTD,
     SANDISK TECHNOLOGIES, LLC, and SANDISK STORAGE MALAYSIA,
12                     SDN. BHD.
          (through DAVID L. BLANKENBECKLER)
13                January 22, 2025
_____

Page 1

HIGHLY CONFIDENTIAL-ATTORNEY EYES ONLY

```
 1    APPEARANCES:
 2    ON BEHALF OF THE PLAINTIFFS:
            AHMED ELDESSOUKI, ESQ.
 3          Gibson, Dunn & Crutcher, LLP
            200 Park Avenue
 4          New York, New York  10166
            Phone: 212-351-2345
 5          Email: aeldessouki@gibsondunn.com
                      and
 6          L. KIERNAN KIECKHEFER, ESQ.
            Gibson, Dunn & Crutcher, LLP
 7          One Embarcadero Center, Suite 2600
            San Francisco, California  94111
 8          Phone:  415-393-8200
            Email:  kkieckhefer@gibsondunn.com
 9
      ON BEHALF OF THE DEFENDANT:
10          ALICIA LAI, ESQ.
            Quinn Emanuel Urquhart & Sullivan, LLLP
11          295 5th Avenue
            New York, New York  10016
12          Phone: 212-849-7000
            Email: alicialai@quinnemanuel.com
13
      Also Present:  Jennifer Beard, Esq.
14                   Dustin Brown, videographer
15
16
17
18
19
20
21
22
23
24
25


                                                    Page 2
```

HIGHLY CONFIDENTIAL-ATTORNEY EYES ONLY

1        PURSUANT TO WRITTEN NOTICE and the appropriate
2   Rules of Civil Procedure, the video recorded 30(b)(6)
3   deposition of SanDisk Technologies, Inc., SanDisk 3D IP
4   Holdings, LTD, SanDisk Technologies, LLC, and SanDisk
5   Storage Malaysia, SDN. BHD. through DAVID L.
6   BLANKENBECKLER, called for examination by the Defendant,
7   was taken at the offices of Gibson, Dunn & Crutcher, LLP,
8   1801 California Street, Suite 4200, Denver, Colorado,
9   commencing at 9:39 a.m. on January 22, 2025, before Bonnie
10  Carpenter Johnshoy, CSR, RPR, CRR.
11                           I N D E X
12  EXAMINATION:                                          PAGE
13       By Ms. Lai                                          6
14       By Mr. ElDessouki                                 224
15       By Ms. Lai                                        236
16  EXHIBITS:                                             PAGE
17  Exhibit 1    Defendant's Corrected Rule                  8
                 30(b)(6) Deposition Notice to
18               Plaintiffs
19  Exhibit 2    1/16/25 email from Ahmed                    8
                 ElDessouki to OE-Viasat-WD
20
    Exhibit 3    Flix on Stix:  Vending Machine             37
21               Copies Movies to Thumb Drives,
                 Wired magazine, 12/7/10
22
    Exhibit 4    "eMusic to Debut Concert-Venue             39
23               Kiosks", Billboard magazine,
                 6/23/04
24
25

                                                      Page 3

| | | |
|---|---|---|
| 1 | having been first duly sworn, was examined and testified | 09:40:12 |
| 2 | as follows. | |
| 3 | EXAMINATION | 09:40:12 |
| 4 | BY MS. LAI: | 09:40:12 |
| 5 | Q. Good morning, Mr. Blankenbeckler. | 09:40:14 |
| 6 | A. Good morning. | 09:40:17 |
| 7 | Q. We met off the record, but my name is | 09:40:18 |
| 8 | Alicia Lai. I represent Viasat, and I'll be asking you a | |
| 9 | few questions today. | |
| 10 | A. Okay. | 09:40:24 |
| 11 | Q. Can we start with stating your name for the | 09:40:25 |
| 12 | record? | |
| 13 | A. It's Dave Blankenbeckler. | 09:40:28 |
| 14 | Q. And Mr. Blankenbeckler, have you been | 09:40:30 |
| 15 | deposed before? | |
| 16 | A. I think I might have been once a long, long | 09:40:34 |
| 17 | time ago when I worked at a company out in California, but | |
| 18 | I don't have very much memory, other than it was a short | |
| 19 | disposition (sic) -- yeah, so not -- I don't have a lot of | |
| 20 | experience with this, that's for sure. | |
| 21 | Q. And which company was that for? | 09:40:48 |
| 22 | A. That was with TerraStor. | 09:40:50 |
| 23 | Q. And do you remember when that was? | 09:40:52 |
| 24 | A. That probably would have been like 1997 or | 09:40:57 |
| 25 | '98. Somewhere in that time frame. So a long time ago. | |

```
 1            Q.   Understood.  Now, do you understand that     09:41:02
 2   you're under the same oath here as you would be if you
 3   were testifying in court?
 4            A.   Uh-huh.                                       09:41:07
 5            Q.   And to just go over some deposition ground    09:41:08
 6   rules today, let's speak clearly and slowly, and let's try
 7   not to speak over each other.  And so let me finish asking
 8   a question before you answer.
 9                 If you don't understand a question, please    09:41:19
10   ask for clarification.  And if you do answer a question,
11   I'll assume that you understood the question.
12                 Unless counsel instructs you not to answer,   09:41:27
13   you should answer despite any objections.
14                 And of course, let me know if at any time     09:41:32
15   you need a break.
16                 Does that all make sense to you?              09:41:35
17            A.   Okay.  Yes.                                   09:41:37
18            Q.   And is there a reason you can't give full,    09:41:37
19   truthful, and accurate testimony today?
20            A.   I don't think so.                             09:41:43
21            Q.   Now, Mr. Blankenbeckler, do you understand    09:41:43
22   that SanDisk has designated you as its corporate
23   representative to testify about various topics?
24            A.   Yes.                                          09:41:51
25                 MS. LAI:  Now, let's mark the first           09:41:53
```

