# EXHIBIT O

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY

```
 1              IN THE UNITED STATES DISTRICT COURT
 2           FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3                       OAKLAND DIVISION
 4   SANDISK TECHNOLOGIES, INC.    ) Case No.  4:22-cv-4376-HSG
     et al.,                       )
 5                                 )
           Plaintiffs,             )
 6                                 )
         vs.                       )
 7                                 )
     VIASAT, INC.,                 )
 8                                 )
           Defendant.              )
 9   _____)
10      HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY VIDEOTAPED
11         30(b)(6) DEPOSITION OF LAMBERTUS HESSELINK
12                     Palo Alto, California
13                   Tuesday, February 4, 2025
14
15
16              REPORTED BY: Derek L. Hoagland
17                      CSR No. 13445
```

Page 1

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY

```
1              IN THE UNITED STATES DISTRICT COURT
2            FOR THE NORTHERN DISTRICT OF CALIFORNIA
3                        OAKLAND DIVISION
4    SANDISK TECHNOLOGIES, INC.    ) Case No.  4:22-cv-4376-HSG
     et al.,                       )
5                                  )
            Plaintiffs,             )
6                                  )
          vs.                       )
7                                  )
     VIASAT, INC.,                  )
8                                  )
            Defendant.              )
9    _____)
10
11
12   Videotaped 30(b)(6) Deposition of LAMBERTUS HESSELINK,
13   taken before Derek L. Hoagland, a Certified Shorthand
14   Reporter for the State of California, commencing at 9:39
15   a.m., Tuesday, February 4, 2025, at Gibson Dunn, Palo
16   Alto, California.
17
18
19
20
21
22
23
24
25
                                                       Page 2
```

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | 9:39 a.m.          P R O C E E D I N G S | |
| 2 | | |
| 3 | THE VIDEOGRAPHER:  Good morning.  We are now on | 09:39:10 |
| 4 | the record.  The time is 9:39 a.m.  Today's date is | 09:39:11 |
| 5 | February 4th, 2025.  This marks the beginning of Media | 09:39:18 |
| 6 | File No. 1 in the deposition of Dr. Lambertus Hesselink | 09:39:22 |
| 7 | in the matter of SanDisk Technologies, Inc., et al. | 09:39:30 |
| 8 | versus Viasat, Inc. in the United States District Court | 09:39:34 |
| 9 | for the Northern District of California, Oakland | 09:39:38 |
| 10 | Division, Case No. 4:22-cv-04376-HSG. | 09:39:42 |
| 11 | We are located at Gibson Dunn, 310 University | 09:39:53 |
| 12 | Avenue, Palo Alto, California.  My name is | 09:39:57 |
| 13 | Marcus Majers, the videographer with Veritext Legal | 09:40:00 |
| 14 | Solutions.  The court reporter today is Derek Hoagland, | 09:40:03 |
| 15 | also with Veritext Legal Solutions. | 09:40:06 |
| 16 | Will all counsel present please introduce | 09:40:08 |
| 17 | themselves and state whom they represent. | 09:40:11 |
| 18 | MS. LAI:  Alicia Lai from Quinn Emanuel on | 09:40:13 |
| 19 | behalf of Viasat. | 09:40:15 |
| 20 | MS. MAO:  Lillian Mao of Gibson Dunn & Crutcher | 09:40:16 |
| 21 | on behalf of Plaintiffs and the witness. | 09:40:21 |
| 22 | THE VIDEOGRAPHER:  Thank you. | 09:40:23 |
| 23 | Will the court reporter please swear in the | 09:40:24 |
| 24 | doctor. | 09:40:25 |
| 25 | (Whereupon, the deponent is duly sworn by the | 09:40:36 |

