# EXHIBIT C

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| SANDISK TECHNOLOGIES, INC., et. al.,<br><br>Plaintiffs,<br><br>v.<br><br>VIASAT, INC.,<br><br>Defendant. | Case No.: 4:22-cv-4376-HSG |

**OPENING REPORT OF KEVIN C. ALMEROTH, Ph.D.**
**REGARDING INVALIDITY OF AND NON-INFRINGING ALTERNATIVES TO U.S.**
**PATENT NOS. 9,424,400 & 10,447,667**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................................1

II. SUMMARY OF OPINIONS ..................................................................................................2

III. QUALIFICATIONS ................................................................................................................2

IV. LEVEL OF ORDINARY SKILL IN THE ART ...................................................................11

V. LEGAL STANDARDS .........................................................................................................12

    A. Prior Art ....................................................................................................................12

    B. Anticipation Under 35 U.S.C. § 102 .........................................................................13

    C. Obviousness Under 35 U.S.C. § 103 ........................................................................14

VI. TECHNICAL BACKGROUND ...........................................................................................17

    A. The Internet ...............................................................................................................17

    B. Network Protocols ....................................................................................................19

    C. Protocol Layering and Network Stacks ....................................................................20

    D. Network Architecture ...............................................................................................27

    E. A Day in the Life of a Packet ...................................................................................32

    F. DRM Solutions .........................................................................................................36

VII. OVERVIEW OF THE ASSERTED PATENTS ...................................................................38

    A. The '400 Patent .........................................................................................................38

    B. The '667 Patent .........................................................................................................39

VIII. CLAIM CONSTRUCTION ..................................................................................................40

IX. SUMMARY OF THE CITED PRIOR ART REFERENCES ...............................................41

    A. The '400 Patent .........................................................................................................41

        1. U.S. Patent No. 8,600,062 ("Rae") ...............................................................41

        2. U.S. Patent No. 2008/0279533 ("Buttars") ..................................................42

        3. U.S. Patent No. 2003/0014630 ("Spencer") .................................................42

    B.    The '667 Patent ..................................................................................................43

        1.    U.S. Patent Pub. No. 2003/0001978 ("Smith") .........................................43

        2.    U.S. Patent Pub. No. 2010/0325675 ("Smoyer") ......................................43

        3.    The SCSA System ......................................................................................44

        4.    The DirecTV DVR Systems .......................................................................49

        5.    The DISH DVR Systems ............................................................................51

        6.    The TiVo DVR System ...............................................................................55

X.    INVALIDITY ANALYSIS ...........................................................................................57

    A.    The '400 Patent ..................................................................................................57

        1.    U.S. Patent No. 8,600,062 ("Rae") .............................................................57

            a)    Claim 1 of the '400 Patent is anticipated and rendered obvious by Rae ..................................................................60

            b)    Claim 2 of the '400 Patent is anticipated and rendered obvious by Rae ..................................................................75

            c)    Claim 6 of the '400 Patent is anticipated and rendered obvious by Rae ..................................................................76

            d)    Claim 8 of the '400 Patent is anticipated and rendered obvious by Rae ..................................................................76

            e)    Claim 9 of the '400 Patent is anticipated and rendered obvious by Rae ..................................................................77

            f)    Claim 10 of the '400 Patent is anticipated and rendered obvious by Rae ..................................................................78

            g)    Claim 13 of the '400 Patent is anticipated and rendered obvious by Rae ..................................................................78

            h)    Claim 17 of the '400 Patent is anticipated and rendered obvious by Rae ..................................................................78

        2.    U.S. Patent No. 2008/0279533 ("Buttars") .................................................78

            a)    Claim 1 of the '400 Patent is anticipated and rendered obvious by Buttars. ..........................................................79

