L. Kieran Kieckhefer (SBN 251978)
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94105-0921
Telephone: 415.393.8337
Email: KKieckhefer@gibsondunn.com

Robert A. Vincent (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue Suite 2100
Dallas, TX 75201-2923
Telephone: 214.698.3281
RVincent@gibsondunn.com

Lillian J. Mao (SBN 267410)
GIBSON, DUNN & CRUTCHER LLP
310 University Avenue
Palo Alto, CA 94301-1744
Telephone: 650.849.5307
LMao@gibsondunn.com

Ahmed ElDessouki (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.2345
AElDessouki@gibsondunn.com

Brian M. Buroker (*pro hac vice*)
Shuo Zhang (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1700 M St, N.W.
Washington DC 20036-4504
BBuroker@gibsondunn.com
SZhang@gibsondunn.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| SANDISK TECHNOLOGIES, INC., et. al., <br><br> Plaintiffs, <br><br> v. <br><br> VIASAT, INC, <br><br> Defendant | Case No. 4:22-CV-4376-HSG <br><br> **SANDISK'S OPPOSITION TO VIASAT'S MOTION TO STRIKE PLAINTIFFS' '400 PATENT "AUTHENTICATING" THEORIES** <br><br> Date: August 21, 2025 <br> Time: 2:00 p.m. <br> Dept.: Courtroom 2, 4th Floor <br> Judge: Hon. Haywood S. Gilliam, Jr. <br><br> **FILED UNDER SEAL** |

**Table of Contents**

Page

I. INTRODUCTION ........................................................................................................... 1

II. LEGAL STANDARD ..................................................................................................... 1

III. ARGUMENT .................................................................................................................. 3

    A. **Dr. Easttom's Infringement Theory Is the Same Theory Disclosed in the March 2024 ICs for the Authenticating Elements of the Claims for All Four Uses Cases** ................................................................................................... 3

    B. **Viasat's Allegations That Dr. Easttom's Report Introduces New Infringement Theories on All Four Uses Cases Are Incorrect** ............................... 5

        1. Dr. Easttom's analysis of Use Case 1 is based on an infringement theory that was clearly disclosed in Sandisk's March 2024 ICs ....................... 5

        2. Dr. Easttom's reference to ▮▮▮▮▮▮▮▮" in his analysis of Use Cases 2 and 4 is based on an infringement theory that was clearly disclosed in Sandisk's March 2024 ICs which identified ▮▮▮▮▮▮ ▮▮▮▮▮ an example of the "remote trusted server." ...................................... 10

        3. Dr. Easttom's analysis of Use Case 3 is based on an infringement theory that was clearly disclosed in Sandisk's March 2024 ICs ..................... 12

    C. **Viasat Is Not Prejudiced** ............................................................................. 13

IV. CONCLUSION ............................................................................................................ 14

**Table of Authorities**

**Page(s)**

Cases

*Apple Inc. v. Samsung Electronics Co.*,
    No. 5:12–CV–0630–LHK–PSG, 2014 WL 173409 (N.D. Cal. Jan. 9, 2014) ..............................1, 2

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
    No. 13-CV-03999-BLF, 2015 WL 3640694 (N.D. Cal. June 11, 2015) ......................................1, 2

*Oracle Am., Inc. v. Google, Inc.*,
    No. C10-03561-WHA, 2011 WL 4479305 (N.D. Cal. Sept. 26, 2011)...........................................2

*Shared Memory Graphics LLC v. Apple, Inc.*,
    812 F. Supp. 2d 1022 (N.D. Cal. 2010) ........................................................................................2

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.*,
    208 F. 3d 981 (Fed. Cir. 2000).......................................................................................................2

