| | |
|---|---|
| L. Kieran Kieckhefer (SBN 251978) | Ahmed ElDessouki (*pro hac vice*) |
| GIBSON, DUNN & CRUTCHER LLP | GIBSON, DUNN & CRUTCHER LLP |
| One Embarcadero Center, Suite 2600 | 200 Park Avenue |
| San Francisco, CA 94105-0921 | New York, NY 10166-0193 |
| Telephone: 415.393.8337 | Telephone: 212.351.2345 |
| Email: KKieckhefer@gibsondunn.com | AElDessouki@gibsondunn.com |
| | |
| Robert A. Vincent (*pro hac vice*) | Brian M. Buroker (*pro hac vice*) |
| GIBSON, DUNN & CRUTCHER LLP | Shuo J. Zhang (*pro hac vice*) |
| 2001 Ross Avenue Suite 2100 | GIBSON, DUNN & CRUTCHER LLP |
| Dallas, TX 75201-2923 | 1700 M St, N.W. |
| Telephone: 214.698.3281 | Washington DC 20036-4504 |
| RVincent@gibsondunn.com | BBuroker@gibsondunn.com |
| | SZhang@gibsondunn.com |
| Lillian J. Mao (SBN 267410) | |
| GIBSON, DUNN & CRUTCHER LLP | |
| 310 University Avenue | |
| Palo Alto, CA 94301-1744 | |
| Telephone: 650.849.5307 | |
| LMao@gibsondunn.com | |

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| SANDISK TECHNOLOGIES, INC., et. al., | Case No. 4:22-CV-4376-HSG-PHK |
| Plaintiffs, | **SANDISK'S OPPOSITION TO VIASAT'S MOTION TO EXCLUDE CERTAIN OPINIONS OF CHUCK EASTTOM AND LAUREN KINDLER** |
| v. | |
| VIASAT, INC, | Date: August 21, 2025 |
| Defendants | Time: 2:00 p.m. |
| | Dept.: Courtroom 2, 4th Floor |
| | Judge: Hon. Haywood S. Gilliam, Jr. |
| | **FILED UNDER SEAL** |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ........................................................................................................................ 2

    A. Dr. Easttom's Challenged Opinions Are Well-Supported. ............................................ 2

    B. Ms. Kindler's Challenged Opinions Are Also Well-Supported. ................................... 4

III. CONCLUSION ..................................................................................................................... 7

I.  INTRODUCTION

Viasat's motion to exclude Sandisk's expert opinions relating to Viasat's service-level agreements (SLAs) with American Airlines (Dkt. 206) should be denied. Sandisk's technical expert, Dr. Easttom, properly opined about the benefits of the asserted patents based on his experience and his extensive review of documents produced in this case, including documents from the inventors and Viasat's own internal documents identifying technological features that Viasat considered important. Dr. Easttom further properly concluded that, without those benefits, Viasat could not meet its contractual obligations to provide certain services. In turn, Sandisk's damages expert, Ms. Kindler, properly considered Viasat's contractual obligations and ███████████ in determining the value attributable to the patented technology.

Viasat paints an entirely inaccurate picture of the relevant facts:

- First, Viasat mischaracterizes Dr. Easttom's opinions as "quantitative," when he opines that Viasat "would ███████████████████████████████████████." The fact that *Viasat's contract* ███████████████████ does not mean that Dr. Easttom was expressing a "quantitative" opinion or was required to perform any sort of quantitative analysis to reach his conclusions. Rather, he expresses the straightforward proposition that, without the patented technology, Viasat could not do what it currently does—not even close.

- Second, Viasat summarily disposes of Dr. Easttom's opinion as "ipse dixit"—but ignores the numerous documents that Dr. Easttom cited, as well as his detailed understanding of Viasat's technology as explained throughout his report.

- Third, Viasat mischaracterizes Ms. Kindler's opinion as resting solely on Dr. Easttom's opinion about Viasat's inability to meet its service-level obligations, despite her report and deposition testimony explaining that the agreement itself, independent of Dr. Easttom's opinions, provides an indicator of value useful in determining damages and explaining that she relied on the importance of the infringing technology, which is distinct from Viasat's ability to meet the SLA.

