L. Kieran Kieckhefer (SBN 251978)
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94105-0921
Telephone: 415.393.8337
Email: KKieckhefer@gibsondunn.com

Robert A. Vincent (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue Suite 2100
Dallas, TX 75201-2923
Telephone: 214.698.3281
RVincent@gibsondunn.com

Lillian J. Mao (SBN 267410)
GIBSON, DUNN & CRUTCHER LLP
310 University Avenue
Palo Alto, CA 94301-1744
Telephone: 650.849.5307
LMao@gibsondunn.com

Ahmed ElDessouki (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.2345
AElDessouki@gibsondunn.com

Brian M. Buroker (*pro hac vice*)
Shuo Zhang (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1700 M St, N.W.
Washington DC 20036-4504
BBuroker@gibsondunn.com
SZhang@gibsondunn.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| SANDISK TECHNOLOGIES, INC., et. al.,<br><br>              Plaintiffs,<br><br>      v.<br><br>VIASAT, INC,<br><br>              Defendants | Case No. 4:22-CV-4376-HSG-PHK<br><br>**SANDISK'S REPLY IN SUPPORT OF** *DAUBERT* **MOTION TO EXCLUDE CERTAIN OPINIONS OF GARETH MACARTNEY, PH.D**<br><br>Date:      August 21, 2025<br>Time:      2:00p.m.<br>Dept.:      Courtroom 2, 4th Floor<br>Judge:      Hon. Haywood S. Gilliam, Jr. |

Gibson, Dunn &
Crutcher LLP

SANDISK'S REPLY IN SUPPORT OF DAUBERT MOTION
TO EXCLUDE CERTAIN OPINIONS OF GARETH MACARTNEY, PH.D
CASE NO. 4:22-CV-4376-HSG-PHK

## I.    INTRODUCTION

Viasat's opposition does not contest that its damages expert, Dr. Macartney, lacks technical expertise relevant to this case.  Instead, Viasat attempts to bolster Dr. Macartney's opinions with technical evidence he did not consider and to recast his technical opinions as "economic" in nature.

Regarding the ███ agreement, Viasat does not dispute that a showing of technical comparability is required.  But while Viasat attempts to make a showing of comparability through attorney argument, it does not identify any technical evidence Dr. Macartney actually relied on to form his opinions (or that would have been sufficient had he done so).

Regarding the Arconics agreement, Viasat seeks to lower the bar regarding what Dr. Macartney was required to show.  To avoid exclusion, Dr. Macartney must do more than simply allege a loose connection between the Arconics agreement and the patented technology.  He must both establish technological comparability and "soundly account[]" for differences between the Arconics agreement and the hypothetical negotiation.  *MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1375 (Fed. Cir. 2021).  Dr. Macartney did neither.

Finally, Viasat misunderstands Sandisk's motion regarding Dr. Macartney's opinions regarding bitrate.  Sandisk does not seek to exclude Dr. Macartney's alternative damages calculation using a different bitrate input than that used by Sandisk's expert, Ms. Laura Kindler.  To the contrary, Sandisk agrees that each expert's selection of the applicable bitrate to include in their respective analyses is properly left to cross examination.  Sandisk merely seeks to exclude Dr. Macartney's specific criticism that Ms. Kindler's choice "disregard[]s standard video compression," a technical opinion he is indisputably unqualified to offer.

Underscoring the narrow focus of Sandisk's motion, Viasat rightly points out that Sandisk challenges only three paragraphs of Dr. Macartney's report—paragraphs 76, 87, and 121. Opp. at 3.  Moreover, striking these paragraphs does not eliminate Viasat's damages theories.  Striking Dr. Macartney's opinion on the ███ agreement still leaves him with an alternative damages theory for the '400 patent.  Striking his opinion on the Arconics agreement excludes only a purported "reality check" on Ms. Kindler's analysis.  And striking his technical criticism of Ms. Kindler's bitrate leaves his affirmative

1

Gibson, Dunn &
Crutcher LLP

1    bitrate analysis intact. Sandisk's motion focuses on these specific opinions, which clearly lack the

2    technical support they require. These opinions should be excluded.

