QUINN EMANUEL URQUHART & SULLIVAN, LLP
Steven Cherny (*pro hac vice*)
stevencherny@quinnemanuel.com
Patrick D. Curran (Bar No. 241630)
patrickcurran@quinnemanuel.com
Hannah E. Dawson (*pro hac vice*)
hannahdawson@quinnemanuel.com
Tzivya H. Beck (*pro hac vice*)
tzivyabeck@quinnemanuel.com
111 Huntington Ave, Suite 520
Boston, MA 02199
Telephone:   (617) 712-7100

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Nicola R. Felice (*pro hac vice*)
nicolafelice@quinnemanuel.com
Anastasia M. Fernands (*pro hac vice*)
anastasiafernands@quinnemanuel.com
Vanessa Blecher (*pro hac vice*)
vanessablecher@quinnemanuel.com
Alicia Lai (*pro hac vice*)
alicialai@quinnemanuel.com
295 5th Avenue
New York, NY 10016
Telephone:   (212) 849-7000

*Attorneys for Defendant Viasat, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

| | |
|---|---|
| SANDISK TECHNOLOGIES, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> VIASAT, INC., <br><br> Defendant. | Case No.: 4:22-cv-4376-HSG <br><br> **DEFENDANT VIASAT, INC.'S REPLY IN SUPPORT OF MOTION TO STRIKE PORTIONS OF SANDISK'S EXPERT REPORTS** <br><br> Date: August 21, 2025 <br> Time: 2:00 pm |

# TABLE OF CONTENTS

Page

I. DR. EASTTOM'S INFRINGEMENT THEORIES CONCERNING THE "INDICATION" TERM OF THE '667 PATENT ARE UNTIMELY AND PREJUDICIAL ..................................................................................................2

    A. Dr. Easttom Advanced Two New Theories, Not One "Elaboration" .........................2

    B. Plaintiffs Did Not Disclose Either Theory In Their Operative Infringement Contentions ...............................................................................................................3

    C. Plaintiffs Reliance On Their Rejected January 2025 Contentions is Misleading and Misplaced ......................................................................................5

I. THE COURT DENIED SANDISK LEAVE TO AMEND THE SAME "PORTABILITY" THEORY DR. EASTTOM IS NOW ADVANCING FOR THE '400 PATENT ..................................................................................................................7

II. PLAINTIFFS' EXPERT OPINIONS ON IPTV SHOULD BE STRICKEN .......................8

    A. Plaintiffs' Infringement Theories For The IPTV Product Should Be Stricken ..........8

    B. Plaintiffs' Opinions Seeking Damages For Unaccused IPTV Revenues Should Be Stricken .................................................................................................12

III. CONCLUSION ...................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Berger v. Rossignol Ski. Co.*,
 No. 05-02523, 2006 WL 1095914 (N.D. Cal. Apr. 25, 2006) .................................................. 1

*DSS Tech. Mgmt., Inc. v. Apple, Inc.*,
 No. 14-CV-05330-HSG, 2020 WL 210318 (N.D. Cal. Jan. 14, 2020) ................................. 1, 4

*KlausTech, Inc. v. Google LLC*,
 2018 WL 5109383 (N.D. Cal. Sept. 14, 2018) ........................................................................ 5

*Minco, Inc. v. Combustion Eng'g, Inc.*,
 95 F.3d 1109 (Fed. Cir. 1996) ............................................................................................... 13

*Netfuel, Inc. v. Cisco Sys. Inc.*,
 No. 5:18-CV-02352-EJD, 2020 WL 4381768 (N.D. Cal. July 31, 2020) .............................. 13

*Opticurrent, LLC v. Power Integrations, Inc.*,
 No. 17-CV-03597-EMC, 2019 WL 2389150 (N.D. Cal. June 5, 2019) ........................... 10, 12

*Rite-Hite Corp. v. Kelley Co.*,
 56 F.3d 1538 (Fed. Cir. 1995) ............................................................................................... 13

*Unicorn Energy AG v. Tesla Inc.*,
 No. 21-CV-07476-BLF, 2023 WL 9181575 (N.D. Cal. Dec. 20, 2023) .................................. 9

This case perfectly illustrates why the Patent Local Rules require disclosure showing how each accused product allegedly meets each limitation of the asserted patent claims. That disclosure is meant to "crystallize" infringement theories early and thus streamline litigation. Plaintiffs' conduct here, by contrast, exemplifies the "vexatious shuffling of positions" that the Patent Local Rules prohibit. *Berger v. Rossignol Ski. Co.*, No. 05-02523, 2006 WL 1095914, at *3 (N.D. Cal. Apr. 25, 2006).

