1
QUINN EMANUEL URQUHART & SULLIVAN, LLP
Steven Cherny (*pro hac vice*)
2
stevencherny@quinnemanuel.com
Patrick D. Curran (Bar No. 241630)
3
patrickcurran@quinnemanuel.com
Tzivya H. Beck (*pro hac vice*)
4
tzivyabeck@quinnemanuel.com
Hannah Dawson (*pro hac vice*)
5
hannahdawson@quinnemanuel.com
111 Huntington Ave, Suite 520
6
Boston, MA 02199
Telephone:    (617) 712-7100
7
Facsimile:    (617) 712-7200

8
QUINN EMANUEL URQUHART & SULLIVAN, LLP
Nicola R. Felice (*pro hac vice*)
9
nicolafelice@quinnemanuel.com
Anastasia M. Fernands (*pro hac vice*)
10
anastasiafernands@quinnemanuel.com
Vanessa Blecher (*pro hac vice*)
11
vanessablecher@quinnemanuel.com
Alicia Lai (*pro hac vice*)
12
alicialai@quinnemanuel.com
295 5th Avenue
13
New York, NY 10016
Telephone:    (212) 849-7000
14
Facsimile:    (212) 849-7100

15
*Attorneys for Defendant Viasat, Inc.*

16
**UNITED STATES DISTRICT COURT**
17
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**
18

19
SANDISK TECHNOLOGIES, INC., et al.,          Case No.: 4:22-cv-4376-HSG

20
                     Plaintiffs,          **DEFENDANT VIASAT, INC.'S**
                                          **RESPONSE IN OPPOSITION TO**
21                                        **SANDISK'S MOTION FOR PARTIAL**
                                          **SUMMARY JUDGMENT [DKT. 210]**

22
        v.          **Hearing**
                    Date: August 21, 2025
23                  Time: 2:00 pm
                    Judge: Hon. Haywood S. Gilliam, Jr.
24
VIASAT, INC.,          Courtroom: 2, 4th Fl.
                                  1301 Clay Street
25                                Oakland, CA 94612
                     Defendant.
26

27

28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................................1

II.    STATEMENT OF RELEVANT FACTS ....................................................................2

III.   LEGAL STANDARD .................................................................................................4

IV.   ARGUMENT ..............................................................................................................5

    A.     Anticipation of the '400 Patent Is A Factual Dispute For Trial .................5

          1.     Viasat Sufficiently Established Anticipation by Rae .......................5

          2.     Viasat Sufficiently Established Anticipation by Buttars ................6

    B.     Viasat Presented Sufficient Evidence On Obviousness of the '400 Patent ...............6

    C.     Viasat Presented Sufficient Evidence On Anticipation of the '667 Patent ...............8

          1.     Viasat Sufficiently Established Anticipation by Smith ...................8

          2.     Viasat's Anticipation Evidence On Smoyer Is A Mirror Image Of Plaintiffs' Infringement Theory; Infringement And Invalidity Must Rise And Fall Together .......................................................................8

          3.     Viasat Presented Sufficient Evidence that Various Prior Art Systems Anticipate the '667 Patent ..................................................10

    D.     Viasat Presented Sufficient Evidence Of Obviousness for the '667 Patent ............14

    E.     Viasat's Fifth Affirmative Defense Is Proper At Least Because Plaintiffs Have Not Shown Standing ...............................................................................16

    F.     A Genuine Factual Dispute Exists Concerning SanDisk's Failure to Mark ...........17

V.    CONCLUSION .........................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ball Aerosol & Specialty Container, Inc. v. Ltd. Brands, Inc.*,
    555 F.3d 984 (Fed. Cir. 2009) ................................................................................................ 15

*Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*,
    246 F.3d 1368 (Fed. Cir. 2001) ............................................................................................... 9

*Broadcom Corp. v. Emulex Corp.*,
    732 F.3d 1325 (Fed. Cir. 2013) ............................................................................................... 7

*Eli Lilly & Co. v. Barr Labs., Inc.*,
    251 F.3d 955 (Fed. Cir. 2001) ................................................................................................. 4

*Finjan, Inc. v. Proofpoint, Inc.*,
    No. 13-CV-05808-HSG, 2016 WL 1427492 (N.D. Cal. Apr. 12, 2016) ................................. 4

*Finnigan Corp. v. Int'l Trade Comm'n*,
    180 F.3d 1354 (Fed. Cir. 1999) ............................................................................................... 4

*Good Tech. Corp. v. Mobileiron, Inc.*,
    No. 5:12-CV-05826-PSG, 2015 WL 4197554 (N.D. Cal. July 10, 2015) ........................ 10, 12

*Graham v. John Deere Co.*,
    383 U.S. 1 (1966) .................................................................................................................... 4

*Innogenetics, N.V. v. Abbott Labs.*,
    512 F.3d 1363 (Fed. Cir. 2008) ............................................................................................... 4

*KSR Int'l Co. v. Teleflex Inc.*,
    550 U.S. 398 (2007) ........................................................................................................... 4, 16

*Radware, Ltd. v. F5 Networks, Inc.*,
    No. 5:13-CV-02024-RMW, 2016 WL 861065 (N.D. Cal. Mar. 5, 2016) ........................ 11, 13

*Ruiz v. A.B. Chance Co.*,
    234 F.3d 654 (Fed. Cir. 2000) ............................................................................................... 16

*S.A.R.L. v. LG Elecs., Inc.*,
    No. CV 12-1595-LPS, 2022 WL 22401011 (D. Del. Apr. 8, 2022) ............................ 10, 12, 13

*Seiko Epson Corp. v. Coretronic Corp.*,
    No. C 06-6946 MHP, 2010 WL 4916424 (N.D. Cal. Nov. 23, 2010) ...................................... 4

*Semcon Tech, LLC v. Micron Tech., Inc.*,
    660 F. App'x 908 (Fed. Cir. 2016) .......................................................................................... 4

