L. Kieran Kieckhefer (SBN 251978)
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94105-0921
Telephone: 415.393.8337
Email: KKieckhefer@gibsondunn.com

Robert A. Vincent (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue Suite 2100
Dallas, TX 75201-2923
Telephone: 214.698.3281
RVincent@gibsondunn.com

Lillian J. Mao (SBN 267410)
GIBSON, DUNN & CRUTCHER LLP
310 University Avenue
Palo Alto, CA 94301-1744
Telephone: 650.849.5307
LMao@gibsondunn.com

Ahmed ElDessouki (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.2345
AElDessouki@gibsondunn.com

Brian M. Buroker (*pro hac vice*)
Shuo J. Zhang (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1700 M St, N.W.
Washington DC 20036-4504
BBuroker@gibsondunn.com
SZhang@gibsondunn.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| SANDISK TECHNOLOGIES, INC., et. al., <br><br> Plaintiffs, <br><br> v. <br><br> VIASAT, INC, <br><br> Defendants | Case No. 4:22-CV-4376-HSG-PHK <br><br> **SANDISK'S OPPOSITION TO VIASAT'S MOTION FOR SUMMARY JUDGMENT ON STANDING** <br><br> Date:  August 21, 2025 <br> Time:  2:00 p.m. <br> Dept.:  Courtroom 2, 4th Floor <br> Judge:  Hon. Haywood S. Gilliam, Jr. |

Viasat's motion for summary judgment on standing (Dkt. 222) should be denied.

In the first instance, the Court has not yet granted Viasat leave to file the motion. *See* Dkt. 221 (Viasat's motion for leave to file second motion for summary judgment). Viasat improperly filed its summary judgment motion as a separate motion on the docket concurrently with its motion for leave, and the clerk set the oppositions to both motions to be due on the same day. Dkt. 223. But the Court need not consider Viasat's motion, nor this opposition brief, at all if it denies Viasat's motion for leave—which it should, as explained in Plaintiffs' concurrently filed opposition to the motion for leave.

To the extent the Court grants Viasat's request to file an out-of-time second motion for summary judgment (it should not), Plaintiffs hereby oppose.

## I.    INTRODUCTION

Viasat's motion incorrectly seeks dismissal of SanDisk Technologies LLC ("SDT LLC"), which has been a named plaintiff since this case was filed. There can be no doubt that SDT LLC is a proper party to this case.

***First***, as to asserted U.S. Patent No. 8,504,834 (the "'834 Patent"), SDT LLC began this suit as the assignee and patent owner. Nothing has changed the fact that SDT LLC is a proper party before the Court on that basis. For this simple reason alone, Viasat's motion can be denied.

***Second***, as to asserted U.S. Patent Nos. 9,424,400 (the "'400 Patent") and 10,447,667 (the "'667 Patent"), SDT LLC merged with Western Digital Ireland Ltd. ("WDI") in 2023 and now holds all the rights that WDI held at the time of merger. WDI owned ***all*** rights in the '400 and '667 Patent at the time of invention, and retained sufficient rights at the time of suit that it was properly named as a plaintiff. SDT LLC, having stepped into WDI's shoes, is also properly before the Court as to the '400 and '667 Patents. Viasat's motion focuses on WDI's purported lack of what Viasat calls "exclusionary rights," but that is not the end of the standing inquiry. Rather, courts repeatedly hold that, as a matter of prudential standing, all patent owners—like WDI—should be joined in a patent infringement suit. *See, e.g.*, *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1348 (Fed. Cir. 2001) ("[T]his court adheres to the principle that a patent owner should be joined . . . in any patent infringement suit brought by an exclusive licensee having fewer than all substantial patent rights.").

Under the correct standing inquiry, the undisputed facts show that WDI (and now SDT LLC) is a proper party as to the '400 and '667 Patents.

Thus, there is no basis to dismiss SDT LLC, and Viasat's motion should be denied.

