L. Kieran Kieckhefer (SBN 251978)
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94105-0921
Telephone: 415.393.8337
Email: KKieckhefer@gibsondunn.com

Robert A. Vincent (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue Suite 2100
Dallas, TX 75201-2923
Telephone: 214.698.3281
RVincent@gibsondunn.com

Lillian J. Mao (SBN 267410)
GIBSON, DUNN & CRUTCHER LLP
310 University Avenue
Palo Alto, CA 94301-1744
Telephone: 650.849.5307
LMao@gibsondunn.com

Ahmed ElDessouki (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.2345
AElDessouki@gibsondunn.com

Brian M. Buroker (*pro hac vice*)
Shuo Zhang (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1700 M St, N.W.
Washington DC 20036-4504
BBuroker@gibsondunn.com
SZhang@gibsondunn.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| SANDISK TECHNOLOGIES, INC., et. al., <br><br> Plaintiffs, <br><br> v. <br><br> VIASAT, INC, <br><br> Defendant | Case No. 4:22-CV-4376-HSG <br><br> **SANDISK'S OPPOSITION TO VIASAT'S MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT** <br><br> Date:　August 21, 2025 <br> Time:　2:00 p.m. <br> Dept.:　Courtroom 2, 4th Floor <br> Judge:　Hon. Haywood S. Gilliam, Jr. <br><br> **FILED UNDER SEAL** |

**Table of Contents**

Page

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................. 2

      A.    The March 2024 ICs.................................................................................. 2

      B.    The Accused Viasat Systems .................................................................... 2

III.  LEGAL STANDARD .......................................................................................... 4

IV.   ARGUMENT ...................................................................................................... 4

      A.    Sandisk Proved That The Accused Products Practice the "Receive an
            Indication" Limitation of the '667 Patent Under the Court's Interpretation................. 4

            1.    Sandisk's March 2024 Infringement Contentions Specified the
                  "Indication" Related to a "Secure Region."....................................... 5

            2.    Fact and Expert Discovery Have Supplied Additional Support for
                  Sandisk's Timely-Disclosed Infringement Theories, While Confirming
                  Viasat Had Adequate Notice.................................................................. 7

            3.    Sandisk Provided Sufficient Support That the Accused System
                  Transmits and Receives an "Indication of a Secure Region," Creating a
                  Triable Issue of Fact on Infringement. ................................................ 9

      B.    Sandisk Proved that the Accused Products Each Comprise "A Kiosk" as
            Required by the Asserted Claims of the '400 Patent ...................................... 12

            1.    Viasat Raises an Untimely and Incorrect Claim Construction
                  Argument. ......................................................................................... 12

            2.    Sandisk Proved that Viasat's Systems Meet the Kiosk Limitation, And
                  at Minimum, a Material Dispute of Fact Exists. ............................... 15

            3.    Even Under Viasat's New Construction, a Triable Issue of Fact
                  Remains........................................................................................... 17

      C.    Sandisk Proved that the Accused Products Meet the "Authenticating the
            Portable Data Storage" Limitation of the '400 Patent ................................. 18

            1.    Dr. Easttom's Report Illustrates That the Accused Products Satisfy the
                  "Authenticate" Claim Limitation Under the Court's Claim
                  Construction. .................................................................................... 19

            2.    Viasat Invents a New Requirement for the "Authenticate" Claim
                  Limitation That is Not Supported. ..................................................... 23

            3.    Even if Viasat's Motion to Strike is Granted, a Triable Issue of Fact
                  Remains........................................................................................... 24

V.    CONCLUSION................................................................................................. 25

Gibson, Dunn &
Crutcher LLP

# Table of Authorities

Page(s)

## Cases

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ................................................................................................4

*Apple, Inc. v. Samsung Elecs. Co.*,
   No. 12-CV-00630-LHK, 2014 WL 252045 (N.D. Cal. Jan. 21, 2014) ...................13, 23

*Arctic Cat Inc. v. Bombardier Recreational Prod., Inc.*,
   2016 WL 9402395 (S.D. Fla. May 3, 2016), vacated in part on other grounds, 876
   F.3d 1350 (Fed. Cir. 2017) .......................................................................................4

*Asetek Danmark A/S v. CoolIT Sys. Inc.*,
   No. 19-CV-00410-EMC, 2022 WL 21306657 (N.D. Cal. Oct. 4, 2022) ....................4

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*,
   512 F.3d 1338 (Fed. Cir. 2008) ................................................................................14

*Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*,
   482 F.3d 1347 (Fed. Cir. 2007) ..............................................................................13, 23

*Convolve, Inc. v. Compaq Computer Corp.*,
   812 F.3d 1313 (Fed. Cir. 2016) ................................................................................14

*Dooley v. Nevada Gold Mines, LLC*,
   No. 23-3686, 2025 WL 1110739 (9th Cir. Apr. 15, 2025) ............................................10

*Fed. Trade Comm'n v. Barron*,
   No. 24-2408, 2025 WL 1482988 (9th Cir. May 23, 2025) ...........................................10

*Hilgraeve Corp. v. McAfee Assocs., Inc.*,
   224 F.3d 1349 (Fed. Cir. 2000) .................................................................................4

*Impact Engine, Inc. v. Google LLC*,
   624 F. Supp. 3d 1190 (S.D. Cal. 2022) ....................................................................22

*Insituform Techs., Inc. v. Cat Contracting, Inc.*,
   99 F.3d 1098 (Fed. Cir. 1996) ..................................................................................14

*Oracle Am., Inc. v. Google, Inc.*,
   No. C10-03561-WHA, 2011 WL 4479305 (N.D. Cal. Sept. 26, 2011)..........................7

*Salazar v. AT&T Mobility LLC*,
   64 F.4th 1311 (Fed. Cir. 2023) .................................................................................14

*Sonos, Inc. v. Google LLC*,
   No. C 20-06754 WHA, 2023 WL 2918751 (N.D. Cal. Apr. 12, 2023)..........................8

*Sun Microsystems, Inc. v. Network Appliance, Inc.*,
   688 F. Supp. 2d 957 (N.D. Cal. 2010) ......................................................................22

*Tesco Corp. v. Weatherford Int'l Inc.*,
   750 F. Supp. 2d 780 (S.D. Tex. 2010) ......................................................................4

iii

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011)...................................................................................................4, 17

**Statutes**

28 U.S.C § 1746 ...........................................................................................................................7, 9

**Rules**

Fed. R. Civ. P. 56(a)..........................................................................................................................4

Fed. R. Civ. P. 56(c)(1)......................................................................................................................7

Gibson, Dunn &
Crutcher LLP

## I.    INTRODUCTION

Viasat's motion for summary judgment (Dkt. 205, 207) should be denied. Sandisk's technical expert report establishes a clear case of infringement for both patents under the Court's claim constructions citing technical documents, source code and other evidence to support his opinions.

For the '667 Patent, Sandisk's expert applied the Court's interpretation of the claim term: "receive an indication of the presence of a secure region within the NAS device," *i.e.*, that the indication be "an indication of the presence of the secure region itself." Ex. 13 (Easttom Op. Rept.), ¶¶ 553-581. He did not, as Viasat alleges, apply Sandisk's rejected claim interpretation. Moreover, he did not, as Viasat alleges, provide a new infringement analysis that was not disclosed in the March 2024 Infringement Contentions ("March 2024 ICs"). Rather, Dr. Easttom demonstrated that, under the infringement theory disclosed in Sandisk's March 2024 ICs, the Viasat accused systems receive an indication of the presence of the secure region itself and as a result, there is at least a material factual dispute that forecloses summary judgment.

For the '400 Patent, Sandisk shows that both the "kiosk" and "authentication/authenticating" limitations are met by the Accused Products (as well as proving that all other elements of the asserted patent claims are met by the Accused Products). For this patent, Viasat attempts to reargue claim interpretation for both the "kiosk" and the "authenticating/authentication" limitations.[1] It argues that a "kiosk" must be a single device, but that is not what the Court's claim construction says, and such a belated interpretation is not supported by the intrinsic or extrinsic evidence Viasat cites. Moreover, the evidence demonstrates that the components that Sandisk identified operate as a single device and therefore infringe even under Viasat's legally erroneous claim interpretation.

