QUINN EMANUEL URQUHART & SULLIVAN, LLP
 Steven Cherny (*pro hac vice*)
 stevencherny@quinnemanuel.com
 Patrick D. Curran (Bar No. 241630)
 patrickcurran@quinnemanuel.com
 Tzivya H. Beck (*pro hac vice*)
 tzivyabeck@quinnemanuel.com
 Hannah Dawson (*pro hac vice*)
 hannahdawson@quinnemanuel.com
 111 Huntington Ave, Suite 520
 Boston, MA 02199
 Telephone:   (617) 712-7100
 Facsimile:    (617) 712-7200

QUINN EMANUEL URQUHART & SULLIVAN, LLP
 Nicola R. Felice (*pro hac vice*)
 nicolafelice@quinnemanuel.com
 Anastasia M. Fernands (*pro hac vice*)
 anastasiafernands@quinnemanuel.com
 Vanessa Blecher (*pro hac vice*)
 vanessablecher@quinnemanuel.com
 Alicia Lai (*pro hac vice*)
 alicialai@quinnemanuel.com
 295 5th Avenue
 New York, NY 10016
 Telephone:   (212) 849-7000
 Facsimile:    (212) 849-7100

*Attorneys for Defendant Viasat, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| SANDISK TECHNOLOGIES, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> VIASAT, INC., <br><br> Defendant. | Case No.: 4:22-cv-4376-HSG <br><br> **DEFENDANT VIASAT, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON STANDING** <br><br> Date: August 21, 2025 <br> Time: 2:00 pm |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................. 2

II. PLAINTIFFS' CONDUCT REGARDING STANDING HAS BEEN NEEDLESSLY CAGEY FOR THREE YEARS ................................................................ 3

III. PLAINTIFFS' STANDING ARGUMENTS FAIL ON THE MERITS ............................... 4

    A. WDI and SDT LLC have no standing to assert the '400 and '667 patents ............... 5

    B. WDI and SDT LLC have no standing to assert the '834 patent ................................ 7

IV. CONCLUSION ..................................................................................................................... 9

VIASAT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON STANDING

## I. INTRODUCTION

Five days after Viasat filed this summary judgment motion, Plaintiffs offered to dismiss with prejudice SanDisk Technologies LLC ("SDT LLC")—the successor entity to Western Digital Ireland Ltd. ("WDI"). Ex. 1 (June 25, 2025 Emails Between Plaintiffs and Viasat). Viasat informed Plaintiffs it would not oppose dismissal. But instead of dropping SDT LLC as it should, Plaintiffs instead opposed Viasat's motion, incorrectly arguing that SDT LLC has standing. It does not. Plaintiffs have wasted and continue to waste the Court's and Viasat's time litigating this issue.

Plaintiffs seem to *concede* WDI and SDT LLC have no exclusionary rights to the asserted '400 and '667 patents. Dkt. 255-1 at 4, 7 (stating that WDI "**began** as the owner of all rights in the '400 and '667 patents," but conceding that before this case was filed "WDI conferred to WDT legal title and a right to enforce the patents, and to SDSM (by way of SD3D) an exclusive license") (emphasis added). Although Plaintiffs' arguments are hard to follow, it appears Plaintiffs suggest that any leftover rights are enough for standing—and that simply because the agreement transferring ownership from WDI to WDT did not expressly state that WDT could *sell* the patents, WDI (and now its successor entity, SDT LLC) somehow retain standing. *Id.* at 7. There is no legal support for that argument whatsoever. *ReCor Medical, Inc. v. Medtronic Ireland Mfg. Unlimited Co. et al.*, 3:22-cv-03072-TLT (N.D. Cal. Jul. 7, 2025) (finding that a contractual interest in a patent that is "contractually separated from the right to exclude" is "not sufficient to establish constitutional standing"). Without exclusionary rights—the "touchstone of constitutional standing in a patent infringement suit"—WDI and SDT LLC have no basis to assert the '400 or '667 patents in this case. *See WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1265 (Fed. Cir. 2010).

