QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Steven Cherny (*pro hac vice*)
  stevencherny@quinnemanuel.com
  Patrick D. Curran (Bar No. 241630)
  patrickcurran@quinnemanuel.com
  Tzivya H. Beck (*pro hac vice*)
  tzivyabeck@quinnemanuel.com
  Hannah Dawson (*pro hac vice*)
  hannahdawson@quinnemanuel.com
  111 Huntington Ave, Suite 520
  Boston, MA 02199
  Telephone:     (617) 712-7100
  Facsimile:     (617) 712-7200

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Nicola R. Felice (*pro hac vice*)
  nicolafelice@quinnemanuel.com
  Anastasia M. Fernands (*pro hac vice*)
  anastasiafernands@quinnemanuel.com
  Vanessa Blecher (*pro hac vice*)
  vanessablecher@quinnemanuel.com
  Alicia Lai (*pro hac vice*)
  alicialai@quinnemanuel.com
  295 5th Avenue
  New York, NY 10016
  Telephone:     (212) 849-7000
  Facsimile:     (212) 849-7100

*Attorneys for Defendant Viasat, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| SANDISK TECHNOLOGIES, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>VIASAT, INC.,<br><br>Defendant. | Case No.: 4:22-cv-4376-HSG<br><br>**DEFENDANT VIASAT, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT [DKT. 205]**<br><br>**Hearing**<br>Date: August 21, 2025<br>Time: 2:00 pm<br>Judge: Hon. Haywood S. Gilliam, Jr.<br>Courtroom: 2, 4th Fl.<br>    1301 Clay Street<br>    Oakland, CA 94612 |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT .........................................................................................................................1

    A. '667 Patent: Plaintiffs Cannot Show Viasat's Accused Products Receive an Indication of the NAS Device Having a Secure Region ............................................1

        1. The "Encrypted" Boolean and "DRM Subfolder" Theories Are Untimely and Insufficient to Support Infringement ......................................2

        2. The ▮▮▮▮▮ Theory is Untimely and Does Not Show Any Accused Product Receives an Indication of the NAS Device Having a Secure Region .........................................................................................5

    B. '400 Patent: Plaintiffs Do Not Show "A Kiosk" As Required By The Claims ....................................................................................................................8

        1. Plaintiffs, Not Viasat, Raise an Incorrect Claim Construction Argument .............................................................................................................8

        2. Plaintiffs Have Not Shown that Viasat's Systems Meet the Kiosk Limitation ...........................................................................................................10

    C. '400 Patent: Plaintiffs Do Not Show the "Authenticating the Portable Data Storage Device" Limitation Is Satisfied .....................................................................11

III. CONCLUSION .....................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Berger v. Rossignol Ski. Co.*,
   No. 05-02523, 2006 WL 1095914 (N.D. Cal. Apr. 25, 2006) .................................................. 7

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
   No. 4:17-CV-05928-YGR, 2022 WL 2784467 (N.D. Cal. June 15, 2022), *aff'd sub nom. Cellspin Soft, Inc. v. Fitbit LLC*, No. 2022-2025, 2024 WL 4648069 (Fed. Cir. Nov. 1, 2024) ............................................................................................................. 13

*Convolve, Inc. v. Compaq Computer Corp.*,
   812 F.3d 1313 (Fed. Cir. 2016) ................................................................................................ 9

*DSS Tech. Mgmt., Inc. v. Apple, Inc.*,
   No. 14-CV-05330-HSG, 2020 WL 210318 (N.D. Cal. Jan. 14, 2020) ..................................... 7

*Exigent Tech., Inc. v. Atrana Sols., Inc.*,
   442 F.3d 1301 (Fed. Cir. 2006) .............................................................................................. 12

*Keenan v. Allan*,
   91 F.3d 1275 (9th Cir. 1996) .................................................................................................. 12

*Novartis Corp. v. Ben Venue Lab'ys, Inc.*,
   271 F.3d 1043 (Fed. Cir. 2001) ......................................................................................... 4, 13

*OSRAM Sylvania, Inc. v. Am. Induction Techs., Inc.*,
   701 F.3d 698 (Fed. Cir. 2012) ................................................................................................ 12

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ................................................................................................ 8

*Salazar v. AT&T Mobility LLC*,
   64 F.4th 1311 (Fed. Cir. 2023) ................................................................................................. 9

*Traxcell Techs., LLC v. Sprint Commc'ns Co.*,
   15 F.4th 1121 (Fed. Cir. 2021) .................................................................................... 7, 12, 13

*Unicorn Energy AG v. Tesla Inc.*,
   740 F. Supp. 3d 930 (N.D. Cal. 2024) ............................................................................... 7, 12

*In re Varma*,
   816 F.3d 1352 (Fed. Cir. 2016) ................................................................................................ 9

