# Exhibit 14



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER

Page 1

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

_____
                                        )
SANDISK TECHNOLOGIES, INC., et al.,     )
                                        )
                                        )
                Plaintiffs,             )
                                        )
        v.                              )
                                        )
                                        )
VIASAT, INC.,                           )C.A. No.
                                        )4:22-CV-
                                        )04376-HSG
                Defendant.              )
_____)


HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY -
UNDER PROTECTIVE ORDER


VIDEO RECORDED IN-PERSON DEPOSITION OF FINN HUGHES

Friday, February 28, 2025
at:  9:14 a.m.


Held at Shelborne Hotel, 27 St. Stephen's Green, Dublin,
Ireland


JOB SY 010258

taken before Sherry Yan, RPR, California CSR 14442

TransPerfect Legal Solutions
212-400-8845 - Depo@TransPerfect.com

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER

---

Page 2

```
 1              A P P E A R A N C E S :
 2
 3   On behalf of the Plaintiffs:
     GIBSON DUNN & CRUTCHER LLP
 4   1700 M Street, N.W.
     Washington DC 20036-4504
 5   Shuo Josh Zhang, Esq.
     szhang@gibsondunn.com
 6   by: Brian M. Buroker, Esq.
     bburoker@gibsondunn.com
 7   (202) 955-8500
 8
 9
10   On behalf of the Defendant and the Witness:
     QUINN EMANUEL URQUHART & SULLIVAN, LLP
11   111 Huntington Avenue, Suite 520
     Boston, MA  02199
12   Steven Cherny, Esq.
     stevencherny@quinnemanuel.com
13   by: Patrick Curran, Esq.
     patrickcurran@quinnemanuel.com
14   (617) 712-7100
15
     Alicia Lai, Esq.
16   295 5th Avenue
     New York, NY  10016
17   alicialai@quinnemanuel.com
     (212) 849-7000
18
19
20
21
22
23
     Also Present:
24
25   Joel Coriat, Videographer
```

---

Page 4

```
 1                   I N D E X
                      (cont...)
 2
     EXHIBIT      DESCRIPTION           PAGE
 3   HUGHES
        10     Bates No. VIASAT_00017759
 4                - 00017767   144
 5        11     Bates No. VIASAT_00017768
                  - 00017806   148
 6
        12     Bates No. VIASAT_00014554
 7                - 00014568   149
 8        13     Bates No. VIASAT_00069974
                  - 00070030   153
 9
       14     Bates No. VIASAT_00060421
10                - 00060428   154
11       14A     Bates No. VIASAT_00060429   154
12        15     Viasat, Inc.'s Fourth
                  Supplemental Objections
13                & Responses to Plaintiffs'
                  First Set of Interrogatories
14                (Nos. 1-8)        159
15        16     Bates No. VIASAT_00055833
                  - 00000838   172
16
        17     Bates No. VIASAT_000060099
17                - 000060190   175
18        18     Bates No. VIASAT_00006471
                  -00006537   177
19
        19     Bates No. VIASAT_00055981
20                - 00055988   178
21
22
23
24
25
```

---

Page 3

```
 1                   I N D E X
 2   WITNESS
     FINN HUGHES     EXAMINATION BY      PAGE
 3      Mr. Buroker        7
 4
 5   EXHIBIT      DESCRIPTION      PAGE
     HUGHES
 6      1    Plaintiffs' Notice of
             Deposition of Finn Hughes    9
 7
        2    Defendant Viasat, Inc.'s
 8           Responses & Objections to
             Plaintiffs' Notice of Rule 30(B)(6)
 9           Deposition of Defendant Viasat,
             Inc.             10
10
        3    an email from counsel for Viasat
11           that identifies various topics
             for different witnesses
12           including for Witness Finn
             Hughes on the second page    10
13
        4    Viasat's Third Supplemental
14           Objections & Responses to
             Plaintiffs' Second Set of
15           Interrogatories (Nos. 9-15)   21
16      5    printout from LinkedIn,
             of Finn Hughes,
17           total pages, 3        34
18      6    Bates No. VIASAT_00005782
                - 00006140   67
19
20      7    page that was blown out,
             from Page 5798 of Exhibit 6   87
21
22      8    Bates No. VIASAT_00000618
                - 00000629   125
23
24      9    Bates No. VIASAT_00006779
                - 00006804   136
25
```

