# Exhibit 16



HIGHLY CONFIDENTIAL- ATTORNEYS' EYES ONLY

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

- - - - - - - - - - - - - - -x

SANDISK TECHNOLOGIES,          :
INC., et al.,                  :
        Plaintiffs,          :   Civil Action No.
  v.                           :   4:22-CV-04376-HSG
VIASAT, INC.,                  :
        Defendant.           :
- - - - - - - - - - - - - - -x


HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY


Videotaped Deposition of Daniel Mark Newman, as

corporate representative of Viasat, Inc., and in his

personal capacity

Boston, Massachusetts

February 7, 2025

9:13 a.m.


Job No.: 010219

Pages: 1 - 165

Reported By: Alan H. Brock, RDR, CRR


TransPerfect Legal Solutions
212-400-8845 - Depo@TransPerfect.com

HIGHLY CONFIDENTIAL- ATTORNEYS' EYES ONLY

Page 2

```
 1            APPEARANCES
 2
 3   ON BEHALF OF PLAINTIFFS AND THE WITNESS:
 4      BRIAN M. BUROKER, ESQ.
 5      SHUO JOSHUA ZHANG, ESQ.
 6      GIBSON, DUNN & CRUTCHER LLP
 7      1700 M Street, N.W.
 8      Washington, D.C. 20036
 9      202.955.8500
10      bburoker@gibsondunn.com
11      szhang@gibsondunn.com
12
13   ON BEHALF OF DEFENDANT:
14      PATRICK D. CURRAN, ESQ.
15      QUINN EMANUEL URQUHART & SULLIVAN, LLP
16      111 Huntington Avenue, Suite 520
17      Boston, Massachusetts 02199
18      617.712.7100
19      patrickcurran@quinnemanuel.com
20
21
22
23
24
25
```

Page 3

```
 1      VANESSA BLECHER, ESQ.
 2      QUINN EMANUEL URQUHART & SULLIVAN, LLP
 3      295 Fifth Avenue
 4      New York, New York 10016
 5      212.849.7000
 6      vanessablecher@quinnemanuel.com
 7
 8
 9
10   ALSO PRESENT:
11      Colin Ward, Viasat
12      Deane Carstensen, Videographer
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 4

```
 1             C O N T E N T S
 2
 3   EXAMINATION OF DANIEL MARK NEWMAN       PAGE
 4      By Mr. Buroker             8
 5      By Mr. Curran            161
 6
 7
 8             E X H I B I T S
 9           (Attached to transcript.)
10   NEWMAN DEPOSITION EXHIBITS              PAGE
11   Exhibit 1  Plaintiff Sandisk Technologies,   11
12         Inc.'s Notice of Deposition of
13         Dan Newman Pursuant to Fed. R.
14         Civ. P. 30(b)(1)
15   Exhibit 2  Defendant Viasat, Inc.'s       11
16         Responses & Objections to
17         Plaintiffs' Notice of Rule
18         30(b)(6) Deposition of Defendant
19         Viasat, Inc.
20   Exhibit 3  Email from Dawson to ElDessouki  12
21   Exhibit 4  LinkedIn Profile of Dan Newman   28
22   Exhibit 5  ███████████████████
23         ██████, VIASAT_00005782 -
24         00005926
25   Exhibit 6  Blown-up Diagram           38
```

Page 5

