# Exhibit 17



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER

Page 1

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

_____
                                          )
SANDISK TECHNOLOGIES, INC., et al.,       )
                                          )
                                          )
              Plaintiffs,                 )
                                          )
        v.                                )
                                          )
                                          )
VIASAT, INC.,                             )C.A. No.
                                          )4:22-CV-
                                          )04376-HSG
              Defendant.                  )
_____)


HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY -
UNDER PROTECTIVE ORDER


VIDEO RECORDED IN-PERSON DEPOSITION OF DES O'SULLIVAN

Wednesday, February 26, 2025
at:  9:33 a.m.

Held at Regus, 28 Pembroke Street Upper, Dublin, D02
NT28, Ireland




JOB SY 010257

Reported by: Sherry Yan, RPR, California CSR 14442

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER

## Page 2

1
2    A P P E A R A N C E S :
3    On behalf of the Plaintiffs:
     GIBSON DUNN & CRUTCHER LLP
4    1700 M Street, N.W.
     Washington DC 20036-4504
5    Shuo Josh Zhang, Esq.
     szhang@gibsondunn.com
6    by: Brian M. Buroker, Esq.
     bburoker@gibsondunn.com
7    (202) 955-8500
8
9
10   On behalf of the Defendant and the Witness:
     QUINN EMANUEL URQUHART & SULLIVAN, LLP
11   111 Huntington Avenue, Suite 520
     Boston, MA  02199
12   Steven Cherny, Esq.
     stevencherny@quinnemanuel.com
13   by: Patrick Curran, Esq.
     patrickcurran@quinnemanuel.com
14   (617) 712-7100
15
     Alicia Lai, Esq.
16   295 5th Avenue
     New York, NY  10016
17   alicialai@quinnemanuel.com
     (212) 849-7000
18
19
20
21
22
23
     Also Present:
24
25   Frank Clare, Videographer

## Page 3

1                    I N D E X
2    WITNESS
     DES O'SULLIVAN    EXAMINATION BY         PAGE
3        Mr. Buroker          7
         Mr. Curran         169
4
5    EXHIBIT       DESCRIPTION          PAGE
     O'SULLIVAN
6     1    Plaintiffs' Notice of
           Deposition of Des O'Sullivan  10
7
      2    Defendant Viasat, Inc.'s
8          Responses & Objections       10
9     3    email from Hannah Dawson,
           dated January 31, 2025,
10         total pages, 16          11
11    4    Des O'Sullivan - Jonathan
           Putnam Discussion Notes,
12         total page, 1          16
13    5    LinkedIn Profile of
           Des O'Sullivan,
14         total page, 4          25
15    6    Press Releases printout:
           "ViaSat Acquires Arconics for
16         Added Aircraft Operations
           Capabilities,"
17         total pages, 5         70
18    7    Bates No. VIASAT_00016483
           - 00017758     74
19
20    8    Bates No. VIASAT_00014400
           00014415    76
21    9    Bates No. VIASAT_00015239    85
22
23
24
25

## Page 4

1                    INDEX
                     (cont...)
2
3    EXHIBIT       DESCRIPTION          PAGE
     O'SULLIVAN
4     10   Bates No. VIASAT_00132610
           - 00132611    86
5     11   Bates No. VIASAT_00060099
           - 00060190    88
6
7     12   Bates No. VIASAT_00006779
           - 00006804    105
8     13   Bates No. VIASAT_00007160
           - 00007177    121
9
10    13A  blownup diagram of Bates
           No. VIASAT_00007166    122
11    14   Bates No. VIASAT_00055833
           - 00055838    127
12
13    15   Bates No. VIASAT_00055981
           - 00055988
14         &    VIASAT_00055993
           &    VIASAT_00055997
15         &    VIASAT_00055998
           &    VIASAT_00055999
16         &    VIASAT_00056003
           &    VIASAT_00059221    135
17    16   Bates No. VIASAT_00060421
           - 00060428    138
18
19    16A  Bates No. VIASAT_00060429    138
20    17A  Bates No. VIASAT_00005782
           - 00006140    144
21    17B  blownup diagram of Bates
           No. VIASAT_00005798    144
22
23    18   printout of web page,
           "In-Flight Entertainment,"
           total pages, 5    154
24
25

## Page 5

1                    I N D E X
                     (cont...)
2
3    EXHIBIT       DESCRIPTION          PAGE
     O'SULLIVAN
4     19   web page printed in
           January 22nd of 2025.
5          "100 Years in the making:  The
           Evolution of in-flight
6          Entertainment - Viasat,"
           total pages, 6     155
7     20   Bates No. VIASAT_00102241
           - 00102275    157
8
9     21   Bates No. VIASAT_00006471
           - 00006537    165
10    22   "Viasat Sponsored Access
           Privacy Notice,"
11         total pages, 10     165
12    23   Bates No. VIASAT_00000618
           - 00000629    168
13
14
15
16
17
18
19
20
21
22
23
24
25

TransPerfect Legal Solutions
212-400-8845 - Depo@TransPerfect.com

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER

Page 6

1    VIDEOGRAPHER: Good morning. This is Media
2    No. 1 of the video deposition of Des O'Sullivan, in the
3    matter Sandisk Technology, Incorporated et al., versus
4    Viasat, Incorporated, in the United States District
5    Court for the Northern District of California, Oakland
6    Division, Case number, 4:22-CV-04376-HSG.
7        This deposition is being held at the Regus
8    Pembroke House in Dublin, Ireland, on February 26th,
9    2025, at approximately 9:33 a.m.
10       My name is Frank Clare, from the firm
11   TransPerfect Legal Solutions. I am the legal video
12   specialist. The court reporter is Sherry Yan, also from
13   TransPerfect.
14       Will counsel please identify yourselves and
15   state who you represent, beginning with the Noticing
16   Attorney.
17       MR. BUROKER: This is Brian Buroker, from
18   Gibson Dunn, on behalf of Sandisk.
19       We also have Josh Zhang, from Gibson Dunn, on
20   behalf of Sandisk.
21       MR. CURRAN: Patrick Curran, Quinn Emanuel, on
22   behalf of Viasat and the Witness.
23       With me are my colleagues Alicia Lai and
24   Steven Cherny.
25       VIDEOGRAPHER: The court reporter will

Page 7

1    administer the oath and examination may begin.
2    //
3    //
4    WHEREUPON,
5        DES O'SULLIVAN,
6    having been first duly sworn/affirmed, was examined and
7    testified as follows:
8
9        EXAMINATION
10   BY MR. BUROKER:
11       Q.  Good morning, sir. Could you state your
12   current residence address, please?
13       A.  My current residence address is ▮▮▮▮▮▮
14   ▮▮▮▮ ▮▮▮▮ in Dublin ▮.
15       Q.  And do you have a business address?
16       A.  Yes.
17       Q.  What's your current business address?
18       A.  Viasat Ireland at ▮▮▮▮▮▮▮▮▮ in
19   Dublin ▮.
20       Q.  Are you currently employed?
21       A.  Yes.
22       Q.  And who is your current employer?
23       A.  Viasat.
24       Q.  Do you know which Viasat entity is your
25   employer?

Page 8

1        A.  Viasat Ireland Limited.
2        Q.  Okay. Do you understand you are here to
3    testify on behalf of a party to a lawsuit that is called
4    Viasat, Inc.?
5        MR. CURRAN: Objection to form.
6        THE WITNESS: Yes.
7        Q.  BY MR. BUROKER: Have you ever given a
8    deposition before?
9        A.  No, I have not.
10       Q.  Have you ever testified in any legal
11   proceeding before?
12       A.  No.
13       Q.  So I am sure your counsel went over this with
14   you yesterday and maybe other times as well, that the
15   court reporter is going to be taking down my questions
16   and your answers, so let's try to do the best we can to
17   let each other finish before we start. Does that make
18   sense?
19       A.  Yes.
20       Q.  And you do have to give oral answers.
21   Sometimes there's a tendency, people will nod or shake
22   their head, but you do have to answer orally so we can
23   get a record of your answer. Do you understand that?
24       A.  I do.
25       Q.  I will do the best I can to ask clear

Page 9

1    questions, but if you don't understand the question,
2    please just let me know, and I will try to do my best
3    and improve on the question for you. Does that make
4    sense?
5        A.  Yes.
6        Q.  We'll be taking breaks throughout the day. If
7    you need a break, just let me know. There is obviously
8    restroom facilities and other circumstances going on.
9    If you need to take a break, please just let me know,
10   but I would ask that you answer the pending question
11   before you do that. Does that make sense?
12       A.  Yes.
13       Q.  Is there any reason, illness, medication, et
14   cetera as to why you can't give your best and accurate
15   testimony today?
16       A.  No.
17       Q.  And you do understand that your testimony
18   today is as if you were testifying in court in the
19   United States. Do you understand that?
20       A.  I understand that.
21       Q.  Okay. Thank you. Now, you are here to
22   testify on behalf of Viasat, Inc. on certain topics. Do
23   you understand that?
24       MR. CURRAN: Just note for the record that Mr.
25   O'Sullivan's been designated subject to our objections

3  (Pages 6 to 9)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER

Page 10

1    and responses and on particular topics for certain
2    subject matter areas.
3            THE WITNESS:  I understand.
4        Q.  BY MR. BUROKER:  Okay.  And you are also
5    designated -- strike that.  You're also asked to be
6    deposed in your individual capacity.  Did you understand
7    that --
8        A.  Yes --
9        Q.  -- paperwork, I am going to mark your
10   individual deposition notice as an exhibit.
11           (Exhibit 1 marked.)
12       So what's been marked as Exhibit 1 is the
13   Deposition Notice of you individually.
14           Did you see that before today?
15       A.  I don't believe so, no.
16       Q.  But you understand you are here to testify in
17   your individual capacity; correct?
18       A.  Correct.
19       Q.  Okay.  So what's been marked as Exhibit 2 is a
20   document that's entitled Defendant Viasat, Inc.'s
21   Responses & Objections to Plaintiffs' Notice of
22   Rule(30)(B)(6) Deposition of Defendant Viasat, Inc.
23           (Exhibit 2 marked.)
24       It's a very lengthy document.
25           Have you seen this document before?

