# Exhibit 18



TransPerfect - Legal Solutions

Page 1

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

SANDISK TECHNOLOGIES, INC.,
et al.,

       Plaintiffs,     Case No. 4:22-CV-04376-HSG

       vs.

VIASAT, INC.,

       Defendant.

_____

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

VIDEOTAPED DEPOSITION OF JOSH SLATER

COSTA MESA, CALIFORNIA

FEBRUARY 6, 2025

REPORTED BY PATRICIA Y. SCHULER, CSR NO. 11949

JOB NO: 10086



```
                                              Page 2
 1            UNITED STATES DISTRICT COURT
 2        FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3                  OAKLAND DIVISION
 4
 5   SANDISK TECHNOLOGIES, INC.,
     et al.,
 6
           Plaintiffs,    Case No. 4:22-CV-04376-HSG
 7
               vs.
 8
     VIASAT, INC.,
 9
           Defendant.
10   _____
11   VIDEO RECORDED DEPOSITION OF JOSH SLATER, commencing
12   at the hour of 9:32 a.m., Thursday, February 6, 2025,
13   at Gibson, Dunn & Crutcher LLP, 3161 Michelson Drive,
14   Irvine, California, 92612, before Patricia Y. Schuler,
15   Certified Shorthand Reporter, in and for the State of
16   California.
17
18
19
20
21
22
23
24
25
```

```
                                              Page 3
 1   APPEARANCES
 2   FOR THE PLAINTIFFS:
 3        GIBSON, DUNN & CRUTCHER LLP
 4        BY:  ROBERT VINCENT, ESQ.
 5        2001 ROSS AVENUE
 6        SUITE 2100
 7        DALLAS, TEXAS 75201
 8        (214) 698-3281
 9        RVINCENT@GIBSONDUNN.COM
10   FOR THE DEFENDANT:
11        QUINN EMANUEL URQUHART & SULLIVAN, LLP
12        BY:  KEVIN GYUSHIKI JANG, ESQ.
13        50 CALIFORNIA STREET
14        22ND FLOOR
15        SAN FRANCISCO, CALIFORNIA  94111
16        (415) 875-6486
17        KEVINJANG@QUINNEMANUEL.COM
18   ALSO PRESENT:
19        BRANDON DELGADO, VIDEOGRAPHER
20
21
22
23
24
25
```

```
                                              Page 4
 1              I-N-D-E-X
 2   WITNESS: JOSH SLATER
 3   EXAMINATION                          PAGE
 4   MR. VINCENT                           7
 5
 6              E-X-H-I-B-I-T-S
 7   MARKED FOR IDENTIFICATION             PAGE
 8   Exhibit 1    LinkedIn Profile for Joshua    13
              Slater
 9
     Exhibit 2    Document entitled              56
10              "                        "
                    ,  Bates-stamped
11              Viasat_00005782 through 5926
     Exhibit 3    Image from Exhibit 2           60
12              Bates-stamped
                Viasat_00005798
13
     Exhibit 4    Document entitled              113
14              "                        "
                Bates-stamped
15              Viasat_00006779 through 6804
     Exhibit 5    Document Bates-stamped         123
16              Viasat_00008738 through 8848
17   Exhibit 6    Document entitled "
                                              ,"
18                   , Bates-stamped
                Viasat_00007343 through 7394
19
     Exhibit 7
20              "                        ,"
                Bates-stamped
21              Viasat_00006471 through 6537
22
23
24
25
```

```
                                              Page 5
 1          E-X-H-I-B-I-T-S (CONTINUED)
 2   MARKED FOR IDENTIFICATION             PAGE
 3   Exhibit 8    Document entitled "
                                              "
 4                    ,
                Bates-stamped
 5              Viasat_00007395 through 7428
 6   Exhibit 9    Document entitled
 7
     Exhibit 10   Document entitled
 8                                             "
 9              Viasat_00016439 through 482
10   Exhibit 11   Document entitled
                                              ,"
11              Bates-stamped
                Viasat_00017759 through 767
12   Exhibit 12   Document entitled "
                                              "
13
                Bates-stamped
14              Viasat_00000618 through 629
15
16
17
18
19
20
21
22
23
24
25
```

2 (Pages 2 to 5)

