QUINN EMANUEL URQUHART & SULLIVAN, LLP
Steven Cherny (*pro hac vice*)
stevencherny@quinnemanuel.com
Patrick D. Curran (Bar No. 241630)
patrickcurran@quinnemanuel.com
Hannah Dawson (*pro hac vice*)
hannahdawson@quinnemanuel.com
Tzivya H. Beck (*pro hac vice*)
tzivyabeck@quinnemanuel.com
111 Huntington Ave, Suite 520
Boston, MA 02199
Telephone:    (617) 712-7100
Facsimile:    (617) 712-7200

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Nicola R. Felice (*pro hac vice*)
nicolafelice@quinnemanuel.com
Anastasia M. Fernands (*pro hac vice*)
anastasiafernands@quinnemanuel.com
Vanessa Blecher (*pro hac vice*)
vanessablecher@quinnemanuel.com
Alicia Lai (*pro hac vice*)
alicialai@quinnemanuel.com
295 5th Avenue
New York, NY 10016
Telephone:    (212) 849-7000
Facsimile:    (212) 849-7100

*Attorneys for Defendant Viasat, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| SANDISK TECHNOLOGIES, INC., et al., | Case No.: 4:22-cv-4376-HSG |
| Plaintiffs, | **DEFENDANT VIASAT, INC.'S RESPONSE TO ORDER TO SHOW CAUSE** |
| v. | |
| VIASAT, INC., | |
| Defendant. | |

1. Sandisk's response to the Court's Order to Show Cause ("OSC") never addresses the years of flip-flops, cagey behavior, and unwillingness to drop SDT LLC (or its predecessor WDI) even though the record made absolutely clear that this entity had no exclusionary rights in the asserted patents and no standing to seek damages from Viasat.[1] It took three years and summary judgment practice to finally dismiss entities without standing—something Sandisk should have gotten right from the beginning, and certainly should have fixed after the Court's initial Orders on this issue. But Sandisk simply ignores important events that wasted the Court's and Viasat's time and resources, including its decision to oppose Viasat's motion for summary judgment one week after it indicated, ***once again,*** a purported willingness to dismiss SDT LLC. Viasat should not bear the costs of what should have been a simple and costless exercise.

Troublingly, Sandisk's latest brief largely rests on a fabrication: Sandisk was powerless to dismiss SDT LLC because it feared Viasat would say SDT was a necessary party, and then move to dismiss the entire case.[2] Specifically, in its recent response to the OSC, Sandisk states:

> Plaintiffs were open to resolve the issue of SDT LLC's joinder without Court intervention, but Plaintiffs ***could not*** dismiss SDT LLC without a finding by the Court that SDT LLC should be dismissed (such that Plaintiffs could appeal if necessary), or an agreement bweteen the parties that SDT LLC was not a necessary party and that Viasat would not use the absence of SDT LLC against Plaintiffs as a way to dismiss the case in its entirety. ***Viasat would not agree***. Because Viasat refused to stipulate to that dismissal, this issue had to go to this Court.

Dkt. 278 at 2 (first emphasis in original; second emphasis added).[3] This makes no sense. How could Viasat repeatedly argue SDT LLC was not a proper party because it had ***no*** standing and, at the same time, claim SDT LLC was "necessary"? But the Court need not ponder whether Viasat ever held that frivolous position. Sandisk ***knew*** Viasat did ***not*** hold this belief, and confirmed as much in writing. Indeed, Plaintiffs confirmed it in the very next sentence of the same May 30, 2025 email

---

[1] Of course, this always should have been clear to Sandisk, who had all the relevant facts in hand even before this suit was filed.

[2] This "explanation" of course does not clarify why Sandisk would then go on to oppose summary judgment on the merits. *See* Dkt. 255-1.

[3] *See also id.* at 4 (arguing against sanctions because "Plaintiffs could not dismiss SDT LLC . . . [without] agreement by Viasat that it would not weaponize SDT LLC's absence against Plaintiffs.").

