QUINN EMANUEL URQUHART & SULLIVAN, LLP
Steven Cherny (*pro hac vice*)
stevencherny@quinnemanuel.com
Patrick D. Curran (Bar No. 241630)
patrickcurran@quinnemanuel.com
Hannah Dawson (*pro hac vice*)
hannahdawson@quinnemanuel.com
Tzivya H. Beck (*pro hac vice*)
tzivyabeck@quinnemanuel.com
111 Huntington Ave, Suite 520
Boston, MA 02199
Telephone:    (617) 712-7100
Facsimile:    (617) 712-7200

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Nicola R. Felice (*pro hac vice*)
nicolafelice@quinnemanuel.com
Anastasia M. Fernands (*pro hac vice*)
anastasiafernands@quinnemanuel.com
Vanessa Blecher (*pro hac vice*)
vanessablecher@quinnemanuel.com
Alicia Lai (*pro hac vice*)
alicialai@quinnemanuel.com
295 5th Avenue
New York, NY 10016
Telephone:    (212) 849-7000
Facsimile:    (212) 849-7100

*Attorneys for Defendant Viasat, Inc.*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| SANDISK TECHNOLOGIES, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> VIASAT, INC., <br><br> Defendant. | Case No.: 4:22-cv-4376-HSG <br><br> **DEFENDANT VIASAT, INC.'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285** <br><br> **Hearing** <br> Date: December 9, 2025 <br> Time: 2:00 p.m. <br> Judge: Hon. Haywood S. Gilliam, Jr. <br> Courtroom: 2, 4th Fl. <br> 1301 Clay Street <br> Oakland, CA 94612 |

1

**NOTICE OF MOTION AND MOTION**

2          PLEASE TAKE NOTICE THAT on December 9, 2025, at 2:00 PM, or as soon thereafter as

3  this matter may be heard by the Honorable Haywood S. Gilliam, Jr. in Courtroom 2, located at 1301

4  Clay Street, Oakland, CA 94612, Defendant Viasat, Inc. will and hereby does move the Court under

5  35 U.S.C. § 285 and the Court's inherent powers for an order granting Viasat its reasonable

6  attorneys' fees incurred in this litigation. Viasat makes this request as the prevailing party following

7  the Court's ruling granting summary judgment of non-infringement in favor of Viasat (Dkt. No. 274

8  at 40-41).  Viasat bases its motion on this notice, the accompanying memorandum of points and

9  authorities, the supporting declarations of Steven Cherny and Patrick D. Curran, all pleadings and

10 documents on file in this action, and other such materials or arguments as the Court may consider.

11

12 DATED: November 4, 2025                    QUINN EMANUEL URQUHART &

13                                           SULLIVAN, LLP

14

15                                           By  */s/ Patrick Curran*

16                                              Patrick Curran

17                                           *Attorneys for Defendant Viasat Inc.*

18

19

20

21

22

23

24

25

26

27

28

VIASAT'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Steven Cherny (*pro hac vice*)
  stevencherny@quinnemanuel.com
  Patrick D. Curran (Bar No. 241630)
  patrickcurran@quinnemanuel.com
  Hannah Dawson (*pro hac vice*)
  hannahdawson@quinnemanuel.com
Tzivya H. Beck (*pro hac vice*)
  tzivyabeck@quinnemanuel.com
  111 Huntington Ave, Suite 520
Boston, MA 02199
  Telephone:    (617) 712-7100
  Facsimile:    (617) 712-7200

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Nicola R. Felice (*pro hac vice*)
  nicolafelice@quinnemanuel.com
  Anastasia M. Fernands (*pro hac vice*)
  anastasiafernands@quinnemanuel.com
  Vanessa Blecher (*pro hac vice*)
  vanessablecher@quinnemanuel.com
  Alicia Lai (*pro hac vice*)
  alicialai@quinnemanuel.com
  295 5th Avenue
New York, NY 10016
  Telephone:    (212) 849-7000
  Facsimile:    (212) 849-7100

*Attorneys for Defendant Viasat, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| SANDISK TECHNOLOGIES, INC., et al., | Case No.: 4:22-cv-4376-HSG |
| Plaintiffs, | **DEFENDANT VIASAT, INC.'S MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285** |
| v. | **Hearing** |
| | Date: December 9, 2025 |
| | Time: 2:00 p.m. |
| | Judge: Hon. Haywood S. Gilliam, Jr. |
| VIASAT, INC., | Courtroom: 2, 4th Fl. |
| | 1301 Clay Street |
| Defendant. | Oakland, CA 94612 |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................................1

II.    LEGAL STANDARD .................................................................................................4

III.   ARGUMENT .............................................................................................................5

    A.    Viasat Is The Prevailing Party ......................................................................5

    B.    This Case Is Exceptional ...............................................................................5

        1.    Sandisk knew its infringement claims were meritless but consistently chose to litigate them in an unreasonable manner.....................6

        2.    Sandisk unreasonably litigated its baseless standing position. ...................13

    C.    Viasat's Fees Are Reasonable .....................................................................14

IV.   CONCLUSION .......................................................................................................15

VIASAT'S MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*AdjustaCam, LLC v. Newegg, Inc.*,
   861 F.3d 1353 (Fed. Cir. 2017) ........................................................................................... 5, 6

*Alternative Petroleum Techs. Holdings Corp v. Grimes*,
   No. 3:20-CV-40-MMD-CLB, 2022 WL 3718863 (D. Nev. July 25, 2022) ......................... 13

