L. Kieran Kieckhefer (SBN 251978)
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94105-0921
Telephone: 415.393.8337
Email: KKieckhefer@gibsondunn.com

Robert A. Vincent (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue Suite 2100
Dallas, TX 75201-2923
Telephone: 214.698.3281
RVincent@gibsondunn.com

Lillian J. Mao (SBN 267410)
GIBSON, DUNN & CRUTCHER LLP
310 University Avenue
Palo Alto, CA 94301-1744
Telephone: 650.849.5307
LMao@gibsondunn.com

Ahmed ElDessouki (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.2345
AElDessouki@gibsondunn.com

Brian M. Buroker (*pro hac vice*)
Shuo J. Zhang (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1700 M St, N.W.
Washington DC 20036-4504
BBuroker@gibsondunn.com
SZhang@gibsondunn.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| SANDISK TECHNOLOGIES, INC., et. al., <br><br> Plaintiffs, <br><br> v. <br><br> VIASAT, INC, <br><br> Defendants | Case No. 4:22-CV-4376-HSG-PHK <br><br> **SANDISK'S OPPOSITION TO VIASAT'S MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285** <br><br> Date: December 18, 2025 <br> Time: 2:00 p.m. <br> Dept.: Courtroom 2, 4th Floor <br> Judge: Hon. Haywood S. Gilliam, Jr. <br><br> **REDACTED VERSION** |

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ............................................................................ 1

II.   BACKGROUND ............................................................................ 3

    A.    Sandisk Reasonably Litigated Infringement Throughout the Case ............................ 3

    B.    Sandisk Reasonably Litigated Standing Throughout the Case .................................. 5

III.  LEGAL STANDARD .................................................................... 7

IV.  ARGUMENT ................................................................................ 8

    A.    Sandisk's Infringement Assertions Do Not Render This Case Exceptional ................ 8

        1.    Sandisk's Infringement Positions Were Always Objectively Reasonable ....... 8

        2.    Viasat's Letters Do Not Provide Notice of Exceptionality ............................. 9

        3.    Sandisk Reasonably Sought To Amend The Contentions After the *Markman* Order ........................................................................... 11

        4.    Viasat's Successful Motions to Strike Do Not Render This Case Exceptional ...................................................................................... 13

        5.    Viasat's Improper Conduct During Discovery Further Dooms Its Motion ................................................................................................. 17

    B.    Sandisk's Litigation of Standing Does Not Render This Case Exceptional ............... 19

        1.    Viasat Failed to Demonstrate that Sandisk's Position Was Meritless ........... 20

        2.    Viasat Failed to Demonstrate that Sandisk's Litigation Conduct Was Unreasonable ........................................................................................... 21

    C.    Viasat's Request for Its Entire Fees Is Not Supported ............................................. 23

    D.    Viasat's Fees Request Is Not Reasonable. ............................................................. 25

V.   CONCLUSION ............................................................................ 25

Gibson, Dunn &
Crutcher LLP

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adobe Sys. Inc. v. Wowza Media Sys.*,
No. 11-CV-02243-JST, 2014 WL 709865 (N.D. Cal. Feb. 23, 2014)...........................................15

*Advanced Micro Devices, Inc. v. LG Elecs., Inc.*,
2017 WL 2774339 (N.D. Cal. June 26, 2017) ..................................................................................11

*Alamo Grp., Inc. v. Fecon, Inc.*,
2021 WL 3660198 (S.D. Ohio Aug. 17, 2021)..................................................................................11

*Alternative Petroleum Technologies Holdings Corp. v. Grimes*,
No. 3:20-CV-04-MMD-CLB, 2022 WL 3718863 (D. Nev. July 25, 2022).....................................23

*AntiCancer, Inc. v. Pfizer, Inc.*,
769 F.3d 1323 (Fed. Cir. 2014)...........................................................................................................15

*Audatex N. Am. Inc. v. Mitchell Int'l, Inc.*,
2014 WL 4961437 (S.D. Cal. Oct. 3, 2014) ......................................................................................19

*Cave Consulting Group, Inc. v. Truven Health Analytics, Inc.*,
293 F. Supp. 3d 1038 (N.D. Cal. 2018) .............................................................................................23

*ChriMar Sys. Inc. v. Cisco Sys. Inc.*,
2015 WL 13449849 (N.D. Cal. May 14, 2015) ..................................................................................11

*Cook v. Meta Platforms, Inc.*,
Case No. 22-cv-02485-AMO (TSH), 2025 WL 251942 (N.D. Cal. Jan. 21, 2025) ......................18

*Emblaze, Ltd. v. Apple Inc.*,
2013 U.S. Dist. LEXIS 132169 (N.D. Cal. Sept. 12, 2013) ..............................................................11

*Enovsys LLC v. AT&T Mobility LLC*,
No. CV 11-5210 SS, 2016 WL 3460794 (C.D. Cal. Feb. 16, 2016) ...............................................13

*EON Corp.IP Holdings LLC v. Cisco Sys. Inc*,
No. 12-CV-01011-JST, 2014 WL 3726170 (N.D. Cal. July 25, 2014) ...........................................13

*Fenner Invs., Ltd. V. Hewlett-Packard Co.*,
No. 6:08-cv-273, 2010 WL 786606 (E.D. Tex. Feb 26, 2010)........................................................10

*Finjan, Inc. v. Blue Coat Sys., Inc*.,
No. 13-CV-03999-BLF, 2015 WL 3640694 (N.D. Cal. June 11, 2015) ..........................................15

*Finjan, Inc. v. Proofpoint, Inc*.,
No. 13-CV-05808-HSG, 2015 WL 9023166 (N.D. Cal. Dec. 16, 2015).........................................15

*Finjan, Inc. v. Sophos, Inc*.,
No. 14-CV-01197-WHO, 2016 WL 2988834 (N.D. Cal. May 24, 2016) ........................................10

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)......................................................................................................................24, 25

ii

*Intellectual Ventures I LLC v. Trend Micro Inc.*,
  944 F.3d 1380 (Fed. Cir. 2019) ..........................................................................2, 8

*Karmagreen, LLC v. MRSS Inc.*,
  2021 WL 7709160 (N.D. Ga. Nov. 26, 2021) ...............................................15, 17, 18

*Largan Precision Co. Ltd. v. Genius Elec. Optical Co. Ltd.*,
  No. 13–cv–02502, 2014 WL 6882275 (N.D. Cal. Dec. 5, 2014) ............................10

*Marx. V. Gen. Revenue Corp.*,
  568 U.S. 371 (2013) ........................................................................................8

*Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GMBH*,
  603 F.3d 943 (Fed. Cir. 2010) ........................................................................11

*Motorola, Inc. v. Interdigital Technology Corp.*,
  121 F.3d 1461 (Fed.Cir.1997) .........................................................................18

*National Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*,
  676 F. App'x 967 (Fed. Cir. 2017) ..................................................................23

*Octane Fitness v. ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2014) .........................................................................................7

*Oracle Am., Inc. v. Google Inc.*,
  No. C 10-03561 WHA, 2011 WL 4479305 (N.D. Cal. Sept. 26, 2011) .................15

*In re PersonalWeb Techs. LLC*,
  85 F.4th 1148 (Fed. Cir. 2023) ......................................................................17

*Polaris PowerLED Techs., LLC v. VIZIO, Inc.*,
  2022 WL 2189607 (C.D. Cal. Jan. 18, 2022) (Selna, J.) .........................8, 16, 17

*Power Mosfet Technologies, L.L.C. v. Siemens AG*,
  378 F.3d 1396 (Fed. Cir. 2004) ......................................................................18

*Process Control Corp. v. HydReclaim Corp.*,
  190 F.3d 1350 (Fed. Cir. 1999) ......................................................................16

*In re Protegrity Corp.*,
  2017 WL 747329 (N.D. Cal. Feb. 27. 2017) ..............................................1, 9, 17

*Realtime Adaptive Streaming LLC v. Sling TV, LLC*,
  113 F.4th 1348 (Fed. Cir. 2024).................................................................1, 11

*In re Rembrandt Techs. LP Pat. Litig.*,
  899 F.3d 1254 (Fed. Cir. 2018) ................................................................24, 25

*Rexnord Corp. v Laitram Corp.*,
  274 F.3d 1336 (Fed. Cir. 2001) ......................................................................16

*Romag Fasteners, Inc. v. Fossil, Inc.*,
  866 F.3d 1330 (Fed. Cir. 2017)................................................................1, 7, 18

SANDISK'S OPPOSITION TO VIASAT'S MOTION FOR ATTORNEYS' FEES
CASE NO. 4:22-CV-4376-HSG-PHK

Gibson, Dunn &
Crutcher LLP

*Saxon Innovations, LLC v. Nokia Corp.*,
   2009 WL 10676646 (E.D. Tex. Nov. 9, 2009) ...................................................................15

*SFA Sys., LLC v. Newegg Inc.*,
   793 F.3d 1344 (Fed. Cir. 2015) ..........................................................................................9

*Sicom Sys., Ltd. v. Agilent Techs., Inc.*,
   427 F.3d 971 (Fed. Cir. 2005) ...........................................................................................20

*Smart Wearable Technologies Inc. v. Fitbit Inc.*,
   No. 17-CV-05068-CV, 2018 WL 3201751 (N.D. Cal. June 27, 2018) .............................10

*SRI Int'l, Inc. v. Cisco Systems, Inc.*,
   930 F.3d 1295 (Fed. Cir. 2019) ........................................................................................25

