| | |
|---|---|
| L. Kieran Kieckhefer (SBN 251978) | Ahmed ElDessouki (*pro hac vice*) |
| GIBSON, DUNN & CRUTCHER LLP | GIBSON, DUNN & CRUTCHER LLP |
| One Embarcadero Center, Suite 2600 | 200 Park Avenue |
| San Francisco, CA 94105-0921 | New York, NY 10166-0193 |
| Telephone: 415.393.8337 | Telephone: 212.351.2345 |
| Email: KKieckhefer@gibsondunn.com | AElDessouki@gibsondunn.com |
| | |
| Robert A. Vincent (*pro hac vice*) | Brian M. Buroker (*pro hac vice*) |
| GIBSON, DUNN & CRUTCHER LLP | Shuo J. Zhang (*pro hac vice*) |
| 2001 Ross Avenue Suite 2100 | GIBSON, DUNN & CRUTCHER LLP |
| Dallas, TX 75201-2923 | 1700 M St, N.W. |
| Telephone: 214.698.3281 | Washington DC 20036-4504 |
| RVincent@gibsondunn.com | BBuroker@gibsondunn.com |
| | SZhang@gibsondunn.com |
| Lillian J. Mao (SBN 267410) | |
| GIBSON, DUNN & CRUTCHER LLP | |
| 310 University Avenue | |
| Palo Alto, CA 94301-1744 | |
| Telephone: 650.849.5307 | |
| LMao@gibsondunn.com | |

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| SANDISK TECHNOLOGIES, INC., et al., | Case No.: 4:22-cv-4376-HSG |
| Plaintiffs, | **DECLARATION OF L. KIERAN KIECKHEFER IN SUPPORT OF SANDISK'S OPPOSITION TO VIASAT'S MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285** |
| v. | |
| VIASAT, INC., | |
| Defendant. | |

I, L. Kieran Kieckhefer, declare as follows:

1. I am a partner with the law firm Gibson, Dunn & Crutcher LLP. I represent Plaintiffs Sandisk Technologies, Inc., SanDisk Technologies LLC, and SanDisk Storage Malaysia Sdn. Bhd. (together "Plaintiffs" or "Sandisk") in the above-captioned action, brought against Viasat, Inc. ("Viasat"). I have personal knowledge of the matters discussed herein.

2. I make this declaration in support of Plaintiffs' Opposition to Viasat's Motion for Attorneys' Fees.

3. On October 30, 2025, I met and conferred with counsel for Viasat—Steven Cherny, Patrick Curran, and Hannah Dawson—regarding Viasat's then forthcoming motion for attorneys' fees. Robert Vincent and Lillian Mao, attorneys for Sandisk, were also present on the meet and confer. On the meet and confer, counsel for Viasat explained that it was planning to move for fees for two reasons. First, with respect to the issue of infringement, relating to Sandisk's refusal to dismiss the case after this Court's *Markman* order. Second, with respect to the issue of standing, from the beginning of the case. On the meet and confer, Viasat told Sandisk that it was only seeking fees for the period after the Court issued its *Markman* order, except for fees relating to the issue of standing. I personally followed up multiple times, and counsel for Viasat (both Mr. Cherny and Mr. Curran) confirmed multiple times the scope of fees Viasat intended to seek.

4. On February 23, 2023, Sandisk[1] served its initial infringement contentions to Viasat, pursuant to Patent L.R. 3-1. Based on the timing in the Patent Local Rules, those contentions were based exclusively on public information, and Viasat had not yet produced any documents in the litigation. Viasat's first production in this case was on April 10, 2023.

5. On March 22, 2024, by agreement between the parties, Sandisk served Amended Infringement Contentions (the "Operative Contentions"), which relied upon technical documents

---

[1] This case was originally brought by Western Digital Technologies, Inc. ("WDT") and related entities, the predecessors in interest to the currently named plaintiffs.

and source code that Viasat made available in discovery. Dkts. 189-2 (cover pleading), 189-3 ('400 Patent claim chart), 189-4 ('667 Patent claim chart). To the best of my knowledge, the Operative Contentions reference Live TV/IPTV at least 75 times.

6. The Operative Contentions cite to specific source code files, but not to specific functions in the source code files. Viasat did not complain about Sandisk's citations to the source code files as being insufficient to identify Sandisk's infringement theories until it moved to strike Sandisk's infringement theories. Sandisk believed, in good faith, that the citations to the source code files were reasonable, and further believed those citations provided sufficient notice of the infringement theories that were later detailed in the infringement expert report.

7. In an ongoing litigation that Viasat brought against Sandisk asserting infringement of two Viasat patents, Viasat also only cited source code files to Sandisk in Viasat's infringement contentions. Specifically, Viasat did not identify specific functions in the source code files that it identified in its final infringement contentions. For one claim limitation, Viasat cited five source code files that total over 570 pages (approximately 23,000 lines of code). For a second claim limitation, Viasat cited 16 source code files that total 217 pages (approximately 9,500 lines of code). For two other claim limitations, Viasat cited 10 source code files that total 124 pages (approximately 6,000 lines of code). For yet another claim limitation, Viasat cited five source code files that total 91 pages.

8. To the best of my knowledge, Viasat first raised the issue of § 285 fees with Sandisk in a letter dated May 19, 2023. Dkt. 284-3. Viasat's letter asserted that Sandisk's pre-discovery infringement contentions "point to no evidence" to support a number of claim limitations.

