QUINN EMANUEL URQUHART & SULLIVAN, LLP
 Steven Cherny (*pro hac vice*)
 stevencherny@quinnemanuel.com
 Patrick D. Curran (Bar No. 241630)
 patrickcurran@quinnemanuel.com
 Hannah Dawson (*pro hac vice*)
 hannahdawson@quinnemanuel.com
 Tzivya H. Beck (*pro hac vice*)
 tzivyabeck@quinnemanuel.com
 111 Huntington Ave, Suite 520
 Boston, MA 02199
 Telephone:     (617) 712-7100
 Facsimile:      (617) 712-7200

QUINN EMANUEL URQUHART & SULLIVAN, LLP
 Nicola R. Felice (*pro hac vice*)
 nicolafelice@quinnemanuel.com
 Anastasia M. Fernands (*pro hac vice*)
 anastasiafernands@quinnemanuel.com
 Vanessa Blecher (*pro hac vice*)
 vanessablecher@quinnemanuel.com
 Alicia Lai (*pro hac vice*)
 alicialai@quinnemanuel.com
 295 5th Avenue
 New York, NY 10016
 Telephone:     (212) 849-7000
 Facsimile:      (212) 849-7100

*Attorneys for Defendant Viasat, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| SANDISK TECHNOLOGIES, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>VIASAT, INC.,<br><br>Defendant. | Case No.: 4:22-cv-4376-HSG<br><br>**DEFENDANT VIASAT, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285**<br><br>**Hearing**<br><u>Date:</u> December 9, 2025<br><u>Time:</u> 2:00 p.m.<br><u>Judge:</u> Hon. Haywood S. Gilliam, Jr.<br><u>Courtroom:</u> 2, 4th Fl.<br>　　　　　1301 Clay Street<br>　　　　　Oakland, CA 94612 |

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     SANDISK'S INFRINGEMENT ASSERTIONS WARRANT FEES ....................................2

        A.      The Totality of Sandisk's Evidence Shows this Case is Exceptional .......................4

        B.      Sandisk Was On Notice Its Conduct Was Exceptional ...............................................4

        C.      Sandisk's Post-*Markman* Conduct Was Unreasonable ...............................................5

        D.      Sandisk's Use of Stricken Theories in its Expert Reports is Exceptional.................7

        E.      Sandisk's Relitigation of Discovery Disputes is Exceptional ...................................9

III.    SANDISK'S STANDING POSITION WARRANTS FEES.............................................11

IV.     VIASAT'S FEES ARE REASONABLE AND SUPPORTED ...........................................13

V.      CONCLUSION ...................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adasa Inc. v. Avery Dennison Corp.*,
2024 WL 808893 (D. Or. Feb. 27, 2024) ................................................................................ 3

*Alamo Grp., Inc. v. Fecon, Inc.*,
2021 WL 3660198 (S.D. Ohio Aug. 17, 2021) ....................................................................... 7

*Anderson v. Libert Lobby, Inc.*,
477 U.S. 242 (1986) ................................................................................................................ 4

*Energy Heating, LLC v. Heat On-The-Fly, LLC*,
15 F.4th 1378 (Fed. Cir. 2021) .............................................................................................. 3

*Finjan, Inc. v. Sophos, Inc.*,
2016 WL 2988834 (N.D. Cal. May 24, 2016) ....................................................................... 5

*Intex Recreation Corp. v. Team Worldwide Corp.*,
77 F.Supp.3d 212 (D.D.C. 2015) ........................................................................................... 3

*Karmagreen, LLC v. MRSS Inc.*,
2021 WL 7709160 (N.D. Ga. Nov. 26, 2021) ....................................................................... 9

*Largan Precision Co. Ltd. v. Genius Elec. Optical Co. Ltd.*,
2014 WL 6882275 (N.D. Cal. Dec. 5, 2014) ........................................................................ 5

*MarcTec, LLC v. Johnson & Johnson*,
664 F.3d 907 (Fed. Cir. 2012) ............................................................................................... 7

*Ortho Pharm. Corp. v. Genetics Inst., Inc.*,
52 F.3d 1026 (Fed. Cir. 1995) ............................................................................................. 13

*Pirri v. Cheek*,
851 F. App'x 183 (Fed. Cir. 2021) ........................................................................................ 3

*Smart Wearable Technologies Inc. v. Fitbit Inc.*,
2018 WL 3201751 (N.D. Cal. June 27, 2018) ...................................................................... 5

*Trs. of Columbia Univ. City of New York v. Gen Digital Inc.*,
2023 WL 8699435 (E.D. Va. Sept. 30, 2023) ....................................................................... 3

*Wi-LAN Inc. v. Sharp Elecs. Corp.*,
2022 WL 611236 (D. Del. Feb. 3, 2022) .............................................................................. 4

*WiAV Sols. LLC v. Motorola, Inc.*,
631 F.3d 1257 (Fed. Cir. 2010) ............................................................................... 11, 12, 13

VIASAT'S REPLY ISO MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285

**Statutes**

35 U.S.C. § 285 .................................................................................................................... 10

**Other Authorities**

Federal Rule of Civil Procedure 30(b)(6) ............................................................................ 11

Federal Rule of Civil Procedure 37 ....................................................................................... 9

Federal Rule of Civil Procedure 54(d) ................................................................................. 14

VIASAT'S REPLY ISO MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285

# I.    INTRODUCTION

Sandisk's opposition is a microcosm of this case. Rather than address its exceptional behavior, Sandisk stubbornly relitigates motions it already lost. Persistently re-arguing positions and advancing claims long after they are no longer viable is precisely why this case is exceptional.