Page 7

| | | |
|---|---|---|
| 1 | exhibit. | |
| 2 | (Exhibit 1 was marked.) | 09:42:06 |
| 3 | Q.   (By Ms. Lai)  Now, you're handed Viasat's | 09:42:07 |
| 4 | 30(b)(6) notice of deposition. | |
| 5 | Do you understand that your testimony today | 09:42:12 |
| 6 | is on behalf of SanDisk? | |
| 7 | A.   Yes. | 09:42:17 |
| 8 | MS. LAI:  Now, let's mark the second | 09:42:19 |
| 9 | exhibit. | |
| 10 | (Exhibit 2 was marked.) | 09:42:35 |
| 11 | Q.   (By Ms. Lai)  Now, I'm handing you a | 09:42:35 |
| 12 | January 16, 2025 email from Ahmed ElDessouki, counsel for | |
| 13 | SanDisk, to counsel for Viasat. | |
| 14 | Have you seen this email before? | 09:42:44 |
| 15 | A.   I don't think so. | 09:42:49 |
| 16 | Q.   Do you see in the "from" line, it says | 09:42:50 |
| 17 | "Ahmed ElDessouki"? | |
| 18 | A.   Yes. | 09:42:53 |
| 19 | Q.   And Ahmed ElDessouki is counsel for | 09:42:54 |
| 20 | SanDisk; right? | |
| 21 | A.   Yes. | 09:42:57 |
| 22 | Q.   And you see in the "to" line, it says QE- | 09:42:58 |
| 23 | Viasat-Western Digital; right? | |
| 24 | A.   Okay.  Yes. | 09:43:03 |
| 25 | Q.   I'll represent to you that this is an email | 09:43:03 |

| | | |
|---|---|---|
| 1 | MR. ELDESSOUKI: Objection. Form. Just to | 11:53:56 |
| 2 | clarify, you said if the keyboard did have a keyboard. | |
| 3 | Q. (By Ms. Lai) I'll strike that and reask | 11:54:03 |
| 4 | the question. | |
| 5 | It's a yes that if the kiosk did, in fact, | 11:54:05 |
| 6 | have a keyboard and a display, you would probably want | |
| 7 | there to be a lot of foot traffic around the kiosk; right? | |
| 8 | MR. ELDESSOUKI: Objection. Asked and | 11:54:15 |
| 9 | answered. Mischaracterizes prior testimony. Calls for | |
| 10 | an -- incomplete hypothetical. And outside the scope. | |
| 11 | A. I mean, only if that -- again, if that | 11:54:24 |
| 12 | kiosk's mission is to sell content to end users and it | |
| 13 | has a -- then yes. But I mean, if it's -- I mean, I'm | |
| 14 | sure the license server -- you know, the -- the secure | |
| 15 | part of that was setting off in the data center somewhere. | |
| 16 | It had a keyboard and mouse, but you didn't want foot | |
| 17 | traffic or end users around it because it was in a secure | |
| 18 | facility. | |
| 19 | So -- so just the definition of a keyboard | 11:54:47 |
| 20 | and a mouse isn't sufficient to say that you would want | |
| 21 | that. | |
| 22 | Q. (By Ms. Lai) To clarify, is it your | 11:54:56 |
| 23 | position that license servers all have keyboards and | |
| 24 | mouses? | |
| 25 | MR. ELDESSOUKI: Objection. Misstates | 11:55:02 |