| | | |
|---|---|---|
| 1 | court reporter.) | 09:40:36 |
| 2 | MS. LAI:  Good morning, Professor Hesselink.  We | 09:40:37 |
| 3 | met off the record, but my name is Alicia Lai.  I | 09:40:39 |
| 4 | represent Viasat, and I will just be asking you a few | 09:40:43 |
| 5 | questions today. | 09:40:46 |
| 6 | To start with, could you please state your name | 09:40:47 |
| 7 | for the record. | 09:40:49 |
| 8 | THE DEPONENT:  Lambertus Hesselink. | 09:40:50 |
| 9 | | |
| 10 | LAMBERTUS HESSELINK, | |
| 11 | having first been duly sworn, | |
| 12 | was examined and testified as follows: | |
| 13 | | |
| 14 | EXAMINATION | |
| 15 | BY MS. LAI: | 09:40:50 |
| 16 | Q.    And, Professor Hesselink, have you ever been | 09:40:50 |
| 17 | deposed before? | 09:40:55 |
| 18 | A.    Yes. | 09:40:56 |
| 19 | Q.    And when were you previously deposed? | 09:40:57 |
| 20 | A.    I'm sorry? | 09:40:59 |
| 21 | Q.    When were you previously deposed? | 09:40:59 |
| 22 | A.    Over the last 40 years? | 09:41:01 |
| 23 | Q.    Yes. | 09:41:05 |
| 24 | A.    Started in 1985, and it -- and the last one I | 09:41:06 |
| 25 | was deposed was -- I think it was probably about a | 09:41:14 |

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | couple of years ago. | 09:41:21 |
| 2 | Q.     And how many times, approximately, have you been | 09:41:22 |
| 3 | deposed? | 09:41:25 |
| 4 | A.     Well, I don't keep track of those things, I have | 09:41:26 |
| 5 | to tell you.  But I would think it is somewhere between | 09:41:31 |
| 6 | 40 and 50 times. | 09:41:36 |
| 7 | Q.     And was Western Digital or SanDisk involved in | 09:41:37 |
| 8 | any of those depositions? | 09:41:41 |
| 9 | A.     No. | 09:41:42 |
| 10 | Q.     Okay.  And were those depositions involving | 09:41:43 |
| 11 | patent litigation? | 09:41:46 |
| 12 | A.     Yes, primarily. | 09:41:47 |
| 13 | Q.     And did any of the patents concern content | 09:41:49 |
| 14 | storage? | 09:41:55 |
| 15 | MS. MAO:  Objection.  Vague. | 09:41:58 |
| 16 | THE DEPONENT:  Did they concern what kind of | 09:41:59 |
| 17 | storage? | 09:42:01 |
| 18 | BY MS. LAI: | 09:42:01 |
| 19 | Q.     Media content storage? | 09:42:02 |
| 20 | MS. MAO:  Same objection. | 09:42:04 |
| 21 | THE DEPONENT:  Yes. | 09:42:05 |
| 22 | BY MS. LAI: | 09:42:05 |
| 23 | Q.     Were you -- any of -- strike that. | 09:42:08 |
| 24 | Were you a named inventor on any of those | 09:42:11 |
| 25 | patents? | 09:42:14 |

Page 7

| | | |
|---|---|---|
| 1 | A.     No. | 09:42:15 |
| 2 | Q.     Okay.  Now I'll just briefly go over some of the | 09:42:15 |
| 3 | ground rules for depositions, although I know you're | 09:42:19 |
| 4 | very familiar already. | 09:42:22 |
| 5 |         Generally, let's try not to speak over each | 09:42:23 |
| 6 | other.  So let me finish asking a question before you | 09:42:25 |
| 7 | answer.  Is that okay with you? | 09:42:28 |
| 8 | A.     Yes. | 09:42:29 |
| 9 | Q.     If you don't understand a question, will you let | 09:42:30 |
| 10 | me know? | 09:42:34 |
| 11 | A.     Yes. | 09:42:34 |
| 12 | Q.     And if you answer, I will assume you understood | 09:42:34 |
| 13 | the question.  Is that fair? | 09:42:38 |
| 14 | A.     I think that's fair. | 09:42:40 |
| 15 | Q.     And is there any reason you can't give your | 09:42:41 |
| 16 | complete and honest testimony today? | 09:42:44 |
| 17 | A.     No. | 09:42:46 |
| 18 | Q.     And you understand you're testifying under oath | 09:42:47 |
| 19 | here today just as if you were testifying in court, | 09:42:51 |
| 20 | right? | 09:42:51 |
| 21 | A.     Correct. | 09:42:54 |
| 22 | Q.     Now, do you understand that you've been | 09:42:54 |
| 23 | designated by SanDisk to testify as to certain topics on | 09:42:57 |
| 24 | behalf of SanDisk? | 09:43:02 |
| 25 | A.     Correct. | 09:43:04 |