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

|   |   |   |   |
|---|---|---|---|
| | b) | Claim 2 of the '400 Patent is anticipated and rendered obvious by Buttars. | 95 |
| | c) | Claim 6 of the '400 Patent is anticipated and rendered obvious by Buttars. | 95 |
| | d) | Claim 8 of the '400 Patent is anticipated and rendered obvious by Buttars. | 97 |
| | e) | Claim 9 of the '400 Patent is anticipated and rendered obvious by Buttars. | 98 |
| | f) | Claim 10 of the '400 Patent is anticipated and rendered obvious by Buttars. | 99 |
| | g) | Claim 13 of the '400 Patent is anticipated and rendered obvious by Buttars. | 99 |
| | h) | Claim 17 of the '400 Patent is anticipated and rendered obvious by Buttars. | 99 |
| B. | The '667 Patent | | 100 |
| | 1. U.S. Patent Pub. No. 2003/0001978 ("Smith") | | 100 |
| | a) | Claim 1 of the '667 Patent is anticipated and rendered obvious by Smith. | 100 |
| | b) | Claim 2 of the '667 Patent is anticipated and rendered obvious by Smith. | 112 |
| | c) | Claim 3 of the '667 Patent is anticipated and rendered obvious by Smith. | 113 |
| | d) | Claim 4 of the '667 Patent is anticipated and rendered obvious by Smith. | 114 |
| | e) | Claim 5 of the '667 Patent is anticipated and rendered obvious by Smith. | 116 |
| | f) | Claim 6 of the '667 Patent is anticipated and rendered obvious by Smith. | 116 |
| | g) | Claim 7 of the '667 Patent is anticipated and rendered obvious by Smith. | 117 |
| | h) | Claim 11 of the '667 Patent is anticipated and rendered obvious by Smith. | 118 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | | |
|---|---|---|---:|
| | i) | Claim 12 of the '667 Patent is anticipated and rendered obvious by Smith. | 119 |
| | j) | Claim 13 of the '667 Patent is anticipated and rendered obvious by Smith. | 119 |
| | k) | Claim 14 of the '667 Patent is anticipated and rendered obvious by Smith. | 119 |
| | l) | Claim 15 of the '667 Patent is anticipated and rendered obvious by Smith. | 119 |
| | m) | Claim 16 of the '667 Patent is anticipated and rendered obvious by Smith. | 120 |
| 2. | | U.S. Patent Pub. No. 2010/0325675 ("Smoyer") | 120 |
| | a) | Claim 1 of the '667 Patent is anticipated and rendered obvious by Smoyer. | 120 |
| | b) | Claim 2 of the '667 Patent is anticipated and rendered obvious by Smoyer. | 129 |
| | c) | Claim 3 of the '667 Patent is anticipated and rendered obvious by Smoyer. | 130 |
| | d) | Claim 4 of the '667 Patent is anticipated and rendered obvious by Smoyer. | 130 |
| | e) | Claim 5 of the '667 Patent is anticipated and rendered obvious by Smoyer. | 132 |
| | f) | Claim 6 of the '667 Patent is anticipated and rendered obvious by Smoyer. | 133 |
| | g) | Claim 7 of the '667 Patent is anticipated and rendered obvious by Smoyer. | 135 |
| | h) | Claim 11 of the '667 Patent is anticipated and rendered obvious by Smoyer. | 136 |
| | i) | Claim 12 of the '667 Patent is anticipated and rendered obvious by Smoyer. | 137 |
| | j) | Claim 13 of the '667 Patent is anticipated and rendered obvious by Smoyer. | 137 |
| | k) | Claim 14 of the '667 Patent is anticipated and rendered obvious by Smoyer. | 137 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