## I. INTRODUCTION

Viasat's June 9, 2025, Motion to Strike Plaintiffs' '400 Patent "Authenticating" Theories (Dkt. 204, the "Motion to Strike") should be denied. Sandisk's expert, Dr. Easttom, presented a thorough and detailed infringement report that demonstrates how Viasat willfully infringes the '400 Patent, including the requirement in all claims of how the accused systems perform the required "authenticating" step. Desperate to avoid trial on its willful infringement, Viasat resorts to mischaracterizing evidence presented in Dr. Easttom's Expert Report as entirely new infringement theories. But that is not correct. Dr. Easttom's report applies the same previously disclosed theory from Sandisk's March 2024 Infringement Contentions (Dkt. 189-2, 189-3, 189-4, "March 2024 ICs") citing either the same evidence that Viasat wants the Court to overlook or additional evidence learned during discovery that simply supports the same theory already disclosed. Additional evidence to support an already-disclosed infringement theory is completely proper – otherwise, the Court would not have fact discovery after infringement contentions under the local rules. Having had sufficient notice and equipped with internal engineers, documentations, and source code files that had always been at Viasat's fingertips, to understand how its own systems operate for each of the four use cases, Viasat could easily understand how Sandisk had accused Viasat's systems and products of infringing the asserted claims of the '400 Patent, and Viasat was not prejudiced. Viasat's attempt to avoid willful infringement by asking the court to strike evidence presented on the "authenticating" claim limitation that proves its infringement should be denied.[1]

## II. LEGAL STANDARD

"The scope of contentions and expert reports are not ... coextensive," because "[c]ontentions need not disclose specific evidence, whereas expert reports must include a complete statement of the

---

[1] Viasat states that it has "limit[ed] its briefing on Dr. Easttom's untimely theories to 25 pages of total briefing" (Dkt. 204 at 2 n.1), but Sandisk is not aware of any applicable rule imposing total page limits across separately filed motions (indeed, filed on different days, and originally noticed for different hearing dates). In compliance with Civil L.R. 7-3(a), each Sandisk opposition brief does not "exceed 25 pages of text"—and most are substantially shorter.

expert's opinions, the basis and reasons for them, and any data or other information considered when forming them." *Apple Inc. v. Samsung Electronics Co.*, No. 5:12–CV–0630–LHK–PSG, 2014 WL 173409, at *1 (N.D. Cal. Jan. 9, 2014). "[T]he Patent Local Rules do not require perfect clarity, only reasonable notice that is 'as specific as possible' given the information of which a plaintiff is aware." *Finjan, Inc. v. Blue Coat Sys.*, Inc., No. 13-CV-03999-BLF, 2015 WL 3640694, at *2 (N.D. Cal. June 11, 2015).

In determining whether to strike an expert's testimony based on an alleged failure to properly disclose an infringement theory, the "dispositive inquiry in a motion to strike is ... whether the allegedly undisclosed theory is in fact a new theory or new element of the accused product alleged to practice a particular claim that was not previously identified in the plaintiff's contentions, or whether the theory is instead the identification of additional evidentiary proof showing that the accused element did in fact practice the limitation." *Finjan*, 2018 WL 3640694 at *2 (quoting *Oracle Am., Inc. v. Google, Inc.*, No. C10-03561-WHA, 2011 WL 4479305, at *3 (N.D. Cal. Sept. 26, 2011)). The "question ... becomes, has the expert permissibly specified the application of a disclosed theory, or has the expert impermissibly substituted a new theory altogether?" *Apple, Inc.*, 2014 WL 173409, at *1.

"[A]ll courts agree that the degree of specificity under Local Rule 3–1 must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a 'reasonable chance of proving infringement.'" *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010) (quoting *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F. 3d 981, 986 (Fed. Cir. 2000)). A patent owner can satisfy this duty to provide reasonable notice by specifically identifying a broader theory in the infringement contentions and further supplement the specific "manner" in which the broader theory operates which the plaintiff "[has] to learn … through confidential information. *Finjan*, 2015 WL 3640694, at *3 (holding that the defendant had reasonable notice of the plaintiff's infringement theory on a claim element when the plaintiff identified a broad concept in the infringement contentions and later supplemented with the specific manner in which the concept operates in the accused product satisfy a claim element).

## III. ARGUMENT

As required by the Local Rules, Sandisk disclosed its theory of how the "authenticate/authenticating the portable data storage device, using at least the unique identifier, by communicating with the remote trusted server over the second data interface" limitation of claims 1 and 9 was met by the Accused Instrumentalities. It identified unique identifiers, it identified remote trusted servers, it identified the second data interface, and it identified how authentication occurs using the unique identifier and communicating with a remote trusted server. Dkt. 189-3, 46–56, 72. Dr. Easttom's Expert Report applies the same infringement theory for the "authenticate/authenticating the portable data storage device, using at least the unique identifier, by communicating with the remote trusted server over the second data interface" limitation.