- Finally, Viasat appears to conflate Ms. Kindler's opinions relating to W-IFE and IPTV, which are distinctly laid out in her report and supported by corresponding opinions from Dr. Easttom and provisions in the service-level agreements relating specifically to those respective services.

Viasat's attacks on Dr. Easttom's and Ms. Kindler's analysis are thus meritless. To the extent Viasat believes there is any infirmity in the opinions provided, they fall squarely in the realm of matters to be tested through cross-examination at trial, not matters to be excluded by the Court.

## II.  ARGUMENT

Dr. Easttom's and Ms. Kindler's challenged opinions easily satisfy the threshold for admissibility. Federal Rule of Evidence 702 permits expert testimony where "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." "[A] district court's inquiry into admissibility is a flexible one." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014). An expert opinion "is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Id.* at 1044. "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.* "The judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Id.* (internal quotations omitted). Here, Dr. Easttom and Ms. Kindler each relied on their relevant experience as well as extensive data obtained in discovery. Each explained their opinions in detail, backing up their conclusions with narrative explanation and citations to the factual record. There is no basis for exclusion.

### A.  Dr. Easttom's Challenged Opinions Are Well-Supported.

Dr. Easttom's opinion relating to Viasat's ability to meet its contractual obligations to American Airlines is backed up by his extensive analysis of the benefits of the '667 patent and his detailed understanding of Viasat's technology. Viasat disregards all of this and improperly views Dr. Easttom's

conclusion relating to the American Airlines agreement in a vacuum. But even the specific paragraph that Viasat cites is replete with supporting analysis and evidence for Dr. Easttom's opinion.

As part of a 17-page section describing the benefits of the '667 patent, Dr. Easttom opines that one of the benefits is to enable "no touch" or "over the air" (OTA) updates to media content stored on the airplane. Ex. 1 (Easttom Op. Rep.) at pp. 22-38, ¶ 97. For how the patented technology confers this benefit, Dr. Easttom cites his element-by-element infringement analysis. *Id.*, ¶ 97. Dr. Easttom goes on to explain that "Viasat's document[s] indicate that it would not be commercially acceptable for Viasat to update the media content stored on its in-flight entertainments systems using a manual process, [] especially considering that Viasat services hundreds, if not thousands, of aircrafts [that] need to be updated monthly." *Id.* In support, he cites seven Viasat documents, with pincites and excerpts—this part alone takes up more than a page of Dr. Easttom's report. *Id.* For example, Dr. Easttom cites a document stating one of the "Key Features" of Viasat's offering is " ████████ ████████████████████████████████████ *Id.* (quoting VIASAT_00003288). In another cited document, Viasat recognizes that "████████████████████████████ ████████████████████████████████████████ ████████████" *Id.* (quoting VIASAT_00006805). In contrast, with VCDS Viasat can "████ ██████████████████████████████████████ *Id.* (still quoting VIASAT_00006805).[1] "Therefore," Dr. Easttom concludes, "without the patented functionality of the '667 patent, Viasat would not be able to provide over the air updates . . . and would therefore not be able to meet any operational or contractual requirements to provide media content over the air." *Id.* With respect to the American Airlines agreement, Dr. Easttom notes again that Viasat lacks a commercially viable non-infringing alternative and that it would have to update "hundreds of aircrafts," such that "Viasat's content update percentage would very likely ████████████████" in the agreement. *Id.*

---

[1] Misleadingly, Viasat points to this document as showing that manual updates are the "normal[]" update process (Mot. at 4). To the contrary, this document reflects ████████████████ ████████████████████████████████████████████████████████████ that Viasat would not be able to meet using only manual updates.