3    **II.    ARGUMENT**

4           **A.    Viasat identifies no evidence that Dr. Macartney relied on to demonstrate alleged**
              **technical comparability of the ████ agreement.**

5
6           To support its argument that Dr. Macartney's opinions regarding the ████ agreement should

7    not be excluded, Viasat relies on evidence *not in Dr. Macartney's report*. Citing Sandisk's infringe-

8    ment contentions, Sandisk's expert report, and Viasat's expert report, Viasat argues that "Viasat's

9    agreement with ████ concerns the very same software (the ████ software) that Plaintiffs accuse

10   of infringement." Opp. at 4–5. Setting aside Viasat's mischaracterizations of Sandisk's infringement

11   theories, Dr. Macartney cites *none* of this evidence to support his opinions. Viasat does not dispute

12   that Dr. Macartney lacks any qualifications to determine the technical comparability of the ████

13   agreement with the '400 patent. *See* Mot. at 7. Viasat also does not dispute that Dr. Macartney cites

14   *no evidence*, and no discussion with Viasat's technical expert, to support any alleged technical compa-

15   rability. *See id.* Viasat is simply wrong that the parties' dispute is about the "degree of comparability."

16   Opp. at 6. Dr. Macartney's opinions are devoid of evidence supporting *any* degree of technical com-

17   parability. Dkt. 209-3 ¶ 121. These undisputed facts warrant exclusion. *Apple Inc. v. Samsung Elecs.*

18   *Co.*, No. 12-cv-00630-LHK, 2014 WL 794328, at *11 (N.D. Cal. Feb. 25, 2014) (excluding damages

19   expert opinions as unreliable "[w]ithout some attempt to address the technological differences and

20   similarities of the agreements in the record").

21          None of Viasat's cited cases support absolving Dr. Macartney from his complete lack of anal-

22   ysis regarding comparability. Indeed, they do the opposite. In *Palantir Techs. Inc. v. Abramowitz*, No.

23   19-cv-06879-BLF, 2022 U.S. Dist. LEXIS 255622 (N.D. Cal. Nov. 3, 2022), the court stated that

24   "[w]here a district court concludes that an expert has *made a showing of baseline comparability* the

25   degree of comparability is appropriately left for the jury to decide." *Id.* at *34–*35 (citation omitted)

26   (emphasis added). There, the expert explained the basis of her reliance on the plaintiff's own prior

27   licenses involving the very trade secrets being asserted against the defendant, and she also "identifie[d]

28   other similarities between the licenses she analyzed and the license she contends would result from a

Gibson, Dunn &
Crutcher LLP

1    hypothetical negotiation." *Id.* Dr. Macartney has made no such showing. And unlike in *Fractus S.A.*

2    *v. Samsung Elecs. Co.*, 876 F. Supp. 2d 802, 837 (E.D. Tex. 2012) (which involved a post-trial motion

3    to overturn the jury's damages award, not a *Daubert* motion), Dr. Macartney does not even attempt to

4    show that the ███ license "relate[s] to the technology" at issue here. *Id.* at 837.

5         Indeed, Viasat's citation of *Vidstream, LLC v. Twitter, Inc.*, No. 3:16-CV-00764-N, 2025 WL

6    624514 (N.D. Tex. Feb. 25, 2025) perhaps best highlights the deficiencies in Dr. Macartney's analysis.

7    As Viasat's own parenthetical states, to the extent an expert seeks to rely on a non-license agreement

8    (like the ███ agreement), that agreement must be "closely comparable, and the expert [must] *ex-*

9    *pressly address[] the differences between those negotiations and any hypothetical negotiations*."

10   Opp. at 5 (quoting *Vidstream*, 2025 WL 624514 at *2) (emphasis added). That is precisely the "ex-

11   press" analysis that is lacking in Dr. Macartney's report.