On the '667 patent, Plaintiffs claim Dr. Easttom's infringement theories for the "indication of a secure region" limitation are mere "elaborations" on what Plaintiffs timely disclosed. Dkt. 231-2 at 16. This is not correct. Plaintiffs' operative infringement contentions do not contain Dr. Easttom's current theories on this limitation. That is precisely why Plaintiffs sought leave to add these very infringement theories to their contentions in January 2025. But the Court denied leave to amend, and so Plaintiffs are trying to inject the same theories into the case via its expert. This end-run around the rules is prohibited. *See, e.g., DSS Tech. Mgmt., Inc. v. Apple, Inc.*, No. 14-CV-05330-HSG, 2020 WL 210318, at *5 (N.D. Cal. Jan. 14, 2020) (striking expert's infringement theories; "[b]ecause the Court finds that DSS failed to show diligence in moving to amend its infringement contentions, [and] the Court agrees that the expert report impermissibly relies upon [that] theory").

The same is true for the '400 patent: Plaintiffs argue that Dr. Easttom's infringement theories regarding the term "portable" are not new. But Dr. Easttom's opinions are copied nearly *verbatim* from Plaintiffs' rejected infringement contentions. Plaintiffs cannot advance the exact same untimely theory now under the guise of expert opinion.

Finally, as to the unaccused IPTV product, Plaintiffs now allege that it is not a "product" at all, but simply part of Viasat's separate IFE (or W-IFE) and VCDS products that Plaintiffs actually accused. This is not correct—and in the context of prior discovery disputes, Judge Kang already rejected this argument not once, but **twice**. Indeed, after Viasat filed this motion to strike Plaintiffs' untimely expert opinions on IPTV (Dkt. 201-2), Judge Kang issued a new order (Dkt. 215) reaffirming that discovery should not be compelled on IPTV because it is not an Accused Instrumentality in the infringement contentions. As Judge Kang noted, documents Plaintiffs cited in their infringement contentions "recognize and discuss IFE as being ***a separate product*** from the

1  IPTV product," leading Judge Kang to *reject* Plaintiffs' argument that "by accusing IFE[,] SanDisk somehow included IPTV." Dkt. 215 at 9-10 (emphasis added). Plaintiffs did not object to this ruling. Yet Plaintiffs now reargue the same point that was considered and rejected (several times) in the context of discovery disputes. Because Viasat's IPTV product was not named as an Accused Instrumentality in the infringement contentions, Dr. Easttom's opinions regarding Viasat's IPTV product, as well as Dr. Kindler's damages calculations for this unaccused product, should be struck.

I.  **DR. EASTTOM'S INFRINGEMENT THEORIES CONCERNING THE "INDICATION" TERM OF THE '667 PATENT ARE UNTIMELY AND PREJUDICIAL**

Plaintiffs claim that Dr. Easttom's two new theories—the "encryption" theory based on the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ theory based on the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—were identified in their March 2024 infringement contentions. According to Plaintiffs, Dr. Easttom "merely elaborates on the manner in which Viasat allegedly infringes." Dkt. 231-2 at 16 (internal citations omitted). This is wrong. Plaintiffs' contentions do not contain a single reference to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, or to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The unrelated disclosures that Plaintiffs cite in their Opposition only confirm this.

A.  **Dr. Easttom Advanced Two New Theories, Not One "Elaboration"**

As an initial matter, Plaintiffs' Opposition treats Dr. Easttom's two separate theories for the "indication" term as one, referring to "*this* theory" or "*the* theory." *Id.* at 15-19. But Dr. Easttom sets forth two distinct infringement theories:

Theory #1: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Viasat's Motion describes the "encryption" theory, which concerns ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ contained within ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Dkt. 201-2 at 7-9. Dr. Easttom opines that this variable constitutes an "indication of a secure region" because it ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Dkt. 201-3 ¶ 555. Dr. Easttom alleges Viasat ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶ 558.

1   Theory #2: ▮▮▮▮▮▮▮▮▮▮ Viasat's Motion describes the ▮▮▮▮▮▮▮▮

2   ▮▮ theory (Dkt. 201-2 at 9-10), which concerns ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3   ▮▮▮▮▮▮▮▮▮▮ folder containing that content file. Dr. Easttom alleges that there is a ▮▮▮▮

4   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt.

5   201-3 ¶ 562. According to Dr. Easttom, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7   *Id.* ¶¶ 562, 72.