*SRI Int'l Inc. v. Cisco Sys., Inc.*,
    930 F.3d 1295 (Fed. Cir. 2019) ................................................................................. 4

### Rules & Statutes

35 U.S.C. §§ 101, 102, 103 ................................................................................. 2, 3, 14

35 U.S.C. § 102 ................................................................................................... 2

35 U.S.C. § 103 ................................................................................................ 2, 3

# I.    INTRODUCTION

Plaintiffs' motion asks the Court to resolve numerous factual disputes at the summary judgment stage.  That error permeates Plaintiffs' arguments on the patent and system prior art. Plaintiffs frequently ignore or mischaracterize expert opinions and documents in the record to try to elide disputed facts that otherwise preclude summary judgment.  And most notably, Plaintiffs also ignore Viasat's detailed invalidity contentions, and the many prior art disclosures cited in those contentions.  The invalidity contentions set forth the factual bases and support for Viasat's invalidity arguments; expert reports provide a specific form of evidence supporting those contentions where Viasat believes expert opinion will assist the jury in assessing an issue. But expert opinions are not the only facts of record.[1]  Summary judgment is the wrong way to resolve disputes related to the factual bases for Viasat's defenses.

There is one area, however, where the parties agree.  Plaintiffs' arguments regarding the "indication of a secure region" limitation are mirror images of Viasat's non-infringement arguments. For example, Plaintiffs point out that the Smoyer prior art (Mot. at 13-14) and the DVR system prior art (*id*. at 16-18) disclose an "indication" that a secure *device* exists, rather than an indication of a secure ***region within*** that device.  Plaintiffs argue in their motion that an indication of a *device*, rather than an indication of a secure *region within* a device, does not anticipate the '667 patent claims.  (Mot. at 12-13, 15-17.)  Viasat agrees.  That is precisely why Viasat moved for summary judgment of non-infringement on that same issue.  (Dkt. 205.)  If mere indication of a device does not suffice to invalidate the claims, then Plaintiffs cannot say that an "indication of a device" is good enough for infringement.  On this issue, non-infringement and validity will rise and fall together.[2]

---

[1]  This in contrast to Plaintiffs whose operative infringement contentions do not set forth sufficient bases to move forward to trial—explaining why Plaintiffs attempt, improperly, to amend their deficient infringement contentions via expert reports that disclose new theories.

[2]  Viasat pled invalidity only as an affirmative defense to Plaintiffs' claim of infringement; there is no declaratory judgment claim for invalidity at issue in this case.  As Viasat set forth in its motion for summary judgment of noninfringement (Dkt. 205), Viasat believes Plaintiffs' theories of infringement that rely on an "indication of a *device*" rather than an "indication of a secure *region*" within that device are inconsistent with the Court's claim construction order.  If the Court agrees, it

## II.    STATEMENT OF RELEVANT FACTS

This case was filed on July 28, 2022, alleging infringement of U.S. Patent Nos. 9,424,400 (the "'400 patent") and 10,447,667 (the "'667 patent").[3]  Dkt. 1. Viasat pled invalidity as a defense to infringement. Dkt. 81. On April 10, 2023, Viasat served invalidity contentions setting forth grounds under which the '400 and '667 patents are invalid. *See* Curran Decl. ¶ 2. On April 19, 2024, following Plaintiffs' March 24, 2024, supplemental infringement contentions, Viasat supplemented its invalidity contentions with additional evidence and grounds. *Id.* There is no dispute that Viasat's Patent Local Rule contentions asserted that the '400 patent was anticipated by (1) Rae and (2) Buttars; and obvious in light of (1) Buttars alone, (2) Rae in view of Spencer, (3) Buttars in view of Spencer, and (4) Buttars in view of Rae, among others. The '667 patent contentions assert anticipation by (1) Smith, (2) Smoyer, (3) SCSA/Vidity/Project Phenix, (4) DirecTV, and (5) DISH; and obvious in light of (1) DirecTV in view of TiVo DVRs, (2) DISH in view of TiVo, (3) Smith in view of McDysan, (4) Smoyer in view of McDysan, (5) SCSA in view of McDysan, (6) DirecTV in view of McDysan, or (7) DISH in view of McDysan, among others. Ex. A (Invalidity Contentions).

Viasat sought Plaintiffs' contentions, if any, on the validity of the asserted patents and any purported deficiencies in Viasat's invalidity contentions.  For example, Viasat's Interrogatory No. 3 asked Plaintiffs, "for each reference identified as prior art for that asserted claim in Viasat's Patent Rule 3-3 disclosures in this litigation, [to] identify each claim limitation you contend is not disclosed by and/or rendered obvious by that prior art reference, including an explanation in detail of all legal and factual bases for your contentions as to why that reference does not invalidate the asserted claim under 35 U.S.C. § 102 or 103."  Ex. B (Viasat Interrogatory No. 3) at 5-6. Plaintiffs did not provide substantive contentions and instead provided only one sentence in response: "Viasat has not met its

---

should grant Viasat's motion for summary judgment of non-infringement, which would moot Viasat's invalidity defense on the '667 patent.