## II.    BACKGROUND

This case was filed on July 28, 2022, asserting three patents—the '834, '400, and '667 Patents—and naming five plaintiffs—Western Digital Technologies, Inc. ("WDT"), WDI, SanDisk 3D IP Holdings Ltd. ("SD3D"), SDT LLC, and SanDisk Storage Malaysia Sdn. Bhd. ("SDSM"). In the original complaint, due to concerns about the confidentiality of the inter-company agreements that allocated the patent rights between the plaintiffs, the allegations stated only that "one or more Plaintiffs holds title" to each of the patents and "one or more Plaintiffs together own all substantial rights" to each of the patents. Dkt. 1, ¶¶ 19, 35, 47. Pursuant to the Court's order dismissing the complaint with leave to amend (Dkt. 36), Plaintiffs filed an amended complaint (Dkts. 38, 73) with additional detail about which plaintiff held which rights: for the '400 and '667 Patents, WDT held legal title and rights to enforce and license the patent, SD3D is the exclusive licensee, and WDI owns "all other rights and interests" in the patent; and for the '834 Patent, SDT LLC was the owner and patentee, while SDSM was the licensee. *Id.* ¶¶ 20, 37, 50. The Court found these allegations sufficient at the pleading stage. Dkt. 72.

While Viasat's first motion to dismiss was pending, and before it brought a second motion to dismiss relating to standing, Plaintiffs produced the underlying agreements reflecting the rights it had pled. Dkt. 251-1 ¶ 3. Once discovery reopened—it had been stayed by the Court's order dismissing the original complaint (Dkt. 36 at 5 n.3)—Viasat served an interrogatory on standing, and Plaintiffs further elaborated on the effect of the agreements it had produced. In particular, with respect to WDI's rights, Plaintiffs explained on January 17, 2024:

> With respect to both the '400 and '667 patents: By operation of Section 6.1(a) of the Research & Development Services Agreement Between WDT and WDI dated June 30, 2007 (WD-Viasat-NDCA00002673), ***all rights, title, and interest in the inventions automatically vested in Western Digital Ireland Ltd. upon their creation***. Further, by operation of Section 6.1(b) of the same agreement, ***Western Digital Technologies, Inc. was assigned legal title*** to the patent applications and resulting issued patents, as well as certain rights in the patents. On June 22, 2018, pursuant to a Technology License Agreement between Western Digital Ireland, Ltd. and SanDisk 3D IP Holdings, Ltd. (WD-Viasat-NDCA00002651), SanDisk 3D IP Holdings, Ltd. received "a perpetual, exclusive, right and license, with the right to grant sublicenses, in, to, and under" the

patents. On November 30, 2019, pursuant to a Memorandum of Understanding, SanDisk 3D IP Holdings' rights were assigned down the shareholding chain to SanDisk Storage Malaysia Sdn. Bhd.

Dkt. 251-2 at 14-16 (emphasis added).[1]

While this case was pending, Western Digital Corporation engaged in corporate restructuring, spinning off its flash memory business into an independent entity. The spin-off was completed through a series of transactions that completed on February 24, 2025, and resulted in the creation of a new publicly traded corporation, Sandisk Corporation.[2] During and after the spin-off, the rights in the asserted patents also changed hands, as follows:

- On October 30, 2023, WDI merged into SDT LLC. *See* Dkt. 121.

- On May 6, 2024, WDT transferred legal title of the '400 and '667 Patents to SanDisk Technologies, Inc. ("SDT Inc."). *Id.*

- On December 27, 2024, SDT LLC transferred legal title of the '834 Patent to SDT Inc. Mao Decl., Ex. 3.

By Plaintiffs' motion (Dkt. 121), the Court substituted SDT LLC for WDI, and SDT Inc. for WDT. Dkt. 130. The original and current ownership of patent rights is reflected in the chart below:

| U.S. Patent No. | May 9, 2023 | July 7, 2025 |
|---|---|---|
| 9,424,400 | WDT – legal title<br>SD3D – exclusive licensee<br>WDI – all other rights and interests | SDT Inc. – legal title<br>SDSM – exclusive licensee<br>SDT LLC – all other rights and interests |
| 10,447,667 | WDT – legal title<br>SD3D – exclusive licensee<br>WDI – all other rights and interests | SDT Inc. – legal title<br>SDSM – exclusive licensee<br>SDT LLC – all other rights and interests |
| 8,504,834 | SDT LLC – owner and patentee<br>SDSM – exclusive licensee | SDT Inc. – owner and patentee<br>SDSM – exclusive licensee |

---

[1] These responses contained a typographical error: references to letter subsections of Section 6.1, which has no subsections, were actually references to Section 6.2.

[2] *See, e.g.*, https://www.sandisk.com/company/newsroom/press-releases/2025/sandisk-celebrates-nasdaq-listing-after-completing-separation.