As to the "authenticating/authentication" limitation in the '400 Patent, Viasat argues that the "unique identifier" must be communicated to the remote trusted server as part of the authentication process, but again that is not required by the claims or the Court's construction. This is another belated and incorrect attempt to reargue claim construction that should be rejected. The claims merely require authentication using the unique identifier and communicating with a remote trusted server. Sandisk's

---

[1] These belated claim interpretation arguments demonstrate that Viasat knows that Sandisk has proven infringement under the correct interpretations and therefore, is trying to have a do-over of claim interpretation without justification or legal basis.

expert report and supporting documentation demonstrate that the Accused Products do exactly that, thus proving that element is met as part of the infringement analysis.

Viasat's motion should be denied in its entirety.

## II.    BACKGROUND

### A.    The March 2024 ICs

The March 2024 ICs contended that, for the '400 Patent, the Accused Instrumentalities include "Viasat's in-flight entertainment ("IFE"), wireless IFE ("W-IFE) systems, Viasat WiFi Gateway Modem ('Gateway'), and all Viasat products incorporating IFE, W-IFE, Gateway, or the functionality described herein." Dkt. 189-2, 2. And for the '667 Patent, "the Accused Instrumentalities include Viasat's media streaming software, systems, and services, including systems that implement edge storage, such as and including the Opening Caching standards" which "include the Viasat Content Delivery System ("VCDS") and Viasat Open Stream." *Id*. For both the '400 and '667 Patents, the accused IFE/WIFE and streaming systems operate with the VCDS system to deliver IPTV/Live TV media and pre-stored media, and on-demand media content (e.g., by Disney+) to in-flight users and home users, depending on the use case. Dkt. 189-3, 3 and 189-4, 3 and 8.[2]

### B.    The Accused Viasat Systems

The accused Viasat IFE/WIFE systems enable passengers to view media content on an airplane—including **both** Live TV/IPTV and pre-stored content (and other on-demand content such as Disney+). Ex. 13 (Easttom Op. Rept.), ¶ 128. The IFE/WIFE systems include an in-plane server, the S4 server, that provides requested media content to passengers. *Id*., ¶ 102. The media content can be viewed using a passenger's own device that connects wirelessly to the W-IFE system using in-plane Wi-Fi, or using a seat-back device connected to the system's in-plane server. *Id*., ¶ 175.

---

[2] Sandisk disputes the completeness and accuracy of Viasat's "Statement of Relevant Facts" (Dkt. 205, 3-4). For example, Viasat states that the accused products are "Viasat's in-flight entertainment and communication systems ('IFEC') systems for use in commercial and private aviation and other Viasat systems implementing edge storage solutions." That is an incomplete statement of what was accused. Moreover, Sandisk first served infringement contentions based entirely on public record materials. Declaration of S. Zhang ("Zhang Decl."), ¶3. After Viasat made an initial production of documents, Sandisk amended its contentions in March 2024 through agreement by the parties. *Id*., ¶5. Importantly, before Sandisk amended the contentions in March 2024, Viasat had produced 179 non-public documents (7,738 pages). *Id*., ¶¶3-5. By contrast, Viasat produced over 9,000 documents (over 121,000 pages) in January and February 2025 just before the close of fact discovery. *Id*., ¶6.

The IFE/WIFE accused systems connect to the ████████████ to retrieve media content. *Id*., ¶¶ 102, 123, 125. The connection between the ████████████████ uses a satellite connection and an M3 modem connected to the S4 server. *Id*. To load media content onto the on-plane server, the IFE/WIFE accused systems are integrated with the ████████████. The ████████████ transfer content from the ground to the ██████████ that operates as part of the Viasat IFE/WIFE systems—including **both** Live TV/IPTV[3] and pre-stored content. *Id*., ¶¶ 117, 126-128. The ██████ system is an integral part of Viasat's IFE/WIFE system and uses edge caching technology to efficiently transfer the media content to passenger devices and seatback devices. *Id*., ¶ 61.

The key components of the Visat's IFE/WIFE systems are illustrated below



Ex. 20 (VIASAT_0005782), 798 (showing Viasat's architecture for its IFE/WIFE system and annotated to show the in-plane W-IFE S4 server (green), which is connected to an in-plane ████████ (purple) that executes ████████████████ (red); passenger devices (black); ████████████ (orange); and the ████████████████ in blue; a ████████████████ (yellow)).

Sandisk's technical expert report relies on the same infringement theories and provides additional details that demonstrate Viasat's infringement of both asserted patents. Contrary to the arguments presented in Viasat's motion, those infringement theories apply the Court's claim constructions and demonstrate that all elements of the claims are met.

---

[3] Live TV and IPTV are synonymous at Viasat. *See* Dkt. 231-12 (Ex. J - Edillon Dep. Tr.), 28:19-21

3

Gibson, Dunn & Crutcher LLP

### III.    LEGAL STANDARD

Summary judgment is only appropriate where there are no genuine issues of material fact, and the moving party demonstrates that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The Court's role at summary judgment is "to determine whether there is a genuine issue for trial," taking the evidence in the light most favorable to the non-moving party, and not to engage in functions reserved for the jury such as "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249, 255-6 (1986). Conflicting expert testimony raises genuine issues of material fact that preclude summary judgment. *Hilgraeve Corp. v. McAfee Assocs., Inc.*, 224 F.3d 1349, 1352-54 (Fed. Cir. 2000).

The "application of [the] claim construction to the accused device" is a factual question for the jury. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1302 (Fed. Cir. 2011). Merely presenting one interpretation of how the construction applies to the accused products is permissible. *Asetek Danmark A/S v. CoolIT Sys. Inc.*, No. 19-CV-00410-EMC, 2022 WL 21306657, at *9 (N.D. Cal. Oct. 4, 2022) (citing *Tesco Corp. v. Weatherford Int'l Inc.*, 750 F. Supp. 2d 780, 796 (S.D. Tex. 2010)). "Although it is improper to ignore the Court's constructions or to utilize inconsistent constructions, it is appropriate for an expert to apply the Court's constructions, ... A dispute about the proper application of the Court's constructions is not grounds to exclude [the expert's] opinions." *Id.* (citing *Arctic Cat Inc. v. Bombardier Recreational Prod., Inc.*, 2016 WL 9402395, at *7 (S.D. Fla. May 3, 2016), vacated in part on other grounds, 876 F.3d 1350 (Fed. Cir. 2017)). Testimony applying the court's construction to the accused products creates a factual dispute. *Id.*

### IV.    ARGUMENT

#### A.    Sandisk Proved That The Accused Products Practice the "Receive an Indication" Limitation of the '667 Patent Under the Court's Interpretation

Sandisk's technical expert, Dr. Easttom, prepared a detailed and thorough expert report that analyzed each Accused Product and claim limitation, and offered his opinion that each asserted claim was infringed. His analysis was based on the Court's construction, including the construction for the claim term "receive an indication of the presence of a secure region within the NAS device" which the Court construed to mean "an indication of the presence of the secure region itself." Dkt. 120, 19. Dr.

Gibson, Dunn & Crutcher LLP

Easttom identified several indications that demonstrate the presence of the secure region itself. Ex. 13 (Easttom Op. Rept.), ¶¶ 554-555, 558-559, 561, 572-574. Viasat's arguments are unavailing.

First, contrary to Viasat's claim that Dr. Easttom introduced new infringement theories that do not appear in Sandisk's March 2024 ICs—which Viasat refers to as "encrypted" Boolean theory and "DRM subfolder" theory—Dr. Easttom's report is based on a ***single, consistent infringement theory*** demonstrating how this limitation, as the Court construed it, is met. That theory was disclosed and well-supported by Sandisk's March 2024 ICs. Dr. Easttom's report simply cited additional support to demonstrate that the "encrypted" Boolean and "DRM subfolder" are indications of the presence of the secure region itself—that evidence further illustrates the application of the previously disclosed infringement theory and is not a new theory.

Second, Viasat's arguments that the allegedly new theories cannot satisfy the requirements of this claim limitation are not based on admissible evidence and, at most, raise a triable dispute of material fact, as apparent from the disagreements between the experts. Viasat's request for summary judgment of non-infringement of the '667 Patent should be denied.

### 1. Sandisk's March 2024 Infringement Contentions Specified the "Indication" Related to a "Secure Region."

Viasat incorrectly asserts that Sandisk's March 2024 ICs, with respect to the "receive an indication of the NAS device having a secure region" claim limitation (limitations 1[c] and 11[b]) of the '667 Patent, only point to indications directed to entire devices and not those specific to a region within the device. Dkt. 205, 5. In truth, Sandisk has consistently advanced an infringement theory directed to a secure region *within* the device since at least its March 2024 infringement contentions, and that theory is fully grounded in Viasat's own documents, source code, and Sandisk's expert testimony.