Plaintiffs' pivot to the already-invalidated '834 patent similarly fails. Plaintiffs first suggest that it is "undisputed that SDT LLC had standing to assert the '834 patent when this case was filed," but that is incorrect. Opp. at 5. Viasat does not know one way or another whether SDT LLC ever had standing to assert the '834 patent. That is because Plaintiffs did not even try to carry their evidentiary burden: "The party invoking federal jurisdiction bears the burden of establishing standing—and, at the summary judgment stage, such a party can no longer rest on mere allegations, but must set forth by affidavit or other evidence specific facts" that establish standing. *Clapper v.*

*Amnesty Intl. USA*, 568 U.S. 398, 412–13 (2013) (cleaned up). To the extent Plaintiffs believed SDT LLC was ever properly before the Court on the '834 patent, **Plaintiffs** were required to establish that, "by affidavit or other evidence." *Id.* Plaintiffs did not do so. And even if they had established standing on the '834 patent at some point in the past, SDT LLC still lacks standing on that patent ***now***, because Plaintiffs ***admit*** SDT LLC "transferred its interests [in the '834 patent] to SDT Inc." Opp. at 5. Thus, SDT LLC has ***no*** interest in the '834 patent, and that already-invalidated patent does not confer standing to prosecute this action. *See Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005) (holding that a plaintiff must "continue to have a 'personal stake in the outcome' of the lawsuit").

Viasat thus respectfully requests that the Court grant summary judgment and dismiss SDT LLC from this litigation with prejudice.

## II.     PLAINTIFFS' CONDUCT REGARDING STANDING HAS BEEN NEEDLESSLY CAGEY FOR THREE YEARS

For three years, Plaintiffs repeatedly represented to Viasat and to the Court that WDI and its successor SDT LLC had standing. *See* Dkts. 1, 28, 38, 56, 121. After Plaintiffs filed their complaint, Viasat promptly raised the issue of standing. *See* Dkt. 27-2 (Oct. 17, 2022 Letter from P. Curran to K. Kieckhefer); Dkt. 27-3 (Oct. 25, 2022 Letter from K. Kieckhefer to P. Curran). Through multiple rounds of motion practice, Plaintiffs claimed that all plaintiff entities had standing. Dkts. 28, 38, 56. But Plaintiffs refused to provide specific details—conduct that this Court recognized as "needlessly cagey." Dkt. 72 at 4–5. Finally, after the close of fact discovery, Plaintiffs produced documents and put up a corporate representative who confirmed that SDT LLC had no ownership interest, no exclusionary interest, and thus no standing to assert the patents in this case. *See* Dkt. 222-2 (Plaintiffs' Second Supplemental Responses to Viasat's First Set of ROGs (No. 13)); Dkt. 222-3 (Exhibit 3 to Soji John Deposition). Viasat promptly asked Plaintiffs to dismiss SDT LLC for lack of standing ***and Plaintiffs agreed, stating they were "willing to stipulate to SDT LLC's dismissal***." *See* Dkt. 222-4 (Mar. 28, 2025 & May 28, 2025 Emails Between Plaintiffs and Viasat).

Viasat waited for Plaintiffs to dismiss SDT LLC as promised. But Plaintiffs did not do so. Plaintiffs instead improperly conditioned dismissal of SDT LLC on Viasat stipulating that all other

plaintiffs had standing. *Id.* Viasat explained the condition was improper. *Id.* Next, on June 5, 2025, Plaintiffs tried to stipulate to merely dropping SDT LLC from the case caption rather than dismissing SDT LLC with prejudice. *Id.* Viasat rightly rejected this offer as well, and suggested a prejudice dismissal was necessary. *Id.* Plaintiffs did not respond to that communication. *Id.*

Finally, after having spent three months negotiating with Plaintiffs to resolve the issue without burdening the Court, Viasat filed its motion for leave and motion for summary judgment on standing on June 20, 2025. Dkts. 221, 222.[1] Plaintiffs then contacted Viasat claiming that they were "surprised" by the filing and reaffirmed that "**Sandisk had agreed to drop SDT LLC from the case**." Ex. 1 (June 25, 2025 Emails Between Plaintiffs and Viasat) (Plaintiffs agreeing that "Sandisk had agreed to drop SDT LLC from the case and the parties were engaging on the format of dismissal"). Viasat noted its own surprise at the time wasted and costs expended in finally getting to this point but responded by confirming that Viasat was "glad that Plaintiffs finally are willing to dismiss SDT LLC with prejudice." *Id.* Viasat also asked Plaintiffs to "confirm Plaintiffs will be filing with the court (1) a request to dismiss SDT LLC with prejudice . . ." *Id.*

Plaintiffs never responded. And despite their earlier representations, Plaintiffs did not move to dismiss SDT LLC. Rather, on July 7, 2025—just twelve days after (once again) agreeing to dismiss SDT LLC—Plaintiffs opposed Viasat's motion, now arguing "SDT LLC is a proper party to this case." Dkt. 252 at 1. That simply is not true.