**Other Authorities**

N.D. Cal. Patent Local Rule 3–1 ................................................................................................. 7

Federal Rule of Civil Procedure 33(d) ........................................................................................ 7

## I. INTRODUCTION

Plaintiffs' opposition confirms they did exactly what the Court warned them not do to—pursue a case in search of a theory after losing on claim construction. At the October 2024 status conference, Your Honor warned Plaintiffs not to proceed with this case if they did not have an infringement theory that matched the Court's recent claim construction. Felice Decl. ¶ 2. Unfortunately, Plaintiffs did not listen. Plaintiffs' March 2024 infringement contentions had crystallized the theories Plaintiffs would pursue. As the rules contemplate, Viasat relied on those contentions to develop its own claims and defenses. Even though these contentions had *no* theories that matched the construed claims, Plaintiffs proceeded with their case. Then at the eleventh hour, Plaintiffs tried to abandon those infringement contentions for new ones because they knew their operative infringement contentions did not work. That request to amend was denied. Plaintiffs should have dismissed this suit then and there. Instead, they proceeded to expert discovery, and had their expert offer either (a) the exact same theories contained in the rejected amendment or (b) new theories not set out in either the operative March 2024 infringement contentions *or* the rejected January 2025 contentions. Plaintiffs cannot use these late theories to defeat summary judgment of non-infringement in violation of this district's Patent Local Rules.

Worse, in opposition to Viasat's summary judgment motion, Plaintiffs now scramble to create even more new theories—so new, in fact, they are not even in Dr. Easttom's infringement report, let alone Plaintiffs' operative contentions. Stacking late theory on late theory cannot save Plaintiffs from summary judgment. That is particularly true where these late new theories *still* do not match the Court's construction, and even if considered, state no claim of infringement.

This case has lingered for far too long despite the Court's clear warning not to do exactly what Plaintiffs have done here. Summary judgment of non-infringement should be granted.

## II. ARGUMENT

### A. '667 Patent: Plaintiffs Cannot Show Viasat's Accused Products Receive an Indication of the NAS Device Having a Secure Region

Plaintiffs' infringement contentions fail to establish that the accused products meet the '667 patent limitation requiring "receiving an indication of the NAS device having a secure region." As

Viasat noted in its motion, the infringement theories upon which Plaintiffs now rely in their expert reports were not disclosed in Plaintiffs' contentions. Plaintiffs do not dispute that their operative contentions did not *explicitly* disclose their expert's theories; instead, Plaintiffs argue that these two new theories—the "encrypted" Boolean and "DRM subfolder" theories—were *implicitly* disclosed. Plaintiffs say broad citations to Viasat's source code somehow put Viasat on notice of their current arguments, and Dr. Easttom merely "provided evidentiary detail." Opp. at 7. This is specious. As already addressed in Viasat's motion to strike (Dkt. 207-4), citing a "haystack" of source code does not adequately disclose theories premised on a specific "needle."[1] And Dr. Easttom's late-disclosed theories still fail to establish infringement in any event.

Tellingly, apparently concerned by the numerous issues with the theories upon which their expert relies, Plaintiffs' opposition now advances an entirely new infringement theory based on the "▇▇▇▇▇▇▇." Opp. at 5. This new theory is not only absent from Plaintiffs' operative infringement contentions; it is so new, it is *absent from their expert's report*. This newest belated theory is even later than the other late theories, and it still cannot show the "indication" limitation is met.

### 1. The "Encrypted" Boolean and "DRM Subfolder" Theories Are Untimely and Insufficient to Support Infringement

Plaintiffs do not dispute that their contentions nowhere mention an ▇▇▇▇▇▇▇ ▇▇▇▇▇ or a ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Plaintiffs do not dispute that the term "encrypted" appears only once in their contentions in connection with a different claim limitation, nor that the terms "Boolean," "variable," "▇▇▇▇," and "▇▇▇▇▇▇▇" never appear at all in in Plaintiffs' contentions. Dkt. 189-4 at 32–49; *see also* Dkt. 249-5 at 3–4. Plaintiffs also do not dispute that "DRM" appears just four times in their infringement contentions, but as a part of citations for *other* claim limitations and never in connection with the "indication of a secure region" limitation. Dkt. 189-4 at 60, 75; *see also* Dkt. 249-5 at 4.

---

[1] A contrary rule would turn patent contentions meant to crystallize a plaintiff's theories into little more than citations to multiple documents that may, one day, support a subsequently-formulated contention.

Instead, Plaintiffs argue that their infringement contentions "cited Viasat source code files that implement the secure region indication" and that by merely citing these files, Plaintiffs "put Viasat on clear notice of the exact functional components tied to the 'indication' limitation." Opp. at 7. This is the same flawed argument that Plaintiffs made in response to Viasat's motion to strike these new theories (Dkt. 241-2). But as Viasat explained there (Dkt. 249-5), Plaintiffs' cited source code files include nearly 4,600 lines of code, 136 functions, and 61 variables. These citations, without actual contentions, did not put Viasat on notice of Plaintiffs' current infringement theories.