---

Page 5

```
 1                   I N D E X
                      (cont...)
 2
     EXHIBIT      DESCRIPTION           PAGE
 3   HUGHES
        19A     Bates No. VIASAT_00055999   178
 4
        19B     Bates No. VIASAT_00055998   178
 5
        19C     Bates No. VIASAT_00055993   179
 6
        19D     Bates No. VIASAT_00056003   179
 7
        19E     Bates No. VIASAT_00059221   179
 8
        19F     Bates No. VIASAT_00055997   179
 9
        20     Complaint for Declaratory
10             Judgment filed by Viasat, Inc.
               against Intellectual Ventures I LLC
11             and Intellectual
               Ventures II LLC        182
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER

Page 6

1    VIDEOGRAPHER:  Good morning.  Here begins
2  Media No. 1 in the video recorded deposition of Finn
3  Hughes, in the matter of Sandisk Technologies, Inc., et
4  al. versus Viasat.  This is Case No. 4:22-CV-04376-HSG,
5  filed in the US District Court for the Northern District
6  of California, Oakland Division.
7    Today's date is February 28th, 2025.  The time
8  on the video monitor is now 9:14 a.m.  The videographer
9  today is Joel Coriat, on behalf of TransPerfect Legal
10  Solutions.  We are located at the Shelborne Hotel in
11  Dublin, Ireland.
12    Will counsel please identify yourselves for
13  the record.
14    MR. BUROKER:  This is Brian Buroker from
15  Gibson Dunn, on behalf of Sandisk.
16    I also have Josh Zhang, from Gibson Dunn, on
17  behalf of Sandisk.
18    MR. CURRAN:  Patrick Curran, Quinn Emanuel, on
19  behalf of Viasat and the Witness.
20    With me today are my colleagues Steve Cherny
21  and Alicia Lai.
22    VIDEOGRAPHER:  Thank you, counsel.
23    And the court reporter today is Sherry Yan, on
24  behalf of TransPerfect Legal.  She will now swear in the
25  Deponent.

Page 7

1  //
2  //
3  WHEREUPON,
4        FINN HUGHES,
5  having been first duly sworn/affirmed, was examined and
6  testified as follows:
7
8        EXAMINATION
9  BY MR. BUROKER:
10    Q.  Good morning, Mr. Hughes.  My name is Brian
11  Buroker, and I will be asking you some questions today.
12  First, I'd like to clarify, if you could just please
13  state your name for the record again one more time?
14    A.  My name is Finn Hughes.
15    Q.  And where do you currently reside?
6    A.  I live in ▇▇▇▇ Dublin.  That's ▇▇▇▇
▇     ▇▇▇▇▇▇▇.
      Q.  Do you have a current business address?
19    A.  Yes.
20    Q.  And what is that business address?
21    A.  Charlemont Place.
22    Q.  Who are you currently employed by?
23    A.  Viasat Ireland.
24    Q.  Have you ever been deposed before?
25    A.  No.

Page 8

1    Q.  Have you ever given testimony in any form of
2  legal proceeding?
3    A.  No.
4    Q.  You understand that you are under oath today;
5  is that correct?
6    A.  That's correct.
7    Q.  And the testimony you give today is the same
8  as if you were testifying in a court in the United
9  States in this proceeding.  Do you understand that?
10    A.  I am not sure, no.
11    Q.  I will represent to you that the testimony you
12  give today can be used in court in the United States.
13  Were you aware of that before you came here today?
14    MR. CURRAN:  I am going to --
15    Q.  BY MR. BUROKER:  Without revealing
16  communication with your counsel, were you aware of that?
17    MR. CURRAN:  I am going to caution the
18  witness, don't reveal during the deposition the
19  substance of any communications you've had with
20  counsel -- in-house counsel at Viasat or outside
21  counsel.
22    Subject to that caution and instruction, you
23  can answer.  Go ahead.
24    THE WITNESS:  I was aware.
25    Q.  BY MR. BUROKER:  So in terms of today's

Page 9

1  proceedings, I will be asking questions and asking you
2  to answer those questions.  If you don't understand my
3  question, please let me know, and I will try to clarify
4  them; is that fair?
5    A.  Yes.
6    Q.  And you are doing a good job already, but
7  we'll try not to interrupt one another.  Please let me
8  finish my question before you to start, and I will do
9  the same.  I'll wait for you to finish your answer
10  before I ask the next question.  Do you understand that?
11    A.  I do.
12    Q.  We can take breaks.  So if you need to take a
13  break at anytime, let me know.  I'd just ask that you
14  finish answering any pending question before we take
15  that break.  Do you understand that?
16    A.  I do.
17    Q.  Is there any reason you can't give true and
18  accurate testimony today such as medication or any
19  illness?
20    A.  No.
21    Q.  I am going to mark an exhibit.
22    (Exhibit 1 marked.)
23    So what's been marked as Exhibit 1 is
24  Plaintiffs' Notice of Deposition of Finn Hughes,
25  Pursuant to Federal Rules of Civil Procedure 30(b)(1).

3  (Pages 6 to 9)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER

Page 10

1    Have you seen this document before?
2    A.   I don't know.
3    Q.   This is a Deposition Notice for your
4  deposition in your individual capacity.  Were you aware
5  that you were being deposed in your individual capacity
6  today?
7    MR. CURRAN:  I caution the witness not to
8  reveal the substance of any communication with counsel.
9    Subject to that caution and instruction, you
10  can answer, go ahead.
11    THE WITNESS:  I was.
12    Q.   BY MR. BUROKER:  Mark that one too.  2 and 3.
13    So what was marked as Exhibit 2 -- the thicker
14  document you have in front of you -- is something called
15  Defendant Viasat, Inc.'s Responses & Objections to
16  Plaintiffs' Notice of Rule 30(B)(6) Deposition of
17  Defendant Viasat, Inc.
18    And then Exhibit 3 is an email from counsel
19  for Viasat that identifies various topics for different
20  witnesses including for you on the second page.
21    (Exhibit 2 marked.)
22    (Exhibit 3 marked.)
23    Are you familiar that you are here to testify
24  behalf of Viasat on certain topics of information?
25    MR. CURRAN:  For the record, Mr. Hughes has

Page 11

1  been designated subject to objections on the Notice
2  topics.
3    THE WITNESS:  Yes.
4    Q.   BY MR. BUROKER:  And the topics are listed on
5  the second page of Exhibit 3 under your name.  If you
6  take a look at that real quick, please.
7    A.   Okay.
8    Q.   Do you understand that the list of topics on
9  Page 2 of Exhibit 3 under your name is the list of
10  topics for which you have been designated, subject to
11  your counsel's objections and qualifications in that
12  topic list?
13    A.   My understanding is that DRM in brackets with
14  the numbers, means that it's for specific subsets
15  related to DRM of those topics.
16    Q.   And for the numbers where there's no DRM in
17  brackets, it's for that topic, and entirely subject to
18  your counsel's objections.
19    Is that your understanding?
20    MR. CURRAN:  I caution the witness don't
21  reveal the substance of any communication with counsel,
22  but subject that caution and instruction, you can
23  answer.
24    THE WITNESS:  I am not sure.
25    Q.   BY MR. BUROKER:  Okay.  So what did you do to

Page 12

1  prepare to testify on behalf of Viasat for the topics
2  that are listed in Exhibit 3?
3    MR. CURRAN:  Objection.  Form.
4    Go ahead.
5    THE WITNESS:  I've worked on the wireless IFE
6  product for nearly ten years.
7    Q.   BY MR. BUROKER:  Did you speak to anybody to
8  prepare for your deposition today on those topics?
9    A.   I had some conversations with not many people.
10    Q.   And who are the not many people that you spoke
11  to?
12    MR. CURRAN:  Objection to form.
13    THE WITNESS:  Like counsel and outside of
14  that.  Des.
15    Q.   BY MR. BUROKER:  Did you speak to outside
16  counsel for Viasat related to your deposition today?
17    MR. CURRAN:  I am going to caution the witness
18  don't reveal the substance of any communication.
19    That question as it's phrased calls for a yes
20  or a no, and you can answer yes or no.
21    THE WITNESS:  Yes.
22    Q.   BY MR. BUROKER:  Was it the three attorneys
23  here today that you spoke with to prepare for your
24  deposition?
25    MR. CURRAN:  Same caution and instruction.

Page 13

1    THE WITNESS:  Included the three attorneys
2  here today.
3    Q.   BY MR. BUROKER:  Is there anybody else within
4  Viasat's legal team that you spoke to prepare for your
5  deposition?
6    A.   Colin, Viasat's internal legal, right.
7    Q.   Anybody beyond the three people here and the
8  Colin that you spoke to, to prepare for your deposition
9  among your legal team?
10    A.   No.
11    Q.   And about how long did you meet with them to
12  prepare for your deposition?
13    A.   About three days.
14    Q.   When were those three days?
15    A.   Yesterday and the previous day when this was
16  arranged for.
17    Q.   You also mentioned that you spoke to Des
18  O'Sullivan to prepare for today; is that correct?
19    A.   Yes.
20    Q.   And what did you talk to Mr. O'Sullivan about
21  in relationship to preparing for your deposition?
22    A.   Background check, about being deposed, and
23  some of the content, but nothing indepth.
24    Q.   And when did you speak to Mr. O'Sullivan about
25  preparing for your deposition?

4 (Pages 10 to 13)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER

Page 14

1    A.  I don't remember.
2    Q.  Did you speak to him after his deposition on
3  Wednesday about your deposition today?
4    A.  I did not.
5    Q.  Is he your supervisor at Viasat?
6    A.  No.
7    Q.  Who is your supervisor at Viasat?
8    A.  Marcello Valentini.
9    Q.  What, if any, relationship with Mr. O'Sullivan
10  you currently have at Viasat?
11       MR. CURRAN:  Objection to form.
12       THE WITNESS:  Marcello reports to Des.
13    Q.  BY MR. BUROKER:  Have you ever reported
14  directly to Mr. O'Sullivan during your time at Viasat?
15    A.  I have.
16    Q.  When did you first start reporting to Mr.
17  Valentini?
18    A.  When he joined Viasat.
19    Q.  Approximately when did that occur?
20    A.  Approximately two years ago.
21    Q.  To prepare for your deposition, did you review
22  any documents?
23    A.  I did.
24    Q.  Did any of those documents refresh your
25  recollection?

Page 15

1    A.  No.
2    Q.  Did you review any source code to prepare for
3  your deposition?
4    A.  I did.
5    Q.  Did you review any documents that were not
6  source code?
7       MR. CURRAN:  Objection.  Form.
8       THE WITNESS:  I did.
9    Q.  BY MR. BUROKER:  In conjunction with this
10  case, were you asked to collect documents to be produced
11  in this litigation?
12       MR. CURRAN:  I am going to caution the witness
13  not to reveal the substance of any communications with
14  in-house counsel or outside counsel.
15       As it's phrased, that calls for a yes or a no.
16  You could answer.
17       THE WITNESS:  Yes.
18    Q.  BY MR. BUROKER:  And did you produce
19  documents?
20       MR. CURRAN:  Same caution and instruction.
21       THE WITNESS:  Yes.
22    Q.  BY MR. BUROKER:  What were the sources of the
23  documents that you collected, in other words, from your
24  email, from online -- from your hard drive, from online
25  sources, what were those sources from which you

Page 16

1  collected documents?
2       MR. CURRAN:  Object to form.
3       And same caution and instruction not to reveal
4  communications with counsel, but subject to that
5  caution, you can answer.
6       Also, object to the scope.
7       THE WITNESS:  I am not sure.
8    Q.  BY MR. BUROKER:  Why are you not sure.
9       MR. CURRAN:  Same objection.
10       THE WITNESS:  I explained my email at content
11  that was potentially relevant, but was told that I
12  didn't need to --
13       MR. CURRAN:  Hold on.  I am going to caution
14  you --
15       MR. BUROKER:  I am not asking --
16       MR. CURRAN:  I am going to caution the witness
17  not to reveal the substance of any communications with
18  counsel.
19       As this is phrased, it's asking for locations.
20  Maybe we can have the question read back, but I am going
21  to caution the witness, don't reveal the substance of
22  any communication you've had in-house counsel or outside
23  counsel.
24    Q.  BY MR. BUROKER:  So let me take a step back.
25  I am asking you to produce documents.  I am just asking

Page 17

1  where the documents that you end up giving to counsel
2  come from?  Can you answer that question?
3       MR. CURRAN:  Same caution and instruction.
4       And objection on scope and form.
5       THE WITNESS:  Mostly, I didn't directly
6  provide documents.  They were taken from locations I
7  suggested.
8    Q.  BY MR. BUROKER:  Okay.  And what were the
9  locations that were suggested?
10       MR. CURRAN:  Same caution and instruction.
11       THE WITNESS:  Email is one.
12    Q.  BY MR. BUROKER:  Was there any Wiki site that
13  you suggested?
14    A.  I shared links to many Wiki pages.
15    Q.  And were you involved in the collection of
16  source code to be made available for inspection in this
17  case?
18    A.  Yes.
19    Q.  And where was the source code that you
20  identified for collection in this case?
21    A.  In Git repositories.
22    Q.  I think it's capital G, i-t.
23       Is that correct, Capital G, i-t?
24    A.  I don't usually capitalize it.
25    Q.  So it's just Git?

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER



Page 18

1    Okay.
2    Other than the Wiki, email, and Git
3  repositories where the source code, were there any other
4  sources that you collected documents from?