```
 1   Exhibit 7  ████████, VIASAT_00008428 -   61
 2         00008447
 3   Exhibit 8  ████████████████,        81
 4         VIASAT_00008420 - 00008424
 5   Exhibit 9  ████████████████,        84
 6         VIASAT_00006471 - 00006537
 7   Exhibit 10 Viasat, Inc.'s Third Supplemental  109
 8         Objections & Responses to
 9         Plaintiffs' Second Set of
10         Interrogatories (Nos. 9-15)
11   Exhibit 11 Electronic Excel spreadsheet   119
12   Exhibit 12 Electronic Excel spreadsheet   127
13   Exhibit 13 Electronic Excel spreadsheet   128
14   Exhibit 14 Electronic Excel spreadsheet   129
15   Exhibit 15 Electronic Excel spreadsheet   129
16   Exhibit 16 Excel spreadsheet,         130
17         VIASAT_00019643
18   Exhibit 17 █████████████          133
19   Exhibit 18 ████████████,          134
20         VIASAT_00016414 - 00016424
21   Exhibit 19 ████████████████████
22         █████ VIASAT_00017820 -
23         00017821
24
25
```

2 (Pages 2 to 5)

HIGHLY CONFIDENTIAL- ATTORNEYS' EYES ONLY

Page 6

1  Exhibit 20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
2  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, VIASAT_00017822 -
3      00017824
4  Exhibit 21 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
5  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, VIASAT_00007559 -
6      0007580
7  Exhibit 22 ▮▮▮▮▮▮▮▮▮▮▮▮▮,    152
8      VIASAT_00007270 - 00007293

Page 7

1       February 7, 2025    9:13 a.m.
2           P R O C E E D I N G S
3       THE VIDEOGRAPHER:  We are now on the
4  record.  Today's date is February 7th, 2025.  The time
5  right now is 9:13 a.m. Eastern Standard Time.
6       This is the video deposition of Dan
7  Newman, in the matter of SanDisk Technologies, Inc.
8  versus Viasat, Inc., filed in the United States
9  District Court, Northern District of California,
10 Oakland Division, Case No. 4:22-cv-4376-HSG.
11      This deposition is taking place at 111
12 Huntington Ave., Boston, Massachusetts.
13      My name is Deane Carstensen.  I'm the
14 legal videographer, representing TransPerfect Legal
15 Solutions.
16      Would counsel please identify yourselves
17 and state whom you represent, beginning with the
18 questioning attorney.
19      MR. BUROKER:  Brian Buroker, from Gibson
20 Dunn, on behalf of SanDisk Technologies; and we also
21 have Josh Zhang, from my firm, with us today.
22      MR. CURRAN:  Patrick Curran, from Quinn
23 Emanuel, on behalf of defendant Viasat and the
24 witness.  Also with me today my colleague, Vanessa
25 Blecher, and Colin Ward, in-house counsel.

Page 8

1       THE VIDEOGRAPHER:  Thank you.  Our court
2  reporter today is Alan Brock, also representing
3  TransPerfect.  The court reporter will now swear in
4  the witness, and then we may proceed.
5           DANIEL MARK NEWMAN,
6  being first duly sworn or affirmed to testify to the
7  truth, the whole truth, and nothing but the truth, was
8  examined and testified as follows:
9              EXAMINATION
10 BY MR. BUROKER:
11    Q.  Good morning.  Could you please state your
12 name for the record.
13    A.  Daniel Mark Newman.
14    Q.  And where do you currently reside.
15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
16 ▮▮▮▮▮▮▮▮▮▮
17    Q.  And do you have a business address?
18    A.  I do.
19    Q.  And what is the business address that you are
20 assigned to?
21    A.  300 Nickerson Road, Suite 100, Marlborough,
22 Massachusetts 01752.
23    Q.  Have you ever had your deposition taken
24 before.
25    A.  No.

Page 9

1     Q.  Have you ever given testimony in a court
2  proceeding before.
3     A.  No.
4     Q.  I'm sure your counsel went over some of this
5  with you in advance, but to go over some ground rules
6  so we're on the same page here.
7         You understand that you were just given an
8  oath and you're testifying as if you were in court in
9  front of a judge and jury in this case.  Do you
10 understand that?
11    A.  Yes.
12    Q.  And I'll be asking you a series of questions
13 and you'll need to provide verbal answers so the court
14 reporter can take it down.  So nodding, shaking your
15 head, those things don't work.  Do you understand?
16 You'll try to give verbal answers to my questions?
17    A.  Yes.