Page 11

1        A.  I am not sure.  I may have seen parts of this
2    document.
3        Q.  So this document lists a number of topics and
4    then Viasat's objections and responses as your counsel
5    indicated.  So I might use this as a way to go after
6    which topics you are designated on behalf of; so keep
7    that handy.
8            And then I am going to give you another
9    exhibit.  So Exhibit 3 is an email from Hannah Dawson at
10   the Quinn Emanuel firm to myself and my colleagues at
11   our firm, indicating which topics the different
12   witnesses will be testifying to cover.
13           And on the second page, there's your name and
14   a list of topics.
15           Do you see that?
16           (Exhibit 3 marked.)
17       A.  Yes, I do.
18       Q.  And obviously I don't expect you to memorize
19   the numbers, but do you believe this is the list of
20   topics with the qualifications and subject to your
21   counsel's objections that you are here to testify on
22   behalf of Viasat about?
23       A.  As you say, I don't recall exactly the topic
24   numbers, but I believe so.
25       Q.  Okay.  Very good.  What did you do overall to

Page 12

1    prepare to testify on behalf of Viasat, Inc. as to these
2    topics?
3            MR. CURRAN:  I caution the witness don't
4    reveal the substance of any communications you had with
5    in-house counsel or outside counsel.
6            Subject to that caution, go ahead and answer.
7            THE WITNESS:  I've worked on Viasat's IFE
8    product for a number of years, and then in specific
9    preparation, I have taken some time to prepare myself
10   for today, meeting with our lawyers and going through
11   certain documents.
12       Q.  BY MR. BUROKER:  This may be because I am not
13   hearing you correctly.  Did you say Viasat's IV product
14   or IFE product?
15       A.  Wireless IFE.
16       Q.  Thank you.  I think you said IFE first.  Is
17   there a difference in your mind between IFE and wireless
18   IFE?
19           MR. CURRAN:  Objection to form.
20           THE WITNESS:  There is not.
21       Q.  BY MR. BUROKER:  What in general is Viasat's
22   IFE product?
23       A.  It provides entertainment content to airline
24   passengers.
25       Q.  When did you first start working on this IFE

Page 13

1    product?
2        A.  In 2020.
3        Q.  When did you first join Viasat?
4        A.  I joined Viasat in 2018.
5        Q.  What were you working on between 2018 and 2020
6    at Viasat?
7        A.  I was working as an Agile Coach on the
8    Aerodocs product.
9        Q.  What is the role of an Adjunct Coach?
10           MR. CURRAN:  Objection to form.
11           THE WITNESS:  So to clarify, it's Agile Coach.
12       Q.  BY MR. BUROKER:  Sorry, my apology.  Let me
13   just ask the question again.  What is the job of --
14   strike that.  What is the role of Agile Coach?
15       A.  It's primarily focused on improving a team's
16   ways of working and keeping abilities within a team.
17       Q.  Did you create any software during the time in
18   and you were an Agile Coach?
19           MR. CURRAN:  Objection to form.
20           THE WITNESS:  I did not personally create any
21   software during that time.
22       Q.  BY MR. BUROKER:  During your time at Viasat,
23   have you personally written any source code?
24       A.  I have not written source code at Viasat.
25       Q.  Do you manage people on your team who do write

4  (Pages 10 to 13)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER

## Page 14

1    source code?
2        MR. CURRAN:  Objection to form.
3        THE WITNESS:  Yes, I do.
4        Q.  BY MR. BUROKER:  From 2020 to the present,
5    what has your title been at Viasat?
6        A.  I have been a Software Development Manager,
7    and later my role has been the Director of Engineering
8    for Media & Entertainment.
9        Q.  I want to go back and finish what I was asking
10   before.  To prepare for your deposition on these topics
11   today, did you speak to anyone at Viasat as part of that
12   preparation process?
13       MR. CURRAN:  And same caution and instruction
14   as before.  Subject to that, you can answer.
15       THE WITNESS:  Yes, I did.
16       Q.  BY MR. BUROKER:  Aside -- well, who did you
17   speak to prepare for your testimony today?
18       A.  Within Viasat, I have spoken to Colin Ward.  I
19   have also spoken to Jonathan Putnam.  I have also spoken
20   with Finn Hughes.
21       Q.  Is Mr. Ward an attorney with Viasat?
22       A.  I believe his title is Chief Litigation
23   Officer.
24       Q.  How many times did you -- I don't want to get
25   into the substance of your communications with your

## Page 15

1    counsel -- how many times have you spoken to Mr. Ward
2    about your testimony today?
3        MR. CURRAN:  Caution the witness not to reveal
4    the substance of any communications with counsel.
5        And object to form.
6        THE WITNESS:  I can't recall exactly.  Maybe a
7    couple of occasions.
8        Q.  BY MR. BUROKER:  Did you also meet with
9    counsel to prepare for your deposition today?
10       A.  Yes, I have.
11       Q.  And when did you meet with them to prepare for
12   your deposition today?
13       A.  We spent some time, I believe three weeks ago
14   approximately, and some time yesterday.
15       Q.  Did you review any documents during your
16   preparation with counsel that refreshed your collection?
17       A.  No.
18       Q.  What was the purpose for speaking with Mr.
19   Putnam?
20       A.  One of the topics relates to IP processes and
21   procedures, and it required me to speak with Jonathan to
22   get context.
23       Q.  What is his current role at Viasat?
24       A.  I believe his current role is Viasat Director
25   of IP.

## Page 16

1        Q.  When did you speak to him?
2        A.  I spoke with him yesterday.
3        Q.  What did he tell you in relationship to the
4    topic about intellectual property policies?
5        MR. CURRAN:  Objection to form.
6        THE WITNESS:  He provided me with some
7    discussion notes.
8        Q.  BY MR. BUROKER:  Counsel handed me a sheet of
9    paper before the deposition.  It says:  "Des O'Sullivan
10   - Jonathan Putnam Discussion Notes."
11       Do you have that in front of you?
12       A.  Yes.
13       Q.  Can we mark that as an exhibit so we have it
14   for the record?
15       (Exhibit 4 marked.)
16       So what's been marked as Exhibit 4 is a
17   one-page document.
18       What is Exhibit 4?
19       A.  Exhibit 4 is the discussion notes from my
20   conversation with Jonathan yesterday.
21       Q.  Okay.  And these are notes that you took as
22   part of that conversation?
23       A.  Yes.
24       Q.  And so is it true that he told you that from
25   2016 to 2022 Viasat ███████████████

## Page 17

1    ████████████████?
2    ████?
3        A.  Yes.
4        Q.  So Viasat would ██████████████████
5    ████
6        Did he elaborate on that point beyond what you
7    wrote here?
8        A.  No, he did not.
9        Q.  Did he give any identification of companies or
10   entities that ████████████████████████
11   ████?
12       A.  He did not.
13       Q.  Do you know whether Viasat ███████████████
14   ████████████?
15       MR. CURRAN:  Objection.  Scope.
16       THE WITNESS:  That is not something I would
17   have knowledge of.
18       Q.  BY MR. BUROKER:  The next bullet says:
19   ████████████████████████████
20   ████
21   ████████████████████████
22       Is that something he told you?
23       A.  Yes.
24       Q.  Did he indicate what the Accused Products in
25   that comment were?

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER

### Page 18

```
 1          MR. CURRAN:  Objection to form.
 2          THE WITNESS:  He did not.
 3          Q.  BY MR. BUROKER:  Do you have an understanding
 4  of what the Accused Products in this litigation are?
 5          MR. CURRAN:  I caution the witness not to
 6  reveal the substance of communications with counsel, but
 7  subject to that caution, you can answer.
 8          THE WITNESS:  I have a general understanding,
 9  yes.
10          Q.  BY MR. BUROKER:  And what's your general
11  understanding?
12          MR. CURRAN:  Same caution.
13          THE WITNESS:  That in my role, it's to share
14  how the IFE product works today.
15          Q.  BY MR. BUROKER:  As part of your role in IFE,
16  do you oversee the delivery of content that's stored on
17  an airplane?
18          MR. CURRAN:  Objection.  Form.
19          THE WITNESS:  Could you just repeat the
20  question for me, please?
21          Q.  BY MR. BUROKER:  I'll just ask a slightly
22  different question.  When you use the term "IFE," does
23  that cover delivery of movies, TVs, et cetera, that's
24  prestored on the server on the airplane?
25          MR. CURRAN:  Objection to form.
```

### Page 19

```
 1          THE WITNESS:  Could you repeat that one more
 2  time for me, please?  The second question was slightly
 3  different.  Please.
 4          Q.  BY MR. BUROKER:  When you use the term "IFE,"
 5  does that cover the delivery of movies or TVs that is
 6  prestored on the server on the airplane?
 7          MR. CURRAN:  Same objection.
 8          THE WITNESS:  I would say the IFE product
 9  delivers media, library, snapshots onboard our S4 server
10  -- Viasat's S4 onboard aircraft.
11          Q.  BY MR. BUROKER:  Does your understanding of
12  the term "IFE" also include the delivery of live TV on
13  an aircraft?
14          MR. CURRAN:  Objection.  Form.
15          THE WITNESS:  No, that would be considered a
16  separate product.
17          Q.  BY MR. BUROKER:  What is the name of that
18  separate product?
19          A.  Internally at Viasat we refer to it as the
20  live TV product.
21          Q.  Is it also called IPTV internally?
22          A.  Yes, that can be used as well, yes.
23          Q.  Does the "IFE" term include delivery of
24  content to seatback devices?
25          MR. CURRAN:  Objection.  Form.
```

### Page 20

```
 1          THE WITNESS:  No, it does not.
 2          Q.  BY MR. BUROKER:  Does Viasat have an offering
 3  to deliver TVs, ██████████████████
 4  █████████████████████████?
 5          A.  No, the IFE product does not deliver movies
 6  and TV series to seatbacks currently.
 7          Q.  On US airlines that do offer delivery of
 8  movies and TVs to seatback devices that also have Viasat
 9  functionality, what, if any, relationship is there
10  between those two different systems?
11          MR. CURRAN:  Objection.  Form and scope.
12          THE WITNESS:  I could not answer generally
13  about US airlines.  It can vary per airline.
14          Q.  BY MR. BUROKER:  Is there an airline that
15  offers delivery of content to seatback devices but also
16  offers the consumer a wireless in-flight entertainment
17  option that is provided by Viasat?
18          MR. CURRAN:  Objection to form.
19          THE WITNESS:  Could you just repeat that for
20  me, please?
21          Q.  BY MR. BUROKER:  Is there an American -- not
22  the company American -- is there an US-based airline
23  that has Viasat wireless in-flight entertainment
24  services but also deliver content to seatback devices?
25          MR. CURRAN:  Objection.  Form.
```

### Page 21

```
 1          THE WITNESS:  That I could not say.  My
 2  knowledge would be limited to Viasat's wireless IFE
 3  product.
 4          Q.  BY MR. BUROKER:  Does Viasat's wireless IFE
 5  product -- strike that.  Does Viasat deliver live TV
 6  content to seatback devices?
 7          MR. CURRAN:  Objection.  Form.
 8          THE WITNESS:  Yes.
 9          Q.  BY MR. BUROKER:  Is that product considered
10  part of the IFE offering of Viasat?
11          MR. CURRAN:  Objection.  Form.
12          THE WITNESS:  No.  The wireless IFE and live
13  TV products are completely separate.
14          Q.  BY MR. BUROKER:  Who is responsible for the
15  live TV component at Viasat?
16          A.  Could you be more specific about responsible?
17  What responsibilities?
18          Q.  You are a Director of Engineering, Media &
19  Entertainment at Viasat; is that correct?
20          A.  Yes.
21          Q.  And your responsibilities in any way encompass
22  live TV?
23          MR. CURRAN:  Objection.  Form.
24          THE WITNESS:  As an Engineering Manager, I
25  look after a software development team that works on the
```

TransPerfect Legal Solutions
212-400-8845 - Depo@TransPerfect.com

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER

Page 38

1    connectivity?
2        MR. CURRAN: Objection. Form and scope.
3        THE WITNESS: The ability for passengers to
4    get connected to the internet whilst in-flight.
5        Q. BY MR. BUROKER: So prior to the acquisition
6    of Arconics, Viasat had an in-flight connectivity
7    offering; is that correct?
8        A. Yes.
9        Q. And its customers were asking whether it could
10   offer in-flight entertainment as an addition to the
11   in-flight connectivity; is that correct?
12       MR. CURRAN: Objection. Form and scope.
13       THE WITNESS: I wouldn't describe it that way.
14   I believe airlines were asking now that they have
15   in-flight connectivity, what other opportunities might
16   exist and seeking Viasat to explore those.
17       Q. BY MR. BUROKER: Did any of Viasat's customers
18   that were using in-flight connectivity offer
19   entertainment through seatback devices at that time?
20       MR. CURRAN: Objection. Form and scope.
21       THE WITNESS: That I do not know.
22       Q. BY MR. BUROKER: What are the reasons why
23   customers are interested in adding a wireless in-flight
24   entertainment option if they already have entertainment
25   during seatback devices?