Page 6

1  COSTA MESA, CALIFORNIA; THURSDAY, FEBRUARY 6, 2025
2  9:32 a.m.
3  THE VIDEOGRAPHER: Good morning. We are
4  now on the record. Today's date is February 6,
5  2025. The time is 9:32 a.m. Pacific time. This
6  deposition is -- this is the video deposition of
7  Josh Slater in the matter of Sandisk Technologies,
8  Inc., et al. versus Viasat, Inc. filed in the
9  United States District Court for the Northern
10 District of California, Oakland Division, Case
11 No. 4:22-CV-04376-HSG.
12      This deposition is taking place at 3161
13 Michelson Drive, Suite 300, Irvine, California,
14 92612.
15      My name is Brandon Delgado. I'm the
16 videographer representing TransPerfect Legal
17 Solutions.
18      Would counsel present please identify
19 yourselves and state whom you represent, beginning
20 with the questioning.
21      MR. VINCENT: Robert Vincent from Gibson
22 Dunn on behalf of plaintiff Sandisk.
23      MR. JANG: Kevin Jang from Quinn Emanuel
24 on behalf of Viasat, Inc.
25      THE VIDEOGRAPHER: Will the reporter

Page 7

1  please introduce themselves and swear in the
2  witness.
3
4           JOSHUA SLATER,
5  having been administered an oath, was examined and
6           testified as follows:
7
8           EXAMINATION
9  BY MR. VINCENT:
10     Q. Good morning. Would you please introduce
11 yourself for the record?
12     A. Joshua Slater.
13     Q. What's your home address?
14     
15     
16     Q. Do you also have a work address?
17     A. Yes.
18     Q. Where do you work?
19     A. Viasat.
20     Q. And where is your work address?
21     A. 6155 El Camino Real, Carlsbad,
22 California, 92009.
23     Q. Do you have an assigned workspace at
24 Viasat?
25     A. Yes.

Page 8

1      Q. Do you work remotely, or do you work in
2  the office, or is it a combination?
3      A. Combination.
4      Q. Have you ever been deposed before?
5      A. No.
6      Q. Okay. So I'm sure your counsel has gone
7  over kind of the logistics, but just to go over
8  them on the record.
9          You understand that you're under oath,
10 the same oath that you take in a court in front of
11 a judge and a jury?
12     A. Yes.
13     Q. Any reason that you can't provide a
14 complete and truthful, accurate testimony today?
15     A. No.
16     Q. So, obviously, there's a court reporter
17 here. She'll be transcribing all of the testimony.
18 So it's important that we don't talk over each
19 other. So let's focus on doing that. I'll -- let
20 me ask the questions, and I'll try to let you
21 answer the question fully before moving on to the
22 next question.
23         If you don't understand my question or
24 any part of my question, feel free to ask for
25 clarification, and I'll do my best. If you don't

Page 9

1  ask for a clarification and answer it, I will
2  assume you understood the question; is that fair?
3      A. Yes.
4      Q. We can take breaks at any time that you'd
5  like, pretty much. We'll take breaks around every
6  hour, but if you need one before that, just let me
7  know. The only caveat is, if there's a question
8  pending, I'd ask that you answer the question and
9  then we can take a break.
10         You understand you're being deposed here
11 in your personal capacity?
12     A. Can you clarify "personal capacity"?
13     Q. Yeah. Well, let me just ask this
14 question: When did you find out about the
15 deposition?
16         MR. JANG: Objection. I'll caution the
17 witness not to disclose privileged communications
18 with counsel.
19         Subject to that caution, if you can
20 answer, please do so.
21         THE WITNESS: I found out about the
22 deposition within the last two months.
23 BY MR. VINCENT:
24     Q. When was the first time -- again, you
25 can -- just the date.

Page 10

```
 1        When was the first time you learned about
 2   this litigation?
 3        MR. JANG:  Same caution.
 4        THE WITNESS:  2023, probably.  End of
 5   2023.
 6   BY MR. VINCENT:
 7      Q.  Did you do anything to prepare for
 8   today's deposition?
 9        MR. JANG:  Same caution.  Don't disclose
10   privileged communications with counsel.
11        THE WITNESS:  Yes.
12   BY MR. VINCENT:
13      Q.  What did you do?
14      A.  Met with counsel yesterday.
15      Q.  Which counsel?
16      A.  Kevin.
17      Q.  Anyone else?
18      A.  Yes.
19      Q.  Who?
20      A.  Alicia.  I don't recall her last name.
21        MR. JANG:  Lai, L-A-I.
22   BY MR. VINCENT:
23      Q.  Is that an attorney?
24      A.  Yes.
25      Q.  Did you meet with anyone else?
```