Sandisk repeatedly relies upon (Dkt. 278-1 ¶¶ 8, 10; Dkt. 278 at 1, 4)—a portion of the email that Sandisk did not highlight for the Court. Sandisk's counsel wrote:

> From: Lillian Mao^ <LMao@gibsondunn.com>
> Date: Friday, May 30, 2025 at 5:07 PM
> To: Hannah Dawson <hannahdawson@quinnemanuel.com>
> Cc: *** GDC-NDCA Western Digital-Viasat <GDCWesternDigitalNDCA@gibsondunn.com>, QE-Viasat-WD <qe-viasat-wd@quinnemanuel.com>
> Subject: Re: SanDisk v. Viasat - Standing
>
> Hannah,
>
> We simply sought to confirm that, if SDT LLC were dismissed, Viasat would not contend that the case should be dismissed for failure to join SDT LLC as a party. ==We understand from your response that Viasat does not so contend==, and we will proceed accordingly.
>
> Best,
> Lillian

Dkt. 220-4 at 2-3 (emphasis added). Sandisk knew Viasat was not making some strained claim that SDT LLC both lacked standing and yet was also "necessary." Sandisk said so itself. It simply is not credible to claim that "***Viasat would not agree***" to forgo an argument Sandisk already knew Viasat ***was not advancing***. Dkt. 278 at 1.

After this email exchange, Sandisk sent Viasat a stipulation to drop SDT LLC from the caption; Viasat pointed out that SDT LLC needed to be dismissed, not merely dropped from the caption. Dkt. 220-4 at 1. Sandisk did not respond, forcing Viasat to move for summary judgment. Sandisk then inexplicably opposed that motion for summary judgment. If Sandisk's only concern was whether SDT LLC was "necessary," Sandisk already knew Viasat was not making that argument.[4] Sandisk nonetheless went back on its commitment to dismiss SDT LLC, and argued in opposition to the summary judgment motion not that SDT LLC should be dismissed because it was unnecessary, but instead that "SDT LLC is a proper party to this case, and Viasat's motion should

---

[4] Even though Sandisk knew Viasat was not making any argument that SDT LLC was "necessary," as demonstrated in Sandisk's May 30 email, Sandisk nevertheless argued against that strawman in its July 7 summary judgment opposition. Dkt. 255-1 at 4 ("Plaintiffs sought to resolve this issue without opposed motion practice but in a manner that avoided the possibility of Viasat turning around and claiming that Plaintiffs had defeated their own standing by dismissing SDT LLC".).

1  thus be denied." Dkt. 255-1 at 4.

2  Sandisk's claim, in opposing Viasat's summary judgment motion, that "SDT LLC is a proper
3  party to this case" was not an isolated mistake. It followed three years of unreasonable positions that
4  drew rebukes from the Court. Sandisk started this case by vaguely asserting that "one or more" of
5  the original five Plaintiffs held all substantial rights in each asserted patent. Dkt. 1 ¶¶ 19, 35, 47.
6  Viasat moved to dismiss for lack of standing in October 2022 and the Court granted that motion,
7  noting it was "hard to understand why Plaintiffs cannot (or will not) allege the[] basic jurisdictional
8  facts" to show which Plaintiff "holds which rights to which patents, and why." Dkt. 36 at 4-5.
9  Sandisk then amended, asserting that SDT's predecessor entity, WDI, held "exclusionary rights" in
10 the '400 patent and '667 patent because WDI owned certain undefined "rights and interests" in each
11 patent. Dkt. 38 ¶¶ 20, 37. Viasat again moved to dismiss. Although the Court saw these standing
12 allegations as "needlessly cagey," it allowed WDI to proceed based on its representations. Dkt. 72
13 at 4-5. But the Court warned Sandisk that "if facts come to light during discovery that undermine"
14 WDI's standing allegations, "the Court would consider entertaining a partial motion for summary
15 judgment as to issues of patentee standing." *Id.* at 5.

16 Viasat diligently litigated standing, including through interrogatories and a 30(b)(6)
17 deposition. *See* Dkt. 222 at 3-4, 6-7. It was not until *after* the close of fact discovery that Plaintiffs
18 finally supplemented their interrogatory response and admitted that, contrary to what it said in its
19 amended complaint, WDI did not have exclusionary rights in the asserted patents. Dkt. 222-2
20 (Interrogatory No. 13). Plaintiffs' 30(b)(6) designee similarly confirmed, only *after* the close of fact
21 discovery, that WDI had no exclusionary rights in the asserted patents—meaning WDI's successor
22 entity, SDT LLC, also lacked standing. Dkt. 222-3.

23 Having confirmed through costly discovery that SDT never had standing, Viasat again asked
24 Sandisk to explain the "basis for continuing to include SDT LLC as a plaintiff in this action." Dkt.
25 220-4 at 3. Plaintiffs waited two months to respond. On May 28, 2025. Sandisk finally agreed to
26 stipulate to the dismissal of SDT LLC, but only if "Viasat agrees that the remaining Plaintiffs have

27
28

standing to maintain this action."[5] *Id.* at 3. Viasat could not agree, noting that "[s]tanding either exists or it doesn't." *Id.* at 2. Viasat followed up on June 8, 2025. *Id.* at 1. Sandisk did not respond. Sandisk thus forced Viasat to move for summary judgment after attempting to extract an "unjustifiable" quid pro quo. Dkt. 274 at 39.