*Bywaters v. United States*,
   670 F.3d 1221 (Fed. Cir. 2012) ............................................................................................ 14

*Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*,
   293 F. Supp. 3d 1038 (N.D. Cal. 2018),
   *aff'd*, 756 F. App'x 997 (Fed. Cir. 2019) ....................................................................... 13, 14

*GoTV Streaming, LLC v. Netflix, Inc.*,
   No. 222-CV-07556, 2024 WL 1832389 (C.D. Cal. Mar. 26, 2024) ....................................... 4

*Hunter's Edge, LLC v. Primos, Inc.*,
   No. 1:14-cv-00249-MHT-WC, 2016 WL 9244954 (M.D. Ala. Sept. 6, 2016) ....................... 6

*Kilopass Tech., Inc. v. Sidense Corp.*,
   738 F.3d 1302 (Fed. Cir. 2013) .............................................................................................. 4

*Kilopass Tech. Inc. v. Sidense Corp.*,
   No. C 10-02066 SI, 2014 WL 3956703 (N.D. Cal. Aug. 12, 2014) .................................. 9, 11

*Linex Techs., Inc. v. Hewlett-Packard Co.*,
   No. C 13-159 CW, 2014 WL 4616847 (N.D. Cal. Sept. 15, 2014) .................................. 12, 13

*Mathis v. Spears*,
   857 F.2d 749 (Fed. Cir. 1988) ............................................................................................... 14

*Nat'l Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*,
   676 F. App'x 967 (Fed. Cir. 2017) ........................................................................................ 13

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   572 U.S. 545 (2014) ..................................................................................................... 1, 4, 5

*In re PersonalWeb Technologies LLC*,
   85 F.4th 1148 (Fed. Cir. 2023) ............................................................................................... 9

*Phigenix, Inc. v. Genentech, Inc.*,
   No. 15-CV-01238-BLF, 2018 WL 3845998 (N.D. Cal. Aug. 13, 2018) ............................... 13

*Q-Pharma, Inc. v. Andrew Jergens Co.*,
   360 F.3d 1295 (Fed. Cir. 2004) ............................................................................................. 14

*Smart Wearable Techs. Inc. v. Fitbit Inc.*,
    No. 17-CV-05068-VC, 2018 WL 3201751 (N.D. Cal. June 27, 2018) ............................... 5, 6

*Stone Basket Innovations, LLC v. Cook Med. LLC*,
    892 F.3d 1175 (Fed. Cir. 2018) ................................................................................................. 5

*Thermolife Int'l LLC v. GNC Corp.*,
    922 F.3d 1347 (Fed. Cir. 2019) ................................................................................................. 5

## Statutes

35 U.S.C. § 102(a) .................................................................................................................................. 9

35 U.S.C. § 102(b) ................................................................................................................................. 9

35 U.S.C. § 285 .......................................................................................................................... 4, 5, 14

## Other Authorities

Fed. R. Civ. P. 54(d)(1) ....................................................................................................................... 14

DEFENDANT VIASAT, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF
NONINFRINGEMENT [DKT. 205]

## I.    INTRODUCTION

Section 285 of the Patent Act exists to deter parties from advancing substantively weak cases or litigating in an unreasonable manner. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014). Sandisk did both. That is why this case is "exceptional." As the Court already noted, Sandisk's problematic approach "stands out."[1] This is the very definition of "exceptional." *Id.* at 554 (holding "an 'exceptional' case [under Section 285] is simply one that stands out from others," including due to "the unreasonable manner in which the case was litigated"). Sandisk knew its case was seriously deficient from the start. Its patent claims were always a poor fit to the accused products. It knew (or should have known) one or more named plaintiffs lacked standing. But each time Sandisk was confronted with these serious deficiencies, it doubled down and wasted more of the Court's and Viasat's resources. A reasonable fee award is warranted to compensate Viasat for having to defend against this case long after it became absolutely clear it lacked merit and deter similar wastes of judicial and party resources in the future.

**Infringement.** Viasat warned Sandisk that its infringement theories were baseless shortly after this case was filed. But by the time of the Markman hearing and ruling, it was beyond doubt that Sandisk's case was untenable: Sandisk's operative infringement contentions depended on claim constructions the Court rejected.[2] Viasat explained just that in its October 8, 2024 update to the Court, and pointed Sandisk **to the exact claim terms** upon which the Court ultimately based its non-infringement summary judgment ruling. Dkts. 126, 127. At the October 15, 2024 status conference, this Court explicitly warned Sandisk not to go forward without viable infringement contentions under the Court's claim constructions and stated it would seriously consider granting fees if Sandisk did so. *See* Cherny Declaration ¶ 2.

---

[1] *See, e.g.*, Dkt. 274 at 11 (highlighting the Defendants' "constant shape-shifting in this case, which stands out even in a practice area in which that practice is unfortunately all too common").

[2] The Court's claim construction order adopted Viasat's proposed constructions for the "receiving an indication" limitation of the '667 patent and the "authenticating" limitation of the '400 patent. Dkt. 120 at 13-14, 18-19; *see also* dkt. 182 at 4. By the time of that order, Sandisk had known Viasat's proposed claim constructions for more than six months, but had not disclosed any infringement theories under the proposed constructions that the Court adopted. *See* dkt. 126 at 7.