*Stone Basket Innovations, LLC v. Cook Medical LLC*,
   892 F.3d 1175 (Fed. Cir. 2018) ....................................................................................9, 11

*Taction Tech., Inc. v. Apple Inc.*,
   No. 21-CV-812 TWR (JLB), 2023 WL 6988420 (S.D. Cal. Oct. 17, 2023) ...................13

*Thought, Inc. v. Oracle Corp.*,
   No. 12-CV-05601-WHO, 2016 WL 4426889 (N.D. Cal. Aug. 22, 2016) ......................13

*Tubular Rollers, LLC v. Maximus Oilfield Prods., LLC*,
   No. 4:19-CV-03113, 2021 WL 5987091 (S.D. Tex. Dec. 16, 2021) .................................7

*Water Techs. Corp. v. Calco, Ltd.*,
   850 F.2d 660 (Fed. Cir. 1988) ..........................................................................................25

*Wi-Lan Inc. v. LG Elecs., Inc.*,
   2013 WL 2322483 (S.D.N.Y. May 10, 2013) ..................................................................18

*WiAV Sols. LLC v. Motorola, Inc.*,
   631 F.3d 1257 (Fed. Cir. 2010) ........................................................................................21

*X One, Inc. v. Uber Techs., Inc.*,
   440 F. Supp. 3d 1019 (N.D. Cal. 2020) ...........................................................................16

**Rules**

Fed. R. Evid. 408 .....................................................................................................................23

Patent L.R. 3-6 ........................................................................................................................11

SANDISK'S OPPOSITION TO VIASAT'S MOTION FOR ATTORNEYS' FEES
CASE NO. 4:22-CV-4376-HSG-PHK

Gibson, Dunn &

Crutcher LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

Viasat's motion for "exceptional case" attorneys' fees should be denied in its entirety. Viasat seeks its fees for the entire case, but far from proves—or even tries to prove—that fees would be warranted for the entire case. Viasat contends only that Sandisk should have dropped its infringement claims after the Court issued its Markman opinion last year and should have handled a non-dispositive standing dispute differently. Neither issue warrants fees, let alone fees for the entire case.

With respect to infringement, Viasat does not explain why Sandisk's positions were allegedly baseless or why Sandisk was on notice that its positions were allegedly baseless. Viasat headlines the statement in the Court's October 21, 2025 order that the "constant shape-shifting in this case . . . stands out even in a practice area in which that practice is unfortunately all too common" (Dkt. 275 at 11), but Sandisk did not abandon its original positions or belatedly shift to new ones. Sandisk's theories were supported by the infringement contentions but, according to the Court, not sufficiently supported to survive summary judgment. "Fights over the adequacy of infringement and invalidity contentions are commonplace in patent litigation and are not inherently indicative of unreasonable conduct." *In re Protegrity Corp.*, 2017 WL 747329, *6 (N.D. Cal. Feb. 27. 2017).

In addition, Viasat failed to prove and this Court has not found that Sandisk lacked an underlying basis to assert infringement. The purported notice letters that Viasat cites did not articulate or substantiate Viasat's non-infringement positions, and Viasat did not serve any discovery responses actually explaining the bases for non-infringement until the close of fact discovery in February 2025. Conclusory § 285 letters like Viasat's do not put a patentee on notice that its arguments "are so meritless as to amount to an exceptional case." *Realtime Adaptive Streaming LLC v. Sling TV, LLC*, 113 F.4th 1348, 1358 (Fed. Cir. 2024). Viasat cannot claim that this case was baseless and that fees should be awarded when Viasat itself could not articulate explanations for its alleged non-infringement and withheld substantial evidence and witnesses until the end of fact discovery. *Romag Fasteners, Inc. v. Fossil, Inc.*, 866 F.3d 1330, 1340 (Fed. Cir. 2017) ("the conduct of the prevailing party that is seeking attorney's fees" is part of the "totality of circumstances" to be considered).

Nor did the procedural history of the Court's orders serve as notice that Sandisk was proceeding without a reasonable basis for infringement. Sandisk reasonably and in good faith believed that its

operative infringement contentions supported the infringement theories in its expert report. When the Court denied Sandisk's request to supplement its contentions, Sandisk adhered to the theories it believed were already disclosed in the operative contentions. Further, Sandisk did not violate or attempt to circumvent any court orders on issues that the Court had resolved. Rather, the Court decided the issues in this case incrementally, as is typical of litigation, and Sandisk continued to pursue its claims in compliance with each order. For example, the magistrate judge's discovery orders ***explicitly did not decide*** the issue of what products were accused of infringement (*e.g.*, Dkt. 215 at 10), and so Sandisk reasonably continued to include Live TV/IPTV as part of this case. None of Sandisk's infringement positions, at any time, have been so baseless or unreasonably litigated to render the case exceptional.

Similarly, with respect to standing, Viasat fails to show that Sandisk's position was baseless. Sandisk never admitted that SDT LLC lacks standing—Sandisk continues to maintain that SDT LLC is a proper party to this case. Viasat also failed to show that Sandisk litigated the issue unreasonably. Viasat continues to repeat a misleading narrative (Dkt. 283) that Sandisk has debunked each time. Viasat does so by selectively citing and mischaracterizing Sandisk's emails while ignoring the subsequent emails that make clear Sandisk's intent was not what Viasat says it is. For example, Viasat points to Sandisk's May 30 email to argue that Sandisk knew Viasat would not change its position on SDT LLC (*id.* at 2), but Viasat ignores that Sandisk followed up with a draft stipulation on June 5, which Viasat rejected (Dkt. 220-4 at 1). Second, Viasat claims that Sandisk "inexplicably opposed [Viasat's] motion for summary judgment" (Dkt. 283 at 2) without acknowledging that Sandisk sent Viasat a ***another stipulation*** in an attempt to moot the motion and ***Viasat again refused*** (Dkt. 259-2). Sandisk took the reasonable position that it needed either a stipulation from Viasat or a Court order for SDT LLC's dismissal (Dkt. 278). Tellingly, Viasat does not dispute that it was never willing to agree to a stipulation (Dkt. 283), thus the issue must be decided by the Court. Even if—despite Sandisk's repeated explanations of good faith—this Court disagrees with Sandisk's conduct, a finding that "one discrete portion" of a case stands out is insufficient; the proper inquiry is whether those circumstances are "such that, when considered as part of the totality of circumstances in the case, the case stands out as exceptional." *Intellectual Ventures I LLC v. Trend Micro Inc.*, 944 F.3d 1380, 1383 (Fed. Cir. 2019).

Gibson, Dunn & Crutcher LLP

Because Sandisk took reasonable positions and litigated them reasonably, no award of fees is warranted. Viasat's cases do not support an award of fees given the facts in this case—all address distinguishable facts—and Sandisk's cases make clear no award of fees should be awarded at all. Viasat's motion should be denied in its entirety.

## II.   BACKGROUND

Viasat raises two issues as the backbone for its fee request: Sandisk's infringement allegations and Sandisk's position as to standing. Mot. at 1-4. Neither issue supports a fee request in isolation or considered collectively. Below is a factual background for each.

### A.   Sandisk Reasonably Litigated Infringement Throughout the Case

Sandisk and its expert ensured that the expert opinions adhered to the theories that it and the expert believed were disclosed in the operative March 2024 infringement contentions ("Operative Contentions"). Declaration of Brian M. Buroker ("Buroker Decl.") ¶¶ 4-6, 17; Declaration of William C. Easttom II ("Easttom Decl."), ¶¶ 3-6.

Live TV/IPTV:[1] The Operative Contentions reference Live TV/IPTV *at least 75 times.* Declaration of L. Kieran Kieckhefer ("LKK Decl."), ¶¶ 4-5. Thus, Sandisk and Dr. Easttom reasonably believed that Live TV/IPTV was disclosed as an infringing use case. The '400 Patent contentions recited that the accused systems "provide access to media streaming services (*e.g.*, IPTV . . . ), via the Internet, to user devices (*e.g.*, a smart phone or laptop) and/or seat back devices connected to the '400 Accused Products, and thereby provide each device with access to secure media (*e.g.*, IPTV. . )." Dkt. 189-3 at 3. The contentions also explicitly identified ███████████ and "Viasat IPTV" as examples of the claimed "remote trusted server" and "media content" elements. *Id.* at 25-26, 31-32, 34, 35, 47, 56, 57, and 65. The '667 Patent contentions recited that the accused VCDS architecture provided "Live Video" content, including "IPTV." Dkt. 189-4 at 7. The contentions further describe "Live TV" as "███████████" to provide "live video delivery across the network," ███████████ ████████ as the "███████████" device in the accused products. *Id.* at 10, 28.

---

[1] Viasat's documents and witnesses use the terms IPTV, Live TV, In-flight TV, and Live Video interchangeably to refer to the same thing—i.e., the provisioning of IPTV/Live TV. Dkt. 231-2 at 6 (citing Dkt. 231-12 (Edillon Dep. Tr. at 28:19-21 ("The first is our live TV product. Sometimes that is referred to as IPTV; they are synonymous at Viasat."))).

The contentions also explicitly discuss how user seatback devices may "[r]eceive IPTV feed from Viasat," and the "launch of [Viasat's] international live TV," further discussing IPTV infringes the '667 patent. *Id*. at 61, 64. Dr. Easttom thus opined on IPTV/Live TV as an infringing use case.