9. On August 24, 2023, Sandisk responded to Viasat's letter, explaining that Viasat "did not identify any affirmative evidence showing non-infringement," and explained that "the purported deficiencies [] identified are easily disproven." Moreover, Sandisk explained that documents produced after Sandisk served its contentions "confirmed . . . the infringement analysis set forth in

our contentions." A true and correct copy of the August 24, 2023 Sandisk letter to Viasat is attached as **Exhibit A.**

10. Viasat again raised the issue of § 285 fees with Sandisk in correspondence dated April 2, 2024 (Dkt. 127) and, on October 8, 2024, in the Case Management Statement (Dkt. 126). However, as Sandisk explained in the Case Management Statement, in each instance, Viasat "failed to explain any basis for its position that Plaintiffs have failed to identify a viable infringement theory." Dkt. 126 at 10, n.5.

11. On April 7, 2023, Sandisk served an Interrogatory asking Viasat: "for each asserted claim of an Asserted Patent that You contend is not infringed, state in full the basis for [Viasat's] contention including the element(s) that are not met, the factual support for contending that an element is not met, and all Documents supporting Your contention." Dkt. 168-2 at 7-8. In response to receiving Viasat's April 2, 2024 correspondence, on April 3, 2024, Sandisk asked Viasat to update its response to this interrogatory. A true and correct copy of the April 3, 2024 letter is attached as **Exhibit B**. Sandisk pressed Viasat to supplement its response on December 19, 2024 and December 31, 2024. On December 31, 2024, Sandisk wrote to Viasat after it provided a first supplement, noting that:

> Regarding Viasat's response to Plaintiffs' non-infringement interrogatory response, we are in receipt of Viasat's supplemental response dated 12/30. However, the supplemental response, as with all prior correspondence and representations from Viasat regarding its alleged non-infringement positions, fails to explain why it purportedly does not practice the at-issue claim limitations. Viasat's response simply lists claim limitations without any explanation and, thus, again is insufficient because it has not articulated any non-infringement theory. *See e.g., Asia Vital Components Co., Ltd. v. Asetek Denmark A/S*, 377 F. Supp. 3d 990, 1003-05 (N.D. Cal. Mar. 15, 2019) (striking new theory from non-infringement expert report where party "wait[ed] until its expert rebuttal report to disclose its theory," finding that merely stating that the accused product does not infringe "because it 'uses an immersive pump,'" without additional explanation was insufficient to "disclose in any discernible manner the basis for the [non-infringement] theory.").

A true and correct copy of the December 31, 2024 email is attached as **Exhibit C**.

12. However, Viasat did not update its response to this interrogatory to explain the substantive basis for its non-infringement defenses until February 6, 2025. Dkt. 167-3.

13. After receiving the Court's scheduling order on December 2, 2024 (Dkt. 131), Sandisk set out to meet the Court's earlier-than-proposed deadline for substantial completion of document discovery and close of fact discovery.

14. However, despite providing assurances to Sandisk that it has produced, or will produce, responsive documents, Viasat made significant, serial late document productions that were material given the time frame provided in the Court's schedule. In particular, Viasat had only produced 470 documents before July 2024 (16,234 pages). Then starting on December 19, 2024, Viasat produced 9,514 documents (123,495 pages). Of those 9,514 documents: 9,083 new documents (121,543 pages) were produced in January and February 2026; and 4,719 documents (73,277 pages) were produced after the January 6, 2025 deadline for the substantial completion of document discovery. Viasat produced **91% of all documents** in the last two months of fact discovery and another 4% after the close of fact discovery. Moreover, Viasat produced **51% of all documents** after the deadline for the substantial completion of document discovery

15. Below is a table summary of the number of documents and pages that Viasat produced in the month of December 2024 or later:

| Date | No. of Docs | No. of Pages |
|---|---|---|
| 19-Dec-24 | 47 | 1569 |
| 3-Jan-25 | 4,364 | 48,266 |
| 12-Jan-25 | 515 | 2356 |
| 13-Jan-25 | 3,435 | 55,355 |
| 23-Jan-25 | 120 | 8,445 |
| 28-Jan-25 | 13 | 317 |
| 31-Jan-25 | 11 | 38 |
| 3-Feb-25 | 6 | 106 |
| 5-Feb-25 | 3 | 90 |
| 7-Feb-25 | 3 | 443 |
| 7-Feb-25 | 613 | 6,127 |
| 24-Mar-25 | 384 | 383 |

KIECKHEFER DECLARATION IN SUPPORT OF RESPONSE TO ORDER TO SHOW CAUSE
CASE NO. 4:22-CV-4376-HSG

| | | |
|---|---|---|
| **TOTAL** | 9,514 | 123,495 |

16. Moreover, on December 10, 2024—i.e., less than 2 months before the close of fact discovery—Viasat identified eight new Viasat witnesses: two new financial witnesses and six new technical witnesses (including two in Ireland). Dkt. 168-4. Before that date, Viasat had only identified three Viasat witnesses. Dkt. 166-2. The parties attempted to schedule depositions for those individuals within the allotted time for fact discovery, but by late January 2025—particularly because of Viasat's late productions—it became increasingly apparent that it would not be possible to complete all depositions by February 7 and obtain any follow on discovery that was revealed during the depositions. As such, Sandisk in good faith moved to extend the case schedule. Dkt. 158.

17. Sandisk did not seek an extension to the case schedule for a "tactical" reason—it sought the extension because Sandisk needed more time to complete discovery. In particular, although Sandisk filed a discovery motion (Dkt. 159) on the same day that it sought the extension, the motion to extend was not filed as a tactical measure to influence the outcome of the discovery motion.

18. During discovery related to the standing issue, Sandisk created a helpful flowchart in advance of its corporate deposition to further explain the distribution of rights in the asserted patents and provided it to Viasat at the deposition to further aid Viasat's understanding of the distribution of rights. A true and correct copy of this flowchart was previously filed with the Court. *See* Dkt. 220-3.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 18th day of November 2025 in San Francisco, California.

/s/ L. Kieran Kieckhefer
L. Kieran Kieckhefer