Sandisk maintained its baseless infringement claims long after it was clear they lacked merit. Viasat warned Sandisk as early as May 2023 that its infringement contentions for particular limitations did not track the claim language.[1] Sandisk ignored those warnings. Then, in September 2024, the Court issued its claim construction ruling, confirming that Sandisk's case was not tenable. Viasat again tried to contain the expense of this case and asked Sandisk to drop its suit. Sandisk refused. The Court admonished Sandisk to make sure it had a viable case before going forward. Sandisk ignored that admonishment. An entire year of litigation followed where seemingly all Sandisk did was try to circumvent this Court's orders.[2]

In defiance of this Court's patent rules, Sandisk tried to fundamentally reshape its contentions. Over two years into this case and three weeks before fact discovery closed, Sandisk moved to amend its contentions. That motion was denied. At that point, there was no doubt this case was not viable. But still Sandisk tried to evade the Court's rulings—including by embedding already-rejected, and wholly new, infringement theories in its expert reports.[3] Viasat had to move to strike those improper opinions. The Court granted Viasat's motions, noting that Sandisk's expert was advancing "the same theories as to which the Court previously denied leave to amend." Dkt. 274 at 15. Sandisk's pattern of ignoring rules and rulings makes this case exceptional.

Sandisk's approach to standing was equally troubling. Despite knowing, from the outset, that WDI (later SDT LLC) lacked exclusionary rights in the asserted patents, Sandisk included that

---

[1] These were the same missing claim limitations the Court ultimately cited in its case-ending summary judgment order.
[2] Of course, to the extent Sandisk disagreed with the Court's case-ending claim constructions, it should have accepted judgment and appealed, instead of extending this case long past its shelf life.
[3] Sandisk also brought several vexatious post-discovery discovery motions designed to manufacture a basis to extend the case schedule and justify belated contention amendments. Dkts. 183 (*inter alia*, denying motion to compel source code and financial documents), 196 (denying motion to strike interrogatory responses), 215 (denying motion to compel discovery on IPTV products); Mot. at 2.

entity as a plaintiff, claiming it *had* "exclusionary rights" to each asserted patent. Dkt. 73 ¶¶ 20, 37. Sandisk then spent two years refusing, in response to multiple motions, to provide straight answers supporting its assertion. Even after the operative facts came to light, Sandisk still would not dismiss SDT LLC; Sandisk merely offered to drop it from the case caption *without* dismissing it. Viasat properly rejected that offer and moved for summary judgment. Sandisk then offered to dismiss, but subject to improper sealing conditions.[4] Then, for no clear reason, Sandisk opposed Viasat's motion on the merits only subsequently to try to avoid a ruling by filing a frivolous motion to substitute. WDI and SDT LLC never had standing. They should have been dismissed long before Viasat was forced to pursue discovery and file multiple motions, and long before the Court was forced to evaluate and rule on those motions. This waste of judicial and party resources warrants fees.

This case is exceptional not merely because Sandisk lost, but because of how it chose to litigate. At every critical juncture—after *Markman*, after its motions to amend and extend were denied, and after Viasat's repeated victories on discovery disputes—Sandisk had the opportunity to stand down on meritless claims. Instead, it doubled down at every step, forcing Viasat to incur substantial fees defending against untenable positions.

***

The conclusion to Viasat's motion mistakenly asked the Court to award it the full amount of fees spent on this case. But as noted throughout the body of its motion, Viasat only seeks fees for the post-Oct. 15, 2024 period (Dkt. 284 ("Mot.") at 14, Dkt. 284-2 ¶ 24), and standing issues pre-Oct. 15, 2024 (*id*. ¶ 26). As the supporting materials Viasat submitted show, Viasat is seeking a total of $8,021,879.03, consisting of: (a) $7,576,475.51 for all work after Oct. 15, 2024, (b) $183,773.89 for work on standing before Oct. 15, and (c) $261,629.63 in costs after Oct. 15, 2024. *Id.* ¶¶ 24, 26. Viasat apologizes for the error and respectfully requests the amount above.

## II.    SANDISK'S INFRINGEMENT ASSERTIONS WARRANT FEES

---

[4]   Specifically, Sandisk offered the following language: "In light of the parties' agreement to dismiss SanDisk Technologies LLC, the parties further request that Defendants' motions filed on June 20, 2025 (Dkts. 220, 221, 222) be terminated, and that ***the materials submitted under seal in Dkt. 220, which are now moot, be either maintained under seal without a statement under Civil L.R. 79-5(f)(3) or removed from the docket.***" Ex. A (emphasis added). As the Court well knows, there is a "strong presumption" in favor of public access to dispositive motion materials. Dkt. 274 at 6.