Page 93

| | |
|---|---|
| 1 | prior testimony and calls for an incomplete hypothetical. |
| 2 |     A.   They might.  I mean, it's -- it's a -- it's    11:55:08 |
| 3 | a server setting inside a data center somewhere, so -- |
| 4 | again, you could envision one of those.  I mean, it's a |
| 5 | computer.  It's a server.  So if you ever need to maintain |
| 6 | it or do something, you might do it through a keyboard or |
| 7 | a mouse on -- connected directly to that -- to that |
| 8 | server. |
| 9 |     Q.   (By Ms. Lai)  Were you imagining a kiosk    11:55:27 |
| 10 | that was locked away in a storage room? |
| 11 |     MR. ELDESSOUKI:  Objection.  Vague.  And it    11:55:34 |
| 12 | calls for a legal conclusion.  And outside the scope. |
| 13 |     A.   I mean, we kind of -- any form of kiosk --    11:55:43 |
| 14 | I mean, you know, whatever function that kiosk is doing, |
| 15 | which I say covered that whole gamut of things from, you |
| 16 | know -- so -- so could have been, may not have been. |
| 17 | Again, it depends on what that specific kiosk function was |
| 18 | to do. |
| 19 |     Q.   (By Ms. Lai)  Now, turning back to claim 1,    11:56:14 |
| 20 | the 400 patent also says that the kiosk communicates with |
| 21 | "a plurality of portable storage devices." |
| 22 |     What is your understanding of a "portable    11:56:28 |
| 23 | data storage device"? |
| 24 |     MR. ELDESSOUKI:  Objection.  Calls for a    11:56:33 |
| 25 | legal conclusion.  And outside the scope of the 30(b)(6). |

Page 94

```
 1              A.   Yeah.  A portable data storage device could   11:56:44
 2   be, you know, like a -- a USB attached disc drive.  It
 3   could be an SD card.  It could be an SD drive.  It could
 4   even be a network attached storage.
 5              So yeah -- so, yeah, I mean, it's very           11:57:00
 6   broad -- a very broad term.  Right?
 7              Q.   (By Ms. Lai)  Now, what do you understand   11:57:07
 8   to be the difference between a storage device and a
 9   portable storage device?
10              MR. ELDESSOUKI:  Objection.  Lacks              11:57:16
11   foundation.  Calls for a legal conclusion.  And outside
12   the scope.
13              A.   Yeah.  Like he said, again, I'm not a       11:57:26
14   lawyer to define that.  But I mean, I would -- so maybe
15   your -- the -- the storage device that's embedded in your
16   tablet -- you know, again, the tablet is portable, so --
17   you know, again, you could debate whether that means the
18   storage device is portable or not.
19              Or maybe the -- the SSD drive in your           11:57:46
20   desktop PC is not -- not very portable, but where your USB
21   drive -- you know, that, you can stick in your pocket or
22   your -- your SD card or something like that.  Again -- but
23   this is just very broad -- broad terms of, you know, what
24   I would think of.
25              Q.   (By Ms. Lai)  As an engineer, would you say 11:58:01
```

Page 95

```
 1    that a tablet is a portable storage device?
 2                    MR. ELDESSOUKI:  Objection.  Calls for a      11:58:07
 3    legal conclusion.  Incomplete hypothetical.  And outside
 4    the scope.
 5            A.   Yeah.  At some level, yes.                       11:58:13
 6            Q.   (By Ms. Lai)  And would you say a cellphone      11:58:15
 7    is a portable storage device?
 8            A.   Yes.                                             11:58:19
 9                    MR. ELDESSOUKI:  Objection.                   11:58:20
10            Q.   (By Ms. Lai)  Would you say that --              11:58:20
11                    MR. ELDESSOUKI:  Calls for a legal            11:58:20
12    conclusion.  Incomplete hypothetical and outside the
13    scope.
14            Q.   (By Ms. Lai)  Would you say that a laptop        11:58:25
15    is a portable storage device?
16                    MR. ELDESSOUKI:  Same objections.             11:58:28
17            A.   Yeah.  It certainly could be considered          11:58:31
18    that, I guess.
19            Q.   (By Ms. Lai)  Now, if your cellphone was         11:58:34
20    bolted to the wall, would you say that it is easily
21    movable?
22                    MR. ELDESSOUKI:  Objection.  Incomplete       11:58:42
23    hypothetical.  Calls for a legal conclusion.  Outside the
24    scope.
25            A.   I guess it depends on how well it's bolted       11:58:49
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