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

| | | |
|---|---|---|
| 1 | university. | 09:47:57 |
| 2 | Q. Did you obtain any advanced degrees after that? | 09:47:58 |
| 3 | A. I obtained a master's degree from Caltech and a | 09:48:03 |
| 4 | Ph.D. from Caltech. | 09:48:06 |
| 5 | Q. And what subject were those degrees in? | 09:48:08 |
| 6 | A. Those were engineering and physics. | 09:48:12 |
| 7 | Q. And what was your first job out of college? | 09:48:13 |
| 8 | A. The first job was a consulting job at Hughes | 09:48:17 |
| 9 | Aircraft. | 09:48:26 |
| 10 | Q. And what did your job responsibilities there | 09:48:26 |
| 11 | consist of? | 09:48:29 |
| 12 | A. I was involved in analyzing and writing programs | 09:48:30 |
| 13 | for the analysis of land set sea data. | 09:48:39 |
| 14 | Q. And what years were you at that consulting job? | 09:48:43 |
| 15 | A. That was from 1977 to 1980. | 09:48:46 |
| 16 | Q. And what was your next job after that? | 09:48:51 |
| 17 | A. I went to Stanford University. | 09:48:55 |
| 18 | Q. And what position did you hold there? | 09:49:01 |
| 19 | A. I was an assistant professor. | 09:49:02 |
| 20 | Q. And what was your job responsibilities as an | 09:49:04 |
| 21 | assistant professor at Stanford? | 09:49:08 |
| 22 | A. Well, teaching, research, being involved in | 09:49:10 |
| 23 | management, the usual things that you have to do for a | 09:49:17 |
| 24 | college professor. | 09:49:22 |
| 25 | Q. When you say teaching, what courses did you | 09:49:24 |

| | | |
|---|---|---|
| 1 | ways. | 14:06:00 |
| 2 | Q. And right below that, on lines 41 it 43, it | 14:06:00 |
| 3 | states that: | 14:06:07 |
| 4 | "The kiosk may comprise various user interface | 14:06:07 |
| 5 | equipment, such as a keyboard, display, et cetera, to | 14:06:10 |
| 6 | allow the use of a kiosk. | 14:06:12 |
| 7 | Do you see that? | 14:06:12 |
| 8 | A. Yes. | 14:06:15 |
| 9 | Q. Why was it important to you that the kiosk | 14:06:16 |
| 10 | was -- strike that. | 14:06:21 |
| 11 | Why was it important to you that the kiosk | 14:06:21 |
| 12 | comprise various user interface equipment? | 14:06:26 |
| 13 | MS. MAO: Objection. Vague. Misstates -- | 14:06:29 |
| 14 | mischaracterizes the document. | 14:06:32 |
| 15 | THE DEPONENT: On the -- nowhere do I see the | 14:06:36 |
| 16 | word that it's important to do this. It just says that | 14:06:38 |
| 17 | one of the ways this can be done, to make sure that the | 14:06:42 |
| 18 | reader understands what the intention is of this patent, | 14:06:45 |
| 19 | it says the kiosk 106 may comprise various user | 14:06:50 |
| 20 | interface equipment. So one of them is that you could | 14:06:55 |
| 21 | use a keyboard. Another is a display. Another one | 14:06:58 |
| 22 | might be that there is maybe a microphone in there. You | 14:07:02 |
| 23 | can talk to the machine and it will allow you to, you | 14:07:05 |
| 24 | know, carry out certain transactions, which essentially | 14:07:08 |
| 25 | is captured there to allow use of the kiosk. So it's | 14:07:12 |