|   |   |   |   |
|---|---|---|---|
|   | l) | Claim 15 of the '667 Patent is anticipated and rendered obvious by Smoyer. | 138 |
|   | m) | Claim 16 of the '667 Patent is anticipated and rendered obvious by Smoyer. | 138 |
| 3. |   | The SCSA System | 138 |
|   | a) | Claim 1 of the '667 Patent is anticipated and rendered obvious by the SCSA System | 138 |
|   | b) | Claim 2 of the '667 Patent is anticipated and rendered obvious by the SCSA System | 146 |
|   | c) | Claim 3 of the '667 Patent is anticipated and rendered obvious by the SCSA System | 146 |
|   | d) | Claim 4 of the '667 Patent is anticipated and rendered obvious by the SCSA System | 147 |
|   | e) | Claim 5 of the '667 Patent is anticipated and rendered obvious by the SCSA System | 147 |
|   | f) | Claim 6 of the '667 Patent is anticipated and rendered obvious by the SCSA System | 148 |
|   | g) | Claim 7 of the '667 Patent is anticipated and rendered obvious by the SCSA System | 149 |
|   | h) | Claim 11 of the '667 Patent is anticipated and rendered obvious by the SCSA System | 149 |
|   | i) | Claim 12 of the '667 Patent is anticipated and rendered obvious by the SCSA System | 150 |
|   | j) | Claim 13 of the '667 Patent is anticipated and rendered obvious by the SCSA System | 151 |
|   | k) | Claim 14 of the '667 Patent is anticipated and rendered obvious by the SCSA System | 151 |
|   | l) | Claim 15 of the '667 Patent is anticipated and rendered obvious by the SCSA System | 151 |
|   | m) | Claim 16 of the '667 Patent is anticipated and rendered obvious by the SCSA System | 151 |
| 4. |   | The DirecTV DVR Systems | 152 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | | |
|---|---|---|---|
| | a) | Claim 1 of the '667 Patent is anticipated and rendered obvious by the DirecTV DVR Systems | 152 |
| | b) | Claim 2 of the '667 Patent is anticipated and rendered obvious by the DirecTV DVR Systems | 158 |
| | c) | Claim 3 of the '667 Patent is anticipated and rendered obvious by the DirecTV DVR Systems | 159 |
| | d) | Claim 4 of the '667 Patent is anticipated and rendered obvious by the DirecTV DVR Systems | 160 |
| | e) | Claim 5 of the '667 Patent is anticipated and rendered obvious by the DirecTV DVR Systems | 161 |
| | f) | Claim 6 of the '667 Patent is anticipated and rendered obvious by the DirecTV DVR Systems | 161 |
| | g) | Claim 7 of the '667 Patent is anticipated and rendered obvious by the DirecTV DVR Systems | 162 |
| | h) | Claim 11 of the '667 Patent is anticipated and rendered obvious by the DirecTV DVR Systems | 163 |
| | i) | Claim 12 of the '667 Patent is anticipated and rendered obvious by the DirecTV DVR Systems | 164 |
| | j) | Claim 13 of the '667 Patent is anticipated and rendered obvious by the DirecTV DVR Systems | 164 |
| | k) | Claim 14 of the '667 Patent is anticipated and rendered obvious by the DirecTV DVR Systems | 164 |
| | l) | Claim 15 of the '667 Patent is anticipated and rendered obvious by the DirecTV DVR Systems | 165 |
| | m) | Claim 16 of the '667 Patent is anticipated and rendered obvious by the DirecTV DVR Systems | 165 |
| 5. | | The DISH DVR Systems | 165 |
| | a) | Claim 1 of the '667 Patent is anticipated and rendered obvious by the DISH DVR Systems | 165 |
| | b) | Claim 2 of the '667 Patent is anticipated and rendered obvious by the DISH DVR Systems | 173 |
| | c) | Claim 3 of the '667 Patent is anticipated and rendered obvious by the DISH DVR Systems | 174 |

|  |  | d) | Claim 4 of the '667 Patent is anticipated and rendered obvious by the DISH DVR Systems............................................174 |
|---|---|---|---|
|  |  | e) | Claim 5 of the '667 Patent is anticipated and rendered obvious by the DISH DVR Systems............................................176 |
|  |  | f) | Claim 6 of the '667 Patent is anticipated and rendered obvious by the DISH DVR Systems............................................177 |
|  |  | g) | Claim 7 of the '667 Patent is anticipated and rendered obvious by the DISH DVR Systems............................................177 |
|  |  | h) | Claim 11 of the '667 Patent is anticipated and rendered obvious by the DISH DVR Systems............................................179 |
|  |  | i) | Claim 12 of the '667 Patent is anticipated and rendered obvious by the DISH DVR Systems............................................180 |
|  |  | j) | Claim 13 of the '667 Patent is anticipated and rendered obvious by the DISH DVR Systems............................................180 |
|  |  | k) | Claim 14 of the '667 Patent is anticipated and rendered obvious by the DISH DVR Systems............................................181 |
|  |  | l) | Claim 15 of the '667 Patent is anticipated and rendered obvious by the DISH DVR Systems............................................181 |
|  |  | m) | Claim 16 of the '667 Patent is anticipated and rendered obvious by the DISH DVR Systems............................................181 |

XI. LACK OF SECONDARY CONSIDERATIONS OF NON-OBVIOUSNESS...............181

XII. NON-INFRINGING ALTERNATIVES .......................................................................182

    A. The '400 Patent................................................................................................182

        1. Substituting or Publicizing Any Concealed Unique Identifiers...............182

        2. Localizing Any Remote Trusted Servers.................................................184

        3. Not Providing Any Corresponding Access Key .....................................186

    B. The '667 Patent................................................................................................188

        1. Removing The "Encrypted" Boolean .....................................................188

        2. Unencrypting Storage Drives..................................................................191

XIII. CONCLUSION..............................................................................................................192

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**I.     INTRODUCTION[1]**

1. I, Kevin Almeroth, Ph.D., have been retained by counsel on behalf of Viasat, Inc. as an expert in this litigation. I have prepared this Report at the request of Viasat and its counsel. This Report provides my opinions on invalidity of the claims of U.S. Patent Nos. 9,424,400 (the "'400 Patent") and 10,447,667 (the "'667 Patent") (collectively, the "Asserted Patents") asserted by Plaintiffs Sandisk Technologies, Inc., SanDisk 3D IP Holdings Ltd., SanDisk Technologies LLC, and SanDisk Storage Malaysia Sdn. Bhd. (collectively, "SanDisk" or "Plaintiffs"). This Report also provides my opinions on certain non-infringing alternatives to the Asserted Patents.