### A. Dr. Easttom's Infringement Theory Is the Same Theory Disclosed in the March 2024 ICs for the Authenticating Elements of the Claims for All Four Uses Cases

<u>*Accused Instrumentalities and Their Use Cases*</u>: Sandisk's March 2024 ICs identify that "for the '400 Patent, the Accused Instrumentalities include Viasat's in-flight entertainment ("IFE"), wireless IFE ("W-IFE) systems, Viasat WiFi Gateway Modem ("Gateway"), and all Viasat products incorporating IFE, W-IFE, Gateway, or the functionality described herein." Dkt. 189-2, 2. The IFE and W-IFE systems rely on the Viasat Content Delivery System ("VCDS") client for obtaining media from remote sources on the ground that include other aspects of the VCDS system. *Id.* The IFE and W-IFE systems are "in-flight" entertainment systems that are installed on commercial airplanes, whereas the "Gateway" system is Viasat's home internet and entertainment system. These Accused Instrumentalities distribute to users "secure media content." Dkt. 189-3, 3. The secure media content can be provisioned to various users either from content stored on the airplane or through the VCDS as on-demand media content or Live/IPTV content. *Id.* ("[T]he '400 Accused Products provide access to media streaming services (e.g., IPTV, Disney+, Apple Music and/or Apple TV+), via the Internet, to user devices (e.g., a smart phone or laptop) and/or seat back devices connected to the '400 Accused Products, and thereby provide each device with access to secure media (e.g., IPTV, Disney+, …).").

1   As a result, there are four different "use cases" – a term that Viasat's own engineers used to
2   describe how different content is delivered to users. *See, e.g.*, Ex. A (Neri Deposition Tr.) at 45:13–
3   46:1. Dr. Easttom adopted Viasat's terminology of "use cases" in his report as well for all elements of
4   the claims – not just for purposes of the "authenticating" claim element., as Viasat contends. *See, e.g.*,
5   Dkt. 199-2 (Dr. Easttom's Expert Report), ¶ 129.

***The Infringement Contentions for the "Authenticating" Limitations***: The March 2024 ICs identified how a unique identifier is received by the IFE/W-IFE system or the Gateway server system from a mobile phone or seatback device a first data interface as required by the claim elements 1[d] and 9[c]. Dkt. 189-3, 39–45, 72. Then, for the authenticating elements 1[e] and 9[d], the March 2024 ICs identified that the unique identifier is authenticated based on a communication with a remote trusted server ( ) via a second data interface *Id.*, 46–56, 72. Dr. Easttom's Expert Report provides the same infringement theory and then provides additional evidentiary proof to support that theory, as the Court in *Finjan* contemplates and authorizes. *See, e.g.*, Dkt. 199-2, ¶¶ 213–276, 396–462.

**B. Viasat's Allegations That Dr. Easttom's Report Introduces New Infringement Theories on All Four Uses Cases Are Incorrect**

**1. Dr. Easttom's analysis of Use Case 1 is based on an infringement theory that was clearly disclosed in Sandisk's March 2024 ICs**

For Use Case 1 ▮▮▮▮▮, Viasat argues that Dr. Easttom's report contains two new infringement theories – what it calls the ▮▮▮▮▮ ▮▮▮▮▮. Viasat is incorrect on both accounts. The March 2024 ICs identified ▮▮▮▮▮ in support of the infringement case for the communicating requirement in the "authenticating" limitation. The specific concepts Viasat identifies are at most additional evidentiary support that Viasat's systems communicate to a remote trusted server. Viasat's allegation that Dr. Easttom introduced a new theory on ▮▮▮▮▮ is based on a misreading of Dr. Easttom's Expert Report that, once flagged as a result of Viasat's motion, he has clarified through an errata to avoid any confusion.