Viasat's challenge to Dr. Easttom is very narrow—it does not dispute that Dr. Easttom's conclusion that manual updates would not be commercially acceptable, based on the cited documents, is reliable. Instead, Viasat challenges only the conclusion that Viasat "would very likely ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." But all of the preceding discussion—about how Viasat's systems work (cross-referencing his infringement analysis) and about the importance of OTA updates as reflected in his numerous citations—feed into his conclusion about the service-level threshold. Thus, far from being ipse dixit, Dr. Easttom lays out very clearly how he reached his conclusion.

Viasat faults Dr. Easttom for not performing a quantitative analysis, but cites no authority saying that Dr. Easttom was required to do so. Viasat is free to point out to the jury the various quantification steps that Dr. Eastom purportedly failed to do (Mot. at 4), and the jury is free to give Dr. Easttom's opinion the weight it deems appropriate. But Viasat has identified no flaw in the reliability of Dr. Easttom's opinion that would warrant exclusion.

Viasat's cases are easily distinguished. This is not a "black box" situation as referenced in *GPNE Corp. v. Apple, Inc.*, No. 12-CV-02885-LHK, 2014 WL 1494247, at *4 (N.D. Cal. Apr. 16, 2014)—rather, Dr. Easttom very clearly explained his reasoning and identified the supporting evidence. Moreover, *GPNE* is a decision involving a damages expert's derivation of a per-unit royalty rate, which bears no resemblance to Dr. Easttom's opinion here. Similarly, *Bona Fide Conglomerate, Inc. v. SourceAmerica*, No. 314CV00751GPCAGS, 2019 WL 1369007, at *7 (S.D. Cal. Mar. 26, 2019), faulted the expert for "not furnish[ing] any factual basis" for his conclusion—a criticism that does not apply to Dr. Easttom's detailed factual analysis.

When Viasat's mischaracterizations are set aside, and Dr. Easttom's opinion about the American agreement is read in the context of his detailed analysis of the benefits of the patented technology, there can be no question that his opinion is well-supported and reliable. Viasat's motion to exclude should be denied as to Dr. Easttom.

### B. Ms. Kindler's Challenged Opinions Are Also Well-Supported.

Viasat's challenges to Ms. Kindler's opinions should be rejected for two reasons. First, Viasat raises no independent basis for excluding Ms. Kindler's opinion—the challenge to her opinion rises and falls with the challenge to Dr. Easttom's, which fails as explained above. Second, even if the Court

Gibson, Dunn & Crutcher LLP

sustains the challenge to Dr. Easttom's opinion (it should not), Ms. Kindler should be permitted to offer her opinions relating to the American Airlines agreement because she does not rely exclusively on Dr. Easttom's analysis and Viasat does not challenge the other bases for her analysis.

Ms. Kindler has repeatedly made clear that her analysis for the '667 patent is not dependent upon Dr. Easttom's opinion that that Viasat would not meet the American Airlines service-level thresholds. In her report, she explains—without any reference to information from Dr. Easttom—that ▮▮▮▮▮▮▮▮▮▮ in the American Airlines agreement "provide[] a relevant proxy for the value assigned to ensuring reliable content delivery." Ex. 2 (Kindler Op. Rep.), ¶ 180. She also explains why the "figure represents a lower bound for the value attributable to efficient content delivery." *Id.* Viasat does not challenge these opinions. Only after that analysis does Ms. Kindler mention her discussion with Dr. Easttom. She first explains her understanding from Dr. Easttom that "Viasat could not have delivered the same availability and quality of IPTV service to its customer service base (e.g., airlines) had it not used the '667 Patent and instead was required to serve a separate stream to each requesting passenger." *Id.*, ¶ 181. Viasat does not challenge that aspect of Dr. Easttom's analysis, which relates to IPTV instead of OTA updates for W-IFE. Then Ms. Kindler references that Viasat could not meet service-level thresholds—the only portion of Dr. Easttom's opinions that Viasat challenges. *Id.* Thus, Ms. Kindler's analysis is supported by more than the narrow Easttom opinion that Viasat seeks to exclude.