12        Viasat, through irrelevant attorney argument, attempts to establish that "the ███ technology

13   ("███ is the accused technology." Opp. at 4–5. Contrary to Viasat's argument, its technical expert,

14   Dr. Almeroth, did not opine that the ███ agreement "covers the accused technology for the '400

15   patent." Opp. at 4. The cited portion of Dr. Almeroth's report simply identifies the ███-supplied

16   technology that is purportedly relevant to Sandisk's infringement analysis; it does not state that the

17   ███-supplied technology is sufficient on its own to practice the '400 patent. *See* Dkt. 225-2 at ¶¶ 43–

18   44. Indeed, Viasat identifies portions of Sandisk's infringement contentions and expert report citing

19   ███ technology for one element of the '400 patent. Opp. at 4. There is no opinion from Viasat's

20   technical expert (or anyone else) that the ███-supplied technology is co-extensive with the '400

21   patent. And even if there were, Dr. Macartney *does not rely* on any such opinion, nor—critically—

22   does he attempt to account for any differences between the ███-supplied technology and the scope

23   of the '400 patent.

24        Dr. Macartney could have attempted to "account for the differences between the accused tech-

25   nology and the licensed technology" by "rel[ying] on the reports, testimony, and conclusions of other

26   witnesses to understand that the licenses were technologically comparable." *Bio-Rad Labs., Inc. v.*

27

28

*10X Genomics Inc.*, 967 F.3d 1353, 1377 (Fed. Cir. 2020). Instead, he relied on no evidence. Accordingly, his opinion regarding the ███ agreement in paragraph 121 of his report should be excluded.

### B. Dr. Macartney fails to provide any technical basis for his opinions regarding the Arconics agreement.

Like his opinions regarding the ███ agreement, Dr. Macartney's opinions regarding the Arconics agreement require a technical assessment that he is unqualified to give and for which he cites no supporting evidence. Indeed, Viasat admits that "Dr. Macartney's analysis of this purchase agreement was economic, not technical." Opp. at 7. But to serve as a "reality check" on damages, Dr. Macartney was at least required to provide some analysis regarding how the scope of the technology acquired from Arconics relates to the scope of the asserted patents—an indisputably technical analysis he is unqualified to perform.

Viasat appears to argue that any technical relationship between a purportedly comparable agreement and the patented technology gives a damages expert *carte blanche* to provide opinions on that agreement. Opp. at 6–7. To the contrary, for an expert to rely on an agreement for damages purposes, it "need[s] to be sufficiently comparable for evidentiary purposes *and any differences in circumstances must be soundly accounted for*" to avoid exclusion. *MLC Intellectual Prop.*, 10 F.4th at 1375 (emphasis added). Here, Dr. Macartney makes no attempt to account for—soundly or otherwise—the difference in circumstances between the Arconics agreement and the hypothetical negotiation.

The issue with Dr. Macartney's analysis is not whether the Arconics agreement has any relevance to the accused technology, or whether the Arconics agreement is "perfectly analogous" to the hypothetical negotiation. Opp. at 6 (quoting *Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, No. 15-CV-02177-SI, 2017 WL 4772348, at *3 (N.D. Cal. Oct. 23, 2017). Rather, the flaw in Dr. Macartney's analysis is that he has not attempted to account for the differences between the value of Arconics-supplied technology and the full scope of Viasat's infringement of the Asserted Patents. Viasat, again through attorney argument, states that the Arconics agreement "is the purchase agreement for the very same W-IFE business Plaintiffs accuse." Opp. at 6; *see also id.* at 7 (arguing that the Arconics agreement "encompassed exactly what Plaintiffs accuse"). To the contrary, as explained in Sandisk's motion, "according to [Dr. Macartney's] own description, Arconics provided some, but not

4

all, of the technology for Viasat's W-IFE offering"—a fact that Viasat does not dispute. Mot. at 8. Viasat also does not dispute that Dr. Macartney fails to link the Arconics agreement with IPTV, necessarily meaning that it cannot serve as a "check" on damages for that separate infringing use case. *Id.*