8   These are two separate theories. One involves the ▮▮▮▮▮▮▮ of an entire device and ▮

9   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The other theory is based on ▮▮▮▮▮▮▮▮▮▮▮

11  ▮▮▮▮▮▮▮▮▮▮▮ Dr. Easttom does not opine that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ are

12  in any way related to, let alone the same as, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

13  ▮▮▮▮▮▮▮▮▮▮▮

14  **B.   Plaintiffs Did Not Disclose Either Theory In Their Operative Infringement Contentions**

15

16  Plaintiffs cite snippets from their operative March 2024 contentions to claim that Dr.

17  Easttom's new theories of infringement were actually timely disclosed. Specifically, Plaintiffs

18  characterize their contentions as discussing whether ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20  ▮▮ Dkt. 231-2 at 15-16. But these characterizations do not match Dr. Easttom's infringement

21  theory. The March 2024 contentions simply say there is a storage device that is encrypted (Dkt. 188-

22  3 at 39-45); that is not the same as saying that a different device receives a specific *indication* that

23  a region within a storage device is (or is not) encrypted. Nor does it disclose *what* that "indication"

24  might be. Similarly, Plaintiffs' operative contentions state that *files* are made accessible to users

25  (Dkt. 188-3 at 46-49); that is not the same as contending that there are ▮▮▮▮▮▮▮▮▮▮▮▮▮

26  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, or explaining how the ▮▮▮▮▮▮▮ are a supposed "indication" of a secure

27  region that is "received" by anything.

28

-3-   Case No. 4:22-cv-4376-HSG
VIASAT'S REPLY IN SUPPORT OF MOTION TO STRIKE PORTIONS OF SANDISK'S EXPERT REPORTS

|   |   |
|---|---|
| 1 | Indeed, even a cursory review of Plaintiffs' operative infringement contentions show that |
| 2 | Dr. Easttom's encryption theory was not disclosed. The term "encrypted" appears only *once*, in |
| 3 | connection with a ***different claim limitation*** and in a screenshot discussing ▓▓▓▓▓▓ |
| 4 | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ that supposedly constitutes an |
| 5 | "indication of a secure region." Dkt 188-3 at 57. The terms ▓▓▓▓▓▓▓▓▓▓ |
| 6 | ▓▓▓▓▓▓▓ are not present at all in Plaintiffs' March 2024 infringement contentions. Dkt. 188- |
| 7 | 3 at 32-49. Plaintiffs' ▓▓▓▓▓▓▓ theory simply does not appear in the operative |
| 8 | infringement contentions. *Id.* That is presumably why Plaintiffs sought leave to add this very theory |
| 9 | to its infringement contentions in January 2025. Dkt. 157 at 2, 7 ("The proposed amendments . . . |
| 10 | explain[] that the file contains a variable named 'encrypted' that 'indicates the presence of a secure |
| 11 | region.'"); Dkt. 146-5 at 48-49 (redline version of Plaintiffs' Jan. 2025 Proposed Amended |
| 12 | Contentions). If this theory were properly disclosed in the operative contentions, Plaintiffs would |
| 13 | have had no need to seek amendment. Because the operative contentions do not disclose the |
| 14 | encryption theory, it should be struck. *See, e.g., DSS Tech. Mgmt.*, 2020 WL 210318, at *6–7 |
| 15 | (striking expert opinion on particular mode of operation where "there are no specific limitations that |
| 16 | refer to" the functionality; "[t]he purpose of Patent Local Rule 3–1 is in fact to be nit-picky, to |
| 17 | require a plaintiff to crystalize its theory of the case and patent claims," and "the Amended PICs did |
| 18 | not put Apple on notice of the theory that the accused products operating in both [modes] infringed") |
| 19 | (quote omitted). |
| 20 | The same is true for Plaintiffs' new ▓▓▓▓▓▓▓▓▓▓ theory. Dkt. 201-2 at 9- |
| 21 | 10. The term "DRM" appears just four times in Plaintiffs' infringement contentions, and ***never*** in |
| 22 | connection with the "indication of a secure region" limitation. Dkt. 188-3 at 60, 75. Each time |
| 23 | "DRM" appears it is merely embedded in source code citations for other limitations: For example, |
| 24 | "[t]he folder 2023-04-18 ViasatCode contains: ▓▓▓▓▓▓▓▓▓ |
| 25 | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* at 60 |
| 26 | (emphasis added). The contentions do not to identify a ▓▓▓▓▓▓▓▓▓▓ or a |
| 27 | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *Id.* at 60, 75. Indeed, the terms ▓▓▓▓▓▓ |
| 28 | never appear in the March 2024 contentions. *See generally id.* at 1-60. |