[3]   The original Complaint alleged infringement of U.S. Patent No. 8,504,834 as well, but these allegations were subsequently dismissed in amended complaints; the operative version of the Complaint was served on November 8, 2023.  Dkt. 73.

burden to demonstrate that any asserted claim is invalid under 35 U.S.C. §§ 101, 102, 103, or 112." *Id*.  Viasat also asked Plaintiffs "whether Plaintiffs contend there are secondary considerations or objective indicia of nonobviousness that should be considered by the Court in connection with its determination pursuant to 35 U.S.C. § 103 of the validity of each asserted claim of the Patents-in-Suit, and if the answer is anything other than an unqualified negative for any claim, identify for that claim each such secondary consideration and describe in detail Plaintiffs' contentions as to why each such secondary consideration demonstrates obviousness or non-obviousness and all facts in support thereof." *Id.* (Viasat Interrogatory No. 5) at 8. Again, Plaintiffs refused to provide anything other than a one-sentence response: "Viasat has not met its burden to demonstrate that any asserted claim is invalid under 35 U.S.C. §§ 101, 102, 103, or 112." *Id*.  Plaintiffs never supplemented this position.  Plaintiffs' one-sentence answer to Viasat's interrogatories, each served on January 17, 2024, was the only position Plaintiffs disclosed in response to Viasat's detailed invalidity contentions prior to Viasat's opening expert reports. On March 24, 2025, Viasat served the opening expert report of Dr. Kevin Almeroth, which alleged invalidity on the grounds disclosed by Viasat in its invalidity contentions. Curran Decl. ¶ 2.  All of these opinions are appropriately part of the record on Plaintiffs' request for summary judgment; Plaintiffs have not moved to strike any of Dr. Almeroth's opinions on invalidity.

On April 14, 2025, Dr. Easttom served his 253-page rebuttal expert report on validity. That report disclosed, ***for the first time***, Plaintiffs' contention that specific claim elements were not satisfied by the prior art references Viasat had disclosed in its invalidity contentions and charted against the claims more than a year earlier. *Compare* Ex. B (Viasat Interrogatory No. 3) at 5-6 *with* Dkt. 218-9. Dr. Easttom's April report was also the first time Plaintiffs disclosed any contention that no motivation to combine existed for the combinations of prior art Viasat had disclosed more than a year earlier in its invalidity contentions. *Id*.  Understandably, Viasat was surprised that Dr. Easttom went so far beyond Plaintiffs' validity contentions. Viasat was under the impression from Plaintiffs' response that Plaintiffs would do nothing more than stand on the presumption of validity upon which they relied exclusively in their contentions.

1    **III.    LEGAL STANDARD**

2        "[A] moving party seeking to have a patent held not invalid at summary judgment must

3    show that the nonmoving party, who bears the burden of proof at trial, failed to produce clear and

4    convincing evidence on an essential element of a defense upon which a reasonable jury could

5    invalidate the patent." *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001).

6        "Anticipation requires that a single prior art reference [or prior art system] disclose each and

7    every limitation of the claimed invention, either expressly or inherently."  *SRI Int'l Inc. v. Cisco*

8    *Sys., Inc.*, 930 F.3d 1295, 1306 (Fed. Cir. 2019).  Whether a patent is invalid as anticipated is a

9    question of fact.  *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1362 (Fed. Cir. 1999);

10   *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1378 n.6 (Fed. Cir. 2008) ("What a prior art

11   reference discloses is, of course, a question of fact, and if there are disputes over material facts,

12   whether [the prior art] anticipates [the asserted claims] should be resolved at trial by the fact

13   finder."). Summary judgment of no anticipation is not appropriate where a reasonable jury could

14   conclude that the asserted claims are anticipated or could disagree with a movant's analysis as to

15   what is disclosed by a prior art reference.  *Semcon Tech, LLC v. Micron Tech., Inc.*, 660 F. App'x

16   908, 913-14 (Fed. Cir. 2016).

17       And although obviousness is a question of law, the question is premised on the following

18   underlying factual questions: "(1) the scope and content of the prior art; (2) the differences between

19   the prior art and the claims at issue; (3) the level of ordinary skill in the art; and (4) secondary

20   evidence of non-obviousness." *Seiko Epson Corp. v. Coretronic Corp.*, No. C 06-6946 MHP, 2010

21   WL 4916424, at *4 (N.D. Cal. Nov. 23, 2010) (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17-

22   18 (1966).  The relevant question is "whether the combination was obvious to a person with ordinary

23   skill in the art." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 420 (2007).  Disputes as to any of

24   these underlying facts thus precludes summary judgment of no obviousness.  *Finjan, Inc. v.*

25   *Proofpoint, Inc.*, No. 13-CV-05808-HSG, 2016 WL 1427492, at *5 (N.D. Cal. Apr. 12, 2016).

26

27

28

## IV.    ARGUMENT

### A.    Anticipation of the '400 Patent Is a Factual Dispute

#### 1.    Viasat Sufficiently Established Anticipation by Rae

Viasat presented sufficient evidence that the '400 patent is anticipated by Rae, mapping each one of the '400 patent's claim limitations to teachings in Rae. Plaintiffs' motion for partial summary judgment ignores the Rae reference, Viasat's invalidity contentions, and Dr. Almeroth's expert report and opinions.

Plaintiffs allege that Viasat failed to sufficiently establish anticipation of the '400 patent by Rae because "Viasat's expert failed to identify what element or elements of Rae correspond with the claimed 'unique identifier.'" Dkt. No. 210 (Plaintiffs' Motion for Partial Summary Judgment) at 5 ("Having failed to provide any mapping whatsoever, his report simply block quotes from Rae without any attempt to indicate what element(s) from Rae disclose the claim limitation."). Plaintiffs are mistaken. Dr. Almeroth provided not one but two express mappings, explaining the two ways that Rae's architecture discloses all elements of the '400 patent claims. For example, in paragraph 186 of his report, Dr. Almeroth expressly states that Rae's ***"'playback device ID' is the '400 patent's 'unique identifier.'"*** Dkt. 218-8 ¶ 186 (emphasis added). Dr. Almeroth provides additional details to substantiate this opinion, explaining how the "playback device ID" functions to uniquely identify a playback device, how playback device IDs are created, and differences between playback device IDs and other identifiers—quoting disclosures in Rae that explain how and why "'playback device IDs' are used to 'uniquely identify the playback devices.'" *Id*. Dr. Almeroth then provides an additional mapping, explaining that "***Rae's 'private key' also discloses the '400 patent's 'unique identifier,'***" and cites disclosures in Rae that explain how this alternative mapping meets the claim limitation. *Id*. ¶ 188.  Viasat disclosed—not once, but twice—which elements of Rae correspond to the claimed "unique identifier."