In February 2025, Viasat—for the first time—complained about Plaintiffs' January 2023 interrogatory response regarding chain of title, claiming, *inter alia*, that the inventor assignments for the '400 and '667 patents were deficient and that Viasat could not discern where in the cited agreements the relevant patent rights had been transferred.  Dkt. 251-3.  Plaintiffs believe their original response was clear, but in the spirit of cooperation they supplemented their response to explain, for example, that the inventor assignments covered the parent applications and "all divisions, renewal and continuations thereof," and to quote portions of the previously cited agreements that involved rights relevant to the asserted patents.  Dkt. 220-2 at 6-7.  Plaintiffs also presented a corporate designee, Soji John, to testify regarding chain of title.  He confirmed the information in Plaintiff's interrogatory response, as reflected in chart form that was prepared as a reference for Mr. John during his deposition. *See* Dkt. 220-4.

After Mr. John's deposition, the parties engaged in discussions about dropping SDT LLC from the case, which Plaintiffs indicated they may be amenable to doing.  Plaintiffs sought to resolve this issue without opposed motion practice but in a manner that avoided the possibility of Viasat turning around and claiming that Plaintiffs had defeated their own standing by dismissing SDT LLC.  However, Viasat filed its motion with the Court seeking leave to file an out-of-time second summary judgment on standing.  As things stand, SDT LLC is a proper party to this case, and Viasat's motion should thus be denied.

## III.    ARGUMENT

SDT LLC is unquestionably a proper party to this case.  SDT LLC was the undisputed owner of the '834 Patent until December 2024 and, under the Federal Rules, is permitted to continue suit in its name notwithstanding its transfer of rights to SDT Inc.  As to the '400 and '667 Patents, SDT LLC is the successor-in-interest to WDI, in whom all rights to those patents originally vested.  After those rights vested in WDI, WDI conferred to WDT legal title and a right to enforce the patents, and to SDSM (by way of SD3D) an exclusive license.  The agreement between WDI and WDT clearly reflects the parties' intent that WDI was the ultimate owner, on whose behalf WDT acted.  Under controlling case law, these facts are sufficient to show that SDT LLC, the successor-in-interest to WDT, is a proper party.

Gibson, Dunn &
Crutcher LLP

## A.    SDT LLC Has Standing to Assert the '834 Patent.

SDT LLC is properly before this Court as to the '834 Patent.  It is undisputed that SDT LLC had standing to assert the '834 Patent when this case was filed—Viasat has never challenged that fact and does not address the '834 Patent at all in its motion.  Unless and until the Court takes further action with respect to the '834 Patent—which it has yet to do—SDT LLC remains a proper party.

As relevant to SDT LLC's standing with respect to the '834 Patent, two events have occurred since the filing of this suit: (1) the Court dismissed the '834 Patent on § 101 grounds, and (2) SDT LLC transferred its interests to SDT Inc.  Neither event, however, had an automatic effect of cutting off SDT LLC's right to be before this Court as to the '834 Patent.

As to the Court's § 101 decision, the Court did not enter final judgment on the '834 Patent. Federal Rule of Civil Procedure 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties" unless the Court enters partial final judgment. Thus, the Court's order dismissing the '834 Patent did not "end the action" as to that claim nor to the parties bringing it (i.e., SDT LLC (the owner) and SDSM (the exclusive licensee)).  *Id.*  When the Court enters final judgment in this case, SDT LLC—or its successor-in-interest SDT Inc.—will have standing to appeal the decisions as to the '834 Patent, and thus should be kept in the case until that time.

As to SDT LLC's transfer to SDT Inc., Rule 25(c) provides that "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party."  *See also Gen. Battery Corp. v. Globe-Union, Inc.*, 100 F.R.D. 258, 262 (D. Del. 1982) ("Rule 25(c) permits the court to continue to hear a case where the action survives but the original party has transferred interest in the litigation to another.").  The Court has not substituted SDT Inc. for SDT LLC, nor has it joined SDT Inc. (who is already a party) with SDT LLC as to the '834 Patent, and thus the action "may be continued by" SDT LLC.  Fed. R. Civ. P. 25(c).

At this time, therefore, SDT LLC is a proper party as to the '834 Patent.  That alone defeats Viasat's motion.

Gibson, Dunn &
Crutcher LLP

**B.    SDT LLC Has Standing to Assert the '400 and '667 Patents.**

With respect to the '400 and '667 Patents, SDT LLC possesses all rights other than the specific rights that it or its predecessor-in-interest WDI assigned to other named plaintiffs.  Both Federal Circuit law on standing and the agreements at issue here are admittedly complex.  However, it is Plaintiffs' position that WDI (now SDT LLC) retained sufficient rights to be an owner of the '400 and '667 Patents and thus a proper party for this case.