Asserted independent claims 1 and 11 of the '667 Patent require receiving "an indication of the NAS device having a secure region comprising *a buffer* for streaming media on a separate display device on the local area network, wherein access to the secure region is controlled by the media streaming system." Thus, the secure region comprises or includes a buffer for streaming media. Sandisk's March 2024 ICs identified the "███████ which "serves as a short-term buffer that is effective

Gibson, Dunn &
Crutcher LLP

even for live video," as the claimed buffer of the secure region. Dkt. 189-4, 39; Ex. 27 (VI-ASAT_00008738), 746.

Viasat's attempt to re-label specific evidence to mischaracterize Sandisk's positions is unfounded and improper. Sandisk's March 2024 ICs identified Viasat's VCDS terminal (which includes onboard storage) as the claimed NAS device, and described a secure portion of that storage—the "████████"—which "serves as a short-term buffer that is effective even for live video," as the claimed buffer of the secure region. Dkt. 189-4, 39. Sandisk specifically noted that the ████████ is encrypted and not directly accessible to users without special software, thereby characterizing it as a secure storage region. *Id.*, 40-41, 44; Ex. 27 (VIASAT_00008738), 745 ("███████████████████ ████████████"), 766-767 ("██████████████████████████████████ ████████████████████"); Ex. 25 (VIASAT_00007395), 418 ("VCDS is already compliant with all ███████████████."); Ex. 6 (VIASAT_SC_0000189-195) (████████████████████ ██████████); Ex. 9 (VIASAT_SC_0000278-298) (███████████████████████, which checks the ████████, which Viasat's Mr. Neri later confirmed is set by ███████████); Ex. 15 (Neri Depo. Tr.), 167:2-168:4 (testifying that the ████████ is set by ███████████).

The contentions went on to cite Viasat's technical documentation about the "████████ System," explaining that Viasat's system strictly controls access to certain subdirectories of the ████ Dkt. 189-4, 46, 58-59 (explaining how the ████████████████████████████ ████████████████████████████████████), 81-82; Ex. 27 (VIASAT_00008738), 772, 775, 803 (explaining ████████████ system); Ex. 7 (VIASAT_SC_0000212-248) (██████ ████████████████████████); Ex. 13 (Easttom Op. Rept.), ¶ 556 (explaining the functionality implemented by the ████████████████).

In particular, Sandisk outlined how Viasat's system stores media content in a ████████ ████████████████████████████████████████████████████████████ ████. Dkt. 189-4, 58. This folder structure and movement of content were described as the mechanism by which the system indicates and enforces what portion of the cache is accessible—*i.e.*, an indication and mechanism for controlled access to a secure region. In short, Sandisk's March 2024 ICs pointed to the fact that the accused system distinguishes between secure (encrypted, hidden) storage

6

1  areas and public areas by using ███████████████████ as satisfying the indication-of-

2  secure-region element.

3       The evidence cited in Sandisk's March 2024 ICs alone clearly illustrates that a triable issue of

4  fact remains, and that it would be reasonable for a jury to find infringement. Viasat's motion for sum-

5  mary judgment should be denied, even if Viasat's co-pending motion to strike (Dkt. 199) is granted.

6       **2.    Fact and Expert Discovery Have Supplied Additional Support for Sandisk's**
        **Timely-Disclosed Infringement Theories, While Confirming Viasat Had Ade-**
7       **quate Notice.**

8       Viasat's contention that Sandisk never identified any theory specific to the secure region, and

9  allegedly added two new theories—"encrypted Boolean" and "DRM subfolder"—through Dr.

10 Easttom's expert reports[4] is belied by Sandisk's March 2024 ICs as explained above. Over the course

11 of fact discovery, and in Dr. Easttom's report, Sandisk identified additional evidentiary support.

12      As part of disclosing its infringement theories, Sandisk's March 2024 ICs cited Viasat source

13 code files that implement the secure region indication. For example, the March 2024 ICs identified

14 three source code files in the "████████" codebase as relevant to the indication limitation, including

15 ████████████████████████████████████████████████████████████

16 ████████████████████████████ *Id.*, 49. By pinpointing these files (out of more than ██████

17 source code files), Sandisk put Viasat on clear notice of the exact functional components tied to the

18 "indication" limitation. Those are the very same files that Dr. Easttom relied on in his report. As such,

19 Viasat has not shown that the references in Dr. Easttom's report to ███████████████ in pre-

20 viously identified source code files "invoke a new infringement theory that was not disclosed in [the]

21 infringement contentions." *Oracle Am., Inc. v. Google, Inc.*, No. C10-03561-WHA, 2011 WL 4479305,

22 at *4 (N.D. Cal. Sept. 26, 2011).

23      Rather than introducing new theories as Viasat contends, Dr. Easttom merely provided eviden-

24 tiary detail drawn from Viasat's source code and witness testimony to further substantiate the very

25 theory Sandisk had already disclosed. *See generally* Ex. 13 (Easttom Op. Rept.), ¶¶ 553-605. Thus, Dr.

26 Easttom's "expert report merely elaborates on the manner in which [Viasat] allegedly infringes and

27

28

---

[4] Ex. 13 (Easttom Op. Rept.), 314. His report is a sworn declaration, and may thus be considered as factual support for the purpose of summary judgment. Fed. R. Civ. P. 56(c)(1); 28 U.S.C § 1746.

Gibson, Dunn &
Crutcher LLP

1    does not amount to a last-minute disclosure of a new infringement theory." *Finjan, Inc.*, 2015 WL

2    3640694, at *3.

3        Viasat's conduct further confirms that Viasat itself acknowledged and attempted to respond to

4    Sandisk's timely disclosed theory. Viasat's expert Dr. Kevin Almeroth relied on the purported "en-

5    cryption theory" in his invalidity report that was served the same day as Dr. Easttom's report on in-

6    fringement. Dr. Almeroth also concedes that Sandisk "previously alleged that ███████████████

7    ████████████████████████ satisfies the claimed 'indication'" limitation. Dkt. 227-4, (Ex. C - Alme-

8    roth Opening Report), ¶ 350. Moreso, Dr. Almeroth does not put forward any invalidity theory for the

9    indication limitation for one reference (the SCSA) other than based on this theory, which Viasat first

10   charted in April 2024 with its invalidity contentions. *Id*. Dr. Almeroth not only recognized Sandisk's

11   ████████████ theory—he applied it for his invalidity analysis of the '667 Patent. *Sonos, Inc. v.*

12   *Google LLC*, No. C 20-06754 WHA, 2023 WL 2918751, at *8 (N.D. Cal. Apr. 12, 2023) (finding

13   infringement theory previously disclosed given recitation of plaintiff's position in defendant expert's

14   opening report).

15       Similarly, Viasat acknowledged and addressed Sandisk's infringement theory through non-in-

16   fringement interrogatory responses, including responses served on February 7, 2025, more than a

17   month before Dr. Easttom's opening report on March 24, 2025. There, Viasat addressed the same ████

18   ████████████) that Viasat now claims was not disclosed until Dr. Easttom's report, arguing that

19   ████████████████████████████████████████████████████████████████████████████████

20   ████████████████ would not, in Viasat's view, result in ████████████████ in the accused

21   configurations. Dkt. 227-18 (Ex. Q - Visat's Fourth Supplemental Responses), 49-50. Thus, Viasat

22   understood Sandisk's theory down to the ████████████████████████████, and it formu-

23   lated a rebuttal on the merits (████████████████████████████████). This is a

24   critical admission showing Viasat had notice of Sandisk's infringement position, was aware of such

25   infringement position, and was preparing defenses on that basis.

26

27

28

SANDISK'S OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT OF NONINFRINGEMENT (DKT. 205)
CASE NO. 4:22-CV-4376-HSG

**3.     Sandisk Provided Sufficient Support That the Accused System Transmits and Receives an "Indication of a Secure Region," Creating a Triable Issue of Fact on Infringement.**

Not only was Sandisk's infringement theory timely disclosed and known, it is also substantively supported by evidence sufficient to prove Viasat's infringement, or at least sufficient to defeat summary judgment. Viasat argues that Sandisk failed to identify a "theory [that] satisfies the requirements of the ['indication of a secure region'] claim," suggesting that no such indication is ever conveyed in Viasat's accused system. For the "encrypted Boolean," Viasat contends that this ▮▮▮▮▮▮▮▮ only reflects whether an entire device is encrypted, and not a region thereof, and fails to satisfy the "region" require-ment of the claims. Dkt. 205, 7-8. In addition, Viasat argues that it is "undisputed" that the accused systems do not use this ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[5] *Id.*, 8-9. For the purported ▮▮▮▮▮▮ theory, Viasat contends that Dr. Easttom failed to articulate how the indica-tion is transmitted and received by the accused Viasat system. *Id.*, 9-10.