### III. PLAINTIFFS' STANDING ARGUMENTS FAIL ON THE MERITS

Plaintiffs previously represented to Viasat and to the Court that "each of the five Plaintiffs"—including WDI—"has standing in this case because they possess exclusionary rights in the asserted patents." Dkt. 55 at 1. But in their opposition brief, Plaintiffs abandon that position. Plaintiffs do not dispute that WDI and SDT LLC have no exclusionary rights to the '400 and '667 patents. Plaintiffs' opposition brief only reaffirms what has become clear from Plaintiffs' own documents and witness testimony—that WDI and its successor entity SDT LLC both lack

---

[1] The Court invited Viasat to file a partial motion for summary judgment on standing "if facts come to light during discovery that undermine" Plaintiffs' standing allegations. Dkt. 72 at 4–5.

exclusionary rights to the '400 and '667 patents and thus lack the constitutional standing necessary to prosecute case.

Indeed, rather than explain and defend the position they held for three years, Plaintiffs change tack. In their opposition brief, Plaintiffs now concoct a new argument that WDI's and its successor SDT LLC's standing hinges upon its rights from the already-invalidated '834 patent. Opp. at 5. But as the party invoking federal court jurisdiction, Plaintiffs have the burden to put forth evidence that establishes SDT LLC's standing vis-à-vis the '834 patent. Plaintiffs did not even try to do so. And regardless, Plaintiffs admit that it is **not** SDT LLC but rather **other** entities that currently hold rights in the invalid '834 patent. WDI and SDT LLC should therefore be dismissed for lack of standing. See *Quantum Corp. v. Riverbed Tech., Inc.*, No. C-07-04161-WHA, 2008 WL 314490, at *3 (N.D. Cal. Feb. 4, 2008) ("District judges cannot overlook a defect in the chain of title, for the entirety of massive litigation might wind up being vacated years later, for lack of threshold standing.").

### A.     WDI and SDT LLC have no standing to assert the '400 and '667 patents

As a preliminary matter, Plaintiffs seem to concede that WDI and SDT LLC have no exclusionary rights to the asserted '400 and '667 patents. In their opposition brief, Plaintiffs abandon their prior position that WDI and SDT LLC have exclusionary rights in the '400 and '667 patents despite previously representing exactly that to the Court. *See, e.g.*, Dkt. 38 ¶¶ 20, 37 (Plaintiffs asserting that "WDI owns all other rights and interests in the '400 patent" and "WDI owns all other rights and interests in the '667 patent" and thus WDI "possesses exclusionary rights" to those patents). Plaintiffs finally admit that other entities own "legal title" (SDT Inc.) and are the "exclusive licensee" (SDSM) to the '400 and '667 patents. Opp. at 3, 7; *see also id.* at 8 (admitting that "WDT possessed the right to formally enforce the patents or grant licenses").

This confirms, yet again, what Plaintiffs' corporate representative and documents showed: WDI passed legal title of the asserted patents to SDT Inc., not SDT LLC, and gave an exclusive license to the asserted patents to SDSM, not SDT LLC. Dkt. 222-3 (Exhibit 3 to Soji John Deposition). By Plaintiffs' own assertion, SDT LLC holds "all **other** rights and interests," **not exclusionary rights**, in the '400 and '667 patents. Opp. at 3. There are no disputed issues of fact as

to WDI's lack of exclusionary rights in the '400 and '667 patents, or that only non-exclusionary rights could have been inherited by its successor SDT LLC.