Plaintiffs also argue that because Viasat addressed the "encrypted" Boolean theory in its non-infringement interrogatory response and in Dr. Almeroth's invalidity report, it was not a new theory. This position is meritless. *See* Dkt. 249-5 at 6. As Viasat explained in its motion (Dkt. 249-5 at 6), Viasat first became aware of Plaintiffs' "encryption" theory on January 3, 2025, when Plaintiffs served an untimely proposed amendment to their infringement contentions—a proposed amendment the Court ultimately rejected. Dkt. 182; Dkt. 157 at 2, 7; Dkt. 146-5 at 48–49. The Court denied leave to amend on March 12. Until that ruling, Viasat did not know whether Plaintiffs would be permitted to advance this new theory—so Viasat addressed it in its February 7, 2025, contention response on non-infringement. And even after the Court issued its Order, Viasat (correctly) anticipated that Plaintiffs might introduce the same rejected theory through experts, so Viasat's invalidity expert addressed it prophylactically.[2] That Viasat formulated a response to Plaintiffs' untimely encrypted Boolean and DRM subfolder theories does not make them timely. Regardless, neither theory satisfies the requirements of the "indication" limitation.[3]

---

[2] Dr. Almeroth expressly noted that while he "understand[s] that the operative set of infringement contentions is Plaintiffs' March 22, 2024 contentions, and that Plaintiffs are not proceeding on the new infringement theories set forth in their January 3 supplement," he was offering the non-infringing alternative "to the extent Plaintiffs attempt to [advance any arguments relying on the ███████████ ]." Dkt. 211-2 ¶ 504.

[3] Even if the Court finds that the "encrypted" boolean theory should be considered, and even if that boolean did not reference an entire device (it does) rather than a region of a device, summary judgment should still be granted as to the "in-flight" use cases. As Viasat explained in its Motion, the "encrypted" boolean is always set to FALSE in the aviation use cases; as such, it does not indicate that the device is "secure" (and if anything, indicates the opposite). Mot. at 8–9. Viasat's primary engineer confirmed this during his deposition. Dkt. 241-15 at 185:4–10 ("In the aviation

**(a)    Dr. Easttom Cannot Show The "Encrypted" Boolean Satisfies the Requirements of the "Indication" Limitation**

There is no dispute that the claimed indication cannot be of an entire device—it must be an indication of a secure *region within the device*. Dkt. 120 at 19.[4] There is also no dispute that Dr. Easttom admitted the ▮▮▮▮ (Dkt. 241-13 ¶ 555 n.28). Plaintiffs' response now is to argue that the ▮▮▮▮ which Plaintiffs claim is "a portion of the storage[] rather than the entire storage." Opp. at 10. **But this is attorney argument—Dr. Easttom never says this**. He never explains what "▮▮▮▮" refers to, nor does he call a "▮▮▮▮" the accused "region," or conclude that it is something distinct from an entire storage device. See Dkt. 241-13 ¶ 554. Rather, in the very next paragraph after Dr. Easttom mentions the "▮▮▮▮," Dr. Easttom reaffirms his opinion that the "▮▮▮▮." *Id.* ¶ 555 n.28. Dr. Easttom never offers the "▮▮▮▮" opinion Plaintiffs' lawyers concocted in opposition.

**(b)    Dr. Easttom Never Alleges That ▮▮▮▮ Is "Received" By Any Device**

Plaintiffs' untimely "DRM subfolder" theory also fails to satisfy the claim limitations, at least because Plaintiffs never show the ▮▮▮▮. Plaintiffs do not even seem to dispute this in their Opposition. Instead, Plaintiffs' lawyers argue

---

use case, the host platform mounts the [S4 server] using NFS, and therefore the encrypted flag is always false."). Plaintiffs dispute this assertion, citing to Dr. Easttom's report (Opp. at 10)—but while Dr. Easttom conclusorily states that he disagrees with Mr. Neri's testimony, he provides no basis for this claim (Dkt. 241-13 ¶ 555, n.28). Neither Dr. Easttom's conclusory opinion, nor Plaintiffs' attorney argument, provides a basis for disputing Mr. Neri's testimony or creates a genuine issue of fact. *See, e.g., Novartis Corp. v. Ben Venue Lab'ys, Inc.*, 271 F.3d 1043, 1051 (Fed. Cir. 2001) (holding that "where an expert's opinion is predicated on factual assumptions, those assumptions must also find some support in the record"; "mere 'theoretical speculations' lacking a basis in the record will not create a genuine issue of fact").