5    A.  I referred to Slack.
6    Q.  Anything else?
7    A.  I can't recall anything else.
8    Q.  Do you work with █████████████
█
10   MR. CURRAN:  Objection.  Scope and form.
11   THE WITNESS:  Not closely.
12   Q.  BY MR. BUROKER:  Are the Wiki links that you
13  identified include materials ████████████████?
14   MR. CURRAN:  Objection.  Scope and form.
15   THE WITNESS:  No.
16   Q.  BY MR. BUROKER:  Do you know where ███████
████████████████████████?
18   MR. CURRAN:  Same objections.
19   THE WITNESS:  I have seen technical material
20  in Git.
21   Q.  BY MR. BUROKER:  Do you know whether the
22  materials that you identified for collection in the GIT
23  repositories included ████████████████?
24   MR. CURRAN:  Objection.  Scope and form.
25   THE WITNESS:  I shared one repository that

Page 19

1  likely ███████████████.
2    Q.  BY MR. BUROKER:  Do you know if ██████
███████████████████████████████
    A.  Can you repeat the question?
6    Q.  BY MR. BUROKER:  Sure.  Let me take a step
7  back.  You identified ████████████████████
████████████████; is that correct?
9    MR. CURRAN:  Objection to form and scope.
10   THE WITNESS:  I identified ██████████████.
11   Q.  BY MR. BUROKER:  And is ██████████████
██████████████████████████
14   MR. CURRAN:  Objection.  Scope and form.
15   THE WITNESS: █████████████████████
████████████████████
17   Q.  BY MR. BUROKER:  Which repository that you
18  shared include Gigcasters source code?
19   MR. CURRAN:  Objection.  Form.  And scope.
20   THE WITNESS:  The only ████████████████
████████████████████████████
23   Q.  BY MR. BUROKER:  Do you know where █████
████████████ is stored?
25   MR. CURRAN:  Objection.  Form and scope.

Page 20

1    THE WITNESS:  I've come across ████████
    Q.  BY MR. BUROKER:  When did you come across
4  that?
5    MR. CURRAN:  Same objection.
6    THE WITNESS:  I don't recall.
7    Q.  BY MR. BUROKER:  Do you recall the name of
8  that ████████████████████████?
9    MR. CURRAN:  Same objections.
10   THE WITNESS:  Not specifically.
11   Q.  BY MR. BUROKER:  And how do you know that it
12  ████████████████████████████?
13   A.  By ████████
14   Q.  And what are the ████████████ that you see?
15   A.  I don't remember.
16   Q.  Was it in the Git system that you referred to
17  earlier?
18   A.  Yes.
19   Q.  When you said that you identified ████████
████████████, what did you mean by that?
21   MR. CURRAN:  Objection.  Form and scope.
22   THE WITNESS: █████████████████████████
████████████████████████████████████
24   Q.  BY MR. BUROKER: █████████████████████

Page 21

██████████████████████████████████████
████████████████████████████████████
    MR. CURRAN:  Objection.  Form and scope.
6    THE WITNESS: ████████████████████████
██████████████████████████████████
9    Q.  BY MR. BUROKER:  Exhibit 4.
10   (Exhibit 4 marked.)
11   Exhibit 4 is Viasat's Third Supplemental
12  Objections & Responses to Plaintiffs' Second Set of
13  Interrogatories (Nos. 9-15).
14   Have you ever seen this document before?
15   A.  I don't know.
16   Q.  Starting on Page 27 of the document.  27 -- I
17  will wait for you to get there.
18   A.  I am just trying to get the context.
19   Okay.
20   Q.  So starting on -- again, read whatever you
21  need to -- but starting on 27, going through 30, there's
22  an identification of what are said to be folders of
23  source code.  They are in bold and underlined, and then
24  there's a description.
25   Do you see that?
    A.  I do.

6 (Pages 18 to 21)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER



Page 50

1  user hits the play button?
2     A.  I don't know what the specific sequencing is.
3     Q.
6        MR. CURRAN:  Objection to form.
7        THE WITNESS:
9     Q.  BY MR. BUROKER:
11    A.
12    Q.
14       MR. CURRAN:  Objection to form.
15       THE WITNESS:  The important information is the
16
17    Q.  BY MR. BUROKER:
19       MR. CURRAN:  Objection.  Form.
20       THE WITNESS:  I would like to correct my
21    previous response.
24    Q.  BY MR. BUROKER:  And if it's a TV show, the

Page 51

1        is that right?
2     A.  Can you repeat the question?
3     Q.  If it's a TV show,
5        MR. CURRAN:  Objection.  Form.
6        THE WITNESS:  Yes.
7     Q.  BY MR. BUROKER:  So what does
8            do with the -- I'm sorry, did you say
9     it was an open event?
10       MR. CURRAN:  Object to form.
11    Q.  BY MR. BUROKER:  There was
12       and there was another one.
13    What was the other one's name?
14       MR. CURRAN:  Same objection.
15       THE WITNESS:  First,
18    Q.  BY MR. BUROKER:  Okay.  In response to the
19
21       MR. CURRAN:  Objection.  Form.
22       THE WITNESS:  Can you be more specific?
23    Q.  BY MR. BUROKER:  Is -- does the
24

Page 52

1        MR. CURRAN:  Objection.  Form.
2        THE WITNESS:
4     Q.  BY MR. BUROKER:  Does it provide any
5
7     A.  No.
8     Q.  Is that
10       MR. CURRAN:  Object to form.
11       THE WITNESS:  When it received, it's
13    Q.  BY MR. BUROKER:  Which        is that?
14       MR. CURRAN:  Object to scope and form.
15       THE WITNESS:
16    Q.  BY MR. BUROKER:  And then what does the
17
18       MR. CURRAN:  Object to form.
19       THE WITNESS:  One thing it does make a
20
21    Q.  BY MR. BUROKER:  And I should've asked this.
22
24       MR. CURRAN:  Objection to storm.
25       THE WITNESS:  I think the

Page 53

1
2     Q.  BY MR. BUROKER:  So it'd would
4     correct?
5     A.  I think so.
6     Q.  So you said that the
8     that correct?
9        MR. CURRAN:  Objection to form.
10       THE WITNESS:  Can you repeat the question?
11    Q.  BY MR. BUROKER:  Sure.
14    A.  Yes.
15    Q.  Where does it make        to?
16       MR. CURRAN:  Objection to form.
17       THE WITNESS:
19    Q.  BY MR. BUROKER:  And is
22       MR. CURRAN:  Objection to form.
23       THE WITNESS:
25    Q.  BY MR. BUROKER:  Which is now part of a

14 (Pages 50 to 53)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER



Page 54

1  company called ███████; is that correct?
2       MR. CURRAN:  Object to scope and form.
3       THE WITNESS:  I don't think that's the latest
4  name of the company.
5       Q.  BY MR. BUROKER:  That's probably true.  It's
6  changed names so many times.
7       So you estimate there is a ████████████
8  ██████.
9       What information is ████████████████████
10 ████████████████████████
11      MR. CURRAN:  Objection to form.
12      THE WITNESS:  The most important part of that
13 request is a ██████.
14      Q.  BY MR. BUROKER:  And what is ███████████?
15      MR. CURRAN:  Object to form.
16      THE WITNESS:  ███████████████████████
17 █████████████████████
18 ██████████████████████
19      Q.  BY MR. BUROKER:  And who determines ██████
20 ███████████████████████?
21      MR. CURRAN:  Objection to form.
22      THE WITNESS:  What do you mean by who?
23      Q.  BY MR. BUROKER:  ██████████████████████
24 ██████████████████████
25      MR. CURRAN:  Same objection.

Page 55

1       THE WITNESS:  I think so.
2       Q.  BY MR. BUROKER:  Is the ████████ -- strike
3  that.  Does ████████████████████████████
4  ██████████████████████████
5  ████████████████████████?
6       MR. CURRAN:  Objection to form.
7       THE WITNESS:  ████████████████████████
8  ██████████████████████████
9  ██████████████████████████
10 ████████.
11      Q.  BY MR. BUROKER:  ████████████████████
12 ███████; is that correct?
13      MR. CURRAN:  Objection.  Form.
14      THE WITNESS:  Sometimes.
15      Q.  BY MR. BUROKER:  ████████████████████
16 ███████████████████ is that correct?
17      A.  Usually.
18      Q.  ████████████████████████████████
19 █████████████████?
20      MR. CURRAN:  Objection.  Scope.
21      THE WITNESS:  Not on that platform.
22      Q.  BY MR. BUROKER:  You said sometimes.  I was
23 just curious.  Why did you say "sometimes" when I asked
24 if ████████████████████
25      MR. CURRAN:  Objection.  Scope and form.

Page 56

1       THE WITNESS:  ████████████████████████████
2  █████████████████████
3       Q.  BY MR. BUROKER:  Where in the source code
4  would you look to determine ████████████████████████
5  █████████████████████████████████
6  ██████████████████?
7       MR. CURRAN:  Objection.  Form.
8       THE WITNESS:  In ████████████████████████.
9       Q.  BY MR. BUROKER:  And does ██████████████
10 ████████████████████
11      MR. CURRAN:  Objection to form.
12      THE WITNESS:  Yes.
13      Q.  BY MR. BUROKER:  Where is ████████████████
14 ███████?
15      MR. CURRAN:  Object to form.
16      THE WITNESS:  The main documentation I am
17 aware of is in public docs, ████████████████.
18      Q.  BY MR. BUROKER:  So then what does the
19 ████████████████████████████████████████
20 ████████████████████
21      MR. CURRAN:  Object to form.
22      THE WITNESS:  It ████████████████████████
23 ████████████████
24      Q.  BY MR. BUROKER:  So in this case, ████████
25 ███████████████████?

Page 57

1       MR. CURRAN:  Object to form.
2       THE WITNESS:  ████████████████████████
3  █████████
4       Q.  BY MR. BUROKER:  Okay.  And then what happens
5  next in the sequence to enable the user to start
6  watching the movie or TV show that he or she has
7  selected ████████████?  What does
8  the browser do?
9       MR. CURRAN:  Object to form.
10      THE WITNESS:  Again, I am not super clear on
11 the sequencing, but it ████████████████████████
12 ██████████████████
13      Q.  BY MR. BUROKER:  At some point does the
14 browser ████████████████████████████████████
15 ████████?
16      A.  Yes.
17      Q.  Does that ████████████████████████
18 ██████████
19      MR. CURRAN:  Object to form.
20      THE WITNESS:  I think ████████████████████
21 █████████
22      Q.  BY MR. BUROKER:  So there's a ████████████
23 █████████████████████████████████
24 ████████████████████████
25 ██████████████████?

15 (Pages 54 to 57)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER



Page 86

1  question.
2  MR. CURRAN:  Objection to form.
3  THE WITNESS:  ███████████████
4
5  Q.  BY MR. BUROKER:  ██████████████
   ████████████████████████████████
   ████████████████████████████████
   ████████████████████████████████
   ████████████████████████████████
11  MR. CURRAN:  Objection.  Form.
12  THE WITNESS:  I am not aware of any
13  differences.
14  Q.  BY MR. BUROKER:  So for a ████████ customer, for
15  example, ██████████████████████████
   ████████████████████████ is that
17  correct?
18  A.  Can you repeat the question?
19  Q.  When a ████████████████████████
   ████████████████████████████████████
   ████████████████████████████████?
22  MR. CURRAN:  Objection.  Form.
23  THE WITNESS:  Yes.
24  Q.  BY MR. BUROKER:  And is tha ████████████████

Page 87

1  A.  Yes.
2  Q.  Exhibit 6 is a document, Bates No.
3  VIASAT_00005782 through 6140.
4  (Exhibit 6 marked.)
5  And then Exhibit 7 is a page that's taken from
6  that exhibit and blown out to make it a little more
7  legible, and that's from Page 5798 of the document.
8  (Exhibit 7 marked.)
9  So the first question.  Have you ever seen
10  Exhibit 6 before?
11  You're free to take your time to read the
12  whole thing, but I am only going to ask you about some
13  portions.  Take the time you need to look -- to see
14  whether you recognize --
15  A.  No, I don't know this document, but portions
16  of it, sure.
17  Q.  Have you ever seen the diagram that's blown up
18  on the right-hand side that came from Page 5798 before?
19  MR. CURRAN:  And for the record, is this
20  marked as 7?
21  MR. BUROKER:  Yes, we should just do that --
22  did she mark it as 7?
23  Yes, we will call that 7; Exhibit 7.
24  THE WITNESS:  It looks very familiar.
25  Q.  BY MR. BUROKER:  So this diagram shows -- and

Page 88

1  it's kind of faint, just the way it was produced --
2  there's a very shaded gray area toward the right, and at
3  the top of that gray area, there's a blue text, and it
4  says "██████████"
5  Do you see that?
6  A.  I see that.
7  Q.  Okay.  And then within that, there are two
8  blue boxes and one greenish box.  One ████████████████
   ████████████████████████████████████
10  Do you see that?
11  A.  I do.
12  Q.  And then below that, ████████████████████
   ████████████
14  Do you see that?
15  A.  I do.
16  Q.  And then to the right of both of those,
17  there's ██████████████████████████."
18  Do you see that?
19  A.  I do.
20  Q.  What is the ████████████████████████████
   ████████████████?
22  A.  I am not sure what meaning the creator of this
23  diagram was trying to convey with that.
24  Q.  Are you familiar with a ██████████████?
25  MR. CURRAN:  Objection to form.

Page 89

1  THE WITNESS:  Yes.
2  Q.  BY MR. BUROKER:  Does ████████████████████████
   ████████████████████████████
4  MR. CURRAN:  Object to form.
5  THE WITNESS:  Depends.
6  Q.  BY MR. BUROKER:  What does it depend on?
7  A.  The ████████████████
8  Q.  Currently is Viasat ████████████████?
9  A.  In some places.
10  Q.  And what are the places ████████████████████?
11  A.  Can you be more specific in your question?
12  Q.  You said ████████████
   ████████████████████?
14  MR. CURRAN:  Objection.  Scope.
15  THE WITNESS:  Viasat is a big company.
16  Q.  BY MR. BUROKER:  Is Viasat using ████████████
   ████████████████?
18  A. ████████
19  Q.  Earlier you said something ████████████████████
   ████████████████████████████████
   ████████████████████
23  MR. CURRAN:  Objection.  Form.
24  THE WITNESS:  No.
25  Q.  BY MR. BUROKER:  They all use ████████████

23  (Pages 86 to 89)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER



Page 90