18    Q.  I will do my best not to interrupt your
19 answers, and if I could ask you to do the same for my
20 questions.  Let me finish my question before you start
21 to answer.  Your counsel will want that, too, so he
22 can pose any objections he may have.
23        And again, I'll do the same with your
24 answers.  I'll let you finish before I start the next
25 one.

TransPerfect Legal Solutions
212-400-8845 - Depo@TransPerfect.com

Page 10

1         Does that make sense?
2      A.   Yes.
3      Q.   If you don't understand a question, please
4   let me know and I'll do my best to clarify.  Does that
5   make sense?
6      A.   Yes.
7      Q.   And there will be breaks throughout the day.
8   I just ask that you finish any pending question before
9   we take a break.  If you need to take a break, just
10  let me know, and I'm sure we can accommodate it.
11  There's no rough schedule on those, but we'll take
12  breaks when it seems convenient.  Does that make
13  sense?
14     A.   Yes.
15     Q.   Is there any reason, such as illness or
16  medication, that you can't give your full and accurate
17  testimony today?
18     A.   No.
19     Q.   Now, you understand that you're here to
20  testify on behalf of Viasat regarding a number of
21  topics.  Do you understand that.
22          MR. CURRAN:  And for the record, those
23  designations are subject to Viasat's objections to the
24  30(b)(6) notice.
25     A.   Yes, I understand that.

Page 11

1      Q.   Okay, and you're also here subject to a
2   deposition notice of you individually.  Do you
3   understand that?
4      A.   Yes.
5           MR. BUROKER:  So let me just mark an
6   exhibit.
7           (Exhibit 1 marked for identification.)
8      Q.   So what's been marked as Exhibit 1 is
9   Plaintiff SanDisk's Notice of Deposition of Dan Newman
10  Pursuant to Federal Rule of Civil Procedure 30(b)(1),
11  a several-page document.  Have you seen this before?
12     A.   I'm not sure.
13     Q.   But you do understand you're here to testify
14  in your capacity as an individual; correct.
15     A.   Yes.
16          MR. BUROKER:  And just for the record,
17  we'll go ahead and mark another exhibit.
18          (Exhibit 2 marked for identification.)
19     Q.   Exhibit 2 is a much larger document.  It's
20  Defendant Viasat's Responses and Objections to
21  Plaintiffs' Notice of Rule 30(b)(6) Deposition of
22  Defendant Viasat, Inc.  Have you seen this document
23  before.
24     A.   I'm not sure if I've seen this before.
25     Q.   Without revealing the substance of any

Page 12

1   communications you had with counsel, you do understand
2   that you're designated to testify on certain numbered
3   topics; is that correct.
4           MR. CURRAN:  I'm going to caution the
5   witness, don't reveal the substance of any
6   communications with in-house counsel or outside
7   counsel.  That question as it's phrased calls for a
8   yes or a no, and you can answer yes or no.
9      A.   Yes.
10          MR. BUROKER:  Let me mark another.
11          (Exhibit 3 marked for identification.)
12     Q.   What's been marked as Exhibit 3 is an email
13  communication on January 31st, 2025, from Hannah
14  Dawson to Ahmed ElDessouki regarding Topics --
15  including topics listed under your name, Dan Newman.
16  Have you seen this document before?
17     A.   I don't recall that I've seen every -- looked
18  at every one of these emails in here, no.
19     Q.   Have you looked at the top -- the top email
20  that's on the first page of the printout here that has
21  your name and then a list of topics under it?
22     A.   Yes, I have seen that.
23     Q.   And in addition to the topics that are listed
24  here, do you also understand that you're designated to
25  testify on behalf of Topic 82?  And you can look at

Page 13

1   Exhibit 2, if you need to, to see what Topic 82 is.
2   It's on Page 90 of that document.
3           MR. CURRAN:  Just for the record, any
4   designation on that topic is subject to objections and
5   responses -- I'm sorry, subject to Viasat's objections
6   and responses.
7           And I believe there was also a limitation
8   on scope for that designation, if I'm recalling,
9   counsel.
10          MR. BUROKER:  Let him....