Page 39

1        MR. CURRAN: Objection. Form and scope.
2        THE WITNESS: Do you mind repeating that for
3    me, please?
4        Q. BY MR. BUROKER: What are the reasons why
5    airline customers are interested in adding a wireless
6    in-flight entertainment option if they already offer
7    entertainment through seatback devices?
8        MR. CURRAN: Objection. Form and scope.
9        THE WITNESS: I couldn't speak to airline
10   customers' reasons or rationale.
11       Q. BY MR. BUROKER: What is your understanding of
12   what Viasat does to market the current W-IFE offering to
13   airline customers?
14       MR. CURRAN: Objection. Scope and form.
15       THE WITNESS: I can't say I have seen any
16   specific marketing material.
17       Q. BY MR. BUROKER: Do you believe there is an
18   advantage to airline customers to adding wireless
19   in-flight entertainment capabilities to its airplanes?
20       MR. CURRAN: Objection. Scope and form.
21       THE WITNESS: There can be, yes.
22       Q. BY MR. BUROKER: What are those advantages or
23   benefits?
24       MR. CURRAN: Same objections.
25       THE WITNESS: One advantage of the wireless

Page 40

1    IFE product is that it provides entertainment to
2    personal electronic devices onboard, which may make it
3    advantageous to narrow body aircraft that don't have
4    seatbacks, so it provides an entertainment option, but
5    otherwise there may not be one.
6        MR. CURRAN: Counsel, we have been going an
7    hour.
8        MR. BUROKER: Let me just ask couple real
9    quick ones.
10       Actually, let's take a break.
11       VIDEOGRAPHER: This is the end of Media No. 1,
12   in the deposition of Des O'Sullivan. We are off the
13   record at 10:33 a.m.
14       (Break.)
15       VIDEOGRAPHER: This is the beginning of Media
16   No. 2, in the deposition of Des O'Sullivan. We are on
17   the record at 10:45.
18       Q. BY MR. BUROKER: Who are the competitors of
19   Viasat for wireless in-flight entertainment offerings in
20   the United States?
21       MR. CURRAN: Objection. Form and scope.
22       THE WITNESS: I could not say. I am unaware.
23       Q. BY MR. BUROKER: I think if you look at the
24   topics. Topic 70 is "The market for each of the Accused
25   Products in the United States."

Page 41

1        I believe you are designated with respect to
2    IFE. Topic 70 is on Page 78.
3        Do you know what the market for the IFE
4    offering in the United States is?
5        MR. CURRAN: And counsel, just for the record,
6    I think as shown in Exhibit 3, the narrowed scope of
7    Topic 70 is "The market and demand for residential VCDS,
8    mobility VCDS, in-flight entertainment, and IPTV."
9        MR. BUROKER: For Topic 70?
10       MR. CURRAN: For Topic 70, and that's on Page
11   3 of Exhibit 3.
12       Q. BY MR. BUROKER: With that in mind, you are
13   designated with respect to the IFE portion of that.
14       Do you know what the market and demand for
15   in-flight entertainment and IPTV in the United States
16   is?
17       MR. CURRAN: Object to form.
18       THE WITNESS: Yes, I believe I can speak to
19   that.
20       Q. BY MR. BUROKER: What is your understanding of
21   the market and demand for in-flight entertainment in the
22   United States is?
23       A. ███████████████████

TransPerfect Legal Solutions
212-400-8845 - Depo@TransPerfect.com

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER



Page 42

1
2   Q.
3                                    ?
4   A.  One would be            .
5   Q.  And what about          ?
6   A.  One would be            .
7   Q.  And what's          ?
8   A.
9   Q.

11  A.  One would be            .
12  Q.  Uh-huh.

15  Q.

17  Q.

22  Q.
23        MR. CURRAN:  Objection.  Form and scope.
24        THE WITNESS:  That I do not know.
25        Q.  BY MR. BUROKER:

Page 43

1   -- excuse me.  Start over.
3        MR. CURRAN:  Same objection.
4        THE WITNESS:  That I could not say.
5        Q.  BY MR. BUROKER:  Are you familiar with an
6                          ?
7   A.                        --
8   Q.

10  A.

Page 44

1        MR. CURRAN:  Objection.  Form and scope.
2        THE WITNESS:  I would say,

8        MR. CURRAN:  Objection.  Form and scope.
9        THE WITNESS:

13       MR. CURRAN:  Objection.  Form and scope.
14       THE WITNESS:
15       Q.  BY MR. BUROKER:

19       MR. CURRAN:  Same objections.
20       THE WITNESS:          .
21       Q.  BY MR. BUROKER:  So Topic 72 relates to the
22  date you first offered services to customers or
23  prospective customers using Viasat's VCDS system in each
24  market segment, including mobility.
25       I believe you are designated on Topic 72 as

Page 45

1   the in-flight entertainment.  Does that sounds right?
2        MR. CURRAN:  For the record, we confirm Mr.
3   O'Sullivan is designated with respect to IFE on Topic
4   72.
5        THE WITNESS:  Yes.
6        Q.  BY MR. BUROKER:

10       MR. CURRAN:  Objection to form.
11       THE WITNESS:

15       Q.  BY MR. BUROKER:

17  A.

22       MR. CURRAN:  Objection to form.
23       THE WITNESS:  Do you mind repeat repeating
24  that for me, please?
25       Q.  BY MR. BUROKER:  You said that IFE product

TransPerfect Legal Solutions
212-400-8845 - Depo@TransPerfect.com

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER



Page 46

1
2  t; correct?
3      A.  Correct.
4      Q.
5
6
7
8      MR. CURRAN:  Objection to form.
9      THE WITNESS:
10
11
12      Q.  BY MR. BUROKER:
13
14
15
16      MR. CURRAN:  Objection to form and scope.
17      THE WITNESS:
18
19
20      Q.  BY MR. BUROKER:
21
22
23      MR. CURRAN:  Objection to form.
24      THE WITNESS:  Can you repeat that one more
25  time, please?

Page 47

1      Q.  BY MR. BUROKER:
2
3
4
5      MR. CURRAN:  Objection.  Form.
6      THE WITNESS:
7
8      Q.  BY MR. BUROKER:  So how does Viasat
9
10
11      MR. CURRAN:  Objection to form.
12      THE WITNESS:
13
14
15      Q.  BY MR. BUROKER:  And how --
16
17
18      MR. CURRAN:  Objection to form.
19      THE WITNESS:  That is outside of my role at
20  Wireless IFE Team, so I could not say exactly which
21  mechanisms are used.
22      Q.  BY MR. BUROKER:  Which team or persons are
23  responsible for
24
25      MR. CURRAN:  Objection to form and scope.

Page 48

1      THE WITNESS:  There are multiple teams who
2  work in that space.
3      Q.  BY MR. BUROKER:  Do you know who does that?
4      MR. CURRAN:  Objection.  Form and scope.
5      THE WITNESS:  Specifically, I do not.
6      Q.  BY MR. BUROKER:  Is your team responsible for
7                                              ?
8      MR. CURRAN:  Objection.  Form.
9      THE WITNESS:  No, we are not.
10      Q.  BY MR. BUROKER:  Do you know which team is
11  responsible                                    ?
12      MR. CURRAN:  Same objection.
13      THE WITNESS:  There are multiple teams in that
14  space, so I could not say specifically which team.
15      Q.  BY MR. BUROKER:  Is there a team responsible
16  for
17      MR. CURRAN:  Objection.  Form and scope.
18      THE WITNESS:  When you say "responsible,"
19  could you clarify what responsibilities you mean?
20      Q.  BY MR. BUROKER:  Let me back up.  When you
21  said you                                        ?
22
23      A.  Yes, it is.
24      Q.  Was there a
25

Page 49

1      MR. CURRAN:  Objection.  Form.
2      THE WITNESS:  There is a name for that
3  package.
4      Q.  BY MR. BUROKER:  And what is that name?
5      A.                              .
6      Q.  Do you know                        ?
7      A.  I actually do not.
8      Q.  Do you know whether there is other software on
9  the -- strike that.
10
11      MR. CURRAN:  Objection.  Form and scope.
12      THE WITNESS:
13
14      Q.  BY MR. BUROKER:  Do you know if there's other
15
16
17                                      ?
18      MR. CURRAN:  Objection to form.
19      THE WITNESS:
20
21
22      Q.  BY MR. BUROKER:  Is -- are you familiar with
23  the term IPTV application?
24      MR. CURRAN:  Objection to form.
25      THE WITNESS:  I am familiar with the term,

13 (Pages 46 to 49)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER



Page 50

1  yes.
2       Q.  BY MR. BUROKER:  Is ██████████████
   ██
4       MR. CURRAN:  Objection.  Form and scope.
5       THE WITNESS:  ████████████████
   ██
   ██  ███████████████████████
   ██
9       MR. CURRAN:  Objection.  Form.
10      THE WITNESS:  Yes, it is.
11      Q.  BY MR. BUROKER:  ██████████████
   ██  ████████████████████████
   ██
14      MR. CURRAN:  Objection.  Form.
15      THE WITNESS:  Yes, it is.
16      Q.  BY MR. BUROKER:  Do you know whether or not --
17  strike that.  ██████████████████
   ██  ███████████████
20      MR. CURRAN:  Objection.  Form and scope.
21      THE WITNESS:  I do not have knowledge.  It's
22  independent of the wireless IFE product, so it's
23  something I am not knowledgeable in.
24      Q.  BY MR. BUROKER:  ████████████
   ██  █████████

Page 51

1       A.  Yes.
2       Q.  You just don't know how that happens; is that
3  correct?
4       MR. CURRAN:  Objection.  Form.
5       THE WITNESS:  Yes.
6       Q.  BY MR. BUROKER:  Do you know ████████
   ██  █████████████████████
   ██  █████████
9       MR. CURRAN:  Objection.  Form.
10      THE WITNESS:  ███████████████████████
   ██  █████████████████████████████.
12      Q.  BY MR. BUROKER:  ██████████████
   ██  ████████████████████████████
   ██  ██████████████████████████
   ██  ███████████████████
   ██  █████████████ is that true?
18      MR. CURRAN:  Objection.  Form and scope.
19      THE WITNESS:  Could you just repeat that for
20  me, please?
21      Q.  BY MR. BUROKER:  █████████████
   ██  ████████████████████████
   ██  ████████████████████████
   ██  █████████████████?