Page 11

```
 1      A.  I had a quick call with Patrick.  I don't
 2   recall his last name.
 3      Q.  Is it Patrick Curran?
 4      A.  Yeah, Curran.
 5      Q.  An attorney?
 6      A.  Yes.
 7      Q.  Anyone else?
 8      A.  No.
 9      Q.  Did you -- you didn't speak to any
10   non-attorneys to prepare for your deposition; is
11   that right?
12      A.  Correct.
13      Q.  And all of those, I guess, conversations
14   or -- did the meeting happen yesterday?
15      A.  There was one pre-meeting last Friday, a
16   Zoom call.
17      Q.  Who was on that pre-meeting?
18      A.  The three attorneys mentioned.
19      Q.  How long did that pre-meeting last?
20        MR. JANG:  Same caution.
21        THE WITNESS:  Less than an hour.
22   BY MR. VINCENT:
23      Q.  And how long did your meetings yesterday
24   last to prepare for your deposition today?
25        MR. JANG:  Same caution.
```

Page 12

```
 1        THE WITNESS:  I don't recall.  It ended
 2   before the end of the day, like sometime
 3   midafternoon.  It started midmorning.
 4   BY MR. VINCENT:
 5      Q.  Between a half a day and a day?
 6      A.  Yes.
 7      Q.  This is a yes-or-no question; did you
 8   review any documents to prepare for your
 9   deposition?
10        MR. JANG:  Same caution.
11        You can answer it yes or no.
12        THE WITNESS:  Yes.
13   BY MR. VINCENT:
14      Q.  How about how many?
15        MR. JANG:  I'll instruct the witness not
16   to answer that question on the basis of
17   attorney-client privilege.
18        MR. VINCENT:  It's your position that the
19   number of documents is privileged?
20        MR. JANG:  You haven't established a
21   foundation for asking why the number of documents he
22   reviewed is something you're entitled to.
23        MR. VINCENT:  Okay.  I don't know if I
24   agree with that.
25   ///
```

Page 13

```
 1   BY MR. VINCENT:
 2      Q.  But did any of the documents that you
 3   reviewed refresh your recollection as to the
 4   contents of those documents?
 5      A.  No.
 6      Q.  Anything else that you did to prepare for
 7   the deposition?
 8        MR. JANG:  Same caution.  Don't disclose
 9   the substance of communications with counsel.
10        THE WITNESS:  No.
11        (Exhibit 1 was marked for identification.)
12   BY MR. VINCENT:
13      Q.  I'm going to mark Exhibit 1.
14        Do you recognize Exhibit 1?
15      A.  No.
16      Q.  Do you have a LinkedIn profile?
17      A.  Yes.
18      Q.  I'll represent to you that this is
19   something we printed out from a LinkedIn file with
20   your name on it.
21        Can you tell me whether or not this is
22   your LinkedIn profile?
23      A.  It appears to be similar content.  I
24   don't know if it's exactly, but it appears to be
25   what I would have had on it.
```