Sandisk claimed surprise that Viasat moved for summary judgment and again offered to dismiss. Dkt. 258-3 at 3. Viasat agreed; it said only that it could not accept Sandisk's proposal regarding sealing, since whether materials should be sealed is an issue for the Court to decide. *Id.* at 1-2. Sandisk then inexplicably opposed Viasat's motion for summary judgment but still could not articulate what, exactly, gave SDT LLC standing. Sandisk admitted SDT LLC had neither "legal title" nor "exclusive licensee" rights. Dkt. 255-1 at 3. The Court then granted Viasat's motion for summary judgment. Dkt. 274 at 37.

Sandisk's response fails to credibly explain ***why*** it persistently litigated this issue. Sandisk claimed that it wanted to avoid the possibility that "Viasat … would … weaponize SDT LLC's absence against Plaintiffs" by seeking "dismissal of the entire case" based on "the lack of a necessary party." Dkt. 278 at 4-5. But, as noted above, Sandisk's own correspondence proves that is false. Dkt. 220-4 at 2. There was no reason to include SDT LLC (or WDI) as a plaintiff here. There was no basis to claim in its amended complaint that SDT LLC had "exclusionary rights" in the '400 and '667 patents when that too was false. There was no reason to refuse to dismiss SDT LLC when its lack of standing became absolutely clear after the end of discovery and Viasat asked Sandisk to resolve the issue cooperatively. And there was certainly no need to oppose Viasat's motion for summary judgment—particularly after having apparently previously committed to dismiss SDT LLC. Dkt. 258-3 at 3. Sandisk's pattern of refusing to act reasonably on this issue at any stage of this litigation, including in its OSC response, warrants fees.

This Court has the inherent authority and discretion to "award attorneys' fees" as "the interests of justice … require." *Realtime Adaptive Streaming LLC v. Netflix, Inc.*, 41 F.4th 1372,

---

[5] Plaintiffs' argument that they "did not demand a 'quid pro quo'" simply cannot be squared with the record. Dkt. 278 at 4.

1377 (Fed. Cir. 2022) (quoting *Hall v. Cole*, 412 U.S. 1, 4-5 (1973)) (affirming district court's sanctions award under inherent authority where patentee engaged in bad faith litigation conduct). "The Supreme Court has repeatedly recognized the propriety of such an award when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)). "[T]he law of the regional circuit" applies to the question of "a district court's inherent power to impose sanctions in the form of attorneys' fees." *Id.* A party can be sanctioned for behavior that "constituted or was tantamount to bad faith." *Unite Here! Loc. 2 v. Stix Holdings, LLC*, No. 23-CV-01498-RS, 2023 WL 5020263, at *1 (N.D. Cal. Aug. 4, 2023) (quoting *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006)). That standard is met when a party "misrepresents the law or the facts to the court," "acts for an improper purpose," or "repeatedly mak[es] arguments that have been rejected." *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 925 (N.D. Cal. 2023) (citations and quotations omitted); *id.* at 934 (sanctioning party whose "frivolous arguments, obfuscation, and reflexive opposition" resulted in "delay and unnecessary expense" for its counterparty).

In this case, a compensatory sanction is appropriate to reimburse Viasat for fees it "would not have incurred but for the bad faith," which "may also [include] fees and costs incurred in moving for sanctions." *Id.* at 925-26 (quotations omitted). The Court has "broad discretion" to "take into account its overall sense of a suit" and use "estimates" of the costs that bad faith imposed. *Id.* at 926. To determine if a fees award is reasonable, a court "look[s] to the number of hours reasonably expended on the case" and "multiplie[s] [that amount] by a reasonable hourly rate." *Id.* Viasat believes it would be appropriate to compensate it for all of its time challenging standing: time spent on motions to dismiss, written and deposition discovery, summary judgment briefing, and on Viasat's submissions in response to the Court's Order to Show Cause, as well as correspondence and conferences related to standing. Should the Court agree that sanctions are appropriate, Viasat will submit a breakdown of fees and costs incurred for these tasks.

| | | |
|---|---|---|
| DATED: November 4, 2025 | | QUINN EMANUEL URQUHART & SULLIVAN, LLP |

By */s/ Patrick Curran*
Patrick Curran

*Attorneys for Defendant Viasat Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2025, a copy of the foregoing document was served via e-mail to all counsel of record who have appeared in this matter.

DATED: November 4, 2025          By  */s/ Patrick Curran*
                                      Patrick Curran