1   Sandisk did not heed the Court's warning. Rather than voluntarily dismiss and appeal the

2   claim constructions upon which the Court eventually granted judgment, Sandisk charged ahead. It

3   spent the next two months reformulating its contentions and, at the very end of fact discovery, asked

4   the Court for a do-over. Dkt 146; *see also* dkt. 153 at 2. This last-minute morphing of its

5   infringement theories violated the Patent Local Rules, and the Court denied Sandisk leave to amend

6   on March 12, 2025. Dkt. 182. At this point, Sandisk surely knew it had no good-faith basis to keep

7   litigating these claims. Unfortunately, it again pressed on at the Court's and Viasat's expense.

8   Sandisk repeatedly tried to circumvent the denial of its motion to amend with last-minute

9   attempts to extend the case schedule—which the Court denied. Dkt. 181. Sandisk repeatedly filed

10   discovery motions, even well after the close of fact discovery, seeking information on unaccused

11   products; Judge Kang rejected each of those attempts. *See* dkts. 183, 196, 215. Faced with a schedule

12   that would not move, contentions that could not change, and repeated judicial admonishments that

13   the products it was targeting were not part of the case, Sandisk should have stood down.

14   Instead, Sandisk kept going. It served expert reports dependent on theories that were ***not*** in

15   its operative contentions—including the exact same theories the Court denied leave to add, dkt. 182,

16   and accusing products Judge Kang had denied discovery on. *See* dkts. 183 at 5-7, 215 at 8-9.[3] Viasat

17   spent millions responding to those reports, conducting expert discovery, seeking summary

18   judgment, filing Daubert motions, and preparing for trial on a case that in no way matched Sandisk's

19   operative infringement contentions. The Court was then forced to resolve multiple motions to strike

20   infringement theories that did not match Sandisk's contentions, granting the significant majority of

21   them, and ultimately granting summary judgment of non-infringement on the very same claim terms

22   Viasat identified in its October 8, 2024 letter to Sandisk and the Court.

23   Even giving Sandisk the benefit of the doubt that this case was appropriate to file in the first

24

25   [3]  *See, e.g.*, Dkt. 183 at 6-7 (finding, "[f]or purposes of discovery," that IPTV discovery was not
26   warranted because "Sandisk's infringement contentions make only passing reference to the mere
      existence of IPTV as an example (among other listed streaming services) of a media streaming
27   service"); dkt. 215 at 8-9 ("As the Court found in … the March 14 Order, SanDisk's '400 patent
      infringement contentions do not explicitly accuse the IPTV ***product*** of infringement. … [and t]he
28   '667 infringement claims charts ***nowhere*** mention or use the term IPTV[.]").

instance, Sandisk wasted an entire year of judicial and party resources. It was clear to Sandisk—just as it was clear to the Court and to Viasat—that the case had changed dramatically after the Markman order. Because Sandisk forced the parties and the Court to litigate for another year after the Court's October 15 warning, a fee award for the period after October 15, 2024 is warranted.

**Standing.** This case is also exceptional based on the way Sandisk litigated standing. From the outset it was clear that there were standing issues—yet instead of addressing those threshold issues with candor, Sandisk forced Viasat to file two Rule 12 motions and then conduct discovery to ascertain which parties had standing and which did not. Even when it was clear that SDT LLC did not have standing, Sandisk vexatiously obfuscated and misrepresented facts for no apparent reason. This wasted Viasat's and the Court's time and resources over a period of years.

Sandisk knew or should have known from the outset that SDT LLC (and its predecessor WDI) lacked standing. Yet Sandisk cagily asserted that "one or more" of the original five Plaintiffs held all substantial rights in the asserted patents. Dkt. 1 ¶¶ 1, 19, 35, 47. The Court noted that it was "hard to understand why Plaintiffs cannot (or will not) allege the[] basic jurisdictional facts" to show which named Plaintiff "holds which rights to which patents, and why." Dkt. 36 at 4-5. Sandisk did not listen. Rather than simply drop entities with no standing, Sandisk filed an amended complaint that claimed WDI, SDT LLC's predecessor, had "exclusionary rights" to the '667 and '400 patents—a position Sandisk later abandoned because those representations were false.[4] WDI and its successor SDT LLC never had "exclusionary rights" to the '400 or '667 patents, yet Sandisk waited until the very last minute to admit this in the discovery process. Dkts. 222-2, 222-3.

Once Sandisk finally admitted SDT LLC lacked exclusionary rights, Viasat asked Sandisk to explain why SDT LLC nevertheless had standing. Dkt. 220-4 at 4. Sandisk refused to dismiss SDT LLC from the case—first requiring a quid pro quo, and then only agreeing to drop SDT LLC from the caption rather than simply dismissing that entity. Dkt. 220-4 at 2. Viasat was therefore forced to move for summary judgment. Dkt. 222 at 6. Sandisk first indicated again that it would

---

[4] *See* Dkt. 38 ¶ 20 (alleging that "[e]ach of WDT, **WDI**, and SD3D possesses ***exclusionary rights***" to the '400 patent"); *id*. ¶ 37 (alleging that "[e]ach of WDT, **WDI**, and SD3D possesses ***exclusionary rights***" to the '667 patent).