'400 Patent: Sandisk reasonably believed that the Operative Contentions sufficiently disclosed a DOE analysis for the term "portable," because the contentions explicitly state that seatback devices "perform substantially the same function in substantially the same way to obtain substantially the same result," and cited Viasat documents to support that. Dkt. 189-3 at 11–13. Dr. Easttom thus opined that seatback devices "perform the substantially the same function in substantially the same way to obtain substantially the same result as the claimed portable data storage device." Dkt. 199-2, ¶ 170.

With respect to the "authentication" element of the '400 Patent, Sandisk reasonably believed that the "████████████" and the "████████████████" theories were sufficiently disclosed in the Operative Contentions.

- <u>Software Update</u>: The contentions explicitly identified ████████████████████, a satellite network between the onboard servers and remote ground servers, and "████████████" as a "remote trusted server" that can "update[] via satellite." Dkt. 189-3 at 17, 30, 33, 48, 49. Dr. Easttom accordingly opined that the ████████████████ would meet the requirements of the "authentication" element as a specific form of remote authentication using the identified structures. Dkt. 199-2, ¶¶ 249–252.

- ████████████████ The contentions plainly identified "████████████" as an example of "a remote trusted server" in both text and in a figure for 1[b], which is necessarily "the remote trusted server" in 1[e] based on the black letter patent law principle of antecedent basis. Dkt. 189-3, 34. Accordingly, Dr. Easttom opined that the ████████████ is an example of the required "remote trusted server." Dkt. 199-2, ¶ 254-256. Although the Court found that "identifying certain servers' in relation to limitation 1[b] is not the same as identifying them in relation to limitation 1[e]," the remote trusted server that was identified in 1[e] necessarily refers back to "a remote trusted server" that was identified in 1[b]. *See infra*, IV.A.4.

'667 Patent: With respect to the "indication" element of the '667 Patent, Sandisk reasonably believed that both the "Encryption" and "█████████████████" theories were sufficiently disclosed in the Operative Contentions.

- Encryption:  The contentions explicitly discussed that the accused Viasat servers include "attached external storage" for "caching and serving content…required to 'encrypt the attached storage device.'" Dkt. 189-4, 40.  The external storage devices are "encrypt[ed]" to protect the stored media content.  *Id*., 41.  The contentions further cited to source code files (*id.* at 49)— which can be sufficient disclosure under NDCA case law, and was acknowledged as such by this Court. Dkt. 275, 12 n.9.  The contentions cited the ████████████ source code file that contains Boolean values related to this theory. Dkt. 189-4, 49.  Accordingly, Dr. Easttom opined that encryption reflects an "indication" of a secure region as required by the claims, based on the source code file █████████████ that was included in the files identified in the contentions as showing that an indication was present.  Dkt. 199-2, ¶¶ 554-555.

- ███████████ Theory: The contentions explicitly discussed Viasat's "████████████████ █████' which █████████████████ and explains the process by which ████████████ ████████████████████ Dkt. 189-4, 46; *see also id*., 58-59, 81-82.  The contentions further cited to the ███████████████ source code file that contains Boolean values relates to this theory. Dkt. 189-4, 49.  Dr. Easttom thus opined that subfolders containing DRM-encrypted files reflect an "indication" as required by the claims and further discussed the source code file █████████████ Dkt. 199-2, ¶¶ 557-558, 562, 571-572.

**B.     Sandisk Reasonably Litigated Standing Throughout the Case**

Merits: When Sandisk filed suit in July 2022, it named SanDisk Technologies LLC ("SDT LLC") as a plaintiff because, at the time, SDT LLC owned asserted U.S. Patent No. 8,504,834 (the "'834 Patent")—a fact that has never been in dispute.  Sandisk also named Western Digital Ireland Ltd. ("WDI") as a plaintiff because it believed that WDI was a co-owner of the '400 and '667 Patents, for the reasons explained in its Response to the Order to Show Cause (Dkt. 278) and opposition to Viasat's motion for summary judgment on standing (Dkt. 255-1).  Sandisk promptly disclosed to Viasat all of the facts and evidence relevant to standing—first in a production of documents on February 23, 2023,

before discovery even opened, and in a January 17, 2024 interrogatory response after discovery opened in November 2023. Dkt 251-1 ¶ 3; Dkt. 251-2. Viasat was apparently satisfied with these disclosures—according to its fees declaration, its counsel spent only minimal time relating to standing in early 2024 without following up until this year. Dkt. 284-2 (Curran Decl.) ¶ 26. When Viasat complained about Sandisk's interrogatory response on February 3, 2025, Sandisk promptly supplemented on February 13, 2025 with additional explanation of the previously disclosed facts and evidence. Dkt. 278-1, ¶ 7. Sandisk also provided corporate deposition testimony about the patents' chain of title on February 14, 2025 in response to Viasat's Rule 30(b)(6) deposition notice served on December 17, 2024. Dkt. 251 at 2. Moreover, while not required to do so, Sandisk even created *a helpful flowchart* in advance of its corporate deposition to further explain the distribution of rights in the asserted patents and provided it to Viasat at the deposition to further aid Viasat's understanding of the distribution of rights. LKK Decl. ¶ 19; Dkt. 220-3.

Meanwhile, on October 23, 2023, WDI merged with SDT LLC—thereafter, SDT LLC had two bases to remain in this case. Dkt. 121 at 2. Nothing changed with respect to SDT LLC's status until December 27, 2024, when SDT LLC assigned the '834 Patent to Sandisk Technologies, Inc. ("SDT Inc."). Dkt. 269 at 2. Thereafter, SDT LLC was properly a party in the case (1) because Sandisk believed SDT LLC had ownership rights in the '400 and '667 Patents, and (2) pending formal substitution with SDT Inc., SDT LLC was the party in whose name the '834 Patent claim had been brought.

Sandisk's February 2025 disclosures did not reflect any changes in Sandisk's position and were served simply to explain previously-disclosed facts about chain of title in a way that addressed Viasat's recently-raised questions. Dkt. 278-1 ¶ 7; *compare* Dkt. 251-2 *with* Dkt. 220-3. Sandisk's disclosures certainly did not include any admission that SDT LLC lacked exclusionary rights, nor does Sandisk believe that SDT LLC lacks exclusionary rights. The two exhibits that Viasat cites (Dkts. 220-3, 220-4) contain *no mention* of "exclusionary rights" or any admission related thereto. One is Sandisk's supplemental interrogatory responses, and one is a diagram Sandisk's corporate designee used to illustrate how various rights in the asserted patents had been transferred over time. *Id.* Both simply restate the same chain-of-title facts that Sandisk disclosed a year prior. *See* Dkt. 251-2.

<u>Potential Dismissal of SDT LLC:</u>  Viasat requested that SDT LLC be dismissed from the case. While not required to resolve the dispute since Sandisk believed SDT LLC was a necessary party, Sandisk was amenable to an amicable resolution because, other than standing, SDT LLC did not affect any other issue in the case.  In order to resolve the dispute, Sandisk needed a stipulation from Viasat. The parties attempted, but failed, to stipulate to Viasat's request that SDT LLC be dismissed.  Dkt. 271 at 4; Dkt. 278 at 3-4; Dkt. 278-1, ¶¶ 8-10.  On May 28, 2025, Sandisk stated it understood "Viasat agrees that the remaining Plaintiffs have standing to maintain this action if [SDT LLC] were dismissed from the case."  Dkt. 220-4 at 3.  Sandisk immediately clarified on May 30, 2025 that what it sought was agreement that "Viasat would not contend that the case should be dismissed *for failure* to join SDT LLC as a party."  *Id.* at 2 (emphasis added).  On June 4, 2025, Sandisk provided a draft stipulation to drop SDT LLC from the case.  *Id.* at 1.  Viasat refused and asked Sandisk to confirm it "intend[s] to dismiss [SDT LLC's] claims from the action with prejudice."  *Id.*  On June 25, 2025, after Viasat filed a motion for summary judgment on standing, Sandisk again offered a stipulation to moot the motion. Dkt. 259-2 at 3.  Viasat again refused and insisted instead on a one-way dismissal, which Sandisk was not proposing.  Viasat argued that "Plaintiffs finally are willing to dismiss SDT LLC with prejudice" and insisted that Sandisk either "agree to reimburse Viasat for fees and costs" relating to standing or "fil[e] with the court (1) a request to dismiss SDT LLC . . . and (2) an explanation for Plaintiffs' good-faith basis to have named SDT LLC as a plaintiff."  *Id.* at 2.

## III.    LEGAL STANDARD

35 U.S.C. § 285 authorizes an award of "reasonable attorney fees" only "in exceptional cases." An exceptional case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated[,] considering the totality of the circumstances."  *Octane Fitness v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).  The totality of the circumstances "includes the conduct of the prevailing party that is seeking attorney's fees."  *Romag Fasteners*, 866 F.3d at 1340.  In assessing the strength of a party's position, the relevant question "is not whether [the position] is *correct*; rather the relevant question is whether it is *reasonable*."  *Munchkin, Inc. v. Luv n' Care, Ltd.*, 960 F.3d 1373, 1379 (Fed. Cir. 2020).  "Merely losing a case is not enough" for an

1   award of fees; the traditional "American" rule is still that "each party bears its own fees and costs, win

2   or lose." *Tubular Rollers, LLC v. Maximus Oilfield Prods., LLC*, No. 4:19-CV-03113, 2021 WL

3   5987091, *1-*2 (S.D. Tex. Dec. 16, 2021) (citing *Marx. V. Gen. Revenue Corp.*, 568 U.S. 371, 382

4   (2013)).  "[F]ocus[ing] on whether one discrete portion of the case stood out . . . is not the appropriate

5   analysis." *Trend Micro*, 944 F.3d at 1383 (reversing fee award).  Rather, "[t]he district court must

6   determine whether the conduct, isolate or otherwise, is such that when considered as part of and along

7   with the totality of circumstances, the case is exceptional." *Id.* at 1384.