1    Sandisk argues its positions were "objectively reasonable and supported by specific evidence

2    identified in the Operative Contentions." Dkt. 291 ("Opp.") at 8. The history of this litigation tells

3    a different story. Sandisk's infringement theories were always based on a misreading of its own

4    patents and misapplication to Viasat's technology. Viasat warned Sandisk of this shortly after the

5    case was filed, and it was beyond doubt after the *Markman* order. Mot. at 1. But instead of dismissing

6    its case post-*Markman*, Sandisk spent months reformulating its contentions in defiance of the

7    Court's patent rules. Sandisk moved to amend at the very end of fact discovery, which the Court

8    denied. Dkt. 182. Sandisk then tried to manufacture discovery disputes to extend fact discovery and

9    justify adding new theories and evidence to the case. The Court denied those motions too. Dkts.

10   181, 183, 196, 215; *see* Mot. at 2. Undeterred, Sandisk plowed ahead towards trial with expert

11   reports that again advanced new contentions, until the Court granted summary judgment of non-

12   infringement on both asserted patents. Dkt. 274 at 24-31; Mot. at 12.

13   Two things are notable and support Viasat's motion. First, as the Court observed, Sandisk's

14   infringement expert advanced "the same theories as to which the Court previously ***denied*** leave to

15   amend." Dkt. 274 at 15 (emphasis added). Second, the Court's non-infringement ruling was based

16   on the ***same two claim limitations*** Viasat repeatedly warned Sandisk about—including warnings in

17   May 2023, April 2024, and October 2024. Mot. at 12. Sandisk's refusal to acknowledge the Court's

18   rulings, or the language of its own patents, was and is exceptional.

19   Sandisk's opposition is emblematic of the way Sandisk litigated this case. Rather than admit

20   errors, Sandisk relitigates issues the Court already decided. Numerous courts have found such

21   conduct exceptional and awarded fees.[5] Sandisk litigated, relitigated, and *is still* relitigating

22

---

23   [5] *See, e.g.*, *Energy Heating, LLC v. Heat On-The-Fly, LLC*, 15 F.4th 1378, 1384 (Fed. Cir. 2021)
24   (affirming fees where "HOTF litigated the case in an unreasonable manner by persisting in its
     positions"); *Adasa Inc. v. Avery Dennison Corp.*, 2024 WL 808893, at *3 (D. Or. Feb. 27, 2024)
25   (awarding fees where party sought "to re-litigate issues the court has already decided"); *Intex
     Recreation Corp. v. Team Worldwide Corp.*, 77 F.Supp.3d 212, 217 (D.D.C. 2015) (same) *Trs. of
26   Columbia Univ. City of New York v. Gen Digital Inc.*, 2023 WL 8699435, at *2–3, *19 (E.D. Va.
     Sept. 30, 2023) (awarding fees where party "sought to rehash arguments already lost through other
27   cumulative filings"); *Pirri v. Cheek*, 851 F. App'x 183, 188 (Fed. Cir. 2021) (affirming fees where
     plaintiff "continued to push frivolous arguments after the district court had definitively rejected
28   them").

---

meritless positions.

### A.    The Totality of Sandisk's Evidence Shows this Case is Exceptional

Sandisk first argues that the Court cannot consider the reasonableness of its conduct because "[t]he Court has never substantively analyzed all of Sandisk's infringement evidence to determine whether the total was insufficient to prove infringement." Opp. at 8. This is wrong: The Court analyzed *all* of the evidence when it granted summary judgment, and found Sandisk's infringement evidence insufficient for any reasonable jury to find in its favor.[6] *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Sandisk apparently wants reasonableness assessed based on a hypothetical case—one where Sandisk's untimely contentions were timely and where stricken contentions, evidence, and testimony were not struck. That is not the standard for assessing fees. Sandisk's litigation conduct must be analyzed as it actually happened, not based on a hypothetical case where inadmissible materials were admissible or belated disclosures were timely. *See, e.g., Wi-LAN Inc. v. Sharp Elecs. Corp.*, 2022 WL 611236, at *6 (D. Del. Feb. 3, 2022) (fees awarded against plaintiff who forced defendants "to continue defending claims that Wi-LAN knew or should have known . . . rested on unreliable, insufficient, and *inadmissible* evidence") (emphasis added).

### B.    Sandisk Was On Notice Its Conduct Was Exceptional

Next, Sandisk claims that it lacked sufficient notice that its contentions were unreasonable. That also is wrong. As discussed in its opening motion, Viasat sent letters in March 2023 and April 2024 warning about the exact limitations that proved dispositive. On October 8, 2024, after Viasat won claim construction on two key terms, Viasat again warned Sandisk that it could not meet its burden of showing these limitations were met. And on October 15, 2024, the *Court itself* warned Sandisk that if it did not have a viable infringement theory, the Court would give serious consideration to a fees motion. Mot. at 1, 7-8. It is hard to imagine a party having more notice that proceeding without viable contentions would expose that party to fees.