```
 1    to the wall.
 2            Q.   (By Ms. Lai)  What would you say?  As an      11:58:53
 3    engineer, if your cellphone was bolted to the wall --
 4            A.   I would unbolt -- I would unbolt it and --    11:59:01
 5            MR. ELDESSOUKI:  Wait.                             11:59:03
 6            A.   -- then it's portable.                        11:59:03
 7            Q.   (By Ms. Lai)  Did you finish your answer?     11:59:06
 8            A.   Sorry.  I didn't mean to interrupt you.       11:59:08
 9            MR. ELDESSOUKI:  Yeah.  I -- I was just            11:59:10
10    going to say asked and answered and calls for a legal
11    conclusion.  Outside the scope.
12            Q.   (By Ms. Lai)  Now, if your tablet was         11:59:18
13    screwed into this marble conference room table, would you
14    consider it easily movable?
15            MR. ELDESSOUKI:  Objection.  Incomplete            11:59:28
16    hypothetical.  Calls for a legal conclusion.  Outside the
17    scope.  And asked and answered.
18            A.   I mean, it all depends how easily you can     11:59:36
19    unbolt it.  Right?  I mean --
20            Q.   (By Ms. Lai)  And if your laptop was 3 feet   11:59:40
21    tall and weighed 30 pounds, would you say it's easily
22    movable?
23            MR. ELDESSOUKI:  Same objections.                  11:59:48
24            A.   Does it have a handle on it to hold on to?    11:59:51
25            Q.   (By Ms. Lai)  No handle.                      11:59:53
```

Page 97

```
 1              MR. ELDESSOUKI:  Same objections.              11:59:56

 2        A.    Yeah.  I mean -- yeah, 30 pounds is still      11:59:57

 3   pretty easily movable.

 4        Q.    (By Ms. Lai)  Okay.  Would you consider it     12:00:04

 5   easily movable?

 6              MR. ELDESSOUKI:  Same objections.              12:00:08

 7        A.    Yeah.  That's -- again, it might be easier     12:00:11

 8   for me to move it than somebody else here, but -- but yes,

 9   it's still pretty easy to move.

10        Q.    (By Ms. Lai)  So it depends on the person;     12:00:20

11   right?

12        A.    Yeah.  Yeah.                                   12:00:22

13        Q.    Yeah.  Now, you didn't invent portable         12:00:23

14   storage devices; right?

15        A.    Right.                                         12:00:27

16        Q.    And you didn't invent the process of           12:00:28

17   communicating with a portable storage device; right?

18              MR. ELDESSOUKI:  Objection.  Vague.  Lacks     12:00:34

19   foundation as to "the process."

20        A.    You know, that depends what you mean by        12:00:40

21   communicating with a portable storage device.

22        Q.    (By Ms. Lai)  Did you invent the very first    12:00:45

23   instance of communication with a portable storage device?

24        A.    Again, there --                                12:00:52

25              MR. ELDESSOUKI:  Objection.  Same -- asked     12:00:52
```

Page 98

```
 1    and answered.  Incomplete hypothetical.  Lacks foundation.
 2         A.   Yeah.  So there's different -- different          12:00:58
 3    levels -- levels of communication with a portable storage
 4    device.  So, you know, if it's a -- if it's a USB drive,
 5    you send SCSI commands, redrive blocks.
 6              But the SCSA protocol used that exact same        12:01:11
 7    interface.  I mean, we defined a communication protocol,
 8    so we -- we invented that protocol to do the -- the secure
 9    stuff with the portable storage device.
10         Q.   (By Ms. Lai)  I understand there's                12:01:23
11    different communication protocols with portable storage
12    devices, but I'm asking did you invent the very first
13    communication protocol of any sort with a portable storage
14    device?
15              MR. ELDESSOUKI:  Objection.  Asked and            12:01:34
16    answered.  Incomplete hypothetical.  Calls for a legal
17    conclusion.  Outside the scope.
18         A.   Yeah.  All of that.  But yeah.  No.               12:01:42
19         Q.   (By Ms. Lai)  So to clar -- you said no?          12:01:45
20         A.   No.  Yeah.  I mean, you could talk to your        12:01:47
21    USB drive, you know, way before I started working on USB
22    drives.
23         Q.   Now, turning back to the 400 patent, the          12:01:54
24    kiosk -- excuse me.  The 400 patent says that the kiosk
25    communicates with a remote trusted server.
```

Page 99