Page 133

| | | |
|---|---|---|
| 1 | the human machine interface. | 14:07:18 |
| 2 | BY MS. LAI: | 14:07:19 |
| 3 | Q.    Now, turning back to claim 1 on the very last | 14:07:21 |
| 4 | page, it says that: | 14:07:23 |
| 5 | "The kiosk communicates with a plurality of | 14:07:28 |
| 6 | portable data storage devices." | 14:07:31 |
| 7 | What is your understanding as to what portable | 14:07:34 |
| 8 | data storage devices is referring to? | 14:07:36 |
| 9 | MS. MAO:  Objection.  Calls for a legal | 14:07:39 |
| 10 | conclusion.  Calls for expert testimony. | 14:07:42 |
| 11 | THE DEPONENT:  Well, I've given you, I think, | 14:07:47 |
| 12 | through this deposition, a number of examples what we | 14:07:50 |
| 13 | had in mind.  So these would be a portable hard drive. | 14:07:53 |
| 14 | It would be a portable player.  It could be a computer | 14:08:02 |
| 15 | terminal.  It could be a computer device that you had in | 14:08:09 |
| 16 | your home.  And it could be part of a display, your | 14:08:14 |
| 17 | television display or a portable player or any type of | 14:08:23 |
| 18 | kind of display that was available to a user without | 14:08:33 |
| 19 | having to go to, for example, a set of processors in a | 14:08:41 |
| 20 | data center where the original digital data would | 14:08:49 |
| 21 | emanate from.  So that was a fixed non-accessible | 14:08:55 |
| 22 | storage device, whereas all the others were essentially | 14:09:02 |
| 23 | devices that would provide visual information to the | 14:09:05 |
| 24 | user. | 14:09:10 |
| 25 | /// | 14:09:10 |

Page 134

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | BY MS. LAI: | 14:09:10 |
| 2 | Q.      Can you provide some examples of storage devices | 14:09:13 |
| 3 | that are not portable? | 14:09:17 |
| 4 | A.      Storage devices that are what? | 14:09:19 |
| 5 | Q.      That are not portable.  Can you provide some | 14:09:24 |
| 6 | examples of storage devices that are not portable? | 14:09:27 |
| 7 | A.      Yeah.  Like I said, you know, a storage device | 14:09:29 |
| 8 | in a data center is not operable, that's in Iraq, and I | 14:09:31 |
| 9 | can't get access to it, and it is essentially a server | 14:09:35 |
| 10 | or a server farm, and they are specifically connected to | 14:09:40 |
| 11 | processors, many of them, and may or may not even know | 14:09:47 |
| 12 | which processor or storage device are connected. | 14:09:49 |
| 13 | Q.      Now, looking back to the language of claim 1, it | 14:09:51 |
| 14 | also says that: | 14:09:57 |
| 15 | "The kiosk comprises of a second data interface | 14:09:58 |
| 16 | configured to communicate over a network with a remote | 14:10:03 |
| 17 | trusted server." | 14:10:06 |
| 18 | What is your understanding of what a remote | 14:10:07 |
| 19 | trusted server is? | 14:10:09 |
| 20 | MS. MAO:  Objection.  Calls for a legal | 14:10:11 |
| 21 | conclusion.  Calls for expert testimony. | 14:10:12 |
| 22 | THE DEPONENT:  What is my understanding of? | 14:10:15 |
| 23 | BY MS. LAI: | 14:10:20 |
| 24 | Q.      What is your understanding of what a remote | 14:10:20 |
| 25 | trusted server is? | 14:10:24 |

Page 135