2. I am being compensated at my standard billing rate of $800 per hour for time spent on this matter, plus reasonable out-of-pocket expenses. I have received no additional compensation for my work in this litigation. My compensation does not depend upon the contents of this Report, any testimony that I may provide, or the ultimate outcome of this litigation.

3. I expect to be called to provide expert testimony regarding opinions formed based on my analysis of the issues considered in this Report. I may also discuss my own work and publications in the field and knowledge of the state of the art in the relevant time period. I may rely on handbooks, textbooks, technical literature, and the like to demonstrate the state of the art in the relevant time period and the evolution of relevant technologies. I reserve the right to modify or supplement my opinions, as well as the basis for my opinions, based on the nature and content of the documentation, data, proof, and other evidence or testimony that Plaintiffs or their expert(s) may present, or based on any additional discovery or other information provided to me or found by me in this matter. All of the opinions stated in this Report are based on my current personal

---

[1] Headings in this document are not intended to limit the scope of my opinions within those sections. Section headings are inserted for the purpose of convenience only and are not intended to affect the meaning or interpretation my opinions. For example, the headings are not intended to limit my opinions, evidence, or analysis to a particular legal issue and/or claim term.

1

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

knowledge and professional judgment, and if called as a witness during the hearing in this matter, I am prepared to testify competently about them. I reserve the right to use and rely on certain demonstratives to do so. I also reserve the right to amend and/or supplement this Report should additional information or developments that may affect my opinions become available.

4. In reaching the conclusions described herein, I have considered the documents and materials identified and/or cited in this Report, as well as the materials listed in Exhibit B. My opinions are also based upon my education, training, research, knowledge, and personal and professional experience.

5. It is my understanding that Plaintiffs may submit an expert report responding to this Report. I reserve the right to rebut any positions taken in that report.

## II. SUMMARY OF OPINIONS

6. It is my opinion that the prior art references and systems discussed in this Report anticipate and/or render obvious the asserted claims of the Asserted Patents.

7. It is my opinion that there are no secondary considerations of non-obviousness of the Asserted Patents.

8. It is my opinion that the hypothetical alternative designs discussed herein, which I have considered and evaluated based on Viasat's responses to Plaintiffs' interrogatories in this lawsuit, (1) would present end-users with limited if any differences from the end-user perspective, and (2) would not infringe the Asserted Claims of the Asserted Patents.

## III. QUALIFICATIONS

9. I have summarized in this section my educational background, career history, publications, and other relevant qualifications below. My full curriculum vitae is attached as Exhibit A to this declaration.

344. The documentation and deposition testimony from Plaintiffs further confirm that the SCSA System used USB-connected storage devices. Blankenbeckler Tr. 177:3-14; Ryan Tr. 131:13-132:24. The documentation and deposition testimony from Plaintiffs also confirms that the SCSA System used network attached storage devices:



WD-VIASAT-NDCA00014363 at 410; *see also* Blankenbeckler Tr. 165:16-166:3.

    (3) **1[b] one or more hardware processors configured to:**

345. The SCSA System performed each of the following steps, as discussed below. The SCSA System therefore had at least one hardware processor configured to do so.

    (4) **1[c] receive an indication of the NAS device having a secure region comprising a buffer for streaming media on a separate display device on the local area network, wherein access to the secure region is controlled by the media streaming system;**

346. The SCSA System allowed users to "download cloud-based media to compliant WD and SanDisk devices" that could "securely store a copy of [] premium digital movies."

141

https://www.etcentric.org/drm-secure-content-storage-association-launches-project-phenix/;

https://web.archive.org/web/20150919095416/http://www.vidity.com/index.php?aam_media=2014/12/SCSA_CRI-release-FINAL.pdf.