▮▮▮▮▮ ***Theory:*** Viasat's argument that the Easttom Expert Report presents a new ▮▮▮▮▮ theory of infringement is incorrect. Specifically, Viasat argues that Dr. Easttom's report for the first time contends that ▮▮▮▮▮ that are provided by remote trusted servers to ▮▮▮▮▮ where authentication can then occur is a new infringement theory and specifically claims that the March 2024 ICs do not mention ▮▮▮▮▮ ▮▮▮▮▮ Viasat is incorrect as to the first two issues – the March 2024 ICs clearly describe ▮▮▮▮▮. And the mention of ▮▮▮ is just the specific name Viasat's confidential documentation uses to describe how ▮▮▮▮▮, that the March 2024 ICs pointed to, are achieved. At most, the mention of ▮▮▮ is just additional evidentiary support for an existing theory.

On the question of ▮▮▮▮▮, it is important to compare what the March 2024 ICs describe and then review what Viasat complains about in Dr. Easttom's Report. The March 2024 ICs describe ▮▮▮▮▮ from a remote trusted server and ▮▮▮▮▮, just as Dr. Easttom's Report does.

Specifically, the March 2024 ICs identified communications from the Viasat on-plane equipment that operates as the claimed kiosk (the server and modem) over a second communication interface

5
SANDISK'S OPPOSITION TO MOTION TO STRIKE PLAINTIFFS' '400 PATENT "AUTHENTICATING" THEORIES
CASE NO. 4:22-CV-4376-HSG

Gibson, Dunn & Crutcher LLP

1  (e.g., a satellite link) to a remote trusted server. Those contentions also describe that to perform authentication, ▇▇▇▇▇▇ to the device can be a unique identifier of a portable data storage device, and ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Dt. 189-3, 48–49.[2] ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ DRM license servers – FairPlay, PlayReady and Widevine. *Id.*, 49.

Sandisk explicitly quoted the DRM structure of the three relevant DRM servers, namely, FairPlay, PlayReady, and WideVine, as illustrated below in the three boxes on the middle right of the diagram.



*Id.* at 49 (citing VIASAT_00000618 at 628).

The March 2024 ICs clearly lay out a theory that the "authenticating" element is met because the accused Viasat IFE/W-IFE system uses an onboard DRM server that communicates with a remote trusted server via the second data interface to authenticate the portable data storage using the token.

---

[2] The March 2024 ICs disclosed that Viasat's accused IFE/W-IFE system uses a DRM (Digital Rights Management) system that "uniquely identifies (personalizes) each device before any user is allowed to stream content from the media server." Dkt. 189-3, 48 (citing VIASAT_00000618 at 624). More specifically, in the March 2024 ICs, relevant to this claim element, Sandisk explicitly disclosed that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.*

[redacted]

Dkt. 189-3, 48 (citing VIASAT_00000618 at 624) (highlighting in March 2024 ICs).

Regarding the "remote trusted server," Sandisk explicitly contended in the March 2024 ICs that "the second data interface is configured to communicate with a remote trusted server (e.g., [redacted]." *Id.* at 31. As an example, again, Sandisk specifically highlighted the [redacted]

[redacted]

*Id.* at 33 (citing VIASAT_00006471 at 499) (highlighting in March 2024 ICs).

Further, the claim element "communicating with the remote trusted server over the second data interface" finds its antecedent basis in "a second data interface configured to communicate, over a network, with a remote trusted server" in element 1[b]. Regarding the second data interface, Sandisk's

1  March 2024 ICs specifically highlighted a ▮▮▮▮▮▮▮▮▮▮
2  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, as illustrated below.

[redacted image]

*Id.* at 30 (citing VIASAT_00006471 at 499) (highlighting in March 2024 ICs).

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ quoted from VIASAT_00006471 at 499 and shown above. And, as shown below, Sandisk explicitly cited from the same document (VIASAT_00006471) that the ▮▮▮▮▮

[redacted image]

*Id.* at 17 (citing VIASAT_00006471 at 476).

Therefore, with respect to the element of "communicating with the remote trusted server over the second data interface," Sandisk's March 2024 ICs specifically disclosed that the DRM Servers,

8

SANDISK'S OPPOSITION TO MOTION TO STRIKE PLAINTIFFS' '400 PATENT "AUTHENTICATING" THEORIES
CASE NO. 4:22-CV-4376-HSG

Gibson, Dunn & Crutcher LLP

1  which could be part of the onboard servers, and communicate via a satellite network with a remote
2  trusted server, an example of which is a ▓▓▓▓▓▓▓▓▓▓ which can wirelessly update the
3  onboard DRM Servers through the satellite network. Those updates would be ▓▓▓▓▓ to
4  the DRM Servers, which use ▓▓▓▓▓▓▓▓▓▓.