Ms. Kindler explicitly explained this during her deposition: "[J]ust to be clear, my analysis with respect to the revenue apportionment for the '667 patent is not dependent on Dr. Easttom's opinion that Viasat would not meet those thresholds if it were unable to use the '667 patent." Ex. 3 (Kindler Dep.), 181:24-182:6. She further explained that "I'm relying on him, but I'm also relying on the terms of the agreement and . . . my understanding of how important the '667 patent is to Viasat's ability to deliver content efficiently and reliably." *Id.*, 180:8-18. Viasat does not challenge those additional underpinnings of Ms. Kindler's opinions.

Contrary to Viasat's argument, this situation bears absolutely no resemblance to the *NXP* case. In *NXP*, Ms. Kindler relied on apportionment figures provided by the defendant's employee, and the court found that her quantitative analysis was unreliable because "[h]er report provides no meaningful

explanation of how she arrived at these figures aside from her conversations with [the employee]." *NXP USA, Inc. v. Impinj, Inc.*, No. 2:20-CV-01503-JHC, 2023 WL 3933877, at *2 (W.D. Wash. June 8, 2023). Here, Ms. Kindler did not adopt any numerical figures from Dr. Easttom—she obtained them from ***Viasat's own contracts***, and Viasat does not dispute the reliability of using Viasat's contracts in that way. The court in *NXP* explains the type of damages expert reliance on a technical expert that is appropriate, which describes what Ms. Kindler did here: "a technical expert or a party's employee may be particularly well-positioned to understand the relative technological benefits of the accused products. And because there is often a connection between a feature's technological value and its economic value, economic apportionment may correlate—even strongly correlate—with the relative technological importance of the patented feature." *Id.* at *4 (citations omitted).

Viasat also overstates the holding of *Fail-Safe, L.L.C. v. A.O. Smith Corp.*, 744 F. Supp. 2d 870 (E.D. Wis. 2010), which—similar to *NXP*—involved adopting numerical projections from the defendant's executives. To the extent Viasat contends Ms. Kindler's opinion is improper just because she relied on Dr. Easttom, the Federal Circuit has rejected such a rule: "A rule that would exclude [a party's] damages evidence simply because it relies upon information from a[] technical expert is unreasonable and contrary to Rules 702 and 703 and controlling precedent. *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1322 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015).

Viasat also argues, incorrectly, that Ms. Kindler misapplies Dr. Easttom's opinions about stored media content to Viasat's provision of live content. To the contrary, both Dr. Easttom and Ms. Kindler proffered distinct opinions relating to each of those use cases. Dr. Easttom opined that the '667 patent is beneficial for OTA updates to stored media (Ex. 1 (Easttom Op. Rep.), ¶ 97) and also for streaming live IPTV content (*id.*, ¶¶ 90-95). Similarly, Ms. Kindler calculated damages relating to stored content (i.e., the W-IFE use case) using the applicable contractual provisions relating to content updates (Ex. 2 (Kindler Op. Rep.), ¶¶ 201-206) and separately analyzed damages for the IPTV use case using the contractual provisions relating to IPTV (*id.*, ¶¶ 178-182). Both services to American involve ▇▇▇▇▇▇ ▇▇▇▇▇▇ but Ms. Kindler's report shows that she accounted for the different metrics and consequences. *Id.* at p.155, Figure 39; p.167, Table 18. And Ms. Kindler correctly referenced

information from Dr. Easttom relevant to each: for W-IFE, that "Viasat would not have been able to perform OTA content updates for airlines had it not used the '667 Patent" (*id.*, ¶ 205), and for IPTV, that "Viasat could not have delivered the same availability and quality of IPTV service" (*id.*, ¶ 181).

Viasat has not identified any basis to find Ms. Kindler's analysis unreliable, regardless of whether Dr. Easttom's opinion is excluded (it should not be). Thus, Viasat's motion to exclude should be denied as to Ms. Kindler.

### III. CONCLUSION

For the foregoing reasons, Viasat's motion to exclude should be denied in its entirety.

Dated: June 23, 2025                                   GIBSON, DUNN & CRUTCHER LLP

                                                       */s/ L. Kieran Kieckhefer*
                                                       L. Kieran Kieckhefer

                                                       *Counsel for Plaintiffs*