Sandisk agrees with Viasat that the *Bio-Rad* case is instructive. Opp. at 8 n.2. There, the district court had **excluded** an expert's opinions "because he relied on [] benchmark licenses as having built in apportionment, without conducting a separate apportionment analysis, and without a logical basis for doing so." *Bio-Rad Lab'ys, Inc. v. 10X Genomics, Inc.,* No. CV 15-152-RGA, 2018 WL 5729732, at *2 (D. Del. Nov. 2, 2018). The court only allowed the expert's opinions after he provided a supplemental report in which he "found the relative value of the licensed technology to the licensed products comparable to the relative value of the asserted patent to the accused product," and "he opined that the royalty rates in the benchmark licenses were apportioned in a comparable fashion to the royalty rate in the hypothetical license." *Id.* The expert was also permitted to rely on another agreement as a "floor for his reasonable royalty" because he "opined that no adjustment would be necessary in order to account for technical comparability, as both the [comparable license] and the hypothetical negotiation relate to substantially the same portfolio of patents" and the license "included the asserted patents." *Id.* at *3.

Here, by contrast, Dr. Macartney does nothing to account for the differences between the Arconics agreement and the hypothetical negotiation. The Arconics agreement indisputably does not involve the Asserted Patents, and it indisputably does not account for the full scope of Viasat's infringing technology. Accordingly, Dr. Macartney was required to provide at least some explanation, supported by competent technical evidence, for his opinion that the value of the Arconics technology acquired by Viasat can effectively serve as a ceiling on damages for Viasat's infringement. This is not an issue for which cross-examination of Dr. Macartney's analysis is "the proper vehicle" (Opp. at 8), because there is **no analysis to cross examine**. And Sandisk does not fault Dr. Macartney for failing to use "magic words." Opp. at 6 (quoting *TVIIM, LLC v. McAfee, Inc.,* No. 13-CV-04545-HSG, 2015 WL 4148354, at *3 (N.D. Cal. July 9, 2015)). Rather, his complete failure to use **any** words to account

Gibson, Dunn &
Crutcher LLP

for the differences between the Arconics agreement and the hypothetical negotiation warrants exclusion. *MLC Intellectual Prop.*, 10 F.4th at 1375.

### C.     Dr. Macartney's opinion regarding "compression" should be excluded.

Viasat appears to misapprehend the limited scope of Sandisk's motion with regarding to Dr. Macartney's opinions on "bitrate." By way of background, Sandisk's damages expert, Ms. Laura Kindler, provided an opinion regarding the cost savings Viasat achieves through use of the '667 patent that relies, as one input, on the bitrate at which video is wirelessly transmitted to end users. *See* Dkt. 228 at 6–7. For her bitrate input, Ms. Kindler relied on a value provided by Viasat on a website directed to its customers. *Id.* Dr. Macartney responds to that analysis by performing an alternative calculation using a different bitrate value he purportedly takes ███████████████████████. Opp. at 11. Sandisk does not seek to exclude those opinions, which includes Dr. Macartney's reliance on the ████████████ agreement.

Rather, Sandisk's motion targets a specific criticism Dr. Macartney makes of Ms. Kindler's analysis—namely, that the bitrate value she takes from Viasat's website "disregard[s] standard video compression." *See* Mot. at 9. Confusing the issue, Viasat argues that "[i]f Ms. Kindler is qualified to select inputs on which to rely to calculate bitrates, Dr. Macartney is qualified to point out what was ***not*** considered." Opp. at 10 (emphasis in original). The issue is not whether the experts are qualified to "select inputs"—both Ms. Kindler and Dr. Macartney select bitrate inputs, and Sandisk does not seek to exclude Dr. Macartney's alternative calculation using his bitrate input. What Dr. Macartney cannot do—because he indisputably lacks the relevant expertise—is make an affirmative statement regarding the technical characteristics of the bitrate value selected by Ms. Kindler. Simply put, Dr. Macartney cannot possibly know whether the bitrate value provided on Viasat's website does or does not "take compression into account," and he cites no evidence to support his unfounded criticism.

There is no "double standard" in Sandisk's motion. Opp. at 10. Ms. Kindler's bitrate analysis does not require any assumptions or knowledge about compression techniques used (or not used) by Viasat. It simply assumes that Viasat is not misleading its customers when it publicly states the amount of data required to transmit video over Viasat's satellite network. Viasat is free to cross examine Ms.