Recognizing their operative contentions do not expressly disclose these theories, Plaintiffs suggest that general citations to high-level source code files nevertheless sufficed to disclose their current theories for the "indication of a secure region" limitation. According to Plaintiffs, ▉ ▉ file provides support for the purported 'encryption theory,' and ▉ ▉ file provides support for the purported 'file path theory,'"[1] and because "Sandisk identified *only three source code files* in support of this limitation," Viasat was sufficiently "on notice of Sandisk's infringement theories" (emphasis in original). Dkt. 231-2 at 16-18. Not so. The "three source code files" cited by Plaintiffs include nearly *4,600 lines of code*. In his report, Dr. Easttom cites to just *twelve lines* of that code to allege infringement. Dkt. 201-3 ¶¶ 553-81. The same 4,600 lines of code define *136 functions*; Dr. Easttom cites only two of them. *Id.* ¶¶ 556-557. The "three source code files" define at least *61 variables*; Dr. Easttom relies on only one. *Id.* ¶ 555. The Patent Local Rules do not let plaintiffs accuse a haystack in their contentions and then identify the needle during expert discovery. *Cf. KlausTech, Inc. v. Google LLC*, 2018 WL 5109383, at *8 (N.D. Cal. Sept. 14, 2018), *subsequently aff'd*, 792 F. App'x 954 (Fed. Cir. 2020) (striking theory based on an "IP address and Port Number" where the contentions only disclosed a "HTTP header," because while "the HTTP header includes the IP address and Port Number," plaintiffs had not disclosed that they would rely on the IP address and Port Number to allege that the claims were infringed).

### C. Plaintiffs Reliance On Their Rejected January 2025 Contentions is Misleading and Misplaced

Plaintiffs claim that because Viasat's final non-infringement interrogatory response and its invalidity report "relied on" and "addressed" the "encryption" theory, "Viasat's claims of untimely disclosure are thus baseless and should be rejected." Dkt. 231-2 at 18. This position is misleading and meritless.

---

[1] This is not correct; the ▉ relates to the "encryption" theory, not the ▉ theory. In fact, Dr. Easttom does not cite *any* source code to support his ▉ theory, so Plaintiffs cannot rely on code as having disclosed that theory. Dkt. 201-3 ¶¶ 553-81.

Plaintiffs' "encryption" theory was first disclosed on January 3, 2025, when Plaintiffs served an untimely amendment to their infringement contentions that was ultimately *rejected* by the Court. Dkt. 182; Dkt. 157 at 2, 7; Dkt. 146-5 at 48-49. But the Court did not issue its order denying leave to amend until March 12. Until then, Viasat did not know whether Plaintiffs would be permitted to advance this new theory, so Viasat addressed it in its February 7, 2025, non-infringement contention responses. But even after the Court issued its Order, Viasat anticipated that Plaintiffs might attempt to introduce the same rejected theory through experts because, as explained in Viasat's pending motion for summary judgment of non-infringement (Dkt. 205), Plaintiffs have no other theory that even attempts to address the Court's construction of this claim. So Viasat's invalidity expert addressed these theories prophylactically, noting that while he "understand[s] that the operative set of infringement contentions is Plaintiffs' March 22, 2024 contentions, and that Plaintiffs are not proceeding on the new infringement theories set forth in their January 3 supplement," he was offering the non-infringing alternative "*to the extent* Plaintiffs *attempt* to [advance any arguments relying on the 'encrypted' variable]." [2] Dkt. 211-2 ¶ 504 (emphasis added). It appears that Viasat and its expert were right to be concerned.

Viasat's concern does not convert an untimely infringement theory into a timely one. Viasat was aware of Plaintiffs' untimely "encryption" theory when it served its non-infringement contention responses and invalidity report *because* Plaintiffs unsuccessfully sought leave to add that theory to the case. Plaintiffs cannot now argue that being *denied* leave to amend somehow granted them carte blanche to amend later through an expert report. Put differently, Plaintiffs cannot ignore the Court's prior ruling because Viasat attempted to mitigate prejudice (Dkt. 182 at 8) as much as possible despite Plaintiffs' repeated refusals to abide by the rules and the Court's orders.[3]

---

[2] Plaintiffs would apparently have required Viasat to ignore their untimely theories and leave itself unable to respond to them at trial should they somehow survive. Viasat understands why Plaintiffs would advocate for such an imbalanced outcome, but this Court should reject it.

[3] Plaintiffs claim (at 19) that "Viasat has failed to articulate any prejudice" because Viasat has not shown what, if anything, it would have done differently." But Viasat *did* articulate prejudice, explaining in its Motion that it would have explored additional prior art and non-infringement

Dr. Easttom cannot advance untimely infringement theories as his expert opinions; doing so would nullify the Court's order denying Plaintiffs' request to amend and render the Patent Local Rules meaningless.

## I. THE COURT DENIED SANDISK LEAVE TO AMEND THE SAME "PORTABILITY" THEORY DR. EASTTOM IS NOW ADVANCING FOR THE '400 PATENT

Viasat argued that "Plaintiffs should also not be permitted to introduce a new theory regarding the 'portability' of storage devices in the '400 patent because the Court previously denied Plaintiffs leave to amend their infringement contentions to add this very theory." Dkt. 201-2 at 10. Plaintiffs ignore this point and never dispute they unsuccessfully tried to amend their infringement contentions to add the very positions Dr. Easttom now advances in his report. Instead, Plaintiffs argue that their proposed amendments were unnecessary all along. Dkt. 231-2 at 19. Specifically, Plaintiffs contend that their March 2024 contentions "explicitly state that 'seatback' devices are 'portable,'" and that all Dr. Easttom did in his report was "explain why the seatback devices meet the Court's claim construction." *Id.* at 20. But this is the very same argument Plaintiffs (unsuccessfully) advanced when seeking leave to amend. *See, e.g.*, Dkt 157 at 2. Plaintiffs' opposition essentially seeks reconsideration well out of time. The same is true for Dr. Easttom's opinions under the doctrine of equivalents: Plaintiffs already unsuccessfully argued that their March 2024 contentions included a general doctrine of equivalents theory for the term "portable." *Id.* ("[A]s to the 'portable data storage device' limitation, SanDisk is not proposing a different DOE theory, contrary to Viasat's assertions."). This continued effort to undo the Court's prior ruling on the infringement contentions is untimely and vexatious.

Finally, Plaintiffs fail to address how Dr. Easttom's portability theories are not prejudicial. As with the '667 theories, Plaintiffs' new "portable" theories were found prejudicial months ago when the Court rejected Plaintiffs' proposed amended infringement contentions. Dkt. 182 at 8. They did not get less prejudicial by adding them even later in the case through Dr. Easttom's report. The

---

defenses related to the new theories. Dkt. 201-2 at 10. Plaintiffs offer no response to those examples of prejudice.

Court should strike the portions of Dr. Easttom's report regarding the "portability" of storage devices in the '400 patent. *See* Dkt. 201-3 ¶¶ 166, 169-70, 188, 190-92, 339, 352, 354-56, 376, 378-80.[4]

## II.  PLAINTIFFS' EXPERT OPINIONS ON IPTV SHOULD BE STRICKEN

Viasat's IPTV product is not, and never was, named as an Accused Instrumentality in this case. Plaintiffs assert otherwise, claiming that whether they accused IPTV "is a manufactured, albeit creative, shell game to capitalize on confusion about IPTV/Live TV" because "[t]here is no IPTV/Live TV 'product' that is distinct from what Sandisk accused—namely, provisioning IPTV/Live TV over Viasat's systems." Dkt. 231-2 at 1, 9. But it is not Viasat who is playing games. Until it filed this opposition, Plaintiffs repeatedly recognized IPTV is ***a distinct, standalone product***. Indeed, Plaintiffs repeatedly sought discovery on the IPTV product, and Judge Kang twice ***denied*** that discovery as untimely and not proportional. *See* Dkts. 183 & 215. Having lost that battle twice in the context of discovery disputes, Plaintiffs now change course and suggest IPTV is not a product at all. This is meritless and can be rejected in short order. The IPTV product was not accused and Dr. Easttom's and Ms. Kindler's opinions regarding the IPTV product should be stricken.

### A.  Plaintiffs' Infringement Theories For The IPTV Product Should Be Stricken

Plaintiffs' new contention that "[t]here is no IPTV/Live TV 'product'" is not credible (Dkt. 231-2 at 9); in discovery briefing before Judge Kang Plaintiffs repeatedly referred to IPTV as a distinct Viasat product and claimed it was accused.[5] For example, Plaintiffs unsuccessfully argued

---

[4] Plaintiffs seem to argue that "Viasat was clearly on notice of Sandisk's infringement theories" because it questioned some inventors during depositions about their understanding of "portability." Dkt. 231-2 at 20. This makes no sense. Viasat was always going to ask the patent inventors what they think the general meaning of "portability" is in the context of the patent. But asking those questions does not show that Viasat somehow had notice of Plaintiffs' *expert's* theories of infringement for that term.

[5] As noted in Viasat's motion, Plaintiffs also recognized Viasat's IPTV product as a separate product in their damages and infringement expert reports. Indeed, Dr. Easttom dedicates a substantial portion of his analysis to Viasat's "IPTV/Live TV" product, which he calls a "third use case," separate from W-IFE, that infringes the '400 and '667 patents. Dkt. 201-2 at 12. Ms. Kindler similarly apportions the significant majority of Plaintiffs' claimed damages specifically to Viasat's IPTV product, as distinct from its W-IFE product. *Id.* at 13. That Plaintiffs prepared a separate damages calculation for IPTV shows that they recognize Viasat's unaccused IPTV product is a distinct product, with

to Judge Kang that they were entitled to source code and technical documentation relating to "IPTV, another explicitly accused *product*." Dkt. 159 at 1. Plaintiffs also moved to compel "full IPTV/Live TV discovery" because "IPTV *was specifically accused*." Dkt. 188 at 1; *see also id.* ("Viasat's IPTV provides live TV on airplanes and is not generic Internet Protocol Television.").

Judge Kang denied Plaintiffs' discovery motions. First, with respect to Plaintiffs' motion to compel IPTV source code and technical documentation, Judge Kang explained that "Sandisk's infringement contentions make only passing reference to the mere existence of IPTV as an example (among other listed streaming services) of a media streaming service for purposes of 'provisioning secure media content' as required by the preamble of '400 claim 1." Dkt. 183 at 6. He further noted that "Sandisk's infringement contentions contain no accusations as to how any IPTV service is configured because the '400 claims contain no such express limitation." *Id.* at 7. As for Plaintiffs' later request to compel more general IPTV discovery, Judge Kang undertook "a detailed examination of SanDisk's infringement contentions" and determined that "SanDisk's '400 patent infringement contentions do not explicitly accuse the IPTV product of infringement," and that "SanDisk's arguments about the '667 patent contentions are even less compelling." Dkt. 215 at 8-9. Judge Kang again found "SanDisk's infringement contentions make only passing reference to IPTV as one example (among other listed streaming services) of a media streaming service for purposes of 'provisioning secure media content' as required by the preamble of '400 claim 1." *Id.* at 8-9 (citing Dkt. 145-2 at 4). Notably, "they contain no accusations as to how any IPTV product infringes any of the hardware or functional claim limitations of the '400 claims." *Id.* at 9. As for the '667 patent, Judge Kang noted that the infringement charts "nowhere mention or use the term IPTV (even as a type of formatted content)." *Id.* Judge Kang also concluded that "all the documents discussed by Viasat (and also cited in SanDisk's infringement contentions) recognize and discuss **IFE as being a separate product from the IPTV product**." *Id.* at 8-9 (emphasis added).

---

different customers, a different cost to those customers, and different revenues. Even if these were not separate products (they are) Plaintiffs' new claims to the contrary would raise serious questions about apportionment, and how Plaintiffs could demand starkly different royalties depending solely on the type of content displayed.

Now, having repeatedly lost discovery disputes where Plaintiffs argued IPTV was a specifically accused product, Plaintiffs change course and claim IPTV was always accused, and they can seek a portion of Viasat's IPTV product revenues because the IFE and VCDS "systems that Sandisk has accused of infringement are the systems that *provide* IPTV/LiveTV" Dkt. 231-2 at 1 (emphasis in original).

This simply reargues a claim Judge Kang already rejected in the discovery context: "that, by accusing IFE SanDisk somehow included IPTV – if that were so, one would have expected SanDisk to have cited such documents in its contentions." Dkt. 215 at 8-9. Indeed, "[t]he contention that IPTV content could be delivered [via the accused systems] is not the same thing as accusing the IPTV product." *Id.* at 9; *id.* ("The fact that the VCDS may deliver IPTV-formatted content, again, is not the same thing as accusing the IPTV system or product of infringement."); *id.* ("[T]he fact that "Live TV" is mentioned a handful of times in the '667 contentions as an example of the kind of content the accused system can display is not, fairly read, an accusation that Viasat's IPTV product is accused of infringement.").

Plaintiffs' new effort to blur the lines on what they accused is not consistent with the Patent Local Rules. Those rules require far more specificity when identifying what is accused, precisely to avoid these types of disputes late in the case. *See, e.g., Unicorn Energy AG v. Tesla Inc.*, No. 21-CV-07476-BLF, 2023 WL 9181575, at *4 (N.D. Cal. Dec. 20, 2023) (rejecting argument that "Powerwall+" was accused because it was a "'different and unique product from Powerwall'" and "[t]he local rules require [plaintiff] to 'identif[y] accused products with specificity'") (internal citation omitted); *Opticurrent, LLC v. Power Integrations, Inc.*, No. 17-CV-03597-EMC, 2019 WL 2389150, at *15 (N.D. Cal. June 5, 2019), aff'd, 815 F. App'x 547 (Fed. Cir. 2020) ("Rule 3-1(b) does not permit parties to identify accused products by using categorical or functional identifications, or limited, representative examples. Rather, a full list of accused products must be disclosed as part of a party's infringement contentions.") (quotes omitted). Accusing the IFE and VCDS products did not put Viasat on notice that Plaintiffs also accused Viasat's separate IPTV product (as Judge Kang properly recognized in the context of resolving discovery disputes). This is especially true given the admitted distinctions between the IPTV product and the accused IFE

product. Indeed, as Plaintiffs recognize, "different Viasat source code was involved for processing requests on the plane for IPTV/Live TV as opposed to other media content." Dkt. 231-2 at 10 n.4. Plaintiffs cannot say Viasat's provision of IPTV is accused of infringement and then, a few lines later in the same brief, recognize the IPTV product has distinct source code and functionality that they never even mapped to each limitation of the asserted claims.

Indeed, Plaintiffs readily admit that they never mapped Viasat's IPTV product to the asserted claims. Rather, they argue their contentions "disclose how the systems infringe each element of each asserted claim by providing media content [generically], whether it is IPTV/Live TV *or other media content.*" Dkt. 231-2 at 3. In other words, Plaintiffs admit they are trying to prove infringement by mixing and matching functionalities and disclosures regarding different Viasat products. For example, Plaintiffs' infringement contentions make no mention of Viasat's IPTV product (or even "Live TV" generally) in connection with the '400 patent limitation requiring "obtain[ing] a unique identifier from the portable data storage device, wherein the unique identifier is specific to the portable data storage device and is concealed by the portable data storage device." Dkt. 188-2 at 39-46. The same is true of the '667 patent claim limitation requiring "transmit[ing] instruction to the NAS device to control streaming access to the digital content stored on the buffer." Dkt. 188-3 at 55-60. Thus, even if the mere provision of live television were somehow accused (it is not), Plaintiffs have no evidence that Viasat's provision of live television infringes every element of the asserted claims. The Local Patent Rules require more: identifying where each and every limitation of the claims is met by *each* Accused Instrumentality. *See* Patent L.R. 3-1(b), (c).[6]

Finally, Plaintiffs simply assert as fact that Viasat "does not dispute that providing IPTV/Live TV over the accused Viasat systems is accused of infringement: 'the allegation is that

---

[6] Plaintiffs contend that they complied with the local patent rules by "identifying Viasat's IFE, W-IFE, and VCDS," because the rules only require that Plaintiffs identify the accused instrumentalities to the extent they are "known." Dkt. 231-2 at 10. But Plaintiffs *did* know about IPTV long before they served their operative infringement contentions in March 2024. Indeed, as Judge Kang recognized when resolving discovery disputes, Plaintiffs' operative infringement contentions cite various documents that "recognize and discuss IFE as being a separate product from the IPTV product." Dkt. 215 at 10 (citing Dkt. 188 at 5).

Viasat's accused in-flight entertainment product infringes because it can deliver Disney+, Apple Music, or IPTV/Live TV to end users.'" Dkt. 231-2 at 9 (quoting Dkt. 201-2 at 14). This is not correct. Viasat *does* dispute that its IPTV product was accused of infringement. Plaintiffs mischaracterize a reference to their contentions on the preamble of claim 1 of the '400 patent, which requires "[a] kiosk for provisioning **secure media content** to a plurality of portable data storage devices." Dkt. 188-2 at 3. Plaintiffs said "the '400 Accused Products **provide** … **access to secure media** (*e.g.*, IPTV, Disney+, and from Apple Music/TV, over 50 million songs, playlists and music videos and/or Apple Originals and Apple TV+ channels)." *Id.* Thus, Plaintiffs' claim is that the Accused Products—VCDS or the IFE product—enable access to certain media streaming services, like Apple Music. Plaintiffs did not claim that those streaming services, including Apple Music and Apple TV, are themselves accused products. Judge Kang specifically ruled on this point in the discovery context: "SanDisk's infringement contentions make only passing reference to IPTV as one example (among other listed streaming services) of a media streaming service for purposes of 'provisioning secure media content' as required by the preamble of '400 claim 1." Dkt. 215 at 8-9. The fact that television content is an example of media that can be delivered does not mean IPTV (or Apple TV) was identified as an Accused Instrumentality in the manner that the Patent Local Rules require. It was not. Dr. Easttom's effort to effectively accuse IPTV after the fact should be stricken.

### B. Plaintiffs' Opinions Seeking Damages For Unaccused IPTV Revenues Should Be Stricken

Plaintiffs claim (at 13) that even if IPTV is a separate and unaccused product, they should still receive damages in connection with IPTV. According to Plaintiffs, they are "entitled to recover the reasonable royalty that is attributable to the revenue earned from the delivery of IPTV/Live TV content—regardless of whether it is called a product, a service, or something else." Dkt. 231-2 at 14. This is wrong: Plaintiffs' infringement contentions, and its damages contentions, set out no such theory. Viasat IPTV product is distinct from the accused IFE and VCDS products, and Plaintiffs never identified the IPTV product as an accused instrumentality. Revenue Viasat generates from the sale of its unaccused IPTV product is, by definition, unaccused revenue. Plaintiffs cannot obtain

-12-     Case No. 4:22-cv-4376-HSG
VIASAT'S REPLY IN SUPPORT OF MOTION TO STRIKE PORTIONS OF SANDISK'S EXPERT REPORTS

that revenue. *See Opticurrent, LLC v. Power Integrations, Inc.*, No. 17-CV-03597-EMC, 2019 WL 2389150, at *16 (N.D. Cal. June 5, 2019), *aff'd*, 815 F. App'x 547 (Fed. Cir. 2020) (denying damages for products not included in the infringement contentions or accused of infringement, even where—unlike here—those unaccused products belonged to the same product family as the accused products, and had the same functionality as the accused products).

  Plaintiffs admit that their damages contentions failed to identify Viasat's IPTV product, but argue they can still pursue damages on unaccused product revenues because their damages contentions cited documents that allegedly "relate" to "delivery of IPTV/Live TV" and "discuss the benefits of using VCDS to deliver IPTV/Live TV content." Dkt. 231-2 at 14 (emphasis in original). But the fact that Plaintiffs' damages contentions cited documents that reference Viasat's distinct IPTV product is irrelevant absent any accusation that this product infringes and an explanation of Plaintiffs' damages theories based on the provision of that product. In essence, Plaintiffs are now arguing that while they did not accuse IPTV in their infringement contentions, and did not mention IPTV in their damages contentions, Viasat should have posited that Plaintiffs intended to capture IPTV revenues as damages. That is the opposite of how the Patent Local Rules work, and Plaintiffs' argument only further underscores the prejudice to Viasat if it were permitted. *See Netfuel, Inc. v. Cisco Sys. Inc.*, No. 5:18-CV-02352-EJD, 2020 WL 4381768, at *3 (N.D. Cal. July 31, 2020) (noting that Patent Local Rule 3-8 "requires a party to identify not only each category of damages, but also its theories of recovery, factual support for those theories, and computations of damages within each category") (quote omitted).

  The cases Plaintiffs cite are all inapposite. In *Minco, Inc. v. Combustion Eng'g, Inc.*, the patent at issue claimed a "rotary furnace for fusing minerals." 95 F.3d 1109, 1112 (Fed. Cir. 1996). As the Court explained, "the invention produced marketable fused minerals" and the parties "used the invention to compete in that market." *Id.* at *1118. The district court thus "used the sale of fused silica," not the sale of the machine itself, "as the baseline for measuring damages." *Id.* In that context, the Federal Circuit "uph[eld] the trial court's determination to use that measure of damages" because defendant "should have reasonably foreseen that infringement of the '462 patent would harm Minco's sales in the fused silica market." *Id.* That is a completely different situation than the

one here where Plaintiffs claim that they are entitled to damages based on revenue from a distinct product they never accused of infringement. Moreover, unlike in *Minco*, there is no assertion that IPTV is "a product produced by [an] infringing machine" (Dkt. 231-2 at 13)—rather, it is one example of content which is made accessible to customers in part by Viasat's VCDS and IFE systems. Plaintiffs also cite (at 13-14) *Rite-Hite Corp. v. Kelley Co.* for the general proposition that "[i]f a particular injury was or should have been reasonably foreseeable by an infringing competitor in the relevant market, broadly defined, that injury is generally compensable absent a persuasive reason to the contrary." 56 F.3d 1538 (Fed. Cir. 1995). Plaintiffs do not explain how that statement of the law is applicable here where the parties are not competitors in the relevant market and Plaintiffs never put Viasat on notice that its IPTV product was accused of infringement.

Because IPTV was not accused in the infringement contentions, and IPTV revenues were not identified in the damages contentions, Plaintiffs' expert opinions on infringement and damages related to IPTV should be stricken.

### III. CONCLUSION

For the foregoing reasons, Viasat respectfully requests that the Court strike paragraphs 91, 129, 133-35, 139-40, 158, 162-63, 166, 169-70, 172-73, 183, 185-86, 188, 190-92, 195-97, 199-201, 203, 207-08, 213-14, 225-26, 245, 248, 265-69, 277-78, 300-01, 307, 316, 319, 321, 325, 327-28, 339, 352, 354-59, 376, 378-80, 383-85, 387-89, 391, 396, 408-09, 419, 434, 451-55, 463-64, 490-91, 497-98, 506, 509-11, 514-20, 230, 554-62, 568-79, 583, 593-95, 621, 625, 637-45, 650-61, 677, 681, 694-99, 734-42, 748-58, 775-77, 779, 782, 795, 799, 828, 832, 853, 856-89, 864, 889-90, 900, 902-03 of Dr. Easttom's report and paragraphs 11, 12, 13, 22, 51, 57, 69-71, 77-78, 80, 85, 87, 113, 114, 115, 122, 125-127, 133, 135, 137, 144-146, 150-151, 169, 171, 175, 177-185, 190-91, 193-94, 196, 198, 211, 213, 215-16, and 218-21 (as well as the corresponding calculations, tables, appendices, and exhibits) of Ms. Kindler's report, and preclude Dr. Easttom and Ms. Kindler from opining on the opinions contained therein at trial.

| | | |
|---|---|---|
| 1 | DATED: July 3, 2025 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 2 | | By  /s/ *Patrick D. Curran* |
| 3 | | _____ |
| 4 | | Patrick D. Curran<br>*Attorneys for Defendant Viasat, Inc.* |

# CERTIFICATE OF SERVICE

I hereby certify that, on July 3, 2025, a copy of the foregoing was filed with the Court using the Court's ECF system, which sent notice to all counsel of record.

DATED: July 3, 2025

By */s/ Patrick D. Curran*
Patrick D. Curran