Plaintiffs likewise allege that "nowhere … is there any discussion of those items being concealed." Dkt. No. 210 at 6.  Plaintiffs are again mistaken. Dr. Almeroth disclosed that: "Rae explains that ***the private key is concealed*** within the secure central processing unit of the end-user device. *See* Rae at 11:46–47 ("[To detect] that a media drive is connected to the playback device . .

-5-

1  . [t]he private key associated with the device's certificate is **extracted from the secure CPU . . .**")

2  . . ." Dkt. 218-8 ¶ 188 (emphases added).  Plaintiffs may disagree with Dr. Almeroth's opinions, but

3  they cannot erase them from the record by ignoring them.  Based on the Rae reference and Dr.

4  Almeroth's opinions regarding that reference, a jury could find that Viasat demonstrated the asserted

5  claims are invalid.  Summary judgment as to anticipation by Rae should thus be denied.

6        **2.**      **Viasat Sufficiently Established Anticipation by Buttars**

7        Viasat presented sufficient evidence that the '400 patent is anticipated by Buttars.  Plaintiffs

8  claim "Viasat's expert failed to identify what element(s) of Buttars correspond with the claimed

9  'unique identifier.' Having failed to provide any mapping whatsoever, his report simply block

10  quotes from Buttars without any attempt to indicate what elements(s) from Buttars discloses this

11  claim limitation." Dkt. No. 210 at 6. Again, this is wrong. Dr. Almeroth expressly states that "**a**

12  **'Playback Device key' is used to *uniquely identify* a particular playback device**" in Buttars,

13  further noting that "when the customer docks the Storage Device into the Playback Device, the

14  customer's Playback Device key is loaded ***into the security module*** on the Storage Device, and the

15  Playback Device key is examined for authenticity (the digital signature and the chain of trust are

16  verified) by the processor on-board the Storage Device." Dkt. 218-8 ¶ 239 (emphases added).

17  Plaintiffs may not agree that the "Playback Device key" in Buttars discloses all elements of the

18  claims, and they are free to argue that position to the jury if the Court allows them to go beyond

19  their sparse validity contentions.[4]  But Plaintiffs are wrong to claim there was a "fail[ure] to provide

20  any mapping whatsoever," Dkt. No. 210 at 6, and their motion on this point should be denied.

21        **B.**      **Viasat Presented Sufficient Evidence on Obviousness of the '400 Patent**

22        Viasat presented more than sufficient evidence that the '400 patent is obvious. Plaintiffs

23  make the sweeping argument that "for all its obviousness grounds, Viasat failed to provide any

24  motivation, suggestion or teaching of the desirability for making the specific combination." Dkt.

---

[4]  It is disappointing that Plaintiffs never substantively challenged Viasat's detailed invalidity contentions but now complain that Viasat's expert report does not address alleged deficiencies Plaintiffs never previously identified.  Viasat provided detailed mandatory contentions so that Plaintiffs could provide detailed responsive contentions, thus narrowing the issues in this case and ideally avoiding burdening the Court with unnecessary disputes.

No. 210 at 8. Specifically, Plaintiffs fault Dr. Almeroth for his purported "contention that a POSITA would combine Rae with Buttars or Spencer, without any specific support, [which] is legally insufficient for any obvious grounds." *Id.* at 9.

As a preliminary matter, Plaintiffs claim "being directed to the same purpose is far from enough to establish obviousness," but cite no law for this proposition. Nor could they; obviousness requires only a "plausible rational[e] as to why the prior art references would have worked together," *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1334 (Fed. Cir. 2013), and may rely on "logic, judgment, and common sense, in lieu of expert testimony," *Wyers*, 616 F.3d at 1239–40. Dr. Almeroth opines expressly that the patents are directed to the same purpose. *See* Dkt. 218-8 ¶¶ 156, 157, 158, 178, 189, 250. And Dr. Almeroth's analysis does not end there. He builds upon this foundation to explain why a POSITA would combine Rae with Buttars or Spencer—for instance, a "POSITA would have been motivated to combine these teachings, and to make these replacements, because all of the techniques were widely used for conventional DRM systems or systems for distributing secure media content," and to conduct "a simpl[e] substitution of one known element for another, which would have obtained predictable results because it was already well known in the art of secure media distribution systems." *Id.* ¶ 159. As Dr. Almeroth further explained:

> A POSITA would have been motivated and found it obvious to apply references teaching certain specific techniques—e.g., transferring or distributing media content from a kiosk to a portable data storage device, obtaining a specific unique identifier from the portable data storage device that is concealed by the portable data storage device, authenticating the portable data storage device using at least the unique identifier by communicating with the remote trusted server, in response to authentication, providing the portable data storage device with the encrypted media content and an access key—to other references that relate to secure content distribution systems and apparatuses generally because all references teach distributing or transferring secure content for storage or playback, and it would have been a trivial exercise to consult the references that taught more specific aspects of a to fill in less specific disclosures in other references. A POSITA would have also been motivated and found it obvious to replace and/or combine a reference's exact set of features, components, and configurations in a particular secure media distribution system/apparatus with the teachings regarding other features, components, and configurations used in other secure media distribution systems/apparatuses for all the reasons provided above. These modifications would have been a simple substitution of one known element for another, which would have obtained predictable results because it was already well known in the art of secure media distribution systems. The substitution of one component or configuration for another would not have changed the principle of operation for either reference in any combination because the references all use similar mechanisms for a similar purpose of: designing a secure media distribution system/apparatus. A POSITA would have been motivated to combine these teachings, and to make these replacements, because all of the

techniques were widely used for conventional DRM systems or systems for distributing secure media content.

*Id.* This is more than enough for a facial case of obviousness and a motivation to combine. Dr. Almeroth and Plaintiffs may disagree about the motivation to combine Rae with Buttars or Spencer, but these are factual disputes inappropriate for summary judgment.

### C.     Viasat Presented Sufficient Evidence on Anticipation of the '667 Patent

#### 1.     Viasat Sufficiently Established Anticipation by Smith

Plaintiffs claim Viasat failed to sufficiently establish anticipation of the '667 Patent by Smith because "Viasat failed to identify any part of Smith that discloses the claimed 'indication of the NAS device having a secure region.'" Dkt. 210 at 12. Specifically, Plaintiffs note that "the passages that Dr. Almeroth quotes [in his invalidity report] reference 'a secure storage location on a local, remote, or networked storage device,'" *id.* at 13, but then argue this is not enough because it is not a "discussion of ***an indication*** that related to the secure region within the secure storage device." *Id.* Plaintiffs are ignoring and selectively quoting portions of Dr. Almeroth's report on Smith; the full quote states that "[t]he EDC" (an "enhanced display controller [] that executes in an electronic device, such as a set-top box, to provide secure storage and playback of digital content, such as streamed data") "***identifies*** a secure storage location on a local, remote, or networked storage device." Dkt. 218-8 ¶ 278 (quoting Smith at [0028]). Dr. Almeroth's opinion that "identification" of a secure storage location, which Plaintiffs agree is a secure region, satisfies the claim's requirement for an "indication of the NAS device having a secure region" is sufficient disclosure to raise a genuine factual dispute as to whether the limitation is met. Summary judgment as to anticipation by Smith should therefore be denied.

#### 2.     Viasat's Anticipation Evidence on Smoyer Is a Mirror Image of Plaintiffs' Infringement Theory; Infringement and Invalidity Must Rise and Fall Together

Plaintiffs allege Viasat failed to establish anticipation of the '667 Patent by Smoyer because "Viasat failed to identify any part of Smoyer that discloses the claimed 'indication of the NAS device having a secure region.'" Dkt. 210 at 13. That is true: Under this Court's correct construction of the patent, Smoyer does not anticipate, just as Viasat's products do not infringe. But Viasat

included Smoyer in its expert report because it *would* anticipate under Plaintiffs' infringement theory.  Plaintiffs ignore that Viasat's invalidity theory on this reference is a mirror image of Plaintiffs' own incorrect infringement theory.  As explained below, Plaintiffs have long claimed for infringement purposes that only an indication of a *device* is necessary—not an indication of a *secure region within* a device.  Plaintiffs' "indication of a device" theory lacks merit, as the Court confirmed in its claim construction order, and Viasat has moved for summary judgment of non-infringement on this issue.  Plaintiffs are welcome to agree (as they should) that their "indication of a device" infringement theory does not have merit.  Viasat has been explaining this to Plaintiffs since the outset of the case.  But Plaintiffs cannot have it both ways: they cannot say their "indication of a device" theory works for infringement, but that same "indication of a device" theory does not work for invalidity.  *See Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1378 (Fed. Cir. 2001) ("[I]t is axiomatic that that which would literally infringe if later anticipates if earlier."). On Smoyer, anticipation will rise and fall with Plaintiffs' own "indication of a device" theory.

As Plaintiffs admit (at 13), under the Court's claim construction of the "receiving an indication" term, the "indication" must be of "the presence of a secure region *within* the NAS device." Dkt. 120 at 21 (emphasis added).  But for infringement purposes, Plaintiffs' infringement contentions only allege that "[t]he '667 Accused Products are configured to receive an indication *of the NAS device*" rather than an indication of a secure *region within* that device. *See* Dkt. 205 at 5-7 (citing Dkt. 193-3 at 32).  In Dr. Easttom's infringement report, he likewise advances (new and untimely) theories based on different alleged indications of the *entire device* being secure, rather than a secure region *within* the device. Dkt. 205 at 7-10 (citing Dkt. 201-3 ¶¶ 553-81).  Viasat believes Plaintiffs' theories of infringement that rely on an "indication of a *device*" rather than an "indication of a secure region" are inconsistent with the Court's claim construction order, for all the reasons set out in Viasat's motion for summary judgment of noninfringement (Dkt. 205 at 5-10). If Viasat is correct, and summary judgment of non-infringement is granted, Plaintiffs' motion targeting

Viasat's invalidity defense will be moot.[5]  But if Plaintiffs' infringement theory is allowed to go to the jury, then the same jury considering that "indication of a device" theory can also consider whether Smoyer's "indication of a device" invalidates the claim.  For that reason, if summary judgment is not granted on non-infringement, the jury should resolve the factual question of whether Smoyer's identical disclosure invalidates the claim.

### 3. Viasat Presented Sufficient Evidence that Various Prior Art Systems Anticipate the '667 Patent

For each of the SCSA, DirecTV DVR, and DISH DVR prior art systems, Plaintiffs allege that: (1) Viasat "failed to identify what the prior art system is" because Viasat "relies on a range of documents from different sources" that supposedly "relate to multiple versions of the systems" (Dkt. 210 at 14, 16, 17); and (2) Viasat failed to identify disclosures related to the claimed "'indication of the NAS device having a secure region' as required by all asserted claims of the '667 patent.  *Id.* at 15-18.  On the first point, Plaintiffs are wrong; Viasat identified and relied on a single version of each prior art system to demonstrate anticipation.  And on the second point, Plaintiffs make the same mistake they did with Smoyer—Viasat's invalidity evidence is a *mirror image* of Plaintiffs' own infringement theory so that infringement and invalidity will rise and fall together.

### (a) Viasat Sufficiently Identified Each Prior Art System

At the outset of Dr. Almeroth's report, he used documents and deposition testimony to establish the relevant features of each of the SCSA, DirecTV DVR, and DISH DVR prior art systems.  *See* Dkt. 218-8 ¶¶ 130-148.  These materials do not pertain to multiple different versions of the prior art systems; they demonstrate how a single system functioned at the relevant time.  Courts routinely approve using multiple documents for this exact purpose.  *See S.A.R.L. v. LG Elecs., Inc.*, No. CV 12-1595-LPS, 2022 WL 22401011, at *9 (D. Del. Apr. 8, 2022) (collecting cases); *see id.* ("The relevant overall feature-sets of [the prior art] systems can be understood only by considering multiple pieces of evidence.") (internal quotation omitted); *see also Good Tech. Corp. v. Mobileiron, Inc.*, No. 5:12-CV-05826-PSG, 2015 WL 4197554, at *5 (N.D. Cal. July 10, 2015)

---

[5] Viasat did not counterclaim for a declaration of invalidity, and is only asserting invalidity as a defense to infringement.

("[S]ystems that were previously used . . . can be established with multiple pieces of evidence."); *Radware, Ltd. v. F5 Networks, Inc.*, No. 5:13-CV-02024-RMW, 2016 WL 861065, at *2 (N.D. Cal. Mar. 5, 2016) ("[T]he court understands that F5 is simply trying to use the proffered product manuals to describe a single prior art system.").

Dr. Almeroth's limitation-by-limitation analysis to demonstrate anticipation for each system likewise referenced one specific version of each system. For example, in the SCSA system, Dr. Almeroth tied each claim limitation to the features of the SCSA system that was demonstrated during the Consumer Electronics Show in January 2014 ("CES 2014"). ███████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████

Plaintiffs now claim "Viasat chose to collect support from a range of diverging products" because some documents say "Project Phenix," some say "Vidity," and some say "SCSA." Dkt. 120 at 14. But as Dr. Almeroth explained, "[t]he SCSA System was sometimes referred to as Vidity or Project Phenix" (Dkt. 218-8 p. 44 n.4)—█████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████ These documents thus do not refer

---

[6]  Western Digital and SanDisk were two of the entities, along with Warner Brothers and 20th Century Fox, that formed the Secure Content Storage Association ("SCSA") and created the SCSA system. Dkt. 218-8 ¶ 130.

1    to different systems; they point to the same system that went by different names during the course

2    of its development.[7]  To the extent Plaintiffs disagree, any dispute on this point cannot be resolved

3    at summary judgment.

4          For the DVR systems (DirecTV DVR and DISH DVR), Plaintiffs contend that Viasat relies

5    on multiple different receivers—the "HR23 and Genie" receivers for DirecTV and "ViP 622, ViP

6    722, and Hopper/Joey receivers" for DISH—as a single prior art system, which it claims is

7    "improper."  Dkt. 210 at 16, 17.  But "simply because a system can be employed in various ways

8    and on various platforms or devices does not mean that all of those devices and platforms are being

9    combined. Rather, these documents are illustrative of the system itself and how it functions."  *Good*

10   *Tech Corp. v. Mobileiron, Inc.*, 2015 WL 4197554, at *5 (N.D. Cal. July 10, 2015).  Indeed, Viasat

11   did not combine these different receivers to demonstrate that the DirecTV and DISH systems

12   anticipate the asserted claims.  For example, for the DirecTV system, Dr. Almeroth demonstrated

13   anticipation by reference to a single HR23 receiver, going limitation by limitation and explaining

14   how the HR23 receiver specifically met that limitation.  Dkt. 218-8 ¶¶ 383, 385, 389, 391-92, 397,

15   399, 401, 404, 407.  And for the DISH system, Dr. Almeroth similarly demonstrated anticipation

16   with reference to a single ViP 722 receiver for each limitation.  Dkt. 218-8 ¶¶ 423, 425-26, 431,

17   441, 443, 452, 456, 459, 461.  The fact that multiple receivers could be employed as part the

18   DirecTV and DISH systems, and the fact that Dr. Almeroth cited to the existence of those multiple

19   receivers ***outside*** of Dr. Almeroth's limitation-by-limitation mapping, does not undermine Viasat's

20   anticipation argument.

21         At base, Plaintiffs' challenges are all grounded in factual disputes as to whether SCSA,

22   DirecTV or DISH systems existed that possessed all the features disclosed in the references Viasat

23   relies on.  Courts routinely deny summary judgment in those circumstances.  *See S.A.R.L.*, 2022 WL

24

---

25   [7]   Plaintiffs also argue that "the documents that Viasat relies upon to show the alleged SCSA
      System do not necessarily reflect an actual prior art system." Dkt. 120 at 15. Specifically, Plaintiffs
26   contend that Mr. Blankenbeckler testified that "SCSA involved many features that were not included
      in the 'soft launch' [of the system] (around 2014/2015 timeframe) but were later included in the
27   'hard launch' (around the 2015/2016 timeframe)." *Id.* at 15. That is a fact argument that is improper
      on summary judgment.
28

22401011, at *9 ("[F]or each of the challenged prior art systems . . . there is a genuine dispute of material fact as to whether there was a single prior art system that encompassed the features described by multiple combined references."); *id.* at *12 n.12 ("The parties appear to disagree on whether Motorola and Google may rely on a purported 'system' as [a] prior art reference when the 'system' is described by multiple references as including different 'versions,' 'iterations,' or 'instantiations' of the 'system.' This appears to be a genuine dispute of a material fact[.]") (internal citation omitted); *Radware*, 2016 WL 861065, at *2 ("[T]he court understands that F5 is simply trying to use the proffered product manuals to describe a single prior art system. . . . Accordingly, Radware's motion is denied, and the issue of whether 3DNS / BIG-IP constitutes a single anticipatory device or system is left to the jury.").[8]

> **(b)    Viasat's "Indication" Evidence for the Prior Art Systems Mirrors Plaintiffs' Infringement Theory; Invalidity and Infringement Will Rise and Fall Together**

As with the Smoyer reference, Plaintiffs contend Viasat failed to identify the claimed "indication of the NAS device having a secure region" in each prior art system because "Viasat only points to support related to the encryption of ***entire devices***" to satisfy the "indication" requirement." Dkt. 210 at 15, 17 (emphasis added). Plaintiffs are correct. But as with Smoyer, this "indication of a device" theory is precisely what Plaintiffs point to for purposes of infringement, and Viasat has moved for summary judgment of non-infringement on that very issue. *See* Dkt. 205 at 5-10; *see also* Dkt. 193-3 at 32 and Dkt. 201-3 at ¶¶ 553-81. Plaintiffs are right that their own "indication of a device" theory lacks merit. Summary judgment of non-infringement is appropriate for that theory. But again, Plaintiffs cannot have it both ways: if they are permitted to present their "indication of a device" theory to the jury for infringement purposes, the same jury is entitled to decide whether the "indication of a device" in these prior art systems also invalidates the '667 claims.

---

[8] The case Plaintiffs cite is inapt. In *Microsoft Corp. v. Biscotti, Inc.*, the Court was not considering whether a ***system*** was anticipatory, but rather whether a single prior art ***reference*** that disclosed multiple separate embodiments was anticipatory. 878 F.3d 1052, 1063-64 (Fed. Cir. 2017). Whether multiple, discrete embodiments in a single prior art reference can be combined to show anticipation is an entirely different question than whether different references can together show the features and functionality of the same prior art system.

1    **D.      Viasat Presented Sufficient Evidence of Obviousness for the '667 Patent**

2         As with the '400 patent, Plaintiffs again claim Viasat failed to prove obviousness because

3    Viasat's obviousness arguments supposedly consist only of "conclusory statements." Dkt. 210 at

4    18. Specifically, Plaintiffs criticize Viasat's assertion that it would have been obvious to combine

5    either the DirecTV DVR system or the DISH DVR system with the TiVo DVR system because

6    "Viasat does not provide any motivation to combine the proposed combinations." *Id.* at 18.

7    Similarly, Plaintiffs argue that, for claims 3 and 12, Viasat "failed to justify how a POSITA would

8    have been motivated to combine any of the primary references with McDysan." *Id.* at 19.

9         As an initial matter, although Plaintiffs now claim Viasat failed to provide evidence of a

10    motivation to combine the prior art references for obviousness of the '667 patent, they never raised

11    that as an issue in their own contentions on validity. Viasat asked Plaintiffs "for each reference

12    identified as prior art . . . in Viasat's Patent Rule 3-3 disclosures in this litigation," to "identify each

13    claim limitation you contend is not disclosed by and/or rendered obvious by that prior art reference."

14    Ex. B (Interrogatory No. 3) at 5-6. Plaintiffs responded with only one sentence: Viasat had allegedly

15    "not met its burden to demonstrate that any asserted claim is invalid under 35 U.S.C. §§ 101, 102,

16    103, or 112." *Id.* at 6. Plaintiffs never supplemented that response to argue that Viasat failed to

17    show motivation to combine for its asserted obviousness combinations. Plaintiffs instead chose to

18    hold their own theories on validity until after fact discovery was complete and opening expert reports

19    had already been served.

20         In any event, Plaintiffs' arguments ignore Viasat's invalidity contentions. Relying on dozens

21    of prior art documents, Viasat explained in detail how those documents—all of which are

22    admissible—disclosed extensive motivations for the asserted combinations. *See* Ex A (Invalidity

23    Contentions) at 33-48. Specifically, Viasat's invalidity contentions explain how specific prior art

24    references "teach similar techniques employed for media streaming systems (and within relevant

25    timeframes), and thus the teachings of any one reference are applicable to other references in that

26    same field." *Id.* at 42. For example, Viasat's obviousness contentions cite to Smoyer's disclosure

27    of "an improved system and method for storing data content from a service provider to an electronic

28    device associated with a network subscriber." Ex. A (Invalidity Contentions) at 43 (quoting

US20100325675 ("Smoyer") at [0010]).  They also cite to Smith as disclosing "methods and systems for the secure storage and display of digital data content" and a DISH 722k Receiver Support document, which described the DISH system as enabling users to "[c]onnect your receiver to the Internet to get access to additional TV shows and movies."  *Id.* at 42, 44 (quoting Smith 978 at [0002] and DISH 722k Receiver Support | MyDISH).  Based on these disclosures, and disclosures in nearly **two dozen** other specific prior art references, Viasat's contentions also explain the compatibility between specific references and the motivation to apply the teachings from these references, all of which relate to media streaming:

> [I]t was well known before the alleged invention to stream media content into a secure region in a NAS for playback. Moreover, a media streaming system that conditions playback on user authentication and subscription verification, which Plaintiffs contend is sufficient to meet the claim requirements, was even more widely known. A POSITA would have regarded the combination of such foundational components of a media streaming system as typical in the field.
>
> Second, a POSITA would have been motivated and found it obvious to apply references teaching certain specific techniques—e.g., transmission of digital content over WAN, inclusion of a secure region in a NAS device, use of a secure region as a buffer to stream media to a display, encryption of the digital content, controlling of streaming access—to other references that relate to media streaming generally because all references teach securely transmitting content for playback on an end user's display device in a media streaming system, and it would have been a trivial exercise to consult the references that taught more specific aspects of a media streaming system to fill in less specific disclosures in other references.

*Id.* at 44.

Dr. Almeroth expressly analyzed Viasat's invalidity contentions in forming his own obviousness opinions (Dkt. 218-8 at Ex. B), and agreed that these combinations invalidate the claims as obvious.  Dkt. 218-8.  Viasat can rely on the documents and references that disclose the underlying facts to prove obviousness at trial.  *See Wyers*, 616 F.3d at 1241-42 (reversing the district court's judgment and finding obviousness based on the disclosures of the prior art references themselves despite defendant not introducing expert testimony directed to one of the references); *id.* at 1239 ("*KSR* and our later cases establish that the legal determination of obviousness may include recourse to logic, judgment, and common sense, in lieu of expert testimony."); *Ball Aerosol & Specialty Container, Inc. v. Ltd. Brands, Inc.*, 555 F.3d 984, 993 (Fed. Cir. 2009) (vacating where district court erred in requiring an explicit motivation to combine and "failing to take account of

1    'the inferences and creative steps,' or even routine steps, that an inventor would employ . . . to

2    combine related pieces from the prior art").[9] There is thus a factual dispute regarding motivation to

3    combine that cannot be resolved on summary judgment.

4        **E.**    **Viasat's Fifth Affirmative Defense Is Proper at Least Because Plaintiffs Have Not Shown Standing**

5            Plaintiffs contend (at 20) that "failure to state a claim is not an affirmative defense" and "to

6    the extent Viasat believed that SanDisk's claims were deficient, it could have filed an appropriate

7    motion." But Viasat did file an appropriate motion—several times. On October 27, 2022, Viasat

8    moved to dismiss this case for lack of subject matter jurisdiction because Plaintiffs' Complaint

9    alleged only that "one or more" of the original five Plaintiffs held all substantial rights in the asserted

10   patents, which was insufficient to establish standing. Dkt. 1 ¶¶ 1, 19, 35, 47. The Court granted

11   Viasat's motion, noting it did not understand "why Plaintiffs cannot (or will not) allege [] basic

12   jurisdictional facts" establishing which entity "holds which rights to which patents, and why." Dkt.

13   36 at 4–5. Plaintiffs amended their complaint to, among other things, assert that WDI held relevant

14   "exclusionary rights" because WDI owned certain undefined "rights and interest" in the '400 and

15   '667 patents. Dkt. 38 ¶¶ 20, 37. Viasat again moved to dismiss for lack of standing for WDI.

16   Although the Court saw WDI's allegations "as needlessly cagey," it ultimately allowed WDI to

17   continue prosecuting this case but noted that "if facts come to light during discovery that undermine"

18   WDI's standing allegations, "the Court would consider entertaining a partial motion for summary

19

20

21       [9]  Before the Supreme Court's decision in *KSR v. Teleflex*, the Federal Circuit held that "[t]he

22   reason, suggestion, or motivation to combine may be found explicitly or implicitly: 1) ***in the prior art references themselves***; 2) in the knowledge of those of ordinary skill in the art that certain

23   references, or disclosures in those references, are of special interest or importance in the field; or 3) from the nature of the problem to be solved." *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 665 (Fed. Cir.

24   2000) (emphasis added). *KSR*, however, instructed courts to take an ***even more "expansive and flexible approach"*** in determining whether a patented invention was obvious at the time it was

25   made, and emphasized the role of "common sense." 550 U.S. 398, 415, 420 (2007) (emphasis added). Thus, it has always been the law that the prior art references themselves, in addition to the

26   nature of the problem to be solved, could demonstrate a motivation to combine—*KSR* only made the analysis more permissive as to what a factfinder can rely on to determine obviousness. Plaintiffs'

27   assertion that, to survive, summary judgment, Viasat's expert needed to explicitly detail a

28   motivation to combine the prior art references plainly contradicts this caselaw.

judgment as to issues of patentee standing." Dkt. 72 4–5. This was, among other reasons, why Viasat maintained its affirmative defense—to ensure it did not waive its rights to later challenge standing.

As Viasat expected, Plaintiffs eventually confirmed that WDI had no "exclusionary rights" in the asserted patents, and thus neither did WDI's successor entity, SDT LLC.   Despite this admission, Plaintiffs refused (without untenable preconditions) to drop SDT LLC from the suit. Viasat was therefore forced to request leave for a second motion for summary judgment on standing. Dkt. 222.[10]   In any event, summary judgment on Viasat's Fifth Affirmative defense should be denied.

### F.    A Genuine Factual Dispute Exists Concerning SanDisk's Failure to Mark

Plaintiffs argue that they are entitled to summary judgment on Viasat's Fourteenth Affirmative Defense because "there is no genuine factual dispute that Section 287's limitation on damages do not apply here." Dkt. 210 at 21.  Specifically, Plaintiffs contend that, if Viasat sought to limit damages under § 287, "it had the burden to identify products it alleged practiced the patents." *Id.* But Viasat did identify a system that practices the patents: the SCSA system, which Viasat has mapped as prior art.  And, as Dr. Almeroth explained, "Western Digital, SanDisk, Warner Brothers, and 20th Century Fox formed the Secure Content Storage Association ("SCSA")," which created the SCSA system.  Dkt. 218-8 ¶ 130.  Both Viasat's invalidity contentions and Dr. Almeroth's report explain extensively how the SCSA system practices the asserted claims of the '667 and '400 patents. Dkt. 218-8 ¶¶ 338-380; Ex D (Invalidity Contentions Exhibit 667-13).  Viasat has thus carried its burden under *Arctic Cat.*  876 F.3d at 1368.  Because there is a factual dispute as to whether damages are limited by § 287,  the Court should deny summary judgment on Viasat's Fourteenth Affirmative Defense.

---

[10] Moreover, Plaintiffs' own documents seem to suggest yet ***another*** standing issue—specifically, that plaintiff SD3D no longer has standing. Dkt. 222.

**V.    CONCLUSION**

For the reasons set forth above, the Court should deny Plaintiffs' motion for partial summary judgment.

DATED: July 3, 2025                    QUINN EMANUEL URQUHART &
                                       SULLIVAN, LLP


                                       By  /s/ Patrick Curran
                                           Patrick Curran

                                       *Attorneys for Defendant Viasat Inc.*

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on July 3, 2025, a copy of the foregoing document was served via e-

3

mail to all counsel of record who have appeared in this matter.

4

5

6

DATED: July 3, 2025                              By _/s/ Patrick Curran_____
                                                        Patrick Curran

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28