Plaintiffs have not identified any case that addresses the particular distribution of rights presented here, but the case law confirms that standing can be a complex inquiry.  *See, e.g.*, *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005) ("Each license and assignment is unique, therefore this court 'must ascertain the intention of the parties and examine the substance of what [the licensing agreement] granted' to determine if it conveys all of the substantial rights in the patent and is sufficient to grant standing to the licensee." (modifications in original)).  The governing principles are: (1) the holder of all substantial rights is the patentee, (2) the patentee may be a group rather than an individual entity, and (3) when a patent licensor does not transfer all substantial rights to the licensee, then the licensor remains the owner with the right to sue for infringement.  *See, e.g.*, *Lone Star Silicon Innovations v. Nanya Tech.*, 925 F.3d 1225, 1228 (Fed. Cir. 2019) ("a patentee [is] one with 'all rights or all substantial rights' in a patent"); *Alfred E. Mann Found. for Sci. v. Cochlear Corp.*, 604 F.3d 1354, 1359 n.2 (Fed. Cir. 2010) ("Of course, the patent may be owned by a group."); *id.* at 1359 ("Either the licensor did not transfer 'all substantial rights' to the exclusive licensee, in which case the licensor remains the owner of the patent and retains the right to sue for infringement, or the licensor did transfer 'all substantial rights' to the exclusive licensee, in which case the licensee becomes the owner of the patent for standing purposes and gains the right to sue on its own.").  The Federal Circuit has not "establish[ed] a complete list of the rights whose holders must be examined to determine whether a licensor has transferred away sufficient rights" to lose its status as patentee.  *Alfred E. Mann*, 604 F.3d at 1361. Among the rights that courts have examined, however, are the exclusive right to practice the patent, the right to bring suit, the right to sublicense, the right of the licensor to receive a portion of the recovery in infringement suits, the obligation of the licensor to continue paying patent maintenance fees, and the nature of limits on the licensee's right to assign its interests in the patent. *Id.* at 1360-61.

Guided by these principles, Plaintiffs named both WDI (predecessor in interest to SDT LLC) and WDT (predecessor in interest to SDT Inc.) as co-owners of the '400 and '667 Patents. Plaintiffs produced to Viasat the relevant agreements in February 2023, and explained the distribution of rights in their January 2024 interrogatory response:

> With respect to both the '400 and '667 patents: By operation of Section 6.1(a) of the Research & Development Services Agreement Between WDT and WDI dated June 30, 2007 (WD-Viasat-NDCA00002673), *all rights, title, and interest in the inventions automatically vested in Western Digital Ireland Ltd. upon their creation*. Further, by operation of Section 6.1(b) of the same agreement, *Western Digital Technologies, Inc. was assigned legal title* to the patent applications and resulting issued patents, as well as certain rights in the patents. On June 22, 2018, pursuant to a Technology License Agreement between Western Digital Ireland, Ltd. and SanDisk 3D IP Holdings, Ltd. (WD-Viasat-NDCA00002651), SanDisk 3D IP Holdings, Ltd. received "a perpetual, exclusive, right and license, with the right to grant sublicenses, in, to, and under" the patents. On November 30, 2019, pursuant to a Memorandum of Understanding, SanDisk 3D IP Holdings' rights were assigned down the shareholding chain to SanDisk Storage Malaysia Sdn. Bhd.

Dkt. 220-2 at 4-5 (emphasis added). WDI thus began as the owner of all rights in the '400 and '667 Patents. Pursuant to the same agreement that conferred ownership on WDI, WDI assigned to WDT "the right to enforce [the patents] against any third party for the benefit of WDI, WDT, and their respective affiliates" and "the authority to grant non-exclusive licenses . . . in exchange for reasonable consideration." Mao Decl., Ex. 1 at 5 (§ 6.2(b)). Further, the agreement provided "[f]or the sole purposes of registering, securing, enforcing, and granting licenses to [the patents] pursuant to this section 6.2, WDT is hereby assigned legal title to the [patents] *without any rights, with the exception of any rights specifically provided herein*." *Id.* (§ 6.2(b)) (emphasis added). Plaintiffs confirmed these facts in subsequent discovery, including by providing a corporate deposition and a supplemental interrogatory response that quotes additional language from the long-ago produced agreements.[3]

Based on these agreements, WDI did not assign all substantial rights to WDT nor SD3D and thus "remain[ed] [an] owner of the patent," along with WDT which held legal title and enforcement rights. *Alfred E. Mann*, 604 F.3d at 1359. For example, the agreements do not explicitly confer on WDT the right to sell the patents, so that right remained with WDI. *See, e.g., Propat Int'l Corp. v.*

---

[3] Viasat's bald assertion in its brief, citing to a bald assertion from its counsel, that Plaintiffs' earlier interrogatory response was "deficient" (Mot. at 4 n.3) is meritless. Plaintiffs' original response (Dkt. 220-2 at 4-5) identified all of the material facts that Viasat now relies on, namely that WDI assigned legal title to WDT and an exclusive license to SanDisk 3D IP Holdings, Ltd. (which was later assigned to SanDisk Storage Malaysia Sdn. Bhd.).

Gibson, Dunn & Crutcher LLP

*Rpost, Inc.*, 473 F.3d 1187, 1191 (Fed. Cir. 2007) ("The right to dispose of an asset is an important incident of ownership . . . ."). Moreover, the fact that the very same agreement that conferred rights to WDT was structured with all rights initially vesting in WDI suggests that the parties did not intend for WDI to be left with so little that it would not be deemed an owner. *See Sicom*, 427 F.3d at 979 ("[T]he intention of the parties to the Agreement and the substance of what was granted are relevant factors in determining whether all substantial rights in a patent were conveyed."). To the contrary, the agreement repeatedly affirms the contracting parties' intent that **WDI**, not WDT, was the ultimate owner of the patents. *See, e.g.*, Mao Decl., Ex. 1 at § 6.2(a) ("all rights, title, and interest . . . shall automatically vest in WDI"), § 6.2(c) ("WDT shall take all actions . . . to permit WDI to perfect and protect its ownership of all rights, title and interest"), § 6.2(d) ("WDI shall . . . assist WDI in every proper manner to obtain for WDI . . . patents, registered designs and copyrights"), § 6.3 ("WDT shall not (a) assert or represent to any third party that it has any rights whatsoever in any Intellectual Property Rights . . . , or (b) take, or permit any third party to take, any action that may limit or impair WDI's sole ownership of all rights, title and interests in and to all such Intellectual Property Rights").[4]

Viasat's focus on "exclusionary rights" misses the point. Although WDT possessed the right to formally enforce the patents or grant licenses, it did so for WDI's benefit, and because WDI is an owner of rights in the patents, its interests are impacted by litigation such that it should be joined as a party. The Federal Circuit has explained that a party—like WDT here—"that has the right to exclude others from making, using, and selling an invention described in the claims of a patent is constitutionally injured by another entity that makes, uses, or sells the invention." *Intellectual Property*, 248 F.3d at 1346. However, if that party does not hold all substantial rights, it "ordinarily may not sue in its own name alone, but must join the patent owner in an action brought against an accused infringer." *Propat*, 473 F.3d at 1193. One reason for this rule is a "policy consideration . . . to prevent a party with lesser rights from bringing a lawsuit that may put the licensed patent at risk of being held invalid or unenforceable in an action that did not involve the patentee." *Aspex Eyewear*,

---

[4] The June 22, 2018 assignment of WDI's "rights, benefit and interest in" the 2007 agreement between WDT and WDI did not change WDI's ownership in the '400 and '667 Patents because it was an assignment of WDI's contractual rights and obligations under the agreement, not WDI's ownership rights in the patents, which had already vested in WDI. *See* Mao Decl., Ex. 2, § 1.1. The 2018 agreement was not an intellectual property transfer.

Gibson, Dunn &
Crutcher LLP

*Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1343 (Fed. Cir. 2006).  This principle of joining the patent owner "is prudential rather than constitutional."  *Intellectual Property*, 248 F.3d at 1348.  Nonetheless, the bottom line is that a party with "fewer than all substantial patent rights" should sue "in the name of, and jointly with, the patent owner."  *Id.*  For that reason, this suit is brought in the name of WDT (now SDT Inc.), WDI (now SDT LLC), *and* SD3D.  Accordingly, SDT LLC is also a proper party before the Court with respect to the '400 and '667 Patents.

## IV.    CONCLUSION

For the foregoing reasons, Viasat's motion for summary judgment on standing (Dkt. 222) should be denied.


Dated: July 7, 2025                                    GIBSON, DUNN & CRUTCHER LLP

                                                       */s/ L. Kieran Kieckhefer*
                                                       L. Kieran Kieckhefer

                                                       *Counsel for Plaintiffs*

SANDISK'S OPPOSITION TO VIASAT'S MSJ ON STANDING
CASE No. 4:22-CV-4376-HSG-PHK

Gibson, Dunn &
Crutcher LLP