Viasat's arguments are factually incorrect. As discussed above, Sandisk pointed to specific components and processes in the accused products that generate and communicate the presence (or absence) of a secure storage region. At minimum, this evidence raises a genuine factual dispute for trial and renders this subject inappropriate for summary judgment. Putting aside Viasat's grossly inaccurate characterization of Sandisk's infringement theory, Dr. Easttom's support related to the purported "en-crypted Boolean" and "DRM subfolder" further supports (or at least raises disputed material facts re-garding) Viasat's infringement of the '667 Patent, providing additional reasons to deny Viasat's request for summary judgment.

*Dr. Easttom Explained How The "Encrypted Boolean" Supports Viasat's Infringement.* Vi-asat's own source code, as Dr. Easttom succinctly pointed out, reveals the explicit mechanism for in-dicating how the accused Viasat system contains a secure region. Dr. Easttom carefully walks through the source code lines to show how the accused Visat product "receive[s] an indication of the NAS device having a secure region" as required by claim limitation 1[c] of the '667 Patent.

---

[5] Viasat's relies on Dr. Almeroth's report for this proposition. Dkt. 205 at 8 (citing to Almeroth Rebuttal Rep.). But Dr. Almeroth's report is not a declaration and thus fails to satisfy the requirements under Fed. R. Civ. P. 56(c)(1) as support for Viasat's factual position. *See* 28 U.S.C. § 1746; Dkt. 205, Ex. D (Almeroth Rebuttal Rep.), ¶354.

The ███████████████████████████████████████████████

████████████████████████████████. Ex. 13 (Easttom Op. Rept.), ¶ 555; *see also* Ex. 6 (VI-ASAT_SC_0000189-195). Dr. Easttom explains that programmer comments in the source code file confirm that the ████████████████████████████ and not the entire storage devices as Viasat claims. Ex. 13 (Easttom Op. Rept.), ¶ 554; *see also* Ex. 7 (VI-ASAT_SC_0000212-248). Viasat's own source code supports that ███████████████████ ████████████████████████ (*i.e.*, a portion of the storage) rather than entire storage.

Viasat's argument on the non-use of this ███████████ is also inaccurate. Acknowledging Mr. Neri's claim that this █████████████████ and not used, Dr. Easttom discusses source code that support otherwise.[6] Ex. 13 (Easttom Op. Rept.), 203 n.28. Dr. Easttom points to the file ████ ████████████████████████████████████████████████████ █████████████████████████████████████. *Id.*, ¶¶ 558-560; *see also* Ex. 10 (VIASAT_SC_0000374-401), 382. The ████████████████████████████████████████ ████████████████████████████████████████. Ex. 13 (Easttom Op. Rept.), ¶¶ 558-

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████. *Id.*, ¶¶ 556-557; *see also* Ex. 7 (VIASAT_SC_0000212-248), 242. In other words, contrary to Viasat's contentions, Dr.

---

[6] Viasat argues that Dr. Easttom "never explains why he disagrees" with Mr. Neri's statement, and that Dr. Easttom does not "████████████████████████████████," hence "provides insufficient evidence to rebut Viasat's expert's opinions and evidence." Dkt. 205, 9 n.4. As explained in the text herein, that is not true. In addition, Dr. Almeroth's report is not a valid declaration under Rule 56 (*supra*, n.5), whereas Dr. Easttom's report is (*supra*, n.4). For the purpose of summary judgment, the Court may not rely on Dr. Almeroth's report. *Fed. Trade Comm'n v. Barron*, No. 24-2408, 2025 WL 1482988, at *2 (9th Cir. May 23, 2025) (Declaration at-issue "was not made under penalty of perjury in compliance with 28 U.S.C. § 1746, rendering it inadmissible under Rule 56(c)(4)."); *Dooley v. Nevada Gold Mines, LLC*, No. 23-3686, 2025 WL 1110739, at *3 n.1 (9th Cir. Apr. 15, 2025) ("[L]ike the district court, we do not consider [the] unsworn declaration for summary judgment purposes because it does not comply with 28 U.S.C. § 1746."). Thus, Dr. Easttom's opinions that the ████████████████████████████ is the only factual support at-issue with respect to this issue on this motion.

10

Gibson, Dunn & Crutcher LLP

Easttom laid out how ████████ indication is set, and how the ████████ is used through-out Viasat's code.[7]

*Dr. Easttom Explained How The "DRM Subfolder" Supports Viasat's Infringement.* In addition to the "encryption Boolean," Sandisk presented evidence that Viasat's ████████ reflects the indication of a secure region. Dr. Easttom explains that Viasat's system ████████ ████████████████████████████████████████████████████████████████████████ ████████████, which was also confirmed by Viasat's Mr. Hughes' testimony. Ex. 13 (Easttom Op. Rept.), ¶¶ 562, 571-572; *see also* Ex. 14 (Hughes Depo. Tr.), 103:3-16, 105:4-16. Sandisk's expert opined that these ████████ serve as an "indication of a secure region" because content in those ████ are protected, while content outside are not. The ████████ thus contains a secure region (*i.e.,* ████████████████) and the system indicates this by how it addresses and accesses said ████████████. Ex. 13 (Easttom Op. Rept.), ¶¶ 562, 571-572. Dr. Easttom discusses how Viasat's Mr. O'Sullivan confirmed that DRM protection is necessary to allow users on aircraft to watch media content, and that DRM components verify whether media stored onboard may be streamed to users. *Id.,* ¶¶ 569-570; Ex. 17 (O'Sullivan Depo. Tr.), 47:1-7, 61:11-22, 109:8-15, 110:16-24, 148:16-20.

Viasat contends that Dr. Easttom failed to articulate how the indication is transmitted and received by the accused Viasat system. Dkt. 205, 9-10. Again, not so. Dr. Easttom addressed this issue. Dr. Easttom explained how different types of content are stored in different file locations within the same server storage device. Ex. 13 (Easttom Op. Rept.), ¶ 571. Dr. Easttom further explained how the accused Viasat system ingests media files, using information such as ████████ to the storage device. *Id.,* ¶¶ 529 (citing Ex. 2 (VIASAT_SC_0000076-82)), 580 (citing Ex. 8 (VIASAT_SC_0000249-277), which shows the buffer). This shows that content is moved through folders, demonstrating an operational signal of what portion of storage is open for use. Viasat attacks this by essentially claiming a ████████████ is not a formal "indication" under the claim. But that is a strained reading—whether

---

[7] Viasat cites to Dr. Almeroth's non-declaration report that all ████████████████████████████. Dkt. 205 at 9. Even if taking the disputed statements from Dr. Almeroth's report as true, this proposition only applies to "the ***aviation use case,***" and does not warrant the broad scope of summary judgment Viasat seeks. Dkt. 205, Ex. D (Almeroth Rebuttal Rep.), ¶ 284.

Gibson, Dunn &
Crutcher LLP

an indication is communicated █████████████████████████████████ , the effect is the same: the system has knowledge of which part of the storage is designated as secure and uses that knowledge in operation. The claims do not require any particular form for the "indication." Here, the presence of content in a specific secure ████████ is effectively a signal to the system that that content is in a secure, access-controlled region. Sandisk has traced how the accused system uses that signal: for example, content is stored by type in different folders, including a folder called ██████████████████ . *Id.*, ¶ 571 (citing Ex. 15 (Neri Depo. Tr.), 37:5-12, 47:4-48:1, 74:21-25)). Whether it is through ████████████████████ , Viasat's system distinguishes secure storage from ordinary storage and communicates that distinction within the system.

### B. Sandisk Proved that the Accused Products Each Comprise "A Kiosk" as Required by the Asserted Claims of the '400 Patent

Viasat's request for summary judgment as to the '400 Patent with respect to the "kiosk" claim term should be rejected. Viasat's argument turns on an untimely and incorrect claim construction argument—that the Court's construction of kiosk as being "any device" excludes multiple components grouped together to be the kiosk (it does not). Sandisk has adduced sufficient evidence for the jury to find that the accused products have a "kiosk" that satisfies the Court's construction. Further, even if Viasat's incorrect new construction were adopted, summary judgment is not warranted because the evidence of record presents a triable issue of material fact as to whether there is a single device that serves as the kiosk.

#### 1. Viasat Raises an Untimely and Incorrect Claim Construction Argument.

All asserted claims in the '400 Patent require "a kiosk," which appears in the preamble of the asserted independent claims. During claim construction, the Court construed the term "kiosk" to mean "any device used to access and distribute content provided by the system." Dkt. 120, 10. Viasat now seeks to construe the words of the Court's construction and impose a new requirement that neither the parties nor the Court addressed at the claim construction stage—whether the claimed "kiosk" must be "a singular device" (Dkt. 205, 10-11). That proposed construction is contradicted by the intrinsic evidence. Thus, Viasat's claim construction argument, as well as its summary judgment argument, fails.

As an initial matter, the Court has already construed this claim term, and Viasat failed to raise

12

Gibson, Dunn &
Crutcher LLP

1  this issue during the claim construction process. Viasat's suggestion (Dkt. 210, 11) that whether a "ki-

2  osk" is a "singular device" was already decided during claim construction is incorrect. During claim

3  construction, the parties presented two disputes relating to the "kiosk" term: (1) whether the recitation

4  of "kiosk" in the claims' preamble was limiting, and (2) whether the "kiosk" is "limited to a device

5  having 'a user interface' that is 'used by consumers.'" Dkt. 120, 6-10. The Court concluded "yes" as

6  to (1) and "no" as to (2). Viasat never raised any arguments about the "kiosk" being a "singular device."

7  The arguments presented in its summary judgment brief are entirely new, and bear no resemblance to

8  the arguments in its claim construction brief. *Compare* Dkt. 210, 11-12 *with* Dkt. 104, 2-7. Viasat

9  should not now be able to pose it for resolution on summary judgment. *Cent. Admixture Pharmacy*

10  *Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007) (affirming district

11  court's finding that defendant "waived any argument with respect to [claim] term by failing to raise it

12  during the claim construction phase"); *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-CV-00630-LHK,

13  2014 WL 252045, at *3 (N.D. Cal. Jan. 21, 2014) ("If the parties wanted to tee up summary judgment

14  positions based on particular constructions, they could (and should) have sought constructions to those

15  effects.") (cleaned up).

16       Further, nothing in the Court's construction requires that "kiosk" be a "singular" device. The

17  claims and the specification of the '400 Patent refute Viasat's new claim construction argument. Noth-

18  ing in the claims requires that the components be contained in a single "housing[]" as Viasat appears

19  to argue (Dkt. 210, 14). The claims explicitly recite that the kiosk is comprised of multiple subcompo-

20  nents—for example, in Claim 1, "a first data interface," "a second data interface," and "a processor"—

21  without ever reciting that the subcomponents must be situated in a single box, as Viasat is trying to

22  require. Dkt. 1-1 ('400 Patent), cl. 1. Viasat's argument finds no support from the claim language and

23  renders the claim language nonsensical: applying Viasat's argument, a kiosk with the required two data

24  interfaces and a processor, even if interconnected, would be considered "three devices" and cannot be

25  the singular "any device" according to the Court's construction.

26       The specification of the '400 Patent further makes clear that the kiosk need not be in a single

27  housing and may comprise multiple subcomponents. In one passage, the patent states: "the kiosk 106'

28  may be implemented as a self-service computer terminal. In one embodiment, the ***kiosk 106' may***

13

1    ***comprise specialized hardware and software*** that is designed such that kiosk 106' is placed in a public

2    environment. The ***kiosk 106' may comprise various user interface equipment, such as a keyboard,***

3    ***display, etc.*** to allow use of the kiosk 106'." Dkt. 1-1, 6:36-42 (emphases added). Viasat's position

4    cannot be reconciled with the explicitly disclosed embodiment of a kiosk with a keyboard and dis-

5    play—components that are often externally connected to a computer and which together would com-

6    prise the kiosk, regardless of whether they are considered (in Viasat's words) "plural devices."

7        Contrary to Viasat's argument, the claims' recitation of "a" kiosk—and the Court's construction

8    referring to "any" device (singular)—does not support a requirement of a "singular" kiosk. It is a gen-

9    eral rule that "a" means "one or more" in patent parlance; an exception "only arises where the language

10   of the claims themselves, the specification, or the prosecution history necessitate a departure from the

11   rule." *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342–43 (Fed. Cir. 2008).

12       Moreover, the case law that Viasat cites is readily distinguishable and inapplicable here. Dkt.

13   205, 12 (citing *Convolve, Inc. v. Compaq Computer Corp.*, 812 F.3d 1313, 1321 (Fed. Cir. 2016);

14   *Salazar v. AT&T Mobility LLC*, 64 F.4th 1311, 1317 (Fed. Cir. 2023); *Insituform Techs., Inc. v. Cat*

15   *Contracting, Inc.*, 99 F.3d 1098, 1105-06 (Fed. Cir. 1996)). As explained in *Convolve*, "absent a clear

16   intent in the claims themselves, the specification, or the prosecution history, we interpret 'a processor'

17   as 'one or more processors.'" *Convolve*, 812 F.3d at 1321 (finding that some claims allowed for "one

18   or more processors," while others did not). In *Salazar*, the court also found that "the claim language . .

19   . read in the context of the full claim," was limited to a single processor. *Salazar*, 64 F.4th at 1318.

20   Viasat identifies no such "clear intent" to limit "kiosk" to components in a single box, because none

21   exists. Similarly, *Cat Contracting* involved an allegation of infringement of a method claim for manu-

22   facturing a cup using a vacuum process applied to that cup, where the claim at issue was found to be

23   "specific as to the number of elements (one cup) and adding elements eliminates an inherent feature

24   (discontinuous vacuum) of the claim." *Id.*, 1106. Here, unlike *Cat Contracting*, the physical parameters

25   of the "kiosk" do not matter in any way to the claim because it is common for components that form a

26   computer system to be separated or combined into one or more boxes.

27

28

Gibson, Dunn &

Crutcher LLP

### 2. Sandisk Proved that Viasat's Systems Meet the Kiosk Limitation, And at Minimum, a Material Dispute of Fact Exists.

Dr. Easttom has shown that the accused instrumentality is a "kiosk" fully consistent with the Court's construction. Specifically, Dr. Easttom identifies interconnected subcomponents of Viasat's products that work together to provide the functionality of the claimed "kiosk." Dr. Easttom explicitly applies that Court's construction in providing his opinion that the accused systems all provide a kiosk. Ex. 13 (Easttom Op. Rept.), ¶ 133; *see also, id.*, ¶¶ 133-171 (analyzing the "kiosk" claim element).

For the in-flight use cases (including inflight pre-stored media, on-demand media, and in-flight IPTV/Live TV), Dr. Easttom identifies as the kiosk the on-plane S4 Server and M3 Modem. The M3 Modem connects to the S4 Server by ████████ to provide a communication channel to ground servers. *Id.*, ¶¶ 136, 203. Dr. Easttom shows that the M3 Modem and S4 Server are not only ████



*Id.*, ¶ 135 (excerpting Ex. 20 (VIASAT_0005782), 798) (red box added showing the kiosk, i.e., the M3 Modem and the S4 Server); *see also*, Ex. 20 (VIASAT_0005782), 798-801, 819; Ex. 26 (VI-ASAT_00008420), 424 (VCDS architecture). Dr. Easttom shows that the M3 Modem and the S4 Server functionally form the hardware interface (the kiosk) between the satellite network and the users onboard of a flight. In between the M3 Modem and the S4 server, there are direct, bidirectional information flows conducted by ████████. *Id.*, ¶ 203; Ex. 15 (Neri Depo. Tr.), 36:15-24 (testifying that S4 and M3 are connected by ████ A jury can easily find that the M3 Modem and the S4

15

Gibson, Dunn & Crutcher LLP

1    Server, ███████████████████, satisfies the Court's construction of "a kiosk" which is "any

2    device used to access and distribute content provided by the system," and that Viasat's argument is

3    nothing but an artificial exercise of box drawing. Moreover, the jury can easily find that the separation

4    of the components of the M3 Modem and S4 Server into two physical boxes does not turn those com-

5    ponents into two devices. By way of example, a laptop with a built-in keyboard or camera, connected

6    using a wire hidden inside the laptop, is a single device—just like a laptop with an external keyboard

7    or camera, connected using a USB cable. This is consistent with the '400 Patent specification, which

8    states that the "kiosk 106' may comprise various user interface equipment, such as a keyboard, display,

9    etc. to allow use of the kiosk 106'." Dkt. 1-1, 6:36-42. Similarly, the kiosk 106' could have an external

10   modem, like the M3 Modem connected to the S4 server with ████████████.

11       The evidence further demonstrates that this kiosk satisfies the functional claim limitations, in-

12   cluding "provisioning secure media content to a plurality of portable data storage devices." For exam-

13   ple, Dr. Easttom states: the "kiosk provides secure media content in the form of encrypted media files.

14   Those files are provided to multiple portable data storage devices. The multiple data storage devices

15   are the seatback devices and the PEDs used by users on the airplanes." Ex. 13 (Easttom Op. Rept.),

16   ¶ 137 (citing Ex. 20 (VIASAT_00005782), 800-801). Dr. Easttom also demonstrates that the M3 Mo-

17   dem and the S4 Server that comprise the kiosk work in unison to provision media content: "████

18   ██████████ is responsible for transferring the content and a ████████ on the [M3] modem caches

19   it and serves it to the Onboard Server application on the Viasat S4 server." *Id*., ¶ 142 (citing Ex. 20

20   (VIASAT_00005782), 819). Dr. Easttom then explicitly explains how this satisfies the Court's con-

21   struction of "kiosk." "This . . . demonstrates that ***the* ████████ *with the modem and S4 server* is *a**

22   *device* used to access and distribute content provided by the system. This ████████ document is

23   applicable to all four use cases." *Id*. (emphases added).

24       Similarly, Dr. Easttom explains that the accused products satisfy the Court's construction for

25   the Home On-Demand use case (Use Case 4). *Id*., ¶¶ 99, 133, 141.

26       Viasat's only dispute whether there is sufficient evidence under the Court's construction of

27   "kiosk" is dependent on its contention that the Court's construction already contains the requirement

28

SANDISK'S OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT OF NONINFRINGEMENT (DKT. 205)
CASE NO. 4:22-CV-4376-HSG

Gibson, Dunn &
Crutcher LLP

of a "singular" device. As explained above, it does not. Thus, if the Court rejects Viasat's new claim construction argument, Viasat's non-infringement argument as to "kiosk" fails.

### 3.     Even Under Viasat's New Construction, a Triable Issue of Fact Remains.

Even if the claim is determined to require a single device as the "kiosk," the evidence, as explained in Dr. Easttom's report shows that what Dr. Easttom identifies as a "kiosk" is a single device. *Id.*, ¶ 142. As Dr. Easttom shows, the M3 Modem and the S4 Server functionally form the hardware interface (the kiosk) between the satellite network and the users onboard a flight. The M3 Modem and the S4 Server are connected by ███████████, over which they directly exchange information. Together, the M3 Modem and the S4 Server are components of a singular device that perform the required function of the "kiosk," namely provisioning secure media content to a plurality of portable data storage devices. Even to a lay person, a daily object such as a desktop computer, a video game console, a cellphone, or a car can be a singular device but be made from plural, even thousands, of interconnected subcomponents—just like the kiosk that Dr. Easttom identifies. The application of the Court's construction to the accused product is a factual question for the jury. *Uniloc*, 632 F.3d at 1302.

For its newly raised claim construction argument, Viasat does not define what a singular "device" should be and does not show any evidence of why a skilled artisan, in view of the specification of the '400 Patent, would have understood that a kiosk is a singular "device." Viasat merely cites to portions of Dr. Easttom's report and deposition transcripts where Dr. Easttom refer to plural components. Dkt. 205, 13–14. But Viasat cannot refute that "a device" may comprise subcomponent devices. Moreover, to the extent Dr. Easttom's application of the Court's construction of "a kiosk" is rejected as a matter of law, Dr. Easttom provides sufficient alternative reading of "a kiosk" for a reasonable jury to find infringement, and a material factual dispute remains. "To the extent that, for use cases 1-3, the S4 server is considered to be the kiosk, my analysis with respect to the second data interface remains the same. The kiosk communicates with the ████████████████████████ (all 'remote trusted servers') via the ██████████ (on M3 Modem) to which S4 Server is connected via ethernet cable. . ., and then via the VCDS system's satellite connection, which is the second data interface." Easttom Op. Rept., ¶¶ 203, 308, 391, 498; *see also* Ex. 15 (Neri Depo. Tr.), 36:15-24. In such an alternative reading, Dr. Easttom's analyses with respect to the "kiosk" may refer to the S4 server,

17

and the M3 Modem is one part of the communications pathway between the kiosk and the remote trusted servers. A jury can still find that Dr. Easttom's alternative reading satisfies all claim elements and that Viasat's accused system still infringes. Accordingly, a material factual dispute would still exist, and summary judgment of non-infringement should be denied.

### C. Sandisk Proved that the Accused Products Meet the "Authenticating the Portable Data Storage" Limitation of the '400 Patent

Both independent claims 1 and 9 of the '400 Patent require "authenticate/authenticating the portable data storage device, using at least the unique identifier, by communicating with the remote trusted server over the second data interface." Dkt. 1-1, 28-29. The Court construed this claim limitation to mean "confirming that the portable data storage device is trusted using at least the unique identifier." Dkt. 120, 13-14. Viasat argues that Dr. Easttom only shows that "unique identifiers" are used to *identify* the portable data storage devices without explaining how the devices are *trusted*. Dkt. 205-3, 16. Viasat is incorrect. Dr. Easttom explicitly applied the Court's construction by showing that "unique identifiers" associated with passenger electronic devices ("PEDs") are used to confirm that the PED satisfies all security and policy requirements of the DRM server, and therefore can be trusted.

Next, Viasat argues that Sandisk cannot show that a *remote trusted server* uses the unique identifier to perform the authentication. *Id.*, 17. Viasat's argument twists the plain words of the claims, which require that the *kiosk* perform the authentication using the unique identifier. Viasat's position also raises a new implicit claim construction requiring that the unique identifier to be communicated to the remote trusted server. Viasat's belated claim construction position is incorrect and must be rejected. Nothing in the claim language or the Court's claim construction requires that the remote trusted server perform the authentication, and there is nothing that requires the unique identifier itself is included in the communication with the remote trusted server.

Viasat then argues (at 17) that, if its co-pending partial motion to strike Dr. Easttom's report on this limitation (Dkt. 204) is granted, then Sandisk cannot show the "authenticate" limitation is met. Viasat is wrong. Viasat's arguments regarding the "authenticate" limitation in the co-pending partial motion to strike implicate *only three paragraphs out of thirty* in Dr. Easttom's report that relate to that limitation of claim 1. Viasat does not explain why Sandisk cannot show infringement without those

18

paragraphs. Indeed, unchallenged portions of Dr. Easttom's Report explain that the accused Viasat products perform the authentication in an infringing manner.

Accordingly, Viasat's motion for summary judgment of non-infringement of the '400 Patent should be denied in its entirety.

### 1. Dr. Easttom's Report Illustrates That the Accused Products Satisfy the "Authenticate" Claim Limitation Under the Court's Claim Construction.

Viasat asserts that Dr. Easttom's Report only illustrates that accused products use the claimed unique identifier to ***identify*** the device without explaining how the devices are ***trusted***. Dkt. 205, 16. That is incorrect. As explained below, the Viasat S4 server and M3 modem (kiosk) obtain unique device identifiers from the passenger electronic devices ("PEDs"). The kiosk uses the unique device identifiers to ▮▮▮▮▮▮ that is used to authenticate the PED with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. This authentication process confirms that the PED is trusted. *See generally* Ex. 13 (Easttom Op. Rept.), ¶¶ 195-206, 213-276 (addressing limitations 1[b], 1[d], 1[e] relating to "unique identifier," "remote trusted server" and "authenticate" claim terms); *see also*, *id.*, ¶¶ 133-171 (addressing claim term 1[pre] relating to the "kiosk" claim term).

***Remote Trusted Server***: The Viasat S4 server and M3 modem (kiosk) communicate with ground servers using Viasat's satellite communication systems. *Id.*, ¶¶ 195-206. The ground servers are the claimed "remote trusted server," and include the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*, ¶¶ 196, 199, 201.[8]

***Unique Identifier***:  The Viasat S4 server and M3 modem (kiosk) obtain a unique device identifier from the portable data storage device that is referred to in Viasat documentation as the ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ when the device initiates a playback request using HTTP. *Id.*, ¶¶ 214 (explaining that, for the pre-stored content use case 1, the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[8] *See also* Ex. 20 (VIASAT_0005782), 798 (illustrating Viasat's architecture); Ex. 23 (VIASAT_00006471), 499, 513, 526 (illustrating IPTV ground-based ▮▮▮▮▮▮▮▮); Ex. 31 (VIASAT_00055833), 837 (IPTV ground segment with ▮▮▮▮▮); Ex. 17 (O'Sullivan Depo. Tr.), 127:7-14 (testifying regarding IPTV documentation); Ex. 26 (VIASAT_00008420), 8424 (VCDS architecture and illustrating ground servers).

1    ███████████████████████████████ which are "unique to the PED," and also

2    explaining that for IPTV use case 3, the "included ████████ is a non-random universally unique iden-

3    tifier."), 221 (UUID for on-demand content use cases 2 and 3), 225 (explaining that the ██████████

4    ███ header for the IPTV use case 3 includes the same information for the pre-stored content use

5    case 1);[9] *see also* Ex. 15 (Neri Depo. Tr.), 70:13-20, 72:2-73:9. Moreover, █████ unique to the device

6    is created by ██████████████, which is another unique identifier applicable to the pre-stored content

7    and IPTV/Live TV use cases. *Id.*, ¶¶ 216-219. That ████ is sent to the portable data storage device,

8    and the portable data storage devices uses that ████ to request content from the kiosk. *Id.*, ¶ 252. Only

9    if the █████ is valid (another act of authentication) is content delivered. *Id.* Similarly, for on-demand

10   content use cases 2 and 4, a █████ is generated based on a unique device identifier, "████████████."

11   *Id.*, ¶¶ 223-224, 228-239.

12        ***Authentication***:  For the pre-stored content and IPTV/Live TV use cases (use cases 1 and 3),

13   the authentication process is initiated when a user makes a playback request, which results in HTTP

14   playback request message being sent to the kiosk. *Id.*, ¶ 252. As explained above, the ████████████

15   ███████████████ include the unique device identifier. *Id.* A █████ is generated based on that unique

16   device identifier. *Id.*, ¶ 249. The █████ is then sent to █████████████, which in some instances of the

17   accused systems is on the ground (*i.e.*, the claimed "remote trusted server"). *Id.* In other instances of

18   the accused systems, the ████████████ is on the plane and receives ████████████████████ from a

19   ████ on the ground (*i.e.*, "remote trusted server"). *Id.*, ¶¶ 249, 252 (explaining ████████████████);

20   *see also* Ex. 19 (VIASAT_00000618), 625 (explaining that "[u]pdates to ████████████████ will be

---

[9] In a footnote, Viasat argues that "Dr. Easttom offers no opinion at all on a 'unique identifier' for his 'Use Case #3' regarding IPTV." Dkt. 205, 17 n.6. That is incorrect. As explained in Dr. Easttom's report, for "Use Case 3 (IPTV-Live), similarly the processor obtains a unique identifier from a user's PED or Seatback device in the format of an ██████████████████████. From this █████ the M3+S4 kiosk obtains ██████████████████ from the PEDs. The obtained identifiers are unique to the PED. . . For each viewing attempt by a player, the user selects the play button, and a ██████████████████████ is created, and in this ████████████, a ████████ which is a non-random universally unique identifier is included. In an example provided, the ████████ is exemplified by ████████████████████████." *Id.*, ¶ 225; *see also* Ex. 32 (VIASAT_00060099), 133, 183, 185; Ex. 15 (Neri Depo. Tr.), 70:1-20, 72:2-73:9 (testifying that ████████████████████████").

SANDISK'S OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT OF NONINFRINGEMENT (DKT. 205)
CASE NO. 4:22-CV-4376-HSG

rolled out at least quarterly and usually much more frequently to ensure the latest policies are present.").

In all instances, the ██████ "will *only grant* ████████ to a device where the content availability *rules have been satisfied* …" and the ████████ "*will block* playback if *the device* is detected as ██████." *Id.*, ¶¶ 250 (emphasis added) (quoting Ex. 19 (VIASAT_00000618), 625; *see also*, *id.*, ¶¶ 251, 252; Ex. 17 (O'Sullivan Depo. Tr.), 111:4-9 ("the playback request, *in conjunction with the* ██████ being in place, informs the IFE onboard content server to begin streaming or delivering the requested media to the device that makes that request."). Moreover, the ████████ only grants a ████ request "if the content *meets the availability rules*," and "[c]ontent availability is *limited by date* and can also be *limited to specific routes or tails*." Ex. 13 (Easttom Op. Rept.), ¶ 254 (emphasis added) (quoting Ex. 20 (VIASAT_00005782), 5821); *see also* Ex. 28 (VIASAT_00014554), 562 (explaining that "device authentication with the ██████ is via a ████████ *that is unique to the device*," and that the "DRM platform on the device is *designed to block playback* if the device is detected as ██████") (emphasis added), 561-566 (content security); Ex. 29 (VIASAT_00016425), 426 (the "██████████████████████████████████ . . . *only if the content meets the availability rules* will the ██████ be granted.") (emphasis added). As such, not only does the evidence show that the authentication process confirms the identity of the portable storage device (as Viasat concedes), the evidence also shows that the authentication process confirms whether the portable storage device is trusted. *See also* Ex. 13 (Easttom Op. Rept.), ¶¶ 248-276.[10]

Additionally, with respect to the IPTV use case (use case 3), Dr. Easttom explained that "the

---

[10] *See also* Ex. 15 (Neri Depo. Tr.), 53:16-54:11, 55:16-23, 57:4-59:11, 64:14-22, 70:13-20, 72:2-73:9, 101:4-8, 156:19-157:21, 181:11-16, 129:7-132:9; Ex. 18 (Slater Depo. Tr.), 101:12-105:21; Ex. 14 (Hughes Depo. Tr.), 21:3-18, 56:13-17, 125:20; Ex. 16 (Newman Depo. Tr.), 81:17-83:21; Ex. 21 (VIASAT_00006153) at 162 ("[O]nly devices with a known *and approved* unique identifier will be allowed to download content."); Ex. 22 (VIASAT_00006354) at 365, 367 (explaining http handshake process); Ex. 24 (VIASAT_00006779), 787, 790-91 ("DRM platform . . . will block playback if the device is detected as ██████"); Ex. 28 (VIASAT_00014554) at 561-565 (explaining content security considerations); Ex. 32 (VIASAT_00060099) at 132-136, 153-156, 183-189 (defining the Device ID for IPTV and HTTP message flow); Ex. 1 (VIASAT_SC_000001-002); Ex. 3 (VIASAT_SC_0000107-108); Ex. 4 (VIASAT_SC_0000115-117); Ex. 10 (VIASAT_SC_0000374-401); Ex. 11 (VIASAT_SC_0000451-463).

Gibson, Dunn &
Crutcher LLP

1  onboard server communicates with the ███████████████ and obtains 'Authentication/Authoriza-

2  tion' to display IPTV media content." *Id.*, ¶ 267; *see also*, *id.*, ¶¶ 265-268. The ██████████████

3  contains the ███████████████████ for IPTV, which provides the authentication/author-

4  ization. *See* Ex. 23 (VIASAT_00006471), 513 (illustrating authentication/authorization block for

5  IPTV); Ex. 31 (VIASAT_00055833), 836 (depicting ██████████████████████████████

6  ██████████████). This additional evidence further illustrates that the authentication process for

7  IPTV/Live TV confirms whether the portable storage device is trusted.

8      Similarly, with respect to the on-demand use cases (use cases 2 and 4), Dr. Easttom explained

9  that the ██████████████████████. *Id.*, ¶¶ 254-255, 221-224, 228-23; *see also*, Ex. 15 (Neri

10  Depo. Tr.), 176:15-178:5 (testifying that the ████████████████████████); Ex. 30

11  (VIASAT_00017825), 827-830 (██████████████████); Ex. 29 (VIASAT_00016425), 426 (illus-

12  trating ██████ parameters).

13      As such, the case law that Viasat cites is inapplicable here. Dkt. 205, 16-17. In *Sun Microsys-*

14  *tems*, the patent owner's expert only presented conclusory opinions in two paragraphs regarding the

15  claim term at-issue. *Sun Microsystems, Inc. v. Network Appliance, Inc.*, 688 F. Supp. 2d 957, 979–80

16  (N.D. Cal. 2010). In contrast, here Dr. Easttom's report extensively addresses the limitations at issue,

17  with countless citations to Viasat produced documents, source code, and deposition testimony of Viasat

18  witnesses. And as illustrated above, Dr. Easttom explicitly applied the Court's claim construction and

19  shows how portable storage devices are confirmed to be trusted. In *Impact Engine*, the court found

20  corresponding structure necessary under Section 112(f) for the claim term at-issue, which plaintiff ig-

21  nored. *Impact Engine, Inc. v. Google LLC*, 624 F. Supp. 3d 1190, 1194 (S.D. Cal. 2022). Here, Sec-

22  tion 112(f) does not apply.

23      As such, the evidence shows, as explained by Dr. Easttom, that the unique identifier is used to

24  identify *and to confirm* that the portable data storage device is trusted. In all infringing use cases iden-

25  tified in Dr. Easttom's Report, the DRM system in each use case not only identifies the portable elec-

26  tronic device, but also *confirms* that all applicable security and policy rules are satisfied.

27

28

SANDISK'S OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT OF NONINFRINGEMENT (DKT. 205)
CASE NO. 4:22-CV-4376-HSG

Gibson, Dunn &
Crutcher LLP

### 2.    Viasat Invents a New Requirement for the "Authenticate" Claim Limitation That is Not Supported.

Viasat next argument is based on an improper re-writing of the claim term based on an improper implicit claim construction that Viasat never raised during the claim construction phase of this litigation. Dkt. 205, 17. The claim term requires that the *kiosk* "authenticate the portable data storage device, using at least the unique identifier, by communicating with the remote trusted server over the second data interface." But Viasat twists the claim language, arguing that Sandisk "never identified a '*remote trusted server*' that uses the 'unique identifier' to 'authenticate the portable data storage device.'" *Id.* But the claim requires that the *kiosk* perform the authentication, not the *remote trusted server*. Moreover, Viasat seems to be implicitly suggesting that the "unique identifier" must be communicated to the remote trusted server. *Id.* The claims do not require any such thing, as reflected by the Court's claim construction of the claim. Dkt. 120, 13-14.

Again, the Court has already construed this claim term, and Viasat did not raise this argument then. Dkt. 104, 13-17. It should be precluded from doing so on summary judgment. *Cent. Admixture Pharmacy Servs.*, 482 F.3d at 1356; *Apple*, 2014 WL 252045, at *3.

But even if the Court entertains this argument, nothing in the record supports Viasat's argument. Specifically, the claim language itself does not support Viasat's reading. The full language of the claims at issue requires a kiosk to perform an authentication of the portable data storage device. Dkt. 1-1 ('400 Patent), cls. 1 and 9. The claim also requires that a kiosk perform an authentication "using at least the unique identifier" by "communicating with the remote trusted server." But the claim does not require that the "unique identifier" itself be included in the communication with "the remote trusted server," such that the remote trusted server itself can perform the authentication.

Viasat fails to identify why a skilled artisan would have read the claim language and, in clear contradiction to the plain English grammar, understood that the (i) remote server must perform the authentication, and (ii) "unique identifier" itself must be included in the communication with "the remote trusted server." Certainly, Viasat did not identify any support, intrinsic or extrinsic, for these modifications. Dkt. 204 and Dkt. 205. It is also inconsistent with this Court's claim construction, which requires that the kiosk "confirm[] that the portable data storage device is trusted using at least the

23

1    unique identifier." Dkt. 120, 17. Viasat's twisting of the claim language must be rejected.

2        **3.    Even if Viasat's Motion to Strike is Granted, a Triable Issue of Fact Remains.**

3        Further, Viasat refers to its co-pending motion to strike. Dkt. 205, 17; Dkt. 204. Viasat's motion

4    to strike sought to strike what it calls ███████████████████████████████

5    ████████████████████████. Dkt. 204, 4-6. Moreover, Viasat's motion to strike also sought to

6    strike all aspects relating the Live TV/IPTV, based on Viasat's incorrect contention that the Live

7    TV/IPTV product was not an accused instrumentality. *Id.*, 6-7. Viasat's motion to strike should be

8    denied for the reasons set for in Sandisk's opposition. Dkt. 229; Dkt. 227. As explained in the opposi-

9    tion (Dkt. 229), Dr. Easttom's report applies the same previously disclosed theory from Sandisk's

10    March 2024 Infringement Contentions (Dkt. 189-2, 189-3, 189-4) citing either the same evidence or

11    additional evidence learned during discovery that simply supports the same theory already disclosed.

12    Moreover, the Live TV/IPTV product was accused. *See* Dkt. 227.

13        Moreover, Viasat fails to explain why summary judgement would be warranted if its motion to

14    strike was granted. Dkt. 205, 17. Indeed, it does not. Viasat's motion to strike is a partial motion to

15    strike, seeking to strike portions of ***three*** paragraphs of Dr. Easttom's analysis relating to the "authen-

16    ticating theories" set forth in support of claim limitation 1[e] and the corresponding paragraphs with

17    respect to claim limitation 9[d]. *See* Dkt. 204, 4-6 (seeking to strike portions of Easttom Op. Rept., ¶¶

18    249, 252, 254). But Dr. Easttom's analysis of the "authenticating" limitations is 30 paragraphs long for

19    limitation 1[e] and 28 paragraphs for limitation 9[d]. *See* Ex. 13 (Easttom Op. Rept.), ¶¶ 248-275, 434-

20    462. Viasat's failure to explain why Dr. Easttom's analysis as set forth in the unchallenged paragraphs,

21    which make up the vast majority of the analysis, would be insufficient to show infringement. This

22    deficiency is fatal to Viasat's request for summary judgment.

23        Indeed, even without the challenged portions, Dr. Easttom presents a complete infringement

24    analyses to support a jury's finding of infringement for all use cases.

25        For example, Dr. Easttom explains that "when new content is needed," for any use case, then

26    "[t]he VCDS communicates with the remote server." *Id.*, ¶ 257. Relying on Viasat engineer, Mr. Neri's

27    testimony, Dr. Easttom then explains that an authentication occurs when "the ████████ with the S4

28    server processe[s] the ███████ from the PED, and if the file requested is not found, then the

24

Gibson, Dunn &
Crutcher LLP

█████████ creates a request." *Id.*, ¶ 257 (citing Ex. 15 (Neri Depo. Tr.), 53:16-54:11, 57:4-59:7).

Further, unchallenged portions of Dr. Easttom's report cite to source code and Viasat documents that show that "the unique identifier of the portable storage device is used in authenticating" and a that "request for media content can trigger the █████████ to communicate with the ground, thus authenticating with a remote trusted server." *Id.*, ¶¶ 271. Moreover, the evidence that Dr. Easttom relied on in the portions of his report unchallenged by Viasat's motion to strike (Dkt. 204) also support a finding of infringement. *See also id.*, ¶¶ 258-275; Ex. 6 (VIASAT_SC_0000189-195) (█████████ ██████████████████████████████████); Ex. 9 (VIASAT_SC_0000278-298) (████████████████████████); Ex. 12 (VIASAT_SC_00000487-489) (source code file that includes ███████████████████████████████); Ex. 27 (VIASAT_00008738), 775 (illustrating communication between the █████████ on the plane and the █████████ that is remote), 846; Ex. 23 (VIASAT_00006471), 513 (illustrating remote authentication of the IPTV/Live TV); Ex. 31 (VIASAT_00055833), 836 (illustrating a █████████ of the IPTV/Live TV); Ex. 19 (VIASAT_00000618), 624-629 (explaining the use of █████ for authentication by the DRM system); Ex. 3 (VIASAT_SC_0000107-108) (source code file relating ████████████████████); Ex. 10 (VIASAT_SC_0000374-401), 379 (source code file containing █████████████████████████ ██████████████████████████); Ex. 15 (Neri Depo. Tr.), 117:20-118:2 (explaining communications between the plane and ground). Viasat has failed to explain why the unchallenged portions of Dr. Easttom's report, and the evidence cited therein, would be insufficient for Sandisk to show infringement.

Dr. Easttom's Report, even without the portions challenged by Viasat's motion to strike (Dkt. 204), and the evidence cited therein clearly illustrate that a triable issue of fact remain, and that it would be reasonable for a jury to find infringement. Viasat's motion for summary judgment should therefore be denied.

## V.    CONCLUSION

For the foregoing reasons, the Court should deny Viasat's motion for summary judgment.

Gibson, Dunn &
Crutcher LLP

1    Dated: July 3, 2025                            GIBSON, DUNN & CRUTCHER LLP

2                                                   */s/ L. Kieran Kieckhefer*
3                                                   L. Kieran Kieckhefer

4                                                   *Counsel for Plaintiffs*

SANDISK'S OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT OF NONINFRINGEMENT (DKT. 205)
CASE NO. 4:22-CV-4376-HSG

Gibson, Dunn &
Crutcher LLP