Instead, Plaintiffs now argue that standing stems from these unspecified, non-exclusionary "other rights and interests" in the '400 and '667 patents. Opp. at 7–8. Plaintiffs are factually and legally incorrect. Although Plaintiffs never before explained what these "other" rights consisted of—not in their complaint, amended complaint, briefing, interrogatory responses, or witness testimony—Plaintiffs now attempt to use this phrase as a catch-all for other rights such as the "right to sell the patents." Opp. at 7 ("For example, the agreements do not explicitly confer on WDT the right to sell the patents, so that right remained with WDI."). Plaintiffs have never before claimed that WDI retained "the right to sell the patents," much less provided evidence to support this new assertion.[2] This alone warrants entry of summary judgment. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (holding the elements of standing are "an indispensable part of the plaintiff's case" and thus "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof"). Regardless, even if Plaintiffs had presented evidentiary support for their residual rights theory, those rights are admittedly not **exclusionary rights**. "Exclusionary rights" are defined as the "ability to exclude others from practicing an invention or to forgive activities that would normally be prohibited under the patent statutes." *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1234 (Fed. Cir. 2019) (internal quotation marks omitted). Plaintiffs never explain how WDI's "other rights and interests" could be "exclusionary" where another party owns the patents and a separate party has an **exclusive** license to those patents. *See Alfred E. Mann Found. For Sci. Rsch. v. Cochlear Corp.*, 604 F.3d 1354, 1359–60 (Fed Cir. 2010) (noting that "a patent may not have multiple separate owners for purposes of determining standing to sue" and explaining that where a patent owner grants an exclusive license to a patent, **only** the exclusive licensee, the patent owner, or both, could have standing to sue).

---

[2] Indeed, it makes little sense that WDI (and thus SDT LLC) could retain the right to sell patents it does not own or license.

The Federal Circuit has held only "exclusionary rights" convey constitutional standing. *See WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1265 (Fed. Cir. 2010) ("[T]he touchstone of constitutional standing in a patent infringement case is whether a party can establish that it has an ***exclusionary right*** in a patent that, if violated by another, would cause the party holding the exclusionary right to suffer legal injury.") (emphasis added); *ReCor Medical, Inc. v. Medtronic Ireland Mfg. Unlimited Co. et al.*, 3:22-cv-03072-TLT (N.D. Cal. Jul. 7, 2025) (finding that a contractual interest in a patent that is "contractually separated from the right to exclude" is "not sufficient to establish constitutional standing"). WDI and SDT LLC's non-exclusive "other rights and interests" do not convey standing. Plaintiffs dismiss "Viasat's focus on 'exclusionary rights,'" but this misconstrues the governing law and confuses the requirements for standing. Opp. at 8. The law is clear that uninterested entities like SDT LLC, who lack legal title or an exclusive license, have no constitutional standing to sue for patent infringement. *See WiAV*, 631 F.3d at 1265 (holding that for constitutional standing, entities without exclusionary rights to the patent "suffer[] no legal injury from infringement and, thus, has no standing to bring suit"); *see also Alfred E. Mann*, 604 F.3d at 1359–60. And the law is clear that entities that do not suffer legal injury from infringement have no statutory standing either. *See FlowRider Surf, Ltd. v. Pac. Surf Designs, Inc.*, No. 3:15-CV-01879-BEN-BLM, 2017 WL 2349031, at *5 (S.D. Cal. May 26, 2017) (holding that for statutory standing under the Patent Act, "[n]onexclusive licensees have no standing to sue or even join a suit with the patentee because they suffer no legal injury from infringement"). WDI and SDT LLC lack exclusionary rights in the '400 and '667 patents, and thus must be dismissed for lack of standing.

### B. WDI and SDT LLC have no standing to assert the '834 patent

Plaintiffs have never before argued that WDI held exclusionary rights in the '834 patent, or that SDT LLC inherited any exclusionary rights in the '834 patent from WDI. Plaintiffs have said (repeatedly) in their complaint and briefing that WDI had exclusionary rights in the '400 and '667 patents, not the '834 patent. For instance, in their amended complaint, Plaintiffs asserted that "WDI owns all other rights and interests in the '400 patent" and "WDI owns all other rights and interests in the '667 patent" and thus WDI "possesses exclusionary rights" to those patents. Dkt. 38 ¶¶ 20,

37. In their opposition to Viasat's second motion to dismiss, Plaintiffs asserted that "WDI has a significant portion of rights in the '400 and '667 patents, that it retains exclusionary rights" and thus has standing based on those patents. Dkt. 55-2 at 3. And in a chart provided by Plaintiffs' corporate representative, the plaintiff entities' standing was not based on the '834 patent at all. Dkt. 222-3. Moreover, when Viasat asked Plaintiffs to "explain [their] basis for continuing to include SDT LLC as a plaintiff in this action," Plaintiffs *never* said that it was due to the alleged rights it holds in the '834 patent. Dkt. 220-4 at 3. Rather, Plaintiffs responded that they were "willing to stipulate to SDT LLC's dismissal" if Viasat agreed that the remaining Plaintiffs have standing. *Id.*

But Plaintiffs now claim that SDT LLC must remain in the case in order to appeal the Court's dismissal of the '834 patent on § 101 grounds. Opp. at 5. Plaintiffs state that "it is undisputed that SDT LLC had standing to assert the '834 patent when this case was filed" and that "the Court's order dismissing the '834 Patent did not 'end the action' as to that claim nor to the parties bringing it (i.e., SDT LLC (the owner) and SDSM (the exclusive licensee)." *Id.* Plaintiffs are incorrect.

First, Plaintiffs cite *no* evidence supporting the assertion that "SDT LLC had standing to assert the '834 patent when this case was filed" or that SDT LLC ever owned the '834 patent. Plaintiffs' entire argument regarding the '834 patent is completely devoid of even a single evidentiary citation. Opp. at 5. Viasat quite plainly *does* dispute SDT LLC's standing to assert any patent in this case and, at summary judgment, Viasat does not bear the burden on this issue. Instead, Plaintiffs were required to present evidence from which the Court could conclude that SDT LLC should remain in this lawsuit. Plaintiffs did not do so.

Even more importantly, Plaintiffs admit in opposition that there is no evidence they could have shown that establishes SDT LLC's standing because Plaintiffs admit that SDT LLC holds no current rights in the '834 patent: SDT Inc. is the "owner and patentee," SDSM is the "exclusive licensee," and **SDT LLC has no specified rights in the '834 patent at all**. Opp. at 3. Even considering a party's right to appeal a district court's § 101 decision, it would not be SDT LLC but rather "its successor-in-interest SDT *Inc.*" that now has an exclusionary interest in the invalidated '834 patent.

      Moreover, Plaintiffs cannot justify keeping SDT LLC in this case because they themselves did not bring a motion to substitute under Rule 25(c), particularly when SDT LLC has no exclusionary rights or personal stake in the outcome of the lawsuit.[3] "The general rule in federal cases is that a plaintiff must have initial standing and '***continue to have a 'personal stake in the outcome' of the lawsuit***.'" *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005) (quoting *Spencer v. Kemna*, 523 U.S. 1, 7, 118 S. Ct. 978, 140 L. Ed. 2d 43 (1998)) (emphasis added). In *Schreiber*, the plaintiff "was the owner of the [asserted] patent and had standing" at the outset of the action, but "once the assignment to [another entity] was completed, there was no question that [the plaintiff] lost its 'personal stake in the outcome,'" and thereby standing to sue. *Id.* at 1202–03; *see also Pi-Net Int'l, Inc. v. Focus Bus. Bank*, No. 5:12-CV-04958-PSG, 2015 WL 1538259, at *4 (N.D. Cal. Apr. 6, 2015) (holding that after a patent owner "assign[s] away all substantial rights in the asserted patents," it "lacks legal capacity to maintain these actions because it does not hold 'all substantial rights' to the asserted patents and thus is 'not injured by a party' that practices the patented inventions"). Indeed, as Plaintiffs' own cited authority recognizes, where a claim is assigned to a different party such that the original party no longer has an interest in the litigation, the "assignee of those claims [] is the proper party" to the litigation under Rule 25 and the assignor should generally be dismissed from the litigation. *General Battery Corp. v. Globe-Union, Inc.* 100 F.R.D. 258, 263 (D. Del. 1982).

      Even if SDT LLC once owned the '834 patent, Plaintiffs do not dispute that SDT LLC has since transferred all substantive rights to SDT Inc. and SDSM. Opp. at 3. Just like the former patent owners in *Screiber* and in *Pi-Net*, SDT LLC has lost its personal stake in the outcome of this case and thus its standing to prosecute this suit.

### IV. CONCLUSION

---

[3] While the text of Rule 25(c) does not specify that a motion to substitute *must* be filed where a party is not a natural person, nor does it affirmatively permit a corporation without standing to unilaterally refuse to file a substitution motion and thus forever remain a party to the litigation. *See also* Fed. R. Civ. Proc. 25(a)(1) (providing that in cases where a party dies, if a substitution "motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed").

For the foregoing reasons, Viasat respectfully requests the Court grant Viasat's summary judgment motion to dismiss the WDI successor entity, SDT LLC, for lack of standing.

DATED: July 14, 2025

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  /s/ *Patrick D. Curran*

Patrick D. Curran
*Attorneys for Viasat, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that, on July 14, 2025, a copy of the foregoing was filed with the Court using the Court's ECF system, which sent notice to all counsel of record.

DATED: July 14, 2025

By  /s/ Patrick D. Curran
Patrick D. Curran

VIASAT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON STANDING