[4] Indeed, for purposes of invalidity, Plaintiffs stated that "the '667 Patent requires this indication to relate to a particular region that is within the NAS device, not to the NAS device as a whole." Dkt. 210 at 12.

1  (without support or citation) that "███████████████████████████████
2  ████████████████████████████████████████████████." Opp. at 12 (emphasis
3  added). This attorney argument fails to establish infringement. Indeed, Plaintiffs' new argument is
4  circular. They say the ██████████████████████████████████████████████
5  ██████. But as the Court recognized during claim construction, there needs to be an indication of a
6  secure region **before** the digital content is transferred to that region, not an indication that content
7  **has already been** transferred: "The whole point of this -- the next step is then transmitting the digital
8  content to the secure region. So how can that happen if no indication has been given that there's a
9  secure region?" Dkt. 117 at 90:10–13; *see also id.* at 88:25–89:4 ("How would it make sense for the
10 indication to be just that there is a NAS device, but the system doesn't look any further **before**
11 **proceeding** to make sure that the NAS device has a secure region and it might or might not? How
12 does that make sense[?]") (emphasis added). The mere fact that content is stored in a secure folder
13 does nothing to indicate that the folder is secure *before* the content is transmitted to it. As such,
14 Plaintiffs fail to demonstrate that the "DRM subfolder" theory satisfies this claim limitation and
15 summary judgment is proper.

16         **2.**    **The ████████████ Theory is Untimely and Does Not Show Any Accused Product Receives an Indication of the NAS Device Having a**
17                 **Secure Region**

18         Apparently recognizing their "encrypted Boolean" and "DRM subfolder" theories are not
19 just untimely but also deficient on the merits, Plaintiffs seemingly scoured their contentions to
20 concoct yet another new theory for their opposition brief. Specifically, Plaintiffs conjure the ██████
21 ██████ theory to allegedly satisfy the "receiving an indication" limitation. Opp. at 6. But like
22 Plaintiffs' other theories, the Court could spend an eternity looking for this "receiving an indication
23 of the ████████████" theory in Plaintiffs' infringement contentions; it will never find it.
24         Plaintiffs' infringement contentions break up their analysis of limitation 1[c] into three parts,
25 each addressing a separate portion of the limitation. Dkt. 189-4 at 32–49. In the first part, which
26 addresses the limitation at issue—"receive an indication of the NAS device"—**there is no mention**

*of the* "██████." *Id.* at 32–38.[5] And tellingly, Plaintiffs do not rely on any part of that section to support their new "████████" theory. *See* Opp. at 5–6 (citing to pages 39, 40–41, 44, 46, and 58–59 of Dkt. 189-4). This should end the issue; for the claim language that forms the basis of Viasat's motion ("receiving an indication of . . ."), there is no mention of the "████████" at all.

Rather, the only place "████████" appears is in the part of the infringement contentions that addresses "a secure region comprising a buffer for streaming media on a separate display device on a local area network"—and even in this portion of Plaintiffs' contentions, they reference the ████████ as ████████████. They say nothing about it being a secure region of a NAS device,[6] let alone how it provides an *indication* of a secure region within the NAS device:

[redacted image]

Dkt. 189-4 at 40 (highlighting in original, red boxes added).

Nevertheless, Plaintiffs' attorneys argue the ████████ somehow demonstrates infringement of the relevant limitation. The opposition claims the contentions "████████

---

[5] This is not surprising given Plaintiffs argued the claim only required an indication of a NAS *device* (not a region *within* that device) until the Court rejected that construction and required "an indication of the presence of a secure region within the NAS device." Dkt. 120 at 18–19.

[6] Plaintiffs cite to a number of documents in their brief that they say show that "████████████ . . . thereby characterizing it as a secure storage region." Opp. at 6. But even Plaintiffs admit that those documents discuss ████, generally, not ████████████. *See, e.g.*, *id.* (quoting Ex. 27 at 745 as saying "████████████████████████████"). The same is true of Plaintiffs infringement contention, which only discuss "████" or the "████████." Dkt. 189-4 at 40 ("████████████████████████████████████████").

1
2
3
4 ." Opp. at 6. But this theory—to the extent it can be
5 understood—does not appear anywhere in Plaintiffs' contentions or even its expert report. Like the
6 contentions, Dr. Easttom references the ▅▅▅▅▅ only in relation to **other**
7 limitations—specifically limitation 1[e], which requires that the claimed system "transmit
8 instructions to the NAS device to control streaming access to the digital content stored on the
9 buffer." Dkt. 189-4 at 58; Dkt. 241-13 ¶ 598. There is no reference to the ▅▅▅▅▅
10 during the discussion of limitation 1[c] in Dr. Easttom's report, nor is there ever any mention of an
11 "indication" provided by ▅▅▅▅. Indeed, Plaintiffs essentially admit that they created this
12 theory out of vague "cit[ations] to Viasat's technical documentation about the '▅▅▅▅
13 ▅▅▅'" (Opp. at 6), which appear in the portions of Plaintiffs' contentions **addressing other**
14 **limitations**.[7]

15    Finally, if Plaintiffs' attorneys are going to present new infringement theories at will, they
16 should invent a theory that conceivably supports infringement. But Plaintiffs actually admit the
17 "▅▅▅▅" theory does not satisfy the relevant limitation. They state that their passing reference
18 to the "▅▅▅▅" and their citations to the "▅▅▅▅▅" show "▅▅▅▅

---

[7] Plaintiffs' Patent L.R. 3-1 disclosures are not like a Rule 33(d) interrogatory response, which allows a party to cite documents from which the answer to an interrogatory may be discerned when "the burden of deriving or ascertaining the answer will be substantially the same for either party." Fed. R. Civ. P. 33(d). Rather, it is Plaintiffs' burden to prove infringement. Their infringement contentions therefore need to crystallize infringement theories early in the case to avoid the exact "vexatious shuffling of positions" in which they now engage. *Berger v. Rossignol Ski. Co.*, No. 05-02523, 2006 WL 1095914, at *3 (N.D. Cal. Apr. 25, 2006); see *DSS Tech. Mgmt., Inc. v. Apple, Inc.*, No. 14-CV-05330-HSG, 2020 WL 210318, at *6–7 (N.D. Cal. Jan. 14, 2020) ("The purpose of Patent Local Rule 3–1 is in fact to be nit-picky, to require a plaintiff to crystalize its theory of the case and patent claims."). Here, Plaintiffs cited to 39 documents and source code files in the '667 patent infringement contentions—it is not Viasat's burden to decipher Plaintiffs' theories from those citations. *See Unicorn Energy AG v. Tesla Inc.*, 740 F. Supp. 3d 930, 971 (N.D. Cal. 2024) (citing *Traxcell Techs., LLC v. Sprint Commc'ns Co.*, 15 F.4th 1121, 1133 (Fed. Cir. 2021) (affirming summary judgment of non-infringement where patent owner "cited swaths of documents" but "failed . . . to explain how those documents support its infringement theory").

██████████████████████████████████████████████████████

████████████████████████████████████." Opp. at 6 (emphases added). But this says nothing about "*receiving an indication* of the presence of a secure region within the NAS device." Summary judgment of noninfringement of the '667 patent is warranted.

### B.     '400 Patent: Plaintiffs Do Not Show "A Kiosk" As Required By The Claims

#### 1.     Plaintiffs, Not Viasat, Raise an Incorrect Claim Construction Argument

As Viasat explained in its motion (at 10), the Court construed "a kiosk" to mean "any ***device***" (singular)—not device***s*** (plural)—"used to access and distribute content provided by the system." Dkt. 120 at 10. Viasat is not rearguing claim construction, as Plaintiffs assert; it is merely applying the Court's construction and controlling law on references to "a" device in a claim preamble. The claim language differentiates between a device (singular) and multiple devices (plural). *See* Dkt. 205 at 11. Black-letter law also differentiates between "a" device in the preamble, as compared to later elements that fall after the "comprising" transition in a claim. *Plaintiffs* are rearguing claim construction by asserting that "any *device*" means "any *devices*," and Plaintiffs ignore black-letter law establishing the rules for "a" device recited in preambles.

As Viasat explained (Mot. at 11), claim 1 expressly refers to "devices" (plural) when describing "a plurality of portable data storage devices." If the inventors intended for "a kiosk" to include *collections* of devices, they would have specified that. Dkt. 1-1, cl. 1. Plaintiffs do not address this claim language. *See id.* Instead, Plaintiffs identify portions of the specification that they say show "a kiosk" can be multiple separate devices. Dkt. 241-2 at 13. As an initial matter, the claim language—including the claims' own distinction between "device" (singular) and "devices" (plural)—should control. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) ("Quite apart from the written description and the prosecution history, the claims themselves provide substantial guidance as to the meaning of particular claim terms."). Regardless, the specification sections Plaintiffs' cite do not support them. The specification says the claimed "kiosk 106' may comprise various user interface ***equipment***, such as a keyboard, display, etc. to allow use of the kiosk 106." Dkt. 1-1 at 6:41–43. This does not mean one kiosk can be any number of separate, distinct,

distributed *devices*; it means a keyboard or display are pieces of "equipment," and that the kiosk is not limited to specific types of user interface equipment.[8]

Plaintiffs say that the caselaw Viasat cited in its motion is distinguishable, but fail to actually distinguish the cases. Each case establishes that when a claim recites "a" device **in the preamble**—as opposed to after the transitional word "comprising"—the limitation modified by "a" must be performed by one device that meets all of the claim limitations. *Convolve, Inc. v. Compaq Computer Corp.*, 812 F.3d 1313, 1321 (Fed. Cir. 2016); *see also Salazar v. AT&T Mobility LLC*, 64 F.4th 1311, 1317 (Fed. Cir. 2023) (holding that the claims "require[d] a **singular** element—'a microprocessor'—to be capable of performing all of the recited functionality") (emphasis in original). Indeed, as *Varna* explained, "[f]or a dog owner to have 'a dog that rolls over and fetches sticks,' it does not suffice that he have two dogs, each able to perform just one of the tasks"—rather, he must have a single dog that performs both functions. *In re Varma*, 816 F.3d 1352, 1363 (Fed. Cir. 2016). Plaintiffs never address this point. Yet this is precisely what is wrong with Plaintiffs' assertion that " ▬▬▬ with ▬▬▬ and ▬▬▬ ," as well as voluminous ▬▬▬ and a ▬▬▬ , somehow constitute "*a* kiosk." Dkt. 205 at 14.[9]

As Plaintiffs' describe it, the ▬▬▬ performs some claim limitations ("obtain[ing] a unique identifier from the portable data storage device" and "provid[ing] to the portable data storage device . . . a corresponding access key") while multiple ▬▬▬

---

[8] The devices that Plaintiffs claim form "a kiosk" in Viasat's products simply do not constitute user interface equipment. A kiosk may permit users to interact with a keyboard or a screen, but no user has ever interfaced with a kiosk using a satellite antenna incorporated into the top of an airplane fuselage.

[9] Plaintiffs seem focused on the ▬▬▬ , but that is not what Plaintiffs said in their infringement contentions, nor what Dr. Easttom said in deposition. In the infringement contentions, Plaintiffs identified "▬▬▬ ▬▬▬ " as "a kiosk." Dkt. 188-2 at 3. And between his report and deposition, the kiosk expanded further. Dr. Easttom asserts that that the "kiosk" includes not only "▬▬▬ " (Dkt. No. 201-3 ¶ 134), but **also** the multiple ▬▬▬ , which Dr. Easttom calls the "first data interface" of the "kiosk," and the ▬▬▬ , which Dr. Easttom said is the kiosk's "second data interface." Dkt. 207-6 at 131:13–15, 133:10–19, 155:22–156:12.

perform other limitations (the claimed "first data interface configured to communicate with a portable data storage device"), the ▮▮▮▮▮ performs other limitations (the "second data interface configured to communicate, over a network, with a remote trusted server") and the ▮▮▮ performs still other limitations ("authenticat[ing] the portable data storage device, using at least the unique identifier, by communicating with the remote trusted server") via the VCDS client running on the M3 modem. Dkt. 241-13 ¶¶ 173, 197, 271, 278. Plaintiffs' mixing and matching of different aspects of different devices physically distributed throughout the plane to meet different claim limitations, all of which must be performed by "*a* kiosk," cannot show infringement as a matter of law.

### 2.  Plaintiffs Have Not Shown that Viasat's Systems Meet the Kiosk Limitation

Plaintiffs contend they proved Viasat's systems meet the kiosk limitation because "Dr. Easttom identifies interconnected subcomponents of Viasat's products that work together to provide the ***functionality*** of the claimed 'kiosk'" and "Dr. Easttom shows that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" supposedly creating a factual dispute regarding infringement. Opp. at 15 (emphases added). Not so. This is not a mean-plus-function claim where the function or action, rather than the specific structure, is claimed. The claims recite a supposedly novel structure: "*a* kiosk." As the Court recognized in its claim construction order, the '400 patent used this specific structure to overcome prior art.[10] If only the function mattered—not what performed the function—adding "a kiosk" in the preamble would have had no effect. Because the claim was narrowed to one thing—"a kiosk"—to perform the claimed functions, Plaintiffs must identify "a kiosk" for infringement. Otherwise Plaintiffs would improperly read "a kiosk" out of the claim.

Plaintiffs also ignore that, apart from the ▮▮▮▮▮▮, the alleged single "kiosk" Dr. Easttom now identifies includes at least three (and possibly more) ▮▮▮▮▮

---

[10] *See* Dkt. 120 at 8 ("[B]ecause the patentee clearly used the term 'kiosk' in the preamble as a means to distinguish prior art during the prosecution of the '400 Patent's parent application, the Court concludes that the preamble's use of that term is limiting.").

1  ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. Dkt. 205-7 at 155:22–156:16. This theory was not in their infringement contentions. The contentions said something else—that the ▆▆▆▆▆▆▆▆▆▆▆▆▆▆ was the "kiosk," not that the separate ▆▆▆ were *also* the "kiosk."[11] Indeed, the only time "▆▆▆▆▆▆▆▆▆▆" were mentioned in the "kiosk" limitation was when Plaintiffs distinguished between the ▆▆▆▆▆▆▆. Dkt. 188-2 at 5 (citing diagrams separately depicting the ▆▆▆▆▆▆▆, and highlighting text related to the ▆▆ only—not the ▆▆). Dr. Easttom's theory of "a kiosk" comprised of multiple dispersed components simply is not in the infringement contentions and does not match the Court's claim construction. Summary judgment of non-infringement should be granted.[12]

### C. '400 Patent: Plaintiffs Do Not Show the "Authenticating the Portable Data Storage Device" Limitation Is Satisfied

Plaintiffs fault Viasat for supposedly seeking to strike "only [] three paragraphs" regarding claim 1[e] in Dr. Easttom's report, insinuating that, at trial, they can base their infringement argument for the "authenticating" limitation on other paragraphs in Dr. Easttom's report. Opp. at 24–25 (referencing paragraphs 248–275 of the Easttom report on claim limitation 1[e]). This is incorrect. The paragraphs Viasat seeks to strike—"paragraphs 249–252, 254–255, 278, 435–438, 440–441, and 464 of Dr. Easttom's report," *see* Dkt. 244 at 7—constitute Dr. Easttom's ***entire substantive analysis*** of how the accused products satisfy ***the "authentication" limitation*** of claims

---

[11] Dkt. 188-2 at 3 ("To the extent the preamble is limiting, the '400 Accused Products comprise a kiosk (*e.g.*, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆) for provisioning secure media content to a plurality of portable data storage devices.").

[12] Plaintiffs argue in the alternative (at 17–18) that even if a "kiosk" must be a singular device, they provided sufficient evidence to avoid summary judgment, because Dr. Easttom opined that "[t]o the extent that . . . the ▆▆▆▆▆▆ is considered to be the kiosk" it still has "a second data interface configured to communicate, over a network, with a remote trusted server." Dkt. 241-13 (Easttom Rep.) ¶ 203. This is wrong. Dr. Easttom never explained how the ▆▆▆▆▆▆ alone satisfies all of the limitations the "kiosk" is required to perform. Instead, Dr. Easttom relied on other devices to explain how the limitations are supposedly satisfied—including relying on the ▆▆▆▆▆▆, on the ▆▆▆▆▆ ▆▆▆▆, and on multiple ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. *Id.* ¶¶ 172–299.

1[e] and 9[d]. The remaining paragraphs merely provide background information and do not address the "authentication" limitation. No matter how lengthy, background is not analysis—and it does not suffice to show infringement or a dispute of material fact regarding infringement. If the Court grants Viasat's co-pending motion to strike Plaintiffs' untimely "▮▮▮▮▮▮▮▮▮" and "▮▮▮▮▮▮▮▮▮" theories (Dkt. 207-3), the Court should also grant Viasat's motion for summary judgment on the '400 patent; beyond these two untimely theories, Plaintiffs set forth *no* other theory as to how the accused products supposedly "authenticate" any portable data storage devices. Dkt. 207-4 at 15–17. The inquiry should end there, and the Court should grant summary judgment of non-infringement.

Even if the Court does consider Plaintiffs' untimely "▮▮▮▮▮▮▮▮▮" and "▮▮▮▮▮▮▮▮▮" theories, however, they still fail because Plaintiffs' opposition confirms they have no proof any accused product satisfies the Court's construction of the "authenticating" limitation. Opp. at 19–21. The Court construed the "authenticating" term to mean "confirming that the portable data storage device is *trusted* using at least the unique identifier." Dkt. 120 at 13–14 (emphasis added). In its motion, Viasat pointed out that "Plaintiffs' contentions and Dr. Easttom's infringement report ***never address, apply, or even mention the Court's construction***." Mot. at 15 (emphasis in original). Plaintiffs do not dispute this. Rather than state precisely where they applied the Court's construction—because they cannot—Plaintiffs' opposition list swaths of paragraphs, and then concludes without explanation that these citations "confirm[] that the PED is trusted." *See, e.g.*, Opp. at 19 (using a "***see generally***" cite to paragraphs 133–171, 195–206, and 213–276 of Dr. Easttom's report). Indeed, page 19 of Plaintiffs' opposition alone "generally" cites ***over a hundred paragraphs of Dr. Easttom's report***, ***none of which ever use the word "trust" or "trusted."*** Such "[b]road citations to evidence without explanation is alone grounds to grant summary judgment" of non-infringement. *UnicornEnergy AG v. Tesla Inc.*, 740 F. Supp. 3d 930, 971 (N.D. Cal. 2024) (citing *Traxcell Techs., LLC v. Sprint Commc'ns Co.*, 15 F.4th 1121, 1133 (Fed. Cir. 2021)

(affirming summary judgment of non-infringement where patent owner "cited swaths of documents" but "failed . . . to explain how those documents support its infringement theory").[13] Plaintiffs' briefing and broad citations are no substitute for analysis from Dr. Easttom: "Conclusory allegations and attorney arguments are insufficient to overcome a motion for summary judgment." *Cellspin*, 2022 WL 2784467, at *2.

Finally, even if the Court does not grant summary judgment for either of the aforementioned reasons, summary judgment is still appropriate because Plaintiffs never coherently explain what their theory for this limitation even is—much less support it with evidence. Plaintiffs had the burden to show infringement in response to Viasat's motion. *See, e.g., Exigent Tech., Inc. v. Atrana Sols., Inc.*, 442 F.3d 1301, 1308–09 (Fed. Cir. 2006). But Plaintiffs never state how the "kiosk" communicates with a remote trusted server to confirm trust, or how that is done using the unique identifier.[14] Plaintiffs do not even say what exactly the "remote trusted server" is—instead they point broadly to "█████████████████████████████████████████████████████" Opp. at 19 (emphasis added). That kitchen-sink

---

[13] "When faced with summary judgment, the non-moving party is obligated 'to identify with reasonable particularity the evidence that precludes summary judgment.'" *Cellspin Soft, Inc. v. Fitbit, Inc.*, No. 4:17-CV-05928-YGR, 2022 WL 2784467, at *1 (N.D. Cal. June 15, 2022), *aff'd sub nom. Cellspin Soft, Inc. v. Fitbit LLC*, No. 2022-2025, 2024 WL 4648069 (Fed. Cir. Nov. 1, 2024). Mere conclusory opinions with "no detailed analysis or explanation . . . is unexplained ipse dixit testimony that does not amount to sufficient evidence. *Id.* at *16. And when, as here, "the record is devoid of meaningful analysis," a court "will not conduct such an analysis in the first instance." *OSRAM Sylvania, Inc. v. Am. Induction Techs., Inc.*, 701 F.3d 698, 797 (Fed. Cir. 2012); *see also Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (holding that the district court is not obligated "to scour the record in search of a genuine issue of triable fact").

[14] Plaintiffs fault Viasat for a supposed "improper implicit claim construction" by saying the "'unique identifier' must be communicated to the remote trusted server." Opp. at 23. Not so. Viasat simply applied the Court's construction and the claim text, which requires that the kiosk "confirm[] that the portable data storage device is trusted *using* at least the unique identifier"—something that must be done "*by communicating with the remote trusted server*." '400 patent cl. 1.

allegation gives no explanation of how these servers supposedly confirm an end-user device is "trusted," or even which servers correspond to which "use cases" Plaintiffs accuse, or how any of these servers communicate with the "kiosk" to "authenticate the portable data storage device using at least the unique identifier . . . over the second data interface." Indeed, Plaintiffs do not even coherently explain what "unique identifier" they are relying on for which use case with which server. Instead, Plaintiffs broadly point to a plethora of different variables including the "▮▮▮▮▮▮▮▮," "▮▮▮▮▮▮▮▮," or an unspecified "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." Opp. at 20. No evidence in the record shows any of these variables are "specific to," "obtained from," or "concealed by" any portable data storage devices, as required by the plain language of the claim. Dkt. 120 at 13–14. Simply put, Plaintiffs fail to set forth any coherent theory of infringement of the '400 patent. That failure warrants summary judgment of non-infringement.[15]

### III.   CONCLUSION

For the reasons set forth above and in Viasat's Memorandum in Support of its Motion for Summary Judgment of Noninfringement (Dkt. 205), the Court should grant Viasat's motion for summary judgment of noninfringement.

---

[15] *See, e.g., Traxcell Techs., LLC v. Sprint Commc'ns Co. LP*, 15 F.4th 1121, 1130 (Fed. Cir. 2021) (affirming summary judgment of non-infringement where patentee "didn't explain how any of these approaches match up to the court's claim construction, how the approaches are actually used in the accused technology, and how the approaches would meet other limitations of the claims," since an "unexplained listing of accused elements that purportedly send, receive, generate, store, or use a wireless device's location is insufficient to create a genuine issue of material fact"); *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1054 (Fed. Cir. 2001) (affirming summary judgment of noninfringement where patentee offered only unexplained citations to a computer model, without any explanation of how it showed the claim limitation was satisfied; "it was Novartis's obligation to set forth the detailed basis of its evidence such that the district court could evaluate whether it could support a finding of infringement," and a patentee cannot create a genuine issue of material fact where the party's "explanations are inadequate" for why cited evidence is relevant).

DATED: July 18, 2025

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ Patrick Curran
Patrick Curran

*Attorneys for Defendant Viasat Inc.*

DEFENDANT VIASAT, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT [DKT. 205]

**CERTIFICATE OF SERVICE**

I hereby certify that on July 18, 2025, a copy of the foregoing document was served via e-mail to all counsel of record who have appeared in this matter.

DATED: July 18, 2025                By  /s/ *Patrick Curran*
                                        Patrick Curran