```
 1        A.  Yes.
 2        Q.  What is the process by which ████████████
 3   ████?
 4        MR. CURRAN:  Objection.  Scope and form.
 5        THE WITNESS:  It depends.
 6        Q.  BY MR. BUROKER:  What does it depend on?
 7        MR. CURRAN:  Same objection.
 8        THE WITNESS:  ████████████████████████
 9   ████████████████
10        Q.  BY MR. BUROKER:  What are the different
11   ████████████████████████████████████
12   ████████
13        MR. CURRAN:  Objection.  Scope.
14        THE WITNESS:  I am not aware of ████████
15   ████████████████████
16        Q.  BY MR. BUROKER:  Which components are you
17   aware of?
18        A.  I am aware of the ████████████
19        Q.  In the diagram that's shown here Exhibit 7,
20   which boxes ████████████████████████████?
21        A.  I am not sure of the meaning of all the boxes
22   in the diagram.
23        Q.  Of the boxes that you do know the meaning of,
24   ████████████████████████████
25   ██████
```

Page 91

```
 1        A.  It's not clear of the author's intent, but
 2   ████████████████████████████  we have
 3   discussed.
 4        Q.  And then does th███████████████████
 5   ████████  we talked about?
 6        A.  I am not aware of the author's intent, but
 7   that seems likely.
 8        Q.  There is something here -- before I get to
 9   that.  There is a ████████████████.  Does that
10   ████████████████████?
11        MR. CURRAN:  Objection.  Form.
12        THE WITNESS:  I am not aware of the author's
13   intent, but I assume that's correct.
14        Q.  BY MR. BUROKER:  The box to the right of that
15   ████████████████  Is that ████████  you talked
16   about earlier?
17        A.  That appears to be the intent.
18        MR. CURRAN:  It's 12:30.  We're planning to do
19   lunch --
20        MR. BUROKER:  Let me just -- I just have one
21   or two --
22        MR. CURRAN:  Sure.
23        Q.  BY MR. BUROKER:  Is there a ████████
24   ████████
25
```

Page 92

```
 1   ████████████████████████?
 2        A.  Can you ask the question again? ████████
 3        Q.  Yes.  ████████████████████████████████
 4   ████████████████████████████████████████
 5   ████
 6
 7        MR. CURRAN:  Objection.  Form.
 8        THE WITNESS:  I wouldn't describe it that way.
 9        Q.  BY MR. BUROKER:  How would you describe it?
10        A.  ████████████████████████████████
11        Q.  You said ████████████████████████.
12        ████████████████
13        What did you mean by ████████████████?
14        MR. CURRAN:  Objection to form.
15        THE WITNESS:  ████████████████████████
16   ████████████████████████████████████
17   if at all.
18        Q.  BY MR. BUROKER:  But they ████████████
19   ████████  correct?
20        MR. CURRAN:  Objection.  Form.
21        THE WITNESS:  ████████████████████████
22   ████████████
23        Q.  BY MR. BUROKER:  Why don't we take a break for
```

Page 93

```
 1   lunch?
 2        VIDEOGRAPHER:  Off the record.  Time is 12:31.
 3        (Lunch break.)
 4        VIDEOGRAPHER:  We are back on the record.  The
 5   time is 1:19.
 6        Q.  BY MR. BUROKER:  Good afternoon.  We were
 7   looking at Exhibit 7, which is the printout page from
 8   Exhibit 6.  Does this diagram depict the two different
 9   storage locations you referred to earlier today in terms
10   of location and ingest location?
11        MR. CURRAN:  Objection.  Form.
12   Mischaracterizes.
13        THE WITNESS:  It does, and introduces more
14   details.
15        Q.  BY MR. BUROKER:  Where does it show the ████
16   ████████
17        MR. CURRAN:  Objection.  Scope and form.
18        Q.  BY MR. BUROKER:  Testing your eyesight as
19   well, this question.
20        A.  In the ████████████████████████████
21   ████████████████████████████████████
22   ████████████████████████████████████
23        Q.  And is the ████████████████████████
```

24  (Pages 90 to 93)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER



Page 94

1    MR. CURRAN: Objection. Scope and form.
2        THE WITNESS: That is ███████████████
3    ████████████████████████████████.
4        Q. BY MR. BUROKER: Okay. And the one on the
5    bottom right, what is that folder for?
6        MR. CURRAN: Objection. Scope and form.
7        THE WITNESS: You're referring to ████████
8    ████████████████?
9        Q. BY MR. BUROKER: Correct.
10       MR. CURRAN: Objection. Scope and form.
11       THE WITNESS: That is the ██████████
12   ████████████████████████████.
13       Q. BY MR. BUROKER: What ████████████████
14   ████████?
15       A. ████████████████████████████████
16   ████████████████████████████.
17       Q. So that would be ██████████████████
18   ████████████████████████████████?
19       MR. CURRAN: Objection. Scope. Form.
20       THE WITNESS: I am not sure about the overall
21   description.
22       Q. BY MR. BUROKER: ████████████████████
23   ████████████████████████.
24       MR. CURRAN: Objection. Scope.
25       THE WITNESS: Yes.

Page 95

1        Q. BY MR. BUROKER: Which airlines use the
2    ████████████████████████████?
3        MR. CURRAN: Objection. Scope.
4        THE WITNESS: ████████████.
5        Q. BY MR. BUROKER: Does ██████ use that
6    technique?
7        MR. CURRAN: Objection. Scope.
8        THE WITNESS: Yes.
9        Q. BY MR. BUROKER: Does ██████ also use ███
10   ████████████████████████.
11       MR. CURRAN: Objection. Scope.
12       THE WITNESS: Yes.
13       Q. BY MR. BUROKER: What circumstances -- under
14   what circumstances does ██████████████████████
15   ████████████████████████?
16       MR. CURRAN: Objection. Form and scope.
17       THE WITNESS: Whenever they want, but usually
18   ████████████████████████████.
19       Q. BY MR. BUROKER: When you mean ██████████
20   ████████████████████████████████
21   ████████████████████████?
22       MR. CURRAN: Objection. Form and scope.
23       THE WITNESS: Yes.
24       Q. BY MR. BUROKER: Does ████████████ use
25   ████████████████████?

Page 96

1        MR. CURRAN: Objection. Scope.
2        THE WITNESS: No.
3        Q. BY MR. BUROKER: Does ████████████████████
4    ████████████████████████████?
5        MR. CURRAN: Objection. Scope.
6        THE WITNESS: Yes.
7        Q. BY MR. BUROKER: Under what circumstances does
8    ████████ use that method?
9        MR. CURRAN: Same objection.
10       THE WITNESS: Same answer as for ████████████
11       Q. BY MR. BUROKER: Does Breeze █████████████
12   ████████████████████████████████.
13       MR. CURRAN: Objection. Scope.
14       THE WITNESS: I don't know.
15       Q. BY MR. BUROKER: Do you know if ████████████
16   ████████████████████?
17       MR. CURRAN: Objection. Scope.
18       THE WITNESS: Yes.
19       Q. BY MR. BUROKER: Did ████████████ use the
20   ████████████████████████?
21       MR. CURRAN: Objection. Scope.
22       THE WITNESS: I don't know.
23       Q. BY MR. BUROKER: Did ██████████████████████
24   ████████████████████████.
25       MR. CURRAN: Same objection.

Page 97

1        THE WITNESS: Yes.
2        Q. BY MR. BUROKER: Does ██████████████████████
3    ████████████████████████████.
4        MR. CURRAN: Objection. Form.
5        THE WITNESS: Yes.
6        Q. BY MR. BUROKER: Looking back at the figure,
7    there's a box that ████████████████████████████?
8        Is that ████████████████████████████████
9    ████████████████?
10       A. I don't know the author's intent.
11       Q. But ████████████████████████████████████
12   ████████████████████████████.
13       Do you see that in the diagram?
14       A. I do.
15       Q. And you talked ████████████████████████████
16   ████████████████████; right?
17       A. Yes.
18       Q. Do you know ██████████████████████████████
19   ████████████████████████.
20       MR. CURRAN: Objection to form.
21       THE WITNESS: Outside of the diagram, I am
22   familiar with ██████████████████████.
23       Q. BY MR. BUROKER: What is ████████████████████?
24       MR. CURRAN: Objection to form.
25       THE WITNESS: It was a ████████████████████

25 (Pages 94 to 97)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER



**Page 98**

1
2    Q.  BY MR. BUROKER:  Is that
3
4    MR. CURRAN:  Objection.  Form.
5    THE WITNESS:  No.
6    Q.  BY MR. BUROKER:  There's a
7
8    Do you know what that box does?
9    MR. CURRAN:  Objection.  Form.
10   THE WITNESS:  I don't know the intent of the
11 author of this diagram.
12   Q.  BY MR. BUROKER:  Are you familiar with a
13      ?
14   A.  Yes.
15   Q.  And what does
16     ?
17   MR. CURRAN:  Objection to form.
18   THE WITNESS:
19
20   Q.  BY MR. BUROKER:  And where
21
22   MR. CURRAN:  Objection to form.
23   THE WITNESS:  Can you ask the question again?
24   Q.  BY MR. BUROKER:  Yes.  You said it's

**Page 99**

1   A.   .
2   Q.  Is
3
4   MR. CURRAN:  Objection.  Scope.
5   THE WITNESS:  It's not a good question.
6   Q.  BY MR. BUROKER:  Why is it not a good
7 question?
8   A.   .
9   Q.
10      ?
11   MR. CURRAN:  Objection.  Scope and form.
12   THE WITNESS:  There's no good answer to that
13 question.
14   Q.  BY MR. BUROKER:  Why is that?
15   A.
16
17
18
19   Q.
20
21
22   MR. CURRAN:  Objection.  Scope.  Form.
23   THE WITNESS:
24
25   Q.  BY MR. BUROKER:  So

**Page 100**

1
2     ?
3   MR. CURRAN:  Objection.  Scope.
4   THE WITNESS:  Yes.
5   Q.  BY MR. BUROKER:  Are you familiar with the
6     ?
7   MR. CURRAN:  Objection.  Scope.
8   THE WITNESS:  Yes.
9   Q.  BY MR. BUROKER:  Is the
10
11
12   MR. CURRAN:  Objection.  Scope and form.
13   THE WITNESS:  Yes.
14   Q.  BY MR. BUROKER:  And what are the differences
15 in
16
17   MR. CURRAN:  Objection.  Scope and form.
18   THE WITNESS:  The one I am aware of is
19
20   Q.  BY MR. BUROKER:  And what is
21
22   MR. CURRAN:  Objection.  Scope and form.
23   THE WITNESS:  It depends on where you look.
24   Q.  BY MR. BUROKER:  How does it depend on where
25 you look?

**Page 101**

1   MR. CURRAN:  Objection.  Scope and form.
2   THE WITNESS:
3
4   Q.  BY MR. BUROKER:  What is
5
6   MR. CURRAN:  Objection.  Scope and form.
7   THE WITNESS:  I am not sure.
8   Q.  BY MR. BUROKER:  And what is
9
10   MR. CURRAN:  Objection.  Scope and form.
11   THE WITNESS:  I don't remember.
12   Q.  BY MR. BUROKER:  You do know that
13
14     is that correct?
15   MR. CURRAN:  Objection.  Scope and form.
16   THE WITNESS:  That's correct.
17   Q.  BY MR. BUROKER:  Do you know why
18    ?
19   MR. CURRAN:  Objection.  Scope and form.
20   THE WITNESS:
21
22
23
24   Q.  BY MR. BUROKER:  Is the same true for

26 (Pages 98 to 101)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER



Page 102

```
 1   ████████████████████?
 2        MR. CURRAN:  Objection.  Scope and form.
 3        THE WITNESS:  Can you re-ask the question?
 4        Q.  BY MR. BUROKER:  Yes.  So now I want to ask
 5   about the ██████████████████.  Does it have a
 6   ████████
 7        MR. CURRAN:  Objection.  Scope and form.
 8        THE WITNESS:  I don't know.
 9        Q.  BY MR. BUROKER:  Do you know if █████
10   ████████████████████████████?
12        MR. CURRAN:  Objection.  Scope and form.
13        THE WITNESS:  Yes.
14        Q.  BY MR. BUROKER:  Is the ████████
15   ████████████████████████████████?
17        MR. CURRAN:  Objection.  Scope and form.
18        THE WITNESS:  Can you repeat?
18        Q.  BY MR. BUROKER:  Is the ████████
20   ██████████████████████
20        MR. CURRAN:  Same objections.
21        THE WITNESS:  It depends.
22        Q.  BY MR. BUROKER:  What does it depend on?
23        MR. CURRAN:  Same objections.
24        THE WITNESS:  Depends on ████████████
         █████████.
```

Page 103

```
 1        Q.  BY MR. BUROKER:  Is the video portion of
 2   content █████████████████████████████
 4        A.  It depends --
 5        MR. CURRAN:  Objection.  Form.
 6        Q.  BY MR. BUROKER:  What does it depend on?
 7        A.  It depends on ████████████
 8        Q.  BY MR. BUROKER:  Does the █████████
 9   ██████████████████
10        MR. CURRAN:  Objection.  Form.
11        THE WITNESS:  Yes.
12        Q.  BY MR. BUROKER:  What are examples of
13   ██████████████████████████
15        MR. CURRAN:  Objection to form.
16        THE WITNESS:  █████ are an example.
17        Q.  BY MR. BUROKER:  Are there any other examples?
18        A.  ██████████████
19        Q.  What is a █████████?
20        A.  They are ████
22        Q.  Are there any other examples ████████
         ██████████████?
24        MR. CURRAN:  Objection.  Form and scope.
25        THE WITNESS:  Not currently.
```

Page 104

```
 1        Q.  BY MR. BUROKER:
 2   ████████████████████████████████
 4        A.  Can I return to the previous question?
 5        Q.  Yes.  If you thought of anything you'd like to
 6   supplement your answer, please do.
 7        A.  I am aware of an ██████████ also.
 8        Q.  And what is an ████████████████
 9        A.  We have an ████████████████
11        Q.  Like ████
12   ████████████████████████████
13        MR. CURRAN:  Objection to form.
14        THE WITNESS:  Yes.
15        Q.  BY MR. BUROKER:  And those are not
16   ████████████████████?
17        A.  I don't know.
18        Q.  They are not ███████████████████████; is
19   that correct?
20        MR. CURRAN:  Objection.  Form and scope.
21        THE WITNESS:  I don't know.
22        Q.  BY MR. BUROKER:  Okay.  Let me go back to my
23   other question.
```

Page 105

```
 1   ████████████████████████?
 2        MR. CURRAN:  Objection.  Scope and form.
 3        THE WITNESS:  They ████████████████████
 4        Q.  BY MR. BUROKER:  Is there a ████████
     ███████████████████████████
 7        MR. CURRAN:  Objection to form and scope.
 8        THE WITNESS:  All the ████████████████
     ████████████████████████████████
     ████████████████████████████
13        Q.  BY MR. BUROKER:  Are the ████████████
     ████████████████
15        MR. CURRAN:  Objection to form.
16        THE WITNESS:  Yes.
17        Q.  BY MR. BUROKER:  Are there ████████████
     ████████████████████
20        MR. CURRAN:  Objection.  Form and scope.
21        THE WITNESS:  Yes.
22        Q.  BY MR. BUROKER:  What are ████████████
     ████████████████
25        A.  An exam --
```

27 (Pages 102 to 105)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER



Page 106

1    MR. CURRAN:  Same objection.
2    THE WITNESS:  An example is a ███████,
3    Q.  BY MR. BUROKER:  What is an example of a
4    ███████████████?
5    MR. CURRAN:  Objection.  Form.
     THE WITNESS:  ████████████████████
     ████████████████████████████
     Q.  BY MR. BUROKER:  What are those █████ used
9    for?
10   MR. CURRAN:  Objection.  Form and scope.
11   THE WITNESS:  Some of the █████ we discussed
12   earlier are ████████████████.
13   Q.  BY MR. BUROKER:  So if a airline wants to
4    ████████████████████████████████
     ████████████████████████████████
     MR. CURRAN:  Objection.  Scope and form.
17   THE WITNESS:  It depends.
18   Q.  BY MR. BUROKER:  Let me ask a different
19   question.  How do ███████████████████████
     ████████████████████?
21   MR. CURRAN:  Same objection.
22   THE WITNESS:  ████████████████████
     ████████████████████████
4    Q.  BY MR. BUROKER:  And that ████████████
     ████████████ is that correct?

Page 107

1    MR. CURRAN:  Scope and form.
2    THE WITNESS:  Those are the currently
3    supported options.
4    Q.  BY MR. BUROKER:  Is there a █████████████
     ████████████████████████
     ████████████?
     MR. CURRAN:  Objection.  Form and scope.
8    THE WITNESS:  As I already described, █████
     ████████████████████████████
     ████████████.
     Q.  BY MR. BUROKER:  Is there a ████████████
     ████████████.
13   MR. CURRAN:  Objection.  Scope and form.
14   THE WITNESS:  Correct.
15   Q.  BY MR. BUROKER:  What is the mechanism by
16   which Viasat can ████████████████████?
17   MR. CURRAN:  Objection.  Form.
18   THE WITNESS:  It depends.
     Q.  BY MR. BUROKER:  What are the ████████
     ████████████████████████████
     ████████████████████████.
22   MR. CURRAN:  Objection.  Form.
23   THE WITNESS:  ████████████████████
     ████████████████████████████
     ████████████████████████

Page 108

1    Q.  BY MR. BUROKER:  What is a ████████████?
2    MR. CURRAN:  Objection to form.
3    THE WITNESS:  ████████████████████████
     ████████████████████████████████
6    Q.  BY MR. BUROKER:  So the process we described
7    -- we talked about earlier where ████████████
     ████████████████████████████████
     ████████████████████████
11   MR. CURRAN:  Objection.  Form.
12   THE WITNESS:  Your question is not clear to
13   me.
14   Q.  BY MR. BUROKER:  Okay.  ████████████████
     ████████████████████████████████
     ████████████████████████████████
     ████████████████████████████████
     ████████████████████?
19   MR. CURRAN:  Objection.  Form.
20   THE WITNESS:  No.
21   Q.  BY MR. BUROKER:  ████████████████████████
     ████████████████████████
23   MR. CURRAN:  Objection.  Form and scope.
24   THE WITNESS:  Can you repeat the question?
25   Q.  BY MR. BUROKER:  ████████████████████

Page 109

1    ████████████████████████████████
     ████████████████████████████████
     ████████████████████?
4    MR. CURRAN:  Objection.  Form.
5    THE WITNESS:  ████████████████████████
6    Q.  BY MR. BUROKER:  Is there ever a need
     ████████████████████████████████
     ████████████████████?
9    MR. CURRAN:  Objection.  Form.
10   THE WITNESS:  ████████████████████████
12   Q.  BY MR. BUROKER:  And how does Viasat ████
     ████████████████████████
14   MR. CURRAN:  Objection.  Form and scope.
15   THE WITNESS:  It depends.
16   Q.  BY MR. BUROKER:  What are the options
17   available for ████████████████████?
18   MR. CURRAN:  Same objection.
19   THE WITNESS:  As I already described, it can
20   ████████████████████████
21   Q.  BY MR. BUROKER:  And how can ████████████
     ████████████████████?
23   MR. CURRAN:  Objection.  Form.
24   THE WITNESS:  It can be ████████████████

28  (Pages 106 to 109)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER



Page 110

1  Q.  BY MR. BUROKER:  Can it also ███████
   ████████████
3        MR. CURRAN:  Objection.  Scope and form.
4        THE WITNESS:  It can be ████████████
6  Q.  BY MR. BUROKER:  What is the mechanism by
7  which █████████████████████████████████
9        MR. CURRAN:  Objection.  Scope and form.
10       THE WITNESS:  I don't know.
11  Q.  BY MR. BUROKER:  Do you know who at Viasat is
12  involved in ███████████████████████
14       MR. CURRAN:  Objection.  Scope and form.
15       THE WITNESS:  No.
16  Q.  BY MR. BUROKER:  Do you know ████████
   ███████████████████████
19       MR. CURRAN:  Objection.  Scope and form.
20       THE WITNESS:  No.
21  Q.  BY MR. BUROKER:  How frequently does the
22  ███████████████████████?
23  A.  I don't know.
24  Q.  Do you have any idea of who knows that kind of
25  information?

Page 111

1        MR. CURRAN:  Objection.  Scope and form.
2        THE WITNESS:  It's a ████████████
4  Q.  BY MR. BUROKER:  That's a group within Viasat,
5  ████████████?
6        MR. CURRAN:  Objection to form.
7        THE WITNESS:  Yes.
8  Q.  BY MR. BUROKER:  Is there anything else about
9  ████████████████████████████████
   ████████████████████████████████
   ████████████████████████████████
13       MR. CURRAN:  Objection.  Form.  And
14  mischaracterizes.
15       THE WITNESS:  Not normally, no.
16  Q.  BY MR. BUROKER:  Are █████████████
   ████████████████████████████████
   ████████████████████████████████
19  A.  Can you repeat the question?
20  Q.  Are ██████████████████████████████
   ████████████████████████████████?
22       MR. CURRAN:  Objection to form.
23       THE WITNESS:  I don't know.
24  Q.  BY MR. BUROKER:  Do you know whether the
25  ████████████████████████████████

Page 112

1  ████████████████████████?
2        MR. CURRAN:  Objection to form.
3        THE WITNESS:  Yes, that answers your previous
4  question.
5  Q.  BY MR. BUROKER:  How does that answer my
6  previous question?
7  A.  ████████████████████████████████
   ████████████████████████████████
10  Q.  How then does ██████████████████
   ████████████████████████?
12       MR. CURRAN:  Objection to form.
13       THE WITNESS:  ████████████████████
   ████████████████████████████████
   ████████████████████████████████.
16  Q.  BY MR. BUROKER:  So for -- so ████████
   ████████████████████████████████
   ████████████████████████████?
19       MR. CURRAN:  Objection.  Form.
20       THE WITNESS:  Can you repeat the question?
21  Q.  BY MR. BUROKER:  ██████████████████
   ████████████████████████████████
   ████████████████████████████████
25       MR. CURRAN:  Objection.  Form.

Page 113

1        THE WITNESS:  ████████████████████
   ████████████████████████████████.
3  Q.  BY MR. BUROKER:  And because ████████
   ████████████████████████████████
   ████████████████ is that
correct?
7        MR. CURRAN:  Objection.  Form.
8        THE WITNESS:  Can you re-ask the question?
9  Q.  BY MR. BUROKER:  I am going to move on -- I
10  think I understand it. ██████████████████
   ████████████████████████████████
   ████████ Are you familiar with that?
13       MR. CURRAN:  Objection.  Form and scope.
14       THE WITNESS:  I am aware of the term.
15  Q.  BY MR. BUROKER:  What is ██████████████?
16       MR. CURRAN:  Objection.  Scope.
         THE WITNESS:  It's a ████████████████
   ████████████████████████████████
19  Q.  BY MR. BUROKER:  How are ██████████████
   ████████████████████████?
22       MR. CURRAN:  Objection.  Scope.
23       THE WITNESS:  It can ████████████████.
24  Q.  BY MR. BUROKER:  Are there other ways other
25  than ████████████████?

29 (Pages 110 to 113)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER



Page 114

1    MR. CURRAN:  Objection.  Scope and form.
2    THE WITNESS:  I am not sure.
3    Q.  BY MR. BUROKER:  Do you know what team is
4  involved in ███████████████████████████████
5  ████████████████████████████████?
6    MR. CURRAN:  Objection.  Scope and form.
7    THE WITNESS:  No.
8    Q.  BY MR. BUROKER:  When something like ████
9  ███████████████████████████████, are they done by Viasat or
11  by the airline?
12    MR. CURRAN:  Objection.  Scope and form.
13    THE WITNESS:  Depends.
14    Q.  BY MR. BUROKER:  Sometimes it's done by
15  Viasat?
16    MR. CURRAN:  Objection.  Scope and form.
17    THE WITNESS:  Yes.
18    Q.  BY MR. BUROKER:  And sometimes it's done by
19  the airline?
20    MR. CURRAN:  Objection.  Scope and form.
21    THE WITNESS:  Yes.
22    Q.  BY MR. BUROKER:  What determines when Viasat
23  ██████████████████████?
24    MR. CURRAN:  Objection.  Scope and form.
25    THE WITNESS:  I don't know.

Page 115

1    Q.  BY MR. BUROKER:  If you can look at the bigger
2  bundle document, which is Exhibit 6, on Page 5821.
3    A.  Which was the page reference?
4    Q.  5821.  I think it's the one on your left hand.
5  You can take that, unclip it if it's easier.  It's a
6  thick document.
7    A.  Uh-huh.
8    Q.  So there's a diagram at the top of 5821.  Have
9  you ever seen that before?
10    MR. CURRAN:  Objection to form.
11    THE WITNESS:  Looks like a diagram I am
12  familiar with.
13    Q.  BY MR. BUROKER:  What does this diagram
14  depict?
15    MR. CURRAN:  Same objection.
16    THE WITNESS:  It's a high level picture,
17  trying to give a clue as to ████████████████████.
18    Q.  BY MR. BUROKER:  And how does it give a high
19  level depiction of ██████████████?
20    MR. CURRAN:  Objection to form.
2    THE WITNESS:  It shows ████████████████████████
████████████████████████████████████████████
████

Page 116

1    Q.  BY MR. BUROKER:  And then the case of, for
2  example, an █████████████████████████████████████
████████████████████████████████████████████
5  ██████
5    MR. CURRAN:  Objection to form.
6    THE WITNESS:  We have been calling it
7  ████████████████████
8    Q.  BY MR. BUROKER:  The text under this says that
9  for ████████████████████████████████████████████
██████████.
12    Is that accurate today?
13    MR. CURRAN:  Objection to form.
14    THE WITNESS:  That looks like text taken
15  directly from ████████ then pasted into this document.
16    Q.  BY MR. BUROKER:  So do you know if it's true
17  or not?
18    MR. CURRAN:  Objection to form.
19    THE WITNESS:  ████████████████████, have
20  asserted that this is how it works.
21    Q.  BY MR. BUROKER:  And then the next sentence
22  says ████████████████████████████████████████████
████████████████████████████
    Do you know if that's accurate?

Page 117

1    MR. CURRAN:  Objection.  Form.
2    THE WITNESS:  I have been told that's correct.
3    Q.  BY MR. BUROKER:  This says ███████████████
████████████████████  Is that a
5  predecessor name to ████████████████?
6    MR. CURRAN:  Objection.  Scope and form.
7    THE WITNESS:  ████████████████████████████
████████████████
    Q.  BY MR. BUROKER:  And the ███████████████
████████████████████████?
11    MR. CURRAN:  Objection to form.
12    THE WITNESS:  It's what ████████████.
13    Q.  BY MR. BUROKER:  Is it both names or do they
14  change the name from ████████████████?
15    MR. CURRAN:  Objection.  Form.
    THE WITNESS:  ████████████████████████
████
    Q.  BY MR. BUROKER:  Under --
19    A.  Can I correct myself slightly?
20    Q.  Sure.
21    A.  The scope of those descriptions might be
22  slightly different.  ████████████████████████████
████
    Q.  BY MR. BUROKER:  Within the ████████████?
25    A.  Possibly.

30  (Pages 114 to 117)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER



Page 118

1   Q.  Does
    █████████████████████████████████
4        MR. CURRAN:  Objection to form.
5        THE WITNESS:  No.
6   Q.  BY MR. BUROKER:  So the next box or paragraph,
7   I should say, ███████████████████████████████
        █
        And then it says, ██████████████████
    █████████████████████████████████████
12      Do you see that?
13  A.  I do.
14  Q.  Do you know if that's accurate?
15       MR. CURRAN:  Objection to form.
16       THE WITNESS:  Yes.
17  Q.  BY MR. BUROKER:  Okay.  Then the next
18  paragraph, ████████████████████████████
    █████████████████████████████████████ .
        Is that accurate to Viasat's understanding?
22       MR. CURRAN:  Objection to form.
23       THE WITNESS:  ███████████████████
    ██████████████████
25  Q.  BY MR. BUROKER:  Does Viasat

Page 119

1   ████████████████████████████████?
2        MR. CURRAN:  Objection to form.
3        THE WITNESS:  I am only aware of alternative
4   ███████████████████████████████
5   Q.  BY MR. BUROKER:  What is the ██████████
    ████████████████████?
7        MR. CURRAN:  Objection to form.
8        THE WITNESS:  I don't remember.
9   Q.  BY MR. BUROKER:  Is there a place that that
10  setting can be found in the source code?
11       MR. CURRAN:  Objection to form.
12       THE WITNESS:  Yes.
13  Q.  BY MR. BUROKER:  Where in the source code
14  would that configuration be located?
15       MR. CURRAN:  Same objection.
16       THE WITNESS:  It depends.
17  Q.  BY MR. BUROKER:  Depends on what?
18       MR. CURRAN:  Object to form.
19       THE WITNESS:  It depends whether -- whether
20  █████████████████████████████████
22  Q.  BY MR. BUROKER:  And in what circumstance are
23  ████████████████████████████████?
24       MR. CURRAN:  Object to form.
25       THE WITNESS:  We are migrating from ████████

Page 120

1   █████████████████████████
2        MR. BUROKER:  When did that ███████████?
3        MR. CURRAN:  Same objection.
4        THE WITNESS:  I am not sure on how inclusive
5   the term ███████████ is.
6   Q.  BY MR. BUROKER:  Do you have some aircraft
7   that are operating under ██████████ today?
8        MR. CURRAN:  Object to form and scope.
9        THE WITNESS:  Yes.
10  Q.  BY MR. BUROKER:  And do you still have some
11  that are operating using ██████ today?
12       MR. CURRAN:  Same objection.
13       THE WITNESS:  Yes.
14  Q.  BY MR. BUROKER:  When was the first use of
15  ████████████████████
16       MR. CURRAN:  Object to scope and form.
17       THE WITNESS:  I don't know.
18  Q.  BY MR. BUROKER:  Why is the conversion -- or
19  migration -- let me start over.  Why are ██████████
21       MR. CURRAN:  Objection.  Scope and form.
22       THE WITNESS:  Many reasons.
23  Q.  BY MR. BUROKER:  Do any of the reasons have to
24  do with this lawsuit?
25       MR. CURRAN:  I caution the witness not to

Page 121

1   reveal any communications with in-house or outside
2   counsel.  Subject to that caution and instruction, if
3   you can answer, go ahead.
4        Also, object to scope and form.
5        THE WITNESS:  No.
6   Q.  BY MR. BUROKER:  So within the ██████████
7   environment, where would one look to find the
8   ██████████████████████████████████████?
9        MR. CURRAN:  Objection.  Scope and form.
10       THE WITNESS:  In the ██████████████████
    ████████████████ .
12  Q.  BY MR. BUROKER:  And for the ██████████
13  environment, where within the source code would one look
14  to see what ████████████████████████ is?
15       MR. CURRAN:  Same objection.
16       THE WITNESS:  █████████████████████████
    ███████████████ .
19  Q.  BY MR. BUROKER:  Are there any other aspects
20  of █████████████████████████████████?
21       MR. CURRAN:  Object to form.
22       THE WITNESS:  I can't remember any at this
23  time.
24  Q.  BY MR. BUROKER:  The next sentence says the
25  ████████████████████████████████████

31 (Pages 118 to 121)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER



Page 122

　　　　　Is that an accurate statement as to how it
4　works in Viasat system today?
5　　　A.　Can you repeat that, please?
6　　　Q.　Yes.　The sentence I read, is that an accurate
7　statement as it applies to Viasat's operations today?
8　　　MR. CURRAN:　Sorry, counsel, which section are
9　we in?
10　　　MR. BUROKER:　2.6.2.3.
11　　　MR. CURRAN:　Thank you.
12　　　Q.　BY MR. BUROKER:　It's the second sentence,
13　that ███████████████."
14　　　　　Is that sentence accurate to the Viasat system
15　today?
16　　　MR. CURRAN:　Object to form.
17　　　THE WITNESS:　I don't think that's quite
18　right.
19　　　Q.　BY MR. BUROKER:　What about it that's not
20　quite right?
　　　　　A.　I don't think ██████████████████
　　　　　Q.　Is there a place within the source code one
24　could look to determine █████████████████

Page 123

1　　　MR. CURRAN:　Objection to form.
2　　　THE WITNESS:　Yes.
3　　　Q.　BY MR. BUROKER:　And where would that be
4　found?
5　　　A.　In ████████████████.
6　　　Q.　Is there a particular place within the
7　██████████████████
　　　　　MR. CURRAN:　Objection to form.
10　　　THE WITNESS: ████████████████
　██████████████████
13　　　Q.　BY MR. BUROKER: ███████████; is that right?
　　　　　MR. CURRAN:　Objection to form.
16　　　THE WITNESS:　Yes.
17　　　Q.　BY MR. BUROKER:　Underneath this, there's what
18　looks like a link, and it says, ███████████.
19　　　　　Does Viasat have a location where it keeps all
20　of the Viasat -- does Viasat have a location where it
21　keeps ██████████?
22　　　MR. CURRAN:　Objection.　Form.
23　　　THE WITNESS:　That is or was a link to the
24　██████████████████.

Page 124

1　　　Q.　BY MR. BUROKER:　Does that ████████
　██████████ have a name?
　　　　　A.　Yes.
4　　　MR. CURRAN:　Objection.　Form.
5　　　Q.　BY MR. BUROKER:　Do you know the name of it?
6　　　A.　No.
7　　　Q.　Do you still have ██████████████ at
8　Viasat?
9　　　MR. CURRAN:　Object to form.
10　　　THE WITNESS:　The link is to external
11　documentation.
12　　　Q.　BY MR. BUROKER:　Is that external
13　documentation available on the public internet or is it
14　a ████████████?
15　　　MR. CURRAN:　Objection to form.
16　　　THE WITNESS:　It was available on the public
17　internet when it was created.
18　　　Q.　BY MR. BUROKER:　Do you know if the ████████
　██████████ is still available on the public internet?
　　　　　MR. CURRAN:　Objection to form.
21　　　THE WITNESS:　It was, last time I checked, in
22　the last weeks.
23　　　MR. BUROKER:　That's a good time for a break,
24　if you'd like to take one.
25　　　MR. CURRAN:　All right.

Page 125

1　　　VIDEOGRAPHER:　Going off the record.　The time
2　is 2:22.
3　　　(Break.)
4　　　VIDEOGRAPHER:　We are back on the record.　The
5　time is 2:46.
6　　　Q.　BY MR. BUROKER:　I am going to mark another
7　exhibit.　It's a document with Bates No. VIASAT_00000618
8　through 629.　It's titled, ████████████
　██████████.
　　　　　(Exhibit 8 marked.)
11　　　　　Have you seen this document before?
12　　　A.　I have two copies.　So what's the page range
13　again?
14　　　Q.　618 through 629.
15　　　A.　Okay.　This appears to be an old revision of
16　our ██████████.
17　　　Q.　Do you know if there's a more recent revision
18　of the ██████████?
19　　　MR. CURRAN:　Objection to form.
20　　　THE WITNESS:　The current revision is D.
21　　　Q.　BY MR. BUROKER:　And you co-authored Revision
22　C; is that correct?
23　　　MR. CURRAN:　Objection to form.
24　　　THE WITNESS:　That's what is shown in the
25　Document Control table, yes.

32　(Pages 122 to 125)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER

Page 194

1    VIDEOGRAPHER:  Off the record.  The time is
2  5:57.
3       (Break.)
4    VIDEOGRAPHER:  Back on the record at 5:58.
5    Q.  BY MR. BUROKER:  Did you review either of the
6  two patents that are asserted against Viasat in
7  connection with this lawsuit?
8       MR. CURRAN:  Same caution to the witness.
9  Don't reveal any communications with counsel or anything
10  you've been asked to do litigation counsel in connection
11  with litigation.  Subject to that caution and
12  instruction, you can answer.
13       THE WITNESS:  No.
14    Q.  BY MR. BUROKER:  Thank you.
15       We have issues with the production in this
16  case and some other outstanding issues; so we will leave
17  the deposition open.  I know your counsel doesn't agree
18  with that, but subject to that, leaving the deposition
19  open.  We have no further questions at this time.
20       MR. CURRAN:  For the record, Viasat disagrees,
21  considers this deposition closed.
22       No questions for the witness.
23       VIDEOGRAPHER:  Thank you.
24       And concludes today's proceedings.  Off the
25  record at 5:59.

Page 195

1       (Whereupon the deposition concluded at 5:59
2  p.m.)
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 196

1       CERTIFICATE OF DEPONENT
2       I, FINN HUGHES, hereby certify that I have read the
3  foregoing pages of my deposition of testimony taken in
4  these proceedings on Friday, February 28, 2025 and, with
5  the exception of the changes listed on the next page
6  and/or corrections, if any, find them to be a true and
7  accurate transcription thereof.
8
9
10  Signed:  .......................
11  Name:       FINN HUGHES
12  Date:    .......................
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 197

1       ERRATA SHEET
2  Case Name:  SANDISK TECHNOLOGIES, INC., et al. versus
3       VIASAT, INC.
4  Witness:   FINN HUGHES
5  Date:     February 28, 2025
6  Page/Line  From              To
7  _____/_____  _____
8  _____/_____  _____
9  _____/_____  _____
10  _____/_____  _____
11  _____/_____  _____
12  _____/_____  _____
13  _____/_____  _____
14  _____/_____  _____
15  _____/_____  _____
16  _____/_____  _____
17  _____/_____  _____
18  _____/_____  _____
19  _____/_____  _____
20  _____/_____  _____
21  _____/_____  _____
22  Subscribed and sworn to before me this _____ day of
23  _____, 2025.
24  _____
25       FINN HUGHES

50  (Pages 194 to 197)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER

Page 198

1          CERTIFICATE OF COURT REPORTER
2
3          I, Sherry Yan (Registered Professional
4    Reporter, California CSR No. 14442), do hereby certify
5    that I took the stenographic notes of the foregoing
6    statement under oath/affirmation and that the transcript
7    thereof is a true and accurate record transcribed to the
8    best of my skill and ability.
9          I further certify that I am neither counsel
10   for, related to, nor employed by any of the parties to
11   the action in which the deposition was taken, and that I
12   am not a relative or employee of any attorney or counsel
13   employed by the parties hereto, nor financially or
14   otherwise interested in the outcome of the action.
15
16   Signed  .......................
17          Sherry Yan
18   Date:  Tuesday, March 11, 2025
19
20
21
22
23
24
25

TransPerfect Legal Solutions
212-400-8845 - Depo@TransPerfect.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

SANDISK TECHNOLOGIES, INC., et al.,

               Plaintiffs,

        v.

VIASAT, INC.,

               Defendant.

Case No.: 4:22-cv-4376-HSG

**ERRATA SHEET FOR THE
DEPOSITION OF FINN HUGHES**

## ERRATA SHEET FOR THE DEPOSITION OF FINN HUGHES

I, Finn Hughes, having reviewed the transcript of my Federal Rule of Civil Procedure Rule 30(b)(1) deposition taken February 28, 2025, hereby make the following changes pursuant to Federal Rule of Civil Procedure 30(e):

| Page | Line(s) | Now Reads | Should Read | Reason |
|------|---------|-----------|-------------|--------|
| 13 | 22 | background check | background chat | Transcript correction |
| 16 | 10 | my email at content | in my email to counsel | Transcript correction |
| 21 | 7 | a bundling Git | a bundle in git | Transcript correction |
| 29 | 15 | early | only | Transcript correction |
| 33 | 5 | don't use a portal | don't use our portal | Transcript correction |
| 41 | 20 | relates to | related to | Transcript correction |
| 47 | 22 | Objection to tomorrow | Objection to form | Transcript correction |
| 48 | 5 | It's post HTTP or maybe Git. | It's a POST HTTP or maybe GET. | Transcript correction |
| 48 | 21 | portal -- tools | portal dev tools | Transcript correction |
| 52 | 24 | Objection to storm | Objection to form | Transcript correction |
| 53 | 2 | it'd would common | it would be common | Transcript correction |

| 53 | 17, 18 | ██████████ ████████ | ██████ ███ | Transcript correction |
|---|---|---|---|---|
| 60 | 19, 22 | licensed | license | Transcript correction |
| 61 | 2, 4, 8, 14, 21 | licensed | license | Transcript correction |
| 62 | 4, 9, 15, 22, 25 | licensed | license | Transcript correction |
| 63 | 1, 9, 12, 24 | licensed | license | Transcript correction |
| 64 | 7-8 | to license request made | two license requests are made | Transcript correction |
| 64 | 23 | licensed | license | Transcript correction |
| 65 | 2, 7, 11 | licensed | license | Transcript correction |
| 67 | 12 | A. Yes. So is the first location | A. Yes. Q. So is the first location | Transcript correction |
| 68 | 20 | creates the what it | creates what it | Transcript correction |
| 71 | 3 | implementation | implementations | Transcript correction |
| 75 | 17 | IFE and W-IFE | IFC and W-IFE | Transcript correction |
| 75 | 25 | the IFE portal | the IFC portal | Transcript correction |
| 80 | 5 | They provide | We provide | Transcript correction |
| 82 | 6, 10, 11, 15 | licensed | license | Transcript correction |
| 84 | 22 | They have | They had | Transcript correction |
| 90 | 8-9 | how that deploy | how they deploy | Transcript correction |
| 91 | 5, 11 | licensed | license | Transcript correction |
| 93 | 21 | There is | These are | Transcript correction |
| 94 | 12 | ██ | ██ | Transcript correction |
| 94 | 15 | ██████ | ██████ | Transcript correction |
| 97 | 25 | It was a job, a script | It was a javascript | Transcript correction |
| 107 | 16, 20 | licensed | license | Transcript correction |
| 111 | 17, 21 | licensed | license | Transcript correction |
| 112 | 13 | ████ | ████ | Transcript correction |

| 112 | 15 | match in the content by [INAUDIBLE] onboard | match the content by the DRM server onboard | Transcript correction |
|-----|-----|-----|-----|-----|
| 115 | 23 | licensed | license | Transcript correction |
| 116 | 19 | ███████████ | ███████████ | Transcript correction |
| 119 | 4 | development of | development | Transcript correction |
| 121 | 10, 11 | ████████████ | ████████████ | Transcript correction |
| 121 | 16 | ████████████ | ████████████ | Transcript correction |
| 128 | 17 | licensed | license | Transcript correction |
| 132 | 24 | licensed | license | Transcript correction |
| 133 | 1, 10, 16 | licensed | license | Transcript correction |
| 135 | 6, 12, 20 | licensed | license | Transcript correction |
| 143 | 6 | mischaracterized | mischaracterizes | Transcript correction |
| 147 | 22 | licensed | license | Transcript correction |
| 148 | 4 | licensed | license | Transcript correction |
| 149 | 17 | Rev" | Rev 2 | Transcript correction |
| 154 | 14 | that's | there's | Transcript correction |
| 155 | 16, 23, 24 | Asterisks | Astras | Transcript correction |
| 155 | 19-20 | team name of my name as Asterisks | name of my team as Astras | Transcript correction |
| 157 | 9 | the/devices | the /devices | Transcript correction |
| 157 | 10 | ███████████ | ███████████ | Transcript correction |
| 158 | 2 | IFE | PFE | Transcript correction |
| 161 | 20 | and API -- and open API | in an API – an open API | Transcript correction |
| 164 | 22-23 | raised to help for comment, | raised, a helpful comment | Transcript correction |
| 167 | 20 | licensed | license | Transcript correction |
| 173 | 16 | try | tried | Transcript correction |
| 188 | 17, 22 | ███████████ | ███████████ | Transcript correction |
| 188 | 23 | ███████████ | ███████████ | Transcript correction |

| 189 | 17, 20 | ■ | ■ | Transcript correction |
| 191 | 3 | Kris, the name is | Kris's surname is | Transcript correction |

_____
Finn Hughes

| 31/03/2025 |

_____
Date