11     A.   Okay, can you repeat the question, please?
12     Q.   Well, we received an email yesterday that
13  said for Topic 82, subject to and without waiving
14  Viasat's objections, Viasat will designate Dan Newman
15  to testify regarding the number of subscribers to
16  Viasat's residential Stream service as described in
17  VIASAT_00132725 -- I think that's a typo.  I think
18  it's 13725.  Does that make sense?
19     A.   Yes, it makes sense.
20     Q.   Do you understand you were designated to talk
21  about the number of subscribers to Viasat's
22  residential Stream service as described in an Excel
23  document that was produced, subject to your counsel's
24  objections?
25     A.   Yes.

Page 14

1   Q.  And these other topics that are on Exhibit 3,
2  you're designated to talk about those topics subject
3  to the parenthetical caveats on some of those topics.
4  Is that your understanding.
5   A.  Yes.
6   Q.  What did you do to prepare to testify on
7  behalf of Viasat as to the topics in Exhibit 3 plus
8  the additional topic we talked about, 82?
9       MR. CURRAN:  And just for the record, I
10  believe on Topic 71 there was an additional limitation
11  in an email last night.
12       MR. BUROKER:  71 on the email?  So at 2:51
13  a.m. today we received an email that said, "Per
14  Viasat's previous designation regarding Topic No. 71,
15  Dan Newman is prepared to testify concerning any
16  factual bases underlying the NIA's for the '667 patent
17  discussed in Viasat's second supplemental response to
18  Interrogatory No. 14."
19   Q.  Do you understand that you're here to testify
20  as to Topic 71 as qualified in that email from earlier
21  this morning?
22   A.  Yes.
23   Q.  So let me go back.  What did you do to
24  prepare to testify on the topics listed in Exhibit 3,
25  Topic 82 as we just discussed, and the qualified Topic

Page 15

1  71.
2       MR. CURRAN:  And I'll just counsel the
3  witness, don't reveal the substance of any
4  communications with counsel, in-house or outside
5  counsel.  Subject to that caution, you can answer.
6   A.  Okay.  You know, I've been the lead on this
7  project since the beginning, since, you know, previous
8  to today, probably starting in around 2012, and I've
9  been in Viasat for 30 years now.  So I've been working
10  in this area for a very long time.
11   Q.  Did you speak to any other Viasat employees
12  to prepare to testify on behalf of Viasat today.
13   A.  I guess I'm not sure I understand the
14  question.  I talk to other people at Viasat as part of
15  my work at Viasat.
16   Q.  To testify as a corporate representative,
17  people often ask other Viasat employees, in this case,
18  questions to make sure they understand all of the
19  facts related to a topic.  Did you undertake to do
20  that as part of the preparation for deposition.
21       MR. CURRAN:  Object to the form, and also
22  caution the witness don't reveal the substance of any
23  communications you had with counsel, in-house counsel
24  included.  Subject to that caution, if you can answer,
25  go ahead.

Page 16

1   A.  I did look at some material as it relates to
2  referenced items here.  But I'm still not entirely
3  sure what you're trying to -- trying to ask.
4   Q.  Okay.  I'll try again.  Do you understand
5  that you are here testifying on certain topics --
6  we've gone over them -- on behalf of the company,
7  Viasat.
8   A.  Yes.
9   Q.  And in order to give company testimony, did
10  you go and talk to any other company employees to gain
11  knowledge to be able to testify here today?  Other
12  than counsel; I'm not talking about counsel.
13       MR. CURRAN:  Objection, form.
14   A.  No, I'm testifying based on my own knowledge.
15   Q.  And did you meet with counsel also to prepare
16  for your testimony today?  That's yes or no.  I'm not
17  asking for the substance.
18   A.  Yes.
19   Q.  Approximately how long did you meet with
20  counsel to prepare to testify.
21       MR. CURRAN:  That question as it's phrased
22  calls for time.  You can answer as to time.  Don't
23  reveal the substance of any communications.
24   A.  We met for approximately one day.
25   Q.  And was that yesterday?

Page 17

1   A.  Yes.
2   Q.  In preparing -- I think you mentioned you
3  looked at some documents to prepare.  Is that correct?
4   A.  Yes.
5   Q.  And did any of those documents refresh your
6  recollection.
7       MR. CURRAN:  Object to form.
8   A.  No.
9   Q.  Did you review any source code.
10       MR. CURRAN:  Object to form.
11   A.  Yes, I looked at some source code.
12   Q.  Did you review any other documents that were
13  not source code.
14   A.  Yes.
15   Q.  What kinds of documents did you review.
16       MR. CURRAN:  Object to form.
17   A.  Well, one type of document is similar to this
18  one in front of me, where it covers my topics.
19   Q.  Did you review any technical documents that
20  describe how any of Viasat's systems operate, to
21  prepare to testify?
22       MR. CURRAN:  Objection, form, asked and
23  answered.
24   A.  Can you ask -- repeat the question, please?
25   Q.  Sure.  Did you review any documents that had

Page 78

1  commercial airline customers and their use of VCDS?
2         MR. CURRAN: Objection, form and scope.
3     A.  Yes, Viasat has a similar analysis of -- for
4  commercial aviation.
5     Q.  Do you recall what the results of the QOE
6  analysis was for commercial aviation.
7         MR. CURRAN: Objection, scope and form.
8     A.  Generally similar to this. It is
9  improvement.
10    Q.  Do you know if the percentage improvement is
11 similar to the data in the exhibit you're looking at
12 here, Exhibit 7.
13        MR. CURRAN: Objection, scope and form.
14    A.  That I don't know. I don't remember the
15 exact numbers.
16    Q.  Do you know what -- where that information is
17 stored, the QOE analysis that's been done for
18 commercial aviation.
19        MR. CURRAN: Objection, scope and form.
20    A.  Yes, I know where that is.
21    Q.  Where is that?
22    A.  That is in our analytics tool.
23    Q.  What is the name of the analytics tool?
24        MR. CURRAN: Objection, scope and form.
25    A.  The analytics tool is ▌

Page 79

1     Q.  Is there a particular report within ▌
2  that provides the QOE information about commercial
3  aircraft.
4         MR. CURRAN: Objection, scope and form.
5     A.  Yes, there's a particular dashboard for that.
6     Q.  Do you know the name of that dashboard.
7         MR. CURRAN: Objection, scope and form.
8     A.  I'm not sure as to the name of the dashboard,
9  no.
10    Q.  What other kinds of analytical tools --
11 strike that.
12        What other kinds of dashboards are
13 available in ▌ about the commercial aviation
14 products?
15        MR. CURRAN: Objection, scope and form.
16    A.  One other type of data is usage.
17    Q.  Anything else you can think of, other than
18 QOE and usage information?
19        MR. CURRAN: Objection, scope and form.
20    A.  One other type of data is hits and misses.
21    Q.  Does Viasat report out any information from
22 the ▌ tool to its airline customers.
23        MR. CURRAN: Objection, scope and form.
24    A.  It could be happening, but I'm not aware of
25 that.

Page 80

1     Q.  Does it report out any of this usage or QOE
2  information in documents internally.
3         MR. CURRAN: Objection, form and scope.
4     A.  Can you repeat the question?
5     Q.  The information that's in this tool, is it
6  ever extracted and put on, say, a PowerPoint
7  presentation or other kind of document and sent around
8  internally.
9         MR. CURRAN: Objection, form, scope, and
10 incomplete hypothetical.
11    A.  Yes, it's possible that that's been done.
12    Q.  Is that kind of information used in
13 conversations with the airlines about why they should
14 use your services as compared to any competitors'.
15        MR. CURRAN: Objection, scope and form.
16    A.  I don't know.
17    Q.  Are you involved in sales communications with
18 the airline customers.
19        MR. CURRAN: Objection, scope.
20    A.  Generally I'm not involved in those
21 conversations.
22    Q.  Who is the person that's in charge in --
23 strike that.
24        Who is the person that's in charge of
25 communicating with the airlines to try to sell your

Page 81

1  entertainment-related services?
2         MR. CURRAN: Objection, scope and form.
3     A.  I'm not sure who's in charge of that.
4         (Exhibit 8 marked for identification.)
5     Q.  What's marked as Exhibit 8 is a document,
6  VIASAT_8420 to 8424. The title of it is ▌
7  ▌. Do you recognize this document.
8     A.  I recognize some of the material in the
9  document, yes.
10    Q.  Is StreamOn an earlier name for the Stream
11 product?
12    A.  Yes, that was a name used in the past.
13    Q.  If you could look at the last page. There's
14 a diagram. Are you familiar with this diagram.
15        MR. CURRAN: Objection, scope.
16    A.  I am familiar with this diagram.
17    Q.  Is this an accurate depiction of the Viasat
18 system for delivery of content to residential users?
19        MR. CURRAN: Objection, scope and form.
20    A.  Yes, I think this is an accurate drawing for
21 a residential system.
22    Q.  In the bottom left there's -- well, the far
23 bottom left there's a picture of a laptop and a couple
24 of other devices. Do you see that?
25        MR. CURRAN: Objection, form.

Page 82

1  A. Yes, I see that.
2  Q. And to the right of that there's a little
3  cylindrical-shaped -- or cylindrical shapes. And
4  above that it says HCD/Cache. What is that depicting?
5       MR. CURRAN: Objection, form.
6  A. That's depicting attached storage.
7  Q. And then to the right there's something that
8  says " ▮▮▮▮▮▮▮▮▮▮▮▮▮ Do you see that.
9  A. Yes.
10      MR. CURRAN: Counsel, for the record,
11 we've been going an hour now.
12      MR. BUROKER: Yeah.
13 Q. In the home environment that we saw a picture
14 of earlier, where is the VCDS client physically? Is
15 it in that modem, or is it in the other part of the
16 picture we saw?
17      MR. CURRAN: Objection, form and scope;
18 also vague.
19 A. The VCDS client runs on the modem.
20 Q. Do all of the modems that residential
21 subscribers receive have the VCDS client installed in
22 them? Or is it only those residential users that have
23 signed up for the Stream service?
24      MR. CURRAN: Objection, form and scope.
25 A. I'm not sure about the difference between

Page 83

1  those two.
2  Q. But in the environment in which a residential
3  user is a subscriber and also has the Stream service,
4  their modem would have the VCDS client installed; is
5  that correct.
6       MR. CURRAN: Objection, form.
7  A. Yes, the VCDS client would be installed.
8  Q. And then the hub that we saw the picture of
9  would be where this HDD/Cache would be located. Is
10 that right? If you want to go back and look at the
11 picture, you can.
12 A. Which?
13 Q. It's Exhibit 7, Page 8444.
14      MR. CURRAN: I object to form.
15 Q. On 8444 there's a picture of what we
16 described as a modem and then a hub on the right
17 that's a dark gray color. Is the hub that's on the
18 right of Exhibit 7 where the HDD/Cache that's depicted
19 in Exhibit 8 would be located.
20      MR. CURRAN: Objection, form.
21 A. Yes.
22      MR. BUROKER: Okay, we can take a break.
23      THE VIDEOGRAPHER: We are now going off
24 the record. The time is 12:32.
25      (Recess for lunch.)

Page 84

1       THE VIDEOGRAPHER: We are now back on the
2  record. The time is 1:24 p.m.
3  Q. So we were looking at Exhibit 8. I just have
4  one more question about that figure that was on Page
5  8424, the last page. The reference in the ▮▮▮▮▮▮▮
6  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Do you see that?
7  A. Yes, I see that.
8  Q. What does "▮▮▮▮▮" mean?
9       MR. CURRAN: Objection, form.
10 A. "▮▮▮▮▮" is the name of the modem for the
11 residential service for the Viasat -- for the Viasat 2
12 satellite.
13 Q. And what does "▮▮▮▮▮" mean?
14 A. "▮▮▮▮▮" is the name of the modem for the
15 Viasat 1 satellite.
16 Q. How does -- how do you choose which modem to
17 provide to a residential customer?
18      MR. CURRAN: Objection, scope and form.
19 A. I don't know how we make those decisions.
20 Q. Do they have the same functionality with
21 regard to how the VCDS client operates?
22      MR. CURRAN: Objection, form.
23 A. Yes, they support the same functions.
24      (Exhibit 9 marked for identification.)
25 Q. Exhibit 9 is a document Bates-numbered

Page 85

1  VIASAT_6471 to 6537. Do you recognize this document?
2  A. No, I don't recognize having seen this
3  before.
4  Q. I'll ask you to look at a specific page and
5  see if you recognize that, on Page 6513. The question
6  is: Do you know whether this diagram accurately
7  represents the IP-TV solution for Viasat?
8       MR. CURRAN: Objection, scope and form.
9  A. I don't know the IPTV at this level of
10 detail.
11 Q. What level -- let me ask you this. Start
12 over again. How does the IPTV delivery for commercial
13 airline customers work at the level you understand it?
14      MR. CURRAN: Objection, scope and form.
15 A. Can you ask the question again?
16 Q. Yes. What are the different airline carriers
17 that offer IPTV to their commercial airline customers
18 through Viasat?
19 A. I'm sorry, can you say the first part again?
20 Q. Yeah. Which airlines offer Viasat's IPTV
21 solution to its customers?
22      MR. CURRAN: Sorry, objection, scope.
23 A. One airline is Delta.
24 Q. Any others?
25      MR. CURRAN: Same objection.

HIGHLY CONFIDENTIAL- ATTORNEYS' EYES ONLY

Page 162

1  A. Yes, this is for Stream customers.
2  Q. You were asked earlier about Disney+. If a
3  Viasat Internet customer without Stream watches a
4  Disney+ movie, does this movie need to be retrieved
5  over the Internet?
6       MR. BUROKER: Objection, form.
7  A. Yes, without Stream, they would be getting it
8  over the Internet.
9  Q. And if a Stream customer watches the same
10 Disney+ movie and that movie is not cached, does that
11 movie also need to be retrieved over the Internet?
12      MR. BUROKER: Objection, form.
13 A. That data needs to be retrieved over the
14 satellite, using bandwidth.
15 Q. And would the Stream customer use less
16 bandwidth than the non-Stream customer we just
17 discussed in those circumstances?
18      MR. BUROKER: Objection, form.
19 A. Can you repeat that question?
20 Q. Sure. In the scenario we've just discussed
21 for a Viasat Internet customer without Stream watching
22 a Disney+ movie and a Viasat Internet customer with
23 Stream watching the same Disney+ movie that was not
24 cached, would those customers be using the same
25 bandwidth?

Page 163

1  A. Yes, they'd use about the same amount of
2  bandwidth.
3       MR. CURRAN: No further questions.
4       MR. BUROKER: No further questions. Thank
5  you for your time.
6       THE VIDEOGRAPHER: This concludes today's
7  portion of the deposition. We are going off the
8  record at 5:25 p.m. The total run time of media used
9  was six hours, 15 minutes.
10      (The deposition concluded at 5:25 p.m.)

Page 164

1              ACKNOWLEDGMENT OF DEPONENT
2
3      I, Daniel Mark Newman, do hereby acknowledge
4  that I have read and examined the foregoing
5  testimony, and the same is a true, correct and
6  complete transcription of the testimony given by me,
7  and any corrections appear on the attached Errata
8  sheet signed by me.
9
10
11 _____ _____
12     (Date)                (Signature)

Page 165

1              CERTIFICATE OF COURT REPORTER
2
3      I, Alan H. Brock, Registered Diplomate
4  Reporter and Notary Public, the officer before whom
5  the foregoing deposition was taken, do hereby
6  certify that the foregoing transcript is a true and
7  correct record of the testimony given; that said
8  testimony was taken by me stenographically and
9  thereafter reduced to typewriting under my
10 supervision; that reading and signing was not
11 requested; and that I am neither counsel for nor
12 related to nor employed by any of the parties to
13 this case and have no interest, financial or
14 otherwise, in its outcome.
15     IN WITNESS WHEREOF, I have hereunto set
16 my hand and affixed my notarial seal this 9th day of
17 February, 2025.
18     My commission expires March 25, 2027.
19
20
21
22 _____
23 Alan H. Brock, RDR, CRR

SANDISK TECHNOLOGIES, INC., et al. v. VIASAT, INC.
4:22-CV-04376-HSG

## FEBRUARY 7, 2025 DEPOSITION OF DANIEL MARK NEWMAN

I, Daniel Newman, do hereby certify that I have read and understand the foregoing transcript and believe it to be true, accurate, and complete transcript of my testimony, subject to the list of changes below, if any.

| Page | Line | Now Reads | Should Read | Reason |
| --- | --- | --- | --- | --- |
| 35 | 19 | Devlin | Dublin | Transcription Error |
| 48 | 24 | PD | PED | Transcription Error |
| 52 | 17 | VCS | VCDS | Transcription Error |

*[signature]*
Daniel Newman

Dated: March 19, 2025

1