Page 52

1       MR. CURRAN:  Objection.  Form and scope.
2       THE WITNESS:  Yes.
3       Q.  BY MR. BUROKER:  ██████████████
   ██
5       MR. CURRAN:  Same objections.
6       THE WITNESS:  ████████████████████
   ██  ████████████████████████
   ██  ████████████████████████
   ██  ███
11      Q.  BY MR. BUROKER:  On Topic 72, do you remember
12  -- strike that.  Do you know when the first live TV
13  offering was installed in the United States?
14      MR. CURRAN:  Objection.  Form.
15      THE WITNESS:  I do not have the date for that.
16      Q.  BY MR. BUROKER:  ██████████████
   ██  ████████████████████
   ██  ██  ███████████████████
   ██  ██  ██████████████████████
   ██  ████████████████████████
   ██  ██████████████████████
   ██  ██████████████████

Page 53

1       Q.  So Topic 73, you are designated with respect
2  -- Topic 73 says the date that you first -- I think
3  there's a word missing -- █████████████
   ██  ████████████████████████
   ██  █████████
8       MR. CURRAN:  Counsel, I think that the missing
9  word may be "offered."
10      MR. BUROKER:  "Offered"?
11      Okay.  Is there a clarification by email or
12  something?
13      MR. CURRAN:  Maybe.  I think maybe we can
14  confer to clarify.
15      MR. BUROKER:  Rather than install.  ██████
   ██  █  ██████████████████████
   ██  ████████████████████
19      MR. CURRAN:  Object to form.
20      THE WITNESS:  ████████████████████████
   ██  ████████████████████████████.
23      Q.  BY MR. BUROKER:  When you use the term "tail,"
24  that's a name used to describe an individual airplane;
25  is that correct?

14  (Pages 50 to 53)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER



Page 54

1    A.   That is correct.
2    Q.   Topic 81.  Again, you are designated with
3  respect to this topic with the limitation of IFE.  It
4  says:  "The services that you provide or offer to
5  purchasers or users of the Accused Products."
6
7
9        MR. CURRAN:  Objection.  Form.
10       THE WITNESS:
11       Q.  BY MR. BUROKER:
12
13       MR. CURRAN:  Same objection.
14       THE WITNESS:
15
16
17
19       Q.
20
21
22       MR. CURRAN:  Objection.  Form.
23       THE WITNESS:
24       Q.  BY MR. BUROKER:
25

Page 55

1        MR. CURRAN:  Objection.  Scope and form.
2        THE WITNESS:
3
4        Q.  BY MR. BUROKER:
5
6
7        MR. CURRAN:  Objection to form.
8        THE WITNESS:
9
10       Q.  BY MR. BUROKER:
11                                        ?
12       MR. CURRAN:  Objection.  Form.
13       THE WITNESS:
14
15       Q.  BY MR. BUROKER:
16
17
18
19       MR. CURRAN:  Objection to form.
20       THE WITNESS:
21
22
23       Q.  BY MR. BUROKER:
24
25                                        ?

Page 56

1        MR. CURRAN:  Objection.  Form.
2        THE WITNESS:
3
4
5        Q.  BY MR. BUROKER:
6
7        MR. CURRAN:  Objection, to form.
8        THE WITNESS:
9
10       Q.  BY MR. BUROKER:            ?
11       A.
12       Q.
13       A.
14       Q.
15
16
17
18
19
20
21
22
23
24
25

Page 57

1
2
3
4        Q.   Okay.  For Topic 83, the topic is advantages
5  and disadvantages of the Accused Products, including of
6  features or functionality accused of infringement, and
7  you are designated with regard to DRM.
8        Do you understand that?
9        A.  Yes, I do.
10
11
12       MR. CURRAN:  Counsel, just for the record,
13  Topic 83 is further narrowed on Page 3 of Exhibit 3.
14  With that clarification, I will object to
15  form.
16
17
18
19
20
21
22
23
24
25

15  (Pages 54 to 57)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER



Page 58

1
2
?
4        MR. CURRAN:  Objection to form.
5        THE WITNESS:
6
7                        in such a manner that they can be deployed
8   and operate independently onboard aircraft.
9        Q.  BY MR. BUROKER:
10
11                                    is that correct?
12       MR. CURRAN:  Objection to form.
13       THE WITNESS:
15                                 .
16       Q.  BY MR. BUROKER:  So we talked about earlier
17
18                                        ?
19       MR. CURRAN:  Objection.  Form.
20       THE WITNESS:  Could you clarify what you mean
21   by "new media"?
22       Q.  BY MR. BUROKER:  You talked earlier -- we
23   talked earlier about
24
25                        ; is that correct?

Page 59

1        MR. CURRAN:  Objection to form.
2        THE WITNESS:  I believe I said that
4
5                                      .
6        Q.  BY MR. BUROKER:  And so, again,
7
8
9        ?
10       MR. CURRAN:  Objection to form.
11       THE WITNESS:  I would say the
12
13
14
15
16
17
18       .
18       Q.  BY MR. BUROKER:  What are
19   you are referencing?
20       MR. CURRAN:  Objection to form.
21       THE WITNESS:  One aspect would be
22
23       .
23       Q.  BY MR. BUROKER:  What are the
25       A.  The primary one I am aware of would be a

Page 60

1
3        Q.  Are there
4                        ?
5        MR. CURRAN:  Form.
6        THE WITNESS:  There may be lower level
7   components which I am unaware at a level of technical
8   detail.
9        Q.  BY MR. BUROKER:  What is the function of the
10                  in the system?
11       MR. CURRAN:  Objection.  Form and scope.
12       THE WITNESS:
13
14
15                        .
16       Q.  BY MR. BUROKER:
17
18                        ?
19       MR. CURRAN:  Objection.  Form and scope.
20       THE WITNESS:
21
22          so I could not say specifically in detail how those
23   components do that.
24       Q.  BY MR. BUROKER:  Who is the third party you
25   are mentioning?

Page 61

1        A.
3        Q.
4        is that right?
5        MR. CURRAN:  Objection.  Form.
6        THE WITNESS:                        .
7        Q.  BY MR. BUROKER:
8
9        MR. CURRAN:  Objection.  Form.
10       THE WITNESS:  Yes, they were.
11       Q.  BY MR. BUROKER:  You mentioned
12
13
14       ?
15       MR. CURRAN:  Objection.  Form and scope.
16       THE WITNESS:  At a high level,
17
18
19
20
21
22
23       Q.  BY MR. BUROKER:  And does the device then use
24
25       MR. CURRAN:  Objection.  Form and scope.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER



Page 62

1    THE WITNESS:  The specifics of how that works
2  technically, I could not say.
3    Q.  BY MR. BUROKER:  Does anybody at Viasat know
4  the specifics of how ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇?
6    MR. CURRAN:  Objection.  Form and scope.
7    THE WITNESS:  Sitting here today, there is
8  nobody where, I would say we, intentionally chose a
9  third party solution for that and delegate to that.  So
10  I am unsure if anybody at Viasat could specifically
11  speak to that.
12    Q.  BY MR. BUROKER:  I think you mentioned some
13  advantages of the DRM system that you have employed.
14  Are there disadvantages of that DRM system?
15    MR. CURRAN:  Objection.  Form.
16    THE WITNESS:  ▇▇▇▇▇▇
▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇ ▇▇▇▇▇▇▇▇
22    Q.  BY MR. BUROKER:  ▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
24    MR. CURRAN:  Objection.  Form.
25    THE WITNESS:  An example might be where a

Page 63

1    ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇ing.
3    Q.  BY MR. BUROKER:  At a high level, ▇▇▇▇
▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇? Is that an example of what you are talking
6  about?
7    MR. CURRAN:  Objection.  Form.
8    THE WITNESS:  That could be an example, yes.
9    Q.  BY MR. BUROKER:  You said that the current
10  solution ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇ ▇▇▇▇▇▇r?
14    MR. CURRAN:  Objection to form.
15    THE WITNESS:  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇.
18    Q.  BY MR. BUROKER:  ▇▇▇▇▇▇▇▇
▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
24    MR. CURRAN:  Objection to form.
25    THE WITNESS:  ▇▇▇▇▇▇▇▇▇▇▇▇

Page 64

1    ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇ ▇▇▇▇▇▇▇▇▇
▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
18    MR. CURRAN:  Objection.  Form and scope.
19    THE WITNESS:  I am not sure I understand the
20  question.  If you could maybe rephrase it?
21    Q.  Let me rephrase it.  You said it was a
22  ▇▇▇▇▇▇▇.  What information, if any,
▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇?
24    MR. CURRAN:  Objection.  Form and scope.
25    THE WITNESS:  I can't answer that.  Being a

Page 65

1    ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
3    Q.  BY MR. BUROKER:  Is the ▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇ used today?
5    MR. CURRAN:  Objection.  Form and scope.
6    THE WITNESS:  ▇▇▇▇▇▇▇▇▇▇
▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇
9    Q.  BY MR. BUROKER:  When did it first start to be
10  ▇▇▇▇▇▇▇▇▇▇▇▇▇
11    MR. CURRAN:  Same objections.
12    THE WITNESS:  ▇▇▇▇▇▇▇▇▇▇▇
▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
18    Q.  Does that team report to you?
19    A.  The engineers within the team do, but other
20  roles and functions do not.
21    ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

TransPerfect Legal Solutions
212-400-8845 - Depo@TransPerfect.com

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER



Page 66

```
 1  ███████████████████████
 3      Q.  Did you have input into the decision to make
 4  that change?
 5      A.  There's no specific input that I had that I
 6  recall.
 7    ████████████████
 8  ████████████████████████████
 9  ████████████████████████████████
    ████████████████████████████████
    ████████████████████████
    ████████████████████████████
    ████████████████████████████
    ████████████████████████
    ████████████████████████████████
    ████████████████████████████
    ████████████████████████████████
    ████████████████████████████████
22      MR. CURRAN:  Objection.  Form and scope.
23      THE WITNESS:  ████████████████
    ████████████████
25      Q.  BY MR. BUROKER:  And that ██████
```

Page 67

```
 1  ██████████████████████████?
 2      MR. CURRAN:  Same objections.
 3      THE WITNESS:  ████████████████████████
    ████████
 5      Q.  BY MR. BUROKER:  And then the ████████
    ████████████████████; is that correct?
 7      MR. CURRAN:  Objection to form and scope.
 8      THE WITNESS:  That is correct.
 9      Q.  BY MR. BUROKER:  And that is ██████████
    ████████████████████████████
    ████████?
12      A.  Yes.
13      Q.  And that enables ████████████████████
    ██████████████████████████████
    ████████████████████████; is that correct?
16      A.  ████████████████████████████████████
    ████████████████████████████████████
    ██████████████.
20      Q.  Are there any other ████████████████.
    ████████████████████████████████
    ██████?
23      MR. CURRAN:  Objection.  Form and scope.
24      THE WITNESS:  ████████████████████████
    ████████████████████████████
```

Page 68

```
 1  ████████████████████.
 2      Q.  BY MR. BUROKER:  Topic 101 that you are
 3  designated on behalf of the company -- it's on Page
 4  108 -- is this the topic you spoke to Mr. Putnam?  Is
 5  Topic 101 the topic that you talked to Mr. Putnam about?
 6      A.  Yes.
 7      Q.  Okay.  So the information you have to offer on
 8  Topic 101 is contained in, what I believe is marked as
 9  Exhibit 4, the notes that you received or took based on
10  your conversation with Mr. Putnam; is that correct?
11      A.  That's correct.
12      Q.  Okay.  So you are also designated to talk
13  about Topic 14.  Look to the front.
14      Topic 14 is ████████████████████████
    ████████████████████████████████████
    ████████████████████████████████
    ████████████████████████████████
19      Do you see that?
20      A.  Yes, I do.
21      Q.  What, if anything, specifically did you do to
22  prepare for that Topic 14?
23      MR. CURRAN:  Objection.  Form.
24      I'm going to caution the witness not to reveal
25  the substance of any communications with in-house or
```

Page 69

```
 1  outside counsel, but subject to that instruction, you
 2  can answer.
 3      THE WITNESS:  There is nothing specific I
 4  would've done to prepare for this topic.
 5      Q.  BY MR. BUROKER:  What is Viasat's relationship
 6  with ████████████████████████████████
 7      A.  So Viasat ████████████████████████████
    ████████████████████████████████████.
 9      Q.  ████████████████████████████████
    ████████████████████████████
    ████████████
13      Q.  Do you know if ████████████████████████
    ████████████████████████████████████
    ██████████████████████████████?
16      A.  That I would not know.  ████████████████
    ██████████ so I am unaware. ████████████████
19      Q.  ████████████████████████████████████
    ████████████████████████████████
    ██████████████████████████████?
23      MR. CURRAN:  Objection.  Form.
24      THE WITNESS:  That was a long question.  Do
25  you mind repeating that, please?
```

18  (Pages 66 to 69)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER



Page 106

1   Q.  BY MR. BUROKER: ███████████████
██?
3        MR. CURRAN:  Objection to form.
4        THE WITNESS:  I wasn't involved in this
5   ████████████████████████████████████
█████████████████████████
█████████████████
9        Q.  BY MR. BUROKER:  If you look at -- so -- if
10  you look at this document, starting on Page 2 and going
11  on, there is a number of cells and rows, and then
12  there's an ID number along the left.
13        Do you see that?
14        A.  Yes.
15        Q.  So just for convenience of directing you.  So
16  there's a Row 9, which is on the bottom of Page 6781.
17        Are you there?
18        A.  I am just reviewing it.  One moment.
19        Okay, yes, Row 9.
20        Q.  The fourth column, there's text that's in --  I
21  am not sure what color that is -- not black, sort of
22  orange -- it says: ███████████████████
█████████████████████████████████████
23  ████████████████
25        Do you see that?

Page 107

1        MR. CURRAN:  Objection.  Form.
2        THE WITNESS:  Yes, I see that.
3        Q.  BY MR. BUROKER:  Does the Viasat IFE product
4   ███████████████████████████████████████
█████████████████████████████████?
6        MR. CURRAN:  Objection to scope and form.
7        THE WITNESS:  Sitting here today, I can't say.
8   ████████████████████████████████████████
██
10       Q.  BY MR. BUROKER:  What is █████████████?
11       A.  In the context of this document, because I
12  wasn't involved in the authoring, I can't say
13  specifically what the author of this meant ████████
████████████████████████████████████
████████████████████████████████████
███████████████████████████
17       Q.  BY MR. BUROKER:  Is ████████████████████
██████████████████████████████████████
███████████████████████████
20       MR. CURRAN:  Objection.  Scope.
21       THE WITNESS:  I would say ███████████████████
███████████████████████████████████████████
████████████████████████████████████
████████████████████████████████.
25       Q.  BY MR. BUROKER:  Do you know whether the

Page 108

1   ██████████████████████████████████████
███████?
3        MR. CURRAN:  Objection.  Form and scope.
4        THE WITNESS:  That ████████████████████
████████████████████████████████████████
████████████████████████
8        Q.  BY MR. BUROKER:  So if you turn to Page 787,
9   Row 42 at the top.
10       A.  Take a moment to review it.
11       Okay, yes.
12       Q.  Topic 19 of the 30(B)(6) specifically refers
13  to this, and I believe you were designated on this
14  topic.  I guess the question is, what does it mean when
15  it says the DRM system also:  "Uniquely identifies...
16  (personalizes) each device before any user is allowed to
17  stream content from the media server."
18       MR. CURRAN:  Objection to form, and also note
19  for scope that Topic 19 is:  "All facts related to Your
20  functionality that 'uniquely identifies...(personalizes)
21  each device before any user is allowed to stream content
22  from the media server."
23       And Mr. O'Sullivan was designated, subject to
24  Objections & Responses as to the specific identifiers
25  that are identified in the infringement contentions.

Page 109

1        You can answer.
2        THE WITNESS:  So as the IFE product functions
3   today, ████████████████████████████████████
████████████████████████████████████
5        Q. █████████████████████████████████?
6        MR. CURRAN:  Object to form.
7        THE WITNESS: ██████████████████████████.
8        Q.  BY MR. BUROKER: █████████████████?
10       MR. CURRAN:  Object to scope and form.
11       THE WITNESS:  To my knowledge, ███████████
████████████████████████████████████
████████████████████████████████
████████████████████████████████████
███████████████████████████████████
16       Q.  BY MR. BUROKER:  What are the ██████████
██████████████?
18       MR. CURRAN:  Object to scope and form.
19       THE WITNESS:  I am not knowledgeable on the
20  ████████████████████████████████████████
████████████████████████████████████████
██████████████████████████
24       Q.  BY MR. BUROKER:  Do you or your team have
25  access to ██████████████████████████████████

28  (Pages 106 to 109)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER



Page 110

1  ████████████████
2      MR. CURRAN:  Objection.  Form.  Scope.
3      THE WITNESS:  ████████.
4  ████████.
5      Q.  BY MR. BUROKER:  ████████████████
6  ████████████████████
7  ████████████████?
8      A.  Do you mind repeating that question, please?
9      Q.  ████████████
10 ████████████████████
11 ████████████████████
12 ████████████?
13     MR. CURRAN:  Objection.  Form and scope.
14     THE WITNESS:  ████████████
15
16     Q.  BY MR. BUROKER:  ████████
17 ████████
18     MR. CURRAN:  Objection.  Scope and form.
19     THE WITNESS:  ████████████
20 ████████████████
21 ████████████████
22 ████████████████
23 ████████████████
24 ████████.
25     Q.  ████████████

Page 111

1  ████████████████
2  ████████?
3      MR. CURRAN:  Objection.  Form.  Scope.
4      THE WITNESS:  In technical detail, I could not
5  say, but at a high level, ████████████████
6  ████████████
7  ████████████████
8  ████████████
9
10     Q.  BY MR. BUROKER:  Do you know what mechanism is
11 ████████████████
12 ████████
13     MR. CURRAN:  Objection.  Form and scope.
14     THE WITNESS:  The specifics of the mechanism,
15 I couldn't say.
16     Q.  BY MR. BUROKER:  Do you know ████████
17 ████████████
18 ████████████████
19     MR. CURRAN:  Objection.  Form.
20     THE WITNESS:  ████████████
21 ████████████████
22 ████████████████
23 ████████████████
24 ████████.
25     Q.  BY MR. BUROKER:  Does the device of that

Page 112

1  wireless in-flight entertainment ████████
2  ████████████
3  ████?
4      MR. CURRAN:  Objection.  Scope and form.
5      THE WITNESS:  ████████████
6  ████████
7      Q.  BY MR. BUROKER:  Do you know what those
8  ████████?
9      MR. CURRAN:  Same objections.
10     THE WITNESS:  I don't know all of the
11 ████████
12 ████████
13     Q.  BY MR. BUROKER:  ████████████
14 ████████
15     A.  ████████████
16 ████████████
17 ████████████████
18 ████████████████
19 ████████████████
20 ████████████████.
21     Q.  BY MR. BUROKER:  ████████████
22 ████████████████
23 ████████████████
24 ████████?
25     MR. CURRAN:  Objection.  Form and scope.

Page 113

1      THE WITNESS:  ████████████
2  ████████.
3      Q.  BY MR. BUROKER:  ████████████
4  ████████
5  ████?
6      MR. CURRAN:  Objection.  Form.
7      THE WITNESS:  ████████████
8  ████████████
9  ████████████
10 ████████
11     Q.  BY MR. BUROKER:  So is it your understanding
12 that Viasat's wireless in-flight entertainment system
13 ████████████████
14 ████?
15     MR. CURRAN:  Objection.  Scope and form.
16     THE WITNESS:  ████████████
17 ████████t.
18     Q.  BY MR. BUROKER:  In this document -- we've
19 just looked at Row 42.  I want to ask you about Row 44
20 to 45.  ████████
21
22     Do you know if that is correct?
23     MR. CURRAN:  Objection.  Scope and form.
24     THE WITNESS:  I don't know.  That's knowledge
25 at a level I would not have.

29 (Pages 110 to 113)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER



Page 114

1    Q.  BY MR. BUROKER: ████████████████
     ██████ ████████████████
4        MR. CURRAN:  Objection.  Scope and form.
5        THE WITNESS:  I could not say how that works.
6    Q.  BY MR. BUROKER:  Okay.  Row 46 says: ██████
     ████████████████████████████
     ████████████████████████████
     ████████████████████████████
11       Do you see that?
12   A.  Yes.
13   Q.  ████████████████████████████
     ████████████, et cetera?
16       MR. CURRAN:  Objection.  Scope.  Form.  And
17   mischaracterizes.
18       THE WITNESS: ██████████████
     ████████████████████
     ████████████████████████████
     ████████████████████████████
     ████████████████████████████

Page 115

1    Q.  BY MR. BUROKER:  Okay.  Look over to Row 67,
2    from Page 790 -- 6790.
3    A.  Sorry, what row?
4    Q.  Row 67.  This says: ██████████████
     ████████████████████████
     ████████████."
7        Do you know whether that was implemented?
8    A. ████████████████████████
     ██████.
10   Q.  Why not?
11       MR. CURRAN:  Objection to form and scope.
12       THE WITNESS: ████████████████
     ████████████████████████████
     ████████████████████████████
     ████████████████████████████
18   Q.  BY MR. BUROKER:  So the way this document is
19   set up there, there seems to be four columns, seems to be a
20   goal or a point, and then there is information about
21   whether that is achieved or not in the other columns.
22       Is that the way you are reading this?
23       MR. CURRAN:  Objection to form.
24       THE WITNESS:  Do you mind just repeating that
25   regarding the columns, just to make sure I follow?

Page 116

1    Q.  BY MR. BUROKER:  Yes.  So fourth column for
2    Row 67 says that "ViaSat can blacklist devices."
3        You are saying that's not correct; right?
4    A.  Correct.
5    Q.  And who came up with the list of points that
6    is in Column 4 of this document?
7        MR. CURRAN:  Objection.  Form.
8        THE WITNESS:  That I cannot say.
9    Q.  BY MR. BUROKER:  Go down to Row 70.  It says:
10   "████████████████████████████
     ████████████████████."
12       Do you know if that's correct?
13       MR. CURRAN:  Objection.  Scope and form.
14       THE WITNESS:
     ████████████████████.
16   Q.  BY MR. BUROKER:  Does it correctly outline how
17   it worked at any point in time?
18       MR. CURRAN:  Same objections.
19       THE WITNESS:  I don't believe so, no.
20   Q.  BY MR. BUROKER:  Do you know -- going back to
21   67 -- do you know ████████████████████
     ████████████████
23       Do you know if ████████████████████
     ████████████████████████████
     ████████████████████████████

Page 117

1        MR. CURRAN:  Objection to form.
2        THE WITNESS:  So how ████████████████████
     ██.
4        However, from my knowledge, I would say that
     ████████████████████████
     ████████████████████████████
     ████████████████████████████
     ████████████████████████████
     ██████████████████
11   Q.  BY MR. BUROKER:  So Row 70.  For example, does
     ████████████████████████████
     ██████████████████████████?
14       MR. CURRAN:  Objection.  Scope and form.
15       THE WITNESS:  I would not describe it as
     ████████████████████████████
     ████████████████████████████
     ████████████████████████████
     ██████████████
     ████████████████████████████
     ████████████████████████████
     ████████████████████████████

TransPerfect Legal Solutions
212-400-8845 - Depo@TransPerfect.com

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER



### Page 118

```
 1         Q.  BY MR. BUROKER:  And the explanation you just
 2    gave, where did you gain that information about ████████
 3    ███████?
 4         MR. CURRAN:  Objection.  Form and scope.
 5         THE WITNESS:  That would be through my number
 6    of years working with the wireless IFE Product
 7    Development Team at Viasat in building and maintaining
 8    software in the space, my experience working with the
 9    team.
10         Q.  BY MR. BUROKER:  Are there documents that
11    █████████████████████████████
12    ██████████████?
13         MR. CURRAN:  Objection.  Scope and form.
14         THE WITNESS:  ██████████████████
15    ████████████████████
16         Q.  BY MR. BUROKER:  Do you know whether Viasat
17    possesses those documents?
18         MR. CURRAN:  Same objections.
19         THE WITNESS:  I can't say.
20         Q.  BY MR. BUROKER:  So your knowledge is based on
21    ████████████████████████
22    ███████████████████████?
23         MR. CURRAN:  Objection.  Form.
24         THE WITNESS:  It's based on conversations and
25    working with the Viasat Wireless IFE Team.
```

### Page 119

```
 1         Q.  BY MR. BUROKER:  Does that team have
 2    ███████████████████████████████
 3    ████████████████████████████████
 4    ██████████
 5         MR. CURRAN:  Objection.  Scope and form.
 6         THE WITNESS:  Sitting here today, I can't say
 7    if there are specific documents people would've
 8    reviewed.
 9         Q.  BY MR. BUROKER:  So your understanding could
10    be incorrect about ████████████████████████
11    ████████████████████████████████?
12    ████████████
13         MR. CURRAN:  Objection.  Form and
14    mischaracterizes.
15         THE WITNESS:  I would say the system operates
16    as it's been designed, and it operates as I have
17    described it.
18         Q.  BY MR. BUROKER:  But you don't have any
19    documentation to be able to verify the way you've
20    described the system operates; is that true?
21         MR. CURRAN:  Objection.  Form.  And asked and
22    answered.
23         THE WITNESS:  I have not seen ████████████
24    ████████████
25         Q.  BY MR. BUROKER:  So if you wanted to know for
```

### Page 120

```
 1    sure ████████████████████████████████
 2    ████████████████████████████████
 3    ██████████████
 4    ████████████████████████
 5         MR. CURRAN:  Objection.  Scope and form.
 6         THE WITNESS:  ██████████████████
 7    ████████████████████████████
 8    ████████████████████████████████
 9    ████████████████████████████████
10    ████████████████████████████
11    ████████████████████████████████
12    ██████████████████████████████.
13    ████████████████████████████
14         Q.  BY MR. BUROKER:  And so you have seen what
15    information goes into the token API and what comes out;
16    is that correct?
17         MR. CURRAN:  Objection to form.
18         THE WITNESS:  I would say the ████████████
19    ████████████████████████████████
20    ████████████████████████████████████
21    ██████████████████████████
22         Q.  BY MR. BUROKER:  Is there documentation that
23    ████████████████████████████████?
24         MR. CURRAN:  Objection.  Scope and form.
25         THE WITNESS:  There may be, but sitting here
```

### Page 121

```
 1    today, I don't believe I have seen that documentation,
 2    but it's possible.
 3         Q.  BY MR. BUROKER:  So what was marked as Exhibit
 4    13 is a document with the Bates numbers VIASAT_7160 to
 5    7177.
 6         (Exhibit 13 marked.)
 7         Do you recognize this document?
 8         A.  I do not recognize this document.
 9         Q.  Are you familiar with any of the contents of
10    the document?
11         A.  No, as outlined in this document, I am not.
12         Q.  On Page 7162, toward the bottom, there's a
13    bullet that says:  "████████████████████."
14         Do you see that line?
15         A.  Yes, I see that line.
16         Q.  So this is:  "████████████████████████
17    ████████████████████████████
18    ████████████████████████████
19    █████████████"
20         Do you see that?
21         A.  Yes.
22         Q.  Do you know if that's correct, that ████████
23    ████████████████████?
24         A.  I was not aware of that.
25         Q.  If you could turn to the next page, Page 7163.
```

31 (Pages 118 to 121)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER



Page 122

1       Do you know whether this is an accurate
2  description and diagram ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
3  ▮▮▮▮▮▮▮▮?
4       MR. CURRAN: Objection. Scope.
5       THE WITNESS: I could not.
6     Q. BY MR. BUROKER: Turn to the page that ends
7  7166.
8     A. Yes.
9     Q. So when this printed, because of the blue and
10  the black, it's hard to see -- the black and white
11  printout so you can actually see.
12       I will represent to you that this is a black
13  and white version of this page, 7166.
14       MR. CURRAN: It's going to be 14?
15       MR. BUROKER: I can just call it 13A -- let's
16  call it 13A.
17     Q. Do you recognize this diagram?
18       And for the record, it's a blownup portion --
19  it's a portion of the page 7166, the portion -- the
20  diagram, portion without the text.
21       MR. CURRAN: Can we mark this one as 13A?
22       (Exhibit 13A marked.)
23     Q. BY MR. BUROKER: Do you recognize this diagram
24  that is 13A?
25     A. I don't recognize this diagram.

Page 123

1     Q. Do you see at the top, there is a ▮▮▮▮▮▮▮
2  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
3  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
4  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
5  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
6  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
7  ▮?
8       Do you see that?
9     A. Yes.
10     Q. Do you know whether this accurately depicts
11  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
12  ▮▮▮▮▮▮▮▮▮▮▮▮▮ in this diagram?
14       MR. CURRAN: Objection. Scope and form.
15       THE WITNESS: I could not say if it's accurate
16  or not.
17     Q. BY MR. BUROKER: Do you know whether or not
18  it's accurate in the sense ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
19  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
20  ▮▮▮?
21       MR. CURRAN: Objection. Scope and form.
22       THE WITNESS: Do you mind repeating that --
23     Q. BY MR. BUROKER: The diagram in the box, at
24  the top left, ▮▮▮▮▮▮▮▮▮▮▮▮.

Page 124

1       Do you see that?
2     A. Yes.
3     Q. Do you know whether -- strike that. Do you
4  know how, if at all, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
5  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
6  ▮▮▮▮▮▮▮▮▮▮▮▮?
8       MR. CURRAN: Objection. Scope and form.
9       THE WITNESS: Being a diagram I haven't seen
10  before, I am unsure what is meant by "▮▮▮▮▮▮▮▮" in
11  the context of this diagram.
12     Q. BY MR. BUROKER: Do you know who created
13  Exhibit 13?
14     A. I do not.
15     Q. Do you know that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
16  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮?
17       MR. CURRAN: Objection. Scope.
18       THE WITNESS: I have a general knowledge and
19  awareness ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
20  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
21     Q. BY MR. BUROKER: Do you know ▮▮▮▮▮▮▮▮▮
22  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
23       MR. CURRAN: Same objection.
24       THE WITNESS: My understanding is that the
25  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Page 125

1  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
2  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
3  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
4     Q. BY MR. BUROKER: Do you know ▮▮▮▮▮▮▮▮▮
5  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮?
6       MR. CURRAN: Objection. Scope.
7       THE WITNESS: I do not. ▮▮▮▮▮▮▮▮▮▮▮
9     Q. BY MR. BUROKER: If you look at the next to
10  last page of the document of Exhibit 13. There's a Page
11  7176. It's that page you're looking at, "Handover
12  Sequence Diagram."
13       Do you see that?
14     A. Yes.
15     Q. Do you know whether this is an accurate
16  description of the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
18       MR. CURRAN: Objection to form and to scope.
19       THE WITNESS: I do not. This is a diagram I
20  don't believe I have seen before, and there's a level of
21  detail here to which I typically wouldn't operate at; so
22  I can't say.
23       MR. BUROKER: The top, under the heading, it
24  says, "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."

32 (Pages 122 to 125)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER

Page 126

1    Do you know what that means?
2        MR. CURRAN: Objection. Scope.
3        THE WITNESS: I do not know what that refers
4    to.
5        Q.  BY MR. BUROKER: And do you know what the box
6    that's to the right of that, ▓▓▓▓▓▓ what that
7    refers to?
8        MR. CURRAN: Same objection.
9        THE WITNESS: In the context of this diagram,
10   having not authored it, I can't say for certain what the
11   author means, but generally, ▓▓▓▓▓▓▓▓▓▓
12   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
13       Q.  BY MR. BUROKER: And is ▓▓▓▓▓▓▓▓▓▓▓
14   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓?
15       MR. CURRAN: Same objection.
16       THE WITNESS: That's correct.
17       Q.  BY MR. BUROKER: Another document.
18       A.  Could I request a short break --
19       Q.  We're going to another document, so it's a
20   good time; we can take a break.
21       VIDEOGRAPHER: This is the end of Media No. 4,
22   in the deposition of Des O'Sullivan.  We are off the
23   record at 2:36 p.m.
24       (Break.)
25       VIDEOGRAPHER: This is the beginning of Media

Page 127

1    No. 5, in the deposition of Des O'Sullivan.  We are on
2    the record at 2:53 p.m.
3        MR. CURRAN:  Just for the record, Viasat will
4    designate the transcript as Highly Confidential -
5    Attorneys' Eyes Only - Under Protective Order.
6        MR. BUROKER:  Marking as Exhibit 14.
7        So what's been marked as Exhibit 14 is
8    VIASAT_00055833 to 838, titled Live TV Overview.
9        (Exhibit 14 marked.)
10       Q.  Do you recognize this document?
11       A.  Yes, I recognize this document.
12       Q.  What is this document?
13       A.  It is a high level overview of the live TV
14   product.
15       Q.  Do you know who created this document?
16       A.  This document was created by ▓▓▓▓▓▓▓▓
17   ▓▓▓▓▓▓▓▓▓▓▓
18       Q.  Do you know when approximately this document
19   was created?
20       A.  That I do not know.
21       Q.  Was it provided to you and other members of
22   your team, this document?
23       A.  It has been provided to me and my team.  It
24   was made available for more general overview purposes,
25   but, yes, I have seen this document.

Page 128

1        Q.  Do you know the purpose for which this
2    document was created?
3        A.  To my knowledge, it is to provide overview to
4    internal staff at Viasat.  It's a large company, new
5    people come into the company, so it's -- that was
6    primarily created to give people internal at Viasat a
7    high level overview of the product.
8        Q.  The second page, ends in the Bates No. 834,
9    says: "The ▓▓▓▓▓▓▓▓▓▓▓."
10       Are these ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
11   ▓▓▓▓▓▓▓▓▓▓▓?
12       MR. CURRAN: Objection. Scope.
13       THE WITNESS: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
14   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
15       Q.  BY MR. BUROKER: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓
16   ▓▓▓▓▓▓▓▓▓▓▓
17       MR. CURRAN: Objection to form.
18       THE WITNESS: ▓▓▓▓▓▓▓▓▓ is a Viasat
19   member of staff.
20       Q.  BY MR. BUROKER: Does she report to you?
21       A.  She does not.
22       Q.  Is she the "Product Owner" of the IPTV
23   product?
24       MR. CURRAN: Objection to form.
25       THE WITNESS: I cannot say what her specific

Page 129

1    title is, but she works in the product management space.
2        Q.  BY MR. BUROKER: Do you work with ▓▓▓▓
3    ▓▓▓▓▓▓▓▓▓
4        A.  Yes, I do.
5        Q.  On which products or services do you work with
6    ▓▓▓▓▓▓▓?
7        A.  I work with ▓▓▓▓▓▓ on both the wireless IFE
8    product and live TV product.
9        Q.  Okay.  So the next page for IPTV Product
10   Overview, it says it: "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
11   ▓▓▓▓▓▓; that's correct?
12       MR. CURRAN: Objection. Scope.
13       THE WITNESS: That is correct.
14       Q.  BY MR. BUROKER: And then the last major
15   bullet says: "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
16   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓.
17       Based on this information, does this give you
18   an idea of the timeframe in which this document was
19   created?
20       MR. CURRAN: Objection. Form and scope.
21       THE WITNESS: It does not.
22       Q.  BY MR. BUROKER: Turn over to the next page
23   that ends in 836.
24       A.  Could you repeat that?  Page 8 --
25       Q.  836.

33 (Pages 126 to 129)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER



**Page 142**

10  Q.  BY MR. BUROKER:  So what's been labeled as 16A
11  is the diagram, but we think didn't printed at the end
12  there, there's a big X.
13      So there's a diagram of ▇ in the bottom
14  right that's in yellow.
15      Do you see that?
16      MR. CURRAN:  Objection to tomorrow.
17      THE WITNESS:  I see ▇ yes.
18  Q.  BY MR. BUROKER:  Which part of these
19  components is -- which of these components in this
20  diagram are on the ground versus ones that are on the
21  plane?
22      MR. CURRAN:  Objection.  Scope and form.
23      THE WITNESS:  I did not author this diagram
24  nor if I reviewed it, so I can't say what that author
25  intended specifically by this diagram.

**Page 143**

1   Q.  BY MR. BUROKER:  I thought I heard you say the
2   ▇ was on the ground; is that correct?
3       MR. CURRAN:  Objection to form.
4       THE WITNESS:  Independent of this diagram,
5   ▇
6   .
7   Q.  BY MR. BUROKER:  Do you know whether ▇
8
9       MR. CURRAN:  Objection.  Scope and form.
10      THE WITNESS:  In the context of this diagram,
11  I am not sure what's meant, but ▇
12  ▇
13  ▇
14  ▇ .
15  Q.  BY MR. BUROKER:  So above ▇
16  ▇ .
17      Do you know what that is?
18      MR. CURRAN:  Objection.  Scope and form.
19      THE WITNESS:  ▇
20  ▇
21  Q.  BY MR. BUROKER:  Do you know when it says,
22  below that, "▇
23  ▇
24  ▇
25  ▇?

**Page 144**

1       MR. CURRAN:  Objection.  Scope.  Form.
2       THE WITNESS:  The specific mechanism, I am not
3   aware of.
4   Q.  BY MR. BUROKER:  Okay.  This is going to be
5   17.
6       We will make this 17A.
7       So Exhibit 17A, Bates No. 5782 to 6140, the
8   big thick one.
9       (Exhibit 17A marked.)
10      And then 17B is a blowup of a diagram that
11  comes out of the Bates No. 5798.  Hopefully it's a
12  little more readable.
13      (Exhibit 17B marked.)
14      The question is whether you've seen -- first
15  of all, we will start with 17.  Have you ever seen this
16  ▇
17  ▇ document before?
18      A.  So I may have seen elements of this document,
19  but in its entirety in this format, I can't say I have
20  seen this whole document.
21      Q.  Do you know for what purpose this document was
22  created?
23      A.  I do not.  I have not seen it.  I have not
24  seen this document in this format before, so no, I do
25  not.

**Page 145**

1       Q.  Did you create any of the contents of this
2   document?
3       A.  There is a lot in this, so I'd probably have
4   to go through it in detail to answer that definitively.
5   I do not believe so, but to be honest, I'd have need to
6   go through it in its entirety to say categorically, but
7   at a high level view, I don't believe I authored
8   anything in this document.
9       Q.  So there's an entire section on the W-IFE
10  Overview.
11      Do you know who created that section?
12      MR. CURRAN:  Objection to form and scope.
13      THE WITNESS:  I cannot say who authored that
14  section.  Certain terms, I am not familiar with.  So
15  this may go back some time.  I can't say specifically
16  who authorized it or when.
17      Q.  BY MR. BUROKER:  So the front cover says
18  "▇."
19      Do you know when this document was last
20  updated?
21      MR. CURRAN:  Objection.  Scope and form.
22      THE WITNESS:  I do not know when it was last
23  updated.
24      Q.  BY MR. BUROKER:  So if you look at the diagram
25  that's been pulled out and marked as 16A.  There is a

TransPerfect Legal Solutions
212-400-8845 - Depo@TransPerfect.com

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER



Page 146

1   ██████████████████████████
2   ██████████████.
3        Do you see that?
4   A.  I'll just check.
5        It's 17A?  Not 16A?
6   Q.  Correct, 17A.  Thank you.
7        MR. CURRAN:  I'll note for the record on 17A.
8   It's a large blowup of a portion of the graphic that is
9   on page ending in 5798, that bit is cut off, including
10  in the box marked as S4 server, on the right hand
11  margin.
12       MR. BUROKER:  The version I have isn't cut
13  off.  Sorry.
14  Q.  Let me just ask you quickly about a few of the
15  things in the box.  There is --██████████████████
16  ████████████████████████████
17  █████████
18       Do you see that?
19  A.  Yes, I do.
20  Q.  Do you know what that is?
21       MR. CURRAN:  Objection.  Scope and form.
22       THE WITNESS:  I am aware██████████
23  ████████████████████████████, but
24  what specifically it does or how we implement to this, I
25  cannot say.

Page 147

1   Q.  BY MR. BUROKER:  At a high level, what is
2   ███████████████████████
3        MR. CURRAN:  Objection to scope and form.
4        THE WITNESS:  ████████████████
5   ████████████████████ but
6   beyond that, I don't have any knowledge of how and where
7   the team use it.
8   Q.  BY MR. BUROKER:  At the bottom left-hand part
9   of██████████████████████████
10  ██████████████████████████
11  ████████
12       Do you see that?
13  A.  I think the text may be illegible on --
14  Q.  A little blurry.  Do you know what that is?
15       MR. CURRAN:  Object to the form.
16       Sorry, could I have back -- I couldn't track
17  it.
18  Q.  BY MR. BUROKER:  It's the bottom left folder
19  ██████████████████████████
20  ██████████████████████████
21  █████████████████████
22  ████████████████████
23  █████████████████"
24       Do you know what that is?
25       MR. CURRAN:  Object to the characterization of

Page 148

1   the text in 17A.
2        THE WITNESS:  I do not know the intent of that
3   is.
4   Q.  BY MR. BUROKER:  Do you know whether or not
5   ███████████████████████?
6        MR. CURRAN:  Objection.  Form and scope.
7        THE WITNESS:  I would describe it as the
8   ████████████████████████
9   ██████████████.
10  Q.  BY MR. BUROKER:  Is that███████████████
11  ██████████████████████████
12  ██████████████████████
13       MR. CURRAN:  Objection.  Scope and form.
14       THE WITNESS:  Would you mind just repeating
15  that question, please?
16  Q.  BY MR. BUROKER:  There is██████████████
17  ████████████████; is that
18  correct?
19  A.  Yes,██████████████████████
20  ███.
21  Q.  Do you know if██████████████████████
22  ███████████████████████
23  ████████████████████?
24       MR. CURRAN:  Scope and form.
25       THE WITNESS:  I am not aware of the technical

Page 149

1   specifics, but the IFE and live TV services onboard an
2   aircraft are separate and distinct.  So the storage of
3   any content onboard to be delivered to passengers is
4   separate, but the technical specifics of that, I would
5   not be able to describe.
6   Q.  BY MR. BUROKER:  Is there a team within Viasat
7   that's in charge of████████████████████?
8        MR. CURRAN:  Objection.  Scope and form.
9   Q.  BY MR. BUROKER:  Is your team responsible for
10  ████████████████████████████
11  ██████████████████████████
12       MR. CURRAN:  Objection.  Scope and form.
13       THE WITNESS:  The wireless IFE onboard
14  components are responsible for████████████████
15  ████████d.
16  Q.  BY MR. BUROKER:  Do you know whether
17  ██████████████████████████
18  ████████████████████████
19  ████████████████████?
20       MR. CURRAN:  Objection.  Scope and form.
21       THE WITNESS:  I'd ask if you could repeat that
22  question, please?  Make sure I understand.
23  Q.  BY MR. BUROKER:  Maybe this diagram might
24  help.  You see████████████████████████
25  ████████████

38  (Pages 146 to 149)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER



Page 150

1 ▮▮▮▮▮▮▮▮▮▮
2 ▮▮▮▮▮▮▮▮▮▮▮▮▮
3 ▮▮▮▮▮▮▮▮▮▮▮▮▮
4 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
5 ▮▮▮▮▮▮▮.
6     Do you see that?
7     MR. CURRAN:  I'll object to the form.
8     THE WITNESS:  So I see a folder with an arrow
9 coming from ▮▮▮▮▮▮▮▮▮▮
10 ▮
11     You are referring to separate folder in this
12 diagram?
13     Q.  BY MR. BUROKER:  Right.  So there is arrows.
14 That folder has two arrows coming into it, the one
15 that's at the ▮▮▮▮▮▮▮▮.
16     One of the arrows comes from a folder that has
17 an arrow that's ▮▮▮▮▮▮▮▮▮▮; right?  Do
18 you see that?
19     A.  I see that.
20     Q.  And the other arrow comes down, and there's a
21 pathway that goes down to ▮▮▮▮▮▮▮ --
22     A.  Yes, I see that.
23     MR. CURRAN:  Object to form and
24 characterization of the arrow.
25     Q.  BY MR. BUROKER:  And one mechanism for

Page 151

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮
2 ▮▮▮▮▮; is that true?
3     MR. CURRAN:  Objection.  Form and scope.
4     THE WITNESS:  ▮▮▮▮▮▮▮▮▮▮
5 ▮▮▮▮▮▮▮▮▮▮▮
6 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
7 ▮▮▮▮▮▮▮▮▮▮▮▮
8     Q.  And today, ▮▮▮▮▮▮▮▮▮▮▮
9 ▮▮▮▮▮▮▮▮▮▮▮▮▮
10 ▮▮▮▮▮; is that correct?
11     A.  ▮▮▮▮▮▮▮▮▮▮▮▮.
12 ▮
13     Q.  ▮▮▮▮▮▮▮▮▮▮▮▮▮
14 ▮▮▮▮▮▮▮▮▮▮▮▮▮
15 ▮
16 ▮▮▮▮▮▮
17     MR. CURRAN:  Objection.  Scope and form.
18     THE WITNESS:  To my knowledge, I would not say
19 the ▮▮▮▮▮▮
20     Q.  BY MR. BUROKER:  ▮▮▮▮▮▮▮▮
21 ▮▮▮▮▮▮▮▮▮▮▮▮▮
22 ▮▮▮▮▮▮▮▮▮▮▮▮▮
23 ▮▮▮
24     MR. CURRAN:  Objection.  Scope and form.
25     THE WITNESS:  ▮▮▮▮▮▮▮▮▮▮▮

Page 152

1 ▮▮▮▮▮▮▮▮▮▮
2 ▮▮▮▮▮▮▮▮▮▮▮
3 ▮▮▮▮▮▮▮▮▮▮▮
4 ▮
5 ▮
6     MR. CURRAN:  Objection to scope and to form.
7     THE WITNESS:  ▮▮▮▮▮▮▮
8 ▮▮▮▮▮▮▮▮▮▮▮
9 ▮▮▮▮▮▮▮▮▮▮▮▮▮
10 ▮▮▮▮▮▮▮▮▮▮▮▮▮
11 ▮▮▮▮▮▮▮▮▮▮▮▮▮
12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
13 ▮▮▮▮▮▮▮▮▮▮▮
14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
16 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
17 ▮▮▮▮▮▮▮▮▮▮▮.
18     Q.  BY MR. BUROKER:  ▮▮▮▮▮▮▮
19 ▮▮▮▮▮▮▮▮▮▮▮
20 ▮▮▮▮▮▮▮▮▮; right?
21     MR. CURRAN:  Objection.  Scope and form.
22     THE WITNESS:  The mechanism, how that works,
23 and live TV, I couldn't say specifically; so I can't say
24 if that is an accurate description or not.
25     MR. BUROKER:  So do you know or not know

Page 153

1 ▮▮▮▮▮▮▮▮▮▮▮
2 ▮▮▮▮▮▮▮▮▮▮▮▮▮
3 ▮▮▮▮▮▮▮▮?
4     MR. CURRAN:  Objection.  Asked and answered.
5 Scope and form.
6     THE WITNESS:  Live TV content is managed and
7 stored separately onboard from the wireless IFE content.
8 The mechanisms by how that's done, I am not in the
9 detail of, but based on my knowledge and experience,
10 they are managed separately.
11     Q.  BY MR. BUROKER:  ▮▮▮▮▮▮▮▮
12 ▮▮▮▮▮▮▮▮▮▮▮▮?
13     MR. CURRAN:  Objection.  Scope.  Form.
14     THE WITNESS:  ▮▮▮▮▮▮▮▮▮▮▮
15 ▮▮▮▮▮▮▮▮.
16     MR. CURRAN:  We've been going --
17     MR. BUROKER:  Let's take a quick break.
18     VIDEOGRAPHER:  This is the end of Media No. 5,
19 in the deposition of Des O'Sullivan.  We are off the
20 record at 3:50 p.m.
21     (Break.)
22     VIDEOGRAPHER:  This is the beginning of Media
23 No. 6, in the deposition of Des O'Sullivan.  We are back
24 on the record at 4:04 p.m.
25     Q.  BY MR. BUROKER:  We will mark another exhibit.

39 (Pages 150 to 153)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
UNDER PROTECTIVE ORDER

Page 170

1  in-flight, and I find it entertaining, does that make it
2  part of Viasat's in-flight entertainment product?
3      A.  No, it does not.
4      Q.  No further questions.
5          MR. BUROKER:  We can go off the record.
6          VIDEOGRAPHER:  This concludes today's
7  testimony given by Des O'Sullivan.  Six of the original
8  media files will be retained by TransPerfect.  We are
9  off the record at 4:41 p.m.
10         (Whereupon the deposition concluded at 4:41
11 p.m.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 171

1              CERTIFICATE OF DEPONENT
2      I, DES O'SULLIVAN, hereby certify that I have read
3  the foregoing pages of my deposition of testimony taken
4  in these proceedings on Wednesday, February 26, 2025
5  and, with the exception of the changes listed on the
6  next page and/or corrections, if any, find them to be a
7  true and accurate transcription thereof.
8
9
10 Signed:  .......................
11 Name:      DES O'SULLIVAN
12 Date:   .......................
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 172

1                  ERRATA SHEET
2  Case Name:  SANDISK TECHNOLOGIES, INC., et al. versus
3          VIASAT, INC.
4  Witness:   DES O'SULLIVAN
5  Date:      February 26, 2025
6  Page/Line  From        To
7      ___/___  _____
8      ___/___  _____
9      ___/___  _____
10     ___/___  _____
11     ___/___  _____
12     ___/___  _____
13     ___/___  _____
14     ___/___  _____
15     ___/___  _____
16     ___/___  _____
17     ___/___  _____
18     ___/___  _____
19     ___/___  _____
20     ___/___  _____
21     ___/___  _____
22 Subscribed and sworn to before me this _____ day of
23 _____, 2025.
24 _____
25     DES O'SULLIVAN

Page 173

1          CERTIFICATE OF COURT REPORTER
2
3      I, Sherry Yan (Registered Professional
4  Reporter, California CSR No. 14442), do hereby certify
5  that I took the stenographic notes of the foregoing
6  statement under oath/affirmation and that the transcript
7  thereof is a true and accurate record transcribed to the
8  best of my skill and ability.
9          I further certify that I am neither counsel
10 for, related to, nor employed by any of the parties to
11 the action in which the deposition was taken, and that I
12 am not a relative or employee of any attorney or counsel
13 employed by the parties hereto, nor financially or
14 otherwise interested in the outcome of the action.
15
16 Signed  .......................
17          Sherry Yan
18 Date:  Friday, March 7, 2025
19
20
21
22
23
24
25

44  (Pages 170 to 173)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| SANDISK TECHNOLOGIES, INC., et al.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>VIASAT, INC.,<br><br>                    Defendant. | Case No.: 4:22-cv-4376-HSG<br><br>**ERRATA SHEET FOR THE**<br>**DEPOSITION OF DES O'SULLIVAN** |

**ERRATA SHEET FOR THE DEPOSITION OF DES O'SULLIVAN**

I, Des O'Sullivan, having reviewed the transcript of my Federal Rule of Civil Procedure Rule 30(b)(1) deposition taken February 26, 2025, hereby make the following changes pursuant to Federal Rule of Civil Procedure 30(e):

| Page | Line(s) | Now Reads | Should Read | Reason |
|---|---|---|---|---|
| 13 | 16 | keeping abilities | capabilities | Transcript correction |
| 28 | 1 | phasing | phrasing | Transcript correction |
| 32 | 7-8 | is overall following | has overall responsibility | Transcript correction |
| 35 | 16 | process' | process was | Transcript correction |
| 46 | 18 | provision | provisioned | Transcript correction |
| 53 | 13-14 | we can confer | meet and conferred | Transcript correction |
| 65 | 1 | party | party; | Transcript correction |
| 66 | 10, 12, 13, 18, 20, 21, 24, 25 | licensed | license | Transcript correction |
| 67 | 5, 9, 11, 19, 20 | licensed | license | Transcript correction |
| 68 | 9, 13 | licensed | license | Transcript correction |
| 77 | 10 | I was not in | I was not involved in | Transcript correction |

1

| 81 | 6 | [INAUDIBLE] | update | Transcript correction |
|-----|-----|------------------------|------------------------|------------------------|
| 87 | 8 | remit | role | Clarification |
| 107 | 22 | licensed | license | Transcript correction |
| 115 | 16 | addition | additional | Transcript correction |
| 142 | 7 | had a signed session | had an assigned session | Transcript correction |
| 156 | 19 | remit | role | Clarification |

_____                                  11 March 2025
Des O'Sullivan                                           Date

2