▬▬▬ ▬▬▬▬▬▬▬▬ - ▬▬▬▬▬▬▬▬ ▬▬ ▬▬

```
                                      Page 98
 1   BY MR. VINCENT:
 2      Q.  Welcome back.  Picking up Exhibit 3
 3   again, this blown-up diagram.
 4          Speaking of IPTV, what, if any, of these
 5   components are involved in the delivery of IPTV to
 6   end-user passengers?
 7          MR. JANG:  Objection; vague.
 8          THE WITNESS:  Can you repeat the last
 9   part?  Delivery of IPTV to what?
10   BY MR. VINCENT:
11      Q.  Eventually to end-user passengers.
12      A.  Viasat content delivery service.  That's
13   all I can recall from this diagram.
14      Q.  So other than the Viasat content delivery
15   service --
16      A.  Sorry.  I should clarify, ▬▬▬▬▬▬▬
17   as well.
18      Q.  Okay.  So the IPTV service, the source of
19   that content would be ▬▬▬▬▬▬▬▬▬▬
20   ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
21   ▬▬▬▬▬▬▬▬▬▬▬▬?
22      A.  It's -- I don't recall exactly if the
23   content ▬▬▬▬▬▬▬▬.  It is streamed
24   via ▬▬▬▬▬▬▬▬▬ and does ▬▬▬▬▬▬
25   ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ I don't
```

```
                                      Page 99
 1   ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
 2      Q.  Is it -- does it also, generally
 3   speaking, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
 4   for a user to view it?
 5          MR. JANG:  Objection; vague.
 6          THE WITNESS:  The content doesn't ▬▬
 7   ▬▬▬▬▬▬▬ so much as ▬▬▬▬▬▬ in the case
 8   of ▬▬▬▬▬▬▬▬▬▬▬▬▬ acts as a
 9   ▬▬▬▬▬▬▬▬▬▬▬▬▬ I wouldn't
10   characterize the ▬▬▬▬ as ▬▬▬▬▬▬▬
11   delivery of the content.
12   BY MR. VINCENT:
13      Q.  Okay.  So focusing again back on IFE.
14   You very helpfully described, at a high level, how
15   the architecture works.  I want to talk
16   specifically about ▬▬▬▬▬▬▬▬▬▬▬▬▬▬
17   ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
18          How does the system ▬▬▬▬ -- I guess, how
19   does the system ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
20   ▬▬▬▬ in other words, ▬▬▬▬▬▬▬▬▬▬▬
21   ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
22   ▬▬▬▬▬▬▬▬▬▬▬▬?
23          MR. JANG:  Objection to form; vague.
24          THE WITNESS:  So can you -- the answers to
25   those might be different.  There's multiple
```

```
                                     Page 100
 1   questions.  Can you -- maybe, the first question --
 2   the first portion of the question, which didn't
 3   include the permission part, can you reframe that
 4   one into a similar question?
 5   BY MR. VINCENT:
 6      Q.  Sure.
 7          So when a -- in the IFE system, I guess,
 8   does the IFE system have a mechanism to uniquely
 9   identify each passenger device?
10          MR. JANG:  Objection; vague.
11          THE WITNESS:  So there is ▬▬▬▬ --
12   ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
13   ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
14   ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
15   ▬▬▬▬▬▬▬▬▬▬▬
16   BY MR. VINCENT:
17      Q.  So in the IFE situation, I've got my
18   phone, I want to watch "Lord of the Rings."
19          How does the IFE system, the server, know
20   who I am and know that I -- to deliver that movie
21   to me as opposed to -- how does the system identify
22   me as opposed to another passenger?
23          MR. JANG:  Objection; vague; assumes facts
24   not in evidence; lacks foundation.
25          THE WITNESS:  Beyond the networking rules
```

```
                                     Page 101
 1   of routing the data to the end-user device, I don't
 2   recall the details around what you're asking about
 3   uniquely identifying a device.
 4   BY MR. VINCENT:
 5      Q.  So what do you mean by "networking
 6   rules"?
 7      A.  So I shouldn't have used the word
 8   "rules," but networking protocols.  So
 9   specifically, things specific to the networking
10   stack that, in general, allow traffic to route to
11   specific places on any given network.
12      Q.  So is -- when content is being delivered
13   wirelessly from the S4 server to an end-user
14   device, is there an identifier that the system uses
15   to identify a specific device?
16          MR. JANG:  Objection; vague.
17          THE WITNESS:  Outside of the networking
18   protocols used such as TCPIP, as an example, I don't
19   know the answer.
20   BY MR. VINCENT:
21      Q.  So, I guess, you're saying "outside of
22   the networking context."  That assumes I know
23   anything about that.
24      A.  Sure.
25      Q.  I know very little.  So let's -- for
```

Case 4:22-cv-04376-HSG    Document 282-6    Filed 11/04/25    Page 7 of 11

[REDACTED] TransPerfect - [REDACTED]

Page 102

1  example, I understand that most devices have
2  something called a MAC address.
3      Do you understand that?
4  A. Yes.
5  Q. What's your understanding of that?
6  A. MAC address is one of the elements of
7  that TCPIP stack that I mentioned, part of the
8  networking protocol used to route traffic on the
9  network.
10  Q. And do you know whether, in general, each
11  device has its own MAC address?
12      MR. JANG: Objection; vague.
13      THE WITNESS: Each device has a MAC
14  address. From a networking standpoint, it's
15  intended to be unique, but they can be spoofed, they
16  can be manually changed, which doesn't guarantee
17  uniqueness.
18  BY MR. VINCENT:
19  Q. Does the IFE system utilize the MAC
20  address of a device, in any way, to be able to know
21  which device to route the content to?
22  A. I don't know. And I -- I don't know.
23  Q. Okay. So when -- I guess, how would you
24  describe how the IFC system knows which device
25  to -- to send the content to?

Page 103

1  A. So you said "IFC." I presume you mean
2  "IFE."
3  Q. Yeah, sorry.
4  A. That's okay.
5  Q. Let me reask the question so it's clean.
6      How does the IFC system --
7  A. You said "IFC" again.
8  Q. Oh, my gosh.
9  A. Sorry.
10  Q. How does the IFE system know which device
11  to send the content to for the user that requested
12  it?
13      MR. JANG: Objection; vague.
14      THE WITNESS: So what I can tell you is,
15  similar to any request to the Internet or to a
16  portal, various identifiers, which may include
17  things like the MAC address or IP address, are used
18  to route any piece of data to a specific endpoint.
19  What I don't know is the specific way, or if it
20  happens at all, that the IFE system that is
21  independent of that networking set of protocols, if
22  the IFE system is doing anything to uniquely
23  identify an end device.
24  BY MR. VINCENT:
25  Q. Okay. So as part of these network

Page 104

1  protocols, there is at least something there that
2  is designed or intended to uniquely identify a
3  device on that network; is that fair?
4      MR. JANG: Objection --
5      THE WITNESS: There -- sorry.
6      MR. JANG: -- vague; calls for a legal
7  conclusion.
8      THE WITNESS: [REDACTED]
9  [REDACTED]
10  [REDACTED]
11  BY MR. VINCENT:
12  Q. Is one of those things an identifier of
13  some sort that's assigned to a particular device?
14      MR. JANG: Objection; asked and answered.
15      THE WITNESS: [REDACTED]
16  [REDACTED]
17  [REDACTED]
18  [REDACTED]
19  BY MR. VINCENT:
20  Q. Okay. You said [REDACTED]
21  My -- I'm just trying to figure out how it knows
22  [REDACTED]
23  [REDACTED] But it's got to know
24  [REDACTED]
25     How is it going to [REDACTED]

Page 105

1  [REDACTED]
2  A. Can --
3      MR. JANG: Objection; asked and answered;
4  argumentative.
5      THE WITNESS: Can you clarify what you
6  mean by "it," how does it [REDACTED]
7  BY MR. VINCENT:
8  Q. The -- let's start with the S4 server.
9      Does the S4 server have any [REDACTED]
10  [REDACTED]
11  [REDACTED]
12      MR. JANG: Objection; vague.
13      THE WITNESS: One of the functions of the
14  S4 server is [REDACTED]
15  [REDACTED]
16  [REDACTED]
17  BY MR. VINCENT:
18  Q. This TCPIP stack, is that a standard
19  network protocol?
20  A. It's a standard set of network protocols,
21  yes.
22  Q. Did Viasat for -- [REDACTED]
23  [REDACTED]
24  [REDACTED]
25  A. I don't know.



27 (Pages 102 to 105)

TransPerfect Legal Solutions
212-400-8845 - Depo@TransPerfect.com



```
                                                    Page 106
 1      Q.  Are you aware, in your development work
 2  on the IFE system, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
 3  ▮▮▮▮▮▮▮▮▮▮?
 4      A.  ▮▮▮▮▮▮▮▮▮▮▮▮▮
 5      Q.  The information, to the extent there is
 6  information that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
 7  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
 8  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
 9  ▮▮▮?
10          MR. JANG:  Objection; assumes facts not in
11  evidence.
12          THE WITNESS:  I don't know.
13  BY MR. VINCENT:
14      Q.  Do you know whether there is any
15  information that's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
16  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
17  ▮▮▮▮▮▮▮▮▮▮▮▮?
18          MR. JANG:  Objection; asked and answered;
19  vague.
20          THE WITNESS:  ▮▮▮▮▮▮▮▮▮▮  I
21  don't know.
22  BY MR. VINCENT:
23      Q.  Who would know?
24          MR. JANG:  Objection to form; vague.
25          THE WITNESS:  I would imagine -- I would
```

```
                                                    Page 107
 1  expect that there is development team members, at
 2  some point in the life cycle of IFE, who might know
 3  that detail.
 4  BY MR. VINCENT:
 5      Q.  Life cycle of IFE?
 6      A.  Yeah, sorry.  Since back to when we
 7  started working on it.
 8      Q.  Gotcha.  Okay.
 9          But you are aware that, somehow, the IFE
10  system ▮▮▮▮▮ -- if I request a specific movie, like
11  "Lord of The Rings" on my phone, somehow it ▮▮▮
12  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
13  ▮▮▮▮▮▮▮▮▮▮▮▮▮?
14          MR. JANG:  Objection; asked and answered;
15  vague.
16          THE WITNESS:  So part of why I was
17  explicit about ▮▮▮▮▮▮▮▮ is because I don't
18  know ▮▮▮▮▮▮▮▮▮▮▮ -- which I view as
19  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
20  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
21  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
22  ▮▮▮▮▮.
23  BY MR. VINCENT:
24      Q.  Understood.
25          So outside of what might be characterized
```

```
                                                    Page 108
 1  as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ does
 2  that, to your knowledge, ▮▮▮▮▮▮▮▮▮▮
 3  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
 4  ▮▮▮▮▮▮▮?
 5          MR. JANG:  Objection to form; vague.
 6          THE WITNESS:  ▮▮▮▮▮▮▮▮▮▮
 7  ▮▮▮▮ the generic function of a router, it
 8  does know about certain aspects of the TCPIP stack,
 9  which, as we discussed, is used to route traffic.
10  BY MR. VINCENT:
11      Q.  And please correct me if I'm wrong.  Your
12  understanding is that ▮▮▮▮▮▮▮▮▮▮▮▮▮
13  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
14  is that fair?
15          MR. JANG:  Objection; vague.
16          THE WITNESS:  Yes.  So the way I would
17  describe -- and I will use this diagram -- ▮▮▮▮
18  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
19  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
20  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  So, yeah,
21  I would characterize it as ▮▮▮▮▮.
22  BY MR. VINCENT:
23      Q.  That ▮▮▮▮▮▮▮▮ is that -- on the
24  ▮▮▮▮▮▮▮▮▮ is that ▮▮▮▮▮▮ also
25  ▮▮▮▮▮?
```

```
                                                    Page 109
 1      A.  Yes.
 2      Q.  Do you know if there's any difference in
 3  how ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
 4  ▮▮▮▮▮▮▮▮?
 5          MR. JANG:  Objection; vague as to time.
 6          THE WITNESS:  I don't know.
 7  BY MR. VINCENT:
 8      Q.  So you mentioned -- we talked about it
 9  earlier -- DRM management.  And I believe, if I
10  understood you correctly, ▮▮▮▮▮▮▮▮▮▮▮▮▮
11  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
12  ▮▮▮▮▮▮▮▮ is that correct?
13      A.  I would argue it's ▮▮▮▮▮▮▮▮▮
14  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ --
15      Q.  Okay.
16      A.  -- ▮▮▮▮▮▮▮▮▮▮▮
17  ▮▮▮▮ yeah.
18      Q.  And it's the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
19  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮?
20      A.  Correct.
21      Q.  Can you explain, at a high level, how
22  that process works and how the -- how the ▮▮▮▮▮
23  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
24  ▮▮▮▮▮▮▮▮▮▮▮?
25          MR. JANG:  Objection; vague.
```



Page 178

```
 1      ▌
 2      ▌, et
 3   cetera.
 4        Q.  So in that instance, ▌
 5   ▌
 6   ▌
 7   ▌--
 8        A.  Correct.
 9        Q.  -- ▌?
10        A.  Correct.
11           MR. VINCENT:  Okay.  No further questions.
12           MR. JANG:  All right.  No further
13   questions from me, either.
14           THE VIDEOGRAPHER:  The time is 2:48 p.m.
15   This concludes today's deposition of Josh Slater.
16   We're going off the record.
17           (The videotaped deposition of
18   JOSHUA SLATER concluded at 2:48 p.m.)
```

Page 179

```
 9       I, JOSHUA SLATER, do hereby declare under the penalty
10   of perjury that I have read the foregoing transcript;
11   that I have made any corrections as appear noted, in
12   ink, initialed by me, or attached hereto; that my
13   testimony as contained herein, as corrected, is true
14   and correct.
15       EXECUTED this _____ day of _____,
16   20____, at _____, _____.
17            (City)          (State)

19            _____
20            JOSHUA SLATER
```

Page 180

```
 1       I, Patricia Y. Schuler, a Certified
 2   Shorthand Reporter of the State of California, do
 3   hereby certify:
 4       That the foregoing proceedings were taken
 5   before me at the time and place herein set forth;
 6   that any witnesses in the foregoing proceedings,
 7   prior to testifying, were duly sworn; that a
 8   verbatim record of the proceedings was made by me
 9   using machine shorthand which was thereafter
10   transcribed under my direction; that the foregoing
11   transcript is a true record of the testimony given.
12       Further, that if the foregoing pertains
13   to the original transcript of a deposition in a
14   Federal Case, before completion of the proceedings,
15   review of the transcript [X] was [ ] was not
16   requested.
17       I further certify I am neither
18   financially interested in the action nor a relative
19   or employee of any attorney or party to this
20   action.
21       IN WITNESS WHEREOF, I have this date
22   subscribed my name.
23   Dated: February 15, 2025
24        _____
          PATRICIA Y. SCHULER
25        CSR NO. 11949
```

Page 181

```
 1           DEPOSITION ERRATA SHEET
 2   CASE NAME:  SANDISK TECHNOLOGIES, INC. v. VIASAT
     DEPOSITION DATE:  FEBRUARY 6, 2025
 3   WITNESS NAME:  JOSHUA SLATER
 4   Reason Codes:  1. To clarify the record.
 5             2. To conform to the facts.
 6             3. To correct transcription errors.
 7   Page       Line         Reason Code
 8   From                          to
 9   Page       Line         Reason Code
10   From                          to
11   Page       Line         Reason Code
12   From                          to
13   Page       Line         Reason Code
14   From                          to
15   Page       Line         Reason Code
16   From                          to
17   Page       Line         Reason Code
18   From                          to
19   Page       Line         Reason Code
20   From                          to
21   Page       Line         Reason Code
22   From                          to
23   Page       Line         Reason Code
24   From                          to
25   Page       Line         Reason Code
```

TransPerfect - Legal Solutions

```
                                       Page 182
 1     From                    to
 2     Page      Line      Reason Code
 3     From                    to
 4     Page      Line      Reason Code
 5     From                    to
 6     Page      Line      Reason Code
 7     From                    to
 8     Page      Line      Reason Code
 9     From                    to
10     Page      Line      Reason Code
11     From                    to
12     Page      Line      Reason Code
13     From                    to
14     Page      Line      Reason Code
15     From                    to
16     Page      Line      Reason Code
17     From                    to
18
              Subject to the above changes, I certify that the
19     transcript is true and correct.
20            No changes have been made. I certify that the
       transcript is true and correct.
21
22
23
24
                        JOSHUA SLATER
25
```

47 (Page 182)

Case 4:22-cv-04376-HSG   Document 282-6   Filed 11/04/25   Page 11 of 11

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

SANDISK TECHNOLOGIES, INC., et al.,

    Plaintiffs,

v.

VIASAT, INC.,

    Defendant.

Case No.: 4:22-cv-4376-HSG

**ERRATA SHEET FOR THE DEPOSITION OF JOSHUA SLATER**

## ERRATA SHEET FOR THE DEPOSITION OF JOSHUA SLATER

I, Joshua Slater, having reviewed the transcript of my Federal Rule of Civil Procedure Rule 30(b)(1) deposition taken February 6, 2025, hereby make the following changes pursuant to Federal Rule of Civil Procedure 30(e):

| Page | Line(s) | Now Reads | Should Read | Reason |
|---|---|---|---|---|
| 26 | 6 | Or are | What are | Transcript correction |
| 29 | 12 | products in | products with – in | Transcript correction |
| 47 | 22 | IFE, IFC | IFC, IFE | Transcript correction |
| 135 | 12 | If | So if | Transcript correction |
| 137 | 17 | 'ingestion' | 'an ingest'—'ingestion' | Transcript correction |
| 154 | 19 | [redacted] | [redacted] | Transcript correction |
| 165 | 25 | Viaset | Viasat | Transcript correction |

_____          3/13/2025
Joshua Slater                                          Date

1