1   dismiss SDT LLC in response to the summary judgment motion (Dkt. 258-3 at 4), but then, two

2   weeks later later, ***opposed*** the summary judgment request—even though Sandisk still could not

3   articulate what, exactly, gave SDT LLC standing. Sandisk vaguely claimed SDT LLC had undefined

4   "rights and interests" in the patents-in-suit that were neither "legal title" nor "exclusive licensee"

5   rights. Dkt. 252 at 3. The Court granted Viasat's motion for summary judgment that SDT LLC

6   lacked standing. Dkt. 274 at 37, 39. None of the judicial or party resources spent litigating standing

7   should ever have been necessary. Sandisk should have done what the Court encouraged at the very

8   outset: explain which plaintiff held which rights to which patent, and why. Refusing to do that at

9   the outset warrants fees.

10      Sandisk still cannot explain why, with no basis for infringement and no basis for SDT's

11  standing, it forged ahead. "[W]hen faced with several instances of suspicious conduct, … in a case

12  like this, … [t]he simplest explanation is usually the best one." *GoTV Streaming, LLC v. Netflix,*

13  *Inc.*, No. 222-CV-07556, 2024 WL 1832389, at *8 (C.D. Cal. Mar. 26, 2024) (ruling case

14  exceptional, and rejecting party's "strained and complex" explanation for conduct that "force[d] [its

15  counterparty] to needlessly expend trial resources"). The simple explanation here is this: Sandisk's

16  tactics were intended to needlessly drive up Viasat's litigation costs and try to force a settlement.

17  But Viasat should not bear the cost of Sandisk's litigation misbehavior.

18  **II.    LEGAL STANDARD**

19      In patent cases, a district court may award reasonable attorney fees to the prevailing party in

20  exceptional cases. 35 U.S.C. § 285. "The aim of [an award under] § 285 is to compensate a defendant

21  for attorneys' fees it should not have been forced to incur." *Kilopass Tech., Inc. v. Sidense Corp.*,

22  738 F.3d 1302, 1313 (Fed. Cir. 2013). To be entitled to an award under § 285, the prevailing party

23  must prove the case is "exceptional" by a preponderance of the evidence. *Octane Fitness*, 572 U.S.

24  at 554. An exceptional case is "one that stands out from others with respect to the substantive

25  strength of a party's litigating position (considering both the governing law and the facts of the case)

26  or the unreasonable manner in which the case was litigated." *Id*.

27      "District courts may determine whether a case is 'exceptional' in the case-by-case exercise

28  of their discretion, considering the totality of the circumstances." *Id*. In determining whether to

1  award fees, district courts can consider a nonexclusive list of factors, including "frivolousness,

2  motivation, objective unreasonableness (both in the factual and legal components of the case) and

3  the need in particular circumstances to advance considerations of compensation and deterrence." *Id.*

4  at 554 n.6 (citation omitted). "There is no precise rule or formula for making these determinations,

5  but instead equitable discretion should be exercised in light of [such] considerations…" *Id.* at 554

6  (quotation marks and citation omitted). "[O]ne consideration that can and often should be important

7  to an exceptional-case determination is whether the party seeking fees 'provide[d] early, focused,

8  and supported notice of its belief that it was being subjected to exceptional litigation behavior.'"

9  *Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1357 (Fed. Cir. 2019) (quoting *Stone Basket*

10 *Innovations, LLC v. Cook Med. LLC*, 892 F.3d 1175, 1181 (Fed. Cir. 2018)).

11 **III.    ARGUMENT**

12     **A.    Viasat Is The Prevailing Party**

13     Because the Court entered judgment "in favor of [Viasat] and against [Plaintiffs]," Viasat is

14 the prevailing party and is entitled to seek attorneys' fees under Section 285.  Dkt. 276 (docket text).

15     **B.    This Case Is Exceptional**

16     Section 285 was intended to deter conduct precisely like Sandisk's. Assuming this case was

17 not baseless from the start, a weak patent lawsuit can become baseless after case events make clear

18 that infringement is impossible. *AdjustaCam, LLC v. Newegg, Inc.*, 861 F.3d 1353, 1361 (Fed. Cir.

19 2017) ("No reasonable factfinder could conclude that Newegg's products infringe; therefore,

20 AdjustaCam's litigation position was baseless.").  For instance, in *Smart Wearable Techs. Inc. v.*

21 *Fitbit Inc.*, No. 17-CV-05068-VC, 2018 WL 3201751, at *1 (N.D. Cal. June 27, 2018), the court

22 found the case exceptional and awarded fees under § 285 because "even after [infringement] issues

23 were raised at the October 3 case management conference, and even after Fitbit's motion for

24 summary judgment was filed, Smart Wearable continued to assert infringement theories that were

25 outside the scope of its contentions and unsupported by any real evidence." This case is strikingly

26 similar, and Sandisk should have dismissed its case when it was clear that Sandisk's claims were

27 baseless. Because Sandisk refused to do so, fees under Section 285 are warranted.

28

This case is exceptional for at least two reasons. ***First***, Sandisk refused to dismiss despite its clearly untenable infringement theories, repeated warnings from Viasat, the Court's own admonition at the October 15, 2024 status conference, and the order denying Court's Sandisk's motion to amend its infringement contentions. ***Second,*** despite knowing from the outset of the case that SDT LLC (and its predecessor, WDI) had no exclusionary rights in the '400 or '667 patents, Sandisk doggedly claimed SDT LLC had standing to enforce those patents, forcing Viasat and the Court to expend needless resources on multiple motions to dismiss, jurisdictional discovery, a motion for summary judgment, and even a motion to substitute. Sandisk always knew SDT LLC had no exclusionary rights. It was warned repeatedly at the outset of this case that its approach to standing was needlessly cagey. Because Sandisk could and should have dropped SDT LLC at the outset, Viasat should recover all of its fees incurred litigating standing.

> **1.    Sandisk knew its infringement claims were meritless but consistently chose to litigate them in an unreasonable manner.**

Sandisk's infringement case was extremely weak from the outset of this case. But even assuming Sandisk believed it had a good faith basis to proceed prior to the Markman Order, Sandisk cannot claim a good-faith basis after the claims were construed. Viasat told Sandisk as much, in detail, as part of the October 8, 2024 case management statement. Dkt. 126. Even the Court warned Sandisk not to proceed without basis during the October 15, 2024 Case Management Conference. *See* Cherny Declaration ¶ 2. Since that hearing, Sandisk has litigated this case with full knowledge that its infringement positions as set forth in their mandatory contentions were not viable. Forcing Viasat to litigate Sandisk's baseless case for over a year and all the way to summary judgment warrants finding that this case is exceptional. *Smart Wearable Techs. Inc.*, 2018 WL 3201751, at *1; *AdjustaCam*, 861 F.3d at 1361; *Hunter's Edge, LLC v. Primos, Inc.*, No. 1:14-cv-00249-MHT-WC, 2016 WL 9244954, at *5 (M.D. Ala. Sept. 6, 2016) (awarding fees in part because "[w]hen Plaintiff's counsel was placed on notice, repeatedly, of the apparent lack of merit of Plaintiff's infringement claim, Plaintiff persisted in pressing its claim and thereby forced Defendant to file for summary judgment.").

> **(a)    Sandisk ignored Viasat's warnings in May 2023 and April 2024.**

Viasat first warned Sandisk about its "unsustainable" infringement reads in April and May 2023. For example, a May 2023 letter warned that "for the '667 patent, Plaintiffs point to no evidence" of "how 'an indication of the NAS device having a secure region' is received." Ex. A (May 19, 2023 Letter from P. Curran to L. K. Kieckhefer). This warning came more than two years before the Court granted summary judgment on exactly the same issue.

Viasat served its proposed constructions on February 15, 2024, and Plaintiffs then amended their infringement contentions on March 22, 2024. Dkt. 126 at 5; dkt. 153-2 at 2. On April 2, 2024, Viasat again raised concerns about Sandisk's infringement read, flagging that Sandisk's "contentions for the '400 patent fail to provide any evidence" for "the step of 'authenticating the portable data storage device, using at least the unique identifier, by communicating with the remote trusted server over the second data interface,'" and that "[t]he same is true for the limitation of the '667 patent requiring … receive an indication of the NAS device having a secure region comprising a buffer for streaming media on a separate display device.'" Dkt. 127. Again, these are the exact claim limitations upon which the Court based its summary judgment ruling 18 months later.

Put simply, correspondence from Viasat in May 2023 and April 2024 put Sandisk on notice that its claims were baseless, and should have prompted Sandisk to drop the case.  Indeed, Viasat specifically warned Sandisk in May 2023 that continuing to prosecute the lawsuit "would render this case ***exceptional***" and advised Sandisk in April 2024 that it "reserves all rights, including to ***seek fees for an exceptional case under Section 285***." Ex. A at 2 (emphasis added); Dkt. 127 at 2 (emphasis added).

Nevertheless, Sandisk plowed ahead and the parties briefed their respective claim construction positions in April and May 2024. Dkts. 103, 104, 105. The September 20, 2024, Claim Construction order tracked Viasat's proposal on the two terms Viasat had repeatedly told Sandisk were case dispositive. Dkt. 120.

### (b)    Sandisk ignored the Court's post-Markman admonishments not to proceed without viable infringement positions.

One week before the October 15, 2024 Case Management Conference following claim construction, the parties submitted a case management statement. Dkt. 126. Viasat explained in that

submission that Sandisk did not have viable infringement theories given the Court's claim construction on the two terms that ultimately proved dispositive. Dkt. 126. Viasat proposed "that Plaintiffs stipulate to non-infringement of the '400 and '667 patents" in view of the claim construction order, noting that Plaintiffs had no infringement contentions for the terms where Viasat's claim construction proposals had been adopted. *Id.* at 5. Even though Sandisk had Viasat's claim construction proposals in hand for more than six months, "[a]t no point in the last six months did Plaintiffs seek leave to amend their infringement contentions to articulate any alternative infringement theory that aligned with Viasat's proposed constructions," and Plaintiffs still had not "articulate[d] any theory of infringement under the constructions the Court ultimately adopted"— meaning "Plaintiffs have no viable theory of infringement upon which to proceed." *Id.* at 5-6. As Viasat explained, "[l]itigation is not an endless fishing expedition. After six months in search of a theory under Viasat's proposed constructions, ***Plaintiffs either have a theory or do not. They should articulate any alternative theory of infringement immediately, or if they have none, dismiss this case."*** *Id.* at 6 (emphasis added).

At the subsequent case management conference, the Court itself warned Sandisk that it should not continue to litigate if it did not have viable infringement positions in light of the Court's Markman rulings. It also specifically stated that it would seriously consider granting fees if Sandisk continued litigating without a proper basis. *See* Cherny Declaration ¶ 2. Sandisk did not mention any need or intention to amend its infringement contentions at that time.

As of October 15, 2024, Sandisk was indisputably on notice that it should not move forward with this case if it had not disclosed contentions adequately showing how Viasat's products infringed the patents-in-suit. Sandisk should have agreed to dismiss and appealed any claim constructions with which it disagreed. Because Sandisk did not do so, the Court should award Viasat its fees incurred after October 15, 2024.

### (c)    Sandisk should have known its case was doomed when its unreasonable, out-of-time motion to amend its failed.

Sandisk not only continued to litigate with no viable infringement contention under the Court's claim constructions—it did so in a way that was exceptionally burdensome to Viasat and to

1   the Court. For example, Sandisk waited until the end of January 2025, nearly four months ***after*** the

2   Markman hearing, to move to amend its infringement contentions. Dkt. 146. For the '400 patent,

3   Sandisk sought significant amendments to nearly every limitation, based on thousands of lines of

4   code Plaintiffs never indicated were at issue before that point.  *Id.* at 7, 12-14.  These proposed

5   amended contentions added entirely new accused products for the '400 patent that Sandisk

6   previously had disclaimed—Viasat's ***residential*** products. *Id.* at 17-18. The proposed amendments

7   to '667 contentions appeared to accuse materials that were older than the '667 patent, which would

8   require adding new "prior use" defenses under 35 U.S.C. § 102(b) and invalidity defenses under 35

9   U.S.C. § 102(a). *Id.* at 18-19. None of this met the standard for amendment in the Patent Local

10  Rules.

11      On March 12, 2025, the Court therefore denied Plaintiffs' request to amend (Dkt. 182),

12  stating that "Plaintiffs were not diligent in seeking to amend their infringement contentions to

13  address the Court's construction of the Group 2 Terms" (which represented six of the eight terms

14  Plaintiffs sought to amend) and "were not diligent in seeking leave to amend their infringement

15  contentions to add 'clarifying parentheticals.'" *Id.* at 6-7. The Court also stated it was "skeptical that

16  Plaintiffs previously identified Defendant's 'residential applications' as infringing products"

17  because "[d]uring the claim construction hearing, Plaintiffs repeatedly stated that the 'accused

18  devices are installed on airplane cabins.'" *Id.* at 7 n.8 (quoting Dkt. 117 at 72).

19      At that point, Sandisk doubtless knew it had no good-faith basis to continue the case. Its

20  original infringement contentions were not viable. Its untimely efforts to reframe the case had been

21  denied. Waiting until the eleventh hour to reverse its litigation position, and thereby forcing the

22  Court and Viasat to needlessly expend resources on positions Sandisk had not timely disclosed (and

23  knew it could not advance) warrants a finding that this case is exceptional. *See Kilopass Tech. Inc.*

24  *v. Sidense Corp.*, No. C 10-02066 SI, 2014 WL 3956703, at 13-14 (N.D. Cal. Aug. 12, 2014)

25  (finding infringement positions "objectively baseless" where patentee "ha[d] not presented the

26  Court with any legitimate reason for why it had to change its theory of infringement so late in the

27  litigation and without following the proper procedures for seeking amendment of its contentions");

28  *see also In re PersonalWeb Technologies LLC*, 85 F.4th 1148, 1154-63 (Fed. Cir. 2023) (affirming

1    award of § 285 fees where district court found that the infringement claim was "objectively

2    unreasonable" in view of claim preclusion precedent, and based on the patentee's "constantly

3    changing infringement theories … obfuscated the merits of its case and undermined its

4    trustworthiness and reliability before the district court").

5                    **(a)    Sandisk relitigates the denial of its motion to amend through**

6                    **untimely and unreasonable discovery motions and expert**

7                    **testimony.**

8          _Discovery motions._ The burden associated with Sandisk's refusal to drop its case post

9    Markman was multiplied by the flurry of belated motions Sandisk filed on discovery and scheduling

10   issues. With literally minutes remaining in the discovery period, Sandisk moved to extend the case

11   schedule and reopen fact discovery, seeking a do-over so it could continue to hunt for a workable

12   infringement theory. Dkt. 158; dkt. 166 at 5. The Court denied Sandisk's request, noting that

13   "[d]espite initiating this case in July 2022, Plaintiffs opted not to notice or take any fact depositions

14   until December 2024," instead waiting until the last minute "to serve a Rule 30(b)(6) notice with

15   104 deposition topics" and "twenty new discovery requests" that Plaintiffs then claimed necessitated

16   a discovery extension. Dkt. 181 at 3. Because "Plaintiffs could and should have acted sooner," the

17   motion was denied. _Id._

18         Along with its motion to extend the case schedule, Sandisk also raised substantive discovery

19   issues out-of-time. Dkt. 159. Judge Kang denied Sandisk's requests for new liability discovery,

20   including requests for new infringement evidence, expressly noting "the tactical timing and

21   sequence of Sandisk's motion [to compel]" which was "an evident attempt to create discovery issues

22   to support its motion to extend the fact discovery deadline[.]" Dkt. 183 at 8. Sandisk's requests for

23   new liability discovery were denied. _Id._

24         Nearly two months after the close of fact discovery Sandisk again moved to compel, seeking

25   discovery regarding Viasat's IPTV product and arguing the IPTV product had always been accused.

26   Dkt. 188.[5] Judge Kang denied the motion. Dkt. 215. Judge Kang examined Sandisk's operative

27   _____

28   [5]  This strategic shift appears to have been driven by a desire to obtain damages for the IPTV
     product. Even though plaintiffs lost their motion, Plaintiffs' damages expert nonetheless

infringement contentions and noted that "SanDisk's '400 patent infringement contentions do not explicitly accuse the IPTV product of infringement." Dkt. 215 at 8. He then stated that "SanDisk's arguments about the '667 patent contentions are even less compelling. The '667 infringement claims charts nowhere mention or use the term IPTV (even as a type of formatted content)." *Id.* at 9. None of this motion practice would have been necessary if Sandisk had not been trying to re-do its infringement contentions at the last minute to salvage its case.

    *Expert litigation.* Still undeterred, Sandisk openly defied the court's order denying leave to amend its infringement contentions by putting its untimely theories in its expert reports. This shows beyond doubt that Sandisk knew its operative contentions were not tenable—if they were, Sandisk would not need its experts to present several new theories of the case. Sandisk's use of experts to try to maintain a case it knew was baseless compels a finding this case is exceptional. *Kilopass Tech*, 2014 WL 3956703, at *13 ("[T]he fact that by the time the action reached the expert discovery stage, Kilopass and its infringement expert were unwilling to rely on [plaintiffs' existing] theory of infringement and instead attempted to assert a new theory of infringement" "supported" the "weakness of [plaintiffs' existing] theory of infringement" and supported a finding that the theory was "objectively baseless" and sanctionable).

    Viasat was forced to continue litigating already-rejected infringement theories. Indeed, nearly everything Viasat did during the expert discovery phase was necessitated by Sandisk's vexatious pursuit of these undisclosed theories. This incurred substantial expense: analyzing experts opinions, helping experts prepare rebuttal reports, taking depositions, and ultimately filing several motions to strike and a motion for summary judgment. The Court granted Viasat's motions to strike in substantial part, including striking multiple infringement theories that Sandisk already had been told were not properly part of the case. *First*, the Court granted Viasat's motion to strike Dr. Easttom's "Portable Storage Device" Theories. Dkt. 274 at 14-15. The Court observed in its order that "Sandisk [sought] to introduce, through Dr. Easttom, the ***same theories*** as to which the Court

---

incorporated IPTV in her damages computation—and apportioned more than 90% of Plaintiffs' total alleged damages to the unaccused "IPTV" product. *See* Dkt. 199 at 5.

previously denied leave to amend." *Id*. at 15. The Court "reiterate[d] its conclusion" finding that "Sandisk cannot ***circumvent the Court's prior ruling*** by arguing that Viasat 'was clearly on notice' of this theory." *Id. Second*, the Court granted Viasat's motion to strike Dr. Easttom and Ms. Kindler's Discussion of Viasat's IPTV Product. Dkt. No 274 at 15-18. The Court noted that Judge Kang had already denied Sandisk's discovery requests regarding IPTV, "finding that neither the '400 Patent infringement contentions nor the '667 Patent infringement contentions accused the IPTV product of infringement." *Id.* at 16-17. The Court again rejected Plaintiffs' arguments that IPTV was somehow disclosed. *Id. Third*, the Court granted in part Viasat's motion to strike Sandisk's '400 Patent Authenticating Theories. Dkt. 274 at 19-24. For Use Case #1, the Court struck "the software update theory [as] not disclosed in Sandisk's infringement contentions." *Id.* at 21. The Court also struck Use Cases #2 and #4 because they were not adequately disclosed and struck Use Case #3 because "Sandisk's infringement contentions failed to identify IPTV as an accused product." *Id.* at 24. None of these contentions were properly part of the case—yet Sandisk advanced all of them hoping to escape the deficient infringement contentions it had been warned about years before.

After striking most of Plaintiffs' infringement theories as undisclosed, the Court went on to grant summary judgment of non-infringement of both asserted patents—grounding its ruling on the ***same two claim limitations*** that Viasat had warned Sandisk about on May 9, 2023 and April 2, 2024, and again on October 8, 2024. The Court found that Plaintiffs' contentions failed to set forth a cognizable infringement theory satisfying the "receive an indication of the NAS device having a secure region" claim limitation of the '667 Patent because all theories were undisclosed or stricken. Dkt. 274 at 24-28. Likewise, for the '400 Patent, the Court, noted that it struck Dr. Easttom's opinions regarding the Inflight-Pre-stored, Inflight OnDemand, HomeonDemand, and IPTV use cases, and then found that Sandisk did not satisfy the "authenticate" limitation—indeed, that Sandisk did not even *address* the Court's construction of that term. *Id.* at 30-31.

Sandisk's behavior shows that the case is exceptional. Instead of dismissing its claims, Sandisk repeatedly attempted to find a backdoor for its belated infringement theories. But because patent litigation "is a burdensome venture for all parties involved," a patentee is "not free to pursue"

arguments that were "previously decided against" it. *Linex Techs., Inc. v. Hewlett-Packard Co.*, No. C 13-159 CW, 2014 WL 4616847, at *3-4 (N.D. Cal. Sept. 15, 2014) (sanctioning party for § 285 exceptional case where it attempted to relitigate similar patent claims in a new forum). If the patentee "nevertheless continue[s] to press" those rejected arguments, which it "should have known would not succeed," a Court may rule the case is exceptional and award fees. *Id.* at *5. Here, Sandisk's behavior after Markman and particularly in the face of losing the motion to amend its infringement contentions "reflects its unreasonable determination to forge ahead with prolonged litigation when it had no tenable theory of infringement." *Phigenix, Inc. v. Genentech, Inc.*, No. 15-CV-01238-BLF, 2018 WL 3845998, at *6 (N.D. Cal. Aug. 13, 2018).

### 2.    Sandisk unreasonably litigated its baseless standing position.

Sandisk's litigation conduct involving standing was equally unreasonable. Viasat has addressed that conduct at length elsewhere, including in its reply to Sandisk's response on the Court's Order to Show Cause (Dkt. 283), and Viasat asks the Court to consider those materials here. As previously noted (*id.*), the Court is authorized to award fees and costs for Sandisk's litigation misconduct pursuant to the Court's inherent authority. Alternatively, the Court is also entitled to award fees and costs for that conduct under Section 285. A case is exceptional when a plaintiff "knew or should have known" about an infirmity in its case "prior to filing suit." *Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, 293 F. Supp. 3d 1038, 1045 (N.D. Cal. 2018), *aff'd*, 756 F. App'x 997 (Fed. Cir. 2019); *see also Nat'l Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*, 676 F. App'x 967, 972 (Fed. Cir. 2017) (affirming district court's finding that case was exceptional where the plaintiff maintained lawsuit after it became clear the plaintiff lacked standing); *Alternative Petroleum Techs. Holdings Corp v. Grimes*, No. 3:20-CV-40-MMD-CLB, 2022 WL 3718863, at *5 (D. Nev. July 25, 2022) (similar). That was certainly the case here with respect to standing. For the three-plus years that Sandisk litigated this case on behalf of WDI and SDT LLC, Sandisk knew or should have known that the entity lacked standing. Refusing to acknowledge this fact resulted in extensive waste of court and party resources: two rounds of Rule 12(b)(6) briefing, an amended complaint, written discovery, deposition discovery, a summary judgment motion, and a motion to

1    substitute. Sandisk's unreasonable litigation tactics needlessly wasted Viasat's and the Court's

2    resources.

3        *Cave* is instructive. 293 F. Supp. 3d at 1047-48. There, the plaintiff had "actual notice of all

4    of the information necessary to conclude that" its position was meritless, and armed with that

5    knowledge, the plaintiff should have dismissed an aspect of its case. *Id.* But in *Cave*, as here, the

6    plaintiff nonetheless "filed an amended complaint … [that] continued to allege" a meritless position.

7    *Id.* And in *Cave*, as here, the plaintiff "did not withdraw" the allegations for an extended period,

8    forcing the parties to litigate baseless issues. *Id*. at 1048. The same behaviors that warranted an

9    "exceptional case" finding in *Cave* are all present here. Sandisk's positions on standing are

10    exceptional, and an award of fees and costs is warranted for all of Viasat's standing-related

11    expenses.

12        **C.    Viasat's Fees Are Reasonable**

13        Section 285 permits the award of "reasonable" attorneys' fees in an exceptional case. Federal

14    Circuit law controls the calculation of reasonable attorney fees in a patent infringement case. *Q-*

15    *Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1299 (Fed. Cir. 2004). "Normally this will

16    encompass all hours reasonably expended on the litigation." *Mathis v. Spears*, 857 F.2d 749, 755

17    (Fed. Cir. 1988). The Federal Circuit has endorsed the "lodestar" approach to calculating reasonable

18    attorneys' fees, which requires multiplying the number of hours reasonably expended by a

19    reasonable hourly rate. *Bywaters v. United States*, 670 F.3d 1221, 1225-26 (Fed. Cir. 2012). It has

20    also held that courts may consider factors such as the "amount involved and results obtained," the

21    sophistication of the work, and the client's fee agreement. *Id.* at 1231-32.

22        Viasat's attorneys and legal support staff at Quinn Emanuel have spent a total of 6,073.7

23    hours on this case from October 15, 2024, through submission of this motion, and total of 7,622.8

24    hours since the case was first filed. Curran Decl. ¶ 25. Those hours include time working on motions,

25    invalidity contentions, meeting and conferring, and preparing for trial. A detailed breakdown of

26    hours expended and the corresponding fees incurred at Quinn Emanuel's prevailing rates is shown

27    in the Declaration of Patrick D. Curran, which also sets forth the qualifications of the timekeepers

28    and the types of work performed.

1   The breakdown also includes reasonable costs that are recoverable under Section 285,

2   *Mathis*, 857 F.2d at 754, 757-58, but not under Fed. R. Civ. P. 54(d)(1). The total through

3   submission of this motion is $276,983.41. Curran Decl. ¶ 29. The Declaration and exhibit B thereto

4   also provide a breakdown of fees and costs incurred in two time periods: (1) fees and costs incurred

5   after October 15, 2024, as well as (2) standing-related fees and costs incurred prior to October 15,

6   2024.

7   **IV.    CONCLUSION**

8   For the reasons set forth above, Viasat asks that the Court find this case exceptional and

9   award Viasat its attorneys' fees and costs totaling approximately $9,688,854.80 to date (Curran Decl.

10  ¶¶ 27, 29), and if the Court deems it appropriate, for its additional fees and costs incurred through

11  the conclusion of this motion.

13  DATED: November 4, 2025              QUINN EMANUEL URQUHART &
                                         SULLIVAN, LLP

16                                       By  */s/ Patrick Curran*
                                            Patrick Curran

17                                       *Attorneys for Defendant Viasat Inc.*

1

## <u>CERTIFICATE OF SERVICE</u>

2       I hereby certify that on November 4, 2025, a copy of the foregoing document was served

3   via e-mail to all counsel of record who have appeared in this matter.

4

5

6   DATED: November 4, 2025                By  _/s/ Patrick Curran_____
                                                Patrick Curran

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28