8   **IV.   ARGUMENT**

9         In support of its fees request, Viasat argues that this case is exceptional in two areas—Sandisk's

10  infringement allegations and Sandisk's position as to standing.  Mot. at 1–4.  But Sandisk's substantive

11  positions on infringement and standing were objectively reasonable at every stage of this case.

12  Sandisk's litigation conduct in pursuing its factually-supported claims was reasonable and warranted

13  under the circumstances.  Viasat identifies nothing more than run-of-mill patent disputes.  Viasat's

14  request for fees should be denied.

15        **A.     Sandisk's Infringement Assertions Do Not Render This Case Exceptional**

16              **1.     Sandisk's Infringement Positions Were Always Objectively Reasonable**

17        At all times, Sandisk's position that Viasat's products infringe was objectively reasonable and

18  supported by specific evidence identified in the Operative Contentions.  Viasat only moved to dismiss

19  one patent (the '843 Patent, not raised for purposes of fees) on subject matter eligibility grounds and

20  did not substantively move to dismiss any infringement claims for the '400 or '667 patents.  Dkt. 40.

21        Viasat's motions for summary judgment of infringement were predicated on the Court striking

22  expert opinions, and thus the Court did not consider the reasonableness of Sandisk's infringement po-

23  sitions in view of the totality of the evidence of infringement.  Dkt. 275.  Instead, the Court struck

24  certain evidence and only analyzed whether the remainder would be sufficient for a finding of infringe-

25  ment.  *Id.*  The Court has never substantively analyzed all of Sandisk's infringement evidence to deter-

26  mine whether the total was insufficient to prove infringement.  Thus, the Court did not rule on the

27  "relative strength and reasonableness" of Sandisk's ***infringement*** positions.  *Munchkin,* 960 F.3d at

28  1379 ("the relevant question is whether [the position was] reasonable.").  Viasat's claims of frivolity

"must be reasonably clear without requiring a 'mini-trial' on the merits for attorneys' fees purposes." *Polaris PowerLED Techs., LLC v. VIZIO, Inc*., 2022 WL 2189607, at *6 (C.D. Cal. Jan. 18, 2022) (Selna, J.) (quoting *SFA Sys., LLC v. Newegg Inc*., 793 F.3d 1344, 1348-49 (Fed. Cir. 2015)); *Protegrity*, 2017 WL 747329, at *3. Here there is no such ruling—whatsoever—and a mini-trial on the merits (meaning an analysis of all of Sandisk's evidence) to make such a determination has not occurred.

Moreover, Viasat should not be awarded fees prior to the Markman order. Viasat made clear on the pre-motion meet and confer that, other than the standing issue, it was ***only*** seeking fees following the Markman order (LKK Decl. ¶ 3), and, while vague, Viasat's motion appears to concede that it has no basis to seek fees regarding Sandisk's infringement positions prior to this Court's *Markman* Order and subsequent October 15, 2024 Case Management Conference. *See, e.g*., Mot. at 3 (arguing that "the case had changed dramatically after the Markman order" and "a fee award for the period after October 15, 2024 is warranted"). Viasat only addresses two claim terms in its motion (the "authenticate" and "indication" terms), and Viasat does not argue that Sandisk's proposed interpretations of these terms were unreasonable, nor does Viasat identify any litigation conduct in advancing these infringement positions prior to October 2024 that could possibly be considered exceptional. Indeed, the Court found that Viasat's construction of the "authenticate" term was "more consistent with the intrinsic record" (Dkt. 120 at 13), and it was "persuaded by Viasat's argument" regarding the "receive an indication" term (*id*. at 19), but did not hold Sandisk's arguments to be meritless. Viasat also does not argue that Sandisk acted unreasonably in litigating this case under its proposed constructions. Thus, Viasat failed to identify any actions whatsoever that would support fees for the period prior to October 2024. *See e.g.*, *SFA*, 793 F.3d at 1348 ("In *Octane Fitness*, the Supreme Court made clear that it is the 'substantive *strength* of the party's litigating position' that is relevant to an exceptional case determination, not the *correctness* or eventual success of that position."); *Stone Basket Innovations, LLC v. Cook Medical LLC*, 892 F.3d 1175, 1180 (Fed. Cir. 2018) (A "strong or even correct litigating position is not the standard by which we assess exceptionality.") (cleaned up).

### 2.    Viasat's Letters Do Not Provide Notice of Exceptionality

Viasat's purported "warnings" to Sandisk (Mot. at 6) did not put Sandisk on notice of any flaws in its infringement theories and do not demonstrate that Sandisk proceeded with a baseless position.

None of Viasat's purported notices provided any substantive explanation as to Viasat's non-infringement positions; rather, they merely identified allegedly deficient claim limitations with no explanation. After receiving Viasat's notices, Sandisk repeatedly asked Viasat for such an explanation, and Viasat refused every time. Dkts. 284-3, 126, 127; LKK Decl. ¶¶ 8-13; Exs. A-C. On April 7, 2023, Sandisk even served an interrogatory request seeking Viasat's non-infringement positions, but Viasat refused to provide a substantive response for years. *Id.*, Dkts. 168-2, 167-3.[2]

Similarly, Viasat never requested or moved to compel that Sandisk supplement its Operative Contentions. *Largan Precision Co. Ltd. v. Genius Elec. Optical Co. Ltd.*, No. 13–cv–02502, 2014 WL 6882275 *7 (N.D. Cal. Dec. 5, 2014) (denying motion to strike because "[movant] should have asked [opposing party] for more specificity before the close of discovery and—if necessary—sought intervention from the Court, instead of moving to strike [opposing party's] expert report . . ."); *Finjan, Inc. v. Sophos, Inc*., No. 14-CV-01197-WHO, 2016 WL 2988834, at *12 (N.D. Cal. May 24, 2016) (denying motion to strike where movant failed to seek "more specificity"); *Fenner Invs., Ltd. V. Hewlett-Packard Co.*, No. 6:08-cv-273, 2010 WL 786606, at *3 (E.D. Tex. Feb 26, 2010) ("A defendant cannot lay behind the log until late in the case and then claim it lacks notice as to the scope of the case or the infringement contentions."). Viasat also never moved for an early summary judgment motion—which the Court suggested it could do at the case management conference if it had a basis to do so. Buroker Decl. ¶ 3. Thus, Viasat's claims that Sandisk's infringement theories were baseless is completely undercut by Viasat's conduct—Viasat could not and did not articulate even one factual basis for non-infringement until the ***end of fact discovery***.

Indeed, the very case Viasat relies on, *Smart Wearable Technologies Inc. v. Fitbit Inc.*, No. 17-CV-05068-CV, 2018 WL 3201751, at *1 (N.D. Cal. June 27, 2018), confirms that no fees are warranted here. In that case, the defendant gave "notice of ***why*** the accused devices did not infringe on the theories that Smart Wearable had asserted," including "a Fitbit engineer's declaration, an invitation to inspect the source code . . . , and the bill of materials for an accused device." *Id.* (emphasis added). In contrast, Viasat did not provide any explanation for why Sandisk's claims were purportedly baseless, much less

---

[2] Viasat finally supplemented at the end of fact discovery in February 2025. Dkts. 167-3 at 24-58, 168. Sandisk and its expert analyzed those positions and concluded, as explained in Dr. Easttom's 300-page expert report, that Viasat infringed. Easttom Decl., ¶¶ 4-7; Dkt. 199.

any supporting evidence of non-infringement.  The Federal Circuit has also repeatedly held that when a § 285 letter, like Viasat's, "contains no analysis sufficient to put the patentee on notice that its arguments . . . are so meritless as to amount to an exceptional case," it is "not sufficient to support an exceptionality finding." *Realtime*, 113 F.4th at 1358; *Stone*, 892 F.3d at 1181 (affirming denial of fees where the defendant "fail[ed] to send any communication to [plaintiff] that highlighted and set out *with precision* the specific . . . argument on which [it] now relies for its assertion that [plaintiff] should have known its conduct was 'clearly unreasonable'") (emphasis added).

### 3. Sandisk Reasonably Sought To Amend The Contentions After the *Markman* Order

Sandisk sought leave to amend its infringement contentions because a party may revise its contentions without acting in bad faith in light of a claim construction ruling. *Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GMBH*, 603 F.3d 943, 955 (Fed. Cir. 2010) (finding no bad faith and reversing fee award where the patentee revised its theory of infringement in light of the district court's claim construction ruling); *Alamo Grp., Inc. v. Fecon, Inc.*, 2021 WL 3660198, at *5 (S.D. Ohio Aug. 17, 2021) (denying fees where plaintiff "adopted increasingly strained interpretations of [the claims] to accuse [] new products of infringing," and where alleged "'shifting sands' [] extended the litigation").  While the Court found that Sandisk did not amend its contentions **soon enough**—and penalized Sandisk for the delay—it was plainly reasonable for Sandisk to *ask* for leave to amend at that time.

First, the timing of Sandisk's proposed amendments was supported by the Local Patent Rules and the case law in this district.  *See e.g.*, Patent L.R. 3-6 ("A claim construction by the Court different from that proposed by the party seeking amendment" could constitute good cause for amendment.); *Advanced Micro Devices, Inc. v. LG Elecs., Inc.*, 2017 WL 2774339, at *4 (N.D. Cal. June 26, 2017) (finding patentee was diligent in amending its contentions *after* the Markman order issued adopting the defendant's proposed construction); *ChriMar Sys. Inc. v. Cisco Sys. Inc.*, 2015 WL 13449849, at *4 (N.D. Cal. May 14, 2015), *report and recommendation adopted*, 2015 WL 13450357 (N.D. Cal. June 8, 2015) ("Rule 3-6(a) does not require a party to seek leave to amend prior to issuance of the final claim construction order."); *Emblaze, Ltd. v. Apple Inc.*, 2013 U.S. Dist. LEXIS 132169, at *3 (N.D.

Gibson, Dunn &
Crutcher LLP

Cal. Sept. 12, 2013) (explicitly rejecting the argument that defendant was required to amend its contentions when it first learned of the plaintiff's constructions, and holding that this district's Local Patent Rule, "[i]n contrast perhaps to the standards of other districts, imposes no different standard *when* the different claim construction was first proposed by the opposing party.") (emphasis added).

Second, Sandisk's alleged delay in amending its contentions following the Markman order was a direct result of Viasat's six-week delay in providing the promised "source code mapping"—i.e., a mapping that explained what each of the source code directories in Viasat's source code did. Dkt. 146 at 4. Although Viasat was required to provide a source code mapping on November 1, 2024, it did not do so until December 13, 2024, despite Sandisk repeatedly demanding that mapping and threatening a motion to compel. Buroker Decl. ¶¶ 7-13; Exs. D-G. One week after receiving the source code mapping—Sandisk promptly reviewed the source code and then promptly proceeded over the holidays to prepare its amended contentions and served them on January 3, 2025. Buroker Decl. ¶¶ 14-16, Ex. H.

Third, Sandisk's proposed amendments were narrowly tailored to not change its prior infringement theories, and instead were intended address any issues as a result of this Court's Markman order and to provide further color on its infringement theories given Viasat's alleged ignorance that it expressed at the CMC. The best evidence of Sandisk's understanding that such amendments were narrow and *would not* add to or change its infringement contentions is what Sandisk said in its motion at the time: Sandisk's proposed amendments sought only to "(1) to clarify its infringement theories as a result of the Court's claim construction order and (2) to clarify the support for such theories in view of additional nonpublic discovery that Viasat provided, including a full source code mapping." *See* Dkt. 146 at 5. While Viasat's opposition generically asserted that Sandisk had "new theories," Viasat only pointed to residential applications and a DOE theory for "portable data storage device" as allegedly new (Dkt. 153 at 3, 7-8), as the redlined proposed contentions show (Dkts. 145-3, 145-5). But Viasat's argument about residential applications relied on mischaracterizing Sandisk's counsel's statement during the *Markman* hearing about the accused products *for a dependent claim* that included the "public environment" term under discussion (Dkt. 117 at 72); Sandisk explained in reply that residential had been accused all along of infringing other claims (Dkt. 157 at 6-7). Similarly, Sandisk's Operative Contentions already asserted a DOE theory for the "portable" term. Dkt. 189-3 at 11–13. Sandisk

made this point clear—i.e., that Viasat did not point out *any* new theories in its infringement conten-

tions—in its reply in support of its motion to amend. Dkt. 157 at 6-7. While the Court denied leave to

amend, the Court also did not identify any new theories in its order. Dkt. 182. Thus, it was completely

reasonable for Sandisk to continue pursuing the infringement theories that were disclosed in the Oper-

ative Contentions given neither Viasat nor the Court identified any "new theories."[3]

Fourth, Viasat initially *agreed* to Sandisk's narrow amendment (Buroker Decl. ¶ 15; Ex. H),

confirming the reasonableness of Sandisk's conduct, narrow scope of the amendments, and the timing

thereof. However, Viasat only agreed to such amendment in exchange for unfettered amendment to

Viasat's invalidity contentions. *Id*. Sandisk could not agree to the non-reciprocal unfettered amend-

ment to Viasat's invalidity contentions—particularly given the timing of Viasat's unfettered amend-

ments, which would be substantially later than Sandisk's amendments, thus the issue went to the Court.

Sandisk's attempt to amend its infringement contentions, and its continued prosecution while

that motion was pending (until March 12, 2025), and after the motion was ruled on was reasonable.

### 4.    Viasat's Successful Motions to Strike Do Not Render This Case Exceptional

Losing a motion to strike expert opinions is not a basis for fees. Even when a motion to strike

is found to lack merit and denied, that is not enough to render a case extraordinary. *Taction Tech., Inc.*

*v. Apple Inc.,* No. 21-CV-812 TWR (JLB), 2023 WL 6988420, at *6 (S.D. Cal. Oct. 17, 2023) (denying

fees "[a]lthough the theory was likely not properly disclosed in [plaintiff's] infringement contentions");

*Thought, Inc. v. Oracle Corp*., No. 12-CV-05601-WHO, 2016 WL 4426889, at *3 (N.D. Cal. Aug. 22,

2016) (relying on "belatedly disclosed or barred infringement theories" does not "make this case an

exceptional one justifying a fee award."); *Enovsys LLC v. AT&T Mobility LLC*, No. CV 11-5210 SS,

2016 WL 3460794, at *10 (C.D. Cal. Feb. 16, 2016) (denying fees where expert report was striken as

containing new theories, and finding that "untimely disclosures of infringement contentions alone" do

not render a case exceptional.); *EON Corp.IP Holdings LLC v. Cisco Sys. Inc*, No. 12-CV-01011-JST,

2014 WL 3726170, at *5 (N.D. Cal. July 25, 2014) ("Patent litigants often disagree about whether a

---

[3] As to residential applications, the Court stated it was "skeptical" it had been disclosed, but did not decide the issue. Dkt. 182 at 7 n.8. In any event, Viasat's motion does not rely on Sandisk accusing residential applications as an independent basis for finding the case exceptional.

Gibson, Dunn &
Crutcher LLP

1  plaintiff has viable infringement contentions after an adverse claim construction, and one side is usually

2  wrong" and finding that even a "quite stretched" infringement argument is not necessarily unreasona-

3  ble, and denying fees.).

4  At all times, Sandisk complied with the Court's orders and did not seek to relitigate the issues

5  decided by each order.  Litigation is an incremental process, and Sandisk reasonably pursued its case

6  within the bounds of what the Court decided, while raising issues that still had ***not*** been decided.  There

7  was no reason for Sandisk to believe it had been prevented from pursuing any infringement theory that

8  it pursued—as discussed above, neither Viasat nor this Court identified any "new" infringement theory

9  that Sandisk was purportedly precluded from pursuing but still pursued.[4]  *See supra*, §II.A.

10  With respect to LiveTV/IPTV, the magistrate judge expressly stated that he was not ruling on

11  whether Live TV/IPTV was in the case.  He only ruled on whether ***Viasat*** should be required to produce

12  more discovery and/or be ***sanctioned*** for not providing certain Live TV/IPTV discovery and withheld

13  any ruling on whether Live TV/IPTV was properly accused.  Even the most recent discovery order, on

14  June 11, 2025, stated that it "makes no findings regarding which products are or were adequately ac-

15  cused of infringement, as that issue is not necessary to resolve in deciding the discovery dispute."[5]

16  Dkt. 215 at 5 (quoting Dkt. 183 at 6-7).  Sandisk also explained that its March 25, 2025 discovery

17  motion was "not a repeat of SanDisk's prior briefing seeking a limited set of IPTV information because

18  SanDisk only just learned that Viasat was withholding discovery on a macro level."  Dkt. 188 at 1.

19  Sandisk thus ***did not*** attempt to relitigate any issues or seek to press "arguments that were 'previously

20  decided against it'" as Viasat argues (Motion at 12-13), and thus, Viasat's cases awarding fees on that

21  basis are distinguishable.  There was no ruling on whether Live TV/IPTV was in the case.  Viasat could

22  have moved for early summary judgment on that issue; it did not.

23  As to Sandisk's infringement theories, Sandisk and Dr. Easttom ensured that each of Dr.

24  Easttom's opinions clearly tied back to the Operative Contentions.  Buroker Decl. ¶¶ 4-6, 17; Easttom

---

[4] Sandisk did provide one new theory—a DOE argument based on the Court's construction of "public environment"—and Sandisk ***did not*** pursue it in Dr. Easttom's report.  Dkt. 201-3 at 118-19.

[5] As the Court previously noted (Dkt. 275 at 17), Sandisk did not seek reconsideration or review of the magistrate judge's discovery orders.  Those procedures would not have led to resolution of the fundamental issue—whether Live TV/IPTV was accused—given the limited scope of the magistrate judge's discovery order.  Dkt. 183 at 6-7.

Gibson, Dunn &
Crutcher LLP

Decl., ¶¶ 3-7. Indeed, the scope of contentions and expert reports are not coextensive because contentions "do not need to include proof or direct evidence of infringement, as the various decisions on the Patent Local Rules have explained." *AntiCancer, Inc. v. Pfizer, Inc.*, 769 F.3d 1323, 1338 (Fed. Cir. 2014); *Karmagreen, LLC v. MRSS Inc*., 2021 WL 7709160, at *2 (N.D. Ga. Nov. 26, 2021) ("[I]nfringement contentions … do not require patentees to present lengthy dissertations of all evidence that will be developed through fact and expert discovery or used as evidence at trial."); *Finjan, Inc. v. Blue Coat Sys., Inc*., No. 13-CV-03999-BLF, 2015 WL 3640694, at *2 (N.D. Cal. June 11, 2015) (experts are permitted to "identif[y] additional evidentiary proof showing that the accused element did in fact practice the limitation."). In addition, Viasat's late document productions provide an independent basis for Sandisk's experts to opine about additional details. *See e.g.*, *Saxon Innovations, LLC v. Nokia Corp.*, 2009 WL 10676646, at *4 (E.D. Tex. Nov. 9, 2009) (refusing to strike portions of the plaintiff's expert report in view of defendant's "failure to timely supplement interrogatories and document production"); *see also* Dkt. 153 at 8 n.4 (Viasat explaining that Sandisk's amended contentions relied on 12 documents produced in December 2024).

For example, although the Court struck opinions related to the '667 Patent's Encryption Theory, Sandisk included that theory because the Operative Contentions had cited three specific source code files (out of 46,000 files) that disclosed the at-issue functionality. *See supra*, §II.A. As the Court acknowledged, "the Court does not conclude that the identification of source code files could never be enough to put a defendant on notice of a plaintiff's infringement theory, only that Sandisk did not do so in this case." Dkt. 275 at 12 n. 9. Sandisk's decision to include that theory was entirely reasonable and supported by case law from this district. *Finjan, Inc. v. Proofpoint, Inc*., No. 13-CV-05808-HSG, 2015 WL 9023166, at *3 (N.D. Cal. Dec. 16, 2015) (holding that "citations to source code *directories* rather than source code *files*" were sufficient; whereas, here, Sandisk cited not just to directories but also source code *files*.) (emphasis added); *Adobe Sys. Inc. v. Wowza Media Sys.*, No. 11-CV-02243-JST, 2014 WL 709865, at *16 (N.D. Cal. Feb. 23, 2014) (source code citations are not required); *Oracle Am., Inc. v. Google Inc*., No. C 10-03561 WHA, 2011 WL 4479305, at *3 (N.D. Cal. Sept. 26, 2011) ("Rule 3–1(c) . . . [does] *not* require identification of every evidentiary *item of proof* showing that the accused element did in fact practice the limitation"); *Blue Coat*, 2015 WL 3640694, at *3 (refusing to

strike expert report that cited to specific function and specific parameter not identified in the contentions). In fact, Sandisk's disclosure was better than the level of disclosure that Viasat found reasonable to provide Sandisk in a patent litigation that Viasat brought against Sandisk in the Western District of Texas. LKK Decl. ¶¶ 6-7; *see also* Easttom Decl., ¶ 8. The stricken ████████ Theory was similarly based on a reasonable read of the Operative Contentions. *Supra*, §II.A.

Similarly, although the Court struck opinions related to the '400 Patent ██████████, Sandisk had included that theory because the Operative Contentions had identified the ███ as the "remote trusted server" in earlier claim limitation. *See supra*, §II.A. Sandisk's decision to include that theory was entirely reasonable and supported by black letter patent law, which makes clear that when a claim refers to "a remote trusted server" and later refers to "the remote trusted server," then the remote trusted server must be the same thing what was previously identified as "a remote trusted server." *See e.g. Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1357 (Fed. Cir. 1999) (finding that the term "a discharge rate" in clause [b] referring to the same rate as the term "the discharge rate" in clause [d], and that this "conclusion *necessarily* results from the identical language.") (emphasis added); *see also Rexnord Corp. v Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001); *X One, Inc. v. Uber Techs., Inc.*, 440 F. Supp. 3d 1019, 1034 (N.D. Cal. 2020) (finding that "a map" and subsequent references to "the map" must be referring to the same "map."). While the Court did not find this theory sufficiently disclosed, Sandisk relying on the theory was plainly reasonable based on what was disclosed in the Operative Contentions. *See supra*, §II.A.

As to the "portable" limitation of the '400 Patent, while the Court denied Sandisk's motion for leave to amend the contentions as to that term (Dkt. 182; Dkt. 275 at 15), Sandisk's expert report included a DOE theory based on the Operative Contentions' explicit statement, which Viasat never moved to strike, that the accused seatback devices "perform substantially the same function in substantially the same way to obtain substantially the same result." *See supra*, §II.A.

In summary, although the Court ultimately found that certain of Sandisk's infringement theories were insufficiently disclosed, in each case, Sandisk's expert reports were nonetheless tethered to theories and evidence disclosed in the Operative Contentions. The situation here closely resembles *Polaris PowerLED Technologies*, 2022 WL 2189607, in which the court denied § 285 fees after striking certain

Gibson, Dunn &
Crutcher LLP

portions of the plaintiff's infringement expert report and granting a motion for summary judgment of non-infringement.  The court found that, although the plaintiff had "inadequately disclosed the infringement theories that its expert described" by citing a list of source code files, "[t]his is not a case where a party disclosed an entirely new theory or shifted positions at the last minute," and thus the conduct was not exceptional.  *Id.* at *6.  Similarly, Sandisk cited documents and source code files in its contentions and then its expert relied on them, but the Court found that the corresponding theories were inadequately disclosed.  After striking and declining to consider certain infringement theories, the Court here, like in *Polaris*, granted summary judgment that Sandisk's surviving theories and evidence were insufficient to show infringement.  This does not make the case exceptional.  *Id.*; *Protegrity*, 2017 WL 747329 at *6; *Karmagreen*, 2021 WL 7709160, at *6 (denying fee award where plaintiff "made an effort to disclose elements of the accused product that infringe claim limitations.").

Viasat's cases are distinguishable.  In *Kilopass*, the court found that "it simply appears that Kilopass, its infringement expert, or both did not like the theory of infringement that was contained in Kilopass's infringement contentions and decided to try a different theory at the expert discovery stage." *Kilopass*, 2014 WL 3956703, at *13 (N.D. Cal. Aug. 12, 2014).  By contrast, Sandisk and its expert stuck with the theories they reasonably believed had been disclosed in the March 2024 contentions.  Easttom Decl., ¶¶ 3-7; Buroker Decl., ¶¶ 4-6, 17.  In *PersonalWeb*, one of four factors supporting an exceptional case finding was the plaintiff's "infringement theories involving Amazon S3 and Ruby on Rails were constantly changing throughout the case, ranging from emphasizing one, or the other, or both."  *In re PersonalWeb Techs. LLC*, 85 F.4th 1148, 1158 (Fed. Cir. 2023).  The plaintiff sometimes argued that its S3 and Ruby on Rails arguments were "wholly independent" and sometimes argued they were "part of the same argument."  *Id.*  Here, Sandisk consistently accused the VCDS system of infringement, and there is no allegation that the case involves any of the other factors present in *PersonalWeb* (e.g., disregard of the *Kessler* doctrine and an unreasonable position regarding customer cases).

### 5.    Viasat's Improper Conduct During Discovery Further Dooms Its Motion

Viasat was not forthcoming with discovery—and that was particularly prejudicial given fact discovery was only 15 months from November 8, 2023 to February 7, 2025.  Dkt. 36 at 5 n.3 (Court order staying discovery "until Plaintiffs have met their pleading burden").  Viasat withheld significant

volumes of documents, the identity of witnesses, and its non-infringement contentions until the last two months of fact discovery, and delayed its response to Sandisk's Interrogatory seeking a source code mapping. LKK Decl. ¶¶ 14-18; Buroker Decl. ¶¶ 7-14. Under § 285, the Court must consider the totality of the circumstances, including Viasat's conduct. *Romag*, 866 F.3d at 1340; *Karmagreen*, 2021 WL 7709160, at *6 (denying fee award based, in part, on delays in document productions by defendant); *Power Mosfet Technologies, L.L.C. v. Siemens AG*, 378 F.3d 1396, 1415 (Fed. Cir. 2004) (denying attorney's fees under § 285 "because all of the parties had conducted themselves without the decorum required when practicing before a federal court"); *Motorola, Inc. v. Interdigital Technology Corp.*, 121 F.3d 1461, 1468 (Fed.Cir.1997) (declining to award fees to [a party] "because its conduct was nearly as bad"); *Wi-Lan Inc. v. LG Elecs., Inc.,* 2013 WL 2322483, at *12 (S.D.N.Y. May 10, 2013) (denying fees where "the litigation was hard-fought and both parties engaged in conduct that should not have occurred."). Viasat's improper conduct caused a variety of issues with respect to the timing of Sandisk's amended contentions and the disorderly nature of the close of fact discovery, which disproportionally increased Viasat's fees.

First, Viasat improperly withheld responsive documents during the vast majority of the discovery period. Stunningly, Viasat produced ***91% of its documents in the last two months of discovery*** (which happened to be over the December holiday period). LKK Decl., ¶¶ 15-16. For comparison, Viasat had only produced ***9% of its documents*** in the preceding 13 months of fact discovery—and told Sandisk before doing its document dump that it had only "cleanup" productions remaining. Buroker Decl. ¶ 18. In fact, Viasat produced the majority of all documents (i.e., ***51%***) *after* the Court's deadline for the completion of document discovery deadline, thereby violating the Court's scheduling order and depriving Sandisk of a critical tool for sequencing discovery. *Cook v. Meta Platforms, Inc.*, Case No. 22-cv-02485-AMO (TSH), 2025 WL 251942, at *3 (N.D. Cal. Jan. 21, 2025) ("Typically, the purpose of a substantial completion deadline is to allow the parties to move forward with depositions because they know by when most of the documents will be produced."). Significantly, Viasat also identified ***eight*** new Viasat witnesses—two new financial witnesses and six new technical witnesses (including two in Ireland)—in the last two months of fact discovery, compounding the problems caused by Viasat's delayed document productions. LKK Decl. ¶ 17; Dkts. 168-4, 166-2. Viasat's late productions

and late disclosures completely changed the scope of the case that needed to be investigated. Sandisk needed to digest a massive amount of new documents, determine what information ***had not*** been produced, and prepare and take most depositions, leaving little time to figure out what was missing and should be compelled on, resulting in Sandisk filing motions at the end of fact discovery (Dkts. 158, 159, 168, 188). LKK Decl. ¶¶ 15-18.

Second, Viasat improperly delayed providing the required source code mapping—which Sandisk requested promptly after the Markman order—until six weeks after its deadline to respond to Sandisk's discovery request. *Audatex N. Am. Inc. v. Mitchell Int'l, Inc.*, 2014 WL 4961437, at *6 (S.D. Cal. Oct. 3, 2014) (Rule 33(d) was insufficient to respond to an interrogatory seeking a description of the accused technology). Buroker Decl. ¶¶ 7-13; Exs. D-G. Thus, while Sandisk was ready to re-review Viasat's source code on November 5, it was unable to do so until December 17, which resulted in Sandisk's amended contentions being served six weeks later and ultimately barred. Buroker Decl. ¶¶ 13-17. During that period, Sandisk wrote to Viasat and met and conferred with Viasat regarding the source code mapping. *Id.*, ¶¶ 9-10; Ex. E. Sandisk had to serve a motion to compel for Viasat to commit to a specific date for providing the source code mapping. Buroker Decl. ¶¶ 11-12; Ex. F.

Third, Viasat withheld the basis for its non-infringement positions, by refusing to elaborate the reasons in any letter and by failing to respond to Sandisk's Non-Infringement Interrogatory—including as to the Operative Contentions, served in March 2024, until almost a year later on the close of fact discovery. LKK Decl. ¶ 13. Viasat's delays prejudiced Sandisk, making it impossible for Sandisk to assess the merits of Viasat's non-infringement positions timely. Dkts. 168, 197.

### B.  Sandisk's Litigation of Standing Does Not Render This Case Exceptional

As Sandisk has repeatedly explained, Sandisk reasonably believes, based on the (admittedly complex) agreements addressing rights in the Asserted Patents, that SDT LLC (and its predecessor-in-interest, WDI) is a proper party to this case. Dkt. 255-1 (opposition to summary judgment); Dkt. 278 (response to order to show cause). To be clear, it is undisputed that the Plaintiffs Sandisk named collectively possess all necessary rights to assert this case. The issue as it relates to Viasat's fees motion is whether Plaintiffs included one entity too many. Other than standing, SDT LLC's inclusion in the case has no bearing on any other issue. Thus, when Viasat raised this issue, Plaintiffs were amenable

Gibson, Dunn & Crutcher LLP

to a stipulation about SDT LLC, so long as such agreement was binding on Viasat. That willingness to compromise was not based on any abandonment of Sandisk's position; it was a good-faith attempt to avoid unnecessary motion practice. Sandisk could not proceed without a stipulation from Viasat on the dismissal of SDT LLC. Viasat repeatedly refused to provide that simple confirmation, instead insisting on "reserv[ing] all rights." Now Viasat is weaponizing Sandisk's willingness to compromise, cynically transforming it into a supposed admission that its position had no merit. Sandisk's substantive position and conduct regarding standing were reasonable at all times, and Viasat's request for fees is baseless.

### 1.    Viasat Failed to Demonstrate that Sandisk's Position Was Meritless

Viasat did not address the key agreement which vested initial ownership in WDI (SDT LLC's predecessor) and then assigned certain rights to other entities for the explicit purpose of protecting **WDI's ownership** of the patents, Dkt. 255-1 at 7-8, nor did it dispute that this constitutes strong evidence of WDI's ownership rights under the Federal Circuit's instruction to "ascertain the intention of the parties and examine the substance of what [was] granted." *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005).

Viasat offers no explanation for why Sandisk "knew or should have known" that WDI or SDT LLC lacked standing (Mot. at 13). To the extent Viasat is relying on the false allegation that Sandisk "abandoned" its original position and "admit[ted] in discovery" that "WDI and its successor never had 'exclusionary rights' to the '400 or '667 Patents" (*id.* at 3), there is no support for that supposed sequence of events. Sandisk consistently maintained its position that WDI and SDT LLC should be named plaintiffs. Dkt. 278-1 ¶ 3. Sandisk never made any admission to the contrary. Viasat's cited exhibits are, in fact, silent as to "exclusionary rights"—but they accurately reflect the factual basis for Sandisk's consistently held belief that SDT LLC has standing. *See* Dkt. 220-3 at 7 (pursuant to Section 6.2(c) of their 2007 agreement, "WDT shall take all actions . . . in order to permit WDI to perfect and protect its ownership of all rights, title, and interest"); Dkt. 220-4 (graphically showing that WDI retained rights under Sections 6.2(c), (d) which later transferred to SDT LLC by merger).

Viasat disputed Sandisk's standing allegations from the start of this case, but it was unsuccessful in dismissing any parties at the pleading stage. Dkt. 72 (denying second motion to dismiss for lack

of standing).  Viasat now suggests that is because Sandisk falsely claimed that WDI had exclusionary rights (Mot. at 3), but that is not true: WDI had (and SDT LLC now has) exclusionary rights.  *See, e.g.*, Dkt. 278 at 3 n.1; Dkt. 278-1 ¶ 3.  Specifically, Sandisk believed that WDI had ownership rights as previously explained (Dkt. 278) and thus suffered legal injury from Viasat's patent infringement.  *See WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1265 (Fed. Cir. 2010) ("[T]he touchstone of constitutional standing in a patent infringement suit is whether a party can establish that it has an exclusionary right in a patent that, if violated by another, would cause the party holding the exclusionary right to suffer legal injury.").  Viasat also touts the Court's statement in the order denying Viasat's motion to dismiss that Sandisk's allegations were "needlessly cagey" (Dkt. 72 at 4) but Sandisk reasonably needed to consider confidentiality concerns regarding its written agreements, which it attested to under oath, and so reasonably aimed to provide sufficient information in the Complaint to meet its pleading obligations without disclosing confidential details.  Dkt. 28 at 2; Dkt. 37-1.  Sandisk was promptly forthcoming in discovery (Dkt. 251-1 ¶¶ 3-4; Dkt. 251-2), Viasat had all of the facts and evidence to assess standing as of January 2024.  Nonetheless, after the Court denied Viasat's motion to dismiss on standing, Viasat did not pursue the standing issue for almost a year.  Then, after the close of fact discovery, Viasat abandoned its prior argument from its motion to dismiss that SDSM lacked standing and focused its arguments solely on SDT LLC.  *Compare* Dkt. 45 (motion to dismiss) *with* Dkt. 27.  Viasat's mixed results on the standing issue are further confirmation that Sandisk's positions have not been baseless.

### 2.  Viasat Failed to Demonstrate that Sandisk's Litigation Conduct Was Unreasonable

Viasat's fees motion does not identify any reason Sandisk acted unreasonably.  Its allegation that Sandisk knew that SDT LLC lacked standing is false as discussed above.  *See* Mot. at 13-14.  Given Sandisk's reasonable belief that SDT LLC **did** have standing—which is supported by the agreements and the case law, there is nothing exceptional about this case with regards to the standing issue.

To the extent Viasat relies (*see* Dkt. 283) on the parties' failed efforts to stipulate to SDT LLC's dismissal and Sandisk's opposition to Viasat's summary judgment motion, those actions were fully justified, as explained in Sandisk's response to the order to show cause (Dkt. 278).  Viasat's characterization of the record continues to be misleading—at best—despite Sandisk's repeatedly pointing the emails that disprove Viasat's claims.  Viasat insists that Sandisk sought an improper "quid pro quo"

21

(Dkt. 283 at 4), even though Sandisk's May 28 email did no such thing, and Sandisk's May 30 clarification left no doubt that Sandisk only sought reassurance regarding "failure to join SDT LLC as a party." Dkt. 220-4 at 2-3. Viasat also now accuses Sandisk of "fabricat[ing]" its concern that Viasat would weaponize SDT LLC's dismissal from the case (Dkt. 283 at 1), but Sandisk's concern was genuine and entirely reasonable in light of Viasat's conduct. In fact, Sandisk repeatedly sought an *explicit* agreement that Viasat would not change position, Viasat refused to confirm and continued to "reserve[] all rights," including an ability to change course. Dkt. 220-4 at 1-2. Moreover, Viasat insisted that "[s]tanding exists or it doesn't" (*id.* at 2), suggesting that Viasat viewed its own interpretations as non-binding and still subject to the Court finding that SDT LLC was necessary.

Viasat cites a Sandisk email to argue that Sandisk allegedly "knew" that Viasat did not contend that SDT LLC was necessary (Dkt. 283 at 1-2) and thus Sandisk should have dismissed SDT LLC. What Viasat fails to say is that *after* Sandisk's statement that it would "proceed accordingly," it *provided a stipulation to Viasat,* promptly following its email, to memorialize—in writing—the mutual agreement to dismiss the party from the case. Dkt. 220-4 at 1-2. *Viasat refused.* *Id.* After Viasat moved for summary judgment, Sandisk again tried to resolve the issue amicably, offering to stipulate to Viasat's requested relief and moot the pending motion. Dkt. 259-2 at 3. Viasat now claims that Sandisk "inexplicably opposed" the motion (Dkt. 283 at 2), but again withholds the facts. *Viasat* declined the stipulation—and stated repeatedly that Sandisk should act unilaterally. Dkt. 259-2 at 1-2 ("Plaintiffs … dismiss SDT LLC with Prejudice"; "Plaintiffs will be filing with the court … a request to dismiss SDT LLC with prejudice"; "you will ask the Court to dismiss SDT LLC with prejudice"). *Viasat* also insisted that, if Sandisk would not agree to pay its fees, then Sandisk must explain its position to the Court. Dkt. 259-2 at 2. Viasat's refusal to sign a basic stipulation to remove a party that it purportedly believes has no basis to be in the case speaks volumes—it was Viasat, not Sandisk, that required the briefs to be filed and the issue adjudicated.

The email correspondence makes clear that Viasat never communicated an intent to work collaboratively to resolve the issue it raised. Viasat was combative, threatened fees, and (apparently) wanted to use Sandisk's effort to amicably resolve the issue against Sandisk—thus chilling (and ultimately eliminating) any possibility of a resolution without Court intervention. Given Viasat's refusal

Gibson, Dunn & Crutcher LLP

to stipulate, Sandisk could not simply drop SDT LLC—if SDT LLC were later found a necessary party, Sandisk could face dismissal of the entire case and an inability to appeal SDT LLC's nonjoinder. The fact that Viasat had filed a summary judgment motion to that effect did not change the outcome— Sandisk still had no appeal right if it simply dismissed SDT LLC and no estoppel applies to Viasat's motion. Viasat is correct that "standing either exists or it doesn't," thus the parties had to stipulate to the dismissal or obtain a deremination from the Court. Sandisk did what any prudent party would do given Viasat's refusal to sign the stipulation—the Court must decide. Viasat now improperly uses Sandisk's willingness to resolve an issue as a purported admission that SDT LLC should never have been in the case and that Sandisk's position was objectively basis. Like a party who offers to settle a case, Sandisk's offers to dismiss SDT LLC were "motivated by a desire for peace rather than from any concession of weakness of position." Fed. R. Evid. 408, Advisory Committee Notes.

This case bears no resemblance to *Cave Consulting Group, Inc. v. Truven Health Analytics, Inc.*, 293 F. Supp. 3d 1038 (N.D. Cal. 2018), cited by Viasat. That case did not involve standing but rather a situation where the patentee "knew or should have known that the patent was invalidated by its own product." *Id.* at 1044. Here, Sandisk did not know that the Court would rule, three years into the case, that SDT LLC lacked standing. Sandisk's interpretation of the facts was otherwise, and Viasat failed to show that interpretation was unreasonable. This case is also distinguishable from *National Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*, 676 F. App'x 967, 972 (Fed. Cir. 2017), and *Alternative Petroleum Technologies Holdings Corp. v. Grimes*, No. 3:20-CV-04-MMD-CLB, 2022 WL 3718863, *5 (D. Nev. July 25, 2022), as both of those cases involved a plaintiff continuing to press a case that was ***dismissed in its entirety*** for lack of standing. Here, the only dispute was whether Sandisk had named an extra party. This case would have proceeded regardless of how the Court resolved the issue of SDT LLC's joinder: SDT Inc. as holder of formal legal title and the right to sue and SDSM as the exclusive licensee each have constitutional standing to pursue this case. The impact of Sandisk's joining SDT LLC is limited exclusively to the parties' litigation of the standing issue; it had no impact on damages or infringement nor whether those issues would move forward.

## C.    Viasat's Request for Its Entire Fees Is Not Supported.

Even if the Court finds some portion of this case exceptional, Viasat's request for all of its fees

Gibson, Dunn & Crutcher LLP

for the entire litigation, amounting to $9.7 million, is disproportionate to any exceptionality. "[A]ttorney fees under § 285 are compensatory, not punitive." *In re Rembrandt Techs. LP Pat. Litig.*, 899 F.3d 1254, 1278 (Fed. Cir. 2018). Accordingly, "the amount of the award must bear some relation to the extent of the misconduct," and "a finding of exceptionality based on litigation misconduct usually does not support a full award of attorneys' fees." *Id.* (cleaned up). Viasat failed to show any misconduct that tainted the entire case; thus its fees request would be improperly punitive.

No fees should be awarded for the period before the Court's claim construction order issued on October 15, 2024. Viasat failed to show any support for fees during that time period. Viasat failed to even meet and confer on a request for pre-claim construction fees as required by Civil L.R. 54-5(a); Viasat's counsel represented on the parties meet-and-confer that, for the infringement issue, it was ***only*** seeking fees for the period after October 15, 2024. LKK Decl. ¶ 3. Viasat's motion, too, suggests that its request should be temporally limited. Mot. at 3 (arguing "a fee award ***for the period after October 15, 2024*** is warranted" (emphasis added)).

Further, even the period after October 15, 2024 is marked by incremental developments such that Sandisk's reasonableness should be examined at each time period.

With respect to standing, Viasat should not be awarded fees that it expended on unsuccessful issues, nor fees for work that it would have done regardless of any alleged misconduct. *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (in fee awards to prevailing parties, "no fee may be awarded for services on [an] unsuccessful claim"); *Rembrandt*, 899 F.3d at 1278. First, Viasat raised unsuccessful as well as successful standing challenges. At the pleadings stage, Viasat moved to dismiss both WDI and SDSM (Dkt. 45). Even though Viasat ultimately prevailed with respect to WDI, Viasast abandoned its position regarding SDSM and never again challenged SDSM's standing after the Court denied Viasast's motion to dismiss, finding that "SDT [LLC] is the owner of the '834 patent and SDSM is the exclusive licensee, meaning that both must be party to this litigation." Dkt. 72 at 4-5. Accordingly, Viasat should not recover fees related to its unsuccessful challenge to SDSM's standing. Further, it is commonplace for parties to litigate ownership and standing issues in patent cases, and Viasat would undoubtedly have done so here even if Sandisk had not named WDI or SDT LLC as a party. Accordingly, Viasat should not be awarded fees for activities it would have undertaken anyway—such as

Gibson, Dunn &
Crutcher LLP

1    seeking documents, written discovery, and deposition testimony about ownership issues—which thus

2    do not bear a reasonable "relation to the extent of the misconduct." *Rembrandt*, 899 F.3d at 1278.

3        Moreover, to the extent the Court finds some portion exceptional, the fee award should corre-

4    spond to specific conduct and portion of the case that the Court finds exceptional. To do so, the Court

5    should require Viasat to provide detailed records so that the appropriate amount can be determined.

6        **D.    Viasat's Fees Request Is Not Reasonable.**

7        Any fee award as to any portion of the case must still be shown to be reasonable. Section 285

8    does not permit recovery of fees for hours expended by counsel that "were 'excessive, redundant, or

9    otherwise unnecessary.'" *SRI Int'l, Inc. v. Cisco Systems, Inc.*, 930 F.3d 1295, 1311 (Fed. Cir. 2019)

10   (quoting *Hensley*, 461 U.S. at 434). Viasat failed to show that its fees were reasonable. The summary

11   information it provided—total hours per attorney for the entire case, monthly total fees (across all at-

12   torneys), and monthly total hours and fees (across all attorneys) relating to standing—does not enable

13   an adequate assessment. *See* Dkt. 284-2 (Curran Decl.) Indeed, the Federal Circuit found it to be an

14   abuse of discretion when the district court "refus[ed] to investigate the number of hours worked by

15   specific attorneys." *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 674 (Fed. Cir. 1988). Here,

16   Viasat did not provide the information needed for the Court to perform the required inquiry.

17       In addition, the limited information Viasat provided suggests that Viasat's fees may have been

18   excessive in some respects. For example, Viasat's counsel states that, as a "conservative[] estimate,"

19   they spent almost 180 hours in June and July 2025 on standing, for a total of $217,382 in fees. Dkt.

20   284-2, ¶ 26. To Sandisk's knowledge, the relevant activities in this time period would have been (1)

21   the parties' email exchanges in which Sandisk attempted to obtain a stipulation of SDT LLC's dismis-

22   sal, and (2) briefing on standing-related motions. The parties' email exchanges were relatively brief

23   (*see* Dkts. 220-4, 259-2), and Viasast's briefing on standing totaled just over 23 pages (Dkts. 221, 222,

24   258, 259, 267). Viasat failed to submit enough evidence to demonstrate the 180 hours and over

25   $200,000 it spent on standing was not "excessive, redundant, or unnecessary" compared to the limited

26   output. *SRI*, 930 F.3d at 1311.

27   **V.    CONCLUSION**

28       This case is not exceptional in any aspect, and Viasat's motion should be denied in its entirety.

1     Dated: November 18, 2025                    GIBSON, DUNN & CRUTCHER LLP

2                                                 /s/ L. Kieran Kieckhefer
                                                  L. Kieran Kieckhefer
3

4                                                 Counsel for Plaintiffs

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SANDISK'S OPPOSITION TO VIASAT'S MOTION FOR ATTORNEYS' FEES
CASE NO. 4:22-CV-4376-HSG-PHK

Gibson, Dunn &
Crutcher LLP