Contrary to Sandisk's assertion, Opp. at 10, Viasat's warnings to Sandisk are highly

---

[6] For this same reason, no "mini trial on the merits" is necessary to determine if fees are appropriate. Opp. at 8-9. If Sandisk's evidence was insufficient to warrant an *actual trial* on the merits, there is no basis to think it would fare better during a "mini trial."

comparable to the notice the plaintiff received in *Smart Wearable Technologies Inc. v. Fitbit Inc.*, 2018 WL 3201751, at *1 (N.D. Cal. June 27, 2018) (notice included "a Fitbit engineer's declaration, an invitation to inspect the source code . . . , and the bill of materials for an accused device."). Like in *Smart Wearable*, Sandisk had full access to Viasat's source code and thousands of pages of technical documents.[7] Sandisk also received detailed warnings about specific claim limitations. The fact that initial warnings came from Viasat's attorneys and the Court, instead of an engineer, is of no matter—particularly where, as here, Sandisk did not ask to depose any Viasat personnel in over two years of litigation. Dkt. 181 at 3 (noting Plaintiffs "opted not to notice or take any fact depositions until December 2024").

Sandisk also complains that "Viasat never requested or moved to compel that Sandisk supplement its Operative Contentions." Opp. at 10. But no motion to compel was required. Viasat repeatedly told Sandisk its mandatory contentions were insufficient. Sandisk ignored those warnings. Viasat was not required to do more. The Patent Local Rules governed Sandisk's obligations. Sandisk violated them. And the cases Sandisk cites, Opp. at 10, do not hold otherwise; two are not even apposite, as the courts there denied the defendants' motion to strike. *Largan Precision Co. Ltd. v. Genius Elec. Optical Co. Ltd.*, 2014 WL 6882275, at *7 (N.D. Cal. Dec. 5, 2014); *Finjan, Inc. v. Sophos, Inc.*, 2016 WL 2988834, at *12 (N.D. Cal. May 24, 2016).

## C.  Sandisk's Post-*Markman* Conduct Was Unreasonable

Sandisk argues its attempt to amend its infringement post-*Markman* was reasonable. Opp. at 11. Were Sandisk right, the Court would have granted that motion. Sandisk is simply relitigating lost motions. More importantly, the issue is not just that Sandisk moved to amend and lost, but the full scope of Sandisk's behavior. It is exceptional to advance a meritless case, propose untimely contention amendments, move to amend a schedule based on manufactured discovery disputes, and then—after all of those gambits are rejected—still rely on already-rejected infringement theories to proceed.

---

[7]  Viasat first made its code available to Sandisk in April 2023. Dkt. 153 at 8. In February and March 2024, Sandisk spent six days reviewing Viasat's source code with "full knowledge of Viasat's proposed claim constructions," *Id.* at 3, 10-11, and with Viasat's core technical document production in hand.

Sandisk also seeks to relitigate whether Viasat's so-called "source code mapping" justified its "delay in amending its contentions following the *Markman* order." Opp. at 12. That exact argument  was previously rejected and remains equally baseless. The Court already ruled Sandisk did not show the "source code mapping" justified its delay.[8] Refusing to acknowledge that ruling and repeating rejected claims makes this case more exceptional—not less.

Sandisk also relitigates its rejected proposed amendments, arguing that they "were narrowly tailored to not change its prior infringement theories." Opp. at 12. But there is nothing "narrow" about adding new infringement theories at the end of discovery that cite thousands of lines of code, or accusing previously disclaimed products (like Viasat's residential products). *See* Mot. at 9. Sandisk did not move to reconsider the Court's order denying leave to amend and now seeksfor the Court to reconsider its prior ruling post-judgment in order to avoid fees. Making such a belated request is a reason to grant fees, not to deny them.

Sandisk also re-argues that its proposed amendment was reasonable because Viasat "initially agreed" to it. Opp. at 13 (emphasis omitted). Far from supporting Sandisk, this argument demonstrates that Sandisk's litigation conduct was unreasonable. As Viasat explained to Sandisk, and then to the Court in its opposition to Sandisk's motion to amend (Dkt. 153 at 14), Plaintiffs' new infringement contentions "would [have] require[d] Viasat to reevaluate invalidity contentions, search for additional prior art mirroring Plaintiffs' new purported claim scope, and seek both party discovery (including Plaintiffs' knowledge of new prior art) and third-party discovery related to that art[.]" Viasat nonetheless tried to resolve disputes and offered a compromise. Sandisk ***rejected*** that compromise. Sandisk cannot point to an unreasonable refusal to compromise as evidence of reasonable litigation conduct—especially where Sandisk's behavior forced Viasat and the Court to

---

[8] "Although Plaintiffs claim they needed Defendant's source code mapping . . . Plaintiffs had access to Defendant's source code in February and March of 2024. Plaintiffs do not explain why their prior source code inspections were insufficient to enable them to clarify their infringement theories before December 2024, or why they did not request a source code inspection after March 2024. Moreover, Plaintiffs knew there was a risk that the Court would not adopt their proposed constructions, . . . but do not explain why they did not seek additional technical information between March 2024 and October 2024 that would allow them to clarify their infringement theories in the event the Court rejected their constructions." Dkt. 182 at 5 n.7.

1  expend significant resources litigating positions that lacked merit.

2       Sandisk's cited authority is inapposite. *Medtronic Navigation, Inc. v. BrainLAB*

3  *Medizinische Computersysteme GMBH* held fees were not appropriate where Medtronic was

4  ***allowed*** to "revise[] its case in light of the district court's claim construction ruling" and ultimately

5  proceeded to trial on the alternative theory. 603 F.3d 943, 955 (Fed. Cir. 2010). The Court already

6  addressed Sandisk's lack of diligence in response to claim construction, Dkt. 182 at 4-5, and ***did not***

7  allow Sandisk to revise its case. *Id.* at 8. Sandisk litigating a "revised" case ***without*** leave of the

8  Court was unreasonable. *Alamo Grp., Inc. v. Fecon, Inc.*, 2021 WL 3660198, at *5 (S.D. Ohio Aug.

9  17, 2021) is also distinguishable. There, the court excused "increasingly strained interpretations of

10 how to measure the requisite heights" because "ambiguity" in its claim construction order "left room

11 for legitimate debate." *Id.* Here, the Court's claim construction order left no ambiguity about

12 construction or accused products. *See* Dkt. 153 at 13-14 (summarizing the Court's findings).

13      **D.    Sandisk's Use of Stricken Theories in its Expert Reports is Exceptional**

14      Sandisk argues that "[l]osing a motion to strike expert opinions is not a basis for fees." Opp.

15 at 13. But knowingly including rejected contentions in expert reports is.[9] Sandisk's refusal to accept

16 the Court's denial of its motion to amend ultimately culminated in Viasat's motions to strike. *See,*

17 *e.g., MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 920–21 (Fed. Cir. 2012) (affirming fees

18 award where party "relied upon inadmissible expert testimony" that the court excluded) ("Although

19 . . . exclusion of expert testimony under *Daubert* does not automatically trigger a finding of litigation

20 misconduct," it is litigation misconduct in the context of "initiat[ing] a frivolous lawsuit, [and]

21 persist[ing] in advancing unfounded arguments that unnecessarily extended this litigation and

22 caused [its adversary] to incur needless litigation expenses.").

23      Sandisk argues that it "did not seek to relitigate the issues decided by each order." Opp. at

24 14. This is not reflected by the record. As discussed in the opening motion, "Sandisk openly defied

25 the court's order denying leave to amend its infringement contentions by putting its untimely

26 theories in its expert reports." Mot. at 11. Sandisk repeatedly tried to sneak in new infringement

27

28 _____
[9] Similarly, crafting entirely new infringement theories during expert discovery and even during summary judgment briefing, *see* Dkt. 260 at 2-4, also warrants fees.

arguments, as the Court recognized. *See, e.g.*, Dkt. 274 at 15 ("Sandisk now seeks to introduce, through Dr. Easttom, the same theories as to which the Court previously denied leave to amend."); *see also* Mot. at 10-11 (summarizing failed discovery disputes used by Sandisk to "extend the fact discovery deadline").

Sandisk tries to recast the meaning of the discovery rulings, claiming that Magistrate Judge Kang "expressly stated that he was not ruling on whether Live TV/IPTV was in the case." Opp. at 14. But Judge Kang found "SanDisk's '400 patent infringement contentions do not explicitly accuse the IPTV product of infringement" and "'667 infringement claims charts nowhere mention or use the term IPTV." Mot. at 11. Those warnings would cause a reasonable litigant to change course. Sandisk plowed ahead.

Sandisk's claim that its "expert reports were [] tethered to theories and evidence disclosed in the Operative Contentions," Opp. at 16, is flatly wrong. Were it otherwise, the Court would have denied the motions to strike and summary judgment. *First*, for the '667 Patent Encryption Theory, Sandisk argues that it cited "three specific source code files (out of 46,000 files)," Opp. at 15, and suggests that such citations "could" be sufficient and that its conduct was "supported by case law from this district." Opp. at 15. As purported evidence that it acted "entirely reasonabl[y]," Sandisk latches onto a footnote in the Court's summary judgment order stating that "[t]o be clear, the Court does not conclude that the identification of source code files could never be enough to put a defendant on notice of a plaintiff's infringement theory[.]" *Id.* (quoting Dkt. 274 at 12 n.9). But this does not show Sandisk was reasonable. To the contrary, the Court expressly said it was "***unreasonable***" for Sandisk to claim "Viasat should have known" Sandisk's theory, since identifying "exemplary source code files was ***not*** sufficient" here. Dkt. 274 at 12 (emphases added). In fact, the Court called Sandisk's approach "flatly inconsistent with this District's patent rules." *Id.* Sandisk is now attempting to relitigate this issue by mischaracterizing the Court's ruling. Unfortunately, that is how Sandisk approached many issues in this case. *See, e.g.*, Dkt. No. 182 at 4 ("Plaintiffs mischaracterize the claim construction order.").

*Second*, Sandisk argues that its decision to include the '400 Patent VCDS Web Proxy Theory was based on "black letter patent law" regarding antecedent basis, such that its contentions for 1[b]

should also be considered disclosed for 1[e]. Opp. at 16. But the Court already rejected Sandisk's theory of "antecedent basis": "[I]dentifying certain servers' relation to limitation 1[b] is not the same as identifying them in relation to limitation 1[e]. . . . If Sandisk intended to allege that the VCDS Web Proxy is the 'remote trusted server' that participates in authenticating the portable data storage device, it should have said so in its infringement contentions.'" Dkt. No. 275 at 23. Sandisk had ample opportunity to amend its contentions to disclose the VCDS Web Proxy as the supposed "remote trusted server" in 1[e]. It did not. Having not disclosed that theory initially, and having never amended its contentions to add that theory, it cannot now say it reasonably or timely disclosed this theory.

*Third*, Sandisk argues that it was not wrong to advance an already-rejected DOE theory because "Sandisk's expert report included a DOE theory based on the Operative Contentions' explicit statement." Opp. at 16. Sandisk yet again ignores the Court's ruling. The Court expressly rejected this position, found that "Sandisk does not address the Court's prior denial of leave to amend," and concluded that "Sandisk cannot circumvent the Court's prior ruling by arguing that Viasat 'was clearly on notice' of this theory." Dkt. 274 at 15. Sandisk never asked the Court to reconsider its rejection and cannot have reasonably believed its DOE theory was properly disclosed.

Sandisk's cited authority again is inapposite. For example, in *Polaris PowerLED Techs., LLC v. VIZIO, Inc.*, the Court denied fees after striking the "inadequately disclosed [] infringement theories that its expert described" but did so because the plaintiff had ***not*** "disclosed an entirely new theory or shifted positions at the last minute." 2022 WL 2189607, at *6 (C.D. Cal. Jan. 18, 2022). Here, Sandisk ***did*** disclose "entirely new theories," then included those theories in its expert reports even after the Court denied leave to amend.

### E.    Sandisk's Relitigation of Discovery Disputes is Exceptional

Sandisk raises several complaints about discovery. Most were rejected by the Court previously; some multiple times. For example, Sandisk argues that "Viasat produced 91% of its documents in the last two months of discovery" and "Viasat produced the majority of all documents (i.e., 51%) after the Court's deadline for the completion of document discovery." Opp. at 18 (emphasis omitted). These arguments are pulled straight from Sandisk's failed motions to amend

and to extend the case schedule. Dkt. 146 at 7-8; Dkt. 158 at 3-4. As Viasat responded then, documents produced after January 3, 2025 are irrelevant because they were "largely non-technical marketing materials and customer communications, and in any event, Plaintiffs notably do not rely on any of them in the proposed amended contentions." Dkt. 153 at 9 n.5. Nothing has changed since then. Then as now, Sandisk identifies *no* specific document from that production that had *any* impact on Sandisk's infringement contentions. Regardless, the Court found "Plaintiffs could and should have acted sooner." Dkt. 181 at 3. Sandisk did not seek reconsideration of that finding.

Sandisk also argues that "Viasat improperly delayed providing the required source code mapping . . . until six weeks after its deadline to respond to Sandisk's discovery request." Opp. at 19. This too was litigated and decided previously. Dkt. 182 at 2 & n.2. Sandisk now, finally, attaches the "mapping" to its opposition, Dkt. 291-9 at 11-16, but again makes no effort to explain *why* it needed this response—particularly after it had already reviewed, analyzed, and extensively cited Viasat's source code in contentions before requesting or receiving this interrogatory.[10]

Sandisk also claims Viasat refused to give an explanation on non-infringement until Viasat supplemented its non-infringement contentions at the end of fact discovery. Not so. Indeed, Sandisk ignores that Judge Kang expressly ruled that Viasat's non-infringement contentions were timely. Dkt. 196 at 5-8. Viasat provided iterative responses based on its best understanding of Sandisk's infringement theories, even though (as Viasat noted repeatedly in correspondence) Sandisk's infringement theories were jumbled, incoherent, and inconsistent across claim limitations. *See, e.g.,* Dkt. 168-3 at 15 (12/30/2024 supp. response); *id.* at 18 (1/25/2025 supp. response); *id.* at 23 (2/5/2025 supp. response). Viasat's contentions responding to Sandisk's last-minute new theories do not excuse Sandisk's litigation conduct—particularly where Sandisk ignored those non-infringement contentions and continued to press its already-rejected infringement theories long after receiving Viasat's contentions. At base, Sandisk bore the burden of proving infringement and it lost because its operative contentions did not suffice to meet that burden. Sandisk was repeatedly told that this was the case, and it did not need Viasat's non-infringement contentions—issued in response

---

[10]    Sandisk moved to amend its contentions, arguing that the "mapping" justified its belated amendments, without attaching the "mapping" to support that argument. Dkt. 146.

1    to its ever-changing positions—to know that its operative contentions were lacking.

2        Finally, Sandisk argues that Viasat identified eight new witnesses in the last two months of

3    discovery. Opp. at 18. Again, the Court already addressed this. Sandisk "opted not to notice or take

4    any fact depositions until December 2024. Plaintiffs also waited until Dec[ember] 31, 2024 to serve

5    a Rule 30(b)(6) notice with 104 deposition topics and served twenty new discovery requests on

6    December 7, 2024." Dkt. 181 at 3 (quotations omitted). "Although Defendant bears some

7    responsibility for disclosing new witnesses in December 2024, ***Plaintiffs could and should have***

8    ***acted sooner***. Put another way, ***Plaintiffs have not shown diligence here***." *Id.* (emphases added).

9    Relitigating these issues after judgment is not evidence of reasonableness. It is the opposite.

10   **III.    SANDISK'S STANDING POSITION WARRANTS FEES**

11       Sandisk tries to downplay standing, arguing "[t]he issue . . . is whether Plaintiffs included

12   one entity too many." Opp. 19. Not only is Sandisk wrong, that issue already has been decided. Dkt.

13   274 at 37. And Sandisk's dogged pursuit of its position, *even now*, sets this case apart—both because

14   its arguments are so weak and because it has not litigated those arguments reasonably.

15       Sandisk once again attempts to relitigate its meritless argument regarding standing, wrongly

16   citing *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257 (Fed. Cir. 2010) as support for its view that

17   WDI and its successor SDT LLC had standing based on amorphous "ownership rights."  Opp. at

18   21.[11] The Court already rejected SanDisk's arguments. Sandisk never explained how WDI or SDT

19   LLC held exclusionary rights in the asserted patents sufficient to confer standing—as it had to when

20   faced with the summary judgment motion it forced Viasat to bring. Regardless, Sandisk's own

21   materials and 30(b)(6) witness confirmed that *other* entities—not WDI or SDT LLC—had the only

22   exclusionary rights (as owner and as exclusive licensee). The facts Sandisk always knew—but

23   waited until the end of discovery to disclose—directly contradict Sandisk's claim that WDI (and

24   subsequently SDT LLC) had "exclusionary rights" in the '400 and '667 patents.

25       Sandisk also argues Viasat "did not address the key agreement which vested initial

26   _____

27   [11]   *WiAV* rejects Sandisk's position. *Id.* at 1264-65 ("[T]he legally protected interests in a patent ***are***
***the exclusionary rights created by the Patent Act***, [so] a party holding ***one or more of those***
28   ***exclusionary rights***—such as an exclusive licensee—suffers a legally cognizable injury when an
unauthorized party encroaches upon those rights and therefore has standing[.]") (emphasis added).

ownership in WDI (SDT LLC's predecessor) and then assigned certain rights to other entities for the explicit purpose of protecting WDI's ownership of the patents.'" Opp. at 20. Not so. The Court already looked at the "agreement." Dkt. 274 at 37 (analyzing Dkt. No. 253-4 at 5-6, "find[ing] that SDT LLC ha[d] failed to establish it has any exclusionary rights in the Asserted Patents"). Sandisk was and is wrong about this agreement. Relitigating its already-rejected claims does not make Sandisk right—it makes this case exceptional.

Sandisk's opposition confirms two key problems with ***how*** Sandisk litigated standing. First, as Viasat already explained (Mot. at 13-14), Sandisk was not forthright about why SDT LLC and its predecessor purportedly had standing. And Sandisk's opposition provides helpful examples. First, Sandisk admits that its complaint was not forthcoming regarding Plaintiffs' basis for standing. Opp. at 21. Sandisk congratulates itself for later providing a "helpful flowchart." Opp. at 6 (emphasis omitted). Viasat agrees this flowchart was helpful. But it is unfortunate Sandisk waited years to provide that helpful chart and then ignored what it said. As that chart made clear, SDT LLC and its predecessor WDI ***never*** had exclusionary interests in the patents-in-suit. Dkt. 220-3.[12] Sandisk's 30(b)(6) witness confirmed as much. Ex. B (John 2/14/2025 Dep. Tr.) at 129-130. What Sandisk does not explain is why it waited until February 2025 to reveal this information. From the inception of the case, through a motion to dismiss and written discovery, Sandisk doggedly maintained SDT LLC had exclusionary rights but did not explain how or why. Sandisk faults Viasat for not bringing summary judgment on the issue for "almost a year." Opp. at 20-21. But this is only because Sandisk hid the ball at the pleadings stage, when the Court noted that it was "hard to understand why Plaintiffs cannot (or will not) allege the[] basic jurisdictional facts" and throughout discovery. Mot. at 3. Viasat then repeatedly sought Sandisk's basis for maintaining SDT LLC as a party until it was forced to file what should have been an unnecessary summary judgment motion.

Sandisk argues that it provided Viasat with a stipulation and that "it was Viasat, not Sandisk,

---

[12] Sandisk still does not concede SDT LLC and WDI lack exclusionary rights, arguing that its chart does not use the phrase "exclusionary rights." Opp. 6. But that is precisely what the chart shows: SDT LLC and WDI held neither legal title nor an exclusive license. Dkt. 220-3; *see WiAV*, 631 F.3d at 1264-65 (only title owners and exclusive licensees have standing to sue for patent infringement); *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1030-32 (Fed. Cir. 1995).

1  that required the briefs to be filed and the issue adjudicated." Opp. at 22. But, as Viasat pointed out

2  to Sandisk, and has ***repeatedly*** explained in subsequent briefing, that draft stipulation did ***not*** seek

3  to dismiss SDT LLC—only to remove it from the case caption.[13] Ex. A; Dkt. 220-4 at 1; *see also*

4  Dkt. 222 at 2; Dkt. 258 at 2; Dkt. 283 at 2. When Viasat followed up to again request a stipulation

5  that would actually dismiss SDT LLC, Sandisk did not reply. Dkt. 220-4 at 1; Dkt. 283 at 2.

6        Sandisk also states that "[a]fter Viasat moved for summary judgment, Sandisk again tried to

7  resolve the issue amicably, offering to stipulate to Viasat's requested relief," and argues that "Viasat

8  . . . withholds the facts." Opp. 22. Not so. Even after Viasat was forced to move for summary

9  judgment, Sandisk still would not agree to a simple dismissal. Instead Sandisk sought to extract an

10  agreement from Viasat to deviate from the Court's sealing rules—an agreement that Viasat could

11  not make.[14] Dkt. 258-3 at 2; Ex. C. Oddly, Sandisk then opposed the motion on the merits, insisting

12  standing existed where it did not.

13        Sandisk's misconduct continued beyond even summary judgment. Conspicuously missing

14  from Sandisk's opposition is an explanation for why it waited until after summary judgment briefing

15  was complete to file a motion to substitute parties. Dkt. 269. This renewed attempt to drop SDT

16  LLC from the caption under the guise of substitution, rather than simply dismiss for lack of standing,

17  was particularly wasteful after opposing summary judgment.

18        Finally, Sandisk argues that it was not wrong to litigate standing in such a vexatious way

19  because the standing issue was not case-dispositive. But standing is a constitutional prerequisite.

20  And as the Court explained when it denied Sandisk's motion to file its standing allegations under

21  seal, "the public has a strong interest in knowing the identities of parties claiming exclusionary

22  patent rights for the purposes of licensing and/or avoiding infringement." Dkt. 71 at 4.

23  **IV.   VIASAT'S FEES ARE REASONABLE AND SUPPORTED**

24        Sandisk does not dispute that Quinn Emanuel's rates are reasonable; instead, it offers two

---

25  [13]   Sandisk claims that Viasat failed to address the June 5 stipulation. Opp. at 22; *see also id.* at 2

26  ("but Viasat ignores that Sandisk followed up with a draft stipulation on June 5, which Viasat
    rejected"). This is incorrect; Viasat addressed the June 5 stipulation in its motion for summary

27  judgment (Dkt. 220-1 at 1-2 & Dkt. 220-4 at 1) and its response to the order to show cause (Dkt.
    283 at 2-3) which Viasat requested the Court consider with its fees motion (Mot. at 13).

28  [14]   Viasat's prior briefing explained this. *E.g.*, Dkts. 258 at 3, 284 at 4. Sandisk has not addressed it.

critiques of the support provided and of Viasat's hours. Neither has merit. *First*, Sandisk argues that the "information [Viasat] provided—total hours per attorney for the entire case, monthly total fees (across all attorneys), and monthly total hours and fees (across all attorneys) relating to standing—does not enable an adequate assessment."[15] Opp. at 25. But that is all the law requires. When seeking attorneys' fees, Federal Rule of Civil Procedure 54(d)(2)(B)(iii) provides that a fee request must "state the amount sought or provide a fair estimate of it." The Advisory Committee Notes to Rule 54(d) further provide that the motion need "not . . . be supported at the time of filing with the evidentiary material bearing on the fees," which can "be submitted in due course." Viasat will submit any additional documentation if helpful to the Court. But Sandisk is wrong that more detail was required for an initial fee request.

*Second*, Sandisk argues "Viasat's fees may have been excessive in some respects" because it worked "almost 180 hours in June and July 2025 on standing, for a total of $217,382 in fees." Opp. at 25. Sandisk downplays the extensive nature of the summary judgment briefing, sealing, and pre-motion correspondence required when Sandisk would not simply dismiss SDT LLC. Forcing a party to move for summary judgment and brief those issues to conclusion is no small matter. Specifically, in June and July 2025, Viasat attorneys:

- Drafted correspondence to Sandisk relating to its (1) proposed stipulation to change the case caption without effectuating dismissal; (2) proposed stipulation that improperly sought to circumvent the Court's rules and keep sealed the public materials filed with the standing MSJ; and (3) attempt to file a sur-reply on the standing MSJ.

- Drafted the motion for summary judgment on standing (Dkt. 222), reply in support of the same (Dkt. 259), motion for leave to file a second summary judgment motion on standing (Dkt. 221), reply in support of the same (Dkt. 258), and opposition to Sandisk's motion to file a sur-reply to Viasat's summary judgment motion (Dkt. 267).

- Prepared administrative sealing motions for the standing briefs (Dkts. 220, 250).

- Conducted legal research and prepared declarations and exhibits in support of its briefs.

- Carried out multiple sealed filings.

Given the nature of the summary judgment briefing, sealing, and back-and-forth correspondence, Viasat's requested fees for June and July 2025 are more than reasonable.

---

[15] Viasat notes that, in the event the Court determines fees are warranted for a different period of time than that requested by Viasat, fees incurred by month are listed in Viasat's supporting materials.

1

**V.    CONCLUSION**

2        For the reasons set forth above, Viasat asks that the Court find this case exceptional and

3   award Viasat $8,021,879.03, which includes its attorneys' fees totaling approximately

4   $7,760,249.40 and $261,629.63 for costs (Dkt. 284-2 ¶¶ 24, 26 Ex. B).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VIASAT'S REPLY ISO MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285

1

2   DATED: November 25, 2025              QUINN EMANUEL URQUHART &
                                         SULLIVAN, LLP
3
                                         By_*/s/ Patrick Curran*_____
4                                            Patrick Curran

5                                        *Attorneys for Defendant Viasat Inc.*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2025, a copy of the foregoing document was served via ECF to all counsel of record who have appeared in this matter.


DATED: November 25, 2025                    By  _/s/ Patrick Curran_____
                                                  Patrick Curran

VIASAT'S REPLY ISO MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285