347. I understand that Plaintiffs have alleged, for infringement purposes, that a storage device satisfies this claim if there are security measures applied to the entire device. Therefore, under Plaintiffs' theory of infringement, a storage device that could "securely store" media would meet the "secure region" requirement of this limitation.

348. The documentation and deposition testimony from Plaintiffs further confirm that the SCSA System's storage devices were generally secure through the use of encryption. Blankenbeckler Tr. 175:4-176:16. Moreover, the documentation and deposition testimony from Plaintiffs demonstrate that the SCSA System's storage devices had both a "user data area" (a user accessible region) and a "nonuser area" (a secure region). WD-VIASAT-NDCA00011702 at 725; Blankenbeckler Tr. 177:15-179:21.

349. The SCSA System's storage devices "then c[ould] be accessed for local playback across all SCSA App-enabled devices including smartphones, tablets, TV's, set-top boxes, computers, game consoles, USB flash drives, and uSD cards."

https://web.archive.org/web/20150919095416/http://www.vidity.com/index.php?aam_media=2014/12/SCSA_CRI-release-FINAL.pdf. Assuming these devices have a "secure region" as discussed above, their ability to be "accessed for local playback" lets them serve as a "buffer for streaming media." This buffer would allow the media to be streamed on any of the "separate display devices" enumerated above, some of which, such as a smartphone, tablet, or smart TV, would be connected to the "local area network."

350. Additionally, as the SCSA System was only supposed to let users to "download cloud-based media to compliant WD and SanDisk devices," a POSITA would have understood that the SCSA System likely utilized some means of determining whether the target download destination was such a device. A POSITA would have understood that one method for doing so would have involved having the storage device share some data indicating that it was a properly configured device, such as a variable indicating that the storage device is encrypted. I understand that, for purposes of infringement, Plaintiffs have previously alleged that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ satisfies the claimed "indication" of this limitation, so under any such theory of infringement by Plaintiffs, it would have been obvious to a POSITA at the time that such an "indication" (a variable sharing data to confirm that a storage device is properly configured to work with a certain system—for example, by being encrypted) would have been obvious, and a simple design choice to a POSITA.

351. The documentation and deposition testimony from Plaintiffs further confirm that the SCSA System did make use of such a variable. As Mr. Blankenbeckler testified, the SCSA System "checked to make sure it was an SCSA storage device because … it would be a bad user experience if somebody bought a non-SCSA drive and bought the movie" and then couldn't "get a license file because [it was] not an SCSA drive." Blankenbeckler Tr. 179:25-180:24, 181:17-182:1, 192:22-193:8. Specifically, the storage device of the SCSA System sends a "nonce" value to the rest of the system, which is a "security use once parameter" used to indicate that the "communication by the receiver says you are encrypting." Ybarra Tr. 152:12-156:11. This variable establishes communications "between the storage device and the servers that build the device." *Id.* If this nonce variable is not included, the message from the storage device "will be rejected." *Id.*

143

352. Furthermore, the SCSA System was intended to allow users to playback the downloaded media content using the "SCSA App" on properly "enabled" and "approved" devices. https://web.archive.org/web/20150919095416/http://www.vidity.com/index.php?aam_media=2014/12/SCSA_CRI-release-FINAL.pdf; https://www.etcentric.org/drm-secure-content-storage-association-launches-project-phenix/. I understand that, for purposes of infringement, Plaintiffs have alleged that requiring a user to access content through using Viasat's systems satisfies the limitation requiring that "access to the secure region is controlled by the media streaming system." Therefore, under the theory of infringement Plaintiffs have previously articulated in certain infringement contentions served in this litigation, the SCSA System satisfies this limitation.

353. The documentation and deposition testimony from Plaintiffs further confirm that the SCSA System controls access to the secure region under Plaintiffs' theory of infringement discussed above. For example, because the "SCSA storage device can be a Western Digital HDD," it could be "plugged into and access from a computer." Blankenbeckler Tr. 175:4-176:16. However, because the content was not being accessed through "an SCSA player," "there[ would be] no way to play it back" or "derive the decryption keys." *Id.*

> **(5)** **1[d] transmit the digital content to the secure region within the NAS device for playback by the separate display device from the buffer; and**

354. As explained above, the SCSA System allowed users to "download cloud-based media to compliant WD and SanDisk devices" that could "securely store a copy of [] premium digital movies" and which "c[ould] be accessed for local playback across all SCSA App-enabled devices including smartphones, tablets, TV's, set-top boxes, computers, game consoles, USB flash drives, and uSD cards." https://www.etcentric.org/drm-secure-content-storage-association-