5  Dr. Easttom's report follows this same infringement theory. Dr. Easttom explains that the
6  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
7  He then explains how authentication takes place with that ▓▓ and the use of a remote trusted server.
8  For example, he explains: "▓▓▓▓▓▓▓▓▓▓▓▓▓▓
9  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
10 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
11 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
12 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
13 ▓▓▓▓▓▓▓▓▓" Dkt. 199-2, ¶ 249.

14 Regarding the mentioning of ▓▓ that Viasat complains about, Dr. Easttom's Expert Report
15 explains that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
16 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Dkt. 199-2,
17 ¶ 252. This is merely additional evidentiary support for the infringement theory, specifically providing
18 the name of the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
19 ▓▓▓▓▓▓▓▓ was learned through fact discovery by Sandisk through deposition of Viasat's
20 technical witnesses, but certainly was already known by Viasat. Ex. B (O'Sullivan Depo. Tr.) at 48:20–
21 50:15.

22 As a result, Viasat is incorrect that Dr. Easttom presents a new theory of infringement related
23 to software updates. The March 2024 ICs explained that authentication is based on communications
24 with ground servers and that includes zero-touch updates to the software on the airplane.

25 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ then argues for Use Case 1 that Dr. Easttom ▓▓▓▓▓▓
26 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and alleges this to be a new infringement theory. Dkt. 204, 5.
27 But this is based on a typographical error in the Easttom report that Viasat did not ask Dr. Easttom
28

9
SANDISK'S OPPOSITION TO MOTION TO STRIKE PLAINTIFFS' '400 PATENT "AUTHENTICATING"
THEORIES
Case No. 4:22-cv-4376-HSG

Gibson, Dunn &
Crutcher LLP

1  about in his deposition. Upon being informed of the typographical error, Dr. Easttom has issued an
2  errata (Ex. C) to clarify that the ███████████████████████████████████████████
3  ███████

4      Dr. Easttom's report indicates that the unique identifier is ████████████████████
5  ███  Dkt. 199-2, ¶ 252 ████████████████████████  Then, the original Easttom Report ex-
6  plained that, for the PlayReady DRM server (one of the three DRM servers that Viasat has available),
7  the "kiosk authenticates the portable data storage device by communicating with the ████████
8  ████████████████████████████████████████████████████████████████████████
9  ████████████████████████████████."). *Id*. There is a clear typo – the
10  word "and" is missing between ████████████████  So, the intention was to explain that the au-
11  thentication occurs by communicating (1) ████████████████████████████, but it is t██
12  ████████████████  This clarification should moot this portion of Viasat's motion.

        **2.**    **Dr. Easttom's reference to ████████████ in his analysis of Use Cases 2 and 4 is based on an infringement theory that was clearly disclosed in Sandisk's March 2024 ICs which identified ████████████ as an example of the "remote trusted server."**

16      For Use Cases 2 and 4 (████████████████████████████████████████████████
17  ████████████  as an example of the required "remote trusted server." Dkt. 199-2, ¶ 254-256. Spe-
18  cifically, Dr. Easttom explains that for those two Use Cases, a█████████████████████████
19  ████████████████████████████████████  Viasat alleges that identifying the ██
20  █████████████████████████ "was never disclosed in the [March 2024 ICs]." Dkt. 204, 6. This
21  is incorrect. The March 2024 ICs plainly identified ████████████ as a remote trusted server for
22  the "remote trusted server" limitation in the first place in the claims that the "remote trusted server"
23  recitation appears – namely, in element 1[b]. Viasat *admits* that the March 2024 ICs identify the ███
24  ████████  as the remote trusted server in a footnote. ("Plaintiffs mention '████████' only once in
25  their contentions, for a different claim limitation…").
26      Viasat is incorrect that it was only mentioned once. *Id.*, fn. 2. Instead, the March 2024 ICs
27  cited a figure showing the ████████████, highlighted the relevant portion containing the ███

1 ▮▮▮ and explicitly called out the ▮▮▮ in text: "▮▮▮
2 ▮▮▮
3 ▮▮▮" Dkt. 189-3, 34 (emphases
4 added).

[redacted image]

*Id.* (citing VIASAT_00008420 at 424) (excerpted to show the highlighted portion) (highlighting in March 2024 ICs).

Second, the identification of ▮▮▮ is not made in any "different element" but made in connection with the antecedent basis for "remote trusted server." As discussed above, the "authenticating" claim element 1[e] includes the requirement of "communicating with the remote trusted server over the second data interface" and that reference to "the remote trusted server over the second data interface" refers back to an earlier claim element 1[b] that defines that second data interface: "a second data interface configured to communicate, over a network, with a remote trusted server." So, the March 2024 ICs identified the second data interface as a satellite connection and the remote trusted server as being the ▮▮▮ in discussing 1[b] and those same corresponding features then apply for those same claim elements referenced in the discussions in element 1[d] as well.

Thus, Viasat was provided sufficient notice of Sandisk's infringement theory by the March 2024 ICs.

### 3. Dr. Easttom's analysis of Use Case 3 is based on an infringement theory that was clearly disclosed in Sandisk's March 2024 ICs

Viasat's motion to strike related to Use Case 3 mentions Live TV/IPTV, which is also the subject of another of its motions to strike. Aside from the mention of Live TV/IPTV, Viasat fails to identify what other basis it has for striking anything from Dr. Easttom's analysis for Use Case 3 for the "authenticating" limitation. Dkt. 204, 6. It states that "Plaintiffs' infringement contentions never identify a 'unique identifier' used by a "remote trusted server" to authenticate any devices for IPTV." *Id.* If Viasat is suggesting that the remote trusted server has to perform the authentication using a unique identifier, that would be a claim construction argument – not a motion to strike. That is not a claim construction position that Viasat requested during the claim construction process. Such an argument would be flawed because the plain meaning of the claim requires authenticating ... using at least the unique identifier, by communicating with the remote trusted server." That language of the claim does not require that the authentication occur at the remote trusted server. Instead, it says authenticating by communicating with the remote trusted server. Therefore, so long as there is communication that occurs with a remote trusted server at some point in time prior to the authenticating, then the claim limitation is met.

Further, Dr. Easttom identifies ▮▮▮▮▮▮▮ as a unique identifier for Use Case 3 (Dkt. 199-2, ¶¶ 225-226, 265-271) – and that was clearly disclosed as a unique identifier in the March 2024 ICs. Dkt. 189-3, 39–44, 47–51. In addition, the March 2024 ICs show authentication for IPTV requests occurring on the remote trusted server ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as shown in the below figure from Viasat's internal technical documentation explaining how its systems operate that was cited in the March 2024 ICs and relied on in the Easttom Report.



Accordingly, Viasat failed to identify any new theories for Use Case 3 and the discussion in Dr. Easttom's Expert Report for the "authenticating" limitation related to Live TV/IPTV is not a new theory as demonstrated above.

*   *   *

Viasat's contentions that Dr. Easttom's Expert Report offers new infringement theories for all four Use Cases are unsupported. The motion to strike any of the Easttom Expert Report's discussion on the "authenticating" limitation should be rejected.

### C. Viasat Is Not Prejudiced

Even if the additional explanations that were provided were deemed to be new theories, Viasat failed to show any prejudice. It has not shown what, if anything, it would have done differently. It has access to all of the engineers, documentation, and source code files cited and described in the report. It had the opportunity for its own technical expert to provide a rebuttal to the merits of these issues. It

had the opportunity to question Dr. Easttom about each of the issues raised above related to the four Use Cases.

### IV. CONCLUSION

For the foregoing reasons, Sandisk respectfully requests that the Court deny Viasat's Motion to Strike Plaintiffs' '400 Patent "Authenticating" Theories.

Dated: June 23, 2025　　　　　　　　　　　　　　　　　　　GIBSON, DUNN & CRUTCHER LLP

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　*/s/ L. Kieran Kieckhefer*
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　L. Kieran Kieckhefer

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　*Counsel for Plaintiffs*