Gibson, Dunn &
Crutcher LLP

1 | Kindler on her choice of bitrate input, just as Sandisk is free to cross examine Dr. Macartney on his

2 | choice of bitrate input. But Dr. Macartney's indisputably technical criticism that Ms. Kindler's choice

3 | "disregard[s] standard video compression" should be excluded.

4 | **D.      The court should not permit a supplemental report.**

5 |     Contrary to Viasat's argument, Dr. Macartney's opinions regarding the ███ and Arconics

6 | agreements are not flawed because they lack "magic words." Opp. at 9. The problem is not the vo-

7 | cabulary Dr. Macartney used to describe the analysis he performed; the problem is that he did not do

8 | the required analysis ***at all***.

9 |     Again, Viasat's own cited case is instructive. In *W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*,

10 | No. CV 11-515-LPS-CJB, 2015 WL 12731924 (D. Del. Nov. 4, 2015), the damages expert in her

11 | opening report—unlike Dr. Macartney—"articulate[d] why she believes there to be sufficient techno-

12 | logical comparability (and why, for other reasons, the agreements are comparable to the hypothetical

13 | negotiation here)." *Id.* at *5. The damages expert also—unlike Dr. Macartney—testified in deposition

14 | that she "relied exclusively on her conversation with [a technical expert] in reaching a conclusion re-

15 | garding technological comparability." *Id.* at *6. The court noted that, "[a]s a general matter, there is

16 | nothing wrong with such a practice in the instant context—in patent cases, damages experts routinely

17 | rely on facts and opinions provided by technical experts when rendering their damages analysis." *Id.*

18 | The "problem" was that the technical experts' reports "contain[ed] no opinions" regarding compara-

19 | bility of the relevant licenses. *Id.* Because the damages expert's opinions were "critical to [the plain-

20 | tiff's] damages case," the court allowed the technical expert—not the damages expert—to provide a

21 | "short addendum" to memorialize the comparability opinions he had already conveyed to the damages

22 | expert, the general substance of which the damages expert discussed in her deposition. *Id.* at *7.

23 |     Unlike in *W.L. Gore*, to the extent Dr. Macartney's opinions could be salvaged, it would require

24 | more than simply providing a written articulation of a previous oral analysis already disclosed to

25 | Sandisk. It would require Dr. Macartney to perform a ***new analysis*** which he indisputably has not yet

26 | done. Nor are Dr. Macartney's disputed opinions "critical" to his damages analysis. As noted in

27 | Sandisk's motion, striking Dr. Macartney's opinions regarding the ███ agreement still leaves him

28 |

Gibson, Dunn &
Crutcher LLP

1    with a separate damages opinion for the '400 patent.  Mot. at 3.  His opinion regarding the Arconics

2    agreement is not an affirmative damages theory, but is simply a "reality check" on Ms. Kindler's dam-

3    ages analysis.  Opp. at 1.  And excluding his criticism that Ms. Kindler's bitrate input "disregard[s]

4    standard video compression" still leaves intact his alternative bitrate calculation.

5            Dr. Macartney's opinions relevant to this motion are not critical to Viasat's damages case, nor

6    can they be remedied by a supplement memorializing a previously performed analysis.  Indeed, Vi-

7    asat's request to supplement Dr. Macartney's report, which would be based on information wholly

8    available to but not considered by Dr. Macartney before he served his report, is entirely inconsistent

9    with its opposition to Ms. Kindler's supplemental report, which relies on data Viasat did not produce

10   in time for her to consider in her opening report.  *See* Dkt. 228.  Viasat's request to supplement should

11   be rejected.

12   **III.    CONCLUSION**

13           For the foregoing reasons, Sandisk respectfully requests that the Court exclude the testimony

14   and opinions of Dr. Macartney on the issues identified above.

15

16   Dated: July 3, 2025                                    GIBSON, DUNN & CRUTCHER LLP

17                                                          */s/ L. Kieran Kieckhefer*
                                                           L. Kieran Kieckhefer

18                                                          *Counsel for Plaintiffs*

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP